UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------------------X
ADRIAN SCHOOLCRAFT,

                                   Plaintiff,

              -against-                                                      <u>10 CV 06005</u>
                                                                                 <u>(RWS)</u>


THE CITY OF NEW YORK, DEPUTY CHIEF MICHAEL MARINO,
Tax Id. 873220, Individually and in his Official Capacity, ASSISTANT
CHIEF PATROL BOROUGH BROOKLYN NORTH GERALD
NELSON, Tax Id. 912370, Individually and in his Official Capacity,
DEPUTY INSPECTOR STEVEN MAURIELLO, Tax Id. 895117,
Individually and in his Official Capacity, CAPTAIN THEODORE
LAUTERBORN, Tax Id. 897840, Individually and in his Official Capacity,
LIEUTENANT JOSEPH GOFF, Tax Id. 894025, Individually and in his
Official Capacity, SGT. FREDERICK SAWYER, Shield No. 2576,
Individually and in his Official Capacity,  SERGEANT KURT DUNCAN,
Shield No. 2483, Individually and in his Official Capacity, LIEUTENANT
CHRISTOPHER BROSCHART, Tax Id. 915354, Individually and in his
Official Capacity, LIEUTENANT TIMOTHY CAUGHEY, Tax Id.
885374, Individually and in his Official Capacity, SERGEANT SHANTEL
JAMES, Shield No. 3004 and P.O.'s "JOHN DOE" #1-50, Individually and
in their Official Capacity (the name John Doe being fictitious, as the true
names are presently unknown) (collectively referred to as "NYPD
defendants"), JAMAICA HOSPITAL MEDICAL CENTER, DR. ISAK
ISAKOV, Individually and in his Official Capacity, DR. LILIAN
ALDANA-BERNIER, Individually and in her Official Capacity  and
JAMAICA HOSPITAL MEDICAL CENTER EMPLOYEE'S "JOHN
DOE" # 1-50, Individually and in their Official Capacity (the name John
Doe being fictitious, as the true names are presently unknown),


                                   Defendants.


------------------------------------------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JHMC'S
MOTION TO DISMISS**


                                          JOSHUA P. FITCH (JF-2813)
                                          COHEN & FITCH LLP
                                          Attorneys for Plaintiff
                                          225 Broadway, Suite 2700

New York, N.Y. 10007
(212) 374-9115
gcohen@cohenfitch.com
jfitch@cohenfitch.com


JON L. NORINSBERG (JN2133)
Attorney for Plaintiff
225 Broadway, Suite 2700
New York, New York 10007
(212) 791-5396
Norinsberg@aol.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ i

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND....................................................................................2

STANDARD FOR DISMISSAL UNDER FRCP 12 ..................................................3

ARGUMENT ...........................................................................................................4

I.      DEFENDANT'S MOTION TO DISMISS UNDER RULE 12 MUST BE DENIED ........4

      A.      Defendant JMHC's Conduct Deprived Plaintiff Adrian Schoolcraft of Rights and Privileges Guaranteed by the Federal Constitution and Federal Law....................5

      B.      On October 31, 2009, JHMC Took on the Roll of State Actors .............................6

            i.      The Actions of JHMC Meet the State Compulsion Test .............................6

            ii.      There Was a Sufficiently Close Nexus between the Actions of NYPD and JHMC........................................................................................................9

                  a.      Plaintiff has Sufficiently Pled a Claim for Conspiracy Against JHMC Under Section 1983 ..........................................................12

            iii.      On October 31, 2009, JHMC was Performing a Public Function ...............14

II.      THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION ...................17

      A.      This Case Falls Squarely Within the Requirements of 28 U.S.C. § 1367 ...........17

            i.      The Court Has Original Jurisdiction Over Claims and Parties Regardless of the Resolution of the Federal Claims Against JHMC ...............................17

            ii.      All of the Claims in this Case Arise from a Common Nucleus of Facts.....18

CONCLUSION ......................................................................................................20

**TABLE OF AUTHORITIES**

Addington v. Texas, 441 U.S. 418 (1979) ....................................................................4

Aschcroft v. Iqbal, 129 S.Ct. 1937 (U.S. 2009)........................................................3, 6

Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296 (2nd Cir. 2004)................18

Bullard v. City of New York, 240 F.Supp.2d 292 (S.D.N.Y. 2003)...............................13

Courtenay Communications Corp. v. Hall, 334 F.3d 210 (2nd Cir. 2003) ......................3

Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198 (2d Cir. 1999) .................3

Doe v. Harrison, 254 F.Supp.2d 338 (S.D.N.Y. 2003) ...............................................4

Goldman v. Belden, 754 F.2d 1059 (2nd Cir. 1985).....................................................3

In re Methyl Tertiary Butyl Ether (""MTBE") Products Liability Litigation, 510 F.Supp.2d 299
(S.D.N.Y. 2007) ............................................................................17, 18, 19

Jessamy v. City of New Rochelle, 292 F.Supp.2d 498 (S.D.N.Y. 2003) .......................13

Johnson v. Columbia University, 2003 WL 22743675 (S.D.N.Y. 2003)...................9, 13

Johnson v. Unity Health System, 2010 WL 1404123 (W.D.N.Y.)................................4

Jouthe v. City of New York, 2009 WL 701110 (E.D.N.Y. 2009) ...................................7

Lewis v. Krymkevich, 2009 WL 4884093 (S.D.N.Y. 2009).........................................12

Okunieff v. Rosenberg, 996 F.Supp. 343 (S.D.N.Y. 1993) .........................4, 5, 6, 7, 9, 12, 15, 16

Palaimo v. Lutz, 837 F.Supp. 55 (N.D.N.Y. 1993) ...................................................6, 9

Pangburn v.Culbertson, 200 F.3d 65 (2nd Cir.1999) ..............................................13, 14

Richardson v. N.Y.C.Health and Hosp. Corp., 2009 WL 804096 (S.D.N.Y. 2009) ....................12

Ruhlmann v. Ulster County Dept. of Soc. Services, 234 F.Supp.2d 140 (N.D.N.Y. 2002)....11, 15

Sheppard v. Beerman, 18 F.3d 147 (2nd Cir. 1994) ...................................................3

Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) ...................................................13

Sybalski v. Independent Group Home Living Program Inc., 546 F.3d 255 (2nd Cir. 2008)............5

Tewksbury v. Dowling, 169 F.Supp.2d 103 (E.D.N.Y. 2001) ........................................ 4, 10, 11

United Mine Workers of America v. Gibbs, 383 U.S. 715 (U.S. 1966).......................................19

West v. Atkins, 487 U.S. 42 (1988).................................................................................15, 16

## PRELIMINARY STATEMENT

Plaintiff Adrian Schoolcraft respectfully submits this Memorandum of Law in opposition to defendant JAMAICA HOSPITAL MEDICAL CENTER's ("JHMC") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), and 12(c), and thereafter to decline supplemental jurisdiction over the remaining state law claims[1] should defendant's motion on the Federal claims be successful.

As an initial matter, JHMC's contention that plaintiff's constitutional claims cannot be maintained under the doctrine of *respondeat superior* is a red herring.   Plaintiff has never attempted to establish liability under *respondeat superior* and plaintiff declines to take up that position here, a point which even JHMC concedes in their motion.   Instead, plaintiff Adrian Schoolcraft has adequately plead that JHMC's conduct constituted state action and that therefore JHMC is directly liable under 42 U.S.C. § 1983 for holding plaintiff against his will without due process and colluding with the New York City Police Department (NYPD) in clear violation of plaitniff's civil rights under the Fourth and Fourteenth Amendments.

In their role as joint state actors with the NYPD, JHMC ignored the overwhelming medical evidence gathered by its staff and allowed the NYPD to use JHMC as their own personal prison for plaintiff, dictating the terms, conditions and length of plaintiff Adrian Schoolcraft's detention in violation of the New York Mental Hygiene Law, which JHMC is obligated by law to follow.   JHMC's complicity with the State went so far as to permit NYPD officers to stand guard over, physically abuse, restrain and imprison plaintiff within its facility.   As a result of JHMC's actions, the law of this Circuit dictates that JHMC was in fact a state actor and is therefore liable under 42 U.S.C. § 1983.   Further, apart from the fact that JHMC's argument against supplemental

---

[1] Defendants have not moved to dismiss any of the pendent state law claims.

1

jurisdiction is entirely contingent upon dismissal of plaintiff's federal claims against them, the plain language of the supplemental jurisdiction statute as well as principles of judicial economy make it entirely appropriate for the court to exercise such jurisdiction, given that federal claims remain against all other defendants and all claims form the same case and controversy.  Based on the foregoing, defendant's motion should be denied in its entirety.

## FACTUAL BACKGROUND

Plaintiff Adrian Schoolcraft joined the New York City Police Department in July 2002, working at the 81st precinct until October 31, 2009.  (See Amended Complaint ["Am. Comp."] ¶¶ 26-27).  In response to his refusal to adhere to and later attempts to expose the strict enforcement of an illegal quota policy in his precinct, defendant NYPD officers instigated a campaign to intimidate and discredit him. (Id. at ¶¶ 34-170).  The culmination of said campaign occurred on October 31, 2009 when plaintiff was arrested, forcibly removed from his home, transported to JHMC and committed against his will for six (6) days under NYPD's classification as an Emotionally Disturbed Person (hereinafter "EDP"). (Id. at ¶ 171).

Plaintiff spent the first three days of his confinement at JHMC in the psychiatric emergency room where NYPD officers kept watch over him, physically and emotionally abused him, and handcuffed both of his arms tightly to a gurney so tightly that his hands turned blue. (Id at ¶¶ 171-79).  During that time he was not allowed contact with the outside world and he was not provided a proper bed to sleep in. (Id. at ¶¶ 171-79).  Despite the fact that there was no medical basis to detain plaintiff and that hospital records clearly indicate that he was lucid, rational, fully coherent, and posed no risk to himself or others, JHMC held plaintiff against his will at the sole prerogative and purpose of the NYPD.  (Id. ¶¶ 184-90, 201-02).

At the end of his sixth day of confinement at JHMC plaintiff Adrian Schoolcraft was released despite no change of circumstances concerning his psychiatric state, and with no explanation. (Id. ¶ 192).  As alleged, with specific factual allegations to support same, JHMC acted under the coercion of and in concert with the NYPD to facilitate the constitutional violations inflicted upon plaintiff Adrian Schoolcraft by offering itself as a vessel to be used by the NYPD at their will, and in furtherance of the NYPD's ultimate attempt to silence and discredit plaintiff.

## STANDARD FOR DISMISSAL UNDER FRCP 12

The standard for granting a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) and a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) are identical.  Sheppard v. Beerman, 18 F.3d 147, 150 (2nd Cir. 1994). In examining the present motion, the Court must "accept all of plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff."  Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 202 (2d Cir. 1999).  The Court's function is "not to weigh the evidence that *might* be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2nd Cir. 1985) (emphasis added).  The Second Circuit has established that the complaint "need only meet the requirements of our simplified notice pleading standard [that] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Courtenay Communications Corp. v. Hall, 334 F.3d 210, 213 (2nd Cir. 2003).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'"  Aschcroft v. Iqbal, 129 S.Ct. 1937, 1949 (U.S. 2009) (citation omitted).

<u>**ARGUMENT**</u>

**I.   DEFENDANT'S MOTION TO DISMISS UNDER RULE 12 MUST BE DENIED.**

      **A.   Defendant JMHC's Conduct Deprived Plaintiff Adrian Schoolcraft of Rights and Privileges Guaranteed by the Federal Constitution and Federal Law.**

The Supreme Court has recognized that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." <u>Addington v. Texas</u>, 441 U.S. 418, 425 (1979) <u>citing</u> <u>Doe v. Harrison</u>, 254 F.Supp.2d 338, 342 (S.D.N.Y. 2003) (finding first prong met where plaintiff involuntarily held in psychiatric ward); <u>Okunieff v. Rosenberg, et al.</u>, 996 F.Supp. 343, 348 (S.D.N.Y. 1993) (finding first prong met where plaintiff involuntarily committed to psychiatric ward); <u>Tewksbury v. Dowling</u>, 169 F.Supp.2d 103 (E.D.N.Y. 2001) (finding first prong met where plaintiff involuntarily hospitalized); <u>Johnson v. Unity Health System</u>, 2010 WL 1404123 (W.D.N.Y. 2010) (finding proposition of involuntary hospitalization meeting first prong "beyond cavil").

Plaintiff clearly alleges in the Seventh, Eighth and Ninth Claims of his Amended Complaint that defendant JHMC violated the rights and privileges guaranteed to him by the United States Constitution when it detained him against his will for six days without due process at the behest of the New York City Police Department.   Plaintiff concisely and explicitly alleges that his Constitutional Rights were violated, stating that "[a]fter his arrival to Jamaica Hospital, plaintiff was handcuffed to a gurney for more than nine hours, during which time he was denied use of phone, water, food or bathroom facilities." (<u>Am</u>. <u>Comp</u>. ¶ 171).   Further, plaintiff alleges that "[f]or six full days, [he] was confined against his will in the psychiatric ward of Jamaica Hospital.  (<u>Id</u>. at ¶ 184).   Finally, plaintiff alleges that "JHMC, in furtherance of its agreement and conspiracy with NYPD officials, explicitly and/or tacitly formed an agreement to

involuntarily confine plaintiff despite objective medical evidence mandating his release." (Id. at ¶ 204).   Therefore, under the law of this Circuit, plaintiff has adequately pled a sufficient Constitutional depravation to satisfy the first prong for pleading liability under 42 U.S.C. § 1983.

**B.      On October 31, 2009, JHMC Took on the Roll of State Actors.**

Under the law of this Circuit, a private actor may be considered a state actor for § 1983 purposes.  State action is satisfied if any one of the following conditions are met: (1) the private actor has acted under compulsion of the state, (2) there is such a close nexus between the state and the private actor that the actions of the private actor may be considered joint actions with the state, or (3) where the private entity assumes powers traditionally and exclusively reserved to the state.  Sybalski v. Independent Group Home Living Program Inc., 546 F.3d 255, 258 (2nd Cir. 2008).  As will be discussed infra, plaintiff has alleged facts that, at minimum, plead a plausible claim against JHMC as a state actor requirement under all three inquiries.

**i.      The Actions of JHMC Meet the State Compulsion Test.**

As Your Honor has previously recognized, the ultimate question to be answered in determining whether a private entity can be considered a state actor for purposes is whether the actions taken can fairly attributable to the state.  See Okunieff, 996 F.Supp. at 348 ("Under the state compulsion test, 'a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'") (citations omitted); see also Sybalski, 546 F.3d at 258 ("'the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test').") (citations omitted).  At this point in the litigation, it is not necessary for plaintiff to prove the merits of his case, but instead, plaintiff need only *allege* facts

5

that he sustained injury as the result of the actions of a private party acting under the compulsion or coercion of the state.  Further, as the court noted in <u>Palaimo v. Lutz</u>, 837 F.Supp. 55, 56 (N.D.N.Y. 1993) a case in which plaintiff was brought to the hospital by the police as an EDP, in order to adequately *plead* a cause of action against a hospital a plaintiff need *only* allege that they were involuntarily confined at that facility:

> As Mrs. Palaimo sets forth allegations in her complaint of, *inter alia,* involuntary confinement, until the facts are more fully known as to the State's role, if any, in the Hospital's alleged decision to confine Mrs. Palaimo against her will, the court will not dismiss Plaintiff's action against the Hospital at this time.

> <u>Id</u>.

Based on the aforementioned, in this case plaintiff has adequately plead sufficient facts that would allow a plausible claim against the hospital under 42 U.S.C. § 1983.  <u>See</u> <u>Aschcroft</u>, 129 S.Ct. at 1949 (U.S. 2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged.") (emphasis added).  Plaintiff has plead both that the actions of the New York City Police Department influenced JHMC's decision to involuntarily commit and falsely arrest plaintiff. (<u>Am</u>. <u>Comp</u>. ¶¶ 165-68, 200-02).   Further, contrary to defendant's assertion, <u>Okunieff</u> does not stand for the proposition that involuntary commitment by a private hospital cannot rise to the level of state action as a matter of law.  Rather, <u>Okunieff</u> held that the private hospital could not be a state actor merely by virtue of a state law which authorized involuntary confinement.   In fact, in that decision, Your Honor acknowledged that under certain circumstances, a private Hospital could be held liable for the act of *commitment*, but held it not to be a state actor because New York Mental Health Law did not compel the State to have a person committed.  <u>See</u> <u>id</u>. at 349 ("'The Hospital Defendants are not state actors because the MHL

neither *compels* nor *encourages* involuntary commitment 'any more than repossession laws are passed because states want to encourage creditors to repossess their debtors' goods.'") (emphasis added) (citations omitted).

The present matter is clearly distinguishable as the plaintiff has not alleged that JHMC became a state actor by virtue of the fact that New York State Mental Health Law bestows upon it the authority to involuntarily commit a patient, but instead because JHMC actively participated in plaintiff's unlawful confinement at the compulsion of the NYPD. Specifically, the allegations in this case are that JHMC ignored the overwhelming medical evidence gathered by its staff and allowed the NYPD to use JHMC as their own personal prison for plaintiff, dictating the terms, conditions and length of plaintiff Adrian Schoolcraft's detention in violation of the New York Mental Hygiene Law, which JHMC is legally obligated to follow. (Am. Comp. ¶¶ 165-204). Further, JHMC's complicity with the state went so far as to permit NYPD officers to stand guard over, physically abuse, restrain and imprison plaintiff within its facility. (Id. at ¶¶ 171-73).

Further, unlike the situations in the cases relied upon by defendants, the scenario encountered by plaintiff was undoubtedly the result of state action and not the result of any Hospital-initiated activity. Conversely, in Jouthe v. City of New York, 2009 WL 701110 (E.D.N.Y. 2009), a case relied upon heavily by defendants, the plaintiff's *mother voluntarily admitted* her son into the hospital. See id. at *2. Thereafter, the hospital contacted the police when plaintiff attempted to escape and attacked hospital security guards in the process. See id. at *3. This obvious distinction is of extreme import in the present matter, as the plaintiff has made specific allegations that the *police* initiated this arrest and they *used* the hospital as an instrumentality in order to confine plaintiff in furtherance of their unlawful objective.

Additionally, the plaintiff has never once alleged liability under Section 1983 predicated on *respondeat superior* but instead that the actions of the police officers were so overt and overwhelming that JHMC ceased being a private entity and became another branch of the NYPD to be used as their own personal prison.   Moreover, plaintiff has alleged that they in fact compelled and encouraged plaintiff's involuntary commitment, which forms the predicate for JHMC's liability as state actors under the state compulsion test.

Specifically, plaintiff alleges in the complaint that NYPD defendants brought him to JHMC against his will, handcuffed him to a hospital bed in the psychiatric ward, refusing to allow him phone calls and JHMC kept him based on NYPD's non-medical assessment of plaintiff as an EDP.  (Am. Comp. ¶¶ 165-173).  Further, the complaint alleges that based on there forceful, coercive and fraudulent acts, NYPD kept plaintiff locked under their guard in a room in the psychiatric ward, where he was not even formally admitted until three (3) days later. (Id. at ¶¶ 171-74).   Additionally, plaintiff has sufficiently alleged JHMC's direct involvement in the violations sustained by plaintiff.  Specifically, under the Mental Health Law it is in fact the *Hospital* and not its employees or agents which is authorized to "receive and retain" an individual as mentally ill.  See N.Y. Ment. Hyg. Law § 9.27(a) ("[A] *hospital* may receive and retain therein as a patient any person alleged to be mentally ill and in need of involuntary care and treatment upon the certificates of two examining physicians, accompanied by an application for the admission of such person.") (emphasis added).

Accordingly, factual assertions that JHMC retained and confined the plaintiff for six (6) full days are not premised on a theory of vicarious liability but instead upon JHMC's direct involvement as state actors under Section 1983.  As is apparent from the foregoing, the issue of *respondeat superior* is not now, nor has it ever been plaintiff's theory of liability and is simply an

attempt to distract the court from plaintiff's actual claim – that on October 31, 2009, JHMC was

an arm of and under the coercion and direction of the NYPD, who are undoubtedly state actors.

Allegations containing the level of state involvement as alleged herein clearly meet the

plausibility requirements to pass Rule 12(b)(6) muster under analogous Second Circuit precedent.

See Palaimo, 837 F.Supp. at 56 ("However, the court cannot, by any stretch of the imagination,

find that Plaintiff's complaint, which includes allegations that she was taken against her will to

the Hospital by defendant police officers…describes routine treatment procedures for a private

hospital…the court must deny the Hospital's motion to dismiss in favor of allowing discovery to

proceed.").  As a result, plaintiff has clearly pled a plausible claim under 42 U.S.C. §1983 against

JHMC and thus their motion should be denied.

> ### ii.    There was a Sufficiently Close Nexus Between the Actions of NYPD and JHMC.

Private actors and entities will be considered state actors under 1983 if there is a

sufficiently close relationship between the private defendants and the State.  See Okunieff, 166

F.3d at 352 (private entities can be state actors "where the State has 'so far insinuated itself into

a position of interdependence with the [private party] that it was a joint participant in the

enterprise.'") (citation omitted); Johnson v. Columbia University, 2003 WL 22743675, *5

(S.D.N.Y. 2003) (the state action requirement is met "'when there is a sufficiently close nexus

between the State and the challenged action that the private party's action may be fairly treated

as that of the State itself.'") (citation omitted).

In the present case, plaintiff has undoubtedly pled the requisite facts in order to satisfy this

test for state action.  Here, JHMC was indeed a joint actor with NYPD defendants when they

received and retained plaintiff at the behest of and upon information provided solely by the

NYPD defendants.  Plaintiff has alleged that officers went to his home on October 31, 2009 and made the non-medical determination that plaintiff should be classified and treated as an EDP. (Am. Comp. at ¶¶ 146-65).  Based on that classification, JHMC essentially jailed plaintiff at the bidding of the NYPD defendants in violation of their own protocols and in contravention of New York Mental Hygiene Law. (Id. at ¶¶ 165-204).  Further, plaintiff has alleged that JHMC, with the assistance and the encouragement of the NYPD, confined plaintiff against his will for six (6) days and in fact that the NYPD maintained contact with JHMC in order to ensure plaintiff continued confinement after JHMC's initial detention.[2]  (Id. at ¶¶ 165-196).

    None of the cases relied upon by defendants have even remotely similar allegations and are easily distinguishable based on the facts alleged in the pleadings alleged herein.  In fact, under the facts as alleged in the instant matter, courts in this Circuit have routinely denied motions to dismiss.  Specifically, in Tewksbury, the court held that the plaintiff had alleged sufficient facts to satisfy the "joint action" test where it was alleged that physicians were participating with state actors instead of exercising independent medical judgment.  See id. at 109 (where plaintiffs made allegations that defendants were compelled by state actors to admit the

---

[2]  See Am. Comp. ¶¶ 171-202. After his arrival to Jamaica Hospital, plaintiff was handcuffed to a gurney for more than nine hours, during which time he was denied use of phone, water, food or bathroom facilities. (Id. at ¶ 171). When plaintiff was finally allowed to make a phone call at approximately 6:00 a.m., one of the NYPD members watching over him, SGT. FREDERICK SAWYER, said out loud: "HEY, I THOUGHT PERPS WEREN'T ALLOWED TO USE THE PHONE." Thereafter, SGT. SAWYER forcibly disconnected the phone and hung it up, thereby instantly terminating plaintiff's phone call. (Id. at ¶ 172). SGT. SAWYER then said "OKAY, NOW!", at which point SGT. SAWYER, assisted by five other members of the New York City Police department – including SGT. SHANTEL JAMES, P.O. RAYMOND MILLER and P.O. ARTUR SADOWSKI, and two armed police officers – forcibly grabbed plaintiff's hair, head and body, and threw him back on top of the gurney which he had been standing next to when making the phone call. SGT. SAWYER then placed a second handcuff on plaintiff's left hand so tightly that it caused excruciating pain, and caused his hand to turn blue. (Id. at ¶ 173).  In furtherance of this objective, the NYPD defendants maintained contact with JHMC for the six (6) days to ensure that plaintiff Adrian Schoolcraft remained at the hospital, and did so for the sole purpose of ensuring that JHMC continued to detain plaintiff. (Id. at ¶ 201).  In fact, when questioned by plaintiff about his release date, defendant ISAKOV responded that he "WANTED TO HEAR FROM THE [POLICE] DEPARTMENT FIRST" before he could answer that question and tell plaintiff when he would be released. (Id. at ¶ 202).

plaintiff, the joint action requirement was satisfied and dismissal was inappropriate). Additionally, the court in <u>Ruhlmann v. Ulster County Dept. of Social Services</u>, 234 F.Supp.2d 140, 165 (N.D.N.Y. 2002) also recognized this important distinction where there were allegations that state actors had compelled the private party's actions, holding:

> In this regard, <u>Okunieff</u> is distinguishable. The instant case presents a situation where a reasonable jury could find that the governmental actors did not just license and authorize the private defendants to take the actions they did; they compelled it. As noted, a reasonable jury could relatedly find that no independent medical judgment was exercised by the private defendants; their judgment was compelled by the government.
>
> <u>Id</u>.

Defendants, however, in an attempt to escape a clearly plausible claim of liability under 42 U.S.C. § 1983, have relied upon cases in which the relationship between the state and the private party was tenuous at best, which is simply not the case here.  In the present matter as there are ample allegations in the pleadings that the NYPD, undoubtedly state actors, compelled, coerced and induced JHMC to receive and detain plaintiff involuntarily for a period of six (6) days.  Further, it is alleged that the NYPD, through false allegations and coercion, was able to use JHMC as a facility to effectuate plaintiff's false arrest and keep him confined against his will. (<u>Am</u>. <u>Comp</u>. at ¶¶ 165-70).  Additionally, plaintiff has alleged that JHMC's retention and eventual admittance of plaintiff was based entirely on the NYPD's classification of plaintiff as an EDP.  (<u>Id</u>. at ¶165).  Those allegations *alone* are sufficient to survive a motion to dismiss at the pleading stage.[3]    As such, plaintiff has clearly stated a plausible claim that JHMC was a state actor under the close nexus test.  Accordingly, defendant JHMC's motion should be denied and

---

[3] It should also be noted that discovery may very well disclose additional policies, protocols, contracts or agreements in place between JHMC and the NYPD, which are unknown to plaintiff at the pleading stage that control the circumstances under which JHMC may involuntarily confine a person based on an EDP classification from non-medical personnel.

discovery be allowed to proceed.

>   **a.      Plaintiff has Sufficiently Pled a Claim for Conspiracy Against
>            JHMC Under Section 1983.**

Defendants, in support of their argument for dismissal under the "joint action" test, have erroneously merged and mixed the law regarding the pleading requirements for the "joint action/close nexus" test and the requirements for pleading a conspiracy under Section 1983. Obviously, this is either a tortured understanding of the pleading requirements for state action under that test or an attempt to insert additional requirements that are simply unnecessary to the analysis of whether there was joint action or a close nexus between JHMC and the NYPD.

Contrary to defendant's position, conspiracy under Section 1983, is a wholly separate claim, distinct from the factual elements necessary to plead that a private actor has become a state actor under the close nexus test.  See Richardson v. New York City Health and Hospitals Corp., 2009 WL 804096, *17 (S.D.N.Y. 2009) ("[T]he pleading of a conspiracy will enable the plaintiff to bring suit against *purely* private individuals…show[ing] '(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'") (emphasis added) (alteration added) (citation omitted); see, eg., Lewis v. Krymkevich, 2009 WL 4884093, *11-12 (S.D.N.Y. 2009) (recognizing the distinction between the two theories) ("Plaintiff attempts to satisfy the state action requirement by establishing a close nexus between Dr. Krymkevich and RPC…Alternatively, construing plaintiff's complaint to raise the strongest arguments it suggests, plaintiff alleges that Dr. Krymkevich acted in concert with RPC to deprive her of her rights."); see also Okunieff, 996 F.Supp. at 352 ("The purpose of the close nexus requirement is to 'assure that constitutional standards are invoked only when it can be said that

12

the State is responsible for the specific conduct of which the plaintiff complains.'") (emphasis added) (citation omitted); see also Johnson, 2003 WL at *4 ("Thus in order to succeed on his 1983 claim against the Foundation, the plaintiff must assert facts that demonstrate joint action **_or_** a conspiracy with a state actor.") (emphasis added).

As such, any combination or merger of the two theories for § 1983 liability is incorrect; however, to extent that defendants are not simply confusing the two issues and are instead arguing that the conspiracy claim is also insufficiently plead, this argument is also without merit. Further, contrary to defendant's contention, the Supreme Court decision in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), also calls into question whether conspiracy claims under § 1983 are in fact held to a heightened pleading requirement as defendants suggest.  See Bullard v. City of New York, 240 F.Supp.2d 292, 301 (S.D.N.Y. 2003) ("It is questionable whether, after Swierkiewicz, it is necessary to set out all the elements of a claim of conspiracy to violate § 1983, as opposed to identifying the claim of conspiracy together with a sufficient indication of the parties, the general purpose of the conspiracy, and the approximate date so that the defendants have notice of what they are charged with."); see also Jessamy v. City of New Rochelle, 292 F.Supp.2d 498 (S.D.N.Y. 2003) (recognizing same).  Notwithstanding, this apparent abrogation from Second Circuit precedent, plaintiff has clearly alleged sufficient facts to state a plausible claim for conspiracy under § 1983.

As previously stated, a conspiracy is sufficiently plead where there are factual allegations to support an agreement between the state and a private party to act in concert to inflict an unconstitutional injury, and an act done to further the agreement.  See Pangburn v.Culbertson, 200 F.3d 65, 72 (2nd Cir.1999).  In the present case, plaintiff has amply met those requirements. Specifically, plaintiff has pled an agreement between JHMC and defendant officers to have

plaintiff involuntary committed and confined in the psychiatric ward of JHMC and held there, at least initially, at the behest of and pending orders from the NYPD.[4]  Further, this agreement included that JHMC accept NYPD's categorization of plaintiff as an "EDP," which is a police classification and not one made by a medical professional or any member of hospital staff, to which JHMC acquiesced and agreed to do.  (Am. Comp. at ¶¶ 165-90).

Additionally, at this stage plaintiff need only allege facts the plausibly support the existence of a conspiracy.  As the Second Circuit has recognized, this is because many of the facts needed to prove a conspiracy are uniquely within the defendants control prior to discovery.  See Pangburn, 200 F.3d at 72 ("we have recognized that such 'conspiracies are by their very nature secretive operations,' and may have to be proven by circumstantial, rather than direct, evidence.").   Moreover, it has also been alleged that JHMC received or attempted to receive a benefit as plaintiff was actually billed by JHMC in the amount of $7,185.00 for the time that he was forced to stay in their confines against his will.  (Id. at ¶ 197).  All of these facts, taken together, clearly support a plausible claim of conspiracy as between and against JHMC and the NYPD defendants.  Accordingly, JHMC's motion should be denied at this time and discovery should commence in order for the parties to explore the merits of these allegations.

### iii.    On October 31, 2009, JHMC was Performing a Public Function.

Under the "public function" test a private party can be deemed a state actor when the action they perform can fairly be classified as a function traditionally and exclusively reserved to

---

[4] See Am. Comp. at ¶¶ 179, 198-99.  After three days, plaintiff was formally admitted into the psychiatric ward at JHMC, where he spent the remainder of his confinement. (Id. at ¶ 179).  In furtherance of this objective, the NYPD defendants maintained contact with JHMC for the six (6) days to ensure that plaintiff Adrian Schoolcraft remained at the hospital, and did so for the sole purpose of ensuring that JHMC continued to detain plaintiff. (Id. at ¶ 198).  In fact, when questioned by plaintiff about his release date, defendant ISAKOV responded that he "WANTED TO HEAR FROM THE [POLICE] DEPARTMENT FIRST" before he could answer that question and tell plaintiff when he would be released. (Id. at ¶ 199).

the prerogative of the state.  See Okunieff, 996 F.Supp. at 353 ("This exclusion function theory is related to situations where the State delegates its responsibilities to private parties and then attempts to escape liability for constitutional violations caused by private parties acting pursuant to the delegation.").  In Okunieff, Your Honor held that as a result of the fact that the private actor took measures to *civilly* commit the plaintiff on its *own* initiative, those actions were not traditionally and exclusively a public function.  See id. at 353-57.  This is clearly distinguishable from the facts alleged herein, where JHMC was acting upon the initiative and at the behest of the NYPD.  This difference is extremely important, as was noted by the court in Ruhlman:

> [A]s the Supreme Court has mandated that the function be one "exclusively" and "traditionally" the prerogative of the state, it must be held that involuntarily commitment by *private* individuals is not a public function. Thus, as a matter of law, the private defendants were not performing a public function when *they acted* to involuntarily confine plaintiff. Because there are factual issues, however, as to whether the private defendants were *compelled to act* by the state, plaintiff's motion for summary judgment on the state actor issue remains denied.

Id. at 167 (emphasis added).

Additionally, in the present matter, the plaintiff has alleged that the NYPD had essentially used JHMC's facility to perform the function of their personal prison facility for confining plaintiff, which would undoubtedly fall within the category of a public function.  In fact the Supreme Court has already held that the treatment of prisoners, where the person being treated has no choice of the treating physician, is in fact a public function.  See West v. Atkins, 487 U.S. 42, 47 (1988) ("a physician who contracts with the State to provide medical care to prison inmates, *even if employed by a private entity*, acts under color of state law for purposes of § 1983.") (emphasis added).  The importance of this distinction between purely private medical treatment and those intermingled with the State was also echoed by Your Honor in Okunieff:

Both cases, however, are distinguishable from the instant case as West involves

15

prisoners, who are wards of the State...[t]he Supreme Court held in <u>West</u> that a private physician under contract with the State to provide medical care to prisoners engaged in state action despite the fact that the challenged activity turned on medical judgments...[u]nlike Plaintiff in the instant case, the prisoner in <u>West</u> was *not* free to consult a physician of his choosing...[t]he <u>West</u> Court realized that 'although the provision of medical services is a function traditionally performed by private individuals, the context in which [these services were performed] for the State...distinguishes the relationship between [this physician] and West from the ordinary physician-patient relationship.'

<u>Id</u>. at 355 (emphasis added) (alteration added) (citation omitted).

Given the fact that the plaintiff in this case had just been arrested in his own home, and while still in the custody of the state, had been forcibly taken to JHMC and held there against his will, the rationale of <u>West</u> seems particularly applicable here.  Further, plaintiff was involuntarily confined within JHMC for six (6) days with no choice whatsoever in his treatment or evaluation.  Additionally, as been repeatedly stated, JHMC held plaintiff based solely on the NYPD's EDP classification, which prior to discovery, leaves numerous unanswered questions regarding the level of independent medical judgment, if any, that is or was used by JHMC's in similar situations involving police classified EDP's and to what extent this may cross over to a public function in a way that privately initiated commitment does not.  Notwithstanding, whether or not discovery will ultimately provide any such information is entirely irrelevant at the pleading stage, as plaintiff need only allege sufficient facts making it plausible that JHMC was performing a public function, which plaintiff has more than accomplished in the pleadings.  As such, based on the allegations contained in the complaint, the public function test has been more than adequately pled, and defendant's motion should be denied.

16

## II.   THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION

### A.   This Case Falls Squarely Within the Requirements of 28 U.S.C. § 1367.

Under 28 U.S.C. § 1367, a court can and should exercise supplemental jurisdiction in situations where it has original jurisdiction over some claims and parties, as long as the claims arise from the same events.  See In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, 510 F.Supp.2d 299, 320 (S.D.N.Y. 2007) ("In passing the statute, Congress gave district courts jurisdiction over *claims and parties* over which the court lacked original jurisdiction under sections 1331 and 1332, so long as all of the claims arise out of the same case or controversy under Article III.") (emphasis added).  Specifically, 28 U.S.C. § 1367 provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
>
> Id.

Claims will satisfy the "same case or controversy" requirement when they arise from common or the same facts.  See MBTE, 510 F.Supp.2d at 321 ("Federal and state claims form 'one case or controversy,' and thus satisfy section 1367(a), if they 'derive from a common nucleus of operative facts or when both claims would normally be expected to be tried in a single judicial proceeding.'").  In the present matter both requirements are easily satisfied.

### i.   The Court has Original Jurisdiction Over the Claims and Parties Regardless of the Resolution of the Federal Claims Against JHMC.

In this case, it is clear the court will still retain original jurisdiction over the majority of claims regardless of whether the Federal claims against JHMC are dismissed.  Specifically, the court will obviously still have original jurisdiction over the NYPD defendants' federal claims,

which JHMC cannot and does not dispute.  Additionally, there are Federal claims asserted against individual defendants Dr. Bernier and Dr. Isakov, which will also remain notwithstanding the disposition of the Federal claims against JHMC.

In their motion, JHMC has clearly ignored these remaining claims and parties, as they continuously rely on cases where *all* of the federal claims were dismissed against *all* parties. This situation, however, is not present in the instant matter, where the vast majority of claims remaining are Federal claims, notwithstanding the outcome of JHMC's motion.  Given this fact, the defendant's argument is utterly without merit, as supplemental jurisdiction is appropriate in cases involving federal claims against multiple parties.  See MTBE, 510 F.Supp.2d at 320 ("Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.") (emphasis added) (citation omitted); Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296, 308  (2nd Cir. 2004) ("This is so even if the state law claim is asserted against a party different from the one named in the federal claim.")  As such, the first requirement of supplemental jurisdiction is amply met in this case.

### ii.    All of the Claims in this Case Arise from a Common Nucleus of Facts

There can be no doubt that the state law claims in this case are sufficiently interwoven with the Federal claims to meet the same case or controversy requirement.  These claims arise out of the same allegations – that plaintiff was forcibly removed from his home, falsely arrested, brought to JHMC against his will, received and retained by JHMC as an EDP and involuntarily confined there for six (6) as a result of the coercion, intentional misrepresentations of the NYPD defendants in connection with conspiracy and/or due process violations committed by JHMC and the individually named doctor defendants.  Given such overlapping facts and claims, it would be particularly appropriate for the court to retain jurisdiction over the state law claims in this case.

See MBTE, 510 F.Supp.2d at 322 ("Turning to the question of whether section 1367(a) was satisfied, the Second Circuit explained: 'In determining whether two disputes arise from a 'common nucleus of operative fact,' we have traditionally asked whether 'the facts underlying the federal and state claims *substantially overlapped* ... [or] the federal claim necessarily brought the facts underlying the state claim before the court.'").  Accordingly, defendant JHMC cannot make any plausible argument that the court should not exercise supplemental jurisdiction given the identity of claims.

Further, litigating separate actions in different venues, which arise from the same underlying facts would be a tremendous waste of time, efficiency and judicial resources.  In fact, it would be utterly wasteful, as defendants have tacitly suggested, for the court to severe this case for the sole purpose of having a parallel action against JHMC pending simultaneously in state court.[5]  Moreover, the document discovery and the depositions sought will undoubtedly overlap, resulting in needlessly duplicative litigation.  Additionally, having separate actions in different venues could lead to inconsistent results, prejudice to the parties and/or potentially preclusive affects on either litigation.  All of these factors militate in favor of judicial economy, convenience and ultimately supplemental jurisdiction.  See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (U.S. 1966) ("[Supplemental jurisdiction's] justification lies in considerations of judicial economy, convenience and fairness to litigants") (alteration added).  Based on the foregoing, it is difficult to conceive of a more appropriate situation to exercise supplemental jurisdiction, even were the federal claims against JHMC to fail, and therefore, defendant's motion should be denied.

---

[5] Although defendants have not specifically argued for severance, the only way this court could properly decline to exercise jurisdiction over the remaining state claims would be to sever all the claims against JHMC given the fac that there are Federal claims still remaining against all other defendants in this case.

19

## CONCLUSION

For all of the aforementioned reasons, it is respectfully requested that the Court deny defendant JHMC's motion in its entirety and allow discovery to commence against all defendants, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
      December 6, 2010

                                        Respectfully submitted,

                                        COHEN & FITCH LLP

                    By: _____/S_____
                            JOSHUA P. FITCH (JF-2813)
                            COHEN & FITCH LLP
                            Attorneys for Plaintiff
                            225 Broadway, Suite 2700
                            New York, N.Y. 10007
                            (212) 374-9115
                            jfitch@cohenfitch.com
                            gcohen@cohenfitch.com

                    BY:_____/S_____
                            JON L. NORINSBERG (JN-2133)
                            225 Broadway, Suite 2700
                            New York, N.Y. 10007
                            (212) 791-5396
                            norinsberg@aol.com

20