UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/14/12

------------------------------------------X

ADRIAN SCHOOLCRAFT,

                    Plaintiff,

        - against -

                                              10 Civ. 6005 (RWS)

                                              OPINION

CITY OF NEW YORK, et al.,

                    Defendants.

------------------------------------------X

A P P E A R A N C E S:

        Attorneys for the Plaintiff

        THE LAW OFFICES OF JON L. NORINSBERG, ESQ.
        225 Broadway, Suite 2700
        New York, NY 10007
        By:   Jon L. Norinsberg, Esq.

        COHEN & FITCH LLP
        225 Broadway, Suite 2700
        New York, NY  10007
        By:   Joshua Paul Fitch, Esq.
              Gerald M. Cohen, Esq.


        Attorneys for the City Defendants & Non-Party Councilman
        Peter Vallone, Jr.

        MICHAEL A. CARDOZO
        CORPORATION COUNSEL OF THE CITY OF NEW YORK
        100 Church Street
        New York, NY  10007
        By:   Suzanna Hallie Publicker, Esq.
              Maxwell Douglas Leighton, Esq.
              Donna Anne Canfield, Esq.
              William Solomon Jacob Fraenkel, Esq.

**Sweet, D.J.**

There are currently two motions pending before the
Court. Plaintiff Adrian Schoolcraft ("Schoolcraft," or the
"Plaintiff") has requested leave to amend his complaint to add a
First Amendment retaliation claim under 42 U.S.C. § 1983 and to
substitute Lieutenant William Gough for Lieutenant Joseph Goff
who was incorrectly named in the complaint. Additionally, non-
party Councilman Peter Vallone, Jr. has requested that the Court
quash the subpoena served upon him by Plaintiff seeking, among
other things, records of complaints regarding the alleged
downgrading of crime reports and documents reflecting the
alleged failure of the New York City Police Department (the
"NYPD") to report crime statistics and the existence of an
alleged arrest/summons quota policy. Based on the facts and
conclusions set forth below, Plaintiff's motion to amend the
complaint is granted in part and denied in part, and Councilman
Vallone's motion to quash is denied.

**Facts & Prior Proceedings**

The facts of the case are detailed in this Court's
opinion dated May 6 which granted in part and denied in part
Defendant Jamaica Hospital Medical Center's motion to dismiss.

1

See <u>Schoolcraft v. City of New York</u>, No. 10 Civ. 6005(RWS), 2011
WL 1758635, at *1 (S.D.N.Y. May 6, 2011).  Familiarity with
those facts is assumed.

On April 25, 2012, Plaintiff wrote to the Court
requesting leave to amend the complaint to add a First Amendment
retaliation claim under 42 U.S.C. § 1983.  The letter was
treated as a motion and a date set for argument.  After
receiving several letters from both Plaintiff and counsel for
Defendants City of New York, the NYPD, and the individual police
officers (the "City Defendants"), the motion was heard and
marked fully submitted on May 9, 2012.

On May 11, 2012, non-party Councilman Peter Vallone,
Jr., represented by the City Defendants' counsel, wrote to the
Court requesting that Plaintiff's subpoena be quashed.  The
letter was treated as a motion and a date set for argument.
After receiving correspondence from both Plaintiff and
Councilman Vallone, the motion was heard and marked fully
submitted on May 23, 2012.

**The Applicable Standards**

2

## A. Standard Applicable To Plaintiff's Motion To Amend

Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint shall be given "freely" when "justice so requires." "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Williams v. Citigroup Inc., 659 F.3d 208, 213 (2d Cir. 2011) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). However, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007); see also AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 726 (2d Cir. 2010) ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact.").

## B. Standard Applicable To Councilman Vallone's Motion To Quash

Fed. R. Civ. 26(b)(1) governs the scope of discovery and permits discovery of materials that are relevant to "any

3

party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "This obviously broad rule is liberally construed." Daval Steel Prods. V. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991). "[T]he overriding policy is one of disclosure of relevant information in the interest of promoting the search for truth in a federal question case." Burke v. N.Y. City Police Dep't, 115 F.R.D. 220, 225 (S.D.N.Y. 1987); see also Condit v. Dunne, 225 F.R.D. 100, 105 (S.D.N.Y. 2004) ("Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept.").

"The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." Night Hawk Ltd. v. Briarpatch Ltd, LP, No. 03 Civ. 1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) (citing Salvatore Studios Int'l v. Mako's Inc., No. 01 Civ. 4430, 2001 WL 913945, at *1 (S.D.N.Y. Aug. 14, 2001) ("Rule 26(b)(1) of the Federal Rules of Civil Procedure restricts discovery to matters relevant to the claims and defenses of the parties. Here, the burden is on Mako's [who issued the subpoena] to demonstrate relevance.");

4

accord Bridgeport Music Inc. v. UMG Recordings, Inc., No. 05
Civ. 6430, 2007 WL 4410405, at *2 (S.D.N.Y. Dec. 17, 2007);
Quotron Sys., Inc. v. Automatic Data Processing, Inc., 141
F.R.D. 37, 41 (S.D.N.Y. 1992); Culligan v. Yamaha Motor Corp.,
110 F.R.D. 122, 125 (S.D.N.Y. 1986).  Once the party issuing the
subpoena has demonstrated the relevance of the requested
documents, the party seeking to quash the subpoena bears the
burden of demonstrating that the subpoena is overbroad,
duplicative, or unduly burdensome.  Sea Tow Int'l, Inc. v.
Pontin, 246 F.R.D. 421, 424 (E.D.N.Y. 2007) ("The burden of
persuasion in a motion to quash a subpoena . . . is borne by the
movant.") (quoting Jones v. Hirschfeld, 219 F.R.D. 71, 74-75
(S.D.N.Y. 2003).  The determination of whether a subpoena is
unduly burdensome turns, in part, on why the requested material
is relevant.  United States v. Int'l Bus. Mach. Corp., 83 F.R.D.
97, 104 (S.D.N.Y. 1979) (a court evaluating a motion to quash
considers "such factors as relevance, the need of the party for
the documents, the breadth of the document request, the time
period covered by it, the particularity with which the documents
are described and the burden imposed."); Concord Boat Corp. v.
Brunswick Corp., 169 F.R.D. 44, 50 (S.D.N.Y. 1996) ("To the
extent a subpoena sweepingly pursues material with little
apparent or likely relevance to the subject matter it runs the

greater risk of being found overbroad and unreasonable.").

**Plaintiff's Motion To Amend The Complaint Is Granted In Part And Denied In Part**

Plaintiff has requested leave to amend the complaint to add a First Amendment retaliation claim under 42 U.S.C. § 1983.  Plaintiff also requests that he be permitted to substitute Lieutenant William Gough for Lieutenant Joseph Goff who was incorrectly named in the original complaint.  The request to substitute Lieutenant Gough as a defendant is made with the consent of all parties except the City Defendants.  During discovery, the City Defendants provided Plaintiff with the UF 49 (Unusual Occurrence Report) from October 31, 2009, which indicated that Lieutenant William Gough was present at Plaintiff's home during the events that gave rise to this lawsuit.  Lieutenant Joseph Goff was incorrectly named as a defendant on account of the similarity between his name and that of Lieutenant Gough.

As noted above, in deciding whether to grant leave to amend, district courts consider whether the party seeking the amendment has not unduly delayed, whether that party is acting in good faith, whether the opposing party will be prejudiced,

and whether the amendment will be futile.  See Foman, 371 U.S.
at 182.  All of these considerations favor granting Plaintiff's
motion to substitute Lieutenant William Gough for Lieutenant
Joseph Goff.  There is no indication that Plaintiff's request is
untimely or that Plaintiff is in any way acting in bad faith.
The City Defendants have raised no objections on the basis of
prejudice or futility.  Accordingly, Plaintiff's request to
substitute Lieutenant Gough for Lieutenant Goff is granted.

     With respect to Plaintiff's request to add a First
Amendment retaliation claim, Plaintiff's proposed amended
complaint alleges that "[t]he actions taken by the NYPD
defendants on the night of October 31, 2009 violated plaintiff's
First Amendment right[s] as he was specifically preparing to
disclose information to the public at large that the largest
Police Department in the United States had committed serious and
continuous breaches of the public trust and a fraud upon the
public.  Plaintiff's aforementioned unjustified arrest and
detention was not authorized by law and instead constituted a
prior restraint on a plaintiff's speech, which is presumptively
unconstitutional and which constituted an abuse of power and a
fraud upon the public."  Compl. ¶¶ 255, 256.  The proposed
amended complaint also alleges that,

7

NYPD defendants unconstitutionally imposed this prior
restraint on plaintiff's speech in an effort by defendants
to silence, intimidate, threaten and prevent plaintiff from
disclosing the evidence of corruption and misconduct
plaintiff had been collecting and documenting to the media
and public at large.

Specifically, NYPD defendants illegally seized plaintiff's
draft report to Commissioner Raymond Kelly detailing the
police corruption and misconduct he had been documenting
and collecting in an effort to prevent said material from
being disclosed to anyone.

Additionally, NYPD defendants also seized plaintiff's
personal notes and other effects regarding his complaints
against the 81st precinct in an effort to prevent said
material from being disclosed to anyone and especially
members of the news media and victims of the aforementioned
corruption.

Compl. ¶¶ 259, 260, 261.  Plaintiff contends that prior to the

events of October 31, 2009, Plaintiff had made numerous

complaints to supervisory personnel within the NYPD and to

internal investigative agencies regarding the enforcement and

establishment of an arrest and summons quota.  Plaintiff also

alleges that he made allegations that commanding officers had

manipulated crime statistics and civilian complaints so as to

avoid classification of these complaints as "major crimes" for

purposes of reporting crime statistics to the public.  According

to Plaintiff, these allegations were substantiated by a report

produced by the NYPD's Quality Assurance Division, which found

that civilian complaints were being falsified by the NYPD.
Plaintiff contends that following the disclosure of the Quality
Assurance Division findings, the merit of Plaintiff's First
Amendment retaliation claim became clear, as the events of
October 31, 2009 and subsequent harassment was done directly in
retaliation against Plaintiff because he sought to exercise his
First Amendment right to speak out regarding the NYPD's breach
of the public trust.

"In order to establish a First Amendment retaliation
claim, plaintiffs must prove that: (1) they engaged in
constitutionally protected speech because they spoke as citizens
on a matter of public concern; (2) they suffered an adverse
employment action; and (3) the speech was a 'motivating factor'
in the adverse employment decision." Skehan v. Vill. of
Mamaroneck, 465 F.3d 96, 106 (2d Cir. 2006), abrogated on other
grounds by Appel v. Spiridon, 531 F.3d 138, 139-40 (2d Cir.
2008).  The City Defendants contend that Plaintiff's request to
amend his complaint should be denied as futile because the
Supreme Court's holding in Garcetti v. Ceballos, 547 U.S. 410,
126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) precludes Plaintiff's
First Amendment claim.

When a citizen enters government service, he or she "by necessity must accept certain limitations on his or her freedom." Garcetti, 547 U.S. at 418.  This includes a limitation on the protections afforded a government employee's speech.  A government employee can invoke First Amendment protections for his speech only when he speaks "as a citizen addressing matters of public concern." Garcetti, 547 U.S. at 417.  As such, in order to invoke First Amendment protections, a government official, such as a police officer, must demonstrate not only that the subject of his speech was a matter of public concern, but also that when he spoke on the subject, he spoke "as a citizen" rather than "as a government employee." Id. at 420-22.

"To constitute speech on a matter of public concern, an employee's expression must 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" Jackler v. Byrne, 658 F.3d 225, 236 (2d Cir. 2011) (citing Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).  "Exposure of official misconduct, especially within the police department, is generally of great consequence to the public." Jackler, 658 F.3d at 236 (citing Branton v. City of Dallas, 272 F.3d 730, 740 (5th Cir. 2001);

10

Garcetti, 547 U.S. at 425 ("governmental . . . misconduct is a
matter of considerable significance").  According to the facts
Plaintiff alleges, Plaintiff's speech concerned an allegedly
unconstitutional arrest and summons quota policy and a
misreporting of crime statistics.  "Where a public employee's
speech concerns a government agency's breach of the public
trust, as it does here, the speech relates to more than a mere
personal grievance and therefore falls outside Garcetti's
restrictions."  Anderson v. State of N.Y. Office of Court
Admin., 614 F. Supp. 2d 404, 428 (S.D.N.Y. 2009).  As such,
Plaintiff's speech concerned a matter of public concern.


        However, in addition to demonstrating the speech to
involve a matter of public concern, Plaintiff must establish
that he was speaking "as a citizen" rather than "as a government
employee."  Garcetti, 547 U.S. at 420-22.  If the employee did
not speak as a citizen, the speech is not protected by the First
Amendment.  Jackler, 658 F.3d at 237 (citing Connick, 461 U.S.
at 146; Garcetti, 547 U.S. at 423 ("When . . . the employee is
simply performing his or her job duties, there is no warrant for
a similar degree of scrutiny.")).  In Weintraub v. Board of
Education, the Second Circuit explained that the inquiry into
whether a public employee spoke pursuant to his official duties

11

is both objective and "a practical one."  593 F.3d 196, 202 (2d
Cir.), cert. denied, 131 S.Ct. 444, 178 L.Ed.2d 344 (2010).
"[U]nder the First Amendment, speech can be 'pursuant to' a
public employee's official job duties even though it is not
required by, or included in, the employee's job description, or
in response to a request by the employer."  Id. at 203.  "Since
Garcetti, some lower courts have developed more guidelines for
determining whether speech is made pursuant to a public
employee's official duties.  Although none of the following
factors are dispositive, they may be considered by the Court:
'the plaintiff's job description;' the persons to whom the
speech was directed; and 'whether the speech resulted from
special knowledge gained through the plaintiff's employment.'"
Frisenda v. Inc. Vill. of Malverne, 775 F. Supp. 2d 486, 506
(E.D.N.Y. 2011) (citing Caraccilo v. Vill. of Seneca Falls, 582
F. Supp. 2d 390, 405 (W.D.N.Y. 2008)).  "Although there is no
simple checklist or formula by which to determine whether the
employee was speaking as a private citizen or as a public
employee . . . 'the cases distinguish between speech that is the
kind of activity engaged in by citizens who do not work for the
government and activities undertaken in the course of performing
one's job.'"  Caraccilo, 582 F. Supp. 2d at 410 (quoting Davis
v. McKinney, 518 F.3d 304, 312-13 (5th Cir. 2008)).

12

Under Garcetti, if the speech at issue is not required by the government employee's job duties, it is protected. See, e.g., Sassi v. Lou-Gould, No. 05 Civ. 10450(CLB), 2007 WL 635579, at *3 (S.D.N.Y. Feb. 27, 2007) ("Unlike the plaintiff i[n] Garcetti, whose job it was to write the communications which he claimed constituted protected speech, Chief Sassi had no such duty to write public letters to the City Council 'as a resident taxpayer.'"). The fact that a plaintiff's speech is related to his or her job does not automatically result in a loss of First Amendment protection. See Jackson v. Jimino, 506 F. Supp. 2d 105, 109 (N.D.N.Y. 2007) ("If we were to adopt Defendants' argument, we would inextricably have [to] find that Garcetti dictates a bright-line rule – an all or nothing determination – on an employee's speech even if it tangentially concerns the official's employment. We find that Garcetti does not stand for that proposition."). Thus, in evaluating whether Plaintiff was speaking as "as a citizen" rather than "as a government employee," the issue is whether the alleged speech is required by Plaintiff's job duties, and the fact that speech is related to the employee's occupation does not necessary preclude First Amendment protection.

13

As described in Plaintiff's proposed amended complaint, the speech at issue in this case concerns Plaintiff's intention to disclose the alleged corrupt summons issuance and arrest policies of the NYPD to the news media and members of the public.  Plaintiff contends that his unjustified arrest and detention constituted a prior restraint on his speech, that Plaintiff's confinement was retaliation against him for gathering and documenting the corrupt summons and arrest policy employed by the NYPD and that Plaintiff's confinement was also done in retaliation for Plaintiff's efforts to exercise his First Amendment rights and inform the public of the police misconduct he witnessed.

Several factors indicate that Plaintiff's speech was pursuant to his position as a police officer.  NYPD Patrol Guide § 207-21 states that "[a]ll members of the service have an absolute duty to report any corruption or other misconduct, or allegation of corruption or other misconduct, of which they become aware."  Additionally, in the case of Matthews v. City of New York, No. 12 Civ. 1354(BSJ), 2012 U.S. Dist. LEXIS 53213 (S.D.N.Y. Apr. 12, 2012), the Honorable Barbara S. Jones addressed an issue similar to that confronting the Court in the present action.  In Matthews, a police officer plaintiff alleged

14

that he was retaliated against for complaining about an illegal

quota system in the 42nd Precinct.   Police Officer Matthews filed

suit under 42 U.S.C. § 1983 alleging violation of his First

Amendment rights, and the City of New York moved to dismiss on

grounds that Police Officer Matthews did not engage in

constitutionally protected speech.   Recognizing that Police

Officer Matthews' speech involved a matter of public concern,

the only question in Matthews concerned whether the plaintiff

spoke as a citizen rather than an employee.   Judge Jones held

that Police Officer Matthews did not speak as a private citizen:

> Here, as in Weintraub, Matthews' complaints to his
> supervisors are consistent with his core duties as a police
> officer, to legally and ethically search, arrest, issue
> summonses, and—in general—police. Here, like the plaintiff
> in Weintraub, Matthews attempts to carve out his speech for
> First Amendment protection by claiming that he was not
> technically "required" to initiate grievance procedures
> and/or expose the problem as part of his employment duties.
> The Court rejects that argument as one that elevates form
> over substance. As Weintraub observed, "[t]he objective
> inquiry into whether a public employee spoke 'pursuant to'
> his or her official duties is a 'practical one' [and] [t]he
> Garcetti Court cautioned courts against construing a
> government employee's official duties too narrowly." 593
> F.3d at 202. By that standard, the Court concludes that
> Matthews' concerns about illegal policing practices are
> "part-and-parcel" of his ability to "properly execute his
> duties." Id. at 203. As he himself describes it, the
> quota system caused "unjustifiable stops, arrests, and
> summonses because police officers felt forced to abandon
> their discretion in order to meet their numbers." [citation
> to complaint omitted]. And, to the extent Matthews defines
> his speech as complaints about precinct mismanagement and
> communication, that speech is not protected under well

15

established Supreme Court precedent.  See Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); see also Frisenda v. Inc. Vill. of Malverne, 775 F. Supp. 2d 486 (E.D.N.Y. 2011) (finding that an employee's memorandum concerning communications problems with officers investigating and responding to emergency situations was not protected speech).

Matthews, 2012 U.S. Dist. LEXIS 53213, at *7-8.

        In addition to the NYPD Patrol Guide and the Matthews decision, the City Defendants also highlight several other cases suggesting Plaintiff's speech to have been pursuant to his official duties and therefore not entitled to First Amendment protection.  The plaintiff in the Second Circuit case of Weintraub v. Board of Education was a teacher who complained about the school administration's failure to discipline students, and the Second Circuit held that the plaintiff's complaints were not protected speech because the plaintiff was speaking as an employee and not a citizen since the complaints were "part-and-parcel of his concerns" about his ability to "properly execute his duties" as a public school teacher. Weintraub, 593 F.3d at 203.  In Frisenda v. Incorporated Village of Malverne, the Eastern District of New York confronted a case involving a police lieutenant claiming to have been retaliated against for engaging in protected speech.  One of the alleged

16

speech acts in Frisenda was the plaintiff's authorship of a
memorandum submitted to the police chief highlighting certain
procedures that the plaintiff considered dangerous.  Frisenda,
775 F. Supp. 2d at 504.  In holding that the plaintiff's speech
was not protected, the Court noted that the speech's subject
matter related to the plaintiff's employment as a police
officer, that the speech was only made internally within the
police department and that the matters the speech concerned
"were things that [plaintiff] came to learn as part of his
duties and responsibilities in the [police department.]"  Id. at
507.  Finally, in Brady v. County of Suffolk, 657 F. Supp. 2d
331 (E.D.N.Y. 2009), the plaintiff was a Suffolk County police
officer who wrote a memorandum allegedly expressing concern for
the public's safety as a result of the county's enforcement
policies.  Id. at 336-37.  The Court held that the memorandum
was not protected speech, noting that more than simply being
"related" to plaintiff's employment, the memorandum touched on
"one of plaintiff's core job functions [which] was to enforce
the [Vehicle Traffic Law] by issuing traffic summonses, and his
statements solely concerned the enforcement of the VTL through
issuances of traffic summonses to off-duty law enforcement
personnel and PBA cardholders."  Id. at 344.  The City
Defendants contend that, just as in Garcetti, Matthews,

17

Weintraub, Frisenda and Brady, Plaintiff's speech in this action
is not protected under the First Amendment.

The City Defendants also challenge Plaintiff's
allegation that "he was specifically preparing to disclose
information to the public at large," Compl. ¶ 255, and that
Plaintiff's arrest and detention constituted "a prior restraint
on plaintiff's speech," Compl. ¶ 256.  According to the City
Defendants, these allegations in the proposed amended complaint
fail to satisfy the plausibility pleading standard promulgated
by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 678,
129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Evaluating whether the speech at issue in this action
was made "pursuant to" Plaintiff's official duties as a
government employee presents a difficult problem.  On the one
hand, Plaintiff engaged in extraordinary efforts: Plaintiff's
complaint alleges that Plaintiff objected to the summons and
arrest policy to his supervisors, reached out to a former NYPD
detective who had assisted Frank Serpico in the 1970s in
uncovering corruption in the NYPD, lodged a complaint with the
Internal Affairs Bureau, reported his findings to the Quality
Assurance Division, prepared a report for Commissioner Kelly

18

documenting the police misconduct and, ultimately, prepared to disclose information to the public.  However, on the other hand, the NYPD Patrol Guide illustrates the reporting of police misconduct to be squarely within Plaintiff's job responsibilities.  Judge Jones' denial of a First Amendment retaliation claim in the recent case of Matthews v. City of New York also concluded that Garcetti and its Second Circuit progeny preclude Plaintiff's First Amendment claim.  Plaintiff's complaint alleges only that Plaintiff "was specifically preparing to disclose information to the public at large," not that Plaintiff actually disclosed any information to the press.  As such, Plaintiff's speech, which was confined to his supervisors, the Internal Affairs Bureau and the Quality Assurance Division, is analogous to the internal speech at issue in Garcetti, Matthews, Weintraub, Frisenda and Brady.[1]

---

[1]  See Garcetti, 547 U.S. at 414-15 (speech involved a deputy district attorney's memorandum to his supervisors expressing his concerns regarding an affidavit and his recommendation that a case be dismissed); Matthews, 2012 U.S. Dist. LEXIS 53213, at *2 (speech involved a police officer speaking out to his commanding officers regarding a quota system); Weintraub, 593 F.3d at 198-99 (speech involved a teacher's complaints to his assistant principal, his comments to fellow teachers and a grievance filed with his union representative concerning the school administration's failure to take action regarding a classroom incident); Frisenda, 775 F. Supp. 2d at 493 (speech involved a police officer's membership and participation in the Police Benevolent Association, his involvement as a witness in a federal lawsuit filed by another officer alleging retaliation and a memo written to the Village Board and Chief of Police

Plaintiff's allegations concerning his intention to go public,
coupled with his duties as stated in the NYPD Patrol Guide and
the fact that government officials' internal complaints have
been previously deemed insufficient to qualify for First
Amendment protection, fail to nudge Plaintiff's claims over the
line created by Garcetti from speech made by a government
employee pursuant to his duties to speech made by a private
citizen.  Accordingly, Plaintiff's request to amend his
complaint to include a First Amendment retaliation claim is
denied.

Plaintiff, citing the Second Circuit's decision in
Jackler v. Byrne, contends that addressing the unconstitutional
police practices was not part of his job duties and, as such,
his comments concerning these practices are entitled to First
Amendment protection.  Plaintiff cites the following language
from the Jackler opinion in support of his contention:

---

regarding what plaintiff believed was a failure by members of
the police department to follow procedure in responding to a
particular emergency situation); Brady, 657 F. Supp. 2d at 333-
34 (speech involved a police officer complaining to his
supervisors about the defendants' alleged practice of not
issuing tickets for traffic violations to off-duty law
enforcement officials and individuals in possession of PBA
membership cards).

> [I]t is clear that the First Amendment protects the rights of a citizen to refuse to retract a report to the police that he believes is true, to refuse to make a statement that he believes is false, and to refuse to engage in unlawful conduct by filing a false report with the police. We conclude that Jackler's refusal to comply with orders to retract his truthful Report and file one that was false has a clear civilian analogue and that Jackler was not simply doing his job in refusing to obey those orders from the department's top administrative officers and the chief of police.

Jackler, 658 F.3d at 241-42. However, Judge Jones' opinion in Matthews squarely addressed this argument, noting: "The Jackler Court was careful in characterizing the speech at issue there, defining it as Jackler's refusal to follow his superiors' instructions to retract his truthful report and to speak falsely, not as the filing of the Report; the latter would have been an act of speech that was simply pursuant to Jackler's duties. The refusal to retract a true statement and issue a false one, however, was only related to his job duties." Matthews, 2012 U.S. Dist. LEXIS 53213, at *11-12 (citing Jackler, 658 F.3d at 241 ("In the context of the demands that Jackler retract his truthful statements and make statements that were false, we conclude that his refusals to accede to those demands constituted speech activity that was significantly different from the mere filing of his initial Report.")). As was the case in Matthews, the speech at issue in this case was

21

made pursuant to Plaintiff's job responsibilities, and the
Second Circuit's opinion in Jackler is inapposite.

          Plaintiff's citations to McAvey v. Orange-Ulter Boces,
No. 07 Civ. 11181, 2009 WL 2744745 (S.D.N.Y. Aug. 28, 2009),
Anderson v. State of New York Office of Court Admin., 614 F.
Supp. 2d 404, 428 (S.D.N.Y. 2009) and Karl v. City of Mountlake
Terrace, No. 11-35343, 2012 WL 1592181 (9th Cir. May 8, 2012)
are also unavailing.  In McAvey, at the motion to dismiss stage
of the litigation, this Court held that "McAvey's official job
duties cannot be said to include 'scrutinize[ing] her
supervisors for fraud—essentially acting as a supervisor for her
supervisors—let alone report[ing] them to external
investigators.'"  McAvey, 2009 WL 2744745, at *5 (quoting
Rosenblatt v. City of New York, No. 05 Civ. 5521(GEL), 2007 WL
2197835, at *6 (S.D.N.Y. July 31, 2007)).  However, at the
summary judgment stage of the litigation, this Court noted that,
while McAvey's FOIL request to the Goshen Police Department for
a police report she filed concerning sexual abuse at her school
constituted citizen speech, McAvey's "internal complaints to her
supervisors and the BOCES Board are more akin to the speech in
Weintraub and Garcetti and are not afforded First Amendment
protection."  McAvey v. Orange-Ulster BOCES, 805 F. Supp. 2d 30,

22

39 n.1 (S.D.N.Y. 2011).  Unlike McAvey's FOIL request to the

Goshen Police Department, which this Court described as "speech

[] wholly distinct from the Plaintiff's job duties," Id. at 39,

Plaintiff's complaints of an unconstitutional summons policy are

consistent with his job duties as those duties are defined in

Section 207-21 of the NYPD Patrol Guide and Judge Jones' opinion

in Matthews.


     Plaintiff's citation to Anderson v. State of New York,

Office of Court Admin. is also unavailing, as the passage

Plaintiff cites addresses whether the speech at issue regards

matters of public concern.  There is no dispute that Plaintiff's

speech in this case concerns a matter of public concern; the

issue is whether Plaintiff was speaking as a private citizen or

in his official capacity as a police officer.  In Anderson, the

Court noted that the plaintiff's job duties did not include

speaking out the improper practices about which the plaintiff

complained.  See Anderson, 614 F. Supp. 2d at 428 ("Speaking out

about improper DDC practices was clearly not one of Anderson's

job duties.").  However, in this case, Plaintiff's job duties

included speaking out about police misconduct.

In support of his motion to amend, Plaintiff also cites the recent Ninth Circuit decision in Karl v. City of Mountlake Terrace, No. 11-35343, 2012 WL 1592181 (9th Cir. May 8, 2012).  The facts of Karl involved a civilian employee of the City of Mountlake Terrace Police Department who brought a § 1983 action against the City and its assistant police chief, alleging First Amendment retaliation.  According to Plaintiff, in Karl, the Ninth Circuit held that the speech of an employee of the Mountlake Terrace Police Department did not "owe its existence" nor was it "commissioned or created" by her employer.  Karl, 2012 WL 1592181, at *6 (citing Garcetti, 547 U.S. at 421-22).  The Karl Court also held that "[t]he scope and content of a plaintiff's job responsibilities is a question of fact."  Id.  Notwithstanding the Ninth Circuit's opinion regarding a civilian employee of a Washington State police department, Judge Jones' recent opinion in Matthews, coupled with the NYPD Patrol Guide § 207-21, establish that an NYPD police officer's act of voicing "concerns about illegal policing practices are part-and-parcel of [the officer's] ability to properly execute his duties."  Matthews, 2012 U.S. Dist. LEXIS 53213, at *7.

For these reasons, Plaintiff's motion to amend is granted in part and denied in part.  Plaintiff is permitted to

24

substitute Lieutenant William Gough for Lieutenant Joseph Goff. However, because Plaintiff cannot establish that he spoke "as a citizen" rather than "as a government employee," Plaintiff's request to amend his complaint to include a First Amendment retaliation claim is denied.

## Councilman Vallone's Motion To Quash Is Denied

Non-party Councilman Peter Vallone, Jr. has requested that the subpoena served upon him by Plaintiff be quashed.  On April 17, 2012, the Corporation Counsel for the City of New York received a courtesy copy of a subpoena subsequently served on Councilman Vallone seeking the following documents:

> Any and all certified records of complaints received by Councilman Peter Vallone from his constituents and/or from any third parties, relating to the following subject matters: (i) Downgrading of Crime Reports by the NYPD; and (ii) Failure to Report Crime Reports by the NYPD;
>
> Any and all certified copies of correspondence between Councilman Peter Vallone and Raymond Kelly and/or the NYPD relating to (i) Downgrading of Crime Reports by the NYPD; (ii) Failure to Report Crime Reports by the NYPD; (iii) the allegations of Adrian Schoolcraft.
>
> Any and all certified copies of complaints from police officers and/or constituents regarding a quota policy by the NYPD regarding the number of arrests and/or summonses which must be issued by officers on a monthly basis.
>
> Any and all certified copies of correspondence between

25

Councilman Vallone and the NYPD regarding allegations of an unlawful quota policy.

Any and all certified copies of correspondence between Councilman Vallone and Mayor Bloomberg regarding allegations of an unlawful quota policy by the NYPD and/or allegations of downgrading crime reports by the NYPD.

According to Councilman Vallone, because the information Plaintiff is seeking is outside the scope of Fed. R. Civ. P. 26, the subpoena should be quashed and the information sought therein denied. "A subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement." Warnke v. CVS Corp., 265 F.R.D. 64, 66 (E.D.N.Y. 2010) (internal quotation marks and citations omitted). Councilman Vallone contends that the documents sought by Plaintiff concern whether there was a downgrading of crime reports, a failure to report crime reports and the existence of an unlawful quota policy. These issues, according to Councilman Vallone, are immaterial to the determination of whether Defendants in the present action entered Plaintiff's apartment unjustifiably on October 31, 2009 and thereafter unlawfully confined him at Jamaica Hospital. In subpoenaing complaints and correspondence relating to crime statistics manipulation and quotas, Councilman Vallone contends that Plaintiff is injecting extraneous issues into this litigation. Councilman Vallone also

26

contends that the subpoena should be quashed because the
Councilman represents Astoria, Queens, which is within the
confines of the 114th Precinct, and Plaintiff's allegations
concern crime manipulation and quotas in the 81st Precinct in the
Bedford Stuyvesant section of Brooklyn.  Finally, Councilman
Vallone objects to Plaintiff's request for "correspondence
between Councilman Peter Vallone and Raymond Kelly and/or the
NYPD relating to [] the allegations of Adrian Schoolcraft" on
grounds that the request as stated is too vague and ambiguous to
allow Councilman Vallone to respond.

     Plaintiff opposes the motion to quash on grounds that
(1) the City Defendants lack standing to quash the subpoena on
behalf of non-party Councilman Vallone, (2) the items sought are
directly relevant to the claims in the present action and (3)
Councilman Vallone has made numerous public statements about
having evidence in his possession which support Plaintiff's
allegations.

     With respect to Plaintiff's first argument concerning
standing, Plaintiff notes that "[i]n the absence of a claim of
privilege, a party usually does not have standing to object to a
subpoena directed to a non party witness."  Cole v. City of New

York, No. 10 Civ. 5308(BSJ)(KNF), 2011 WL 6057950, at *1
(S.D.N.Y. Dec. 5, 2011) (citing Langford v. Chrysler Motors
Corp., 513 F.2d 1121, 1126 (2d Cir. 1975)).  Plaintiff, however,
bases his argument on the notion that the City Defendants are
moving to quash the subpoena.  Although the Corporation Counsel
for the City of New York is representing the City Defendants,
the May 11, 2012 letter requesting that the subpoena be quashed
is written on behalf of non-party Councilman Vallone and not the
City Defendants.  The Cole v. City of New York case is
instructive in this regard.  Although the Magistrate Judge
assigned to the case initially denied a motion to quash on the
basis that the Defendants lacked standing to make a motion on
behalf of non-parties, the District Judge ultimately found "that
the motions to quash were made by the subpoenaed non-parties by
counsel who also represent the defendants" and held that "the
Magistrate Judge erred in denying the Defendants' motion
exclusively on the basis of standing without a consideration of
the merits."  Cole, 2011 WL 6057950, at *1.  Accordingly,
because the motion to quash is made on behalf of Councilman
Vallone and not the City Defendants, Plaintiff's argument that
the City Defendants lack standing to bring the motion to quash
fails.

Plaintiff contends that the items sought in the subpoena are directly relevant to the claims in this action. Under the Federal Rules of Civil Procedure, the scope of discovery extends to "any nonprivileged matter that is relevant to any party's claim or defense . . ." Fed. R. Civ. P. 26. The boundaries of Rule 26 have "been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Plaintiff contends that the complaint expressly refers to the existence of the NYPD's unlawful quota policy and manipulation of crime statistics as the reason why Defendants took the actions the complaint alleges occurred on October 31, 2009. As such, the items sought in the subpoena to Councilman Vallone are directly relevant to the claims in this action. Plaintiff also notes that the City Defendants have served discovery demands related to the same items covered in the subpoena served on Councilman Vallone.

Plaintiff's third argument in opposing the motion to quash is that Councilman Vallone has made numerous public statements about evidence in his possession which support Plaintiff's allegations of an unlawful summons policy.

29

Newspaper articles submitted to the Court include statements by
Councilman Vallone suggesting that the allegations of police
misconduct alleged in the complaint are not limited the 81st
Precinct.  See Al Baker & William K. Rashbaum, New York City to
Examine Reliability of Its Crime Reports, N.Y. Times, Jan. 5,
2011 ("'I believe that the statistics were in fact being
manipulated,' Mr. Vallone said.  'I have spoken to many current
and former police officers who unfortunately refused to go on
the record but who have corroborated that fact.  And I've spoken
to many civilians whose valid complaints were not accepted by
the Police Department.'"); Rocco Parascandola, Kelly Lays Down
the Law to Cops, N.Y. Daily News, Jan. 21, 2012 ("Everything
from, 'You have to go to the precinct to file a report,' to,
'We're not going to take a report because you didn't get a good
look at the guy who robbed you,' Vallone said.  'It's happened
far too often to attribute it to a few confused police
officers.'"); Graham Rayman, NYPD's Reporting Problem: Reactions
To Our 'NYPD Tapes' Confirmation Came Like A Swift Billy Club To
the Skull, Village Voice, Mar. 14, 2012 ("'This report [the
Quality Assurance Division investigation] might be a game
changer,' [Councilman Vallone] says.  'This is even more
evidence that the crime statistics are not accurate.  It happens
far too often for it to be just mistakes.' . . . 'Because of the

30

circumstances, the treatment of Schoolcraft should be looked at
by the commission that Kelly established,' Vallone adds.").
Given these statements, Plaintiff contends that the subpoena
served upon Councilman Vallone pertains to information relevant
in this action.

"A subpoena that 'pursues material with little
apparent or likely relevance to the subject matter,' . . . is
likely to be quashed as unreasonable even where the burden of
compliance would not be onerous," Kirschner v. Klemons, No. 99
Civ. 4828(RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005)
(quoting Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44,
50 (S.D.N.Y. 1996)), particularly where the person or entity on
whom the demand is made is not a party to the action.  See
Copantitla v. Fiskardo Estiatorio, Inc., No. 09 Civ.
1608(RJH)(JCF), 2010 WL 1327921, at *10 (S.D.N.Y. Apr. 5, 2010);
see also Fears v. Wilhelmina Model Agency, Inc., No. 02 Civ.
4911, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004) ("[T]he
Court should be particularly sensitive to weighing the probative
value of the information sought against the burden of production
on the non party.").  Councilman Vallone contends that that the
requested records are only, at best, of doubtful or tangential
relevance, and thus, the subpoena should be quashed since it is

31

beyond the scope of Fed. R. Civ. P. 26.

Notwithstanding Councilman Vallone's contentions,
Plaintiff has established that his document requests are
"relevant to any party's claim or defense," Fed. R. Civ. P. 26,
and that his document requests relate to material that "bears
on, or that reasonably could lead to other matters that could
bear on, any issue that is or may be in the case." Oppenheimer
Fund, 437 U.S. at 351.  Rather than be of "doubtful and
tangential relevance," Plaintiff's document requests relate to
the essential question of the motive of the individuals who are
alleged to have removed Plaintiff from his home on October 31,
2009 and subsequently confined him.  As such, Councilman
Vallone's request that the subpoena be quashed is denied.

With respect to Councilman Vallone's contention that
the discovery requests are irrelevant because Councilman Vallone
represents an area within the confines of the 114th Precinct
rather than the 81st Precinct where Plaintiff was stationed, it
must be noted that the allegations in the complaint are not
limited to the 81st Precinct.  Instead, Plaintiff alleges that
the policy about which he complained affected the entire NYPD,
and Councilman Vallone's statements to the press concerning this

32

policy suggest Councilman Vallone to be in possession of information related to that citywide policy.  Councilman Vallone's contention that Plaintiff's request for "correspondence between Councilman Peter Vallone and Raymond Kelly and/or the NYPD relating to [] the allegations of Adrian Schoolcraft" is too vague and ambiguous is without merit, as Plaintiff's request describe the documents to be produced with sufficient particularity.  The request identifies correspondence, the parties involved and the subject matter.  To the extent any issues arise in the course of discovery, Plaintiff and Councilman Vallone shall resolve them via the meet-and-confer process or, if necessary, contact the Court for guidance.

## Conclusion

        For the reasons set forth above, Plaintiff's motion to amend his complaint is granted in part and denied in part, and non-party Councilman Vallone's motion to quash is denied.

        It is so ordered.

New York, NY
June /3, 2012

_____
ROBERT W. SWEET
U.S.D.J.

33