# COHEN & FITCH LLP

233 BROADWAY, SUITE 1800
NEW YORK, NY 10279
TEL: 212.374.9115
FAX: 212.406.2313

April 25, 2012

**BY FACSIMILE**
*212-805-7925*

Honorable Robert W. Sweet
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Schoolcraft v. City of New York, et al.*
     *10 CV 6005 (RWS)*

Your Honor:

I am co-counsel for plaintiff in the above-referenced matter. I write now to respectfully request that Your Honor grant plaintiff leave to amend the complaint to add a First Amendment retaliation claim under 42 U.S.C. § 1983 based on the discovery that has been produced thus far. Additionally, it is also respectfully requested that plaintiff be permitted to substitute Lieutenant William Gough for Lieutenant Joseph Goff who was incorrectly named in the original complaint. The request to substitute Lt. Gough as a defendant is made with the consent of all parties and the request regarding the First Amendment claim is made with the consent of all parties except the City defendants. No prior requests to amend have been made.

Since the time of filing the first amended complaint in this action, the parties have conducted substantial document discovery. Specifically, the parties have exchanged over three thousand (3,000) documents as well as thousands of hours of audio recordings. Amongst the documents exchanged by the City defendants was the UF 49 (Unusual Occurrence Report) from October 31, 2009, which indicated that a Lt. William Gough was present during plaintiff's home invasion whose name bore a phonetic resemblance to the currently named defendant Lt. Joseph Goff. After verifying this information with the plaintiff, it was confirmed that because of the similarity in names Lt. Joseph Goff had erroneously been named instead of the correct Lt. William Gough. Accordingly, the plaintiff respectfully requests leave to amend the complaint to correct this error and add the appropriate defendant.

Additionally, the City defendants have also produced the documents from the investigation conducted by the Quality Assurance Division (QAD) of the New York City Police Department, which had performed an investigation into the allegations made by plaintiff Adrian Schoolcraft while still an active duty police officer at the 81st Precinct. Specifically, prior to the

events of October 31, 2009, Adrian Schoolcraft had made numerous complaints to supervisory personnel within the department and to outside investigative agencies regarding the enforcement and establishment of an arrest and summons quota. Additionally, he also made specific allegations that commanding officers had manipulated crime statistics and civilian complaints so as to avoid classification as index crimes.[1] These allegations included, but were not limited to, the failure to take reports of civilian complaints, destruction of civilian complaints, downgrading complaints that would have been categorized as index crimes to lesser offenses and discouraging civilians from making or pursuing criminal complaints.

Plaintiff believed, and still does, that this under-reporting was occurring in order to avoid the statistical categorization of these complaints as "major crimes" for purposes of reporting crime statistics to the public – i.e. to make it appear to the public at large that a certain manner of policing was affectively reducing crime when in fact the numbers being provided to the public were being falsified. Further, these allegations that plaintiff had made were eventually substantiated by the QAD investigative findings, which found that civilian complaints were in fact being falsified by the NYPD. As such, following the disclosure of the QAD findings, the merit and validity of plaintiff's First Amendment retaliation claim became clear – namely, that the events of October 31, 2009 and the subsequent campaign of harassment was done directly in retaliation against plaintiff because he had exercised his First Amendment right to speak out regarding this breach of the public trust and fraud on the public at large. Accordingly, plaintiff now makes the instant request to add a First Amendment Claim to the complaint.

## *The Plaintiff Has Clear Grounds to Assert a First Amendment Retaliation Claim Based on the QAD Findings*

Under the law of this Circuit, a First Amendment retaliation claim is widely recognized when an individual suffers a constitutional injury in retaliation for exercising his rights under the First Amendment. See Skehan v. Village of Mamaroneck, 465 F.3d 96, 107 (2d Cir. 2006)("'[T]he First Amendment nonetheless prohibits it [generally, subject to certain defenses,] from punishing its employees in retaliation for the content of their speech on matters of public importance.'"). In order to establish a First Amendment retaliation claim the plaintiff must show he engaged in protected speech and that the adverse employment action that resulted was motivated by its utterance. See id. ("In order to establish a First Amendment retaliation claim, plaintiffs must prove that: (1) they engaged in constitutionally protected speech because they spoke as citizens on a matter of public concern; (2) they suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision."). Further, "adverse employment action" is not strictly construed under the First Amendment and only requires that the action taken be sufficient to discourage potential speakers from exercising similar rights in the future. See Nixon v. Blumenthal, 409 Fed.Appx. 391, *1 (2d Cir. 2010)("In the First Amendment context, plaintiffs need not demonstrate a material change in employment terms or conditions…rather, plaintiffs need only show that the retaliatory conduct in question 'would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'"). Additionally, in order for a public employee – namely, a police officer – to establish entitlement to First Amendment protection, he or she must show that they engaged

---

[1] Index crimes consist of the seven major crime classifications: Murder, Rape, Robbery, Burglary, Felony Assault, Grand Larceny and Grand Larceny Auto.

in speech as a "citizen" regarding matters of public concern. See Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008)("Whether public employee speech is protected from retaliation under the First Amendment entails two inquiries: (1) "'whether the employee spoke as a citizen on a matter of public concern" and, if so, (2) "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.'").

In the present case, plaintiff can clearly satisfy every element of this claim. Plaintiff Adrian Schoolcraft spent years documenting corruption within the New York City Police Department. Specifically, he recorded superior officers instructing subordinates to make arrests and issue summonses pursuant to an internally established quota and in many instances either explicitly or implicitly instructing officers to disregard probable or reasonable cause in order to meet these requirements. Additionally, and perhaps even more importantly, plaintiff documented repeated instances of widespread fraud regarding civilian complaints within 81st Precinct – namely, officers' failure to take civilian complaint reports, their discouragement of civilians who desired to make reports and their misclassification of crimes contained in the reports. Further, in an attempt to expose this corruption clearly involving matters of public concern, plaintiff spoke to supervisors, made formal reports that he attempted to transmit to Police Department hierarchy and made written complaints to investigative units such as the Internal Affairs Department and Quality Assurance Division of the NYPD. As a result of this speech, NYPD officials modified the conditions of his employment and eventually entered his home and had him involuntarily committed to a psychiatric ward at Jamaica Hospital for six (6) days. Thereafter, defendants continued to retaliate against him for his speech regarding the departmental corruption by traveling hundreds of miles to his home in upstate New York in a continuing campaign of retaliation and intimidation. Accordingly, plaintiff can unquestionably establish the requisite elements for pleading and proving a First Amendment retaliation claim in this case.

### *Garcetti is Entirely Inapplicable to the Speech Alleged in This Matter*

In response to plaintiff's request for consent to amend the complaint in order to add this claim, the City defendants have predictably relied on Garcetti v. Ceballos, 547 U.S. 410 (2006) in opposing plaintiff's proposed amendment on the grounds of futility. This position, however, ignores the underlying basis of that holding – namely, that First Amendment protection is *only* lost when the speech is *required* as a function of the employee's job. See id. at 421 ("We hold that when public employees make statements *pursuant to their official duties*, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.")(emphasis added). Conversely, if the speech is not *required* by the employee's job duties, it is protected, and this limitation of Garcetti has been widely recognized in this Circuit. See Sassi v. Lou-Gould, 2007 WL 635579, *3 (S.D.N.Y. 2007)(Unlike the plaintiff is Garcetti, whose *job* it was to write the communications which he claimed constituted protected speech, Chief Sassi had no such duty to write public letters to the City Council "as a resident taxpayer." Chief Sassi's letters, which harshly criticized the City Council for its funding of the police department, were very similar to the letter in *Pickering.*)(emphasis added). In fact Your Honor has even recognized this distinction in cases involving facts similar to the instant case. See McAvey v. Orange-Ulster Boces, 2009 WL

2744745, *5 (S.D.N.Y. 2009)(RSW)("McAvey's official job duties cannot be said to include 'scrutinize[ing] her *supervisors* for fraud-essentially acting as a supervisor of her supervisors-let alone report[ing] them to external investigators.'"). Further, the mere fact that the speech is *related* to an individual's job does not lift the umbrella of First Amendment protection. See Jackson v. Jimino, 506 F.Supp.2d 105, 109 (N.D.N.Y. 2007)("'If we were to adopt Defendants' argument, we would inextricably have find that Garcetti dictates a bright-line rule-an all or nothing determination-on an employee's speech even if it *tangentially* concerns the official's employment. We find that Garcetti does not stand for that proposition.'")(emphasis added).

In the present matter, plaintiff's speech undoubtedly involved matters of public concern – namely, the falsification of civilian complaints and the widespread institution of an arrest and summons quota, which implicitly and explicitly instructed officers to disregard probable cause. See Skehan 465 F.3d at 106 ("[D]efendants do not seriously contest that plaintiffs have satisfied the first two elements of their First Amendment case, *nor could they*. Plaintiffs' speech plainly concerned issues of public concern: misfeasance within the police department and allegations of an ongoing cover-up and an attempt to silence those who spoke out against it.")(emphasis added). As previously stated, plaintiff's speech concerned a system that required and/or influenced officers to disregard the law and violate individuals rights in order to meet departmental quota requirements. Moreover, plaintiff was speaking out regarding the widespread manipulation, tampering and falsification of civilian complaints being made by the public at large. Additionally, it cannot be argued with any level of credibility that addressing these matters was part of his job duties, and as such, he is entitled him to First Amendment protection. See Jackler v. Byrne, 658 F.3d 225, 241- 42 (2d Cir. 2011):

> [I]t is clear that the First Amendment protects the rights of a citizen to refuse to retract a report to the police that he believes is true, to refuse to make a statement that he believes is false, and to refuse to engage in unlawful conduct by *filing a false report* with the police. We conclude that Jackler's refusal to comply with orders to retract his truthful Report and file one that was false has a *clear civilian analogue* and that Jackler was not simply doing his job in refusing to obey those orders from the department's top administrative officers and the chief of police.

Id. (emphasis added). Finally, the nature of plaintiff's speech not only was addressing matters of public concern, but acts that literally constituted a *fraud on the public* – namely, that citizens were being led to believe their complaints were actually being taken and being reported accurately. Under these circumstances, it is clear that plaintiff's allegations are abundantly sufficient to sustain a First Amendment retaliation claim. See Anderson v. State of New York, Office of Court Admin. of Unified, 614 F.Supp.2d 404, 428 (S.D.N.Y. 2009):

> This case is patently distinguishable from Garcetti. Whereas the prosecutor in Garcetti spoke out about a *single* case pending in his office, Anderson spoke out about *systemic* problems at the DDC, thereby making her speech protected. Where a public employee's speech concerns a government agency's *breach of the public trust*, as it does here, the speech relates to more than a mere personal grievance and therefore falls outside Garcetti's restrictions.

(Id.)(emphasis).

Accordingly, since leave to amend pleadings is freely granted, and defendants cannot possibly sustain their burden of proving the futility of adding this claim, plaintiff respectfully requests that Your Honor issue an Order permitting plaintiff to amend the Complaint accordingly.

Thank you for your consideration of this request.

Very truly yours,

/s/
Joshua P. Fitch
jfitch@cohenfitch.com

Cc:   VIA FAX

   Suxanna Publicker, Esq.
   Assistant Corporation Counsel
   The City of New York Law Department
   100 Church Street
   New York, New York 10007

   Gregory John Radomisli
   Martin Clearwater & Bell LLP
   220 East 42nd Street, 13th Floor
   New York, NY 10017

   Brian Lee
   Ivone, Devine & Jensen LLP
   2001 Marcus Avenue, Suite N100
   Lake Success, NY 11042

   Bruce M. Brady
   Callan, Koster, Brady & Brennen LLP
   1 Whitehall Street
   New York, NY 10004

# COHEN & FITCH LLP
233 BROADWAY, SUITE 1800
NEW YORK, NY 10279
TEL: 212.374.9115
FAX: 212.406.2313

## FAX FORM

**DATE:** April 25, 2012

**TO:** Honorable Robert W. Sweet, United States District Judge

**FIRM OR COMPANY:** Southern District of New York

**Cc:** Suzanna Publicker, Esq. (212-788-9776)
Assistant Corporation Counsel

Gregory John Radomisli (212-949-7054)
Martin Clearwater & Bell LLP
220 East 42nd Street, 13th Floor
New York, NY 10017

Brian Lee (516-352-4952)
Ivone, Devine & Jensen LLP
2001 Marcus Avenue, Suite N100
Lake Success, NY 11042

Bruce M. Brady (212-248-6815)
Callan, Koster, Brady & Brennen LLP
1 Whitehall Street
New York, NY 10004

**FROM:** Cohen & Fitch LLP

**PAGES** *(including this page):* __6__
If you did not receive all of the pages, please contact the sender as soon as possible.

**MESSAGE:** *Schoolcraft v. City of New York, et al*
*10 CV 6005 (RWS)*

NOTE TO FAX OPERATOR: The information contained in this Facsimile message is legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this facsimile is strictly prohibited. If you receive this Facsimile in error, please immediately notify us by telephone and return the original message to us at the address above via the United States Postal service. Thank you.