# COHEN & FITCH LLP
233 BROADWAY, SUITE 1800
NEW YORK, NY 10279
TEL: 212.374.9115
FAX: 212.406.2313



May 10, 2012

**BY FACSIMILE**
*212-805-7925*

Honorable Robert W. Sweet
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Schoolcraft v. City of New York, et al.*
*10 CV 6005 (RWS)*

Your Honor:

    I am co-counsel for plaintiff in the above-referenced matter. I write now to bring the court's attention to recent supplemental authority relevant to plaintiff's motion to amend the complaint in order to add a First Amendment Retaliation Claim.[1] Specifically, plaintiff would urge this court consider the holding in Karl v. City of Mountlake Terrace, 2012 U.S. App. LEXIS 9311 (9th Cir. March 5, 2012) regarding the legal standard by which to determine whether an employees speech was made pursuant to his official job duties.

    In Karl, the Ninth Circuit held that the speech of an employee of the Mountlake Terrace Police Department did not "'owe its existence'" nor was it "'commissioned or created'" by her employer. See Karl, 2012 U.S. App. LEXIS 9311 at *19 (citing Garcetti v. Ceballos, 547 U.S. 410 (2006). More importantly for the motion in the instant matter is the fact that the Karl court also held in accordance with Garcetti that "[t]he scope and content of a plaintiff's job responsibilities is a question of fact." Id.; see also Garcetti, 547 U.S. at 424 ("Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.").

---

[1] Additionally, plaintiff's were unable to issue any reply to defendants opposition because it was submitted the day before the oral argument on this issue and thus itself not in conformity with Local Rule 6.1(b) nor did it give plaintiff the appropriate time to issue a reply under same.

This is of particular importance to the issues at play in the present case – namely, whether plaintiff's speech was a function of his job duties or was he speaking as a citizen. Given the holding in Karl, which is supported by the holding in Garcetti and Judge Scheindlin's opinion in Anderson,[2] defendants blanket assertions that plaintiff's job required him to speak regarding matters of corruption and malfeasance within the department are insufficient to meet their burden of proving the futility of these claims since plaintiff's job responsibilities are a factual issue in dispute at this stage. Similarly, defendants' reference to the Patrol Guide is of little import in view of the fact that what an NYPD officer is required to do in reality often has little or nothing to do with the Patrol Guide and until this issue is developed in discovery, defendant's claims of futility cannot succeed.

A copy of the Karl decision is attached. Thank you for your consideration of this request.

Very truly yours,

/s/
Joshua P. Fitch
jfitch@cohenfitch.com

Cc:  VIA FAX

Suxanna Publicker, Esq.
Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, New York 10007

Gregory John Radomisli
Martin Clearwater & Bell LLP
220 East 42nd Street, 13th Floor
New York, NY 10017

Brian Lee
Ivone, Devine & Jensen LLP
2001 Marcus Avenue, Suite N100
Lake Success, NY 11042

---

[2] See Anderson v. State of New York, Office of Court Admin. of Unified, 614 F.Supp.2d 404, 428 (S.D.N.Y. 2009)("Where a public employee's speech concerns a government agency's breach of the public trust, as it does here, the speech relates to more than a mere personal grievance and therefore falls outside Garcetti's restrictions.").

Bruce M. Brady
Callan, Koster, Brady & Brennen LLP
1 Whitehall Street
New York, NY 10004



7 of 236 DOCUMENTS

MARTHA KARL, Plaintiff-Appellee, v. CITY OF MOUNTLAKE TERRACE, Defendant, and CHARLES CAW, also known as Pete, Defendant-Appellant.

No. 11-35343

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

2012 U.S. App. LEXIS 9311

March 5, 2012, Argued and Submitted, Seattle, Washington
May 8, 2012, Filed

**PRIOR HISTORY:** [*1]
Appeal from the United States District Court for the Western District of Washington. D.C. No. 2:09-cv-01806-RSL. Robert S. Lasnik, District Judge, Presiding.
*Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 41282 (W.D. Wash., Apr. 15, 2011)

**COUNSEL:** Joseph R. Shaeffer (argued), Andrea Brenneke, MacDonald Hoague & Bayless, Seattle, Washington, for the plaintiff-appellee Martha Karl.

Brenda L. Bannon (argued), Mark R. Bucklin, Keating Bucklin & McCormack Inc. P.S., Seattle, Washington, for the defendant City of Mountlake Terrace & the defendant-appellant Charles Caw.

**JUDGES:** Before: Ferdinand F. Fernandez and Richard A. Paez, Circuit Judges, and Lucy H. Koh, District Judge.* Opinion by Judge Koh.

* The Honorable Lucy H. Koh, District Judge for the U.S. District Court for the Northern District of California, sitting by designation.

**OPINION BY:** Lucy H. Koh

**OPINION**

KOH, District Judge:

Defendant Charles "Pete" Caw ("Caw"), Assistant Chief of Police in the City of Mountlake Terrace Police Department, appeals from the denial of qualified immunity in Plaintiff Martha Karl's ("Karl") *42 U.S.C. § 1983* action alleging *First Amendment* retaliation. The district court held it was clearly established in December 2008 that a supervisor cannot retaliate against a public employee for his or her subpoenaed deposition testimony [*2] offered as a citizen in the context of a civil rights lawsuit. We affirm.

**I. Background**

Karl began working for the City of Mountlake Terrace Police Department ("Police Department") in April 2003 as the Confidential Administrative Assistant to the Chief of Police, who at that time was Scott Smith ("Smith"). Her job duties were primarily clerical and included processing time cards, attending and taking minutes at meetings, organizing trainings, answering the phone, and photocopying.

In 2008, Karl was subpoenaed to give deposition testimony in a federal civil rights suit filed by former Police Department employee Sgt. Jonathan Wender ("Wender") against the City of Mountlake Terrace (the "City"), Smith, and others. Wender's lawsuit was brought under *42 U.S.C. § 1983* for purported violations of his *Fourteenth Amendment* right to due process and his *First Amendment* right to free speech. Specifically, Wender alleged that he had been discharged without due process and in retaliation for his outspoken criticism of the "war on drugs."

Karl was deposed by Wender's counsel in May 2008 and again in July 2008. Among other things, Karl testified that Wender was outspoken about his views on the need for [*3] drug policy reform; that Smith and Caw disapproved of his comments to the press and his involvement in the organization "Law Enforcement Against Prohibition;" and that Caw urged Smith to terminate Wender because other local police agencies were watching to see whether Smith would take a strong stance on drug law enforcement. Karl further testified that Wender had a reputation for honesty, while Smith

had a reputation for being dishonest, and Caw had a reputation as a "smooth talker" and a "back stabber." After Karl's deposition, Caw was overheard commenting that Karl's testimony "really hurt" the City, that she could not be trusted anymore, and that the Police Department would have to find a way to "get rid of her."

In September 2008, Smith was replaced by Greg Wilson ("Wilson") as Chief of Police. Caw told Wilson he had some concerns about Karl's work performance as an administrative assistant. Shortly thereafter, Karl was involuntarily transferred to a part-time "records specialist" position within the Police Department, where she was subject to a six-month probationary period and was placed under Caw's direct supervision. Karl's new position involved computer data entry of reports, [*4] citations, and warrant information, though she had no prior similar data entry experience. According to one veteran records specialist, a new records specialist with no prior relevant experience typically requires six to nine months of full-time work to become proficient at the job. Nevertheless, just nine weeks after Karl's transfer, Caw warned Karl that failure to meet certain previously undisclosed performance targets within three weeks would likely result in her termination.

One week later, Wilson sent Karl home on administrative leave following a verbal altercation between Karl and another new records specialist. Wilson disciplined only Karl for this incident. Wilson stated that his decision was based, in part, on information Caw had relayed to Wilson about Karl's criticism of the records specialist training program. After Karl was placed on leave, Wilson reviewed her training records, spoke with Caw, and recommended to City Manager John Caulfield ("Caulfield") -- the only person with authority to hire and fire employees -- that Caulfield terminate Karl's employment. On Wilson's recommendation, Caulfield terminated Karl's employment with the Police Department in January 2009.

Karl [*5] filed this action in December 2009 under *42 U.S.C. § 1983*, alleging retaliation in violation of her *First Amendment* rights.¹ The district court issued an order on January 11, 2011, granting in part and denying in part Caw's motion for partial summary judgment. With respect to Karl's *First Amendment* retaliation claim, the court determined that: Karl's deposition testimony in the Wender lawsuit constituted speech on a matter of public concern, and Karl's deposition testimony was given in her capacity as a private citizen, not as a public employee. On April 15, 2011, the district court issued another order granting in part and denying in part Caw's second motion for partial summary judgment. The court concluded that there was a triable issue of fact as to whether Caw harbored retaliatory animus based on Karl's testimony in the Wender lawsuit, and whether Caw set in motion a series of actions that caused Karl's termination.

Finally, the court held that Karl's constitutional right to be free from retaliation because of her testimony was clearly established in 2008. Caw thereafter filed this interlocutory appeal solely challenging the denial of his claim to qualified immunity.

1    The other [*6] defendants named in Karl's complaint have either been dismissed from the case or have not appealed. Likewise, no other claims alleged in Karl's complaint are before the court.

**II. Jurisdiction and Standard of Review**

Although a denial of summary judgment is ordinarily not a final appealable order, we have jurisdiction under *28 U.S.C. § 1291* to review a district court's denial of a claim of qualified immunity to the extent the denial turns on an issue of law. *Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)*. Under the collateral order doctrine, "[o]ur interlocutory jurisdiction . . . is limited exclusively to questions of law, which we review de novo." *Eng v. Cooley, 552 F.3d 1062, 1067 (9th Cir. 2009)* (citing *Lee v. Gregory, 363 F.3d 931, 932 (9th Cir. 2004))*. "A district court's determination that the parties' evidence presents genuine issues of material fact is categorically unreviewable on interlocutory appeal." *Id.* (citing *Lee, 363 F.3d at 932*). Where there are disputed issues of material fact, our review is limited to whether the defendant would be entitled to qualified immunity as a matter of law, assuming all factual disputes are resolved, and all reasonable inferences are drawn, [*7] in plaintiff's favor. *Mattos v. Agarano, 661 F.3d 433, 439 (9th Cir. 2011)* (en banc).

**III. Discussion**

The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)* (quoting *Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982))*. A public official is entitled to qualified immunity unless (1) "the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right;" and (2) the right at issue "was clearly established 'in light of the specific context of the case' at the time of the alleged misconduct." *Clairmont v. Sound Mental Health, 632 F.3d 1091, 1100 (9th Cir. 2011)* (quoting *Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001))*. We exercise our discretion to consider prong one of the qualified immunity analysis first. *See Pearson, 555 U.S. at 236* (noting that the sequential *Saucier* inquiry, while

no longer mandatory, "is often beneficial" in part because "it promotes the development of constitutional [*8] precedent").

A. Constitutional Violation

The *First Amendment* shields public employees from employment retaliation for their protected speech activities. *See Garcetti v. Ceballos, 547 U.S. 410, 417, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006); Connick v. Myers, 461 U.S. 138, 140, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983).* Out of recognition for "the State's interests as an employer in regulating the speech of its employees," *Connick, 461 U.S. at 140,* however, we must "arrive at a balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees," *Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968).* We strike this balance when evaluating a *First Amendment* retaliation claim by asking "a sequential five-step series of questions." *Eng, 552 F.3d at 1070.* First, we consider whether the plaintiff has engaged in protected speech activities, which requires the plaintiff to show that the plaintiff: (1) spoke on a matter of public concern; and (2) spoke as a private citizen and not within the scope of her official duties as a public employee. If the plaintiff makes these two showings, we ask [*9] whether the plaintiff has further shown that she (3) suffered an adverse employment action, for which the plaintiff's protected speech was a substantial or motivating factor. If the plaintiff meets her burden on these first three steps, thereby stating a prima facie claim of *First Amendment* retaliation, then the burden shifts to the government to escape liability by establishing either that: (4) the state's legitimate administrative interests outweigh the employee's *First Amendment* rights; or (5) the state would have taken the adverse employment action even absent the protected speech. *See Robinson v. York, 566 F.3d 817, 822 (9th Cir. 2009); Eng, 552 F.3d at 1070; see also Lakeside-Scott v. Multnomah Cnty., 556 F.3d 797, 803 (9th Cir. 2009).*

Here, the parties' dispute concerns only the first, second, and fifth steps of the analysis.

1. Public Concern

Whether an employee's speech addresses a matter of public concern is a pure question of law that must be determined "by the content, form, and context of a given statement, as revealed by the whole record." *Connick, 461 U.S. at 147-48 & n.7.* Of these three factors, the content of the speech is generally the most important. *Clairmont, 632 F.3d at 1103.* [*10] "[S]peech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" *Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003)* (quoting *McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir. 1983)).* By contrast, "[s]peech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Johnson v. Multnomah Cnty., 48 F.3d 420, 422 (9th Cir. 1995)* (quoting *Connick, 461 U.S. at 146).*

Applying these principles to a public employee's speech in the context of a judicial or administrative proceeding, we have identified two categories of speech that satisfy the public concern doctrine.[2] First, an employee's testimony may be a matter of public concern if its specific content exposes government wrongdoing or helps the public evaluate the performance of public agencies, irrespective of the nature of the judicial or administrative proceeding in which the testimony is offered. *Alpha Energy Savers, 381 F.3d at 927; cf. Thomas v. City of Beaverton, 379 F.3d 802, 809 (9th Cir. 2004)* [*11] (holding that a public employee's expressive conduct in support of a co-worker in her personnel dispute was a matter of public concern because it helped expose potential government misconduct). Alternatively, an employee's testimony may be a matter of public concern "if it contributes in some way to the resolution of a judicial or administrative proceeding in which discrimination or other significant government misconduct is at issue — even if the speech itself would not otherwise meet the *Connick* test were we to consider it in isolation." *Alpha Energy Savers, 381 F.3d at 927; see Robinson, 566 F.3d at 823* (holding that a police sergeant's testimony in a class action discrimination lawsuit addressed a matter of public concern, regardless of the specific content of the testimony or its impact on the outcome of the suit). Just as speech whose content exposes potential government misconduct is speech on a matter of public concern, so too is speech made in the context of litigation brought to expose such wrongful conduct. *See Alpha Energy Savers, 381 F.3d at 926-27.* "So long as either the public employee's testimony or the underlying lawsuit meets the public concern test, the employee [*12] may, in accord with *Connick*, be afforded constitutional protection against any retaliation that results." *Id. at 927.*

> 2   We have previously declined to decide whether a public employee's testimony is per se a matter of public concern regardless of its content or the type of proceeding in which it is offered. *See Clairmont, 632 F.3d at 1103; Alpha Energy Savers, Inc. v. Hansen, 381 F.3d 917, 926 n.6 (9th Cir. 2004).* We again decline to decide this question because in this case, as in our previous ones, the content, form, and context of Karl's testimony establish that her speech related to a

matter of public concern.

This is not a "close case." *Johnson, 48 F.3d at 425*. Karl's testimony rises to the level of a public concern because it was offered in the course of a § 1983 lawsuit alleging violation of constitutional rights. Wender's allegations that the City and Chief of Police violated his *First* and *Fourteenth Amendment* rights clearly implicated the exposure of "significant government misconduct," *Alpha Energy Savers, 381 F.3d at 927*, and the allegations involved more than "a simple reference to government functioning," *Desrochers v. City of San Bernardino, 572 F.3d 703, 711 (9th Cir. 2009)*. [*13] Caw's attempt to characterize Wender's lawsuit as merely a "private grievance" about a personnel matter is therefore without merit. *Compare Brownfield v. City of Yakima, 612 F.3d 1140, 1147-48 (9th Cir. 2010)* (police officer's interoffice memo criticizing his colleague's competence and complaining of favoritism in work assignments was "the stuff of internal power struggles within the workplace" and "decidedly personal") (internal quotation marks and citation omitted); *Desrochers, 572 F.3d at 711* (police sergeants' formal grievance criticizing their supervisor's management style, read in context, addressed only private grievances). Furthermore, because Karl's deposition testimony was offered in the context of a judicial proceeding addressing a matter of public concern, it is immaterial to our public concern analysis whether the specific content of Karl's testimony independently exposed potential government wrongdoing or even "whether it had an impact on the result" of Wender's litigation. *Robinson, 566 F.3d at 823*.

Finally, we see no material distinction between subpoenaed deposition testimony and testimony in open court, where both are offered in the context of a judicial or administrative [*14] proceeding alleging government misconduct. Caw argues that testimony given during a deposition, which is often conducted in the private confines of a law firm, differs from testimony elicited in court, which is open to the public. We have recognized that the public has a lesser *First Amendment* interest in accessing pretrial discovery materials. *See Kamakana v. City & County of Honolulu, 447 F.3d 1172, 1179-80 (9th Cir. 2006)* (holding parties to a lower standard when they seek to file under seal documents attached to non-dispositive rather than dispositive motions); *see also Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984)* (holding that a protective order prohibiting the disclosure of pretrial discovery does not offend the *First Amendment*). We see no basis, however, for affording a lower level of *First Amendment* protection to a subpoenaed deponent than to a witness at trial. Both offer sworn testimony. Both have the potential to "bring[ ] to light potential or actual discrimination, corruption, or other wrongful conduct by government agencies or officials.'" *Clairmont, 632 F.3d at 1104* (quoting *Alpha Energy Savers, 381 F.3d at 925*).

Both "contribute in some way to the resolution [*15] of a proceeding in which a matter of public concern is at issue." *Id.* (quoting *Robinson, 566 F.3d at 823*). Furthermore, while the public may not have immediate access to private deposition testimony, such testimony may later become a matter of public judicial record, for example if attached to a summary judgment motion. *See Kamakana, 447 F.3d at 1179-80*. At that point, the deposition testimony would reach as broad an audience as would the courtroom testimony. *Cf. Desrochers, 572 F.3d at 714* (explaining that, while not dispositive, one factor to be weighed is whether the speech is made publicly or to a limited audience). A rule protecting an employee from retaliation for her deposition testimony only after the testimony had been made part of the public record would be both unworkable and unjustified.[3]

3 In a recent decision extending absolute immunity under *42 U.S.C. § 1983* to grand jury witnesses, the Supreme Court "[saw] no sound reason to draw a distinction for this purpose between grand jury and trial witnesses," notwithstanding the secrecy of grand jury proceedings. *Rehberg v. Paulk, 132 S. Ct. 1497, 1500, 182 L. Ed. 2d 593 (2012)*. Trial witnesses have long been afforded absolute immunity from civil [*16] suit based on their testimony because without such immunity, "the truth-seeking process at trial would be impaired." *Id. at 1505*. The Court reasoned in *Rehberg* that "[t]he factors that justify absolute immunity for trial witnesses apply with equal force to grand jury witnesses." *Id.* Although here we deal with a different form of speech protection, we similarly hold that the factors justifying *First Amendment* protection against retaliation for trial witnesses apply with equal force to subpoenaed deposition witnesses.

In sum, we conclude that the content, form, and context of Karl's testimony support the district court's conclusion that her speech was on a matter of public concern.

**2. Speaker Status**

Next, we consider whether Karl's deposition testimony was given in her capacity as a private citizen or pursuant to her official job duties, which is a mixed question of law and fact. *Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1129 (9th Cir. 2008)*. The scope and content of a plaintiff's job responsibilities is a question of fact over which we lack jurisdiction, while "the ultimate constitutional significance of the [undisputed] facts" is a question of law. *Id.; see Eng, 552 F.3d at 1071*. [*17] Here, Karl testified that her duties did not include reporting police misconduct, nor did they include reporting or testifying about the City's internal investigation processes. We lack jurisdiction to review

Case 1:10-cv-06005-RWS Document 87 Filed 07/12/12 Page 8 of 11

the district court's finding of a genuine issue of material fact regarding the scope of Karl's duties. Instead, we assume resolution of this dispute in Karl's favor, and confine our review only to the district court's conclusion, as a matter of law, that Karl was speaking as a private citizen during her deposition in the Wender litigation, and not as a government employee.[4] *See Robinson, 566 F.3d at 824.*

> [4] We note that, unlike the plaintiff in *Huppert v. City of Pittsburg,* 574 F.3d 696 (9th Cir. 2009), Karl is not a police officer whose duty under state law is to testify truthfully as part of her professional responsibilities. See 574 F.3d at 707-08 (holding that, under California law, "[t]estifying before a grand jury charged with investigating corruption is one part of an officer's job," and therefore "any speech Huppert gave during his grand jury testimony was pursuant to his duties as a police officer") (internal quotation marks and brackets omitted).

A public employee's speech [*18] is not protected by the *First Amendment* when it is made pursuant to the employee's official job responsibilities. *Garcetti,* 547 U.S. at 426. The Supreme Court has explained that "work product" which "owes its existence to a public employee's professional responsibilities" is not protected by the *First Amendment* because an employer may "exercise . . . control over what the employer itself has commissioned or created." *Id. at 421-22; see Eng,* 552 F.3d at 1075. "[I]f the public employee was paid for the speech -- e.g., drafting a memorandum, creating a report, advising a supervisor -- then that compensation might be indicative of the nature of the speech." *Huppert,* 574 F.3d at 704. Conversely, a public employee's speech on a matter of public concern is protected "if the speaker 'had no official duty' to make the questioned statements, . . . or if the speech was not the product of 'perform[ing] the tasks [the employee] was paid to perform.'" *Posey,* 546 F.3d at 1127 n.2 (some internal quotation marks omitted; alterations added in *Posey*) (quoting, respectively, *Marable v. Nitchman,* 511 F.3d 924, 932-33 (9th Cir. 2007), and *Freitag v. Ayers,* 468 F.3d 528, 544 (9th Cir. 2006)).

Caw suggests two [*19] reasons why he thinks Karl's testimony "owes its existence" to her job: (1) her relevant knowledge was acquired by virtue of her position as the Confidential Administrative Assistant to the Chief of Police, and (2) she was paid her regular salary during her deposition. Both of these arguments miss the mark. While Karl's knowledge about certain work-related matters may owe its existence to her job as a confidential assistant, her testimony in the Wender litigation does not. That Karl was subpoenaed to testify on matters related to her employment is not dispositive. The Supreme Court has reiterated that "[t]he *First Amendment* protects some expressions related to the speaker's job." *Garcetti,* 547 U.S. at 421; *see also Clairmont,* 632 F.3d at 1105. Furthermore, though her employer may have paid her regular salary while she was being deposed, Karl's testimony in the Wender litigation was the product of a subpoena and cannot fairly be characterized as "commissioned or created" by the City. *Garcetti,* 547 U.S. at 422. The district court did not err in determining that Karl spoke as a private citizen in the Wender litigation and not pursuant to her official job duties. *See Clairmont,* 632 F.3d at 1105 [*20] (holding, on similar facts, that the evidence supported a finding that the plaintiff's subpoenaed testimony was spoken as a private citizen).

### 3. But-For Causation

If the plaintiff satisfies her burden at the third step of establishing that her protected speech was a substantial or motivating factor behind the adverse employment action, the government's burden at the fifth step is to show that: (1) "the 'adverse employment action was based on protected *and* unprotected activities;'" and (2) "the state 'would have taken the adverse action if the proper reason alone had existed.'" *Eng,* 552 F.3d at 1072 (quoting *Knickerbocker v. City of Stockton,* 81 F.3d 907, 911 (9th Cir. 1996)) (emphasis added in Eng). Known as the "*Mt. Healthy*[5] but-for causation inquiry," the fifth step of our analysis is purely a question of fact and requires us to assume, on summary judgment, the truth of the plaintiff's version of disputed issues. *Id.* "Immunity should be granted on this ground only if the state successfully alleges, without dispute by the plaintiff, that it would have made the same employment decisions even absent the questioned speech." *Id.*

> [5] *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977).

Caw [*21] argues that, even if a jury were to agree with Karl that Caw was motivated in part by retaliatory animus, he is entitled to qualified immunity because, as a subordinate supervisor, he merely forwarded objective evaluations of Karl's job performance, and these negative reviews provided the nonretaliatory basis for Karl's discipline and termination. A subordinate officer who is not the final decision maker can still be liable under § 1983 if he "'set[s] in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" *Gilbrook v. City of Westminster,* 177 F.3d 839, 854 (9th Cir. 1999) (quoting *Johnson v. Duffy,* 588 F.2d 740, 743-44 (9th Cir. 1978)) (explaining that a final decision maker's nonretaliatory employment decision "does not automatically immunize a subordinate against liability for her retaliatory acts"). Nonetheless, Caw may avoid liability if he shows that a "final decision maker's

independent investigation and termination decision, responding to a biased subordinate's initial report of misconduct, . . . negate[s] any causal link" between his retaliatory motive and the adverse employment action. *Lakeside-Scott, 556 F.3d at 804.* [*22] This is because a final decision maker's wholly independent investigation and decision establish that "the employee's protected speech was not a but-for cause of the adverse employment action." *Eng, 552 F.3d at 1072* (citing *Mt. Healthy, 429 U.S. at 287*).

Here, the record before the district court revealed evidence that Caw was motivated by retaliatory animus in: (1) relating to the new Chief of Police that Karl's work as a Confidential Administrative Assistant was deficient; (2) seeking to transfer Karl to a position where he could directly supervise her; (3) encouraging her to accept the position by reminding her she could be fired if she refused; (4) imposing unreasonable and arbitrary performance targets on Karl alone; and (5) advising Wilson that Karl was critical of the training program and had made inadequate progress in her new position as a records specialist. The court further found disputed issues of material fact as to whether Wilson conducted an independent investigation into Karl's performance that would sever the causal link between Caw's retaliatory motive and Karl's termination. Although Caulfield was the only individual with authority to terminate Karl, the district [*23] court determined that Karl adequately adduced evidence showing that Caulfield's decision was based wholly on Wilson's recommendation, which, in turn, was based on information provided by Caw. These findings of disputed issues of material fact are unreviewable on interlocutory appeal. *See Eng, 552 F.3d at 1067.* Thus, viewing the record in the light most favorable to Karl, we cannot say that Caw has met his burden to show that the City would have fired Karl even in the absence of her protected speech activities. The district court therefore correctly held that Karl adequately alleged a violation of her *First Amendment* free speech rights, and that Caw is not entitled to qualified immunity on this ground.

### B. Clearly Established

Having determined that Karl has alleged a constitutional violation, we next consider whether the "contours" of Karl's *First Amendment* right were "'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd,* ___ *U.S.* ___, *131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011)* (quoting *Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).* "Whether the law was clearly established is an objective standard; the defendant's [*24] 'subjective understanding of the constitutionality of his or her conduct is irrelevant.'" *Clairmont, 632 F.3d at 1109* (quoting *Fogel v. Collins,* *531 F.3d 824, 833 (9th Cir. 2008)).* Qualified immunity is designed "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier, 533 U.S. at 206.* We therefore consider whether existing law at the time of Caw's conduct in 2008 provided him "fair notice" that the *First Amendment* prohibits retaliating against an employee for providing subpoenaed deposition testimony during another person's civil rights lawsuit. *Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002).* In answering this question, we bear in mind that "'closely analogous preexisting case law is not required to show that a right was clearly established.'" *Robinson, 566 F.3d at 826* (quoting *Hufford v. McEnaney, 249 F.3d 1142, 1148 (9th Cir. 2001));* see *Fogel, 531 F.3d at 833.* Indeed, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope, 536 U.S. at 741;* see *Porter v. Bowen, 496 F.3d 1009, 1026 (9th Cir. 2007).* On the other hand, we recognize that the claimed right cannot be defined [*25] at too high a "level of generality." *Anderson, 483 U.S. at 639.*

Although there is no case in our circuit with the same facts as those presented here, a reasonable official in Caw's position would have known that it was unlawful to retaliate against an employee for providing subpoenaed deposition testimony in connection with a civil rights lawsuit alleging government misconduct.

First, a reasonably competent official would have known that a public employee's subpoenaed deposition testimony addresses a matter of public concern when it is given in connection with a judicial or administrative proceeding involving allegations of "significant government misconduct." *Alpha Energy Savers, 381 F.3d at 927.* It has been clearly established since at least 2004 that judicial and administrative proceedings are matters of public concern when they seek to expose "potential or actual discrimination, corruption, or other wrongful conduct by government agencies or officials." *Id. at 925;* see also *Robinson, 566 F.3d at 823.* Caw was therefore on notice that Wender's § *1983* action was a matter of public concern, for any reasonable official would know that unlawfully retaliating against a public employee for [*26] his protected speech activities constitutes "significant government misconduct." Furthermore, we have held that it was clearly established since at least 2007 that testifying pursuant to a subpoena in a judicial or administrative proceeding of public concern constitutes protected speech. *See Clairmont, 632 F.3d at 1109.* Although none of our earlier cases specifically addressed subpoenaed deposition testimony as opposed to testimony in open court, our holdings have not been so narrowly cabined that Caw could reasonably have believed subpoenaed deposition testimony was excluded from the *First Amendment's* ambit of protection." *See, e.g., Alpha Energy Savers, 381 F.3d at*

925 (holding that not only the employee's testimony at the grievance hearing, but also "the affidavit that he filed and his agreement to be listed as a potential witness," were entitled to protection).

> 6 Caw's attempt to seek shelter in what he characterizes as an out-of-circuit split of authority is equally unavailing. *Compare Morales v. Jones, 494 F.3d 590, 595 (7th Cir. 2007)* (holding that a police officer's deposition in a fellow officer's § 1983 action alleging unlawful retaliation was protected speech), *with Morris v. Crow, 142 F.3d 1379, 1382-83 (11th Cir. 1998)* [*27] (per curiam) (holding that a police officer's deposition testimony in another individual's wrongful death suit was not protected speech where the testimony merely parroted the contents of an accident report "generated in the normal course of his duties as an accident investigator"). Far from creating a circuit split regarding the protected status of deposition testimony per se, the different conclusions reached in *Morales* and *Morris* merely illustrate the different treatment afforded speech made as a private citizen and speech made pursuant to one's official duties. *See Huppert, 574 F.3d at 709* (discussing *Morales* approvingly and explaining that "California's courts have never said that it expects its police officers to assist others in their individual civil suits against present or former employers").

Second, a reasonable official would also have known that a public employee's speech on a matter of public concern is protected if the speech is not made pursuant to her official job duties, even if the testimony itself addresses matters of employment. *See Garcetti, 547 U.S. at 421; Eng, 552 F.3d at 1075-76* (citing *Mt. Healthy, 429 U.S. at 284; Pickering, 391 U.S. at 568*); *Posey, 546 F.3d at 1126-27.* [*28] Caw argues that Garcetti "materially altered . . . [t]he legal landscape of public employment constitutional law" by constraining the scope of a public employee's protected speech activities. As we explained in *Eng*, however, "*Garcetti* concluded only that 'work product' that 'owes its existence to [an employee]'s professional responsibilities' is *not* protected by the *First Amendment.*" *Eng, 552 F.3d at 1075* (quoting *Garcetti, 547 U.S. at 422*). Notwithstanding *Garcetti*, we held in *Eng*, as we do here, that "[t]here could be no confusion . . . that when [plaintiff] commented upon matters of public concern as a citizen and *not* pursuant to his job responsibilities, his speech *was* protected by the *First Amendment* -- that rule had long been the law of the land." *Id.* (internal quotation marks, citations, and alterations omitted). *Garcetti* in no way altered Karl's clearly established *First Amendment* right to give subpoenaed deposition testimony in the Wender litigation in her capacity as a private citizen, without facing retaliation as a result.

Finally, it was clearly established at the time of Caw's conduct that a subordinate officer can be liable under § 1983 for retaliating against an employee [*29] even if he also has legitimate, non-retaliatory motives. Under the "mixed motive" analysis established by *Mt. Healthy*, the intensely fact-bound question is simply whether the employer "would have reached the same [adverse employment] decision even in the absence of the [employee's] protected conduct." *Ulrich v. City & Cnty. of S.F., 308 F.3d 968, 976-77 (9th Cir. 2002); accord Mt. Healthy, 429 U.S. at 287; Thomas, 379 F.3d at 808.* Furthermore, we held in 1999 that "a subordinate cannot use the nonretaliatory motive of a superior as a shield against liability if that superior never would have considered a dismissal but for the subordinate's retaliatory conduct." *Gilbrook, 177 F.3d at 855.*

Thus, the relevant principles were all clearly established long before the events in question, such that "every reasonable official would have understood that what he is doing violate[d]" Karl's *First Amendment* right to be free from retaliation." *al-Kidd, 131 S. Ct. at 2083* (citation and internal quotation marks omitted).

IV. Conclusion

For the reasons discussed herein, the district court's denial of summary judgment on the basis of qualified immunity is AFFIRMED.

# COHEN & FITCH LLP

233 BROADWAY, SUITE 1800
NEW YORK, NY 10279
TEL: 212.374.9115
FAX: 212.406.2313

---

## FAX FORM

**DATE:** May 10, 2012

**TO:** Honorable Robert W. Sweet, United States District Judge

**FIRM OR COMPANY:** Southern District of New York

**Cc:** Suzanna Publicker, Esq. (212-788-9776)
Assistant Corporation Counsel

Gregory John Radomisli (212-949-7054)
Martin Clearwater & Bell LLP
220 East 42nd Street, 13th Floor
New York, NY 10017

Brian Lee (516-352-4952)
Ivone, Devine & Jensen LLP
2001 Marcus Avenue, Suite N100
Lake Success, NY 11042

Bruce M. Brady (212-248-6815)
Callan, Koster, Brady & Brennen LLP
1 Whitehall Street
New York, NY 10004

**FROM:** Cohen & Fitch LLP

**PAGES** (including this page):  3 /11
If you did not receive all of the pages, please contact the sender as soon as possible.

---

**MESSAGE:** *Schoolcraft v. City of New York, et al*
*10 CV 6005 (RWS)*

**NOTE TO FAX OPERATOR:** The information contained in this Facsimile message is legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this facsimile is strictly prohibited. If you receive this Facsimile in error, please immediately notify us by telephone and return the original message to us at the address above via the United States Postal service. Thank you.