# COHEN & FITCH LLP
233 BROADWAY, SUITE 1800
NEW YORK, NY 10279
TEL: 212.374.9115
FAX: 212.406.2313



June 20, 2012

**BY FACSIMILE**
*212-805-7925*

Honorable Robert W. Sweet
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Schoolcraft v. City of New York, et al.*
    *10 CV 6005 (RWS)*

Your Honor:

I am co-counsel for plaintiff in the above-referenced matter. I write now to respectfully request that the Court reconsider the portion of its ruling on the First Amendment Claim relating to the prior restraint imposed on plaintiff's speech *following* plaintiff's suspension on October 31, 2009. Specifically, it is respectfully submitted that this Court's decision overlooked the actions of the NYPD defendants in harassing and intimidating plaintiff at his home in upstate New York *after* he was suspended from the department and no longer under any job duty to speak out about the corruption he witnessed, which constituted a prior restraint on he speech as a *citizen*.

I. **Following Plaintiff's Suspension on October 31, 2009, He was No Longer Speaking Pursuant to His Job Duties as an NYPD Officer**

In the present matter, it is respectfully submitted that the court overlooked the fact that the allegations contained in the complaint clearly allege that *after* the October 31, 2009 incident, when plaintiff was suspended from the force, several members of the NYPD repeatedly, and over the course of several months, made unwanted and uninvited trips to plaintiff's home in upstate New York. (See Amended Compl. at ¶¶ 206-210). Further, it is also alleged that those contacts were an overt attempt to intimidate plaintiff – namely, uniformed officers banging and kicking his door in a menacing manner and spying on him through his windows. (Id.). Moreover, it is alleged that those actions were taken in order to scare, threaten and coerce plaintiff into not disclosing evidence of the NYPD's corruption and illegal practices to the public at large. (Id.). Specifically, the allegations in the complaint are as follows:

>Notwithstanding this move, between December 2009 and continuing on through the present, armed NYPD officials continued their relentless efforts to *silence*, harass and/or otherwise harm plaintiff and his father in the form of making over a dozen appearances at his home in upstate New York.
>
>During these "visits", the NYPD has dispatched teams of armed detectives and other armed members of the New York City Police Department to harass and intimidate plaintiff by pounding and kicking on his door and shouting "NYPD. WE KNOW YOU'RE IN THERE, OPEN UP!!!"
>
>In one instance, on December 9, 2009, an armed NYPD Sergeant drove three hundred fifty (350) miles outside of NYPD jurisdiction – on taxpayer's money – merely to "spy" on plaintiff through his bedroom window.
>
>In response to this blatant and endless attempt to continuously harass and intimidate plaintiff, plaintiff moved his bed out of said bedroom in order to prevent imminent physical and emotional harm upon his person.
>
>Notwithstanding this action, armed NYPD officials continue, up and through the present, to come to his home, repeatedly pound on his door, photograph him, and engage in efforts designed to purposefully intimidate and harass plaintiff in a tireless effort to *silence* him once and for all.
>
>(Amended Compl. at ¶¶ 206-10)(emphasis added).

All of these acts occurred *after* the plaintiff was *suspended* from the NYPD immediately following the October 31, 2009 incident.[1] As such, it cannot be said that any such *prospective* speech following the October 31, 2009 incident would have been pursuant to the duties of a suspended NYPD officer nor would his behavior have been governed by the Patrol Guide at that time. In fact, the Patrol Guide is utterly silent regarding the duties of a "suspended" or "modified" police officer. Consequently, given plaintiff's suspension from the police force at the time that these coercive and threatening acts were being undertaken by defendants, it is clear that any speech intended to be uttered would have been as a citizen and not pursuant to any of his duties.[2] Further, as will be discussed infra, once it is established that plaintiff was speaking as a citizen at that time, the allegations of defendants' behavior in attempting to continue to silence him sufficiently assert a prior restraint on speech as a matter of law.

---

[1] It is undisputed that plaintiff was suspended the very same night of the October 31, 2009 incident.

[2] Unlike a retaliation claim, the plaintiff need not utter any speech at all, rather the First Amendment violation is established by acts that attempt inhibit or prohibit speech altogether. See Kirkpatrick v. Village of Washingtonville, 2011 WL 1330745, *7 (S.D.N.Y. 2011)("There is no speech that was punished in this case. Instead, this is an issue of *prior restraint* in the form of the gag order.")(emphasis added).

Additionally, assuming arguendo that it can even be *argued* – which it cannot – that plaintiff was still under a duty to report corruption as a suspended police officer who was not reporting to any command, was stripped of his weapon and badge and could not perform *any* other normal police function, it certainly cannot be determined as a matter of law at the pleading stage. Further, at that time the subject matter of his speech was also broader than just departmental corruption, but now included his illegal and involuntary confinement, which certainly did occur pursuant to any job duty and thus would also fall outside the confines of Garcetti v. Ceballos, 547 U.S. 410 (2006). Accordingly, the allegations in the complaint – at least with respect to any speech that was uttered or intended to be uttered *after* plaintiff was suspended following the October 31, 2009 incident – sufficiently establish the protected speech of a *citizen*, or at minimum, a factual issue precluding resolution at the pleading stage.

## II. Defendants Actions *After* Plaintiff Was Suspended Constituted a Prior Restraint on Plaintiff's Speech

It is well established that actions of intimidation, threats and/or coercion can form the basis of a prior restraint on speech in violation of an individual's rights under the First Amendment. See Grennan v. Nassau County, 2007 WL 952067, *12 (E.D.N.Y. 2007)("'In determining whether a particular request to suppress speech is constitutional, what matters is the 'distinction between attempts to convince and attempts to coerce.'"); Zieper v. Metzinger, 392 F.Supp.2d 516, 528 (S.D.N.Y. 2005)("Zieper must demonstrate that there is a genuine issue of material fact as to whether a reasonable person would feel coerced by his contact with Metzinger."); see also Penthouse v. McAuliffe, 610 F.2d 1353, 1361-1362 (5th Cir.1980) ("numerous and harassing arrests prior to a final adjudication upon the issue of obscenity vel non...[amounted] to an informal system of prior restraint ...")(alteration added); ACLU v. City of Pittsburgh, 586 F.Supp. 417, 427 (W.D.Pa.1984) (the "threatened 'massive sweep' and 'initiation of criminal proceedings' against vendors of Hustler magazine, prior to a judicial determination that the...magazine was in fact obscene...amounts to an unconstitutional abuse of power...").

In the present matter, the complaint unquestionably contains allegations that amply demonstrate that a reasonable person would have been intimidated by the constant harassment of uniformed police officers at his house yelling at him and spying on him through his window. Moreover, the fact that some of the officers traveling 300 miles outside their jurisdiction were the *same* officers involved in the corruption and illegal activity that plaintiff had witnessed only contributes to the coercive nature of this activity. Accordingly, defendants' attempts to harass and intimidate him *after* his suspension constituted a prior restraint on his speech as a citizen regarding matters of public concern in violation of his First Amendment rights, thus making his claim far from futile.[3] See Zieper at 528:

---

[3] As this court recognized in its decision, of which the plaintiff does not dispute, plaintiff's speech in this matter was unquestionably a matter of public concern. See Schoolcraft v. City of New York, 2012 WL 2161596, *4 (S.D.N.Y. 2012)("As such, Plaintiff's speech concerned a matter of public concern.").

In both Penthouse v. McAuliffe and City of Pittsburgh, government officials engaged in patterns of harassment, including warrantless arrests and threats of prosecution, in an attempt to stop local sales of allegedly obscene magazines. In each case, the court determined that the harassing conduct resulted in a constructive seizure that ran afoul of the Constitution by creating a prior restraint on speech in violation of the First and Fourteenth Amendments.

Id.

Based on the foregoing, it is respectfully requested that Your Honor reconsider the denial of plaintiff's motion to amend in light of the allegations constituting a prior restraint on plaintiff's speech *after* he was suspended from the NYPD.

### III. Plaintiff's Refusal to Comply with the NYPD's Unconstitutional Quota Constituted Protected Speech Under Jackler v. Byrne, 658 F.3d 225 (2d Cir. 2011)

Notwithstanding the prior restraint on plaintiff's speech after his suspension, it is also respectfully requested that this Court reconsider its denial of plaintiff's First Amendment retaliation claim based on plaintiff's refusal to comply with the illegal and unconstitutional commands of his superiors. In finding that the plaintiff's speech – namely, the acts of filing and making complaints to supervisors and internal NYPD agencies – did not constitute protected speech under Garcetti, the Court distinguished the actions the plaintiff in this case with those of the police officer in Jackler. Specifically, the Court characterized the speech at issue in Jackler as the officer's refusal to comply with orders to suborn perjury, but not his *reports* filed in connection with those same orders. Similarly, the allegations contained in the instant complaint clearly allege that plaintiff also refused to comply with the directives of his supervisors to issue illegal summonses pursuant to an unconstitutional quota in the absence of probable cause. The allegations of those refusals are as follows:

> Unlike many of his colleagues, plaintiff ADRIAN SCHOOLCRAFT refused to issue or to be coerced to issue unwarranted and illegal summonses and arrest innocent people in the absence of probable cause simply to meet a quota.
>
> In response to this ultimatum, plaintiff ADRIAN SCHOOLCRAFT informed defendant MASCOL that he would try to improve his activity but that he would not write illegal summonses or arrest people in the absence of probable cause to believe that a summonsable or arrestable offense had been committed.

(Amended Compl. at ¶¶ 50, 63). As such, if the courts in Jackler and Matthews v. City of New York, 2012 U.S. Dist. LEXIS 53213 (S.D.N.Y. April 12, 2012) as well as this Court recognized that First Amendment protection was justified for the civilian

analog of *refusing* to comply with illegal or unconstitutional orders, then it is respectfully submitted that the allegations contained herein contain a cognizable basis for a First Amendment retaliation claim based on plaintiff's refusal to adhere to the unconstitutional and illegal directives of his supervisors.

Accordingly, it is respectfully requested that this Court reconsider its denial of plaintiff's motion to amend and allow plaintiff to amend his complaint in order to assert a cause of action under the First Amendment.

Very truly yours,

Joshua P. Fitch
jfitch@cohenfitch.com

Cc: VIA FAX

Suzanna Publicker, Esq.
Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, New York 10007

Gregory John Radomisli
Martin Clearwater & Bell LLP
220 East 42nd Street, 13th Floor
New York, NY 10017

Brian Lee
Ivone, Devine & Jensen LLP
2001 Marcus Avenue, Suite N100
Lake Success, NY 11042

Bruce M. Brady
Callan, Koster, Brady & Brennen LLP
1 Whitehall Street
New York, NY 10004