**COHEN & FITCH LLP**
233 BROADWAY, SUITE 1800
NEW YORK, NY 10279
TEL: 212.374.9115
FAX: 212.406.2313

August 1, 2012

**BY FACSIMILE**
*212-805-7925*

Honorable Robert W. Sweet
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

RECEIVED AUG 0 1 2012 JUDGE SWEET CHAMBERS

Re:   *Schoolcraft v. City of New York, et al.*
      *10 CV 6005 (RWS)*

Your Honor:

I am co-counsel for plaintiff in the above-referenced matter. I write now to respectfully request that Your Honor grant plaintiff leave to amend the complaint to add a First Amendment claim under 42 U.S.C. § 1983 relating to the prior restraint imposed on plaintiff's speech following plaintiff's suspension on October 31, 2009 and the actions taken against plaintiff in retaliation for plaintiff's speech in refusing to comply with the illegal and unconstitutional orders of his supervisors.[1]

**I.   Following Plaintiff's Suspension on October 31, 2009, He was No Longer Speaking Pursuant to His Job Duties as an NYPD Officer**

The allegations contained in the complaint clearly allege that *after* the October 31, 2009 incident, when plaintiff was suspended from the force, several members of the NYPD repeatedly, and over the course of several months, made unwanted and uninvited trips to plaintiff's home in upstate New York. (See Amended Compl. at ¶¶ 206-210).[2] Additionally, the allegations of prior restraint specifically include the campaign of harassment and intimidation following plaintiff's suspension on October 31, 2009 – namely, traveling three hundred miles outside of their jurisdiction in a concerted effort to

---

[1] The instant request is made mindful of the court's ruling on plaintiff's motion for reconsideration (See July 18, 2012 Opinion, Docket Entry 95.) ("Accordingly plaintiff's motion for reconsideration is denied. To the extent plaintiff wishes to amend his complaint to include a prior restraint claim, a motion to amend pursuant to Federal Rule Civil Procedure (15)(a) should he filed.").

[2] A copy of proposed Amended Complaint has been emailed to jonathan_menitove@nysd.uscourts.gov.

silence plaintiff.[3] (Id.). Further, it is also alleged that those contacts were an overt attempt to intimidate plaintiff – namely, uniformed officers banging and kicking his door in a menacing manner and spying on him through his windows. (Id.). Moreover, it is alleged that those actions were taken in order to scare, threaten and coerce plaintiff into not disclosing evidence of the NYPD's corruption and illegal practices to the public at large. (Id.). Specifically, the allegations in the complaint are as follows:

> Notwithstanding this move, between December 2009 and continuing on through the present, armed NYPD officials continued their relentless efforts to *silence*, harass and/or otherwise harm plaintiff and his father in the form of making over a dozen appearances at his home in upstate New York.
>
> During these "visits", the NYPD has dispatched teams of armed detectives and other armed members of the New York City Police Department to harass and intimidate plaintiff by pounding and kicking on his door and shouting "NYPD. WE KNOW YOU'RE IN THERE, OPEN UP!!!"
>
> In one instance, on December 9, 2009, an armed NYPD Sergeant drove three hundred fifty (350) miles outside of NYPD jurisdiction – on taxpayer's money – merely to "spy" on plaintiff through his bedroom window.
>
> In response to this blatant and endless attempt to continuously harass and intimidate plaintiff, plaintiff moved his bed out of said bedroom in order to prevent imminent physical and emotional harm upon his person.
>
> Notwithstanding this action, armed NYPD officials continue, up and through the present, to come to his home, repeatedly pound on his door, photograph him, and engage in efforts designed to purposefully intimidate and harass plaintiff in a tireless effort to *silence* him once and for all.

(Amended Compl. at ¶¶ 206-10)(emphasis added).

All of these acts occurred *after* the plaintiff was *suspended* from the NYPD immediately following the October 31, 2009 incident. As such, it cannot be said that any such *prospective* speech following the October 31, 2009 incident would have been pursuant to the duties of a suspended NYPD officer nor would his behavior have been governed by the Patrol Guide at that time. In fact, the Patrol Guide is utterly silent regarding the duties of a "suspended" or "modified" police officer. Consequently, given plaintiff's suspension from the police force at the time that these coercive and threatening acts were being undertaken by defendants, it is clear that any speech intended to be

---

[3] Plaintiff was suspended immediately following the home invasion of October 31, 3009 at approximately 9:40 p.m., thus everything following that suspension including the confinement at Jamaica Hospital would constitute a prior restraint on speech he was under no duty to utter.

uttered would have been made as a citizen and not pursuant to any of his duties.[4] Further, as will be discussed infra, once it is established that plaintiff was speaking as a citizen at that time, the allegations of defendants' behavior in attempting to continue to silence him sufficiently assert a prior restraint on speech as a matter of law.

## II. Defendants' Actions Constituted a Prior Restraint on Plaintiff's Speech

It is well established that actions of intimidation, threats and/or coercion can form the basis of a prior restraint on speech in violation of an individual's rights under the First Amendment. See Grennan v. Nassau County, 2007 WL 952067, *12 (E.D.N.Y. 2007)("'In determining whether a particular request to suppress speech is constitutional, what matters is the 'distinction between attempts to convince and attempts to coerce.'"); Zieper v. Metzinger, 392 F.Supp.2d 516, 528 (S.D.N.Y. 2005)("Zieper must demonstrate that there is a genuine issue of material fact as to whether a reasonable person would feel coerced by his contact with Metzinger."); see also Penthouse v. McAuliffe, 610 F.2d 1353, 1361-1362 (5th Cir.1980) ("numerous and harassing arrests prior to a final adjudication upon the issue of obscenity vel non...[amounted] to an informal system of prior restraint ...")(alteration added); ACLU v. City of Pittsburgh, 586 F.Supp. 417, 427 (W.D.Pa.1984) (the "threatened 'massive sweep' and 'initiation of criminal proceedings' against vendors of Hustler magazine, prior to a judicial determination that the...magazine was in fact obscene...amounts to an unconstitutional abuse of power...").

In the present matter, the complaint unquestionably contains allegations that amply demonstrate that a reasonable person would have been intimidated by the constant harassment of uniformed police officers at his house yelling at him and spying on him through his window. Moreover, the fact that some of the officers traveling 300 miles outside their jurisdiction were the *same* officers involved in the corruption and illegal activity that plaintiff had witnessed only contributes to the coercive nature of this activity. Specifically, it is alleged that during these "visits" defendants would spy on plaintiff through his window and would bang on plaintiff's door yelling at him to "open up." Accordingly, defendants' attempts to harass and intimidate him *after* his suspension constituted a prior restraint on his speech as a citizen regarding matters of public concern in violation of his First Amendment rights, thus making his claim far from futile.[5] See Zieper at 528:

> In both Penthouse v. McAuliffe and City of Pittsburgh, government officials engaged in patterns of harassment, including warrantless arrests and threats of prosecution, in an attempt to stop local sales of allegedly obscene magazines. In each case, the court determined that the harassing conduct resulted in a constructive seizure that ran afoul of the Constitution

---

[4] Unlike a retaliation claim, the plaintiff need not utter any speech at all, rather the First Amendment violation is established by acts that attempt inhibit or prohibit speech altogether. See Kirkpatrick v. Village of Washingtonville, 2011 WL 1330745, *7 (S.D.N.Y. 2011)("There is no speech that was punished in this case. Instead, this is an issue of *prior restraint* in the form of the gag order.")(emphasis added).

[5] As this court recognized in its decision, of which the plaintiff does not dispute, plaintiff's speech in this matter was unquestionably a matter of public concern. See Schoolcraft v. City of New York, 2012 WL 2161596, *4 (S.D.N.Y. 2012)("As such, Plaintiff's speech concerned a matter of public concern.").

by creating a prior restraint on speech in violation of the First and Fourteenth Amendments.

Id.

Additionally, defendants' actions clearly demonstrate the officers' motive and their intent for pleading purposes as the elements of intent or scienter can be inferred from the factual allegations of the complaint. See Dougherty v. Town of North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 91 (2d Cir. 2002)("The ultimate question of retaliation involves a defendant's motive and intent, both difficult to plead with specificity in a complaint. It is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be *inferred*.")(emphasis added). It does not take a great leap – or any at all – to infer that these "visits" were not simply social calls by defendants, but instead were designed to scare and intimidate him; or alternatively, to utilize some other manner of convincing plaintiff to keep quite if he *had* "opened up." Further, this conclusion is only supported by the fact that these acts were undertaken *immediately* following his harrowing experience at Jamaica hospital where he had spent six (6) days involuntarily confined to the psychiatric ward at the behest of some of the very same officers that were now banging on his door and spying on him. This chronology of events alleged in the complaint – namely, plaintiff's complaints to supervisors and IAB; defendants discovery of plaintiff documentation of NYPD corruption; defendants discovery of plaintiff's recording device during their home invasion; and, plaintiff's subsequent involuntary confinement – makes it entirely reasonable to conclude that defendants did not have innocuous intentions when "visiting" plaintiff at his home in upstate New York. See Dorsett-Felicelli, Inc. v. County of Clinton, 371 F.Supp.2d 183, 191 (N.D.N.Y. 2005):

> The chronology of events as presented by Plaintiff is sufficient to infer that County Defendants had a retaliatory motive. Plaintiffs have alleged that soon after Dorsett-Felicelli voiced her complaints to the County and the courts, session hours were transferred away from Pyramids and Pre-School at an unprecedented rate by the County to a provider that the County scrambled to have authorized. Although County Defendants have asserted alternative reasoning for the transfers, for purposes of a motion to dismiss, all inferences are made in Plaintiffs' favor.

Id.

Based on the foregoing, it is respectfully requested that Your Honor grant plaintiff leave to amend in light of the allegations constituting a prior restraint on plaintiff's speech *after* he was suspended from the NYPD.

III. **Plaintiff's Refusal to Comply with the NYPD's Unconstitutional Quota Constituted Protected Speech Under <u>Jackler v. Byrne</u>, 658 F.3d 225 (2d Cir. 2011)**

Notwithstanding the prior restraint on plaintiff's speech after his suspension, it is also respectfully requested that plaintiff be allowed to add a First Amendment retaliation claim based on plaintiff's speech in refusing to comply with the illegal and unconstitutional commands of his superiors. Under <u>Jackler</u>, the plaintiff's speech in refusing to comply with the unconstitutional directive of his supervisors would afford him protection under the First Amendment. Specifically, the speech at issue in <u>Jackler</u> was the officer's refusal to comply with orders to suborn perjury, but *not* his *reports* filed in connection with those same orders. Similarly, the allegations contained in the instant complaint clearly allege that plaintiff also refused to comply with the directives of his supervisors to issue illegal summonses and make illegal arrests pursuant to an unconstitutional quota in the absence of probable cause. The allegations of those refusals are as follows:

> Unlike many of his colleagues, plaintiff ADRIAN SCHOOLCRAFT refused to issue or to be coerced to issue unwarranted and illegal summonses and arrest innocent people in the absence of probable cause simply to meet a quota.

> In response to this ultimatum, plaintiff ADRIAN SCHOOLCRAFT informed defendant MASCOL that he would try to improve his activity but that he would not write illegal summonses or arrest people in the absence of probable cause to believe that a summonsable or arrestable offense had been committed.

(<u>Amended</u> Compl. at ¶¶ 50, 63).

Further, the allegations contained in the complaint illustrate the orders that plaintiff refused were *precisely* linked to unconstitutional and borderline illegal activity. In fact, plaintiff was explicitly instructed to arrest ("yoke") anybody he came in contact for no reason at all or for as little as simply wearing a bandana or standing on a corner. (See Amended Compl. atk ¶¶ 44). Further, plaintiff was also instructed to arrest individuals first and "articulate a charge later."(See Amended Compl. at ¶¶ 45, 46). At minimum, these directives were *implicit* – if not explicit – instructions to falsely arrest people who had committed no crime or violation of law. Accordingly, plaintiff's speech in refusing to comply with these unconstitutional and illegal directives was protected under <u>Jackler</u> and anything done in retaliation of those refusals would be actionable under the First Amendment.

Accordingly, it is respectfully requested that plaintiff be allowed to amend his complaint to include a claim of retaliation in violation of his First Amendment Rights.

Very truly yours,

Joshua P. Fitch
jfitch@cohenfitch.com

Cc: VIA FAX

Suzanna Publicker, Esq.
Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, New York 10007

Gregory John Radomisli
Martin Clearwater & Bell LLP
220 East 42nd Street, 13th Floor
New York, NY 10017

Brian Lee
Ivone, Devine & Jensen LLP
2001 Marcus Avenue, Suite N100
Lake Success, NY 11042

Bruce M. Brady
Callan, Koster, Brady & Brennen LLP
1 Whitehall Street
New York, NY 10004