# SCOPPETTA SEIFF KRETZ & ABERCROMBIE

ERIC A. SEIFF
WALTER A. KRETZ, JR.
CHARLES D. ABERCROMBIE*

MARIANA OLENKO

* ALSO ADMITTED IN CT



444 MADISON AVENUE
30TH FLOOR
NEW YORK, NY 10022-1010
(212) 371-4500
FAX (212) 371-6883

ROLAND R. ACEVEDO
NICHOLAS SCOPPETTA
OF COUNSEL

October 15, 2012

Via Facsimile (212-805-7925)
Honorable Robert W. Sweet
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/25/12

*[handwritten: next motion as turnable 10/24]*

Re: Schoolcraft v. The City of New York, et al., 10-CV-6005 (RWS)

Dear Judge Sweet:

      I write to the Court to respectfully request that plaintiff be directed to appear for a deposition session of no greater than seven hours, during which I will have an opportunity to examine him on behalf of defendant Steven Mauriello. I was retained by the City of New York in May 2012 to represent Mr. Mauriello, a Deputy Inspector in the New York City Police Department during the relevant period, in his individual and official capacities. My understanding is that the New York City Law Department determined it is precluded from representing Mr. Mauriello due to an actual and/or apparent conflict of interest.

      On Thursday, October 11, 2012, plaintiff appeared for the first session of his deposition in this case, which was conducted by Suzanna Publicker, the attorney for the City of New York and all "City defendants" other than Mr. Mauriello. Ms. Publicker had indicated to plaintiff's attorneys in advance of the deposition that she would require as much as two full days to conduct her portion of the deposition, and I had indicated I needed to reserve an additional full day to conduct my examination. Plaintiff's attorneys refused to produce plaintiff for a second day of examination by either one of us. A second day of examination had been scheduled for October 25, 2012, for the "medical defendants" – Jamaica Hospital, Dr. Isak Isakov and Dr. Aldana-Bernier *[handwritten: to conduct]*

*[handwritten: The deposition will be held. Counsel will meet and confer on a date and time. So ordered. 10-25-12 /s/ RWS USDJ]*

their examinations, but plaintiff refused to make Mr. Schoolcraft available for any additional examination by the City's attorney or by me without a court order.

At the end of the first day of Mr. Schoolcraft's deposition on October 11, 2012, the City indicated – at 7:00 p.m., after taking seven hours of testimony – that it had completed its examination, subject to any additional disclosure by plaintiff that might warrant the taking of further testimony. At that moment I renewed my request that plaintiff appear for a continuation of his deposition that I would conduct on behalf of Mr. Mauriello, but plaintiff's attorneys again refused absent a court order. I respectfully request that plaintiff be directed to appear on October 25, 2012, for that examination. The medical defendants are unable to proceed with their respective examinations on that date because one of the attorneys is actually engaged on trial. Representatives of all attorneys, however, are able to appear on that date for my examination of the plaintiff.

It is inappropriate for plaintiff's attorneys to deny Mr. Mauriello's attorneys an opportunity to question the plaintiff for several reasons:

1. There is a conflict of interest between the City and Mr. Mauriello, which not only requires their separate representation, but also independent advocacy by their respective counsel on their behalves. We simply are not in a position to combine our efforts into one in this matter or to depend on each other to act in furtherance of any interest other than that of our respective clients. The matters covered by the City at the deposition simply are not the same or were not covered in the same way as they would be if I were examining the plaintiff.

2. While the City's attorney made a remarkable effort in her examination of the plaintiff to cover as many of the relevant events as possible, it simply was impossible to cover everything of significance in the case, or to delve as deeply into some matters as we believe is essential to protect Mr. Mauriello's interests.

3. We do not yet have the transcript, but countless times throughout the first day of his deposition Mr. Schoolcraft testified he was unable to provide the requested information -- such as the identity of a supervisor or fellow officer, or the sum and substance of what was said, or the location of an event, or the sequence or timing of events, or the actions that might have been taken. Instead, he repeatedly said such things as the following: certain allegedly inappropriate events occurred, or statements were made, many times, but he does not specifically recall when they occurred or who was involved, or how many times they occurred, or what specifically was said or by whom or on how many occasions; he claimed to be certain they occurred or were said and would have been recorded by him, though he did not record everything and does not specifically recall what had been recorded or whether he was able to record certain events or comments. He even indicated at one point in his testimony that he had recently listened to the recordings, but still was not able to accurately recount what had happened. Despite such testimony, the City opted, perhaps wisely, not to have Mr. Schoolcraft listen to any of the many hours of recordings surreptitiously made by him of his fellow officers and supervisors, and did not present him with any transcripts of any recordings. Since it

2

appears Mr. Schoolcraft must rely on his recordings to provide evidence of the alleged mistreatment, it is especially important that we examine him about the recordings because Mr. Mauriello often is one of those recorded or mentioned in the recordings.

4. There are many other recordings made by the NYPD of events relating to Mr. Schoolcraft that the City also opted not to review with Mr. Schoolcraft at his deposition. The testimony he provided about such events arguably is at odds with what is presented in the recordings, but he was not asked to review the recordings or explain the apparent disparity between his characterization of the events and what appears on the recordings. It is important to all concerned that we know his explanation for at least some of the discrepancies.

5. Mr. Schoolcraft throughout his testimony identified specific supervisory officers to whom he attributes wrongdoing or on whom he castes blame for the alleged occurrence of wrongful conduct he attributes to the NYPD. Mr. Mauriello is identified as one of those supervisory officers. We need to follow up on the specific instances in Mr. Schoolcraft's testimony where he mentions Mr. Mauriello in the context of the occurrence of allegedly wrongful conduct, to discuss his role in certain events and to establish the substantial majority of the time when Mr. Mauriello was not at all involved, despite Mr. Schoolcraft's suggestions to the contrary.

6. There are instances in the recordings where specific comments are made by Mr. Schoolcraft about Mr. Mauriello that exhibit Mr. Schoolcraft's feelings toward him, which were not explored by the City. The comments would appear to shed light on Mr. Schoolcraft's motivations, mindset and emotional state, about which there is much to be explored in that context as well as in other contexts. The City's attorney simply did not have sufficient time to delve into these areas or opted not to do so. On behalf of Mr. Mauriello, I believe it is important that I be given the opportunity.

7. There are a number of other areas which the City simply did not have enough time to cover that could prove to be critical to the assessment of plaintiff's credibility, character, emotional state and motivation and, ultimately, the integrity of his claims. It is in the common interest of all City defendants, not just Mr. Mauriello, that these matters be explored more fully.

Thank you for your consideration.

Respectfully submitted,

Walter A. Kretz, Jr.

cc: All Counsel, By Facsimile

3