10-CV-6005 (RWS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADRIAN SCHOOLCRAFT,

                              Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

                              Defendants.

**REPLY MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY QUEENS DISTRICT ATTORNEY RICHARD BROWN'S MOTION TO QUASH PLAINTIFF'S SUBPOENA AND FOR A PROTECTIVE ORDER AND CITY DEFENDANTS' MOTION TO COMPEL DISCOVERY**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
  *Attorney for City Defendants and Non-Party*
  *Queens District Attorney Richard Brown*
  *100 Church Street*
  *New York, N.Y.  10007*

  *Of Counsel:  Suzanna Publicker*
  *Tel:  (212) 788-1103*

## TABLE OF CONTENTS

                                                           **Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................................... 1

ARGUMENT

POINT I

        THE MOTION TO QUASH AND FOR A PROTECTIVE ORDER SHOULD BE GRANTED

                A.    Plaintiff Has Failed to Demonstrate that DA Brown Possesses Any Relevant or Unique Personal Knowledge Concerning the Allegations that are the Subject of This Action. ................................ 1

                B.    The Relevant Non-Privileged Portions of the Queens County District Attorney's Investigative File Will Be Produced As Requested During Discovery and Therefore the Subpoena is Moot. ............................................................................ 5

POINT II

        PLAINTIFF HAS NOT PROVIDED ANY REASONABLE EXCUSE CONCERNING HIS FAILURE TO RESPOND TO CITY DEFENDANTS' DISCOVERY REQUESTS

                A.    Media Communications. ................................................................... 7

                B.    Economic Damages. ........................................................................ 9

                C.    Requests to Admit. ......................................................................... 10

CONCLUSION ............................................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**                                                                                                   **Pages**

*Agee v. Paramount Communications, Inc.*,
   853 F. Supp. 778 (S.D.N.Y. 1994) ................................................................................ 6

*Clarick Gueron Reisbaum, LLP v. Quinn*,
   2010 U.S. Dist. LEXIS 130676 (S.D.N.Y. Nov. 10, 2010) ........................................ 9

*Flaherty v. Filardi*,
   03 Civ. 2167, 2004 U.S. Dist. LEXIS 12300 (S.D.N.Y. July 1, 2004) ...................... 6

*In re McCray*,
   03 Civ. 9685, 2013 U.S. Dist. LEXIS 31142 (S.D.N.Y. March 5, 2013) ................ 8-9

*Lieberman v. City of Rochester*,
   681 F. Supp. 2d 418 (W.D.N.Y. 2010) ................................................................. 6, 7

*Marisol A. v. Giuliani*,
   95 Civ. 10533, 1998 U.S. Dist. LEXIS 3719 (S.D.N.Y. March 23, 1998) .............. 2,3

*Quintanilla v. Suffolk Paving Corp.*,
   09-CV-5331, 2012 U.S. Dist. LEXIS 176513 (E.D.N.Y. Dec. 12, 2012) ................. 9

*United States v. Vulcan Society, Inc.*,
   2009 U.S. Dist. LEXIS 68167 (E.D.N.Y. Aug. 5, 2009) ............................................ 3

*United States v. Schwarz*,
   283 F.3d 76 (2d Cir. 2002) ........................................................................................ 7

**Statutes**

Fed. R. Civ. P. 26(b)(2)(C)(i) ................................................................................. 7,8

**PRELIMINARY STATEMENT**

Non-party District Attorney Richard Brown submits this reply memorandum in further support of his motion for a protective order and to quash the subpoena served upon him by plaintiff on or about March 1, 2013, seeking the production of documents from his office as well as his deposition. City Defendants also submit this reply in further support of their motion to compel the production of certain outstanding discovery from plaintiff. Plaintiff's opposition to both motions is short on both legal and factual bases sufficient to overcome either motion, and accordingly, the Court should grant both motions in their entirety.

**ARGUMENT**

**POINT I**

**THE MOTION TO QUASH AND FOR A PROTECTIVE ORDER SHOULD BE GRANTED**

**A. Plaintiff Has Failed to Demonstrate that DA Brown Possesses Any Relevant or Unique Personal Knowledge Concerning the Allegations that are the Subject of This Action**

Plaintiff has not met his burden of demonstrating either the relevancy of the sought-after deposition and/or that DA Brown possesses unique personal knowledge of the subject press release justifying a deposition of him. Plaintiff's opposition concerning the basis for DA Brown's deposition is full of "could have, would have, should have" but is unsurprisingly devoid of any factual allegations demonstrating that DA Brown has any relevant or unique personal knowledge that would inform the decision of whether plaintiff was unlawfully removed from his home and transported to Jamaica Hospital on October 31, 2009, and/or plaintiff's First Amendment prior restraint claim. Plaintiff, for the first time in his opposition, has indicated that the deposition of DA Brown will focus on a press release that

announced that the DA's office would not be prosecuting any of the police officers involved in the October 31, 2009 incident.  Specifically, plaintiff has indicated that the deposition is necessary to "explore the circumstances surrounding the creation and dissemination of the statement."  Plaintiff's Memorandum of Law in Opposition to Motion to Quash and Compel ("Pl. Opp.") at 3.  Further, plaintiff contends that the DA should be made to answer questions regarding: (1) "the grounds for the conclusions in his statement"; (2) "why the statement was issued and made available to the press"; (3) "why the statement was issued three years after the events"; (4) the circumstances that motivated the release of the statement"; and (5) "whether DA Brown he had any discussions with anyone from the NYPD or Jamaica Hospital about preparing, drafting or releasing the statement."  Pl. Opp. at 3.

Plaintiff's alleged basis for the necessity of the deposition, as well as the topic of questions he intends to pose, is wholly extraneous to this litigation.  None of the questions posed by plaintiff or the subject matter itself have any bearing on the resolution of what happened in plaintiff's home or Jamaica Hospital on October 31, 2009, plaintiff's commitment, or plaintiff's prior restraint claim.  This sort of wasteful litigation is exactly what the court in *Marisol A. v. Giuliani* was referring to when it noted that "[i]f the head of a government agency were subject to having his deposition taken concerning any litigation affecting his agency . . ., we would find that the heads of government departments and members of the President's Cabinet would be spending their time giving depositions and would have no opportunity to perform their functions."; and further held that such depositions should not be allowed unless the official possesses relevant unique personal knowledge and the deposition would not significantly impact

his ability to perform his governmental functions. 95 Civ. 10533 (RJW), 1998 U.S. Dist. LEXIS 3719, at *6-*7,*10 (S.D.N.Y. March 23, 1998) (citations omitted).[1]

Besides the fact that the deposition will not yet yield any relevant information, plaintiff's own opposition underscores the fact that plaintiff has no basis whatsoever to believe that DA Brown has any *unique* personal knowledge about the press release. First, plaintiff contends that the Law Department has not yet produced the DA's investigative file.[2] Pl. Opp. at 6-7. Without first reviewing the subject documents, plaintiff could not possibly have a good faith basis to believe that DA Brown has any unique knowledge of the press release and/or investigative file. Second, in plaintiff's declaration, he states that he spoke to Michelle Cort from the Queens District Attorney's office in late 2009 or early 2010, that he had no contact with the DA's office for over a year after that meeting, and that he spoke to James Liander from the

---

[1] Plaintiff cannot credibly allege that this matter is dissimilar from *Marisol A.* based solely on his own statement, without more, that DA Brown has unique personal knowledge concerning the press release. Additionally, plaintiff's reliance on *U.S. v. The Vulcan Society, Inc.*, 2009 U.S. Dist. Lexis 68167 (E.D.N.Y. Aug. 5, 2009) is misplaced. In that matter, the Court originally denied plaintiff's request to compel the deposition of Mayor Bloomberg since plaintiff had not established that the Mayor had any unique knowledge of the subject at issue. It was only after the Mayor voluntarily testified before the Senate Judiciary Committee on July 16, 2009, in connection with the nomination of Judge Sonia Sotomayor, specifically about a class action in which the City was involved, that the Court determined that he had unique personal knowledge warranting a deposition. The same unique knowledge cannot be found here based solely on the distribution of a press release. In this respect, this matter is exactly like *Marisol A.* where the Mayor made public comments reported in the press about advice he received from the Commissioner of Investigation about an interagency task force designed to review the operations of the Child Welfare Administration ("CWA"). There, plaintiffs' stated need for the Mayor's deposition was to inquire about his reasons for asking the Commissioner to conduct an investigation, the recommendations made to the Mayor, and the Mayor's retention of a consultant to draft a reform plan for CWA. *Marisol A.*, 1998 U.S. Dist. LEXIS 3719 at *12. In granting the City's motion for a protective order, the court found that the plaintiffs could obtain the information sought from other sources, namely the Commissioner of Investigation and the consultant. *Id.* Similarly, here, plaintiff has not demonstrated that the questions he intends to pose cannot be answered by anyone other that DA Brown. *See* Declaration of James Liander, dated April 4, 2013, in which he states that he was in charge of the criminal misconduct investigation, that DA Brown did not recommend any particular course of action during the investigation, and also sets forth ADA Liander's involvement in the press release.

[2] Plaintiff makes a number of arguments which do not warrant in-depth analysis. First, plaintiff's contention that the Law Department has interfered with the production of DA Brown's file, and therefore, the Court should order the deposition of DA Brown is nonsensical. Second, plaintiff's contention that City Defendants have improperly withheld the DA documents, and thus, the Court should infer that the file contains information adverse to the motion to quash, i.e., that DA Brown has personal knowledge, is equally nonsensical and also baseless. As explained in the motion to quash, the DA's office is currently undergoing a review of its investigative file for privilege and will produce the file, along with a privilege log, to this office upon completion of its review. The file and any relevant non-privileged portions will then in turn be provided to plaintiff. That has not yet happened.

DA's office in the summer of 2011. Declaration of Adrian Schoolcraft, dated March 26, 2013, at ¶¶ 4-5. Apparently, these two meetings with the DA's office constitute the entirety of Schoolcraft's contact with the DA's office. Nowhere in the declaration does plaintiff state that he spoke with DA Brown and/or that he was ever aware that the DA was personally involved in the criminal investigation. In short plaintiff has wholly failed to present any evidence, besides his own say so, supporting a finding that the DA is in possession of knowledge about the press release or underlying investigation that cannot be obtained from another source.

In fact, as the declaration of ADA James Liander demonstrates, DA Brown was not involved in the day-to-day misconduct investigation. Declaration of James Liander ("Liander Decl.") at ¶ 5, annexed to the Declaration of Suzanna Publicker, dated April 4, 2013, as Exhibit A. Specifically, DA Brown did not participate in any of the witness interviews,[3] he did not recommend that ADA Liander take any particular tack in conducting the investigation, and he never spoke one-on-one with ADA Liander about the investigation. *Id.* at ¶¶ 6, 9 and 12. Although DA Brown was periodically apprised of the status of the investigation during staff meetings and via progress reports (both the staff meetings and progress reports also addressed other unrelated matters pending in the office), other members of the DA's Executive staff were also at the staff meetings and were privy to the same progress reports. *Id.* at ¶¶ 7-8. Indeed, since Liander himself presented the status updates and prepared the progress reports pertaining to the misconduct investigation, he has knowledge of the information that was conveyed to the DA and his Executive staff. Further, as to the press release, it was prepared by the Communications Division of the DA's office and ADA Liander reviewed it for accuracy. *Id.* at ¶ 11. Here, it is

---

[3] Numerous witness interviews were conducted during the 1 ½ years that ADA Liander was in charge of the misconduct investigation.

clear that plaintiff has not, and cannot, meet his burden to establish that DA Brown is in possession of relevant, unique personal knowledge justifying a deposition of him.

The crux of the problem here is that plaintiff disagrees with the office's decision that there was no criminality on the part of the defendant officers involved in the October 31, 2009 incident. This fact is evident from a reading of plaintiff's opposition wherein he rants about the length of time it took the DA's office to complete the investigation, the fact that the office allegedly did not contact him before the results of the investigation were made public, the fact that the DA's office issued a press release at all, some far-fetched allegation that the release was purposely issued around the time that plaintiff severed ties with his former counsel (though plaintiff neglects to inform the Court or the parties why this is important), and that the press release would somehow infect the potential jury pool.[4] Lest plaintiff forget – this case is not about DA Brown's press release. Mr. Brown should not be made to sit for a deposition so that plaintiff may vent his frustrations.

**B.    The Relevant Non-Privileged Portions of the Queens County District Attorney's Investigative File Will Be Produced As Requested During Discovery and Therefore the Subpoena is Moot**

Not surprisingly, plaintiff does not address the fact that he requested the sought-after investigative file from this office as part of his discovery requests. Instead, plaintiff complains that the DA's investigative file has not been produced in accordance with the return date of the subpoena and that there is some conflict between the DA's office and City Defendants, and therefore, the Law Department should not be allowed to review and produce the investigative file. Both arguments are unavailing.

---

[4] Plaintiff's contention that the press release polluted the potential jury pool is laughable in light of plaintiff's numerous media statements made during the course of this litigation. Indeed, according to the media article attached to Pl. Opp, plaintiff released his former counsel partly because he wanted a "more media-driven, public airing than is now occurring." Pl. Opp. Ex. A.

5

First, the DA's office moved to quash the subpoena. It is unclear why plaintiff was under the impression that the documents requested by the subpoena would be produced by the return date when the documents are the subject of a motion to quash. Further, plaintiff has cited no case law to support his proposition that the documents should have been produced by the return date even though the Court has not yet resolved the matter.

Second, plaintiff suggests the Law Department is unable to represent both the City Defendants in this litigation and the DA's office for the limited purpose of litigating the subpoena. To the extent that plaintiff is seeking to disqualify the Law Department as counsel for DA Brown, he has failed to meet his substantial burden.[5] Plaintiff must first establish that there is a conflict.[6] Plaintiff's only basis for the purported "conflict" is that should the Law Department be allowed to review and produce the investigative file, it would have to "turn over documents in the hands of one of its clients (the Queens District Attorney) that are or may be incriminating to another of its clients (the NYPD defendants)." As an initial matter, since the DA's office has found no criminality on the part of any of the defendant officers involved in the October 31, 2009 incident, it may reasonably be assumed that there are no "incriminating" documents in the file. Further, a conflict does not exist simply because the Law Department may be required to produce documents unfavorable to a client and plaintiff has not cited any case law

---

[5] *See e.g. Flaherty v. Filardi*, 03 Civ. 2167, 2004 U.S. Dist. LEXIS 12300, at *4 (S.D.N.Y. July 1, 2004) ("[M]otions to disqualify counsel should be subjected to heightened scrutiny. Accordingly, the moving party bears a heavy burden of proving [the] facts required for disqualification.") (quoting *Agee v. Paramount Communications, Inc.*, 853 F. Supp. 778, 782-783 (S.D.N.Y. 1994).

[6] *Lieberman v. City of Rochester*, 681 F. Supp. 2d 418, 424 (W.D.N.Y. 2010) ("Disqualification of counsel is a matter committed to the sound discretion of the district court… Critical to the proper exercise of that discretion is the question whether the attorney suffers from an actual or potential conflict of interest.") (internal citation omitted).

to the contrary. In any event, there can be no conflict between DA Brown and City Defendants, since the DA is not a party hereto, and thus, the parties have no divergent interests.[7]

Based on the foregoing, the Court should quash the subpoena for the DA's investigative file, since the request is already the subject of a discovery request. Plaintiff's motion to disqualify the Law Department should also be denied since plaintiff has not set forth a real conflict between DA Brown and City Defendants justifying disqualification.

## POINT II

**PLAINTIFF HAS NOT PROVIDED ANY REASONABLE EXCUSE CONCERNING HIS FAILURE TO RESPOND TO CITY DEFENDANTS' DISCOVERY REQUESTS**

Plaintiff appears to take issue with City Defendants' motion to compel outstanding discovery as it pertains to three sets of documents: (1) media communications; (2) economic damages; and (3) Requests to Admit.

**A.   Media Communications**

As part of their discovery demands, City Defendants demanded that plaintiff "[p]roduce any documents, messages, and communications including but not limited to emails, text messages, and letters reflecting any communications, interviews, conversations, or meetings plaintiff has had with any media outlet regarding the allegations of the instant lawsuit, including but not limited to blogs, newspapers, radio stations, independent reporters, and magazines." In response to the motion to compel this discovery, plaintiff objected on the grounds that the request violated plaintiff's First Amendment right to free speech, and that pursuant to Fed. R. Civ. P. 26(b)(2)(C)(i) the information could be obtained more easily from another source.

---

[7] *See e.g. Lieberman*, 681 F. Supp. 2d at 424 ("An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and [the client's] interests diverge with respect to a material factual or legal issue or to a course of action.") (quoting *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002)).

In support of his First Amendment argument, plaintiff alleges that the request for media communications "constitutes an ongoing invasion into the exercise of his First Amendment rights" and should he be required to produce such communications going forward, it would "chill" his desire to speak out in the future. Pl. Opp. at 10. Plaintiff cannot possibly be suggesting that City Defendants' request for relevant statements made by plaintiff is ongoing evidence of his prior restraint claim. If so, this speaks volumes about the legitimacy of his prior restraint claim generally. Regardless, the First Amendment does not insulate plaintiff from his obligation to produce relevant documents in a civil action. Plaintiff cannot use the First Amendment as a shield and a sword – adamantly vocalizing his complaints against City Defendants but seeking to have the full disclosure of his statements protected. Interestingly, plaintiff has not cited to a single case which stands for the proposition that relevant statements made by a plaintiff in a civil action may be protected from disclosure so long as it was made to a media outlet. It is an absurd notion.

Regarding plaintiff's Rule 26(b)(2)(C)(i) argument, missing from plaintiff's opposition is any explanation of why it is too inconvenient, burdensome, or overly expensive for him to produce communications he has had with media outlets. Plaintiff's contention that City Defendants requested that he search for publicly available media articles is disingenuous. The request sought documents within plaintiff's possession, custody or control. Additionally, in the event that plaintiff had communications with a media outlet that did not subsequently produce an article – plaintiff would be the only available source of such communications. In response to plaintiff's contention that the information is more readily obtainable from another source, plaintiff is wrong, as any media outlet is protected by journalistic privilege and need not produce any communications outside of a printed article. *See e.g. In re McCray*, 03 Civ. 9685, 2013 U.S.

Dist. LEXIS 31142 (S.D.N.Y. March 5, 2013) (defendants' subpoena seeking production of outtake material from a documentary quashed as protected by the reporter's privilege).

It was plaintiff's prerogative to institute this litigation, he cannot now attempt to hide behind the First Amendment and/or shift his discovery obligations to City Defendants and/or media outlets with whom he has had contact.

**B.     Economic Damages**

City Defendants' motion to compel requested that plaintiff be made to provide proof of all financial expenses he incurred as a result of the allegedly unlawful conduct of defendants in this matter.  In his opposition, plaintiff alleges that the request is vague since it is not clear what documents are being sought.  There is nothing vague about the request.  Plaintiff is in the best position to know what economic damages *he* is claiming as a result of the alleged incident.  Defendants are not required to provide him with a listing of possible damages he may have incurred.

To the extent that plaintiff is not interposing any objection to the request for documents evincing plaintiff's mitigation of damages, City Defendants request that the Court order plaintiff to produce such documentation by a date certain.  To the extent that plaintiff is objecting to the production of documentation reflecting his legal fees on the theory that such information is subject to the attorney-client and/or work product privileges, plaintiff is wrong. *Clarick Gueron Reisbaum, LLP v. Quinn*, 2010 U.S. Dist. LEXIS 130676, at *4 (S.D.N.Y. Nov. 30, 2010) ("The Court of Appeals has consistently held that information concerning a client's identity and the payment of legal fees is not privileged, absent special circumstances.") (collecting cases); *Quintanilla v. Suffolk Paving Corp.*, 09-CV-5331, 2012 U.S. Dist. LEXIS 176513, at *4-*5 (E.D.N.Y. Dec. 12, 2012) (court ordered production of contemporaneous

billing records as they were not protected by attorney-client privilege). Plaintiff is also wrong that his legal fees will not be relevant until plaintiff makes a fee application at the end of the litigation. While not related to the substantive claims, plaintiff's legal fees will be litigated as evidence of damages, potentially during trial, and accordingly, City Defendants are entitled to production of the fees.[8]

## C.   Requests to Admit

Plaintiff argues that City Defendants' motion to compel responses to their Requests to Admit are moot since plaintiff intends to respond to the requests. City Defendants first served the Requests to Admit on December 19, 2012, almost four months ago. Plaintiff's assurance that he will respond to the requests at some point in the future is insufficient. City Defendants request that plaintiff be ordered to respond to the Requests to Admit by a date certain and without limitation as any objections have been waived by plaintiff's failure to respond in a timely manner.[9]

---

[8] Plaintiff's legal fees are also a factor to be weighed by City Defendants in determining whether to issue a Rule 68 Offer of Judgment in this matter.

[9] Plaintiff also did not object to responding to documents requests regarding the production of documents relating to Frank Pallestro, information pertaining to the website www.schoolcraftjustice.com, affidavits submitted by plaintiffs in related actions, tape recordings made by plaintiff relevant to the claims herein, clothing worn by plaintiff on the date of incident, and a copy of a letter sent by plaintiff to Senator Farley. Plaintiff, however, does not indicate a date by which he intends to respond. Accordingly, City Defendants ask that the Court order plaintiff to respond by a date certain.

**CONCLUSION**

For the foregoing reasons, as well as those set forth in non-party Richard Brown's motion to quash and for a protective order, and City Defendants' motion to compel discovery, this office respectfully requests that the Court issue an Order quashing plaintiff's subpoena, issue a Protective Order under Fed. R. Civ. P. 26(c), precluding the deposition of the Queens District Attorney Richard Brown, ordering plaintiff to respond to outstanding discovery requests, and for further relief as the Court may deem just and proper.

Dated:    New York, New York
          April 4, 2013

>                              MICHAEL A. CARDOZO
>                              Corporation Counsel of the
>                              City of New York
>                              *Attorney for Non-Party Queens DA and City Defendants*
>                              100 Church Street, Room 3-200
>                              New York, New York 10007
>                              (212) 788-1103
>
>                              By:    ____/s/_____
>                                     SUZANNA PUBLICKER
>                                     Assistant Corporation Counsel
>                                     Special Federal Litigation Division

cc:   Nathaniel Smith (By ECF & First-Class Mail)
      Richard Gilbert (By ECF)
      Peter J. Gleason (By ECF)
      *Attorneys for Plaintiff*

      Gregory John Radomisli (By ECF & First-Class Mail)
      MARTIN CLEARWATER & BELL LLP
      *Attorneys for Jamaica Hospital Medical Center*

      Brian Lee (By ECF & First-Class Mail)
      IVONE, DEVINE & JENSEN, LLP
      *Attorneys for Dr. Isak Isakov*

      Bruce M. Brady (By ECF & First-Class Mail)
      CALLAN, KOSTER, BRADY & BRENNAN, LLP
      *Attorneys for Lillian Aldana-Bernier*

11

Walter Aoysius Kretz , Jr. (By ECF & First-Class Mail)
SEIFF KRETZ & ABERCROMBIE
*Attorney for Defendant Mauriello*

12