UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ADRIAN SCHOOLCRAFT,

                                      10–cv-6005 (RWS)

                     Plaintiff,
    -against-

THE CITY OF NEW YORK, et al,

                   Defendants.
----------------------------------------------------------------x


*MEMORANDUM OF LAW*
*IN OPPOSITION TO MOTION*
*FOR GAG ORDER*


                                                  Law Office of
                                                  Nathaniel B. Smith
                                                  Attorney for Plaintiff
                                                  111 Broadway – Suite 1305
                                                  New York, NY 10006
                                                  natbsmith@gmail.com


Dated: April 5, 2013

Table of Contents

Preliminary Statement ................................................................................................1

Argument ...................................................................................................................4

    The Nature and Extent of the Publicity's Impact on a Jury Pool. .........................4

    The Availability of Other Measures. ....................................................................6

    The Effectiveness of Any Order to Prevent a Biased Jury. ..................................8

    The Absence of a Substantial Likelihood of Material Prejudice Arising From Statements by Counsel. ........................................................................................9

Conclusion ...............................................................................................................10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
ADRIAN SCHOOLCRAFT,

                                          10–cv-6005 (RWS)

                        Plaintiff,

     -against-                          *MEMORANDUM OF LAW*
                                            *IN OPPOSITION TO MOTION*
                                            *FOR GAG ORDER*

THE CITY OF NEW YORK, et al,

                        Defendants.
---------------------------------------------------------------x

*Preliminary Statement*

      Jamaica Hospital Medical Center ("Jamaica Hospital") asks this Court to issue an injunction restraining the plaintiff, Adrian Schoolcraft, his father, Larry Schoolcraft, and the lawyers working on behalf of Adrian Schoolcraft "from speaking to the media regarding this matter."[1]

      To support this breathtakingly broad request, Jamaica Hospital cites as its only authority select parts of a disciplinary rule governing attorney conduct, Rule 3.6 of the New York State Rules of Professional Conduct.

      By submitting this application, Jamaica Hospital and its counsel represent that its "legal contentions are warranted by existing law or by a nonfrivolous argument for

---

[1] *See* Letter, dated March 28, 2013, from Mr. Radomisli to the Court at p. 3; attached hereto as Exhibit A.

2

extending, modifying, or reversing existing law or for establishing new law."[2]  Even the most superficial research shows that there is no basis for Jamaica Hospital's meritless application:

A prior restraint on the freedom of speech is "the most serious and least tolerable infringement on First Amendment rights," according to the Supreme Court in the leading case on the issue, *Nebraska Press Assn. v Stuart.*[3]  Indeed, a prior restraint is "one of the most extraordinary remedies known to our jurisprudence."[4]  For that reason, any imposition of a prior restraint bears a "heavy presumption against its constitutional validity."[5]

Prior restraints on pretrial publicity are permissible only upon evidence that:

> (1) the nature and extent of pretrial news coverage would impair the movant's right to a fair trial;
>
> (2) other measures would be unlikely to mitigate the effects of unrestrained pretrial publicity; and
>
> (3) a restraining order would effectively operate to prevent the

---

[2] Fed. R Civ. Pro. 11(b)(2).

[3] 427 U.S. 539, 559 (1976).

[4] *United States v. Quattrone*, 402 F. 2d 304, 312 (2d Cir. 2005) (Sotomayor, J.) (citing and quoting *Nebraska Press*, 427 U.S. at 562).

[5] *United States v. Quattrone*, 402 F. 2d 304, 310 (2d Cir. 2005).

threatened danger.[6]

Schoolcraft's lawyers are undoubtedly governed by disciplinary rules on pre-trial publicity.[7] So are the lawyers for Jamaica Hospital, the NYPD and the Queens District Attorney. But those professional disciplinary rules neither apply to Schoolcraft nor support the requested gag order against his lawyers. Where a gag order is sought against an attorney representing a party in a pending action, the moving party must show that the attorney's statements present a substantial likelihood of materially prejudicing an adjudicative proceeding.[8]

Jamaica Hospital cannot hope to satisfy the "exacting review" required by the

---

[6] *Nebraska Press,* 427 U.S. at 562; *see also United States v. Salameh,* 992 F.2d 445, 446-47 (2d Cir. 1993).

[7] Rule 3.6 of the New York State Rules of Professional Conduct, 22 N.Y.C. R.R. Part 1200. *See generally Gentile v. State Bar of Nevada,* 501 U.S. 1030 (1991) (addressing the constitutionality of the application of a pre-trial publicity disciplinary rule to sanction an attorney who made public statements during the course of a criminal jury trial).

[8] *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1075 (1991); *see also Salameh,* 992 F.2d at 446-47.

law governing prior restraints.[9]   Indeed, it does not even try.

*Argument*

None of the relevant factors support Jamaica Hospital's prior restraint application:

   1. *The Nature and Extent of the Publicity's Impact on a Jury Pool.*

As noted above, the first factor that courts examine in determining whether a prior restraint should issue is the impact of pre-trial publicity on the ability of the Court to obtain a fair and unbiased jury. Proof, not speculation, is required: "pre-trial publicity – even pervasive, adverse publicity – does not inevitably lead to an unfair trial."[10]

While Jamaica Hospital claims that there has been a "media blitz" that has "inundated local media outlets," all it tenders to the Court is a *Daily News* article and a web article in the *Huffington Post*. And yet, it fails to point to anything particular in either article -- or any of the other extensive press coverage in this case for the past three years -- that would or could taint a potential juror. Thus, Jamaica Hospital does not raise any specific concern with some particularly inflammatory statement that could

---

[9] *Id.* at 310 ("Where the category of speech otherwise receives First Amendment protection, however, courts subject prior restraints on speech or publication to exacting review.").

[10] *Nebraska Press,* 427 U.S. at 554.

cause taint or bias; instead, it objects to any public speech "regarding the matter," an objection that extends so far as to even protect it from public disclosure of the truth.

Since the facts and claims will undoubtedly be presented to the jury in this case, Jamaica Hospital cannot and does not show how the nature or extent any of the public statements by Schoolcraft or his lawyers will taint the jury pool or impair its right to a fair trial. The mere fact that Schoolcraft's allegations -- and his dramatic tape recorded proof -- have attracted media attention cannot form a constitutional basis for shutting down free speech or the presses, particularly because this case raises issues of public concern.

Indeed, the *New York Times* stated in its March 12, 2012 letter to this Court that this case "is the subject of immense and legitimate public interest," raising issues about "possible police corruption and the accountability of the police, topics of central concern to the citizens of New York."[11] Given the public importance of the case and given the utter lack of any specific concern about any particularly inflammatory statement, Jamaica Hospital's request for a prior restraint is meritless.

It is also premised on speculation. This case is still in the discovery process, and a trial date has not been set. Under these circumstances, any complaint about media attention having a measurable impact on the Court's ability many months from now at

---

[11] Letter to the Court by David McGraw, The New York Company Vice President, dated March 21, 2012 at p. 1; attached hereto as Exhibit B.

the time of jury selection to obtain a fair and impartial jury is far too attenuated and speculative a basis upon which to justify an injunction on the fundamental right of free speech.  The timing of a statement in the assessment of possible prejudice is important,[12] and other trial courts in this Circuit have held that where a trial date has yet to be set, that factor weighed significantly in the decision to deny a request for a gag order.[13]

    2.  *The Availability of Other Measures.*

Jamaica Hospital also does not address the second important factor in determining the constitutionality of its proposed gag order:  whether there are other measures short of a blanket injunction that can be used by the Court to impanel a fair and impartial jury.  In the light of several well-established and less offensive options, this factor also compellingly suggests that the Court should deny the motion.

When confronted with applications for blanket gag orders, courts regularly deny the request because of the substantial array of remedies available to them in securing a fair and impartial jury.  Those remedies include:  extensive and searching questions of prospective jurors during jury selection on the issue pre-trial publicity; emphatic and

---

[12] *Gentile*, 501 U.S. at 1044.

[13] *United States v. Corbin,* 620 F. Supp. 2d 400, 405 (E.D.N.Y. 2009); *Jemine v. Cake Man Raven, Inc.*, 2009 U.S. Dist. Lexis 92083 at * 3 (E.D.N.Y. Oct. 2, 2009).

clear instructions to the jury during the trial on their duty to determine the case based on the evidence; sequestration of the jury; and postponement of the trial until media coverage has subsided.[14] Indeed, the Second Circuit has held that "each [alternative] must be explored and ultimately rejected as inadequate – individually and in combination – as a remedy for pretrial publicity before a restraining order is entered."[15]

Where there is tension between the right of free speech and press on the one hand and the right to a fair trial on the other hand, a due regard for those conflicting rights *requires* that any remedy be narrowly tailored to protect one right without overrunning the other. Indeed, in *Salameh*, the Second Circuit summarily vacated an injunction barring the defendant's attorneys from publicly discussing any aspect of the pending criminal action precisely because the order was too broad: "The restraint on the attorney's speech is not narrowly tailored; rather it is a blanket prohibition that extends to any statements that 'have anything to do with this case' or that even '*may* have something to do with the case.' "[16] That holding applies with equal force here.

---

[14] *Nebraska Press*, 427 U.S. at 563-64; *Quattrone*, 402 F. 3d at 311-12.

[15] *In re Dow Jones & Co., Inc.,* 842 F. 2d 603, 610-11 (2d Cir. 1988).

[16] *United States v. Salameh*, 992 F. 2d 445, 447 (2d Cir. 1993) (emphasis in original); *see also New York Times v. Rothwax*, 533 N.Y.S. 2d 73, 74 (1st Dept. 1988) (holding gag was overbroad because it was not limited to statements that

### 3. *The Effectiveness of Any Order to Prevent a Biased Jury.*

That the NYPD put Schoolcraft in a Jamaica Hospital psycho ward on October 31, 2009 and that Jamaica Hospital kept him there against his will for six days in the midst of a hotly contested mayoral race in November 2009, is all over the internet, the daily papers, and the public court files in this case and other related cases in this courthouse challenging the NYPD's stop and frisk practices and the imposition of quotas for arrests, summons, and stops.  Nothing can halt the public debate on these important issues.

Under these circumstances, the final factor in the prior restraint analysis -- the effectiveness of any gag order in preventing information from getting into the minds of potential jurors -- requires that the motion be denied.  For example, in *Quattrone* the Second Circuit reversed a gag order prohibiting the press from mentioning the names of jurors in part because the information had already been made available in open court and there was no way that the order could effectively prevent a member of the public from disclosing information that had already become public.  Thus, the gag order was reversed because the lower court did not analyze the effectiveness of the gag order in preventing the dissemination of already-available information.[17]

For the same reasons, the third factor also requires that Jamaica Hospital's

---

might be likely to impugn the fairness and integrity of the trial).

[17] *Quattrone*, 403 F. 3d at 312.

motion be denied. On this factor, the Supreme Court in *Nebraska Press* cogently noted that "plainly a whole community cannot be restrained from discussing a subject intimately affecting life within it."[18]

4. *The Absence of a Substantial Likelihood of Material Prejudice Arising From Statements by Counsel.*

The sole authority for Jamaica Hospital's motion is Rule 3.6 of the Rules of Professional Conduct. Yet there are several reasons why Rule 3.6 does not support this motion.

First, nothing in the Rule purports to limit the rights of a party to free speech. The Rules govern attorney conduct, nothing more.

Second, there is a substantial question about whether a rule of professional conduct that is enforced by state disciplinary authorities can be applied by the Court in this civil action. In *United States v. Corbin,* 620 F. Supp. 2d 400, 408 (E.D.N.Y. 2009), Judge Spatt noted "that it is uncertain of its authority to declare a violation of the New York State Rules of Professional Conduct outside of the context of a disciplinary proceeding."

Third and most important, there is simply no evidence offered by Jamaica Hospital that Rule 3.6 was violated. That Rule requires that there be evidence that the lawyer making a statement knows or should know that there is a substantial likelihood

---

[18] *Nebraska Press*, 427 U.S. at 567.

that a public statement will materially prejudice a pending action.  Even though this Rule is its only authority, Jamaica Hospital utterly fails to point to any statement made by any counsel, let alone a statement that would or could raise a substantial likelihood of materially prejudicing a potential juror.   Accordingly, there is no basis upon which to even conduct an analysis of the Rule, and the motion is facially defective.

Finally, the Rule, which is set forth in full in the accompanying appendix, has specific safe-harbor clauses that Jamaica Hospital carefully omits from its extensive quotation of the Rule.   Those clauses permit statements about the claims or defenses in a pending action and permit statements about information already in the public record.  Rule 3.6 (c) (1) & (2).  An attorney is also permitted to make a public statement to mitigate the damage from recent adverse publicity.  Rule 3.6(d).

## *Conclusion*

Jamaica Hospital's motion is utterly meritless and was not made in good faith.  It should be required to pay the costs of having to respond to its facially defective and utterly unsupported motion.

Dated:  April 5, 2013                                                       *s/NBS*

_____
Nathaniel B. Smith
Attorney for Plaintiff
111 Broadway – Suite 1305
New York, NY 10006
natbsmith@gmail.com

APPENDIX

Rule 3.6.  Trial publicity

(a) A lawyer who is participating in or has participated in a criminal or civil matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

(b) A statement ordinarily is likely to prejudice materially an adjudicative proceeding when it refers to a civil matter triable to a jury, a criminal matter or any other proceeding that could result in incarceration, and the statement relates to:

> (1) the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness or the expected testimony of a party or witness;

> (2) in a criminal matter that could result in incarceration, the possibility of a plea of guilty to the offense or the existence or contents of any confession, admission or statement given by a defendant or suspect, or that person's refusal or failure to make a statement;

> (3) the performance or results of any examination or test, or the refusal or failure of a person to submit to an examination or test, or the identity or nature of physical evidence expected to be presented;

> (4) any opinion as to the guilt or innocence of a defendant or suspect in a criminal matter that could result in incarceration;

> (5) information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would, if disclosed, create a substantial risk of prejudicing an impartial trial; or

> (6) the fact that a defendant has been charged with a crime, unless there is included therein a statement explaining that the charge is merely an accusation and that the defendant is presumed innocent until and unless proven guilty.

**(c) Provided that the statement complies with paragraph (a), a lawyer may state the following without elaboration:**

**(1) the claim, offense or defense and, except when prohibited by law, the identity of the persons involved;**

**(2) information contained in a public record**;

**(3) that an investigation of a matter is in progress;**

**(4) the scheduling or result of any step in litigation;**

**(5) a request for assistance in obtaining evidence and information necessary thereto;**

**(6) a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm  to an individual or to the public interest;** and

(7) in a criminal matter:
    (i) the identity, age, residence, occupation and family status of the accused;
    (ii) if the accused has not been apprehended, information necessary to aid in apprehension of that person;
    (iii) the identity of investigating and arresting officers or agencies and the length of the investigation; and
    (iv) the fact, time and place of arrest, resistance, pursuit and use of weapons, and a description of physical evidence seized, other than as contained only in a confession, admission or statement.

**(d) Notwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client. A statement made pursuant to this paragraph shall be limited to such information as is necessary to mitigate the recent adverse publicity.**

(e) No lawyer associated in a firm or government agency with a lawyer subject to paragraph (a) shall make a statement prohibited by paragraph (a).