UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

ADRIAN SCHOOLCRAFT,

                    Plaintiff,

                                              10 Civ. 6005 (RWS)

        - against -

                                                   OPINION

CITY OF NEW YORK, et al.,

                    Defendants.

------------------------------------------X

A P P E A R A N C E S:

        Attorneys for the Plaintiff

        LAW OFFICE OF NATHANIEL B. SMITH
        111 Broadway
        Suite 1305
        New York, NY 10006
        By:  Nathaniel B. Smith, Esq.


        Attorneys for the City Defendants

        MICHAEL A. CARDOZO
        CORPORATION COUNSEL OF THE CITY OF NEW YORK
        100 Church Street
        New York, NY  10007
        By:  Rachel Seligman Weiss, Esq.

**Sweet, D.J.**

Plaintiff Adrian Schoolcraft ("Plaintiff" or "Schoolcraft") has moved to enjoin[1] all further administrative proceedings by defendant the City of New York ("City") and the New York Police Department ("NYPD") against him, including the administrative hearing that had been scheduled to begin on June 17, 2013 (the "Hearing").

Upon the conclusions set forth below, the motion is granted.

**Prior Proceedings**

A detailed recitation of the facts of the case is provided in this Court's opinion dated May 6, 2011, which granted in part and denied in part Defendant Jamaica Hospital Medical Center's motion to dismiss.  See <u>Schoolcraft v. City</u>

---

[1] Although Plaintiff has styled his motion as a request to "stay" the administrative proceedings against him, Defendants have contended that it should in fact be construed as a motion for injunctive relief, since "that is precisely what plaintiff seeks and that is precisely what the Court has temporarily granted to plaintiff."  Defendants Memorandum of Law in Opposition to Plaintiff's Request to Stay the NYPD Administrative Trial at 1.  Courts in this District have adopted that approach in cases involving similar requests, <u>see, e.g.</u>, <u>Mullins v. City of New York</u>, 554 F. Supp. 2d 483, 487 (S.D.N.Y. 2008), and such an approach will be taken here as well.

1

of N.Y., No. 10 Civ. 6005 (RWS), 2011 WL 1758635, at *1
(S.D.N.Y. May 6, 2011).  Familiarity with those facts is
assumed.

On June 10, 2013, Plaintiff filed an order to show
cause as to why an order should not be issued staying all
further administrative proceedings against Plaintiff by the
City and the NYPD.  The Court granted the order, and
temporarily stayed the administrative proceedings against
Plaintiff until July 1, 2013.  The parties submitted briefing
on the motion, and the matter was marked fully submitted on
June 19, 2013.

**<u>The Preliminary Injunction Is Granted</u>**

The instant motion presents two issues: (1) whether
the outcome of the Hearing would have a preclusive effect,
pursuant to the doctrine of collateral estoppel, so as to
interfere with the Court's ability to fully adjudicate this
action; and (2) even if so, whether the Court can and should
enjoin the Hearing.

**A.   The Outcome of the Hearing May Preclude A Full <u>Adjudication</u> <u>of the Instant Case</u>**

With respect to the first issue, "[t]he Supreme Court has held that, as a matter of federal common law issue preclusion, "when a state agency acting in a judicial capacity . . . resolves issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.'" <u>Locurto v. Giuliani</u>, 447 F.3d 159, 170 (2d Cir. 2006) (<u>quoting</u> <u>Univ. of Tennessee v. Elliot</u>, 478 U.S. 788, 799 (1986)).  In addition, under New York law, "collateral estoppel, or issue preclusion, gives conclusive effect to an administrative agency's quasi-judicial determination when two basic conditions are met: (1) the issue sought to be precluded is identical to a material issue necessarily decided by the administrative agency in a prior proceeding; and (2) there was a full and fair opportunity to contest this issue in the administrative tribunal." <u>Jeffreys v. Griffin</u>, 1 N.Y.3d 34, 39 (N.Y. 2003); <u>see also</u> <u>Burkybile v. Bd. of Educ.</u>, 411 F.3d 306, 310 (2d Cir. 2005) ("New York courts give quasi-judicial administrative fact-finding preclusive effect where there has been a full and fair opportunity to litigate").

Although there have been instances where a particular governmental entity's administrative procedure has been deemed to have too much "procedural laxity" for collateral estoppel to

apply, see Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995),
the Second Circuit has tacitly recognized that no such issue
exists with respect to NYPD administrative disciplinary
hearings, such as the one that Plaintiff currently faces.  See
Locurto, 447 F.3d at 170-72 (recognizing that NYPD disciplinary
hearings can have preclusive effect, but ultimately holding
that collateral estoppel did not apply due to issues specific
to the administrative proceedings in that case).

Having determined that collateral estoppel could
theoretically operate to preclude the Court from making
findings in the instant action, the salient question is whether
the Hearing will, in fact, result in findings on any issue that
is "identical to a material issue necessarily decided [at the
Hearing]." Jeffreys, 1 N.Y.3d at 39.[2]

There are two disciplinary matters pending against
Plaintiff.  The first charges that on October 31, 2009 – the
date of the incident giving rise to the instant action –
Plaintiff failed to comply with orders, was absent from work
without leave, failed to safeguard Departmental property,
impeded an investigation, and failed to surrender a rifle in

_____

[2] Of course, in order for collateral estoppel to apply, the
Court, looking in hindsight at the administrative proceeding,
would also have to conclude that Plaintiff had enjoyed a "full
and fair opportunity to litigate" that particular issue.
Since that portion of the collateral estoppel analysis can
only be conducted ex post, the discussion here will be limited
to the question of identity and materiality of issues.

his possession.  Declaration of Rachel Seligman Weiss in Opposition to Plaintiff's Motion for a Stay ("Weiss Decl."), Ex. A.  The second, which primarily deals with Plaintiff's conduct after October 31, 2009, charges that Plaintiff failed to appear at the Department Advocate's Office, was absent from work without leave, failed to make himself available to be examined by a Department Surgeon, failed to report to his resident precinct, filed to appear at the Department Advocate's Office for restoration of duty, failed to notify the Department of his current residence, and impeded investigators.  Id.

In the Second Amended Complaint, Plaintiff has asserted a host of claims arising from the NYPD's seizure of Plaintiff on the evening of October 31, 2009 and the subsequent involuntary commission of Plaintiff to a psychiatric hospital for six days, including claims under 42 U.S.C. § 1983 for false arrest, malicious abuse of process, excessive force, failure to intercede, unlawful search and entry, and involuntary confinement, id. ¶¶ 278-306, as well as state law claims including assault, battery, false arrest, and false imprisonment, id. ¶¶ 339-55.  Plaintiff has also asserted a First Amendment claim arising from allegations of Defendants' alleged conduct for "an extended period of time," id. ¶ 277, following Plaintiff's release from the psychiatric hospital. See id. ¶¶ 261-277.

Accordingly, if the trier(s) of fact at the Hearing were make findings of fact relating to, for instance, the charge that Plaintiff failed to comply with orders, such findings could overlap with factual issues relating to Plaintiff's claims arising from the NYPD's seizure of Plaintiff, since a finding that Plaintiff failed to obey orders, and related findings as to Plaintiff's general comportment during the day and evening of October 31, 2009, could in turn have significant implications as to the viability of Plaintiff's claims asserted here that the NYPD violated his rights in seizing him and committing him to a psychiatric hospital.

Defendants cannot, and do not, deny this possibility, but rather merely attempt to minimize its likelihood, stating that "it appears unlikely that the majority, if any, of the potential administrative factual determinations will have a preclusive effect on the issues central to this civil litigation." Defendants' Memorandum of Law in Opposition to Plaintiff's Request to Stay the NYPD Administrative Trial ("Def. Opp.") at 10. Defendants moreover acknowledge that it is impossible to come to a definitive conclusion on this question, since "it is unknown what issues will be presented during the administrative trial, whether the issues presented will be identical to any issues in the civil trial, or whether the disputed issues were material to the resolution of the NYPD

trial." Def. Opp. at 10-11. Accordingly, as to the first question presented by Plaintiff's motion, the best answer that can be divined at the present time is "maybe."

## B. *Younger* Abstention Does Not Apply

To answer the second question presented by the instant motion – whether the Court can and should enjoin the Hearing – Plaintiff's motion must first be analyzed in light of the Younger abstention doctrine, articulated by the Supreme Court in Younger v. Harris, 401 U.S. 37 (1971), which held that "principles of federalism and comity preclude a district court from interfering with pending state criminal proceedings 'except in very unusual situations, where necessary to prevent immediate irreparable injury.'" Bess v. Spitzer, 459 F. Supp. 2d 191, 203 (E.D.N.Y. 2006) (quoting Samuels v. Mackell, 401 U.S. 66, 69 (1971)). Though the doctrine of Younger abstention was initially set forth in the context of a state criminal proceeding, "[c]ases subsequent to Younger have made clear that the same principle applies to ongoing state civil proceedings, whether judicial or administrative." McDonald v. Metro-North Commuter R.R. Div. of Metropolitan Transit Auth., 565 F. Supp. 37, 40 (S.D.N.Y. 1983); Diamond "D" Const. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002). Of particular significance to the instant case is the fact that Younger abstention has specifically been applied to administrative proceedings by a

7

police department against an officer.  See McDonald, 565 F. Supp. at 38; see also McCune v. Frank, 521 F.2d 1152, 1158 (2d Cir. 1975) ("That we are dealing with a county police department's disciplinary proceeding rather than a state court action is of little moment.  A proceeding in a state court is not a pre-requisite to the applicability of Younger.") (citations omitted).

"Younger abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." Diamond, 282 F.3d at 198.  However, "a federal court may nevertheless intervene in a state proceeding upon a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'"  Id. (quoting Younger, 401 U.S. at 54).

The parties do not dispute that there is an "ongoing state proceeding" to which Younger abstention could theoretically apply.  However, Plaintiff has contended that Younger abstention is inapposite because there is no important state interest implicated in the departmental proceeding, and also because that proceeding will not afford him an adequate opportunity for judicial review of his federal constitutional

8

claims, whereas Defendants adopt the opposite positions as to
those elements of the <u>Younger</u> analysis.

It is uncontroversial that the City has an important
interest in disciplining its police officers and "ensuring
the[ir] honesty and integrity," <u>McDonald</u>, 565 F. Supp. at 40,
issues that are certainly implicated by the departmental
charges levied against Plaintiff.  <u>See</u> Weiss Decl., Ex. A..
However, the City has taken the position that no administrative
proceeding is necessary in order to take disciplinary action
against Plaintiff since "[p]ursuant to NYC Administrative Code
§ 14-126, any member of the service who has been absent without
leave for five consecutive days will be dismissed from the
Department without notice, and that the Police Department is
electing to proceed with a hearing merely because "the
Department *prefers* not to take any employment action regarding
[Plaintiff] without a full hearing regarding all pending
charges."  Memorandum of Law in Support of Motion For a Stay
("Pl. Mem."), Ex. 2 (emphasis added).  As such, it is not
apparent why the City's undoubtedly compelling interest in
disciplining its officers must be vindicated by conducting a
departmental hearing rather than via summary dismissal of
Plaintiff, and Defendants have offered no explanation in their
submissions to the Court.

The fact that the City waited three years after

9

filing administrative charges against Plaintiff to initiate a
hearing further erodes the contention that the hearing is
necessary for a prompt and efficient disposition of the
disciplinary matter.  Cf. Mullins v. City of New York, 554 F.
Supp. 2d 483, 492-93 (enjoining of NYPD disciplinary
proceedings during the pendency of federal lawsuit, and noting
that, given the NYPD's initiation of a disciplinary
investigation regarding statements given in a deposition more
than three years prior, the NYPD's "own actions belie their
attempt to characterize the need for investigations as time-
sensitive or otherwise warranted while this action is
ongoing").  Under these circumstances the departmental
proceedings do not serve as the basis for a decision to engage
in Younger abstention.

     With respect to the question of whether the
departmental proceeding will afford Plaintiff an adequate
opportunity for judicial review of his claims, the Second
Circuit's opinion in McCune, supra, is instructive.  McCune
involved a county police officer, McCune, who had been cited by
his department for having facial hair that was in violation of
department policy.  See 521 F.2d at 1153.  McCune filed suit in
the Eastern District of New York, alleging that the
departmental grooming policy was unconstitutional, and also
alleging that the disciplinary board assigned to hear his case
was institutionally biased against him, thereby violating his

10

right to due process.  Id. at 1153-54.  After McCune filed his
complaint, the district court signed an order temporarily
restraining the departmental proceedings against McCune pending
the outcome of the federal suit.  Id. at 1154.  The district
court subsequently issued a memorandum and order wherein it
declined to rule on McCune's bias claim, but did reach the
constitutional claim regarding grooming, and held the
departmental regulation invalid.  Id.  On appeal, the Circuit
held that the district court had reached the constitutional
issue prematurely, and remanded with instructions to consider,
*inter alia*, the question of whether the district court was
barred from restraining the departmental proceedings pursuant
to Younger abstention.  Id. at 1157-59.  The Circuit
specifically noted as follows:

> McCune's complaint, it will be remembered,
> alleged that the disciplinary board hearing
> his case was biased, and therefore
> constitutionally defective as a matter of
> procedural due process.  Since Younger
> presupposed the existence of a competent
> state forum, that doctrine is no bar to an
> action seeking to enjoin a proceeding
> claimed to be constitutionally defective.
> [. . .]  If [the court] finds no merit to
> the claims of bias, it may not proceed to
> determine the challenge to the grooming
> regulation unless it finds both Res
> judicata and Younger inapplicable.  If[,
> however,] there is merit to the bias
> argument, then Younger will be no bar to
> deciding the validity of the regulation . .
> . ."

Id. at 1158.

Here, Plaintiff has also alleged bias, as his complaint is grounded upon allegations that both individual members of the NYPD as well as the department as a whole harbor strongly negative feelings toward Plaintiff due to his whistle-blowing activities purporting to expose the NYPD's implementation of arrest quotas and other illegal policies. See Second Amended Complaint ¶ 2.  Plaintiff has alleged that the existence of these negative feelings is evidenced by the NYPD's decision to send officers to his home on the night of October 31, 2009, to forcibly remove Plaintiff and have him involuntarily committed him to a psychiatric hospital for six days "in an effort to tarnish plaintiff's reputation and discredit his allegations should he succeed in disclosing evidence of widespread corruption within the NYPD."  Id.  While the Second Circuit in McClune did not elucidate the precise threshold necessary for a bias allegation in a federal lawsuit to be characterized as having "merit" and thereby render Younger abstention inapplicable, id. at 1158, presumably such a threshold has been exceeded by Plaintiff's allegations here, since the City and the City Defendants have elected to submit an answer to Plaintiff's second amended complaint rather than move to dismiss for failure to state a claim.[3] See Dkt. No. 110.

---

[3] Moreover, as set forth below, see infra, Defendants have effectively conceded that there is a likelihood of success on the merits of Plaintiff's claims.

In addition, there is evidence of bias against
Plaintiff in the timing of the decision to proceed with the
Hearing, as the NYPD's charges against Plaintiff have been
pending since June 2010, <u>see</u> Pl. Mem. Ex. 2, and Defendants
have failed to explain why they waited to schedule the Hearing
until now, three years hence and, as Plaintiff notes, "as the
date for trial in this case approaches." Pl. Mem. at 1.  <u>Cf.</u>
<u>Mullins</u>, 554 F. Supp. 2d at 492 (noting that NYPD's decision to
delay the investigation of an officer for more than one year
after deciding that such an investigation was necessary "points
strongly in favor of retaliation").

## C.  The Possibility Of Irreparable Harm And A Likelihood Of Success On The Merits Have Been Demonstrated

Having concluded that abstention is not required
under <u>Younger</u>, it must next be determined whether an injunction
of the Hearing is affirmatively merited.  In order to obtain a
preliminary injunction, the movant must demonstrate "(1) the
possibility of irreparable harm; and (2) either (a) a
likelihood of success on the merits, or (b) a sufficiently
serious question going to the merits combined with a balance of
the hardships tipping decidedly in favor of the moving party."
<u>Mullins v. City of New York</u>, 554 F. Supp. 2d 483, 487 (S.D.N.Y.
2008).  As set forth below, Plaintiff has established both
elements.

13

With respect to the question of irreparable harm,
Mullins, supra, is instructive.  In Mullins, a group of NYPD
sergeants brought suit against the NYPD for allegedly illegal
pay practices (the "FLSA Action"), and during the pendency of
the FLSA Action, the NYPD's Bureau of Internal Affairs ("IAB")
ordered one of the sergeant-plaintiffs, Sergeant Cioffi
("Cioffi") to submit to questioning regarding statements made
during a deposition taken in the course of the FLSA Action,
pursuant to an investigation by the NYPD into whether Cioffi
committed perjury during that deposition.  554 F. Supp. 2d at
484.  Cioffi was interrogated by the IAB, and the next day the
plaintiffs in the FLSA Action (the "FLSA Plaintiffs")
subsequently requested, and the court granted, a temporary
restraining order enjoining the NYPD from engaging in any
further investigation of Cioffi or pursuing any disciplinary
proceedings against Cioffi based on his IAB interrogation.  Id.
The court subsequently granted the FLSA Plaintiffs motion for a
preliminary injunction, and in doing so found that the threat
of irreparable harm existed because "[f]ailing to enjoin the
instant proceedings against Sergeant Cioffi . . .  would allow
defendants to compel additional testimony on the very topics at
issue in this pending litigation, but outside the bounds of the
judicial process and on defendants' terms."  Id. at 491.  The
similarity to the instant case is striking; here too, Plaintiff
is facing an administrative trial at which he will in all

14

likelihood be questioned about matters that relate to "the very topics at issue in this pending litigation," and his testimony in response to those questions will be given "outside the bounds of the judicial process and on defendants' terms."  Id.

Defendants have contended that Mullins is inapposite because "since discovery is still pending in the instant case, there is no guaranty that defendants will obtain information they would otherwise not be entitled to."  Defendants' Sur-Reply ("Def. Sur.") at 2.  While discovery is ongoing in the instant action, any future questioning of Plaintiff in the context of discovery will occur subject to the parameters and protections offered by the Federal Rules of Civil Procedure and the authority of this Court.  In contrast, any questioning that Plaintiff is subject to in the course of the Hearing will occur not only "outside the bounds of the judicial process," but also under the auspices of an entity that is not only a party to the instant action, but also stands to sustain significant damage if Plaintiff succeeds in proving his claims, all of which are premised upon the alleged existence of "rampant NYPD corruption," Second Amended Compl. ¶ 2.

Defendants additionally contend that there is no need to enjoin the Hearing because, in addition to the assurance that "it is unlikely that any constitutional violations will ensue," Def. Sur. at 3, at any rate Plaintiff could always seek

15

redress with the state courts via an Article 78 proceeding.
Id. However, the fact that Plaintiff has avenues to appeal the
outcome of the Hearing does not change the fact that during the
course of the Hearing he may be asked to testify regarding
issues relevant to the instant action in a proceeding that is
"outside the bounds of the judicial process and on defendants'
terms," and, as noted above, any findings made by trier(s) of
fact presiding over the Hearing may have a preclusive effect
upon this Court, not to mention any state court determination
which Plaintiff might subsequently appeal as a result of any
constitutional violations in the context of the Hearing,
whether or not "unlikely" to occur.

      As to the likelihood of success on the merits,
Plaintiff has contended that "the detailed allegations in the
Second Amended Complaint and the dramatic recordings of the
unlawful and unjustified assault and abduction of Officer
Schoolcraft from his home on October 31, 2009 demonstrate that
there is a likelihood of success on the merits and serious
questions going to the merits of this action," Plaintiff's
Reply Memorandum in Support of Motion for a Stay ("Pl. Rep.")
at 5, and Defendants appear to concede this point in their sur-
reply, choosing instead to only argue that Plaintiff has failed
to satisfy the "irreparable harm" prong of the injunction

analysis, <u>see</u> Def. Sur. at 2-3.[4]

**D.  Enjoining the Hearing Will Not Impede Judicial Economy Or Significantly Prejudice Defendants**

        Finally, Defendants argue that the Court should nonetheless decline to enjoin the Hearing because doing so would "impede judicial economy and significantly prejudice defendants." Def. Opp. at 6.  With respect to the issue of judicial economy, an injunction of the departmental proceeding would actually serve that interest, as it will prevent the necessity of additional litigation as to the question of whether or not the outcome of the departmental proceeding has a preclusive effect upon the instant action.  With respect to the issue of prejudice, while Defendants contend that an injunction will prevent them from "resolving the disciplinary issues with plaintiff in an efficient and prompt manner."  This position is countered by Defendants' decision to wait over three years after charging Plaintiff to initiate the proceedings, which "belie[s] their attempt to characterize the need for [the Hearing] as time sensitive or otherwise warranted while this action is ongoing." <u>Mullins</u>, 554 F. Supp. 2d at 492-93.

---

[4] Moreover, Defendants' initial argument on this point – that plaintiff has not yet proven his claims, as they "will have to be decided by the Court on a motion for summary judgment or eventually at a jury trial," Def. Opp. at 3 – is entirely unavailing, as "[a] preliminary determination of likelihood of success on the merits . . . is ordinarily tentative, pending a trial or motion for summary judgment."  <u>Goodheart Clothing Co. v. Laura Goodman Enters.</u>, 962 F.2d 268, 274 (2d Cir. 1992).

**Conclusion**

As set forth above, if the Hearing were to be conducted, there is a possibility that findings will be made that would have a preclusive effect upon the instant action, and therefore interfere with the Court's ability to fully adjudicate the issues before it.  In addition, <u>Younger</u> abstention is inapplicable here, and Plaintiff has demonstrated that a preliminary injunction is warranted.[5]

Accordingly, upon the conclusions set forth above, Plaintiff's motion for a preliminary injunction is granted.

The City of New York and the NYPD and their agents, servants, employees, and any parties acting on their behalf are preliminary enjoined from pursuing all further administrative proceedings against Plaintiff Adrian Schoolcraft, pending the

---

[5] Though not raised by Defendants in their briefing, it is worth noting that, to the extent the Anti-Injunction Act, 28 U.S.C. § 2283, is applicable to an administrative proceeding of the type at issue here, the Court would nonetheless be free to enjoin the Hearing since "a federal court properly acts 'in aid of its jurisdiction' where enjoining state proceedings is 'necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" <u>Hemmerick v. Chrysler Corp.</u>, 769 F. Supp. 525, 531 (S.D.N.Y. 1991) (<u>quoting</u> <u>Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Engineers</u>, 398 U.S. 281, 295 (1970)).

resolution of this action or a determination by the City that its departmental proceeding will not have a preclusive effect on the issues raised in this action.

        It is so ordered.


**New York, NY**
**June  28, 2013**                             _____ /s _____
                                      **ROBERT W. SWEET**
                                        **U.S.D.J.**