UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

ADRIAN SCHOOLCRAFT,                                    10-cv-6005 (RWS)

                                                                                       **MEMORANDUM OF**
                           Plaintiff,              **LAW**

    -against-


THE CITY OF NEW YORK, et al.,

                         Defendants.
----------------------------------------------------------------x

## PRELIMINARY STATEMENT

      Plaintiff, Police Officer Adrian Schoolcraft, submits this memorandum of law in support of his motion to strike scandalous, inflammatory and immaterial allegations of racist comments falsely attributed to Officer Schoolcraft that were maliciously inserted without any legitimate purpose into the proposed counterclaims filed by Defendant Steven Mauriello (Docket # 174-1).  Not only are the comments false, inflammatory and irrelevant to the claims being assert by Defendant Mauriello but they were designed to be – and have already been – reprinted and circulated on the internet.  (*See* Exhibit A at p. 2.)   The motion to strike should be granted, and the Court should admonish Defendant Mauriello and his counsel for violating the Court's prior order that that the case should not be tried in the media.

In addition, Officer Schoolcraft submits this memorandum of law to set forth his position on the following matters that are on the Court's calendar for October 16, 2013: (1) Defendant Mauriello's motion to amend his answer to assert counterclaims against Officer Schoolcraft; (2) the City Defendants' motion to lift the injunction on the NYPD administrative trial of Officer Schoolcraft; (3) the scope of the attorney's-eyes-only Confidentiality Order; and (4) the return of Officer Schoolcraft's personal property.

## ARGUMENT

*The Cross-Motion to Strike*

Defendant Mauriello has filed a motion to amend his answer to assert counterclaims against Officer Schoolcraft. The two proposed counterclaims are for tortious interference with prospective economic advantage and for prima facie tort. Both counterclaims arise from the allegation that Officer Schoolcraft made false and defamatory statements to NYPD investigators about the ongoing practice of downgrading reports of serious crimes at the 81st Precinct, which was run by Defendant Mauriello. According to the alleged counterclaims, Officer Schoolcraft made defamatory statements to internal NYPD investigators as part of a scheme the "sole purpose" of which was to exact revenge against Mauriello and to damage his reputation within the NYPD.

In paragraph six of the proposed counterclaims (Docket No. 174-1 at p. 14) Mauriello also alleges that Officer Schoolcraft made a statement to his father to the effect that he did not want to work with "any n_ _ _ _ _" [ a particularly offensive and racist comment] and that he made false statements to NYPD investigators about his concern for predominantly minority community served by the 81st Precinct. (*Id.*)   While these are utterly false and scurrilous allegations, they are also totally irrelevant to the claims being asserted by Mauriello and were inserted into the proposed pleading for the purpose of generating negative publicity and media coverage in an effort to taint Officer Schoolcraft as a racist.  Accordingly, we request that the Court enter an order striking paragraph six of the proposed pleading.

Rule 12(f) of the Federal Rules of Civil Procedure gives the Court the power to strike from a pleading "any redundant, immaterial impertinent, or scandalous matter."  Fed. R. Civ. Pro 12(f).  While motions under Rule 12(f) are not favored, materials will be stricken if they "serve no purpose except to inflame the reader." *Shahzad v. H. J. Meyers & Co.*, 1997 U.S. Lexis 1128 at *40 (S.D.N.Y. Feb. 4, 1997) (Batts, J.).  In addition, a motion to strike "may be granted where the allegations challenged have no real bearing on the subject matter or are likely to prejudice the movant." Id.   Thus, the Court may strike matter from a pleading "if

3

it is likely to be immaterial or its effect would be prejudicial." *Lenihan v. B & E Rock Corp.*, 1997 U.S. Dist. Lexis 12259 at 1 (S.D.N.Y. Jan. 16, 1997) (Scheindlin, J.).

Inflammatory materials, like the ones at issue here, that are placed in a pleading for no legitimate reason are properly stricken. *See, e.g., Morse v. Weingarten,* 777 F. Supp. 312, 319 (S.D.N.Y. 1991) (Lasker, J.) (allegations regarding Michael Milken's criminal conviction and income level stricken because neither allegation bore remotely on the allegations in a securities fraud class action and the allegations serve no purpose except to inflame); *Roberto's Fruit Market, Inc. v. Schaffer*, 13 F. Supp. 2d 390, 396 (E.D.N.Y. 1998) (Spatt, J.) (allegations in RICO action of ties to organized crime, ongoing federal investigations and criminal conduct which could not be predicate acts under RICO were stricken because "even assuming such allegations were true, they are interesting side issues which bear no relation to a RICO claim.")

Accordingly, paragraph six of the Mauriello pleading should be stricken.

*The Motion to Amend Should Be Denied.*

Over three years ago, on August 10, 2010, Officer Schoolcraft commenced this action, naming Mauriello and others as defendants. (Dkt. # 1.) Mauriello and the other NYPD Defendants filed their answer on December 2, 2010. (Dkt. #. 54.)

4

Over the past three years, the parties have engaged in extensive motion practice, thousands of documents have been exchanged, the plaintiff has been deposed for three full days of testimony, inspections of the 81st Precinct and Jamaica Hospital have been conducted, and the depositions of the defendants have begun.

After all this time and litigation, Mauriello asks this Court for leave to assert two counterclaims against Officer Schoolcraft for tortious interference with prospective economic advantage and prima facie tort. The motion should be denied for several reasons: first, Mauriello delayed for over three years in asserting these claims; second, the claims are barred by the statute of limitations and do not relate back to the time of the commencement of this action; third, the claims are meritless, fail to state a plausible claim for relief, and his claims for damages are belied by Mauriello's recent testimony in the recent stop-and-frisk trial where he testified that after Officer Schoolcraft made his allegedly defamatory statements to NYPD investigators he was rewarded by a transfer by his supervisor to a position as the executive officer of a larger department within the NYPD. (*See* Exhibit B at p. 1831.)

A motion to amend a pleading is addressed to the sound discretion of the trial court and considerations of undue delay, bad faith, and prejudice to the opposing party are the touchstones of a trial court's discretionary authority to deny

leave to amend. *Krumme v. Westpoint Stevens, Inc.,* 143 F. 3d 71, 88 (2d Cir. 1998). One of the most important considerations in determining whether to permit an amendment is whether the amendment would delay the final disposition of the action. *Id*.

Mauriello's proposed amendment will require an additional round (or two) of document discovery on Mauriello and on the specifics of the extensive downgrading at the 81st Precinct involving thousands of misreported or unreported crimes. The amended will also require the deposition of several other senior NYPD superiors relating to the alleged damage to Mauriello's reputation. Thus, the claims will undoubtedly delay the final resolution of this action, which is already over three years old. Under these circumstances, the Court should deny the motion. *See, e.g., Continental Bank, NA v Mayer,* 10 F. 3d 1293 (7th Cir. 1993) (district court did not abuse its discretion in refusing to allow defendant to amend answer to add counterclaims where the defendant waited more than two years and the amendment would require additional discovery); *THK Am. v. NSK,* 157 F. R. D. 660 (N.D. Ill. 1994) (defendant's motion to amend answer to assert counterclaims denied where the defendant waited two years and discovery would have to be reopened).

The proposed counterclaims are also barred by both the three-year

6

limitations period for tort claims and the one-year limitation period for defamation. CPLR §§ 214 & 215 (3); *see also Besicorp Ltd. v. Kahn,* 290 A.D.2d 147, 736 N.Y.S. 2d 708, 711-712 (3d Dept. 2002) (three-year period applies to tortious interference claim and one-year period applies to claims for damage to reputation). Indeed, since the gravamen of Mauriello's claim is for alleged damages to his reputation, he cannot circumvent the one-year limitation period by labeling the claims as a tort. *Entertainment Partners Group v. Davis*, 198 A.D. 2d 63, 603 N.Y.S. 2d 439 (1st Dept. 1993).

     Nor can Mauriello take advantage of the relation-back doctrine. Rule 15(c) permits relation-back where the amendment arose of out the conduct, transaction or occurrence set out in the original pleading. FRCP 15(c)(1)(B). Yet here Mauriello fails to point to anything in his original answer that in any way related to the claims he now seeks to interject into this case. Although Officer Schoolcraft's pleadings set forth Officer Schoolcraft's his actions in reporting misconduct and corruption to NYPD investigators, there is nothing in *Mauriello's* original answer that sets out any allegation from which his proposed counterclaims arise and nothing in that answer provides Officer Schoolcraft with notice, directly or indirectly, of the possibility or potential that Mauriello would or could assert a claim for damages to his reputation.

7

Although Mauriello makes a cryptic reference to CPLR § 203(f), he fails to explain how that procedural section of New York law could be properly applied in this Court. *In re Mission Contr. Lit.*, 2013 U.S. Dist. Lexis 124926 at *45 n. 16 (S.D.N.Y. 2013) ("The standard for evaluating whether a proposed amendment relates back is a procedural question and is therefore governed by federal law"). Moreover, even if that provision of New York procedural law did apply here, the there is nothing in the allegations of Mauriello's original answer, as noted above, that sets out any allegation from which his proposed counterclaims arise.

Finally, the proposed counterclaims against Officer Schoolcraft are exceedingly weak on their face for two key reasons. First, Officer Schoolcraft, as a sworn public officer, was reporting corruption and misconduct to NYPD investigators, and Mauriello fails to plead facts that set forth a plausible claim that the "sole" reason for Officer Schoolcraft's action was malice against Mauriello. *Compare Raedle v. Credit Agricole Indosuez*, 670 F. 3d 411, 417 (2d Cir. 2012) (providing negative job reference does not constitute tortious interference by wrongful means). Second, the claim for damages is belied by Mauriello's testimony before Judge Scheindlin in the stop-and-frisk trial in *Floyd v. The City of New York* that nine months after Officer Schoolcraft reported in the Fall of 2009 misconduct and corruption at the 81st Precinct, Mauriello's supervisors rewarded

him with a lateral transfer to a position as an executive officer of a larger department within the NYPD. (*See* Exhibit B at p. 1831.) Indeed, Mauriello specifically denied that the transfer was a demotion, a judicial admission that is fatal to his claim for reputational damages. (*Id.;* Transcript at p. 1831, line 25.)

*The Injunction on the NYPD Administrative Trial Should Not Be Lifted.*

Four months after the Court's June 28, 2013 decision enjoining the City Defendants from trying Officer Schoolcraft in their own forum, the City Defendants seek to lift the injunction because they are now willing to agree that their "trial" will not have any preclusive impact in this case. But the danger of collateral estoppel was, as we pointed out in our initial motion, only one of several reasons for staying the NYPD trial.

An interceding NYPD administrative trial of Plaintiff sought by the City Defendant at this point in active pretrial litigation of the instant matter will interfere with the prosecution of this action and will require the expenditure of time and energy that should be spent getting *this* action ready for trial. It will also require Officer Schoolcraft to defend charges leveled against him by the very supervisors who are defendants in this action and permit the defendants to sit in judgment over the plaintiff. It will give the defendants – who have already deposed Officer Schoolcraft for three days lasting over 21 hours of actual

9

examination – yet another opportunity to examine him again.

These are precisely the same considerations that properly led the District Courts in *Alvarez v. City of New York*, 31 F. Supp. 2d 334 (S.D.N.Y. 1998) and *Mullins v. City of New York*, 554 F. Supp, 2d 483 (S.D.N.Y. 2008) to enjoin the NYPD from putting on trial in its own administrative forum police officers who had filed federal claims against the NYPD.  Those considerations, putting aside considerations of issue preclusion and claim preclusion, apply with equal force here and militate strongly toward maintaining the Court's injunction.

The scheduling of depositions and the pretrial circumstances since the Court's June 28, 2013 ruling also support a decision denying the City Defendants' application to lift the injunction.  First, the City Defendants fail to address their failure to make this request sooner and the parties are now in the midst of a heavy discovery schedule that gives Officer Schoolcraft only three more months to extract discovery from the defendants, who resist even the most basic discovery requests at every opportunity.  Indeed, in late August of 2013, the parties forwarded to the Court an extensively negotiated discovery plan that the Court entered on September 5, 2013 (Dkt. # 162).  The City Defendants did not raise the prospect of an administrative trial at that time, and the Court set deadlines in accordance with the parties' expectations about the amount of time required to

complete discovery and otherwise prepare for trial.

Finally and most notably, the City Defendants do not provide the Court with any explanation for why they are now so eager to try Officer Schoolcraft in their own forum.  Indeed, the Court should take judicial notice of the fact that the *political* landscape of the City Defendants and the NYPD is changing.  The results of the September 2013 Democratic Primary for New York City Mayor have made clear that the current administration of the NYPD will likely be changing by the end of this year.  Hence it seems clear that the only reason why the NYPD is now so eager to try Officer Schoolcraft has nothing to do with the genuine needs of the NYPD but with its current administration's attempt to discredit Officer Schoolcraft with an "adjudication" before the end of the year.  These facts, therefore, underscore the need to maintain the *status quo*.

*The AEO Stipulation*

The City Defendants continue to attempt to create confusion about the status of the AEO designations.  The Court should make clear that it has ruled that the Plaintiff, Officer Schoolcraft, is entitled to review all documents and recordings pertaining to all interviews of witnesses and defendants by NYPD investigators.

In addition, the Court should rule that all the materials designated as AEO by the City Defendants for the protection of arrestees can be provided to Officer

11

Schoolcraft because the City Defendants have already redacted the names of the individuals and all other personally identifying information from the materials that have been produced.

Finally, the Court should rule that the only materials that are properly the subject of the AEO limitation are the designated disciplinary records of the individual defendants (subject to a later motion by the plaintiff showing that the disciplinary records are relevant to the issues in this case), and the criminal and financial background checks conducted by the NYPD of Officer Schoolcraft's father and sister.

*The Return of Officer Schoolcraft's Property*

The City Defendants, having delayed this issue for four months, now have agreed to return Officer Schoolcraft's digital recorder that was seized from Officer Schoolcraft's apartment after Officer Schoolcraft's release from the psychiatric ward of Jamaica Hospital. By that concession, the City Defendants admit that their arguments about their right to keep the recorder and the Court's lack power to order its return were not substantially justified. Since there was no proper basis at all for the original position, the Court should sanction the City Defendants for taking an unjustified discovery position pursuant to FRCP 37(a)(5)(A). The Court should also order the City Defendants to forthwith return the digital recorder,

which is still in the possession of the City Defendants.

As to the rest of Officer Schoolcraft's personal property, the City Defendants should be required to provide a sworn statement by a responsible individual as to the whereabouts and existence of all of Officer Schoolcraft's property taken from his person, his home and from his lockers at the 81st Precinct. Among other things, the statement should affirmatively state that the second recording device and all papers, including crime reports that were at Officer Schoolcraft's home or in his locker, have been searched for and located or not located.

*Conclusion*

The cross-motion to strike should be granted and the motion to amend Mauriello's answer should be denied. In addition, the Court should make clear to the defendants that the AEO limitation has been lifted except for those clearly defined matters pertaining to designated disciplinary records and criminal and background checks on Officer Schoolcraft's father and sister. Finally, the Court should direct the City Defendants to return forthwith Officer Schoolcraft's personal property, the Court should award plaintiff costs and expenses for having to make the motion, and the City Defendants should be directed to provide an affidavit attesting to that fact all of Office Schoolcraft's property has been searched

for and returned to the extent located.

Dated:  October 15, 2013

                        LAW OFFICE OF
                        NATHANIEL B. SMITH

                            *s/NBS*

                        By:_____
                          Nathaniel B. Smith
                        111 Broadway -- 13th Floor
                        New York, New York 10006
                        212-227-7062
                        Attorney for Plaintiff


                        Of Counsel,
                        John D. Lenoir