UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ADRIAN SCHOOLCRAFT,

                                        Plaintiff,                            REPLY DECLARATION

                        -against-

                                                                              10-CV-06005 (RWS)

THE CITY OF NEW YORK, et al.,

                                        Defendants.
-----------------------------------------------------------------X

                I, WALTER A. KRETZ, JR., declare under penalty of perjury that

the following is true and correct:

                1.        I am a member of Scoppetta Seiff Kretz & Abercrombie,

attorneys for defendant Deputy Inspector Steven Mauriello in his official and

individual capacities.  I submit this Declaration in further support of his motion for

leave to amend his Answer to assert counterclaims, and in opposition to plaintiff's

cross-motion to strike an allegation in the proposed counterclaims relating to

plaintiff's use of "the N word".

Plaintiff's Cross-Motion to Strike

                2.        First, with respect to plaintiff's cross-motion, it apparently

was triggered not by the content itself of the proposed counterclaims, but instead,

by the publication in the Village Voice, three weeks after the filing of our motion,

of the fact that the motion had been filed, including a recitation of its content.  For

the most part, the report fairly recited the content of the motion papers and the

content of the proposed counterclaims, and did not sensationalize the allegation

with respect to plaintiff's use of the N word.  Having played to the press so

extensively, however, plaintiff apparently was distressed by the publication of

such an unflattering report, rather than by the earlier filing of the proposed

pleading alleging such offensive conduct.    The story was written by a reporter who has written so many reports favorable to the plaintiff, including recent articles relating to issues raised at our conferences before the Court.  He also wrote a book about the plaintiff with his apparent cooperation and the cooperation of plaintiff's father.  Apparently plaintiff (or his father) could not handle a taste of their own medicine.

3.      Second, as an officer of the court, I can assure the Court there has been no contact with the press by me, my office, Steve Mauriello or anyone on his behalf.   In fact, contrary to the assertion by plaintiff's counsel, it is clear from the news report in question that the reporter, throughout the story, was quoting my filed declaration and the proposed counterclaims, and not anything I might have said in a conversation with him.  I have never met nor spoken to the reporter, Graham Rayman, and I think the Court might understand that my client and I do not have a warm and fuzzy relationship with him.  His book, *The NYPD Tapes – A Shocking Story Of Cops, Cover-ups And Courage*, tries to exalt the plaintiff as a hero, while trying to demonize Steve Mauriello and others in the NYPD.  The truth, of course, is quite different.  I can assure the Court, after all that has been written, that we have no desire to now start trying this case in the media.  We will await our time before a jury.

4.      Third, with respect to the cross-motion to strike the allegation of plaintiff's use of the N word, as offensive as the quoted sentiment is, there is absolutely nothing inappropriate about alleging it in the proposed counterclaims. The quote is from a recording plaintiff made of himself, and it is not the only evidence of his racist sentiments.  We selected it because it relates directly to the

plaintiff's purported motivation for reporting alleged wrongdoing in the NYPD. More accurately, it is an indication the plaintiff did not have the motive he pretended to have -- to protect the residents of the predominantly African American community served by the 81st Precinct.  Nor was plaintiff interested in protecting his fellow officers, as he also pretended.  Instead, plaintiff's motive, as revealed in the recordings, was to do harm to Steve Mauriello – according to the plaintiff, to "f- - - Mauriello over."

5.      Fourth, with respect to the cross-motion, as I indicated in my Declaration in support of our motion for leave to amend the Answer, plaintiff's prior counsel produced many of plaintiff's recordings, but deleted a portion of at least one recording, which actually was brought to our attention by the Rayman book.  We recently learned of that deleted portion and listened to it on a copy of the full recording apparently retrieved and produced by the NYPD.  In it, plaintiff expresses his motivation for reporting what he did to NYPD's Quality Assurance Division, as he practiced and refined his pitch in a conversation with his father. What we learned, in addition to the generalized resentment of the NYPD and plaintiff's fellow officers, and his apparent disdain for the people of the community, was his very directed revenge against Steve Mauriello – apparently because he signed off on plaintiff's sub-standard evaluation, and because he did nothing to get plaintiff's shield and gun restored, after they were taken away by an NYPD psychiatrist.

6.      Finally, with respect to the cross-motion, nothing we have alleged is irrelevant and nothing is inflammatory.  Rather, the quoted recordings provide a true measure of the plaintiff and help reveal what he really was up to,

which in turn casts severe doubt on his claims.  The Court should know that at

plaintiff's deposition, just three weeks ago, we provided him an opportunity to in

some way disavow the quote containing the N word that he seeks to strike from

the counterclaims.  Instead, while claiming he was merely quoting a statement of

one of his partners four years earlier, which is not at all credible, he then said in

his deposition he had no problem with the statement he attributes to his partner.

(See Exhibit 1.) Though that former partner transferred out of the 81st Precinct in

2006, plaintiff spoke to him just a few days before the events of October 31,

2009.  We will see what the former partner has to say on the subject, but in any

case plaintiff's sentiment is contrary to what he has attempted to portray, which is

critical to whether he has any credibility and his claims have any validity.

Mauriello's Proposed Counterclaims

       7.    The proposed counterclaims state claims for tortious

interference with Steve Mauriello's relationship with the NYPD, and they properly

allege prima facie tort – which essentially involves willful and malicious conduct

whose sole purpose was to damage the career and reputation of Steve Mauriello.

       8.    Plaintiff's attorney asserts the counterclaims have no merit

because it is implausible that plaintiff acted as he did for the "sole purpose" of

doing Mauriello harm.  That might be fair if you presume we were dealing with

rational actors, and nothing else were known.  Whether or not we are dealing

with rational actors, we do know plaintiff's recording of himself and his father

makes it extremely plausible that plaintiff was determined to hurt Mauriello, and it

provides an explanation for plaintiff's unusual behavior that was not previously

discernible.  Now, it all makes sense – plaintiff was seeking revenge against

Steve Mauriello for signing off on his below-par evaluation, rather than raising his score, and for somehow orchestrating plaintiff's assignment to modified duty, with his shield and gun removed.  Plaintiff and his father schemed with each other to mask their desire for revenge, but that is what they clearly were seeking, as we allege in the proposed counterclaims.

9.      As for the harm Steve Mauriello has suffered, it is true he was transferred in July 2010 form the 81st Precinct, where he was Commanding Officer, to the NYPD's Transit Division for the Bronx and Queens, where he is the Executive Officer, the position below Commanding Officer.  He was told at the time he did a good job at the 81st Precinct and the new assignment was a lateral transfer.  He has been there for more than three years, however, and his future and the extent of the harm he will end up suffering is uncertain.  Whether that harm, together with all of the other harm he has suffered in the form of emotional distress and reputational harm, supports an award of one dollar or one million dollars remains to be seen.

10.      With respect to discovery, contrary to plaintiff's argument, the counterclaims only modestly expand the scope of discovery to address Steve Mauriello's harm.  All other evidence relating to the counterclaims would be as fully litigated as the parties choose with respect to the defense against plaintiff's claims, whether or not there were any counterclaims.  In addition, the counterclaims were issued before plaintiff's deposition was completed or any other depositions were taken.

11.      Though plaintiff faults defendant Mauriello for seeking leave to assert the counterclaims at this time, the case law is clear in the Second

Circuit that the lapse of time or delay, absent a showing of bad faith or undue prejudice, does not provide a basis for the Court to deny the right to amend. Here, there has been no bad faith by Steve Mauriello, nor is there any undue prejudice to the plaintiff.

12.     The proposed counterclaims are timely, as the statutes of limitation ultimately are deemed to have been tolled as of the date of the filing of the original complaint, as a matter of applicable federal and state law.  See Defendant Mauriello's Reply Memorandum, Point III.

13.     Thus, it would seem that the greater fairness to the parties would be to have the counterclaims resolved in this action, just as the state law claims of malpractice against the medical defendants are being resolved in this action, as they all arise from the same common nucleus of operative fact as plaintiff's claims.

## CONCLUSION

14.     Based upon the foregoing, it is respectfully requested that defendant Mauriello's motion for leave to file the proposed Answer Amended With Counterclaims be granted, that plaintiff's motion to strike allegations from the proposed counterclaims be denied, and that the Court grant such other relief as it deems just.

Declaration executed on October 22, 2013.

_____
Walter A. Kretz, Jr., (WK-4645)