DAGASCHCps

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ADRIAN SCHOOLCRAFT,

            Plaintiff,

       v.                              10 CV 6005 (RWS)

CITY OF NEW YORK, et al.,

            Defendants.

------------------------------x
                                       New York, N.Y.
                                       October 16, 2013
                                       12:00 p.m.

Before:

                  HON. ROBERT W. SWEET

                                       District Judge


                       APPEARANCES


LAW OFFICE OF NATHANIEL B. SMITH
     Attorneys for Plaintiff
BY:  NATHANIEL B. SMITH, ESQ.

     -and-

JOHN LENOIR, ESQ.
     Attorney for Plaintiff


MICHAEL A. CARDOZO
     Corporation Counsel for
     The City of New York
BY:  SUZANNA PUBLICKER METTHAM, ESQ.
     RYAN G. SHAFFER, ESQ.
     Assistant Corporation Counsel
```

```
 1   APPEARANCES (Cont'd)

 2   MARTIN CLEARWATER & BELL LLP
          Attorneys for Defendant Jamaica Hospital
 3   BY:  GREGORY J. RADOMISLI, ESQ.

 4   CALLAN, KOSTER, BRADY & BRENNAN, LLP
          Attorneys for Defendant Aldana-Bernier
 5   BY:  MEREDITH B. BORG, ESQ.

 6   SCOPPETTA SEIFF KRETZ & ABERCROMBIE
          Attorneys for Defendant Mauriello
 7   BY:  WALTER A. KRETZ, JR., ESQ.

 8

 9            (In open court)

10            THE COURT:  Schoolcraft.

11            I think I'm going to take as my text the city's letter

12   of today.  But before I do that, can we -- are you resolved on

13   the deposition that was on or isn't on today?  What's the story

14   on that?

15            MR. SMITH:  Your Honor, I think we have a tentative

16   agreement, subject to some deposition objections, to the 7th of

17   November as a date that's acceptable to the plaintiff and some

18   of the defendants.  There might be a continuing objection by

19   the city about that.

20            THE COURT:  When do you want it?

21            MS. METTHAM:  November 7th, your Honor.  We're

22   available.

23            THE COURT:  OK.  The 7th for the deposition.  So

24   that's resolved.

25            The rifle, there's no issue, right?  No rifle.
```

1            MR. SMITH:  I took your Honor's lead on that.  I said
2   it's not my client's.  If the father wants --
3            THE COURT:  Let's try to minimize the pain today.  No
4   rifle.  All right.  Unless anyone has got something else to
5   say, no rifle.  OK.
6            No sanctions.  The city's position on the recorder, I
7   mean, they had a good-faith basis for hanging on to the
8   recorder, so no sanctions.
9            Sworn statement for who stole the banana, who took
10  what out of the locker:  No.  You can have a deposition of
11  anybody you want that was involved in the search of the locker.
12  That's fine.  Or you can put an interrogatory, whatever you
13  want to do.  But it will be part of the regular discovery.
14           Incidentally, just because I'm going through this,
15  don't hesitate to tell me if there's something that you think I
16  should know that I don't.
17           The injunction on the city's case against Schoolcraft,
18  I'll reserve decision.  We'll have an opinion on that subject.
19  Since I wrote on it before, I suppose I should write on it
20  again.
21           Eyes only.  Look, please, I hope we can get this
22  resolved now and forever, although obviously we won't.  I think
23  Schoolcraft should have available all the statements of any
24  witness in connection with the episode which gave rise to the
25  cause of action.

1         MS. METTHAM:  City defendants agree with that, and we
2    believe it's required.
3         THE COURT:  Yes.  Now, is there anything more than
4    that that Schoolcraft thinks he needs now?  It's perfectly
5    right to -- it can be raised at any time.  But now, are there
6    any other things that we should -- we need -- let me say, I
7    leave aside the general proposition of wiping out the
8    confidentiality order.  That was hard fought and it was entered
9    into by the parties.  I'm not going to change the order.  But I
10   will certainly hear -- and as far as the procedures are
11   concerned, we seem to be meeting on a regular basis.  And so
12   we'll just deal with -- I'm not going to be fussy about who has
13   to do what with which and whom to raise an issue under the
14   confidentiality order.  Perhaps I should.  But I do want to try
15   this get this whole thing resolved so that we can try it.
16        So anything else that Schoolcraft needs at the moment?
17        MR. SMITH:  Yes, your Honor.  And I pulled out, there
18   are all of these documents that have been designated as
19   attorney's eyes only on the basis that they pertain to the
20   names or identifying information about arrestees.
21        THE COURT:  I'm not clear.  Explain arrestees to me.
22        MR. SMITH:  What I can do, your Honor, is, I can hand
23   up --
24        THE COURT:  No, God no.  No.  I want to know what the
25   issue is about --

1             MR. SMITH:  All right.  Well, I think, for example,
2    the first document that I want to be able to show my client is
3    a document that makes references to certain investigations
4    about the downgrading of crimes.  But the documents themselves
5    have the names of the individual arrestees.
6             Let me back up.  Somebody comes in to meet one and
7    says, I was just beat up and robbed of my PSP.  And the officer
8    takes down the name and the information.  And then his
9    supervisor tells him, Uh, well, it's really not a robbery, it's
10   lost property.  And so it gets recorded as lost property.
11   That's a downgrading of crime.  It's one of the issues in the
12   case.  And the city is to produce --
13            THE COURT:  Wait a minute.  Stop right there.  It's an
14   issue in the case because Schoolcraft's position is that these
15   events, which are the subject of a lawsuit, resulted from his
16   whistle blowing, or his threat to -- something like that.
17   Right?
18            MR. SMITH:  Yes.  Went to internal investigators
19   within the NYPD.
20            THE COURT:  Now, are we going -- what is this issue
21   going to -- how is this issue going to materialize in the case,
22   from your point of view?
23            MR. SMITH:  From my point of view, what we need to be
24   able to do is establish a foundation to show that, for example,
25   three weeks before the Halloween night home invasion, I went to

1     the Internal Affairs Bureau and handed them specific examples,
2     more than a dozen, of downgrading that was something that was
3     going on on a rampant basis in the 81.
4              THE COURT:  Now, are there any documents that relate
5     to what you call the downgrading?
6              MR. SMITH:  Yes.  And a lot of them have been
7     designated as attorney's eyes only.  And the names of the
8     individuals who were the arrestees or the complainants have
9     been redacted from all those documents, so that they are
10    literally blacked out of what I have.  And I just want to be
11    able to give this to Schoolcraft.
12             Since the names are redacted, I don't see any reason
13    why he shouldn't see that information.
14             THE COURT:  All right.  Let me hear from the city.
15             MS. METTHAM:  Your Honor, I would first state that the
16    fact that plaintiff was, quote/unquote, whistle-blowing or that
17    he did bring documents is not in dispute.  And I believe that
18    that is the critical question for trial, is whether he was
19    bringing issues to the attention of the Internal Affairs Bureau
20    or the quality assurance division.  The fact of each of those
21    separate instances is extremely collateral and not relevant to
22    this matter.  And if we go into this, we're getting into dozens
23    of incidents involving non-parties to this case, allegations
24    against dozens of police officers whether or not an assault was
25    an assault in the third degree or a robbery in the third

1    degree, what happened there.
2        THE COURT:  OK.  I'm not going to reach any conclusion
3    about materiality and admissibility.  We're talking discovery.
4    And if the names are blocked out I don't see any reason not to
5    give it to them.
6        Now, let me also say, I'm aware of the undercurrents
7    here.  And if there is any revelation that comes out of this
8    confidential material, because we know it is confidential, and
9    if the city chooses to pursue that as a contempt, it will have
10   my enthusiastic support.
11       So we're going to play, this is going to be played
12   straight.  But I don't see any reason not to have that
13   information given to Schoolcraft, since the arrestees' names
14   are blanked out.
15       MS. METTHAM:  Just a couple issues, your Honor.  One,
16   I would mention that at the last oral argument we had on
17   September 25th, you addressed this issue and denied it.  I just
18   would like to bring that to the Court's attention.
19       THE COURT:  Yes, I know.  Consistency is the hobgoblin
20   of small minds, and I really, to be honest, I was trying to
21   focus on the events, the so-called Halloween events, and I had
22   not focused on the arrestees.
23       MS. METTHAM:  Your Honor, may I just bring one other
24   issue to your attention, which is that the category, we
25   describe them as non-party arrestees, but they often overlap

1  with other categories, such as non-party discipline.  So, for
2  example, in these records, IAB was investigating non-party
3  police officers for their handling of these instances.  So, for
4  example, police officers --
5          THE COURT:  That hasn't come up.
6          MS. METTHAM:  That's what these records are, that he's
7  looking to see, is that IAB was investigating the police
8  officers who handled the cases that Schoolcraft brought to
9  IAB's attention, and that some those officers were disciplined
10 for how they had handled those instances of public -- the crime
11 complaints.  So that is my other concern with these records, is
12 that they're not just about non-parties, but they're also about
13 police officer discipline and police officer investigation
14 about non-parties.
15         THE COURT:  But the fact of those investigations and
16 their outcome conceivably could be material now.  So I think I
17 would permit it.  Again, there is this confidentiality aspect.
18 And if any of this is publicized, that's something else.  That
19 will be a subject of considerable anxiety on everybody's part.
20         MS. METTHAM:  The final issue is that I did notice on
21 a further review that, some of these documents, not every one's
22 name was redacted.
23         THE COURT:  You can do that.
24         MS. METTHAM: So I would just ask that, before, that
25 plaintiff review the documents without, you know, without the

1	pages -- there were a few names that were missed.
2	          MR. SMITH:  That's fine with me, your Honor, as long
3	as we do that today.
4	          MS. METTHAM:  I cannot say that we can go through a
5	thousand documents today or tomorrow.
6	          THE COURT:  Oh, no.
7	          MR. SMITH:  OK.  Well, I mean, if you just -- your
8	Honor, it's acceptable to me if the city designates within a
9	reasonably prompt period of time what documents they want me to
10	redact.
11	          THE COURT:  Any names of any arrestees are redacted.
12	          MR. SMITH:  Right.
13	          THE COURT:  OK.  Is there anything else we need to do
14	today?
15	          MR. SMITH:  Yes.  The pressing issue that I have is --
16	          THE COURT:  Oh, on the -- yes.  The Mauriello problem.
17	          MR. SMITH:  Yes.
18	          THE COURT:  I'm aware of it.  I've got your papers.
19	Does anybody want to add anything?  That's fine.  I'd be
20	pleased to hear it.
21	          MR. SMITH:  Yes, I do want to add something.  It's one
22	paragraph in the counterclaims makes these allegations of
23	racism.
24	          THE COURT:  I've read it.
25	          MR. SMITH:  And now there's a *Voice* article about it.

1   And when I got a phone call from the *Village Voice* reporter
2   asking about comment, I said, I don't have any comment.  And
3   that was now then picked up in the article as, well, Mauriello
4   says all these terrible things about Schoolcraft and Smith says
5   he has no comment.  And I did that because --
6              THE COURT:  Do you all think -- is there any way you
7   think you all could try this case in the press, and not before
8   me?  I mean, is there any way you can just decide that you want
9   to have competing articles in the press and forget about the
10  case?  Is that possible?
11             MR. SMITH:  I'm afraid not, your Honor.  I'm sorry.
12             THE COURT:  OK.
13             MR. SMITH:  But we can move closer towards a trial
14  before your Honor if your Honor grants my motion and strikes
15  paragraph 6.
16             THE COURT:  I understand.  I understand the gravamen
17  of your motion.
18             Anything you wanted add?
19             MR. KRETZ:  Yes, your Honor.  I just received these
20  motion papers yesterday.  We had agreed on adjourning the
21  motion to negotiation week.  So I would like an opportunity to
22  submit a reply and opposition on those papers.
23             THE COURT:  Yes.  Anything else?  On the motion to
24  strike, I'll reserve.  And the motion to dissolve the stay of
25  the disciplinary proceeding.

1          MR. KRETZ:  Your Honor, if I may, do we appear next
2     week to argue the motion relating to counterclaims, or do you
3     just want further submission?
4          THE COURT:  If you would like to, I always enjoy
5     seeing you all and it would be sort of a, I don't know, I'd
6     feel sort of lonely if on next Wednesday you don't come by.
7     But if you should decide to submit it, it isn't that
8     complicated.  That would be perfectly acceptable.
9          OK.  Thank you.
10         MS. METTHAM:  Thank you, your Honor.
11                              o0o