UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

ADRIAN SCHOOLCRAFT,

               Plaintiff,

   - against -

CITY OF NEW YORK, et al.,

               Defendants.

----------------------------------------X

```
┌─────────────────────────────┐
│ USDC SDNY                    │
│ DOCUMENT                     │
│ ELECTRONICALLY FILED         │
│ DOC #:                       │
│ DATE FILED: 11-21-13         │
└─────────────────────────────┘
```

10 Civ. 6005 (RWS)

OPINION

A P P E A R A N C E S:

   <u>Attorneys for the Plaintiff</u>

   LAW OFFICE OF NATHANIEL B. SMITH
   111 Broadway
   Suite 1305
   New York, NY 10006
   By:  Nathaniel B. Smith, Esq.

   <u>Attorneys for the City Defendants</u>

   MICHAEL A. CARDOZO
   CORPORATION COUNSEL OF THE CITY OF NEW YORK
   100 Church Street
   New York, NY  10007
   By:  Suzanna P. Mettham, Esq.

   <u>Attorneys for Jamaica Hospital Medical Center</u>

   MARTIN CLEARWATER & BELL LLP
   220 East 42nd Street, 13th Floor
   New York, NY 10017
   By:  Gregory John Radomisli, Esq.

1

Attorneys for Dr. Isak Isakov

IVONE, DEVINE AND JENSEN, LLP
2001 Marcus Avenue
Lake Success, NY 11042
By:  Brian Lee, Esq.


Attorneys for Defendant Mauriello

SCOPPETTA SEIFF KRETZ & ABERCROMBIE
444 Madison Avenue, 30th Floor
New York, N.Y. 10022
By:  Walter A. Kretz, Jr., Esq.


Attorneys for Lillian Aldana-Bernier

CALLAN, KOSTER, BRADY & BRENNAN, LLP
One Whitehall Street
New York, NY 10004
By:  Bruce M. Brady, Esq.

**Sweet, D.J.**

Defendant City of New York ("City" or "City Defendants"), Defendant Deputy Inspector Steven Mauriello ("Mauriello") and Defendants Jamaica Medical Center ("JMC"), Dr. Isak Isakov ("Isakov") and Dr. Lillian Aldana-Bernier ("Aldana-Bernier", collectively with JMC and Isakov the "Medical Defendants") have made several motions before the Court. City Defendants have moved for the lifting of the injunction dated June 28, 2013, which enjoined all further administrative proceedings by the New York Police Department ("NYPD") against Plaintiff Adrian Schoolcraft ("Plaintiff" or "Schoolcraft"). Defendant Mauriello has moved for leave to file an answer amended with counterclaims. Medical Defendants have moved for a protective order. Plaintiff has moved to strike certain portions of Mauriello's counterclaims and for deposition expenses related to the cancelling of the Aldana-Bernier deposition.

For the reasons set forth below, City Defendants' motion is denied, Defendant Mauriello's motion is denied and Medical Defendants' motion is denied in part. Plaintiff's motions are denied.

3

**Prior Proceedings**

A detailed recitation of the facts of the case is provided in this Court's opinion dated May 6, 2011, which granted in part and denied in part Defendant Jamaica Hospital Medical Center's motion to dismiss. See Schoolcraft v. City of N.Y., 10 Civ. 6005, 2011 WL 1758635, at *1 (S.D.N.Y. May 6, 2011). Familiarity with those facts is assumed.

**City Defendants' Motion to Lift the Injunction Is Denied**

Prior Proceedings and Facts

In or about May 2013, Plaintiff became concerned that City Defendants may claim the defense of collateral estoppel regarding disciplinary charges against Plaintiff by the NYPD in future motions and/or trial of the instant matter. On June 10, 2013, Plaintiff filed an order to show cause as to why an order should not be issued staying all further administrative proceedings against Plaintiff by the City and the NYPD. At the time, an administrative hearing was scheduled to begin on June 17, 2013 (the "Hearing"):

There [were] two disciplinary matters pending against

4

Plaintiff.  The first charges that on October 31, 2009
– the date of the incident giving rise to the instant
action – Plaintiff failed to comply with orders, was
absent from work without leave, failed to safeguard
Departmental property, impeded an investigation, and
failed to surrender a rifle in his possession.  The
second, which primarily deals with Plaintiff's conduct
after October 31, 2009, charges that Plaintiff failed
to appear at the Department Advocate's Office, was
absent from work without leave, failed to make himself
available to be examined by a Department Surgeon,
failed to report to his resident precinct, failed to
appear at the Department Advocate's Office for
restoration of duty, failed to notify the Department
of his current residence, and impeded investigators.

Schoolcraft v. City of N.Y., 10 Civ. 6005, 2013 WL 3283848, at
*2 (S.D.N.Y. June 28, 2013) ("Schoolcraft I"). (internal
citations omitted).  The Court granted the order and temporarily
stayed the Hearing against Plaintiff until July 1, 2013.

The parties then submitted briefing on two central
issues: "(1) whether the outcome of the Hearing would have a
preclusive effect, pursuant to the doctrine of collateral

5

estoppels, so as to interfere with the Court's ability to fully adjudicate this action; and (2) even if so, whether the Court can and should enjoin the Hearing."  The Court granted the preliminary injunction in its June 28, 2013 Opinion, and enjoined all further administrative proceedings by the NYPD against Plaintiff (the "Injunction").  Schoolcraft I, 2013 WL 3283848, at *7.  The Court found that the Hearing could have a preclusive effect and that the Hearing was enjoined.  Id.

City Defendants moved to lift the Injunction via letter on October 9, 2013.  In its letter, City Defendants state that it has agreed to not raise the affirmative defense of collateral estoppel in the instant matter concerning any issues addressed in the NYPD disciplinary Hearing.  The parties submitted briefing on the motion, and oral arguments were held on October 16, 2013, with supplemental arguments on November 13, 2013.  The matter was marked fully submitted on November 13, 2013.

The Hearing currently seeks disciplinary action for (i) Plaintiff's failure to appear at the NYPD Department Advocate's Office while on suspension and absent without leave on or about December 3, 2009; (ii) Plaintiff's refusal to allow entry to an NYPD Surgeon who sought to examine Plaintiff on or

6

about December 3, 2009; (iii) Plaintiff's failure to report to his precinct; (iv) Plaintiff's failure to report to the NYPD's Advocate Office on or about December 4 and December 7, 2009; (v) Plaintiff's failure to reside within the City of New York or Westchester, Rockland, Orange, Putnam, Nassau or Suffolk Counties and failure to notify the NYPD of his residence and telephone number; and (vi) Plaintiff's impediment of NYPD investigators who were attempting to notify Plaintiff of his ability to be restored to duty on January 31, 2010.

## The Motion to Lift the Injunction Is Denied

At issue is whether City Defendants' waiver of collateral estoppel is sufficient to warrant the removal of the Injunction. In Schoolcraft I, the Court set the Injunction "pending the resolution of this action or a determination by the City that its departmental proceeding will not have a preclusive effect on the issues raised in this action." Schoolcraft I, 2013 WL 3283848, at *7. While the City has waived collateral estoppel on the issues raised in the Hearing, Plaintiff objects to the lifting of the Injunction. As such, the Court will reexamine whether the Injunction should be maintained in place at this time.

As previously noted in Schoolcraft I, whether the Court should maintain the Injunction must be analyzed within the framework of Younger v. Harris, 401 U.S. 37 (1971). Younger held that "principles of federalism and comity preclude a district court from interfering with pending state criminal proceedings 'except in very unusual situations, where necessary to prevent immediate irreparable injury.'" Bess v. Spitzer, 459 F. Supp. 2d 191, 203 (E.D.N.Y. 2006) (quoting Samuels v. Mackell, 401 U.S. 66, 69 (1971)). Younger abstention has been applied to administrative proceedings by a police department against an officer. See McDonald, 565 F. Supp. at 38; see also McCune v. Frank, 521 F.2d 1152, 1158 (2d Cir. 1975) ("That we are dealing with a county police department's disciplinary proceeding rather than a state court action is of little moment. A proceeding in a state court is not a pre-requisite to the applicability of Younger.") (citations omitted).

As the Court explained in Schoolcraft I:

"Younger abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial

8

review of the federal constitutional claims."
Diamond, 282 F.3d at 198.  However, "a federal court
may nevertheless intervene in a state proceeding upon
a showing of 'bad faith, harassment or any other
unusual circumstance that would call for equitable
relief.'"  Id. (quoting Younger, 401 U.S. at 54).

Schoolcraft I, 2013 WL 3283848, at *3.

There is an "ongoing state proceeding" to which
Younger abstention could apply.  However, the City has not
established an interest in conducting a departmental hearing
rather than dismissing Plaintiff via summary dismissal.  See
Schoolcraft I, 2013 WL 3283848, at *3 (noting that the City had
taken the position that no administrative proceeding was
necessary in order to dismiss Plaintiff since NYC Administrative
Code allows any member of the NYPD who has been absent without
leave for five consecutive days to be dismissed by the NYPD
without notice).

The NYPD waited three years after filing
administrative charges against Plaintiff to initiate the Hearing
and the City waited three months after Schoolcraft I and the
Injunction to indicate its desire to waive collateral estoppel.

9

The City has not established that an important state interest is implicated if the Injunction were to continue, and the date for trial in this case approaches.   See Schoolcraft, 2013 WL 3283848, at *5.   As such, the circumstances do not support a finding of Younger abstention.

Having concluded that abstention is not required under Younger, the Court must again determine whether continuation of the Injunction is merited.   In order to obtain a preliminary injunction, the movant must demonstrate "(1) the possibility of irreparable harm; and (2) either (a) a likelihood of success on the merits, or (b) a sufficiently serious question going to the merits combined with a balance of the hardships tipping decidedly in favor of the moving party." Mullins v. City of New York, 554 F. Supp. 2d 483, 487 (S.D.N.Y. 2008).   Plaintiffs have established both elements.

The Plaintiffs note that an interceding NYPD administrative trial would interfere with this current action as any NYPD proceeding would take time and energy away from getting the instant matter ready for trial.   The parties are currently in a heavy, extensively negotiated discovery schedule.   The issues presented in the NYPD Hearing likely will relate to the topics at issue in this litigation.   It will also allow

10

Defendants, who have already deposed Officer Schoolcraft for over 21 hour of examination, another opportunity to examine him again.   As noted above, the City has not provided any explanations as to why the disciplinary charges must be resolved at this time.  Given such factors, the removal of the Injunction would constitute irreparable harm.  See Schoolcraft I, 2013 WL 3283848, at *5-6; Mullins, 554 F. Supp. 2d 483 (finding irreparable harm and granting a preliminary injunction where the NYPD sought to question a plaintiff regarding statements made during a deposition).

As to the second factor in this Court's determination of whether to maintain the Injunction, City Defendants appeared to concede in Schoolcraft I Plaintiff's contention that "the detailed allegations in the Second Amended Complaint and the dramatic recordings of the unlawful and unjustified assault and abduction of Officer Schoolcraft from his home on October 31, 2009 demonstrate that there is a likelihood of success on the merits and serious questions going to the merits of this action".  Id. at *6 (citation omitted).  City Defendants again have not responded to this argument in its latest briefing, and the City appears to concede this point.

City Defendants contend that the stay has already

11

prejudiced Defendants.   However, the NYPD delays counter this
contention since if the charges are established the result will
be Schoolcraft's discharge and the termination of his rights,
the same result as dismissing Plaintiff via summary dismissal.
The delays counter the City Defendants' plea for efficiency and
promptness, and no prejudice will occur to the City if the
Hearing is enjoined until resolution of the instant matter.


**Defendant Mauriello's Motion to Amend And**
**Plaintiff's Motion To Strike Are Denied**


Prior Proceedings and Facts


        Mauriello, a Deputy Inspector in the NYPD, is a named
defendant in the instant matter.   On September 24, 2013,
Mauriello moved this Court to exercise supplemental jurisdiction
pursuant to 28 U.S.C. § 1367(a) over counterclaims proposed by
Mauriello and grant Defendant Mauriello leave to serve the
answer amended with counterclaims (the "Proposed Answer").


        Mauriello's  Proposed  Answer  includes  state  law
counterclaims against Plaintiff in his individual capacity for
tortious interference with Mauriello's employment relationship
with the City of New York and prima facie tort.  The gravamen of

Mauriello's counterclaims branch from his defense against Plaintiff's claims. Plaintiff's Second Amended Complaint ("SAC") alleges that, in response to his refusal to adhere to and later attempts to expose the strict enforcement of an illegal quota policy in his precinct, defendant NYPD officers instigated a campaign to intimidate and discredit him. SAC ¶¶ 25-254. Plaintiff named Mauriello as a defendant for Mauriello's role in the quota policy. Due to Plaintiff's failure to comply with the quotas, Mauriello allegedly gave Plaintiff a sub-standard evaluation in 2008 and retaliated against Plaintiff.

The Proposed Answer alleges that on or around October 7, 2009, Plaintiff planned, with the aid of his father, to lay a false foundation for claims Plaintiff intended to assert against the City in order to harm Mauriello. Declaration of Walter A. Kretz, Jr. ("Kretz Decl.") ¶ 4; Kretz Decl. Ex. A ¶ 3. Mauriello alleges that Plaintiff intended to carry out the plan by making unfounded and/or exaggerated accusations against the supervising officers of the 81st precinct, and Plaintiff and his father hoped to make Mauriello the scapegoat for the alleged wrongdoing in the 81st precinct and throughout the NYPD, causing Mauriello to get fired. Kretz Decl. ¶¶ 4-5. Mauriello's defense and proposed counterclaims rely primarily on the recording of a

13

conversation between Plaintiff and his father on October 7, 2009, which was produced by the City from recordings IAB was able to retrieve from a computer in Plaintiff's apartment.

Mauriello alleges that to help create the appearance that crime reports routinely were improperly downgraded, Plaintiff caused at least three incidents, two involving grand larceny and one of burglary, all reported directly to him, to be recorded instead as lost property, and caused at least three other incidents of crime not to be recorded at all.  Id. ¶ 6. Mauriello contends that while Plaintiff identified sixteen instances of downgrades to NYPD's Quality Assurance Division ("QAD") of improper crime reporting, Plaintiff actually was responsible for six such incidents.  Mauriello alleges that Plaintiff anticipated that the crime victims would later return to the 81st Precinct, and in some instances Plaintiff reached out to them to do so, to complain that their reports were not taken or not followed up.  This would then result in documentation of improper handling of crime reports that QAD could readily discover.  Id.

The issue was marked fully submitted and arguments held on November 13, 2013.

14

Defendant Mauriello's Motion To Amend His Answer
<u>With Proposed Counterclaims Is Denied</u>

Fed. R. Civ. P. 15(a) sets forth the general procedure for amending pleadings before trial:

(1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a). "A decision to grant or deny a motion to amend is within the sound discretion of the trial court."

Krumme v. WestPoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998); see also Nordco, A.S. v. Ledes, 95 Civ. 7753, 1999 WL 1243883, at *2 (S.D.N.Y. Dec. 21, 1999) ("[T]he grant or denial of an opportunity to amend is within the discretion of the District Court and leave sought should, as the rules require, be freely given.") (internal quotation marks and citations omitted). "[C]onsiderations of undue delay, bad faith, and prejudice to the opposing party [are] touchstones of a district court's discretionary authority to deny leave to amend." Krumme, 143 F.3d at 88 (quoting Barrows v. Forest Laboratories, 742 F.2d 54, 58 (2d Cir. 1984)). "One of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action." Krumme, 143 F.3d at 88 (quoting H.L. Hayden Co. v. Siemens Medical Systems, 112 F.R.D. 417, 419 (S.D.N.Y. 1986)).

The Court shall first examine whether the proposed counterclaims are time-barred. "[T]he applicable statute of limitations is a substantive question and thus defined by state law . . . ." In re Mission Const. Litig., 10 Civ. 4262, 2013 WL 4710377, at *14 n.16 (S.D.N.Y. Aug. 30, 2013). The state statute of limitations for defendant Mauriello's prima facie tort counterclaim is either one year or three years, depending

16

on what the essence of the claim is deemed to be.  See Morrison v National Broadcasting Co., 19 N.Y.2d 453, 459 (N.Y. 1967). The statute of limitations for Mauriello's tortious interference counterclaim is three years.  CPLR § 214(4); see also, IDT Corp. v Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 141 (N.Y. 2009).

The Proposed Answer seeks to amend Mauriello's previous answer, and the federal rules for whether the amendment relates back, a procedural question, applies.  In re Mission Const. Litig., 2013 WL 4710377, at *14 n.16 ("[T]he standard for evaluating whether a proposed amendment relates back is a procedural question and is, therefore, governed by federal law.").  Fed. R. Civ. P. 15(c) allows an amendment to a pleading to relate back to the date of the original pleading when "(A) the law that provides the applicable statute of limitations allows relation back; [or] (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading."  Fed. R. Civ. P. 15(c)(1).  However, "[s]tate law also determines the related questions of what events serve to commence an action and to toll the statute of limitations in such cases." [1]  Sea Trade

---

[1]  When Fed. R. Civ. P. 15 was amended in 1991, the Commentary noted with regards to Fed. R. Civ. P. 15(c), "Whatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relation

Co. Ltd. v. FleetBoston Financial Corp., 03 Civ. 10254, 2006 WL
2786081, at *2 (S.D.N.Y. Sept. 26, 2006) (quoting Personis v.
Oiler, 889 F.2d 424, 426 (2d Cir. 1989)).  Under N.Y. C.P.L.R.
§ 203(d), a claim is "not barred if it was not barred at the
time the claims asserted in the complaint were interposed."  In
Sea Trade, the court engaged in a two-step process, where the
proposed counterclaims first were related back to the date of
the original answer pursuant to Rule 15 and then to the date of
the complaint as per New York's tolling provision.  Id.  The Sea
Trade court found that New York's tolling provision rendered the
counterclaims timely if they would have been timely as of the
date of the filing of the complaint.  Id.

     The Complaint was filed and interposed on August 10,
2010.  Defendant Mauriello alleges that Plaintiff enacted the
plan against Mauriello on or around October 7, 2009.  Mauriello
suffered his alleged injuries as a result of the scheme at some
subsequent time.   Thus, Mauriello's counterclaims would have
accrued less than one year before the Complaint was filed.
Adopting the Sea Trade court's tolling analysis, the Proposed
Answer would relate back to when the Complaint was filed.  N.Y.
C.P.L.R. § 203(d).  Neither the one-year period nor the three-
year statute of limitation periods for Mauriello's counterclaims
_____
back than the one provided in this rule, it should be available to save the
claim."  Fed. R. Civ. P. 15 advisory committee's note.

would have expired as of August 10, 2010.  As such, Mauriello's proposed counterclaims are timely.

While the Proposed Answer is not time-barred, the Court may deny the leave to amend for undue delay, bad faith, futility of the amendment or undue prejudice to the opposing party.  State Teachers Ret. Bd. V. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981) ("Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party."); Hillair Capital Invs., L.P. v. Integrated Freight Corp., 12 Civ. 7164, 2013 WL 4539691, at *2 (S.D.N.Y. Aug. 28, 2013)("Leave to amend an answer 'should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility.'") (quoting Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001)).

The Complaint in this action was filed on August 10, 2010, with an Amended Complaint filed on September 13, 2010, and the SAC on October 1, 2012.  Mauriello filed an Answer to the SAC on January 10, 2013, and filed the Proposed Answer on September 24, 2013.  Mauriello waited three years since the filing of the initial Complaint, one year after the filing of the SAC and nine months after the filing of his first answer to

19

bring forth his proposed counterclaims.  Further, over the past three years, the parties have engaged in extensive motion practice, thousands of documents have been exchanged, the Plaintiff has been deposed for three full days of testimony, inspections of the 81st Precinct and Jamaica Hospital have been conducted and the depositions of the Defendants have begun. Mauriello's proposed amendment will require additional rounds of document discovery on Mauriello and on specifics of the downgrading of crime reports at the 81st Precinct.    The amendment will also require additional discovery and the deposition of several other senior NYPD superiors relating to the alleged damage to Mauriello's reputation.    Allowing the counterclaims will certainly delay the final resolution of the action.    The proposed counterclaims would force Plaintiff to expend additional resources in conducting discovery and preparing for trial and delay the underlying dispute's resolution, which will cause undue prejudice on Plaintiff. See Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir. 1983) (stating that "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice" and upholding the district court's decision to reject the proposed amendment due to an over two-year delay in defendant's motion to amend); Continental Bank, N.A. v. Meyer, 10 F.3d 1293, 1298 (7th Cir. 1993) (district

20

court did not abuse its discretion in refusing to allow
defendant to amend answer to add counterclaims where the
defendant waited more than two years and the amendment would
require additional discovery).  As such, the Court finds that
granting leave to serve the Proposed Answer would cause undue
delay and prejudice Plaintiff.


Plaintiff's Motion To Strike Is Denied

        Given that Mauriello's motion to amend is denied,
Plaintiff's motion to strike is denied as moot.


**The Medical Defendants' Motion For A Protective Order
Is Granted In Part And Denied In Part
And Plaintiff's Motion For Expenses Is Denied**


Prior Proceedings and Facts

        Medical Defendants have moved the Court for a
protective order enjoining Plaintiff's method of video recording
the depositions of the Medical Defendants.  Plaintiff's attorney
was scheduled to depose Aldana-Bernier on October 25, 2013.  For
the deposition, Plaintiff's attorney brought his personal Sony
Handycam video camera, and indicated at the deposition that he
intended to use the video camera to videotape the deposition.

Aldana-Bernier's attorney objected to Plaintiff's use of the camera, objecting specifically to the lack of a Fed. R. Civ. P. 30 notice of intent to videotape and the methods used by Plaintiff's counsel for the deposition.   An official court recorder was present.

Medical   Defendants   submitted   a   letter   motion requesting for a protective order on October 30, 2013.   The issue was marked as fully submitted and arguments were held on November 13, 2013.

The Motion For A Protective Order Is
Granted In Part And Denied In Part

At issue is whether (1) Plaintiff's counsel violated the Federal Rules of Civil Procedure in failing to provide notice of his intent to videotape the Aldana-Bernier deposition and (2) Plaintiff's attorney can videotape a deposition with himself as the video camera operator where an official court reporter is also present.  Fed. R. Civ. P. 30(b) provides that a party who notices the deposition must state the method for recording the testimony and any additional methods for recording must be noticed as well.   Rule 28 provides that a deposition must be taken before an officer authorized to administer oaths

22

by law.  Rule 28(c) disqualifies an attorney for the parties to qualify as an officer under Rule 28.

Plaintiffs and City Defendants previously had entered into a stipulation that allowed for the video recording of depositions of parties represented by attorneys for City Defendants to be videotaped (the "Video Recording Stipulation"). Defendants Deputy Chief Marino's ("Marino") and Captain Theodore Lauterborn's ("Lauterborn") depositions were videotaped in the manner Plaintiff seeks to depose Aldana-Bernier.  The Video Recording Stipulation does not waive the City's right to object to any video recordings made.  City Defendants have subsequently noted their intent to withdraw from the Video Recording Stipulation.

Medical Defendants were not a party to the Video Recording Stipulation entered into between Plaintiff and City Defendants.  Medical Defendants contend, and Plaintiff does not dispute, that at the time of the Aldana-Bernier deposition, Plaintiff had not served a Rule 30(b) notice of counsel's intent to videotape.[2]  As such, the Court finds that Plaintiff failed to provide proper notice required under Fed. R. Civ. P. 30(b).

---

[2] Plaintiff's counsel has subsequently served a Fed. R. Civ. P. 30(b) notice on the parties.

Turning to the issue of whether Plaintiff's attorney can himself operate a video recorder to record a deposition if proper notice is served, the Court notes that Plaintiff's method of video recording has caused the Medical and City Defendants significant concern. Plaintiff's method of video recording, used in the Marino and Lauterborn depositions and which Plaintiff's counsel states he intends to use for all subsequent depositions, does not follow the requirements and safeguards set out in the Federal Rules of Civil Procedure. Plaintiff's counsel did not comply with the requirements of Fed. R. Civ. P. 30(b)(5), including the technical requirements of Rule 30(b)(5)(A)(i) through (v), in the Marino and Lauterborn depositions. Medical Defendants also note that Plaintiff's counsel himself operated the video recorder and not a Fed. R. Civ. P. 28 officer, since Fed. R. Civ. P. 28(c) disqualifies an attorney for the parties to qualify as an officer.

Other logistical issues indicate difficulty in Plaintiff's method of videotaping. This instant case contains several layers of confidentiality, and the parties have faced and will face difficulty in characterizing the level of confidentiality that applies for each portion of a testimony. Currently, confidential testimony is transcribed into a separate

24

transcript from non-confidential testimony.  Plaintiff's counsel
uses a single video camera, and for the confidential portions of
testimony, counsel states the video is going to the confidential
portion, stops the recording and then continues the recording.
Plaintiff's counsel has not indicated how the recordings will be
edited to separate the various confidentiality levels.   The
Medical Defendants also note of technical issues.   There are no
microphones for the video camera other than the internal
microphone built into the camera.   There will be no way to
ascertain as to who is speaking on the tape at any particular
time unless it was the witness.   Plaintiff's counsel has also
failed to provide City Defendants with a copy of the recording
that was made for Marino's deposition, while the court reporter
has already provided copies of the transcript.   Plaintiff's
counsel also failed to record portions of Lauterborn's
deposition when the video camera's memory ran out prior to the
deposition's completion.   The video camera was also left on and
captured off the record discussions between counsel in the
Marino and Lauterborn depositions.   Medical Defendants express
concern that Plaintiff's counsel has made several mistakes that
may prevent matching the video with the stenographic record
transcript.

There is dearth of case law in the Southern District

regarding whether a party's attorney can videotape a deposition where an official court reporter is also present.   In Carvalho v. Reid, 193 F.R.D. 148 (S.D.N.Y. 2000), the magistrate judge ruled via a telephonic ruling that a pro se plaintiff was not allowed to videotape her own deposition where she did not provide proper Rule 30(b) notice and for failure to arrange to have the videotaping conducted by an appropriate person pursuant to Rules 30(b)(4) and 28(c).   Id. at 152.   In contrast, the court in Marlboro Products Corp. v. N. Am. Philips Corp., 55 F.R.D. 487 (S.D.N.Y. 1972), allowed plaintiff to operate a tape recorder in depositions for purposes of economy.   Id. at 489. Petitioners in Marlboro did not challenge the recording on Rule 30(b) notice grounds.

Given the manner in which Plaintiff's counsel has chosen to operate the video camera there is a risk that any videos taken pursuant to such methods is subject to interpretation.   The failure to serve proper Rule 30(b) notice to the Medical Defendants and the potential difficulties surrounding the video recordings were appropriate grounds for adjourning the deposition.   Although the Plaintiff may take video recordings in depositions for his own purposes, those recordings taken by counsel will not be admissible.   See Rice's Toyota World, Inc. v. S.E. Toyota Distributors, Inc., 114 F.R.D.

647, 651 (M.D.N.C. 1987) ("[T]he issue of whether to permit plaintiff to video record the deposition is not governed by Rule 30(b)(4) as much as by the Court's general authority to regulate the deposition process.").

The cases cited by Plaintiff's are inapposite. Other than Marlboro, none of the cases cited by Plaintiff were in the Southern District or a district in the Second Circuit. Petitioners in the cases did not challenge any video recordings based on respondents' failure to comply with Rule 30(b) notice requirements. Importantly, all of the cases involved the routine operation of video camera equipment; the confidentiality levels present in the instant matter propels the task of videotaping a deposition beyond a simple task to a complicated one. See Marlboro, 55 F.R.D. 487; Maranville v. Utah Valley Univ., 11 cv 958, 2012 WL 1493888 (D. Utah April 27, 2012); Pioneer Drive, LLC v. Nissan Diesel Am., Inc., 262 F.R.D. 552 (D. Mont. 2009); Hearn v. Wilkins Tp., Pa., 06-120, 2007 WL 2155573 (W.D. Pa. July 25, 2007); Anderson v. Dobson, 627 F.Supp.2d 619 (W.D.N.C. 2007); Ott v. Stipe Law Firm, 169 F.R.D. 380 (E.D. Okl. 1996); Rice's Toyota World, 114 F.R.D. 647.

Plaintiff's Motion For Deposition Expenses Is Denied

27

Plaintiff has also requested for an order requiring Aldana-Bernier's counsel to pay the expenses associated with the canceling of the Aldana-Bernier deposition. Fed. R. Civ. P. 30(c)(3) states: "An objection at the time of the examination—whether to . . . a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds." Sanctions are appropriate under Rule 37(d)(1)(A)(i) where "a party . . . fails, after being served with proper notice, to appear for that person's deposition." "Failure to appear is strictly construed in this Circuit and only occurs where a deponent literally fails to show up for a deposition session." Salahuddin v. Harris, 782 F.2d 1127, 1131 (2d Cir. 1986).

As noted above, because of Plaintiff's failure to serve a proper Rule 30 notice no fines or sanctions will be imposed.

It is so ordered.

New York, NY
November 2ᴏ, 2013

_____
ROBERT W. SWEET