UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ADRIAN SCHOOLCRAFT,

        Plaintiff,

 -against-

                10-CV-06005 (RWS)

THE CITY OF NEW YORK, et al.,

        Defendants.
------------------------------------------------------------------X

DEFENDANT MAURIELLO'S MEMORANDUM IN SUPPORT
OF HIS MOTION FOR RECONSIDERATION OF HIS
MOTION FOR LEAVE TO AMEND HIS ANSWER
TO ASSERT STATE-LAW COUNTERCLAIMS

Preliminary Statement

  Defendant Steven Mauriello, a Deputy Inspector in the New York City Police Department (NYPD), respectfully urges the Court's reconsideration of his motion for leave to serve an amended answer to assert state-law counterclaims against the plaintiff for tortious interference with his NYPD employment and prima facie tort.

Argument

POINT I

DEFENDANT MAURIELLO DID NOT "WAIT"
TO SEEK LEAVE TO SERVE HIS COUNTERCLAIMS;
ANY DELAY WAS DUE TO PLAINTIFF'S ALTERATION
OF EVIDENCE BY DELETING A RECORDED CONVERSATION
CRITICAL TO THE ASSERTION OF THE COUNTERCLAIMS

  Defendant Mauriello did not wait three years, one year or even nine months to assert his counterclaims. His motion for leave to amend was filed within one month after his discovery of the evidence needed to assert the

counterclaims. That discovery was delayed for so long due to plaintiff's alteration of the recordings produced in discovery by deleting the critical conversation between plaintiff and his father.

      This case was commenced in August 2010.  From that date until the undersigned appeared on his behalf in May 2012, defendant Mauriello was represented by counsel for the City defendants (though apparently there was little or no communication between them).  During that nearly two year period, it was never made known to him that evidence – plaintiff's recording of a conversation he had with his father on October 7, 2009 -- had been preserved by plaintiff and retrieved in November 2009 by the NYPD's Internal Affairs Bureau (IAB).  That recording explicitly indicates plaintiff was motivated in his actions to get revenge against Mauriello.

      After the undersigned commenced representation of defendant Mauriello in May 2012, we wrote to all counsel in June 2012 and then again in August 2012 asking that we be provided with copies of any discovery already produced by each party.  In the first week of September 2012, plaintiff's counsel at the time mailed an envelope of documents having nothing to do with recordings, and thereafter did not produce anything further.  The City's attorneys then provided us with two discs containing copies of plaintiff's production from April 9, 2012, including all of his roll call recordings over a two year period as well as "supplemental recordings", including the recordings of plaintiff's conversations on October 7, 2009.  Unbeknownst to us at the time, deleted from the recordings was the conversation plaintiff had with his father on that date, which immediately preceded his conversations and meeting with representatives of QAD.

2

We immediately undertook to review the many hours of recordings provided by the City that had been produced by plaintiff in discovery, as the first session of plaintiff's deposition was imminent. Over the course of the next four weeks preceding plaintiff's first deposition session, the City produced to us more than 60 additional discs of documents and recordings, which included what we understood to be duplicates of the many hours of recordings produced by the plaintiff. We had no reason to compare the City's copy of those recordings with the plaintiff's copy of those recordings, and did not do so. Consequently, we knew nothing about the conversation plaintiff had deleted from the copy he had produced of his recordings of October 7, 2009. Without it, we did not have a sufficient basis to assert the counterclaims. Only when the Rayman book was published in August 2013 did we discover that plaintiff had deleted the critical conversation with his father.

The Rayman book discussed a recorded conversation between plaintiff and his father that we had never heard, despite listening carefully to all of the many hours of recordings produced by plaintiff in discovery. We then searched the recordings produced by the City, which we had understood to be duplicates of the conversations produced by plaintiff, and discovered that the City's copy of plaintiff's recorded conversations from October 7, 2009, included the conversation between plaintiff and his father. Thus, we must emphasize that PLAINTIFF OR HIS PRIOR ATTORNEYS HAD DELETED THAT CONVERSATION FROM THE COPY HE PRODUCED IN DISCOVERY OF HIS RECORDED OCTOBER 7TH CONVERSATIONS, and because of that we did

not learn of that conversation with his father until nearly a year later than we should have learned about it.

In less than one month after our discovery of the October 7th conversation deleted by plaintiff, we drafted the counterclaims and filed the motion for leave to amend.  Respectfully, it simply is not just, nor in keeping with leave to amend being freely granted, especially in the absence of undue prejudice, to allow plaintiff to avoid answering the allegations of the counterclaims due to a delay for which he is substantially responsible because he altered the evidence.  Remarkably, he provided the recording to the reporter/author, but did not produce it in discovery.

POINT II

THE COUNTERCLAIMS ONLY RAISE
ISSUES ALREADY AT THE HEART OF THIS CASE,
OTHER THAN SOME ASPECTS OF THE HARM
SUFFERED BY MAURIELLO

The counterclaims do not allege any new matter not already at issue in the case, other than some aspects of the harm suffered by Mauriello. For example, with respect to the specific concern expressed by the Court that the counterclaims will "require additional rounds of discovery . . . on specifics of the downgrading of crime reports at the 81st Precinct," the fact is that the issue of the downgrading of crime reports in the 81st Precinct is an essential element of plaintiff's claims and is very much at the heart of his case. (See Second Amended Complaint ¶¶ 2 ("falsifying and . . . suborn[ing] perjury on police reports"), 128-130, and 247-252.  So, too, must it be at the heart of Mauriello's defense against plaintiff's claims, with or without counterclaims.  Quite simply,

the counterclaims do not create a need for discovery on that subject any more than already exists.

To elaborate, plaintiff claims, among other things, as follows: there was intentional downgrading of complaint reports in the 81st Precinct; he reported this practice to QAD; the individual defendants learned of his cooperation with QAD before October 31st; and they then staged plaintiff's removal from his home and his hospitalization in the Jamaica Hospital psychiatric ward so QAD might conclude he was crazy and forego an investigation of his complaint.

Defendant Mauriello, on the other hand, claims as follows: he did not know prior to October 31st that plaintiff had complained to QAD about the intentional downgrading of crime in the 81st Precinct; even if he had known, he would not have expected QAD to find crime was being intentionally downgraded in the 81st Precinct because that was not the practice under his command; he therefore had no reason to stage plaintiff's removal from his home, no reason to believe he could get plaintiff admitted to the psychiatric ward, and no reason to believe, even if such things happened, that QAD would be influenced to forego an investigation of plaintiff's complaint.[1]

Thus, plaintiff's case depends on proving it was the practice of the 81st Precinct to intentionally downgrade crime.  Mauriello's defense (and his counterclaims) will attempt to show there was no such practice and that his precinct's performance with respect to the handling of complaint reports was as good or better than many other precincts throughout the City.  He will further

---

[1] Mauriello played a minimal role in the events of October 31 -- he was not in charge, and spoke to plaintiff for less than a minute before completely removing himself from the events.  We expect plaintiff's claims against him for retaliation ultimately will be dismissed.

5

show that plaintiff tried to mislead QAD to conclude otherwise so plaintiff could get revenge against Mauriello -- for signing off on his poor evaluation and for somehow influencing the NYPD psychiatrist to put plaintiff on modified duty without a gun and shield throughout the six months prior to October 31st.

With respect to Mauriello's harm, it can be easily covered at his deposition, and, again, only minimally expands the scope of discovery. Plaintiff has every interest in showing that NYPD did not punish Mauriello severely enough because it was complicit in the practice of downgrading crime, while Mauriello will argue otherwise based upon the same information. The same witnesses will be called upon to address both sides of the issue. Finally, the records relating to the consequences suffered by Mauriello to date have been produced by the City, and any further documentation will be very limited and certainly will be produced well before all other discovery in this case is completed.

POINT III

IT IS INACCURATE, AND UNFAIR
UNDER ALL OF THE CIRCUMSTANCES,
TO CONCLUDE THAT ANY DELAY
IN THE FINAL RESOLUTION OF THIS CASE
COULD BE ATTRIBUTED TO THE COUNTERCLAIMS

We urge the Court to reconsider its assessment that the counterclaims will "delay the final resolution of the action."

First, we filed our motion for leave to amend, along with the proposed counterclaims, after this case had been pending for three years. At that time, document production was still far from completed, and only one of the three agreed-upon sessions of the plaintiff's deposition had been held. None of

6

the twenty defendants had yet been deposed, nor had any of the non-party witnesses. The simple truth is that any time we might consume in discovery addressing the counterclaims pales in significance to the three-year period that elapsed with so little discovery being completed – none of which is attributable to defendant Mauriello, and it pales in significance to the discovery required to address plaintiff's claims.

Second, in the two months since we filed our motion for leave to amend, the only discovery that has been conducted is the completion of plaintiff's deposition, the inspections of the 81st Precinct and Jamaica Hospital, and the depositions of defendants Michael Marino and Theodore Lauterborn. None of that work would have to be revisited on account of the counterclaims. We asked plaintiff the questions we wished to ask on the subject of the counterclaims, the inspections have no bearing on the counterclaims, and, since plaintiff was on notice that the matters alleged in the counterclaims are equally related to Mauriello's defense, plaintiff had the opportunity to ask Marino and Lauterborn about those matters. (In any event, plaintiff has indicated he wants to conduct a second session of the Marino and Lauterborn depositions for reasons unrelated to the Mauriello counterclaims.)

Third, the fact of the matter is that it is going to be impossible to complete fact discovery by the present deadline of January --, 2014. At the moment, the next scheduled event is the deposition of plaintiff's father on December 11, 2013, in Albany. (He was unwilling or unable to appear on the long-ago scheduled date of November 20, 2013.) Dates in mid-December are under discussion for the depositions of defendant Mauriello and defendant

7

Timothy Caughey, but no other dates have been set or even discussed.[2] Much work remains and chances are we will need until the end of February to complete it. Again, it is not the counterclaims causing the delay, and it is not the counterclaims causing undue prejudice or, for that matter, any prejudice at all to the plaintiff. The discovery relating to the counterclaims easily will be completed during the time the Court allows for the completion of all other discovery.

Finally, the lapse of time principally is due to plaintiff's deletion from the recordings he produced of the critical conversation he had with his father on October 7, 2009. At all times plaintiff (as well as the City) was aware of the content of the withheld recording. If there is any delay in the final resolution of this matter that could be attributed to the counterclaims, the conclusion is irrefutable that the delay would be the result of plaintiff's own misconduct.

POINT IV

UNDER ALL OF THE CIRCUMSTANCES,
THERE IS NO SUPPORT FOR A FINDING
OF UNDUE PREJUDICE TO THE PLAINTIFF

The Court has found that the counterclaims are timely for statute of limitations purposes (despite plaintiff's aggressive assertion to the contrary) and implicitly has found, as we think is evident, that the counterclaims are so related to plaintiff's claims as to form part of "the same case or controversy" or "derive from a common nucleus of operative fact" warranting this Court's exercise of supplemental jurisdiction pursuant to 28 U.S.C. section 1367(a).

---

[2] Defendant Mauriello was to be deposed on November 22nd, but the Court's opinion faulting us for "waiting" to seek leave to amend the Answer was issued the night before and required that we adjourn the deposition to make sure we fully advised Mauriello of his options on how to proceed, and to give him adequate time to decide what to do. He has chosen to have us proceed on his behalf.

As we expressed in our original motion papers, the Second circuit has instructed in State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843 (2d Cir. 1981), that "[r]easons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." Id. at 856, quoting Foman v. Davis, 371 U.S. 178, 182 (1963).  The Second Circuit further instructed in State Teachers that "[m]ere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." Id. (citations omitted).  To emphasize that the case before it did not give rise to undue prejudice, the Court in State Teachers explained that "[t]his is not a case where the amendment came on the eve of trial and would result in new problems of proof" (citations omitted).  The same can be said in this case.

We respectfully submit that the Court's reliance on Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir. 1983), to support a finding that plaintiff will suffer undue prejudice is misplaced.  In Evans, there was "an over two-year" "period of an unexplained delay."  Here, the circumstances are not even remotely similar.  Defendant Mauriello did not delay at all, and the lapse of time is substantially attributable to plaintiff deleting the critical conversation with his father.[3]

So, too, is the Court's reliance on Continental Bank, N.A. v. Meyer, 10 F.3d 1293, 1298 (7th Cir. 1993) misplaced.  There, the Court concluded that the facts alleged in the counterclaims were know by the defendant when the case

---

[3] At the Court's request, we will provide a copy of the audio file produced by plaintiff with the recording at issue deleted, along with a copy of the audio file produced by the City/IAB with the recording included.

9

commenced, yet the defendant waited two years to assert the counterclaims, which would have required additional discovery. Here, not only were the facts not known by defendant Mauriello when the case was commenced, but they were known and withheld by the plaintiff, and were only fortuitously discovered by defendant Mauriello three years after the action was commenced.

By knowingly keeping Mauriello in the dark, plaintiff hardly should be heard to claim prejudice from the delay.[4]

.CONCLUSION

Based upon the foregoing, and defendant Mauriello's original motion papers, we respectfully urge the Court to reconsider defendant Mauriello's motion for leave to assert his counterclaims, and to grant the motion in its entirety, together with such other relief as the Court deems just.

Dated:  New York, New York
        November 25, 2013

> SCOPPETTA SEIFF KRETZ & ABERCROMBIE
> Attorneys for Defendant STEVEN MAURIELLO
>
> By: _____
>      Walter A. Kretz, Jr., (WK-4645)
> 444 Madison Avenue, 30th Floor
> New York, NY  10022
> wakretz@seiffkretz.com
> 212-371-4500

---

[4] As for undue prejudice, if defendant Mauriello is not permitted to pursue his counterclaims in this action, the substantial likelihood, perverse as it may seem given that this Court has found the counterclaims to be timely asserted, is that he will barred from pursuing his claims in another forum.

10