

| | **THE CITY OF NEW YORK** | |
|---|---|---|
| **MICHAEL A. CARDOZO**<br>*Corporation Counsel* | **LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | Suzanna Publicker Mettham<br>*Assistant Corporation Counsel*<br>phone: (212) 356-2372<br>fax: (212) 788-9776<br>smettham@law.nyc.gov |

December 18, 2013

**BY ECF**
Honorable Robert W. Sweet
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:  Schoolcraft v. The City of New York, et al.
             10-CV-6005 (RWS)

Your Honor:

      I am the Assistant Corporation Counsel in the office of Michael A. Cardozo, Corporation Counsel of the City of New York, assigned to represent the City Defendants above-referenced matter. City Defendants write to respectfully request that the Court order plaintiff to produce certain documents enumerated below by January 10, 2014 or otherwise be precluded from relying on those documents in discovery, motion practice, and/or at trial in this matter.

    **A.**  **Background**

      City Defendants served plaintiff with their First Set of Interrogatories and Document Requests ("1st Doc. Req." and "1st Interrogatory Req.") on or about December 5, 2011, to which plaintiff belatedly responded on April 9, 2012. See Relevant Portions of Plaintiff's Apr. 9, 2012 Responses, annexed hereto as Exhibit (hereinafter "Ex.") A. City Defendants served a second set of Document Requests ("2nd Doc. Req.") on or about August 20, 2012, to which plaintiff belatedly responded on October 24, 2012.[1] See Plaintiff's Oct. 24, 2012 Responses, annexed hereto as Ex. B. Following nearly a year of extensive correspondence regarding issues relating to plaintiff's responses to City Defendants' discovery demands, City Defendants asked plaintiff to respond to remaining issues by December 10, 2013. When City Defendants had not received a response, the undersigned followed up with plaintiff's counsel on December 13, 2013 by email and informed him that City Defendants would be writing to the Court this week if no response was received. City Defendants again attempted to reach plaintiff by telephone on December 17, 2013, but plaintiff did not return City Defendants' phone call. In sum, plaintiff has not responded to City Defendants' attempts to meet and confer.

---

[1] Pursuant to F.R.C.P. 33 and 34, because plaintiff failed to either respond, or seek an enlargement of time in which to respond within 30 days of service of City Defendants' discovery requests, any objections to those requests have been waived.

**B. Messages and Communications Received Through www.schoolcraftjustice.com**

Through the course of discovery, City Defendants learned that plaintiff and his prior counsel operated a website with the URL of www.schoolcraftjustice.com, which asked members of the NYPD to "share similar stories or comments" to that of plaintiff. In their Second Set of Document Requests, City Defendants demanded that plaintiff produce messages and communications received through www.schoolcraftjustice.com, including the names, contact information, and IP addresses of all respondents. On October 24, 2012, plaintiff responded to Document Request No. 2 by producing hundreds of pages of submissions to the website from members of the public and the NYPD. See Ex. B at P.2. However, the documents produced by plaintiff had been redacted to remove the names, contact information, and IP addresses of all respondents. In the written objection and response to City Defendants' Document Request, plaintiff claimed that the redactions were made to avoid "disclosure of information and/or communications that are protected by the attorney-client or work-product privileges, or which constitute material prepared for litigation purposes." City Defendants outlined their objections to this assertion of privilege first on December 19, 2012, and then again on February 19, 2013 and May 28, 2013. See Letters from City Defendants dated Dec. 19, 2012 and May 28, 2013, annexed hereto as Exs. C and D, respectively.

Thereafter, on December 4, 2013, plaintiff produced a second set of documents responsive to City Defendants' Document Request that were similarly redacted to Plaintiff's production on October 24, 2012. By letter dated December 6, 2013, City Defendants asked plaintiff to either re-produce the documents bearing Bates Nos. AS10059-AS10144 and the documents previously produced on October 24, 2012 to include the un-redacted names, contact information, and IP addresses of all respondents. See Letter from City Defendants dated Dec. 6, 2013, annexed hereto as Ex. E. In the alternative, City Defendants have asked plaintiff for the past seven months to stipulate in writing that he would not rely on those documents and recordings in discovery, motion practice, and/or at trial. See Exs. D and E. Plaintiff refuses to accept either of City Defendants' proposals.

### 1. The Messages and Communications Received Through www.schoolcraftjustice.com Are Not Privileged

After City Defendants challenged plaintiff's assertion of privilege, by pointing out that the website itself included a disclaimer stating that "information on this website is not intended to create, and receipt or viewing of this information does not constitute, an attorney-client relationship," the website was taken down. City Defendants, however, were able to take a screen shot of the website as it existed prior to October 24, 2012.[2] It is clear from counsels' website disclaimer that there is no attorney-client relationship with regard to any responses to the www.schoolcraftjustice.com website and that any claim of attorney-client privilege is not asserted in good faith. Moreover, City Defendants have reviewed the content of the messages, and it is clear that the individuals who provided information were not in an attorney-client

---

[2] "The information contained on this website is for general information purposes only. Nothing on this or associated pages, documents, comments, answers, emails, or other communications should be taken as legal advice for any individual case or situation. This information on this website is not intended to create, and receipt or viewing of this information does not constitute, an attorney-client relationship." Screenshot of www.schoolcraftjustice.com, annexed hereto as Ex. F.

2

relationship with any of plaintiff's counsel and their statements were not made for the purpose of obtaining or providing legal advice; therefore plaintiff cannot maintain that an attorney-client privilege applies.

Plaintiff's assertion of work-product privilege over the names and contact information of the respondents is similarly flawed. City Defendants cannot conceive of, and plaintiff has provided no evidence to indicate, a manner by which the communications themselves are *not* protected by the attorney work-product privilege, but the names and contact information of those individuals would be protected by that privilege. Names and contact information can hardly be considered materials prepared for or by an attorney for the purposes of litigation. See Fed. R. Civ. P. 26(b)(3)(A).

### 2. Even If Privileged, Plaintiff Cannot Use the Privilege As a Sword and a Shield

Even assuming *arguendo* that plaintiff is able to meet his burden of demonstrating that an attorney work-product privilege exists with regard to the aforementioned names and contact information, that privilege is not absolute, and plaintiff may not use that privilege as both a sword and a shield. See Fed. R. Civ. P. 26(b)(3)(A)(ii). To the extent that plaintiff intends to rely on statements by unnamed individuals in the furtherance of his litigation, defendants are entitled to learn the identities of the individuals providing information, and gather their contact information to investigate their claims and/or facilitate the service of subpoenas. City Defendants assert that they cannot obtain the documents' equivalent by other means without undue hardship.

Importantly, City Defendants note that these documents are relevant to other aspects of plaintiff's discovery productions. For example, on April 9, 2012 plaintiff produced two recordings dated *after* plaintiff left the 81st Precinct. Plaintiff has not provided any information regarding the name of the recorder, the manner of recording, the chain of custody, and other factors impacting authenticity and admissibility of those recordings at trial. If plaintiff were to provide an unredacted version of the challenged productions, such documents appear to contain the identity of the individual who recorded the abovementioned recordings. City Defendants are entitled to know the identity of that individual in order to probe the provenance of those recordings in order to challenge their potential admission at trial according to the seven step authentication process favored in the Second Circuit. See, e.g., Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd., 262 F. Supp. 2d 251, 263-264 (S.D.N.Y. 2003) (citing United States v. Dinero Express, Inc., 2000 U.S. Dist. LEXIS 11314 (S.D.N.Y. 2000); United States v. Morrison, 153 F.3d 34, 56 (2d Cir. 1998)).

Because City Defendants have a substantial need for the requested information, which City Defendants are unable to obtain through other means, then plaintiff should be required to either provide the individuals' names and contact information or be precluded at trial from calling at trial and/or offering any evidence provided by the individuals whose identity plaintiff will not disclose.

### 3. It Is Plaintiff's Obligation to Obtain the Requested Information from Prior Counsel

In addition to asserting the abovementioned claims of privilege, plaintiff's current counsel has also claimed that only plaintiff's former counsel has access to the unredacted documents, and therefore, City Defendants must subpoena plaintiff's prior counsel in order to

obtain the unredacted versions. This is an inappropriate and unacceptable option. As these are documents that *plaintiff* intends to rely on at trial, and are allegedly in the possession of *plaintiff's* prior counsel, plaintiff must either confer with prior counsel and produce the requested documents, or be precluded from offering such evidence at trial in this matter.

Accordingly, City Defendants request that the Court order plaintiff to re-produce the documents bearing Bates Nos. AS10059-AS10144 and the documents produced on October 24, 2012 in response to City Defendants' Second Set of Document Requests, Document Request No. 2, to include the un-redacted names, contact information, and IP addresses of all respondents by January 10, 2014. If plaintiff does not produce the aforementioned documents by January 10, 2014, City Defendants request that plaintiff be barred in discovery, motion practice, and/or at trial from relying on any of the aforementioned documents, or the information and witnesses contained therein, including but not limited to the recordings produced on April 9, 2012 by plaintiff dated after plaintiff left the 81st Precinct.

### C. Memoranda Allegedly Given By Plaintiff to Non-Party NYPD Employees

In a book titled *The NYPD Tapes*, which was published in August 2013, former Village Voice reporter Graham Rayman discussed memoranda that plaintiff claimed to have sent to a supervisor reporting alleged misconduct in the 81st Precinct in 2006 and 2007. The NYPD has searched for these documents, but upon information and belief, no records have been found. After the internal search for these documents proved fruitless, City Defendants asked plaintiff to produce these and other documents and recordings that were mentioned in *The NYPD Tapes*. See Letter dated Dec. 3, 2013, annexed hereto as Ex. G. Plaintiff has not responded to that letter.

One such document referenced by *The NYPD Tapes* is an April 2006 memorandum allegedly written by Adrian Schoolcraft to former 81st Precinct Commanding Officer, Deputy Inspector Robert Brower "to notify [D.I. Brower] of a serious problem within the precinct, that I feel has now become a chronic safety issue. The problem [Adrian Schoolcraft is] reporting is forced overtime." See Relevant Pages of *The NYPD Tapes*, annexed hereto as Ex. H, at P.41. The second document is a memorandum written by Adrian Schoolcraft on or after June 2007 to D.I. Brower in which Adrian Schoolcraft alleged that a Lieutenant Jones "threatened to punish the whole shift of officers for what Schoolcraft did." See Ex. H at P.44. As plaintiff is alleging misconduct on behalf of the City Defendants beginning at least as early as 2006 (see, e.g., Pl. 2nd Am. Compl. at 40), such allegations of misconduct and plaintiff's claimed "whistleblowing" are highly relevant. Moreover, these documents are responsive to a number of general and specific document requests made by City Defendants, including, but not limited to, demands for:

> "[C]omplaints made by plaintiff to any city, state, and/or federal government agency including, the NYPD Quality Assurance Division ("QAD"), the NYPD's Internal Affairs Bureau ("IAB") of the New York City Police Department, any elected official or representatives, and attorney general and/or inspector general offices." Ex. A at Doc. Req. No. 11.

> "Any and all documents, notes, recordings, etc. relevant to, related to, or concerning plaintiff's allegations that "plaintiff's supervisors at the 81st Precinct began to create an

increasingly hostile work environment for [plaintiff]" as alleged in paragraph 87 of the Amended Complaint." Ex. A at Doc. Req. No. 49.[3]

"[A]ny and all evidence of "NYPD misconduct and corruption" that plaintiff collected and documented on or before October 31, 2009" Ex. B at Doc. Req. No. 3.

For the foregoing reasons, City Defendants respectfully request that the Court order plaintiff to produce copies of these documents, and any other documents regarding plaintiff's prior "whistleblowing," by January 10, 2014.

### D. Letter from Plaintiff to Prior Counsel

As this Court is well aware, media "leaks" and reports regarding both confidential documents and other sensitive issues have plagued this lawsuit. In fact, this Court has previously permitted City Defendants to obtain affidavits from all counsel and plaintiff indicating whether they were the source of a particularly egregious leak in early 2012. Following more recent media issues, the Medical Defendants brought an article by Leonard Levitt to this Court's attention, wherein the author indicated that he had been told that plaintiff fired his prior counsel because he wanted "a more media-driven, public airing than is now occurring." See The Schoolcraft Dilemma, *Leonard Levitt*, annexed hereto as Ex. I. At oral arguments for a separate issue on November 13, 2013, plaintiff made representations to this Court that the Levitt statement was a complete falsehood. However, in *The NYPD Tapes*, Mr. Rayman seems to confirm Mr. Levitt's version of events, and even refers to a letter that Adrian Schoolcraft sent in order to fire prior counsel, which seems to have been later sent by plaintiff to journalists Mr. Levitt and Mr. Rayman. See Ex. H at P.240. Though City Defendants acknowledge that this document would have otherwise been a privileged communication, to the extent that this document was provided to Mr. Rayman or Mr. Levitt, any privilege that may have existed has now been waived. City Defendants therefore request that the Court order plaintiff to produce a copy of the November 7, 2012 letter from Adrian Schoolcraft to Jon Norinsberg to City Defendants by January 10, 2014.

### E. Complaint Reports Given to QAD

Plaintiff has repeatedly claimed that the NYPD "stole" copies of NYPD Complaint Reports that plaintiff had collected in order to report on misconduct. Plaintiff alleged that certain documents were removed from his apartment on October 31, 2009, and that other documents were removed from his locker at the 81st Precinct around that same time. In fact, plaintiff alleged in his discovery responses that the documents he provided to QAD on October 7, 2009 were in the *sole custody* of the NYPD and that plaintiff was not in possession of *any* documents responsive to that request. See Ex. A at Doc. Req. No. 71. However, according to *The NYPD*

---

[3] Related Interrogatory Requests also sought to have plaintiff "[i]dentify all city, state, and federal government agencies, to whom plaintiff made complaints regarding the NYPD within the past five (5) years including, but not limited to, the NYPD Quality Assurance Division ("QAD"), the NYPD's Internal Affairs Bureau ("IAB") of the New York City Police Department, any elected official or representatives, and attorney general and/or inspector general offices" and "[i]dentify all documents, audio and/or video recordings prepared and/or produced by plaintiff, or any other person on behalf of plaintiff, that relate to plaintiff's employment with the NYPD, as well as the claims and subject matter of this litigation." (1st Set of Interrogatories, Interrogatory Nos. 12 and 18).

*Tapes*, plaintiff provided a copy of the "same questionable crime reports he gave QAD in October," to reporter Rocco Parascandola in or around March 2010. See Ex. H at P.165. To the extent plaintiff is alleging that documents were stolen from him in October 2009, evidence of plaintiff's possession of any of those same records in March 2010 is necessary for City Defendants to dispute plaintiff's allegations of theft. Additionally, those documents are relevant to a number of City Defendants' Discovery Requests, including, but not limited to, requests for:

> "[C]omplaints made by plaintiff to any city, state, and/or federal government agency including, the NYPD Quality Assurance Division ("QAD"), the NYPD's Internal Affairs Bureau ("IAB") of the New York City Police Department, any elected official or representatives, and attorney general and/or inspector general offices." Ex. A at Doc. Req. No. 11.

> "[A]ny and all documents, notes, files, recordings, etc. provided to the Quality Assurance Division ("QAD") on October 7, 2009." Ex. A at Doc. Req. No. 71.

Therefore, City Defendants respectfully request that the Court order plaintiff to provide copies of the Crime Complaints he is still in possession of by January 10, 2014.

### F. Conclusion

For the reasons stated above, City Defendants respectfully request that the Court endorse the enclosed Proposed Order, compelling plaintiff to produce the aforementioned documents by January 10, 2014.

City Defendants thanks the Court for its time and consideration of these requests.

Respectfully submitted,

Suzanna Publicker Mettham
Assistant Corporation Counsel
Special Federal Litigation Division

cc:  Nathaniel Smith (By ECF)
*Attorney for Plaintiff*

Gregory John Radomisli (By ECF)
MARTIN CLEARWATER & BELL LLP
*Attorneys for Jamaica Hospital Medical Center*

Brian Lee (By ECF)
IVONE, DEVINE & JENSEN, LLP
*Attorneys for Dr. Isak Isakov*

Bruce M. Brady (By ECF)
CALLAN, KOSTER, BRADY & BRENNAN, LLP
*Attorneys for Lillian Aldana-Bernier*

Walter A. Kretz, Jr. (By ECF)
SCOPPETTA SEIFF KRETZ & ABERCROMBIE
*Attorney for Defendant Mauriello*