D9PJSCHM                          Motions

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   ADRIAN SCHOOLCRAFT,

4              Plaintiff,

5         v.                            10 Civ. 6005 RWS

6   THE CITY OF NEW YORK, et al.,

7              Defendants.

8   ------------------------------x

9

10

11                                     September 25, 2013
                                       12:20 p.m.
12

13

14

15  Before:

16                  HON. ROBERT W. SWEET,

17                                     District Judge

18

19

20

21

22

23

24

25

1          (In open court)

2          (Case called)

3          THE COURT:  My first question is for the city.  What

4     is it that you want that you haven't gotten?

5          MS. METTHAM:  So there are three things, your Honor.

6          The first is a service address in writing for

7     plaintiff's father, Mr. Larry Schoolcraft.

8          THE COURT:  Well, you've gotten that, haven't you?

9          MS. METTHAM:  Your Honor, we got one address from

10    plaintiff during his deposition, and when I tried to send a

11    document by certified mail, it came back and it appeared to be

12    a post office box.

13         I am just asking plaintiff to certify that that is the

14    address at which his father can be served because it appears to

15    be a post office box.  It is 300 miles away, so to send a

16    server, it makes it a little more difficult.

17         MR. SMITH:  I'll send a letter stating the address

18    again.

19         THE COURT:  Can we just shorthand this whole thing?

20    What is the address?

21         MR. SMITH:  I am not sure exactly.  I think it is

22    107-something-something road.

23         THE COURT:  Okay, you've got it.

24         MR. SMITH:  Yes, and they have it.

25         MS. METTHAM:  We just would like to clarify that that

1   is an address at which Mr. Schoolcraft lives and can be served

2   personally?

3              THE COURT:  Yes.

4              MR. SMITH:  Yes.

5              MS. METTHAM:  Okay.  The second is regards to

6   Mr. Frank Polestro.  Plaintiff has mentioned this individual in

7   his complaint.  The city defendants have written two motions to

8   the court about this.  We wanted any documents plaintiff is in

9   possession of regarding Mr. Polestro.

10             Plaintiff has continued to respond with, "We have no

11  additional documents."  I am not aware of any original

12  documents, and all I am asking is plaintiff either state there

13  are no documents, as the court ordered in June, or to point

14  defendants to the documents which relate to what Mr. Polestro

15  previously produced.  That is all.

16             THE COURT:  Any problems with that?

17             MR. SMITH:  There are about 10,000 pages of documents

18  in this case.  There are pleadings this big.  I am not aware of

19  any other references to this Officer Polestro, but this record

20  is huge, and --

21             MS. METTHAM:  We are only asking for documents.

22             THE COURT:  They are not talking about, the city is

23  not asking for any references.  They're asking do you have any

24  documents relating to this officer?

25             MR. SMITH:  I do not have any.

D9PJSCHM                        Motions

1              THE COURT:  The city, that means there will be no

2    documents produced by the plaintiffs with respect to this

3    officer.

4              MR. SMITH:  Right.  The plaintiff has no documents.  I

5    have access, like I said, to thousands of pages of documents in

6    this case, and I believe his name appears in some of them.

7              THE COURT:  That is a different issue.

8              MR. SMITH:  Okay.

9              THE COURT:  When you say thousands of documents --

10             MR. SMITH:  That they have produced.

11             MS. METTHAM:  I am not asking about my documents.  I

12   am asking about his --

13             THE COURT:  That satisfies the city?

14             MS. METTHAM:  Yes, your Honor.

15             The third item relates to plaintiff had an initial

16   deposition on October 11th of last year.  During his

17   deposition -- and your Honor might recall this, this has again

18   been the topic of two prior motions to compel and court

19   order -- during his deposition plaintiff repeated responded to

20   questions about factual matters by stating, "I have to listen

21   to my recordings to answer that."

22             Plaintiff has provided over 125 recordings, some of

23   which are over seven and a half hours long.  I assume that he

24   will, rightfully so, will not want the city defendants to hold

25   plaintiff to listen to all 125 of those recordings so that he

1   could listen to them.

2           We then made a compromise, asked plaintiff to go back

3   to his deposition and all the questions that he answered, "I

4   cannot answer your question without listening to my

5   recordings," to cite to a specific recording responsive to that

6   question and answer portion.  This was a motion in March.  The

7   court granted it.  Then an order to show cause in late May, and

8   on June 6, this Court ordered plaintiff to produce those

9   responses.

10          In July plaintiff respond by listing just recordings

11  divorced from the questions to which they respond.  In his

12  opposition, Mr. Schoolcraft for the first time stated I have no

13  idea which questions you're referring to.  So the city in our

14  reply provided a list of the questions to which we're referring

15  and simply asked plaintiffs state to this question I was

16  referring to this recording.  That is what city defendants are

17  requesting.

18          THE COURT:  But you want more than simply the

19  recording?

20          MS. METTHAM:  No, your Honor.  What happened when

21  plaintiff responded he did not state, for example, to question

22  on Page 25 Line 4 this is the recording to which I was

23  referring, he just provided a list of a couple of dozen

24  recordings and said these are responsive to the deposition.  So

25  I am asking that to each of these questions, he cite to the

1    recordings to which he was referring.

2            MR. SMITH:  The city made an application saying you

3    made references to the tape recordings as well I am not sure

4    about who told me exactly the number of summonses I had to get

5    on all the occasions.  There are a lot of tape recordings, and

6    so the city then said we want amplification about on those

7    circumstances.

8            So I sat down and Mr. Schoolcraft sat down and we read

9    through the deposition, and because the questions were very

10   unclear, I broke down the areas that I thought the city was

11   asking about because in their initial application, they didn't

12   say oh, we asked you this question and you gave us this answer

13   and it is adequate.  They just sort of said we want further

14   amplification on how many people, this, that or the other

15   thing.

16           I did their work for them and I said okay, this is the

17   number of occasions where he was told a specific number, quota

18   for summonses, and this was the occasion or these were the

19   occasions when he was told he could close overtime.  So I broke

20   it down into subject matters.

21           Then I provided a list.  After listening to all the

22   tape recordings that were relevant and provided, this is the

23   time, this is the date, this is the specific recording that it

24   refers to, and now two months later they come back and say no,

25   we want you to do more work on this because we want you to do

1    more work on this forever, frankly.

2            They haven't told you, your Honor, there is this piece

3    of information that they need.  They're not being specific what

4    it is they're looking for.

5            MS. METTHAM:  I did list the questions.

6            MR. SMITH:  In a reply she puts 75 questions for the

7    first time after three motions and dozens of letters.

8            THE COURT:  Can you answer the 75 questions by just

9    slotting in what you've already done?

10           MR. SMITH:  No.  It is just make-work, Judge.  They

11   literally have put in like, it looked to me like around 75

12   questions.  Now I have to cut and paste them and put them

13   together.  What is this for other than to waste my time?

14           I have got a discovery schedule to move forward here.

15   They're taking his deposition in two days.  They can ask him

16   some of these questions.  This is make-work, frankly.

17           MS. METTHAM:  Believe me, I am not intending to create

18   any more work for anybody on this case let alone myself.

19           We simply, during his deposition, when asking him

20   simple factual questions, he would not even respond to

21   questions such as can you give me the approximate time period

22   to limit these recordings to.

23           THE COURT:  I just heard there is a deposition coming

24   up?

25           MS. METTHAM:  Yes, your Honor.

1          MR. SMITH:  Tomorrow, Mr. Schoolcraft.

2          MS. METTHAM:  Mr. Schoolcraft.  We moved the court

3     last year following his first deposition --

4          THE COURT:  Okay.  Look, would the sensible solution

5     to this problem be that you put your questions and he answers

6     them at the deposition?

7          MS. METTHAM:  If he answers them without reference to

8     recordings.  The problem is that, for example, tomorrow Mr.

9     Kretz, the attorney for defendant more iello oh, and I are

10    splitting the day.  My questioning tomorrow is focused on the

11    five new defendants.

12         THE COURT:  Whatever your question is, let's just say

13    it is who talked to you about summonses, you're going to want

14    to know which of the recordings the plaintiff believes relate

15    to that question, right?

16         MS. METTHAM:  From the initial point, your Honor, I

17    actually just wanted him to answer the question without

18    reference to recordings.  Just tell me which individuals, which

19    defendants, for example.  I would acceptance the answers.

20         THE COURT:  Will that solve our problem?

21         MR. SMITH:  I believe so.

22         THE COURT:  Okay.

23         THE COURT:  Good luck.

24         MR. KRETZ:  At the first session of plaintiff's

25    deposition, he was asked countless numbers of questions by Ms.

1    Publicker, Ms. Mettham, where he responded, "I can't answer

2    that unless I listen to the recording."

3              THE COURT:  That is finished.

4              MR. KRETZ:  Where we are, we are going to ask him the

5    question again, and presumably he will say, "I can't answer

6    that without listening to the record."

7              THE COURT:  He will not.

8              MR. KRETZ:  We don't want to spend hours having him

9    listen to tape recordings that are hours and hours long.

10             How is he going to point that out to us in any kind of

11   efficient way?

12             THE COURT:  If a question is asked about -- you talk

13   to him about the summons policy, just for example, and he is

14   going to have to state who.  He cannot say, he can't respond by

15   answering, "I don't know because I haven't reviewed the tapes,"

16   because he has reviewed the tapes.

17             MR. KRETZ:  If he is able to do that, that will be

18   great.

19             THE COURT:  Well, I assume.  I assume.

20             MR. SMITH:  Yeah.  In fact, based on this conference,

21   we are going to have a conversation with Mr. Schoolcraft,

22   Officer Schoolcraft.  I am also going to provide him with a

23   list that we provided to --

24             THE COURT:  Okay, I got you!  All right!

25             MS. METTHAM:  Thank you.

1              THE COURT:  Good luck.  What time is the deposition?

2     Maybe I should attend!

3              MR. SMITH:  10:00 o'clock, but I think it will be in

4     the City offices, which are not as --

5              THE COURT:  Not as pleasant?

6              MS. METTHAM:  It's in the offices of Mr. Kretz, which

7     I imagine are quite more hospitable.

8              THE COURT:  Elegant!  All right.

9              So we have dealt with the city's problem.

10             MS. METTHAM:  Thank you.

11             THE COURT:  Your problem?

12             MR. SMITH:  There are two-fold.

13             One is the attorney's eyes only stipulation which has

14    put me in a straightjacket in this case.  The second thing is I

15    can't believe I am standing here asking a federal judge to

16    order the defendants to return Officer Schoolcraft's own

17    personal property.  Those are the two items.

18             THE COURT:  The eyes only?  Now, right, wrong or rain,

19    I think what I said, I had already dealt with that to this

20    extent it is witnesses and parties.  I think I have already

21    done that.  Haven't I?

22             MS. METTHAM:  You have not.  However, the city

23    defendants, after we received plaintiff's letter, dated August

24    30th, we responded last Monday and removed the attorney eyes

25    only designation from 600 pages of documents, which included

1    witnesses with relevant information.

2              THE COURT:  Okay.  That much is done.

3              What more needs to be done?

4              MS. METTHAM:  Your Honor, there are three categories

5    of documents, as we see it.  The first category are

6    confidential and sensitive records relating to two of

7    plaintiff's family members.

8              THE COURT:  Yes.  Now, why does he need -- you know

9    it.  You've got it.  Why does he need it?

10             MR. SMITH:  Well, first off, I don't have it.

11             A lot of the confidential stuff that is subject to the

12   attorney's eyes only limitation is also redacted because it's a

13   privacy interest.  It is like peeling an onion that never gets

14   unpeeled.  It is comical, frankly, but nevertheless, some of

15   the stuff that is not completely redacted even from the

16   attorney's eyes only stuff pertains to financial records,

17   criminal background records.

18             THE COURT:  We were just talking about the comments

19   about the family.

20             MR. SMITH:  Yeah.  Why should all of the defendants

21   know and have --

22             THE COURT:  You --

23             MR. SMITH:  I know, but why shouldn't the plaintiff

24   know, maybe I should or I shouldn't call this person as a

25   witness, or maybe I should know what they know because

 1    otherwise I am in the dark.

 2            That is the problem, frankly, getting deeper into this

 3    about the attorney's eyes only.  It handcuffs a lawyer.  It

 4    puts him in a situation where his own client says you know

 5    something that I don't know, and I am not allowed to know it

 6    because this whole process dubs me unworthy of having this

 7    information.

 8            And, you know, Judge, that is not an easy situation to

 9    be put in, but I shouldn't be put in that position without a

10    very good reason.  They fail to provide any very good reason.

11            THE COURT:  What is the reason with respect to the

12    family issue?

13            MS. METTHAM:  To be clear, your Honor, he is pointing

14    to co-defendants, stating that their defendants have access to

15    these documents.  Co-defendants, if I am not mistaken, their

16    clients are also subject to the attorney's eyes only

17    stipulation.  Is that correct?

18            MR. RADOMISLI:  That's correct.

19            MS. METTHAM:  It is not like a doctor's eyes, a doctor

20    has access to documents and Mr. Schoolcraft does not.

21            Additionally, I believe these are sensitive and

22    confidential and ought to remain that way.  These two

23    individuals called IAB of their own volition and made

24    statements to IAB.

25            IAB, in investigating and trying to determine what

1    interests might be at stake for these individuals contacting

2    IAB, they ran some law-enforcement-sensitive searches on

3    plaintiff's father and sister.  I believe it would be

4    inappropriate to give these documents of a sensitive nature to

5    plaintiff especially considering, for example, the sister, I

6    don't believe they have a relationship, according to the

7    documents produced in this case, and it seems it would violate

8    the kind of trust in IAB.

9         THE COURT:  I will maintain a stipulation with respect

10   to that category.  What is next?

11        MS. METTHAM:  The second category relates to non-party

12   arrestees.  This is a little confusing.

13        THE COURT:  Yes.  Let me ask the plaintiff, this is

14   not an issue in the case, is it?

15        MR. SMITH:  It frankly is not an issue at all because

16   the information that was provided under the attorney's eyes

17   only stipulation redacts out the names of the arrestees.  This

18   is just a complete red herring.  It is an irrelevant issue.  I

19   don't have the names of the arrestees, so I can't turn them

20   over to my client because I don't have them.

21        I don't know why this is thrown up as a sort of

22   important thing.  It is ridiculous.

23        MS. METTHAM:  To begin, your Honor, I have to admit

24   publicly that I honestly don't believe they should have been

25   produced at all in the first place.

1              THE COURT:  In any case --

2              MS. METTHAM:  In any case.

3              THE COURT:  -- if we leave it where the Good Lord has

4    flung it, there is no harm to either side.

5              MS. METTHAM:  Correct.

6              THE COURT:  Next?

7              MS. METTHAM:  The last category relates to party

8    discipline.  I could be off, and I could be off on the number,

9    there are 16 NYPD officers who are defendants in this matter.

10             We have produced disciplinary records and personnel

11   records relating to these individuals under an attorney's eyes

12   only stipulation.  Again I don't believe that plaintiff, who

13   was formerly an employee of these individuals and is still

14   technically an employee of the NYPD, should be given access to

15   these individuals' employment disciplinary matters.

16             THE COURT:  Well, look, these records presumably will

17   be part of this litigation only if the records reveal something

18   that is going to be relevant to the conduct alleged here,

19   correct?

20             MR. SMITH:  Yes.

21             THE COURT:  Yes.  So I think I don't see at the

22   moment, given skilled counsel for the plaintiff, that there is

23   a need for revealing that information now.  Unless you can --

24             MR. SMITH:  I can posit an example for where I think

25   the plaintiff ought to be provided with this information.

1            MS. METTHAM:  I would just ask that he --

2            MR. SMITH:  Please don't interrupt me.

3            MS. METTHAM:  Please not provide confidential

4     information to the court on the record.

5            MR. SMITH:  Thank you very much for reminding me of my

6     obligations.  I can posit as an example that a supervisor who

7     Mr. Schoolcraft had suggested was attacking or retaliating

8     him --

9            THE COURT:  Right.

10           MR. SMITH:  -- for complaining about some sort of

11    policy, that that, in fact, that supervisor had been

12    disciplined for doing very similar kinds of things.  Why

13    shouldn't the -- I can't get this around my head -- why

14    shouldn't the plaintiff be able to know about very important

15    evidence about the fact that this is not just one isolated

16    incident, but that there are dozens of related incidents where

17    people just, the same guy and the same --

18           THE COURT:  Look, that gets into the whole privacy.

19    The city has cited a section of the public officers law with

20    which, to be perfectly honest, I am not familiar.

21           MR. SMITH:  This was the Freedom of Information Act.

22           THE COURT:  I don't know the extent of it.

23           Clearly any information that is relevant to the

24    charges in this case will ultimately be given to the plaintiff,

25    no question, at trial.  If you want to make a case for some of

1    that information being turned over now with respect to a

2    particular defendant, I would entertain it.

3            The rest, you know, the other stuff that it doesn't

4    relate to our case, I don't see that he needs it.  We're

5    aware -- look, there is no sense going over spilt milk, but we

6    know the history here and so I think we have to be a little bit

7    more careful than we might otherwise be.

8            I agree with you, there should not be any blanket.  So

9    if there are particular instances of these records which you're

10   aware of which you think the plaintiff should have, tell the

11   city which ones and maybe you can work it out.  If you can't,

12   I'll be here.

13           MR. SMITH:  All right.

14           THE COURT:  Now we get to the property.

15           MR. SMITH:  Before we get to the property, I want to

16   revisit one or make one thing very clear at least in my mind.

17           THE COURT:  Sure.

18           MR. SMITH:  The sensitive information about Officer

19   Schoolcraft's father and his sister that is going to be

20   maintained under this attorney's eyes only limitation is the

21   information about the financial inquiries and the searches for

22   criminal histories because they both made statements all over

23   the record, and I am entitled to that.

24           THE COURT:  Yes, sure.

25           MR. SMITH:  And he is entitled to that.

1             THE COURT:  All right.

2             MR. SMITH:  The property, the property is a

3     no-brainer.  By what right does the city have to take -- when I

4     went to law school, taking someone's property is a crime.  Here

5     I am arguing I need an order from a federal judge in order to

6     get my own property back.  I don't understand it.

7             THE COURT:  The city tells me that they cannot turn

8     over the rifle because your client doesn't own the rifle, and

9     they can't turn over a rifle to somebody that doesn't own it.

10            MR. SMITH:  When I give them Mr. Larry Schoolcraft's

11    address, they can ship his rifle to him, and that solves the

12    problem, doesn't it?

13            MS. METTHAM:  No, your Honor it does not.

14            MR. SMITH:  Why not?

15            MS. METTHAM:  For one, you can't send firearms in the

16    United States Postal Service.

17            THE COURT:  Well, all right.

18            MR. SMITH:  You can't?  I don't know if that is true,

19    actually.

20            THE COURT:  Look --

21            MR. SMITH:  They can arrange to deliver that.  They're

22    going to get his address.

23            THE COURT:  The city tells me that they cannot turn

24    over the rifle to somebody, to your client, because it is not

25    his rifle.  That does make some kind of sense to me.

1          MR. SMITH:  I am not arguing with that.  Ship it back

2    to Lawrence Schoolcraft.  They spent about 10,000 hours chasing

3    him up north in the Adirondacks, so they can make one more trip

4    and return the rifle to the father that they took from Officer

5    Schoolcraft's apartment.

6          THE COURT:  Well, at the moment I don't believe I can

7    order them to turn the rifle over to the plaintiff.  That's

8    that.

9          If the father wants to make a claim for the rifle, it

10   seems to me he probably -- you know, you know where that is

11   going to go.  That is going to go as oh, we need it for

12   evidence in the parallel or subsidiary or however you want to

13   characterize it disciplinary hearing.  That is where that is

14   going to go, but we are not there yet because the father hasn't

15   made the request.

16         We'll skip the rifle for the moment.

17         MR. SMITH:  Dodge that bullet, I guess?

18         THE COURT:  Yeah.  How about the pieces of paper?

19         The pieces of paper, I'm told, are department records

20   and belonging to the city, but, on the other hand, he had them.

21   So they were in his possession presumably.  So why shouldn't he

22   get those back?

23         MS. METTHAM:  He was not supposed to bring them home

24   in the first place, your Honor.

25         THE COURT:  Well, that is a different issue.  That is

D9PJSCHM                         Motions

a different issue.  The city swept in and grabbed things, and

maybe he shouldn't have had them, but he did have them.  So why

can't they be turned back?

          If you want to make a thing about that in the

disciplinary proceeding, that is fine, there is no factual

dispute.

          MS. METTHAM:  I would also just posit that I am not

sure, plaintiff keeps stating he has to get an order from a

federal judge.  I believe he might actually need one from a

state judge.  I believe the proper course would be for

plaintiff to file an action -- it has been a while since law

school -- for conversion if he wants the property returned.  I

don't believe that a federal court has the authority to issue,

order NYPD to return an item.

          I would, however, again suggest that plaintiff follow

through with what he asked for in April in which city

defendants agreed to in April, which is an inspection of the

items and that they continue to be in the property of the NYPD

property clerk till this matter is completed.

          THE COURT:  Well, that position is new.  You make a

good point.  I was, quite frankly, I was thinking about this in

terms of a criminal defendant, and so on and so on before me.

You tell me now I can't do that.

          I certainly respect your analysis, and maybe you're

right.  So, in any case, that issue has not been presented to

1   me before, and so my suggestion would be that you inspect those

2   documents, whatever they've got, and then I guess, I guess

3   you'll have to decide where am I in this?

4           What is my authority to compel them to take over, to

5   return materials which you say, I am sure you would say, they

6   should not have been taken in the first place.  So that one I

7   guess if you all want to wrestle some more on that issue, tell

8   me when you want to do it.

9           MR. SMITH:  Well, I do want to wrestle with that

10  issue.  I also want to wrestle with the next issue, which is

11  there was a digital recorder that was also in his apartment,

12  and they came, they took it.  They took him, and now I'm being

13  told that I have to ask for permission to get my property back

14  from the City of New York, a governmental entity.

15          THE COURT:  The city is now telling me that I don't

16  have the authority to do what you want me to do.  I'd be

17  inclined to say yeah, turn over the -- return the -- I mean,

18  common sense, common sense is not one of the things that has

19  dominated this litigation from the beginning.

20          Common sense would say yes, give him back the tape

21  recorder, but now they stole it -- excuse me -- they possessed

22  it.  They possessed it.

23          MS. METTHAM:  It was given freely by --

24          THE COURT:  It is in the hands of the NYPD and they

25  tell me I haven't got the power to compel them to turn it over.

1          MR. SMITH:  Maybe showing up here was a mistake, but I

2     would like to point out that the city has said that your Honor

3     doesn't have the power to order NYPD to do anything.  They

4     didn't say that in their papers.

5          They also said the NYPD doesn't have the power to turn

6     over a rifle to anybody but its possessor, but they provide no

7     authority for that.  Now they're saying jump through another

8     hoop, and I'm missing the authority for any of this.  All I

9     have on my side is common sense.

10          THE COURT:  Yes.  Well, be thankful for that.

11          MR. SMITH:  At the end of the day, I'll know whether

12     or not to be thankful for that.

13          THE COURT:  Well, look, let's do this.

14          Do you want to press your position?  Does the city

15     want to?  Common sense, exemplified for the first time by me,

16     says give him back the tape recorder.

17          The rifle you can keep.  The documents, I would say

18     turn them over.  Keep copies if you want, but return the

19     documents that were in the apartment.  If you think that is

20     wrong, then next week this time we'll hear.  I don't know.

21          MS. METTHAM:  Because, your Honor, the documents,

22     again that is why I thought an inspection might be helpful.

23          To be perfectly frank, I am not a hundred percent sure

24     what these documents have on them.  I would like to inspect

25     them with plaintiff's counsel first.  If they are the documents

D9PJSCHM                          Motions

1  I believe they are based on some of the plaintiff's statements,

2  what are called 61's or complaint reports and arrest reports

3  that include again information, they may be sealed.

4        THE COURT:  That is an entirely different thing again

5  that wasn't before me.  So I think, look, I do understand the

6  difficulties of this case, I do.  Let's not try to magnify them

7  and let's try to reverse them.  If you want to:

8        First of all, find out what is in the documents;

9        Second, if you want to press this point further, tell

10  counsel the authority upon which you're doing it, and if you

11  all cannot agree, you can come back.  I'm sorry about that, but

12  I don't know of any better way to handle it.

13        We can do it next week or two weeks from now, whatever

14  you think.  It certainly seems like a mountain made out of a

15  molehill to me, but anyhow, let's plan on it next week unless

16  you all can resolve it.

17        MS. METTHAM:  Could we make that two weeks from now?

18        I think that in order to inspect these documents and

19  meet with our client, I think it might take a little more time

20  and to draft any papers.

21        THE COURT:  Okay.  Anything else?

22        MR. SMITH:  No.  We also did an inspection of 8-1

23  recently, and we were going to look at Officer Schoolcraft's

24  lockers, and then we learned there is stuff in there.  There

25  was a watch and books and other stuff, we wanted to take that

1    back.  We learned the contents of the lockers has been removed

2    and there is an ongoing investigation about what happened to

3    the lockers.  Since I don't know the results of that

4    investigation, I didn't come to your Honor complaining about it

5    just yet, but since we're discussing this, I thought I'd

6    mention, I am seeing another, another ball coming this way.

7              THE COURT:  Well, why don't you include that in this

8    discussion with the city.

9              MR. SMITH:  I will do that.

10             THE COURT:  See if you can work it out.

11             MR. LEE:  Since he opened the door to bringing things

12   up that hadn't been on your agenda for this case, the city had

13   written a letter on September 17 requesting information that

14   comes out in the recent book that was published about this

15   case, and the reason I am bringing it up now, we are going to

16   question Mr. Schoolcraft Thursday and Friday.  Some of these

17   items we really should have in our possession before that.

18             For instance, he gave, apparently there is a 10 page,

19   handwritten statement which delineates Mr. Schoolcraft's

20   history of what happened at the hospital.  That certainly is

21   relevant.  We certainly should have that before we question

22   him.  There are some other e-mails to reporters that she

23   brought up and other things.

24             THE COURT:  Forgive me, but what is the status?  You

25   made a demand for it?

1           MR. LEE:  September 17 it was demanded.

2           MS. METTHAM:  Plaintiff has not responded yet, which

3      is the only reason I hadn't brought it up to your Honor quite

4      yet.

5           THE COURT:  Thank you for telling me there is yet

6      another problem perhaps.  Wherever that is, presumably it will

7      be produced if it exists, but I don't know.

8           MR. LEE:  Thank your Honor.

9           MR. LEE:  If not, we'll bring it up October 9th.

10          THE COURT:  Yes, okay.  Anything else?

11          MS. METTHAM:  No, your Honor.

12          THE COURT:  Nice to have you all here.  I look forward

13     to see you again.

14          MR. SMITH:  In two weeks.

15          THE COURT:  And again.

16          MS. METTHAM:  And again.

17          (Court adjourned)

18

19

20

21

22

23

24

25