UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

ADRIAN SCHOOLCRAFT,  10-CV-6005 (RWS)

           Plaintiff,            **PLAINTIFF'S SUPPLEMENTAL
                                      DISCOVERY DEMANDS**

      -against-

THE CITY OF NEW YORK, *et al.*,

           Defendants.

----------------------------------------------------------x

      Pursuant to the Federal Rules of Civil Procedure and the Civil Rules for United States District Courts for the Southern District of New York (the "Local Rules"), plaintiff hereby demands that the City of New York and the individual defendants who are or were employees of the City of New York (the "City Defendants") produce the documents, answer the following interrogatories, and produce the witnesses required by the following notice of depositions.

## DEFINITIONS AND INSTRUCTIONS

    A.    "Defendants" the plural, means all of the defendants in this action
    B.    The "Complaint" means Plaintiffs Second Amended Complaint in this action.
    C.    "Documents" as used herein, include, but are not limited to, correspondence, notes, telefaxes, telefax cover sheets, computer printouts, e-mail, text messages, stored data and metadata, memoranda, reports, summaries, calendars, diaries, tape recordings, videotapes and any other recording medium, and all non-identical copies of same in your possession or control.
    D.    "Communication" shall include any method of transmitting information including, but not limited to, letters, facsimiles, teletypes, telegrams, e-mails, telephone conversations, in-person meetings, recordings, notes, handwritten

1

or otherwise, reports, diaries, calendars and similar documents.

E. Any communications between Defendants and Plaintiff's referred to herein shall refer to any communications between any Defendant and Plaintiff as well as any communications between any Defendant and Plaintiff's attorney or representative concerning the subject of the Complaint.

F. "Identify" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

G. "Identify" with respect to documents, means to give, to the extent known, (i) the type of document, (ii) the general subject matter, (iii) the date of the document, and (iv) the author(s), addressee(s) and recipient(s).

H. "Misconduct" means any improper or unlawful conduct on the part of a person concerning the administration of justice or any conduct that constitutes a dereliction or improper departure from duty.

I. If any information sought is believed to be the proper subject of protection pursuant to any privilege, Defendants shall identify such information and state the basis on which the privilege in being asserted, so that the matter may be considered by the Court.

J. Plaintiff hereby incorporates the definitions and rules of the Local Rules of the Southern District of New York.

## REQUESTS FOR PRODUCTION

1. All documents maintained by the City of New York reflecting the number of crimes committed or alleged to have been committed on October 31, 2009 in the 81st Precinct, the 104th Precinct, and throughout the City of New York.

2. All SPRINT reports and recordings of all 911 calls on October 31, 2009 from 3:00 pm through 11:30 pm for, from or regarding incidents within, the 81st Precinct and the 104th Precinct.

3. All documents reflecting the identity of all members of the New York City Police Department ("NYPD") who have been deemed by a member of the NYPD an "Emotionally Disturbed Person" or "EDP" for the period from January 1, 2000 through December 31, 2011.

4. All documents pertaining to the investigation at the 81st Precinct pertaining to allegations by a police officer assigned to the 81st Precinct who alleged that he had been shot or shot at while in the parking lot of the 81st Precinct.

5. Copies of the following recordings: (a) any and all recordings of the interview or interviews by the Internal Affairs Bureau ("IAB") or any member or representative of the City of New York or the NYPD, of Mystica Schoolcraft; (b) the

second part of the interview by IAB of Sergeant Weiss; and (3) the interview of Sergeant Huffman on October 31, 2009 and all other interviews of members of the NYPD on October 31, 2009 pertaining to the incidents about Plaintiff on October 31, 2009.

6. All documents pertaining to claims or complaints against the NYPD by Officers Craig Matthews; James Griffin; Adyhl Polanco; Pedro Serrano; Eileen Barry; Daisy Boria; Robert Leuci; Jeffery Baird; Willis Crosland; Clifford Rigaud; Paula White-Ruiz; and Joseph Gray.

7. All documents pertaining to any disciplinary action taken by the City of New York or the Fire Department of New York City ("FDNY") against Elise Hanlon for making any false statements or engaging in conduct that brings into question her veracity or credibility.

8. All documents pertaining to complaints or claims of retaliation by any member of the NYPD for objecting to or reporting improper downgrading, misclassification, manipulation or suppression of crime reporting or reports of alleged criminal activity.

9. All documents pertaining to any disciplinary action taken against any member of the NYPD for conduct relating to improper downgrading, misclassification, manipulation or suppression of crime reporting or reports of alleged criminal activity.

10. All documents pertaining to complaints or claims of retaliation by member of the NYPD for violating a code of silence or the "Blue Wall of Silence" or for reporting misconduct against another member of the NYPD.

11. Copies of all videos and audio recordings, and all documents related thereto, for all presentations by Steven Mauriello to CompStat or TrafficStat or to Patrol Borough Brooklyn North while he was the Executive Officer or the Commanding Officer of the 81st Precinct.

12. Copies of all videos and audio recordings, and all documents related thereto, for all presentations by Theodore Lauterborn to CompStat and/or TrafficStat or Patrol Borough Brooklyn North while he was the Executive Officer of the 81st Precinct.

13. Copies of all videos and audio recordings, and all documents related thereto, for all presentations by Michael Marino to CompStat and/or TrafficStat or Patrol Borough Brooklyn North while he was an Assistant Chief at the NYPD.

14. Copies of all videos and audio recordings, and all documents related thereto, for all presentations by any other defendant to CompStat and/or TrafficStat or Patrol Borough Brooklyn North while said defendants was a member of the NYPD.

15. The inspection of the entire file maintained and created by the Quality Assurance Division ("QAD") for the audit and investigation that it conducted

regarding crime reporting by the 81st Precinct, as set forth in its June 23, 2010 report (NYC 5153-5248).

16. All monthly, quarterly and annual reports submitted by all police officers working at the 81st Precinct for any part of the period from December 1, 2007 through January 31, 2010.

17. All annual and quarterly evaluations of all police officers working at the 81st Precinct for any part of the period from December 1, 2007 through January 31, 2010.

18. The inspection of all logs maintained at the 81st Precinct (including manually created and computer-generated logs) for all summons activity ("A" type summons or parking summons; "B" type summons or traffic summons; and "C" type summons or criminal court summons, parking violations or quality-of-life type summons) for the period from December 1, 2007 through January 31, 2010.

19. All documents pertaining to any agreements between Defendant Steven Mauriello and the City of New York or the NYPD pertaining to this lawsuit, any indemnification of Mauriello, and the payment of his costs and expenses, including attorney's fees.

20. All documents pertaining to any agreements between the Captain's Endowment Association and the City of New York or the NYPD pertaining to this lawsuit, any indemnification of Steven Mauriello, and the payment of his costs and expenses, including attorney's fees.

21. All rules, orders and regulations pertaining to the approval of any request for any transfer of any member of the NYPD after January 1, 2009.

22. All reports or audits of the 81st Precinct conducted by the Complaint Assessment Team of QAD for any time within the period from January 1, 2007 through December 31, 2010, including all documents pertaining to the endorsement and transmittal of such reports or audits to or from the Deputy Commission of Strategic Initiative and to or from the commanding officer of the 81st Precinct.

23. QAD's standard operating procedures or other policy documents concerning how QAD conducts its activities.

24. IAB's standard operating procedures or other policy documents concerning how IAB conducts its activities.

25. All audio or video recordings of anyone interviewed by QAD or IAB regarding the plaintiff.

26. The Aided Report Worksheets regarding the plaintiff for October 31, 2009, including all electronic data regarding that Report.

27. The October 31, 2009 entries in the activity logs of all member of the NYPD, including without limitation members of the 104th and the 81st Precincts, who were in plaintiff's home or on the street or sidewalk in the vicinity of plaintiff's home on October 31, 2009.

4

28. All documents pertaining to communications with the media by the City of New York, the NYPD, or any employee/agent/representative of the City of New York pertaining to the plaintiff.

29. All pay-roll, health care insurance, and pension record pertaining to the plaintiff, including, but not limited to W-2s.

30. All video/audio recordings of or about the plaintiff in the custody, possession or control of the City of New York.

31. The personnel file and confidential performance profile of Brandon del Pozo.

32. All documents pertaining to any communications by, to or from Brandon del Pozo regarding the plaintiff or his lawsuit, including communications with Larry Schoolcraft, Jon Norinsberg, Graham Rayman, Ray Kelly, Charles Campisi, David Cohen, David Durk, Frank Serpico, IAB, The New York Times, The New York Post, Daily News, or John Jay College.

33. All documents pertaining to any and all training received by the plaintiff while working at the 81st Precinct.

34. All documents pertaining to training of police officers at the 81st Precinct for the period from January 1, 2007 through December 31, 2010.

35. All collective bargaining agreements between the City of New York and New York City Patrolman's Benevolent Association (the "PBA").

36. All documents pertaining to communications between the PBA and the City of New York, the NYPD, or their agents or employees, regarding the plaintiff.

37. All entries in the activity log of Robert Deck regarding the plaintiff.

38. All documents, including recordings, pertaining any communications, complaints or reports made by Robert Deck to IAB or QAD pertaining to the plaintiff.

39. All documents, including recordings and videos, pertaining to the plaintiff or his father or his sister in the custody or control or the NYPD Intelligence Division.

40. All documents, including recordings, pertaining to or involving Larry Schoolcraft.

41. All photographs or videos of the plaintiff or the plaintiff's apartments or homes.

42. Official NYPD or FDNY photographs of the individual defendants in this action and of all individuals who were in, at or in the vicinity of the plaintiff's home on October 31, 2009.

43. The command discipline log for the 81st Precinct for the period from January 1, 2009 through January 1, 2010.

44. The training logs for the 81st Precinct for the period from January

2006 through January 1, 2010.

45. The row-tow logs for the 81st Precinct for the period from January 2006 through January 1, 2010.

46. The gun amnesty logs for the 81st Precinct for the period from January 2006 through January 1, 2010.

47. The sick logs for the 81st Precinct for the period from January 2006 through January 1, 2010.

48. The inspection of all firearms that were being carried by Defendant Caughey on October 31, 2009.

49. Any communications between the NYPD and the Federal Bureau of Investigation regarding the plaintiff.

50. All documents pertaining to any awards or medals received by Steven Mauriello pertaining to his work for the NYPD.

51. All documents pertaining to the reference in the recording that has been identified as "DS.50_31OCTOBER2009_HomeInvasion.wma" to "Adam Three" and "he's off the roof" as recorded on October 31, 2009, including all reports, recordings or other records pertaining to that incident.

52. All documents, including electronic data pertaining to said "Adam Three's" jobs on October 31, 2009, including the Emergency Services Report, or the documents relating to the unit or group quoted in request number 51 above.

53. All Brooklyn North Command uninterrupted logs for the 24-hour periods for March 16, 2009.

54. All documents pertaining to the individual Defendant Mauriello testified to at his deposition, who is know as Tyrell Gardenhire, including without limitation all documents pertaining to that individual's criminal history, including arrests, summons, 250s, and convictions.

55. The standard operating procedures and other policy documents for the 81st Precinct's Training Officer.

56. All documents by the NYPD issued to the 81st Precinct regarding training police officers for the period from January 1, 2006 through January 1, 2010.

57. The standard operating procedures and other policy documents for the 81st Precinct's Crime Analysis Unit for the period from January 1, 2006 through January 1, 2010.

58. All reports issued or created by, about or pertaining to the plaintiff.

59. All "SPRINT" data, including records, logs, documents, video/audio recordings from Metro Tech Brooklyn, including all calls for service through 911, regarding the 81st Precinct from January 1, 2006 through January 1st, 2010.

60. Inspection of the file created and maintained for the creation of the Report of the Crime Reporting Committee and all instructions or directives issued to the members of the Crime Reporting Committee pertaining to its report.

6

61. All documents, including recordings, pertaining to the plaintiff's father, Larry Schoolcraft, including without limitation documents in the custody or possession of the NYPD, the Chief of the Department of the NYPD, IAB, the NYPD Police Commissioner, the Deputy Mayor of Operations, Deputy Inspector Louis Luciani, the Department Advocate's Office, Catherine Lamstein, Brandon del Pozo, and Captain Perez, the Executive Officer of the 81st Precinct.

62. All documents, including video/audio recordings concerning the Lowen's Pharmacy steroid investigation pertaining to Defendant Michael Marino.

63. All documents pertaining to all NYPD Department trials concerning Defendant Michael Marino.

64. All documents from the Mayor's Office or the Mayor pertaining to the NYC Department of Investigations involvement in any investigations of the NYPD for the period from January 1, 2001 through January 1, 2010.

65. All documents pertaining to Mayor Bloomberg's Commission to Combat Police Corruption.

66. All documents pertaining to Mark Pomerantz's request to Commissioner Kelly and/or Mayor Bloomberg for records concerning the downgrading or suppression of crime reports.

## INTERROGATORIES

1. Identify all chiefs, commanding officers, captains, inspectors and deputy inspectors who have been disciplined by the NYPD for conduct relating to improper downgrading, misclassification, manipulation or suppression of crime reporting or reports of alleged criminal activity, and for each such individual produce the charges and specifications, command discipline or other record of such discipline and the results of all such disciplinary actions.

2. Identify all contact information, including address, email, telephone numbers, and emergency contact information, for the following Craig Matthews; James Griffin; Adyhl Polanco; Pedro Serrano; Eileen Barry; Daisy Boria; Robert Leuci; Jeffery Baird; Willis Crosland; Clifford Rigaud; Paula White-Ruiz; and Joseph Gray.

3. Identify all members of the NYPD who have ever been declared an emotionally disturbed person or "EDP" by another member of the NYPD.

4. Identify all members of the NYPD who spoke the following words heard on the recording identified as "DS.50_31 OCTOBER2009_ HomeInvasion .wma": "Adam Three;" "he's off the roof;" "advice the officers . . . he's off the building;" "he ran down the stairs;" and "we're gonna be 84 momentarily..."

5. Identify all New York City Fire Department personnel in the vicinity of plaintiff's home on October 31, 2009 at 8260 88th Place, Queens, New York, and

7

production of all GPS records for all FDNY vehicles in the vicinity of plaintiff's home on October 31, 2009 at 8260 88th Place, Queens, New York.

Dated: New York, New York
February 14, 2014

                                       LAW OFFICE OF
                                       NATHANIEL B. SMITH

                                       */s/ Nathaniel B. Smith*
                                       Nathaniel B. Smith (NS 4487)
                                       111 Broadway, Suite 1305
                                       New York, New York 10007