Index No.  10 Civ. 6005 (RWS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADRIAN SCHOOLCRAFT,

Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

Defendants

## MOTION TO COMPEL DOCUMENTS FROM GRAHAM RAYMAN

**ZACHARY W. CARTER**
*Corporation Counsel of the City of New York*
*Attorney for City Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Suzanna Publicker Mettham*
*Tel:  (212) 356-2372*
*Matter No. 2010-033074*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT

       POINT I

           THE NEW YORK STATE SHIELD LAW DOES
           NOT APPLY TO THIS FEDERAL ACTION. ......................................... 2

       POINT II

           EVEN IF THE SUBPOENAED MATERIALS
           ARE PRIVILEGED UNDER FEDERAL LAW,
           THEY ARE RELEVANT TO THE LITIGATION
           AND CANNOT BE OBTAINED FROM ANY
           OTHER SOURCE. ................................................................................... 4

       POINT III

           THERE IS NO UNDUE HARM OR BURDEN TO
           MR. RAYMAN TO COLLECT THE
           SUBPOENAED DOCUMENTS. ............................................................... 7

       POINT IV

           MR. RAYMAN'S OBJECTIONS TO DEMANDS
           NOS. 14-21 ON THE BASIS OF VAGUENESS
           ARE DISINGENUOUS. ............................................................................ 7

           A.     Mr. Rayman's Objections On The Basis Of
                   Vagueness Are Disingenuous .......................................................... 7

           B.     Mr. Rayman's Objections On The Basis Of
                   Privilege Have Not Been Properly Asserted .................................... 8

       POINT V

           DESCRIPTIONS OF RELEVANCE OF
           INDIVIDUAL REQUESTS AND THEIR
           UNAVAILABILITY BY OTHER MEANS. .............................................. 9

**Page**

A.  Subpoena Requests Nos. 5, 14, And 16 – Written Statements Of Schoolcraft .................................9

B.  Subpoena Requests Nos. 1, 2, 3, And 18 - E-Mails To Reporters .......................................11

C.  Subpoena Requests Nos. 4, 7, 11, 12, 20, And 21 – Recordings ......................................12

D.  Subpoena Requests No. 6 – Crime Complaint Reports .........................................14

E.  Subpoena Requests Nos. 8 And 10 - Memoranda From Plaintiff ..............................14

F.  Subpoena Requests No. 13 - Letter Firing Prior Counsel ..................................15

G.  Subpoena Requests Nos. 15, 17, And 19 - Documents Received From Larry Schoolcraft ...................................16

H.  Subpoena Requests Nos. 22 And 23 - Agreements And/Or Contracts.........................16

I.  Subpoena Requests Nos. 14-21 - Remaining Documents ...................................17

POINT VI

PLAINTIFF HAS WAIVED ANY CLAIMS OF PRIVILEGE BY FAILING TO COMPLY WITH FED. R. CIV. P. 26(B)(5) AND LOCAL CIVIL RULE 26.2(C).........................................18

CONCLUSION...........................................19

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                     <u>**Pages**</u>

<u>AP Links, LLC v. Russ</u>,
   No. 09 Civ. 5437 (TCP) (AKT), 2012 U.S. Dist. LEXIS 105974, (E.D.N.Y. July 30,
   2012) .................................................................................................................................... 3

<u>Crosby v. City of New York</u>,
   269 F.R.D. 267 (S.D.N.Y. 2010) ....................................................................................... 6

<u>FG Hemisphere Assocs., L.L.C. v. Republique du Congo</u>,
   No. 01 Civ. 8700, 2005 U.S. Dist. LEXIS 3523 (S.D.N.Y. Mar. 7, 2005) ........................ 18

<u>Gonzales v. NBC</u>,
   194 F.3d 29 (2d Cir. 1999) ........................................................................................ 3, 4, 5

<u>Gould Inc. v. Mitsui Mining & Smelting Co., Ltd.</u>,
   825 F.2d 676 (2d Cir. 1987) .............................................................................................. 18

<u>In re Fitch, Inc.</u>,
   330 F.3d 104 (2d Cir. 2003) ............................................................................................ 3, 4

<u>Kingsway Fin. Serv., Inc. v. Price</u>,
   No. 03 Civ. 5560, 2008 U.S. Dist. LEXIS 77018 (S.D.N.Y. Oct. 2, 2008) ........................ 6

<u>Ligon v. City of New York</u>,
   No. 12 Civ. 2274, 2012 U.S. Dist. LEXIS 81526 (S.D.N.Y. June 12, 2012) ...................... 3

<u>Lugosch v. Congel</u>,
   No. 00 Civ. 0784, 2006 U.S. Dist. LEXIS 53116 (N.D.N.Y Mar. 7, 2006) ....................... 18

<u>Night Hawk Ltd. v. Briarpatch Ltd., LP</u>,
   No. 03 Civ. 1382, 2003 U.S. Dist. LEXIS 23179 (S.D.N.Y. Dec. 23, 2003) ...................... 6

<u>Persky v. Yeshiva Univ.</u>,
   No. 01 Civ. 5278, 2002 U.S. Dist. LEXIS 23740 (S.D.N.Y. Dec. 9, 2002) ........................ 3

<u>Salvatore Studios Int'l v. Mako's Inc.</u>,
   No. 01 Civ. 4430, 2001 U.S. Dist. LEXIS 11729 (S.D.N.Y. Aug. 14, 2001) ...................... 6

<u>Sokolow v. PLO</u>,
   No. 04 Civ. 397, 2012 U.S. Dist. LEXIS 127040
   (S.D.N.Y. Sept. 6, 2012) ................................................................................................ 5, 6

<u>Torres v. Toback, Bernstein & Reiss LLP</u>,
   278 F.R.D. 321 (E.D.N.Y. 2012) ....................................................................................... 3

**Cases**                                                                      **Pages**

United States v. Treacy,
   639 F.3d 32 (2d Cir. 2011)........................................................................ 4

Von Bulow v. Von Bulow,
   811 F.2d 136 (2d Cir. 1987)...................................................................... 3

Woodward Governor Co. v. Curtiss-Wright Flight Sys.,
   164 F.3d 123 (2d Cir. 1999)...................................................................... 2

**Statutes**

42 U.S.C. §1983 ............................................................................................ 2, 3

N.Y. Civ. Rights Law § 79-(h)(b) .................................................................... 4

Fed. R. Civ. P. 26(b)(1) .................................................................................. 6

Fed. R. Civ. P. 26(b)(3)(C) ............................................................................. 6

Fed. R. Civ. P. 26(b)(5) .................................................................................. 18

Fed. R. Civ. P. 26(b)(5)(A) ............................................................................. 9

Fed. R. Evid. 501 ........................................................................................... 3

Fed. R. Evid. 801(d)(2) .................................................................................. 6

Local Civil Rule 26.2 ..................................................................................... 18

## PRELIMINARY STATEMENT

Over the last three years,  City Defendants have sought a number of documents relevant to this case from plaintiff and his father, Larry Schoolcraft. Through deposition testimony, newspaper articles, and a recent book written by former Village Voice reporter, Graham Rayman, City Defendants leaned that plaintiff had a number of documents and recordings relevant to this litigation, including party statements and recordings of defendants, which had not been produced. Plaintiff and his father admit that they had given copies of the records to reporters, such as Mr. Rayman, and claim that they are no longer able to produce their original copies of the records.  Mr. Rayman's book references a number of these documents explicitly, and in many cases, he cites to them verbatim. Based on Mr. Rayman and plaintiff's descriptions of these documents, they are highly relevant to the claims and defenses underlying this litigation and are not readily obtainable elsewhere. Mr. Rayman's novel clearly states that plaintiff is the source of his information and documentation, and therefore, there is no concern with the confidentiality or anonymity of a journalist's sources.

Based on this background, City Defendants drafted a subpoena for records in the possession of Graham Rayman which were provided by either plaintiff or plaintiff's father,  on December 3, 2013, with a return date of December 20, 2013. (Declaration of Suzanna Publicker Mettham (hereinafter "Mettham Decl.") Exh. A). The subpoena was personally served on Mr. Rayman on December 7, 2013. (Mettham Decl. Exh. B). Following requests by Mr. Rayman's counsel, the time to respond to the subpoena was first extended to January 7, 2014, and then to January 24, 2014. On January 24, 2014, Mr. Rayman served his written objections to the subpoena, and failed to produce a single document. Counsel met and conferred on multiple occasions following the service of Mr. Rayman's objections, and during these discussions, City Defendants repeatedly informed Mr. Rayman both orally and in writing that they were not

seeking *any* documents reflecting Mr. Rayman's thoughts, impressions, or notes. City Defendants repeatedly stated that they only sought documents that they had first sought from plaintiff and/or plaintiff's father, which were not otherwise obtainable. Regardless, Mr. Rayman has not complied with the City Defendants' subpoena in any manner whatsoever.

City Defendants are entitled to all of the materials responsive to the subpoena. The Court should order Mr. Rayman to immediately comply with City Defendants' subpoena and produce all responsive documents in his possession.

**ARGUMENT**

**POINT I**

**THE NEW YORK STATE SHIELD LAW DOES NOT APPLY TO THIS FEDERAL ACTION.**

Mr. Rayman has asserted that the materials sought by City Defendants in Demands 1 through 13 and 22 through 23 are "unpublished editorial and reportorial work-product" that is protected by the "reporter's privilege," as conferred by state and federal Constitutions. (Mettham Decl. Exh. C at 1). These objections to production fail as a matter of law because (1) the documents requested are not "editorial or reportorial work-product;" (2) the New York State Shield Law does not apply to this federal action; and (3) even if the subpoenaed materials are privileged under federal law, they are relevant to the litigation and cannot be obtained from any other source.

The question of whether Mr. Rayman can assert privilege over the subpoenaed materials is governed by federal law. This is a federal question case, and the federal common law governs this dispute. It is well-settled that when litigation is based upon a federal question, e.g., 42 U.S.C. § 1983, privilege claims are governed by federal rather than state law. See e.g., Woodward Governor Co. v. Curtiss-Wright Flight Sys., 164 F.3d 123, 126 (2d Cir. 1999)

("questions about privilege in federal question cases are resolved by the federal common law"); Von Bulow v. Von Bulow, 811 F.2d 136, 141 (2d Cir. 1987) (recognizing that in a federal action, "the federal law of privilege controls the question whether the privileges asserted by [a party] should be recognized"); Ligon v. City of New York, No. 12 Civ. 2274 (SAS), 2012 U.S. Dist. LEXIS 81526, at *4 (S.D.N.Y. June 12, 2012) ("[I]n cases presenting federal questions . . . discoverability, *privileges*, and confidentiality are governed by federal law, not state law.") (citing, *inter alia*, Fed. R. Evid. 501); Torres v. Toback, Bernstein & Reiss LLP, 278 F.R.D. 321, 322 n.1 (E.D.N.Y. 2012) ("[D]efendants mistakenly argue that New York state law concerning privilege applies because state law supplies the rule of decision in this action. As this case arises under a federal statute . . . it is a federal question case, and federal common law of privilege therefore applies.").

Moreover, even when a non-party invokes privilege in connection with ongoing litigation, courts will look to the subject matter jurisdiction of the underlying case to determine which privilege law applies. Compare Gonzales v. NBC, 194 F.3d 29, 31 (2d Cir. 1999) (applying federal common law journalists' privilege where underlying suit arose under 42 U.S.C. § 1983 and the parties agreed that federal law applied) and Persky v. Yeshiva Univ., No. 01 Civ. 5278 (LMM), 2002 U.S. Dist. LEXIS 23740, at *3-*4 (S.D.N.Y. Dec. 9, 2002) (applying federal common law journalist's privilege in a *federal question* suit with pendant state law claims to non-party's refusal to answer deposition questions on the basis of privilege), with In re Fitch, Inc., 330 F.3d 104, 109 (2d Cir. 2003) (applying New York State statutory journalists' privilege in a *diversity* action where parties agreed that New York Law applied) and AP Links, LLC v. Russ, No. 09 Civ. 5437 (TCP) (AKT), 2012 U.S. Dist. LEXIS 105974, at *6 (E.D.N.Y. July 30, 2012) (denying motion to compel non-party compliance with subpoena, recognizing that,

because the "basis for subject matter jurisdiction in this action is *diversity* of parties, the attorney-client privilege is governed by New York State law").

Here, plaintiff's case presents questions arising under federal statutes, and, as such, federal law controls. Therefore, in the context of this motion, Mr. Rayman may not (and should not be allowed to) invoke the New York State Shield Law. At most, he may invoke the *qualified* journalists' privilege under federal common law.

## POINT II

**EVEN IF THE SUBPOENAED MATERIALS ARE PRIVILEGED UNDER FEDERAL LAW, THEY ARE RELEVANT TO THE LITIGATION AND CANNOT BE OBTAINED FROM ANY OTHER SOURCE.**

Even assuming, however, that the federal privilege is applicable, it affords only minimal protection to non-confidential documents held by Mr. Rayman. Defendants have met the low burden required for their production, and the Court should order Mr. Rayman to immediately comply with the subpoena.

The federal qualified journalists' privilege "protects journalists from contempt for refusing to comply with a nonparty subpoena when the subpoena seeks to discover information conveyed to the journalist *in confidence*." In re Fitch, Inc., 330 F.3d 104, 108-109 (2d Cir. 2003) (citing N.Y. CIV. RIGHTS LAW § 79-(h)(b) (emphasis added). "[W]hile nonconfidential press materials are protected by a qualified privilege, the showing needed to overcome the privilege is less demanding than the showing required where confidential materials are sought." Gonzales v. NBC, 194 F.3d 29, 36 (2d Cir. 1999). If the information sought is not confidential, and the journalist is not protecting the identity of sources, the stronger privilege does not apply. United States v. Treacy, 639 F.3d 32, 42 (2d Cir. 2011). So too, "when protection of confidentiality is not at stake the privilege should be more easily overcome." Gonzales, 194 F.3d at 36. In

4

situations where this qualified privilege is applicable, the party seeking production need only show that the materials sought "are of likely relevance to a significant issue in the case, and are not reasonably obtainable from other available sources." Id. at 36. Defendants have met this burden.

This Court recently compelled production of non-confidential interview outtakes over a claim of qualified privilege. In Sokolow v. PLO, plaintiffs sought outtakes of interviews recorded by the British Broadcasting Corporation ("BBC"), in an effort to prove some connection between the Palestine Liberation Organization ("PLO") and terrorist organizations whose activities allegedly caused plaintiffs' injuries. No. 04 Civ. 397 (GBD)(RLE), 2012 U.S. Dist. LEXIS 127040, at *5-*6 (S.D.N.Y. Sept. 6, 2012). This Court noted that the materials were not confidential because BBC is free to disseminate any portions of the interviews. This Court then held that "the standard for relevance to overcome the journalist privilege for non-confidential materials is low," and directed production of the outtakes of the interviews despite the Court's skepticism of a 'smoking gun' presenting itself in the outtakes. Id. at *11.

Here, defendants seek materials that Mr. Rayman received from Adrian Schoolcraft and his father, Larry Schoolcraft, which he has admitted to receiving in the book itself. Confidential sources or confidential materials are not at issue here at all, nor does Mr. Rayman assert that any of the documents were produced confidentially or that some promise of confidentiality was extended to plaintiff or his father. Clearly, the identities of the individuals who provided Mr. Rayman with the documents are all known, and plaintiff has even admitted to giving documents to Mr. Rayman. Moreover, the documents are relevant to this litigation. In short, the documents and recordings that City Defendants seek include recordings and memoranda plaintiff made of defendants and other NYPD officers regarding his claims of

misconduct and retaliation, and numerous other statements by plaintiff and his father describing their claims and their damages, many of which City Defendants are entitled to under Fed. R. Civ. P. 26(b)(3)(C). These records (1) contain admissions by plaintiff about the events that occurred in the incident underlying this litigation; (2) contain statements by plaintiff about his experiences, and relate to how these incidents have impacted and affected plaintiff; and (3) relate to plaintiff's credibility. These items fall squarely within the definition of relevant evidence, and those made by plaintiff are independently admissible at trial as party opponent admissions under FED. R. EVID. 801(d)(2).

Fed. R. Civ. P. 26(b)(1) makes clear that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." "Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery from parties *and non-parties alike*." Crosby v. City of New York, 269 F.R.D. 267, 282 (S.D.N.Y. 2010) (emphasis added) (citing Kingsway Fin. Serv., Inc. v. Price water house-Coopers, LLP, No. 03 Civ. 5560, 2008 U.S. Dist. LEXIS 77018, at *4-*6 (S.D.N.Y. Oct. 2, 2008); Night Hawk Ltd. v. Briarpatch Ltd., LP, No. 03 Civ. 1382, 2003 U.S. Dist. LEXIS 23179, at *8 (S.D.N.Y. Dec. 23, 2003); Salvatore Studios Int'l v. Mako's Inc., No. 01 Civ. 4430, 2001 U.S. Dist. LEXIS 11729, at *1 (S.D.N.Y. Aug. 14, 2001)).

Plaintiff himself has all but conceded that the subpoenaed materials cannot be obtained from any other source than Mr. Rayman and accordingly, defendants have met their burden, and the Court should order Mr. Rayman to produce the requested documents and recordings to defendants immediately.

## POINT III

## THERE IS NO UNDUE HARM OR BURDEN TO MR. RAYMAN TO COLLECT THE SUBPOENAED DOCUMENTS.

Mr. Rayman asserts that the production of the documents in Demands Nos. 1 through 13, 22, and 23 would "unduly hamper Mr. Rayman's ability to function as a reporter" and "would so overburden him that he would be prevented from effectively carrying out his primary function as a news reporter." (Mettham Decl. Exh. C at 2). It is unclear how the production of documents and recordings from Larry Schoolcraft and Adrian Schoolcraft would so overburden Mr. Rayman  that he would no longer be able to carry out his professional responsibilities. In fact, upon information and belief, Mr. Rayman was terminated from the Village Voice in October 2013, and has not been hired as a full time journalist for any other publication since that date. Regardless, City Defendants are willing to furnish the reasonable and ordinary costs associated with the duplication and production of the documents requested, thus eliminating any undue financial harm or burden on Mr. Rayman.

## POINT IV

## MR. RAYMAN'S OBJECTIONS TO DEMANDS NOS. 14-21 ON THE BASIS OF VAGUENESS ARE DISINGENUOUS.

In response to City Defendants' Demands 14 through 21, Mr. Rayman objects on the basis that the requests are overbroad, vague, and lacking in particularity, and also based on "attorney-client or other applicable privileges." (Mettham Decl. Exh. C at 3).

## A.      Mr. Rayman's Objections on the Basis of Vagueness Are Disingenuous

It is disingenuous for Mr. Rayman to assert that requests for "[a]ny written accounts of Larry Schoolcraft regarding his son, Adrian Schoolcraft's confinement in Jamaica Hospital Medical Center on or about October 31, 2009 through November 6, 2009" or "[a]ny

7

tape recordings provided to Graham Rayman from Adrian Schoolcraft or Larry Schoolcraft regarding Adrian Schoolcraft's confinement at Jamaica Hospital Medical Center on or about October 31, 2009 through November 6, 2009" are in any way vague, overbroad, or lacking in particularity. These are clear and unambiguous requests for documents, which City Defendants have a good faith basis to believe are in the possession of Mr. Rayman, and in the absence of any claim of privilege, must be provided to City Defendants in this matter.

In essence, Mr. Rayman has objected on the basis of vagueness to any request made by City Defendants that did not cite to a specific page number from Mr. Rayman's book. City Defendants cannot know, especially when Mr. Rayman has not provided any sort of privilege log, what documents Mr. Rayman has that are relevant to this matter unless Mr. Rayman explicitly referenced the document in his book. Because it is likely that Mr. Rayman relied on more materials than he specifically mentioned in that book, City Defendants have drafted requests that clearly indicate the types of documents they seek, and Mr. Rayman cannot play hide-the-ball by claiming to not know what is requested. Regardless, City Defendants attempted to meet and confer on this matter, and asked that counsel work together to identify how the undersigned could narrow the requests to something that Mr. Rayman felt that he could respond. Mr. Rayman has stated that he could not do so without breaking the privileges asserted. Such a refusal to compromise or clarify what Mr. Rayman claims is vague or ambiguous further demonstrates that these objections are inappropriately asserted.

**B.**   **Mr. Rayman's Objections on the Basis of Privilege Have Not Been Properly Asserted**

Mr. Rayman claims to assert that "the attorney-client or other applicable privilege" applies to Document Requests Nos. 14-21; however he does not indicate what "other applicable privileges" he is attempting to assert over such documents and/or recordings and has

not provided a privilege log for the documents at issue.[1] (Mettham Decl. Exh. C at 3). Because Mr. Rayman has not properly asserted any privilege over these documents, any claim of privilege has been waived and Mr. Rayman must be ordered to produce the requested documents without further delay.

The only privilege mentioned by Mr. Rayman is one of "attorney-client" privilege, and it is unclear whether Mr. Rayman is asserting these privileges on his own account, or on behalf of Messrs. Schoolcraft. To the extent Mr. Rayman is asserting the privilege on behalf of Messrs. Schoolcraft, the production of any attorney-client privileged documents by either of these individuals to Mr. Rayman would negate any privilege. To the extent Mr. Rayman asserts the privilege on his own behalf, it is utterly incomprehensible how a document or tape created by a third-party and given to Mr. Rayman could in any manner be considered privileged communications, particularly since, upon information and belief, Mr. Rayman is not an attorney. Moreover, because City Defendants explicitly informed plaintiff that they did not seek any documents reflecting notes, impressions, or communications *by* Mr. Rayman, any such claim of privilege belonging to Mr. Rayman rings hollow.

### POINT V

### DESCRIPTIONS OF RELEVANCE OF INDIVIDUAL REQUESTS AND THEIR UNAVAILABILITY BY OTHER MEANS.

**A.** **Subpoena Requests Nos. 5, 14, and 16 – Written Statements of Schoolcraft**

During plaintiff's first deposition on October 11, 2012, City Defendants inquired about whether plaintiff had created any written accounts of this incident. (Mettham Decl. Exh. D at 266:25-267:8). Plaintiff denied having done so. (Mettham Decl. Exh. D at ¶ 266:25-267:8)

---

[1] Fed. R. Civ. P. 26(b)(5)(A) clearly states that the party withholding the information must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

Thereafter, City Defendants obtained a copy of Graham Rayman's book entitled *The NYPD Tapes*, which stated that plaintiff provided Mr. Rayman with a "ten-page single-spaced account Schoolcraft himself wrote," in which Schoolcraft discussed a "record of the next six days," referring to Adrian Schoolcraft's confinement to Jamaica Hospital Medical Center on or about October 31, 2009 through November 6, 2009. (Mettham Decl. Exh. E at 141). City Defendants drafted a request to plaintiff on September 17, 2013, requesting that plaintiff produce the document, as it was responsive to a number of City Defendants' Document Requests, including, but not limited to Document Requests Nos. 1-2, 6, 9-10, and 103-115 of City Defendants' First Request for Documents. (Mettham Decl. Exh. F). Plaintiff responded by letter dated October 23, 2013 and stated that "[Adrian Schoolcraft] also has looked for [the ten-page account] in his files and has not been able to locate it." (Mettham Decl. Exh. G). As plaintiff has indicated that he is no longer in possession of that document, this record is not reasonably obtainable from other sources. Moreover, City Defendants believe the document, as a writing by plaintiff contemporaneous with his confinement at Jamaica Hospital, is not only relevant to City Defendants' claims and defenses in this matter, but absolutely necessary.

Because plaintiff's ten-page written account of his time in Jamaica Hospital is a clearly relevant document and is not readily obtainable from other sources, City Defendants respectfully request this Court to order Mr. Rayman to comply with Subpoena Requests No. 5 to Mr. Grayman for a copy of that specific ten-page account and Subpoena Request Nos. 14 and 16 for any other written accounts by Adrian Schoolcraft regarding alleged misconduct by the NYPD and/or his confinement in Jamaica Hospital Medical Center on or about October 31, 2009 through November 6, 2009.

**B.      Subpoena Requests Nos. 1, 2, 3, and 18 - E-Mails to Reporters**

Throughout *The NYPD Tapes*, including but not limited to pages 155 and 169, Mr. Rayman states that plaintiff sent emails to reporters such as Len Levitt and Graham Rayman that "detailed the sequence of the previous two months," (sent in November 2009) and including such statements by plaintiff as "Pay me or fire me… I'm never quitting… Never!'" (Mettham Decl. Exh. E at 155, 169). These emails are also relevant to the claims and defenses of this lawsuit, and responsive to a number of City Defendants' Document Requests, including, but not limited to Document Request No. 12 of City Defendants' First Request for Documents and Document Request No. 7 of City Defendants' Second Request for Documents. In fact, City Defendants moved the Court on March 1, 2013 for all emails sent to and from Adrian Schoolcraft and journalists. (Mettham Decl. Exh. H). At oral argument on April 10, 2013, the Court granted City Defendants request and ordered plaintiff to produce any statements and/or contacts plaintiff has had with the media regarding this matter. When plaintiff failed to comply with the Court's Order, City Defendants moved on May 28, 2013 for an Order to Show Cause why plaintiff had not complied. (Mettham Decl. Exh. I). In response to City Defendants' Motion for an Order to Show Cause, on June 4, 2013, plaintiff represented to the Court that he had "several times reviewed the file and discussed this request with the Plaintiff, and other than the news stories that have already been produced in this case and an audio tape of an interview with NPR, which I understand was previously produced, the Plaintiff does not have any statements about the case that he made to the media." (Mettham Decl. Exh. J).

When plaintiff was later questioned about media communications, plaintiff admitted that he had been in email contact with reporters such as Graham Rayman. However, in response to the City Defendants' demand for emails to reporters, plaintiff indicated that plaintiff "does not have access to his old email communications with the press that he was examined

about at his deposition." (Mettham Decl. Exh. G). It is clear that the only individuals who would have access to those emails are plaintiff, the recipient, and any individuals with whom plaintiff or the recipient shared those emails. From *The NYPD Tapes*, City Defendants are aware of a number of emails sent by plaintiff to members of the media, including Mr. Rayman, which are undoubtedly relevant to the City Defendants claims and defenses in this matter. (Mettham Decl. Exh. E at 155, 169). The standard of documents being "not reasonably obtainable" elsewhere does not require City Defendants to exhaust every non-privileged possibility of discovery before resorting to potentially privileged ones. Regardless, the only other individuals who may have access to these same documents are other journalists, such as Leonard Levitt. As Mr. Levitt would likely claim the same privilege that Mr. Rayman currently claims, City Defendants would be in the same position, though arguing against separate motions to quash. As Graham Rayman appears to be a custodian of the documents, which were plaintiff's burden to produce, City Defendants are entitled to their discovery. Moreover, as this Court previously ordered plaintiff to produce any such documents in his possession, City Defendants are clearly entitled to the records, and plaintiff cannot skirt the discovery process by spoliating evidence and giving his only copies of records to a reporter, knowing full well the challenge in obtaining records from journalists.   The Court should therefore order Mr. Rayman to comply with Subpoena Requests Nos. 1, 2, 3, and 18.

**C.      Subpoena Requests Nos. 4, 7, 11, 12, 20, and 21 – Recordings**

In *The NYPD Tapes*, Mr. Rayman quotes plaintiff as stating that plaintiff made (and was in possession of) "about 1,000 hours […of recordings…] Roll calls, patrol, the locker room, stuff in the station house." (Mettham Decl. Exh. E at 170). City Defendants note that they have not received *anywhere near* 1,000 hours of recordings from plaintiff, and further, City Defendants have not received recordings of plaintiff on patrol or in the station house aside from

12

at a roll call. Any recordings made by plaintiff of his coworkers at the NYPD are clearly relevant to the claims and defenses of this lawsuit, and responsive to a number of City Defendants' Document Requests, including, but not limited to Document Request No. 1-2, and 137 of City Defendants' First Request for Documents and Document Requests Nos. 7 of City Defendants' Second Request for Documents, and City Defendants' letter dated December 19, 2012 following up on requests made during the plaintiff's deposition. On September 17, 2013, after learning of the aforementioned recordings, City Defendants demanded that plaintiff immediately produce any recordings not previously produced by plaintiff in this matter. (Mettham Decl. Exh. F). On October 23, 2013, plaintiff's counsel indicated that he was "not aware of any relevant recordings by the plaintiff that are being withheld." (Mettham Decl. Exh. G).

However, numerous recordings that were mentioned by Mr. Rayman in his novel do not appear in the productions provided by plaintiff to-date. For example, in *The NYPD Tapes*, Mr. Rayman described a February 22, 2010 recording of a meeting between Adrian Schoolcraft, Councilman Peter Vallone, retired Lieutenant Anthony Miranda, and "another retired cop" which was provided by Adrian Schoolcraft to Graham Rayman in which Adrian Schoolcraft states "I'll probably be able to be a big help to Mr. Vallone in my civil suit in acquiring court orders. So perhaps that can be of help." (Mettham Decl. Exh. E at 168-169). No such recording has been received from plaintiff to-date. Another such recording from August 17, 2009 mentioned in *The NYPD Tapes*, describes "a woman [who] walked into the station house to report that her cell phone had been stolen" and her subsequent interactions with D.I. Steven Mauriello made by Adrian Schoolcraft, which was provided by Adrian Schoolcraft to Graham Rayman. (Mettham Decl. Exh. E at 94). A third example is a September 12, 2009 recording of a "downgrading incidents" made by Adrian Schoolcraft, which was provided by Adrian Schoolcraft to Graham

Rayman. (Mettham Decl. Exh. E at 96). Though City Defendants have not heard these recordings, their description by Mr. Rayman makes clear that they would be relevant or likely to lead to the discovery of admissible evidence regarding material facts in dispute in this case.

Because plaintiff claims to not have access to relevant recordings that he previously provided to Mr. Rayman, City Defendants respectfully request that the Court order Mr. Rayman to comply with Subpoena Requests Nos. 4, 7, 11, 12, 20, and 21.

**D.      Subpoena Requests No. 6 – Crime Complaint Reports**

Plaintiff has repeatedly claimed that the NYPD "stolen" crime complaint reports that plaintiff previously provided to QAD from his apartment on October 31, 2009. However, based on Mr. Rayman's book, it appeared that plaintiff had provided such crime complaints to reporters following the October 31, 2009 incident. Therefore, City Defendants are entitled to know what documents plaintiff was still in possession of *after* the October 31, 2009 incident, as possession of those documents would indicate that defendants had not "stolen" them from plaintiff's residence as alleged. To the extent plaintiff provided any such crime complaints to Mr. Rayman, City Defendants request that the Court compel Mr. Rayman to produce them to City Defendants.

**E.      Subpoena Requests Nos. 8 and 10 - Memoranda From Plaintiff**

Plaintiff claims to have written two memoranda regarding NYPD misconduct to former 81st Precinct Commanding Officer Deputy Inspector Robert Brower in 2006 and 2007, and apparently gave copies of those memoranda to Mr. Rayman. (Mettham Decl. Exh. E at 41, 44). City Defendants have undertaken an extensive review of their records and cannot find a record of these memoranda. These memoranda allegedly are allegations that plaintiff made, and to which plaintiff attributes the start of his retaliation by the NYPD. As with the documents above, City Defendants moved the Court to compel plaintiff to produce them and the Court in

turn ordered plaintiff to produce the memoranda in plaintiff's possession by January 22, 2014. (Mettham Decl. Exh. K at 2:9-25).  Plaintiff did not produce any such documents by that date and instead indicated that plaintiff was no longer in possession of them. To the extent plaintiff also no longer has these records, City Defendants request that the Court order Mr. Rayman to comply with Subpoena Request Nos. 8 and 10.

**F.      Subpoena Requests No. 13 - Letter Firing Prior Counsel**

As this Court is well aware, media "leaks" and reports regarding both confidential documents and other sensitive issues have plagued this lawsuit. Following more recent media issues, the Medical Defendants brought an article by Leonard Levitt to this Court's attention, wherein the author indicated that he had been told that plaintiff fired his prior counsel because he wanted "a more media-driven, public airing than is now occurring."  At oral arguments for a separate issue on November 13, 2013, plaintiff made representations to this Court that the Levitt statement was a complete falsehood. However, in *The NYPD Tapes*, Mr. Rayman seems to confirm Mr. Levitt's version of events, and even refers to a letter that Adrian Schoolcraft sent in order to fire prior counsel, which seems to have been later sent by plaintiff to journalists Mr. Levitt and Mr. Rayman. (Mettham Decl. Exh. E at 240).  Though City Defendants acknowledge that this document would have otherwise been a privileged communication, to the extent that this document was provided to Mr. Rayman or Mr. Levitt, any privilege that may have existed has now been waived.

At the conference on January 15, 2014, this Court permitted City Defendants to depose plaintiff to determine whether he provided a copy of this document to any third parties. (Mettham Decl. Exh. K at 3:2-5:10).  On January 30, 2014, City Defendants noticed plaintiff's deposition for February 19, 2014 and also offered plaintiff the ability to avoid the deposition if he agreed to sign an affidavit indicating that he did *not* provide the document to any third parties.

(Mettham Decl. Exh. L).    Plaintiff violated the Court's Order and refused to sit for the deposition and further refused to sign the proposed affidavit, implying that he could not swear or affirm that he had not provided the document to any third parties.  As any privilege that may have existed has been waived with regard to this document if it was provided to Mr. Rayman, City Defendants request that the Court order Mr. Rayman to produce it if it is in his possession.

**G.      Subpoena Requests Nos. 15, 17, and 19 - Documents Received From Larry Schoolcraft**

City Defendants have repeatedly sent document requests and subpoenas to Mr. Larry Schoolcraft, plaintiff's father, as statements made by both Adrian and Larry Schoolcraft indicate that Mr. Larry Schoolcraft has been in possession of documents relevant to this matter and/or documents that are likely to lead to the discovery of admissible evidence. (Mettham Decl. Exh. M).  Larry Schoolcraft was ordered by the Honorable Judge Peebles in the Northern District of New York to appear for a deposition and produce the requested documents on December 11, 2013. (Mettham Decl. Exh. N).  At Mr. Larry Schoolcraft's deposition on that date, he did not bring a single document. (Mettham Decl. Exh. O at 31:19:32:2).  Therefore, City Defendants believe that to the extent that Larry Schoolcraft provided any documents to Graham Rayman, Graham Rayman is the only individual with access to those documents. Subpoena Requests Nos. 15, 17, and 19 are therefore reasonable.

**H.      Subpoena Requests Nos. 22 and 23 - Agreements and/or Contracts**

In Subpoena Requests Nos. 22 and 23, City Defendants requested any agreements, contracts, and/or proof of payment regarding payment of Adrian Schoolcraft or Larry Schoolcraft by Graham Rayman, the Village Voice, and/or Palgrave MacMillan. Whether plaintiff made any money out of his story regarding NYPD misconduct bares directly on plaintiff's bias and motivations in bringing this lawsuit. City Defendants are aware that Mr.

16

Rayman engaged in negotiations with at least Larry Schoolcraft on material to include in Mr. Rayman's *The NYPD Tapes* book. (Mettham Decl. Exh. O at 76:5-10). City Defendants should therefore be permitted to probe this matter by requesting any agreements between the Schoolcrafts and Mr. Rayman.

**I.      Subpoena Requests Nos. 14-21 - Remaining Documents**

As outlined above, Mr. Rayman's novel includes numerous references to documents that are responsive to City Defendants's discovery demands, which plaintiff failed to provide, and claimed that he no longer has access to. City Defendants only became aware of the majority of the aforementioned documents after Mr. Rayman published descriptions of the documents in his book. It is reasonable to assume that plaintiff and/or his father, Larry Schoolcraft, provided additional documents to Mr. Rayman, which plaintiff and his father, Larry Schoolcraft, have not produced to City Defendants, and which Mr. Rayman did not explicitly mention in his novel. Therefore, City Defendants believe that Subpoena Requests Nos. 14-21 are reasonable requests for any documents provided by Adrian and Larry Schoolcraft to Graham Rayman, of which City Defendants are presently unaware. These requests do not request any personal notes or impressions or materials provided by a confidential or anonymous source.

17

**POINT VI**

**PLAINTIFF HAS WAIVED ANY CLAIMS OF PRIVILEGE BY FAILING TO COMPLY WITH FED. R. CIV. P. 26(B)(5) AND LOCAL CIVIL RULE 26.2(C).**

As reference *supra*, Mr. Rayman has failed to provide any sort of privilege log to City Defendants, and has therefore waived the right to assert any such privileges. Under Fed. R. Civ. P. 26(b)(5)(ii), "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged … the party must … describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Failure to provide such a privilege log within a reasonable amount of time acts as a waiver of the applicable privilege. Local Civil Rule 26.2 incorporates similar language, requiring a party who objects to a production on the basis of privilege to provide to opposing counsel a list documenting "(i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other." "Failure to timely provide the privilege log or objection constitutes a waiver of any of the asserted privileges." Lugosch v. Congel, 2006 U.S. Dist. LEXIS 53116, 63-64 (N.D.N.Y Mar. 7, 2006) (citing Gould Inc. v. Mitsui Mining & Smelting Co., Ltd., 825 F.2d 676, 680 (2d Cir. 1987)); see also, FG Hemisphere Assocs., L.L.C. v. Republique du Congo, No. 01 Civ. 8700 (SAS) (HBP), 2005 U.S. Dist. LEXIS 3523 (S.D.N.Y. Mar. 7, 2005). Because Mr. Rayman has failed to provide a privilege log for any of the requested documents, he has waived any privileges that may have applied, and the Court should order him to produce those documents to City Defendants.

## CONCLUSION

The subpoenaed materials are relevant; they are not obtainable elsewhere; they do not seek confidential information; and they are not privileged. Even if the Court were to find that the materials at issue are subject to the application of the federal common law qualified journalists' privilege, City Defendants have overcome the showing necessary to pierce the privilege. Plaintiff should not be permitted to avoid his discovery obligations by giving his only copies of documents to a journalist and then attempting to hide beneath the journalist's claimed privilege.

Defendants therefore request that the Court order Mr. Rayman to immediately comply with City Defendants' subpoena, and any further relief that the Court deems just and proper.

Dated:      New York, New York
            March 5, 2014

Respectfully submitted,
ZACHARY W. CARTER
Corporation Counsel of the
   City of New York
*Attorney for City Defendants*
100 Church Street, Room 3-200


New York, New York 10007
(212) 356-2372

By:      _Suzanna Publicker Mettham_
         Suzanna Publicker Mettham
         Assistant Corporation Counsel

TO:      David S. Korzenik (BY HAND DELIVERY)
         Miller Korzenik Sommers LLP
         *Attorney for Graham Rayman*
         488 Madison Avenue
         New York, NY 10022

19

Nathaniel Smith (By ECF)
*Attorney for Plaintiff*
111 Broadway, Suite 1305
New York, New York 10006

Gregory John Radomisli (By ECF)
MARTIN CLEARWATER & BELL LLP
*Attorneys for Jamaica Hospital Medical Center*
220 East 42nd Street 13th Floor
New York, NY 10017

Brian Lee  (By ECF)
IVONE, DEVINE & JENSEN, LLP
*Attorneys for Dr. Isak Isakov*
2001 Marcus Avenue, Suite N100
Lake Success, New York 11042

Bruce M. Brady  (By ECF)
CALLAN, KOSTER, BRADY & BRENNAN, LLP
*Attorneys for Lillian Aldana-Bernier*
1 Whitehall Street
New York, New York 10004

Walter A. Kretz , Jr.  (By ECF)
SCOPPETTA SEIFF KRETZ & ABERCROMBIE
*Attorney for Defendant Mauriello*
444 Madison Avenue, 30th Floor
New York, NY 10022