# EXHIBIT A

AO 88 (11/91) Subpoena in a Civil Case

# United States District Court

| SOUTHERN | DISTRICT OF | NEW YORK |
|---|---|---|

| | |
|---|---|
| **Adrian Schoolcraft** | **SUBPOENA IN A CIVIL CASE** |
| V. | CASE NUMBER: 10 CV 6005 (RWS) |
| **The City of New York, et al.** | |

TO:  Graham Rayman
16 MORNINGSIDE AVE APT 1S
NEW YORK, NY 10026-2355

[ ] YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |

[ ] YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

[X] **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below:

**(1) See Exhibit "A" attached hereto for a list of items and information to be produced.**

| PLACE | DATE AND TIME |
|---|---|
| Suzanna Publicker Mettham, Assistant Corporation Counsel<br>New York City Law Department<br>100 Church Street, 4th Floor<br>New York, New York 10007 | **December 20, 2013** |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors or managing agents or other persons who consent to testify on its behalf, and may set forth for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>*S. Mettham*<br>Assistant Corporation Counsel<br>Attorney for Defendant City of New York | DATE<br><br><br><br>December 3, 2013 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Suzanna Publicker Mettham, Assistant Corporation Counsel
New York City Law Department, 100 Church Street
New York, New York 10007  (212) 788-1103

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

AO 88 (11/91) Subpoena in a Civil Case

| PROOF OF SERVICE | | |
|---|---|---|
| SERVED | DATE | PLACE |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

**DECLARATION OF SERVER**

I declare under penalty of perjury under the laws of the United States of America that the forgoing information contained in the Proof of Service is true and correct.

Executed on _____
              DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

**Rule 45, Federal Rules of Civil Procedure, Parts C & D:**

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

i. requires disclosure of privileged or other protected matter and no exception or waiver applies, or
ii. subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

### EXHIBIT "A" TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

1. A copy of the November 13, 2009 email from Adrian Schoolcraft and/or Larry Schoolcraft to Leonard Levitt "detail[ing] the sequence of the previous two months" mentioned on page 154-155 of *The NYPD Tapes*.

2. A copy of the March 2010 email from Adrian Schoolcraft and/or Larry Schoolcraft to Graham Rayman which was "a cryptic email [...] containing an excerpt from a tape of Sergeant Huffman telling officers not to take robbery complaints in the field but to refer them to the detective squad" mentioned on page 169 of *The NYPD Tapes*.

3. A copy of the March 2010 email from Adrian Schoolcraft and/or Larry Schoolcraft to Graham Rayman in which Adrian Schoolcraft stated "Nothing has changed regarding my status. On suspension, and they won't even give me a department trial... Pay me or fire me... I'm never quitting... Never!" mentioned on page 169 of *The NYPD Tapes*.

4. A copy of the single CD provided by Adrian Schoolcraft to Graham Rayman containing recordings made by Adrian Schoolcraft mentioned on page 170 of *The NYPD Tapes*.

5. A copy of the "ten-page single-spaced account Schoolcraft himself wrote," which was provided by Adrian Schoolcraft to Graham Rayman in which Adrian Schoolcraft discussed a "record of the next six days," referring to Adrian Schoolcraft's confinement to Jamaica Hospital Medical Center on or about October 31, 2009 through November 6, 2009 mentioned on page 141 of *The NYPD Tapes*.

6. A copy of the "same questionable crime reports he gave QAD in October," which was provided by Adrian Schoolcraft to Rocco Parascandola mentioned on page 165 of *The NYPD Tapes*.

7. A copy of the February 22, 2010 recording of a meeting between Adrian Schoolcraft, Councilman Peter Vallone, retired Lieutenant Anthony Miranda, and "another retired cop" which was provided by Adrian Schoolcraft to Graham Rayman in which Adrian Schoolcraft states "I'll probably be able to be a big help to Mr. Vallone in my civil suit in acquiring court orders. So perhaps that can be of help" mentioned on pages 168-169 of *The NYPD Tapes*.

8. A copy of the April 2006 memorandum written by Adrian Schoolcraft to Deputy Inspector Robert Brower "to notify [D.I. Brower] of a serious problem within the precinct, that I feel has now become a chronic safety issue. The problem [Adrian Schoolcraft is] reporting is forced overtime" mentioned on page 41 of *The NYPD Tapes*.

9. A copy of the summer 2009 letter from David Morris to Adrian Schoolcraft indicating that "the PBA's general counsel's office does not represent police officers in disciplinary matters" mentioned on pages 93 of *The NYPD Tapes*.

10. A copy of the memorandum written by Adrian Schoolcraft on or after June 2007 to Deputy Inspector Robert Brower in which Adrian Schoolcraft alleged that Lieutenant Jones "threatened to punish the whole shift of officers for what Schoolcraft did" mentioned on pages 44 of *The NYPD Tapes*.

11. A copy of the August 17, 2009 recording of a "a woman [who] walked into the station house to report that her cell phone had been stolen" and subsequent interactions with D.I. Steven

Mauriello made by Adrian Schoolcraft, which was provided by Adrian Schoolcraft to Graham Rayman mentioned on page 94 of *The NYPD Tapes*.

12. A copy of the September 12, 2009 recording of a "downgrading incidents" made by Adrian Schoolcraft, which was provided by Adrian Schoolcraft to Graham Rayman mentioned on page 96 of *The NYPD Tapes*.

13. A copy of the November 7, 2012 "letter firing Norinsberg, Fitch, and Cohen from the case," which was provided by Adrian Schoolcraft to Graham Rayman mentioned on page 240 of *The NYPD Tapes*.

14. Any written accounts of Adrian Schoolcraft regarding alleged misconduct by any current or former members of the NYPD not otherwise listed above.

15. Any written accounts of Larry Schoolcraft regarding alleged misconduct by any current or former members of the NYPD not otherwise listed above.

16. Any written accounts of Adrian Schoolcraft regarding his confinement in Jamaica Hospital Medical Center on or about October 31, 2009 through November 6, 2009 not otherwise mentioned above.

17. Any written accounts of Larry Schoolcraft regarding his son, Adrian Schoolcraft's confinement in Jamaica Hospital Medical Center on or about October 31, 2009 through November 6, 2009 not otherwise mentioned above.

18. Any documents, emails, text messages, and/or recordings provided by Adrian Schoolcraft to Graham Rayman regarding Adrian Schoolcraft's allegations of misconduct by any current or former members of the NYPD not otherwise listed above.

19. Any documents, emails, text messages, and/or recordings provided by Larry Schoolcraft to Graham Rayman regarding Adrian Schoolcraft's allegations of misconduct by any current or former members of the NYPD not otherwise listed above.

20. Any tape recordings provided to Graham Rayman from Adrian Schoolcraft or Larry Schoolcraft regarding alleged misconduct by any current of former members of the NYPD not otherwise listed above.

21. Any tape recordings provided to Graham Rayman from Adrian Schoolcraft or Larry Schoolcraft regarding Adrian Schoolcraft's confinement at Jamaica Hospital Medical Center on or about October 31, 2009 through November 6, 2009.

22. Any agreements, contracts, and/or proof of payment regarding payment of Adrian Schoolcraft by Graham Rayman, the Village Voice, and/or Palgrave MacMillan.

23. Any agreements, contracts, and/or proof of payment of Larry Schoolcraft by Graham Rayman, the Village Voice, and/or Palgrave MacMillan.

## DEFINITIONS

1. The term "communication" is defined as the transmittal of information, whether written or oral, in the form of facts, ideas, inquiries or otherwise.

2. The term "document" includes all written, typed printed, recorded or graphic statements, communications or other matters, however produced or reproduced, including, but not limited to, all letters, notes, memoranda, e-mails, faxes, telegrams, telexes, cables, telephone records, records, bills, invoices, ledgers, journals, bulletins, directives, instructions, reports, memoranda of conversations, diaries, affidavits, briefs, pleadings, decrees, transcriptions, recordings, computer records, photographs, diagrams, charts, drawings, graphs and other writings, including all originals, copies, drafts and non-identical copies in the possession, custody or control of Mr. Rayman or his representatives.

3. When asked to "identify" a document, Mr. Rayman's response should (a) describe the type of document (e.g., letter, memo, etc.), (b) identify the author, (c) specify the date written or originated, (d) identify each person to whom the original or a copy was addressed and/or delivered, and (e) identify each and every person who has ever had possession of the document.

4. A document is within the "possession, custody or control" of Mr. Rayman or his representatives, if Mr. Rayman or his representative has the right to secure the document or a copy thereof from another person or entity having actual physical possession thereof.

5. The term "person" is defined as any natural person or any business, corporation, firm, partnership, proprietorship, joint venture, board, authority, commission, legal or government entity or other association.

6. The term "concerning" is defined as relating to, referring to, pertaining to, alluding to, describing, detailing, embodying, evidenced, reflecting, comprising or constituting, whether directly or indirectly, the subject matter identified in a specific interrogatory or document request.

7. The terms "all" and "each" should be construed as all and each.

8. The terms "and" and "or" should be construed either disjunctively or consecutively, as necessary to bring within the scope of each discovery request all responses or document might otherwise be construed to be construed to be outside of its scope.

9. The use of the singular form of a word should be construed to include the plural form and vice versa.

10. The use of the masculine form of a word should be construed to include the feminine and neuter forms and vice versa.

11. The use of the past tense form of a word should be construed to include the present tense form and vice versa.