DAVID S. KORZENIK
Miller Korzenik Sommers LLP
488 Madison Avenue, Suite 1120
New York, NY 10022
Phone:  (212) 752-9200
*Attorneys for Graham Rayman*


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

ADRIAN SCHOOLCRAFT,

                          *Plaintiff*,                              Civil Action No. 10-cv-6005 (RWS)

              -v-

CITY OF NEW YORK, et. al.,


                          *Defendants*

--------------------------------------------------------X



**OPPOSITION TO MOTION TO COMPEL DOCUMENTS
AND CROSS-MOTION TO QUASH SUBPOENA**

## **TABLE OF CONTENTS**

Table of Authorities ............................................................................................................ ii

Preliminary Statement ........................................................................................................ 1

Argument ........................................................................................................................... 2

    I.    The Subpoena Seeks Protected Privileged Documents and Should Be Quashed ............ 2

    II.    The City's Requests Fail to Overcome the Journalist's Privilege ................................... 6

    III.    Graham Rayman has Not Waived Any Privilege ........................................................... 11

Conclusion .......................................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**<u>Statutes</u>**

N.Y. Civ. Rights Law § 79-h ............................................................................................... 2

**<u>Cases</u>**

*Gonzales v. Nat'l Broad. Co., Inc.,* 194 F.3d 29 (2d Cir. 1999) .................................... 3, 4, 7

*Sikelianos v. City of New York*, 05 CIV. 7673, 2008 WL 2465120 (S.D.N.Y. 2008) ................. 5, 10

*von Bulow by Auersperg v. von Bulow*, 811 F.2d 136 (2d Cir. 1987) ................................. 2

**<u>Federal Rules</u>**

Fed. R. Civ. P. 26 .......................................................................................................... 5, 8, 11, 12

Fed. R. Civ. P. 45 .......................................................................................................... 2, 5, 11

## PRELIMINARY STATEMENT

After more than three and a half years of litigation, the Defendant City of New York has issued a subpoena to Graham Rayman, a journalist who is a stranger to this action, demanding production of wide-ranging documents. Although such an action places on the City, at a minimum, a burden to overcome the federal journalist's privilege, the City's requests and its Motion to Compel show that it believes it has essentially no burden and that it can simply ride airily over the press to supplement its perceived discovery deficiencies.

The City's approach highlights its lack of understanding or respect for the vital press functions the privilege aims to protect.  The City seeks material that is available from other sources, it fails to identify the relevance of its requests to any particular claims or defenses, and it wraps up its subpoena with a series of broad demands to sift through Mr. Rayman's files for material it might find useful.

Although the City claims, with no knowledge or support, that Mr. Rayman's sources of material for his book extend no further than Adrian and Larry Schoolcraft, that is simply untrue. (Rayman Decl. at 2 and 9.) Mr. Rayman is an experienced and respected reporter whose work on this story alone shed light on and led to significant public debate over an issue of unquestionable public importance: the functioning of the New York City Police Department. He was able to write this story in part because his reputation as a journalist allowed him to develop trust with multiple sources who provided him with information and supporting material. Those crucial relationships with sources are central to the vital press functions the journalist's privilege protects. Compelled disclosure of material acquired in his reporting process would certainly disrupt Mr. Rayman's future ability to develop similar sources. This is true whether the sources are confidential or not, as news sources expect journalists to provide independent accounts of

events rather than to function as investigative arms for private litigants or the government. When journalists are compelled to become witnesses in the stories they cover, their independent role and status are diminished.

The City's subpoena seeks burdensome and privileged information, and it has failed to make any showing that it has met its burden to compel disclosure of this information. Even had it made some showing of particularized need, it has not demonstrated that its need outweighs the public interest in an independent and free press. Accordingly, the City's Motion to Compel should be denied and Mr. Rayman's Cross-Motion to Quash should be granted.

## **ARGUMENT**

### I.      **The Subpoena Seeks Protected Privileged Documents and Should Be Quashed**

The subpoena calls for the production of documents that are protected from disclosure by the journalist's privilege, and it should be quashed. As provided in the Federal Rules, "on timely motion, the court for the district where compliance is required must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

Protections for journalists come from the New York Shield Law, N.Y. Civ. Rights Law § 79-h, the New York Constitution, the First Amendment and federal law. In a case that involves both federal and state claims, the Second Circuit has applied the federal privilege, while recognizing that the applicable state law should also be considered. *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987)("In examining the boundaries of the journalist's privilege, we may consider also the applicable state law, in this case New York's so-called 'Shield Law,' N.Y.Civ.Rights Law § 79–h et seq. (McKinney Supp.1986). Although we are not bound to

2

follow New York law, neither should we ignore New York's policy of giving protection to professional journalists.") Therefore, even if the City can establish that the documents it seeks are relevant to both federal and state claims – which its broad assertions of relevance have not done – the New York Shield Law is still applicable, along with the federal privilege, as guidance in this matter. Under either privilege, the documents should be protected from compelled disclosure.

Although the federal privilege against compelled disclosure of material is a qualified one, it comes with a significant burden that is grounded in the importance of protecting a free press and preventing reporters from being dragged into litigation:

> If the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through press files in search of information supporting their claims. The resulting wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties- particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of the likelihood that they would be sucked into litigation. Incentives would also arise for press entities to clean out files containing potentially valuable information lest they incur substantial costs in the event of future subpoenas. And permitting litigants unrestricted, court- enforced access to journalistic resources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties.

*Gonzales v. Nat'l Broad. Co., Inc.,* 194 F.3d 29, 35 (2d Cir. 1999).  The broad concerns underlying the privilege include protecting the "pivotal function of reporters to collect information for public dissemination and the paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters." *Id.* (internal citations and quotations omitted). These concerns "are relevant regardless whether the information sought from the press is confidential." *Id.*

These crucial concerns underlying the privilege appear to have completely escaped the City, which uses its Motion to belittle Mr. Rayman's assertion that responding to the subpoena would be a burden on his ability to function as an independent journalist. "It is unclear," the City states, how such a burden could exist, given that "Mr. Rayman was terminated from the Village Voice in October 2013, and has not been hired as a full time journalist for any other publication since that date." Motion at 7. This is insulting and inappropriate, but, most important, it demonstrates a short-sighted and self-interested view and a profound lack of understanding of or respect for the public's interest in a free press. Despite the City's unfounded attack, Mr. Rayman is still a working journalist, and compliance with a subpoena like the City's would seriously inhibit his ability to maintain an independent editorial role. If reporters are drawn into private disputes as a result of their coverage of a topic, whether that coverage is favorable or unfavorable, their impartiality among sources would be compromised. This would limit their ability to report on important stories, as sources and readers expect journalists to maintain independence. Further, if reporters are required to provide documents and evidence in any civil matter that touches on a subject they have covered, they soon will be spending their time as professional courtroom witnesses, rather than as professional journalists.

The burden of overcoming the journalist's privilege rests squarely on the party seeking disclosure. *Id.* at 36. Disclosure of non-confidential material should not be compelled unless the party seeking it establishes that the information is 1) "of likely relevance to a significant issue in the case" and 2) "not reasonably obtainable from other available sources." *Id.*

As demonstrated in more detail below, the City has failed to meet this burden. The City's brief, in fact, fails to comprehend the privilege or acknowledge that it has any burden to meet. Rather than explaining how a document sought is relevant to any particular significant issue, the

4

City relies on repeated blanket assertions that documents are "clearly relevant" or simply "relevant" to the case over all, or that they are "likely to lead to the discovery of admissible evidence" or "responsive to City Defendants' discovery demands." Those bald assertions fall short of meeting the burden necessary to overcome the journalist's privilege: that the information is of *likely relevance* to a *significant issue* in the case.  In addition to the journalist's privilege, as a non-party to the lawsuit, Mr. Rayman is entitled to greater protection from discovery, as provided in Rule 45, yet the City's broad assertions of entitlement to information do not even meet the standard under Rule 26(b)(1), which requires not that the information sought be generally relevant to the subject matter, but that it be relevant to a claim or defense. The City's subpoena also includes broad requests (Nos. 14-21) that do not specify any document but rather demand that Mr. Rayman open his files to the City and produce material "not otherwise listed above." Given that the City is seeking such a swath of documents that it can only imagine the contents or even existence of, it cannot meet its burden of establishing that these requests are relevant to a significant issue in the case. Hunches and speculation are not grounds for compelling disclosure of a reporter's documents.

Even under the less demanding federal privilege, a party seeking to overcome an assertion of the journalist's privilege must show "a particularized need" for the material in the reporter's possession. *Sikelianos v. City of New York*, 05 CIV. 7673 RJS/JCF, 2008 WL 2465120 at *1 (S.D.N.Y. June 18, 2008). Further, "a litigant seeking nonconfidential materials will not be granted unfettered access to 'sift through [journalists] files in search of information supporting [his] claims,' because such access would undermine the public's perception of the press as an independent institution and foster the view that it is 'an investigative arm of the judicial system,

the government, or private parties.'" *Id.* (Internal citations omitted; alterations in original.) It is just this sort of unfettered access that the City seeks, and its demands should be denied.

## II.     The City's Requests Fail to Overcome the Journalist's Privilege

Each of the City's specific requests fails to meet its burden even under the federal privilege, and its effort to compel disclosure of these materials should be denied. (The subpoena is attached as Exhibit A to the City's Mettham Declaration.)

### 1.  *A copy of the November 13, 2009, email from Larry Schoolcraft to Leonard Levitt.*

This request on its face demonstrates the City's failure to make even the slightest showing of an effort to obtain materials through alternate means. Mr. Rayman is neither the sender nor the recipient of this email, and those individuals would be more logical sources for its production. Further, Mr. Levitt has posted the contents of this email on his web site (http://nypdconfidential.com/columns/2011/110131.html), where it is publicly available. Yet the City has subpoenaed Mr. Rayman, as this document is allegedly not available elsewhere.

While arguing on the one hand that Mr. Rayman has no legitimate privilege to assert, the City then contends that it need not seek this document from the actual recipient of the email because Mr. Levitt would likely claim the same privilege. Motion at 12. Prognostication about another source's actions falls far short of a showing that the documents are not reasonably attainable elsewhere.

Nor has the City made an effort to identify what likely relevance this email has to any significant issue in this case. Rather, it has offered only the blanket assertion that "a number of emails sent by plaintiff to members of the media … are undoubtedly relevant to the City Defendants claims and defenses in this matter." Motion at 12.  The City's entire argument on this point is based on its belief that "City Defendants are entitled to their discovery" from the

6

plaintiff. *Id.* The City's discovery disputes with the plaintiff, however, are not a substitute for meeting its burden under *Gonzales.*

The City also relies on the completely unsupported accusation that Mr. Rayman "appears to be a custodian" of the plaintiff's documents. *Id.* Mr. Rayman's relationship with the plaintiff is that of a reporter with a source. Any material he might have gathered in the course of his reporting is his own work product; he is not a custodian of any source's documents. The City complains of the plaintiff's failure to produce documents and accuses the plaintiff of "spoliating evidence." *Id.* As part of this accusation, the City appears to be trying to conflate Mr. Rayman's role with that of the plaintiff, suggesting that Mr. Rayman must now assume the plaintiff's discovery burden. This is unsupported in the law and is a further example of the City's refusal to acknowledge the basis of the journalist's privilege. For Mr. Rayman to effectively do his job as a journalist, he can be neither a witness for or against any source. The City's effort to compel him to do so should fail.

### 2. and 3. *Copies of two March 2010 emails from Adrian or Larry Schoolcraft.*

The City's Motion to Compel combines its argument for disclosure of these documents with that of Request No. 1, and that argument should fail for the reasons stated above.

### 4. *Copy of the CD containing recordings Adrian Schoolcraft made.*

Here, the City has not only failed to meet its burden of demonstrating that the information sought is otherwise unavailable, it has also admitted that it already has the information. Yet it persists in burdening a third-party journalist with redundant discovery demands. The City quotes from Mr. Rayman's book the assertion by Mr. Schoolcraft that he had made 1,000 hours of recordings. Motion at 12. It then states that it has received roll call recordings from the plaintiff. Nowhere in Mr. Rayman's book does he state that Mr. Schoolcraft provided him with those

7

1,000 hours of recordings. In fact, the passage on which the City relies (in its Exhibit E to the

Mettham Decl., at 170) clearly states that Mr. Rayman asked for and received a CD of roll call

recordings, the very recordings the City states it has already received. Further, on information

and belief, these recordings were a part of the stop-and-frisk litigation against the City, and some

of them were played in court in that case. The City should therefore already have access to these

recordings through alternate channels. Even if the City were now to claim that it needs Mr.

Rayman's recordings to determine if it has *all* of the recordings, it has not demonstrated how this

request is likely relevant to any significant issue in the case, or how it would not be

"unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i).

**5.  *Adrian Schoolcraft's account of his time at Jamaica Hospital Medical Center.***

The City broadly asserts its justification for this document, emphatically claiming that it

is "absolutely necessary," yet fails to state why that would be, given the multiple sources for

information about Mr. Schoolcraft's confinement. The most obvious source is Mr. Schoolcraft

himself. Regardless of whether the plaintiff retains this particular document, his deposition

testimony about his confinement is available to the City, as is the testimony of roughly a dozen

police officers, including supervisors; the nursing staff in the emergency room; and the

psychiatric staff at the hospital. Where multiple sources of information about an incident are

available, a litigant fails to overcome the privilege because it has not obtained *every* piece of

information. Even where no privilege applies, a person is under no obligation to produce

evidence that is "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i).

**6.  *Crime reports provided to Rocco Parascandola.***

This request, like Request No. 1, shows on its face that the City has not met the burden

required to overcome the privilege, and Mr. Rayman reasserts the arguments raised against that

8

earlier request. The City seeks documents provided to Rocco Parascandola, yet has subpoenaed

Graham Rayman. At a minimum, the City should be required to exhaust efforts to obtain the

documents through the most logical means before issuing a subpoena to a third party.

**7, 11 and 12.** *February 22, 2010 recording of meeting; August 17, 2009 recording of woman reporting a stolen cell phone; September 12, 2009 recording of "downgrading incidents."*

Again, the City has failed to make any showing of overcoming the journalist's privilege.

Rather than indicate any possible relevance to a significant claim in the case, the City merely

makes a broad assertion that these recordings have some general relevance. But the bulk of its

argument appears to be based on an effort to prove that Mr. Schoolcraft has not produced to the

City every recording he made. Whether that is true or not, a party's discovery failures are not a

basis for compelling disclosure from a non-party journalist. Mr. Rayman is not an agent of Mr.

Schoolcraft and is not responsible for fulfilling the plaintiff's discovery demands. As the City

has failed to demonstrate any particular need for these recordings or any way in which they are

relevant to a significant claim or defense in this case, this request should be denied.

**8.   and 10.** *Memos to Deputy Inspector Brower in April 2006 and June 2007.*

Mr. Rayman is neither the author nor the recipient of these memos, and both the author

and the recipient are available to the City. If the plaintiff no longer has the actual memo, he

certainly retains the ability to restate the allegations these memos reportedly contained. The City

has failed to make even the slightest showing as to why these particular documents are relevant

to a significant claim in the case, or why either the documents themselves or the information

contained in them are not available from another source. These requests, as so many of the City's

others, seem motivated by irritation that the plaintiff has not produced these documents rather

than by any actual need for them. Accordingly, the requests should be denied.

9

**9.** *Summer 2009 letter from David Morris*.

The City's motion provides absolutely no reason this document might be relevant to a significant issue in this case. In fact, it is difficult to imagine one. The request states that the letter advises Mr. Schoolcraft that "the PBA's general counsel's office does not represent police officers in disciplinary matters." That position is neither in dispute nor relevant to any significant issue in this case. If it were, however, the letter or the information contained in it is available from the plaintiff or Mr. Morris or other sources other than Mr. Rayman.

**13.** *November 7, 2012 letter firing attorneys.*

This is yet another request in which the City seeks communication between the plaintiff and someone other than Mr. Rayman, and Mr. Rayman reasserts the arguments raised against those previous requests. Mr. Rayman is neither the logical nor the appropriate source for this kind of information. If the letter is not available from another source, its contents surely are.

**14. – 21.** *Anything not otherwise listed above*.

These requests are evidence of the City's blatant disregard of both the journalist's privilege and its burden to overcome the privilege. For each of the requests, the City has no idea whether any such documents exist or what they might contain. No specific document is identified. No particular need is given. Speculation and wishful thinking do not overcome the journalist's privilege. These sorts of demands are exactly what the courts warn of when they state that litigants "will not be granted unfettered access to 'sift through [journalists] files in search of information supporting [his] claims,' because such access would undermine the public's perception of the press as an independent institution and foster the view that it is 'an investigative arm of the judicial system, the government, or private parties.'" *Sikelianos*, 05 CIV.

10

7673, 2008 WL 2465120 at *1 (internal citation omitted; alterations in original). The requests

fall far short of meeting the City's burden, and they should be denied.

**22. and 23.** *Agreements, contracts or proof of payment to Adrian or Larry Schoolcraft.*

Agreements between sources and reporters are customary, to define the boundaries of

cooperation and participation, to set limits on the use of information and to and create bonds of

confidentiality, among many other things. These agreements are at the heart of the reporter-

source relationship and should therefore be protected from compelled disclosure as part of the

journalist's privilege. The City's sole justification for disclosure of any agreement with Mr.

Rayman is to determine "whether plaintiff made any money out of his story regarding NYPD

misconduct." Motion at 16. Mr. Rayman did not pay Adrian or Larry Schoolcraft, nor is he

aware of any such payment ever being made by Village Voice or Palgrave Macmillan. (Rayman

Decl. at 10.) These requests should be denied on that ground alone. But in any event, it is

completely unnecessary to subpoena Mr. Rayman for this information, as the contents of any

agreement with the plaintiff would be readily available through deposition testimony or other

means directly from the plaintiff. These requests should be denied.

**III.     Graham Rayman Has Not Waived Any Privilege**

The City contends that Mr. Rayman has waived any privilege he might have had because

he has not provided a privilege log.  This requirement should not apply to Mr. Rayman because

he is not a party, and parties are the subject of Fed. R. Civ. P. 26. In addition, such a log was not

necessary because the City has always been fully aware of the basis of Mr. Rayman's objections

and should be mindful of the requirement of Fed. R. Civ. P. 45 to avoid placing undue burdens

on a non-party. Even if the requirement did apply, the very act of producing such a log would

destroy the privilege by revealing contents and sources of material gathered in the course of

11

reporting. Where providing information that itself is protected or privileged would be necessary, Fed. R. Civ. P. 26(b)(5)(ii) by its own terms excuses the production of a privilege log.

In all events, the City has in no way been prejudiced by the lack of a privilege log. In the instances in which the City has identified specific documents, a log would be no more than a redundancy, and in all cases, the City has been aware of Mr. Rayman's asserted grounds for the privilege – through discussions with Mr. Rayman's counsel, through timely objections and now in this opposition. Under such circumstances, waiver would be an unjust result.

## CONCLUSION

For the foregoing reasons, the Motion to Compel should be denied and the Cross-Motion to Quash should be granted, in their entirety.

Dated: New York, New York
        March 28, 2014

MILLER KORZENIK SOMMERS LLP

By_____
        David S. Korzenik
        488 Madison Avenue, Ste. 1120
        New York, N.Y. 10022
        (212) 752-9200
        *Attorneys for Graham Rayman*

TO:     Zachary W. Carter (By ECF)
        Corporation Counsel of the City of New York
        Suzanna Publicker Mettham (By ECF and email)
        Attorneys for City Defendants
        100 Church Street, Room 3-200
        New York, New York 10007
        (212) 356-2372

Nathaniel Smith (By ECF)
Attorney for Plaintiff
111 Broadway, Suite 1305
New York, New York 10006

Gregory John Radomisli (By ECF)
MARTIN CLEARWATER & BELL LLP
Attorneys for Jamaica Hospital Medical Center
220 East 42nd Street 13th Floor
New York, NY 10017

Brian Lee (By ECF)
IVONE, DEVINE & JENSEN, LLP
Attorneys for Dr. Isak Isakov
2001 Marcus Avenue, Suite N100
Lake Success, New York 11042

Bruce M. Brady (By ECF)
CALLAN, KOSTER, BRADY & BRENNAN, LLP
Attorneys for Lillian Aldana-Bernier
1 Whitehall Street
New York, New York 10004

Walter A. Kretz , Jr. (By ECF)
SCOPPETTA SEIFF KRETZ & ABERCROMBIE
Attorney for Defendant Mauriello
444 Madison Avenue, 30th Floor
New York, NY 10022