Index No.  10 Civ. 6005 (RWS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADRIAN SCHOOLCRAFT,

                                       Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

                                       Defendants

**REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL DOCUMENTS FROM GRAHAM RAYMAN AND OPPOSITION TO CROSS-MOTION TO QUASH SUBPOENA**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for City Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Suzanna Publicker Mettham*
*Tel:  (212) 356-2372*
*Matter No. 2010-033074*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT

    POINT I

        THIS COURT SHOULD EMPLOY THE FEDERAL JOURNALIST'S PRIVILEGE STANDARD. ............................................. 1

    POINT II

        THERE IS NO UNDUE HARM OR BURDEN TO MR. RAYMAN TO COLLECT THE SUBPOENAED DOCUMENTS. .................................................................. 2

    POINT III

        PLAINTIFF HAS WAIVED ANY CLAIMS OF PRIVILEGE BY FAILING TO COMPLY WITH FED. R. CIV. P. 45(E)(2)(A) AND ON HIS OBJECTIONS THE BASIS OF VAGUENESS ARE DISINGENUOUS. ........................................................................................ 3

    POINT IV

        DESCRIPTIONS OF RELEVANCE OF INDIVIDUAL REQUESTS AND THEIR UNAVAILABILITY BY OTHER MEANS. ............................................. 4

        A.    Subpoena Requests Nos. 5, 14, and 16 – Written Statements of Schoolcraft ..................................... 4

        B.    Subpoena Requests Nos. 2, 3, and 18 - E-Mails to Graham Rayman ............................................... 5

        C.    Subpoena Requests Nos. 4, 7, 11, 12, 20, and 21 – Recordings ........................................................ 6

        D.    Subpoena Requests No. 6 – Crime Complaint Reports .............................................................. 7

**Page**

    E.     Subpoena Requests Nos. 8 and 10 - Memoranda From Plaintiff ................................................................7

    F.     Subpoena Requests Nos. 14-21 - Remaining Documents .........................................................................8

    G.     Subpoena Requests Nos. 1, 9, 13, 22, and 23 – Moot Requests ...........................................................................8

CONCLUSION............................................................................................................................ 9

# TABLE OF AUTHORITIES

**Cases**                                               **Pages**

Gonzales v. NBC,
    194 F.3d 29 (2d Cir. 1999) .................................................................................... 2

von Bulow by Auersperg v. von Bulow,
    811 F.2d 136, 14 (2d Cir. 1987) ............................................................................ 1

**Statutes**

42 U.S.C. §1983 ............................................................................................................ 1

F.R..E 801(d)(2) ............................................................................................................ 5

Fed. R. Civ. P. 26 .......................................................................................................... 3

Fed. R. Civ. P. 26(b)(5) ................................................................................................ 3

Fed. R. Civ. P. 45(d)(1) ................................................................................................ 2

Fed. R. Civ. P. 45(e)(2)(A) .......................................................................................... 3

**PRELIMINARY STATEMENT**

Former Village Voice Reporter, Graham Rayman's objections to the production of documents subpoenaed by City Defendants fail as a matter of law because this Court has discretion to apply the federal qualified reporter's privilege, as plaintiff's claims are predominantly based in 42 U.S.C. § 1983.  Under the federal qualified reporter's privileged, the documents requested are of likely relevance to significant issues raised in this litigation and cannot be reasonably obtained from other sources.

City Defendants are entitled to all of the materials responsive to the subpoena. The Court should order Mr. Rayman to immediately comply with City Defendants' subpoena and produce all responsive documents in his possession.

**ARGUMENT**

**POINT I**

**THIS COURT SHOULD EMPLOY THE FEDERAL JOURNALIST'S PRIVILEGE STANDARD.**

Though the parties are not in dispute about the content of the applicable legal standards regarding a reporter's privilege under state law and federal law, the question for this Court is which standard to apply. Mr. Rayman's Opposition relies on the same cases as City Defendants to point out that a Court overseeing a case that involves both federal and state claims is "not bound to follow" but "*may consider* also the applicable state law." Opp. at 2-3 (citing von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 14 (2d Cir. 1987)(emphasis added). In that same case cited by Mr. Rayman, the Second Circuit, even after consideration of the N.Y. State "Shield Law" applied the federal privilege. Id.  In sum, whether to consider a state law reporter's privilege is, at best, discretionary. As this case is one predominantly regarding plaintiff's federal civil rights, the federal standard should be applied.

Under the federal privilege standard, non-confidential documents must be produced where they (1) are "of likely relevance to a significant issue in the case", and (2) are "not reasonably obtainable from other available sources." Gonzales v. NBC, 194 F.3d 29, 36 (2d Cir. 1999). City Defendants have met the burden required for the production of documents sought by the City Defendants' subpoena, and the Court should order Mr. Rayman's compliance therewith.

## POINT II

### THERE IS NO UNDUE HARM OR BURDEN TO MR. RAYMAN TO COLLECT THE SUBPOENAED DOCUMENTS.

Mr. Rayman objects to the production of the documents in Demands Nos. 1 through 13, 22, and 23 on the basis that these requests are unduly burdensome. (Mettham Decl. to 3/5/14 Motion, Exh. C at 2). City Defendants offered to furnish the reasonable and ordinary costs associated with the duplication and production of the documents requested, thus eliminating any undue financial harm or burden on Mr. Rayman. However, Mr. Rayman's opposition changes course midstream from his original objection and now argues that the "burden" he is asserting is not financial or a time consideration, but rather a rehashing of the reporter's privilege, discussed elsewhere.[1] In doing so, Mr. Rayman has not cited to a *single* case showing that "undue burden" as defined in Fed. R. Civ. P. 45(d)(1) refers to considerations outside of those imposed by travel, cost, or time. Because Mr. Rayman has not asserted any demonstrable burden associated with the subpoena, his objections on this basis should be rejected and he should be required to produce the documents in Demands Nos. 1 through 13, 22, and 23.

---

[1] Though interestingly, Mr. Rayman has not asserted this same "burden" with regard to Subpoena Requests Nos. 14-21.

2

### POINT III

### PLAINTIFF HAS WAIVED ANY CLAIMS OF PRIVILEGE BY FAILING TO COMPLY WITH FED. R. CIV. P. 45(E)(2)(A) AND ON HIS OBJECTIONS THE BASIS OF VAGUENESS ARE DISINGENUOUS.

Mr. Rayman has not only failed to provide any sort of privilege log to City Defendants, but has also failed to cite a *single* case or rule (in this district or any other) that would tend to support his position that he is not required to produce a privilege log. Instead, Mr. Rayman has cited to Fed. R. Civ. P. 26 to claim that he is not a "party" and is therefore not subject to the privilege log requirement. In fact, Fed. R. Civ. P. 45(e)(2)(A) provides the exact same language regarding the creation of a privilege log for non-parties served with a subpoena as Fed. R. Civ. P. 26(b)(5) provides for parties in discovery.

Moreover, Mr. Rayman's claims that the information provided within a privilege log would violate the reporter's privilege are disingenuous. By its very terms, with the exception of Subpoena Requests Nos. 22 and 23, the subpoena seeks *only* documents provided by plaintiff, or his father, Larry Schoolcraft. Both individuals have already admitted to e-mailing with and providing documents to Mr. Rayman. The only possible ambiguity is *which* documents Mr. Rayman is in possession of. As the production of a privilege log of documents provided to Mr. Rayman from plaintiff and his father would not produce any privileged information in and of itself, Mr. Rayman's failure to produce such a log is inexcusable.

Moreover, Mr. Rayman cannot use the reporter's privilege as both a sword and a shield. Mr. Rayman has at once claimed that he should not be required to produce a privilege log for the documents received from Messrs. Schoolcraft, while also arguing that City Defendants must explicitly list every single document with particularity that they seek from Mr. Rayman. City Defendants would be happy to state which of Mr. Rayman's documents from Adrian and

3

Larry Schoolcraft are of likely relevance to a significant issue in this case, yet cannot do so without knowing first what those documents are. Either Mr. Rayman should be required to produce a privilege log for those documents not explicitly requested by City Defendants on which to base a more detailed motion to compel, or Mr. Rayman should be required to produce those documents.

Because Mr. Rayman has failed to provide a privilege log for any of the requested documents, he has waived any privileges that may have applied, and the Court should order him to produce those documents to City Defendants.[2]

## POINT IV

### DESCRIPTIONS OF RELEVANCE OF INDIVIDUAL REQUESTS AND THEIR UNAVAILABILITY BY OTHER MEANS.

A.   **Subpoena Requests Nos. 5, 14, and 16 – Written Statements of Schoolcraft**

Subpoena Requests Nos. 5, 14, and 16 offer the most telling counter-point to Mr. Rayman's argument that "given the multiple sources for information," a particular document should not be produced. Mr. Rayman argues that because "roughly a dozen police officers" could testify about Schoolcraft's confinement, therefore, a "ten-page single-spaced account Schoolcraft himself wrote," in which Schoolcraft discussed a "record of the next six days," referring to Adrian Schoolcraft's confinement to Jamaica Hospital Medical Center on or about October 31, 2009 through November 6, 2009 would be irrelevant. However, what is relevant is what *plaintiff* recalls. Plaintiff previously lied under oath about the existence of such a document, and City Defendants believe that this reasonably reflects a conscious attempt to hide a statement that may

---

[2] Mr. Rayman has not responded in any fashion to City Defendants' arguments regarding the appropriateness of Mr. Rayman's claims of "attorney-client" and "attorney work-product" privileges. It thus appears that Mr. Rayman has withdrawn those objections.

be in conflict with later statements made by plaintiff in this lawsuit, including the Complaints and his deposition testimony.

In fact, Mr. Rayman so much as admits that this document is not privileged, but instead argues that it is "unreasonably cumulative or duplicative." There is nothing "cumulative" or "duplicative" about this statement as City Defendants have never seen or received a copy of this statement at any time during the course of this litigation. In fact, plaintiff could not even recall writing it at the time of his first deposition. Because plaintiff's ten-page written account of his time in Jamaica Hospital is a clearly relevant document to material issues of fact in this lawsuit, would likely be admissible at trial pursuant to F.R.E 801(d)(2), and is not readily obtainable from any other sources, this Court to order Mr. Rayman to comply with Subpoena Requests No. 5 to Mr. Grayman for a copy of that specific ten-page account and Subpoena Request Nos. 14 and 16 for any other written accounts by Adrian Schoolcraft regarding alleged misconduct by the NYPD and/or his confinement in Jamaica Hospital Medical Center on or about October 31, 2009 through November 6, 2009.

**B.      Subpoena Requests Nos. 2, 3, and 18 - E-Mails to Graham Rayman**

Though Mr. Rayman claims that he is "not a custodian of any source's documents," according to plaintiff, Mr. Rayman was in fact the original recipient and the creator of a vast number of emails exchanged between him and Messrs. Schoolcraft regarding the subject matter of this lawsuit. It is hard to fathom how Mr. Ryman can now claim that he is not a custodian of those records by any definition of the term. Moreover, as Messrs. Schoolcraft each claim that they no longer have any of these emails, Mr. Rayman is in fact the only possible source for these communications. The Court should therefore order Mr. Rayman to comply with Subpoena Requests Nos. 2, 3, and 18.

5

### C.    Subpoena Requests Nos. 4, 7, 11, 12, 20, and 21 – Recordings

Central to plaintiff's claims in this matter are the recordings he has made of his co-workers and the defendants while working as a police officer in the 81st Precinct. In fact, plaintiff claims that it was the NYPD's knowledge of these recordings which prompted the incident that gives rise to this lawsuit. City Defendants have never disputed that they received a CD of roll call recordings from plaintiff in this matter, however, based on *The NYPD Tapes*, City Defendants reasonably believe that plaintiff may have provided Mr. Rayman with 1,000 hours of recordings from plaintiff, recordings of plaintiff on patrol or in the station house aside from at a roll call. City Defendants are aware of at least one instance where the recording provided by plaintiff to parties in this matter was doctored to intentionally omit a conversation that plaintiff had with his father.[3] That omitted portion of the recording was what prompted defendant Mauriello's counter-claims in this matter. To the extent Mr. Rayman has similar recordings more expansive than plaintiff's selective discovery productions, these recordings would be relevant to significant issues in this matter, including plaintiff's motivations and exculpatory statements by defendants.

Because plaintiff claims to not have access to relevant recordings that he previously provided to Mr. Rayman, Mr. Rayman appears to be the only known individual who may still have a copy of these recordings. City Defendants therefore respectfully request that the Court order Mr. Rayman to comply with Subpoena Requests Nos. 4, 7, 11, 12, 20, and 21.

---

[3] IAB had vouchered a recording device of plaintiff's with his permission. When IAB downloaded the original file from the recording device, it contained an additional portion of a recording that was not provided by plaintiff in discovery.

**D.     Subpoena Requests No. 6 – Crime Complaint Reports**

Mr. Rayman has disingenuously couched Subpoena Request No. 6 as "crime reports given to Rocco Parascandola."[4] While City Defendants believe plaintiff gave copies of the Crime Complaint Reports to other reporters, City Defendants reasonably believe that plaintiff *also* gave copies of these documents to Mr. Rayman.

As plaintiff claims that these exact documents were stolen from him by City Defendants, if Mr. Rayman was given copies of them from either Adrian or Larry Schoolcraft, plaintiff's claims that the NYPD attempted a prior restraint on him by destroying his evidence of NYPD misconduct would be defeated. This is a significant and material issue of fact in this litigation.  Therefore, to the extent plaintiff provided any such crime complaints to Mr. Rayman, City Defendants request that the Court compel Mr. Rayman to produce them to City Defendants.

**E.     Subpoena Requests Nos. 8 and 10 - Memoranda From Plaintiff**

Plaintiff claims to have written two memoranda regarding NYPD misconduct to former 81st Precinct Commanding Officer Deputy Inspector Robert Brower in 2006 and 2007, and apparently gave copies of those memoranda to Mr. Rayman. (Mettham 3/5/14 Decl. Exh. E at 41, 44). As explained in City Defendants' original motion, City Defendants have searched and are unable to locate any record of these memoranda being provided to any employees of the NYPD. It is a disputed material issue of fact regarding what alleged misconduct plaintiff was aware of at the 81st Precinct, and whether he was retaliated against as a result of such whistle-blowing. Though plaintiff has testified regarding these alleged memoranda, their actual existence is still disputed.  As far as City Defendants are aware, Mr. Rayman is the only individual who

---

[4] Moreover, the applicable federal standard requires only that documents not be reasonably obtained from other sources.  It would be unreasonable to move the Court against two separate journalists to obtain the documents, if each could argue that the documents were more reasonably obtainable from the other.

7

possibly has a copy of these alleged documents. Accordingly, City Defendants request that the Court order Mr. Rayman to comply with Subpoena Request Nos. 8 and 10 and produce the documents if they are in his possession.

**F.      Subpoena Requests Nos. 14-21 - Remaining Documents**

Plaintiff and Larry Schoolcraft's recollection regarding which documents and e-mails they provided to Mr. Rayman is unclear at best. As Mr. Rayman has refused to provide a privilege log and Messrs. Schoolcraft cannot provide copies of every document and e-mail they gave to Mr. Rayman, nor can they provide detailed recollections of what was contained within those documents, City Defendants have no recourse but to ask for all documents provided to Mr. Rayman from Messrs. Schoolcraft. With the identify of the sources known and acknowledged, this is a far cry from the straw man argument made by Mr. Rayman regarding unfettered "sifting" through reporters' records.

**G.      Subpoena Requests Nos. 1, 9, 13, 22, and 23 – Moot Requests**

As this Court is has recently ordered plaintiff to produce the document referenced in Subpoena Request No. 13, that Request is now moot. Similarly, because Mr. Rayman has stated that he did not pay Messrs. Schoolcraft, Subpoena Requests Nos. 22 and 23 have now been satisfied. Mr. Rayman has pointed City Defendants to an article written by Len Levitt that allegedly contains the email he received from Larry Schoolcraft; City Defendants are therefore willing to withdraw Subpoena Request No. 1. Finally, City Defendants had repeated informed Mr. Rayman that they withdrew Subpoena Request No. 9 in advance of this motion practice, and it was never the subject of a motion by City Defendants.

## CONCLUSION

Defendants therefore request that the Court order Mr. Rayman to immediately comply with City Defendants' subpoena, and produce any documents and recordings provided to Mr. Rayman from either plaintiff, or plaintiff's father, Larry Schoolcraft.

Dated: New York, New York
April 4, 2014

                        Respectfully submitted,
                        ZACHARY W. CARTER
                        Corporation Counsel of the
                          City of New York
                        *Attorney for City Defendants*
                        100 Church Street, Room 3-200

                        New York, New York 10007
                        (212) 356-2372

By: _____
       Suzanna Publicker Mettham
       Assistant Corporation Counsel


TO: David S. Korzenik (BY HAND DELIVERY)
Miller Korzenik Sommers LLP
*Attorney for Graham Rayman*
488 Madison Avenue
New York, NY 10022

Nathaniel Smith (By ECF)
*Attorney for Plaintiff*
111 Broadway, Suite 1305
New York, New York 10006

Gregory John Radomisli (By ECF)
MARTIN CLEARWATER & BELL LLP
*Attorneys for Jamaica Hospital Medical Center*
220 East 42nd Street 13th Floor
New York, NY 10017