UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

ADRIAN SCHOOLCRAFT,

               Plaintiff,

    - against -

CITY OF NEW YORK, et al.,

               Defendants.

----------------------------------------X

10 Civ. 6005 (RWS)

OPINION

A P P E A R A N C E S:

    Attorneys for the Plaintiff

    LAW OFFICE OF NATHANIEL B. SMITH
    111 Broadway
    Suite 1305
    New York, NY 10006
    By:  Nathaniel B. Smith, Esq.

    Attorneys for the City Defendants

    MICHAEL A. CARDOZO
    CORPORATION COUNSEL OF THE CITY OF NEW YORK
    100 Church Street
    New York, NY  10007
    By:  Suzanna P. Mettham, Esq.

    Attorneys for Non-Party Journalist Graham Rayman

    MILLER KORZENIK SOMMERS LLP
    488 Madison Avenue
    New York, NY 10022
    By:  David S. Korzenik, Esq.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4-22-14

**Sweet, D.J.**

Defendant City of New York ("City" or "City Defendants") has moved to compel non-party Graham Rayman ("Rayman") to produce documents related to the matter of *Schoolcraft v. City of New York, et al.*, 10 Civ. 6005. Upon the conclusions set forth below, City Defendants' motion is granted in part and denied in part.

**Prior Proceedings**

A detailed recitation of the facts of the underlying case is provided in this Court's opinion dated May 6, 2011, which granted in part and denied in part Defendant Jamaica Hospital Medical Center's motion to dismiss. *See Schoolcraft v. City of N.Y.*, 10 Civ. 6005, 2011 WL 1758635, at *1 (S.D.N.Y. May 6, 2011). Familiarity with those facts is assumed. The action involves claims brought by Plaintiff Adrian Schoolcraft ("Plaintiff" or "Schoolcraft") in the Second Amended Complaint, dated September 25, 2012 (the "SAC") against the City, several members of the New York City Police Department ("NYPD"), Jamaica Hospital Medical Center ("JHMC"), two doctors employed by JHMC, and others (collectively the "Defendants").

1

The instant motion involves a subpoena dated December 3, 2013 served by the City on Rayman (the "Subpoena"). The Subpoena had a return date of December 20, 2013. The Subpoena was made after City Defendants learned of the existence of several of these documents from Rayman's book, *The NYPD Tapes* (the "Book").

The Subpoena makes 23 requests ("Requests" or "Subpoena Requests") and seeks the following information or documents from Rayman:

- Written statements by Plaintiff (Subpoena Requests Nos. 5, 14 and 16);

- E-mails to Rayman (Subpoena Requests Nos. 2, 3 and 18);

- Recordings made by Plaintiff of his co-workers and Defendants (Subpoena Requests Nos. 4, 7, 11, 12, 20 and 21);

- Crime complaint reports (Subpoena Request No. 6);

- Memoranda from Plaintiff regarding NYPD misconduct (Subpoena Requests Nos. 8 and 10);

- Letter firing prior counsel (Subpoena Requests No. 13);

- Documents received from Larry Schoolcraft (Subpoena Requests Nos. 15, 17 and 19);

- Agreements and/or contracts between Rayman and Schoolcraft and Larry Schoolcraft (Subpoena Requests Nos. 22 and 23);

- Other documents (Subpoena Requests Nos. 14-21); and

- Moot requests (Subpoena Requests Nos. 1, 9, 13, 22 and 23).

To date, Rayman has not complied with the Subpoena. He has cited reporter's privilege regarding all of the Subpoena Requests, as well as claimed that several of the requests are unduly burdensome or too vague.  Subsequently, City Defendants filed the instant motion to compel on March 5, 2014.  Briefing was submitted by the City and Rayman; oral arguments were held and the matter was marked fully submitted on April 8, 2014.

**The Applicable Standard**

Federal Rules of Civil Procedure 37 permits a party to move for an order compelling disclosure or discovery from a non-party to an action.  *See* Fed. R. Civ. P. 37(a)(2).  A court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies."  *See* Fed. R. Civ. P. 45 (d)(3)(iii).

Both the Second Circuit and New York State law recognizes the existence of a qualified reporter's privilege. The Second Circuit has recognized a qualified reporter's privilege, based in the First Amendment and federal common law, which protects journalists from having to produce information obtained during the course of newsgathering.  *See, e.g.,*

3

*Gonzales v. National Broadcasting Co.*, 194 F.3d 29, 35 (2d Cir. 1999); *In re Petroleum Prods. Antitrust Litig. (Petroleum Prods.)*, 680 F.2d 5, 7-8 (2d Cir. 1982); *Baker v. F & F Inv.*, 470 F.2d 778 (2d Cir. 1972). *See also United States v. Treacy*, 639 F.3d 32, 42 (2d Cir. 2011); *Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d Cir. 2011); *In re McCray*, 928 F. Supp. 2d 748, 754 (S.D.N.Y. 2013), *adopted*, No. 03 Civ. 9685 (DAB), 2013 WL 6970907, at *4 (S.D.N.Y., Sept. 23, 2013); *Sokolow v. PLO*, No. 04 Civ.397 (GBD) (RLE), 2012 U.S. Dist. LEXIS 127040 (S.D.N.Y. Sept. 6, 2012). The privilege protects both confidential and nonconfidential information. *Gonzales*, 194 F.3d at 35-36.

The privilege seeks to prevent the unnecessary enmeshing of the press in litigation that arises from events they cover. *Id.* at 35. "The privilege, which exists to support the press's important public service function to seek and reveal truthful information, protects newsgathering efforts from the burdensome wholesale production of press files that risk impeding the press in performing its duties." *In re McCray*, 928 F. Supp. 2d at 753 (internal citations omitted).

*Gonzales* sets out two tests for invocation of the privilege, one applicable to instances where the sought-after evidence pertains to confidential information and the second

4

applicable to subpoenas where no confidential material is involved.  City Defendants seek information from Rayman in which Plaintiff is identified as the source in the Book.  Rayman has not contended nor established that the information he received from Schoolcraft was conveyed in confidence.  Where, as here, the information comes from a nonconfidential source, the *Gonzales* test for nonconfidential information applies. *Gonzales*, 194 F.3d at 32-33; *see also Schiller v. City of New York*, 245 F.R.D. 112, 119-20 (S.D.N.Y. 2007) (finding information at issue was not conveyed in confidence where conveyers of information understood that it could be made public).

Under the *Gonzales* test for non-confidential information "the nature of the press interest protected by the privilege is narrower. . . . . when protection of confidentiality is not at stake, the privilege should be more easily overcome." *Id*. at 36.  Under this test, a subpoena must be quashed unless the issuing party demonstrates (1) "that the materials at issue are of likely relevance to a significant issue in the case," and (2) the materials at issue "are not reasonably obtainable from other available sources." *Id*.  The showing needed to overcome the privilege is less than the "clear and specific" showing required under the test for confidential

information.  *Id.*

The first prong of *Gonzales* requires the party seeking
to compel disclosure to demonstrate that the information sought
is of "likely relevance" and goes to a "significant issue" in
the case.  *Gonzales*, 194 F.3d at 36; *McCray*, 928 F. Supp. 2d at
757-58.  The relevancy requirement is not met if the information
sought in the subpoena is merely duplicative or serving a
"solely cumulative purpose."  *United States v. Burke*, 700 F.2d
70, 76 (2d Cir. 1983).  While "this standard is less exacting
than that which applies to confidential materials, a litigant
seeking nonconfidential materials will not be granted unfettered
access."  *Sikelianos v. City of N.Y.*, No. 05 Civ. 7673, 2008 WL
2465120, at *1 (S.D.N.Y. June 18, 2008).

The second prong of *Gonzales* requires the issuers of
subpoenas to make reasonable efforts through discovery to obtain
the information from alternative sources to defeat the
privilege.  Exhaustion of all other available sources of
information is sometimes required.  *See, e.g.*, *Krase v. Graco
Children Prods. (In re National Broadcasting Co.)*, 79 F.3d 346,
353 (2d Cir. 1996) (requiring that party seeking journalist's
materials exhaust alternatives); *Shoen v. Shoen*, 5 F.3d 1289,
1297 (9th Cir. 1993) (stating exhaustion of alternate sources is

6

nearly implausible early in the discovery process); *Petroleum Prods.*, 680 F.2d at 9 (holding that even though 100 witnesses had been deposed, that was not sufficient to establish exhaustion); *Zerilli v. Smith*, 656 F.2d 705, 713 (D.C. Cir. 1981) (requiring subpoenaing party to show "he has exhausted every reasonable alternative source of information"); *Carey v. Hume*, 492 F.2d 631, 638 (D.C. Cir. 1974) (60 depositions may be appropriate before compelling reporter to testify); *In re McCray*, 928 F. Supp. 2d 748, 758 (S.D.N.Y. 2013) ("Defendants have failed to establish that the information sought is not obtainable elsewhere"); *Application of Behar*, 779 F. Supp. 273, 276 (S.D.N.Y. 1991) (stating alternate sources, including depositions, must first be exhausted before any deposition seeking privileged information would be warranted); *Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115, 120 n.4 (D.D.C. 2002) (failure to exhaust alternative sources weighed "so heavily in favor of quashing the subpoena" that court declined to consider the remaining analysis).

Reporter's privilege is also recognized under the New York Shield Law, N.Y. Civ. Rights Law § 79-h. New York Shield law provides qualified protection for "nonconfidential news." N.Y. Civ. Rights Law § 79-h(c). To obtain any such nonconfidential information, a party must make a "clear and

7

specific showing" that the information "(i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's claim . . . ; and (iii) is not obtainable from any alternative source." *Id.*; *see also Holmes v. Winter*, 3 N.E.3d 694, 699, 22 N.Y.3d 300, 362, 980 N.Y.S.2d 357 (N.Y. 2013).

The SAC alleges federal claims and state law claims under the Court's supplemental jurisdiction. (*See* SAC ¶¶ 255-397). Rayman raises New York State Shield Law as a ground for asserting privilege on the information related to Plaintiff's state law claims. However, "asserted privileges in actions that raise both federal and pendent state law claims are governed by the principles of federal law." *In re McCray*, 928 F. Supp. 2d at 753; *see also von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987) (stating that court "may consider . . . the applicable state law," but that it "[was] not bound to follow New York law"). Moreover, "the federal and state policies" on nonconfidential reporter's privilege "are 'congruent.'" *In re McCray*, 928 F. Supp. 2d at 753 (citing *von Bulow*, 811 F.2d at 144). "Both reflect a paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters, an interest which has always been a principal concern of the First Amendment." *Id.* (internal

8

quotation marks and citations omitted).  The Plaintiff's federal
and state law claims conflate and overlap in issues
substantially.  The appropriate action in this instance, where
both the federal and state policies reflect the fundamentally
same principles, is to consider the motion under the federal
articulation of the privilege.

## City Defendants' Motion Is Granted In Part And Denied In Part

City Defendants have made 23 Subpoena Requests, some
of which seek specific documents from Rayman.  Others do not
seek specific information, but rather whole categories of
documents.

### *Rayman Has Not Waived Any Privilege*

As an initial matter, City Defendants contend that
Rayman has waived his privilege because he has not provided a
privilege log.  City Defendants has cited Fed. R. Civ. P.
26(b)(5)(ii), but Rule 26(b)(5)(ii) is specific to a party's
assertion of privilege.  Rule 45(e)(2)(A) does require
nonparties to provide a privilege log, but there is no relevant
case law in this Circuit regarding whether the press can waive
its *Gonzales* privilege from failing to produce a privilege log

9

three months after the service of the subpoena.

As the Second Circuit noted in *Gonzales*:

> If the parties to any lawsuit were free to subpoena
> the press at will, it would likely become standard
> operating procedure for those litigating against an
> entity that had been the subject of press attention to
> sift through press files in search of information
> supporting their claims.  The resulting wholesale
> exposure of press files to litigant scrutiny would
> burden the press with heavy costs of subpoena
> compliance, and could otherwise impair its ability to
> perform its duties-particularly if potential sources
> were deterred from speaking to the press, or insisted
> on remaining anonymous, because of the likelihood that
> they would be sucked into litigation.  Incentives
> would also arise for press entities to clean out files
> containing potentially valuable information lest they
> incur substantial costs in the event of future
> subpoenas.  And permitting litigants unrestricted,
> court-enforced access to journalistic resources would
> risk the symbolic harm of making journalists appear to
> be an investigative arm of the judicial system, the
> government, or private parties.

194 F.3d at 35.

The "heavy costs of subpoena compliance" would be a
significant issue if reporters have to immediately prepare a
privilege log upon being served with a subpoena.  Such a
requirement would incur a heavy burden on the press that would
inhibit its ability to perform its duties.  This is especially
true where City Defendants seek "any written accounts" or "any

10

documents, emails, text messages, and/or recordings" of several categories of issues (*See* Mettham Decl. Ex. A); any effort by Rayman to produce a privilege log by the less-than-a-month long period afforded by the Subpoena's return date would have been costly and extremely time consuming. Finding waiver of privilege here would serve against the policy reasons for the privilege delineated in *Gonzales.*

That is not to say that it is impossible for Rayman to waive his privilege in the future if he fails to provide a privilege log. *See, e.g.*, *In re Application of Chevron Corp.*, 736 F. Supp. 2d 773, 782 (S.D.N.Y. 2010) (noting journalist "has advanced no persuasive reason why he should not be compelled to claim privilege . . . in the same manner as any other litigant—providing a privilege log enumerating the documents as to which privilege is claimed and including as to each such information as may be necessary to make out his claim of qualified journalist privilege"). However, given the notable reasons against finding waiver in this instance, the lack of a privilege log does not waive Rayman's privilege at this time.

*City Defendants' General Subpoena Requests*
<u>*Are Denied On Privilege Grounds*</u>

11

Subpoena Requests Nos. 14 through 21 are generalized subpoena requests for documents regarding the issues in this case.  These requests do not described with any particular detail as to what documents the City seeks.  Subpoena Request No. 14, for example, seeks "[a]ny written account of Larry Schoolcraft regarding alleged misconduct by any current or former members of the NYPD not otherwise listed above."

The reporter's privilege protects the press from wholesale discovery of its documents.  The privilege protects journalists from a party's "unfettered access to 'sift through [journalists] files in search of information supporting [his] claims.'"  *Sikelianos*, 2008 WL 2465120, at *1 (quoting *Gonzales*, 194 F.3d at 35 (alterations in original)).  The Subpoena Requests were made without particularity and essentially seek widespread access to all of Rayman's files.  Wholesale exposure of press files to litigation scrutiny is an impermissible burden, *Gonzales*, 194 F.3d at 35, and the motion is denied with respect to these requests.

*The Written Statements of Plaintiff Regarding Confinement At*
*JHMC Are Not Protected By Privilege*

Subpoena Request No. 5 seeks the written statements of

12

Plaintiff regarding Plaintiff's confinement at JHMC,
specifically a "ten-page single-spaced account Schoolcraft
himself wrote." (Reply at 4). City Defendants initially
inquired about any written statements by Plaintiff regarding his
confinement at JHMC in Plaintiff's deposition, to which
Plaintiff denied having done so. (Mettham Decl. Ex. D at
266:25-267:8). The Book was subsequently published, and it
stated that Plaintiff provided Rayman with this ten-page account
in which Schoolcraft discusses his confinement in JMC. On
September 17, 2013, City Defendants requested Plaintiff produce
the document. Plaintiff responded by letter dated October 23,
2013 that Plaintiff "has looked for [the ten-page account] in
his files and has not been able to locate it." (Mettham Decl.
Ex. G).

Plaintiff's ten-page account of his time at JHMC
concerns one of the central issues in Plaintiff's claims; the
document is thus clearly relevant to the litigation. However,
Rayman contends that the information contained in Schoolcraft's
written account is available to the City, given that Plaintiff,
several other police officers and the supervisors, nursing staff
and psychiatric staff at JHMC have provided testimony regarding
the incident. Rayman's interpretation of the information the
City is seeking is too limited. If the City sought the document

13

only to impeach Plaintiff's testimony of his time at JHMC then relevancy of the document is doubtful given the number of other witnesses that can provide an account of the issue. *See, e.g.*, *Burke*, 700 F.2d at 78 (where witness was impeached by other evidence, reporter's privilege was not defeated as the information would serve solely cumulative purposes). But the factual accounts in the ten-page paper also provide Plaintiff's impression at the time of writing of his confinement at JHMC. This information is relevant to issues beyond impeachment and speaks directly to the events at the hospital.

With regards to the availability of the document from other available sources, City Defendants seek the ten-page statement only after deposition of the Plaintiff and Plaintiff's statement that he is not in possession of the document. The information sought is thus not available through other sources. City Defendants have shown that the material is not reasonably obtainable from other available sources. As such, City Defendant's motion with regards to Subpoena Request No. 5 is granted.

*Several E-mails To Rayman Sought By The City*
*Are Not Protected By Privilege*

14

Subpoena Request Nos. 2 and 3 seek emails from
Schoolcraft or his father, Larry Schoolcraft ("Larry
Schoolcraft") to Rayman.  The emails include the Plaintiff
stating, "Nothing has changed regarding my [suspension] status
. . . Pay me or fire me . . . I'm never quitting . . . Never!"
and an excerpt from a tape of an NYPD sergeant.  (Mettham Decl.
Ex. A).

The emails are relevant to the claims and defenses of
the instant action, as they relate to the events surrounding
Plaintiff's dismissal from the NYPD and Plaintiff's motivations
for his actions, central issues to Plaintiff's and City
Defendants' claims.

City Defendants have previously requested from
Plaintiff any emails sent to and from Schoolcraft to
journalists.  (Mettham Decl. Ex. H).  In response, Plaintiff has
represented to City Defendants and the Court that, other than
some previously disclosed contact with journalists, he did not
have any of these statements.  (*Id.* Ex. J).  Plaintiff later
admitted that he had been in email contact with Rayman, but
indicated that he "does not have access to his old email
communications with the press that he was examined about at his
deposition."  (*Id.* Ex. G).

15

With respect to the email regarding Schoolcraft's suspension status, only Plaintiff, the recipient and any individuals with whom Plaintiff or the recipient shared this email would have access to the information on the document.  The only other individuals who would have access other than Plaintiff or Rayman are other journalists.  (*Id.* Ex. E at 155, 169).  Plaintiff's inability to produce this document and City Defendants' exploration of other possible avenues of obtaining the document demonstrates that the information cannot be reasonably obtained from other available sources.  The motion is granted with regards to Subpoena Request No. 3.

With respect to the email containing an excerpt from a tape of an NYPD sergeant, City Defendants have not provided a particularized explanation as to why they are seeking the email; City Defendants presumably want the email for its information on the tape excerpt.  The Defendants have numerous recordings from Plaintiff, and the City has not indicated whether they have the recording the email transcribes.  City Defendants have not shown that they are unable to reasonably obtain the information contained in the email from alternative sources, and the motion is denied with respect to Subpoena Request No. 2.

16

*The Recordings Made By Plaintiff Of His Co-Workers And*
*Defendants Are Privileged*

Subpoena Request Nos. 4, 7, 11, 12, 20 and 21 seek

recordings made by Schoolcraft and provided to Rayman. City

Defendants state that they have received recordings from

Plaintiff, but are concerned that Plaintiff may not have

produced the entirety or all of his recordings. The City

contends that several recordings mentioned in the Book were not

produced by Plaintiff: Subpoena Request Nos. 7, 11 and 12 refer

to recordings that the Defendants did not receive from

Plaintiff. City Defendants have not made any particularized

statement regarding Subpoena Request Nos. 4, 20 and 21, which

seek the CD containing all recordings made by Schoolcraft and

provided to Rayman, any recordings regarding alleged misconduct

by the NYPD and any recordings regarding Schoolcraft's

confinement at JHMC. (Mettham Decl. Ex. A).

City Defendants have not shown that any of the

recordings are relevant to the litigation. City Defendants

central contention regarding the relevancy of these tapes is

that they were not produced by Plaintiff but mentioned in the

Book. The City has not provided any specific arguments as to

why the actual content of the recordings goes to a "significant

17

issue" in the case. *Gonzales*, 194 F.3d at 36.  Moreover, the
City has information as to Plaintiff's failure to produce
recordings, including a recording obtained by the Internal
Affairs Bureau of the NYPD ("IAB").  (Reply at 6).  City
Defendants seek these recordings for a "solely cumulative
purpose," to show that Plaintiff altered potential evidence,
which cannot defeat the reporter's privilege. *Burke*, 700 F.2d
at 78.  The Motion is denied with regards to Subpoena Request
Nos. 4, 7, 11, 12, 20 and 21.


*The Crime Complaint Reports Are Protected Documents*


        Subpoena Request No. 6 seeks a copy of "questionable
crime reports [Schoolcraft] gave [the NYPD's Quality Assurance
Division ('QAD'] which Schoolcraft provided to Rocco
Parascandola."  (Mettham Decl. Ex. A).  Plaintiff has claimed
that the NYPD "stole" these crime complaint reports from
Plaintiff's apartment on October 31, 2009.  The Book suggests
that Plaintiff provided the crime complaint reports to Rayman
following the October 31, 2009 incident.


        City Defendants seek information as to the veracity of
Plaintiff's allegations and whether or not Plaintiff was still
in possession of the reports after the October 31, 2009

18

incident.  However, Subpoena Request No. 6 would not provide this information for the former, only the latter.  The City contends that possession of the reports by Rayman would exonerate the City with respect to Plaintiff's claims that the NYPD stole his evidence of NYPD misconduct.  But City Defendants have not sufficiently shown how Rayman's possession of the crime complaint reports or a copy thereof would be relevant to Plaintiff's allegations of theft, and the City has not claimed that Plaintiff has denied having copies of the crime complaint reports.  The relevant issue is the NYPD's conduct and motivation for such in the October 31, 2009 incident.  Obtaining copies of the reports in Rayman's possession would not provide any insight as to the truth of Plaintiff's version of the October 31, 2009 incident.  The City's motion with regards to the crime complaint reports is denied.

The Memoranda From Plaintiff Regarding NYPD Misconduct
*Is Not Privileged*

Subpoena Requests Nos. 8 and 10 seek two written memoranda Plaintiff alleges to have written to former 91st Precinct Commanding Officer Deputy Inspector Robert Brower in 2006 and 2007 regarding NYPD misconduct.  The Book indicates that Plaintiff provided copies of these memoranda to Rayman.

19

(Mettham Decl. Ex. E at 41, 44).  City Defendants have searched

for and are unable to locate any record of these memoranda being

provided to any employees of the NYPD.  The Court has previously

ordered Plaintiff to produce the memoranda, but Plaintiff

insists that the memoranda are no longer in Plaintiff's

possession.

The existence of the memoranda and the information

contained therein are relevant to Plaintiff's claims of

retaliation from his whistle-blowing of illegal practices at the

81st Precinct.  It is a disputed material issue of fact

regarding what alleged misconduct Plaintiff was aware of at the

81st Precinct, whether he was retaliated against as a result of

such whistle-blowing and whether the memoranda actually exists.

Obtaining the memoranda would provide information on all of

these issues.

While the Plaintiff has testified regarding these

alleged memoranda, the memoranda have not been produced through

discovery and the NYPD and City Defendants have been unable to

locate them.  As far as City Defendants are aware, Rayman is the

only individual who has a copy of these documents.  City

Defendants have shown that the memoranda are of likely relevance

to a significant issue that is not reasonably obtained from

20

other available sources.  The motion with regards to Subpoena Requests Nos. 8 and 10 is granted.

### The Letter Firing Prior Counsel Are Protected By Privilege

Subpoena Request No. 13 seeks a letter from Plaintiff firing his prior counsel.  City Defendants contend that the letter indicates that Plaintiff had fired his prior counsel because he wanted "a more media-driven, public airing than is now occurring" in the litigation.  (Def. Br. at 15).  This statement was referred to in an article by Leonard Levitt.  City Defendants note that at oral arguments on November 13, 2013, Plaintiff made representations to this Court that the Levitt statement was false.  The Court permitted the City to depose Plaintiff to determine whether he provided a copy of this document to any third parties; City Defendants noticed Plaintiff's deposition but also offered Plaintiff the ability to avoid the deposition if he agreed to sign an affidavit indicating that he did not provide the document to any third parties.  Plaintiff has refused to sit for the deposition or sign the proposed affidavit.  The Book suggests that Rayman may have a copy of the letter.  (Mettham Decl. Ex. E at 240).

City Defendants have not shown that the letter or that

21

Rayman's possession of the letter is a "significant issue in the case."  The City has the Levitt article and the Book, both of which refer to the letter.  City Defendants seek the letter presumably to show Plaintiff as a source of media "leaks," which the City contends have plagued this lawsuit.  Notwithstanding this concern, media leaks are peripheral issues in this litigation and not a significant issue in the parties' cases.  The City has not shown the relevancy of the letter, or how it is important to any of the issues raised by Plaintiff's or Defendants' cases.  Given such, the motion with respect to Subpoena Request No. 13 is denied.

*The Documents Received From Larry Schoolcraft*
*<u>Are Protected By Privilege</u>*

Subpoena Requests Nos. 15, 17 and 19 seek documents in the possession of Rayman that he received from Larry Schoolcraft.  Larry Schoolcraft was ordered by the Honorable Judge Peebles in the Northern District of New York to appear for a deposition and to produce the requested documents on December 11, 2013.  (Mettham Decl. Ex. N).  However, no documents were brought by Larry Schoolcraft to his deposition.

As an initial matter, City Defendants seek these

22

documents based on their belief that Larry Schoolcraft provided
the documents to Rayman.  The City does not know what specific
documents, if any, were actually provided.  They have not
provided any information as to whether Rayman even has the
documents.  As previously noted, a party "will not be granted
unfettered access to 'sift through [journalists] files in search
of information supporting [his] claims.'"  *Sikelianos*, 2008 WL
2465120, at *1 (quoting *Gonzales*, 194 F.3d at 35 (alterations in
original)).  City Defendants, with these unspecified Requests in
the Subpoena, has failed to make the necessary showing to
overcome the asserted privilege.

*The Agreements And Contracts Between Rayman And*
*Schoolcraft And Larry Schoolcraft Are Protected*

Subpoena Requests Nos. 22 and 23 seek any agreements,
contracts or proof of payment to Schoolcraft or Larry
Schoolcraft from Rayman.  City Defendants seek this information
on the grounds that whether Plaintiff made any money from his
story regarding NYPD misconduct bares on Plaintiff's bias and
motivations in bringing this lawsuit.  The City has not provided
any information as to whether the information at issue is not
reasonably obtainable from other available sources.  It is
possible that whether Plaintiff or Larry Schoolcraft received

23

payment from Rayman can be determined from other documentary evidence or from the deposition of Plaintiff or Larry Schoolcraft.  Thus, these requests cannot be compelled.  *See, e.g.*, *Sikelianos*, 2008 WL 2465120, at *1 (where information sought was available from other sources, privilege could not be overcome).

## *The Motion Is Denied With Respect To Moot Requests*

Due to intervening circumstances, Subpoena Requests Nos. 1, 9, 13, 22 and 23 are now moot.  The motion with respect to these Subpoena Requests is denied.

## *There Is No Undue Harm Or Burden On Rayman*

Rayman has objected to the production of the documents in Subpoena Requests Nos. 1 through 13, 22 and 23 on the basis that these requests are unduly burdensome.  With regards to the Requests that are not protected by privilege, the Subpoena provides substantial detail as to the exact document it seeks. Finding such documents will likely not cause Rayman a significant amount of time or cost, and the Subpoena with respect to these documents will not cause undue harm or burden on Rayman.

24

**Conclusion**

      Upon the conclusions set forth above, City Defendants' motion to compel is granted with respect to Subpoena Requests Nos. 3, 5, 8 and 10.  The City's motion is denied with respect to all other Subpoena Requests.

It is so ordered.

New York, NY
April 18, 2014

                                 ROBERT W. SWEET
                                    U.S.D.J.