UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ADRIAN SCHOOLCRAFT,

                          Plaintiff,          DECLARATION IN
      -against-                                OPPOSITION

                                                        10-CV-06005 (RWS)

THE CITY OF NEW YORK, et al.,

                        Defendants.
------------------------------------------------------------X

        I, WALTER A. KRETZ, JR., declare under penalty of perjury that the following is true and correct:

        1.     I am a member of Scoppetta Seiff Kretz & Abercrombie, attorneys for defendant Deputy Inspector Steven Mauriello in his official and individual capacities.  I submit this Declaration, and the accompanying memorandum of law, in opposition to plaintiff's motion to strike the allegation in paragraph 6 of Steven Mauriello's counterclaims to the extent it refers to plaintiff's use of "the N word" in a conversation plaintiff recorded between him and his father as he prepared for his first meeting with the NYPD's Quality Assurance Division (QAD).

        2.     In the conversation, the father asked whether a certain officer would be supportive of what plaintiff intended to tell QAD, and, as alleged in the counterclaims, plaintiff responded:  "we [the other officer and plaintiff] just worked together because we didn't want to work with any n_ _ _ _ _ s."

        3.     Remarkably, plaintiff's memorandum of law refers to the quote attributed to the plaintiff as "false" and "falsely attributed to Officer Schoolcraft."  The truth is, however, that the statement attributed to the plaintiff

was made by him and is quoted accurately, and the circumstances in which the statement was made also are accurately described. The recording is preserved.

   4. As we previously reported to the Court, one of plaintiff's prior attorneys, or perhaps plaintiff himself, deleted the conversation in which the challenged statement was made from a copy of plaintiff's recording of that day's events (October 7, 2009). In discovery, prior counsel then produced the recording without that conversation included. Only when the Graham Rayman book was released nearly four years after the conversation took place, and a reference was made to the conversation, did we realize we had not yet heard it. We searched what we understood to be a duplicate recording produced by the City in discovery, which the NYPD's Internal Affairs Bureau apparently had retrieved from plaintiff's apartment after he had been released from the hospital, and discovered the conversation was preserved on that copy. There is no doubt the conversation took place, and we have quoted it accurately.

   5. In addition to claiming that our quote of plaintiff's comment is false, plaintiff asserts that it is inflammatory and irrelevant and should be stricken from the counterclaims. There are several points we have to make in response:

   i. the Second Amended Complaint (SAC) itself twice refers to the "N word" and alleges that it was improperly used by one officer in speaking to another, and then used by one of the defendant officers to berate a subordinate officer (see SAC ¶¶ 240-43); if plaintiff believes such offensive language is not too inflammatory to be attributed to the defendants in allegations in the complaint, then why is it too inflammatory to be accurately attributed to plaintiff in Mauriello's counterclaims, especially when plaintiff has held himself out as one

2

with sentiments far removed from the offensive sentiments revealed by the quoted statement;

      ii.    in addition, if including the alleged use of the offensive language in the complaint has any relevance to plaintiff's claims – which presumably would be that NYPD, or at least some of the individual defendants, do not care about minorities, then it has the same relevance to the counterclaims; it then would be up to the jury to decide who it believes;

      iii.    at its core, we believe that exhibiting such bigotry as plaintiff exhibits when speaking as he is heard to speak bears directly on whether plaintiff was motivated, as he has claimed, to report supposed wrongdoing in the NYPD to protect those for whom he apparently had such disdain; we believe he had no such motivation, and instead orchestrated the events of October 31st, and many events before and after, for his own gain and to do harm to Steve Mauriello and the NYPD, without any regard for the community;

      iv.    plaintiff worked in Bedford-Stuyvesant, a predominantly African American community, and worked with a large number of African American superior officers as well as patrol officers; for him to exhibit such an offensive racist sentiment clearly has significance relevance in the assessment of the allegations made by both sides in this case; he appears to have been a disgruntled cop who was not happy about having to work in such a community; he did not do his job; he received a poor evaluation;  he had his weapon and shield taken from him; and, we believe, he blamed all of this on Mauriello and set out to hurt him;  again, he did not set out to protect the community, as the challenged comment, and several others, some of which he recorded, seem to

3

clearly indicate; again, we believe the jury should be given an opportunity to decide, and that the Court should make that determination when we get to trial;

   v. as indicated, there are several other instances of bigoted comments we will attempt to use against the plaintiff at trial, not only in support of our counterclaims, but in defense against plaintiff's claims; in each instance plaintiff exhibits racial bias and disdain for minorities, again, in recordings he himself made; to be clear, these are sentiments not shared by Mauriello and never exhibited by him, despite the countless hours in which he was unwittingly recorded by the plaintiff;

   vi. we selected the particular quote challenged by plaintiff because it relates directly to the plaintiff's purported motivation for reporting alleged wrongdoing in the NYPD; it is an indication the plaintiff did not have the motive he pretended to have -- to protect the residents of the predominantly African American community served by the 81st Precinct; nor was plaintiff interested in protecting his fellow officers, as he also pretended; instead, plaintiff's motive, as revealed in the recordings, was to do harm to Steve Mauriello – according to the plaintiff, to "f- - - Mauriello over."

   vii. in the trial of this case – in defense of plaintiff's claims, and in the prosecution of Mauriello's counterclaims, plaintiff's bias and motivation must be fully explored if the jury is going to be asked to make an informed decision about who or what brought about the events of October 31, 2009, and its aftermath, and who has suffered compensable harm as a result; in any case, these are matters upon which the Court should rule at trial, not now;

4

    viii. plaintiff challenged the use of the statement quoted in the counterclaims only when the content of our counterclaims was published in the Village Voice, three weeks after we initially filed our motion; for the most part, the report fairly recited the content of the motion papers and the content of the proposed counterclaims, and did not sensationalize the allegation with respect to plaintiff's use of the N word.  Having played to the press so extensively, however, plaintiff apparently believes he should not have to suffer such unflattering exposure; the simple response is that he has himself to blame, and now a jury will have to decide who it believes and who has suffered compensable harm.

CONCLUSION

  6. Based upon the foregoing, it is respectfully requested that plaintiff's motion to strike the challenged statement from the proposed counterclaims be denied, and that the Court grant such other relief as it deems just.

Declaration executed on April 24, 2014.

_____
  Walter A. Kretz, Jr., (WK-4645)

5