## MARTIN CLEARWATER & BELL LLP

COUNSELORS AT LAW

220 EAST 42ND STREET, NEW YORK, NY 10017-5842
TELEPHONE (212) 697-3122   FACSIMILE (212) 949-7054
www.mcblaw.com

GREGORY J. RADOMISLI
PARTNER

DIRECT DIAL: (212) 916-0923
E-MAIL: radomg@mcblaw.com

April 28, 2014

**BY ECF**

Hon. Robert W. Sweet
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:   **Schoolcraft v. Jamaica Hospital Medical Center**
      Civil Action No.    10 CV 6005 (RWS)
      MCB File No.        667-82153

Dear Judge Sweet:

  We represent the defendant Jamaica Hospital Medical Center ("JHMC" or "the hospital") in the above-referenced matter. This letter is submitted in reply to plaintiff's counsel's April 24, 2014 letter (attached as Exhibit "1" because plaintiff's counsel has not yet filed it) opposing our request to preclude plaintiff's counsel from taking a deposition of a JHMC witness pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.

**GENERAL PRINCIPLES**

  It is axiomatic that discovery will be allowed if the information sought "is reasonably calculated to lead to the discovery of admissible evidence." *See* Rule 26(b)(1). Pursuant to Rule 26(b)(2)(C)(i), however, a Court "must limit discovery if it finds that the discovery sought is 'unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" *In Re: Air Crash Near Clarence Center, New York, on February 12, 2009*, 2013 U.S.Dist.Lexis 163926, *5 (W.D.N.Y. November 18, 2013). Similarly, the Court can reject a request for discovery "if the evidence sought would be cumulative or if the request is based only on speculation as to what potentially could be covered." *Sahu v. Union Carbide Corp.*, 528 Fed.Appx. 96 (2d Cir. 2013) (summary order) (*quoting In Re: Dana Corp.*, 574 F.3d 129, 148-49 (2d Cir. 2009)). In addition, pursuant to Rule

GJR/da
2237923_1.DOC

WESTCHESTER COUNTY OFFICE
245 MAIN STREET
WHITE PLAINS, NY 10601
TELEPHONE (914) 328-2969
FACSIMILE (914) 328-4056

NASSAU COUNTY OFFICE
90 MERRICK AVENUE - SUITE 401
EAST MEADOW, NY 11554-1576
TELEPHONE (516) 222-8500
FACSIMILE (516) 222-8513

NEW JERSEY OFFICE
744 BROAD STREET
NEWARK, NJ 07102
TELEPHONE (973) 735-0578
FACSIMILE (973) 735-0584

April 28, 2014
Page 2

26(b)(2)(C)(iii), the Court can limit discovery if the burden or expense of the proposed discovery outweighs its likely benefit.

None of the topics upon which plaintiff seeks to question a 30(b)(6) witness satisfies Rule 26(b)(1). Rather, they fall within the purview of Rule 26(b)(2)(C)(i) and (iii). It is plaintiff's burden, as the party seeking discovery, to make "a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, 2009 U.S.Dist.Lexis 104020 (E.D.N.Y. November 9, 2009). In this case, the information plaintiff seeks is irrelevant, cumulative and based on speculation. Moreover, the discovery sought is of limited (if any) benefit, particularly in comparison to the expense and burden of interrupting hospital administration and the treatment of patients, numerous attorneys' attending the deposition(s), and preparing therefor.

### GENERAL COMMENTS ON PLAINTIFF'S POSITION

I will address the specific topics that are the subject of plaintiff's Notice to Take Deposition ("Notice") to the extent the discussion supplements the following, but in general, the underlying justification plaintiff's counsel offers to demonstrate the "relevance" of the topics that are the subject of the Notice is to investigate plaintiff's speculative theory that the psychiatrists at JHMC have a "financial incentive" to involuntarily hospitalize patients. He claims that he is therefore entitled to pierce the quality assurance privilege codified by the New York Education Law and New York Public Health Law, obtain financial information and statistics regarding the revenue and frequency of involuntary hospitalizations, and determine the extent to which plaintiff's insurance coverage may have played a role in the decision to admit and ultimately discharge him. None of the discovery seeks bears on any of the causes of action alleged against JHMC, Dr. Lillian Aldana-Bernier or Dr. Isak Isakov ("the medical defendants").

To establish a *prima facie* case for medical malpractice under New York Law, a plaintiff must prove: 1) the standard of care in the locality where the treatment occurred, 2) that the defendant breached that standard of care, and 3) that the breach was the proximate cause of plaintiff's injury. *Perrone v. Grover*, 272 A.D.2d 312, 707 N.Y.S.2d 196, 197 (2d Dept. 2000); *Prete v. Rafla-Demetrious*, 224 A.D.2d 674, 638 N.Y.S.2d 700 (2d Dept. 1996).

Similarly, to determine a violation of due process in the context of involuntary hospitalization, a plaintiff must prove medical malpractice; in the absence of medical malpractice, a confinement pursuant to Article 9 of the Mental Hygiene Law is deemed privileged. *Porter v. Westchester County Medical Center*, 252 AD2d 518, 519, 675 NYS2d 364, 365 (2d Dep't 1998); *see also Monaco v. Hogan*, 576 F.Supp.2d 335, 347-348 (E.D.N.Y. 2008) (due process is satisfied under the Mental Hygiene Law when generally accepted standards within the psychiatric community are met). A physician will not be liable under §1983 for treatment decisions she makes unless her decisions are a departure from accepted standards of care. *See Kulak v. City of New York*, 88 F.3d 63, 75 (2d Cir. 1996). As this Court recognized in

2237923_1.DOC

April 28, 2014
Page 3

*Doe v. Rosenberg*, 996 F.Supp. 343, 351 (S.D.N.Y. 1998), "The Second Circuit has held that §9.39 incorporates the medical community's generally accepted standards as a matter of law" (*citing Rodriguez v. City of New York*, 72 F3d 1051, 1063 (2d Cir. 1995)).

Regardless of the cause of action, then, the issue in this case is whether the medical defendants departed from accepted standards of care when treating the plaintiff.

Whatever "incentives" may or may not have existed to involuntarily hospitalize patients in general (which are expressly denied), the only issue in this case is whether the codefendant psychiatrists appropriately treated the plaintiff. Plaintiff's counsel all but admits as much when he indicates in his 4/24/14 letter that he wants to determine whether Dr. Aldana-Bernier and/or Dr. Isakov were motivated for financial reasons, or made appropriate medical decisions. In that regard, plaintiff's counsel has already questioned Dr. Aldana-Bernier and Dr. Isakov about the basis upon which they rendered their respective decisions.

Even assuming, *arguendo*, that plaintiff's counsel's interpretation of *Tewksbury v. Dowling*, 169 F.Supp.2d 103 (E.D.N.Y. 2001) is correct, the inquiry into whether Dr. Isakov and Dr. Aldana-Bernier are entitled to qualified immunity will be based upon whether *their* actions were in good faith, and whether financial considerations played a role in *their* decision- making process —not the hospital as a whole.

Finally, plaintiff's Second Amended Complaint does not contain any allegations that the medical defendants were motivated by financial considerations. In stark contrast, plaintiff specifically alleges that the City had a policy of awarding incentives to officers who met or exceeded their alleged quotas. Furthermore, in its decision dismissing plaintiff's 42 USC §1983 claims against JHMC, this Court specifically stated:

> Plaintiff has not sufficiently alleged that JHMC's employees acted pursuant to an official JHMC policy, the direction of a JHMC policy maker, or JHMC custom when they participated in the deprivation of Plaintiff's constitutional rights. In fact, Plaintiff appears to allege that the hospital's employees defied its standard practices in taking orders from and/or collaborating with the NYPD to deprive him of his constitutional rights.

*Schoolcraft v. The City of New York*, 2011 U.S.Dist.Lexis 48996, *13 (S.D.N.Y. May 5, 2011).

Plaintiff's Second Amended Complaint did not cure those deficiencies. Accordingly, a wholesale inquiry into whether the policy at JHMC was to "reward" physicians who involuntarily hospitalize patients (a preposterous suggestion in itself) and/or question a corporate witness about financial issues is simply beyond the scope of this case. It is clear that the very purpose for which plaintiff seeks a Rule 30(b)(6) deposition is improper in light of plaintiff's allegations and this Court's rulings.

2237923_1.DOC

April 28, 2014
Page 4

**SPECIFIC ISSUES**

    1.    <u>Performance Evaluations of Psychiatrists</u>

According to plaintiff's counsel's 4/24/14 letter, plaintiff seeks to depose a 30(b)(6) witness regarding the factors considered by the hospital in assessing the performance of their staff psychiatrist because he suspects they may have had a financial incentive to hospitalize patients involuntarily (p. 4). Consequently, any other considerations the hospital my take into account in assessing a psychiatrist's performance are irrelevant. Given that Dr. Aldana-Bernier specifically testified that the number of patients she sees is not a factor in her performance evaluation (pp. 272-273), there is no need to depose a corporate witness on that issue. *See* Rule 26(b)(2)(C)(i).

Contrary to plaintiff's counsel's contention, Magistrate Judge Fox's decision in *Francis v. Untied States*, 2011 U.S.Dist.Lexis 59762 (S.D.N.Y. May 31, 2011) recognizing the quality assurance privilege is not an anomaly. For example, in *Strini v. Edwards Lifesciences Corp.*, 2007 U.S.Dist.Lexis 23604, *7 (N.D.N.Y. March 30, 2007), the Court recognized the privileges codified in New York Public Health Law §2905-m and New York Education Law §6527(3) (recognizing that the statutes protect "information" and "proceedings" generated by a hospital in fulfillment of its quality assurance functions); *Pal v. New York University*, 2007 U.S.Dist.Lexis 91051 (S.D.N.Y. December 10, 2007); *Sabharwal v. Mount Sinai Medical Center*, 2011 U.S.Dist.Lexis 11023 (E.D.N.Y. February 4, 2011); *Callahan v. County of Schenectady*, 2010 U.S.Dist.Lexis 24058 (N.D.N.Y. March 15, 2010). Those Courts recognized that the policy considerations behind the Education Law and the Public Health Law (to encourage physicians responsible for professional misconduct be subject to effective discipline and ensure that the confidentiality provisions encourage frank peer review) should be recognized. *See Pal*, *9-10.

Federal Courts that have not recognized the privilege have only done so in actions that were "not based on claims of medical malpractice, where the underlying policy of improving medical care" was not implicated. *Pal*, at *6; *Tartaglia v. The Paul Revere Life Insurance Co.*, 948 F.Supp. 325 (S.D.N.Y. 1996). Given that plaintiff's claim that the medical defendants violated the Mental Hygiene Law is inextricably intertwined with proving medical malpractice, the policies behind the Public Health Law and Education Law are implicated in this case, and therefore the privileges should be respected.

    2.    <u>Policies on Involuntary Admission</u>

According to plaintiff's counsel's 4/24/14 letter, plaintiff's counsel seeks a corporate witness to testify about policies regarding involuntary admissions "to make specific inquiry about whether the hospital believes that the doctors' statements about hospital policy did in fact comply with hospital policy" (p. 6). By plaintiff's counsel's own admission, then, the only reason he wants to question a 30(b)(6) witness about policies on involuntary admission is to elicit opinion testimony from a fact witness. The policies have been disclosed and the

2237923_1.DOC

April 28, 2014
Page 5

codefendant physicians testified about them; whether they have been violated or followed is the province of an expert, not a corporate representative. *See e.g. U.S. ex rel. Tiesinga v. Dianon Systems, Inc.*, 240 F.R.D. 40 (D.Conn. 2006). In addition, in a medical malpractice action, one defendant cannot be compelled to testify about the services rendered by a codefendant if the question bears on the negligence of the codefendant. *See Carvalho v. New Rochelle Hospital*, 53 A.D.2d 635 (2d Dept. 1976). Finally, as plaintiff's counsel's letter makes clear, he already believes that he has obtained sufficient testimony from the codefendant physicians to establish his case. Therefore, a deposition of a 30(b)(6) witness would be pointless.

3. <u>Voting Policies</u>

Whether the plaintiff was "denied" the right to vote is immaterial to plaintiff's claims. He does not have a separate cause of action for that alleged violation, and it is not even mentioned in those paragraphs of the Second Amended Complaint which comprise plaintiff's various causes of action. In any event, plaintiff elicited testimony from Dr. Isakov on that issue, and JHMC indicated that it would provide a copy of the written policy that was in effect at the time of plaintiff's hospitalization, if any. There is simply no need for a corporate witness to testify.

4. <u>Financial Revenues and Statistics</u>

Plaintiff's counsel's position that the JHMC physicians may have had a financial incentive to hospitalize and treat the plaintiff can be said of *any* physician who accepts payment for services rendered to a patient. For "there is no act, however virtuous, for which ingenuity may not find some bad motive."[1]

As the Supreme Court of the United States recognized, medical care has traditionally been provided on a "fee-for-service" basis. *See Pegram v. Herdrich*, 530 U.S. 211, 218 (2000). The Court stated, "In a fee-for-service system, a physician's financial incentive is to provide more care, not less, so long as payment is forthcoming. <u>The check on this incentive is a physician's obligation to exercise reasonable medical skill and judgment in the patient's interest</u>." *Id.* (emphasis added). It noted that the converse is also true: that in an HMO system, a physician's financial interest is in providing less care, not more, and that the "check on this influence. . . is a professional obligation to provide covered services with a reasonable degree of skill and judgment in the patient's interest." 530 U.S. at 219. As stated by the Supreme Court: "The adequacy of professional obligation to counter financial self-interest has been challenged no matter what the form of medical organization." 530 U.S. at 220.

---

[1] Thomas Jefferson.

2237923_1.DOC

April 28, 2014
Page 6

      The United States Supreme Court, then, is essentially stating that if a physician acted in self-interest instead of the patient's interest, the physician would be breaching her obligation to exercise reasonable care. In other words, the physician would be committing medical malpractice. And therefore the ultimate issue is whether the physicians' treatment decisions were within accepted standards of care. Motives are irrelevant, for "we would frequently be ashamed of our good deeds if people saw all of the motives that produced them."[2] It is respectfully submitted that if this Court adopts plaintiff's premise and permits the discovery plaintiff seeks, the financial records of every health care provider, whether an individual or an organization, would be subject to discovery in a medical malpractice action.

5.    <u>Insurance Coverage</u>

      According to plaintiff's Notice, plaintiff wants a JHMC witness to testify about "the availability of insurance or coverage or reimbursement for medical, psychiatric, and other expenses for Adrian Schoolcraft for all or part of" plaintiff's hospitalization (Topic (f)). Plaintiff cannot expect a JHMC witness to testify about the availability of *plaintiff's* insurance coverage.

      The language in plaintiff's Notice is very different from how plaintiff's counsel characterizes his request in his 4/24/14 letter—seeking a witness to testify about "how the availability of insurance *played a role*" in the decision to hospitalize the plaintiff (emphasis added). In that regard, Dr. Isakov and Dr. Aldana-Bernier have already testified about the bases for their decisions, and the information plaintiff seeks has nothing to do with plaintiff's allegations.

      To the extent plaintiff's counsel claims that he wants to question a witness about "the process of obtaining approval for reimbursement" for plaintiff's hospitalization (p. 7), the process has no bearing on whether the medical defendants departed from accepted standards of care or violated the Mental Hygiene Law.

6.    <u>Security Systems</u>

      Again, plaintiff's request in his Notice for a witness to testify about "the security systems in place" on the psychiatric wards is very different from plaintiff's request in his 4/24/14 letter for a witness to testify about the "use, operation and storage of its security cameras."

      The fact that there are security cameras at JHMC does not necessarily mean that the cameras record anything—they may simply allow the areas to be monitored. Furthermore, if they did record anything, they would contain images of other patients, which would be protected by physician patient privilege and HIPAA. In addition, plaintiff does not allege that anything

---

[2] Francois de La Rochefourcauld.

2237923_1.DOC

April 28, 2014
Page 7

specific occurred at the hospital (such as an assault) that would make a depiction of the plaintiff relevant to his claims. In any event, JHMC has indicated there are no images, and plaintiff does not allege that the failure to record the goings-on of the psychiatric ward is a departure from accepted standards of care. Accordingly, the subject upon which plaintiff proposes to question a JHMC witness has absolutely no relevance to plaintiff's claims, and plaintiff's counsel does not even try in his 4/24/14 letter to articulate a connection between the discovery sought and his allegations.

7. <u>Different Kinds of Wards</u>

Plaintiff's counsel admits that Dr. Aldana-Bernier and Dr. Isakov testified about the psychiatric wards at JHMC. Furthermore, if questioned about this issue, they would have explained "why Officer Schoolcraft was placed in one particular ward" (plaintiff's counsel's 4/24/14 letter, p. 7). Therefore, questioning a JHMC witness about those issues is cumulative and duplicative. Moreover, in this case, plaintiff contends that he should not have been placed on *any* psychiatric ward; is he now going to acknowledge that he was appropriately placed on *a* psychiatric ward, but that he should have been placed on a *different* psychiatric ward? If plaintiff decides to make *that* allegation, JHMC may reconsider its position.

8. <u>Relationship Between JHMC and Several Individuals</u>

and

9. <u>Relationship Between JHMC Security Staff or Medical Staff and the NYPD</u>

According to plaintiff's Notice, plaintiff's counsel wants to question a witness about "the relationship, if any, between JHMC and 1) Seth Vivek; and/or 2) Steven Luel; and/or 3) Shirley Huntley." Seth Vivek is, in fact, a physician at JHMC, and was already identified by both codefendant physicians at their depositions. Dr. Luel is the physician whom plaintiff's father found to treat his son after he was discharged from JHMC. I have no idea who Shirley Huntley is, and plaintiff's counsel has not explained how she has any connection to this case. In any event, he can subpoena Dr. Luel and/or Shirley Huntley to learn whatever information he is seeking. There is no reason to think a corporate witness could explain who they are or their relationship to this action.

Plaintiff's counsel also requests a witness to testify about "the relationship, if any, between any security personnel, social worker, nurse or doctor working at JHMC in 2008 or 2009 and any former or active member of service of the NYPD" (Plaintiff's Notice, topic (k)). Plaintiff's counsel has taken a dozen depositions, including the depositions of police officers, Dr. Aldana-Bernier and Dr. Isakov, and not one has indicated that there is a "relationship" between the NYPD and JHMC. In addition, there is no dispute that Dr. Aldana-Bernier was the physician

April 28, 2014
Page 8

who admitted the plaintiff to JHMC, and therefore she would have been able to testify whether she based that decision on anything other than her medical judgment. Furthermore, it is unreasonable to expect a corporate witness to have knowledge of the "relationships" of every member of its security and medical staff.

Finally, plaintiff's Notice regarding both topics fails to specify the area of inquiry with "reasonable particularity," and is therefore improper. *See Whitehead v. Hidden Tavern, Inc.*, 765 F.Supp.2d 878 (W.D.Tex. 2011); *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581 (D.Kan. 2008) (for Rule 30(b)(6) to function properly, areas of inquiry must be designated with "painstaking specificity"). Indeed, the purpose of the specificity requirement in Rule 30(b)(6) is "to avoid difficulties encountered by both sides when the party to be examined is unable to determine who within the corporation would be best able to provide the information sought." *Soroof Trading Development Co., Ltd. v. GE Fuel Cell Systems, LLC,* 2013 U.S.Dist. Lexis 44977, *5 (S.D.N.Y. March 28, 2013) (S.D.N.Y. 2013) (*quoting Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002)). Given the breadth of plaintiff's request, identifying a suitable witness is impossible. Moreover, it is only after the deposing party has served a satisfactory notice that the responding party must make a good faith effort to designate someone with knowledge about the subject matters sought to be examined. *Soroof Trading*, at *5.

10. <u>Corporate Structure</u>

Plaintiff does not even attempt to explain how testimony about JHMC's corporate structure is relevant to plaintiff's claims, and there is no basis to question a corporate witness on those issues.

In conclusion, the discovery plaintiff seeks is cumulative, duplicative, irrelevant, and based upon speculation as to what could be discovered. Moreover, the discovery sought is of limited (if any) benefit, particularly in comparison to the expense and burden of interrupting hospital administration and the treatment of patients, numerous attorneys' attending the deposition(s), and preparing therefor. Accordingly, it is respectfully requested that the Court preclude plaintiff from taking a 30(b)(6) deposition of JHMC.

Thank you for Your Honor's attention to this matter.

Respectfully submitted,.

MARTIN CLEARWATER & BELL LLP

Gregory J. Radomisli (GJR 2670)