

**Z**ACHARY **W. C**ARTER
*Corporation Counsel*

T<small>HE</small> C<small>ITY OF</small> N<small>EW</small> Y<small>ORK</small>
**L**AW **D**EPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

S<small>UZANNA</small> P<small>UBLICKER</small> M<small>ETTHAM</small>
*Senior Counsel*
phone: (212) 356-2372
fax: (212) 788-9776
smettham@law.nyc.gov

September 4, 2014

**BY ECF AND HAND-DELIVERY**
Honorable Robert W. Sweet
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

          Re:  Schoolcraft v. The City of New York, et al.
               10-CV-6005 (RWS)

Your Honor:

      I am a Senior Counsel in the office of Zachary W. Carter, Corporation Counsel of the City of New York, assigned to represent the City Defendants above-referenced matter. I write today jointly on behalf of all defendants to respectfully request that the Court issue an order compelling plaintiff to produce certain information and documents regarding his experts by no later than September 11, 2014 or otherwise be precluded from relying on those experts in motion practice and/or at trial in this matter. Defendants further request that the Court order plaintiff to produce his experts on dates certain, so that defendants may take the required depositions prior to September 26, 2014, as previously ordered by the Court.

     **A. Background**

      On August 11, 2014, plaintiff provided his expert disclosures, including the Expert Reports of Dr. Roy H. Lubit, Dr. Dan Halpren-Ruder, and Professors Eli B. Silverman and John A. Eterno on that date. See Expert Disclosures dated August 11, 2014, annexed hereto as Exhibit A. By letter dated August 15, 2014, the undersigned requested that plaintiff supplement his disclosures by providing the documents relied on by Professors Silverman and Eterno, for information regarding the compensation paid to each expert for the expert reports, and for comprehensive lists of the matters in which each expert had provided expert testimony in the last four years. See Letter from the undersigned dated August 15, 2014, annexed hereto as Exhibit B. Plaintiff responded by letter dated August 19, 2014 indicating that he would not provide *any* of the documents relied on by Professors Silverman and Eterno, and also indicating that he would not provide any greater detail regarding his experts' testimonial histories or expert compensation than what was already provided. See Letter from Nat Smith dated August 19, 2014, annexed hereto as Exhibit C. By second letter dated August 21, 2014, the undersigned reached out to plaintiff again and asked that he reconsider his position. See Letter from the undersigned dated August 19, 2014, annexed hereto as Exhibit D. Plaintiff has not responded to that letter.

### B. Plaintiff Has Failed to Produce Documents on Which His Experts Relied

Federal Rule of Civil Procedure 26(a)(2)(ii)-(iii) requires the production of "the facts or data considered by the witness" in forming his opinion and "any exhibits that will be used to summarize or support them." However, plaintiff has refused to provide any of the facts or data relied on by Professors Silverman and Eterno in their Expert Report, including but not limited to undated and unclear "hospital data," the experts' notes regarding interviews that lead to the adoption of their views expressed in the expert report, the survey results that underlie the conclusions cited in their expert report, and the narrative responses of the survey, which provides critical information regarding potential biases of respondents. <u>See</u> Expert Report of Eli B. Silverman and John A. Eterno, annexed hereto as Exhibit E. By refusing to provide the data in a timely manner, plaintiff has denied defendants a full and fair opportunity to review the data, identify issues and biases inherent in the survey, and acquire an expert if required.

#### 1. Survey Responses

The Expert Report of Professors Silverman and Eterno provides "expert testimony on the management approach of the NYPD, the blue wall of silence, basic police procedure, and how these bear upon the plaintiff's claims in this case." To support their opinions in this case, Professors Silverman and Eterno spend roughly half of the report (see pages 14-23) discussing the findings of their 2008 and 2012 surveys of the NYPD, which were sent to members of the Captains Endowment Association and the NYPD "active retiree database," respectively. The surveys contained 19-24 questions about the respondents' experiences in the NYPD regarding "pressure," "downgrading crime," and "unethical strategies," among other items. Most of the questions are multiple choice, though respondents were not required to answer every question, and each survey included open-ended narrative sections in which the respondents were able to write or type their personal opinions unencumbered by a multiple choice option.

Defendants require access to the actual survey results for each respondent, including the multiple choice information and the narrative responses in order to challenge the Experts' Report, explore the survey's limitations, and also to examine the biases of the respondents. In the Expert Report, Professors Silverman and Eterno have only provided the responses to 4 of the survey questions for 2008 and 2012, and this data is disambiguated from the rest of the survey results. Additionally, Professors Silverman and Eterno have provided the aggregate results for the answers to these questions by lumping retirees into categories of individuals who retired "before 1995," "1995-2001," and "2002-2012" even though the raw data provides the exact year when each individual retired. Defendants submit that more detailed information about when the survey respondents retired will provide a more accurate picture of the weight to place in the survey. If, for example, the respondents who reported increased pressure for summons all retired before 2007, whereas the persons who retired after 2007 reported that they felt pressure to follow the constitution, this data would be important for the Court to understand what weight, if any, to place in the Expert Report. If the Court is going to consider the pressure that these retired officers felt to perform aspects of their jobs, then the Court should be given a full picture of that pressure.

Similar arguments can be made with regard to all of survey results in the Expert Report. To the extent Professors Silverman and Eterno intend to rely on these survey results and narrative responses, defendants should be given access to the same data in order to test their

hypotheses and results and to determine whether other correlations between questions would change the results.

Such data should be produced as plaintiff cannot cite to any copywritten, trademarked, or otherwise privileged methodology or technology of Professors Silverman and Eterno that would preclude production of such responses. Additionally, the article by Professors Silverman and Eterno indicates that their survey techniques were such that all respondents (except those interviewed for anecdotal evidence) were anonymous, going so far as to tell survey respondents "there is no way for us to know your identity." Any privacy interests that could theoretically be conceived to exist are satisfied by the Professors' own methodology. Accordingly, defendants respectfully request that the Court order plaintiff to produce the raw data used by Professors Silverman and Eterno in their 2008 and 2012 surveys, which form the basis of their opinion in this matter.

## 2. Research Data

Additionally, the Silverman & Eterno Expert Report repeatedly makes reference to evidence, data, and other research information upon which the experts relied, which have not been produced along with the Expert Report. Such statements include "our research has uncovered current occurrences of similar practices" (p. 6) and "[t]he evidence of overwhelming pressures which lead to illegal quotas on summonses, arrests, and forcible stops as well as downgrading crime reports is reflected in union statements, media accounts, non NYPD data sources, accounts of whistleblowers, court cases (*Floyd v City of New York*) and our research" (p. 4). However, this "research", the "data sources", evidence regarding Officer Polanco and Sergeant Borrelli, and the claimed PBA statements have not been produced in this matter.[1] Additionally, the Expert Report references "hospital data, available through 2006", (p. 11), however the exact source of the data, and the data itself have not been produced.[2] Moreover, the Expert Report identifies research (aside from the 2008 and 2012 surveys) conducted by Professors Silverman and Eterno, but the data underlying that research has not been produced. For example, Professors Silverman and Eterno conducted numerous anecdotal interviews of police officers, after which they "compared notes." Silverman & Eterno, The NYPD's Compstat: compare statistics or compose statistics?, Int'l J. of Police Sci. & Man., Vol. 12, No. 3, P. 8. The notes of these conversations could provide a great amount of background data.

As all of the aforementioned information and data constitutes "the facts or data considered by the witness" in forming his opinion, defendants respectfully request that the Court order plaintiff to produce the information and documents relied upon by Professors Silverman and Eterno including, but not limited to:

  a) The Health & Hospitals Corporation data cited on page 11;

  b) Evidence regarding Officer Polanco and Sergeant Borrelli cited on

---

[1] The Expert Report "References" section makes references to PBA and SBA websites which are password protected, and which the undersigned cannot access.

[2] The Expert Report "References" section merely makes reference to the Home Page of the Health and Hospitals Corporation from 2011, but does not cite to which study reference is made.

page 7;

c) The Union Statements cited on page 5;

d) Any and all raw data relied upon by Professors Silverman and/or Eterno, including but not limited to, the completed surveys received by Professors Silverman and/or Eterno for both the 2008 and 2012 surveys;

e) Any electronic databases created or utilized by Professors Silverman and/or Eterno in their analysis of the raw data;

f) Any notes created by Professors Eterno and/or Silverman regarding the 2008 and 2012 surveys;

g) A list of any other researchers or professors who aided Professors Eterno and/or Silverman in their analysis of the 2008 and 2012 survey data;

h) Drafts of the articles and surveys used by Professors Silverman and/or Eterno;

i) Documentation regarding any prior surveys or articles created by Professors Silverman and/or Eterno in this area; and

j) Any and all documents not specified above that bear on the 2008 and 2012 surveys conducted by Professors Eterno and Silverman and/or the articles published regarding those surveys.

### C. Plaintiff Has Failed to Disclose the Compensation Paid to the Expert Reports

Plaintiff has only provided the hourly deposition and trial fees for each one of his experts and has failed to indicate what other compensation has been or will be paid to each expert by plaintiff. See Plaintiff's Supplemental Expert Disclosures, annexed hereto as Exhibit F. Federal Rule of Civil Procedure 26(a)(2)(B)(vi) requires an expert to provide not only the compensation to be paid for testimony, but also "the compensation to be paid for the study." Therefore, defendants respectfully request that the Court order plaintiff to indicate whether a fee was paid to any expert for the expert reports produced in this matter, and if so, the exact amount paid by plaintiff.

### D. Plaintiff Has Failed to Disclose the Experts' Complete Testimonial Histories

With the exception of Dr. Halpren-Ruder who has not testified in the last four years, plaintiff's Expert Reports similarly do not identify with requisite specificity the cases on which plaintiff's experts have testified as experts at deposition or trial in the last four years as plainly required by Fed. R. Civ. P. 26(a)(2)(B)(v). Instead, plaintiff's experts have provided lists which state only partial information. See Testimonial Histories for Dr. Roy H. Lubit, Eli B. Silverman, and John A. Eterno, annexed hereto as Exhibit G. In order to fully research these experts' histories and matters in which their testimony may have been excluded or derided by a Court, defendants require the names of parties to the action, the jurisdiction of the matter (state, federal, civil, criminal, etc.), and most usefully, a docket number. For example, there is no way for defendants to identify the proceeding listed by Dr. Lubit as "Evans September 26, 2012 Deposition by video." Defendants therefore ask that the Court compel plaintiff to produce a *complete* Rule 26(a)(2)(B) disclosure including lists of all cases in which plaintiff's experts have

testified as an expert at deposition or trial in the last four years, which provides sufficient details to identify the matter.

### E. Dates Certain for Expert Depositions

All parties have contacted plaintiff on multiple occasions to attempt to schedule the depositions of plaintiff's experts. Plaintiff only responded to defendants' requests last night at 8:49pm and in doing so, provided dates for the experts depositions on days that counsel already informed plaintiff that they were not available, and on days through September 30, 2014, despite the fact that the defendants only have until September 26, 2014 to complete these depositions, as per the Court's Scheduling Order. Additionally, plaintiff has not provided a proposed date for the deposition of Professor Eterno and has unilaterally limited *all* defendants' time to depose each expert to seven hours total. Defendants therefore respectfully request that the Court order plaintiff's experts to sit for depositions on dates certain as requested herein, and for the time as required herein.

#### 1. Dr. Halpren-Ruder

The defendants have conferred and have agreed to depose Dr. Halpren-Ruder in one day. The parties are available for a deposition of Dr. Halpren-Ruder on September 9th, 10th, 11th, or 23rd.

#### 2. Dr. Lubit

Based upon the breadth and depth of Dr. Lubit's Expert Report, and the variety of claims lodged against each defendant and set of defendants, defendants request that the Court order Dr. Lubit to sit for two days of deposition testimony. The first day would be deposition by the medical defendants (Jamaica Hospital Medical Center, Dr. Aldana-Bernier, and Dr. Isak Isakov) while the second day would be deposition by the City Defendants and defendant Mauriello. The parties are available to take the deposition of Dr. Lubit on September 9th, 10th, 11th, and 23rd.

#### 3. Professors Silverman and Eterno

Due to the length of the Expert Report of Professors Silverman and Eterno, the amount of data relied upon by the experts, and the myriad allegations made against the City Defendants and defendant Mauriello, defendants respectfully request that the Court order Professors Silverman and Eterno to each sit for a day and a half of deposition testimony. The first day would be deposition by City Defendants and the second, half-day would be deposition by defendant Mauriello. The parties are available for the depositions of Professors Silverman and Eterno on September 22nd, 23rd, 24th, 25th, or 26th.

### F. Conclusion

For the reasons stated above, defendants respectfully request that the Court issue an order compelling plaintiff to produce the aforementioned information and documents relating to plaintiff's expert disclosures by September 11, 2014, or otherwise be precluded from relying on those experts in motion practice and/or at trial in this matter. Defendants further request that the Court order plaintiff to produce his experts for depositions on the dates proposed above and for the time requested.

Defendants thank the Court for its time and consideration of these requests.

Respectfully submitted,

*S. Mettham*

Suzanna Publicker Mettham  
Senior Counsel  
Special Federal Litigation Division

cc: Nathaniel Smith (By ECF)  
*Attorney for Plaintiff*  
111 Broadway, Suite 1305  
New York, New York 10006

Gregory John Radomisli (By ECF)  
MARTIN CLEARWATER & BELL LLP  
*Attorneys for Jamaica Hospital Medical Center*  
220 East 42nd Street 13th Floor  
New York, NY 10017

Brian Lee (By ECF)  
IVONE, DEVINE & JENSEN, LLP  
*Attorneys for Dr. Isak Isakov*  
2001 Marcus Avenue, Suite N100  
Lake Success, New York 11042

Bruce M. Brady (By ECF)  
CALLAN, KOSTER, BRADY & BRENNAN, LLP  
*Attorneys for Lillian Aldana-Bernier*  
1 Whitehall Street  
New York, New York 10004

Walter A. Kretz, Jr. (By ECF)  
SCOPPETTA SEIFF KRETZ & ABERCROMBIE  
*Attorney for Defendant Mauriello*  
444 Madison Avenue, 30th Floor  
New York, NY 10022