```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ADRIAN SCHOOLCRAFT,

              Plaintiff,

         v.                           10 CV 6005 (RWS)

THE CITY OF NEW YORK, ET AL.,

              Defendants.

------------------------------x
                                      New York, N.Y.
                                      October 1, 2014
                                      12:03 p.m.

Before:
                     HON. ROBERT W. SWEET

                                           District Judge

                        APPEARANCES
JOHN LENOIR
      Attorney for Plaintiff

NEW YORK CITY LAW DEPARTMENT
OFFICE OF THE CORPORATION COUNSEL
      Attorneys for Defendants
BY:  SUZANNA METTHAM
         RYAN SHAFFER

SEIFF KRETZ & ABERCROMBIE
      Attorney for Defendant Deputy Inspector Steven Mauriello
BY:  WALTER AOYSIUS KRETZ, JR.

CALLAN, KOSTER BRADY & BRENNAN, LLP
      Attorney for Defendant Dr. Lillian Aldana-Bernier
BY:  MATTHEW JOSEPH KOSTER

MARTIN CLEARWATER & BELL LLP (NYC)
      Attorneys for Defendant Jamaica Hospital Medical Center
BY:  GREGORY JOHN RADOMISLI

IVONE, DEVINE AND JENSEN, LLP
      Attorneys for Defendant Dr. Isak Isakov
BY:  BRIAN E LEE
```

1                  (In open court; case called)
2                  THE COURT:  Who have we got.
3                  MS. METTHAM:  Schoolcraft, your Honor.
4                  THE COURT:  Please be seated.
5             What's our schedule in this case?  So far?
6                  MS. METTHAM:  Do you mean the remaining discovery
7    schedule?
8                  THE COURT:  Yes.
9                  MS. METTHAM:  So right now we're in expert discovery,
10   your Honor.  Though the depositions were supposed to end last
11   Friday, at the last conference your Honor gave us more time due
12   to delays in taking the plaintiff's expert depositions.
13            We also have summary judgment due right now on
14   October 24.
15                 THE COURT:  Okay.  So, let's deal with the compel
16   problem.
17                 MS. METTHAM:  Your Honor, actually, if I might raise
18   one issue that hasn't been addressed in letters because it's
19   newly arisen.
20            At the last conference your Honor ordered plaintiff to
21   produce a number of documents relating to his experts.  It's
22   been two weeks.  Plaintiff has not produced those documents.
23            Additionally, on Monday, for the first time, the
24   plaintiff admitted he was not ready to produce the documents,
25   in any case.  He demanded a confidentiality stipulation.

1          I informed plaintiff that I had raised the issue of
2  confidentiality in my motion dated September 4 where I said we
3  didn't believe they documents were trademarked, copy written.
4  They don't contain privilege information.  And I also
5  referenced the fact that -- not in the letter to the Court but
6  later to plaintiff -- that most of these documents that were
7  produced in Floyd ended up being used at trial and so there is
8  no confidentiality there.
9          I asked plaintiff since Monday evening to give me his
10 good cause for believing there's a confidentiality issue.  He
11 has not responded.
12         In any matter, again, it's been two weeks.  We were
13 supposed to take the first expert's deposition on the police
14 procedures issue on Friday.  But without these documents, I am
15 unable to take it, which is, again, further delaying that, your
16 Honor.
17         THE COURT:  This case is Japanese in its treatment.
18 It's one step forward and two steps back.
19         Now, as to this confidentiality thing, these are
20 exhibits -- what the city is wanting is the plaintiff's
21 exhibits to their reports, right?
22         MS. METTHAM:  They're not necessarily exhibits, but
23 they're the materials --
24         THE COURT:  They were referred to in the reports,
25 right?

Ea19schc

1      MS. METTHAM:  Correct, your Honor.

2      THE COURT:  You get them unless they're privileged.
3  If they are privileged, a log.  And the log will be filed on --
4  realistically, we -- does anybody have the sense that this case
5  is never going to get tried?

6      MS. METTHAM:  Unfortunately, yes, your Honor.

7      THE COURT:  Does anybody have that sense, besides me?

8      MR. LENOIR:  Judge, if I may be heard on this issue?

9      THE COURT:  Well, look.  No, you can't be heard on it
10  because I don't know from -- I mean I have no papers.

11      What's wrong with my saying you got to have a log if
12  you're claiming privilege?

13      MR. LENOIR:  That's not -- we're not concerned about
14  the privilege issue.

15      What the city is seeking is the research data, the
16  numbers.

17      THE COURT:  I've been there, done that.

18      MR. LENOIR:  It's been done in the Floyd case.  They
19  already have all of the material.  They've already deposed one
20  of these witnesses.

21      THE COURT:  Forgive me.  Didn't we have this
22  discussion, was it a week ago?  And didn't we conclude that
23  they get the -- the city gets the data?

24      MS. METTHAM:  Yes, your Honor.  Two weeks ago.

25      THE COURT:  What am I missing?

1      MR. LENOIR: We are compiling the data. The data --

2      THE COURT: I don't give a damn what it is. They get

3   it. If you say you can't give it to them now because it's in

4   ten wheelbarrows and you haven't got the wheelbarrows, well

5   that's a different issue.

6      MR. LENOIR: We have the data in-house as of a day or

7   so ago. We are now reviewing it. We will turn it over.

8      We really want -- this is proprietary research

9   material. And as in the Floyd case, we are requesting a

10  nondisclosure.

11     THE COURT: That's all right. That's fine. If you

12  want to make it for counsel's eyes only for the time being,

13  that's fine. No problem.

14     MS. METTHAM: I would only just mention, again, that

15  many of the documents were used at trial in the Floyd case so

16  they are accessible --

17     THE COURT: Well if they've been produced in Floyd

18  they certainly aren't confidential anymore.

19     MS. METTHAM: I would just ask your Honor -- I'd let

20  your Honor know that for the purposes of a *Daubert* motion at a

21  later date if we do --

22     THE COURT: I can't wait. Thanks so much.

23     MS. METTHAM: For the confidentiality, that we would

24  challenge it then.

25     THE COURT: We got rid of something that we weren't

```
 1    going to talk about anyhow.
 2              MS. METTHAM:  Can I have a date certain by which
 3    plaintiff will produce the documents.
 4              THE COURT:  Yes.  They are going to produce them.
 5              Now on this, where we started out.
 6              There is the other compel, the financial data.
 7              MS. METTHAM:  Yes, your Honor.  But could we get an
 8    actual date for plaintiff to produce these other documents by
 9    so that we can schedule the depositions?
10              THE COURT:  The deposition you said has been
11    scheduled.
12              MS. METTHAM:  It's scheduled for Friday but if I don't
13    receive the documents today I can't review them in time.
14              THE COURT:  The deposition -- if the documents are
15    delivered today, the deposition will go on Friday.  If the
16    documents -- for every day the depositions are delayed -- I
17    mean the documents are not produced, the depositions will be
18    delayed by those days.
19              MS. METTHAM:  Your Honor, I have a confidentiality
20    stip, the one that plaintiff provided.  If we sign it and hand
21    it up to your Honor, would you endorse it today?
22              THE COURT:  Sure.
23              MS. METTHAM:  Thank you, your Honor.
24              THE COURT:  Now, the compel financial data of
25    Schoolcraft, has that been resolved?
```

1           MR. SHAFFER:  No, your Honor, it's not.
2           MR. LENOIR:  Your Honor, our position is we have
3    disclosed everything.  He has no income at all.  So I don't
4    know what else they want.
5           THE COURT:  I'm sorry to hear that but income tax
6    returns, yes.
7           Anything else?
8           MR. SHAFFER:  Your Honor, in the expert report
9    provided by one of plaintiff's psychological experts he noted
10   that plaintiff informed him that he applied for over a hundred
11   jobs and went to a job center in upstate New York.  The earlier
12   discovery requests sought that information.  Some of it was
13   provided in earlier discovery responses.  We asked for a
14   supplement to that.  There was no -- none of that was ever
15   addressed.
16          THE COURT:  Are there any other documents relating to
17   job applications?
18          MR. LENOIR:  Not that I'm aware of, sir.
19          THE COURT:  If you give him a affidavit -- give him a
20   statement in that regard.
21          MR. LENOIR:  All right.  In fact, there are no tax
22   returns either.
23          THE COURT:  No tax returns?
24          MR. LENOIR:  No tax returns.
25          THE COURT:  Well give them a statement to that and

1    I'll call the IRS.
2             MR. SHAFFER:  Your Honor, the second issue in my
3    letter was plaintiff's untimely disclosure of 17 additional
4    witnesses.
5             THE COURT:  Oh, yes.  That's a different issue.  Have
6    we cleaned up the compels?
7             MR. SHAFFER:  Yes, your Honor.
8             THE COURT:  Now, the 17 witnesses.  There's 17 names
9    but let me ask the plaintiff.  You're only serious about 12; is
10   that right?
11            MR. LENOIR:  I believe so.
12            This list of 17 --
13            THE COURT:  I know the history.
14            MR. LENOIR:  Is from a phase 2.
15            THE COURT:  Yes.  Yes.  I know the history.
16            You can have them.  You can designate them.  I
17   recognize that that may screw everything up in terms of your
18   schedule because these are presumably fact witnesses and I'm
19   sorry about that.  But I think under all the circumstances of
20   this case it's better not to have anything that might be out
21   there that could be useful that we don't have.
22            So, you get them.  Obviously, the defense has a right
23   to depose them.  That means -- I don't think this affects the
24   expert reports in any way.  Does anybody think that I'm wrong
25   in that?

1      MR. LENOIR:  No, your Honor.

2      MR. SHAFFER:  No, your Honor.

3      THE COURT:  Okay.

4      MR. SHAFFER:  Your Honor, it would certainly affect
5 the time we would need to depose these 12 additional people and
6 the time for filing of motions.

7      THE COURT:  Yes.  Yes.  Sure.  Of course.

8      Well what makes sense to you -- well, look.  Every
9 time I look down at that array of defendants' eminent counsel,
10 I shudder.  It's just -- I hate to think of what lies ahead.

11      Would this make sense?  Probably not.  Would this make
12 sense?  Would you all like to go in the jury room and see if
13 you can work out a schedule that you all agree on?  Would that
14 make sense or do you think we should do it right now?

15      Maybe right now.  Maybe right now.  How long do you
16 think?

17      MR. SHAFFER:  Your Honor, with 12 people it's not
18 clear what their availability would even be.  I'm not sure even
19 if we agreed amongst ourselves we could make it work.

20      THE COURT:  Suppose we extended the fact discovery for
21 a month-and-a-half.  That should do it.

22      MR. SHAFFER:  Your Honor, I would say we would need at
23 least two or three months.

24      THE COURT:  Come on.  Twelve witnesses.

25      MR. SHAFFER:  We have other depositions that are

1    already scheduled, depositions that --

2             THE COURT:  Wait a minute.  Everything is closed
3    except for --

4             MS. METTHAM:  The expert depositions.

5             THE COURT:  Sure.  Well, I know.  But that doesn't
6    affect this.

7             MS. METTHAM:  The only issue, your Honor, is that
8    with, as you mentioned, there are quite a few number of counsel
9    so when we've been scheduling --

10            THE COURT:  That's what --

11            MS. METTHAM:  That's the issue with having 12
12   depositions within a month is that it's very difficult to get
13   all counsel available on the same date.

14            THE COURT:  That's precisely what I was referring to.
15   These people are so important and so busy that we -- to get all
16   of them to find a date will take us until probably July 1.  But
17   you don't have July 1.

18            Let's say we'll -- Thanksgiving.  There we go.
19   Thanksgiving.  Factual discovery extended to Thanksgiving.
20   Now, obviously, if there's good cause that's something else.

21            MR. SHAFFER:  Your Honor.

22            THE COURT:  Yes.

23            MR. SHAFFER:  If I may ask that the discovery deadline
24   is extended for the sole purpose of defendants conducting these
25   depositions of the 12 people?

Ea19schc

1       THE COURT:  Yes.
2       MR. SHAFFER:  Not for plaintiff to identify or
3  disclose or request any more information because my concern is
4  that if the court extends the deadline plaintiff will ask for
5  more information.
6       THE COURT:  Yes.  As I understand, this was an
7  application -- well we know the history.  So it's these 12
8  witnesses.  That's it.
9       MR. SHAFFER:  Thank you, your Honor.
10      THE COURT:  Barring some great revelation which is
11 unanticipated.
12      So, that means if you want to make motions and so
13 on -- sort of sounds like mid January, doesn't it?
14      MS. METTHAM:  Yes, your Honor.  I think that would be
15 fair.
16      THE COURT:  I would think so.
17      MR. LENOIR:  Your Honor, plaintiff would request that
18 however we schedule this that we do it in context of a firm
19 trial date.  We would like to get a fixed date for trial.
20      THE COURT:  I'm sneaking up on that.  I'm trying to
21 sneak up on that.
22      MR. KRETZ:  Your Honor, we had in the previous
23 scheduling orders a provision that indicated trial would be
24 scheduled two weeks after decision on dispositive motions, if
25 that helps the Court.

1          THE COURT:  Well to some degree it does.
2          So why don't we have dispositive motions and all that
3   stuff January -- returnable January 15 -- wait a minute.
4          MR. SHAFFER:  Your Honor, would that be when
5   defendants' motions were due or is --
6          THE COURT:  Returnable.
7          Let's make it the 21st of January -- returnable on
8   the 21st.  And then I will have to deal with those and then
9   we will set a trial date.  For counsel's planning purposes, I'm
10  thinking it's probably going to be, because of a couple of
11  criminal cases and other intervening events, we're probably --
12  let's say April 6.  And that way we'll bag all of you for that
13  date.  Okay.
14         Anything else today?
15         MR. RADOMISLI:  Yes, your Honor.
16         The deposition of -- the first session of the
17  deposition of one of plaintiff's experts is gone.  But your
18  Honor had previously ordered them to supplement their expert
19  disclosure by providing the cases in which this expert has
20  testified over the last four years.  That still has not been
21  done.  And we would like that before we are going to continue
22  the deposition of the expert which also still has not yet been
23  scheduled.  So if your Honor could set outside dates for that,
24  I'd appreciate it.
25         THE COURT:  What do you suggest?

1    MR. LENOIR: Judge, the expert has a list of cases in
2 state courts here and there. And they are child custody
3 matters. We've been trying every way to get case citations.
4 We've listed the case In Re: So and so. But we simply
5 cannot -- we've done West searches, LexisNexis.
6    THE COURT: Forgive me. But you've given them a list
7 of the cases and the courts?
8    MR. LENOIR: We've given them a list of the cases.
9 And the expert doesn't even know exactly which court. These
10 are country courts. These are custody issues. It's a mess.
11    So we're working on -- it's not like we're
12 stonewalling but we just simply -- it's difficult to get the
13 information.
14    THE COURT: Okay.
15    MR. LENOIR: I must say that in the deposition already
16 counsel has dug up things that we had no idea, just things
17 that -- anywhere the expert's name has come up in anything. So
18 it's not like he's without resources.
19    THE COURT: You can't --
20    MR. RADOMISLI: But I could have so much more.
21    THE COURT: Give them whatever the expert can recall.
22 If he can't recall anything, that's that.
23    Anything else?
24    Thank you all.
25    (Adjourned)