LAW OFFICE OF
NATHANIEL B. SMITH
ATTORNEY AT LAW
111 BROADWAY
NEW YORK, NEW YORK 10006

NATHANIEL B. SMITH

TEL: (212) 227-7062
FAX: (212) 346-4665

RECEIVED
OCT 08 2014
JUDGE SWEET CHAMBERS

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/3/14

October 7, 2014

*Treat as motion returnable 10/22*

Honorable Robert R. Sweet
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 1007

*Schoolcraft v. The City of New York, et al.,*
*10-cv-6005 (RWS)(DCF)*

Dear Judge Sweet:

On behalf of the plaintiff, I am writing to the Court to request a conference on three outstanding discovery issues that have not been adequately addressed by the City Defendants in accordance with the Court's August 29, 2014 Order (Dkt. # 268) and the Court's September 17, 2014 open-court Order. The issues related to the following matters: (1) the City Defendants' failure to provide expert disclosures; (2) the inadequacy of the CompStat notes recently produced; and (3) an appeal file and an early intervention filed that the City Defendants now claim does not exist.

These matter are addressed in turn below.

*1. The City Defendants' Expert Disclosures.*

Pursuant to the existing Scheduling Order, all defendants were required to provide expert reports by September 18, 2014.[1] Pursuant to the Scheduling Order,

---

[1] The governing Scheduling Order, dated June 18, 2014, provides that defendants' expert reports

LAW OFFICE OF
NATHANIEL B. SMITH

the plaintiff produced on August 11, 2014, expert reports by the plaintiff's police practices experts as well as expert reports by the plaintiff's emergency room and psychiatric experts. Since then, the parties have commenced discovery on plaintiff's experts.

On September 17, 2014, the parties appeared before the Court for a conference on the plaintiff's expert discovery and the scope of the City Defendants' requests for survey data from the plaintiff's police practices experts. During the course of the conference, the defendants requested that the Court extend the deadline for defendants' expert reports. I objected, noting that the expert reports were due the following day, September 18, 2014, and no proper grounds for any extension had been offered. The Court squarely denied the request for an extension and stated that in the event that a report needed to be supplemented that issue could be addressed at a later date but that the reports *had* to served in accordance with the existing schedule.

The City Defendants, however, have failed to comply with the Court's Scheduling Order, even in the face of a clear direction by the Court on September 17, 2014 to produce their reports, if any. All the other defendants, on the other hand, have provided their expert disclosures. Accordingly, the Court should enter an order precluding the City from submitting any expert evidence in this case.

The City Defendants cannot justify their failure to comply with the Court's Orders by claiming that the plaintiff has not provided documents related to the surveys. First, the Court *directed* the defendants to provide the required disclosure and stated that any need to supplement expert disclosures could be later addressed, if necessary. Second, as the recent appearances before the Court have made clear, the City Defendants already have had access to much of the survey data as well as the deposition of one of the plaintiff's experts (Dr. Eli Silverman) in the stop and frisk action, *Floyd v. City of New York,* 08-cv-1034 (SAS). Indeed, the City Defendants have also taken the position that the survey data should not be treated as confidential because it is publically available. Under these circumstances, therefore, the fact that document discovery on plaintiff's experts is not completed is no excuse for ignoring the Court's Orders, particularly because the City

---

were due September 11, 2014. (Dkt. # 262 at p. 2 ¶ 5.) All the relevant dates, however, were adjourned one week on consent pursuant to the Court's endorsed order, dated July 30, 2014 (Dkt. # 265).

LAW OFFICE OF
NATHANIEL B. SMITH

Defendants already have information in which to submit expert discloses and the Court indicated that supplementation could be an available remedy in the event that new and relevant information became available.

Accordingly, pursuant to the Court's Scheduling Order, the September 17, 2014 Order, and Rule 37 (b)(2) of the Federal Rules of Civil Procedure, the Court should enter an order precluding the City Defendants from offering at trial or in connection with any motion or hearing any type expert testimony in this action.

   *2. The CompStat Notes and Videos.*

For the past seven months the plaintiff has been seeking the production of CompStat-related documents and videos, and the City Defendants have resisted the plaintiff's efforts at every turn, notwithstanding several Orders by the Court for the production of documents. This is the background.

On February 7, 2014, the plaintiff served document demands for CompStat-related documents, including video and audio recordings, reflecting presentations or appearances by any of the individual defendants, including Defendants Marino, Mauriello, and Lauterborn.[2] After delays by the City Defendants, on May 28, 2014, the Court ordered the City Defendants to produce any CompStat meeting documents relating to the 81st Precinct. (Tr. 5-28-14 at pp. 22-23; Exh. A). Six weeks later, on July 3, 2014, the City Defendants responded to that Order by informing the plaintiff cryptically by letter that "City Defendants have not been able to locate . . . [a]ny CompStat/TrafficStat documents specific to the 81st

---

[2] Plaintiff's Supplemental Document Demands No. 11- 14 requested the following: 11. Copies of all videos and audio recordings, and all documents related thereto, for all presentations by Steven Mauriello to CompStat or TrafficStat or to Patrol Borough Brooklyn North while he was the Executive Officer or the Commanding Officer of the 81st Precinct. 12. Copies of all videos and audio recordings, and all documents related thereto, for all presentations by Theodore Lauterborn to CompStat and/or TrafficStat or Patrol Borough Brooklyn North while he was the Executive Officer of the 81st Precinct. 13. Copies of all videos and audio recordings, and all documents related thereto, for all presentations by Michael Marino to CompStat and/or TrafficStat or Patrol Borough Brooklyn North while he was an Assistant Chief at the NYPD. 14. Copies of all videos and audio recordings, and all documents related thereto, for all presentations by any other defendant to CompStat and/or TrafficStat or Patrol Borough Brooklyn North while said defendants was a member of the NYPD.

Law Office of
Nathaniel B. Smith

Precinct." (Exh. B.)

After the City Defendants were unwilling to provide any explanation for this cryptic response, the plaintiff requested by letter to the Court on July 23, 2014 that the City Defendants provide documents or an explanation for how no such documents existed, given that the Compstat, TrafficStat, and the related Brooklyn North meetings are conducted on a regular basis, are videotaped, and several witnesses and defendants testified that they regularly made presentations at these meetings.

A week later the City Defendants produced notes from three CompStat meetings held on May 31, 2007; March 20, 2008; and February 18, 2010. Since our understanding is that CompStat meetings were held on a regular basis throughout the year and since the City Defendants had produced notes for only three meetings covering a four-year period (2007 through 2010), the plaintiff was required (again) by letter-motion to press for an explanation or documents. As a result, on August 29, 2014, the Court directed the City Defendants to produce CompStat, TrafficStat and comparable documents relating to Patrol Borough Brooklyn North in which defendant Deputy Inspector Steven Mauriello ("Mauriello"), defendant Deputy Chief Michael Marino ("Marino") and defendant Captain Theodore Lauterborn's ("Lauterborn") participated or had knowledge concerning." (Order, dated 8-29-14 at p. 4-5; Dkt. # 268.) In response to that Order, on September 12, 2014, the City Defendants produced additional CompStat meeting notes or summaries. (City Defendants' 9-12-14 letter at p. 2; Exh. C.)

Based on these two CompStat productions, the plaintiff now has, on an attorney's-eyes-only basis, types up notes or minutes from twenty Compstat meetings from the period from May 31, 2007 through October 8, 2009 and twelve TrafficStat meetings for the period from January 31, 2007 through December 1, 2010. After reviewing these documents, I am renewing our request for the production of the videos of these meetings because the notes are not very clear and are not the best available evidence of the matters at hand.

The notes and the summaries are in a short hand that is difficult to understand. In addition, the notes or summaries are not by any means close to a transcript of what transpired. For example, many of the discussions refer to images or documents shown during the meeting and the notes or summaries do not provide this context, and as a result the notes or summaries are confusing or make little

LAW OFFICE OF
NATHANIEL B. SMITH

sense. Under these circumstances, the videos should be produced because the videos will assist in clarifying the matters discussed at the meetings. Indeed, the videos are the best evidence of the content of these meetings and what was actually said whereas the notes or summaries are a statement of what the document preparer states was said at the meeting.

Notably, the Court in the action entitled *Stinson v. City of New York*, 10-cv-4228 (RWS) followed this same course of action by requiring the City of New York to produce videos identified from a specific set of meeting notes. *See Stinson v. City of New York*, 2014 U.S. Dist. Lexis 40255 (S.D.N.Y. Mar. 24, 2014.) Accordingly, the plaintiff requests that the City Defendants produce the videos for the twenty Compstat meetings and twelve TrafficStat meetings previously identified.

### 3. *The Appeal File and the Early Intervention File*.

On August 29, 2014, the Court ordered the City Defendants to produce two files relating to the plaintiff's employment at the NYPD. First, the Court ordered the City Defendants to produce the file related to the plaintiff's appeal of his failing 2008 evaluation. (Order; Dkt. # 268; at p. 4.) Second, the Court ordered the City Defendants to produce the Early Intervention Unit file. (*Id.*)

In response, the City Defendants informed the plaintiff by letter dated September 12, 2014 that these files do not exist. (Ryan Shaffer Letter, 9-12-14 at p. 2; Exh C hereto) (no responsive documents exist). Since the City Defendants now claim that those files do not exist, the plaintiff requests that the City Defendants provide an affidavit by a witness with knowledge attesting to a diligent and complete search for any responsive documents and a statement under oath to the effect that the documents could not be located.

I submit that this is a reasonable request. Several of the named defendants, including Deputy Chief Marino and Deputy Inspector Maureillo, testified at their depositions that documentation about the plaintiff's appeal of his 2008 evaluation was forwarded to and maintained by a Sergeant Devino who worked under Defendant Marino at Patrol Borough Brooklyn North. Indeed, on July 3, 2014, the City Defendants previously (and inconsistently) represented to the plaintiff that "there are no *further* documents regarding plaintiff's 'appeal file' than what have already been produced in this matter." (Mettham Letter 7-3-14 at p. 1; Exh. B hereto; emphasis added).

6

LAW OFFICE OF
NATHANIEL B. SMITH

    Similarly, Defendant Weiss, who was a supervisor at the 81st Precinct, testified at his deposition that in 2008 he conducted an Internet search on Officer Schoolcraft, discussed Office Schoolcraft with an officer at the NYPD's Early Intervention Unit, and forwarded documents about Officer Schoolcraft to the Early Intervention Unit at NYPD Headquarters, including the results of his Internet search. (Weiss Tr. at 99:14-109:3; Exh. D hereto). The Early Intervention Unit is designed to work with police officers who are experiencing significant emotional stress while on or off the job. (*See* NYPD Adm. Guide 320-322; Exh. E hereto.)

    According to Defendant Weiss, about a week after he contacted the Early Intervention Unit, the NYPD removed Office Schoolcraft's badge and gun. (*Id.* at 101:12-102:10.) Thus, the fact that an 81st Precinct supervisor created and forwarded a file about Officer Schoolcraft's alleged psychological issues to the Early Intervention Unit -- which was done without Officer Schoolcraft's knowledge or consent -- is highly probative of a design to retaliate against Officer Schoolcraft, particularly when these events occurred after Office Schoolcraft started raising questions about the quota system in his appeal of his failing evaluation. Indeed, under established NYPD procedures, there should be *extensive* documentation regarding this referral to the Early Intervention Unit. (Exh. D hereto.)

    Under these circumstances, the plaintiff requests that the City Defendants produce affidavits from individuals with knowledge who will attest to the maintenance of these two files; that a diligent search has been conducted; and that no such records have been located. These affidavits should also be required to provide the City Defendants' explanation, if any, for why these files no longer exist.

                                             Respectfully submitted,

                                             Nathaniel B. Smith

By Hand
cc:
All Counsel
(by email)