LAW OFFICE OF
NATHANIEL B. SMITH

ATTORNEY AT LAW
111 BROADWAY
NEW YORK, NEW YORK 10006

NATHANIEL B. SMITH

TEL: (212) 227-7062
FAX: (212) 346-4665

RECEIVED OCT 20 2014 JUDGE SWEET CHAMBERS

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/3/14

October 16, 2014

Honorable Robert R. Sweet
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 1007

        Schoolcraft v. The City of New York, et al.,
        10-cv-6005 (RWS)(DCF)

Dear Judge Sweet:

    As one of the plaintiff's counsel in this action, I am writing to the Court to respond to the letter submitted by the City Defendants, dated October 14, 2014, and the letter submitted by Brian Lee, Esq., dated October 14, 2014. In addition, I write the Court to seek clarification on an issue about the plaintiff's obligation to designate witnesses for trial in this action. I address each of these matters below in turn.

    1. *The City Defendant's Opposition Letter*

    In the City Defendant's October 14, 2014 letter, they submit their opposition to the plaintiff's October 7, 2014 letter-motion, which relates to three outstanding discovery issues: (a) the City Defendants' failure to designate a expert or serve a report; (b) the CompStat videos; and (c) the Appeal and Early Intervention Files.

    a. *The City Defendant's Expert Disclosure*

    As set forth in our October 7th letter, the Court's Scheduling Order and

Law Office of
Nathaniel B. Smith

the Court's September 17, 2014 Order, required all the defendants to make expert disclosure on September 18, 2014. The City Defendants failed to do so and as a result, the plaintiff requests that the Court preclude the City Defendants from offering any expert evidence in this case.

In opposition, the City Defendants admit that there was a deadline and admit that they failed to comply with it. As an excuse, however, the City Defendants seek to blame the plaintiff by claiming that the plaintiff's alleged "delays" in producing documents from the plaintiff's police practices experts, Professors Eterno and Silverman, justify their failure to comply with the September 18, 2014 deadline. The argument should be rejected for basic two reasons.

First, plaintiff was ordered on September 17, 2014 to produce the 2008 and 2012 survey data mentioned in the report and the deadline for the City Defendants expert disclosure was September 18, 2014. Thus, the fact that documents were produced after September 18, 2014 cannot be an excuse for failing to comply with the September 18th deadline. Indeed, at the September 17, 2014 conference, I raised this exact issue, and the Court flatly rejected the defendants' joint request for an extension of the deadline and directed that expert disclosures be made pursuant to the schedule. (*See* Exh. A: Sept. 17, 2014 Transcript at pp. 24-27.)

In any event, the plaintiff's expert report was not limited to the survey issue. The plaintiff's police practice report discussed several other issues, including the nature of CompStat and how CompStat became a numbers-driven management culture; the Blue Wall of Silence; and various ways in which the NYPD substantially departed from established police procedures in the way they responded to and documented incidents and interactions with Officer Schoolcraft. No report by the City Defendants on these issues was served. Thus, the production of the survey data, which has nothing to these other issues, cannot be a basis for failing to comply with the deadline. Indeed, the defendants completed their examination of Professor Eterno today and not one of the defendants asked him any questions about the underlying survey data that was produced. Accordingly, the City Defendants simply have no good excuse for failing to provide any expert report.

LAW OFFICE OF
NATHANIEL B. SMITH

    b. *The CompStat Videos*

The City Defendants oppose the plaintiff's request for the CompStat videos, suggesting that the videos are not relevant and that the ambiguous nature of the notes of the meeting is not a sufficient justification for the production of the videos. This position should be rejected for two reasons.

First, the CompStat videos are directly relevant to the pressure being created by the top brass at the NYPD to generate fixed goals for specific numbers of stops, arrests and summons. Indeed, the videos, which capture precisely what the top brass told precinct and borough commanders, are the best evidence of that fact. Thus, the relevancy objection is meritless.

Second, as noted in our October 7th letter, the notes and summaries are vague, short-hand versions of what occurred in these meetings. They are not remotely close to comprehensive minutes and thus are not the best available evidence. The videos are. Accordingly, the requested videos should be produced because the videos are relevant and the notes are not as probative of the matter to be proven.

    c. *The Appeal File and the Early Intervention File*

The City Defendants' object to providing an affidavit by a person with knowledge about the fact that Officer Schoolcraft's Appeal file and the Early Intervention file no longer exist. An affidavit should be required to show that after diligent search, the documents could not be located. A letter from a Law Department attorney is insufficient as a matter of evidence and as a matter of fact because the attorney did not personally conduct the search and otherwise lacks the required personal knowledge. Indeed, reliance merely on a cryptic response by counsel raises issues about the witness-advocated rule whereas an affidavit from a witness with knowledge confirms the facts directly and avoids this proof issue at trial.

An affidavit should also be required because that is precisely what the City Defendants requested, and the Court ordered, in connection with the City Defendants' request for supplemental information about the plaintiff's mitigation of his damages. As the Court may recall, last month at the request of the City Defendants, the Court directed Officer Schoolcraft to provide an affidavit about his earnings and job search effort since his deposition. Indeed, in that case, a letter

LAW OFFICE OF
NATHANIEL B. SMITH

from plaintiff's counsel stating that the plaintiff had no responsive documents was held to be insufficient. Accordingly, it is entirely appropriate that the City Defendants provide an affidavit about the NYPD's diligent efforts to search for the Appeal file and the Early Intervention file.

### 2. *The Disposition Motion Schedule*

In Mr. Lee's October 14th letter, the defendants jointly request that the Court entered a scheduling order for dispositive motion that gives the plaintiff only 21 days -- from December 23, 2014 to January 14, 2015 -- in which to oppose summary judgment motions. The defendants have steadfastly refused to consent to a schedule that would provide for 30 days in which to oppose summary judgment motions. Indeed, in their letter the defendant do not offer any reason to justify a short opposition period. Nor do they provide any reason for departing from the standard practice of giving a party *at least* 30 days in which to oppose a summary judgment motion.

A 30-day period is the bare minimum for opposition in this case. Based on my discussions with defense counsel I expect that *five* motions for summary judgment will be filed by the five groups of separately-represented defendants: (1) the City Defendants; (2) Defendant Mauriello; (3) Jamaica Hospital; (4) Dr. Isakov; and (5) Dr. Bernier. The discovery record in this case is massive with over 12,000 pages of documents produced and at least 32 depositions of fact witnesses and experts. Indeed, the Court recently granted the defendants permission to *double* the size of the page limit on their summary judgment briefs precisely because of the complexity of the case and the claims at issue. Twenty-one days is simply not enough time in which to respond to five full-blown summary judgment motions (*i.e.*, 4.2 days per motion) and the defendants simply fail to point to any legitimate reason for this request.

### 3. *The Witnesses For Trial*

At the last conference before the Court the Court gave the City Defendants the opportunity to take the deposition of 12 police officers who had made claims of retaliation in the past. These officers were listed in the plaintiff's supplemental disclosures along with the identification of three other persons who may have knowledge about retaliation. Beyond those 15 there are other individuals are also potential witnesses who may be called at trial; indeed, as expert discovery continues, we believe that more individuals may be identified. For example, a

LAW OFFICE OF
NATHANIEL B. SMITH

      Sergeant Robert Borrelli was identified in our August 11, 2014 police practices expert report as another victim of retaliation and we learned more about the nature of that individual's experiences based on questions posed today at the expert's deposition. Thus, the plaintiff continues to learn about information that may be relevant at trial and we respectfully submit that the plaintiff has the right (and the obligation) to continue to identify potential witnesses and that during the pre-trial order process the parties then identify witnesses for trial. In short, our trial preparation continues. Under these circumstances, I write to raise a concern I have with the way the City Defendants are interpreting the Court's rulings about witness identification. See City Defendants' October 14, 2014 letter at p. 2 ("plaintiff himself recently identified a dozen new witnesses months after the close of fact discovery and nearly eight months after previously being ordered to do so.")

      Pursuant to Rule 26(a)(3), a party must -- thirty days before trial -- disclose witnesses for trial and those witnesses may present at trial if the need arises. Here, we have been conducting extensive discovery in this complex case for over a year and we continue to prepare for trial and, as such, have not yet determined who on behalf of the plaintiff will be needed for trial. Yet the City Defendants appear to be taking the position that the plaintiff must now designate his *trial* witnesses, even before discovery is completed, before summary judgment motions have been filed, and before the pre-trial order process has yet to begin.

      In order to avoid confusion, I am requesting that the Court addresses this issue at a conference, and if necessary establish a fixed time by which *all* parties must list their witnesses for trial. I note in this regard the defendants have not provided the plaintiff with a list of their trial witnesses; they have only identified individuals who may have some knowledge about some respect of this complex action.

Respectfully submitted,

Nathaniel B. Smith

By Fax (212) 805-7925
cc: All Counsel
(by email)