**EXHIBIT 4**



THE CITY OF NEW YORK
## LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NEW YORK 10007

ZACHARY W. CARTER
*Corporation Counsel*

SUZANNA PUBLICKER METTHAM
*Assistant Corporation Counsel*
E-mail: smettham@law.nyc.gov
Phone: (212) 356-2372
Fax: (212) 788-9776

July 30, 2014

**BY HAND DELIVERY & E-MAIL**
Nathaniel Smith
*Attorney for Plaintiff*
111 Broadway, Suite 1305
New York, New York 10006

Re: Schoolcraft v. The City of New York, et al.
    10 CV 6005 (RWS)

Counsel:

I write today to request that you withdraw with prejudice certain of plaintiff's claims to avoid needless motion practice on these matters as plaintiff does not have a good-faith basis to maintain these causes of action or to maintain certain individuals as defendants in this matter.

First, City Defendants request that you withdraw Sondra Wilson, Richard Wall, Robert O'Hare, Timothy Trainor, Thomas Hanley, Gerald Nelson, and Timothy Caughey as defendants as plaintiff has not provided any discovery implicating these individuals in any of plaintiff's causes of action. Second, City Defendants further request that plaintiff withdraw claims of excessive force against Theodore Lauterborn and Elise Hanlon, and claims of unlawful search and seizure against Frederick Sawyer, Kurt Duncan, and Shantel James.

Finally, City Defendants request that plaintiff withdraw his federal claims for (a) generic deprivation of rights under 42 U.S.C. § 1983, (b) violation of First Amendment rights, (c) malicious abuse of process, (d) conspiracy to violation plaintiff's civil rights, (e) municipal liability under 42 U.S.C. § 1983, and his state law claims of (f) intentional infliction of emotional distress, (g) negligent hiring/training/supervision/retention, and (h) negligence in failing to keep IAB complaints confidential as plaintiff does not have a good-faith basis to maintain these causes of action despite the extensive discovery conducted in this case.

1. **Violation of First Amendment Rights - Sondra Wilson, Richard Wall, Robert O'Hare, Thomas Hanley, Timothy Trainor**

Plaintiff's only cause of action against defendants Sondra Wilson, Richard Wall, Robert O'Hare, Timothy Trainor, and Thomas Hanley is based on plaintiff's First Amendment retaliation claims. Amended Compl. at ¶¶ 215-220, 261-277.

In order to prevail on a First Amendment retaliation claim brought by a private citizen against a public official, the plaintiff must prove: (1) he has an interest protected by the First

Amendment; (2) Defendants' actions were motivated or substantially caused by the exercise of that right; and (3) Defendants' actions effectively chilled the exercise of that right. See Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (dismissing First Amendment claim based on allegedly retaliatory arrest).

As to the first point, under the Supreme Court's holding in Garcetti v. Ceballos, 547 U.S. 410 (2006), and that holding's Second Circuit progeny, plaintiff cannot maintain a First Amendment claim. Under Garcetti, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421. In the instant matter the Plaintiff spoke not as a citizen but as an employee and thus his alleged speech was not protected.

As to the second element, specific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim. Blue v. Koren, 72 F.3d 1075, 1082-83 (2d Cir. 1995). Plaintiff has failed to adduce any evidence whatsoever that defendants Wilson, Wall, O'Hare, Trainor, or Hanley had any motivation to impair plaintiff's exercise of his First Amendment rights.

Regarding the third point, plaintiff cannot demonstrate that the defendants' actions effectively chilled the exercise of plaintiff's First Amendment rights, even assuming plaintiff had a First Amendment right to speech.

City Defendants therefore request that you withdraw the First Amendment Retaliation claims. Because plaintiff's First Amendment retaliation claims will fail, and plaintiff has not alleged personal involvement on the part of Sondra Wilson, Richard Wall, Robert O'Hare, Timothy Trainor, Thomas Hanley, Gerald Nelson, and Timothy Caughey with regard to any other of plaintiff's claims, all claims against these individuals should be dismissed with prejudice.

### 2. Gerald Nelson

Plaintiff's only claims against Gerald Nelson are that "[a]t all relevant times on October 31, 2009, defendant CHIEF GERALD NELSON was aware of defendant MARINO's actions and in fact, expressly authorized defendant MARINO to unlawfully enter plaintiff's residence, remove plaintiff against his will, and involuntarily confine plaintiff in a psychiatric ward" Amended Compl. at ¶163. However, plaintiff did not present any evidence in discovery that Gerald Nelson in fact was aware of, or authorized, Chief Marino's actions on October 31, 2009. See 10/11/12 Dep at 179:8-180:16. Further, to the extent defendant Nelson was told information from other officers on the scene and reacted in response to that information, he is shielded from liability for reasonably relying upon information from his fellow officer. See Anthony v. City of New York, 339 F.3d 129, 138 (2d Cir. 2003). Nelson is shielded by qualified immunity even if other officers were mistaken or dishonest, provided that he reasonably relied on their statements. See Golphin v. City of New York, 09 CV 1015 (BSJ), 2011 U.S. Dist. LEXIS 106272, at *5-6 (S.D.N.Y. Sept. 19, 2011). Because plaintiff has no evidence regarding personal involvement of defendant Nelson, he should be dismissed as a party to this action.

### 3. Timothy Caughey

It is unclear what, if any, causes of action are being asserted against Timothy Caughey based on plaintiff's Amended Complaint. However, based on the discovery in this matter, it is

clear that Lt. Caughey had no personal involvement in any of plaintiff's claimed causes of action.

### 4. Excessive Force Against Theodore Lauterborn and Elise Hanlon

It is well established that Section 1983 imposes liability only upon a defendant who personally subjects, or causes to be subjected any person to the deprivation of any federal right. Accordingly, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (citation omitted); Doyle v. Coombe, No. 97-2680, 1998 U.S. App. LEXIS 20261, at *3 (2d Cir. June 12, 1998); Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997). Personal involvement of a defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

Plaintiff has not alleged that Theodore Lauterborn or Elise Hanlon had any personal involvement with regard to plaintiff's claims of excessive force and assault and battery, Amended Compl. at ¶¶ 167-169, 181-183, and no record evidence been discovered which suggests otherwise. Therefore, any claims against these individuals for § 1983 excessive force and state law assault and battery should be dismissed with prejudice.[1]

### 5. Unlawful Search & Seizure Against Frederick Sawyer and Shantel James

As discussed above, Section 1983 imposes liability only upon a defendant who personally subjects, or causes to be subjected any person to the deprivation of any federal right. Plaintiff has not alleged that Frederick Sawyer, and Shantel James had any personal involvement with regard to plaintiff's claims of unlawful search and seizure. Amended Compl. at ¶¶ 167-174. Therefore, any claims against these individuals for § 1983 unlawful search and seizure should be dismissed.[2]

### 6. "Violation of Civil Rights Afforded by 42 U.S.C. § 1983"

There can be no claim for a purported "deprivation of federal rights under 42 U.S.C. § 1983," as that statute does not vest citizens with substantive rights, but rather provides a jurisdictional vehicle for the vindication of constitutional rights. See Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004); Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993);

---

[1] City Defendants note that plaintiff has similarly failed to allege any claims of excessive force against Sondra Wilson, Richard Wall, Robert O'Hare, Timothy Trainor, Thomas Hanley, Gerald Nelson, and Timothy Caughey. Therefore, to the extent plaintiff refuses to remove these individuals as defendants, any allegations against them for excessive force or assault and battery should nonetheless be dismissed with prejudice.

[2] City Defendants note that plaintiff has similarly failed to allege any claims of unlawful search and seizure against Sondra Wilson, Richard Wall, Robert O'Hare, Timothy Trainor, Thomas Hanley, Gerald Nelson, and Timothy Caughey. Therefore, to the extent plaintiff refuses to remove these individuals as defendants, any allegations against them for unlawful search and seizure should nonetheless be dismissed with prejudice.

3

*Sanchez v. Thompson*, No. 07 CV 0531 (JFB)(WDW), 2007 U.S. Dist. LEXIS 94085, at **8-9 (E.D.N.Y. Dec. 26, 2007). Therefore, plaintiff First Claim for Relief should be dismissed with prejudice. Amended Compl. at ¶¶ 255-260.

### 7. Malicious Abuse of Process

Abuse of process has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective. Curiano v. Suozzi, 63 N.Y.2d 113, 116 (N.Y. 1984)(quoting Board of Educ. v Farmingdale Classroom Teachers Assn., 38 N.Y.2d 397 (N.Y. 1975). Only criminal abuse of process is cognizable under Section 1983 because civil abuse of process does not amount to a deprivation of rights. See Green v. Mattingly, 585 F.3d 97, 104 (2d Cir. 2009) ("'section 1983 liability . . . may not be predicated on a claim of malicious abuse of' . . . civil process,") (quoting Cook v. Sheldon, 41 F.3d 73, 79-80 (2d Cir. 1994)). Here, plaintiff was not subject to any civil or criminal process by any City Defendants. The only process to which plaintiff was subjected was the Mental Health and Hygiene Law by the Jamaica Hospital Medical Center and its employees. Therefore, plaintiff cannot maintain a § 1983 claim for malicious abuse of process against City Defendants for a civil process.

### 8. Conspiracy to Violate Plaintiff's Civil Rights

In order to prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal, causing damages. Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).

The intra-corporate conspiracy doctrine generally bars liability when the alleged conspirators work for the same organization. Hoffman v. Nassau County Police Dep't, No. 06-CV-1947 (SJF) (AKT), 2008 U.S. Dist. LEXIS 35377, at *15 (E.D.N.Y. Apr. 30, 2008) (citing Girard v. 94th St. & Fifth Ave. Corp., 530 F.2d 66, 71 (2d Cir. 1976)); see also Danielak v. City of New York, No. 02-CV-2349 (KAM), 2005 U.S. Dist. LEXIS 40901, at *43-44 (E.D.N.Y. Sept. 26, 2005) ("[T]he intra-corporate conspiracy doctrine bars plaintiff's conspiracy claims because all of the individual defendants were employees of the New York City Police Department, and were acting within the scope of their employment as police officers when they arrested plaintiff."). Therefore, to the extent that plaintiff alleges a conspiracy between members of the NYPD, such a claim must fail.

To the extent plaintiff alleges a conspiracy between members of the NYPD and the FDNY, and/or members of the NYPD and employees of the Jamaica Hospital Medical Center, plaintiff's conspiracy claim nonetheless fails. Plaintiff has not produced in discovery any evidence, aside from conclusory and self-serving statements of plaintiff himself, that there was any agreement between any defendants to act in concert to inflict an unconstitutional injury. For these reasons, plaintiff must dismiss his Conspiracy claims with prejudice.

### 9. Municipal Liability Under 42 U.S.C. § 1983

According to Monell and its progeny, in order to hold a municipality liable as a "person" within the meaning of §1983, a plaintiff must demonstrate that a policy or custom of the City caused the deprivation of the injured plaintiff's federal or constitutional rights. Id. at 690-91; City of Canton v. Harris, 489 U.S. 378 (1989); Sarus v. Rotundo, 831 F.2d 397, 400 (2d Cir. 1987). An assertion that a municipality has such a policy without some allegations in support is

4

insufficient to establish <u>Monell</u> liability. A § 1983 plaintiff is required not only to allege specific facts regarding the existence of a policy or custom, but is also required to make a causal connection between that policy and the conduct towards him. <u>Perez v. City of N.Y.</u>, 2002 U.S. Dist. LEXIS 4297, at *5 (E.D.N.Y. 2002).

While the existence of a municipal policy may be inferred from a consistent pattern of informal acts or omissions by policy makers, a single isolated instance of unconstitutional conduct by a lower level municipal employee is not sufficient to base a finding of municipal policy or, therefore, liability. <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808, 824 (1985); <u>Cabble v. City of New York</u>, 2009 U.S. Dist. LEXIS 26478 (S.D.N.Y. 2009) <u>citing Ricciuti v. N.Y.C. Transit</u>, 941 F.2d 119, 123 (2d Circ. 1991); <u>Carnesi v. City of N.Y.</u>, 2001 U.S. Dist. LEXIS 14561, at *14-15 (S.D.N.Y. 2001) (dismissing claim against City where plaintiff solely made allegations that abuse was "common and well-known," which were insufficient to infer municipal policy or custom); <u>Brodeur v. City of N.Y.</u>, 2002 U.S. Dist. LEXIS 4500, at *7 (S.D.N.Y.2002) (court dismissed complaint against City where complaint "flatly asserts a policy but contains no factual allegations sufficient to establish a municipal policy or custom"); <u>George v. Burton</u>, 2001 U.S. Dist. LEXIS 24, at *5-6 (S.D.N.Y. 2001) (court dismissed complaint with prejudice where plaintiff "failed to proffer any facts in his complaint from which we can infer such a pattern or practice"). Rather, it is "only where the municipality itself causes the Constitutional violation at issue" that it can be found liable under 42 USC § 1983 for deprivation of constitutional rights. <u>Jackson v. Police Department of the City of New York</u>, 192 A.D.2d 641 (2d Dep't 1993); <u>see also Monell</u>, 436 U.S. 658. Each of plaintiff's bases for municipal liability based on <u>Monell</u> fail as a matter of law:

i. *Creating a quotas system for NYPD subordinate officers requiring the officers to issue a certain number of summonses per month and year regardless of probable cause;*

Plaintiff has utterly failed to present a single piece of evidence indicating that there was a quota system requiring officers to issue a certain number of summonses per month and year regardless of probable cause. Nor has plaintiff presented evidence that any such policy, to the extent one existed, was more than a single isolated instance of unconstitutional conduct by a lower level municipal employee, or that any such alleged policy caused the claimed injuries to plaintiff.

ii. *Creating a policy of awarding incentives to officers who meet or exceed the required number of summonses to be issued according to NYPD's quota;*

Even if plaintiff were able to demonstrate that there was a quota system in the NYPD, plaintiff has failed to present any evidence of a policy of awarding incentives to officers who meet or exceed the required number of summonses to be issued according to the claimed quota. Nor has plaintiff presented evidence that any such policy, to the extent one existed, was more than a single isolated instance of unconstitutional conduct by a lower level municipal employee, or that any such alleged policy caused the claimed injuries to plaintiff.

iii. *Creating a policy of punishing officers who fail to meet the required number of summonses established by NYPD's quota;*

Even if plaintiff were able to demonstrate that there was a quota system in the NYPD, plaintiff has failed to present any evidence of a policy of punishing officers who fail to meet the required number of summonses to be issued according to the claimed quota. Nor has plaintiff

presented evidence that any such policy, to the extent one existed, was more than a single isolated instance of unconstitutional conduct by a lower level municipal employee, or that any such alleged policy caused the claimed injuries to plaintiff.

    *iv.*   *Intimidating and threatening police officers with retaliation when said police officers challenge unlawful NYPD quota policies;*

Plaintiff has failed to present any evidence of a single other instance of police officers intimidating and threatening other officers with retaliation when said police officers challenge unlawful NYPD quota policies. Nor has plaintiff presented evidence that any such policy was more than a single isolated instance of unconstitutional conduct by a lower level municipal employee, or that any such alleged policy caused the claimed injuries to plaintiff.

    *v.*   *Intimidating and threatening police officers with retaliation when said police officers attempt to disclose instances of NYPD corruption and police misconduct, fraud and breaches of the public trust;*

Plaintiff has failed to present any evidence of a single other instance of police officers intimidating and threatening other officers with retaliation when said police officers attempt to disclose instances of NYPD corruption and police misconduct, fraud, and breaches of the public trust. Nor has plaintiff presented evidence that any such policy was more than a single isolated instance of unconstitutional conduct by a lower level municipal employee, or that any such alleged policy caused the claimed injuries to plaintiff.

    *vi.*   *Retaliating against police officers with suspensions and disciplinary hearings who disclose or attempt to disclose NYPD corruption and police misconduct;*

Plaintiff has failed to present any evidence of a single other instance of police officers retaliating against other police officers by suspending and disciplining officers who disclose or attempt to disclose NYPD corruption and police misconduct. Nor has plaintiff presented evidence that any such policy was more than a single isolated instance of unconstitutional conduct by a lower level municipal employee, or that any such alleged policy caused the claimed injuries to plaintiff.

    *vii.*   *Displaying a deliberate indifference to disciplining supervisors, despite allegations of illegal and/or unconstitutional conduct;*

Plaintiff has failed to present evidence that the NYPD displayed deliberate indifference to disciplining supervisors. Nor has plaintiff presented evidence that any such policy was more than a single isolated instance of unconstitutional conduct by a lower level municipal employee, or that any such alleged policy caused the claimed injuries to plaintiff.

    *viii.*   *Intentionally "leaking" officers IAB complaints - which IAB is duty bound to keep confidential - for purposes of alerting NYPD personnel and other supervisory officers, whom are the subject of the complaints, in an ongoing effort to discourage future IAB complaints and/or silence those in existence.*

Plaintiff has utterly failed to present a any evidence indicating that there was a policy of intentionally 'leaking' IAB complaints to alert NYPD personnel and supervisory officers to discourage future IAB complaints and/or silence those in existence. Nor has plaintiff presented evidence that any such policy, to the extent one existed, was more than a single isolated instance

of unconstitutional conduct by a lower level municipal employee, or that any such alleged policy caused the claimed injuries to plaintiff.

### 10. Intentional Infliction of Emotional Distress

Plaintiff's cause of action for Intentional Infliction of Emotional Distress ("IIED") is a claim of last resort, meaning that if plaintiff can recover damages on any one of his other claims, then he cannot also recover damages for IIED. See Moore v. City of New York, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002)(quoting EEOC v. Die Fliedermaus L.L.C., 77 F. Supp. 2d 460, 472 (S.D.N.Y.1999)); Saldana v. Port Chester, 2010 U.S. Dist. LEXIS 142099 (S.D.N.Y. July 21, 2010)( IIED claims "must be dismissed against all the defendants where the underlying claims— excessive force, assault, and battery—fall within traditional tort liability.")(citing Dorn v. Maffei, 386 F. Supp. 2d 479, 486, n.5 (S.D.N.Y. 2005); Naccarato v. Scarselli, 124 F. Supp. 2d 36, 44-45 (N.D.N.Y. 2000)). "In other words, claims of intentional and negligent infliction of emotional distress cannot coexist with claims of excessive force, assault, and battery." Saldana, at *13 (citing Dorn, 386 F. Supp. 2d at 486, n.5; Naccarato, 124 F. Supp. 2d at 44-45); see also, Rasmussen v. City of New York, 766 F. Supp. 2d 399, 415 (E.D.N.Y. 2011)("an intentional infliction claim is a gap-filling cause of action meant to address those few areas of outrageous anti-social behavior not addressed under any other cause of action."). Because plaintiff can recover based upon claims of assault, battery, and/or excessive force, plaintiff cannot *also* maintain a claim for IIED.

### 11. Common Law Negligence Against Municipality

Plaintiff's claim for relief asserting the City of New York was negligent in its hiring, training, supervising and retention of its agents, servants and employees cannot stand. Amended Compl. at ¶¶ 365-385. It is well settled that such a claim cannot be sustained when the defendant acts within the scope of his employment. See e.g., Newton v. City of New York, 681 F. Supp. 2d 473, 488 (S.D.N.Y. 2010); Stokes v. City of New York, No. 05 CV 0007 (JFB) (MDG), 2007 U.S. Dist. LEXIS 32787, at *53-*54 (E.D.N.Y. May 3, 2007); Colodney v. Continuum Health Partners, Inc., No. 03 Civ. 7276 (DLC), 2004 U.S. Dist. LEXIS 6606, *27-*28 (S.D.N.Y. Apr. 15, 2004). Here, plaintiff *specifically* alleges that the City Defendants in this matter were acting within the scope of their employment. Amended Compl. at ¶¶ 11-12. This is legally inconsistent and improper. Therefore, plaintiff cannot in good faith maintain claims against the City of New York for negligent hiring, supervision, training, and retention.

### 12. Negligence in Failing to Keep IAB Complaints Confidential

Plaintiff interposes a claim against the City of New York based on allegations that it was "negligent and careless when it repeatedly allowed allegedly confidential IAB complaints regarding supervisory personnel to be 'leaked' to the very same officials of who were the subjects of the complaints." Amended Compl. at ¶¶ 386-388. To state a claim for ordinary negligence under New York law, a plaintiff must plausibly allege three elements: "'(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" Alfaro v. Wal-Mart Stores, Inc., 210 F.3d 111, 114 (2d Cir. 2000) (quoting Akins v. Glens Falls City Sch. Dist., 53 N.Y.2d 325, 333, 424 N.E.2d 531, 441 N.Y.S.2d 644 (1981)). In the absence of a duty, there is no breach, and without a breach, there is no liability. Pulka v. Edelman, 40 N.Y.2d 781, 782, 390 N.Y.S.2d 393 (1976).

To establish the existence of a special relationship plaintiff must prove four elements: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking (citations omitted)." Cuffy v. New York, 69 N.Y.2d 255, 260 (N.Y. 1987).

Plaintiff cannot establish that there was a special relationship firstly because he cannot demonstrate that there was any assumption by the municipality of an affirmative duty to act on plaintiff's behalf. Even if he could, plaintiff has not presented any evidence that the municipality's agents had any knowledge that inaction could lead to harm. To this point, plaintiff did not present a single item of evidence regarding the claimed "notice" of this issue allegedly provided by Frank Pallestro and/or Adhyl Pallestro, despite numerous discovery requests from the City of New York.

With regard to the third point, to establish the individual's justifiable reliance, the plaintiff must show that the municipality's actions "lulled the injured party into a false sense of security and has thereby induced him either to relax his own vigilance or to forego other available avenues of protection." Id. at 261. Plaintiff has not alleged how his reliance on IAB confidentiality either induced him to relax his own vigilance or to forego other avenues of "protection."

Further, "New York Courts have rejected uniformly such attempts to transmogrify intentional torts into 'negligence.'" Schmidt v. Bishop, 779 F. Supp. 321, 324-25 (S.D.N.Y. 1991) (dismissing negligence claim by plaintiff who alleged that her priest sexually abused her); Mitchell v. County of Nassau, No. CV-05-4957 (SJF)(WDW), 2007 U.S. Dist. LEXIS 38711, at *42-43 (E.D.N.Y. May 24, 2007) ("Plaintiff's creative attempt to describe her negligence claim as one for . . . negligent maintenance of equipment and negligent hiring and supervision, cannot circumvent [the] public policy of the State of New York."); Jenkins v. City of New York, No. 91 Civ. 3539 (RLC), 1992 U.S. Dist. LEXIS 8279, at *23-24 (S.D.N.Y. Jun. 15, 1992) (dismissing negligence claims described as, *inter alia*, negligent investigation, negligent training and negligent supervision, on the basis of New York's public policy prohibiting causes of action for negligent prosecution or investigation).

Moreover, it is well settled that where a plaintiff pleads facts that support claims of intentional torts, the same set of facts cannot also support a claim of negligence. See, e.g., Naccaratto v. Scarselli, 124 F. Supp. 2d 36, 45 (N.D.N.Y. 2000) ("[W]hen a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie."). Thus, there is no good faith basis to proceed with a purported claim of negligence claim against the City of New York for failure to keep IAB complaints confidential where plaintiff has alleged the same conduct against City Defendants as an intentional tort under 42 U.S.C. § 1983.

For all the above reasons, and many other, plaintiff cannot survive a motion for summary judgment on his claim of negligence in keeping IAB complaints confidential. Therefore, City Defendants request that plaintiff withdraw this cause of action.

8

### 13. Remaining Causes of Action

City Defendants believe the causes of action that would remain against the City Defendants would be as follows:

- False Arrest under 42 U.S.C. § 1983: Marino, Lauterborn, Gough, Sawyer, Duncan, Broschart, James, and Hanlon

- N.Y.S. False Arrest: Marino, Lauterborn, Gough, Sawyer, Duncan, Broschart, Caughey, James, and Hanlon

- N.Y.S. False Imprisonment: Marino, Lauterborn, Gough, Sawyer, Duncan, Broschart, Caughey, James, and Hanlon

- Unlawful Search and Entry under 42 U.S.C. § 1983: Marino, Lauterborn, Gough, Duncan, Broschart, and Hanlon

- Failure to Intercede under 42 U.S.C. § 1983: Marino, Lauterborn, Gough, Sawyer, Duncan, Broschart, James, and Hanlon

- Excessive Force under 42 U.S.C. § 1983: Marino, Lauterborn, Gough, Sawyer, Duncan, Broschart, and James

- N.Y.S. Assault: Marino, Lauterborn, Gough, Sawyer, Duncan, Broschart, and James

- N.Y.S. Battery: Marino, Lauterborn, Gough, Sawyer, Duncan, Broschart, and James

### 14. Conclusion

City Defendants therefore request that you withdraw with prejudice any meritless claims by August 15, 2014. To the extent that plaintiff refuses to withdraw the claims described *supra*, please indicate in writing which causes of action you are alleging against each individual defendant so that City Defendants may appropriately address those matters in the City Defendants' Summary Judgment Motion and/or an appropriate motion under Rule 11. If the motion is successful, pursuant to Rule 11(c)(2), City Defendants may also seek reasonable expenses, including attorney's fees, incurred for the motion.

Sincerely yours,

Suzanna Publicker Mettham
*Assistant Corporation Counsel*
Special Federal Litigation Division

cc:
Gregory John Radomisli (By First-Class Mail and E-Mail)
MARTIN CLEARWATER & BELL LLP
*Attorneys for Jamaica Hospital Medical Center*
220 East 42nd Street 13th Floor
New York, NY 10017

9

Brian Lee  (By First-Class Mail and E-Mail)
IVONE, DEVINE & JENSEN, LLP
*Attorneys for Dr. Isak Isakov*
2001 Marcus Avenue, Suite N100
Lake Success, New York 11042

Bruce M. Brady  (By First-Class Mail and E-Mail)
CALLAN, KOSTER, BRADY & BRENNAN, LLP
*Attorneys for Lillian Aldana-Bernier*
1 Whitehall Street
New York, New York 10004

Walter A. Kretz , Jr.  (By First-Class Mail and E-Mail)
SEIFF KRETZ & ABERCROMBIE
*Attorney for Defendant Mauriello*
444 Madison Avenue, 30th Floor
New York, NY 10022