**EXHIBIT 7**

Page 1

```
 1
 2   UNITED STATES DISTRICT COURT
 3   EASTERN DISTRICT OF NEW YORK
 4   - - - - - - - - - - - - - - - - - - -
 5   ADRIAN SCHOOLCRAFT,
 6                        Plaintiff,
 7           -against-  Index No.
                             10CIV-6005 (RWS)
 8
     THE CITY OF NEW YORK, DEPUTY CHIEF
 9   MICHAEL MARINO, Tax Id. 873220,
     Individually and in his Official
10   Capacity, ASSISTANT CHIEF PATROL
     BOROUGH BROOKLYN NORTH GERALD NELSON,
11   Tax Id. 912370, Individually and in his
     Official Capacity, DEPUTY INSPECTOR
12   STEVEN MAURIELLO, Tax Id. 895117,
     Individually and in his Official
13   Capacity, CAPTAIN THEODORE LAUTERBORN,
     Tax Id. 897840, Individually and in his
14   Official Capacity, LIEUTENANT JOSEPH
     GOFF, Tax Id. 894025, Individually and
15   in his Official Capacity, stg. Frederick
     Sawyer, Shield No. 2576, Individually
16   and in his Official Capacity, SERGEANT
     KURT DUNCAN, Shield No. 2483,
17   Individually and in his Official
     Capacity, LIEUTENANT TIMOTHY CAUGHEY,
18   Tax Id. 885374, Individually and in his
     Official Capacity, SERGEANT SHANTEL
19   JAMES, Shield No. 3004, and P.O.'s "JOHN
     DOE" 1-50, Individually and in their
20   Official Capacity (the name John Doe
     being fictitious, as the true names are
21   presently unknown)(collectively referred
     to as "NYPD defendants"), JAMAICA
22   HOSPITAL MEDICAL CENTER, DR. ISAK ISAKOV,
     Individually and in his Official
23   Capacity, DR. LILIAN ALDANA-BERNIER,
     Individually and in her Official Capacity
24   and JAMAICA HOSPITAL MEDICAL CENTER
     EMPLOYEES "JOHN DOE" # 1-50, Individually
25
     (Continued)
```

Page 2

2  and in their Official Capacity (the name John Doe being fictitious, as the true
3  names are presently unknown),
4
   Defendants.
5
                    - - - - - - - - - - - - - - - - - -x
6
                                111 Broadway
7                               New York, New York
8                               February 11, 2014
                                10:30 a.m.
9
10      VIDEOTAPED DEPOSITION of DR. LILIAN
11  ALDANA-BERNIER, one of the Defendants in
12  the above-entitled action, held at the
13  above time and place, taken before
14  Margaret Scully-Ayers, a Shorthand
15  Reporter and Notary Public of the State
16  of New York, pursuant to the Federal
17  Rules of Civil Procedure.
18
19              *       *       *

Page 247

1        L. ALDANA-BERNIER
2   risk," can you quantify that for me at
3   all what you mean by potential?
4        A.   The patient comes in barricaded
5   himself, acting bizarre.  He was brought
6   in from his house.  It was a police
7   officer who may have access to weapons,
8   easy for him to have access to weapons.
9   He is paranoid.  I would think that maybe
10  it would be safe if the patient will be
11  admitted.
12       Q.   So your thought he might be
13  safe if he was admitted?
14       A.   If he was admitted.
15       Q.   That's what you were talking
16  about when you say potential risk,
17  correct?
18       A.   All of the above that I told
19  you.
20       Q.   Can you quantify what you mean
21  by potential risk as far as the
22  likelihood of risk?  This word
23  "potential" that you have been using, can
24  you quantify that for me?
25       A.   When you say "quantify," what

Page 248

1        L. ALDANA-BERNIER
2  do you mean?
3      Q.    Sure.
4            Well, you used the word
5  "potential."  I would like to know what
6  you mean by potential.
7      A.    If you think of the navy yard
8  disaster, was he an officer or army man?
9  He was so quite, no one ever found out
10 what was going on with him.  So what
11 happened then?
12           Or if you look at all of those
13 -- the Range Rover.  Who are all of these
14 people that caused that?  They are all
15 police officers.
16           So if I think then I have to
17 make sure that when I see a patient in
18 the ER, I have to think in the future
19 that there will be no disaster, there
20 will be no destruction, or no one will
21 get harmed when they were discharged from
22 the ER.
23     Q.    I was asking about what you
24 meant by potential.
25     A.    That's the potential.

```
                                            Page 249
 1            L. ALDANA-BERNIER
 2      Q.     So if there is any potential at
 3  all, you want to make sure that the
 4  patient is safe, correct?
 5      A.     Correct.
 6      Q.     And if there is any potential
 7  at all, you want to make sure the
 8  community is safe, correct?
 9      A.     That's correct.
10      Q.     And if there is any potential
11  at all, you were going to admit Mr.
12  Schoolcraft, correct?
13            MR. LEE:  Objection to form.
14      A.     With all of those reasons, yes,
15  I would have to admit him.
16      Q.     When you admitted him to the
17  emergency room, there were certain rules
18  and regulations --
19            MR. SUCKLE:  Withdrawn.
20      Q.     When he was admitted to the
21  psych floor, there were certain rules and
22  regulations in the psych ward, correct,
23  about clothes they wear, what hours
24  visitors can come, correct?
25      A.     Yes.
```