UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

ADRIAN SCHOOLCRAFT,

        Plaintiff,

  - against -

THE CITY OF NEW YORK ET AL.,

        Defendants.

------------------------------------------X

10 Civ. 6005 (RWS)

OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5|6|11

**Sweet, D.J.**

      On October 12, 2010, Defendant Jamaica Hospital Medical Center ("Defendant" or "JHMC") filed a motion to dismiss Plaintiff Adrian Schoolcraft's ("Plaintiff" or "Schoolcraft") claims against it.  On February 2, 2010, JHMC also filed a motion to stay discovery pending resolution of the its motion to dismiss.  For the following reasons, Defendant's motion to dismiss is granted in part and denied in part, and Defendant's motion to stay discovery is denied.

**I.    Prior Proceedings**

1

On August 10, 2010, Plaintiff filed a complaint against the City of New York, several members of the New York City Police Department ("NYPD"), JHMC, two doctors employed by JHMC, and others. On September 13, 2010, Plaintiff filed an amended complaint ("AC"). On October 12, 2010, JHMC filed the present motion to dismiss Plaintiff's claims against it. The motion was considered fully submitted on January 26, 2011. On February 2, 2010, JHMC filed a motion to stay discovery pending resolution of the its motion to dismiss. This motion was considered fully submitted on March 2, 2011.

## II.  **Statement of Facts**

Schoolcraft joined the New York City Police Department in July 2002, working at the 81st precinct until October 31, 2009. (AC ¶¶ 26-27). He alleges that, in response to his refusal to adhere to and later attempts to expose the strict enforcement of an illegal quota policy in his precinct, defendant NYPD officers instigated a campaign to intimidate and discredit him. (Id. at ¶¶ 34-170). Plaintiff alleges that, on October 31, 2009, he was arrested, forcibly removed from his home, transported to JHMC, and wrongfully committed against his will for six days under NYPD's classification as an Emotionally Disturbed Person (hereinafter "EDP"). (AC at ¶ 171).

2

Plaintiff alleges that he spent the first three days of his confinement at JHMC in the psychiatric emergency room where NYPD officers kept watch over him, physically and emotionally abused him, and handcuffed both of his arms tightly to a gurney. (AC at ¶¶ 171-79). During that time he claims that he was not allowed contact with the outside world, and he was not provided a proper bed to sleep in. (AC at ¶¶ 171-79). Plaintiff alleges that, even though there was no medical basis to detain him and that hospital records clearly indicate that he was lucid, rational, fully coherent, and posed no risk to himself or others, JHMC held Plaintiff against his will at the urging of the NYPD. (AC ¶¶ 184-90, 201-02).

At the end of his sixth day of confinement at JHMC, Schoolcraft was allegedly released despite no change of circumstances concerning his psychiatric state, and without explanation. (AC ¶ 192). Plaintiff claims that JHMC acted under the coercion of and in concert with the NYPD to facilitate the constitutional violations inflicted upon him, and in furtherance of the NYPD's ultimate attempt to silence and discredit him.

Plaintiff has submitted three claims against JHMC. (See Claims Seven, Eight, and Nine, AC ¶¶ 270-284). Plaintiff

3

alleges that: (a) JHMC violated his civil rights pursuant to 42 U.S.C. § 1983 by involuntarily hospitalizing him in violation of New York Mental Hygiene Law § 9.39, thereby depriving Plaintiff of his substantive and procedural due process rights as set forth in the Fifth and Fourteenth Amendments of the Constitution (AC ¶¶ 270-276); (b) JHMC conspired with the NYPD to violate Plaintiff's civil rights pursuant to 42 U.S.C. § 1983 (AC ¶¶ 277-282); and, (c) JHMC violated his rights to due process pursuant to 42 U.S.C. § 1983 by involuntarily hospitalizing him without notice, hearing or an opportunity to be heard or to challenge his confinement, in violation of the Fifth and Fourteenth Amendments to the Constitution (AC ¶¶ 283-284).

### III. **Applicable Standard**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

To survive a motion to dismiss and for judgment on the pleadings pursuant to Rules 12(b)(6) and 12(c)[1], "a complaint

---

1 The legal standard used to decide a motion for judgment on the pleadings made pursuant to Rule 12(c) is identical to the standard used to decide a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). See, e.g., Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Plaintiffs must allege sufficient facts to "nudge [ ] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

## IV. Discussion

Defendant contends that Plaintiff's claims against it should be dismissed on three grounds. First, Plaintiff's § 1983 claims should be dismissed because JHMC cannot be liable through the doctrine of respondeat superior and is not liable directly. Second, Plaintiff fails to sufficiently allege that JHMC was a state actor under § 1983. Third, after dismissing Plaintiff's federal claims brought under § 1983, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against JHMC.

5

### a. Plaintiff Has Failed to Establish JHMC's Liability Under § 1983

While Defendant contends that Plaintiff cannot rely upon the doctrine of respondeat superior to render JHMC liable for Plaintiff's injuries, Plaintiff contends that his allegations are against JHMC as a state actor[2] directly. The question then becomes whether Plaintiff may pursue JHMC directly, or whether it would have to approach JHMC through the acts of its employees.

Section 1983 provides that no person may deprive another, under color of state law, of rights secured by the Constitution or the laws of the United States. 42 U.S.C. § 1983. In assessing liability under § 1983, courts do not distinguish between the government itself and private entities who are alleged to be state actors. See Allen v. Mattingly, No. 10 Civ. 667, 2011 WL 1261103, at *16 (E.D.N.Y. Mar. 29, 2011) (finding private entity to be state actor for purposes of § 1983). See

---

2 As noted above, Defendants contend that JHMC is not a state actor and that Plaintiff fails to sufficiently allege conspiracy under § 1983. Because Plaintiff's claims against JHMC fail even if JHMC is a state actor or conspired with the NYPD, the Court does not need to decide this issue. That having been stated, it does appear that JHMC is a state actor based on Plaintiff's allegations that the hospital's employees acted under the compulsion of, and in concert with, the NYPD. Sybalski v. Independent Group Home Living Program, Inc., 546 F.3d 255, 258 (2d Cir. 2008). Furthermore, because Plaintiff contends that JHMC was used as a detention facility, JHMC can be seen as a state actor through its assumption of a traditional government function. Id. Plaintiff also appears to sufficiently plead a § 1983 conspiracy by alleging that JHMC's employees formed an agreement with NYPD officers to collaborate in depriving Plaintiff of his constitutional rights and acted pursuant to that agreement. See Pangburn v. Culbertson, 200

also Whalen v. Allers, 302 F. Supp. 2d 194, 202-3 (S.D.N.Y. 2003)
(holding that a private corporate employer found to be a "state
actor" for purposes of § 1983 cannot be held vicariously liable
under § 1983 since "there is no tenable reason[ ] to distinguish
a private employer from a municipality."); Temple v. Albert, 719
F. Supp. 265, 269 (S.D.N.Y. 1989) (neither the Supreme Court nor
the Second Circuit have directly addressed the issue of whether a
private entity can be held liable under § 1983 on a respondeat
superior theory, but that numerous other courts have relied on
Monell to find that there is no tenable reason to distinguish a
private entity hired by a municipality from the municipality
itself); Dolan v. Richards, No. 10 Civ. 5809, 2011 WL 1197462, at
*4 (S.D.N.Y. Mar. 25, 2011).

Like government entities, private corporations "can act
only through natural persons," and their § 1983 liability arises
through the conduct of their employees. Coward v. Town and
Village of Harrison, 665 F. Supp. 2d 281, 308 (S.D.N.Y. 2009)
(quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 122
(1988)). Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978),
depended on this rationale in finding that governments will be
held responsible for the acts of their employees only where
"their official policies cause their employees to violate another

F.3d 65, 72 (2d Cir. 1999).

7

person's constitutional rights." Praprotnik, 485 U.S. at 122
(discussing the rationale of Monell).

Therefore, Defendant is correct in asserting that, as
state actors, "[p]rivate employers are not liable under § 1983
for the constitutional torts of their employees unless the
plaintiff proves that action pursuant to official policy of some
nature caused a constitutional tort." Rojas v. Alexander's Dep't
Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990) (internal quotation
marks and citations omitted). See also Allen, 2011 WL 1261103,
at *16 n. 20 ("liability under Section 1983 cannot be based on
respondeat superior") (citing Monell v. Dep't of Soc. Servs., 436
U.S. 658, 694 (1978); Jett v. Dallas Independent School District,
491 U.S. 701, 736 (1989)).

State actors "may be sued directly under § 1983 for
constitutional deprivations inflicted upon private individuals
pursuant to [the state actor's] custom, policy, ordinance,
regulation, or decision." Batista v. Rodriguez, 702 F.2d 393,
397 (2d Cir. 1983) (citing Monell, 436 U.S. 658 (1978)); see also
Adam v. Metropolitan Transp. Authority, No. 07 Civ. 8807, 2011 WL
891441, at *3 (S.D.N.Y. Mar. 15, 2011) (same); Little v.
Corrections Corp. of America, 103 Fed. Appx. 898, 900-01 (6th
Cir. 2004) (dismissing claim where the plaintiff failed to allege

8

that private state actor was liable through a policy or custom);

Bradley v. City of New York, No. 08 Civ. 1106, 2009 WL 1703237,

at *5 (E.D.N.Y. Jun. 18, 2009) (dismissing claim where conspiracy

was adequately pleaded because employee actions were not pursuant

to policy or custom). Thus, "[t]o hold a [state actor] liable

under § 1983 for the unconstitutional actions of its employees, a

plaintiff is required to plead and prove three elements: (1) an

official policy or custom that (2) causes the plaintiff to be

subjected to (3) a denial of a constitutional right." Kahn v.

Oppenheirmer & Co., Inc., No. 08 Civ. 11368, 2009 WL 4333457, at

*3 (S.D.N.Y. Dec. 1, 2009) (quoting Batista, 702 F.2d at 397);

see also Adams v. City of New York, No. 08 Civ. 5263, 2010 WL

743956, at *6 (S.D.N.Y. Mar. 2, 2010); Gayton v. McCoy, 593 F.3d

610, 622 (7th Cir. 2010) ("Generally, to maintain a viable § 1983

action against a municipality, a government agent (such as [a

private corporation]), or individual policymaking defendants in

their official capacities…, a plaintiff must demonstrate that a

constitutional deprivation occurred as the result of an express

policy or custom promulgated by that entity or an individual with

policymaking authority.").

"The Supreme Court has identified at least two

situations that constitute a municipal policy: (1) where there is

an officially promulgated policy as that term is generally

9

understood (i.e., a formal act by the municipality's governing body), and (2) where a single act is taken by a municipal employee who, as a matter of State law, has final policymaking authority in the area in which the action was taken." Coward, 665 F. Supp. 2d at 308 (quoting Newton, 566 F. Supp. 2d at 271) (citing Monell, 436 U.S. at 690, and Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986)). "A municipal 'custom,' on the other hand, need not receive formal approval by the appropriate decisionmaker... ." Id. (quoting Newton, 566 F. Supp. 2d at 271). Instead, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Id. (quoting Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997)). To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at issue is well-settled. See Praprotnik, 485 U.S. at 127 (the Supreme Court "has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'") (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970)).

10

Plaintiff has not sufficiently alleged that JHMC's employees acted pursuant to an official JHMC policy, the direction of a JHMC policymaker, or JHMC custom when they participated in the deprivation of Plaintiff's constitutional rights. In fact, Plaintiff appears to allege that the hospital's employees defied its standard practices in taking orders from and/or collaborating with the NYPD to deprive him of his constitutional rights. Therefore, Plaintiff fails to establish JHMC's liability under § 1983, and his federal claims against JHMC are dismissed.

### b. Supplemental Jurisdiction Over Plaintiff's State Law Claims Against JHMC is Appropriate

Defendants contend that, with Plaintiff's federal claims against JHMC dismissed, the Court should decline to exercise supplemental jurisdiction over his state law claims against JHMC. 28 U.S.C. § 1367 provides as follows:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

11

See also In re Methyl Tertiary Butyl Ether ("MTBE") Products
Liability Litigation, 510 F. Supp. 2d 299, 320 (S.D.N.Y. 2007)
("In passing the statute, Congress gave district courts
jurisdiction over claims and parties over which the court lacked
original jurisdiction under sections 1331 and 1332, so long as
all of the claims arise out of the same case or controversy under
Article III."). Federal and state claims form satisfy § 1367(a)
if they "derive from a common nucleus of operative facts or when
both claims would normally be expected to be tried in a single
judicial proceeding." Id. at 331, (quoting Achtman v. Kirby,
McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006)).

        Plaintiff contends that his federal claims against the
NYPD and JHMC doctors arise from the same set of facts as his
remaining state law claims against JHMC. Plaintiff's
allegations, that the NYPD removed him from his home and forcibly
detained him at JHMC for approximately six days, and that JHMC
and its employees violated federal and state laws through their
complicity in the NYPD's actions and failure to satisfy their
duties to Plaintiff, arise from a common nucleus of overlapping
facts. See Id. at 322 ("'In determining whether two disputes
arise from a common nucleus of operative fact, we have
traditionally asked whether the facts underlying the federal and
state claims substantially overlapped... [or] the federal claim

12

necessarily brought the facts underlying the state claim before the court.'") (quoting Achtman, 464 F.3d at 335) (internal quotations omitted). Furthermore, under these circumstances, considerations of judicial economy warrant exercising supplemental jurisdiction over Plaintiff's state law claims against JHMC. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("[Supplemental jurisdiction's] justification lies in considerations of judicial economy, convenience and fairness to litigants").

Defendant points to § 1367(c) and contends that the court should decline to exercise supplemental jurisdiction because it would be "fundamentally unfair" to keep JHMC in the case and harm its reputation when only two of their doctors have been identified as Defendants. Section 1367(c)(4) provides that the court may decline to exercise supplemental jurisdiction if, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 18 U.S.C. § 1367(c)(4). Defendant has not established that sufficiently exceptional circumstances exist here.

c.   **The Motion to Stay Discovery is Moot**

Defendant's motion to stay discovery while the Court considered Defendant's motion to dismiss is moot, as the motion to dismiss has now been ruled upon.

V.   <u>Conclusion</u>

For the foregoing reasons, Plaintiff's § 1983 claims against JHMC are dismissed without prejudice, but the Court shall exercise supplemental jurisdiction to retain Plaintiff's state law claims against JHMC.  JHMC's motion to stay discovery is denied.

It is so ordered.

**New York, NY**
**May   5 , 2011**

ROBERT W. SWEET
U.S.D.J.

14