UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

ADRIAN SCHOOLCRAFT,

                Plaintiff,

   - against -

            10 Civ. 6005 (RWS)

            OPINION

CITY OF NEW YORK, et al.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

A P P E A R A N C E S:

    <u>Attorneys for the Plaintiff</u>

    THE LAW OFFICES OF JON L. NORINSBERG, ESQ.
    225 Broadway, Suite 2700
    New York, NY 10007
    By: Jon L. Norinsberg, Esq.

    COHEN & FITCH LLP
    225 Broadway, Suite 2700
    New York, NY 10007
    By: Joshua Paul Fitch, Esq.
        Gerald M. Cohen, Esq.

    <u>Attorneys for the City Defendants</u>

    MICHAEL A. CARDOZO
    CORPORATION COUNSEL OF THE CITY OF NEW YORK
    100 Church Street
    New York, NY 10007
    By: Suzanna Hallie Publicker, Esq.
        Maxwell Douglas Leighton, Esq.
        Donna Anne Canfield, Esq.
        William Solomon Jacob Fraenkel, Esq.

**Sweet, D.J.**

Plaintiff Adrian Schoolcraft ("Schoolcraft," or the
"Plaintiff") has filed a motion to amend his complaint to
include a First Amendment claim under 42 U.S.C. § 1983,
raising claims of both prior restraint and retaliation.
Defendants the City of New York, the New York Police
Department ("NYPD"), Deputy Chief Michael Marino, Assistant
Chief Patrol Borough Brooklyn North Gerald Nelson, Captain
Theodore Lauterborn, Sergeant Frederick Sawyer, Sergeant Kurt
Duncan, Lieutenant Christopher Broschart and Sergeant Shantel
James (collectively, the "City Defendants") oppose Plaintiff's
request.[1]  Based on the conclusions set forth below,
Plaintiff's motion to amend is granted with respect to his
claim of prior restraint, but denied with respect to his claim
of retaliation.

**Facts & Prior Proceedings**

---

[1]     In addition to the City Defendants, Plaintiff has also
identified as defendants Deputy Inspector Steven Mauriello,
Lieutenant William Gough, Lieutenant Timothy Caughey, Jamaica
Hospital Medical Center, Dr. Isak Isakov, Dr. Lilian Aldana-
Bernier and various John Does.  These individuals, together
with the City Defendants, are collectively referred to as the
"Defendants."

1

A detailed recitation of the facts of the case is
provided in this Court's opinion dated May 6, 2011, which
granted in part and denied in part Defendant Jamaica Hospital
Medical Center's motion to dismiss.  See Schoolcraft v. City
of N.Y., No. 10 Civ. 6005(RWS), 2011 WL 1758635, at *1
(S.D.N.Y. May 6, 2011).  Familiarity with those facts is
assumed.


On August 10, 2010, Plaintiff filed his initial
complaint alleging violations of his civil rights when NYPD
personnel, in order to prevent Plaintiff from disclosing the
existence of an illegal summons quota policy, entered
Plaintiff's home, forcibly removed him in handcuffs, seized
his personal effects and had Plaintiff admitted to Jamaica
Hospital Medical Center ("Jamaica Hospital") against his will
under false information that Plaintiff was "emotionally
disturbed."  The complaint alleged that Plaintiff was
subsequently held at Jamaica Hospital's psychiatric ward
involuntarily for six days in an alleged effort to tarnish
Plaintiff's reputation and discredit his allegations should he
succeed in disclosing evidence of misconduct within the NYPD.
Plaintiff filed a First Amended Complaint on September 13,
2010.

2

Case 1:10-cv-06005-RWS Document 99 Filed 03/10/12 Page 4 of 28

On October 12, 2010, Jamaica Hospital moved to dismiss the First Amended Complaint. After the parties agreed to several extensions of the briefing schedule, the motion was marked fully submitted on January 20, 2011. In an opinion filed May 6, 2011, Jamaica Hospital's motion to dismiss was granted in part and denied in part, as Plaintiff failed to establish Jamaica Hospital's liability under § 1983, but supplemental jurisdiction over Plaintiff's state law claims against Jamaica Hospital was deemed appropriate. See Schoolcraft, 2011 WL 1758635.

On April 25, 2012, Plaintiff wrote to the Court requesting leave to amend the complaint to add a First Amendment retaliation claim under 42 U.S.C. § 1983. The letter was treated as a motion, and, in an opinion filed June 14, 2012, Plaintiff's motion to amend the complaint to include a First Amendment retaliation claim was denied on the basis that the speech at issue was made pursuant to Plaintiff's responsibilities as a government employee. See Schoolcraft v. City of N.Y., No. 10 Civ. 6005, 2012 WL 2161596, at *8 (S.D.N.Y. June 14, 2012).

On June 20, 2012, Plaintiff submitted a letter to
the Court requesting reconsideration of the portion of the
June 14 opinion denying Plaintiff's motion to amend his
complaint to include a First Amendment claim.  Plaintiff
contended that the opinion denying Plaintiff's motion to amend
overlooked Plaintiff's allegations that, after the October 31,
2009 incident and Plaintiff's suspension from the NYPD,
several members of the NYPD repeatedly made uninvited trips to
Plaintiff's home in upstate New York.  During these trips,
uniformed officers allegedly banged on and kicked in
Plaintiff's door, shouted at Plaintiff to open the door and
spied on Plaintiff through the windows.  Plaintiff contended
that these alleged acts occurred after he was suspended from
the NYPD, so that any prospective speech following the October
31, 2009 incident would not have been pursuant to Plaintiff's
duties as an NYPD officer.  Plaintiff's letter requesting
reconsideration was treated as a motion, and, in an opinion
filed July 20, 2012, the motion was denied on the basis that
Plaintiff, in his briefing regarding the motion to amend,
never raised the issue of protected speech made after his
suspension on October 31, 2009, nor did Plaintiff raise the
argument that he had no duty to report misconduct following
his suspension.  Accordingly, Plaintiff could not identify any

4

Case 1:10-cv-06005-RWS Document 99 Filed 09/10/12 Page 6 of 28

arguments or controlling law the Court overlooked in deciding
Plaintiff's initial motion to amend. See Schoolcraft v. City
of N.Y., No. 10 Civ. 6005, 2012 WL 2958176, at *5 (S.D.N.Y.
July 20, 2012).


On August 1, 2012, Plaintiff wrote to the Court
requesting leave to amend his complaint to add a First
Amendment claim under 42 U.S.C. § 1983 relating to the prior
restraint imposed on Plaintiff's speech following Plaintiff's
suspension on October 31, 2009 and the actions taken against
Plaintiff in retaliation for Plaintiff's speech in refusing to
comply with the allegedly illegal and unconstitutional orders
of his supervisors. The August 1 letter was treated as a
motion and marked fully submitted on August 22.


**The Proposed Second Amended Complaint**


The proposed Second Amended Complaint ("SAC"), in
addition to alleging additional facts related to the alleged
deprivation of Plaintiff's First Amendment rights, includes
its claims for prior restraint and retaliation in the Second
Claim for Relief. The Second Claim for Relief reads, in part:

5

The actions taken by the NYPD defendants on the night of
October 31, 2009 violated plaintiff's First Amendment
right as he was exercising protected speech when he
refused to comply with his supervisors commands to issue
summonses and make arrests in the absence of probable
cause.

The conduct and actions of the NYPD defendants in
retaliating against plaintiff, which eventually
culminated in his unlawful detention and restraint in a
psychiatric ward in retaliation against him for refusing
to commit illegal and unconstitutional acts at the behest
of his supervisors, were wrongful, oppressive and
unlawfully taken in retaliation against him for
exercising his Constitutional Right to Free Speech as a
private citizen regarding matters of public concern.

Plaintiff's aforementioned unjustified arrest and
detention was not authorized by law and were in
retaliation of plaintiff's speech and aforesaid refusals
to comply with illegal and unconstitutional directives.

NYPD defendants infringement upon and violation of
plaintiff's rights protected by the First Amendment to
the United States Constitution was intended to harm
plaintiff, and to place a chilling effect upon the
exercise of such rights by plaintiff and other persons as
is their right, as provided by the U.S. Constitution and
exercise of such rights.

Further, following plaintiff's suspension on October 31,
2009 the NYPD defendants unconstitutionally imposed this
prior restraint on plaintiff's speech in an effort by
defendants to silence, intimidate, threaten and prevent
plaintiff from disclosing the evidence of corruption and
misconduct plaintiff had been collecting and documenting
to the media and the public at large.

Specifically, NYPD defendants illegally seized
plaintiff's draft report to Commissioner Raymond Kelly
detailing the police corruption and misconduct he had
been documenting and collecting in an effort to prevent
said material from being disclosed to anyone.

Additionally, NYPD defendants also seized plaintiff's

6

personal notes and other effects regarding his complaints
against the 81st precinct in an effort to prevent said
material from being disclosed to anyone and especially
members of the news media and victims of the
aforementioned corruption.

Further, defendants involuntarily committed plaintiff to
the psychiatric ward of Jamaica Hospital as an
emotionally disturbed person and following his release
made repeated trips hundreds of miles outside of their
jurisdiction to his home in upstate New York in a
continued effort to harass and intimidate him in order to
prevent his speech from being uttered.

SAC ¶¶ 255-262.

Accordingly, Plaintiff's First Amendment prior
restraint claim is based on both Defendants' alleged efforts
to involuntarily confine Plaintiff to Jamaica Hospital as well
as Defendants' alleged campaign of harassment following
Plaintiff's suspension. Defendants' actions allegedly sought
to prevent Plaintiff from disclosing to the media and public
the evidence he had gathered concerning the NYPD's summons
policy. Plaintiff's First Amendment retaliation claim is
based on a theory that Plaintiff's refusal to issue summonses
and make arrests in the absence of probable cause constituted
speech. According to Plaintiff, Defendants' alleged actions
on the night of October 31, 2009 and his subsequent
involuntary detention constitute retaliation against Plaintiff

7

for his refusal to obey his supervisors' allegedly
unconstitutional orders.

## The Applicable Standard

Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend
a complaint shall be given "freely" when "justice so
requires." "If the underlying facts or circumstances relied
upon by a plaintiff may be a proper subject of relief, he
ought to be afforded an opportunity to test his claim on the
merits." Williams v. Citigroup Inc., 659 F.3d 208, 213 (2d
Cir. 2011) (quoting Foman v. Davis, 371 U.S. 178, 182, 83
S.Ct. 227, 9 L.Ed.2d 222 (1962)). However, "[a] district
court has discretion to deny leave for good reason, including
futility, bad faith, undue delay, or undue prejudice to the
opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d
184, 200 (2d Cir. 2007); see also AEP Energy Servs. Gas
Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 726 (2d Cir.
2010) ("Leave to amend may be denied on grounds of futility if
the proposed amendment fails to state a legally cognizable
claim or fails to raise triable issues of fact.").

When denying a motion to amend based upon futility,

8

the denial should be calculated pursuant to the standards

utilized to determine a motion to dismiss pursuant to Fed. R.

Civ. P. 12(b)(6).  Dougherty v. Town of N. Hempstead Bd. of

Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002) (citations

omitted).  When considering a motion to dismiss, "a court must

accept the allegations contained in the complaint as true, and

draw all reasonable inferences in favor of the non-movant."

Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).

However, this "tenant . . . is inapplicable to legal

conclusions.  Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not

suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct.

1937, 173 L.Ed.2d 868 (2009) (citing Bell Atl. Corp. v.

Twombly, 550 U.S. 554, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929

(2007)).  Accordingly, to defeat a motion to dismiss, a claim

must include "facial plausibility . . . that allows the court

to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  Ashcroft, 556 U.S. at 678.


**Plaintiff's Motion To Amend The Complaint Is Granted In Part**
**And Denied In Part**


As noted above, Plaintiff seeks to include a First

9

Amendment claim under 42 U.S.C. § 1983 based on (1) the prior
restraint imposed on Plaintiff's speech following Plaintiff's
suspension on October 31, 2009, and (2) the actions taken
against Plaintiff in retaliation for Plaintiff's speech in
refusing to comply with the allegedly illegal and
unconstitutional orders of his supervisors.  For the reasons
described below, Plaintiff's motion to amend is granted with
respect to his prior restraint claim, but denied with respect
to his retaliation claim.

## A. Plaintiff's Motion To Amend Is Granted With Respect To Allegations Of Prior Restraint Imposed On Plaintiff's Speech Following His Suspension

In addition to the passages quoted above,
Plaintiff's proposed SAC includes the following allegations:

> As a result of the forgoing, the NYPD defendants, through
> a campaign of harassment and intimidation, forced
> plaintiff to move to upstate New York, approximately
> three hundred fifty (350) miles away from New York City.

> Notwithstanding this move, between December 2009 and
> continuing on through the present, armed NYPD officials
> continued their relentless efforts to silence, harass
> and/or otherwise harm plaintiff and his father in the
> form of making over a dozen appearances at his home in
> upstate New York.

> During these "visits", the NYPD has dispatched teams of

10

armed detectives and other armed members of the New York
City Police Department to harass and intimidate plaintiff
by pounding and kicking on his door and shouting "NYPD.
WE KNOW YOU'RE IN THERE, OPEN UP!!!"

In one instance, on December 9, 2009, an armed NYPD
Sergeant drove three hundred fifty (350) miles outside of
NYPD jurisdiction – on taxpayer's money – merely to "spy"
on plaintiff through his bedroom window.

In response to this blatant and endless attempt to
continuously harass and intimidate plaintiff, plaintiff
moved his bed out of said bedroom in order to prevent
imminent physical and emotional harm upon his person.

Notwithstanding this action, armed NYPD officials
continue, up and through the present, to come to his
home, repeatedly pound on his door, photograph him, and
engage in efforts designed to purposefully intimidate and
harass plaintiff in a tireless effort to silence him once
and for all.

SAC ¶¶ 208-13.  These allegations, along with those quoted in

this opinion's description of the proposed SAC, establish a

prima facie claim for prior restraint.  Accordingly,

Plaintiff's motion to amend his complaint to include a claim

of prior restraint is granted.


    "It is well-established that 'First Amendment rights

may be violated by the chilling effect of governmental action

that falls short of a direct prohibition against speech.'"

Zieper v. Metzinger, 474 F.3d 60, 65 (2d Cir. 2007) (quoting

Aebisher v. Ryan, 622 F.2d 651, 655 (2d Cir. 1980)).

                                11

"Accordingly, the First Amendment prohibits government
officials from encouraging the suppression of speech in a
manner which 'can reasonably be interpreted as intimating that
some form of punishment or adverse regulatory action will
follow the failure to accede to the official's request.'" Id.
at 65-66 (quoting Hammerhead Enters., Inc. v. Brezenoff, 707
F.2d 33, 39 (2d Cir. 1983)). "In determining whether a
particular request to suppress speech is constitutional, what
matters is that 'distinction between attempts to convince and
attempts to coerce." Id. at 66 (quoting Okwedy v. Molinari,
333 F.3d 339, 344 (2d Cir. 2003)). "The test is objective:
whether the official's comments can reasonably be interpreted
as intimating that some form of punishment or adverse
regulatory action will follow the failure to accede to the
official's request to cease engaging in protected speech."
Zieper v. Metzinger, 392 F. Supp. 2d 516, 525 (S.D.N.Y. 2005)
(internal quotation marks and citations omitted).

    As was noted in this Court's June 14, 2012 opinion,
when a citizen enters government service, he or she "by
necessity must accept certain limitations on his or her
freedom." Garcetti v. Ceballos, 547 U.S. 410, 418, 126 S.Ct.
1951, 164 L.Ed.2d 689 (2006). This includes a limitation on

the protections afforded a government employee's speech. A government employee can invoke First Amendment protections for speech only when he speaks "as a citizen addressing matters of public concern." Garcetti, 547 U.S. at 417. As such, in order to invoke First Amendment protections, a government official, such as a police officer, must demonstrate not only that the subject of his speech was a matter of public concern, but also that when he spoke on the subject, he spoke "as a citizen" rather than "as a government employee." Id. at 420-22. Prior to addressing the substance of Plaintiff's proposed prior restraint claim, this question concerning whether Plaintiff was speaking pursuant to his official duties will first be addressed.

It has already been determined that speech concerning an allegedly unconstitutional summons policy employed by the NYPD is a matter of public concern. See Schoolcraft, 2012 WL 2161596, at *4. Accordingly, the only issue with respect to whether Plaintiff's speech is protected is whether Plaintiff was speaking "as a citizen" or "as a government employee." The proposed SAC's prior restraint theory is largely based on conduct that occurred following Plaintiff's suspension from the NYPD. In the proposed SAC,

13

Plaintiff alleges that he was suspended on the evening of
October 31, 2009 after NYPD officers arrived at his home but
prior to Defendants' alleged involuntarily removal of
Plaintiff to Jamaica Hospital.  SAC ¶ 153.  Accordingly,
Plaintiff's claim for prior restraint – based both on his
being held involuntarily at Jamaica Hospital as an emotionally
disturbed person as well as on Defendants' alleged harassment
of Plaintiff at his home upstate – is based on conduct that
occurred following Plaintiff's suspension.  Although the City
Defendants contend that Plaintiff, notwithstanding his
suspension was still a sworn law enforcement officer and
employee of the NYPD, the fact that Plaintiff was suspended
and, for the substantial majority of the time period relevant
to the prior restraint claim, was hundreds of miles outside
the NYPD's jurisdiction provides a sufficient factual basis
for Plaintiff to allege that he sought to exercise his First
Amendment rights "as a citizen," rather than "as a government
employee."

        However, the proposed SAC includes an allegation
that "NYPD defendants illegally seized plaintiff's draft
report to Commissioner Raymond Kelly detailing the police
corruption and misconduct he had been documenting and

                              14

collecting in an effort to prevent said material from being disclosed to anyone." SAC ¶ 260. As was noted in this Court's opinion dated June 14, 2012, the NYPD Patrol Guide § 207-21 states that "[a]ll members of the service have an absolute duty to report any corruption or other misconduct, or allegation of corruption or other misconduct, of which they become aware." See Schoolcraft, 2012 WL 2161596, at *6. Additionally, as was noted in the June 14 opinion, in the case of Matthews v. City of New York, No. 12 Civ. 1354(BSJ), 2012 U.S. Dist. LEXIS 53213 (S.D.N.Y. Apr. 12, 2012), the Honorable Barbara S. Jones addressed an issue similar to that presented here involving a police officer who claimed retaliation for complaining about an illegal traffic summons quota system. Judge Jones held that Police Officer Matthews, in complaining about the quota policy, did not speak as a private citizen. See Matthews, 2012 U.S. Dist. LEXIS 53213, at *7-8 ("Matthews' complaints to his supervisors are consistent with his core duties as a police officer, to legally and ethically search, arrest, issue summonses, and — in general — police."). Accordingly, Plaintiff may not make a prior restraint claim based on the seizure of his report to Commissioner Kelly because the contents of that report, which was prepared as part of Plaintiff's official duties, are not protected by the

15

First Amendment.  However, unlike Plaintiff's written report
to the Commissioner documenting corruption, Plaintiff's
alleged intent to speak out to the media and public at large
concerning the NYPD's summons policy while on suspension
represents speech that is not pursuant to Plaintiff's official
duties and, as such, is protected by the First Amendment.

With respect to the merits of Plaintiff's prior
restraint claim, as noted above, Plaintiff's proposed SAC
includes allegations that, between December 2009 and the
present, NYPD officials visited Plaintiff's residence 350
miles from New York City more than a dozen times, wore
firearms, pounded and kicked on Plaintiff's door, shouted at
Plaintiff and spied on Plaintiff through his bedroom window.
See SAC ¶¶ 208-11.  The SAC also alleges that "armed NYPD
officials continue, up and through the present, to come to his
home, repeatedly pound on his door, photograph him, and engage
in efforts designed to purposefully intimidate and harass
plaintiff in a tireless effort to silence him once and for
all."  SAC ¶ 213.  The proposed SAC suggests Plaintiff, absent
Defendants' harassment, would have spoken out to the media and
the public at large concerning the NYPD's summons policy:

16

> [F]ollowing plaintiff's suspension on October 31, 2009
> the NYPD defendants unconstitutionally imposed this prior
> restraint on plaintiff's speech in an effort by
> defendants to silence, intimidate, threaten and prevent
> plaintiff from disclosing the evidence of corruption and
> misconduct plaintiff had been collecting and documenting
> to the media and the public at large.  SAC ¶ 259.

> Moreover the actions taken by NYPD defendants following
> plaintiff's suspension on October 31, 2009 in continuing
> to involuntarily confine him at JHMC [Jamaica Hospital]
> and relentlessly harassing, threatening and intimidating
> him at his new home in upstate New York violated
> plaintiff's First Amendment right as he was continuing to
> attempt to disclose information to the public at large
> that the largest Police Department in the United States
> had committed serious and continuous breaches of the
> public trust.  SAC ¶ 269.

The City Defendants contend that these allegations
in the SAC constitute a blend of factual allegations and
conclusory statements of intent that are insufficient to
establish a reasonable inference that Defendants were making
an effort at prior restraint.  As such, the key question in
determining whether Plaintiff has pled a valid cause of action
for prior restraint depends on whether the proposed SAC
alleges sufficient facts to establish that Defendants'
motivation in their campaign of harassment was to prevent
Plaintiff from speaking out to the media and public at large
concerning the NYPD's summons policy.

17

Case 1:10-cv-06005-RWS Document 99 Filed 09/10/12 Page 19 of 28

In support of his motion to amend, Plaintiff cites
four prior restraint cases: Zieper v. Metzinger, 392 F. Supp.
2d 516 (S.D.N.Y. 2005); Penthouse v. McAuliffe, 610 F.2d 1353
(5th Cir. 1980); ACLU v. City of Pittsburgh, 586 F. Supp. 417
(W.D. Pa. 1984); and Grennan v. Nassau County, No. 04-
2158(DRH)(WDW), 2007 WL 952067 (E.D.N.Y. Mar. 29, 2007).  In
all four of these cases, the government officials accused of
engaging in prior restraint of the plaintiffs' First Amendment
rights explicitly expressed their intent to limit the
plaintiffs' speech.  See Zieper, 392 F. Supp. 2d at 521-23
(describing phone calls an FBI agent and assistant US attorney
made to defendants discussing the blocking of content on a
website); Penthouse, 610 F.2d at 1360 (describing a "scheme
that included public announcements in the local newspapers,
systematic visits to retailers of the magazines in question,
and a program of carefully timed warrantless arrests" that
created a constructive seizure of the plaintiff's
publications); ACLU, 586 F. Supp. at 419 (describing a
statement from the Mayor released to local media organizations
addressed to all magazine and news dealers expressing his
distaste for the contents of a pornographic magazine and
requesting businesses to remove it from their shelves, thereby
eliminating "the need for the City to engage in a massive

18

sweep of all news stands and stores and the initiation of criminal proceedings"); Grennan, 2007 WL 952067, at *11 (describing plaintiff's supervisor's request that plaintiff "not be in contact with anyone during the day unless there is an emergency of some kind" and that there was "no need for [plaintiff] to be talking to other staff members"). Unlike these four cases, the proposed SAC does not allege facts where Defendants expressly state their intent to prevent Plaintiff from speaking out. While the proposed SAC does allege that Defendants acted "to purposefully intimidate and harass plaintiff in a tireless effort to silence him once and for all," SAC ¶ 213, this statement is not a factual allegation, but rather a conclusory statement concerning Defendants' intent. As such, the facts alleged in the proposed SAC do not establish Defendants' intent to restrain Plaintiff's speech in as clear a manner.

However, the proposed SAC does allege facts from which Defendants' intent to restraint Plaintiff's speech can be inferred. Although the cases involved First Amendment claims in a retaliation rather than prior restraint context, courts have found that intent can be inferred when a complaint pleads sufficient factual allegations to allow such an

19

Case 1:10-cv-06005-RWS Document 99 Filed 09/10/12 Page 21 of 28

inference.  See Dougherty, 282 F.3d at 91 ("The ultimate
question of retaliation involves a defendant's motive and
intent, both difficult to plead with specificity in a
complaint.  It is sufficient to allege facts from which a
retaliatory intent on the part of the defendants reasonably
may be inferred."); Dorsett-Felicelli, Inc. v. County of
Clinton, 371 F. Supp. 2d 183, 191 (N.D.N.Y. 2005) ("The
chronology of events as presented by Plaintiff is sufficient
to infer the County Defendants had a retaliatory motive.").


          Here, the proposed SAC alleges that Plaintiff's
refusal to comply with the NYPD's summons policy resulted in
increased pressure and scrutiny from his supervisors, that he
received a poor evaluation based on his low summons activity
and that when he challenged his low work evaluation, Plaintiff
was subjected to intensified scrutiny and pressure to drop his
objections.  The proposed SAC includes allegations that
Plaintiff was subjected to threats, intimidation and
harassment because of his refusal to drop his appeal of his
low performance evaluation.  The proposed SAC further alleges
that when Plaintiff raised his appeal to the NYPD summons
policy to a Deputy Inspector in the department, he was
harassed and intimidated by his superiors and reassigned to

the telephone switchboard to isolate and degrade Plaintiff.
According to the proposed SAC, after Plaintiff reported the
quota policy to internal affairs and the Quality Assurance
Division, Defendants menaced Plaintiff, ultimately entering
his home on October 31, seizing him and confining him to
Jamaica Hospital, where he was held for six days.  As noted
above, Defendants' harassment of Plaintiff allegedly continued
when Plaintiff relocated to a new home in upstate New York.
These allegations, which are accepted as true at this stage of
the litigation, provide sufficient facts upon which
Defendants' intent to restrain Plaintiff's speech can be
inferred.

The proposed SAC alleges facts that Plaintiff
intended to speak, following his suspension from the NYPD, to
the media and public at large about the NYPD's summons policy.
This intended speech addressed a matter of public concern,
and, because Plaintiff intended to speak to the media and
public following his suspension, Plaintiff's speech was
outside the scope of his official duties.  Accordingly, the
speech was protected by the First Amendment.  The proposed SAC
further alleges that Defendants seized Plaintiff from his home
following his suspension, held him at Jamaica Hospital and

continued to harass him at his new home in upstate New York,
thereby presenting sufficient facts upon which Defendants'
intent to restrain Plaintiff's speech can be inferred.
Accordingly, Plaintiff's motion to amend to include a prior
restraint First Amendment claim is granted.

### B. Plaintiff's Motion To Amend Is Denied With Respect To Allegations That Retaliatory Actions Were Taken Following Plaintiff's Refusal To Obey His Supervisors' Directives

In addition to requesting permission to amend the
complaint to add a claim for prior restraint, Plaintiff
requests that he be allowed to amend his complaint to include
a claim of retaliation in violation of his First Amendment
rights.  As noted above, the theory behind this claim is that
Plaintiff, by refusing to issue summonses and make arrests in
the absence of probable cause, was exercising his First
Amendment rights.  According to the proposed SAC, Defendants'
retaliated against Plaintiff for his exercise of his rights
when Defendants unlawfully seized Plaintiff and detained him
in the Jamaica Hospital psychiatric ward.  See SAC ¶¶ 255-56.

According to Plaintiff, under Jackler v. Byrne, 658
F.3d 225 (2d Cir. 2011), Plaintiff's speech in refusing to

comply with the allegedly unconstitutional directive of his
supervisors would afford him protection under the First
Amendment. Plaintiff contends that the allegations in the
proposed SAC illustrate the orders that Plaintiff refused to
follow were linked to unconstitutional activity, that
Plaintiff's speech in refusing to comply with these
unconstitutional and illegal directives was protected under
Jackler, and that anything done in retaliation of those
refusals would be actionable under the First Amendment.

The facts of Jackler involved a probationary police
officer who asserted First Amendment claims against a police
chief and police officers, alleging retaliation for his
refusals to make false statements in an investigation into a
civilian complaint charging excessive use of force by a police
officer. The Second Circuit, in holding that the probationary
police officer's refusal to retract his truthful report and
make false statements constituted action protected by the
First Amendment, held that

> the First Amendment protects the rights of a citizen to
> refuse to retract a report to the police that he believes
> is true, to refuse to make a statement that he believes
> is false, and to refuse to engage in unlawful conduct by
> filing a false report with the police. We conclude that

23

> Jackler's refusal to comply with orders to retract his
> truthful Report and file one that was false has a clear
> civilian analogue and that Jackler was not simply doing
> his job in refusing to obey those orders from the
> department's top administrative officers and chief of
> police.

Jackler, 658 F.3d at 241-42.

Although Plaintiff's refusal to comply with his
supervisors' directives appears to be analogous to Jackler's
refusal to withdraw his truthful report and testify falsely,
there is a key distinction between these two cases. In
Jackler, the activity at issue concerned speech of a written
and spoken variety, see Jackler, 658 F.3d at 234 ("On this
appeal, the parties agree that Jackler's First Amendment
claims are not that defendants retaliated against him for
filing his Report but rather that they retaliated because of
his refusals to follow their ensuing instructions to retract
the Report and to speak falsely."), and Jackler's "First
Amendment interest in refusing to make a report that was
dishonest." Id. at 240. Ultimately, the Jackler Court
concluded that "a citizen has a First Amendment right to
decide what to say and what not to say, and, accordingly, the
right to reject government efforts to require him to make

24

statements he believes are false." Id. at 241.  In contrast

to Jackler where the Second Circuit focused on a citizens'

right "to decide what to say and what not to say," Plaintiff's

activity does not involve speech but rather conduct, and,

accordingly, Plaintiff's First Amendment interest is less

clearly defined.

The boundary beyond which conduct becomes speech

represents a difficult legal question, though the Second

Circuit has provided guidance:

> For purposes of the First Amendment, the Supreme Court
> has repeatedly rejected the view that "an apparently
> limitless variety of conduct can be labeled 'speech'
> whenever the person engaging in the conduct intends
> thereby to express an idea." United States v. O'Brien,
> 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).
> [The Second Circuit] echoed this view in East Hartford
> Educ. Ass'n v. Bd. of Educ. of the Town of East Hartford,
> 562 F.2d 838 (2d Cir. 1977), where [it] recognized that
> acknowledging the symbolic speech-like qualities of a
> course of conduct is "only the beginning, and not the
> end, of constitutional inquiry."  562 F.2d at 857.
>
> To determine whether conduct is expressive and entitled
> to constitutional protection requires an inquiry into
> whether the activity is "sufficiently imbued with the
> elements of communication to fall within the scope of the
> First and Fourteenth Amendments," Johnson v. Texas, 491
> U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989),
> for not all conduct may be viewed as speech simply
> because by her conduct the actor intends to express an
> idea.  See Spence v. Washington, 418 U.S. 405, 409, 94
> S.Ct. 2727, 41 L.Ed.2d 842 (1974).  To be sufficiently

imbued with communicative elements, an activity need not
necessarily embody "a narrow, succinctly articulable
message," Hurley v. Irish American Gay, Lesbian and
Bisexual Group of Boston, 515 U.S. 557, 569, 115 S.Ct.
2338, 132 L.Ed.2d 487 (1995), but the reviewing court
must find, at the very least, an intent to convey a
"particularized message" along with a great likelihood
that the message will be understood by those viewing it.
Johnson, 491 U.S. at 404, 109 S.Ct. 2533; Spence, 418
U.S. at 410-11, 94 S.Ct. 2727.

Zalewsky v. County of Sullivan, 316 F.3d 314, 319 (2d Cir.

2003).

Irrespective of whether Plaintiff's speech presents

a "particularized message," Plaintiff's action of not making

an arrest or not issuing a summons is not entitled to First

Amendment protection because there is no great likelihood that

Plaintiff's message will be understood by those viewing it.

"[T]o determine whether an act or activity is imbued with

enough elements of communication to fall within the scope of

the First Amendment, a court must assess not only the

intention of the would-be speaker but also the objective

likelihood that the putative message will be understood by

those who view the activity." Fighting Finest, Inc. v.

Bratton, 898 F. Supp. 192, 195 (S.D.N.Y. 1995) (citing

Johnson, 491 U.S. at 404). In this case, it is a stretch to

26

say a person observing Plaintiff's refusal to make an arrest
or issue a summons would understand Plaintiff's conduct as an
expression of his disagreement with the NYPD's summons policy.
Because Plaintiff's failure to make arrests or issue summonses
is not protected by the First Amendment, Plaintiff's motion to
amend the complaint to include a First Amendment retaliation
claim is denied.

**Conclusion**

        For the reasons set forth above, Plaintiff's motion
to amend is granted with respect to the First Amendment prior
restraint claim and denied with respect to the First Amendment
retaliation claim.

        It is so ordered.

New York, NY
September 7 , 2012

                                    ROBERT W. SWEET
                                        U.S.D.J.

27