UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ADRIAN SCHOOLCRAFT,

                              Plaintiff,              10-CV-6005 (RWS)

        -against-
                                                     **MEMORANDUM OF LAW
THE CITY OF NEW YORK, *et al.*,                       IN SUPPORT OF MOTION
                                                     TO AMEND**

                              Defendants.

-------------------------------------------------------------X

*Preliminary Statement*

        Plaintiff, Police Officer Adrian Schoolcraft ("Officer Schoolcraft" or

"Plaintiff"), submits this memorandum of law in support of his motion to amend

his complaint.  The proposed Third Amended Complaint is attached as Exhibit 1,

and the governing pleading, the Second Amended Complaint, is attached as

Exhibit 2.  To facilitate review of the proposed changes, a draft of the proposed

Third Amended Complaint, which reflects or "tracks" the changes is attached as

Exhibit 3.

        The proposed amendments are as follows:

1. Dropping four named defendants, at the request of the City Defendants;
2. Dropping a redundant claim for relief under § 1983, at the request of
   the City Defendants;
3. Clarifying that two individuals identified in the Second Amended
   Complaint (Steven Weiss and Rafel Mascol) are named defendants in
   this action whose names were inadvertently omitted from the caption

and a list of NYPD-related defendants;

4. Re-asserting claims under § 1983 against Jamaica Hospital Medical Center ("JHMC");

5. Adding a claim for declaratory judgment relief, seeking from the Court as part of the final relief an order finding: (1) that all of the defendants' conduct with respect generally and with respect to their treatment of Officer Schoolcraft was unlawful; (2) and directing the expungement of Officer Schoolcraft's medical and personnel records to the extent that those records suggest that Officer Schoolcraft was properly admitted to a psychiatric ward, that he suffers from a mental illness, that his condition required his commitment to a psychiatric hospital, and that he is dangerous to himself or others.

6. Making editing and typographical changes to the Second Amended Complaint, as reflected in the track-changes version attached as Exhibit 3.

### Standard For A Motion To Amend

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, leave to amend a pleading shall be given freely when justice requires. *Schoolcraft v. City of New York*, 2012 U.S. Dist. Lexis 82888 at *2 (S.D.N.Y. June 14, 2012). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded the opportunity to test his claim on the merits." *Id.* (quoting *Williams v. Citigroup, Inc.*, 659 F.3d 208, 213 (2d Cir. 2011)). "However, [a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* (quoting *McCarthy v. Dunn & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

*Argument*

For the reasons set forth below, Officer Schoolcraft requests that the motion to amend be granted.

*1.   Dropping Four Named Defendants.*

On July 30, 2014, the City Defendants sent plaintiff's counsel a letter requesting that various claims and certain defendants be dropped from the action. A copy of the letter is attached as Exhibit 4.

In their letter, the City Defendants request that Officer Schoolcraft drop his claims against five individual defendants: Sondra Wilson; Richard Wall; Robert O'Hare; Thomas Hanley; and Timothy Trainor.  (*Id.* at pp. 1-2)  These five defendants all worked in the Brooklyn North Investigation Unit and were each personally involved in the numerous retaliatory and harassing "visits" upstate to Officer Schoolcraft's home after he was released from the JHMC psychiatric ward.

By this motion, Officer Schoolcraft requests leave to amend his pleading to drop as named defendants the four subordinate officers in that Unit who reported to the Unit's commanding officer, Captain Timothy Trainor.  Upon review of the extensive discovery record in this case, it appears that these four named defendants should be dropped from the action as defendants.

Officer Schoolcraft, however, does not agree to drop his claims against Captain Trainor because Captain Trainor was the senior superior officer in charge

3

of the Brooklyn North Investigations Unit. In that capacity, Captain Trainor directed that his subordinate officers harass, videotape, and spy on Officer Schoolcraft at his home in upstate New York. Indeed, in discovery we have learned that Captain Trainor personally directed two of his subordinates, Defendants Gough and Duncan -- who were also the two Brooklyn North Investigation Unit officers who assaulted and handcuffed Officer Schoolcraft in his home on October 31, 2009 -- to accompany others from the Unit on three of their "visits" to Officer Schoolcraft's upstate home.

Moreover, the discovery record shows that Captain Trainor purposefully selected Gough and Duncan for these "visits" for the purpose of intimidating Officer Schoolcraft with the implicit threat of again being handcuffed and forcibly removed against his will from his home. Captain Trainor directed Defendants Gough and Duncan to participate in these "visits" even though both Gough and Duncan told Captain Trainor that *they* had concerns about being given the assignment precisely because they were the ones from the Brooklyn North Investigations Unit who assaulted and handcuffed Officer Schoolcraft on October 31, 2009. Despite these stated concerns, Captain Trainor, nevertheless, ordered Defendants Gough and Duncan to "visit" Officer Schoolcraft's home -- a two hundred mile trip -- on three occasions, purportedly to deliver paperwork to Officer Schoolcraft.

4

Accordingly, we request that Officer Schoolcraft be permitted to amend the Second Amended Complaint to drop Wilson, Wall, O'Hare, and Hanley as defendants.

### 2.   *Dropping the First Claim for Relief.*

In the City Defendants' letter, they also request that Officer Schoolcraft drop his first claim for relief.  (Exhibit 4 at pp. 3-4)  The basis for the request is that the first claim for "deprivation of rights" under § 1983 is insufficient because § 1983 is not an independent source of a substantive right, but a procedural mechanism for providing a person denied a federal right with a remedy.  (*Id.*)

We agree.  Accordingly, in the proposed Third Amended Complaint we have re-cast those general allegations so that the first claim for relief contains Officer Schoolcraft's first substantive claim.  Accordingly, Plaintiff requests that this amendment also be permitted.

### 3.   *Clarifying Steven Weiss and Rafel Mascol's Status as Defendants.*

The Second Amended Complaint (Exhibit 2) makes specific references to "defendant Weiss" and "defendant Mascol."  *See id.* at ¶¶ 66, 100, 107 & 134. However, due to a clerical mistake, Weiss and Mascol were not listed as defendants in the caption or in the pleading's list of NYPD defendants (*Id.* at p.1 & p.4.)

Since both Weiss and Mascol were identified as defendants in the Second

Amended Complaint, the Court should permit this clarifying amendment. The omission was only a clerical mistake and neither Weiss nor Mascol can claim any prejudice arising from this correction.

The statute of limitations does not render this request futile. Defendants Weiss and Mascol, even if they had not been originally named as defendants, could be brought in now as defendants in this action under the relation-back doctrine, notwithstanding any limitations argument. Rule 15(c) of the Federal Rules of Civil Procedure provides that an amended pleading relates back to the original pleading for purpose of the statute of limitations when: (1) both complaints arise out of the same conduct, transaction, or occurrence; (2) the additional defendant must have been omitted from the original complaint by mistake; and (3) the additional defendant must not be prejudiced by the delay. *Anwar v. Fairfield Greenwich Ltd.*, 2010 U.S. Dist. Lexis 86716 (S.D.N.Y. Aug. 18, 2010) (citing *VKK Corp. v. National Football League*, 244 F.3d 114, 128 (2d Cir. 2001)).

The linchpin for the application of the relation back doctrine is notice to the defendant. *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986). Accordingly, the relevant inquiry is what the improperly named defendant "knew or should have known during the [relevant] period, not what the plaintiff knew or should have known at the time of filing her original complaint." *Krupski v. Costa Crociere S.P.A.*, 130 S. Ct. 2485, 2493 (2010).

Here, all the factors for relation back are satisfied. First, the claims arise from the same facts. Second, Weiss and Mascol were identified and mentioned as defendants in the Second Amended Complaint and were merely omitted from the caption and the list of defendants by mistake, as evidenced by the references in the text to them as defendants. Third, neither Weiss nor Mascol can show any prejudice arising from the fact that they were not previously served with a summons. Thus, the amendment to include their names in the caption as defendants should be granted.

### 4.   Re-asserting Section 1983 Claims Against JHMC.

On May 5, 2011, the Court granted JHMC's motion to dismiss the § 1983 claim against it without prejudice. *Schoolcraft v. City of New York*, 2011 U.S. Dist. Lexis 48996 at p. *17 (S.D.N.Y. May 5, 2011). The basis for the Court's decision was that the complaint did not allege that "JHMC's employees acted pursuant to an official JHMC policy, the direction of a JHMC policymaker, or JHMC custom when they participated in the deprivation of Plaintiff's constitutional rights." *Id.* at *13. Absent a policy or practice that caused the violation of Officer Schoolcraft's constitutional rights, the Court held that no claim could be stated. *Id.*

Thus, the Court's decision was predicated on the plaintiff's claim that JHMC committed malpractice and departed from generally accepted medical practices

when it involuntarily committed Officer Schoolcraft against his will.  While this allegation was sufficient to state a claim for malpractice, the Court ruled that it was insufficient to state a claim under § 1983 because that claim required that the constitutional violation be caused by a JHMC policy or practice.

Since the Court's ruling on JHMC's pre-discovery motion to dismiss, Officer Schoolcraft has taken extensive discovery from the defendants.  Based on that discovery, Officer Schoolcraft is now seeking to re-assert claims against JHMC under Section 1983 to alleged that JHMC had an unlawful policy and practice that caused the improper commitment of Officer Schoolcraft.

In discovery, we have learned:  (1) that JHMC in fact had a policy and practice of involuntarily committing patients who presented *any potential risk* of dangerousness, not a substantial risk, as required by the law; and (2) that the decisions by JHMC's medical staff to involuntary commit Officer Schoolcraft were *based on* that unlawful policy and practice.

Despite the explicit state and federal law requirements that an involuntary commitment be based on a *substantial risk of dangerousness*, JHMC's actual policy and practice was to authorize an involuntary commitment based on *any* risk of dangerousness.  Section 9.39 of the New York State Mental Hygiene Law is the

governing statutory provision for an emergency involuntary commitment.[1]
Generally, the statute provides that a doctor can involuntary commit a person on an
emergency basis provided that the doctor finds (i) that the person has a mental
illness; (ii) that the person requires immediate care, and (iii) that there has been
established a *likelihood of serious harm* to the patient or others.

Likelihood of serious harm is expressly defined in the statute to mean either:

"1. *substantial risk* of physical harm to himself as manifested by

threats of or attempts at suicide or serious bodily harm or other

conduct demonstrating that he is dangerous to himself, or

2. *a substantial risk* of physical harm to other persons as manifested

by homicidal or other violent behavior by which others are placed in

---

[1] § 9.39. *Emergency admissions for immediate observation, care, and treatment.* (a) The
director of any hospital maintaining adequate staff and facilities for the observation,
examination, care, and treatment of persons alleged to be mentally ill and approved by the
commissioner to receive and retain patients pursuant to this section may receive and retain
therein as a patient for a period of fifteen days any person alleged to have a mental illness for
which immediate observation, care, and treatment in a hospital is appropriate and which is likely
to result in serious harm to himself or others. "Likelihood to result in serious harm" as used in
this article shall mean: 1. substantial risk of physical harm to himself as manifested by threats of
or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous
to himself, or 2. a substantial risk of physical harm to other persons as manifested by homicidal
or other violent behavior by which others are placed in reasonable fear of serious physical harm.
The director shall cause to be entered upon the hospital records the name of the person or
persons, if any, who have brought such person to the hospital and the details of the circumstances
leading to the hospitalization of such person.  The director shall admit such person pursuant to
the provisions of this section only if a staff physician of the hospital upon examination of such
person finds that such person qualifies under the requirements of this section. Such person shall
not be retained for a period of more than forty-eight hours unless within such period such finding
is confirmed after examination by another physician who shall be a member of the psychiatric
staff of the hospital

reasonable fear of serious physical harm."[2]

A defense to a claim under § 1983 for deprivation of an involuntarily committed patient's constitutional rights to due process and liberty must be based on compliance with the requirements of Section 9.39 of the Mental Hygiene Law. That same compliance is also required as a defense to a § 1983 claim of unlawful imprisonment. In *Project Release v. Prevost*, 722 F.2d 960, 972-74 (2d Cir. 1983), the Second Circuit held that the provisions of Section 9.39 satisfy the due process clauses of the Fifth and Fourteenth Amendments. Similarly, in *Rodriguez v. City of New York*, 72 F. 3d 1051, 1061 (2d Cir 1995), the Second Circuit held that due process *requires* an assessment of a patient's dangerousness as a condition to the massive curtailment of liberty associated with an involuntary commitment.[3]   In addition, District Courts within the Second Circuit have held that compliance with Section 9.39 can establish the privilege defense to a claim for unlawful imprisonment.[4]  Thus, a finding of a *substantial risk* of dangerousness is a key

---

[2] *Id.* (emphasis added).

[3] "An involuntary civil commitment is a 'massive curtailment of liberty', and it therefore cannot permissibly be accomplished without due process of law. As a substantive matter, due process does not permit the involuntary hospitalization of a person who is not a danger either to herself or to others: assuming that the term ['mental illness'] can be given a reasonably precise content and that the 'mentally ill' can be identified with reasonable accuracy, *there is still no constitutional basis for confining such persons involuntarily if they are dangerous to no one and can live safely in freedom.*" *Rodriguez v. City of New York*, 72 F. 3d 1051, 1061 (2d Cir. 1995) (citations omitted and emphasis added).

[4]  *See, e.g., Tewksbury v. Dowling,* 169 F. Supp. 103, 112 (E.D.N.Y. 2001);  *see also Ruhlmann v. Smith*, 323 F. Supp. 2d 356, 360 (N.D.N.Y. 2004) (whether confinement was privileged depended on whether Section 9.39 was satisfied).

requirement under state and federal law.

The deposition of the Rule 30(b)(6) witness for JHMC as well as the depositions of Defendants Dr. Bernier and Dr. Isakov, the two JHMC doctors who made the decisions to commit and to retain Officer Schoolcraft in the JHMC psychiatric facility, show that Officer Schoolcraft was involuntarily committed based on a JHMC policy and practice that violated Officer Schoolcraft's constitutional rights.

It is correct that the written policy documents track the requirements of Mental Hygiene Law Section 9.39 by requiring a substantial risk of dangerousness. More specifically, the pre-printed admission form filled out by Dr. Bernier, which authorized Officer Schoolcraft's commitment, calls for a finding of a substantial risk of dangerousness.  (Exhibt 5.)  Similarly, the formal JHMC policy statement mimics the "substantial risk" language of the statute. (Exhibit 6.)[5]

On the other hand, all three JHMC medical witnesses testified in deposition that *any potential risk* of dangerousness was all that was required to commit someone involuntarily to their psychiatric facility.  The admitting doctor who signed the pre-printed form, Defendant Bernier, testified at her deposition that if there was any potential risk that a person was dangerous she will committed the

---

[5]  *See* Exhibit 5 Emergency Admission Form, marked as Plaintiff's Deposition Exhibit 171; Exhibit 6; JHMC Department of Psychiatry Manual on Emergency Admissions, marked as Plaintiff's Deposition Exhibit 70.

Case 1:10-cv-06005-RWS   Document 291   Filed 12/04/14   Page 12 of 17

person involuntarily.  (Exhibit 7; Bernier Tr. 248-49).  Similarly, Dr. Isakov, the

attending doctor at the JHMC psychiatric ward who co-signed the same form,

confirming Dr. Bernier's commitment decision, testified that no matter what the

level of risk (low, medium, high), if he perceived that there is any potential risk of

dangerousness, he will involuntarily commit the patient.  (Exhibit 8; Isakov Tr. at

94-98.)  Finally, the Rule 30(b)(6) witness for JHMC, Vinod Dhar, testified that

the policy and practice at JHMC was to involuntarily commit a patient where there

was *any* risk of dangerousness.  (Exhibit 9; Dhar Tr. at 132-35.)

Based on these admissions, Officer Schoolcraft requests leave to amend his

complaint.  The proposed amendment would re-assert that JHMC violated Section

1983 when it involuntarily committed Officer Schoolcraft pursuant to an

unconstitutional policy and practice that only called for any potential risk of

dangerousness as a condition for involuntary commitment.  The JHMC defendants

have admitted in their sworn testimony that their actual policy and practice was to

commit persons involuntarily to their psychiatric facility on a determination of

potential dangerousness at any level of risk -- instead of a substantial risk as

required by Mental Hygiene Law Section 9.39 and the United States Constitution.

In other words, JHMC has in effect unlawfully re-written § 9.39 by removing the

requirement of a substantial risk of danger and replacing it with the nominal or

non-existent requirement  "any potential" risk of danger.

Although JHMC will argue that the Court has already ruled on this issue in its decision on the motion to dismiss, there are at least three reasons why that argument should be rejected.  First, the initial motion to dismiss was granted *without prejudice*, thereby putting JHMC on notice that the issue had not been finally decided.

Second, the Court's decision was an interlocutory order and therefore, as a matter of law, remains subject to modification prior to the entry of a final judgment by the District Court.[6]  Indeed, Rule 54(b) expressly provides that a District Court's orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

The Court should permit the amendment in the light of the information obtained in discovery from JHMC about its actual policies and practices.  As noted above, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded the opportunity to test his claim on the merits." *Schoolcraft v. City of New York*, 2012 U.S. Dist. Lexis 82888 at *2 (S.D.N.Y. June 14, 2012).

A third factor that the Court should consider in ruling on this motion is that when the Court decided JHMC's initial motion to dismiss, the case law generally

---

[6]  *Peterson v. Syracuse Police Dept.*, 2012 U.S. App. Lexis at ** 8 n.1 (2d Cir. Mar. 15, 2012) (district court has inherent power to modify interlocutory orders); *Grace v. Rosenstock*, 228 F. 3d

held that a private entity could be subject to Section 1983 liability only under a *Monell*-type analysis, where that entity's policy or practice caused the constitutional violation.   *Schoolcraft v. City of New York,* 2011 U.S. Dist. Lexis 48996 at * 11 (S.D.N.Y. May 6, 2011) (citing *Rojas v. Alexander's Dept. Store,* 924 F. 2d 406, 408 (2d Cir. 1990)).   Recently, however, the Seventh Circuit has noted that "current Supreme Court precedent seems to support rather than reject *respondeat superior* liability for private corporations under § 1983."[7]  Thus, the underlying basis for the Court's holding has come into question.  And as also noted by the Seventh Circuit in that same decision, there are now "substantial grounds to question the extension of the *Monell* holding for municipalities to private corporations."[8]

Under these circumstances, Officer Schoolcraft respectfully urges the Court to judge this motion in the light of new facts developed through discovery as well as the evolving nature of the law on the issue of a private entity's liability under § 1983.  While the apparent shift in the law is an important consideration, the Court need not agree that the law in the Second Circuit ought to change.  As noted above, the admissions by the JHMC defendants about their actual policies and practices are sufficient grounds, even if the law has not changed.

---

40, 50 (2d Cir. 2000) ("All interlocutory orders remain subject to modification or adjustment prior to entry of a final judgment adjudicating the claims to which they pertain").

5. *Adding a Claim for Declaratory Judgment Relief.*

Officer Schoolcraft also seeks to add a claim for declaratory judgment against the defendants.  The proposed amendments seek to have the Court declare that the City Defendants' conduct was illegal and that Officer Schoolcraft's medical and personnel files should be expunged to the extent that they contain a record or a finding that Officer Schoolcraft was mentally ill, dangerous or otherwise a person who required involuntary commitment to a psychiatric ward.

These proposed amendments do not add parties and arise from the same operative facts as already set forth in the existing pleading.  Accordingly, the defendants cannot demonstrate any cognizable prejudice from these amendments. Since leave to amend is freely granted and the defendants cannot point to any prejudice, the motion should be granted.

6. *Making Editorial and Typographical Changes to the Second Amended Complaint.*

Finally, we request leave to make the various editorial and typographical changes to the Second Amended Complaint.  Since leave to amend is freely granted and no prejudice to the defendants can arise from these proposed changes,

---

[7] *Shields v. Illinois Department of Corrections*, 746 F. 3d 782, 793 (7th Cir. 2014).
[8] *Id.* at 790.

this part of the motion should also be granted.

Dated:  December 4, 2014
         New York, New York

                      LAW OFFICE OF
                      NATHANIEL B. SMITH

                      Nathaniel B. Smith
                      111 Broadway, Suite 1305
                      New York, New York 10006
                      (212) 227-7062
                      Attorney for Plaintiff

List of Exhibits

1. Proposed Third Amended Complaint
2. Second Amended Complaint
3. Tracked Changes of Third Amended Complaint
4. City Defendants Letter, dated 7/30/14
5. Plaintiff's Exhibit 171
6. Plaintiff's Exhibit 70
7. Bernier Tr. at p. 1 & 2, 247-249
8. Isakov Tr. at p. 1 & 2, 94-99
9. Dhar Tr. at p. 1, 132-135