10-CV-6005 (RWS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADRIAN SCHOOLCRAFT,

Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF CITY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Suzanna Publicker Mettham*
*Tel:  (212) 356-2372*
*Matter #:  2010-033074*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... v

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT

    POINT I

        PLAINTIFF'S UNLAWFUL SEARCH AND
        ENTRY CLAIMS FAIL. ........................................................... 1

        A. Plaintiff's Unlawful Search and Entry Claims
           Against Defendants Marino, Lauterborn,
           Gough, Duncan, Broschart, and Hanlon Fail as
           a Matter of Law .................................................................. 1

        B. Plaintiff Has Not Alleged That Defendants
           Wilson, Wall, O'Hare, Trainor, Hanley,
           Nelson, Caughey, Sawyer and James
           Unlawfully Searched and/or Seized Him ........................... 5

    POINT II

        PLAINTIFF'S FALSE ARREST AND FALSE
        IMPRISONMENT CLAIMS FAIL PURSUANT
        TO NEW YORK'S MENTAL HEALTH AND
        HYGIENE LAW .................................................................... 6

    POINT III

        PLAINTIFF'S FIRST AMENDMENT CLAIM
        SHOULD BE DISMISSED .................................................... 10

        A. Plaintiff Does Not Have an Interest Protected
           by the First Amendment. ..................................................... 11

        B. City Defendants' Actions Were Not Motivated
           By Plaintiff's Speech ......................................................... 11

        C. Plaintiff's First Amendment Right Was Not
           Chilled................................................................................. 13

D.  Defendants  Sondra  Wilson,  Richard  Wall,
Robert O'Hare, Thomas Hanley, and Timothy
Trainor Must Be Dismissed .............................................................. 14

POINT IV

42 U.S.C. § 1983 DOES NOT VEST CITIZENS
WITH SUBSTANTIVE RIGHTS ........................................................... 15

POINT V

LACK OF PERSONAL INVOLVEMENT............................................. 15

A.  Defendants  Wilson,  Wall,  O'Hare,  Trainor,
Hanley,  Nelson,  Caughey,  Lauterborn  and
Hanlon.................................................................................................. 16

B.  Defendant Gerald Nelson ................................................................. 16

C.  Defendant Timothy Caughey........................................................... 17

POINT VI

PLAINTIFF   CANNOT   DEMONSTRATE   A
CONSPIRACY   SUFFICIENT   TO   SURVIVE
SUMMARY JUDGMENT ..................................................................... 18

A.  The Intra-Corporate Conspiracy Doctrine Bars
Liability for Any Conspiracy Among Members
of the NYPD ...................................................................................... 19

B.  There  is  No  Evidence  Of  a  Conspiracy
Between  City  Defendants  and  Individuals
Outside of the NYPD......................................................................... 19

POINT VII

INTENTIONAL  INFLICTION  OF  EMOTIONAL
DISTRESS CANNOT SUCCEED WHERE THE
UNDERLYING   CLAIMS   FALL   WITHIN
TRADITIONAL TORT LIABILITY. ..................................................... 21

**Page**

POINT VIII

    COMMON LAW NEGLIGENCE AGAINST A
    MUNICIPALITY MAY ONLY STAND WHERE
    A PLAINTIFF ALLEGES THAT A DEFENDANT
    ACTED OUTSIDE THE SCOPE OF HIS
    EMPLOYMENT ................................................................................... 22

POINT IX

    PLAINTIFF'S CLAIM OF NELIGENT
    DISCLOSURE OF IAB COMPLAINTS FAILS AS
    A MATTER OF LAW ............................................................................ 24

    A. Plaintiff's Claim of Negligent Disclosure Is
       Barred by Public Policy ...................................................... 24

        1. *Negligent Investigation Is Not a Valid*
           *Cause of Action* .......................................................24

        2. *Plaintiff Cannot Transmogrify an*
           *Intentional Tort Into One of Negligence* ....................25

    B. IAB Did Not Owe Plaintiff a Duty of
       Confidentiality ................................................................... 26

    C. Plaintiff's Claim of Negligent Disclosure Fails
       Because the Disclosure Was Made to an
       Individual with a Right to That Information...................... 28

POINT X

    PLAINTIFF CANNOT ASSERT A CLAIM FOR
    MALICIOUS ABUSE OF PROCESS BECAUSE
    HE WAS NOT HELD PURSUANT TO LEGAL
    PROCESS ........................................................................................... 29

POINT XI

    PLAINTIFF CANNOT SURVIVE SUMMARY
    JUDGMENT ON ANY OF HIS THEORIES OF
    MUNICIPAL LIABILITY ..................................................................... 31

    A. Plaintiff Has Not Alleged Conduct By the
       Official Policy Maker ......................................................... 32

**Page**

B. Plaintiff's Claim of an Unlawful Practice Fail Because He Has Not Alleged and Cannot Show Conduct Sufficient to Demonstrate a "Custom or Usage" Indicating Acquiescence .................................................. 33

    1. *Plaintiff's Claims of Intimidation and Threats of Retaliation and Intentionally Leaking IAB Complaints Fail* .................................................. 34

    2. *Contemporaneous Conduct Cannot Establish a Pattern of Violations to Put the City on Notice* .................................................. 37

    3. *Plaintiff Fails To Establish A Causal Connection* .................................................. 37

C. Plaintiff Cannot Demonstrate Deliberate Indifference .................................................. 38

    1. *Plaintiff Cannot Demonstrate Deliberate Indifference to Disciplining Supervisors* .................................................. 40

    2. *Plaintiff Has Not Brought Claims Against Any Policy Makers* .................................................. 44

    3. *Failure to Train* .................................................. 44

D. Plaintiff Must Establish a Violation of His Constitutional Rights to Assert Municipal Liability .................................................. 46

    1. *Plaintiff Has Not Alleged a Valid First Amendment Claim for Retaliation* .................................................. 47

    2. *Plaintiff's Claims of An Alleged Quota Fail* .................................................. 47

CONCLUSION .................................................. 48

# TABLE OF AUTHORITIES

**Cases**                                                                  **Pages**

Akins v. Glens Falls City Sch. Dist.,
   53 N.Y.2d 325 (N.Y. 1981) ............................................................................ 26

Alfaro v. Wal-Mart Stores, Inc.,
   210 F.3d 111 (2d Cir. 2000).......................................................................... 26

Allen v. City of New York,
   No. 03-CV-2829 (KMW) (GWG),
   2007 U.S. Dist. LEXIS 15 (S.D.N.Y. Jan. 3, 2007) ............................... 33

Ameduri v. Vill. of Frankfort,
   2014 U.S. Dist. LEXIS 44564 (N.D.N.Y. Mar. 31, 2014)................................. 43, 44

Amnesty Am. v. Town of W. Hartford,
   361 F.3d 113 (2d Cir. 2004)........................................................ 39, 41, 45

Anderson v. Creighton,
   483 U.S. 635 (1987).......................................................................... 4

Anemone v. Metropolitan Transp. Auth.,
   05-CV-3170 (LAP), 2008 U.S. Dist. LEXIS 36091 (S.D.N.Y. May 2, 2008),
   aff'd, 629 F.3d 97 (2d Cir. 2011)......................................................... 11, 12

Anthony v. City of New York,
   339 F.3d 129 (2d Cir. 2003).......................................................... 4, 16

Batista v. Rodriguez,
   702 F.2d 393 (2d Cir. 1983).......................................................... 40

Bayne v. Provost,
   04-CV-44, 2005 U.S. Dist. LEXIS 40889 (N.D.N.Y Aug. 4, 2005),
   quoting Monday, 118 F.3d at 1102 (6th Cir. 1997)................................. 8

Bd. Of Cnty. Comm'rs of Bryan Cnty. v. Brown,
   520 U.S. 397 (1997)........................................................................ 39, 40

Bennett v. Goord,
   343 F.3d 133 (2d Cir. 2003)........................................................ 12

Blue v. Koren,
   72 F.3d 1075 (2d Cir. 1995)........................................................ 11, 12

Board of Educ. v. Farmingdale Classroom Teachers Assn.,
   38 N.Y.2d 397 (N.Y. 1975) ........................................................ 30

**Cases**     **Pages**

Bond v.United States,
    529 U.S. 334 (2000)................................................................................................ 2

Brigham City v. Stuart,
    547 U.S. 398 (2006)............................................................................................ 1, 5

Brown v. City of New York,
    13-CV-1018 (KBF), 2014 U.S. Dist. LEXIS 83513 (S.D.N.Y. June 18, 2014)..................... 11

Brown v. Pritchard,
    09-CV-214S (HBS), 2011 U.S. Dist. LEXIS 72486 (W.D.N.Y. July 6, 2011)....................... 42

Carnesi v. City of N.Y.,
    98-CV-4899 (LMM), 2001 U.S. Dist. LEXIS 14561 (S.D.N.Y. 2001) ................................. 34

City of Canton v. Harris,
    489 U.S. 378 (1989).......................................................................... 32, 38, 39, 43, 45

City of Los Angeles v. Heller,
    475 U.S. 796 (1986)............................................................................................ 46

City of Oklahoma v. Tuttle,
    471 U.S. 808 (1985)........................................................................................ 34, 45

City of St. Louis v. Praprotnik,
    485 U.S. 112 (1985)............................................................................................ 33

Cobb v. Pozzi,
    363 F.3d 89 (2d Cir. 2004)..................................................................................... 13

Coffey v. City of New York,
    49 A.D.3d 449 (1st Dep't 2008) .............................................................................. 22

Colodney v. Continuum Health Partners, Inc.,
    03-CV-7276 (DLC), 2004 U.S. Dist. Lexis 6606 (S.D.N.Y. Apr. 15, 2004) ......................... 23

Colombo v. O'Connell,
    310 F.3d 115 (2d Cir. 2002).................................................................................... 14

Connell v. Signoracci,
    153 F.3d 74 (2d Cir. 1998)..................................................................................... 10

Connick v. Thompson,
    131 S. Ct. 1350 (2011) .............................................................................. 37, 39, 45, 46

**Cases**                                                                 **Pages**

Conte v. County of Nassau,
    06-CV-4746 (JFB)(ETB), 2010 U.S. Dist. LEXIS 104815 (E.D.N.Y. Sept. 30, 2010) .......... 13

Cook v. Sheldon,
    41 F.3d 73 (2d Cir. 1994) ....................................................................... 29, 30

Cuevas v. City of New York,
    No. 07-CV-4169 (LAP), 2009 U.S. Dist. LEXIS 114984 (S.D.N.Y. Dec. 7, 2009) .............. 38

Cuffy v. New York,
    69 N.Y.2d 255 (N.Y. 1987) ..................................................................... 26, 27

Curiano v. Suozzi,
    63 N.Y.2d 113 (N.Y. 1984) ......................................................................... 30

Curley v. Village of Suffern,
    268 F.3d 65 (2d Cir. 2001) ................................................... 10, 11, 13, 14, 15

Danielak v. City of New York,
    No. 02-CV-2349 (KAM), 2005 U.S. Dist. LEXIS 40901 (E.D.N.Y. Sept. 26, 2005) ........... 19

Davis v. City of New York,
    228 F. Supp. 2d 327 (S.D.N.Y. 2002) ....................................................... 35, 36

Demaine v. Samuels,
    29 F. App'x 671 (2d Cir. 2002) ................................................................... 27

Dettelis v. City of Buffalo,
    3 F. Supp. 2d 341 ................................................................................... 34

Devenpeck v. Alford,
    543 U.S. 146 (2004) ................................................................................... 7

Dorn v. Maffei,
    386 F. Supp. 2d 479 (S.D.N.Y. 2005) ............................................................ 21

Doyle v. Coombe,
    No. 97-2680, 1998 U.S. App. LEXIS 20261 (2d Cir. June 12, 1998) ........................... 5

Dunk v. Brower,
    11-CV-4564 (ER), 2013 U.S. Dist. LEXIS 160667 (S.D.N.Y. Nov. 7, 2013) ................ 11, 13

Dwares v. City of New York,
    985 F.2d 94 (2d Cir. 1993) ......................................................................... 45

**Cases**                                                           **Pages**

Edwards v. City of New York,
    03-CV-9407, 2005 U.S. Dist. LEXIS 34376 (S.D.N.Y. Dec. 19, 2005) ................................. 34

EEOC v. Die Fliedermaus L.L.C.,
    77 F. Supp. 2d 460 (S.D.N.Y.1999)....................................................................... 21

Ehrens v. Lutheran Church,
    385 F.3d 232 (2d Cir. 2004)................................................................................. 22

Eifert v. Bush,
    27 A.D.2d 950 (N.Y. App. Divi. 2d Dept. 1967),
    aff'd , 22 N.Y.2d 681 (1968) ............................................................................... 23

Escalera v. Lunn,
    361 F. 3d 737 (2d Cir. 2004)................................................................................. 9

Escobar v. City of New York,
    765 F. Supp. 2d 415 (E.D.N.Y. 2011) ................................................................... 34

Frisenda v. Village of Malverne,
    775 F. Supp. 2d 486 (E.D.N.Y. 2011) ................................................................... 11

Gangadeen v. City of New York,
    654 F. Supp. 2d 169 (S.D.N.Y. 2009)................................................................... 47

Georgia v. Randolph,
    547 U.S. 103 (2006)............................................................................................ 2

Giaccio v. City of New York,
    308 Fed. Appx. 470 (2d Cir. 2009)...................................................................... 34

Girard v. 94th St. & Fifth Ave. Corp.,
    530 F.2d 66 (2d Cir. 1976).................................................................................. 19

Golino v. City of New Haven,
    950 F. 2d 864 (2d Cir. 1991)................................................................................ 9

Golphin v. City of New York,
    09-CV-1015 (BSJ), 2011 U.S. Dist. LEXIS 106272 (S.D.N.Y. Sept. 19, 2011) ................... 16

Gooden v. Howard County,
    954 F.2d 960 (4th Cir. 1992) ................................................................................ 6

Graham v. Connor,
    490 U.S. 386 (1989)............................................................................................ 2

**Cases**                                                                                          **Pages**

Green v. City of New York,
 465 F.3d 65 (2d Cir. 2006)................................................................................ 36

Green v. Mattingly,
 585 F.3d 97 (2d Cir. 2009).................................................................................. 30

Hayes v. Perotta,
 751 F. Supp. 2d 597 (S.D.N.Y. 2010)................................................................ 34

Hill v. City of New York,
 03-CV-1283 (ARR), 2005 U.S. Dist. LEXIS 38926 (E.D.N.Y. Dec. 29, 2005) ............... 40-41

Hoffman v. County of Delaware,
 41 F. Supp. 2d 195 (N.D.N.Y. 1999),
 aff'd, 205 F.3d 1323 (2d Cir. 2000)) ................................................................ 8

Hoffman v. Nassau County Police Dep't,
 No. 06-CV-1947 (SJF) (AKT),
 2008 U.S. Dist. LEXIS 35377 (E.D.N.Y. Apr. 30, 2008) ...................................... 19

Howard v. Town of Bethel,
 481 F. Supp. 2d 295 (S.D.N.Y. 2007)............................................................. 10, 14

Illinois v. Andreas,
 463 U.S. 765 (1983)............................................................................................ 7

Jenkins v. City of New York,
 91-CV-3539 (RLC), 1992 U.S. Dist. LEXIS 8279 (S.D.N.Y. Jun. 15, 1992)................. 24, 25

Karoon v. New York City Transit Authority,
 241 A.D.2d 323 (N.Y. App. Div. 1st Dept. 1997) ................................................ 23

Keeney v. City of New London,
 196 F. Supp. 2d 190 (D. Conn. 2002)................................................................ 1

Kerman v. City of New York,
 261 F.3d 229 (2d Cir. 2001)............................................................................ 6, 8

Koch v. Town of Brattleboro,
 287 F.3d 162 (2d Cir. 2002)............................................................................ 4-5

Latino Officers Ass'n v. Safir,
 170 F.3d 167 (2d Cir. 1999)............................................................................ 14

Lee v. Sandberg,
 136 F.3d 94 (2d Cir. 1997)............................................................................... 7

**<u>Cases</u>**                                                                                                         **<u>Pages</u>**

<u>Lennon v. Miller</u>,
   66 F.3d 416 (2d Cir. 1995)......................................................................... 4

<u>Locurto v. Safir</u>,
   264 F.3d 154 (2d Cir. 2001)...................................................................... 28

<u>Mahan v. City of New York</u>,
   00-CV-6645 (DGT), 2005 U.S. Dist. LEXIS 14322 (E.D.N.Y. July 19, 2005)..................... 41

<u>Marcel v. City of New York</u>,
   88-CV-7017 (LLS), 1990 U.S. Dist. LEXIS 4094 (S.D.N.Y. Apr. 11, 1990)........................ 42

<u>Martinez v. City of New York</u>,
   No. 06-CV-5671 (WHP), 2008 U.S. Dist. LEXIS 49203 (S.D.N.Y. June 27, 2008)............. 46

<u>Martinez v. Golding</u>,
   499 F .Supp. 2d 561 (S.D.N.Y. 2007)........................................................... 7

<u>Martinez v. Muentes</u>,
   340 Fed. Appx. 700 (2d Cir. July 27, 2009) ................................................ 46

<u>Maryland v. Pringle</u>,
   540 U.S. 366, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003)........................................ 7

<u>McLean v. New York</u>,
   12 N.Y.3d 194 (N.Y. 2009) ..................................................................... 26

<u>Mercado v. City of New York</u>,
   08-CV-2855 (BSJ)(HP), 2011 U.S. Dist. LEXIS 140430 (S.D.N.Y. Dec. 5, 2011) .............. 32

<u>Michigan v. Fisher</u>,
   558 U.S. 45 (2009).............................................................................. 3

<u>Michigan v. Tyler</u>,
   436 U.S. 499 (1978)............................................................................ 2

<u>Mincey v. Arizona</u>,
   437 U.S. 385 ................................................................................... 2

<u>Mitchell v. Cty. of Nassau</u>,
   05- CV-4957 (SJF)(WDW), 2007 U.S. Dist. LEXIS 38711 (E.D.N.Y. May 24, 2007) ......... 25

<u>Monday v. Oullette</u>,
   118 F.3d 1099 (6th Cir. 1997) ................................................................. 6

**Cases**                                                                  **Pages**

Monell v. City of New York, et al.,
    436 U.S. 658 (1978).................................... 32, 34, 35, 36, 38, 40, 41, 42, 43, 44, 45, 46, 47, 48

Moore v. City of New York,
    219 F. Supp. 2d 335 (E.D.N.Y. 2002) ................................................................ 21

Naccaratto v. Scarselli,
    124 F. Supp. 2d 36 (N.D.N.Y. 2000) ........................................................ 21-22, 26

National Congress for Puerto Rican Rights v. City of New York,
    75 F. Supp.2d 154 (S.D.N.Y. 1999).................................................................. 20

Nassau County Emple. "L" v. County of Nassau,
    345 F. Supp. 2d 293 (E.D.N.Y. 2004) .............................................................. 18

Newton v. City of New York,
    681 F. Supp. 2d 473 (S.D.N.Y. 2010)............................................................... 22

Osterhoudt v. City of New York,
    10-CV-3173 (RJD)(RML), 2012 U.S. Dist. LEXIS 139700 (E.D.N.Y. Sept. 27, 2012) ........ 42

Pacheco v. City of New York, et al.,
    234 F.R.D. 53 (E.D.N.Y. 2006) ....................................................................... 42

Pangburn v. Culbertson,
    200 F.3d 65 (2d Cir. 1999).............................................................................. 19

Patterson v. County of Oneida,
    375 F.3d 206 (2d Cir. 2004)............................................................................ 15

Pembaur v. City of Cincinnati,
    475 U.S. 469 (1986)................................................................................. 32, 44

Perez v. City of New York,
    97-CV-2915, 1999 U.S. Dist. LEXIS 21137 (E.D.N.Y. Nov. 16, 1999) .............................. 20

Petway v. City of New York,
    12-CV-279 (ARR)(LB), 2014 U.S. Dist. LEXIS 28361 (E.D.N.Y. Mar. 4, 2014) ................ 12

Posr v. Court Officer Shield,
    No. 207, 180 F.3d 409 (2d Cir. 1999) .................................................................. 7

Powell v. Gardner,
    891 F.2d 1039 (2d Cir. 1989)........................................................................... 40

**Cases**                                                                      **Pages**

Pulka v. Edelman,
    40 N.Y.2d 781 (N.Y. 1976) ................................................................. 26

Rahman v. Philip,
    92-CV-5349 (SHS), 1995 U.S. Dist. LEXIS 17018 (S.D.N.Y. Nov. 15, 1995)..................... 20

Rasmussen v. City of New York,
    766 F. Supp. 2d 399 (E.D.N.Y. 2011) .............................................. 22, 42

Reynolds v. Giuliani,
    506 F.3d 183 (2d Cir. 2007).......................................................... 39, 44

Rini v. Zwirn,
    886 F. Supp. 270 (E.D.N.Y. 1995) ...................................................... 18

Rodriguez v. City of New York,
    11-CV-515 (ALC)(GWG), Slip Op. at 10 (S.D.N.Y. Mar. 15, 2013) .................... 42

Root v. Gauper,
    438 F.2d 361 (8th Cir. 1971) ........................................................... 1

Rosen v. Arden Hill Hosp.,
    163 Misc.2d 70 (N.Y. Sup. Ct. 1993) .................................................. 28

Rubio v. Cty. of Suffolk,
    01-CV-1806 (TCP), 2007 U.S. Dist. LEXIS 75344 (E.D.N.Y. Oct. 9, 2007)......................... 44

Russ v. State Employees Federal Credit Union (SEFCU),
    298 A.D.2d 791 (N.Y. App. Div. 2002) ............................................... 24

Russo v. City of Cincinnati,
    953 F.2d 1036 (6th Cir. 1992) ........................................................... 5

Saldana v. Port Chester,
    09-CV-6268 (SCR)(GAY), 2010 U.S. Dist. LEXIS 142099 (S.D.N.Y. July 21, 2010) ........ 21

Samuelson v. Laporte Community Sch. Corp.,
    526 F.3d 1046 (7th Cir. 2008) ........................................................ 11

San Fillipo v. U.S. Trust Co. of New York, Inc.,
    737 F.2d 246 (2d Cir. 1984),
    cert. denied, 470 U.S. 1035 (1985) .............................................17-18, 20

Sanchez v. Thompson,
    No. 07-CV-0531 (JFB)(WDW),
    2007 U.S. Dist. LEXIS 94085 (E.D.N.Y. Dec. 26, 2007) ...................................... 15

**<u>Cases</u>**                                                                                   **<u>Pages</u>**

<u>Sanchez v. Town of Greece</u>,
   98-CV-6433, 2004 U.S. Dist. LEXIS 29357 (W.D.N.Y. Sept. 1, 2004) ............................ 6, 10

<u>Santiago v. Campisi</u>,
   91 F. Supp. 2d 655 (S.D.N.Y. 2000) ..................................................................................... 34

<u>Sarus v. Rotundo</u>,
   831 F.2d 397 (2d Cir. 1987) .................................................................................................. 32

<u>Savino v. City of New York</u>,
   331 F.3d 63 (2d Cir. 2003) ...................................................................................................... 7

<u>Schmidt v. Bishop</u>,
   779 F. Supp. 321 (S.D.N.Y. 1991) ........................................................................................ 25

<u>Schoolcraft v. City of New York</u>,
   10-CV-6005 (RWS), 2012 U.S. Dist. LEXIS 128557 (S.D.N.Y. Sept. 7, 2012) ........ 10, 11, 12

<u>Sealey v. Giltner</u>,
   116 F.3d 47 (2d Cir. 1997) ...................................................................................................... 5

<u>Searles v. Pompilio</u>,
   652 F. Supp. 2d 432 (S.D.N.Y. 2009) ................................................................................... 40

<u>Segal v. City of New York</u>,
   459 F.3d 207 (2d Cir. 2006) .................................................................................................. 47

<u>Sforza v. City of New York</u>,
   07 Civ. 6122 (DLC), 2009 US Dist. LEXIS 27358 (S.D.N.Y. Mar. 31, 2009) ...................... 30

<u>Shmueli v. City of New York</u>,
   03-CV-1195 (PAC), 2007 U.S. Dist. LEXIS 42012 (S.D.N.Y. June 7, 2007) ....................... 30

<u>Simms v. City of New York</u>,
   480 Fed. Appx. 627 (2d Cir. 2012) ....................................................................................... 42

<u>Sommer v. Dixon</u>,
   709 F.2d 173 (2d Cir.),
   <u>cert. denied</u>, 464 U.S. 857 (1983) ......................................................................................... 20

<u>Sorlucco v. New York City Police Dep't</u>,
   971 F.2d 864 (2d Cir. 1992) ........................................................................................ 33, 34, 39

<u>Stokes v. City of New York</u>,
   05-CV-0007 (JFB)(MDG), 2007 U.S. Dist. LEXIS 32787 (E.D.N.Y. May 3, 2007) ............. 23

**Cases**          **Pages**

Sun Min Lee v. J.B. Hunt Transp., Inc.,
   308 F. Supp. 2d 310 (S.D.N.Y. 1994) ............................................................ 23

Sykes v. James,
   13 F.3d 515 (2d Cir. 1993) ............................................................................ 15

Texas v. Lesage,
   528 U.S. 18 (1999) ........................................................................................ 12

Thomas v. Roach,
   165 F.3d 137 (2d Cir. 1999) .......................................................................... 41

Tierney v. Davidson,
   133 F.3d 189 (2d Cir. 1998) ............................................................................ 1

Triano v. Harrison,
   895 F.Supp.2d 526 (S.D.N.Y. 2012) ............................................................ 45

United States v. Ashburn,
   11-CR-303 (NGG), 2014 U.S. Dist. LEXIS 62656 (E.D.N.Y. May 5, 2014) ............................ 3

United States v. Klump,
   536 F.3d 113 (2d Cir. 2008) ............................................................................ 2

United States v. MacDonald,
   916 F.2d 766 (2d Cir. 1990) ............................................................................ 2

United States v. Quattrone,
   402 F.3d 304 (2d Cir. 2005) .......................................................................... 10

United States v. Simmons,
   661 F.3d 151 (2d Cir. 2011) ............................................................................ 2

Vallen v. Connelly,
   99-CV-9947 (SAS), 2004 U.S. Dist. LEXIS 4490 (S.D.N.Y. March 19, 2004) ............ 6, 8, 10

Vann v. City of New York,
   72 F.3d 1040 (2d Cir. 1995) .................................................................. 40, 41, 42

Vippolis v. Vill. of Haverstraw,
   768 F.2d 40 (2d Cir. 1985) ....................................................................... 37-38

Walker v. City of New York,
   974 F.2d 293 (2d Cir. 1992),
   cert. denied, 507 U.S. 961 (1993) ......................................................... 40, 45, 46

**Cases**                                                                                                    **Pages**

Walker v. Goord ,
   98-CV-5217 (DC), 2000 U.S. Dist. LEXIS 3501 (S.D.N.Y. Mar. 21, 2000) .......................... 20

Wayne v. United States,
   318 F.2d 205 (D.C. Cir 1963) ..................................................................................................... 2

Webb v. Ashburn,
   96-CV-0324 (SAS), 1997 U.S. Dist. LEXIS 2848 (S.D.N.Y. Mar. 13, 1997) ....................... 20

Weyant v. Okst,
   101 F.3d 845 (2d Cir. 1996) ........................................................................................................ 6

Whren v. United States,
   517 U.S. 806 (1996) .................................................................................................................... 2

Williams v. City of New York,
   12-CV-8518 (RJS), 2014 U.S. Dist. LEXIS 49837 (S.D.N.Y. Mar. 26, 2014) ...................... 10

Williams v. Smith,
   781 F.2d 319 (2d Cir. 1986) .................................................................................................. 5, 15

Yang Feng Zhao v. New York,
   656 F.Supp.2d 375 (S.D.N.Y. 2009) ....................................................................................... 41

Zahra v. Town of Southold,
   48 F.3d 674 (2d Cir. 1995) ................................................................................................. 39, 41

Zieper v. Metzinger,
   474 F.3d 60 (2d Cir. 2007) ....................................................................................................... 10

**Statutes**

42 U.S.C. §1983 ................................................................. 5, 6, 15, 16, 18, 26, 30, 32, 34, 45, 46

Fed. R. Civ. P. 56 .................................................................................................................... 1, 49

Local Civ. R. 56.1 ............................................. 1, 3, 4, 8, 9, 12, 13, 14, 15, 16, 17, 18, 27, 36, 37

MHL § 9.41 ......................................................................................................... 6, 7, 8, 9, 10

N.Y.C Charter § 434(b) ............................................................................................................ 32, 33

## PRELIMINARY STATEMENT

City Defendants respectfully submit this memorandum of law in support of their motion for partial summary judgment pursuant to Fed. R. Civ. P. 56. City Defendants respectfully refer the Court to City Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 at (hereinafter "56.1") for the background facts for their motion.

## ARGUMENT

## POINT I

### PLAINTIFF'S UNLAWFUL SEARCH AND ENTRY CLAIMS FAIL.

**A.   Plaintiff's Unlawful Search and Entry Claims Against Defendants Marino, Lauterborn, Gough, Duncan, Broschart, and Hanlon Fail as a Matter of Law.**

Defendants are entitled to summary judgment on Plaintiff's unlawful search and entry claims against defendants Marino, Lauterborn, Gough, Duncan, Broschart and Hanlon because the entry into Plaintiff's home was justified by exigent circumstances. Police officers "may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998) (quoting Root v. Gauper, 438 F.2d 361, 364 (8th Cir. 1971)); see also Keeney v. City of New London, 196 F. Supp. 2d 190, 196-97 (D. Conn. 2002) (applying Tierney standard). One such exigency which may justify a warrantless entry is the need to "render emergency aid and assistance to a person whom [officers] reasonably believe to be in distress and in need of that assistance." Tierney, 133 F.3d at 196.

The Supreme Court has reiterated its position that "the need to assist persons who are seriously injured or threatened with such injury" is one circumstance that justifies a warrantless entry to a private home. Brigham City v. Stuart, 547 U.S. 398, 403 (2006).  "[T]he need to

protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." Mincey v. Arizona 437 U.S. 385, 392, (quoting Wayne v. United States, 318 F.2d 205, 212 (D.C. Cir 1963) (Burger, J.)); see also Michigan v. Tyler, 436 U.S. 499, 509 (1978). Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. Mincey, 437 U.S. at 392; see also Georgia v. Randolph, 547 U.S. 103, 118 (2006) ("It would be silly to suggest that the police would commit a tort by entering . . . to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur").

The test to determine exigent circumstances" is an objective one that turns on . . . the totality of circumstances confronting law enforcement agents in the particular case." United States v. MacDonald, 916 F.2d 766, 769 (2d Cir. 1990) (en banc). More specifically, the question is whether "'the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer, to believe that there was an urgent need to render aid or take action.'" United States v. Simmons, 661 F.3d 151, 157 (2d Cir. 2011) (quoting United States v. Klump, 536 F.3d 113, 117-18 (2d Cir. 2008)). The officer's subjective motivation is irrelevant. See Bond v.United States, 529 U.S. 334, 338, n. 2 (2000) ("The parties properly agree that the subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment . . . ; the issue is not his state of mind, but the objective effect of his actions"); Whren v. United States, 517 U.S. 806, 813 (1996) ("[W]e have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers"); Graham v. Connor, 490 U.S. 386, 397 (1989) ("[O]ur prior cases make

clear" that "the subjective motivations of the individual officers . . . ha[ve] no bearing on whether a particular seizure is 'unreasonable' under the Fourth Amendment").

Officers do not need ironclad proof of "a likely serious, life-threatening" injury to invoke the emergency aid exception. Michigan v. Fisher, 558 U.S. 45, 49 (2009). Moreover, where an officer believes emergency aid is required, at least one Court has held that an individual's failure to respond to an officer's knock on their door is relevant to a determination of whether the entry was objectively reasonable. United States v. Ashburn, 11-CR-303 (NGG), 2014 U.S. Dist. LEXIS 62656, *16 (E.D.N.Y. May 5, 2014).

Here, the entry and "search" of Plaintiff's apartment was reasonable based upon the circumstances known to the officers at the time of the entry. First, Plaintiff left work abruptly and without permission on October 31, 2009, reporting that he was sick. (See 56.1 at ¶¶23-25). Thereafter, Captain Lauterborn spoke with department psychologist Dr. Catherine Lamstein-Reiss because he was concerned about Plaintiff's wellbeing. (56.1 at ¶¶26-27). Dr. Lamstein-Reiss told Captain Lauterborn that she had evaluated Plaintiff's mental health prior to October 31, 2009, and that Captain Lauterborn "absolutely needed" to find Plaintiff and "make sure that he was ok". (56.1 at ¶30). Captain Lauterborn, Deputy Inspector Mauriello, and Lieutenant Broschart also knew that Plaintiff had previously had his gun taken away. (56.1 at ¶39).

In response Lieutenant Christopher Broschart, Captain Lauterborn and a patrol sergeant and police officer from the 104th precinct went to Plaintiff's home at 82-60 80th Place in Glendale Queens. (56.1 at ¶31). Lieutenant Broschart and Captain Lauterborn knocked on Plaintiff's door for several hours but Plaintiff never answered. (56.1 at ¶¶32-33). Dr. Lamstein-Reiss tried calling Plaintiff's cell phone which he also did not answer. (56.1 at ¶¶34-35). Moreover, Plaintiff's landlord heard him moving around inside of the apartment, but

subsequently heard no movement. (56.1 at ¶36). Lieutenant Broschart remained outside of Plaintiff's apartment for approximately four hours and never saw or heard Plaintiff. (56.1 at ¶37).

It does not matter here--even if the defendants' subjective motivations could be so neatly unraveled--whether the officers entered Plaintiff's home in retaliation for Plaintiff's reports to the Internal Affairs Bureau and the Quality Assurance Division because the belief was objectively reasonable and they were told by a mental health professional – Dr. Lamstein-Reiss – that Plaintiff had to be located and his wellbeing ensured. Accordingly, Plaintiff's unlawful entry and search claims must be dismissed in their entirety.

Alternatively, defendants are entitled to qualified immunity for entering Plaintiff's home absent a warrant. "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action … assessed in light of the legal rules that were clearly established at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639 (1987) (internal quotation marks and citation omitted). Even where the Plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act. Anthony v. City of New York, 339 F.3d 129 (2d Cir. 2003) (internal quotation marks and citations omitted). "Qualified immunity serves to protect police from liability and suit when they are required to make on-the-spot judgments in tense circumstances," and officers are entitled to the defense unless the officers' judgment was so flawed that no reasonable officer would have made a similar choice. Lennon v. Miller, 66 F.3d 416, 424-25 (2d Cir. 1995). As such, since it was objectively reasonable for the defendants to believe that exigent circumstances existed, qualified immunity is appropriate. See e.g., Koch v.

Town of Brattleboro, 287 F.3d 162, 169 (2d Cir. 2002) (qualified immunity is appropriately applied on a Fourth Amendment unreasonable search and seizure claim where a government officer believes there were exigent circumstances present); see also Brigham City v. Stuart, 547 U.S. 398, 403 (2006) (finding that police may enter a home without a warrant when they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury); Russo v. City of Cincinnati, 953 F.2d 1036, 1043-44 (6th Cir. 1992) (warrantless entry was justified by officer's reasonable belief that resident was in danger of committing suicide and noting the court's inability to find "a single case indicating that an officer's attempt to rescue what that officer believes to be a suicidal person does not constitute exigent circumstances"). Here, it is clear that the defendants had a reasonable belief that Plaintiff might cause harm to himself or others and in fact were told that they must locate him and ensure his wellbeing. Accordingly, even if they were mistaken, they are entitled to qualified immunity.

**B.      Plaintiff Has Not Alleged That Defendants Wilson, Wall, O'Hare, Trainor, Hanley, Nelson, Caughey, Sawyer and James Unlawfully Searched and/or Seized Him.**

It is well established that Section 1983 imposes liability only upon a defendant who personally subjects, or causes to be subjected any person to the deprivation of any federal right. Accordingly, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (citation omitted); Doyle v. Coombe, No. 97-2680, 1998 U.S. App. LEXIS 20261, at *3 (2d Cir. June 12, 1998); Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997). Plaintiff has not alleged in the Second Amended Complaint, and there is no evidence in the record, that Sondra Wilson, Richard Wall, Robert O'Hare, Timothy Trainor, Thomas Hanley, Gerald Nelson, Timothy Caughey, Frederick Sawyer or Shantel James had any personal involvement with regard to Plaintiff's claims of unlawful search and seizure. (Plaintiff's Second Amended Complaint,

annexed as Exhibit A to the Declaration of Suzanna Publicker Mettham dated December 22, 2014 at ¶¶ 153-174). Therefore, any claims against these individuals under § 1983 unlawful search and seizure must be dismissed.

## POINT II

### PLAINTIFF'S FALSE ARREST AND FALSE IMPRISONMENT CLAIMS FAIL PURSUANT TO NEW YORK'S MENTAL HEALTH AND HYGIENE LAW.

Plaintiff's false arrest and false imprisonment claims against defendants Marino, Lauterborn, Gough, Sawyer, Duncan, Broschart, James, Caughey, and Hanlon fail because there was probable cause to seize Plaintiff pursuant to New York State's Mental Health and Hygiene Law (hereinafter "MHL"). Seizures under a state's mental hygiene or mental health laws apply the concepts of "probable cause" that have arisen in criminal Fourth Amendment seizure cases. See Kerman v. City of New York, 261 F.3d 229, 235 (2d Cir. 2001); Monday v. Oullette, 118 F.3d 1099, 1102 (6th Cir. 1997); Gooden v. Howard County, 954 F.2d 960, 964 (4th Cir. 1992); Vallen v. Connelly, 99-CV-9947 (SAS), 2004 U.S. Dist. LEXIS 4490, at *23 (S.D.N.Y. March 19, 2004); Sanchez v. Town of Greece, 98-CV-6433, 2004 U.S. Dist. LEXIS 29357, at *8-13 (W.D.N.Y. Sept. 1, 2004). Because the existence of probable cause to arrest an individual is a complete defense to both federal and state law claims for false arrest and false imprisonment, the critical question in this case is whether the defendants possessed probable cause to conclude that Plaintiff was acting in a manner that would justify a MHL § 9.41 seizure. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996), Sanchez, 2004 U.S. Dist. LEXIS 29357, at *8-13 ("Here, the defendant officers had sufficient probable cause to believe that Sanchez might be mentally ill and that he should be arrested pursuant to New York's Mental Hygiene Law [§ 9.41].").

Accordingly, the analysis of Plaintiff's false arrest turns on whether the officers had probable cause to detain him based on the information that he was emotionally disturbed.

The existence of probable cause for detention can be determined as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers...." Martinez v. Golding, 499 F .Supp. 2d 561, 567 (S.D.N.Y. 2007) (internal citation omitted). In the criminal context, probable cause exists when officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, (2004) (citing Maryland v. Pringle, 540 U.S. 366, 371, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003). The probable cause inquiry is an objective one and the subjective beliefs or motivations of the arresting officer are irrelevant. Devenpeck, 125 S.Ct. at 593-94. Police officers may rely upon information gained from other officers in making their probable cause assessment, see Savino v. City of N.Y., 331 F.3d 63, 74 (2d Cir. 2003) ("The collective knowledge doctrine provides that, for the purpose of determining whether an arresting officer had probable cause to arrest, "'where law enforcement authorities are cooperating in an investigation, … the knowledge of one is presumed shared by all.'") (quoting Illinois v. Andreas, 463 U.S. 765, 772 n. 5, (1983)), and on information gained from witnesses or private citizens. Lee v. Sandberg, 136 F.3d 94, 103 (2d Cir. 1997).

The facts and circumstances known to the defendants at the time they made the decision to confine Plaintiff were sufficient to warrant a person of reasonable caution in the belief that a seizure was legally justified under MHL § 9.41. While the statute ostensibly requires two

separate factual conclusions: (1) that the person appears to be mentally ill, and (2) that the person is conducting himself in a manner which is likely to result in serious harm to himself or others, see MHL § 9.41, the two inquires essentially become one in situations such as the one at hand. As the Second Circuit has held, "police officers are often forced to make on the spot judgments about a person's mental health and should be entitled to reasonable leeway in those situations." Kerman, 261 F.3d at 241.

By analogy, the question here is whether the facts and circumstances known to the defendants at the time they decided to take Plaintiff into custody were sufficient to warrant a person of reasonable caution in the belief that Plaintiff might be "mentally ill and [] conducting himself in a manner [] likely to result in serious harm to" himself as those terms are defined by the MHL. See Bayne v. Provost, 04-CV-44, 2005 U.S. Dist. LEXIS 40889 (N.D.N.Y Aug. 4, 2005) quoting Monday, 118 F.3d at 1102 (6th Cir. 1997); Vallen 2004 U.S. Dist. LEXIS 4490, at *27 ("Where there is a totality of circumstances pointing to a 'probability or substantial chance of dangerous behavior, not [even] an actual showing of such behavior,' courts have not hesitated in upholding emergency pick-up orders.") (citing Hoffman v. County of Delaware, 41 F. Supp. 2d 195, 209 (N.D.N.Y. 1999), aff'd, 205 F.3d 1323 (2d Cir. 2000)). The answer is yes.

Here, all of the circumstances presented to the defendants required them to make just such an "on the spot" judgment call. Prior to October 31, 2009 Plaintiff had his gun and shield removed as a result of being placed on restricted duty following a consultation with New York City Police Department Psychologist Dr. Catherine Lamstein-Reiss. (56.1 at ¶¶18-20). Moreover, upon their arrival the defendants were informed that Plaintiff was suffering from abdominal pain, nausea, dizziness, and chest pains. (56.1 at ¶44).  In fact, Plaintiff's blood

pressure was so high that EMTs considered the situation to be an emergency that required medical attention at a hospital. (56.1 at ¶¶48-50).

The choice was either to: (a) accept Plaintiff's refusal to address his abdominal pain, blood pressure issues, and nausea, leave him alone in his apartment, and risk that he would die or suffer serious harm as a result; or (b) persist in an attempt to "convince" Plaintiff to voluntarily get on the gurney in order to transport him to a hospital for a medical treatment and, if necessary, take him into custody against his will. Indeed, even accepting that Plaintiff was faking his illness, defendants were nevertheless presented with an ostensibly genuine concern for Plaintiff's safety by trained emergency medical technicians who persisted that Plaintiff's medical condition was an emergency situation. (56.1 at ¶¶44-50). Based upon these facts, there was a reasonable basis to conclude that Plaintiff was in immediate need of medical attention. The defendants were not required to obtain a qualified mental health opinion before seizing Plaintiff under MHL § 9.41. See Ricciuti, 124 F.3d at 128. However, the fact that Plaintiff was admitted to Jamaica Hospital Medical Center for approximately six days pursuant to the MHL can only serve to indicate the reasonableness of the defendants decision to remove Plaintiff from his apartment out of concern for his wellbeing. (56.1 at ¶51).

Assuming *arguendo* that actual probable cause did not exist to take Plaintiff into custody under MHL § 9.41, the defendants are entitled to qualified immunity because there was arguable probable cause. See Escalera v. Lunn, 361 F. 3d 737, 743 (2d Cir. 2004). "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Id. (quoting Golino v. City of New Haven, 950 F. 2d 864, 870 (2d Cir. 1991)). Given all the facts presented here, and giving the defendants the reasonable leeway they

are entitled to in making assessments of other people's mental states, officers of reasonable competence could disagree whether they were justified in seizing Plaintiff pursuant to MHL § 9.41 to ensure his safety through a metal health evaluation. See Sanchez, 2004 U.S. Dist. LEXIS 29357, at *4; Vallen, 2004 U.S. Dist. LEXIS 4490, at *30-33. Accordingly, the defendants are entitled to qualified immunity and Plaintiff's false arrest and false imprisonment claims must be dismissed.

## POINT III

### PLAINTIFF'S FIRST AMENDMENT CLAIM SHOULD BE DISMISSED.

The First Amendment may be violated by a "chilling effect" of governmental action short of a direct prohibition against speech.[1] Zieper v. Metzinger, 474 F.3d 60, 65 (2d Cir. 2007). To establish a "chilling effect" claim, Plaintiff must establish that: (1) his speech is protected by the First Amendment; (2) that defendants' motivation was to suppress Plaintiff's speech; and (3) that defendants' actions effectively chilled the exercise of Plaintiff's First Amendment rights.[2] Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (citing Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998); accord Howard v. Town of Bethel, 481 F. Supp. 2d 295, 309 (S.D.N.Y. 2007). Moreover, to prevail against the City, Plaintiff must show that a municipal custom or policy was the moving force behind the alleged violation. E.g., Williams v. City of New York, 12-CV-8518 (RJS), 2014 U.S. Dist. LEXIS 49837, *35-37 (S.D.N.Y. Mar. 26, 2014).

---

[1] This Court previously rejected Plaintiff's attempts to plead a First Amendment claim based on incidents occurring prior to his suspension on October 31, 2009. See Schoolcraft, 2012 U.S. Dist. LEXIS 128557 at *11-13.

[2] Despite his lofty nomenclature, Plaintiff is not advancing a true "prior restraint" claim. See, e.g., United States v. Quattrone, 402 F.3d 304, 309 (2d Cir. 2005)("A 'prior restraint' on speech is a law, regulation or judicial order that suppresses speech – or provides for its suppression at the discretion of government officials – on the basis of the speech's content and in advance of its actual expression."). Rather, his claim is more akin to the "chilling effect" claims advanced in cases like Curley and Connell, in which the Plaintiffs asserted that retaliatory governmental action affected the exercise of their First Amendment rights.

### A.      Plaintiff Does Not Have an Interest Protected by the First Amendment.

As Your Honor previously indicated in Schoolcraft v. City of New York, 10-CV-6005 (RWS), 2012 U.S. Dist. LEXIS 128557 (S.D.N.Y. Sept. 7, 2012), for Plaintiff to have a viable prior restraint claim, he must establish that he is speaking as a citizen rather than as a government employee. 2012 U.S. Dist. LEXIS 128557 at 15-16; see also Samuelson v. Laporte Community Sch. Corp., 526 F.3d 1046, 1052 (7th Cir. 2008) ("For the restriction to qualify as a prior restraint, the employee must have an interest in the speech as a citizen commenting upon a matter of public concern."). As a suspended (rather than terminated) police officer, Plaintiff nevertheless remained a sworn law enforcement officer and therefore was not speaking "as a citizen".[3] See Anemone v. Metropolitan Transp. Auth., 05-CV-3170 (LAP), 2008 U.S. Dist. LEXIS 36091, *47 (S.D.N.Y. May 2, 2008) (holding that Plaintiff's post-suspension speech could not form the basis of a First Amendment claim, stating "[w]hile [Plaintiff] was technically suspended when he spoke before the State Assembly, he nevertheless was acting pursuant to his 'official duties' relating to security"), aff'd, 629 F.3d 97 (2d Cir. 2011).

### B.      City Defendants' Actions Were Not Motivated By Plaintiff's Speech.

To survive a summary judgment motion, Plaintiff must provide *specific proof* of improper motivation on the part of the defendant officers. Curley, 268 F.3d at 73; Brown v. City of New York, 13-CV-1018 (KBF), 2014 U.S. Dist. LEXIS 83513, *27-28 (S.D.N.Y. June 18, 2014). "Evidence of improper motive 'may include expressions by the officials regarding their state of mind, circumstances suggesting *in a substantial fashion* that the Plaintiff has been singled out, or the *highly unusual* nature of the actions taken.'" Dunk v. Brower, 11-CV-4564 (ER), 2013 U.S. Dist. LEXIS 160667, *25 (S.D.N.Y. Nov. 7, 2013) (quoting Blue v. Koren, 72

---

[3] The fact that Plaintiff was at his home when portions of the alleged harassment occurred, Schoolcraft, 2012 U.S. Dist. LEXIS 128557 at *15-16, should not dictate whether his speech was as a citizen or as a public employee. Frisenda v. Village of Malverne, 775 F. Supp. 2d 486, 509 (E.D.N.Y. 2011).

F.3d 1075, 1083-84 (2d Cir. 1995)). In this case, there were no expressions of an improper motive by any NYPD official.[4] See Schoolcraft, 2012 U.S. Dist. LEXIS 128557 at *21; (56.1 at ¶¶66, 68). In the absence of such direct evidence, Plaintiffs circumstantial evidence of a retaliatory motive, see Schoolcraft, 2012 U.S. Dist. LEXIS 128557, at *22-23, must be "sufficiently compelling". Bennett v. Goord, 343 F.3d 133, 138-139 (2d Cir. 2003). It is not.

Plaintiff may not rely on any circumstances occurring before February 2010. It is illogical to conclude that any defendant could have harbored an intent to prevent Plaintiff from going to the media with his allegations before his allegations became public in *The Daily News* on February 1, 2010 (56.1 at ¶72), and before even Plaintiff himself decided (*after* his October 31, 2009 involuntary commitment) to go to the media. (56.1 at ¶¶73, 75).  Plaintiff can point to no evidence indicating that any defendant suspected Plaintiff would speak publicly before that time. (56.1 at ¶¶73-75).   In any event, even assuming such circumstances could be relied upon, Plaintiff was neither singled out nor treated differently with respect to his internal complaints or performance evaluation. Blue, 72 F.3d at 1083-84. Plaintiff would have been subjected to the same disciplinary action even in the absence of any purportedly impermissible motive. Texas v. Lesage, 528 U.S. 18, 21 (1999).

Plaintiff provides no basis for City Defendants' allegedly improper motives other than his own supposition or hearsay statements that he was isolated from his fellow officers, (56.1 at ¶11), a victim of a conspiracy to falsely portray him as psychologically unbalanced, (56.1 at ¶12), and/or "menaced" with an intent to silence him.[5] (56.1 at ¶61).   See Anemone, 629 F.3d at

---

[4] Plaintiff would have the court believe that one or more defendants invaded his home and drove hundreds of miles to his upstate New York home in an effort to silence him without once in any way indicating what they expected Plaintiff to do or not do as a result. (56.1 at ¶¶66, 68).

[5] Furthermore, Plaintiff cannot rely on his involuntary confinement as evidence of an improper motive because probable cause existed for such confinement, as discussed *infra*. See, e.g., Petway v. City of New York, 12-CV-279 (ARR)(LB), 2014 U.S. Dist. LEXIS 28361 * 31-32 (E.D.N.Y. Mar. 4, 2014), and cases cited therein.

117 (summary judgment appropriate where reasonable jury would find that employer would have treated Plaintiff's in the same manner based on his workplace behavior, which occurred well-before any allegedly protected conduct).

With respect to alleged circumstances occurring *after* February 1, 2010, again, Plaintiff cannot provide proof of any improper motive beyond his own personal assumption that any officer present at his house was there to silence him.[6] Because Plaintiff opened the door only once to accept an NYPD delivery, (56.1 at ¶65), only Plaintiff's imagination serves to ascribe an intent to silence him to those outside his door.[7] Such conclusory assertions are not sufficient to support a motivation to deprive a person of his First Amendment rights. See Dunk, 2013 U.S. Dist. LEXIS 160667 at 26 (quoting Cobb v. Pozzi, 363 F.3d 89, 198 (2d Cir. 2004)); Conte v. County of Nassau, 06-CV-4746 (JFB)(ETB), 2010 U.S. Dist. LEXIS 104815, *83-85 (E.D.N.Y. Sept. 30, 2010), and cases cited therein.

### C. Plaintiff's First Amendment Right Was Not Chilled.

Where a party cannot show a change in his allegedly protected First Amendment activity, he cannot show the requisite chilling of his First Amendment right to free speech. E.g., Curley, 268 F.3d at 73. The record is devoid of any instance where Plaintiff's First Amendment rights were actually restrained or chilled. To the contrary, the record is replete with instances where Plaintiff exercised his First Amendment freedoms throughout NYPD's alleged campaign to intimidate and harass him. (56.1 at ¶76) (*Daily News* reporter contacted Plaintiff within a month

---

[6] Plaintiff states that officers visited his home in upstate New York about six times from December 2009 through 2010, but not thereafter. (56.1 at ¶63). But Plaintiff is vague regarding who was there and what they said to constitute an alleged attempt to deprive him of his First Amendment rights. (56.1 at ¶¶64, 66, 68). Furthermore, when Plaintiff speaks in terms of City Defendants' intent to silence him, he refers to their alleged intent to prevent him from pursuing his internal complaints rather than speaking publicly. (56.1 at ¶69).

[7] The motivation for the visitation recounted by Plaintiff in fact was to serve him with charges and specifications and to inform him that if he returned to work, he would be placed back on the payroll, not to "silence him". (56.1 at ¶67).

after Plaintiff's suspension); (56.1 at ¶77) (Plaintiff corresponded with reporters and attorneys via e-mail for "a couple years" beginning in 2010); (56.1 at ¶78) (Plaintiff spoke numerous times with *The Daily News*, *This American Life* and *The Village Voice* in late 2009 and/or early 2010); (56.1 at ¶79) (Plaintiff wrote a summary of his Jamaica Hospital confinement and provided that summary to *The Village Voice*, *The Daily News* and his various attorneys); (56.1 at ¶80) (Plaintiff began communicating with and provided his audio recordings to Village Voice reporter Graham Rayman – author of "The NYPD Tapes" series – in early 2010 and continued to communicate with him through the summer of 2012); (56.1 at ¶81) (Plaintiff gave copies of recordings to Rayman and Plaintiff's attorneys); (56.1 at ¶84) (Plaintiff had given "six or seven" interviews to the media as of October 2012); (56.1 at ¶82) (Plaintiff gave all of his recordings to his attorneys); (56.1 at ¶¶85-90) (Plaintiff contacted several elected officials, the Queens DA, the U.S. Department of Justice and Plaintiffs' counsel in <u>Floyd v. City of New York</u>, for whom Plaintiff provided supporting affidavits). In fact, Plaintiff not only admits that none of the defendants succeeded in dissuading him from speaking to the media, but he asserts their actions actually "encouraged" him to do so. (56.1 at ¶¶91-92).

In sum, Plaintiff cannot even assert an unactionable "subjective chill," <u>see</u>, <u>e.g.</u>, <u>Latino Officers Ass'n v. Safir</u>, 170 F.3d 167, 170 (2d Cir. 1999), let alone an actual restraint on his First Amendment rights. <u>See</u> <u>Colombo v. O'Connell</u>, 310 F.3d 115, 117 (2d Cir. 2002); <u>Curley</u>, 268 F.3d at 73, and cases cited therein; <u>Howard</u>, 481 F. Supp. 2d at 309.

### D. Defendants Sondra Wilson, Richard Wall, Robert O'Hare, Thomas Hanley, and Timothy Trainor Must Be Dismissed.

Plaintiff's only cause of action against defendants Sondra Wilson, Richard Wall, Robert O'Hare, Timothy Trainor, and Thomas Hanley is based on Plaintiff's First Amendment claims. (Exhibit A at ¶¶ 215-220, 261-277). Therefore, to the extent the Court dismisses Plaintiff's First

Amendment claims, defendants Wilson, Wall, O'Hare, Trainor, and Hanley must be dismissed as defendants.[8] Regardless, Plaintiff has failed to adduce any specific evidence whatsoever that defendants Wilson, Wall, O'Hare, Trainor, or Hanley had any improper motivation to impair Plaintiff's exercise of his First Amendment rights. See, Curley, 268 F.3d at 73.

## POINT IV

## 42 U.S.C. § 1983 DOES NOT VEST CITIZENS WITH SUBSTANTIVE RIGHTS.

There can be no claim for a purported "deprivation of federal rights under 42 U.S.C. § 1983," as that statute does not vest citizens with substantive rights, but rather provides a jurisdictional vehicle for the vindication of constitutional rights. See Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004); Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993); Sanchez v. Thompson, No. 07-CV-0531 (JFB)(WDW), 2007 U.S. Dist. LEXIS 94085, *8-9 (E.D.N.Y. Dec. 26, 2007). Therefore, summary judgment should be granted for City Defendants on Plaintiff First Claim for Relief.[9]

## POINT V

## LACK OF PERSONAL INVOLVEMENT.

As discussed above in Point I(B), Section 1983 imposes liability only upon a defendant who personally subjects, or causes to be subjected any person to the deprivation of any federal right. See, e.g., Williams, 781 F.2d at 323.

---

[8] Plaintiff has recently moved this Court to permit a Third Amended Complaint removing Wilson, Wall, O'Hare, and Hanley as defendants. (56.1 at ¶107).  However, Plaintiff has not yet filed a Stipulation of Withdrawal with the Court agreeing to dismiss these defendants with prejudice. (56.1 at ¶108).

[9] Plaintiff has recently moved this Court to permit a Third Amended Complaint removing his claim for "deprivation of federal rights under 42 U.S.C. § 1983." (56.1 at ¶109). However, Plaintiff has not yet filed a Stipulation of Withdrawal with the Court, agreeing to dismiss this claim with prejudice. (56.1 at ¶110).

### A.     Defendants Wilson, Wall, O'Hare, Trainor, Hanley, Nelson, Caughey, Lauterborn and Hanlon

Plaintiff has not alleged that defendants Wilson, Wall, O'Hare, Trainor, Hanley, Nelson, Caughey, Lauterborn or Hanlon had any personal involvement with regard to Plaintiff's claims of excessive force and assault and battery. (56.1 at ¶55) (force inside his apartment alleged only against defendants Broschart, Marino, Gough, and Duncan); (56.1 at ¶56) (force inside hospital alleged only against defendants Sawyer and James). Therefore, any claims against these individuals for § 1983 excessive force and state law assault and battery should be dismissed with prejudice.

### B.     Defendant Gerald Nelson

Plaintiff's only claims against Gerald Nelson are that "[a]t all relevant times on October 31, 2009, defendant CHIEF GERALD NELSON was aware of defendant MARINO's actions and in fact, expressly authorized defendant MARINO to unlawfully enter Plaintiff's residence, remove Plaintiff against his will, and involuntarily confine Plaintiff in a psychiatric ward." (56.1 at ¶57).  However, no evidence has been discovered that Gerald Nelson in fact was aware of, or authorized, Chief Marino's actions on October 31, 2009 beyond Plaintiff's suppositions. (56.1 at ¶58). Further, to the extent defendant Nelson was told information from other officers on the scene and reacted in response to that information, he is shielded from liability for reasonably relying upon information from his fellow officer. See, e.g., Anthony v. City of New York, 339 F.3d 129, 138 (2d Cir. 2003). Nelson is shielded by qualified immunity even if other officers were mistaken or dishonest, provided that he reasonably relied on their statements. See Golphin v. City of New York, 09-CV-1015 (BSJ), 2011 U.S. Dist. LEXIS 106272, *5-6 (S.D.N.Y. Sept. 19, 2011). As there is no evidence indicating defendant Nelson's personal involvement in any of Plaintiff's claimed constitutional violations, he should be dismissed as a party.

### C.      Defendant Timothy Caughey.

It is unclear what, if any, causes of action are being asserted against Timothy Caughey based on Plaintiff's Second Amended Complaint ("SAC"). The only references to Caughey are his presence at an appeal meeting (Exhibit A at ¶69), that he issued Plaintiff a written reprimand in March 2009 (Exhibit A at ¶¶90-92), that Plaintiff believed he had helped destroy documents relating to a non-party police officer (Exhibit A at ¶¶122-124), that he issued a memorandum asking officers to forward calls from IAB to him (Exhibit A at ¶¶132-134), that he confiscated and then returned Plaintiff's memo book on the date of incident (Exhibit A at ¶¶139-142), and that Plaintiff feared that Caughey may place his "safety in jeopardy" (Exhibit A at ¶¶143-148). However, based on the extensive discovery conducted in this matter, it is clear that Caughey had no personal involvement in any of the claimed misconduct. In fact, when asked directly at his deposition what his claims were against Caughey, Plaintiff asserted "the fear and intimidation he created, from his behavior," in reference to actions inside the Precinct stationhouse that day, *not* any actions that occurred at Plaintiff's residence. (56.1 at ¶59). While Plaintiff claims that Caughey's behavior was "menacing, and intimidating and threatening," he does not allege that he believed Caughey would actually use his weapon against him, and does not claim that Caughey ever used any force against Plaintiff. (56.1 at ¶62) ("no, he never touched me"). As such, Plaintiff's bald claims relating to "fear and intimidation" are not actionable.

Plaintiff also asserts that he "believed" that Caughey was "involved with what Sergeant James was telling the hospital, in order to have me locked away. I believe that's a strong possibility." (56.1 at ¶52). To the extent this could be construed as a claim against Caughey for Conspiracy, it nonetheless fails as it is well-established in the Second Circuit that vague and conclusory allegations of conspiracy are insufficient to withstand dismissal, either in a motion to dismiss or on summary judgment. See e.g. San Fillipo v. U.S. Trust Co. of New York, Inc., 737

F.2d 246, 256 (2d Cir.), cert. denied, 470 U.S. 1035 (1985) (affirming a dismissal of conspiracy complaint where allegations were vague and unsupported by a description of particular overt act). Here, there is no evidence that Caughey and James had any discussions about Adrian Schoolcraft on October 31, 2009. (56.1 at ¶53). In fact, James does not even know Caughey. (56.1 at ¶54).

Moreover, under the intra-corporate conspiracy doctrine, as discussed in depth *infra*, officers, agents, and employees of a single corporate entity are legally incapable of conspiring together. E.g., Nassau County Emple. "L" v. County of Nassau, 345 F. Supp. 2d 293, 304-05 (E.D.N.Y. 2004). This is particularly so where the officers and employees are alleged to be acting within the scope of their employment." Rini v. Zwirn, 886 F. Supp. 270, 291 (E.D.N.Y. 1995). Accordingly, Plaintiff's hunch on a mere "possibility" that Caughey was involved in the decision to have Plaintiff committed cannot withstand summary judgment.

## POINT VI

### PLAINTIFF CANNOT DEMONSTRATE A CONSPIRACY SUFFICIENT TO SURVIVE SUMMARY JUDGMENT.

According to Plaintiff, "Defendants conspired and acted in concert to do whatever was necessary, lawful or not, to cause the arrest, imprisonment, and involuntary confinement of Plaintiff ADRIAN SCHOOLCRAFT" when they "(a) manufactured false evidence; (b) unlawfully entered Plaintiff's home; (c) illegally seized Plaintiff's property; (d) verbally and physically threatened Plaintiff in an attempt to silence him; (e) stalked and menaced Plaintiff at his home; and (b) pressured, bribed, coerced and induced individuals to have Plaintiff involuntarily confined to hospital treatment without his consent or any other lawful basis for doing so." (Exhibit A at ¶310). However, in order to prove a § 1983 conspiracy, a Plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private

entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal, causing damages. Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). Plaintiff cannot demonstrate a conspiracy between members of the NYPD or between members of the NYPD and other actors sufficient to survive summary judgment.

**A.      The Intra-Corporate Conspiracy Doctrine Bars Liability for Any Conspiracy Among Members of the NYPD.**

The intra-corporate conspiracy doctrine generally bars liability when the alleged conspirators work for the same organization. See Hoffman v. Nassau County Police Dep't, No. 06-CV-1947 (SJF)(AKT), 2008 U.S. Dist. LEXIS 35377, *15 (E.D.N.Y. Apr. 30, 2008) (citing Girard v. 94th St. & Fifth Ave. Corp., 530 F.2d 66, 71 (2d Cir. 1976)); Danielak v. City of New York, No. 02-CV-2349 (KAM), 2005 U.S. Dist. LEXIS 40901, *43-44 (E.D.N.Y. Sept. 26, 2005) ("[T]he intra-corporate conspiracy doctrine bars Plaintiff's conspiracy claims because all of the individual defendants were employees of the New York City Police Department, and were acting within the scope of their employment as police officers when they arrested Plaintiff."). Therefore, to the extent that Plaintiff alleges a conspiracy amongst and between members of the NYPD, such a claim must fail.

**B.      There is No Evidence Of a Conspiracy Between City Defendants and Individuals Outside of the NYPD.**

To the extent Plaintiff alleges a conspiracy between members of the NYPD and the FDNY, and/or members of the NYPD and employees of the Jamaica Hospital Medical Center, Plaintiff's conspiracy claim nonetheless fails because there is no evidence, aside from Plaintiff's own conclusory and self-serving statements, to suggest that there was any agreement between any defendants to act in concert to inflict an unconstitutional injury.

The essential element of a conspiracy claim is an agreement to deprive a Plaintiff of his constitutional rights because without a "meeting of the minds, the independent acts of two or

more wrongdoers do not amount to conspiracy." <u>National Congress for Puerto Rican Rights v. City of New York</u>, 75 F. Supp.2d 154, 168 (S.D.N.Y. 1999); <u>see</u> <u>also</u>, <u>Walker v. Goord</u>, 98-CV-5217 (DC), 2000 U.S. Dist. LEXIS 3501, *24 (S.D.N.Y. Mar. 21, 2000) ("Plaintiff must prove that defendants acted in a willful manner, culminating in an agreement, understanding or meeting of the minds, that violated [his] rights, privileges, or immunities secured by the Constitution or federal courts"); <u>Perez v. City of New York</u>, 97-CV-2915, 1999 U.S. Dist. LEXIS 21137, *11 (E.D.N.Y. Nov. 16, 1999) (recognizing that an essential element of a claim of conspiracy is an agreement among co-conspirators to violate Plaintiff's constitutional rights); <u>Webb v. Ashburn</u>, 96-CV-0324 (SAS), 1997 U.S. Dist. LEXIS 2848, *14 (S.D.N.Y. Mar. 13, 1997) ("[w]ithout such an agreement, individual acts of misconduct do not amount to conspiracy").

It is well-established in the Second Circuit that vague and conclusory allegations of conspiracy are insufficient to withstand dismissal, either in a motion to dismiss or on summary judgment. <u>See</u> <u>e.g.</u> <u>Rahman v. Philip</u>, 92-CV-5349 (SHS), 1995 U.S. Dist. LEXIS 17018, *6-7 (S.D.N.Y. Nov. 15, 1995) (dismissing conspiracy claim against Correction Officer on summary judgment on the grounds that Plaintiff failed to come forward with "facts from which the existence of a conspiracy may be inferred"); <u>San Fillipo v. U.S. Trust Co. of New York, Inc.</u>, 737 F.2d 246, 256 (2d Cir. 1984), <u>cert.</u> <u>denied</u>, 470 U.S. 1035 (1985) (affirming a dismissal of conspiracy complaint where allegations were vague and unsupported by a description of particular overt act); <u>Sommer v. Dixon</u>, 709 F.2d 173, 175 (2d Cir.), <u>cert.</u> <u>denied</u>, 464 U.S. 857 (1983) ("a complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person, of constitutional rights cannot withstand a motion to dismiss").

Here, Plaintiff's Second Amended Complaint contains only conclusory allegations against City Defendants, and Plaintiff cannot point to any facts which tend to show that there

was a specific agreement between them and any other individuals to violate Plaintiff's

constitutional rights or that any acts were committed in furtherance of an alleged conspiracy.

Plaintiff's Second Amended Complaint is entirely devoid of any allegations regarding when or

where an agreement was made, the nature of such an agreement, or the specific acts performed in

furtherance of this alleged agreement, and the record does not support Plaintiff's conclusory

allegations. Similarly, other than the conclusory allegations in the Second Amended Complaint,

Plaintiff has not adduced any evidence in discovery necessary to create a genuine issue of

material fact.

No evidence in the record suggests any agreement, express or tacit, between or among the

City Defendants, FDNY, and Jamaica Hospital Medical Center. As such, they were not willfully

engaged in joint activity, nor is there any indication that they participated in a conspiracy.

Accordingly, Plaintiff's wholly conclusory conspiracy claim cannot survive summary judgment

### POINT VII

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CANNOT SUCCEED WHERE THE UNDERLYING CLAIMS FALL WITHIN TRADITIONAL TORT LIABILITY.**

Plaintiff's cause of action for Intentional Infliction of Emotional Distress ("IIED") is a

claim of last resort, meaning that if Plaintiff can recover damages on any one of his other claims,

then he cannot also recover damages for IIED. See Moore v. City of New York, 219 F. Supp. 2d

335, 339 (E.D.N.Y. 2002) (quoting EEOC v. Die Fliedermaus L.L.C., 77 F. Supp. 2d 460, 472

(S.D.N.Y.1999)) "In other words, claims of intentional and negligent infliction of emotional

distress cannot coexist with claims of excessive force, assault, and battery." Saldana v. Port

Chester, 09-CV-6268 (SCR)(GAY), 2010 U.S. Dist. LEXIS 142099, *13 (S.D.N.Y. July 21,

2010) (citing Dorn v. Maffei, 386 F. Supp. 2d 479, 486 n.5 (S.D.N.Y. 2005); Naccaratto v.

Scarselli, 124 F. Supp. 2d 36, 44-45 (N.D.N.Y. 2000)); see also, Rasmussen v. City of New York, 766 F. Supp. 2d 399, 415 (E.D.N.Y. 2011) ("an intentional infliction claim is a gap-filling cause of action meant to address those few areas of outrageous anti-social behavior not addressed under any other cause of action."). Because Plaintiff can recover based upon claims of unlawful search and seizure and/or excessive force, Plaintiff cannot *also* maintain a claim for IIED and summary judgment must be granted for City Defendants.

**POINT VIII**

**COMMON LAW NEGLIGENCE AGAINST A MUNICIPALITY MAY ONLY STAND WHERE A PLAINTIFF ALLEGES THAT A DEFENDANT ACTED OUTSIDE THE SCOPE OF HIS EMPLOYMENT.**

Plaintiff's claim for relief under a theory of common law negligence asserting the City of New York was negligent in its hiring, training, supervising and retention of its agents, servants and employees cannot stand. (Exhibit A at ¶365-385). Under New York law, to state a claim for negligent hiring and retention, Plaintiff must show, in addition to the standard elements of negligence, that: "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and, (3) that the tort was committed on the employer's premises or with the employer's chattels." Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) (internal citations and quotation marks omitted); see also Coffey v. City of New York, 49 A.D.3d 449, 450-451 (1st Dep't 2008) ("Recovery on a negligent hiring or retention theory requires a showing that the employer was on notice of the relevant tortious propensities of the wrongdoing employee").

Such a claim cannot be sustained, however, when the defendant acts within the scope of her employment. Newton v. City of New York, 681 F. Supp. 2d 473, 488 (S.D.N.Y. 2010);

<u>Stokes v. City of New York</u>, 05-CV-0007 (JFB)(MDG), 2007 U.S. Dist. LEXIS 32787, *53-54

(E.D.N.Y. May 3, 2007); <u>Colodney v. Continuum Health Partners, Inc.</u>, 03-CV-7276 (DLC),

2004 U.S. Dist. LEXIS 6606, *27-28 (S.D.N.Y. Apr. 15, 2004). It has long been held that:

> *Generally, where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention . . . this is because if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee is negligent, the employer must pay the judgment regardless of the reasonableness of the hiring or retention or the adequacy of the training.*

Sun Min Lee v. J.B. Hunt Transp., Inc., 308 F. Supp. 2d 310, 312 (S.D.N.Y. 1994)

(quoting <u>Karoon v. New York City Transit Authority</u>, 241 A.D.2d 323, 324 (N.Y. App. Div. 1st

Dept. 1997)); <u>see</u> <u>also</u> <u>Eifert v. Bush</u>, 27 A.D.2d 950 (N.Y. App. Divi. 2d Dept. 1967), <u>aff'd</u> 22

N.Y.2d 681 (1968). In fact, this Court has held that "[a] claim for negligent hiring or supervision

can only proceed against an employer for an employee acting outside the scope of her

employment." <u>Colodney v. Continuum Health Partners, Inc.</u>, 03-CV-7276 (DLC), 2004 U.S.

Dist. Lexis 6606, *27 (S.D.N.Y. Apr. 15, 2004) (internal citations omitted). Here, Plaintiff

*specifically* alleges that the City Defendants in this matter were acting within the scope of their

employment. (Exhibit A at ¶¶11-12). This is legally inconsistent and improper. Moreover, the

City admits that the defendant officers were acting within the scope and course of their

employment on the date of the alleged incident. Therefore, Plaintiff's claims against the City of

New York for negligent hiring and retention must be dismissed as a matter of law.

<u>POINT IX</u>

**PLAINTIFF'S CLAIM OF NELIGENT DISCLOSURE OF IAB COMPLAINTS FAILS AS A MATTER OF LAW.**

Plaintiff interposes a claim against the City of New York based on allegations that it was "negligent and careless when it repeatedly allowed allegedly confidential IAB complaints regarding supervisory personnel to be 'leaked' to the very same officials of who were the subjects of the complaints." (Exhibit A at ¶¶386-388). Plaintiff's claim fails because such a claim is barred by New York State public policy, Plaintiff cannot establish that a duty was owed to him by IAB, and because any disclosure, if made, was given to an individual with a right to that information.

**A.      Plaintiff's Claim of Negligent Disclosure Is Barred by Public Policy.**

Plaintiff's claim based on the IAB's disclosure of confidential information is both explicitly and implicitly barred by New York policy, based on the bar against claims for negligent investigation and the policy against the transmogrification of torts.

*1.   Negligent Investigation Is Not a Valid Cause of Action.*

Plaintiff's claims are little more than an attempt to evade the bar on claims for negligent investigation as New York State does not permit causes of action based on negligent investigation or prosecution. See <u>Russ v. State Employees Federal Credit Union (SEFCU)</u>, 298 A.D.2d 791, 793 (N.Y. App. Div. 2002) ("a claim for negligent training in investigative procedures is akin to a claim for negligent investigation or prosecution, which is not actionable in New York"); <u>see also</u>, <u>Jenkins v. City of New York</u>, 91-CV-3539 (RLC), 1992 U.S. Dist. LEXIS 8279, *23-24 (S.D.N.Y. Jun. 15, 1992). Plaintiff is alleging that the IAB, while in the process of investigating his complaint, was negligent. Plaintiff has clearly pleaded a negligent

investigation, regardless of his phraseology. Because such a tort is not permitted under New York State Law, summary judgment must be granted for City Defendants on this claim.

2.  *Plaintiff Cannot Transmogrify an Intentional Tort Into One of Negligence.*

Even if Plaintiff were successful in distinguishing his claim from that of a negligent investigation, this claim is duplicative of intentional torts already alleged by Plaintiff, and is in violation of New York State's policy against the transmogrification of torts. See Schmidt v. Bishop, 779 F. Supp. 321, 324-25 (S.D.N.Y. 1991) (dismissing negligence claim by Plaintiff who alleged that her priest sexually abused her by stating "New York Courts have rejected uniformly such attempts to transmogrify intentional torts into negligence."); Mitchell v. Cty. of Nassau, 05- CV-4957 (SJF)(WDW), 2007 U.S. Dist. LEXIS 38711, *42-43 (E.D.N.Y. May 24, 2007) ("Plaintiff's creative attempt to describe her negligence claim as one for . . . negligent maintenance of equipment and negligent hiring and supervision, cannot circumvent [the] public policy of the State of New York."); Jenkins v. City of New York, 91-CV-3539 (RLC), 1992 U.S. Dist. LEXIS 8279, *23-24 (S.D.N.Y. June 15, 1992) (dismissing negligence claims described as negligent investigation, negligent training and negligent supervision, on the basis of New York's public policy prohibiting causes of action for negligent prosecution or investigation).

Plaintiff alleges that he was retaliated against by his superiors because of the allegedly negligent disclosure. However, elsewhere in the Second Amended Complaint, he also asserts independent, intentional causes of action against the City Defendants for this same retaliation. (Exhibit A at ¶¶ 2, 160, 245, 320-331). This is precisely the sort of transmogrification of torts from intentional to negligent causes of action that New York State law bars.

Moreover, it is well settled that where a Plaintiff pleads facts that support claims of intentional torts, the same set of facts cannot also support a claim of negligence. See, e.g.,

Naccaratto, 124 F. Supp. 2d at 45 ("[W]hen a Plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie."). Thus, there is no good faith basis to proceed with a purported claim of negligence claim against the City of New York for failure to keep IAB complaints confidential where Plaintiff has alleged the same conduct as an intentional tort under 42 U.S.C. § 1983.

### B.      IAB Did Not Owe Plaintiff a Duty of Confidentiality.

To state a claim for negligence under New York law, a Plaintiff must plausibly allege three elements: "(1) the existence of a duty on defendant's part as to Plaintiff; (2) a breach of this duty; and (3) injury to the Plaintiff as a result thereof." Alfaro v. Wal-Mart Stores, Inc., 210 F.3d 111, 114 (2d Cir. 2000) (quoting Akins v. Glens Falls City Sch. Dist., 53 N.Y.2d 325, 333 (N.Y. 1981)). In the absence of a duty, there is no breach, and without a breach, there is no liability. Pulka v. Edelman, 40 N.Y.2d 781, 782 (N.Y. 1976).

In order for the City of New York to owe Plaintiff a duty of confidentiality, the City and Plaintiff must first have a "special relationship." McLean v. New York, 12 N.Y.3d 194, 199 (N.Y. 2009). There are four requirements for the establishment of a special relationship with a municipal entity: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking." Cuffy v. New York, 69 N.Y.2d 255, 260 (N.Y. 1987) (citations omitted).

To the extent Plaintiff's argument is premised on the notion that IAB undertakes such a duty for *all* complaining witnesses, Plaintiff is mistaken. IAB exists "to discipline officers within

the department." <u>Demaine v. Samuels</u>, 29 F. App'x 671, 675 (2d Cir. 2002). It is the purpose and duty of the IAB to act in the interests of justice and the City of New York, and it should not be imputed now with the duty to protect the confidentiality of every complainant with whom it communicates. While maintaining the confidentiality of sources may be a mechanism by which it achieves its goal, Plaintiff has presented no evidence that supports the assumption that a conversation with an investigator, absent some clear indication, will be kept confidential.

However, to the extent that Plaintiff's argument is premised on the notion that IAB explicitly undertook a duty to act on behalf of him *personally*, Plaintiff can provide no evidence to support this allegation. Plaintiff cannot establish that there was a special relationship because he *explicitly* told NYPD investigators with whom he spoke that he did not want to be anonymous and that he was not concerned with confidentiality. (56.1 at ¶93) (Plaintiff: "there's no confidentiality, there's no -- I'm -- I'm not being anonymous at all."). As such, Plaintiff cannot demonstrate that the City assumed any duty to protect his confidentiality.

Further, there is no evidence that Plaintiff justifiably relied on any affirmative undertaking. Without an explicit assurance by members of the IAB that they would maintain his confidentiality, any reliance that his name would remain confidential would not be justifiable. In fact, to establish the individual's justifiable reliance, Plaintiff must show that the municipality's actions "lulled the injured party into a false sense of security and has thereby induced him either to relax his own vigilance or to forego other available avenues of protection." <u>Cuffy</u>, 69 N.Y.2d at 261. Plaintiff has not demonstrated how his reliance on IAB confidentiality either induced him to relax his own vigilance or to forego other avenues of "protection."

Finally, even if Plaintiff *had* requested *and* been assured of his anonymity, there is similarly no evidence that the municipality's agents had any knowledge that inaction could lead

to harm. To this point, Plaintiff has not produced a single item of evidence regarding the claimed "notice" of this issue allegedly provided by the cases of Frank Pallestro and/or Adhyl Polanco. Even if he had, Plaintiff has not presented evidence of which member of IAB allegedly breached his confidentiality, nor whether that individual had any reason to know that Plaintiff would be put in harm's way by the alleged breach by way of the claimed experiences of Frank Pallestro and/or Adhyl Polanco.

As a result of the foregoing there was no special relationship between Plaintiff and the City, and the City did not owe Plaintiff any duty of confidentiality.

### C. Plaintiff's Claim of Negligent Disclosure Fails Because the Disclosure Was Made to an Individual with a Right to That Information.

Even had there been a special relationship between Plaintiff and the City *and* a duty owed on the part of the IAB to Plaintiff, Plaintiff's claim for "negligent disclosure" nonetheless fails as a matter of law. Where negligent disclosure of confidential information is concerned, a disclosure made to a party who had a right to the information cannot form the basis of a claim. C.f., Rosen v. Arden Hill Hosp., 163 Misc.2d 70, 71 (N.Y. Sup. Ct. 1993) (summary judgment proper where confidential information was disclosed to someone with a "right to full and complete disclosure" of the records). The Court in Rosen explained that "any alleged procedural negligence on the part of defendant or its employees cannot result in liability since the recipient of the information received no more than what she was entitled to under the law." Id.

When IAB pursues charges against an officer that may lead to termination, that officer has due process rights, including a full adversarial hearing and the right to face their accuser. See, e.g., Locurto v. Safir, 264 F.3d 154, 171 (2d Cir. 2001) ("when such a public employee is terminated, procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided

afterwards"). The complaint specifically identifies defendant Caughey as the individual that IAB contacted; he is the only person with whom IAB is accused of trying to discuss the merits of Plaintiff's accusations. (Exhibit A at ¶ 135). He is also the individual whom Plaintiff accused of misconduct, and, should he have been brought up on charges and specifications, he is the one who would have had a right to the information Plaintiff provided that had led to his termination. Similarly, though not expressly stated in his Second Amended Complaint, Plaintiff alleges that defendant Mauriello was advised of the allegations of crime complaint manipulation that were made against him by Plaintiff. Because defendant Mauriello was brought up on charges and specifications with regard to that alleged misconduct, he had a right to the information Plaintiff provided in advance of any Departmental trial. (56.1 at ¶97). As a result, the information allegedly disclosed, even if confidential, is not capable of forming the basis of a claim under New York State law.

## POINT X

### PLAINTIFF CANNOT ASSERT A CLAIM FOR MALICIOUS ABUSE OF PROCESS BECAUSE HE WAS NOT HELD PURSUANT TO LEGAL PROCESS.

Plaintiff asserts a claim of malicious abuse of process claiming that City Defendants "issued legal process to place Plaintiff ADRIAN SCHOOLCRAFT under arrest" and that they did so "in order to obtain the collateral objective of preventing Plaintiff from appealing his performance evaluation… [and to] preven[t] Plaintiff from disclosing the aforementioned evidence of NYPD misconduct and corruption Plaintiff had been collecting and documenting." (Exhibit A at ¶¶282-285). The elements of a claim under *Section 1983* for malicious abuse of process are derived from state law. Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994). Under New York law, an abuse of process claim has three essential elements: (1) regularly issued process,

either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective. Curiano v. Suozzi, 63 N.Y.2d 113, 116 (N.Y. 1984) (quoting Board of Educ. v. Farmingdale Classroom Teachers Assn., 38 N.Y.2d 397 (N.Y. 1975). However, Plaintiff cannot succeed on this claim as he was not held pursuant to criminal legal process.[10]

Plaintiff does not allege that he was formally arrested, and processed through the system, resulting in a formal arrest and prosecution. Thus, Plaintiff seems to allege that the act of taking him from his home in handcuffs to the Jamaica Hospital Medical Center acts as a type of warrantless arrest. However, Plaintiff is nonetheless foreclosed in his claim as a warrantless arrest is not considered legal process. See, e.g., Sforza v. City of New York, 07 Civ. 6122 (DLC), 2009 US Dist. LEXIS 27358, *47 (S.D.N.Y. Mar. 31, 2009) (dismissing malicious abuse of process claim because Plaintiff's warrantless arrest "did not involve legal process."); Shmueli v. City of New York, 03-CV-1195 (PAC), 2007 U.S. Dist. LEXIS 42012, at *31 (S.D.N.Y. June 7, 2007) (arrest without a warrant is not effected "pursuant to a legal process"). Thus, Plaintiff's claim for malicious abuse of process based on criminal legal process relating to his claimed arrest must be dismissed.

---

[10] Plaintiff's Second Amended Complaint makes clear that he is claiming malicious abuse of process for his "arrest" – indicating that he believes he was held pursuant to unlawful *criminal* legal process. However, even if he had alleged that he was held pursuant to unlawful *civil* legal process, such a claim could not survive a summary judgment motion. Only criminal abuse of process is cognizable under Section 1983 because civil abuse of process does not amount to a deprivation of rights. Green v. Mattingly, 585 F.3d 97, 104 (2d Cir. 2009)("'section 1983 liability . . . may not be predicated on a claim of malicious abuse of' . . . civil process,")(quoting Cook, 41 F.3d at 79-80).

## POINT XI

**PLAINTIFF CANNOT SURVIVE SUMMARY JUDGMENT ON ANY OF HIS THEORIES OF MUNICIPAL LIABILITY.**

Plaintiff alleges a single, yet convoluted, claim for municipal liability, which can be summarized as a claim that the City has unconstitutional customs and policies of (1) intimidating, threatening, and retaliating against police officers when said police officers challenge unlawful NYPD quota policies and/or attempt to disclose instances of "NYPD corruption and police misconduct, fraud and breaches of the public trust," (2) intentionally "leaking" officers' IAB complaints, (3) deliberate indifference to the proper training, supervision, and discipline of supervisors, "policy making officials," and members of the Internal Affairs Bureau ("IAB"), despite allegations of illegal and/or unconstitutional conduct, and (4) a summons quotas system for NYPD officers, which includes a policy of awarding incentives to officers who meet or exceed the summons quota and a policy of punishing officers who fail to meet the summonses quota. (Exhibit A at ¶322). Plaintiff asserts that these policies and/or practices resulted in (1) the denial of his liberty without due process of law, (2) an unlawful seizure and arrest not based upon probable cause, (3) excessive force imposed upon him, (4) summary punishment, (5) denial of his equal protection under the law, and (6) denial of his right to free speech. (Exhibit A at ¶331).

To state a claim for municipal liability, a Plaintiff must allege plausibly one of four different types of violations: (A) the official responsible for establishing policy, with respect to the subject matter in question to the specific action, caused the alleged violation of the Plaintiff's rights; (B) the existence of an unlawful practice by subordinate officials so permanent and well settled to constitute "custom or usage," with proof that this practice was so manifest as to imply the acquiescence of policy-making officials; (C) a failure to train or supervise that amounts to

"deliberate indifference" to the rights of those with whom the municipality's employees interact; or (D) the existence of a formal policy, officially promulgated or adopted by a municipality.[11]

Further, according to <u>Monell</u> and its progeny, in order to hold a municipality liable as a "person" within the meaning of §1983, a Plaintiff must demonstrate that a policy or custom of the City caused the deprivation of the injured Plaintiff's federal or constitutional rights. <u>See</u>, <u>e.g.</u>, <u>Monell v. City of New York, et al.</u>, 436 U.S. 658, 690-91 (1978); <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989); <u>Sarus v. Rotundo</u>, 831 F.2d 397, 400 (2d Cir. 1987). "To establish <u>Monell</u> liability, the causal link must be strong; that is, the policy must be the 'moving force' behind a constitutional violation." <u>Mercado v. City of New York</u>, 08-CV-2855 (BSJ)(HP), 2011 U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011) (quoting <u>Monell</u>, 436 U.S. at 691, 694).

As discussed below, Plaintiff has not plausibly alleged any of the four theories of <u>Monell</u> liability, and further cannot demonstrate through any admissible evidence that even if a violation of his constitutional rights occurred, that it was caused by a municipal policy or practice.

## A.   Plaintiff Has Not Alleged Conduct By the Official Policy Maker.

Under the first theory of municipal liability, Plaintiff must allege that the official responsible for establishing policy, with respect to the subject matter in question to the specific action, caused the alleged violation of the Plaintiff's rights. <u>See</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483-84 (1986) (plurality opinion). To demonstrate that a municipal employee is a policy maker, he must be shown to have "final decision-making authority over the challenged act" as a matter of State Law. <u>See</u> <u>Pembaur</u>, 475 U.S. at 481 (policymaking authority may be "granted directly by a legislative enactment or may be delegated by an official who possesses such authority"). "Section 434(b) of the New York City Charter provides that '[t]he

---

[11] Plaintiff has not alleged the existence of a "formal policy, officially promulgated or adopted by a municipality," and thus, cannot proceed under the first of the four different theories of municipal liability. <u>Monell</u>, 436 U.S. at 690.

commissioner shall be the chief executive officer of the police force. He shall be chargeable with and responsible for the execution of all laws and the rules and regulations of the department.'" Allen v. City of New York, No. 03-CV-2829 (KMW)(GWG), 2007 U.S. Dist. LEXIS 15, *59 (S.D.N.Y. Jan. 3, 2007) (concluding that the Assistant Chief was not the final policymaker for delaying the arraignment of arrestees); N.Y.C Charter § 434(b). Plaintiff has not brought claims against former Commissioner Raymond W. Kelly, and cannot demonstrate that under New York State law, *any* of the City Defendants had "final policymaking authority" to implement the purported policies complained of by Plaintiff. Accordingly, Plaintiff has not carried his burden to show as a matter of law that any of the City Defendants involved in the alleged violations had any policymaking authority, and thus Plaintiff cannot succeed on the first theory of municipal liability.

### B. Plaintiff's Claim of an Unlawful Practice Fail Because He Has Not Alleged and Cannot Show Conduct Sufficient to Demonstrate a "Custom or Usage" Indicating Acquiescence.

Under the second theory of municipal liability, a City may be held liable where the existence of an unlawful practice by subordinate officials is so permanent and well settled that it constitutes a "custom or usage," with proof that this practice was so manifest as to imply the acquiescence of policy-making officials. See City of St. Louis v. Praprotnik, 485 U.S. 112, 127-30 (1985) (plurality opinion); Sorlucco v. New York City Police Dep't, 971 F.2d 864, 871 (2d Cir. 1992). Plaintiff cannot maintain such a claim in this matter, as he cannot demonstrate a pattern of conduct from a handful of unrelated and inadmissible allegations of unconstitutional conduct by lower level employees. Nor can Plaintiff rely on contemporaneous or subsequent conduct to establish a pattern of violations that would suffice to put the City on notice. Finally, Plaintiff cannot demonstrate that any alleged practices were the moving force behind the constitutional violations alleged herein.

- 33 -

*1. Plaintiff's Claims of Intimidation and Threats of Retaliation and Intentionally Leaking IAB Complaints Fail.*

While the existence of a municipal policy may be inferred from a *consistent* pattern of informal acts or omissions by policy makers, a single isolated instance of unconstitutional conduct by a lower level municipal employee is not sufficient to base a finding of municipal policy or, therefore, liability. City of Oklahoma v. Tuttle, 471 U.S. 808, 824 (1985); Carnesi v. City of N.Y., 98-CV-4899 (LMM), 2001 U.S. Dist. LEXIS 14561, at *14-15 (S.D.N.Y. 2001) (dismissing claim against City where Plaintiff solely made allegations that abuse was "common and well-known," which were insufficient to infer municipal policy or custom); Hayes v. Perotta, 751 F. Supp. 2d 597, 601 (S.D.N.Y. 2010) (a "custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [government]"); Sorlucco, 971 F.2d at 870 (municipality may not be held liable under § 1983 for isolated unconstitutional acts of its employees); Santiago v. Campisi, 91 F. Supp. 2d 655, 675-76 (S.D.N.Y. 2000) ("A single incident of unconstitutional activity is insufficient to infer a custom, policy, or practice as required by Monell to impose municipal liability.").

Further, "a handful of isolated incidents insufficient to create a material fact in dispute about the existence of any [] policy." Escobar v. City of New York, 765 F. Supp. 2d 415, 420 (E.D.N.Y. 2011); see also Dettelis v. City of Buffalo, 3 F. Supp. 2d 341, 348 (four unconstitutional strip-searches in addition to the incident in question in seven years failed as a matter of law to constitute a custom); Edwards v. City of New York, 03-CV-9407, 2005 U.S. Dist. LEXIS 34376, at *33 (S.D.N.Y. Dec. 19, 2005) (Monell "would be rendered sterile if, as Plaintiff asserts, mere conclusory allegations of a few isolated incidents ... were sufficient to hold the municipality liable"); Giaccio v. City of New York, 308 Fed. Appx. 470, 471-72 (2d Cir. 2009) (identification of "at most, only four examples of [alleged practice] . . . falls far short of

establishing a practice that is so 'persistent or widespread' as to justify the imposition of municipal liability") (citation omitted); Davis v. City of New York, 228 F. Supp. 2d 327, 346 (S.D.N.Y. 2002) ("two incidents of unconstitutional conduct by low-level employees in a city agency with over 35,000 employees can never provide a reasonable basis for finding a *widespread or well-settled custom*." (emphasis in original). As discussed below, Plaintiff has not met the burden of demonstrating so widespread, permanent, and well-settled a practice that it constitutes a "custom or usage" of the City of New York that its existence implies the acquiescence of policy-making officials.

Plaintiff's theories of municipal liability include allegations that the NYPD "[i]ntimidat[ed] and threaten[ed] police officers with retaliation when said police officers challenge[d] unlawful NYPD quota policies" and "attempt[ed] to disclose instances of NYPD corruption and police misconduct, fraud and breaches of the public trust" and "[r]etaliat[ed] against police officers with suspensions and disciplinary hearings who disclose or attempt to disclose NYPD corruption and police misconduct." (Exhibit A at ¶322(iv)-(vi)). In addition to his previously discussed claim for *negligently* leaking IAB complaints, Plaintiff also alleges a theory of liability pursuant to Monell based on officers allegedly intentionally leaking IAB complaints. (Exhibit A at ¶322(viii)).

Although Plaintiff has not produced any admissible evidence of such misconduct, at best, Plaintiff has alleged that three other officers, Adhyl Polanco, Frank Pallestro, and Joseph Ferrara were treated similarly to him and were retaliated against for claimed whistleblowing. (56.1 at ¶99). Even assuming *arguendo* that these incidents are sufficiently similar to the purported "pattern" claim, these three incidents alone over a seven year time frame, given the tens of thousands of police officers employed by the NYPD during that time period, falls short of

alleging "a practice that was so persistent or widespread as to constitute a custom or usage with the force of law." <u>Green v. City of New York</u>, 465 F.3d 65, 80 (2d Cir. 2006) (citations and internal quotes omitted

In <u>Davis v. City of New York</u>, a Plaintiff's similar <u>Monell</u> claim of a widespread policy of the NYPD to retaliate against its officers was dismissed on summary judgment despite the fact that the Plaintiff there produced two witnesses to testify about that claimed policy. <u>Davis</u>, 228 F.Supp.2d at 344. Further, though an NYPD lieutenant who testified in discovery stated that the police had such a retaliatory policy, his evidence was deemed insufficient as the court felt it significant that the lieutenant's testimony was based primarily on anecdotal evidence. <u>Id.</u> Of the evidence put forward by Plaintiff regarding the three claimed whistleblowers, for at least Officer Frank Pallestro, Plaintiff has only stated that *news reports* allege support his belief that Officer Pallestro claims that he was retaliated against due to a quota policy, but has not presented any admissible evidence regarding this individual's claims of retaliation. (56.1 at ¶100). This is precisely the sort of anecdotal evidence that <u>Davis</u> found to be insufficient.

Not only has Plaintiff failed to present any evidence of a single other instance of retaliation by suspending and disciplining officers who disclose or attempt to disclose NYPD corruption and police misconduct, but Plaintiff has not alleged that this same conduct happened *to him*. Plaintiff has not and cannot allege that he attended a *single* disciplinary hearing for disclosing or attempting to disclose NYPD corruption and police misconduct. The most that Plaintiff can argue was that he was suspended on October 31, 2009 for refusing to return to the 81st Precinct after being accused of leaving without authorization, and thereafter re-suspended for refusing to return to work after he was released from JHMC on November 6, 2009. (56.1 at ¶¶70-71).  Plaintiff cannot cite to any evidence that any such suspension was the result of his

attempted disclosure of NYPD corruption and police misconduct. Similarly, with regard to Plaintiff's claim that IAB intentionally leaked complaints, Plaintiff has not presented any evidence in discovery that *any* member of the NYPD intentionally leaked information about his IAB complaint. (56.1 at ¶95).  Further, beyond two allegations relating to Adhyl Polanco and Frank Pallestro based on media reports mentioned by Plaintiff in his Second Amended Complaint, Plaintiff has not presented any evidence that any other officers intentionally leaked IAB complaints. (Exhibit A at ¶¶387-388).

       2.  *Contemporaneous Conduct Cannot Establish a Pattern of Violations to Put the City on Notice.*

Additionally, with respect to the relevant timeframe, with the exception of Joseph Ferrara, the allegations of misconduct against other officers claimed by Plaintiff occurred in September to December 2009, concurrently with the misconduct alleged by Plaintiff. (56.1 at ¶¶103-104). Therefore, such contemporaneous activity could not have provided notice to the City that more training or supervision was necessary to avoid *Plaintiff*'s alleged constitutional deprivation, nor could they have caused City Defendants to believe that they could engage in the misconduct alleged by Plaintiff without consequence. Cf. Connick v. Thompson, 131 S. Ct. 1350, 1360 n.7 (2011) ("contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates") (internal quotation omitted).

       3.  *Plaintiff Fails To Establish A Causal Connection.*

Importantly, even if Plaintiff were first able to "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused him injuries. . . the Plaintiff must establish a causal connection – an affirmative link – between the policy and the deprivation of his constitutional rights." Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir.

1985) (internal quotation marks and citation omitted). Therefore, in order to succeed on a municipal liability claim, Plaintiff must establish that an identified municipal policy or practice was "the moving force [behind] the constitutional violation." Monell, 436 U.S. at 694.

Not only does Plaintiff fail to state a policy but he fails to allege facts or produce evidence from which the Court may infer an actual causal link between the custom or policy and alleged constitutional violation. See Cuevas v. City of New York, No. 07-CV-4169 (LAP), 2009 U.S. Dist. LEXIS 114984, at *12 (S.D.N.Y. Dec. 7, 2009) ("Baldly asserting that Plaintiff's injuries are the result of the City's policies does not show this Court what the policy is or how that policy subjected Plaintiff to suffer the denial of a constitutional right"). Plaintiff merely states conclusory allegations without providing evidence of how such a policy infringed on his constitutional rights. It is utterly unclear how Plaintiff makes the logical leap from a quota policy to Plaintiff's claimed unlawful search and seizure, and claims of excessive force. This is all the more evident given the fact that Plaintiff has not provided evidence that any police officer other than Adrian Schoolcraft has been falsely arrested, committed to a psychiatric hospital against his will, and/or subjected to excessive force. Nor can Plaintiff identify another officer who has even made the same allegations as Plaintiff herein. As Plaintiff's boilerplate language and dearth of evidence is insufficient to demonstrate how a City policy directly caused him harm, summary judgment for City Defendants should be granted on Plaintiff's Monell claim based on a theory of a widespread unconstitutional practice.

### C.    Plaintiff Cannot Demonstrate Deliberate Indifference.

The third method by which a Plaintiff can hold a municipality liable is by demonstrating a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact. City of Canton, 489 U.S. at 388. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a

known or obvious consequence of his action." Bd. Of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 410 (1997) (quoting City of Canton, 489 U.S. at 388) (emphasis added).

Some appellate decisions use varying terminology, such as "tacit authorization" or "constructive acquiescence," to describe the same concept as deliberate indifference. E.g., Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) (municipal liability appropriate if policymakers "ha[ve] acquiesced in or tacitly authorized its subordinates' unlawful actions"); Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004) (equating "deliberate indifference" with "acquiescence"); Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (equating "deliberate indifference" with "tacit authorization"); Sorlucco, 971 F.2d at 871 (subordinates' discriminatory actions can give rise to municipal liability if the "discriminatory practice [is] so manifest as to imply the constructive acquiescence of senior policy-making officials"). Whether policymakers are "deliberately indifferent," or are said to "tacitly authorize" or "acquiesce" in subordinates' wrongdoing, the foundation of this state of mind remains the same: The right in question must be "clearly established" in order for policymakers to "tacitly authorize" or "acquiesce" in *unlawful* conduct such that their authorization or acquiescence amounts to a "policy" decision. See generally Brown, 520 U.S. at 407-8 & 419 (Souter, J. dissenting); Young, 160 F.3d at 904.

In order to prove a deliberate indifference claim, Plaintiff must show that the City's alleged failure to train or supervise proximately caused his injury. See, e.g., Connick, 131 S. Ct. at 1359-60. But, "[w]here the proper response – to follow one's oath, not to commit the crime of perjury, and to avoid prosecuting the innocent – is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or

supervise." Walker v. City of New York, 974 F.2d 293, 299-300 (2d Cir. 1992), cert. denied, 507 U.S. 961 (1993). For this reason, Plaintiff's claim based on the City's alleged failure to train or supervise supervisory personnel to ensure that they do not unlawfully search and seize a member of the service, use excessive force, and falsely commit them to a hospital facility, fails as a matter of law.

### 1. Plaintiff Cannot Demonstrate Deliberate Indifference to Disciplining Supervisors.

One of Plaintiff's theories of Monell liability is that the City "[d]isplay[ed] a deliberate indifference to disciplining supervisors, despite allegations of illegal and/or unconstitutional conduct," which is expanded on later by stating that the "deliberate indifference to proper training, supervising and/or disciplining of policy making officials such as defendants MARINO, NELSON and MAURIELLO constituted explicit and/or tacit approval of their illegal and unconstitutional conduct." (Exhibit A at ¶325).

To establish a Monell claim based on a theory of inadequate supervision or discipline, Plaintiffs must first show that the need for more or better supervision or discipline is so obvious that a failure to do so could properly be characterized as deliberate indifference. See Brown, 520 U.S. at 410; Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995); Powell v. Gardner, 891 F.2d 1039, 1045 (2d Cir. 1989). As such, only "municipal inaction such as the *persistent* failure to discipline subordinates who violate civil rights [can] give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of Monell." Searles v. Pompilio, 652 F. Supp. 2d 432, 443 (S.D.N.Y. 2009) (quoting Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983) (emphasis added).

The failure to discipline an individual officer is insufficient to establish liability based on failure-to-discipline. Searles, 652 F. Supp. 2d at 444-45; see also Hill v. City of New York, 03-

CV-1283 (ARR), 2005 U.S. Dist. LEXIS 38926, *30-31 (E.D.N.Y. Dec. 29, 2005) (alleged failure of NYPD to take disciplinary or investigatory action against officer who was found by CCRB to use excessive force and another officer who CCRB concluded "should be further investigated…suggests, at most, negligent administration or one isolated incident of bureaucratic inaction" which "does not rise to the level of an actionable violation.") (citing Amnesty Am., 361 F.3d at 128); Mahan v. City of New York, 00-CV-6645 (DGT), 2005 U.S. Dist. LEXIS 14322, *14-24 (E.D.N.Y. July 19, 2005) ("Plaintiffs' evidence of one allegedly inadequate investigation into one CCRB complaint against one officer does not support the kind of system-wide indictment present in [cases where failure to train or discipline theories were allowed to survive summary judgment].").

While "deliberate indifference may be inferred if [repeated complaints of civil rights violations] are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents," Vann, 72 F. 3d at 1049, where investigations were done or attempted and investigators determined that the claims were not justified or were at least not demonstrated to have validity, Plaintiff cannot sustain his claim. See Yang Feng Zhao v. New York, 656 F.Supp.2d 375, 397 (S.D.N.Y. 2009); Thomas v. Roach, 165 F.3d 137, 145 (2d Cir. 1999) (Plaintiff failed to meet burden of establishing deliberate indifference where municipality investigated, but did not substantiate, prior allegations of misconduct against officers); Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (affirming dismissal of § 1983 claim against municipality where defendant town hired lawyer to investigate complaint, notwithstanding Plaintiff's claim that this was merely done for show); Mahan, 2005 U.S. Dist. LEXIS 14322, *14-24 (summary judgment granted to City on failure to supervise or discipline Monell claim

where NYPD actually investigated the six complaints brought against the defendant officer, even though they failed to substantiate the allegations).

Similarly, allegations that were not substantiated cannot be used to support a Monell claim. See, e.g., Simms v. City of New York, 480 Fed. Appx. 627, 630 (2d Cir. 2012) (citation to prior unsubstantiated lawsuit "does not support an inference that [Plaintiff's] injuries were caused by the City's failure to train its employees."); Rodriguez v. City of New York, 11-CV-515 (ALC)(GWG), Slip Op. at 10 (S.D.N.Y. Mar. 15, 2013) (citation to settled lawsuits to support Monell claim "are tantamount to unsubstantiated accusations, which are wholly insufficient to support an inference [of a policy or practice].") (citing Marcel v. City of New York, 88-CV-7017 (LLS), 1990 U.S. Dist. LEXIS 4094, *23-24 (S.D.N.Y. Apr. 11, 1990)); Osterhoudt v. City of New York, 10-CV-3173 (RJD)(RML), 2012 U.S. Dist. LEXIS 139700, *4 (E.D.N.Y. Sept. 27, 2012) ((while unsubstantiated allegations can be considered when deciding whether a Monell claim is plausible in the context of a Rule 12 motion, "[m]ere allegations have little, if any, probative force and by themselves would hardly prevent summary judgment."); Brown v. Pritchard, 09-CV-214S (HBS), 2011 U.S. Dist. LEXIS 72486, *19 (W.D.N.Y. July 6, 2011) ("unsubstantiated grievances are only charges not actual findings of abuse that may be the basis for liability."); Rasmussen, 766 F. Supp. 2d at 409-10 (granting summary judgment on Monell claim where proof of policy or practice came from, *inter alia*, unsubstantiated complaints and lawsuits). Even when allegations of misconduct are substantiated, if they are not similar to the allegations in the complaint, they are irrelevant to proving a Monell claim. Pacheco v. City of New York, et al., 234 F.R.D. 53, 55 (E.D.N.Y. 2006).

In addition, as with failure-to-train and failure to-supervise, a Plaintiff must establish a sufficient nexus between the municipality's failure and the Plaintiff's injury. See Vann, 72 F.3d

at 1051. To succeed on a theory of municipal liability in this type of claim, Plaintiff must prove more than "but for" causation – i.e., that but for the alleged inadequate supervision or discipline . . . he would not have been injured. Plaintiff must demonstrate that the municipal "policy" at issue was the "moving force" behind his injuries. See Ameduri v. Vill. of Frankfort, 2014 U.S. Dist. LEXIS 44564, *55-66 (N.D.N.Y. Mar. 31, 2014) (citing City of Canton, 489 U.S. at 389).

In the instant matter, Plaintiff offers no facts giving rise to a plausible inference that any alleged deficiency in the hiring, supervision, or failure to discipline Marino, Mauriello, and Nelson manifested "deliberate indifference" to Plaintiff's rights. Instead, Plaintiff lists myriad allegations against defendants Marino, Mauriello, and Nelson, which have no bearing on the allegations against the individuals in this matter. To be clear, Plaintiff has alleged that defendant Marino used excessive force against him, (56.1 at ¶55) and alleges that defendants Marino, Mauriello, and Nelson all personally engaged in unlawful searches and seizures of Plaintiff. (Exhibit A at ¶¶153, 163, 169).  Notably, however, there have been no substantiated incidents involving any allegation that any physical force whatsoever was used by Marino in any incident, and there are no substantiated allegations of unlawful search or seizure, conspiracy, or retaliation against any of these defendants. (56.1 at ¶¶97-98). Plaintiff instead relies on unsubstantiated complaints of unrelated misconduct. (Exhibit A at ¶¶227-252). However, as discussed *supra*, a list of complaints cannot by itself justify a finding of deliberate indifference as Plaintiff has not uncovered any evidence that the allegations made against defendants Mauriello, Marino, or Nelson over the course of their careers were not investigated. Accordingly, deliberate indifference cannot be inferred from these unsubstantiated or unfounded complaints and there is simply no plausible claim for Monell liability against the City of New York.

Also fatal to Plaintiff's claim is that he cannot establish that any alleged failure to discipline Marino, Mauriello, or Nelson was causally related to any of the injuries set forth in Plaintiff's complaint. See Reynolds, 506 F.3d at 192. As evidenced by Plaintiff's pleading and the evidence presented in discovery, Marino, Mauriello, and Nelson's previous misconduct "was of a different kind and magnitude than the assault alleged in the complaint." See Ameduri, 2014 U.S. Dist. LEXIS 44564 at *65. Therefore, Plaintiff's Monell claim against the City of New York must be dismissed for want of proximate causation. Accordingly, defendant City is entitled to summary judgment on Plaintiff's Monell claims predicated on failure to supervise or discipline.

### 2. Plaintiff Has Not Brought Claims Against Any Policy Makers.

Plaintiff claims that the City exercised deliberate indifference to the proper training, supervision, and discipline of "policy making officials," (Exhibit A at ¶325) and by doing so, presumably attempts to claim that "[w]here a final policymaker is the actor, a single action taken by a municipality is sufficient to expose it to liability." Rubio v. Cty. of Suffolk, 01-CV-1806 (TCP), 2007 U.S. Dist. LEXIS 75344, *17-18 (E.D.N.Y. Oct. 9, 2007) (citing Pembaur, 475 U.S. at 480). As discussed supra, none of the City Defendants is a final policymaker. Accordingly, Plaintiff's claim that the NYPD exercised deliberate indifference to the proper training, supervision, and discipline of "policymaking officials," and any attempt to assert municipal liability based on the acts of a policymaking official should be dismissed.

### 3. Failure to Train.

Another of Plaintiff's theories of municipal liability is the "deliberate indifference to proper training and supervision of the Internal Affairs Bureau regarding maintaining the confidentiality of complainants." (Exhibit A at ¶326). In order to establish a claim based on a

lack of training, Plaintiff must demonstrate the failure to train was so egregious as to demonstrate a deliberate indifference to his constitutional rights. City of Canton, 489 U.S. at 385. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, 131 S. Ct. at 1359 (citing Oklahoma City v. Tuttle, 471 U.S. at 822-823). In order to prove a claim of deliberate indifference, a Plaintiff ultimately must identify "a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation.'" Amnesty Am., 361 F.3d at 129 (quoting City of Canton , 489 U.S. at 391). In other words, a Plaintiff must demonstrate that the municipal employee's "'shortcomings . . . resulted from . . . a faulty training program' rather than from negligent implementation of a sound program or other, unrelated circumstances." Id. at 129-30 (quoting City of Canton, 489 U.S. at 390-91).

Importantly, the Second Circuit has held that "the simple recitation that there was a failure to train municipal employees . . . does not suffice to allege that a municipal custom or policy caused the Plaintiff's injury in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993); see also Triano v. Harrison, 895 F.Supp.2d 526, 540 (S.D.N.Y. 2012) ("Plaintiff's mere claim that the Town failed to train and supervise its police officers is a boilerplate assertion is insufficient, without more, to state a Monell claim."). Moreover, the Supreme Court's decision in Connick has arguably made the pleading standard even higher for § 1983 Plaintiffs asserting claims against municipalities. Connick, 131 S. Ct. at 1365 (finding the standard set forth in Walker insufficient to support municipal liability).[12] Plaintiff's Second Amended Complaint

---

[12] Walker required a Plaintiff alleging deliberate indifference to show: (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation;" (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of

does not allege, and subsequent discovery has not revealed, any specific deficiency in the City's training that is "closely related to the ultimate injury" suffered by Plaintiff, and discovery has not produced any indication that members of the service were either not trained report the misconduct of other officers to their supervisors and/or the IAB, or not trained to maintain confidentiality. Additionally, as discussed *supra*, no evidence has been discovered of sufficiently similar instances of constitutional violations that would put the City on notice of a need to improve its training. See Connick, 131 S. Ct. at 1360 (four allegations of misconduct within ten years could not have put policymaker on notice that the training was inadequate).

Plaintiff has not made a showing that the conduct alleged in this action resulted from a faulty training program, and in fact, Plaintiff's own police practices expert testified that "the New York City Police Department is a model police department and its practices are within the standards of police departments throughout the United States, and certainly New York State." (56.1 at ¶105). Accordingly, summary judgment should be granted to defendant City on Plaintiff's Section 1983 claim of inadequate training and supervision.

**D.    Plaintiff Must Establish a Violation of His Constitutional Rights to Assert Municipal Liability.**

Where a Plaintiff has failed to establish a violation of his constitutional rights, there is no basis for a claim of municipal liability. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)(if Plaintiff cannot show that her constitutional rights were violated by a City actor, then there cannot be Monell liability); Martinez v. City of New York, No. 06-CV-5671 (WHP), 2008 U.S. Dist. LEXIS 49203, at *12 (S.D.N.Y. June 27, 2008), aff'd Martinez v. Muentes, 340 Fed.

---

employees mishandling the situation;" and (3) "that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights." Walker, 974 F.2d at 297-98.

Appx. 700 (2d Cir. July 27, 2009) ("A municipality cannot be liable for acts by its employees which are not constitutional violations.").

>    1.  *Plaintiff Has Not Alleged a Valid First Amendment Claim for Retaliation.*

As discussed *supra*, Plaintiff has no First Amendment claim against any individual defendant, accordingly, his <u>Monell</u> claim against the City based on a policy or practice of First Amendment retaliation must also fail. <u>E.g.</u>, <u>Gangadeen v. City of New York</u>, 654 F. Supp. 2d 169, 191 n.17 (S.D.N.Y. 2009) (citing <u>Segal v. City of New York</u>, 459 F.3d 207, 219 (2d Cir. 2006)).

>    2.  *Plaintiff's Claims of An Alleged Quota Fail*

Plaintiff alleges <u>Monell</u> theories of liability based on a Departmental "quota", including "creating a quotas system for NYPD subordinate officers requiring the officers to issue a certain number of summonses per month and year regardless of probable cause," "awarding incentives to officers who meet or exceed the required number of summonses to be issued according to NYPD's quota," and "punishing officers who fail to meet the required number of summonses established by NYPD's quota." (Exhibit A at ¶322). Plaintiff has utterly failed to present a single piece of evidence indicating that there was a quota system requiring officers to issue a certain number of summonses per month and year regardless of probable cause.[13] Further, even assuming there was a set number of summonses that officers in the NYPD were asked to issue per month regardless of probable cause, there is no evidence of a policy of either punishing

---

[13] In fact, Plaintiff testified that he didn't "recall any specific number," of summonses that officers were required to issue, and could not even recall a single incident where a supervisor ordered him to issue a specific number of summonses. (56.1 at ¶7).

officers who failed to meet that number,[14] or awarding incentives to officers who met or exceeded the number.

Moreover, even accepting Plaintiff's allegation of a quota as true, Plaintiff cannot show that any such quota policy caused *his* claimed constitutional injuries or even that it was more than a single isolated instance of unconstitutional conduct by a lower level municipal employee. Therefore, City Defendants are entitled to summary judgment on Plaintiff's <u>Monell</u> claim against the City based on a quota policy.

## <u>CONCLUSION</u>

For the foregoing reasons, City Defendants respectfully request that the Court grant their motion for summary judgment pursuant to FED. R. CIV. P. 56.

Dated:     New York, New York
             December 22, 2014

Respectfully submitted,

ZACHARY W. CARTER
Corporation Counsel of the
  City of New York
*Attorneys for City Defendants*
100 Church Street, Room 3-200
New York, New York 10007
(212) 356-2372

By:    *S. Mettham*
        Suzanna Publicker Mettham
        Ryan Shaffer
        Senior Counsels

---

[14] Plaintiff could not provide the name of a single other officer that he knew to have been retaliated against in the same manner that he had been. (56.1 at ¶3) (cannot name another officer who lost overtime for not meeting the quota); (56.1 at ¶4) (cannot name another officer who lost the ability to request overtime); (56.1 at ¶5) (cannot name another officer who had to issue certain number of summonses to return to chosen tour); (56.1 at ¶6) (cannot name another officer who was denied a day off for failing to meet the quota policy).