SM Exhibit AQ

## POLICE DEPARTMENT
## CITY OF NEW YORK

**M # 09-1973**       **Log# 09-41517**       **SIU# 01-148-09**

**From:**        Sergeant Alroy Scott, Special Investigations Unit

**Date/Time:**   November 11, 2009 / 1730 hrs.

**Allegation:**  DRV-Other

**Subject:**     Conferral with C/V

---

(KD) 08/24/09 @ 1500 HRS***DRV-OTHER***Dt McGonagle, Group 1, forwarded the following complaint to the C/C by fax, letter reads as follows: PO Schoolcraft, Tax # 931186, 81 pct, reports that an unidentified person from DI Mauriello's, C.O. 81 Pct, Administrative Staff, has reported that S/O's Sgt Weiss, Tax #_____, 81 pct and Lt Caughey, Tax #_____ 81 pct, broke in and entered, without permission or authority, a locked office containing sensitive department files, and removed documents pertaining to Civilian Complaints that were inside of Sgt Weiss's Department Personnel Folder. The source states that the files would have been an obstacle to the evaluation and promotion of Sgt Weiss to NYPD lieutenant. Sgt Weiss has since been promoted to lieutenant. DI Grossi recommends OG back to Group 1. (KD)

---

1.   On the above date and approximate time, the undersigned investigating officer is noting that on November 6, 2009 an interview was conducted with PO Schoolcraft at his residence. The undersigned agreed to meet with PO Schoolcraft (C/V) and his father, Larry Schoolcraft to photograph the alleged "crime scene" and to confer with the C/V in regards to the alleged missing property that his father had reported he was missing on his behalf on October 31, 2009. On the aforementioned date, PO Schoolcraft was taken from his residence to Jamaica Hospital for medical care my members of the services and EMS personnel.

2.   At approximately 1700 hours, the undersigned, accompanied by Sgt. Wayne Chu did arrive at the C/V's home. In sum and substance the C/V was asked to clarify for the I/O's how things transpired on October 31, 2009 and for him to identify if any, missing property. PO Schoolcraft granted the I/O's permission to take pictures of his apartment. While the C/V was looking for things that were missing he was describing what allegedly transpired on the aforementioned date. C/V stated that while he was being handcuffed / taken into custody, Chief Marino placed his foot over his head preventing him from seeing. He further explained the Chief Marino's foot did make contact with his face. He also stated that he was taken to the hospital against his will and that the police violated his rights by entering into his apartment from the start. PO Schoolcraft informed the I/O's that he is missing an Olympus Digital Recorder Model WS-331 in which he allegedly observed Chief Marino place in his right duty jacket pocket, his apartment keys and miscellaneous department papers / files that he had collected. He also stated that as he was leaving his apartment he observed unknown police officers searching through his property. He stated that his hard drive, cellular phone and money were accounted for. The cellular phone was lying on his bed and did not appear to have been thrown across the room as reported. During the interview with the C/V, the undersigned observed a blue Olympus Digital Voice Recorder Model DS-50 sitting on the C/V's bedroom cabinet in plain view. The C/V informed the undersigned that the aforesaid device is not the one that was allegedly missing. He also informed the undersigned that the aforesaid device is voice activated. PO Schoolcraft gave the undersigned permission to ascertain and examine the device. The undersigned discovered that the device contained a recording of an incident that occurred on October 31, 2009 that sounded like officer's asking the C/V if he was ok and need help. PO Schoolcraft gave the undersigned permission to take the device for further examination after he had downloaded a copy for himself on his computer. The undersigned informed PO Schoolcraft that he would present the device for analysts by IAB investigators for voice enhancement and downloading. The undersigned also retrieved the C/V's memo book # A 663084. (Log # 09-55275) After some further short conversation pertaining to the investigation of QUAD in relation to copies of complaint report worksheets that were lying on a box near the C/V's doorway and future steps that were going to be taken in regards to the investigation of his allegations, the I/O's left the location.

3. The above incident was recorded. The recording was secured and received Group # 1 recording serial # 09- 95 for identification. This case will remain open.

4. For your information.

| TIME SPENT | VEHICLES | EXPENSES |
|---|---|---|
| Clerical: 1 hour 20 min. | Dept Auto# N/A | N/A |
| Observation: N/A | Pvt Auto #: N/A | |
| Interview: N/A | | |
| Travel: N/A | | |

Sgt. Alroy Scott
Case Investigator

Lt. Nicholas McAteer
Team Leader / Case Supervisor

D.I. David A. Grossi
**Commanding Officer**

W/S# 42
ATT: A, B