# PLAINTIFF'S MOTION
# EXHIBIT 34

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
ADRIAN SCHOOLCRAFT,

                                                Plaintiff,

        -against-

THE CITY OF NEW YORK, DEPUTY CHIEF MICHAEL MARINO, Tax Id. 873220, Individually and in his official capacity, ASSISTANT CHIEF PATROL BOROUGH BROOKLYN NORTH GERALD NELSON, Tax Id. 912370, Individually and in his Official Capacity, DEPUTY INSPECTOR STEVEN MAURIELLO, Tax Id. 895117, Individually and in his Official Capacity, CAPTAIN THEODORE LAUTERBORN, Tax Id. 897840, Individually and in his Official Capacity, LIEUTENANT WILLIAM GOUGH, Tax Id. 919124, Individually and in his Official Capacity, SGT. FREDERICK SAWYER, Shield No. 2576, Individually and in his Official Capacity, SERGEANT KURT DUNCAN, Shield No. 2483, Individually and in his Official Capacity, LIEUTENANT CHRISTOPHER BROSCHART, Tax Id. 915354, Individually and in his Official Capacity, LIEUTENANT TIMOTHY CAUGHEY, Tax Id. 885374 Individually and in his Official Capacity, SERGEANT SHANTEL JAMES, Shield No. 3004, Individually and in her Official Capacity, LIEUTENANT THOMAS HANLEY, Tax Id. 879761, Individually and in his Official Capacity, CAPTAIN TIMOTHY TRAINER, Tax Id. 899922, Individually and in his Official Capacity, SERGEANT SONDRA WILSON, Shield No. 5172, Individually and in her Official Capacity, SERGEAANT ROBERT W. O'HARE, Tax Id. 916960, Individually and in his Official Capacity, SERGEANT RICHARD WALL, Shield No. 3099 and P.O.'s "JOHN DOE" #1-50, Individually and in their Official Capacity, (the name John Doe being fictitious, as the true names are presently unknown), (collectively referred to as "NYPD defendants"), FDNY LIEUTENANT ELISE HANLON, Individually and in her Official Capacity as a lieutenant with the New York City Fire Department, JAMAICA HOSPITAL MEDICAL CENTER, DR. ISAK ISAKOV, Individually and in his Official Capacity, DR. LILIAN ALDANA-BERNIER, Individually and in her Official Capacity and JAMAICA HOSPITAL MEDICAL CENTER EMPLOYEE'S "JOHN DOE" #1-50, Individually and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown),           Defendants.

                               JURY TRIAL DEMANDED

                               10-CV-06005 (RWS)

------------------------------------------------------------------------------X

DEFENDANT MAURIELLO'S ANSWER TO SECOND AMENDED COMPLAINT, AMENDED WITH COUNTERCLAIMS

Defendant STEVEN MAURIELLO, by his attorneys, SCOPPETTA SEIFF KRETZ & ABERCROMBIE, for his Answer, amended with Counterclaims, to the Second Amended Complaint, alleges as follows:

1.  With respect to the allegations in paragraph 1 of the Second Amended Complaint, denies that he violated plaintiff's civil rights and denies plaintiff is entitled to recover compensatory or punitive damages or attorney's fees from him.

2.  With respect to the allegations in paragraph 2 of the Second Amended Complaint, denies he participated in the alleged wrongdoing, and denies, upon information and belief, that any of the other defendants engaged in such wrongdoing.

3.  Denies knowledge or information sufficient to form a belief with respect to the allegations in paragraph 4 of the Second Amended Complaint, except admits venue is properly laid in the Southern District of New York.

4.  Denies knowledge or information sufficient to form a belief with respect to the allegations in paragraphs 6, 8, 13 through 30, 32, 34 through 37, 45, 46, 49, 52, 53, 56, 57, 60, 64, 65, 67, 71, 78 through 82, 84, 92, 93 through 103, 105 107, 109 through 115, 117, 120 through 125, 134 through 139, 141, 142, 145 through 152, 157 through 161, 163 through 169, 172, 173, 176, 179 through 207, 212, 213, 216 through 224, 226 through 246, 282, 289, 292, 299, 302 through 306, 313 through 319, 333 through 338, 352, 360 through 363, 366 through 382, 386, 387, 388, 390, 391, 392, 394, 395 and 396 of the Second Amended Complaint.

5.  Denies knowledge or information sufficient to form a belief with respect to the allegations in paragraphs 9, 10, 11 and 12 of the Second Amended Complaint, except admits that at all relevant times he was a duly sworn officer of the

New York City Police Department and acted at all times in his official capacity in furtherance of his official duties.

6. Denies knowledge or information sufficient to form a belief with respect to the allegations in paragraph 31 of the Second Amended Complaint, except admits plaintiff worked at the 81st Precinct until October 31, 2009.

7. With respect to the allegations in paragraph 33 of the Second Amended Complaint, denies that as a patrol officer plaintiff was designated as senior.

8. Denies the allegations in paragraphs 38, 39, 41, 47, 50, 51, 55, 62, 70, 72, 75, 76, 86, 87, 88, 91, 108, 116, 118, 156, 178, 208, 209, 210, 215, 225, 249, 252, 253, 254, 262 through 277, 279, 280, 283 through 287, 290, 293 through 295, 297, 298, 300, 308 through 311, 321 through 331, 340, 341, 347 through 349, 351, 353, 354, 355, 357, 364, 384 and 385.

9. Denies the allegations of paragraph 40 of the Second Amended Complaint, except admits he was assigned to the 81st Precinct in or about October 2006.

10. With respect to the allegations in paragraphs 42 and 43 of the Second Amended Complaint, denies that he berated or threatened his officers and alleges he at all times directed and encouraged his officers to properly do the work they were obligated to do as police officers in the New York City Police Department.

11. Denies knowledge or information sufficient to form a belief with respect to the allegations in paragraph 44 of the Second Amended Complaint, except denies there was an illegal quota policy or that he enforced any such policy.

12. Denies the allegations of paragraph 48 of the Second Amended Complaint, and respectfully refers the Court to the complete statement made by him on

the occasion cited, which, upon information and belief, was at least partially recorded by plaintiff, surreptitiously.

13. Denies the allegations in paragraph 54 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to whether plaintiff engaged in the alleged wrongdoing.

14. Denies the allegations in paragraph 58 of the Second Amended Complaint, except admits plaintiff received an overall rating of 2.5.

15. Denies the allegations in paragraph 59 of the Second Amended Complaint, except admits plaintiff received an overall rating of 2.5.

16. Denies the allegations in paragraph 63 of the Second Amended Complaint, except admits at some point plaintiff said he intended to appeal his evaluation and denies knowledge or information sufficient to form a belief as to when plaintiff first said so.

17. Denies knowledge or information sufficient to form a belief with respect to the allegations in paragraph 66 of the Second Amended Complaint, except denies that "the only way plaintiff improve future performance evaluations, was if plaintiff raised his 'ACTIVITY,' by writing 'MORE SUMMONSES' and being 'MORE PROACTIVE.'"

18. Denies the allegations in paragraph 68 of the Second Amended Complaint, except admits a meeting took place on or about the date alleged.

19. Admit the allegations of paragraph 69 of the Second Amended Complaint, except alleges upon information and belief that Lieutenant Crawford also attended the meeting.

20. Denies the allegations of paragraph 73 of the Second Amended Complaint, except admits plaintiff was told he would get a higher evaluation if he were more actively engaged in fulfilling the duties and responsibilities of a patrol officer while on patrol.

21. With respect to the allegations in paragraph 74 of the Second Amended Complaint, denies knowledge or information sufficient to form a belief with respect to whether the alleged statement was made at the meeting, except admits that an effort was made at the meeting to get plaintiff to understand it was his obligation to be actively engaged in fulfilling his duties and responsibilities as a patrol officer while on patrol.

22. With respect to the allegations in paragraph 77 of the Second Amended Complaint, respectfully refers the Court to the cited decision for its content.

23. Denies knowledge or information sufficient to form a belief with respect to the allegations in paragraph 83 of the Second Amended Complaint, except denies plaintiff's evaluation directly correlates to his failure to meet the alleged illegal summons/arrest quota, and denies there was such a quota in the 81st Precinct.

24. Denies knowledge or information sufficient to form a belief with respect to the allegations in paragraph 85 of the Second Amended Complaint, except admits Michael Marino is Deputy Chief of Patrol Borough Brooklyn North.

25. Denies the allegations of paragraph 89 of the Second Amended Complaint, except admits plaintiff said he would appeal his evaluation.

26. Denies the allegations in paragraph 90 of the Second Amended Complaint, except admits the alleged letter was received, and respectfully refers the Court to the letter for its complete contents.

5

27.     Denies the allegations in paragraphs 93 and 140 of the Second Amended Complaint, except admits upon information and belief that defendant Caughey made a copy of plaintiff's memo book.

28.     With respect to the allegations in paragraph 104 of the Second Amended Complaint, denies that he engaged in the alleged conduct and denies knowledge or information sufficient to form a belief as to whether anyone else engaged in any such conduct.

29.     Denies the allegations in paragraph 106 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief with respect to what P.O. Zucker may have communicated to plaintiff.

30.     Denies the allegations of paragraph 119 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to why plaintiff's gun and shield had been removed,

31.     With respect to the allegations of paragraph 126 of the Second Amended Complaint, admits plaintiff submitted a request and respectfully refers the Court to the letter for its contents.

32.     With respect to the allegations of paragraph 127 of the Second Amended Complaint, denies plaintiff's appeal was not sent to Patrol Borough Brooklyn North, denies knowing that plaintiff's appeal had been closed, and denies plaintiff repeatedly inquired of him about the appeal.

33.     Denies the allegations in paragraphs 128 and 129 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief with respect to whether the alleged meeting took place or what plaintiff might have said.

34. With respect to the allegations in paragraph 130 of the Second Amended Complaint, denies, upon information and belief, that plaintiff witnessed at least thirteen instances, or that there were thirteen instances, where crimes were being underreported in order to avoid index crime classification.

35. Upon information and belief, denies the allegations in paragraph 131 of the Second Amended Complaint.

36. Denies knowledge or information sufficient to form a belief with respect to the allegations in paragraph 132 of the Second Amended Complaint, except admits plaintiff was placed on performance monitoring.

37. Denies the allegations in paragraph 133 of the Second Amended Complaint, except admits receiving the alleged memo issued by defendant Caughey, and respectfully refers the Court to the memo for its contents.

38. Upon information and belief, denies the allegations of paragraph 143 of the Second Amended Complaint.

39. Upon information and belief, denies the allegations of paragraph 144 of the Second Amended Complaint, except admits that plaintiff left work before the end of his tour.

40. Denies the allegations in paragraphs 153 and 154 of the Second Amended Complaint, except admits he and Chief Michael Marino, as well as two members of the Emergency Services Unit, were among those who entered plaintiff's apartment.

41. Denies the allegations in paragraph 155 of the Second Amended Complaint, except admits plaintiff was ordered by Chief Marino to get dressed and to return to the 81st Precinct.

42. Denies knowledge or information sufficient to form a belief with respect to the allegations in paragraph 162 of the Second Amended Complaint, except denies the alleged unlawful scheme.

43. Upon information and belief, denies the allegations of paragraph 170 of the Second Amended Complaint, except denies there was an illegal home invasion, and denies knowledge or information sufficient to form a belief as to whether Paul Brown was present.

44. Upon information and belief, denies the allegations of paragraph 171 of the Second Amended Complaint, except denies he participated in any such alleged activity and denies the alleged corruption existed in the 81st Precinct.

45. Denies the allegations in paragraph 174 of the Second Amended Complaint, except admits plaintiff was restrained and carried from his home.

46. Denies the allegations in paragraph 175 of the Second Amended Complaint, except admits upon information and belief that plaintiff was taken to Jamaica Hospital and admitted.

47. Denies knowledge or information sufficient to form a belief with respect to the allegations in paragraph 177 of the Second Amended Complaint, except admits plaintiff's landlord provided a key for plaintiff's apartment.

48. Denies knowledge or information sufficient to form a belief with respect to the allegations in paragraph 211 of the Second Amended Complaint, except denies he had any contact with Jamaica Hospital.

49. Denies knowledge or information sufficient to form a belief with respect to the allegations in paragraph 214 of the Second Amended Complaint, except denies the existence of any conspiracy with or favors by Jamaica Hospital.

50.     Upon information and belief, denies the allegations in paragraph 248 of the Second Amended Complaint, except denies he participated in the manipulation of crime statistics.

51.     Denies the allegations in paragraph 250 of the Second Amended Complaint, except admits he regularly encouraged police officers to be vigilant and active in performing their duties while on patrol.

52.     Denies knowledge or information sufficient to form a belief with respect to the allegations in paragraph 251 of the Second Amended Complaint, except denies the matters alleged are evidence of any of his directives to his officers.

53.     Denies the allegations in paragraphs 256 through 260, except admits that at all relevant times he was acting within the scope of his employment in furtherance of his duties as an officer of the New York City Police Department.

54.     Denies knowledge or information sufficient to form a belief with respect to the allegations in paragraphs 343, 344 and 345, except denies he ever touched the plaintiff.

55.     Denies the allegations in paragraphs 358 and 359, except admits that at all relevant times he was acting within the scope of his employment in furtherance of his duties as an officer of the New York City Police Department.

56.     With respect to the allegations in paragraph 397 of the Second Amended Complaint, denies there is any basis for an award of compensatory or punitive damages, attorney's fees or any other relief to the plaintiff, and denies there is a basis for imposing on him any liability for damages to the plaintiff.

## FIRST AFFIRMATIVE DEFENSE

The Second Amended Complaint fails to state a claim against defendant Steven Mauriello upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Defendant Steven Mauriello has at all relevant times acted within the scope of his employment and in the proper and lawful performance of his duties and responsibilities.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims against defendant Steven Mauriello may be barred in whole or in part by the applicable statute of limitations.

## FOURTH AFFIRMATIVE DEFENSE

Any injury allegedly sustained by plaintiff was caused by plaintiff's own culpable conduct or the culpable conduct of others, and was not caused or contributed to by defendant Steven Mauriello.

## FIFTH AFFIRMATIVE DEFENSE

Defendant Steven Mauriello has not violated any rights, privileges, or immunities secured to plaintiff under the Constitution or laws of the United States or the State of New York or any political subdivision thereof, nor has defendant Mauriello violated any act of Congress providing for the protection of civil rights.

## SIXTH AFFIRMATIVE DEFENSE

Defendant Steven Mauriello is shielded from suit by the doctrines of absolute immunity, qualified immunity, common law immunity or a combination of such doctrines.

SEVENTH AFFIRMATIVE DEFENSE

Defendant Steven Mauriello has at all relevant times acted reasonably, properly, lawfully, and in good faith in the exercise of his discretion.

DEFENDANT MAURIELLO'S COUNTERCLAIMS
AGAINST PLAINTIFF SCHOOLCRAFT FOR
TORTIOUS INTERFERENCE WITH MAURIELLO'S EMPLOYMENT
RELATIONSHIP AND PRIMA FACIE TORT

1. This Court has supplemental jurisdiction over Defendant Mauriello's counterclaims pursuant to 28 U.S.C. section 1367(a) as the counterclaims are so related to plaintiff's claims as to form part of the same case or controversy under Article III of the United States Constitution.

2. The counterclaims seek recovery from plaintiff Adrian Schoolcraft in his individual capacity for the damage suffered by Steven Mauriello as a result of plaintiff's tortious interference with Mauriello's employment relationship with the New York City Police Department (NYPD), and as a result of plaintiff's prima facie tort, willfully and maliciously engaging in conduct whose sole purpose was to damage the career and reputation of Steven Mauriello, thus causing him to suffer financial losses, while providing undeserved and improper support for the unfounded claims of revenge plaintiff intended to assert, and has asserted, against the City of New York and the NYPD.

3. On October 7, 2009, in a telephone conversation with his father, Larry Schoolcraft, while the plaintiff was on his way to his first meeting with members of the New York City Police Department Quality Assurance Division (QAD), plaintiff and his father discussed their plan for what plaintiff should tell QAD. The plan they agreed upon was as follows:

11

i) plaintiff would falsely complain to QAD of routine downgrading of crime at the 81st Precinct without revealing to QAD he was doing so purely for the sake of getting revenge against Mauriello – the expressed goal being to "fuck [Mauriello] over," and without revealing that plaintiff himself had intentionally contributed to the incidence of improper crime reporting to try to make a more compelling showing of wrongdoing at the 81st Precinct; apparently plaintiff and his father were seeking revenge against Mauriello because Mauriello signed off on plaintiff's 2008 evaluation, in which plaintiff received a sub-standard rating; they hoped that by their false accusations Mauriello would be terminated as the "scapegoat" for the intentional downgrading of crime in the NYPD; plaintiff failed to reveal to QAD, at the initial meeting or at any time thereafter, that he had recorded countless hours of conversation at the 81st Precinct for a period of three years or more, and that the recordings did not provide any support for plaintiff's accusations of improper crime reporting; and

ii) plaintiff would do his best to influence QAD to find downgrading of crime had occurred in the 81st Precinct, not only so Mauriello would be sanctioned, but also to thereby create support for the claims plaintiff was planning to assert in a lawsuit he intended to bring against the NYPD; in that lawsuit, plaintiff would improperly allege, without foundation, as he has since alleged in this case, that he received a sub-standard evaluation because of his failure to comply with unlawful quotas, which he would falsely allege, and has alleged, existed in the 81st Precinct.

4. Plaintiff and his father also reveal in the October 7, 2009, conversation, which plaintiff recorded, that plaintiff should, and he ultimately did, deceive QAD about plaintiff's motives by falsely explaining to QAD that he had taken it upon himself to gather information about purported wrongdoing in the NYPD because he

12

was concerned about the safety of the people in the community as well as the safety of police officers. In fact, neither sentiment was true.

5. In clear contradiction of those sentiments, plaintiff reveals while speaking to his father that "ain't nobody my friend" in the NYPD, and if any fellow officers in the NYPD were to suffer any consequences as a result of what plaintiff intended to report to QAD, "they asked for it" because "none of these guys came to my aid when [the NYPD was] coming at me."

6. Plaintiff also expressed an even more stark contradiction of the sentiments he planned to express and did falsely express to QAD about his purported concern for the predominantly minority community served by the 81st precinct. In response to an inaudible question from his father, apparently about whether one or more officers with whom plaintiff had worked would be supportive of plaintiff, plaintiff told his father the other officers and he "just worked together so we wouldn't have to work with any niggers."

7. Thus, plaintiff held himself out to QAD and all others, including the NYPD Internal Affairs Bureau (IAB), members of the press, and the public generally, under extremely false pretenses for the purpose not of protecting his fellow officers or the rights of the residents of the Bedford Stuyvesant community, but for the purpose of getting revenge against Steven Mauriello -- interfering in his employment relationship with the NYPD, and otherwise trying to destroy his career and reputation – while also creating false support for plaintiff's lawsuit against the NYPD.

8. With respect to plaintiff's false accusations that illegal quotas were imposed by Steven Mauriello and that plaintiff's failure to comply with them was the basis for his sub-standard evaluation, plaintiff had surreptitiously recorded roll calls and

13

other conversations in the 81st Precinct for perhaps three years or longer, and he secretly recorded the meetings he requested with his union delegate and his supervising officers from the 81st Precinct with respect to his appeal of his 2008 evaluation. Yet, there is no evidence that unlawful quotas actually were imposed on plaintiff or anyone else or played any part in plaintiff's evaluation. The accusations are false and were maliciously made by plaintiff, and continue to be made by him, to cause Mauriello undeserved harm and to provide plaintiff with false support for his unfounded claims.

9. With respect to plaintiff's false accusation that the 81st Precinct rampantly engaged in the downgrading of serious crime for which Mauriello inevitably would be blamed, again, plaintiff's surreptitious recordings do not provide any support for this accusation. The documents plaintiff secretly accumulated also show nothing more than the incidental occurrence of incorrect crime reporting. Moreover, only one such incident involved Mauriello. Plaintiff, on the other hand, played a direct role in causing at least three incidents of grand larceny and burglary, reported directly to him, to be recorded instead as lost property, and causing at least three other incidents of crime not to be recorded at all. In other words, plaintiff reported thirteen incidents of improper crime reporting for the entire precinct over a period of a year or more, while he alone was responsible for six such incidents during that same period. Apparently, plaintiff's goal was that the victims he mishandled would later return to the 81st Precinct, and in some instances it appears he reached out to them to do so, to complain that their reports were not taken or not followed up, thus making it appear that the 81st Precinct was engaged in a pattern of not properly reporting crime.

10. Plaintiff dishonestly reported to QAD that the eleven instances he identified where a crime report was improperly downgraded, plus two additional

14

incidents reported in the press and attributed to plaintiff, were only a small sample of such downgrading in the 81st Precinct, when, in fact, plaintiff did not know of any other instances, and actually knew or should have known that incorrect crime reporting only rarely occurred in the 81st Precinct. Indeed, it was later independently determined, after a thorough scrutiny of the 81st Precinct's records, that of more than 1100 crime reports prepared in the 81st Precinct over a period of approximately one year, only approximately two percent had been incorrectly classified – a total of 23, which was consistent with the City-wide average and far better than several other precincts throughout the City. Despite the performance of the 81st Precinct with respect to the classification of crimes, it and, in particular, Steve Mauriello, became the target of ridicule in some media due to plaintiff's unfounded and exaggerated criticism, his manipulation of the records, the bizarre events of October 31, 2009, and the sensationalized and apparently selective release of the recordings plaintiff had made in the 81st Precinct.

    11.  Steven Mauriello had de minimus involvement in the events of October 31, 2009, which are the principal subject of plaintiff's complaint, and did not engage in any of the alleged wrongdoing specified in the complaint, having been present in plaintiff's apartment only briefly. Yet, plaintiff has named Mauriello as a defendant in furtherance of his attempt to get revenge on Mauriello and to build on that effort by trying to taint the NYPD's actions on October 31, 2009, as being motivated by Mauriello's purported desire to retaliate against plaintiff for communicating with QAD and IAB.

    12.  There is no evidence that anyone acted out of a desire to retaliate against plaintiff on October 31, 2009. Instead, they acted out of a desire to prevent plaintiff from doing harm to himself and others. There is substantial reason to believe, on

15

the other hand, that plaintiff's conduct on October 31, 2009, much of it revealed by surreptitious recordings made by plaintiff himself, was designed to provoke a response by the NYPD that plaintiff hoped to be able to point to as an act of retaliation in the lawsuit he had already planned to bring against the NYPD. It was a sinister, cynical and malicious effort by plaintiff and his father that has resulted in this action being brought before this Court.

13. As a result of the foregoing wrongful conduct by plaintiff, Steven Mauriello has suffered damage to his career and reputation, his employment relationship with the NYPD has suffered, he will continue to suffer financial losses in the future, he has undeservedly suffered public humiliation and scorn, and has been caused to suffer extreme emotional distress.

14. Plaintiff's conduct represents a high degree of immorality and shows such wanton dishonesty as to imply a criminal indifference to his civil obligations. Plaintiff acted with the intent to do harm to Steven Mauriello, and in doing so demonstrated a conscious indifference and utter disregard not only for the rights of Mauriello, but others as well.

15. Based upon the foregoing, Steven Mauriello is entitled to compensatory damages in an amount to be determined at trial, but not less than two million dollars, and punitive damages in an amount to be determined at trial, but not less than two million dollars.

WHEREFORE, defendant Steven Mauriello requests judgment dismissing the claims alleged against him in the Second Amended Complaint in their entirety, imposing liability against plaintiff on defendant Mauriello's counterclaims, awarding damages of two million dollars on each of the counterclaims, awarding punitive damages

of two million dollars, and granting such other relief to defendant Mauriello as the Court deems just, together with an award of costs.

Dated: New York, New York
       March 18, 2014

                              SCOPPETTA SEIFF KRETZ & ABERCROMBIE
                              Attorneys for Defendant STEVEN MAURIELLO

By: _____
       Walter A. Kretz, Jr., (WK-4645)
444 Madison Avenue, 30th Floor
New York, NY 10022
wakretz@seiffkretz.com
212-371-4500