SM Exhibit AY

## PATROL BOROUGH BROOKLYN NORTH INVESTIGATIONS UNIT
## INVESTIGATIVE REPORT

FROM: Sergeant Robert W. O'Hare                                      COMMAND: P.B.B.N.I.U.

CASE NUMBER: O.G. # 09-55071 I.A.B. LOG #: 09-55071 OTHER: P.B.B.N.I.U. C/O # 09-082
        O.G. # 09-61005          09-61005
        O.G. # 09-61921          09-61921          P.B.B.N.I.U. C/O # 09-097
        O.G. # 10-00885          10-00885
        O.G. # 10-00931          10-00931          B.N.I.U. CASE # 09-276
                                                                       P.B.B.N.I.U. C/O #10-004
        M #10-0080               10-01671          B.N.I.U. CASE # 10-011
                                          10-03173

ACCOMPANYING INVESTIGATOR(S):  Sergeant Michael T. Minogue
                                                              Sergeant JaneMarie Molina

CASE INVESTIGATOR: Sergeant Robert W. O'Hare        COMMAND: P.B.B.N.I.U.

SUBJECT:  OBSERVATIONS AT JOHNSTOWN, NEW YORK
              ATTEMPT TO NOTIFY THE SUBJECT OFFICER, POLICE OFFICER
              ADRIAN P. SCHOOLCRAFT, SHIELD #█████ TAX #█████ 081 PRECINCT,
              REGARDING REPORTING FOR DUTY

TIME: 0600                DATE: 02/01/10                LOCATION: P.B.B.N.I.U.

1.     Sergeant Robert W. O'Hare, Investigating Officer, on Sunday, January 31, 2010, along with the above noted accompanying investigators, were directed by Captain Timothy J. Trainor, Commanding Officer, B.N.I.U., to respond to ███████████████████████████ ████████████████████████ located within Fulton County, in order to conduct observations and attempt to notify the subject officer, Police Officer Schoolcraft, regarding reporting for duty on Monday, February 1, 2010, at 0900 hours, to the Department Advocate's Office. A copy of a letter addressed to Police Officer Schoolcraft is contained herein. The details are as follows:

     A.     At 1346 hours, the investigators arrived at Police Officer Schoolcraft's residence and observed the 1994 Nissan Altima, New York Registration #█████████ parked in front of the location. The undersigned positioned himself at a location near the entrance of the apartment complex providing a clear and unobstructed view of the residence. The undersigned also utilized binoculars for additional visual assistance. The undersigned observed the white window shades at the location to be closed.

B.     At 1355 hours, the undersigned, the vehicle operator, and Sergeant Minogue, the Recorder, observed the subject officer, wearing a white t-shirt, move the living room (the three pane window) window shade on the (looking at the window) right side and look about, particularly towards the rear of the apartment complex. The subject officer remained at the window for several seconds and then removed himself from the window.

C.     At 1431 hours, the subject officer again appeared at the same window on the (looking at the window) right side wearing a white t-shirt and what appeared to be gray sweatpants. The subject officer now looked towards the front of the apartment complex, the direction where the investigators had positioned themselves. The subject officer remained at the window for approximately five (5) to ten (10) seconds and then removed himself from the window.

D.     At 1447 hours, what appeared to be a male wearing a red or maroon shirt, appeared in the window on the (looking at the window) left side for approximately two (2) seconds and then removed themselves from the window.

E.     At approximately 1455 hours, Captain Trainor was advised of the above details including the fact that it was clearly the subject officer who had appeared two (2) times in the window. Captain Trainor directed the investigators to enter into the apartment building and knock on the subject officer's apartment door.

F.     At 1500 hours, the undersigned entered the building and observed the subject officer's name on one of the mailboxes located on the right hand side. The investigators then positioned themselves in front of the subject officer's apartment door and listened for any noise or voices emanating from inside of the apartment. The undersigned did hear the voice of Mr. Larry Schoolcraft, the subject officer's father, and the subject officer. Mr. Schoolcraft was apparently having a conversation with his son. The undersigned, although he could clearly hear the voices, was not able to discern what the conversation was about. The undersigned did hear Mr. Schoolcraft refer to a "Rocco" and that he knows about it. The undersigned also heard what sounded like paper being ripped and crumbled inside of the apartment. After approximately two (2) minutes, the undersigned knocked on the apartment door followed by all conversation ceasing within the apartment. The undersigned did hear someone approach the apartment door, apparently move the door's peephole cover and look out into the hall. The undersigned knocked on the apartment door again with no verbal response from inside of the apartment. The undersigned then announced his presence and requested to speak with the subject officer. Again, there was no response. The undersigned again requested to speak with either the subject officer or his father and that the undersigned was present just to notify the subject officer that he could return to the payroll. The undersigned advised that they did not have to open the door if they wanted since the undersigned would be willing to speak with either party with the apartment door closed. Finally, after no response, the undersigned stated loudly that he would place a letter under their apartment door, wait for them to review the letter and answer any questions they my have. After approximately one (1) minute, the envelope still had not been removed from under the apartment door. The undersigned stated loudly, in substance, "Officer Schoolcraft, you are directed to report to the Department Advocate's Office tomorrow for return to active duty." At 1512 hours, the investigators exited the building. The undersigned did observe the subject officer looking out of the (looking at the window) far right side of the window and then

immediately remove himself when the undersigned waved at him. It should be noted that following the undersigned knocking on the apartment door, what sounded as a small dog was heard whimpering on the opposite side of the apartment door. The undersigned also could clearly hear throughout this interaction someone repeatedly approaching the apartment door, moving the peephole cover, and then walking away from the apartment door. Finally, this incident was videotaped and will remain on file with this case.

G.   At approximately 1515 hours, Captain Trainor was advised of the above additional details and directed the investigators to return to the command.

2.   Investigation to continue.

**INVESTIGATIVE OFFICER** _(signature)_ — **SUPERVISOR** _(signature)_
**RANK & SIGNATURE**                           **IR #48**

### TIME SPENT

**CLERICAL:** 0800x1014
 Notify Operations, Police Officer Sit, Log #156,
 Fuel vehicle
 1855x1900 Fuel Vehicle

**OBSERVATIONS:** 1346x1500

**INTERVIEWS:** 1500x1512 At the subject officer's apartment door.

**TRAVEL TIME:** 1014x1346 to S/O's residence
 1520x1855 Return to command

### VEHICLE

**DEPT. # R/A 1**

**PVT. #**

### EXPENSES INCURRED

$32.00-Gas (Receipt attached)
On Department Card.
E-Z Pass usage.
Total Mileage-417 Miles