UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ADRIAN SCHOOLCRAFT,

                                                                10-cv-6005 (RWS)

                                        Plaintiff,

        -against-                                               **Reply Memorandum
                                                                of Law In Further
                                                                Support of Plaintiff's
THE CITY OF NEW YORK, et al,                                    Motion To Amend**

                                        Defendants.
-----------------------------------------------------------------x

## Preliminary Statement

Plaintiff, Adrian Schoolcraft, submits this memorandum in reply to the oppositions filed by the City Defendants and Jamaica Hospital to his motion to amend his Second Amended Complaint.   Plaintiff has not received any opposition to the motion by Defendants Mauriello, Bernier or Isakov, who are represented by separate counsel.

## Argument

The City Defendants and Jamaica Hospital make several arguments in opposition to the motion.   We briefly address those arguments as set forth below.

1. *The City Defendants Arguments.*  The City Defendants make two arguments that require a limited response:  (A) that the relation-back doctrine does not apply to the claims against Weiss and Mascol; and (B) that the proposed editorial changes to the governing pleading "alter the landscape" of the litigation.

A. *The Relation-Back Issue.*  The City Defendants oppose the motion to amend the

Second Amended Complaint to add two individuals to the caption of the action, Weiss and Mascol, on the grounds that the claims against those two members of the NYPD are barred by the three-year statute of limitations period and that the claims against them do not relate back to the prior pleadings.  There are several reasons why this argument should be rejected.

First, at the outset we note that the City Defendants do not address the question of whether the Law Department can or will represent Weiss or Mascol in this action,  which was an issue initially raised by the City Defendants in their letter to the Court, dated December 5, 2014.  Apparently, that representation issue has been resolved since the Law Department is making arguments in support of the interests of Weiss and Mascol. Accordingly, the representation issue is no longer a basis for denying the motion.

Second, the City Defendants' limitations argument should be rejected because the claims against Weiss and Mascol do related back to the prior pleadings, all of which were filed within any applicable three-year limitations period.   The last of the pleadings, the Second Amended Complaint, was filed on October 1, 2012, which was within the three-year period from the date of the illegal and warrantless entry into Officer Schoolcraft's home and his arrest and confinement.  (Dkt. #103.)   Since the City Defendants state that the limitations period expired on October 31, 2012 (City Mem. at p. 4),  the claims against Weiss and Mascol are timely, provided that the relation-back doctrine applies.

Third, the City Defendants argue that the relation-back does not apply because the

2

plaintiff made a "deliberate choice" in not previously listing them in the caption. (City Mem. at p.6.)  Of course, the City Defendants do not submit anything  to support this claim other than the repeated refrain that the action was commenced "years ago" and that the pleadings were already "twice" amended.   More important, the City Defendants fail to address our central contention  -- that the Second Amended Complaint on several occasions referred to Weiss and Mascol as defendants, thus making it clear that their omission from the caption was a mistake. (*See* Motion Exh. 2 at ¶¶ 66, 100, 107 & 134.)

Fourth, the City Defendants argue that there is no evidence that Weiss or Mascol knew or should have known of the possible claims against them before February 28, 2013. (City Mem. at p. 7.)  That argument should be rejected because the Law Department has been representing all the City Defendants in this case (other than Defendant Mauriello) since the inception of the action, and thus Weiss and Mascol were on constructive notice.

On point is *Abdell v. The City of New York*, 2010 U.S. Dist. Lexis 137585 at *10-11 (S.D.N. Y. Dec. 10, 2010).  There, Judge Sullivan applied the relation back doctrine where the proposed defendant was a New York City official being represented by the Law Department and the Law Department had already been representing the existing defendants.

*Abdell* holds:

Under the constructive notice doctrine, the court can impute knowledge of a

lawsuit to a new defendant government official through his attorney, when the attorney also represented the officials originally sued, so long as there is some showing that the attorney knew that the additional defendants would be added to the existing suit." *Berry v. Village of Millbrook*, No. 09 Civ. 4234 (KMK), 2010 U.S. Dist. LEXIS 103239, 2010 WL 3932289, at *5 & n.6 (S.D.N.Y. Sept. 29, 2010) (internal citations and quotation marks omitted); *see also Baez v. Kahanowicz*, 469 F. Supp. 2d 171, 177 (S.D.N.Y. 2007) ("[N]otice has been imputed to a new defendant when he shares an attorney with the named defendant, such as when both defendants are government officials represented by the same government attorney . . . ."). The constructive notice doctrine relies on "the theory that the newly added defendant is not prejudiced by the lack of notice if his attorney has already begun preparing a defense for the named defendant during the limitations period." *Velez*, 2008 U.S. Dist. LEXIS 96999, 2008 WL 5062601, at *6.

*Id.*

As in *Abdell,* the Law Department knew or should have known that Weiss and Mascol were potential defendants since their were mentioned as defendants in the Second Amended Complaint.  *See id.* ("the City Law Department knew or should have known that Galati would later be named)(citing and quoting  *Pape v. Board of Educ. of the Wappingers Central School Dist*, No. 07 Civ. 8828 (KMK), 2009 U.S. Dist. LEXIS 91738, 2009 WL 3151200, at *13 (S.D.N.Y. Sept. 29, 2009) ("The inquiry is not . . . whether defense counsel had actual knowledge but whether he 'knew or should have known' that the additional defendants would be added within the statute of limitations period.")).  Thus, the Court should reject the argument that Weiss and Mascol were not on constructive notice.

*B. The "Landscape" Argument*.   The City Defendants next argue that the proposed editorial changes to the Second Amended Complaint "completely change

4

the landscape" of the case. (City Mem. at p. 12.)    The argument does not withstand any scrutiny.

First, the City Defendants suggest that the case was somehow limited to a quota policy or practice related only to summons, and that references to quotas for arrests and stops are "utterly new" claims.  The argument, however, is manifestly false:  the Second Amended Complaint makes repeated references to quotas for arrests and summons.  (Motion Exh. 2  ¶¶ 2, 38, 40, 54, 62, 63 & 83.)   The Second Amended Complaint also makes repeated references to Officer Schoolcraft needing to increase his "activity."  (*See, e.g.* Motion Exh. ¶¶ 66, 71 & 99.)  And throughout his deposition, Officer Schoolcraft repeatedly testified that he believed he received his failing 2008 performance evaluation based on his low "activity,"  which included numerical quotas for stops, arrests and summons.  (Reply Exhibit 1 (attached hereto) Schoolcraft Tr. 10-11-12 at 56:13; 61:17-25; 63:2; 69:19-21; 79:10-2080:13-23; 83:7-11; & 86:21-23 and Tr. 9-26-13 at 51:19-53-5.)  Thus, the argument that the case was ever limited to a quota just on summons is false.

Second, the City Defendants attempt to splice hairs with regard to the other proposed changes to the pleading.   While actually admitting that these changes are "small" and "may seem unimportant" (City Mem. at p. 12 & 13), the City defies it own words and common sense when it suggests that these proposed changes also somehow change the shape of the case.  In fact, inspection of the proposed changes

shows that they are designed to correct simple errors (*e.g.* changing 350 miles to 200 miles) or are designed to clarify the text (*e.g.*, "denied access" to "denied physical access" where telephonic access was available) or to conform the allegations in the light of the evidence obtained in discovery (*e.g.*, changing an allegation from the "manufacture of false evidence" to the "destruction" of evidence).

In any event, the City Defendants fails to show how any of these changes prejudice them.  Nor do they show how any of these changes require any additional discovery.   Thus, the editorial and typographical changes should be permitted.

*2.  The Jamaica Hospital Arguments.*   Jamaica Hospital also makes several arguments in opposition to the motion to amend.  Those arguments are briefly addressed below.

A.  *The Alleged "Delay."*   Jamaica Hospital opposes the motion on the ground that the motion to amend was filed several "years" into the litigation and after several scheduling orders were entered into, extending the discovery and pre-trial deadlines.   What Jamaica Hospital fails to address is the fact that the discovery that formed the basis for the motion to re-assert a Section 1983 claim against it was obtained only *this* year as a result of the depositions of Doctors Dhar, Isakov and Bernier.  Thus, the suggestion that the claim should have been asserted before that testimony was obtained is a fallacy.  Rule 11 of the Federal Rules of Civil Procedure requires that a pleading be grounded in a good faith factual basis, and the claim was

6

re-asserted after that proper basis had been established.  Since the claim was initially only dismissed without prejudice,  Jamaica Hospital cannot assert any cognizable prejudice.  Indeed, the suggestion that is lost "comfort" in the dismissal is not the kind of prejudice that courts have recognized.  And for good reason:  it makes little sense for a corporate entity – which is not a living human entity – to argue about its lost "comfort" as a basis for showing the prejudice required to deny a motion to amend a pleading.

B.  *The Official Policy Argument*.   Jamaica Hospital argues that the proposed pleading does not assert that it is liable under Section 1983 for a policy or practice that caused the loss of the plaintiff's constitutional rights.  It is wrong.  The proposed Third Amended Complaint adds Jamaica Hospital as a defendant liable for its unconstitutional policies and practices, adds it as a defendant in the claim for false imprisonment, and strikes a statement to the contrary in the prior pleading.  (Exh. 1 at ¶¶ 243 & 283; Exh. 3 at ¶ 240 & n.1.)

C.  *The Individual Doctor's "Isolated" Conduct*.  Jamaica Hospital argues that the proposed claim against it is futile because the individual doctors who made the decision, Doctors Bernier and Isakov, made their decisions as "isolated instances." The Court should reject this argument because the basis for the motion is centered on the fact that Jamaica Hospital's Rule 30(b)(6) witness confirmed what those doctors stated – that it was the practice at Jamaica Hospital to commit a patient based on any

potential or possible risk of dangerousness.  Since a Rule 30(b)(6) witness is the

person who is speaking as a matter of law on behalf of the corporation, Jamaica

Hospital cannot run away from its corporate witness's deposition testimony.

   *D.  The "Clinical Judgment" Argument.*  Jamaica Hospital also tries to run

away from its witness's testimony by hiding behind the shelter of a generality  -- that

a doctor's commitment decision is based on an obscure and undefined "clinical

judgment" concept and that that judgment is "not a policy issue."  It cannot escape

its legal obligations with those tautological statements so easily.

   Section 9.39 of the Mental Hygiene Law requires Jamaica Hospital to

establish that a patient presents a substantial risk of dangerousness, and the Second

Circuit has expressed held that constitutional law requires that "the "involuntary

emergency commitment be made in accordance with a standard that promises *some*

reasonable degree of accuracy."  *Rodriquez v. City of New York,* 72 F. 3d 1051,

1061-62 (2d Cir. 1995) (emphasis added).    While the argument about "clinical

judgment" is meritless as a matter of law because some standard is required, the

Court should also note that any arguments about "clinical judgment," even if valid,

do not render the proposed pleading futile.  At best, Jamaica Hospital should be

required to make that argument to a jury.

**Conclusion**

For these reasons and the reasons previously set forth, the motion should be granted.

Dated:  December 29, 2014

*s/NBS*

_____
Nathaniel B. Smith
111 Broadway – Suite 1305
New York, New York 10006
(212) 227-7062