


## Consensus Statement
## Medical Clearance Protocols for Acute Psychiatric Patients
## Referred for Inpatient Admission

History of Workgroup

In Jan 2010, then Gov. Jon S. Corzine signed into law P.L.2009, c.242, which established the creation of a standardized admission and medical clearance protocol for admission to state or county psychiatric hospitals or short-term care facilities. Due to the lack of uniform admission standards, duplicative medical testing or other administrative hurdles increased wait times even more. This language required the establishment of a standard that both sending and receiving providers must abide by, creating a smoother placement transition for patients. The requirements under this law took effect in July 2010. This bill was supported by Assembly members Joseph Cryan (D-Union), Joseph Vas (D-Perth Amboy), Nilsa Cruz-Perez (D-Camden) and Sens. Richard Codey (D-West Orange) and Robert Gordon (D-Fair Lawn).

In order to support the New Jersey Department of Human Services' to build consensus around the protocols, the New Jersey Chapter of the American College of Emergency Physicians and the New Jersey Hospital Association worked in partnership with providers of care and trade associations listed below over a four-month period to establish a set of protocols and guidelines supported by their membership.

Participating organizations included:

AtlantiCare Behavioral Health
Buttonwood Hospital of Burlington County
Camden County Healthcare Services Center
Hampton Behavioral Health Center
Jersey Shore University Medical Center
Kennedy Health System
New Jersey Association of Mental Health and Addictions Agencies
New Jersey Council of Teaching Hospitals
New Jersey Psychiatric Association
Newton Memorial Hospital
Trinitas Regional Medical Center
University Medical Center at Princeton
University of Medicine and Dentistry of New Jersey

While the workgroup originally convened to focus its efforts on medical clearance protocols for individuals transferring from emergency departments and/or crisis screening areas, it was ultimately agreed that piecemeal redesign would not result in overall system improvement. The collaborative nature of the individuals participating pushed forward in support of the Department

 

of Human Services' charge to standardize similar processes between inpatient settings, including state institutions, county hospitals and inpatient hospital care. Reference **Attachment B,** *State of New Jersey, Psychiatric Transfer Form, Interfacility Transfer*.

The following medical clearance protocols are based on guidelines endorsed by the New Jersey Chapter of the American College of Emergency Physicians and the NJHA in partnership with the providers of care and trade associations cited above, and vetted through the collective membership of the organizations. The protocols were developed in response to variations in practice among New Jersey's acute inpatient providers, including the state psychiatric hospital system, county hospital network and acute care inpatient providers. By implementing this standardized approach to patient assessment, referral and transfer, high quality, appropriate patient care can be delivered in a timely fashion.

Basic Principles

1. Medical clearance does not indicate the absence of ongoing medical issues. Medical clearance is defined as within reasonable medical certainty, there is no contributory medical condition causing the psychiatric complaints presented, there is no concern at present for a medical emergency, and the patient is medical stable for transfer to the intended facility.

2. There should be a common expectation that the standard for medical clearance was developed to facilitate appropriate, timely care for individuals in need of acute psychiatric services, regardless of their access point on the continuum of inpatient care.

3. Medical clearance may be waived at the discretion and the prerogative of the admitting psychiatrist.

4. Clinical decisions are based upon the medical examination needs of the individual, and any protocol developed with the purpose of establishing consistent processes allows the provider conducting the medical screening to exercise flexibility and appropriate clinical judgment.

5. The purpose of the medical clearance is to provide an assessment of the individual's current medical condition and stability within the context of a transfer to a clinical treatment setting with appropriate resources to monitor and treat what has been currently diagnosed. Medical clearance does not indicate the absence of ongoing medical issues that may require further assessment, monitoring and treatment, nor does it guarantee that there are medical conditions that have yet to be diagnosed.

6. Medical clearance screens should:
   a. Identify general medical problems that may require treatment on a medical unit/facility prior to placement on a psychiatric unit; and/or

 

    b. Identify medical problems that may be contributing to the individual's psychiatric problems that would be more appropriately treated on a medical unit; and/or
    c. Identify medical problems that need to be addressed in the course of the patient's inpatient psychiatric care.

7. Direct physician to physician communication is encouraged when attempting to resolve concerns arising between the transferring and receiving facilities regarding:
    a. The appropriateness of one facility versus another; and/or
    b. Request for additional diagnostic testing; and/or
    c. General clinical disagreement; and/or
    d. Significant ongoing medical issues or treatment recommendations.

8. Performance measures related to appropriateness of referrals and timeliness to transfer will be reported to System Review Committees and used to track adherence and improve performance.

9. Any issue causing dissatisfaction for either the receiving hospital or the referring hospital will be referred back to that hospital for review and improvement as part of the hospital's ongoing quality improvement activities.

10. Task force members agree to use the EMTALA definition of medical screening and stabilization. By that definition, a patient must be medically stable for transfer or that the benefits of transfer outweigh the risk.

11. Emergency departments and psychiatric facilities must communicate regularly and work to develop mutual trust.

12. Critical to facilitating appropriate access to care is accurate real-time access to a directory of New Jersey inpatient providers indicating the respective availability of concurrent medical care, medical coverage capacity, licensed bed type and specialty population capacity.

The Medical Clearance Exam

1. Any patient with a complaint of a psychiatric nature who is examined by the emergency department physician should be assessed for any significant contributing medical causes that may be contributing to those complaints. Medical clearance of patients with psychiatric complaints in a facility should indicate that:
    a. Within reasonable medical certainty, there is no known contributory medical cause for the patient's presenting psychiatric complaints that requires acute intervention in a medical setting;
    b. Within reasonable medical certainty, there is no medical emergency;

 

    c. Within reasonable medical certainty, the patient is medically stable for transfer to the intended setting;
    d. The emergency physician who granted medical clearance shall, based on his or her examination of the patient, indicate in the patient's transfer records the patient's foreseeable needs of medical supervision and treatment.

2. Medical clearance is not intended to indicate the absence of ongoing medical issues that may require further diagnostic assessment, monitoring or treatment, nor does it guarantee that there are no undiagnosed medical conditions.

3. The level of medical clearance required depends on the clinical evaluation. Patient acuity can be determined based on different needs:
    a. New patients with unknown history or no prior history of medical or psychiatric illness will require a complete medical evaluation;
    b. Individuals with an established psychiatric diagnosis in need of psychiatric care with known major medical issues or complaints, intoxicated or confused individuals require an evaluation appropriate to their medical condition; or
    c. Known individuals in need of psychiatric care with an exacerbation of a known problem history of repeated psychiatric admissions including a recent admission, no history of major problems or no active medical complaint may require minimal medical clearance.

4. A request for consults can be made only after physician-to-physician discussion. Request should rise to the level of medical necessity, and only if delay in getting consultation at the receiving facility may compromise the patient's medical condition and outcome.

5. Medical clearance may be waived at the discretion of the admitting psychiatrist. Waiving is the prerogative of the admitting psychiatrist and not the referring source.

6. Patient refusal to consent to a recommended test or procedure shall not result in a delay or be a reason not to accept a transfer, if a good faith effort is made to obtain the consent. This issue should be resolved with physician-to-physician communication.

7. Once a patient is medically cleared and accepted by the receiving facility, the receiving facility may request that the emergency department initiate additional laboratory tests only if such tests will facilitate the patient's immediate care at the receiving facility. However, awaiting the results of these tests should not delay the transfer process. Additional diagnostic testing should be guided by the individual patient's clinical presentation and physical findings and should not be based on a receiving facility's individual screening protocol.

8. It is agreed that during a psychiatric patient's medical assessment, the decision of when to begin the patient's psychiatric evaluation should be a clinical judgment. The




psychiatric component of a patient's emergency department evaluation should not be delayed solely because of the absence of laboratory data.

9. Medical clearance should include a history, examination and diagnostic testing appropriate to the patient's condition and history.

   a. History should include-
      i. History of present illness including psychiatric and medical complaints and events;
      ii. History of medical problems; and
      iii. History of psychiatric problems, substance abuse, allergies and current medications.

   b. Examination should include –
      i. Physical examination sufficient to screen for major medical problems which could contribute to the patient's current medical status; and
      ii. Mental status examination with a brief description of key abnormal findings and emphasis on evaluation of sensorium

   c. Diagnostic testing should be conducted based upon the emergency provider's determination of need. The recommendations below are intended as guidelines:

      1. Individual With No Medical History
         a. Under 35 Years
            i. Vitals
            ii. Urine Drug Screen
            iii. Complete Blood Count *
            iv. Comprehensive Metabolic Panel (CMP) *
            v. Pregnancy Test
            vi. Blood Alcohol **
            vii. Chest X Ray ***

         b. Over 35 Years and Asymptomatic
            i. Vitals
            ii. Urine Drug Screen
            iii. Complete Blood Count *
            iv. Comprehensive Metabolic Panel (CMP) *
            v. Pregnancy Test
            vi. Blood Alcohol **
            vii. Chest X Ray ***
            viii. EKG ****
            ix. Urine Analysis

 

| | |
|---|---|
| * | CBC and Comprehensive Metabolic Panel (CMP) up to one week old will be accepted by the receiving facility |
| ** | As clinically indicated |
| *** | Chest X Ray up to 3 months old will be accepted by the receiving facility |
| **** | EKG up to 6 months old will be accepted by the receiving facility |

10. It is important to note that emergency departments may have better access to certain diagnostic testing than some psychiatric treatment settings. If additional testing is requested in order to facilitate therapy upon arrival, physician to physician dialogue is encouraged in order to collaborate on an appropriate approach.

11. As communication is critical to collaboration, emergency departments and facilities to which they refer shall make available to the Department of Human Services updated contact information that shall be posted in a web-based format for practitioners' use 24/7.

12. The accuracy of the content of the Emergency Department / Crisis Screening Psychiatric Transfer Form (Medical Clearance) should be certified to by the referring clinician(s) or other practitioners (PA or APN).

13. Emergency Department / Crisis Screening Psychiatric Transfer Form (Medical Clearance) should be transmitted electronically according to standard facility means.

14. Reference **Attachment A,** *State of New Jersey, Psychiatric Transfer Form, Acute Emergency/Crisis* for facility use.

15. In accordance with P.L.2009, c.242, the Department of Human Services shall be responsible for arranging appropriate training of providers in regard to the medical clearance protocol and related procedures.

16. The Department shall also collect appropriate data from emergency departments and psychiatric facilities in order to evaluate the effectiveness of this protocol on patient care and this shall be made available one year from the date of implementation.