Page 200

1
2
3

(Continued.)

4
5      CALLAN, KOSTER, BRADY & BRENNAN, LLP
       Attorneys for Defendant
6      DR. LILIAN ALDANA-BERNIER
            One Whitehall Street
7           New York, New York 10004
       BY: PAUL F. CALLAN, ESQ.

8
9

       MARTIN CLEARWATER & BELL, LLP
10     Attorneys for Defendant
       JAMAICA HOSPITAL MEDICAL CENTER
11          220 East 42nd Street
            New York, New York 10017
12     BY: BRIAN OSTERMAN, ESQ.

13
14
15
16
17
18
19
20
21
22
23
24
25

Page 201

1

2          S T I P U L A T I O N S:

3    IT IS HEREBY STIPULATED AND AGREED by and

4    between the attorneys for the respective

5    parties hereto, that this examination may be

6    sworn to before any Notary Public.

7

8    IT IS FURTHER STIPULATED AND AGREED that the

9    filing and certification of the said

10   examination shall be waived.

11

12   IT IS FURTHER STIPULATED AND AGREED that all

13   objections to questions, except as to the

14   form of the question, shall be reserved for

15   the time of trial.

16

17

18

19

20

21

22

23

24

25

Page 202

1

2           MR. SMITH:  Going on the record,

3       its 10:21.  We are doing a continuation

4       deposition of the Kurt Duncan

5       deposition at my office, 111 Broadway

6       on June 23, 2014.

7           Would you please swear the

8       witness in.

9  K U R T   D U N C A N, a Defendant herein,

10  having been first duly sworn by a Notary

11  Public within and for the State of New York,

12  was examined and testified as follows:

13

14  EXAMINATION BY

15  MR. SMITH:

16

17      Q.      Will you state your name and

18  address for the record, please.

19      A.      Sergeant Kurt Duncan, 100 Church

20  Street, New York, New York 10007.

21      Q.      Good morning, Sergeant.

22      A.      Good morning.

23          MR. SHAFFER:  10:23.

24          MR. SMITH:  10:23.  I got the

25      time.

Page 203

1                      KURT DUNCAN

2          Q.      I know it's an informal process,

3    but you have been sworn to tell the truth

4    and like I said to you the last time, if you

5    there is anything about any of my questions,

6    please let me know and I will try and

7    rephrase it; okay?

8          A.      Okay.

9          Q.      Have you discussed your

10   testimony since the last time we met with

11   anybody?

12         A.      No.

13         Q.      Have you looked at any documents

14   since your deposition was taken in this

15   case?

16         A.      No.

17         Q.      Have you listened to any tape

18   recordings since your deposition?

19         A.      No.

20         Q.      Have you ever listened to the

21   tape recordings of the incident at

22   Schoolcraft's residence, where you and the

23   other members from the Brooklyn North, along

24   with the Marino and others went in the

25   apartment and eventually had him removed?

Page 269

1              KURT DUNCAN

2    weapon and had engaged in behavior that

3    Schoolcraft perceived as menacing.  That

4    when he went home that day, that he reported

5    his concerns to IAB and what I want to know

6    from you is if you had known those facts,

7    would that have changed your view about

8    whether or not it was appropriate to comply

9    with Marino in order to cuff Schoolcraft?

10             MR. SHAFFER:  Objection.

11             MR. KRETZ:  Objection.

12        A.    I would have still complied with

13   Marino's order to cuff him.

14             MR. SMITH:  Thank you, Sergeant.

15        I don't have any more questions at this

16        time.

17   EXAMINATION BY

18   MR. OSTERMAN:

19        Q.    Sergeant, I just have a few very

20   quick questions.  I believe you testified at

21   your first deposition, the first session of

22   your deposition, that after the incident at

23   Schoolcraft's residence on October 31, 2009,

24   you went back to the 81; is that right?

25        A.    Correct.

Page 270

1                        KURT DUNCAN

2          Q.      So you never went to Jamaica

3     Hospital?

4          A.      No.

5          Q.      And did you ever speak or have

6     any contact with any staff or physicians at

7     Jamaica Hospital regarding Adrian

8     Schoolcraft?

9          A.      No, not me personally.

10         Q.      Did you ever direct anyone to

11    speak to or have any contact with any staff

12    or physicians at Jamaica Hospital?

13         A.      Not that I can recall.

14         Q.      Are you familiar or do you

15    recognize the name Dr. Isakov?

16         A.      Not particularly.

17         Q.      Have any contact with Dr. Isakov

18    regarding Adrian Schoolcraft?

19         A.      I don't remember.

20         Q.      Do you recognize the name

21    Aldana-Bernier?

22         A.      No, I don't.

23         Q.      Did you have any contact with or

24    speak to Dr. Aldana-Bernier regarding Adrian

25    Schoolcraft?

Page 271

1                           KURT DUNCAN

2          A.       Not that I can recall.

3                   MR. OSTERMAN:   I have nothing

4          further.

5    EXAMINATION BY

6    MR. SHAFFER:

7          Q.       Just a quick question.  The

8    documents in front of you indicate the

9    subject at the top, I believe on all of them

10   it says attempt to serve restoration to duty

11   order.  You see that?

12         A.       Yes.

13         Q.       And earlier you mentioned that

14   the purpose of your visits to Schoolcraft's

15   residence in Upstate, New York was to serve

16   him with a discontinuance of service form.

17   You remember saying that?

18         A.       Yes.

19         Q.       Are those two things the same or

20   are they different -- are they different

21   things?

22                  MR. SMITH:   Objection to the

23         form.

24         Q.       Is a restoration to duty order

25   and a discontinuance of service form the

# CERTIFIED TRANSCRIPT
Page 1

1   UNITED STATES DISTRICT COURT.

    SOUTHERN DISTRICT OF NEW YORK

2   ------------------------------------------------X

3   ADRIAN SCHOOLCRAFT,

4                        Plaintiff,

5

                                Case No:

6        - against -            10 CV 06005

7

    THE CITY OF NEW YORK, ET AL.,

8

9                        Defendants.

10  ------------------------------------------------X

11                   111 Broadway

                     New York, New York

12

                     June 18, 2014

13                   10:28 a.m.

14

15

16  DEPOSITION OF CHRISTOPHER BROSCHART, pursuant

17  to Notice, taken at the above place, date and

18  time, before DENISE ZIVKU, a Notary Public

19  within and for the State of New York.

20

21

22

23

24

25

Page 2

```
 1       A P P E A R A N C E S:

 2
 3          NATHANIEL B. SMITH, ESQ.
                 Attorneys for Plaintiff
 4               111 Broadway
                 New York, New York 10006
 5
 6
            JOHN LENOIR, ESQ.
 7          Attorneys for Plaintiff
                 829 Third Street NE
 8               Washington, D.C. 20002
 9
10          NEW YORK CITY LAW DEPARTMENT
            OFFICE OF CORPORATION COUNSEL
11          Attorneys for Defendant
            THE CITY OF NEW YORK
12               100 Church Street
                 New York, New York 10007
13          BY:  SUZANNA PUBLICKER METTHAM, ESQ.
14
15          SCOPPETTA SEIFF KRETZ & ABERCROMBIE
            Attorneys for Defendant
16          STEVEN MAURIELLO
                 444 Madison Avenue
17               New York, New York 10022
            BY:  WALTER A. KRETZ, JR., ESQ.
18
19
            IVONE, DEVINE & JENSEN, LLP
20          Attorneys for Defendant
            DR. ISAK ISAKOV
21               2001 Marcus Avenue
                 Lake Success, New York 11042
22          BY:  BRIAN LEE, ESQ.
23
                    (Continued.)
24
25
```

Page 3

1            (Continued.)

2

     CALLAN, KOSTER, BRADY & BRENNAN, LLP

3     Attorneys for Defendant

     DR. LILIAN ALDANA-BERNIER

4          One Whitehall Street

          New York, New York 10004

5     BY:   PAUL F. CALLAN, ESQ.

6

7     MARTIN CLEARWATER & BELL, LLP

     Attorneys for Defendant

8     JAMAICA HOSPITAL MEDICAL CENTER

          220 East 42nd Street

9          New York, New York 10017

     BY:   GREGORY J. RADOMISLI, ESQ.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

1    S T I P U L A T I O N S:

2           IT IS HEREBY STIPULATED AND AGREED by

3    and between the attorneys for the respective

4    parties hereto, that this examination may be

5    sworn to before any Notary Public.

6

7           IT IS FURTHER STIPULATED AND AGREED

8    that the filing and certification of the said

9    examination shall be waived.

10

11          IT IS FURTHER STIPULATED AND AGREED

12   that all objections to questions, except as to

13   the form of the question, shall be reserved

14   for the time of trial.

15

16

17

18

19

20

21

22

23

24

25

Page 5

1
2              MR. SMITH:  Going on the record.
3        It is 10:28 and this is the deposition
4        of Lieutenant Broschart.
5              That's how you pronounce it.
6              THE WITNESS:  Yes, Broschart.
7              MR. SMITH:  And Mr. Callan has
8        called my office and said that it's
9        okay to proceed without him and would
10       you mind swearing in the witness.
11   C H R I S T O P H E R   B R O S C H A R T, a
12   Defendant herein, having been first duly
13   sworn by a Notary Public within and for the
14   State of New York, was examined and
15   testified as follows:
16
17   EXAMINATION BY
18   MR. SMITH:
19
20       Q.     Will you state your name and
21   address for the record, please.
22       A.     Christopher Broschart,
23   B-r-o-s-c-h-a-r-t.
24             MS. PUBLICKER METTHAM:  Work
25       address.

Page 6

1

2      A.      123-01 Roosevelt Avenue,

3  Queens, New York 11368.

4           MR. SMITH:  Suzanna, as we've

5      done in the past, the Law Department

6      with accept service of any process

7      required on Mr. Broschart; is that

8      right?

9           MS. PUBLICKER METTHAM:  To the

10     extent we still represent Mr. Broschart

11     and he's still employed by the NYPD, we

12     will accept service.

13          MR. SMITH:  Otherwise, you will

14     provide me with his last known

15     information.

16          MS. PUBLICKER METTHAM: We will

17     provide you with his last known

18     address, correct.

19          MR. SMITH:  Okay.  Thanks.

20     Q.      Good morning, Lieutenant.

21     A.      Morning.

22     Q.      My name is Nathaniel Smith.  I

23  represent Adrian Schoolcraft in this

24  lawsuit.  I am going to ask you some

25  questions this morning and this afternoon.

Page 7

|    | CHRISTOPHER BROSCHART |
|----|----------------------|
| 1  | |
| 2  | Few ground rules I would like to just go |
| 3  | over with you; is that okay? |
| 4  | A.    Okay. |
| 5  | Q.    First one is it's unlike regular |
| 6  | conversation.  The court reporter needs to |
| 7  | take down everything that I say and you need |
| 8  | to just pause a little bit, so that your |
| 9  | attorney can object if she feels it's |
| 10 | appropriate and then you can answer the |
| 11 | question, but if you answer a question while |
| 12 | I am in the middle of laboring through it, |
| 13 | the court reporter has to stop taking down |
| 14 | what I'm saying and capture what you're |
| 15 | saying.  So it's little bit awkward, but you |
| 16 | will get used to it. |
| 17 | A.    Take my time. |
| 18 | Q.    The most important thing is that |
| 19 | if you don't understand my question, please |
| 20 | let me know that and I will try to rephrase |
| 21 | it; okay? |
| 22 | A.    I will. |
| 23 | Q.    The reason why I say that is |
| 24 | because you've just been sworn to tell the |
| 25 | truth and it's important that the record be |

Page 192

1                 CHRISTOPHER BROSCHART

2     telephone while you were there?

3                 MS. PUBLICKER METTHAM:

4          Objection.

5          A.    I wouldn't have let him use the

6     telephone while he was there.

7          Q.    Why not?

8          A.    Till he saw the doctor.

9          Q.    Why wouldn't you let him use the

10    telephone?

11                MS. PUBLICKER METTHAM:

12         Objection.

13         A.    At that time he's an EDP.  He's

14    in our custody for that till the doctor

15    looks at him.

16         Q.    He's not allowed to use the

17    telephone if he's an EDP?

18                MS. PUBLICKER METTHAM:

19         Objection.

20         A.    Usually, I won't let an EDP use

21    the telephone when I'm in the hospital.

22         Q.    Why?

23                MS. PUBLICKER METTHAM:

24         A.    Sometimes it can actually be

25    used as a weapon.

**Page 260**

```
 1              CHRISTOPHER BROSCHART
 2    relieve you, do you recall telling her that
 3    he had cursed at his supervisor?
 4         A.     No, not at all.
 5         Q.     When you spoke to Sergeant James
 6    at Jamaica Hospital, after she came to
 7    relieve you, do you recall telling her that
 8    he had been evaluated by an NYPD
 9    psychiatrist and he could not carry a gun or
10    a badge for nearly a year?
11         A.     Not at all.
12         Q.     You don't recall that?
13         A.     I never said such thing.
14    EXAMINATION BY
15    MR. LEE:
16         Q.     Did you ever speak to a Dr.
17    Isakov?
18         A.     I can't recall.
19         Q.     Did you ever speak to Dr.
20    Aldana-Bernier at Jamaica Hospital?
21         A.     I don't know which doctors I
22    spoke to.
23         Q.     Other than the conversations
24    you've related with the one doctor that you
25    related Mr. Smith, did you have any other
```

Page 261

                    CHRISTOPHER BROSCHART

1       conversations with any nursing or hospital

2       personnel?

3            A.      Only people might be triage

4       people.

5            Q.      Do you recall anything you said

6       to the triage people?

7            A.      Not that I recall.

8            Q.      Did you give any instructions to

9       anybody at the hospital as to what to do

10      with Schoolcraft?

11           A.      No.

12                   MR. LEE:  That's all I have,

13           thank you.

14      EXAMINATION BY

15      MR. CALLAN:

16           Q.      Is it accurate to say that is

17      the only day that you were at Jamaica

18      Hospital in connection with Mr. Schoolcraft,

19      the day that you described today?

20           A.      Yeah, that one tour, yes.  On

21      the third person.

22                   MR. CALLAN:  Okay.

23                   MR. SMITH:  Walter?

24                   MR. KRETZ:  No, I said I have

Page 1

1  UNITED STATES DISTRICT COURT

   SOUTHERN DISTRICT OF NEW YORK

2  ---------------------------------------------X

3  ADRIAN SCHOOLCRAFT,

4                      Plaintiff,

5

                             Case No:

6     - against -         10 CV 06005

7

   THE CITY OF NEW YORK, ET AL.,

8

9                   Defendants.

10 ---------------------------------------------X

11                 111 Broadway

                   New York, New York

12

                   May 12, 2014

13                 10:11 a.m.

14

15

16 DEPOSITION OF SHANTEL JAMES, pursuant to

17 Notice, taken at the above place, date and

18 time, before DENISE ZIVKU, a Notary Public

19 within and for the State of New York.

20

21

22

23

24

25

Page 2

```
 1
         A P P E A R A N C E S:
 2
 3        NATHANIEL B. SMITH, ESQ.
              Attorneys for Plaintiff
 4            111 Broadway
              New York, New York 10006
 5
 6
          JOHN LENOIR, ESQ.
 7        Attorneys for Plaintiff
              829 Third Street NE
 8            Washington, D.C. 20002
 9
10        NEW YORK CITY LAW DEPARTMENT
          OFFICE OF CORPORATION COUNSEL
11        Attorneys for Defendant
          THE CITY OF NEW YORK
12            100 Church Street
              New York, New York 10007
13        BY:   SUZANNA PUBLICKER METTHAM, ESQ.
14
15        SCOPPETTA SEIFF KRETZ & ABERCROMBIE
          Attorneys for Defendant
16        STEVEN MAURIELLO
              444 Madison Avenue
17            New York, New York 10022
          BY:   WALTER A. KRETZ, JR., ESQ.
18
19
          IVONE, DEVINE & JENSEN, LLP
20        Attorneys for Defendant
          DR. ISAK ISAKOV
21            2001 Marcus Avenue
              Lake Success, New York 11042
22        BY:   BRIAN LEE, ESQ.
23
                   (Continued.)
24
25
```

Page 3

1                   (Continued.)
2
3       CALLAN, KOSTER, BRADY & BRENNAN, LLP
        Attorneys for Defendant
4       DR. LILIAN ALDANA-BERNIER
                One Whitehall Street
5               New York, New York 10004
        BY:   MATTHEW KOSTER, ESQ.
6
7
        MARTIN CLEARWATER & BELL, LLP
8       Attorneys for Defendant
        JAMAICA HOSPITAL MEDICAL CENTER
9               220 East 42nd Street
                New York, New York 10017
10      BY:   BRIAN OSTERMAN, ESQ.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 4

1    S T I P U L A T I O N S:

2            IT IS HEREBY STIPULATED AND AGREED by

3    and between the attorneys for the respective

4    parties hereto, that this examination may be

5    sworn to before any Notary Public.

6

7            IT IS FURTHER STIPULATED AND AGREED

8    that the filing and certification of the said

9    examination shall be waived.

10

11            IT IS FURTHER STIPULATED AND AGREED

12    that all objections to questions, except as to

13    the form of the question, shall be reserved

14    for the time of trial.

15

16

17

18

19

20

21

22

23

24

25

                                                    Page 5

 1

 2                    MR. SMITH:  We are going on the

 3            record, it is 10:11.  We are at my

 4            office at 111 Broadway, New York, New

 5            York.  We are about to start the

 6            deposition of Shantel James.

 7                    THE WITNESS:  Correct.

 8                    MR. SMITH:  And can you swear in

 9            the witness, please.

10   S H A N T E L   J A M E S, a Defendant

11   herein, having been first duly sworn by a

12   Notary Public within and for the State of

13   New York, was examined and testified as

14   follows:

15

16   EXAMINATION BY

17   MR. SMITH:

18

19        Q.      Will you state your name and

20   address for the record, please.

21        A.      My name is Shantel James.  My

22   address 315 Hudson Street, New York, New

23   York 10035.

24                    MR. SMITH:  All right, Ms.

25            Mettham, as we have done in the past,

Page 6

| | |
|---|---|
| 1 | SHANTEL JAMES |
| 2 | will you agree to accept service of any |
| 3 | process on behalf of Ms. James in the |
| 4 | event that such process is necessary? |
| 5 | MS. PUBLICKER METTHAM:  If we |
| 6 | still represent Sergeant James at the |
| 7 | time of trial, we will accept service |
| 8 | of any trial subpoenas.  If she is not, |
| 9 | we will facilitate the production of |
| 10 | the last known address. |
| 11 | MR. SMITH:  And any other |
| 12 | information that serves to effectuate |
| 13 | service, reasonable and necessary? |
| 14 | MS. PUBLICKER METTHAM:  Yes. |
| 15 | Q.    Ms. James, you understand you're |
| 16 | under oath? |
| 17 | A.    Yes, I do. |
| 18 | Q.    You understand that you're a |
| 19 | defendant in this lawsuit? |
| 20 | A.    Yes. |
| 21 | Q.    Have you ever been deposed |
| 22 | before? |
| 23 | A.    No. |
| 24 | Q.    All right, I am sure your |
| 25 | counsel has explained to you some of the |

1                    SHANTEL JAMES

2        Objection.  You could answer.

3        A.     I was advised by my immediate

4   supervisor for his safety.  I am guarding

5   him for his safety is what I was told.

6        Q.     Who told you that?

7        A.     Lieutenant Anderson.

8        Q.     How did Lieutenant Anderson say

9   that to you?

10               MS.  PUBLICKER METTHAM:

11        Objection.  You could answer.

12        A.     He said Shantel, I need you to

13   go to the hospital and guard Schoolcraft for

14   his safety.

15        Q.     Was this an in-person

16   conversation you had with Lieutenant

17   Anderson?

18        A.     Yes.

19        Q.     Where did that take place?

20        A.     It took place behind the desk,

21   the 81st Precinct upon my arrival.

22        Q.     Was there a reason the

23   conversation took place behind the

24   sergeant's desk at the 81 or just you

25   remember that's where it happened?

Page 69

                    SHANTEL JAMES

1          Objection.   You could answer.

2     A.      No.

3     Q.      Did anybody from the hospital

4  provide you with any information?

5               MS. PUBLICKER METTHAM:

6          Objection.   You could answer.

7     A.      No.

8     Q.      Did you receive any instructions

9  from anybody at the hospital?

10              MR. OSTERMAN:   Objection.

11    A.      No.

12    Q.      You give any instructions to

13 anybody at the hospital?

14              MS. PUBLICKER METTHAM:

15         Objection.   You could answer.

16    A.      No, I did not.

17    Q.      So when you got to the hospital

18 and Schoolcraft was in the gurney, you and

19 Sadowsky sat down in chairs and you were

20 watching him; is that correct?

21              MS. PUBLICKER METTHAM:

22         Objection.   You could answer.

23    A.      Yes.

24    Q.      And is it fair to say that

Page 69

1                   SHANTEL JAMES

2          Objection.   You could answer.

3     A.      No.

4     Q.      Did anybody from the hospital

5  provide you with any information?

6               MS. PUBLICKER METTHAM:

7          Objection.   You could answer.

8     A.      No.

9     Q.      Did you receive any instructions

10 from anybody at the hospital?

11              MR. OSTERMAN:   Objection.

12    A.      No.

13    Q.      You give any instructions to

14 anybody at the hospital?

15              MS. PUBLICKER METTHAM:

16         Objection.   You could answer.

17    A.      No, I did not.

18    Q.      So when you got to the hospital

19 and Schoolcraft was in the gurney, you and

20 Sadowsky sat down in chairs and you were

21 watching him; is that correct?

22              MS. PUBLICKER METTHAM:

23         Objection.   You could answer.

24    A.      Yes.

25    Q.      And is it fair to say that

Page 145

```
 1                    SHANTEL JAMES
 2    the other lawyers will have questions for
 3    you.  Thank you.
 4         A.     Yes.
 5              MR. SMITH:  So we're going off
 6         the record, it's 1:58.
 7              (Whereupon, a recess was taken.)
 8              MR. SMITH:  Going back on the
 9         record.  I don't have any more
10         questions at this time.  Thank you.
11              MS. PUBLICKER METTHAM:  What
12         time is it?
13              MR. SMITH:  It's 2:05.
14              MS. PUBLICKER METTHAM:  I have
15         one question.  Clarifying question.
16    EXAMINATION BY
17    MS. PUBLICKER METTHAM:
18         Q.     Sergeant James, did you believe
19    that Officer Schoolcraft was a prisoner
20    whose phone call had to be monitored or
21    restricted?
22              MR. SMITH:  Objection.  Leading.
23         A.     No, I did not.
24    EXAMINATION BY
25    MR. KOSTER:
```

Page 146

SHANTEL JAMES

1

2     Q.     Good afternoon.  I have a couple

3  of questions for you.  Did you ever speak

4  with a Dr. Aldana-Bernier at Jamaica

5  Hospital about Adrian Schoolcraft?

6     A.     Not to my knowledge.

7     Q.     Did you ever speak with a Dr.

8  Isakov at Jamaica Hospital regarding Adrian

9  Schoolcraft?

10     A.     Not to my knowledge.

11     Q.     Did you ever direct anyone to

12  provide any information to any physician at

13  Jamaica Hospital?

14     A.     No, I did not.

15     Q.     Did you ever direct anyone to

16  provide any information to any nurses or

17  staff at Jamaica Hospital?

18     A.     No, I did not.

19     Q.     Did anyone request that you

20  provide information to anyone at Jamaica

21  Hospital regarding Adrian Schoolcraft?

22     A.     No.

23     Q.     Did anyone ask you to compile

24  any information that they told you would be

25  provided to anyone at Jamaica Hospital?

Page 147

1               SHANTEL JAMES

2              MS. PUBLICKER METTHAM:

3         Objection.  You could answer.

4         A.    No.

5         Q.    On the logbook that was marked

6   as Exhibit 117, did the entry start on

7   October 31st or on November 1st?

8         A.    It is written as 1/1/09, but

9   it's actually 10/31, because we work a day

10  ahead.  So we work one day for the next.  So

11  in all actuality it was December 31st --

12        Q.    You mean November 31st?

13             MS. PUBLICKER METTHAM:  October.

14        A.    I'm sorry October 31st, but we

15  work for the next day, so the entry is

16  written as November 1st.

17        Q.    And it says ten, looks like dot

18  84, is that a police code number or is that

19  referring to some kind of assignment?

20        A.    Yes.  It is a police code and it

21  means that I am present at the location.

22             MR. KOSTER:  I don't have

23        anything else.

24  EXAMINATION BY

25  MR. OSTERMAN: