UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------------x

ADRIAN SCHOOLCRAFT,                                        10CV6005(RSW)

                              Plaintiff,

                                                          AMENDED
          -against-                                       MEMORANDUM
                                                          OF LAW
THE CITY OF NEW YORK, et al.,
JAMAICA HOSPITAL MEDICAL CENTER, DR. ISAK
ISAKOV, Individually and in his Official Capacity, DR.
LILIAN ALDANA-BERNIER, Individually and in her Official
Capacity, et al.,

                              Defendants.
------------------------------------------------------------------------------------x


**AMENDED MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT DISMISSING ALL FEDERAL CLAIMS AGAINST THE DEFENDANT ISAK ISAKOV, M.D.**


*Date of Service*:        January 30, 2015


*Of counsel*:        Brian E. Lee (BL9495)


**IVONE, DEVINE & JENSEN, LLP**
ATTORNEYS AT LAW
2001 MARCUS AVENUE - SUITE N100
LAKE SUCCESS, NEW YORK 11042

**TABLE OF CONTENTS**

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

    Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

    Statutes and Rules.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

The Pleadings.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    Plaintiff's claims against Dr. Isakov. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        Preliminary Factual Allegations as to Dr. Isakov.. . . . . . . . . . . . . . . . . 2

        Federal Claims.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        Pendent State Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Standards for Summary Judgment.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

POINT I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    THE MOTION FOR DISMISSAL SHOULD BE GRANTED ISAK ISAKOV,
    M.D. IS NOT A STATE ACTOR

    Requirement of State Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Dr. Isakov is not a State Actor.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    Prior Actions of the Police. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    The conspiracy claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

POINT II. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    THE STATE CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL
    DISTRESS SHOULD BE DISMISSED

POINT III. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    IF THE FEDERAL CLAIMS ARE DISMISSED, THE PENDENT STATE
    CLAIMS SHOULD ALSO BE DISMISSED

POINT IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
       PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT AGAINST DR.
       ISAKOV MUST BE DISMISSED AS THE COURT DID NOT GRANT HIM
       PERMISSION TO AMEND HIS COMPLAINT TO INCLUDE A CLAIM OF
       RELIEF FOR DECLARATORY JUDGMENT AGAINST HIM


CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

## Table of Cases

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). . . . 7, 16

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 985,
    143 L.Ed.2d 130 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Anderson v. Liberty Lobby, Inc.* ., 477 U.S. 242, 248, 106 S.Ct. 2505,
    91 L.Ed.2d 202 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bhatia v. Yale School of Medicine*, 347 Fed.Appx. 663 (2d Cir. 2009). . . . . . . . . . . . . . . . . . 16

*Blum v.  Yaretsky*, 457 U.S. 991. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). . 19

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). . . . . . . 7

*Doe v Rosenberg*, 996 F.Supp 343 (S.D.N.Y. 1998)(Sweet, U.S.D.J.). . . 1, 10, 11, 12, 13, 14, 18

*Doe v Rosenberg*,  166 F.3d 507 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 14

*Dwares v. City of New York*, 985 F.2d 94,98 (2d Cir.1993). . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156-57, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). . . . . 12

*Genao v. Avon Salon & Spa*, 2008 WL 190605 (S.D.N.Y.,2008). . . . . . . . . . . . . . . . . . . . . . . . 7

*Hanig v. Yorktown Cent. Sch. Dist.*, 384 F.Supp.2d 710, 725 (S.D.N.Y.2005). . . . . . . . . . . . . 19

*Howell v. New York Post Co.*, 81 N.Y.2d 115 (N.Y. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974). . . 9

*Kolari v. New York Presbyterian Hospital*, 455 F.3d 118 (2d Cir.2006). . . . . . . . . . . . . . . . . . 19

*Lewis v. Krymkevich*, Slip Copy, 2009 WL 4884093 (S.D.N.Y., 2009). . . . . . . . . . . . . . . . . . 14

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). . . . 11

*McGugan v Aldana Bernier*,  752 F.3d 224 (2d Cir. 2014). . . . . . . . . . . . . . . . . . . . 1, 10, 14, 15

i

*Medcalf v. Walsh*, 938 F. Supp. 2d 478, 488 (S.D.N.Y. 2013). . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Monaco v. Stone*, 2002 WL 32984617 (E.D.N.Y.,2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir.1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997). . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Rendell-Baker v. Kohn*, 457 U.S. 830, 842, 102 S.Ct. 2764, 2772,
    73 L.Ed.2d 418 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Rodriguez v. City of New York,* 72 F.3d 1051, 1063 (2d Cir.1995). . . . . . . . . . . . . . . . . . . . . 11

*Sajimi v. City of New York*, Slip Copy, 2011 WL 135004 (E.D.N.Y., 2011).. . . . . . . . . . . . . . 9

*Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

*Stuto v. Fleishman*, 164 F.3d 820 (2d Cir. N.Y. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Sybalski v. Independent Group Home Living Program, Inc*., 546 F.3d 255 (2d Cir., 2008).. . . 14

*Thai v. Cayre Grp.*, 726 F. Supp. 2d 323, 336-37 (S.D.N.Y. 2010). . . . . . . . . . . . . . . . . . . 17-18

*Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 102-03 (2d. Cir. 1998). . . . . . . . . . 19

*Turturro v. Continental Airlines*, 334 F.Supp.2d 383, 395-398 (S.D.N.Y.,2004). . . . . . . . . . . 14

*United States v. Price*, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). . . . . . . 11

*Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000). . . . . . . . . . . . . . . . . . . . . . . . . . 7

## Table of Statutes and Rules

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. § 1343. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. § 1367. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19, 20

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 7, 8, 11, 18

42 U.S.C. § 1988. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed.R.Civ.P. 56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

New York Mental Hygiene Law § 9.27. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

New York Mental Hygiene Law § 9.39. . . . . . . . . . . . . . . . . . . . . . 2, 4, 5, 10, 11, 12, 13, 14

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of defendant Dr. Isak Isakov for summary judgment dismissing the 1983 claims. Dr. Isakov is a private attending physician who exercised his independent medical judgment in involuntarily hospitalizing the plaintiff in this case. That action does not constitute state action providing federal jurisdiction over the 1983 claims.

The law in this Circuit has been absolutely clear in this regard since this Court's seminal decision in *Doe v Rosenberg*, 996 F.Supp 343 (S.D.N.Y. 1998)(Sweet, U.S.D.J.), aff'd 166 F.3d 507 (2d Cir. 1999). A series of cases in the Second Circuit, and the Southern and Eastern Districts of New York all have followed this precedent. Any remaining questions as to whether this is still the law in the Second Circuit were answered when the authority of *Doe* was recently reaffirmed by the Second Circuit in *McGugan v Aldana Bernier*, 752 F.3d 224 (2d Cir. 2014).

*McGugan* also addressed and dismissed another pertinent issue for the instant case. The Second Circuit found that even where state actors transported the patient to Jamaica Hospital, as here, this would not affect the state action analysis as the plaintiff:

> . . . does not allege that the state actors requested, much less compelled JHMC or its staff to involuntarily hospitalize her. Nor can we discern any other reason why the conduct of private actors should become attributable to the state merely because it follows in time the conduct of state actors.

752 F.3d at 230.

While the facts here are undoubtedly unique, they do not change the ultimate analysis that there is no state action conferring federal jurisdiction where a private

1

physician exercising private medical judgment involuntarily hospitalizes a patient pursuant to New York Mental Hygiene Law §9.39.

Additionally, the motion also seeks summary judgment on one state claim and further requests that this Court not exercise supplemental jurisdiction on the remaining state claims if the federal claims are dismissed, and seeks dismissal of a claim for declaratory relief as will be explained in Point IV.

## THE PLEADINGS

Plaintiff commenced this action by the filing of the  Complaint filed on August 10, 2012 (Court Docket 1), and Dr. Isakov answered that Complaint on September 7, 2010 (Docket 18).  An amended complaint was filed on September 13, 2010 (Docket 21) and answered by this defendant on October 27, 2010 (Docket 39).

The Second Amended Complaint is attached as Exhibit A to the declaration of Brian E. Lee (Docket 103).  The defendant Isakov answered the Second Amended Complaint on October 19, 2012 (Exhibit B)(Docket 111).

This memorandum has been updated at the direction of the Court to "file amended summary judgment papers referencing the TAC rather than the SAC."  Court decision of January 16, 2015, docket no. 340, page 17.

### PLAINTIFF'S CLAIMS AGAINST DR. ISAK ISAKOV

#### Preliminary Factual Allegations as to Dr. Isakov

Paragraphs 20 and 21 allege that Dr. Isakov was physician duly licensed to practice in the State of New York and had certain privileges at Jamaica Hospital Medical Center

("JHMC").   The answer served on behalf of Dr. Isakov admitted the paragraphs to the extent that Dr. Isakov is a physician duly licensed in the State of New York, and that he was an attending physician at JHMC.

Federal Claims Allegations

The only two federal claims clearly pleaded against Dr. Isakov are the seventh claim for relief, involuntary confinement pursuant to 42 U.S.C. § 1983, and the ninth claim for relief, violation of due process under 42 U.S.C.§ 1983.  In between these two, the eighth claim for relief is for conspiracy to violate plaintiff's civil rights under 42 U.S.C. § 1983. These will be discussed in that order.

The seventh claim for relief alleges that Dr. Isakov and co-defendant Dr. Bernier unlawfully and involuntarily confined plaintiff in violation of his constitutional rights.

The ninth claim for relief alleges that Dr. Isakov and co-defendant Dr. Bernier violated the substantive and procedural due rights of the plaintiff in involuntarily hospitalizing him at Jamaica Hospital Medical Center.

The eighth claim for relief alleges that the unspecified defendants "conspired and acted in concert to do whatever was necessary, lawful or not, to cause the arrest, imprisonment, and involuntary confinement" of the plaintiff.  We believe that this is not pleaded against Dr. Isakov because of the more specified allegations in paragraph 294 of the Third Amended Complaint, which alleges that the conspirators:

> . . . (a) manufactured false evidence; (b) unlawfully entered
> plaintiff's home; (c) illegally seized plaintiff's property; (d)
> verbally and physically threatened plaintiff in an attempt to
> silence him; (e) stalked at menaced plaintiff at his home; and

3

> (b)[sic] pressured, bribed, coerced and induced individuals to have plaintiff involuntarily confined to hospital treatment without his consent or any lawful basis for doing so.

Indeed, it would appear that the claim, as pleaded, sets forth that the conspiracy involved other defendants pressuring, bribing, coercing and inducing to effect the involuntary hospitalization, acts that could not have been preformed by Dr. Isakov.

It should be noted that there are no allegations contained in the second amended complaint that the actions taken by Dr. Isakov constituted state action as to warrant federal jurisdiction.  In the recent third amended complaint ("TAC"), the plaintiff slipped in an allegation in paragraph 243, despite not making any request for relief in the motion papers as against Dr. Isakov.  That claim alleges that ". . . and the acts of JHMC and Defendants Bernier and Isakov were taken under the assumed governmental authority and responsibility to protect the public, in violation of New York Mental Hygiene Law §9.39.

To the extent the Court will permit this allegation to stand, it does not change the fact that the facts clearly show that there was no state action as to Dr. Isakov.

<u>Pendent State Claim Allegations</u>

There are also pendent state claims pleaded against Dr. Isakov in the seventh claim for relief under New York State law, medical malpractice; and arguably in the fifth claim for relief under New York law, intentional infliction of emotional distress[1].

---

[1] It is arguable because the allegations of the TAC state the actions were committed by defendants acting within (¶344) and in furtherance (¶345) of their employment at Jamaica Hospital Medical Center ("JHMC").  Dr. Isakov was not an employee of JHMC (Isakov affidavit pp. 2-3) so on their face the allegations do not pertain to him.

4

## STATEMENT OF FACTS

The facts for this motion for Dr. Isakov are not lengthy and are summarized as follows.  Following a lengthy interaction with members of the New York City Police Department ("NYPD"), Adrian Schoolcraft (hereafter "Schoolcraft") was brought to the Jamaica Hospital Medical Center (hereafter ("JHMC") medical emergency room by EMS personnel on October 31, 2009 (Exhibit C, JHMC Chart, pages 1, 2-3, 4, and numerous other places in the chart).

Schoolcraft was transferred from the medical emergency room to the psychiatric emergency room on November 1, 2009 (Exhibit C, JHMC Chart).

On November 3, 2009, Dr. Aldana-Bernier signed part 1 of the involuntary admission papers for 9.39 admission under the New York State Mental Hygiene Law, thus involuntarily confining Schoolcraft (Exhibit C, JHMC Chart, page 57). Schoolcraft was then transferred to the psychiatric ward on the third floor of JHMC.

On November 4, 2009, Dr. Isak Isakov signed part 2 of the involuntary admission papers for 9.39 admission under the New York State Mental Hygiene Law, thus confirming the involuntary confinement of Schoolcraft (Exhibit C, JHMC Chart, page 58, affidavit of Isak Isakov, M.D., page 8).

The annexed affidavit of Dr. Isakov, which is incorporated herein by reference thereto, discusses his treatment in detail on November 4, 2009 (pages 6-9), November 5, 2009 (Page 9) and November 6, 2009, when Schoolcraft was discharged (pages 9-10).  A reading of the affidavit makes clear that Dr. Isakov carefully evaluated the patient, his

claims, his need for hospitalization, and did so free from constraint or undue influence.

Dr. Isakov had no contact with any New York City employees, including Police Department, Fire Department, EMS, or any other NYC employee, with the exception of an officer from the Internal Affairs Bureau (hereafter"IAB") (Affidavit of Isak Isakov, M.D., pages 2, 10-12; declaration of Brian E. Lee including quotation of testimony at depositions of numerous NYC employees attesting to no such contact).

Dr. Isakov was at a family meeting with Schoolcraft and his father, Larry Schoolcraft, which included, at the request of the Schoolcrafts, the officer from the IAB, Licensed Mental Social Worker Colleen McMahon and Dr. Isakov ( Affidavit of Isak Isakov, M.D., pages 2, 10-12).

The meeting was tape recorded(Source: Affidavit of Isak Isakov, M.D., page 11).  The IAB officer did not request, pressure or in any way influence the independent medical judgment concerning Schoolcraft made by Dr. Isakov (Affidavit of Isak Isakov, M.D., pages 2, 10-12).

Dr. Isakov requested permission from Schoolcraft to obtain a copy of his prior records from the police psychologist who had ordered taking his gun away(Source: Affidavit of Isak Isakov, M.D., page 12).  That request was denied by Adrian Schoolcraft (Exhibit D, deposition of Adrian Schoolcraft, page436-437).

All of the decisions made by Dr. Isakov were the result of the exercise of his independent professional medical judgment (Affidavit of Isak Isakov, M.D., pages 2, 4, 10).

## STANDARDS FOR SUMMARY JUDGMENT

The standard for a motion for summary judgment requires a court to render judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000).

As set forth by this Court in *Genao v. Avon Salon & Spa*, 2008 WL 190605 (S.D.N.Y.,2008), a material fact is "one that would 'affect the outcome of the suit under the governing law,' and a dispute about a genuine issue of material fact occurs if the evidence is such that 'a reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.* ., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997)." *Genao* at *2.

The initial burden to show that there are no such material facts in dispute is on the movant, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and can discharge this burden by demonstrating that there is an absence of evidence to support the nonmoving party's case, *Celotex*, 477 U.S. at 325.

## POINT I

### THE MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE DR. ISAK ISAKOV IS NOT A STATE ACTOR

The plaintiff's claimed bases of jurisdiction are two-fold.  First, 28 U.S.C. § 1331 which authorizes of civil actions arising out of the Constitution, laws and treaties of the

United States.  Second, 28 U.S.C. § 1343 which authorizes jurisdiction of actions arising out of 42 U.S.C. § 1983 and 42 U.S.C.. § 1988.  In order for this jurisdiction to be valid, there must be sufficient state action to invoke jurisdiction.  Here neither the allegations of the complaint, nor the facts as pleaded, nor any of the facts adduced during the lengthy discovery in this action, provide a basis for federal jurisdiction, and thus fail to state a cause of action.

Since the two actions clearly pleaded against Dr. Isakov (the seventh and ninth causes of action), and the one other claim that plaintiff may claim is applicable (the eighth cause of action for conspiracy) are all pleaded under 42 U.S.C. § 1983, the lack of state action mandates dismissal of the federal claims against Dr. Isakov.

### Requirement of State Action

In order to state a claim pursuant to United States Code Title 42 § 1983, "a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Dwares v. City of New York*, 985 F.2d 94,98 (2d Cir.1993); *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir.1994).

For a deprivation of a right to be actionable under § 1983, "the conduct complained of must have been committed by a person acting under color of state law," and cannot be applied to the actions of private individuals. *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir.1994). As the Supreme Court has held, "the under-color-of-state-law element of § 1983 excludes

from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999) (internal quotation marks omitted).

Although the under-color-of-state-law requirement can be applied to private individuals in certain limited circumstances, such as where the private individual is engaged in a "public function," *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974), or performs conduct that is "fairly attributable to the state," *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 51, 119 S.Ct. at 986, these exceptions are narrow. The Supreme Court has made clear that "the relevant question is not simply whether a private group is serving a 'public function.' ... [T]he question is whether the function performed has been 'traditionally the exclusive prerogative of the State.' " *Rendell-Baker v. Kohn*, 457 U.S. 830, 842, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418 (1982) (*quoting Jackson*, 419 U.S. at 353, 95 S.Ct. at 454). *See also, Sajimi v. City of New York*, Slip Copy, 2011 WL 135004 (E.D.N.Y., 2011). As will be seen, Dr. Isakov is a private actor not acting under color of state law and thus the federal claims should be dismissed.

### Dr. Isakov is not a State Actor

Plaintiff's claims in this action as to Drs. Isakov must necessarily fail because there is no state action suffcient to confer federal jurisdiction. Indeed through the Second Amended Complaint there was not even an allegation of state action as to their actions or inactions. As set forth above, while there were allegations made against Dr. Isakov, none of them alleged that he is a state actor,  and none of the claims made against him could

even be construed as setting forth a basis that his actions constituted state action.

Simply stated, there is no state action permitting this case to survive against Dr. Isakov.   For the first time, in the TAC, in paragraph 243, the plaintiff inserted an allegation that the acts of, *inter alia*, Dr. Isakov, were "taken under the assumed governmental authority and responsibility to protect the public, in violation of accepted medical standards and New York Mental Hygiene Law §9.39."   None of these new allegations change the state action analysis.  Indeed, in *Doe v Rosenberg*, 996 F.Supp 343 (S.D.N.Y. 1998) (Sweet, U.S.D.J.), aff'd 166 F.3d 507 (2d Cir. 1999), this Court settled the issue as to whether involuntary hospitalization pursuant to the Mental Hygiene Law constitutes state action. It does not, as will be seen.

Thus, the argument that involuntary commitment pursuant to New York State Mental Health Law is "state action" providing jurisdiction over 42 U.S.C. § 1983 claims was rejected in the seminal decision of this Court, *Doe v Rosenberg*, 996 F.Supp 343 (S.D.N.Y. 1998)(Sweet, U.S.D.J.), aff'd 166 F.3d 507 (2d Cir. 1999).  The finding in that case effectively ends plaintiff's action in this case.  If there remained any question as to whether this is still good law in the Second Circuit, any such doubts were laid to rest by *McGugan v Aldana Bernier*,  752 F.3d 224 (2d Cir. 2014).

In *Doe, supra.*, the Second Circuit affirmed the decision of the District Court (996 F. Supp. 343 [S.D.N.Y. 1998]) "for substantially the reasons set forth in the district court's comprehensive and scholarly opinion", and found that involuntary commitment pursuant to the New York State Mental Hygiene Law does not constitute state action sufficient to

sustain federal jurisdiction.

As in the instant case, plaintiff claimed that by committing a patient pursuant to the Mental Hygiene Law, there was sufficient state action. The Court below in *Doe v Rosenberg,* Sweet, J., held that the statute could not possibly be read as mandating the action of involuntary commitment, and that it clearly required the exercise of professional medical judgment. *Id.*, 996 F.Supp. 343 at 354-358.  As to the exercise of medical judgment under Mental Hygiene Law § 9.39, *see also,  Rodriguez v. City of New York,* 72 F.3d 1051, 1063 (2d Cir.1995).

42 U.S.C. § 1983, entitled, "Civil action for deprivation of rights" provides as follows:

> Every  person  who,  under  color  of  any  statute,  ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen  of  the  United  States  or  other  person  within  the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

The Court in *Doe, supra.*, clearly set forth what the plaintiff in that action, and in this action, would need to prove in order to prevail based upon this statute (996 F. Supp. at 348):

> The constitutional sections creating the substantive rights in this case are the Fourth and Fourteenth Amendments. Because the  Amendments  are  directed  at  the  States,  they  can  be violated  only  by  "state  action"  and  not  by  the  conduct  of  a private  actor.  "Careful  adherence  to  the  `state  action' requirement  preserves  an  area  of  individual  freedom  by limiting the reach of federal law and federal judicial power." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d  482  (1982).  Section  1983's  "under  color  of  law"

requirement is treated "`as the same thing' as the `state action'" requirement under the Constitution. *Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (*quoting United States v. Price*, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)).

To prevail in this 1983 action, Doe must show (1) that Defendants deprived her of a right secured by the Constitution or laws of the United States and (2) that, in doing so, Defendants acted under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156-57, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

This Court then correctly determined that while involuntary confinement constitutes a significant deprivation of liberty, the actions of a private physicians who act pursuant to the statute in view cannot be considered the actions of the state invoking the protection of 42 U.S.C. § 1983, and therefore, the individual physicians could not be considered state actors. *Doe, supra.*, 996 F. Supp. at 348-358. In so finding, the court rejected arguments advanced by plaintiff that the state compulsion, close nexus/joint action and public function tests were applicable.  Therefore, the court granted summary judgment and also dismissed the pendent state claims.

The essential facts in this case are no different and require the same finding. As the *Doe* court considered in detail the relevant arguments made by plaintiff, and those same arguments are applicable herein, we will not reiterate the arguments set forth therein, but will merely address some issues that require further explanation.

While a different statute was considered in *Doe v Rosenberg, supra* (New York Mental Hygiene Law § 9.27),  the language in the critical portion of the statute is the same.  The statute involved here, Mental Hygiene Law § 9.39, provides in pertinent part that:

12

**§ 9.39 Emergency admissions for immediate observation, care, and treatment**

(a) The director of any hospital maintaining adequate staff and facilities for the observation, examination, care, and treatment of persons alleged to be mentally ill and approved by the commissioner to receive and retain patients pursuant to this section *may receive and retain therein as a patient* for a period of fifteen days any person alleged to have a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others. "Likelihood to result in serious harm" as used in this article shall mean:

1. substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous to himself, or

2. a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.

The director shall cause to be entered upon the hospital records the name of the person or persons, if any, who have brought such person to the hospital and the details of the circumstances leading to the hospitalization of such person.

The director shall admit such person pursuant to the provisions of this section only if a staff physician of the hospital upon examination of such person finds that such person qualifies under the requirements of this section. Such person shall not be retained for a period of more than forty-eight hours unless within such period such finding is confirmed after examination by another physician who shall be a member of the psychiatric staff of the hospital (emphasis supplied).

It should be noted that section 9.39, involved here, was the same statute invoked in

*McGugan, supra.*

The court in *Doe, supra.*, continued, at 996 F. Supp. 349-350, that the "use of the word 'may' in the Statute is convincing of the lack of encouragement or exercise of coercive power by the state, factors that must exist under the state compulsion test. *See Blum [v. Yaretsky]*, 457 U.S. [991] at 1004. Even though the MHL provides the legal framework under which physicians may involuntarily commit a patient by creating procedures and standards for commitment, as *Doe* points out, it leaves the decision to commit completely to the physician's discretion."

The same standard applies here. The MHL statute (the 9.27 considered by *Doe,* and the 9.39 considered by *McGugan* and here) is couched in terms of 'may' and the confinement provisions, as in *Doe*, require the act of professional medical judgment. In concluding that this combination of factors, among others, cannot make the action of the involved parties actions of the State under a theory of state compulsion, this Court found that: "Compliance with the procedures of the MHL, a statute that neither forces nor encourages involuntary commitments, does not convert private action into state action." 996 F. Supp at 352.

Other cases coming to the same reasoning, that the three-pronged tests of state compulsion, close nexus/joint action and public function are not met in similar situations include *Monaco v. Stone*, 2002 WL 32984617 (E.D.N.Y.,2002); *Lewis v. Krymkevich*, Slip Copy, 2009 WL 4884093 (S.D.N.Y., 2009); *Turturro v. Continental Airlines*, 334 F.Supp.2d 383, 395-398 (S.D.N.Y.,2004).  *See also, Sybalski v. Independent Group Home Living Program, Inc.*, 546 F.3d 255 (2d Cir., 2008).  As set forth above, the reasoning of *Doe* was reaffirmed by the

14

Second Circuit in *McGugan v Aldana-Bernier*, 752 F.3d 224 (2d Cir. 2014).

## Prior Actions of the Police

The fact that the plaintiff was brought to the hospital by the NYPD does not change the analysis.  Again, any such claim, were it to be made, was put to rest by the Second Circuit in *McGugan v Aldana Bernier*,  752 F.3d 224, 230 (2d Cir. 2014), where it was held:

> First, she argues that this case is unlike Rosenberg because her involuntary hospitalization occurred after state actors transported her to JHMC. We do not see how these allegations, without more, could affect the state action analysis here. McGugan does not allege that the state actors requested, much less compelled JHMC or its staff to involuntarily hospitalize her. Nor can we discern any other reason why the conduct of private actors should become attributable to the state merely because it follows in time the conduct of state actors.

In this case, Schoolcraft was brought to the hospital on the order of the NYPD on October 31, 2009.  However, once the patient was at JHMC, there is no allegation nor any proof whatsoever that the NYPD or any other governmental agency suggested, requested or compelled the involuntary hospitalization.  Rather, as the affidavit of Dr. Isakov attests, he first saw the patient on November 4, 2009, and came to a reasoned evaluation and exercised his independent professional medical judgment in involuntarily hospitalizing Mr. Schoolcraft.

## The conspiracy claim

The eight claim in this case pleads a conspiracy to violate plaintiff's civil rights.  As mentioned above, a clear reading would appear to show that this claim is not pleaded against Dr. Isakov.  Thus, paragraph 294 of the TAC alleges that the conspirators:

> . . . (a) manufactured false evidence; (b) unlawfully entered
> plaintiff's home; (c) illegally seized plaintiff's property; (d)
> verbally and physically threatened plaintiff in an attempt to
> silence him; (e) stalked at menaced plaintiff at his home; and
> (b)[sic] pressured, bribed, coerced and induced individuals to
> have plaintiff involuntarily confined to hospital treatment
> without his consent or any lawful basis for doing so.

Thus, when plaintiff claims two paragraphs earlier (¶ 292) that "Defendants conspired and acted in concert to do whatever was necessary, lawful or not, to cause the arrest, imprisonment, and involuntary confinement of plaintiff ADRIAN SCHOOLCRAFT," that should not include the medical defendants in general, and this defendant in particular.

In the event the Court believes that the claim as pleaded does include this defendant, it must be dismissed because of (1) the lack of state action providing jurisdiction for the same reasons as above; and (2) the facts as set forth herein clearly show that there was no such conspiracy involving Dr. Isakov. His affidavit makes it clear that he had no contact with the police except for that one meeting, and that no police coerced, entreated or otherwise requested him to involuntarily admit Schoolcraft. He specifically sets forth that there was no conspiracy.

Additionally, the testimony from the City defendants, set forth in detail in the declaration of Brian E. Lee, and contained in Exhibit E, show no facts from which a conspiracy can be established.

Furthermore, to state a claim in conspiracy against both state actors and private individuals, the complaint must allege that the private actors they are "jointly engaged with state officials" in a conspiracy to deprive the plaintiff of his constitutional rights, *Adickes v.*

16

*S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  There is no such allegation here.  *See also Bhatia v. Yale School of Medicine*, 347 Fed.Appx. 663 (2d Cir. 2009).

Furthermore, as here, dismissal of "conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights" is appropriate. *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.1983).  Here any reading of the complaint that would include Dr. Isakov as a defendant in a conspiracy reveals nothing other than conclusory, vague or general allegations, and thus the claim should be dismissed.

The motion for summary judgment should be granted by this Honorable Court.

## POINT II

### THE STATE CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED

To establish a claim of intentional infliction of emotional distress under New York law, a plaintiff must prove: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 488 (S.D.N.Y. 2013) (*citing Howell v. New York Post Co.*, 81 N.Y.2d 115 (N.Y. 1993)).  In New York, "the tort of intentional infliction of emotional distress is extremely disfavored. Only the most egregious conduct has been found sufficiently extreme and outrageous to establish this tort." *Id.*

New York courts have recognized claims for intentional infliction of emotional distress "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious,

and utterly intolerable in a civilized society." *Stuto v. Fleishman*, 164 F.3d 820 (2d Cir. N.Y. 1999).  This strict standard has been "set deliberately high to ensure that a plaintiff's claim of emotional distress is genuine and to dissuade litigation where only bad manners and hurt feelings are involved." *Thai v. Cayre Grp.*, 726 F. Supp. 2d 323, 336-37 (S.D.N.Y. 2010). "A court may determine, as a matter of law, that the alleged behavior is not sufficiently outrageous to warrant the imposition of liability."  *Medcalf* at 488 (*citing Howell*).

In this case, the affidavit of Dr. Isakov clearly sets forth that he engaged in a systematic and logical evaluation of the condition of plaintiff, and certainly not the extreme and outrageous conduct warranting the relief sought.

The fifth state claim should be dismissed.

## POINT III

### IF THE FEDERAL CLAIMS ARE DISMISSED, THE PENDENT STATE CLAIMS SHOULD ALSO BE DISMISSED

Since the 42 U.S.C. § 1983 and other Federal claims must necessarily fail for the reasons set forth above, the pendent state claims should be dismissed for lack of supplemental jurisdiction. *See, Doe, supra.*, at 996 F. Supp. at 358, 28 U.S.C. § 1367.

Subdivisions (a) and (c) of §1367 read as follows:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that

18

involve the joinder or intervention of additional parties.

* * * * *

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

> (1) the claim raises a novel or complex issue of State law,

> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

> (3) the district court has dismissed all claims over which it has original jurisdiction, or

> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In this action, if the Court dismisses the federal claims against Dr. Isakov, it is submitted that all of the pendent state claims, those mentioned above, and any others that plaintiff may claim are applicable to Dr. Isakov, should be dismissed.  *See, Tops Markets, Inc. v. Quality Markets, Inc.,* 142 F.3d 90, 102-03 (2d. Cir. 1998); *see also, Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

"A district court may decline to exercise supplemental jurisdiction over a claim if it 'has dismissed all claims over which it has original jurisdiction.' " *Hanig v. Yorktown Cent. Sch. Dist.,* 384 F.Supp.2d 710, 725 (S.D.N.Y.2005); *see also, Kolari v. New York Presbyterian Hospital,* 455 F.3d 118 (2d Cir.2006) (affirming district court's decision to decline the exercise of supplemental jurisdiction where plaintiff's federal law claims were eliminated on a motion to dismiss).

The pendent state claims should be dismissed.

### POINT IV

**PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT AGAINST DR. ISAKOV MUST BE DISMISSED AS THE COURT DID NOT GRANT HIM PERMISSION TO AMEND HIS COMPLAINT TO INCLUDE A CLAIM OF RELIEF FOR DECLARATORY JUDGMENT AGAINST HIM**

It is undisputed that plaintiff did not include a claim for declaratory judgment as a form of relief in his Second Amended Complaint.  (Declaration of Brian E. Lee, Exhibit A). Judge Sweet's Opinion and Order partially granting plaintiff's motion to amend did not grant the motion to amend the complaint to include a claim for declaratory judgment against Dr. Isakov  (Declaration of Brian E. Lee, Exhibit G).  As Judge Sweet wrote in his Opinion and Order (Exhibit G at 13):

> Plaintiff moves, over JHMC's objection, for leave to add a claim seeking declaratory and injunctive relief, specifically, a declaration that the City Defendants' conduct was illegal and an injunction requiring JHMC and the City Defendants to expunge from Schoolcraft's medical files any 'record or a finding that Officer Schoolcraft was mentally ill, dangerous or otherwise a person who required involuntary commitment to a psychiatric ward.' Pl's Mem. In Supp't 15.

As the decision makes clear, the motion to amend to add a claim of relief for declaratory judgment was limited to a claim against the City that certain conduct was illegal and for an injunction against the City and Jamaica Hospital.  (Exhibit G at 13). Plaintiff's attempt to seek declaratory relief against Dr. Isakov was not granted by the Court, if indeed he actually even sought such relief, and therefore must be dismissed.  To the extent plaintiff claims he moved for declaratory relief against Dr. Isakov, and Judge

Sweet actually granted that portion of his motion, then the claim for declaratory relief must be dismissed as to all of plaintiff's claims under §1983 and intentional infliction of emotional distress.

## CONCLUSION

The motion of the defendant Isak Isakov, M.D. for summary judgment dismissing the federal claims should be granted in all respects, summary judgment should further be granted as to Dr. Isakov dismissing the state claim for intentional infliction of emotional distress, and the remaining state claims dismissed pursuant to 28 U.S.C. § 1367.

Dated:        Lake Success, New York
                January 30, 2015

                                        Respectfully submitted,

                                        */s/ Brian E. Lee*

                                        _____
                                        BRIAN E. LEE (BL9495)
                                        Ivone Devine & Jensen, LLP
                                        Attorneys for defendant Isak Isakov, M.D.
                                        2001 Marcus Avenue
                                        Lake Success, New York 11042
                                        (516) 326-2400