UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -

ADRIAN SCHOOLCRAFT,
Plaintiff,

-against- Index No.
10CIV-6005 (RWS)

THE CITY OF NEW YORK, DEPUTY CHIEF MICHAEL MARINO, Tax Id. 873220, Individually and in his Official Capacity, ASSISTANT CHIEF PATROL BOROUGH BROOKLYN NORTH GERALD NELSON, Tax Id. 912370, Individually and in his Official Capacity, DEPUTY INSPECTOR STEVEN MAURIELLO, Tax Id. 895117, Individually and in his Official Capacity, CAPTAIN THEODORE LAUTERBORN, Tax Id. 897840, Individually and in his Official Capacity, LIEUTENANT JOSEPH GOFF, Tax Id. 894025, Individually and in his Official Capacity, Sgt. Frederick Sawyer, Shield No. 2576, Individually and in his Official Capacity, SERGEANT KURT DUNCAN, Shield No. 2483, Individually and in his Official Capacity, LIEUTENANT TIMOTHY CAUGHEY, Tax Id. 885374, Individually and in his Official Capacity, SERGEANT SHANTEL JAMES, Shield No. 3004, and P.O.'s "JOHN DOE" 1-50, Individually and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown)(collectively referred to as "NYPD defendants"), JAMAICA HOSPITAL MEDICAL CENTER, DR. ISAK ISAKOV, Individually and in his Official Capacity, DR. LILIAN ALDANA-BERNIER, Individually and in her Official Capacity and JAMAICA HOSPITAL MEDICAL CENTER EMPLOYEES "JOHN DOE" # 1-50, Individually

(Continued)



and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown),

Defendants.

-------------------x

111 Broadway
New York, New York
February 12, 2014
10:21 a.m.

VIDEOTAPED DEPOSITION of DR. ISAK ISAKOV, one of the Defendants in the above-entitled action, held at the above time and place, taken before Margaret Scully-Ayers, a Shorthand Reporter and Notary Public of the State of New York, pursuant to the Federal Rules of Civil Procedure.

* * *

outside at that point, graded from one to hundred, hundred is the best, one is the worst.

Q. When you're evaluating, we talked about possible risk of harm, we walked about that earlier.

A. Uh-huh.

Q. Did you study anywhere risk assessment with regard to patient harming themselves or others?

A. Yes. I was taught about the risk assessment in residency when I was in residency at the several discussions in the hospital and case conferences how to assess risk.

Q. And in 2009 how did you do risk assessment?

A. In a particular case?

Q. Generally, did you have a method by which you did it?

A. How I'm doing it?

Q. Yes.

A. Again, by doing the full psychosocial evaluation of the patient,

his mental status, assessing through five axis and this is making me to assess the risk of the patient.

Q. And these risks that you talked about, this risk assessment, it at times results in your determination that there was a risk of varying different levels, correct?

A. Yes.

Q. Sometimes the risk is nonexistent, sometimes the risk is low, sometimes the risk is high, correct?

A. [Indicating.]

Q. Correct?

A. Yes.

Q. Sometimes the risk is substantial, correct?

A. I don't know substantial. I would like to grade the risk is high, the risk is medium, the risk is low because the low risk also could be substantial.

Q. What does substantial risk mean to you?

A. Substantial, it means that the

risk make you to make decision that you don't want to take this risk that you need to do something to avoid something bad to happen, reach the threshold where you would say no, it's enough risk in this case to keep him in the hospital.

It mean just to reach the threshold. It doesn't -- it doesn't mean it's sky high, but you reach the threshold to make decision.

MR. SUCKLE: Let's take five minutes to see if I have any more questions.

MR. SMITH: Off the record at 3:10 p.m.

[Discussion held off the record.]

[Whereupon, at 3:10 p.m., a recess was taken.]

[Whereupon, at 3:21 p.m., the testimony continued.]

MR. SMITH: Going back on the record. It's 3:21.

Q. Doctor, just quickly 'cause I