GJR/DA
82-82153
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ADRIAN SCHOOLCRAFT,

                        Plaintiff,

                -against-                                  10 CIV 6005 (RWS)

THE CITY OF NEW YORK, DEPUTY CHIEF MICHAEL MARINO, Tax *Id.* 873220, Individually and in his Official Capacity, ASSISTANT CHIEF PATROL BOROUGH BROOKLYN NORTH GERALD NELSON, Tax *Id.* 912370, Individually and in his Official Capacity, DEPUTY INSPECTOR STEVEN MAURIELLO, Tax *Id.* 895117, Individually and in his Official Capacity CAPTAIN THEODORE LAUTERBORN, Tax *Id.* 897840, Individually and in his Official Capacity, LIEUTENANT JOSEPH GOFF, Tax *Id.* 894025, Individually and in his Official Capacity, SGT. FREDERICK SAWYER, Shield No. 2576, Individually and in his Official Capacity, SERGEANT KURT DUNCAN, Shield No. 2483, Individually and in his Official Capacity, LIEUTENANT CHRISTOPHER BROSCHART, Tax *Id.* 915354, Individually and in his Official Capacity, LIEUTENANT TIMOTHY CAUGHEY, Tax *Id.* 885374, Individually and in his Official Capacity, SERGEANT SHANTEL JAMES, Shield No. 3004, AND P.O.'s "JOHN DOE" #1-50, Individually and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown) (collectively referred to as "NYPD defendants"), JAMAICA HOSPITAL MEDICAL CENTER, DR. ISAK ISAKOV, Individually and in his Official Capacity, DR. LILIAN ALDANA-BERNIER, Individually and in her Official Capacity and JAMAICA HOSPITAL MEDICAL CENTER EMPLOYEE'S "JOHN DOE" # 1-50, Individually and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown),

                        Defendants.

------------------------------------------------------------------------X

## MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTION
## FOR SUMMARY JUDGMENT

Of Counsel:    Gregory J. Radomisli (GJR 2670)

2450493_1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ............................................................................. 1

POINT I

PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT
AGAINST JAMAICA HOSPITAL MEDICAL CENTER
ON HIS §1983 CLAIM

    A.    Jamaica Hospital Medical Center cannot be subject
to direct liability under 42 USC §1983

        1.    Jamaica Hospital Medical Center is not a "person." ............. 1

        2.    Lack of State Action……………………………………..2

    B.    Plaintiff is Not Entitled to Summary Judgment
Based Upon A Theory of Vicarious Liability

        1.    Vicarious Liability…………………………………………7
           a.    An Official Policy………………………………………7

           b.    The direction of a policymaker…………………………9

           c.    A widespread custom……………………...……………9

POINT II

PLAINTIFF CANNOT OBTAIN SUMMARY JUDGMENT
BASED UPON NEGLIGENCE *PER SE*……………………………………….12

CONCLUSION……………………………………………………………….....13

# TABLE OF AUTHORITIES

*Cases*

*Addington v. Texas*,
   441 U.S. 418, 425, 99 S.Ct. 1804 (1979). ....................................................................... 2

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
   526 U.S.40, 119 S.Ct. 977 (1999) .......................................................................... 2, 3

*Amnesty Amer. v. Town of West Hartford*,
   361 F.3d 113 (2d Cir. 2004) ........................................................................................ 11

*Amofa v. Bronx-Lebanon Hosp. Center*,
   2006 U.S.Dist. LEXIS 83199 (S.D.N.Y. Nov. 13, 2006) ............................................. 3

*Antwi v. Montefiore Medical Center*,
   2014 U.S.Dist. LEXIS 161904 (S.D.N.Y. November 18, 2014) ............................ 2, 3

*Barry v. New York City Police Dept.*,
   2004 U.S. Dist. LEXIS 5951 (S.D.N.Y. April 7, 2004) .............................................. 11

*Board of the County of Comm'rs of Bryan County v. Brown*,
   520 U.S. 397 (1997) .................................................................................................... 11

*Boykin v. 1 Prospect Park
ALF, LLC*, 993 F.Supp.2d 264 (E.D.N.Y. 2014) ............................................................. 12

*DeMarco v. Sadiker*,
   952 F.Supp. 134 (E.D.N.Y. 1996) ................................................................................ 5

*Dilworth v. Goldberg*,
   914 F.Supp.2d 433 (S.D.N.Y. 2012) ............................................................................. 7

*Doe v. Harrison*,
   254 F.Supp.2d 338 (S.D.N.Y. 2003) ............................................................................. 3

*Doe v. Rosenberg*, 996 F.Supp.
   343 (S.D.N.Y. 1998), *aff'd* 166 F.3d 508 (2d Cir. 1999) ..................................... 3, 4, 5

*Eng v. Bellevue Hospital*,
   2014 U.S.Dist. LEXIS 160887 (S.D.N.Y. July 8, 2014) .............................................. 1

*Fabrikant v. French*,
   691 F.3d 193 (2d Cir. 2012) ....................................................................................... 2

*Gray v. Group Home*,
   2013 U.S.Dist. LEXIS 147548 (E.D.N.Y. October 10, 2013) .................................... 4

*Green v. City of New York*,
   465 F.3d 65 (2d Cir. 2006) ....................................................................................... 10

*Hogan v. A.O. Fox Memorial Hosp.*,
   346 Fed. App'x 627 (2d Cir. 2009) ............................................................................ 2

*Jackson v. Metropolitan Edison Co.*,
   419 U.S. 345 (1974) ................................................................................................... 5

*Jeffes v. Barnes*,
   208 F.3d 49 (2d Cir. 2000) ................................................................................ 8, 9, 11

*Jeffes v. Barnes*,
   20 F.Supp.2d 204 (N.D.N.Y. 1998) .......................................................................... 11

*Kia P. v. McIntyre*,
   235 F.3d 749 (2d Cir. 2000) ....................................................................................... 4

*Mauro v. Costco Wholesale Corp.*,
   2013 WL 3816731 (E.D.N.Y. July 22, 2013) .......................................................... 12

*McGugan v. Aldana-Bernier*,
   752 F.3d 224 (2d Cir. 2014) ....................................................................................... 3

*Michaels v. City of New York*,
   2011 U.S.Dist. LEXIS 15806 (S.D.N.Y. February 16, 2011) .................................... 7

*Monell v. Dep't of Soc. Servs. of the City of New York*,
   436 U.S. 658 (1978) ....................................................................................... 7, 11, 12

*Morris v. NYC HRA*,
   2013 U.S. Dist. LEXIS 86623 (E.D.N.Y. June 19, 2013) .......................................... 3

*Project Release v. Prevost*,
   722 F.2d 960 (2d Cir. 1983) ....................................................................................... 5

*Rendell-Baker v. Kohn*,
   457 U.S. 830, 838, 102 S.Ct. 2764 (1982) ................................................................. 2

*Reynolds v. Darrah*,
    2011 U.S.Dist. LEXIS 113621 (S.D.N.Y. September 30, 2011)............................1

*Rodriguez v. City of New York*,
    72 F.3d 1051 (1995)...........................................................................................5

*Roe v. City of Waterbury*,
    542 F.3d 31 (2d Cir. 2008).................................................................................4

*Ruhlmann v. Smith*,
    323 F.Supp.2d 356 (N.D.N.Y. 2004)..................................................................5

*Schoolcraft v. City of New York*,
    2011 U.S.Dist. LEXIS 48996 (S.D.N.Y. May 5, 2011).................................7, 9

*Smolian v. Port Authority of New York and New Jersey*,
    98 A.D.3d 1103 (2d Dept. 2012).........................................................................4

*Sorlucco v. New York City Police Department*,
    971 F.2d 864 (2d Cir. 1992)..............................................................................10

*Sykes v. James*,
    13 F.3d 515 (2d Cir. 1993).................................................................................2

*Tewksbury v. Dowling*,
    169 F.Supp.2d 103 (E.D.N.Y. 2001)................................................................5, 6

*Turturro v. Continental Airlines*,
    334 F.Supp.2d 383 (S.D.N.Y. 2004)...................................................................3

*Vaselli v. United States*,
    No. 12 CV 06221, 10/3/14 (E.D.N.Y. 2014) ....................................................12

*Warheit v. City of New York*,
    2006 U.S.Dist. LEXIS 58167 (S.D.N.Y. August 15, 2006)..........................11, 12

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of defendant JAMAICA HOSPITAL MEDICAL CENTER in opposition to plaintiff's motion for summary judgment. At the outset, it must be noted that plaintiff's motion is replete with erroneous citations that are either inaccurate and/or cite to the incorrect material(s). In accordance with FRCP 56(c) and Local Rule 56.1, the Court ought to disregard those citations that are erroneous.

## POINT I

### PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT AGAINST JAMAICA HOSPITAL MEDICAL CENTER ON HIS §1983 CLAIM

A.  Jamaica Hospital Medical Center cannot be subject to direct liability under 42 USC §1983

1.  Jamaica Hospital Medical Center is not a "person."

Section 1983 of Title 42 of the United States Code provides, in relevant part: "Every person who, under color of any statute. . .subjects or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights. . . secured by the Constitution and laws, shall be liable to the party injured." 42 USC §1983. Thus, a §1983 action can only be maintained against a "person" who has deprived another of his or her constitutional rights. *See e.g. Reynolds v. Darrah*, 2011 U.S.Dist. LEXIS 113621 (S.D.N.Y. September 30, 2011). As the Court noted in *Reynolds*, "Jails, courts, corporations and law firms are not 'persons' within the meaning of §1983." 2011 U.S.Dist. LEXIS 113621 at *3. In *Eng v. Bellevue Hospital*, 2014 U.S.Dist. LEXIS 160887 (S.D.N.Y. July 8, 2014), this Court dismissed plaintiff's claims against Bellevue Hospital because it found that "a hospital is not a 'person' under 42 U.S.C. §1983." 2014 U.S.Dist. LEXIS 160887 at *12. Because Jamaica Hospital cannot be subject to liability under

42 USC §1983, this Court cannot award summary judgment to the plaintiff on that claim.

### 2. Lack of State Action

To state a claim under §1983, a plaintiff must allege that: 1) a right secured to him by the Constitution or federal law was violated; and 2) the alleged violation was committed by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S.40, 49-50, 119 S.Ct. 977 (1999). Section 1983 does not create any rights, but merely provides "a procedure for redress for deprivation of rights [already] established." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). There is no question that involuntary confinement constitutes a significant deprivation of liberty, requiring due process protection. *See e.g. Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804 (1979).

Private conduct, however, "no matter how discriminatory or wrongful," is not controlled by §1983, *see Am Mfrs.*, *supra*, 526 U.S. at 50, except in limited situations where a "private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (*quoting Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764 [1982]). The conduct of private actors can be attributed to the state for Section 1983 purposes *only* if "1) the State compelled the conduct, 2) there is a sufficiently close nexus between the State and the private conduct, or 3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State." *Hogan v. A.O. Fox Memorial Hosp.*, 346 Fed. App'x 627, 629 (2d Cir. 2009).

In this case, plaintiff's §1983 claims against Jamaica Hospital are based upon plaintiff's contention that JHMC had an official policy that did not conform to the requirements of the Mental Hygiene Law ("MHL") and that as a result, the plaintiff was involuntarily hospitalized in violation of his due process rights. JHMC, in fact, did not have an official policy that did not

conform with the Mental Hygiene Law. The JHMC policy and MHL §9.39 are, in fact, identical. This Court, however, need not reach a determination as to whether Jamaica Hospital did, in fact, have such a policy because, as in *Antwi v. Montefiore Medical Center*, 2014 U.S.Dist. LEXIS 161904 (S.D.N.Y. November 18, 2014), "[t]he pivotal issue in this case is whether Defendants were state actors when they hospitalized . . . Plaintiff against [his] will." *Id.* at *16.

This Court, by Judge Robert W. Sweet, issued the seminal decision finding that private hospitals and physicians do not act under color of law when a patient is involuntarily hospitalized. *See Doe v. Rosenberg*, 996 F.Supp. 343 (S.D.N.Y. 1998), *aff'd* 166 F.3d 508 (2d Cir. 1999). The Second Circuit recently reaffirmed this position in *McGugan v. Aldana-Bernier*, 752 F.3d 224 (2d Cir. 2014); *see also Antwi v. Montefiore Medical Center, supra*, 2014 U.S.Dist. LEXIS 161904, *16 (S.D.N.Y. November 18, 2014) ("[I]t is well-settled in the Second Circuit that a private hospital confining a patient under the New York MHL is not acting under color of state law"). As the *Antwi* Court noted, "[I]n numerous §1983 cases involving private hospitals and health care professionals, Southern District courts have found that none of the three tests for state action—'state compulsion,' 'public function,' and 'close nexus'—are satisfied." 2014 U.S.Dist. LEXIS 161904 at *17-18; *see also Amofa v. Bronx-Lebanon Hosp. Center*, 2006 U.S.Dist. LEXIS 83199 at *4 (S.D.N.Y. Nov. 13, 2006); *Turturro v. Continental Airlines*, 334 F.Supp.2d 383, 395-397 (S.D.N.Y. 2004); *Doe v. Harrison*, 254 F.Supp.2d 338, 342-345 (S.D.N.Y. 2003).

Although JHMC did not have a policy that was not in conformity with the Mental Hygiene Law, its policy was the policy of a private hospital. That is not sufficient to constitute state action because private conduct, "no matter how discriminatory or wrongful," is not controlled by §1983. *Am Mfrs., supra*, 526 U.S. at 50; *see also Morris v. NYC HRA*, 2013 U.S.

Dist. LEXIS 86623, *9-10 (E.D.N.Y. June 19, 2013) ("Village Care and Jamaica Hospital are both private entities that are not normally amenable to suits for damages pursuant to 42 U.S.C. §1983. As the Supreme Court has held, 'the under-color-of-state-law element of §1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful'"); *Kia P. v. McIntyre*, 235 F.3d 749, 755-56 (2d Cir. 2000) (private hospital was not a state or municipal facility and therefore was not liable pursuant to §1983 unless it was acting as an instrumentality of the state); *Smolian v. Port Authority of New York and New Jersey*, 98 A.D.3d 1103 (2d Dept. 2012) (dismissing §1983 claim against Jamaica Hospital because it was not a state actor).

Plaintiff's allegation that JHMC had an "official policy" that did not conform to the requirements of the Mental Hygiene Law does not excuse him from having to initially establish that Jamaica Hospital is a state actor. For example, in *Gray v. Group Home*, 2013 U.S.Dist. LEXIS 147548 (E.D.N.Y. October 10, 2013), the Court noted that to prevail on a Section 1983 claim "against a municipality **or private entity acting under color of state law**, a plaintiff must show: 1) **actions taken under color of law**; 2) deprivation of a constitutional or statutory right; 3) causation; 4) damages; and 5) that an official policy of the municipality [**or private entity acting under color of state law**] caused the constitutional injury." 2013 U.S.Dist. LEXIS 147548 at *10 (emphasis added) (*citing Roe v. City of Waterbury*, 542 F.3d 31, 36 [2d Cir. 2008]).

In addition, as this Court recognized in *Doe*, "[c]ompliance with the procedures of the MHL, a statute that neither forces nor encourages involuntary commitments, does not convert private action into state action." 996 F.Supp. at 352. If *compliance* with the statute does not constitute state action, it is illogical to conclude that *not* complying with the statute, as plaintiff alleges, is somehow transformed into state action.

Similarly, this Court also noted in *Doe* that "the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment. Nor does the fact that the regulation is extensive and detailed. . . do so." 996 F.Supp. at 352 (*citing Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 [1974]). Consequently, the alleged failure to abide by a state regulation cannot constitute state action.

Plaintiff's counsel has not made any effort to establish that any of the defendants engaged in state action and, as such, cannot sustain a cause of action pursuant to 42 USC §1983, let alone be entitled to summary judgment on that claim. His motion papers do not address any of the tests that would allow the conduct of private actors to be attributed to the state for §1983 purposes. In the absence of state action, there can be no due process violation. Therefore, plaintiff's motion should be denied.

The cases plaintiff's counsel cites in his 12/23/14 Memorandum of Law do not support his position. *Ruhlmann v. Smith*, 323 F.Supp.2d 356 (N.D.N.Y. 2004) and *DeMarco v. Sadiker*, 952 F.Supp. 134 (E.D.N.Y. 1996) involved state-run hospitals, not a private hospital. Similarly, *Rodriguez v. City of New* York, 72 F.3d 1051 (1995) involved a city hospital, not a private hospital. *Project Release v. Prevost*, 722 F.2d 960 (2d Cir. 1983) simply held that the standards for involuntary hospitalization embodied in the Mental Hygiene Law meet constitutional standards. Accordingly, none of the cases plaintiff cites supports his position that he is entitled to summary judgment because he has still not established state action.

Plaintiff's citation to *Tewksbury v. Dowling*, 169 F.Supp.2d 103 (E.D.N.Y. 2001) in support of his claim that JHMC was involved in state action in this case is also unavailing. In that case, the defendants, citing *Doe v. Rosenberg, supra,* argued that the private physicians who hospitalized the plaintiff were not state actors because their decision was based upon their own

medical judgment. The Court stated that "if the decision to commit Tewksbury was based purely on their own independent medical judgment, defendants would be correct that they are not state actors." 169 F.Supp.2d at 109. The court noted, however, that the physicians acknowledged that they had accepted the plaintiff as a patient over the telephone, that an independent examination was not performed, and therefore the initial decision to hospitalize the plaintiff was not a result of their independent medical judgment. *Id.* In contrast, plaintiff's Third Amended Complaint herein indicates that the plaintiff was seen at JHMC and admitted after an examination was performed (Exhibit "A" attached to the 2/11/15 Declaration of Gregory J. Radomisli, ¶¶ 198, 199)[1].

As stated above, in *Tewksbury*, one of the defendants, who was "indisputably" a state actor, concluded that the plaintiff required hospitalization, and telephoned the private defendant-physician, who admitted the plaintiff to the private hospital "without any further examination." *Id.* at 110. The Court found that because there was consultation among the New York State health professionals and the private psychiatrists, there was state action. Moreover, as the Court noted, the plaintiff could not have been hospitalized without the certification of the state-actor physician, pursuant to the terms of §9.37 of the Mental Hygiene Law, which required that the Director of Community Services certify a patient for immediate hospitalization. *Id.* Thus, in *Tewskbury*, the decision to hospitalize the plaintiff at the private hospital was, in fact, a "joint" decision between state physicians and private physicians, and one, according to MHL §9.37, that could only have been made with the assistance of a state actor. In contrast, the decision to admit the plaintiff to JHMC was not made in conjunction with any state psychiatrists, was made by private psychiatrists who utilized their own independent medical judgment, and was made

---

[1] All references to Exhibits refer to the Exhibits attached to the 2/11/15 Declaration of Gregory J. Radomisli.

pursuant to MHL §9.39, which does not require any input from a state physician.

      B.      Plaintiff is Not Entitled to Summary Judgment Based Upon A Theory of Vicarious Liability

           1.      Vicarious Liability

Presumably, plaintiff is trying to hold Jamaica Hospital liable under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), as applied to private parties. In the context of private actors, private employers are not vicariously liable under §1983 for the constitutional torts of their employees "absent allegations of conduct pursuant to an official policy." *Dilworth v. Goldberg*, 914 F.Supp.2d 433, 452 (S.D.N.Y. 2012).[2] As this Court has recognized, the Supreme Court has identified at least two situations that constitute an official policy: "(1) where there is an officially promulgated policy as that term is generally understood. . . and (2) where a single act is taken by a municipal employee who, as a matter of State law, has final policymaking authority in the area in which the action was taken." *Schoolcraft v. City of New York,* 2011 U.S.Dist. LEXIS 48996, *12 (S.D.N.Y. May 5, 2011) (citations omitted).

           a.      An Official Policy

In his motion, plaintiff's counsel admits that the "official policy" of Jamaica Hospital conforms to the Mental Hygiene Law (p. 47, plaintiff's counsel's 12/23/14 Memorandum of Law). In addition, there is no dispute that Dr. Lilian Aldana-Bernier and Dr. Isak Isakov were

---

[2] Defendant JHMC adopts and incorporates by reference the arguments advanced by co-defendants Dr. Isak Isakov and Dr. Aldana-Bernier in their Memoranda of Law in support of their summary judgment motions to the extent they argue that neither physician was a state actor and therefore could not have deprived the plaintiff of due process. Consequently, JHMC cannot be held vicariously liable for their alleged civil rights violations. *See Michaels v. City of New York*, 2011 U.S.Dist. LEXIS 15806 (S.D.N.Y. February 16, 2011) (Absent a constitutional violation, no *Monell* liability can attach, even if plaintiff can demonstrate the existence of a municipal policy or practice).

the psychiatrists who admitted and treated the plaintiff, and there is nothing to suggest that they had *any* authority to make policy; in this case, they only made individual treatment decisions. Although they may have had discretion in terms of whether to admit and retain the plaintiff, discretionary authority is not the same as final policymaking authority. *See e.g., Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000). Therefore, the isolated decisions of Dr. Aldana-Bernier and Dr. Isakov to admit and retain the plaintiff, respectively, were individual patient decisions, and do not constitute acts by persons who have final policymaking authority.

Contrary to plaintiff's counsel's claims, Dr. Dhar's testimony does *not* demonstrate that it was Jamaica Hospital policy to admit a patient if the patient presented "any" risk of dangerousness as opposed to a "substantial" risk. In fact, as discussed herein, the official JHMC policy is identical to the language of MHL §9.39. Rather, as Dr. Dhar explained, whether the risk of physical harm is considered "substantial" is not really defined in the policy, although the policy clearly states that the risk of harm must be substantial. "It's clinical judgment and based on that clinical judgment, you make a determination" (Exhibit "B", p. 128). Similarly, when asked whether there was "any difference between a potential or any potential risk of dangerousness and a substantial risk of dangerousness" under the Jamaica Hospital policy, he answered, "Again, it's a clinical judgment. I don't think it's defined in the policy" (Exhibit "B", p. 133). Thus, whether any risk is deemed substantial is up to the individual clinician—it is not a policy issue. An out-of-context citation to a single question and answer should not be the basis upon which to grant plaintiff's motion for summary judgment, given that Dr. Dhar makes clear in his deposition testimony that whether a patient presents with a substantial risk of harm to himself or others pursuant to MHL §9.39 is a matter of clinical judgment on the part of the physician who evaluates the patient.

Significantly, in his Reply Memorandum of Law in Further Support of Plaintiff's Motion to Amend the Complaint (Document #318), plaintiff's counsel, addressing the clinical judgment issue, admits that at the very least, "Jamaica Hospital should be required to make that argument to a jury" (p. 8). Clearly, he recognizes that Dr. Dhar's clarification of his testimony creates a question of fact. This is a tacit admission that plaintiff is not entitled to summary judgment.

b. The direction of a policymaker

Plaintiff's counsel has not alleged, and does not have evidence of, who had **"final policymaking authority"** at Jamaica Hospital, which is necessary to sustain a claim under this prong of the test for vicarious liability. *See Jeffes v. Barnes, supra*, 208 F.3d at 57 (emphasis added). Although Dr. Dhar was the assistant chair of the Psychiatric Department (Exhibit "B", p. 16), the chair of the department was Dr. Vivek (Exhibit "B", p. 26). Furthermore, Dr. Dhar testified that he did not have any role in creating the Jamaica Hospital policy on involuntary admissions; rather, Dr. Vivek did (Exhibit "B", pp. 44-45). Therefore, based upon the evidence before this Court, plaintiff cannot sustain a cause of action against Jamaica Hospital for alleged §1983 violations as a result of a policymaker's "direction."

c. A widespread custom

As this Court recognized in its decision, a "custom" need not receive formal approval by the appropriate decision maker. *Schoolcraft, supra*, 2011 U.S.Dist. LEXIS at *12. Rather, an act performed pursuant to a "custom" that has not been "formally approved by an appropriate decision maker" may subject an employer to liability "on the theory that the relevant practice is so widespread as to have the force of law" *Id.* at *12-13 (citation omitted). To prevail on that theory, the plaintiff must prove that "the custom at issue is well settled" and that it is "so

2450493_1                                9

permanent and well settled as to constitute a custom or usage with the force of law." *Id.* at *13 (citations omitted). The unconstitutional practice must be "so manifest as to imply the constructive acquiescence of senior policy-making officials." *Sorlucco v. New York City Police Department*, 971 F.2d 864, 871 (2d Cir. 1992).

Plaintiff's counsel has not alleged and cannot establish a widespread custom of depriving patients of their civil rights. In *Green v. City of New York*, 465 F.3d 65 (2d Cir. 2006), the Court held that the plaintiff did not have sufficient evidence of a widespread custom to establish municipal liability because plaintiff could only point to one instance in which emergency personnel were not familiar with the correct protocol, and could not point to any other instances in which City personnel had engaged in actions similar to those in which the defendants had engaged. *See Green*, 465 F.3d at 81.

Although plaintiff's counsel refers to Dr. Isakov's and Dr. Aldana-Bernier's understanding of the Mental Hygiene Law, neither testified about the general practice at Jamaica Hospital or their understanding of how countless other psychiatrists who practice at Jamaica Hospital apply the Mental Hygiene Law in deciding whether to involuntarily admit a patient. In fact, while plaintiff's counsel may question whether Dr. Aldana-Bernier appropriately followed Jamaica Hospital policy, there was no doubt that she was aware that the policy was to admit a patient only if he presented a "substantial danger" to himself or others; she testified as follows (Exhibit "C", pp. 239-241):

> **Q:** Do you endeavor to follow the written policies of Jamaica Hospital, the written ones?
> **A:** The written, yes.
>
> **Q:** In dealing with Mr. Schoolcraft, did you endeavor to follow the policy set forth here as Exhibit 70 [referring to JHMC's policy on emergency admissions, attached as Exhibit 6 to plaintiff's motion]?

2450493_1                                  10

>    *     *     * [Colloquy]
>
> Q:   Is your answer, yes, you tried to—
> A:   That's what I'm saying, yes.

Furthermore, when a plaintiff's constitutional rights have been violated by an employee's single tortious decision or course of action, "the inquiry focuses on whether the actions of the employee in question may be said to represent the conscious choices of the municipality itself." *Amnesty Amer. v. Town of West Hartford*, 361 F.3d 113, 125-126 (2d Cir. 2004). A municipality or other employer will not be liable unless its policies were the "moving force" behind the alleged constitutional violation. *Barry v. New York City Police Dept.*, 2004 U.S. Dist. LEXIS 5951 (S.D.N.Y. April 7, 2004) (*citing Board of the County of Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997)). There must be a causal link between the custom or policy and the alleged wrongdoing. *Id.* Courts must apply "rigorous standards of culpability and causation. . . to ensure that the indirect-causation theory not result in the municipality's being 'held liable solely for the actions of its employee.'" *Id.* at 32 (*citing Jeffes v. Barnes*, 20 F.Supp.2d 204 [N.D.N.Y. 1998]).

The decision in *Warheit v. City of New York*, 2006 U.S.Dist. LEXIS 58167 (S.D.N.Y. August 15, 2006) is directly on point in this regard. In that case, the police brought the plaintiff to Bellevue Hospital, where he was involuntarily hospitalized. Plaintiff brought a cause of action for violation of his civil rights. The Court granted the defendant's motion for summary judgment and dismissed plaintiff's claim against the defendant hospital. The court noted that in order to sustain a *Monell* claim alleging violation of §1983 against the hospital, the plaintiff would have to establish a policy or custom

> to involuntarily commit patients to the hospital in violation of their substantive and procedural due process rights. This would require proof of a written directive or regulation by [defendant], an act by an [*sic*] policymaking

> employee at [defendant hospital], or a practice so widespread that it has the force of law at [the defendant hospital]. [Plaintiff] establishes none of these. All [plaintiff] pleads is that a number of physicians at [defendant hospital], none of whom worked in a policymaking capacity, committed him to [defendant hospital] on an emergency basis pursuant to New York's Mental Hygiene Law. ... A single incident by persons without policymaking authority cannot create liability under *Monell*. Were the Court to hold differently, it would in essence be holding [defendant hospital] liable in respondeat superior for the conduct of its employees. This is exactly what *Monell* forbids.

*Warheit* at *27-38. Here, as in *Warheit*, plaintiff's counsel has failed to meet his burden of proof.

## POINT II

### PLAINTIFF CANNOT OBTAIN SUMMARY JUDGMENT BASED UPON NEGLIGENCE *PER SE*

Under New York law, "[w]hen a defendant violates a statute that defines the degree of care to be used under certain circumstances, the violation constitutes negligence per se if 1) **it causes the injury**, 2) the plaintiff is a member of the class intended to be benefited by the statute, and 3) the statute is intended to protect against the very hazard that causes the plaintiff's injury." *Vaselli v. United States*, No. 12 CV 06221, 10/3/14 (E.D.N.Y. 2014), *quoting Mauro v. Costco Wholesale Corp.*, 2013 WL 3816731, *4 (E.D.N.Y. July 22, 2013) (emphasis added); *see also Boykin v. 1 Prospect Park ALF, LLC*, 993 F.Supp.2d 264 (E.D.N.Y. 2014) (noting that evidence of negligence is not sufficient; plaintiff must also demonstrate harm causally linked to the alleged *per se* negligence).

In this case, there is no dispute that the co-defendant private attending physician Dr. Aldana-Bernier admitted the plaintiff to Jamaica Hospital, and that Dr. Isakov subsequently took over his care. Regardless of what Dr. Dhar testified to regarding his understanding of the Mental Hygiene Law, he never treated the plaintiff. Dr. Aldana-Bernier and Dr. Isakov are the only physicians plaintiff can accuse of both having allegedly violated Section 9.39 of the Mental Hygiene Law and *also causing harm to the plaintiff*. JHMC itself could not have violated the

statute *and* could not have caused harm to the plaintiff when plaintiff's allegations are based upon actions taken by Dr. Aldana-Bernier and Dr. Isakov. Accordingly, plaintiff cannot obtain summary judgment against Jamaica Hospital based on a claim of negligence *per se*.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court deny plaintiff's motion for summary judgment in its entirety, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
       February 11, 2015

> Respectfully submitted,
>
> MARTIN CLEARWATER & BELL LLP
>
> By: _____
>     Gregory J. Radomisli (GJR 2670)
> Attorneys for Defendant
> JAMAICA HOSPITAL MEDICAL CENTER
> 220 East 42nd Street
> New York, NY 10017
> (212) 697-3122