GJR/da
82-82153

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

ADRIAN SCHOOLCRAFT,

Plaintiff,

-against-

THE CITY OF NEW YORK, DEPUTY CHIEF MICHAEL MARINO, Tax Id. 873220, Individually and in his Official Capacity, ASSISTANT CHIEF PATROL BOROUGH BROOKLYN NORTH GERALD NELSON, Tax Id. 912370, Individually and in his Official Capacity, DEPUTY INSPECTOR STEVEN MAURIELLO, Tax Id. 895117, Individually and in his Official Capacity CAPTAIN THEODORE LAUTERBORN, Tax Id. 897840, Individually and in his Official Capacity, LIEUTENANT JOSEPH GOFF, Tax Id. 894025, Individually and in his Official Capacity, SGT. FREDERICK SAWYER, Shield No. 2576, Individually and in his Official Capacity, SERGEANT KURT DUNCAN, Shield No. 2483, Individually and in his Official Capacity, LIEUTENANT CHRISTOPHER BROSCHART, Tax Id. 915354, Individually and in his Official Capacity, LIEUTENANT TIMOTHY CAUGHEY, Tax Id. 885374, Individually and in his Official Capacity, SERGEANT SHANTEL JAMES, Shield No. 3004, AND P.O.'s "JOHN DOE" #1-50, Individually and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown) (collectively referred to as "NYPD defendants"), JAMAICA HOSPITAL MEDICAL CENTER, DR. ISAK ISAKOV, Individually and in his Official Capacity, DR. LILIAN ALDANA-BERNIER, Individually and in her Official Capacity and JAMAICA HOSPITAL MEDICAL CENTER EMPLOYEE'S "JOHN DOE" # 1-50, Individually and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown),

Defendants.

--------------------------------------------------------------X

**COUNTER STATEMENT OF FACTS IN RESPONSE TO PLAINTIFF'S RULE 56.1 STATEMENT**

Civil Action No.:
10 CIV 6005 (RWS)

**JURY TRIAL DEMANDED**

Defendant JAMAICA HOSPITAL MEDICAL CENTER ("Jamaica Hospital"), by its attorneys, Martin Clearwater & Bell LLP, submits the following statement of material facts in

response to plaintiff's Rule 56 Statement in opposition plaintiff's motion for summary judgment. All citations are to those Exhibits cited by plaintiff's counsel in his 56.1 Statement, unless otherwise noted. It must be noted, however that plaintiff's 56.1 Statement is replete with erroneous citations that are inaccurate and/or cite to the incorrect material(s). In accordance with FRCP 56(c) and Local Rule 56.1, the Court ought to disregard those citations that are erroneous.

1. Undisputed for purposes of this motion.
2. Undisputed for purposes of this motion.
3. Undisputed for purposes of this motion.
4. Undisputed for purposes of this motion.
5. Undisputed for purposes of this motion.
6. Undisputed for purposes of this motion.
7. Undisputed for purposes of this motion.
8. Undisputed for purposes of this motion.
9. Undisputed for purposes of this motion.
10. Undisputed for purposes of this motion.
11. Undisputed for purposes of this motion.
12. Undisputed for purposes of this motion.
13. Undisputed for purposes of this motion.
14. Undisputed for purposes of this motion.
15. Undisputed for purposes of this motion.
16. Undisputed for purposes of this motion.
17. Undisputed for purposes of this motion.

18. Undisputed for purposes of this motion.

19. Undisputed for purposes of this motion.

20. Undisputed for purposes of this motion.

21. Undisputed for purposes of this motion.

22. Undisputed for purposes of this motion.

23. Undisputed for purposes of this motion.

24. Undisputed for purposes of this motion.

25. Undisputed for purposes of this motion.

26. Undisputed for purposes of this motion.

27. Undisputed for purposes of this motion.

28. Undisputed for purposes of this motion.

29. Undisputed for purposes of this motion.

30. Undisputed for purposes of this motion.

31. Undisputed for purposes of this motion.

32. The NYPD psychologist, Dr. Catherine Lamstein, suggested "Psychotherapy Recommended Cognitive Behavioral Therapy" [*sic*] in order for the plaintiff to "learn the ways of reducing physical manifestations of stress, as well as the psychological manifestations of stress" (Exhibit 12, p. 106). Dr. Lamstein also recommended that the plaintiff see a psychiatrist for an evaluation because two previous treating physicians had prescribed him psychiatric medication, one of which was an antipsychotic (*Id.*, pp. 113, 149).

33. Dr. Lamstein testified that she had no reason to think the plaintiff was a danger to himself and/or others, but that her "evaluation was only as good as the last time [she] saw him." (*Id.*, pp. 319-320).

34. The plaintiff was placed on restricted duty and was also ordered to surrender his firearms as a result of having been placed on restrictive duty (*Id.*, pp. 208, 289).

35. Undisputed for purposes of this motion.

36. Undisputed for purposes of this motion.

37. Undisputed for purposes of this motion.

38. Undisputed for purposes of this motion.

39. Undisputed for purposes of this motion.

40. Undisputed for purposes of this motion.

41. Undisputed for purposes of this motion.

42. Undisputed for purposes of this motion.

43. Undisputed for purposes of this motion.

44. Undisputed for purposes of this motion.

45. Undisputed for purposes of this motion.

46. Undisputed for purposes of this motion.

47. Undisputed for purposes of this motion.

48. Undisputed for purposes of this motion.

49. Undisputed for purposes of this motion.

50. Plaintiff failed to work the entirety of the day tour on October 31, 2009 because he left work early and did not obtain the requisite permission necessary to leave work

early, thereby failing to follow required police procedure (Exhibit 10, pp. 235-236) (Exhibit 4, p. 121) (Exhibit 13, pp. 68, 73).

51. Undisputed for purposes of this motion.

52. Undisputed for purposes of this motion.

53. Undisputed for purposes of this motion.

54. Undisputed for purposes of this motion.

55. Undisputed for purposes of this motion.

56. Undisputed for purposes of this motion.

57. Sergeant Huffman does not recall telling the plaintiff "okay" (Exhibit 13, p. 66). Sergeant Huffman specifically testified that "[I] don't remember what I said in response" (*Id.*, p. 68). Sergeant Huffman did recall that she did not give the plaintiff approval to leave (*Id.*, pp. 68, 73).

58. There was no basis for authorizing the plaintiff to leave work because Sergeant Huffman did not give the plaintiff the requisite permission necessary to leave work early (*Id.*, pp. 68, 73).

59. Sergeant Huffman did not give the plaintiff the requisite permission necessary to leave work early (*Id.*, pp. 68, 73).

60. Undisputed for purposes of this motion.

61. Undisputed for purposes of this motion.

62. Undisputed for purposes of this motion.

63. Undisputed for purposes of this motion.

64. Undisputed for purposes of this motion.

65. Undisputed for purposes of this motion.

66. Undisputed for purposes of this motion.

67. Undisputed for purposes of this motion.

68. Undisputed for purposes of this motion.

69. Psychologist Lamstein told Captain Lauterborn on October 31, 2009 that "as of the last time [she] saw [the plaintiff] . . . [she] had no reason to think he was a danger to himself or others", but that her "evaluation was only as good as the last time [she] saw him." (Exhibit 12, pp. 319-320). She further told Captain Lauterborn during this conversation that the plaintiff had never acted this way before and therefore she "did not know if that meant something new happened that led him to be so upset that he was acting in a different manner" (*Id.*, p. 320).

70. Undisputed for purposes of this motion.

71. Undisputed for purposes of this motion.

72. Undisputed for purposes of this motion.

73. Undisputed for purposes of this motion.

74. The landlord provided the police officers with a key.

75. There is no indication in the record as to the specific total number of NYPD officers that initially made entry into the apartment.

76. There is no indication in the record as to the specific total number of NYPD officers that initially made entry into the apartment.

77. Undisputed for purposes of this motion.

78. Undisputed for purposes of this motion.

79. Undisputed for purposes of this motion.

80. Deputy Chief Marino believed the plaintiff was an Emotionally Disturbed Person and may have been a danger to himself or others because of his behavior and his actions that day, his previous psychological history, the manner in which he left the precinct against orders, his refusal to answer the many calls to his phone and the knocks on his door, and that there was no movement heard in his apartment in the past hour (Exhibit 7, pp. 256-257).

81. Psychologist Lamstein told Captain Lauterborn on October 31, 2009 that "as of the last time [she] saw [the plaintiff] . . . [she] had no reason to think he was a danger to himself or others", but that her "evaluation was only as good as the last time [she] saw him." (Exhibit 12, pp. 319-320). She further told Captain Lauterborn during this conversation that the plaintiff had never acted this way before and therefore she "did not know if that meant something new happened that led him to be so upset that he was acting in a different manner" (*Id.*, p. 320). The officers believed the plaintiff may be an Emotionally Disturbed Person based in part on this conversation, as well as his behavior and his actions that day, his previous psychological history, the manner in which he left the precinct against orders, his refusal to answer the many calls to his phone and the knocks on his door, and that there was no movement heard in his apartment (Exhibit 7, pp. 256-257). The officers were worried about the plaintiff's well-being (Exhibit 21, pp. 101).

82. Undisputed for purposes of this motion.

83. Undisputed for purposes of this motion.

84. The plaintiff complained he was sick and that his stomach hurt (Exhibit 7, p. 262) (Exhibit 37, pp. 110-111).

85. Undisputed for purposes of this motion.

86. Undisputed for purposes of this motion.

87. Undisputed for purposes of this motion.

88. Deputy Chief Marino was not speaking to the plaintiff while EMT Sangeniti took the plaintiff's blood pressure, but instead was walking out of the apartment (Exhibit 7, p. 275).

89. Deputy Chief Marino was not speaking to the plaintiff while EMT Sangeniti took the plaintiff's blood pressure, but instead was walking out of the apartment (Exhibit 7, p. 275).

90. The plaintiff agreed only to go to the hospital (Exhibit 25, p. 166) (Exhibit 37, p. 161).

91. Undisputed for purposes of this motion insofar as the plaintiff was to be transported to Jamaica Hospital by ambulance.

92. Undisputed for purposes of this motion.

93. Undisputed for purposes of this motion.

94. Undisputed for purposes of this motion.

95. Undisputed for purposes of this motion.

96. Undisputed for purposes of this motion.

97. Undisputed for purposes of this motion.

98. The plaintiff arrived at the Medical Emergency Room of Jamaica Hospital (Exhibit 27/Defendant's Exhibit U, pp. 4, 13, 16). Plaintiff's Statement cites to Exhibit 27, but because no Exhibit 27 was served or filed with plaintiff's motion, plaintiff has failed to support this statement as required by FRCP 56(c).

99. The Jamaica Hospital records do not reflect that the plaintiff was in the custody of the NYPD the entire time, but only document that the plaintiff was "brought in per stretcher by EMT in police custody" (Exhibit 27/ Defendant's Exhibit U, p. 16). The records from the Medical Emergency Department indicate that the physicians thought that the plaintiff had been arrested (Exhibit 27/ Defendant's Exhibit U, pp. 4 and 13) (Defendant's Exhibit V, p. 43). Plaintiff's Statement cites to Exhibit 27, but because no Exhibit 27 was served or filed with plaintiff's motion, plaintiff has failed to support this statement as required by FRCP 56(c).

100. Plaintiff's Statement cites to Exhibit 28, but because no Exhibit 28 was served or filed with plaintiff's motion, plaintiff has failed to support this statement as required by FRCP 56(c).

101. Plaintiff's Statement cites to Exhibit 29, but because no Exhibit 29 was served or filed with plaintiff's motion, plaintiff has failed to support this statement as required by FRCP 56(c).

102. Plaintiff's Statement cites to Exhibit 29, but because no Exhibit 29 was served or filed with plaintiff's motion, plaintiff has failed to support this statement as required by FRCP 56(c).

103. Undisputed for purposes of this motion.

104. Later that morning, Dr. Khin Mar Lwin, a psychiatric resident, performed the psychiatric consultation, which had been requested because the plaintiff had been acting "bizarre", diagnosed the plaintiff with a Psychotic Disorder, Not Otherwise Specified ("NOS"), and recommended continued one-to-one observation due to the plaintiff's unpredictable behavior and escape risk and that the plaintiff be

transferred to the Psychiatric Emergency Room for further observation after he was medically cleared (Exhibit 27/ Defendant's Exhibit U, p. 6.) (Defendant's Exhibit V, p. 47). Dr. Indira Patel, a psychiatric attending physician, discussed the case with Dr. Lwin and confirmed the diagnosis and treatment recommendations (Defendant's Exhibit V, p. 47). The plaintiff himself expressed that he had no complaints with regard to the care and treatment rendered by Dr. Lwin (Exhibit 4, p. 497). Plaintiff's Statement cites to Exhibit 27, but because no Exhibit 27 was served or filed with plaintiff's motion, plaintiff has failed to support this statement as required by FRCP 56(c).

105. The Jamaica Hospital chart indicates that the plaintiff was admitted to the Psychiatric Emergency Department under Dr. Aldana-Bernier's service on November 1, 2009, at 8:54 a.m. (Exhibit 27/ Defendant's Exhibit U, pp. 59-63). Plaintiff fails to support this statement as required by FRCP 56(c) as there is no citation to any material in the record.

106. Dr. Aldana-Bernier, after an evaluation of the plaintiff, and in her clinical judgment, determined that the plaintiff was a danger to himself and/or others because he was psychotic and paranoid, would benefit from in-patient stabilization and met the criteria under the Mental Hygiene Law to be admitted (Exhibit 27/ Defendant's Exhibit U, pp. 57-58) (Exhibit 31, pp. 198 and 217). Plaintiff fails to support this statement as required by FRCP 56(c) as there is no citation to any material in the record.

107. Plaintiff's Statement cites to Exhibit 27, but because no Exhibit 27 was served or filed with plaintiff's motion, plaintiff has failed to support this statement as required by FRCP 56(c).

108. Plaintiff's Statement cites to Exhibit 27, but because no Exhibit 27 was served or filed with plaintiff's motion, plaintiff has failed to support this statement as required by FRCP 56(c).

109. Dr. Isakov, after an evaluation of the plaintiff, and in his clinical judgment, found the plaintiff to be suspicious, guarded, restless, and demanding to be discharged (Exhibit 27/ Defendant's Exhibit U, p. 95). The plaintiff expressed questionably paranoid ideas about conspiracies and cover-ups in his precinct, his judgment and insight were limited, and that he met the criteria under the Mental Hygiene Law to be admitted (Exhibit 27/ Defendant's Exhibit U, p. 95). Plaintiff's Statement cites to Exhibit 30, but because no Exhibit 30 was served or filed with plaintiff's motion, plaintiff has failed to support this statement as required by FRCP 56(c).

110. Dr. Isakov and Dr. Bernier both testified that their commitment decisions were a matter of their individual clinical judgments, respectively, and that in their clinical judgments they found the plaintiff to meet the criteria under the Mental Hygiene Law to justify admission (Exhibit 31/Defendant's Exhibit W, pp. 246-248) (Exhibit 32/Defendant's Exhibit X, pp. 93-98). Plaintiff's Statement cites to Exhibit 31 and Exhibit 32, but because Exhibit 31 and Exhibit 32 were not served or filed with plaintiff's motion, plaintiff has failed to support this statement as required by FRCP 56(c).

111. Dr. Dhar did not simply testify that it was the policy and practice of the hospital to involuntarily commit a patient based on any possibility that the person was dangerous. Rather, he testified and explained that whether the risk of physical harm is considered "substantial" is "not really defined. It's clinical judgment and based on that clinical judgment, you make a determination" (Exhibit 33, p. 128). Further, when asked whether there was "any difference between a potential or any potential risk of dangerousness and a substantial risk of dangerousness" under the Jamaica Hospital policy, Dr. Dhar testified, "Again, it's a clinical judgment. I don't think it's defined in the policy" (Exhibit 33/Defendant's Exhibit II, p. 133). Plaintiff's Statement cites to Exhibit 33, but because no Exhibit 33 was served or filed with plaintiff's motion, plaintiff has failed to support this statement as required by FRCP 56(c).

112. The plaintiff was discharged on November 6, 2009, only after Dr. Isakov performed a further evaluation of the plaintiff and requested that the plaintiff follow up with a psychotherapist and, if he became symptomatic, to see a psychiatrist for medication (Exhibit 27/ Defendant's Exhibit U, pp. 41-42). Plaintiff's Statement cites to Exhibit 27, but because no Exhibit 27 was served or filed with plaintiff's motion, plaintiff has failed to support this statement as required by FRCP 56(c).

113. Plaintiff fails to support this statement as required by FRCP 56(c) as there is no citation to any material in the record.

114. Undisputed for purposes of this motion.

115. Undisputed for purposes of this motion.

116. Undisputed for purposes of this motion.

117. Undisputed for purposes of this motion.

118. Undisputed for purposes of this motion.

119. Undisputed for purposes of this motion.

120. Undisputed for purposes of this motion.

121. Undisputed for purposes of this motion.

122. Undisputed for purposes of this motion.

123. Undisputed for purposes of this motion.

124. Undisputed for purposes of this motion.

125. Undisputed for purposes of this motion.

126. Undisputed for purposes of this motion.

127. Undisputed for purposes of this motion.

128. Undisputed for purposes of this motion.

129. Undisputed for purposes of this motion.

Dated: New York, New York
February 11, 2015

Yours, etc.,

MARTIN CLEARWATER & BELL LLP

By:______________________________
Gregory J. Radomisli (GJR – 2670)
A Member of the Firm
Attorneys for Defendant
JAMAICA HOSPITAL MEDICAL CENTER
220 East 42nd Street
New York, New York 10017-5842
(212) 697-3122



2454871_1