10-CV-6005 (RWS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADRIAN SCHOOLCRAFT,

Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALDANA-BERNIER'S MOTION FOR SUMMARY JUDGMENT

*PAUL F. CALLAN*
*Callan, Koster, Brady, Brennan & Nagler, LLP*
*Attorney for Defendant*
*Dr. Lilian Aldana-Bernier*
*One Whitehall Street*
*10th Floor*
*New York, New York 10004*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL SUMMARY .................................................................................... 1

PROCEDURAL HISTORY ............................................................................... 4

ARGUMENT

      POINT I

            STANDARD FOR SUMMARYJUDGMENT…................................. 6

      POINT II

            DR. ALDANA-BERNIER DID NOT DEPRIVE PLAINTIFF
            OF ANY RIGHT WHILE ACTING UNDER THE COLOR
            OF STATE LAW AS REQUIRED TO FIND LIABILITYUNDER
            §1983 ............................................................................................ 6

      POINT III

            THERE IS NO EVIDENCE DR. ALDANA-BERNIER'S
            ALLEGED ACTIONS AND/OR OMISSIONS ARE SUFFICIENT
            TO ESTABLISH A CLAIM FOR INTENTIONAL INFLICTION OF
            EMOTIONAL DISTRESS UNDER NEW YORK STATE LAW ......21

      POINT IV

            AS DR. ALDANA-BERNIER HAS ESTABLISHED SHE
            IS ENTITLED TO THE DISMISSAL OF PLAINTIFF'S
            §1983 CLAIMS, THE REMAINING STATE CLAIMS
            SHOULD BE REMANDED TO STATE COURT ........................... 22

      POINT V

            PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT
            AGAINST DR. ALDANA-BERNIER MUST BE DISMISSED AS
            THE COURT DID NOT GRANT HIM PREMISSION TO AMEND
            HIS COMPLAINT TO INCLUDE A CLAIM OF RELIEF FOR
            DECLARATORY JUDGMETN AGAINST HER ........................... 23

i

CONCLUSION...................................................................................................... 24

# TABLE OF AUTHORITIES

**Pages**

Am. Mfrs. Mut. Ins. Co. v. Sullivan,
526 U.S. 40, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999) .................................................. 6

Back v. Hastings on Hudson Union Free Sch. Dist.,
365 F.3d 107 (2d Cir. 2004) ........................................................................   6

Baylis v. Marriott Corp.,
843 F.2d 658 (2d Cir. 1988) .................................................................... 22-23

Blum v. Yaretsky,
457 U.S. 991, 73 L. Ed. 2d 534, 102 S. Ct. 2777 (1982) .............................. 7, 11, 13, 18

Clorofilla v. Town of New Castle,
106 Fed. Appx. 90 (2d Cir. N.Y. 2004) ......................................................... 22

Doe v. Rosenberg,
996 F. Supp. 343 (S.D.N.Y 1998) .................................................... 7-14, 18-19

Doe v. Rosenberg,
166 F.3d 507 (2d Cir. 1999) .................................................................. 17, 19

Edwards v. Baptiste,
06-CV-00952, 2006 U.S. Dist. LEXIS 89147 (D.Conn. December 11, 2006) .............. 20

Flagg Bros., Inc. v. Brooks,
436 U.S. 149, 56 L. Ed. 2d 185, 98 S. Ct. 1729 (1978) .................................................. 7

Harvey v. Harvey,
949 F.2d 1127 (11th Cir. 1992) .............................................................. 11-12

Hollander v. Copacabana Nightclub,
624 F.3d 30 (2d Cir. 2010) *cert. denied* 131 S. Ct. 914, 178 L. Ed. 2d 751 (2011) ......7-8

Hogan v. A.O. Fox Mem. Hosp.,
346 Fed. Appx. 627 (2d Cir. 2009) ......................................................... 8, 14

Howell v. New York Post Co.,
81 N.Y.2d 115 (N.Y. 1993) ..................................................................... 21-22

Jackson v. Metropolitan Edison Cor.,
419 U.S. 345 (1974) ................................................................. 7, 10

Jane Doe v. Harrison,
254 F. Supp. 2d 338 (S.D.N.Y. 2003) ...................................... 14, 19

Johnson v. Unity Health Sys.,
08-CV-6258, 2010 U.S.Dist. LEXIS 30727 (W.D.N.Y. March 30, 2010) ...................... 20

McGugan v Aldana-Bernier,
752 F.3d 224 (2d Cir 2014) ......................................... 7, 12, 14-19

Medcalf v. Walsh,
938 F. Supp. 2d 478 (S.D.N.Y. 2013) .................................... 21-22

Polk County v. Dodson,
454 U.S. 312, 102 S. Ct. 445, 70 L. ed 2d. 509 (1981) ................................. 6

Rendell-Baker v. Kohn,
457 U.S. 830 (1982) ........................................................... 8

Rockwell v. Cape Cod Hosp.,
26 F.3d 254 (1st Cir. 1994) ................................................ 11-12

Silver v. City University,
947 F.2d 1021 (2d Cir. 1991)………………………………………….................. 6

Stuto v. Fleishman,
164 F.3d 820 (2d Cir. N.Y. 1999) ........................................ 21-22

Sybalski v. Indep. Group Home Living Program, Inc.,
546 F.3d 255 (2d Cir. 2008) ............................................... 8, 12

Thai v. Cayre Grp.,
726 F. Supp. 2d 323 (S.D.N.Y. 2010) ......................................... 21

Villano v. Kohl's Dep't Stores, Inc.,
362 F. Supp. 2d 418 (S.D.N.Y. 2005) ......................................... 23

Washington v. County of Rockland,
373 F.3d 310 (2d Cir. 2004) .................................................... 7

West v. Atkins,
487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed 2d. 40 (1977) ................................. 6

## **Statutes**

28 U.S.C. § 1447(c) ............................................................................. 22

42 U.S.C. §1983 ........................................................................... 6-7, 12

Fed. R. Civ. P. 56(e)............................................................................. 4

New York Mental Hygiene Law ("MHL") §9.27 ............................................. 9

New York Mental Hygiene Law § 9.39 ................................................... 7, 19

## PRELIMINARY STATEMENT

The instant motion for summary judgment seeks to dismiss plaintiff's claims for relief under 42 U.S.C. §1983, for intentional infliction of emotional distress under New York State Law and to remand the action to state court after dismissal of the federal claims against Dr. Aldana-Bernier.  A review of plaintiff's Second Amended Complaint shows that only plaintiff's Eighth, Ninth and Tenth plead claims of relief under §1983 against Dr. Aldana-Bernier.  However, to the extent plaintiff claims that his other claims for relief under §1983 are made against Dr. Aldana-Bernier, the same analysis applies to those claims as to plaintiff's Eighth, Ninth and Tenth claims for relief under §1983. There is no evidence to support plaintiff's claim for relief for intentional infliction of emotional distress under New York State Law.  The remaining state law claims should be remanded to state court in the event the claims under §1983 are dismissed.  Finally, plaintiff's claims for declaratory judgment against Dr. Aldana-Bernier must be dismissed as Judge Sweet's Opinion and Order dated January 16, 2015, does not grant plaintiff the right to amend his complaint for such relief against her.

## FACTUAL SUMMARY

Dr. Lilian Aldana-Bernier did not deprive plaintiff of a right secured by the Constitution or the laws of the United States while operating under the color of state law.   Dr. Aldana-Bernier was not an employee of any federal, state or local governmental entity in November 2009; rather, she was an attending psychiatrist working at Jamaica Hospital.  (Dr. Aldana-Bernier's affidavit dated December 19, 2014, is attached to the Declaration of Paul F. Callan dated January 29, 2015 (hereinafter "Callan Decl.") as Ex. C) (Ex. C to Callan Decl. ¶ 2)

1

After plaintiff was brought to Jamaica Hospital by ambulance, his first psychiatric examination/assessment took place on November 1, 2009, at 6:30 am by Dr. Khin Mar Lwin.  (Jamaica Hospital Records are attached to Callan Decl. as Exhibit D) (Ex. C to Callan Decl. ¶3; Ex. D to Callan Decl. pgs 4-6).   Plaintiff was still in the medical emergency room when this examination occurred.  (Ex. C to Callan Decl. ¶3; Ex. D to Callan Decl. pgs 4-6).   In her note, Dr. Lwin wrote "As per Sergent James of 81st Precinct, [plaintiff] complained of not feeling well yesterday afternoon and left his work early after getting agitated and cursing a supervisor.  They follow him home and he had barricaded himself and the door had to be broken to get to him.  He initially agreed to go with them for evaluation but once outside, he ran and had to be chased and brought to the medical ER, handcuffed."  [*sic*].  (Ex. D to Callan Decl. pg 5).  Dr. Lwin also noted "As per Sergeant James, [plaintiff] was evaluated by NYPD psychiatrist and can not carry a gun or a badge for nearly a year." [*sic*].  Id.  In her recommendations, Dr. Lwin wrote "discussed with Dr. Nwaishianyii and Sergeant James[/]case discussed with Dr. Patel."  Id. at pg 6.

Dr. Indira Patel subsequently reviewed Dr. Lwin's note and concurred with Dr. Lwin's findings.  (Ex. C to Callan Decl. ¶5; Ex. D to Callan Decl. pgs 4-6).

Later that day, plaintiff was transferred to the psychiatric emergency room at Jamaica Hospital.  (Ex. C to Callan Decl. ¶7; Ex. D to Callan Decl.).   Dr. Tariq performed a psychiatric examination of plaintiff at approximately 12 p.m. on November 1, 2009.  (Ex. C to Callan Decl. ¶8; Ex. D to Callan Decl. pgs 74-79).  Dr. Tariq's psychiatric evaluation, in the chief complaints, writes "'they just came in to my place and handcuffed me'.  As per accompanying NYPD officer (Sgt James as per ER consult) he

has been acting bizarre."  (Ex. C to Callan Decl. ¶8; Ex. D to Callan Decl. pg 74).  Dr. Tariq wrote a history of plaintiff's present illness.  (Ex. D. to Callan Decl. pgs 74-79).  Dr. Tariq's plan was to hold plaintiff and stabilize him to reduce/eliminate his paranoid delusions.  Id.

Plaintiff was psychiatrically examined by Dr. Slowik on November 2, 2009, at 2:15 p.m.  (Ex. C to Callan Decl. ¶9; Ex. D to Callan Decl. ¶87).

When Dr. Aldana-Bernier evaluated plaintiff, he was still in the psychiatric emergency room.  (Ex. D. to Callan Decl.).  She was the fifth psychiatrist who evaluated him at Jamaica Hospital.  Id..  She evaluated him, spoke with him, and reviewed the notes created by the prior evaluating physicians.  (Ex. C to Callan Decl. ¶¶10-12).  This included the consultation reports/notes of Dr. Lwin, Dr. Patel and Dr. Tariq.  (Ex. C to Callan Decl. ¶11).

Dr. Aldana-Bernier made her medical decision regarding plaintiff based on the various notes made by prior doctors and nurses as well as her own evaluation of plaintiff.  (Ex. C to Callan Decl. ¶12).  She also sought a second opinion concerning her opinion as to plaintiff.  Id. at 13

Dr. Aldana-Bernier never spoke with a Sergeant James from the New York City Police Department concerning plaintiff or involuntarily committing him.  (Ex. C to Callan Decl. ¶15).  Dr. Aldana-Bernier has no recollection of speaking with the police officers that brought plaintiff to Jamaica Hospital.  Id. ¶16.  She does not remember talking to any police officer, at any time, regarding plaintiff.  Id.  Dr. Aldana-Bernier never spoke with Dr. Catherine Lamstein, a New York City Police Department psychiatrist.  Id. at

¶17.  Dr. Aldana-Bernier never spoke with anyone from the Internal Affairs Bureau of the New York City Police Department concerning plaintiff.  Id. at ¶16.

Dr. Aldana-Bernier was not, and is not, a participant in any conspiracy to keep plaintiff at Jamaica Hospital against his will.  (Ex. C to Callan Decl. ¶18).  Dr. Aldana-Bernier's medical decisions concerning plaintiff were entirely based on her sound medical judgment.  Id. at ¶19.  They were not influenced by her contact with anyone from the New York City Police Department or any other state actor.  Id.  She was not pressured, encouraged or compelled by anyone from the New York City Police Department to keep plaintiff against his will.  Id.  Dr. Aldana-Bernier was not pressured, encouraged or compelled by anyone from Jamaica Hospital to keep plaintiff there against his will.  Id. at 20.  Dr. Aldana-Bernier never falsified medical records concerning plaintiff.  Id. at 21.

## PROCEDURAL HISTORY

Plaintiff instituted the instant action with the filing and service of a Summons and Complaint dated August 8, 2010.  Plaintiff served an Amended Summons and Complaint dated September 12, 2010.  Subsequently, plaintiff served a Second Amended Summons and Complaint dated October 1, 2012.  (Plaintiff's Second Amended Summons and Complaint are attached to Callan Decl. as Exhibit A).  Dr. Aldana-Bernier interposed an Answer to the Second Summons and Complaint dated October 22, 2012.  (Dr. Aldana-Bernier's Answer to the Second Amended Summons and Complaint is attached to Callan Decl. as Exhibit B).  In an Opinion and Order dated January 16, 2015, Judge Sweet granted plaintiff motion's to file and serve a Third

Amended Summons and Complaint.  (A copy of Judge Sweet's Order is attached to Callan Decl. as Exhibit F).  Plaintiff filed his Third Amended Complaint dated January 22, 2014.  (A copy of the Third Amended Summons and Complaint is attached to Callan Decl. as Exhibit G).

## ARGUMENT

### POINT I

### STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits…show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Silver v. City University, 947 F.2d 1021, 1022 (2d Cir. 1991).

Dr. Lilian Aldana-Bernier is entitled to summary judgment on plaintiff's claims of relief under Section 1983.  Plaintiff cannot produce any evidence that he was deprived of a right secured by the Constitution or the laws of the United States by Dr. Aldana-Bernier operating under color of state law.

### POINT II

### DR. ALDANA-BERNIER DID NOT DEPRIVE PLAINTIFF OF ANY RIGHT WHILE ACTING UNDER THE COLOR OF STATE LAW AS REQUIRED TO FIND LIABILITY UNDER §1983.

"To state a claim for relief in an action brought under §1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under the color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999); see also, West v. Atkins, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed 2d. 40 (1977); Polk County v. Dodson, 454 U.S. 312, 317-18, 102 S. Ct. 445, 70 L. ed 2d. 509 (1981); Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir.

2004); 42 U.S.C. §1983.  Accordingly, Section 1983 "excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'"  Blum v. Yaretsky, 457 U.S. 991, 1002, 73 L. Ed. 2d 534, 102 S. Ct. 2777 (1982).

In order to prevail on his §1983 action, plaintiff, Adrian Schoolcraft, must show "(1) that Defendants deprived [him] of a right secured by the Constitution or laws of the United States and (2) that, in doing so, Defendants acted under color of state law." McGugan v Aldana-Bernier, 752 F.3d 224, 229 (2d Cir 2014); Washington v. County of Rockland, 373 F.3d 310, 315 (2d Cir. 2004); Doe v. Rosenberg, 996 F. Supp. 343, 348 (S.D.N.Y 1998); See Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156-57, 56 L. Ed. 2d 185, 98 S. Ct. 1729 (1978); 42 U.S.C. §1983.  For the purposes of this motion only, Defendant Dr. Aldana-Bernier will concede that involuntary confinement satisfied the first requirement.  However, Schoolcraft has not, and cannot, satisfy the second prong of the test that Dr. Aldana-Bernier was a state actor when she treated him.

To establish that Dr. Aldana-Bernier, a private actor, is a state actor under 42 U.S.C. §1983, courts have required one of three circumstances to exist.  Schoolcraft must show that:

1. There is such a close nexus between the State and the challenged action such that seemingly private behavior may be fairly treated as that of the State itself, Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982); Jackson v. Metropolitan Edison Cor., 419 U.S. 345, 351 (1974); or,

2. The state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the individual's action can only be

seen as that of the State, *Blum*, 457 U.S. at 1004; Hollander v. Copacabana Nightclub, 624 F.3d 30, 34 (2d Cir. 2010) *cert. denied* 131 S. Ct. 914, 178 L. Ed. 2d 751 (2011) (*citing* Sybalski v. Indep. Group Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008)); or,

3. The individual or entity has engaged in an activity or function that has been "traditionally the exclusive prerogative of the State". Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982); Jackson, 419 U.S. at 353; Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 158-95 (1978).

The question of whether a New York State physician who orders the involuntarily commitment of a patient while acting in her capacity as a private doctor is a state actor for the purposes of 42 U.S.C. §1983 has been definitely answered in the Second Circuit in McGugan v Aldana-Bernier, 752 F.3d 224, 229 (2d Cir 2014); Hogan v. A.O. Fox Mem. Hosp., 346 Fed. Appx. 627, 629 (2d Cir. 2009) and Doe v. Rosenberg, 996 F. Supp. 343, 352-53 (S.D.N.Y. 1998) *aff'd* 166 F.3d 507 (2d Cir. 1999). All of these cases dealt with the same circumstances presented in the instant matter, *i.e.*, a private physician certifying the involuntary commitment of a patient under New York Mental Hygiene Law § 9.39. The clear holding in these cases is that such conduct is not actionable under 42 U.S.C. § 1983.

This Court addressed precisely the same issues pertaining to 42 U.S.C. §1983 in Doe v. Rosenberg and ruled that a physician who involuntarily committed a patient in her private capacity as a physician is not a state actor for purposes of §1983. In Rosenberg, plaintiff, Doe, went to Rosenberg's office for a general physician examination. Rosenberg, 996 F. Supp. at 346. During this examination, Doe revealed

she had been under a lot of stress for an extended period of time relating to her professional, educational and personal lives.  Id.  She had also been experiencing periods of depression and crying.  Id.  While she was being examined, Doe began exhibiting symptoms of psychotic behavior.  Id.  It was Rosenberg's opinion that Doe needed immediate psychiatric treatment and she arranged for Doe to see Dr. Judith Lewis, a private psychiatrist.  Id.  Doe left Rosenberg's office, but did not meet with Dr. Lewis because Dr. Lewis' fees were high and she did not know Dr. Lewis.  Id.

Dr. Lewis called Rosenberg after Doe missed her appointment.  Id.  Rosenberg's secretary then called Doe asking her come to Rosenberg's office.  Id.  Doe agreed to come in, but was concerned she would be late for an appointment she had with her gynecologist.  Id.  Upon seeing Doe, Rosenberg believed that Doe's psychological condition had severely deteriorated since he last saw her.  Id.  When Rosenberg asked Doe if they could discuss her situation, Doe appeared frightened to enter his office and ran away as Rosenberg attempted to speak with her.  Id.  Rosenberg believed Doe was experiencing a paranoid psychotic episode and presented a potential danger to herself.  Id. at 346-47.  Rosenberg called Dr. Lewis to discuss Doe and her behavior.  Id.  Dr. Lewis recommended locating Doe and having hospital security escort Doe to the psychiatric emergency room for an evaluation.  Id.  Rosenberg wrote a medical order authorizing hospital security to transport Doe to Columbia Presbyterian Medical Center (CPMC).  Id.

Doe momentarily reappeared, but when Rosenberg tried to speak with her, she became agitated and ran out of the office.  Id.  Rosenberg alerted security.  Id.  Doe claims she left Rosenberg's office because she did not want to discuss her blood test

results in the waiting room and did not want to be late for her gynecological examination.  Id.  She firmly maintained that she never appeared agitated in Rosenberg's presence and she was never a threat to herself or others.  Id.

When Doe returned to Rosenberg's office, security officers were present.  Id.  Rosenberg told Doe she would be taken to the psychiatric emergency room so she could be evaluated.  Id.  Rosenberg claims Doe's delusion became so severe that Doe accused him of being an imposter.  Id.  Doe ran away again and was later found lying on the floor of the adjacent hospital building.  Id.  The supervising nurse in that building asked Rosenberg to sign an order permitting the use of four-point restraints, if necessary.  Id.  Doe was escorted to CPMC without the use of restraints.  Id.

At the CPMC psychiatric emergency room, Doe was seen by Dr. Anne Skomorossky and Dr. Lorraine Innes.  Id.  Both physicians certified Doe for involuntarily confinement after determining she was dangerous and no adequate alternate forms of treatment existed as required under New York Mental Hygiene Law ("MHL") §9.27.  Id.  Dr. Stan Arcow confirmed Drs. Skomorossky and Innes' determination and Doe was committed.  Id.  None of the physicians involved with Doe were state employees; CPMC was a private hospital licensed to provide emergency psychiatric services and treat mentally disabled persons.  Id.

The defendants all moved for summary judgment on the theory they were not state actors.  See Id.  Their motions for summary judgment were granted as the Court determined the defendants were not state actors under the state compulsion, close nexus/joint action or public function tests.  Id. at 348-358.

10

Applying the state compulsion test, this Court held in <u>Rosenberg</u>:

> Compliance with the procedures of the MHL, a statute that neither forces nor encourages involuntary commitments, does not convert private action into state action.  New York's involuntary commitment scheme puts in place due process safeguards for the protection of the person confronted with involuntary confinement—hence, the requirement of evaluations by more than one physician and the reminder to physicians that they consider alternate routes of treatment.  The actual decision of whether commitment is warranted, however, is left entirely to the sound medical judgment of the physicians.  Therefore, the actions of the Hospital Defendants cannot be attributed to the State under a theory of state compulsion.  <u>Doe v. Rosenberg</u> at 352.

The <u>Rosenberg</u> Court also held that the MHL does not create a sufficiently close nexus between the State and psychiatrists, such as Dr. Aldana-Bernier, to mandate their classification as state actors.  <u>Id.</u> at 352.  Citing the United States Supreme Court, the *Rosenberg* Court held "'the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.  Nor does the fact that the regulation is extensive and detailed…do so.' <u>Jackson</u>, 419 U.S. at 350 (citation omitted); <u>see</u> <u>Rockwell v. Cape Cod Hosp.</u>, 26 F.3d 254, 258 (1st Cir. 1994) (holding that private hospitals and physicians who involuntarily committed plaintiff under Massachusetts statute were not state actors, noting that state regulation, even if extensive, and receipt of federal funds do not establish state action); <u>Harvey v. Harvey</u>, 949 F.2d 1127, 1132 (11th Cir. 1992) (finding licensing and regulation insufficient to transform private hospitals into state actors for purposes of §1983 liability)." <u>Id.</u>

The purpose of the close nexus requirement is to ensure constitutional standards are only applied when the State is actually responsible for the specific conduct of which the plaintiff complains.  <u>Rosenberg</u> at 352; <u>See</u> <u>Blum</u>, 457 U.S. at 1004.  The

*Rosenberg* Court determined that simply because the MHL licenses, but does not influence, private physicians and hospitals to commit involuntary commitments, its relationship with private physicians and hospitals is insufficient to pass the close nexus/joint action test. Rosenberg, at 352.

The Rosenberg Court also determined that involuntary commitment pursuant to the MHL fails the public function test as the powers exercised by private physicians and hospitals are not the sort that were traditionally the exclusive prerogative of the State. Rosenberg; Jackson, 419 U.S. at 353.  A review of relevant history demonstrates involuntary commitment is not a function traditionally exclusive to the State.  The *Rosenberg* court addressed this at length, ultimately concluding "History reveals that involuntary commitment has long been a private remedy…" Rosenberg, 996 F. Supp. at 356-57 *aff'd* 166 F.3d at 508; See McGugan 752 F.3d 224; see also, *Sybalski v. Indep. Group Home Living Program, Inc.*, 546 F.3d 255, 359-60 (2d Cir. 2008); Rockwell v. Cape Cod Hosp., 26 F.3d 254, 258 (1st Cir. 1994); Harvey v. Harvey, 949 F.2d 1127, 1131 (11th Cir. 1992).

In the instant action, no evidence has been unearthed or elicited that Dr. Aldana-Bernier was employed by the State, that she was coerced or encouraged to involuntarily hospitalize Schoolcraft by the State, that the State was a joint participant in Dr. Aldana-Bernier's decisions, or that Dr. Aldana-Bernier engaged in conduct that is exclusively the prerogative of the State.  Similarly, there is no evidence Dr. Aldana-Bernier entered into or was part of a conspiracy with any state actors, such as the New York City Police Department, to involuntarily confine plaintiff.  Accordingly, Plaintiff has failed to establish state action on the part of Dr. Aldana-Bernier.  The allegations as to whether she

performed an inadequate evaluation prior to committing Plaintiff are irrelevant to a determination under § 1983.  See 42 U.S.C. §1983.

The *Rosenberg* court unambiguously ruled that when a decision to commit a patient is "left entirely to the sound medical judgment of physicians", no state action can be found.  Rosenberg, 996 F. Supp. at 352; see also, Blum, 457 U.S. at 1008 (holding that a state is not liable for determinations that "ultimately turn on medical judgments made by private parties according to professional standards that are not established by the State.").  How plaintiff was transported to the hospital and the presence of police officers in the medical emergency room are irrelevant so long as the examination performed by Dr. Aldana-Bernier was free from state influence.  Here, Plaintiff has failed to adduce any state involvement in connection with Dr. Aldana-Bernier's examination.

Dr. Aldana-Bernier's actions in this case were purely private and based on her own medical judgment.  She did not consult with any police officer in relation to formulating and rendering a medical opinion concerning plaintiff.  Similarly, Dr. Aldana-Bernier was not involved in any capacity in bringing plaintiff to Jamaica Hospital.  Her medical evaluation of plaintiff has no connection to any actions taken by the police.  As her terminations were left "entirely to [her] sound medical judgment," the possibility of state influence is foreclosed.

Plaintiff's own psychiatric expert, Dr. Roy Lubit, claims it was evidence of medical malpractice that Dr. Aldana-Bernier failed to contact anyone from the NYPD, including IAB, to discuss plaintiff's allegations.  Plaintiff cannot claim Dr. Aldana-Bernier was a

state actor for purposes of §1983, but also claim she committed malpractice by failing to speak with anyone from the NYPD concerning plaintiff.

Additionally, there is no evidence Dr. Aldana-Bernier was involved in some sort of conspiracy with anyone from the New York City Police Department concerning plaintiff. It is impossible for two parties to be involved in a conspiracy together to commit plaintiff against his will when they never communicate with each other, let alone about involuntarily committing plaintiff. Further, in his Second Amended Complaint, plaintiff alleges the NYPD defendants conspired to, and intentionally falsified evidence, it submitted to the Jamaica Hospital staff for the sole purpose of involuntarily committing plaintiff. (Ex. A to Callan Decl. at ¶ 210). If Dr. Aldana-Bernier was involved in some sort of conspiracy with the NYPD, there would be no need for the NYPD to falsify evidence in order to trick Dr. Aldana-Bernier into involuntarily committing plaintiff.

As the Second Circuit in Hogan held, a private physician's conduct does not fall within any of the tests for determining when private conduct can be attributed to the state. Hogan 346 Fed. Appx. at 629; See Doe v. Rosenberg, 996 F. Supp. 343 (S.D.N.Y. 1998). The potential factual differences, to the extent they exist, between the instant matter and the facts in McGugan, Rosenberg, Hogan, and Jane Doe v. Harrison, 254 F. Supp.2d 338 (S.D.N.Y. 2003), are immaterial to the determination of whether Dr. Aldana-Bernier was a state actor.

The recent Second Circuit decision in McGugan v. Aldana-Bernier explicitly reaffirms the reasoning set forth in Rosenberg and also clarifies that the involvement of police in the process that culminates in an involuntary commitment does not turn a

private physician into a state actor.  See <u>McGugan v. Aldana-Bernier</u>, 752 F.3d 224 (2d Cir. 2014).

In <u>McGugan</u>, plaintiff boarded a red-eye flight from San Francisco to New York City, John F. Kennedy Airport, on July 24, 2008.  <u>Id.</u> at 227.  McGugan began coughing uncontrollably and asked to be moved to a less crowded area of the plane to avoid bothering nearby passengers, but a flight attendant denied her request.  <u>Id.</u>  McGugan repeated her request "using stronger language."  <u>Id.</u>  Rather than grant her request, the flight attendant moved another passenger from her row leaving her in a row by herself. McGugan fell asleep and did not wake up until after the plane had landed and other passengers had exited.  <u>Id.</u>  When she woke up, three police officers were standing over her.  <u>Id.</u>  They took her to an airport police station for questioning; she was handcuffed to a wall.  <u>Id.</u>

After the officers finished questioning McGugan, an unidentified man advised her she would be taken to Jamaica Hospital Medical Center ("JHMC").  <u>Id.</u>  JHMC is a private hospital receiving federal funds.  <u>Id.</u>  It is licensed to provide psychiatric services by the New York State Office of Mental Health.  <u>Id.</u>  During the trip to JHMC, one of two government officials injected McGugan with medication without her consent after allegedly erroneously determining she was a danger to others.  <u>Id.</u>  The medication sedated her; she woke up restrained to a hospital bed in JHMC.  <u>Id.</u>

When McGugan arrived at the emergency room still sedated, Dr. Bacares wrote an order for the forcible administration of medication on an immediate basis.  <u>Id.</u>  Dr. Mahmudur also wrote an order permitting forcible administration of medication on an

"'as needed[] basis for severe agitation.'"  Id.  As a result of this order, McGugan was injected multiple times with a combination of Haldol, Benadryl and Ativan.  Id.

Starting on July 25, 2008, JHMC staff attempted to gather information from McGugan.  Id. at 227-28.  They learned McGugan was dating someone named "Chris." Id. at 228.  For reasons not explained in McGugan's complaint, JHMC staff mistakenly believed McGugan was referring to "Kris Dickman", an ex-boyfriend.  Id.  JHMC staff called Dickman who told them he was not dating McGugan and that she had thrown a metal object at him, which compelled him to seek medical attention.  Id.  Based on this conversation, the clinical staff believed McGugan "was suffering from delusions of a romantic nature."  Id.

Dr. Aldana-Bernier performed a psychiatric evaluation on McGugan while she was still sedated.  Id.  Based on this evaluation, Dickman's statement and McGugan's apparent uncooperative refusal to answer questions, Dr. Aldana-Bernier certified McGugan as having a mental illness likely to result in substantial harm to herself or others.  Id.  As a result, McGugan was subjected to involuntary admission to JHMC under MHL § 9.39.  Id.

McGugan alleged Dr. Aldana-Bernier's assessment of her dangerousness was not "minimally competent" as Dr. Aldana-Bernier failed to ask McGugan relevant questions, failed to recognize McGugan's "uncooperative" behavior was only the result of heavy sedation and failed to perform an appropriate risk assessment.  Id.  McGugan also alleged Dr. Aldana-Bernier "performed a deficient assessment because she stereotyped McGugan as dangerous based on her perception that McGugan was mentally ill."  Id.

Dr. Hovanesian certified McGugan for further confinement under §9.39, on July 26, 2008.  Id.  Dr. Hovanesian determined McGugan was a danger to herself or others on the basis of Dickman's statements.  Id.  McGugan was confined at JHMC until July 30, 2008.  Id.  She claims that if any of the defendants performed their duties properly, they would have realized she was never a danger to herself or others and should never have been certified for forcible sedation or involuntarily hospitalization.  Id.

McGugan offered four arguments for the Second Circuit to distinguish or overrule *Doe v. Rosenberg*'s holding "that private health care professionals and a private hospital did not engage in state action when they involuntarily committed Doe to the psychiatric ward of Columbia Presbyterian Medical Center".  Id. at 229; Doe v. Rosenberg, 166 F.3d 507, 508 (2d Cir. 1999).  The Second Circuit determined all four of the proffered reasons were meritless.  McGugan at 229-30.

The first reason McGugan offered was that in her case, unlike *Rosenberg*, she was involuntarily hospitalized after state actors transported her to JHMC.  Id. at 230.  The *McGugan* court held that these allegations, without more, could not affect the state action analysis.  Id.  The Second Circuit noted McGugan did not allege the state actors requested, much less compelled, JHMC or its staff to involuntarily hospitalize her.  Id.  Further, the Second Circuit could not "discern any other reason why the conduct of private actors should become attributable to the state merely because it follows in time the conduct of state actors."  Id.

The Second Circuit's complete denial of this reason is applicable to the instant matter.  Id.  Even if plaintiff claims that he was taken to JHMC on orders of the New

York City Police Department, that fact is irrelevant to state action analysis.  Id.  Further, there is not a scintilla of evidence produced that any state actors, including the NYPD, requested or compelled Dr. Aldana-Bernier to hospitalize plaintiff.  Id.  Plaintiff's claims for medical malpractice, including the opinion by his own psychiatric expert, Dr. Roy Lubit, indicate Dr. Aldana-Bernier committed malpractice due to her failure to speak with anyone at the police department about plaintiff's claims.  Id.  The Second Circuit clearly holds that Dr. Aldana-Bernier's actions are not attributable to the state simply because they followed the actions of the NYPD.  Id.

McGugan's second reason to overturn *Rosenberg*, was that, unlike in *Rosenberg*, she was hospitalized pursuant to a "complex scheme for evaluating, detaining and treating people with mental illness."  Id.  The Second Circuit disagreed and held the plaintiffs in *Rosenberg* and *McGugan* were involuntarily hospitalized pursuant to a system where hospitals, subject to extensive regulation by the state, were permitted to detain patients certified to require involuntary treatment.  Id.  The facts and circumstances in the instant matter are not distinguishable from *Rosenberg* or *McGugan*.  Id.  Nothing in the present case affects state action analysis or indicates the state had so close a nexus to the private conduct that "it [could] be said that the State is responsible for the specific conduct of which the plaintiff complains."  McGugan at 230 quoting Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982).

McGugan's third reason was that *Rosenberg* is no longer binding precedent because of three intervening decisions.  Id.  The Second Circuit held that none of the three cases cited by McGugan, including one from another circuit, cast any doubt on the validity of Rosenberg.  Id.

The last reason offered by McGugan was that *Rosenberg* was a flawed decision.  Id. at 230-31.  The Second Circuit did not believe McGugan identified any fatal flaws in Rosenberg.  Id. at 230.

The facts in the instant matter are not sufficient to create a different outcome in this matter than those reached in Rosenberg, Hogan or McGugan.

In Jane Doe v. Harrison, 254 F. Supp. 2d 338 (S.D.N.Y. 2003), plaintiff called EMS after experiencing signs of stress.  Id. at 341.  EMS took her to a private hospital where she was evaluated.  Id.  The private hospital physicians determined she was a danger to herself and involuntarily admitted her pursuant to § 9.39 of the Mental Health Law.  Id.  The Court, after discussing the three tests used to determine when private conduct can be properly considered state action, held that "under all three of these tests, involuntary commitment by a private party pursuant to state statute does not convert private conduct into state action for purposes of section 1983."  Id. at 342.  The court went on to state that the facts of the case were similar to *Rosenberg* and thus were subject to the same holding of non-state action.  Id.  The facts of *Harrison* are very similar to those in the instant matter.  See Harrison.  As such, it is clear that Dr. Aldana-Bernier's medical decision to admit Plaintiff to a private hospital pursuant to § 9.39 of the Mental Hygiene Law is in no way considered state action for the purposes of § 1983.

There is no evidence that the New York City Police Department participated in Dr. Aldana-Bernier's evaluation of Mr. Schoolcraft or that her decision was in any way influenced directly by the police.  To the contrary, Mr. Schoolcraft's own psychological

expert, Dr. Roy Lubit, claims in his expert report and during his deposition that Dr. Aldana-Bernier's failure to contact IAB or other officers within the NYPD constitutes malpractice.  Plaintiff cannot both claim that a failure to contact or seek information from the NYPD constitutes medical malpractice and that Dr. Aldana-Bernier was a state actor when she made her decision to keep Mr. Schoolcraft at Jamaica Hospital for further evaluation.

The Second Circuit has clearly held that private physicians and hospitals do not become state actors when they determine an individual should be involuntarily hospitalized on an emergency basis pursuant to Section 9.39 of New York's Mental Hygiene Law.  See, e.g., Johnson v. Unity Health Sys., 08-CV-6258, 2010 U.S.Dist. LEXIS 30727 (W.D.N.Y. March 30, 2010); Edwards v. Baptiste, 06-CV-00952, 2006 U.S. Dist. LEXIS 89147 (D.Conn. December 11, 2006).  MHL §9.39 does not encourage involuntary commitment.  See Mental Hygiene Law §9.39.  Therefore, there is no state compulsion to involuntarily commit patients.

Dr. Aldana-Bernier has established she is entitled to summary judgment to dismiss plaintiff's cause of action under §1983.  Dr. Aldana-Bernier is not a state actor and she did not operate under the color of state law.  There is no close nexus between the State and Dr. Aldana-Bernier's decision concerning plaintiff.  The involuntary admission of patients has traditionally been the purview of private actors and has not traditionally been the prerogative of the state.  There is no evidence any state actor exercised coercive power or has provided such significant encouragement, either overt or covert, that the individual's action can only be seen as that of the State.  Dr. Aldana-

Bernier did not have any interactions with anyone from the NYPD, or any other governmental agency, in evaluating plaintiff.

## POINT III

**THERE IS NO EVIDENCE DR. ALDANA-BERNIER'S ALLEGED ACTIONS AND/OR OMISSIONS ARE SUFFICIENT TO ESTBALISH A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONIAL DISTRESS UNDER NEW YORK STATE LAW**

Plaintiff has not adduced sufficient evidence to sustain a claim for the intentional infliction of emotional distress under New York law.

To establish a claim of intentional infliction of emotional distress under New York law, a plaintiff must prove: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." Medcalf v. Walsh, 938 F. Supp. 2d 478, 488 (S.D.N.Y. 2013) (citing Howell v. New York Post Co., 81 N.Y.2d 115 (N.Y. 1993)).  In New York, "the tort of intentional infliction of emotional distress is extremely disfavored. Only the most egregious conduct has been found sufficiently extreme and outrageous to establish this tort." Id.  New York courts have recognized claims for intentional infliction of emotional distress "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Stuto v. Fleishman, 164 F.3d 820 (2d Cir. N.Y. 1999). This strict standard has been "set deliberately high to ensure that a plaintiff's claim of emotional distress is genuine and to dissuade litigation where only bad manners and hurt feelings are involved." Thai v. Cayre Grp., 726 F. Supp. 2d 323, 336-37 (S.D.N.Y. 2010).  "A court may determine, as a matter of law, that the alleged behavior is not

sufficiently outrageous to warrant the imposition of liability." <u>Medcalf</u> at 488 (citing <u>Howell</u>).

There is simply no evidence to support plaintiff's claim for intentional infliction of emotional distress.   Dr. Aldana-Bernier's decision, based on her sound medical judgment, is not conduct so outrageous in character as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.  <u>See</u> <u>Stuto v. Fleishman</u>, 164 F.3d 820.  Plaintiff also failed to develop any evidence that Dr. Aldana-Bernier intended to cause, or disregarded to a substantial probability of causing, severe emotional distress to plaintiff.   Dr. Aldana-Bernier's medical decision concerning plaintiff was based on her review of notes created by prior treating psychiatrists, doctors and nurses who treated plaintiff.  She carefully weighed all the evidence and made a decision.  Although plaintiff may disagree with the basis and correctness of Dr. Aldana-Bernier's decision, he has failed to demonstrate it rose to the level of satisfying a cause of action for intentional infliction of emotional distress.

**POINT IV**

**AS DR. ALDANA-BERNIER HAS ESTABLISHED SHE IS ENTITLED TO THE DISMISSAL OF PLAINTIFF'S §1983 CLAIMS, THE REMAINING STATE CLAIMS SHOULD BE REMANDED TO STATE COURT**

"[W]hen all bases for federal jurisdiction have been eliminated from a case so that only pendent state claims remain, the federal court should ordinarily dismiss the state claims."  <u>Clorofilla v. Town of New Castle</u>, 106 Fed. Appx. 90, 91 (2d Cir. N.Y. 2004)(citing <u>Baylis v. Marriott Corp.</u>, 843 F.2d 658 (2d Cir. 1988)).  "[W]hen all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity --

will point toward declining to exercise jurisdiction over the remaining state-law claims."

<u>Baylis</u> at 665.  In cases where the state claims originally reached the federal forum by removal from a state court, Congress has mandated that "the district court remand the action if at any time before final judgment the basis for federal jurisdiction ceases to exist . . . ." <u>Villano v. Kohl's Dep't Stores, Inc.</u>, 362 F. Supp. 2d 418, 420 (S.D.N.Y. 2005) (citing 28 U.S.C. § 1447(c)).

As Dr. Aldana-Bernier has demonstrated she is entitled to dismissal of all of plaintiff's claims under §1983, there are no remaining federal claims before the Court. As such, plaintiff's remaining state claims should be remanded to New York State Supreme Court.

## <u>POINT V</u>

### PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT AGAINST DR. ALDANA-BERNIER MUST BE DISMISSED AS THE COURT DID NOT GRANT HIM PERMISSION TO AMEND HIS COMPLAINT TO INCLUDE A CLAIM OF RELIEF FOR DECLARATORY JUDGMENT AGAINST HER

It is undisputed that plaintiff did not include a claim for declaratory judgment as a form of relief in his Second Amended Complaint.  (Callan Decl. Exhibit A).  Judge Sweet's Opinion and Order partially granting plaintiff's motion to amend did not grant the motion to amend the complaint to include a claim for declaratory judgment against Dr. Aldana-Bernier.  (Callan Decl. Exhibit F).  As Judge Sweet wrote in his Opinion and Order:

> Plaintiff moves, over JHMC's objection, for leave to add a claim seeking declaratory and injunctive relief, specifically, a declaration that the City Defendants' conduct was illegal and an injunction requiring JHMC and the City Defendants to expunge from Schoolcraft's medical files any 'record or a finding

that Officer Schoolcraft was mentally ill, dangerous or otherwise a person who required involuntary commitment to a psychiatric ward.'  Pl's Mem. In Supp't 15. (Callan Decl. Exhibit F at pg 13).

As the decision makes clear, the motion to amend to add a claim of relief for declaratory judgment was limited to a claim against the City and for an injunction against the City and Jamaica Hospital.   (Callan Decl. Exhibit at pg 13).   Plaintiff's attempt to seek declaratory relief against Dr. Aldana-Bernier was not granted by the Court, to the extent he actually even sought such relief, and therefore must be dismissed.   To the extent plaintiff claims he moved for declaratory relief against Dr. Aldana-Bernier, and Judge Sweet actually granted that portion of his motion, then the claim for declaratory relief must be dismissed as to all of plaintiff's claims under §1983 and intentional infliction of emotional distress.

## <u>CONCLUSION</u>

For the foregoing reasons, Dr. Aldana-Bernier respectfully requests the Court grant her partial motion for summary judgment pursuant to FED. R. CIV. P. 56 in its entirety as well as for other relief as deemed appropriate by the Court.

Dated:     New York, New York
           January 30, 2015

                         Respectfully Submitted,

                         CALLAN, KOSTER, BRADY, BRENNAN & NAGLER, LLP

                         __/s/__Paul_F._Callan_____

                         By: PAUL F. CALLAN, ESQ. (PFC2005)
                         Of Counsel
                         Attorneys for Defendant

DR. LILIAN ALDANA-BERNIER
One Whitehall Street, 10th Floor
New York, New York 10004
(212) 248-8800
pcallan@ckbblaw.com