10-CV-6005 (RWS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADRIAN SCHOOLCRAFT,

Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

Defendants.

## MEMORANDUM OF LAW IN OPPOSITON TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

*Matthew J. Koster*
*Callan, Koster, Brady & Nagler, LLP*
*Attorney for Defendant*
*Dr. Lilian Aldana-Bernier*
*One Whitehall Street*
*10th Floor*
*New York, New York 10004*

CALLAN, KOSTER,
BRADY & NAGLER, LLP
COUNSELORS AND
ATTORNEYS AT LAW
One Whitehall Street
New York, New York 10004
212-248-8800

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................……............... ii

PRELIMINARY STATEMENT ..........................................................…............... 1

FACTUAL SUMMARY ........................................................................…............ 1

PROCEDURAL HISTORY ................................................................…............... 4

ARGUMENT

      POINT I

               STANDARD FOR SUMMARY JUDGMENT…................................. 9

      POINT II

               PLAINTIFF HAS FAILED TO ESTABLISH HE IS ENTITLED TO A
               FINDING OF LIABILITY ON HIS CLAIM FOR UNLAWFUL
               IMPRISONMENT AS HE HAS NOT DEMONSTRATED HIS
               CONFINEMENT WAS OTHERWISE PRIVILEGED .................... 10

      POINT III

               PLAINTIFF HAS FAILED TO ESTABLISH DR. ALDANA-BERNIER
               COMMITTED MEDICAL MALPRACTICE PURSUANT TO HER
               COMMITTAL OF PLAINTIFF PURSUANT TO MENTAL HYGIENE
               LAW §9.39 ................................................................................….... 16

      POINT IV

               PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON CAUSES
               OF ACTION UNDER FEDERAL LAW MUST BE DENIED AS
               PLAINTIFF HAS FAILED TO ESTABLISH DR. ALDANA-BERNIER
               IS A STATE ACTOR AS REQUIRED BY §1983 .................….... 20

      POINT V

               PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT FOR
               NEGLIGENCE *PER SE* MUST BE DENIED AS PLAINTIFF HAS
               FAILED TO PLEAD A CAUSE OF ACTION FOR NEGLIGENCE
               *PER SE* IN HIS THIRD AMENDED COMPLAINT ..................…... 22

CONCLUSION...........................................................................................…..... 23

## TABLE OF AUTHORITIES

**<u>Pages</u>**

<u>Amsler v. Verrilli</u>
119 A.D.2d 786, 501 N.Y.S.2d 441 (2d Dept. 1986) ......................................................... 16

<u>Beckman v. United States Postal Serv.,</u>
79 F.Supp.2d 394 (S.D.N.Y. 2000)........................................................................... 22

<u>Berk v. St. Vincent's Hosp. & Med. Ctr.,</u>
380 F.Supp.2d 334 (S.D.N.Y. 2005)....................................................................... 17-18

<u>Broughton v. State,</u>
37 N.Y.2d 451,335 N.E.2d 310 (1975) ........................................................................ 11

<u>Capobianco v. City of New York,</u>
422 F.3d 47 (2d Cir. 2005) ................................................................................... 17

<u>Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.,</u>
963 F.Supp. 1342 (S.D.N.Y. 1997) ............................................................................ 22

<u>Chulla v. DiSteafano,</u>
242 A.D.2d 657, 662 N.Y.S.2d 570 (2d Dept. 1997) ...................................................... 17

<u>Cornell Research Found., Inc. v. Hewlett-Packard Co.,</u>
2007 U.S.Dist. LEXIS 89637 (N.D.N.Y. 2007)............................................................... 17

<u>DeMarco v. Sadiker,</u>
897 F.Supp 693 (E.D.N.Y. 1995) .......................................................................... 11

<u>DeMarco v. Sadiker,</u>
952 F.Supp 134 (E.D.N.Y. 1996) ...................................................................... 11-12

<u>Doe v. Rosenberg,</u>
996 F. Supp. 343 (S.D.N.Y 1998) ........................................................................... 20-21

<u>Doe v. Rosenberg,</u>
166 F.3d 507 (2d Cir. 1999) .................................................................................. 20

<u>Edwards v. Baptiste,</u>
06-CV-00952, 2006 U.S. Dist. LEXIS 89147 (D.Conn. December 11, 2006) ............... 21

Gamiel v. University Hospital,
216 A.D.2d 80, 626 N.Y.S.2d 74 (1st Dept. 1995) ........................................................ 17

Hogan v. A.O. Fox Mem. Hosp.,
346 Fed. Appx. 627 (2d Cir. 2009) ............................................................................. 20

Johnson v. Unity Health Sys.,
08-CV-6258, 2010 U.S.Dist. LEXIS 30727 (W.D.N.Y. March 30, 2010) ........................ 21

Koeppel v. Park,
228 A.D.2d 288, 644 N.Y.S.2d (1st Dept. 1996) ........................................................... 17

McGugan v Aldana-Bernier,
752 F.3d 224 (2d Cir 2014) ...................................................................................... 20

Nestorowich v. Recata,
97 N.Y.2d 393, 740 N.Y.S.2d 668 (2002) ................................................................... 17

Rubenstein v. Benedictine Hosp.,
790 F.Supp. 396 (N.D.N.Y.1992) ............................................................................... 11

Rodriguez v. City of New York,
72 F.3d 1051 (2d Cir. 1995) ....................................................................... 10, 13-14, 18

Schoch v. Dougherty,
122 A.D.2d 46, 504 N.Y.S.2d 206 (3rd Dept 1986) ...................................................... 17

Silver v. City University,
947 F.2d 1021 (2d Cir. 1991) ................................................................................. 10-11

Spensieri v. Lasky,
94 N.Y.2d.231, 701 N.Y.S.2d 689 (1991) ................................................................... 16

## Statutes

42 U.S.C. §1983 .................................................................................................... 20

Fed. R. Civ. P. 56(e) ................................................................................................. 9

New York Mental Hygiene Law § 9.39 ............................................................. 13-14, 18

## PRELIMINARY STATEMENT

Plaintiff has failed to establish that there is no genuine issue of material fact that Dr. Aldana-Bernier failed to adhere to the requirements of the New York Mental Hygiene Law 9.39 when she certified that the plaintiff met the criteria for involuntary hospitalization.

As an initial matter, it is not clear the specific cause of action on which the plaintiff seeks summary judgment.   To the extent the Court determines plaintiff is moving for summary judgment based on his claims pursuant to §1983, those claims must be denied as plaintiff has not established that Dr. Aldana-Bernier is a state-actor under the statute.   If the Court determines that the plaintiff is moving for summary judgment on his New York State claim for false imprisonment, this portion of the motion must be denied as Dr. Aldana-Bernier's actions are privileged.   If the Court concludes he moved for summary judgment on his claim for medical malpractice pursuant to New York State law, then this portion of the motion must be denied as plaintiff has failed to establish that there is no genuine issue of material fact that Dr. Aldana-Bernier committed malpractice.   Lastly, the portion of plaintiff's motion for summary judgment on negligence *per se* must be denied as he has failed to plead such a cause of action in his Third Amended Complaint.

## FACTUAL SUMMARY

Plaintiff bases his motion for summary judgment on limited "evidence".   Plaintiff claims that on November 3, 2009, Dr. Aldana-Bernier ordered plaintiff's "involuntary hospitalization, even though there was nothing in the chart that suggested that [plaintiff]

1

was dangerous." Plaintiff's 56.1 Statement at ¶106. This paragraph is not supported by a single citation to medical records, deposition testimony or any other evidence.

Plaintiff claims "there was nothing in the chart that suggested that [plaintiff] was dangerous to himself or others" based on the expert report of his psychiatric expert, Dr. Roy Lubit in pages 13 and 14. (Plaintiff's Motion Exhibit 30). The sections of Dr. Lubit's report cited by plaintiff in support his of motion for summary judgment do not actually support this proposition. (Plaintiff's Motion Exhibit 30 at pgs 13-14). The portions of the report on pages 13 and 14 are part of a section in the report entitled "Failure to Make Reasonable Efforts to Gather Crucial Information". (Plaintiff's Motion Exhibit 30 at pg 12). The cited portions do not actually argue that there was nothing in the chart to suggest plaintiff was a danger to himself or others.

Plaintiff also makes an additional argument that Dr. Aldana-Bernier admitted plaintiff on the ground "that any possible or potential risk of dangerousness was a sufficient basis for [her] commitment decision." Plaintiff 56.1 Statement at ¶110. This time, plaintiff actually does cite some evidence in support of this claim by citing to her deposition transcript, pages 248-249. He does not cite anything else to support his contention, which forms the entire basis for his motion for summary judgment.

Dr. Aldana-Bernier's testimony on pages 248-249 reads as follows:

do you mean?

Q. Sure. Well, you used the word "potential." I would like to know what you mean by potential.

A. If you think of the navy yard disaster, was he an officer or an army man? He was so quite, no one ever found out what was going on with him. So what

2

happened then? Or if you look at all of those - - the Range Rover. Who are all of these people that caused that? They are all police officers.

So if I think then I have to make sure that when I see a patient in the ER, I have to think in the future that there will be no disaster, there will be no destruction, or no one will get harmed when they were discharged from the ER.

Q. I was asking about what you meant by potential.

A. That's the potential.

Q. So if there is any potential at all, you want to make sure that the patient is safe, correct?

A. Correct.

Q. And if there is any potential at all, you want to make sure the community is safe, correct?

A. That's correct.

Q. And if there is any potential at all, you were going to admit Mr. Schoolcraft, correct?

MR. LEE: Objection to form.

A. With all of those reasons, yes, I would have to admit him.

Q. When you admitted him to the emergency room, there were certain rules and regulations - -

MR. SUCKLE: Withdrawn.

Q. When he was admitted to the psych floor, there were certain rules and regulations in the psych ward, correct, about clothes they wear, what hours visitors can come, correct?

A. Yes.

(Dr. Aldana-Bernier's deposition transcript is annexed to Koster Decl. as Exhibit A; Exhibit A pg 248 ln 2-pg 249 ln 25).

This entire citation does not include the words risk or dangerousness.

In support of his motion for summary judgment, Plaintiff fails to cite significant portions of Dr. Aldana-Bernier's testimony concerning her decision to involuntarily

3

confine plaintiff. Further, plaintiff never asked Dr. Aldana-Bernier whether the "potential" testimony that he cites was Dr. Aldana-Bernier articulating that plaintiff demonstrated the potential for a substantial risk. Plaintiff never asked Dr. Aldana-Bernier whether she used a potential risk standard in lieu of a substantial risk standard.

Dr. Aldana-Bernier testified that she was aware of the standards of N.Y. Mental Hygiene Law §9.39 and followed the required standards. A reading of her complete transcript, rather than a two page snapshot, reveals that when Dr. Aldana-Bernier discussed "potential", she was referring to the "potential" of a substantial risk. At worst, for a summary judgment motion, Dr. Aldana-Bernier is entitled to having all inferences decided in her favor for purposes of deciding the motion. Under this standard there is certainly a question of fact as to whether Dr. Aldana-Bernier used the required standard to assess plaintiff pursuant to New York State Mental Hygiene Law 9.39.

**Dr. Aldana-Bernier Testimony**

Dr. Aldana-Bernier is familiar with the Mental Hygiene Laws for involuntarily admitting patients; Mental Hygiene Law §9.39 concerns emergency involuntary admissions. (Exhibit A at pg 69 ln 22-pg 71 ln 4). Dr. Aldana-Bernier is familiar with the procedures for involuntarily admitting a patient to a hospital. (Exhibit A at pg 71 lns 5-16).

Dr. Aldana-Bernier has committed numerous individuals pursuant to Mental Hygiene Law §9.39. (Exhibit A at pg 71 ln 17-pg 72 ln 22). Dr. Aldana-Bernier understands that procedures of Mental Hygiene Law §9.39 must be complied with to involuntarily commit someone, including plaintiff. (Exhibit A at pg 79 lns 11-23). Dr.

4

Aldana-Bernier's understanding of Mental Hygiene Law §9.39 is that a patient can be admitted if they are a danger to themselves; a danger to society; they are psychotic; not able to take care of themselves; if they are depressed and not able to take care of themselves, and/or if they are suicidal. (Exhibit A at pg 79 ln 24-pg 80 ln 12). A mental status examination is part of the procedure for admitting a patient pursuant to Mental Hygiene Law §9.39. (Exhibit A at pg 80 lns 13-17).

A person can be held if they are depressed and not able to take care of themselves, such as not eating, sleeping, or functioning. This patient could be suicidal and a danger to themselves. (Exhibit A at pg 80 ln 18-pg 81 ln 9). To admit someone under Mental Hygiene Law §9.39, Dr. Aldana-Bernier has to review previous hospital records; contact a psychiatrist if the person is seeing one; contact a medical doctor only if the patient says they want their medical doctor to be contacted. (Exhibit A at pg 81 ln 23-pg 82 ln 22). Dr. Aldana-Bernier also has to fill out the Mental Hygiene Law §9.39 form. (Exhibit A at pg 83 lns 11-18). This form is not for Dr. Aldana-Bernier's benefit; rather it is for the benefit of the patient and society as a whole. (Exhibit A at pg 84 lns 9-12).

Plaintiff was first examined in the emergency room by Dr. Lwin. Dr. Aldana-Bernier reviewed Dr. Lwin's note. Dr. Lwin determined plaintiff was paranoid about his supervisors and was agitated, uncooperative, verbally abusive in the medical emergency room. They needed to determine why he was so agitated and acting in a bizarre manner. The bizarre behavior included plaintiff barricading himself in his home, not opening the door and having to have his apartment broken into. Dr. Lwin determined plaintiff needed further evaluation. (Exhibit A at pg 87 ln 11-pg 93 ln 4).

A patient can be held pursuant to Mental Hygiene Law §9.39 if they are behaving bizarrely and are potentially psychotic; such behavior can make a patient dangerous to themselves or others. (Exhibit A at pg 93 ln 5-pg 94 ln 13).

Dr. Aldana-Bernier explicitly denied that plaintiff was committed under Mental Hygiene Law §9.39 solely because he was acting bizarrely. Plaintiff's bizarre behavior was simply one component of his general mental state. (Exhibit A at pg 94 lns 14-24). In reviewing Dr. Lwin's note, Dr. Aldana-Bernier believed there was a question of whether plaintiff was going to hurt himself or if was a danger to himself because he was agitated, exhibited bizarre behavior and barricaded himself in his apartment. (Exhibit A at pg 94 ln 25-pg 95 ln 20).

Dr. Aldana-Bernier was examining plaintiff's behavior not just at that particular moment, but also his prior behavior, including his barricading himself in his apartment. (Exhibit A at Pg 95 lns 8-20). Dr. Patel, her supervisor, signed Dr. Lwin's note "I concur with the above doctor's treatment recommendations." (Exhibit A at pg 99 lns 16-19).

A psychiatric disorder is one of the categories of diagnosis wherein a patient is not in touch with reality. This can manifest as symptoms such as agitation, aggressive behavior, delusions, hallucinations and impairment of reality testing. (Exhibit A at pg 99 ln 20-pg 100 ln 4). It was indicated plaintiff had a conflict with his supervisor. (Exhibit A at pg 100 ln 18-pg 101 ln 2).

Mr. Schoolcraft was also examined by Dr. Slowick in the emergency room. Dr. Aldana-Bernier reviewed his note. Dr. Slowick's note indicated plaintiff was guarded and not cooperative; did not know why he could not carry a gun; and that his

6

supervisors did something to him. (Exhibit A at pg 117 In 23-pg 119 In 7). Being paranoid means the person had a false belief about what is occurring in their environment that is not in agreement with the culture; someone will say they feel they are being watched or followed; somebody saying there is a conspiracy against them; if someone will say someone is talking about them. These are various forms of paranoia, jealousy and delusions. (Exhibit A at pg 135 In 19-pg 136 In 6).

Plaintiff was also examined by Dr. Tariq and his diagnosis was also reviewed by Dr. Aldana-Bernier. Dr. Tariq diagnosed plaintiff as paranoid. (Exhibit A at pg 136 Ins 7-20). The nursing assessment indicated plaintiff was brought in by the NYPD after he was deemed paranoid and a danger to himself by his police sergeant. (Exhibit A at pg 143 Ins 4-25). Dr. Aldana-Bernier reviewed this nursing assessment and it was something she considered in making her determination regarding plaintiff. (Exhibit A at pg 144 In 25-pg 146 In 4).

Pursuant to Mental Hygiene Law §9.39, Dr. Aldana-Bernier had to make her own evaluation of plaintiff. (Exhibit A at pg 146 Ins 5-11). Her assessment of plaintiff was based on the totality of the notes as well as her own assessment of plaintiff. (Exhibit A at pg 146 In 19-pg 147 In 11). Dr. Aldana-Bernier sought a second opinion of her assessment of plaintiff. (Exhibit A at pg 147 In 25-pg 149 In 16).

Dr. Aldana-Bernier's opinion that plaintiff should be admitted pursuant to Mental Hygiene Law §9.39 was based on the events at his apartment, including barricading himself in his apartment; acting bizarrely; displaying agitation in the emergency room; plaintiff's occupation as a police officer; his access to guns even though his gun had

7

been taken away; his delusions; and the increased chance of damage plaintiff could cause based on his training and occupation as a police officer. (Exhibit A at pg 149 ln 17-pg 151 ln 3). When she personally evaluated plaintiff, he displayed paranoia by claiming he was being set up by various police officers who were conspiring against him; paranoia is a form of psychosis; he also displayed persecutory delusions. (Exhibit A at pg 172 lns 6-22; pg 194 lns 18-24).

Plaintiff's paranoia was manifested by his claims that there was a conspiracy against him. He also believed he was being persecuted by his superiors and his co-workers. (Exhibit A at pg 195 ln 21-pg 196 ln 17). Plaintiff was a threat to cause physical harm to himself or others because he was a police officer talking about conspiracies, had access to weapons, had to be brought from the apartment where he barricaded himself in, acting bizarre and agitated at this home and then in the emergency room. (Exhibit A at pg 196 ln 18-pg 197 ln 18; pg 197 ln 23-pg 199 ln 3). Dr. Aldana-Bernier stated all relevant information has to be taken into account and the decision to commit pursuant to Mental Hygiene Law §9.39 is not just based on a single isolated second at the exact time the decision is made. (Exhibit A at pg 198 ln 14-pg 199 ln 3). Plaintiff consistently displayed paranoia that there was a conspiracy against him by numerous police officers. (Exhibit A at pg 199 lns 16-24).

In the "Emergency Admission Section 9.39 Mental Hygiene Law", in the section Record of Admission, Dr. Aldana-Bernier wrote "Patient is a danger to himself. Currently psychotic and paranoid. Would benefit from inpatient stabilization." (Exhibit A at pg 216 ln 14-pg 217 ln 14; Jamaica Hospital Records are annexed to Koster Decl. as Exhibit D; Exhibit D at pg 57). In formulating her decision concerning plaintiff pursuant

8

to Mental Hygiene Law §9.39, Dr. Aldana-Bernier was not basing her decision just on how plaintiff presented to her during her face-to-face examination of him, but also on all the prior events and determinations.   (Exhibit A at pg 231 lns 7-18). She later testified about adjustment disorders.  Adjustment disorder is a psychiatric diagnosis for where someone goes under stress and will react to that stress within a period of time; this reaction will affect his functioning.  The person could be depressed, agitated, manifest itself through violence, depression of anxiety. (Exhibit A at pg 318 ln 21-pg 319 ln 10).

There is no evidence Dr. Aldana-Bernier based her determination pursuant to New York Mental Hygiene Law §9.39 on whether there was a potential risk plaintiff would physically harm himself or others as opposed to basing it on whether there was a substantial risk plaintiff would physically harm himself or others.  In fact, the word "risk" does not even appear in the portion of Dr. Aldana-Bernier's transcript cited by plaintiff in support of his motion for summary judgment.  The word "potential" appears, but there is no indication what "potential" is referring to.  There is certainly a question of fact as to what Dr. Aldana-Bernier meant by "potential" based on the testimony cited by plaintiff in support of his motion for summary judgment.  There is no evidence Dr. Aldana-Bernier based her determinations pursuant to New York Mental Hygiene Law §9.39 using a potential risk standard in place of a substantial risk standard.

## ARGUMENT
### POINT I
### STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits...show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Silver v. City University, 947 F.2d 1021, 1022 (2d Cir. 1991).

On a motion for judgment, the Court is not to weigh the evidence, assess the credibility of witnesses or resolve issues of fact. Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir. 1995). The Court is to view the evidence in the light most favorable to the party opposing summary judgment. Rodriguez v. City of New York, 72 F.3d at 1061.

Even a careful review of plaintiff's motion for summary judgment does not reveal exactly what causes of action plaintiff is seeking summary judgment. It appears that plaintiff is moving for summary judgment on his claims under §1983, his state claims for unlawful imprisonment and negligence *per se*. It is unclear if plaintiff is also moving for summary judgment on his claim for medical malpractice. A summary judgment motion should clearly articulate and state what causes of action already pled in a complaint the movant seeks summary judgment on. Plaintiff has failed at this basic requirement and his motion should be denied in its entirety. The Court should not be forced to divine what causes of action are addressed in a motion for summary judgment.

## POINT II

### PLAINTIFF HAS FAILED TO ESTABLISH HE IS ENTITLED TO A FINDING OF LIABILITY ON HIS CLAIM FOR UNLAWFUL IMPRISONMENT AS HE HAS NOT DEMONSTRATED HIS CONFINEMENT WAS OTHERWISE PRIVILEGED

Plaintiff's motion for summary judgment against Dr. Aldana-Bernier must be denied as plaintiff has not established that there is no material issue of fact that Dr.

Aldana-Bernier violated plaintiff's rights by involuntarily committing him without any determination that there was a substantial risk that he was dangerous.

Plaintiff's claim for false imprisonment under New York State law must be denied as his confinement was privileged. DeMarco v. Sadiker, 952 F.Supp. 134, 141 (E.D.N.Y. 1996). To establish a claim of false imprisonment, plaintiff must prove (1) defendant intended to confine plaintiff; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. DeMarco v. Sadiker, 952 F.Supp at 141 (citing Demarco v. Sadiker, 897 F.Supp 693, 709 (E.D.N.Y. 1995)(citing Rubenstein v. Benedictine Hosp., 790 F.Supp. 396, 409 (N.D.N.Y. 1992); Broughton v. State, 37 N.Y.2d 451, 456, 335 N.E.2d 310, 314, 373 N.Y.S.2d 87, 93 (1975). Plaintiff has failed to provide evidence to establish his confinement was not otherwise privileged.

It is undisputed that involuntarily confining someone while complying with the requirements of the New York Mental Hygiene Law renders those actions privileged. Demarco, 952 F.Supp at 141. In the DeMarco case cited by plaintiff in support of his motion for summary judgment, the Court declined to grant both the plaintiff's and the defendant's motions for summary judgment because there were material issues of fact as to whether the defendant complied with the provisions of the New York Mental Hygiene Law. Id. The present case is indistinguishable from DeMarco.

Plaintiff's motion for summary judgment must be denied as plaintiff has not established a prima facie case that Dr. Aldana-Bernier did not comply with the provisions of M.H.L. §9.39 in deciding to involuntarily confine plaintiff. Further, plaintiff

has also failed to prove that establishing medical malpractice pursuant to a decision to involuntarily commit someone causes that physician to lose the privilege protection.

The DeMarco Court denied plaintiff's motion for summary judgment on the procedural due process issue as viewed in the light most favorable to Dr. Paiz. A reasonable jury could determine Dr. Paiz conducted an examination that comported with the requirements of M.H.L. §9.37. Id. at 139. Plaintiff claimed that Dr. Paiz never conducted an examination of him. Dr. Paiz testified he did examine plaintiff and the examination covered numerous topics, including plaintiff's psychiatric history, his use of drugs, his family situation, and his claims that a family member tried to poison him and that people were against him. Id. The Court held that viewed most favorable to Dr. Paiz, and with all inferences drawn in his favor, a reasonable juror could conclude from his testimony and documentary evidence that Dr. Paiz did examine plaintiff and that Dr. Paiz's examination satisfied M.H.L. §9.37. Id. 139-40. Further, it held that "[e]ven if the jury found Dr. Paiz copied portions of Dr. Sadiker's notes in his own evaluation, it could reasonably conclude that, under the circumstances, doing so was not a departure from medically accepted standards." Id. 140. The DeMarco Court also held that whether plaintiff actually suffered from a mental illness likely to result in serious harm was a genuine issue of fact.

The instant facts clearly demonstrate plaintiff's motion for summary judgment must be denied. Plaintiff has not provided any evidence to establish Dr. Aldana-Bernier failed to adhere to the proper standards for committing someone pursuant to Mental Hygiene Law §9.39. The two pages of deposition testimony do not support plaintiff's

12

contention that Dr. Aldana-Bernier used a potential risk standard in place of a substantial risk standard.

The evidence reveals that Dr. Aldana-Bernier's actions comported with the requirements of New York Mental Hygiene Law §9.39.   (Affidavit of Dr. Laurence Tancredi is annexed to Koster Decl. as Exhibit B; Exhibit B at ¶ 22).  If all inferences are drawn in Dr. Aldana-Bernier's favor, as they must, a reasonable juror could certainly conclude that based on her testimony and the Jamaica Hospital medical records, that Dr. Aldana-Bernier used the proper standard under New York Mental Hygiene Law §9.39 to involuntarily commit plaintiff.  Similarly, a reasonable juror could also conclude that plaintiff was a substantial risk to himself to himself and/or others based on the factors cited by Dr. Aldana-Bernier.

Due process does not require a physician's assessment to involuntarily commit to be correct.  Rodriguez, 72 F.3d at 1062.  New York's Mental Hygiene Laws concerning involuntarily commitment have consistently been found to facially satisfy the requirements of due process.  Id.

Mental Hygiene Law §9.39 provides for the involuntarily commitment of an individual "'only if a staff physician of the hospital upon examination of such person finds that such person qualifies under the requirements of this section.'"  Rodriguez, 72 F.3d at 1062; MHL §9.39(a).  The alleged mental illness must be "'likely to result in serious harm to himself or others.'"  Rodriguez, 72 F.3d at 1062; MHL §9.39(a).  "'[L]ikely to result in serious harm...'" means posing a substantial risk of physical harm to himself or others manifested by threats of or attempts at suicide, or serious bodily harm or conduct

demonstrating the individual is dangerous to himself or others.  Rodriguez, 72 F.3d at 1062; MHL §9.39(a).

This standard requires a physician to make a medical decision, guided by the standards generally accepted within the medical community.  Rodriguez, 72 F.3d at 1063.  The questions of what the generally accepted standards are pursuant to Mental Hygiene Law §9.39 is a question of fact.  Id.

In the instant matter, there is a question of fact as to whether Dr. Aldana-Bernier followed the standards required by Mental Hygiene Law §9.39.  Plaintiff, based on two pages in Dr. Aldana-Bernier's deposition transcript, claims Dr. Aldana-Bernier used a potential risk standard. (Plaintiff 56.1 Statement ¶110; Exhibit A at pg pg 248 ln 2-pg 249 ln 25).  This is the only "evidence" cited by plaintiff in support of his motion for summary judgment that Dr. Aldana-Bernier did  not use the substantial risk assessment when evaluating plaintiff pursuant to Mental Hygiene Law §9.39.

The two pages plaintiff cites do not actually stand for the proposition he claims they do.  The two pages do not actually contain the words risk or dangerous.  Further, they do not indicate Dr. Aldana-Bernier used a potential risk standard in lieu of a substantial risk assessment.   (Plaintiff's 56.1 Statement ¶110; Dr. Aldana-Bernier's Response to Plaintiff's 56.1 Statement; Exhibit A)

Plaintiff's reliance on two pages of Dr. Aldana-Bernier's transcript ignores the mountain of evidence that demonstrates plaintiff's interpretation is blatantly mistaken. (Exhibit B at ¶¶ 18-22).   This interpretation is further supported by numerous other pages of her deposition testimony.  Dr. Aldana-Bernier testimony clearly demonstrates

14

she understood the procedures of Mental Hygiene Law §9.39 must be complied with to involuntarily commit someone and that a patient can be admitted if they are a danger to themselves; a danger to society; they are psychotic; not able to take care of themselves; if they are depressed and not able to take care of themselves, and/or if they are suicidal. (Exhibit A at pg 79 lns 11-pg 80 ln 12). A mental status examination is part of the procedure for admitting a patient pursuant to Mental Hygiene Law §9.39. (Exhibit A at pg 80 lns 13-17). Dr. Aldana-Bernier also correctly articulated steps to take in determining whether to admit someone under Mental Hygiene Law §9.39,, including reviewing previous hospital records; contact a psychiatrist if the person is seeing one; contact a medical doctor only if the patient says they want their medical doctor to be contacted. (Exhibit A at pg 81 ln 23-pg 82 ln 22; Exhibit B

A patient can be held pursuant to Mental Hygiene Law §9.39 if they are behaving bizarrely and are potentially psychotic; such behavior can make a patient dangerous to themselves or others. (Exhibit A at pg 93 ln 5-pg 94 ln 13). Dr. Aldana-Bernier was examining plaintiff's behavior not just at that particular moment, but also his prior behavior, including his barricading himself in his apartment. (Exhibit A at Pg 95 lns 8-20). A psychiatric disorder is one of the categories of diagnosis wherein a patient is not in touch with reality. This can manifest as symptoms such as agitation, aggressive behavior, delusions, hallucinations and impairment of reality testing. (Exhibit A at pg 99 ln 20-pg 100 ln 4). It was indicated plaintiff had a conflict with his supervisor. (Exhibit A at pg 100 ln 18-pg 101 ln 2).

A jury could certainly conclude here that Dr. Aldana-Bernier used the correct standard to evaluate plaintiff. (Exhibit B at ¶¶ 20-22). Dr. Laurence Tancredi opines

that Dr. Aldana-Bernier used the proper standard to involuntarily commit plaintiff pursuant to Mental Hygiene Law §9.39. (Exhibit B at ¶19 and 22). Further, Dr. Aldana-Bernier's actions concerning plaintiff comported with the requirements of Mental Hygiene Law §9.39 and thus she did not depart from accepted psychiatric standards in treating plaintiff. (Exhibit B at ¶22). As such, her actions are privileged and any claim of false imprisonment by plaintiff must be dismissed. At a minimum, there is a clear question of fact as to the standard used by Dr. Aldana-Bernier in evaluating plaintiff.

## POINT III

### PLAINTIFF HAS FAILED TO ESTABLISH DR. ALDANA-BERNIER COMMITTED MEDICAL MALPRACTICE PURSUANT TO HER COMMITTAL OF PLAINTIFF PURSUANT TO MENTAL HYGIENE LAW §9.39

Although it is unclear plaintiff is actually moving for summary judgment on a claim for medical malpractice, if the Court finds he is in fact doing so, Plaintiff's motion for summary judgment must be denied. He has failed to adduce sufficient evidence to support a claim for medical malpractice by Dr. Aldana-Bernier.

The elements of proof in a medical malpractice action include a deviation or departure from accepted standards of care and evidence that such departure was a proximate cause of the injury or damage. Amsler v. Verrilli, 119 A.D.2d 786, 501 N.Y.S.2d 411 (2d Dept. 1986). Both the departure and proximate cause are needed to sustain the claim for medical malpractice.

The Court of Appeals has declared that "[a] physician will usually be insulated from tort liability where there is evidence that he or she conformed to the accepted community standards of medicine." See Spensieri v. Lasky, 94 N.Y.2d 231, 701 N.Y.S.2d 689 (1991). In addition to establishing a departure or deviation from generally

accepted medical practice, plaintiff must establish a proximate cause between a defendant physician and an alleged injury. Koeppel v. Park, 228 A.D.2d 288, 644 N.Y.S.2d 210 (1st Dept. 1996).

Moreover, there can be no liability imposed on a defendant physician for alleged departures from good and accepted practice which may have occurred outside of their care and treatment and outside of their presence. Gamiel v. University Hospital, 216 A.D.2d 80, 626 N.Y.S.2d 74 (1st Dept. 1995). While physicians owe a general duty of care to their patients, that duty may be limited to those functions undertaken by the physician and relied upon by the patient. Chulla v. DiStefano, 242 A.D.2d 657, 662 N.Y.S.2d 570 (2nd Dept. 1997).

It is basic law that, "a bad outcome is not by itself proof of a departure on the part of a defendant." See Schoch v. Dougherty, 122 A.D. 2d 46, 504 N.Y.S. 2d 206 (3rd Department, 1986). A doctor may be liable only if the doctor's treating decisions do not reflect his/her own best judgment, or fall short of the generally accepted standards of care. Nestorowich v. Recata, 97 N.Y. 2d 393, 399, 740, N.Y.S. 2d 668, 678 (2002).

As an initial matter, to the extent plaintiff is relying on the unsworn expert report of Dr. Roy Lubit in support of his motion for summary judgment, this report is inadmissible hearsay and is an insufficient basis for supporting a motion for summary judgment. See Capobianco v. City of New York, 422 F.3d 47, 55 (2d Cir. 2005); See also Cornell Research Found., Inc. v. Hewlett-Packard Co., 2007 U.S.Dist. LEXIS 89637 at *59-60 (unsworn expert reports "are not worth of consideration on motion for summary judgment"); Berk v. St. Vincent's Hosp. & Med. Ctr., 380 F.Supp.2d 334, 352 (S.D.N.Y. 2005) (such reports "do not satisfy the admissibility requirements of Fed. R.

Civ. P. 56(e), and cannot be used to defeat a summary judgment motion without additional affidavit support"). Dr. Lubit's report is not sworn before a public notary or part of a sworn affidavit by Dr. Lubit. As such, it is inadmissible as evidence in support of plaintiff's motion for summary judgment.

New York State Mental Hygiene Law §9.39 provides for the emergency involuntarily committal of individuals. M.H.L. §9.39. Mental Hygiene Law §9.39 reads, in part, as follows:

> The director of any hospital maintaining adequate staff and facilities for the observation, examination, care, and treatment of persons alleged to be mentally ill and approved by the commissioner to receive and retain patients pursuant to this section may receive and retain therein as a patient for a period of fifteen days any person alleged to have a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others. "Likelihood to result in serious harm" as used in this article shall mean: 1. substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous to himself, or 2. a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.

M.H.L. §9.39(a).

The Second Circuit Court of Appeals holds that M.H.L. §9.39 should be interpreted as "implicitly deferring to medical judgment, 861 F.Supp. at 1182, and that section should be construed as "requiring a physician to make a medical decision, guided by standards that are generally accepted within the medical community." Id. at 1181." Rodriguez v. City of New York, 72 F.3d 1051 (2d Cir. 1995). "...[T]he question of what the generally accepted standards [are] is a question of fact." Rodriguez, 72 F.3d at 1063.

Dr. Aldana-Bernier's opinion that plaintiff could be admitted pursuant to Mental Hygiene Law §9.39 was based on the events at his apartment; behaving bizarrely;

18

displaying agitation in the emergency room; plaintiff's occupation as a police officer; his access to guns even though his gun had been taken away; his delusions; and the increased chance of damage plaintiff could cause based on his training and occupation as a police officer. (Exhibit A at pg 149 ln 17-pg 151 ln 3). When she personally evaluated plaintiff, he displayed paranoia by claiming he was being set up by various police officers who were conspiring against him; paranoia is a form of psychosis; he also displayed persecutory delusions. (Exhibit A at pg 172 lns 6-22; pg 194 lns 18-24).

Plaintiff's paranoia was manifested by his claims that there was a conspiracy against him and that he was being persecuted by his superiors and his co-workers. (Exhibit A at pg 195 ln 21-pg 196 ln 17). Plaintiff was a threat to cause physical harm to himself or others because he was a police officer talking about conspiracies, had access to weapons, had to be brought from the apartment where he barricaded himself in, acting bizarre and agitated at this home and then in the emergency room. (Exhibit A at pg 196 ln 18-pg 197 ln 18; pg 197 ln 23-pg 199 ln 3). The symptoms displayed by plaintiff were sufficient to satisfy the substantial risk requirements for committal pursuant to New York Hygiene Law §9.39. (Exhibit B at ¶¶ 13-22).

A jury could certainly conclude here that Dr. Aldana-Bernier correctly determined that plaintiff satisfied the requirements of Mental Hygiene Law §9.39. Dr. Aldana-Bernier's assessment of plaintiff was consistent with good and accepted psychiatric care. (Exhibit B at ¶18-22). As such, plaintiff's summary judgment motion as to his malpractice cause of action must be denied as it is abundantly clear her treatment was proper, and in any event, there are questions of fact concerning whether Dr. Aldana-Bernier's medical judgment was appropriate.

19

**POINT IV**

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON CAUSES OF ACTION
UNDER FEDERAL LAW MUST BE DENIED AS PLAINTIFF HAS FAILED TO
ESTABLISH DR. ALDANA-BERNIER IS A STATE ACTOR AS REQUIRED BY §1983**

All portions of plaintiff's motion seeking summary judgment pursuant to §1983
must also be denied as plaintiff has not established that Dr. Aldana-Bernier was a state
actor. Plaintiff has not provided a scintilla of evidence that Dr. Aldana-Bernier was a
state actor at any time relevant to her evaluation of plaintiff. Plaintiff has not cited any
deposition testimony, affidavit, contract or document to support his claim that she was a
state actor.

Dr. Aldana-Bernier has moved for summary judgment to dismiss all of plaintiff's
claims pursuant to 42 U.S.C. §1983 on the grounds that she was a private doctor and
not a state actor for the purposes of the statute. As to not waste the Court's time
reiterating the same arguments made in her summary judgment motion, Dr. Aldana-
Bernier incorporates the arguments set forth there into her opposition. (A copy of Dr.
Aldana-Bernier's memo of law in support of her motion for summary judgment is
annexed to Koster Decl. as Exhibit E).

The question of whether a New York State physician who orders the involuntarily
commitment of a patient while acting in her capacity as a private doctor is a state actor
for the purposes of 42 U.S.C. §1983 has been definitely answered in the Second Circuit
in McGugan v Aldana-Bernier, 752 F.3d 224, 229 (2d Cir 2014); Hogan v. A.O. Fox
Mem. Hosp., 346 Fed. Appx. 627, 629 (2d Cir. 2009) and Doe v. Rosenberg, 996 F.
Supp. 343, 352-53 (S.D.N.Y. 1998) aff'd 166 F.3d 507 (2d Cir. 1999); 42. U.S.C. §1983.
All of these cases dealt with the same circumstances presented in the instant matter,

20

*i.e.*, a private physician certifying the involuntary commitment of a patient under New York Mental Hygiene Law § 9.39. The clear holding in these cases is that such conduct is not actionable under 42 U.S.C. § 1983. This Court is particularly familiar with the issue presented here in view of its decision in Doe v. Rosenberg, 996 F. Supp. 343 (S.D.N.Y. 1998)

The Second Circuit has clearly held that private physicians and hospitals do not become state actors when they determine an individual should be involuntarily hospitalized on an emergency basis pursuant to Section 9.39 of New York's Mental Hygiene Law. See, e.g., Johnson v. Unity Health Sys., 08-CV-6258, 2010 U.S.Dist. LEXIS 30727 (W.D.N.Y. March 30, 2010); Edwards v. Baptiste, 06-CV-00952, 2006 U.S. Dist. LEXIS 89147 (D.Conn. December 11, 2006). MHL §9.39 does not encourage involuntary commitment. Therefore, there is no state compulsion to involuntarily commit patients.

As plaintiff has failed to produce any evidence that Dr. Aldana-Bernier was a state actor when she treated plaintiff, all of his claims pursuant to §1983 must be denied. Further, plaintiff has failed to allege any other federal claims against Dr. Aldana-Bernier. To the extent plaintiff claims he is moving for summary judgment on any other federal claims, those portions of his motion must be denied as he failed to plead such causes of action in his complaint.

## POINT V

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT FOR NEGLIGENCE *PER SE* MUST BE DENIED AS PLAINTIFF HAS FAILED TO PLEAD A CAUSE OF ACTION FOR NEGLIGENCE *PER SE* IN HIS THIRD AMENDED COMPLAINT

Plaintiff's motion for summary judgment for negligence *per se* must be denied as plaintiff never set forth a cause of action for negligence *per se* in his complaint.

The Southern District has consistently held that claims not asserted in a complaint cannot be introduced for the first time during summary judgment. "Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense. Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment. Accordingly, this Court will not consider claims not pleaded in the Complaint." Beckman v. United States Postal Serv., 79 F. Supp. 2d 394, 408 (S.D.N.Y. 2000) (internal citations omitted). See also Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp., 963 F. Supp. 1342, 1359 (S.D.N.Y. 1997) ("[Plaintiff] in effect is apparently attempting to add a claim never addressed, or even hinted at, in the complaint. Such a step is inappropriate at the summary judgment stage, after the close of discovery, without the Court's leave, and in a brief in opposition to a motion.")

Plaintiff's attempt to introduce a new claim for negligence *per se* in his summary judgment is especially egregious as plaintiff moved to amend his complaint for a third time on December 4, 2014. There is no reason plaintiff could not have moved to add a

claim for negligence *per se* in his December 4, 2014 motion to amend.   Therefore, plaintiff's motion for summary judgment on negligence *per se* must be denied.

## CONCLUSION

For the foregoing reasons, Dr. Aldana-Bernier respectfully requests the Court deny plaintiff's motion for summary judgment pursuant to FED. R. CIV. P. 56 in its entirety as well as for other relief as deemed appropriate by the Court.

Dated:   New York, New York
         February 11, 2015

Respectfully Submitted,
CALLAN, KOSTER, BRADY, & NAGLER, LLP

By: MATTHEW J. KOSTER, ESQ. (3080)
Attorneys for Defendant
DR. LILIAN ALDANA-BERNIER
One Whitehall Street, 10th Floor
New York, New York 10004
(212) 248-8800
mkoster@ckbblaw.com