Page 1

```
 1
 2  UNITED STATES DISTRICT COURT
 3  SOUTHERN DISTRICT OF NEW YORK
 4  Case 1:10-cv-06005-RWS
 5  - - -- - - - - - - - - - - - - - - -x
 6  ADRIAN SCHOOLCRAFT,
 7                              Plaintiff,
 8          -against-
 9  THE CITY OF NEW YORK, DEPUTY CHIEF
    MICHAEL MARINO, Tax Id. 873220,
10  Individually and in his Official
    Capacity, ASSISTANT CHIEF Patrol
11  Borough Brooklyn NORTH GERALD NELSON,
    Tax Id. 912370, Individually and in his
12  official Capacity, DEPUTY INSPECTOR
    STEVEN MAURIELLO, Tax Id. 895117,
13  individually and in his Official
    Capacity, CAPTAIN THEODORE LAUTERBORN,
14  Tax Id. 897840, Individually and in his
    Official Capacity, LIEUTENANT WILLIAM
15  GOUGH, Tax Id. 919124, Individually and
    in his Official Capacity, SGT.
16  FREDERICK SAWYER, Shield No. 2576,
    Individually and in his Official
17  Capacity, SERGEANT KURT DUNCAN, Shield
    No. 2483, Individually and in his
18  Official Capacity, LIEUTENANT
    CHRISTOPHER BROSCHART, Tax Id. 915354,
19  Individually and in his Official
    Capacity, LIEUTENANT TIMOTHY CAUGHEY,
20  Tax Id. 885374, Individually and in his
    Official Capacity, SERGEANT SHANTEL
21  JAMES, Shield No. 3004, Individually
    and in her Official Capacity,
22  LIEUTENANT THOMAS HANLEY, Tax Id.
    879761, Individually and in his
23  Official Capacity,CAPTAIN TIMOTHY
    TRAINER, Tax Id. 899922, Individually
24  and in his Official Capacity,
25  (Caption continued on following page.)
```

1
2  CAPTION:(continued)
3  SERGEANT SONDRA WILSON, Shield No.
   5172, Individually and in her Official
4  Capacity, SERGEANT ROBERT W. O'HARE,
   Tax Id. 916960, Individually and in his
5  Official Capacity, SERGEANT RICHARD
   WALE, Shield No. 3099 and P.O.'s "JOE
6  DOE" # 1-50, Individually and in their
   Official Capacity (the name John Doe
7  being fictitious, as the true names are
   presently unknown), (collectively
8  referred to as "NYPD defendants"), FDNY
   LIEUTENANT ELISE HANLON, individually
9  and in her Official Capacity as a
   lieutenant with the New York City Fire
10 Department, JAMAICA HOSPITAL MEDICAL
   CENTER, DR. ISAK ISAKOV, Individually
11 and in his Official Capacity, DR.
   LILIAN ALDANA-BERNIER, Individually and
12 in her Official Capacity and JAMAICA
   HOSPITAL MEDICAL CENTER EMPLOYEE'S
13 "JOHN DOE" # 1-50, Individually and in
   their Official Capacity (the name John
14 Doe being fictitious, as the true names
   are presently unknown),
15
                          Defendants.
16 - - - - - - - - - - - - - - - - - - -x
              111 Broadway
17            New York, New York
18            October 8, 2013
              10:17 a.m.
19     DEPOSITION of MICHAEL MARINO, held
20 at the above time and place, taken
21 before Al-Furquan Baker, a Shorthand
22 Reporter and Notary Public of the State
23 of New York, pursuant to the Federal
24 Rules of Civil Procedure, Order and
25 stipulations between Counsel.

1
2   APPEARANCES:
3
4       LAW OFFICES OF NATHANIEL B. SMITH
        Attorneys for Plaintiff
5            111 Broadway
             New York, New York  10006
6
        BY:  NATHANIEL B. SMITH, ESQ.
7
8
9
        NYC LAW DEPARTMENT
10      CORPORATION COUNSEL
        Attorneys for Chief Michael Marino
11      and All City Defendants
             100 Church Street
12           New York, New York  10007
13      BY:  SUZANNA PUBLICKER METTHAM, ESQ.
14
15
16      CALLAN KOSTER BRADY & BRENNAN, LLP
        Attorneys for Defendant Lilian
17      Aldana-Bernier
             One Whitehall Street
18           New York, New York  10004
19      BY:  MEREDITH B. BORG, ESQ.
20
21   (Continued on following page.)
22
23
24
25

Page 226

1      M. Marino
2  on-site as being those individuals --
3      A.   Yes.
4      Q.   What is the function of the
5  Brooklyn North Investigations Unit?
6      A.   They worked directly for the
7  commanding officer of the borough.
8  They handled any internal investigation
9  that the commanding officer deems fit.
10 As well as being assigned the cases
11 from IAB that IAB deems can be handled
12 by them rather than IAB.
13     Q.   And who was the commanding
14 officer of the borough at that time?
15     A.   Assistant Chief Gerald
16 Nelson.
17     Q.   So when you saw Gough,
18 Hawkins and Duncan there, you
19 understood that they were there at the
20 direction of either IAB or Nelson?
21         MS. PUBLICKER METTHAM:
22 Objection.
23         You can answer.
24     A.   No.
25     Q.   What's your understanding of

1          M. Marino
2  is and you didn't see him anywhere near
3  Schoolcraft's residence that night,
4  right?
5      A.    He was not there.
6      Q.    And we were talking about
7  when you ordered them to take him.
8            I think that was your
9  language, right?
10     A.    My vernacular, yes.
11     Q.    Your vernacular?
12     A.    Yes.
13     Q.    And at that point you believe
14 that you had the authority to give that
15 order because you thought that Officer
16 Schoolcraft was an emotionally
17 disturbed person; is that correct?
18           MS. PUBLICKER METTHAM:
19     Objection.
20           Asked and answered.
21           You can answer again.
22     A.    Yes.
23     Q.    All right.
24           At the moment that you gave
25 that order, can you identify for me in

```
 1                M. Marino
 2   what way you believe that Office
 3   Schoolcraft was acting as an EDP?
 4           MS. PUBLICKER METTHAM:
 5       Objection.
 6             Asked and answered
 7       repeatedly.
 8             One more time you, answer.
 9       A.    Based upon the diagnosis by
10   trained medical professionals coupled
11   with his actions, I believe that there
12   was something wrong with him, at least
13   temporary.
14       Q.    What was the diagnosis that
15   you are referring to?
16       A.    The paramedic lieutenant,
17   female paramedic lieutenant told me
18   that he had to go to the hospital.  It
19   was dangerous if he didn't, and that if
20   he refused to go he was making improper
21   decisions and she would treat him as an
22   emotionally disturbed person.
23       Q.    Okay.
24             And the other thing that you
25   indicated was the basis for your
```