1
2  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
3  ------------------------------------X
4  ADRIAN SCHOOLCRAFT,
5                    Plaintiff,
6
                                    Case No:
7        - against -                10 CV 06005
8
   THE CITY OF NEW YORK, ET AL.,
9
10                   Defendants.
11 ------------------------------------X
12                111 Broadway
                  New York, New York
13
                  July 24, 2014
14                12:11 p.m.
15
16
17 DEPOSITION OF ALAN COOPER, pursuant to
18 Notice, taken at the above place, date and
19 time, before DENISE ZIVKU, a Notary Public
20 within and for the State of New York.
21
22
23
24
25

1              ALAN COOPER
2       the structure of IAB.  It's really
3       important to this case.  So you could
4       talk to your witness.
5              MS. PUBLICKER METTHAM:  But you
6       did not ask for structure.  You asked
7       about how they performed their duties.
8              MR. SMITH:  You want to talk
9       with your witness.
10             MS. PUBLICKER METTHAM:  Well,
11      what are you getting at in terms of
12      intelligence section and how it gathers
13      it's information?  So I know whether
14      this is a law enforcement privilege or
15      not.
16             MR. SMITH:  All right, we'll do
17      it this way.
18      Q.     The notice of deposition has
19 been marked as 154.  It has three sections
20 that I understand you're here it testify
21 about.  The first one is D, "The policies
22 and practices of the City of New York
23 regarding the protection of members of the
24 NYPD from retaliation by other members of
25 the NYPD."  Have you seen the notice of

```
 1                    ALAN COOPER
 2    deposition before?
 3         A.     I have to look at it in order to
 4    be able to determine that.
 5         Q.     I am showing you what's been
 6    previously marked as 154, have you ever seen
 7    that document before?
 8         A.     Yes, I believe so.
 9         Q.     Are you here to testify on
10    section D, the one I just read to you as the
11    City witness on that subject matter?
12         A.     I believe so, yes.
13         Q.     Section E provides for a witness
14    to appear and testify about "The
15    disciplinary actions, if any, taken by the
16    City of New York against members of the NYPD
17    for retaliation against members of the
18    NYPD."  See that section?
19         A.     Yes.
20         Q.     Are you here to testify as a
21    City witness on that section?
22         A.     I believe so, yes.
23         Q.     Then K on the next page of the
24    document is another subject matter that I
25    believe was scheduled for today.  K says
```

1  ALAN COOPER
2  that the subject matter is: "The policies
3  and practices of the internal affairs bureau
4  and the quality assurance division in
5  connection with how IAB and QAD conducts
6  investigations of alleged willful conduct by
7  supervisors made by other members of the
8  NYPD and how the various groups within the
9  IAB have different areas within their
10 respective jurisdictions and the formation
11 of by the NYPD and the implementation and
12 the recommendations by the crime reporting
13 review committee." You see that section?
14      A.    Yes.
15      Q.    Are you here to provide
16 testimony as a City witness on section K
17 that I just read to you?
18      A.    Yeah, but it actually says
19 groups with the IAB not groups within, as
20 you indicated.
21      Q.    Okay. I misread it.
22            MS. PUBLICKER METTHAM: And I
23      will also note that he is not here to
24      testify about the formation by the NYPD
25      and implementation of the

1           ALAN COOPER

2           MS. PUBLICKER METTHAM: We're
3      talking about 2007 to 2010.
4           A.    There are a majority of the
5      lines in the command center are taped lines,
6      okay. So if you call the general number
7      that will be a taped line, but in order to
8      help support getting information about
9      corruption, misconduct within the police
10     department, we also have non-taped lines.
11     We would call them the pride line or corrupt
12     line. Those names refer to the phone
13     numbers. It's 1-800-PRIDE PD or
14     1-212-CORRUPT, the letters corrupt. If you
15     call in there -- if we advertise within the
16     precinct that you can call in anonymously.
17     So you can call into the command center to
18     one of those two numbers and that's a
19     non-recorded line.
20          Q.    When somebody or when an officer
21     or member of service calls in, are they
22     required to identify themselves by name or
23     some other means or do they always have the
24     option of remaining anonymous?
25                MS. PUBLICKER METTHAM:

```
 1                    ALAN COOPER
 2         Objection.  You can answer.
 3         A.      They have the option of
 4  remaining anonymous.  That would help
 5  protect their identity.
 6         Q.      Is that an important thing?
 7                 MS. PUBLICKER METTHAM:
 8         Objection.  You could answer.
 9         A.      Yes.
10         Q.      Why?
11                 MS. PUBLICKER METTHAM:
12         Objection.  You could answer.
13         A.      These investigations are
14  confidential.  We would like to protect
15  those members of service who come forth with
16  information about misconduct and corruption.
17         Q.      What's your year of birth?
18                 MS. PUBLICKER METTHAM:
19         Objection.  You can answer.
20         A.      1960.
21         Q.      What's your highest level of
22  education?
23                 MS. PUBLICKER METTHAM:
24         Objection.  You can answer.
25         A.      I have a bachelorette degree.
```

1      ALAN COOPER

2 same page with you, but the EEO issues that

3 deal with investigations into reports of

4 discrimination based on sex or gender --

5   A. Yes.

6   Q. -- or one of the other protected

7 categories; is that right?

8   A. Yes.

9   Q. In the note on the first page of

10 205-38 it says: "Any member of the service

11 who is made aware of an allegation of

12 retaliation for reporting wrongdoing shall

13 make reasonable efforts to protect the

14 anonymity and confidentiality of the

15 employee making the allegation." You see

16 that?

17   A. Yes.

18   Q. Does that note govern how a

19 member of IAB conducting the investigation,

20 does that note apply to that investigation?

21    MS. PUBLICKER METTHAM:

22 Objection. You can answer.

23   A. Yes.

24   Q. In what way does IAB make

25 reasonable efforts to protect anonymity and

1           ALAN COOPER
2    confidentiality of the employees making
3    allegations to it?
4           MS. PUBLICKER METTHAM:
5       Objection.  You can answer.
6       A.     Maintaining the anonymity of a
7    member of the service reporting such
8    corruption or misconduct regardless of
9    whether it's for retaliation or otherwise,
10   it is the priority of internal affairs
11   bureau to keep their identity as secret as
12   possible in order to avoid retaliation, in
13   order to prevent retaliation where possible.
14      Q.     Protect them from what?
15          MS. PUBLICKER METTHAM:
16      Objection.  You can answer.
17      A.     Protect them from acts of
18   retaliation.
19      Q.     What kinds of acts of
20   retaliation are you referring to?
21          MS. PUBLICKER METTHAM:
22      Objection.
23      A.     Any kind.
24      Q.     So we are talking about transfer
25   or a physical act of violence, anything?

1                    ALAN COOPER
2                 MS. PUBLICKER METTHAM:
3         Objection.  You could answer.
4         A.       It could run the gamut, yes,
5    anything.
6         Q.       How does IAB go about
7    maintaining anonymity of people reporting
8    misconduct?
9                  MS. PUBLICKER METTHAM:
10        Objection.  You can answer.
11        A.       First of all, our investigations
12   are confidential.  The access to these cases
13   are very, very limited within IAB and even
14   within IAB, the access is limited.  Not
15   everybody in IAB has access to all the cases
16   in IAB.  So that's an initial protection.
17   The investigators would strive not to
18   contact the complainant at their work site.
19   They would try to call them or contact them
20   outside of the normal work environment in
21   order that they're not seen or heard or
22   thought to be speaking with IAB or making
23   these such allegations.  We would endeavor
24   to take those types -- undergo those efforts
25   to maintain the anonymity of the

1          ALAN COOPER
2  complainant.
3       Q.    Why would not calling the work
4  place maintain their anonymity?
5             MS. PUBLICKER METTHAM:
6       Objection.
7       A.    Ask that again.
8       Q.    Yeah.  I think you said that one
9  of the ways that IAB protects members
10 anonymity is by not calling them at their
11 command.  I think that's what you said.
12      A.    Right.
13      Q.    Why would calling them at their
14 command reveal their anonymity?
15            MS. PUBLICKER METTHAM:
16      Objection.  You could answer.
17      A.    So, if IAB was to call the desk
18 of the 99th Precinct and say hi, this is the
19 internal affairs bureau, we would like to
20 speak to the officer who called in the
21 complaint.  That would probably divulge that
22 officer was speaking with IAB.  So we avoid
23 doing that.
24      Q.    How would IAB avoid doing that?
25            MS. PUBLICKER METTHAM:

1           ALAN COOPER
2      Objection.  You could answer.
3      A.      In most instances by trying to
4   not do it.  To not contacting the
5   complainant or the reporter at his place of
6   employment.
7      Q.      Do you agree with me that a
8   member of the service, who witnesses
9   misconduct or corruption and then reports it
10  is put in a awkward position, where they
11  have to comply with their obligation and
12  report misconduct, but at the same time be
13  concerned about being viewed as a rat?
14           MS. PUBLICKER METTHAM:
15      Objection.  You can answer.
16      A.      Just repeat it.
17           MR. SMITH:  Would you mind just
18      repeating that question.
19           (Record read.)
20           MS. PUBLICKER METTHAM:  I'm
21      going to object again that this is not
22      an appropriate question for a 30(b)(6)
23      witness, but I will allow the witness
24      to answer.
25      A.      Yes.

Page 69

1         ALAN COOPER
2    Q.    Why is that?
3          MS. PUBLICKER METTHAM:
4    Objection.
5    Q.    Or explain that to me?
6          MS. PUBLICKER METTHAM:
7    Objection.
8    A.    Someone who's reporting
9  corruption or misconduct on his peers knows
10 that he has to continue to work with his
11 peers.  Any human being would be concerned
12 that if his peers found out that if I was
13 giving some confidential information up
14 about you or reporting your misconduct, then
15 your treatment of me, whether it be from a
16 peer or supervisory relationship might be
17 impacted.
18   Q.    How might it be impacted?
19         MS. PUBLICKER METTHAM:
20   Objection.  Again, this is well beyond
21   the scope.
22   A.    Could be impacted in any number
23 of ways.  You may no longer wish to speak
24 with me.  You may no longer wish to be my
25 friend or if it's on a supervisory

1    ALAN COOPER
2    subordinate level, you may impact my work
3    habits -- not my work habits, my work
4    situation or my tours or any number of
5    things that a supervisor might in the
6    position to control regarding my life.
7        Q.    The last page of the patrol
8    guide procedures that you have in front of
9    you says "Members of the service who
10   voluntarily provide information to assist us
11   in internal/external investigations should
12   be acknowledged for their high acts of
13   integrity."  You see that?
14       A.    Yes.
15       Q.    Can you explain to me why the
16   patrol guide procedure refers to the
17   reporting of misconduct or corruption as a
18   high act of integrity?
19             MS. PUBLICKER METTHAM:
20       Objection.  The witness is not here to
21       testify about deliberative process or
22       why any information is included in the
23       patrol guide.  I will allow him to
24       answer to the extent he knows.
25       A.    I don't really know why that's

1        ALAN COOPER
2        Q.    And then on the last page of
3   this document there is this here retaliation
4   case investigative steps?
5        A.    Right.
6        Q.    Do you know where the
7   information that's collected under that
8   heading was obtained?
9             MS. PUBLICKER METTHAM:
10      Objection.  You could answer.
11       A.    Says it right there, Lieutenant
12  Henry conferred with D. I. DiBartolomeo and
13  D. I. Lorenzo.
14       Q.    And who are those individuals?
15       A.    D. I. DiBartolomeo is the
16  commanding officer, so the special
17  investigation group otherwise known as group
18  one.  D. I. Miriam --
19            MS. PUBLICKER METTHAM:  Slow
20      down.
21       A.    Want me to go back -- D. I.
22  Lorenzo is the commanding officer of group
23  53, which is the group that covers school
24  safety agents.
25       Q.    Okay, so am I correct that in

1                 ALAN COOPER
2   retaliation cases the number one concern
3   should be the protection of the victim?
4           MS. PUBLICKER METTHAM:
5     Objection. You could answer.
6     A.    That's what's on the document as
7   written. Yes, that is a very, very high
8   priority in our investigations. I'm not
9   saying that -- that's not my wording.
10  That's the wording that was used either by
11  DiBart or by Lorenzo --
12     Q.    My question is do you agree with
13  it?
14     A.    Absolutely.
15     Q.    And then it also says here that
16  you shouldn't interview the CV or the
17  complaining --
18     A.    Complainant victim.
19     Q.    Complaining victim?
20     A.    Complainant or victim or.
21     Q.    But you should not do that under
22  the PG, do you agree with that?
23           MS. PUBLICKER METTHAM:
24     Objection. You could answer.
25     A.    Case-by-case.

1           ALAN COOPER
2      Q.   It says here also --
3      A.   That goes towards maintaining
4  that victim or complainant's
5  confidentiality.
6      Q.   It also says in this second
7  bullet here "Never call permanent command
8  looking for the C/V." Do you agree with
9  that?
10          MS. PUBLICKER METTHAM:
11     Objection.  You could answer.
12     A.   Right.  Never is an extremely
13 strong word.  It wouldn't have been the word
14 that I used, but yes, we endeavor not to
15 call the command as I explained previously
16 in this deposition to alert any other
17 members of that command that the officer
18 may be speaking or making a complaint to the
19 internal affairs bureau in order to
20 maintain, you know, to his confidentiality
21 or hers.
22     Q.   Okay.  Well, you might not agree
23 with the use of the word never, but do you
24 agree with the spirit of the idea that under
25 only extremely rare circumstances would you

1       ALAN COOPER
2  call the permanent command to look for the
3  complainant victim.  Do you agree with that?
4            MS. PUBLICKER METTHAM:
5       Objection.  You could answer.
6       A.      Yes.  It would be best if you
7  were able to contact the complainant via
8  other methods.
9       Q.      And was this part of this
10 document based on any standard operating
11 procedures of IAB or was it based on the
12 collective knowledge and experience of the
13 individuals referred to it IAB, Lieutenant
14 Henry and Deputy Inspectors DiBartolomeo and
15 Lorenzo?
16           MS. PUBLICKER METTHAM:
17      Objection.  You could answer.
18      A.      By and large it comes out of
19 their experience just pulling together some
20 little bullets for what they would do in
21 particular for retaliation cases.  They
22 handle quite a few of them.
23      Q.      And you reviewed this document
24 before appearing here today, right?
25      A.      Yes.

1                    ALAN COOPER
2        Q.     And you knew it was being
3   produced to me?
4        A.     Yes.
5        Q.     Is there anything in here that
6   you think should be corrected?
7               MS. PUBLICKER METTHAM:
8        Objection.  You could answer.
9        A.     As I read it in the past before
10  today's meeting, I believe it all would be
11  quite accurate.  I can't say that there's
12  nothing in here that's not accurate or
13  shouldn't be corrected.
14              MR. SMITH:  Thank you, Chief.  I
15       don't have any more questions at this
16       time.
17              MS. PUBLICKER METTHAM:  I have
18       one clarifying question.
19  EXAMINATION BY
20  MS. PUBLICKER METTHAM:
21       Q.     Chief, under what circumstances
22  would you have to contact a complaining
23  victim at his permanent command?
24       A.     In a situation -- obviously, you
25  know, we're charged with conducting the

1      ALAN COOPER
2  investigation.  We have to conduct the
3  investigation.  The investigation has to
4  move forward.  We encounter some situations
5  where the complainant becomes uncooperative.
6  The complainant who called in the complaint
7  in the first place and initiated an
8  allegation of serious misconduct or
9  retaliation, that's the person with the
10 information.  They're making serious
11 allegations as a member of the service,
12 they're going to, at some point, need to
13 speak with us.  We sometimes experience
14 complainants who, upon their own reflection,
15 become uncooperative, but they still need to
16 speak with us.  We don't like to do it that
17 way.  We like to maintain confidentiality.
18 We think that's extremely important, but
19 there may come a time that we would be
20 forced by the complainant's own actions to
21 contact them in an official manner.
22         Q.      And if there were no current
23 phone number for the complaining victim on
24 their ten card, would that be a circumstance
25 which you would contact the individual at