GJR/DA
82-82153
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
ADRIAN SCHOOLCRAFT,

                                    Plaintiff,

                  -against-

THE CITY OF NEW YORK, DEPUTY CHIEF MICHAEL
MARINO, Tax *Id.* 873220, Individually and in his Official
Capacity, ASSISTANT CHIEF PATROL BOROUGH
BROOKLYN NORTH GERALD NELSON, Tax *Id.* 912370,
Individually and in his Official Capacity, DEPUTY
INSPECTOR STEVEN MAURIELLO, Tax *Id.* 895117,
Individually and in his Official Capacity CAPTAIN
THEODORE LAUTERBORN, Tax *Id.* 897840, Individually
and in his Official Capacity, LIEUTENANT JOSEPH GOFF,
Tax *Id.* 894025, Individually and in his Official Capacity, SGT.
FREDERICK SAWYER, Shield No. 2576, Individually and in
his Official Capacity, SERGEANT KURT DUNCAN, Shield
No. 2483, Individually and in his Official Capacity,
LIEUTENANT CHRISTOPHER BROSCHART, Tax *Id.*
915354, Individually and in his Official Capacity,
LIEUTENANT TIMOTHY CAUGHEY, Tax *Id.* 885374,
Individually and in his Official Capacity, SERGEANT
SHANTEL JAMES, Shield No. 3004, AND P.O.'s "JOHN
DOE" #1-50, Individually and in their Official Capacity (the
name John Doe being fictitious, as the true names are presently
unknown) (collectively referred to as "NYPD defendants"),
JAMAICA HOSPITAL MEDICAL CENTER, DR. ISAK
ISAKOV, Individually and in his Official Capacity, DR.
LILIAN ALDANA-BERNIER, Individually and in her Official
Capacity and JAMAICA HOSPITAL MEDICAL CENTER
EMPLOYEE'S "JOHN DOE" # 1-50, Individually and in their
Official Capacity (the name John Doe being fictitious, as the
true names are presently unknown),

                                    Defendants.

--------------------------------------------------------------------------------X

10 CIV 6005 (RWS)

## REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT
## BY DEFENDANT JAMAICA HOSPITAL MEDICAL CENTER

Of Counsel:    Gregory J. Radomisli (GJR- 2670)
               Brian Osterman (BO- 5881)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................iii

PRELIMINARY STATEMENT ...........................................................................1

STANDARD FOR SUMMARY JUDGMENT.......................................................1

ARGUMENT

POINT I

PLAINTIFF'S COUNTER 56.1 STATEMENT IS INADEQUATE TO
REFUTE THOSE STATEMENTS SET FORTH BY JHMC
AS FACTS WHICH ARE NOT IN DISPUTE ....................................................2

    A.    The Following Statements of Fact Must Be Deemed
        Admitted Because Plaintiff Cites Evidence that is Not
        in Admissible Form to Refute Defendant's Statements..............................4

    B.    The Following Statements of Fact Must Be Deemed
        Admitted Because Plaintiff's "Hearsay" Objections
        Are Improper..........................................................................................6

    C.    The Following Statements of Fact Must Be
        Deemed Admitted Because Plaintiff's Interpretation
        and/or Qualification of the Evidence is Improper ......................................9

    D.    The Following Statements of Fact Must Be Deemed Admitted
        Because Plaintiff's Claim that the Evidence Does Not Support
        Them is Belied by the Evidence Cited by JHMC in Its 56.1 Statement...12

POINT II

JAMAICA HOSPITAL IS ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFF'S §1983 CLAIMS

    A.    Jamaica Hospital Medical Center Cannot Be subject
        to Direct Liability Under 42 USC §1983 Because
        Jamaica Hospital Medical Center Is Not a "Person" .................................15

    B.    Jamaica Hospital Is Entitled to Summary Judgment
        On Plaintiff's Tenth Claim for Relief

        1.    Requirements of *Monell*.................................................17

        2.    State Action.......................................................................21

C.    Jamaica Hospital Is Entitled to Summary Judgment
On Plaintiff's Eighth Claim for Relief Alleging
Conspiracy to Violate Plaintiff's Civil Rights............................................24

POINT III

PLAINTIFF CANNOT MAINTAIN A CAUSE OF ACTION
DIRECTLY AGAINST JHMC FOR MEDICAL MALPRACTICE

A.    Vicarious Liability for Dr. Aldana Bernier and Dr. Isakov..................31

B.    Vicarious Liability for its Staff................................................31

POINT IV

DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFF'S CAUSE OF ACTION FOR MEDICAL MALPRACTICE
BECAUSE PLAINTIFF HAS NOT DEMONSTRATED AN ISSUE OF FACT.............35

POINT V

PLAINTIFF CANNOT MAINTAIN A CAUSE OF ACTION
FOR FALSE ARREST OR FALSE IMPRISONMENT

A.    Plaintiff's Claim Must Be Dismissed Because
Plaintiff Cannot Demonstrate that JHMC
Committed Medical Malpractice ................................................36

B.    Plaintiff's Confinement was "Otherwise Privileged" ........................36

POINT VI

PLAINTIFF CANNOT MAINTAIN A CAUSE OF ACTION
FOR NEGLIGENT HIRING, TRAINING OR SUPERVISION ......................................38

POINT VII

PLAINTIFF CANNOT MAINTAIN A CAUSE OF ACTION
FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ..............................40

CONCLUSION.................................................................................41

# TABLE OF AUTHORITIES

## Cases

*Abramson v. Pataki,*
  278 F.3d 93 (2d Cir. 2002) ............................................................... 2

*Adickes v. Kress & Co.,*
  398 U.S. 144 (1970).............................................................. 16, 21

*Algarin v. New York City Dep't of Correction,*
  60 F.Supp.2d 469 (S.D.N.Y. 2006) ............................................. 19

*Baez v. JetBlue Airways,*
  745 F.Supp.2d 214 (E.D.N.Y. 2010) .......................................... 39

*Baity v. County of Rockland,*
  2014 U.S.Dist. LEXIS 145836 (S.D.N.Y. Sept. 30, 2014) ..................... 3, 4, 10

*Barry v. New York City Police Dept.,*
  2004 U.S. Dist. LEXIS 5951 (S.D.N.Y. April 7, 2004) ................................. 20

*Batista v. Rodriguez,*
  702 F.2d 393 (2d Cir. 1983) ........................................................ 17

*Bender v. Lowe,*
  2011 U.S.Dist. LEXIS 99053 (S.DN.Y. Aug. 30, 2011)................................ 35

*Bickerstaff v. Vassar College,*
  196 F.3d 435 (2d Cir. 1999) ......................................................... 2

*Biggs v. City of New York,*
  2010 U.S.Dist. LEXIS 1213332 (S.D.N.Y. Nov. 16, 2010)........................... 38

*Birmingham v. Ogden,*
  70 F.Supp.2d 353 (S.D.N.Y. 1999) ............................................... 21

*Bloom v. Town of Stratford,*
  2006 WL 3388396 (D. Conn. Nov. 16, 2006)................................... 21

*Bouchard v. N.Y. Archdiocese,*
  719 F.Supp.2d 255 (S.D.N.Y. 2010) ............................................. 38

*Brentwood Academy v. Tennessee Secondary Athletic Association,*
    531 U.S. 288 (2001)..................................................................22

*Caban v. United States,*
    728 F.2d 68 (2d Cir. 1984) ........................................................37

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..................................................................1

*Cine SK8, Inc. v. Town of Henrietta,*
    507 F.3d 778 (2d Cir. 2007) ......................................................28

*City of Los Angeles v. Heller,*
    475 U.S. 796 (1986)..................................................................18

*Costello v. New York State Nurses Association,*
    783 F.Supp.2d 656 (S.D.N.Y. 2011) ...................................3, 4, 9

*Cress v. Wilson,*
    2008 U.S.Dist. LEXIS 104714 (S.D.N.Y. Dec. 29, 2008) ................3

*Dendariarena v. Mt. Sinai Hospital,*
    2012 Slip.Op. 31262(U) (N.Y.Sup. 2012)....................................32

*Dilworth v. Goldberg,*
    914 F.Supp.2d 433 (S.D.N.Y. 2012)..........................................17

*Dwares v. City of New York,*
    985 F.2d 94 (2d Cir. 1993) ........................................................17

*Eng v. Bellevue Hospital,*
    2014 U.S.Dist. LEXIS 160887 (S.D.N.Y. July 8, 2014)................15

*Farag v. United States,*
    587 F.Supp.2d 436 (E.D.N.Y. 2008) ..........................................29

*Fisk v. Letterman,*
    401 F.Supp.2d 362 (S.D.N.Y. 2005) ..........................................30

*Folks v. New York College of Osteopathic Medicine of New York Institute of
    Technology,*
    214 F.Supp.2d 273 (E.D.N.Y. 2002) ............................................4

*Frederick v. State of New York,*
    23 Misc.3d 1008, 874 NYS2d 762 (Ct. of Claims 2009)................37

*Friel v. County of Nassau,*
    947 F.Supp.2d 239 (E.D.N.Y. 2013). ............................................................ 20

*Goenaga v. March of Dimes Birth Defects Foundation,*
    51 F.3d 14 (2d Cir. 1995) ............................................................................ 2

*Graves v. Deutsche Bank Securities, Inc.,*
    2012 U.S.Dist. LEXIS 174691 (S.D.N.Y. Nov. 30, 2012) ............................... 4

*Grogan v. Blooming Grove Volunteer Ambulance Corp.,*
    917 F.Supp.2d 283 (S.D.N.Y. 2013) ............................................................ 24

*Gurevich v. City of New York,*
    2008 U.S.Dist. LEXIS 1800 (S.D.N.Y. Jan. 10, 2008) ................................... 39

*Hattar v. Carelli,*
    2012 U.S.Dist. LEXIS 12985 (S.D.N.Y. Jan. 11, 2012) ............................... 38

*Hollins v. City of New York,*
    No. 10 Civ. 1650 (LGS) (S.D.N.Y. Mar. 3, 2014) ........................................ 39

*Hudson v. State of New York,*
    35 Misc.3d 241, 937 NYS2d 529 ................................................................ 37

*Jackson v. Metropolitan Edison Co.,*
    419 U.S. 345, 350 (1974)............................................................................22

*Jensen v. Lane County,*
    222 F.3d 570 (9th Cir. 2000)......................................................................22

*Jessup v. Armor Corr. Health Service, Inc.,*
    2014 U.S.Dist. LEXIS 61346 (E.D.N.Y. May 2, 2014)................................... 21

*Johnson v. Columbia University,*
    2003 U.S.Dist. LEXIS 20932 (S.D.N.Y. Nov. 19, 2003)..........................29

*Johnson v. New York,*
    21 Fed. Appx. 41, 2001 WL 1205363 (2d Cir. Oct. 10, 2001)................. 21, 29

*Kia P. v. McIntyre,*
    235 F.3d 749 (2d Cir. 2000) ...................................................................... 23

*Kraft v. City of New York*
    696 F.Supp.2d 403 (S.D.N.Y. 2010)............................................................1, 40

*Lovell v. Cayuga Correctional Facility,*
   2004 WL 2202624 (W.D.N.Y. Sept. 29, 2004)...............................16

*Lyman v. The New York and Presbyterian Hospital,*
   2014 U.S.Dist. LEXIS 95492 (S.D.N.Y. July 14, 2014)...................... 3

*Lynch v. Southampton Animal Shelter Foundation, Inc.,*
   971 F.Supp.2d 340 (E.D.N.Y. 2013) ..........................................23

*Mallgren v. Burkholder,*
   2014 U.S.Dist. LEXIS 107256 ..................................................37

*Manbeck v. Micka,*
   640 F.Supp.2d 351 (S.D.N.Y. 2009) ..........................................29

*McNenney v. Marsh & McLennan,*
   2015 U.S.Dist. LEXIS 8645 (S.D.N.Y. Jan. 26, 2015)...............20

*Mercedes v. Farrelly,*
   2012 N.Y.Misc.LEXIS 2032 (N.Y. Co. May 1, 2012)....................32

*Michaels v. City of New York,*
   2011 U.S.Dist. LEXIS 15806 (S.D.N.Y. February 16, 2011)....................17

*Monell v. Dep't of Soc. Servs. of the City of New York,*
   436 U.S. 658, 98 S.Ct. 2018 (1978)........................................ 16, 17

*Morse v. City of New York,*
   2001 U.S.Dist. LEXIS 12795 (S.D.N.Y. August 24, 2001)...........................23

*Nicholas v. City of Binghamton,*
   2012 U.S. Dist. LEXIS 111736 (N.D.N.Y August 7, 2012) ...........................40

*O'Gee v. Dobbs Houses, Inc.,*
   570 F.2d 1084 (2d Cir. 1978) .............................................. 7

*People v. Ely,*
   68 NY2d 520 (1986) ..................................................... 5

*People v McGee*
   49 NY2d 48 (1979)...................................................... 5

*Primmer v. CBS Studios, Inc.,*
   667 F.Supp.2d 248 (S.D.N.Y. 2009) .......................................... 4

*Reynolds v. Darrah,*
 2011 U.S.Dist. LEXIS 113621 (S.D.N.Y. September 30, 2011) ................... 15

*Ross University School of Medicine, Ltd. v. Brooklyn-Queens Health Care, Inc.,*
 2013 U.S.Dist. LEXIS 45949 (E.D.N.Y. Mar. 28, 2013)...... ...........20

*Ruhlmann v. Smith,*
 234 F.Supp.2d 140 (N.D.N.Y. 2002).................................................................23

*Schlein v. Milford Hospital, Inc.,*
 561 F.2d 427 (2d Cir. 1977) ....................................................................... 24

*Schoolcraft v. City of New York*
 2011 U.S.Dist. LEXIS 48996 (S.D.N.Y May 5, 2011).........................22

*Scotto v. Almenas,*
 143 F.3d 105 (2d Cir. 1998) ....................................................................... 29

*Scroxton v. Town of Southold,*
 2010 U.S.Dist. LEXIS 27659 (E.D.N.Y. March 24, 2010)......................16

*Singer v. Fulton County Sheriff,*
 63 F.3d 110 (2d Cir. 1995).................................................................24

*Smith v. County of Nassau,*
 34 NY2d 18 (1974) ..................................................................... 33

*Suits v. Wyckoff Hgts. Med. Ctr.,*
 84 AD3d 487, 922 NYS2d 388 (1st Dept. 2011) ..................................... 32

*Sybalski v. Independent Group Home Living Program,*
 546 F.3d 255 (2d Cir. 2008) ....................................................................... 24

*Sykes v. McPhillips,*
 412 F.Supp.2d 197 (N.D.N.Y. 2006)....................................23, 29, 37

*Tatum v. City of New York,*
 2009 U.S.Dist. LEXIS 3512 (S.D.N.Y. Jan. 20, 2009) .................................. 38

*Tewksbury v. Dowling,*
 169 F.Supp.2d 103 (E.D.N.Y. 2001).................................................22

*Tsesarskaya v. City of New York,*
 843 F.Supp.2d 446 (S.D.N.Y. 2012) ...................................................... 38

*Turturro v. Continental Airlines,*
    334 F.Supp.2d 383 (S.D.N.Y. 2004) ............................................................ 17

*United States ex rel. Romano v. N.Y. Presbyterian,*
    426 F.Supp.2d 174 (S.D.N.Y. 2006) ............................................................ 1

*United States v. Stein,*
    541 F.3d 130 (2d Cir. 2008) ........................................................................ 22

*Van Dunk v. Brower,*
    2013 U.S.Dist. LEXIS 160667 (S.D.N.Y. Nov. 7, 2013) ........................... 3, 29

*Vega v. Fox,*
    457 F.Supp.2d 172 (S.D.N.Y. 2006) ............................................................ 21

*Velez v. City of New York,*
    730 F.3d 128 (2d Cir. 2013) ........................................................................ 39

*Warheit v. City of New York,*
    2006 U.S.Dist. LEXIS 58167 (S.D.N.Y. August 15, 2006) .......................... 18

*Whitley v. Westchester County,*
    1997 U.S. Dist. LEXIS 16335 (S.D.N.Y. Oct. 22, 1997) .................... 16

*Will v. Mich. Dept. of State Police,*
    491 U.S. 58 (1989) ...................................................................................... 16

*Williams v. City of Mount Vernon,*
    428 F.Supp.2d 146 (S.D.N.Y. 2006) ............................................................ 40

*Wood v. Town of East Hampton,*
    2010 U.S.Dist. LEXIS 104806 (E.D.N.Y. Sept. 30, 2010) .......................... 21

*Wright v. City of New York,*
    2001 U.S.Dist. LEXIS 8923 (S.D.N.Y. July 2, 2001) .................................. 40

*Zahrey v. City of New York,*
    2009 U.S.Dist. LEXIS 31893 (S.D.N.Y. April 15, 2009) ............................. 29

*Zeak v. United States,*
    2015 U.S.Dist. LEXIS 6044 (S.D.N.Y. Jan. 20, 2015) ........................... 1, 2, 39

## PRELIMINARY STATEMENT

This Reply Memorandum of Law is respectfully submitted on behalf of defendant JAMAICA HOSPITAL MEDICAL CENTER ("JHMC" or "the Hospital" or "Jamaica Hospital") in further support of its motion for an Order dismissing plaintiff's Third Amended Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## STANDARD FOR SUMMARY JUDGMENT

Plaintiff's Memorandum of Law in Opposition to JHMC's Motion for Summary Judgment reads like a closing argument, and is replete with references to "the evidence shows this" or "the evidence show that." This Court, however, should not be swayed by a compelling narrative and repetitive phrases designed to pass for the truth. This Court will no doubt recognize that conspicuously lacking from plaintiff's Memorandum of Law and 56.1 Statement are citations to the actual evidence that allegedly creates a question of fact, which plaintiff must submit to oppose Jamaica Hospital's motion.

It is the non-moving party's burden to set forth specific facts raising a genuine issue of fact for trial, *United States ex rel. Romano v. N.Y. Presbyterian*, 426 F.Supp.2d 174 (S.D.N.Y. 2006), and a party cannot avoid summary judgment "merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Kraft v. City of New York*, 696 F.Supp.2d 403, 412 (S.D.N.Y. 2010). The nonmoving party "must set out specific facts" and cannot rely on "mere allegations or denials contained in the pleadings." *Zeak v. United States*, 2015 U.S.Dist. LEXIS 6044, *5 (S.D.N.Y. Jan. 20, 2015). The non-moving party is required to make a showing sufficient to establish the existence of *each element* constituting its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (A complete failure of proof concerning an

essential element of the non-moving party's case necessarily renders all other facts immaterial); *Abramson v. Pataki*, 278 F.3d 93 (2d Cir. 2002).  If the moving party can point to the absence of evidence to support an essential element of the non-moving party's claim, summary judgment should be granted.  *See Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995); *Zeak v. United States*, 2015 U.S.Dist. LEXIS 6044 (S.D.N.Y. Jan. 20, 2015).     Statements that are devoid of specifics and evidence that is "merely colorable" are insufficient to defeat a properly supported motion for summary judgment.  *See Bickerstaff v. Vassar College*, 196 F.3d 435 (2d Cir. 1999).

Plaintiff has not met his burden.  Accordingly, this Court should grant JHMC summary judgment, and dismiss plaintiff's Third Amended Complaint in its entirety.

## ARGUMENT

### POINT I

### PLAINTIFF'S COUNTER 56.1 STATEMENT IS INADEQUATE TO REFUTE THOSE STATEMENTS SET FORTH BY JHMC AS FACTS WHICH ARE NOT IN DISPUTE

Pursuant to Local Civil Rule 56.1 of the Southern District of New York, a party moving for summary judgment must submit a statement of material facts as to which it maintains there is no genuine issue to be tried ("56.1 Statement").  The party opposing the motion must submit a responsive statement of facts as to which that party believes a triable issue remains.  Local Civil Rule 56.1(b). Rule 56.1(d) requires that each statement of the opposing party controverting any statement of material fact "**be followed by citation to evidence which would be admissible**, set forth as required by Fed. R. Civ. P. 56(c)" (emphasis added).

If the opposing party fails to submit a proper responsive statement ("a Counter-Statement"), then the facts set forth in the moving party's 56.1 statement can be deemed admitted. *See* Local Civil Rule 56.1(a)-(c); *Cress v. Wilson*, 2008 U.S.Dist. LEXIS 104714 (S.D.N.Y. Dec. 29, 2008). A Counter-Statement can be improper if it does not actually controvert the facts set forth in the moving party's 56.1 Statement, or if the non-moving party denies facts set forth in the moving party's 56.1 Statement without any citations to admissible evidence, or if the non-moving party cites evidence that does not actually support the non-moving party's denial. *See Van Dunk v. Brower*, 2013 U.S.Dist. LEXIS 160667, *4-5, n.3 (S.D.N.Y. Nov. 7, 2013); *Costello v. New York State Nurses Association*, 783 F.Supp.2d 656, 661, n.5 (S.D.N.Y. 2011) (Although plaintiff's Counter-Statement contained numbered paragraphs corresponding to defendants', plaintiff frequently failed to refer to evidence in the record to support her contention that certain facts were disputed; did not specifically dispute defendants' statements; disputed defendants' statements with conclusory allegations, speculation or conjecture; or improperly contained legal arguments); *Baity v. County of Rockland*, 2014 U.S.Dist. LEXIS 145836, *3 (S.D.N.Y. Sept. 30, 2014) (a number of plaintiff's purported denials quibble with defendants' phraseology, but do not address the factual substance by defendants; or improperly add equivocal statements to plaintiff's denials or admissions).

A court may consider the facts contained in the moving party's 56.1 Statement as admitted in the absence of an appropriate Counter-Statement. *See Id.*; *See also Lyman v. The New York and Presbyterian Hospital*, 2014 U.S.Dist. LEXIS 95492, *2-3, n.1 (S.D.N.Y. July 14, 2014) (Where facts stated in a party's 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the

Court finds such facts to be true); *Primmer v. CBS Studios, Inc.*, 667 F.Supp.2d 248 (S.D.N.Y. 2009); *Folks v. New York College of Osteopathic Medicine of New York Institute of Technology*, 214 F.Supp.2d 273, 281 (E.D.N.Y. 2002) ("The defendants are correct that the plaintiff's Rule 56.1 statement is defective in its failure to controvert the material facts set forth in the defendants Rule 56.1 statement or to cite to any admissible evidence. . . and the facts set forth in the defendants' Rule 56.1 statements are deemed admitted as a matter of law"); *Graves v. Deutsche Bank Securities, Inc.*, 2012 U.S.Dist. LEXIS 174691 (S.D.N.Y. Nov. 30, 2012), *aff'd* 2013 U.S.App. LEXIS 24091 (2d Cir. Dec. 4, 2013) (the Court may disregard any material contained in a 56.1 Statement or Counter-Statement that is improper); *Costello v. New York State Nurses Association*, *supra*, 783 F.Supp.2d at 661, n.5; *Baity v. County of Rockland*, 2014 U.S.Dist. LEXIS 145836, *3 (S.D.N.Y. Sept. 30, 2014) (responses that do not point to any evidence in the record that may create a genuine issue of material fact do not function as denials, and will be deemed admissions of the stated fact). Significantly, in *Baity*, the Court also criticized plaintiff's counsel's attempt to introduce exhibits without any authentication, and therefore did not rely on those exhibits when deciding defendants' motion for summary judgment. 2014 U.S.Dist. LEXIS 145836, *6.

A.  The Following Statements of Fact Must Be Deemed Admitted Because Plaintiff Cites Evidence that is Not in Admissible Form to Refute Defendant's Statements

In his Counter-Statement of Material Facts, plaintiff's counsel repeatedly cites the "Home Invasion Recording" as evidence to refute several of the statements in JHMC's 56.1. As discussed above, however, plaintiff must refer to evidence that is in admissible form. Admissibility of tape-recorded conversation requires proof of the accuracy or authenticity of the tape by "clear and convincing evidence" establishing "that the offered evidence is genuine

and that there has been no tampering with it." *People v. Ely*, 68 NY2d 520, 527-528 (1986); *People v McGee*, 49 NY2d 48, 59 (1979), *cert denied sub nom. Waters v New York*, 446 U.S. 942.   The necessary foundation may be provided in a number of different ways, but here, plaintiff has not proffered any proof that the "Home Invasion Recording" is accurate and authentic.   Accordingly, plaintiff's references to the "Home Invasion Recording" in his Counter-Statement constitute references to inadmissible evidence (at least to the extent plaintiff is seeking to rely on them to oppose JHMC's motion for summary judgment), and therefore the following statements must be deemed admitted for the purposes of this motion:

32.    Chief Marino then ordered the plaintiff to be handcuffed and transported to the hospital because he believed the plaintiff was an emotionally disturbed person (Exhibit P, p. 301)[1] (Exhibit K, p. 155) (Exhibit R, pp. 186-187).[2]*

112.    Deputy Chief Michael Marino never spoke to any personnel from Jamaica Hospital, including anyone who treated the plaintiff (Exhibit P, pp. 410-411).*

113.    Capt. Theodore Lauterborn never spoke to any personnel from Jamaica Hospital, including doctors and nurses (Exhibit O, pp. 335-336).*

115.    Deputy Inspector Steven Mauriello did not have any contact with or speak to anyone, including doctors and nurses, at Jamaica Hospital (Exhibit MM, pp. 4-5).*

117.    Lt. Elise Hanlon never spoke with or had contact with any doctors, nurses or anyone else at Jamaica Hospital (Exhibit S, pp. 270-271).*

119.    Lt. William Gough never spoke with anyone at Jamaica Hospital regarding the plaintiff (Exhibit R, pp. 65-74).*

---

[1]  All references to Exhibits pertain to the Exhibits attached to the Declaration of Gregory J. Radomisli filed on January 5, 2015 or to the Amended Declaration of Gregory J. Radomisli filed on January 30, 2015.

[2] * In addition to referring to the Home Invasion Recording, plaintiff's counsel cites his Memorandum of Law as "evidence" that refutes JHMC's 56.1 Statement.  Obviously, plaintiff's Memorandum of Law and the legal arguments contained therein do not constitute a citation to admissible evidence

121.    Sgt. Kurt Duncan never had any contact with anyone at Jamaica Hospital (Exhibit MM, p. 9).*

122.    Lt. Christopher Broschart did not give instructions to anyone at Jamaica Hospital as to what to do with plaintiff (Exhibit Q, pp. 260-261).*

As with the above-referenced paragraphs, plaintiff attempts to refute the following Statements simply by reference to his Memorandum of Law:

114.    Lt. Timothy Caughey never spoke to any personnel from Jamaica Hospital, about the plaintiff (Exhibit MM, p. 4).

116.    Sgt. Rasheena Huffman never spoke to anyone at Jamaica Hospital regarding the plaintiff (Exhibit N, pp. 174-175).

118.    Capt. Timothy Trainor never spoke to anyone at Jamaica Hospital about the plaintiff (Exhibit MM, p. 6).

Given plaintiff's failure to refute any of the above-referenced statements with evidence in admissible form, **it is clear that plaintiff does not have any evidence to support his claim for conspiracy to violate plaintiff's civil rights because the above-referenced, undisputed facts establish that there was no contact between any of the City defendants and any of the JHMC personnel.  Similarly, those undisputed facts demonstrate that there is no evidence that the private defendants engaged in state action.**  Accordingly, plaintiff's Section 1983 claims must be dismissed.

B.    The Following Statements of Fact Must Be Deemed Admitted Because Plaintiff's "Hearsay" Objections Are Improper

In his Counter-Statement of Material Facts, plaintiff's counsel repeatedly invokes "hearsay" as an objection in response to several of the statements in JHMC's Rule 56.1 Statement.  However, Rule 56.1 does not provide plaintiff with that option.  Accordingly, the Statements to which plaintiff objected as "hearsay" should be deemed admitted.

Although plaintiff does not specify the basis for his "hearsay" objections, they are presumably based either on the contention that the JHMC chart itself is "hearsay," or that the statements contained therein are "hearsay." Assuming plaintiff is implicitly arguing that an appropriate Counter-Statement is not required because the Statements submitted by JHMC in its 56.1 Statement were not in admissible form because they constituted "hearsay," plaintiff's objections are meritless.

Hospital records are admissible as a Business Record, pursuant to Rule 803(6) of the Federal Rules of Evidence. JHMC previously produced a certified copy of the Hospital chart, several witnesses from the Hospital authenticated the chart (*See e.g.*, Exhibit V, pp. 18-19; Exhibit W, pp. 37-38) and plaintiff himself filed a copy of the JHMC chart when he made his summary judgment motion. Therefore, there can be no objection to the chart itself.

With respect to the contents of the plaintiff's hospital chart, a hearsay statement "that A) is made for- and . . . reasonably pertinent to- medical diagnosis or treatment; and B) describes medical history; past or present symptoms or sensations; their inception; or their general cause" is admissible <u>as an exception</u> to the hearsay rule. *See* Rule 803(4) of the Federal Rules of Evidence. When a physician relies on the "hearsay" statement in formulating his or her opinion and treatment plan, then such statements are generally admissible. *See O'Gee v. Dobbs Houses, Inc.,* 570 F.2d 1084, 1089 (2d Cir. 1978). In *O'Gee,* the Second Circuit held that Rule 803(4) "clearly permits the admission into evidence" what the patient said and how he acted, so long as it was relied upon by the physician in formulating his opinion. In this case, Dr. Aldana-Bernier testified that she relied upon the statements by the police officers and others whose statements were recorded in the hospital chart when she evaluated the plaintiff (*See* Exhibit W, p. 144-147). Because plaintiff's

objections to the following Statements are not sufficient to refute them, they must be deemed admitted:

41.  At 12:03 a.m. on November 1, Dr. Silas Nwaishieny examined the plaintiff and requested a psychiatric consultation (Exhibit U, pp. 13-14).

42.  Dr. Khin Mar Lwin, a psychiatric resident, performed the psychiatric consultation, which had been requested because the plaintiff had been acting "bizarre" (Exhibit U, pp. 4-6).

44.  The NYPD officers who remained with the plaintiff at that time informed Dr. Lwin of the plaintiff's history and the events that occurred throughout the day, and said that the plaintiff had left work early "after getting agitated and cursing [his] supervisor" (Exhibit U, pp. 4-6).

45.  Dr. Lwin was also told that the plaintiff had "barricaded himself" in his apartment, which required the NYPD to break the door down, and that the plaintiff had initially agreed to go to the Hospital for evaluation, but that once he was outside his house, he began to run, after which a chase ensued, and he was brought to the ED in handcuffs (Exhibit U, pp. 4-6) (Exhibit V, p. 45).

46.  Dr. Lwin was also advised that the plaintiff had previously been evaluated by an NYPD psychologist and that as a result, the plaintiff has not carried a gun or a badge for almost a year (Exhibit U, pp. 4-6).

47.  Dr. Lwin noted that while the plaintiff was in the ED before Dr. Lwin saw him, the plaintiff had become agitated, uncooperative and verbally abusive due to a discussion about using the telephone, and that he had told his treating physician that "they are all against me" (Exhibit U, pp. 4-6).

61.  On November 1, 2009 at 6:58 a.m., the Psychiatric Emergency Department was made aware that the plaintiff would be transferred from the Medical Emergency Department (Exhibit U, p. 16).

62.  The Jamaica Hospital chart indicates that the plaintiff was admitted to the Psychiatric Emergency Department under Dr. Aldana-Bernier's service on November 1, 2009, at 8:54 a.m. (Exhibit U, pp. 59-63).

71.  Dr. Tariq stated that the plaintiff was cooperative, but that he was angry, with constricted affect (Exhibit U, pp. 74-79).

72.  Dr. Tariq noted that the plaintiff had paranoid and persecutory delusions because he believed that he was being persecuted for having reported his supervisors' irregularities and corruptive behavior (Exhibit U, pp. 74-79).[3]**

73.  Dr. Tariq also determined that the plaintiff had poor insight and judgment (Exhibit U, pp. 74-79).**

74.  Dr. Tariq diagnosed the plaintiff as suffering from Psychosis, NOS, Rule Out Schizophrenia, Paranoid Type (Exhibit U, pp. 74-79). **

76.  At 15:38 and at 5:54, it was noted that the plaintiff had spoken with his father on the telephone (Exhibit U, p. 82).

82.  Dr. Aldana-Bernier indicated that she agreed with the previous evaluation by resident Dr. Tariq (Exhibit U, pp. 57-58) (Exhibit W, pp. 167 and 193).

Given plaintiff's failure to refute any of the above-referenced statements with evidence in admissible form, this Court must accept as true the information provided to the JHMC residents and the diagnoses they made based thereon, **all of which demonstrate that they had a reasonable basis to conclude that the plaintiff needed observation and to refer him to the Psychiatric Emergency Department for further evaluation and, ultimately, justify his admission.**

C.  The Following Statements of Fact Must Be Deemed Admitted Because Plaintiff's Interpretation and/or Qualification of the Evidence is Improper

In his Counter-Statement of Material Facts, plaintiff's counsel either qualifies the following Statements of Fact, renders his own "spin" on those facts, or adds gratuitous comments in response to those facts, all of which is improper, particularly in the absence of citations to admissible evidence. *See Costello v. New York State Nurses Association*, 783

---

[3]  ** In addition to objecting on the grounds of "hearsay," plaintiff's counsel also "denied the conclusions." Although plaintiff may disagree with the conclusions drawn, there is no issue of fact as to what Dr. Tariq diagnosed.

F.Supp.2d 656, 661, n.5, *supra*; *Baity v. County of Rockland*, 2014 U.S.Dist. LEXIS 145836,

*3 (S.D.N.Y. Sept. 30, 2014).  Therefore, the following Statements must be deemed admitted:

7.    In April 2009, the plaintiff was referred to Dr. Catherine Lamstein, a psychologist who worked at the New York City Police Department, because he was suffering from "psychological issues" (Exhibit M, pp. 84 and 102).

8.    Those issues stemmed from the plaintiff's "anxiety secondary to the stress on the job" (*Id.,* p. 87).

9.    Dr. Lamstein evaluated the plaintiff and recommended cognitive behavioral therapy (*Id.*, p. 106).

10.    Dr. Lamstein also recommended that the plaintiff see a psychiatrist for an evaluation because two previous doctors had prescribed him psychiatric medication, one of which was an antipsychotic. (*Id.*, pp. 113, 149).

13.    The plaintiff left work early on October 31, 2009, but he failed to obtain the requisite permission necessary to leave work early, thereby failing to follow required police procedure (Exhibit O, pp. 235-236) (Exhibit K, p. 121) (Exhibit N, pp. 68, 73).

14.    The plaintiff dropped a sick report on the lap of the precinct's Desk Sergeant, Sergeant Rasheena Huffman, walked away, and left the precinct  (*Id.*, p. 73).

16.    A number of his fellow officers began an investigation into his absence and arrived at his residence (Exhibit O, pp. 237 and 289-290) (Exhibit K, p. 132) (Exhibit P, p. 238).

18.    The officers became worried about the plaintiff's well-being (*Id.*, pp. 111-112).

27.    He was examined by an Emergency Medical Service Crew member (Exhibit S, p. 109), and it was recommended that he go to the hospital (Exhibit S, p. 114) (Exhibit Q, p. 164) (Exhibit R, p. 166) because he had high blood pressure (Exhibit R, p. 166) (Exhibit S, pp. 95 and 113) (Exhibit T, p. 96).

28.    The plaintiff agreed to go to the hospital and voluntarily walked to the ambulance, which was located on the street outside his apartment (Exhibit R, p. 166) (Exhibit S, p. 161).  Upon reaching the ambulance,

the plaintiff turned around and returned to his second floor apartment (Exhibit S, p. 130) (Exhibit R, p. 177).

50.    Dr. Lwin determined that the plaintiff's memory and concentration were intact, that he was alert and oriented, but that his insight and judgment were impaired (Exhibit U, p. 6).

51.    Dr. Lwin diagnosed the plaintiff with a Psychotic Disorder, Not Otherwise Specified ("NOS") (Exhibit U, p. 6).

52.    Dr. Lwin recommended continued one-to-one observation due to the plaintiff's unpredictable behavior and escape risk (Exhibit U, p. 6.).

53.    Dr. Lwin also recommended that the plaintiff be transferred to the Psychiatric Emergency Room for further observation after he was medically cleared (Exhibit U, p. 6.) (Exhibit V, p. 47).

54.    Dr. Indira Patel, a psychiatric attending physician, confirmed Dr. Lwin's diagnosis and treatment recommendations (Exhibit V, p. 47). A 6:30 a.m. note indicates that Dr. Lwin discussed the case with the attending physician, and that he concurred with the diagnosis and treatment recommendations (*Id.*) (Exhibit U, pp. 4-6) (Exhibit BB, p. 37).

79.    After the plaintiff was transferred to the Psychiatric ED, codefendant Dr. Lilian Aldana-Bernier took over his care as the attending psychiatrist while he was in the Psychiatric ED prior to his admission to the psychiatric unit (Exhibit W, p. 322).

81.    Dr. Aldana-Bernier determined that the plaintiff was a danger to himself because he was psychotic and paranoid, and would benefit from in-patient stabilization (Exhibit U, pp. 57-58) (Exhibit W, pp. 198 and 217).

83.    On November 3, 2009 at 1:20 p.m., codefendant Dr. Lilian Aldana-Bernier completed the Emergency Admission Form pursuant to Mental Hygiene Law §9.39 (Exhibit U, pp. 57-58).

91.    Dr. Isakov found the plaintiff to be suspicious, guarded, restless, and demanding to be discharged (Exhibit U, p. 95).[4]

---

[4] *** Plaintiff's counsel refers to his expert's report as alleged evidence refuting Dr. Isakov's state of mind, which is not evidence in admissible form.

92.  The plaintiff denied suicidal and homicidal ideation, but Dr. Isakov noted that the plaintiff expressed questionably paranoid ideas about conspiracies and cover-ups in his precinct (Exhibit U, p. 95).[***]

93.  Dr. Isakov noted that the plaintiff's cognition and memory were intact, but that his judgment and insight were limited (Exhibit U, p. 95).[***]

94.  Dr. Isakov's diagnosis was Psychosis NOS, Rule Out Adjustment Disorder with Anxiety (Exhibit U, p. 95).[***]

95.  On November 5, 2009, Dr. Isakov performed an evaluation of the plaintiff (Exhibit U, pp. 97-98).[***]

98.  On November 6, 2009, Dr. Isakov performed an evaluation of the plaintiff (Exhibit U, p. 99).[***]

109.  The Policies and Procedures regarding restraints are from the Policy and Procedure Manual from the Psychiatric Emergency Department of Jamaica Hospital (Exhibit HH, p. 1).

110.  A physician in the Medical Emergency Department has authority to keep a patient under observation (Exhibit II, p. 153).

111.  The written policy of Jamaica Hospital Medical Center contains language regarding the criteria for involuntary hospitalization that is identical to the language in the Mental Hygiene Law (Exhibits NN and II).

Given plaintiff's failure to refute any of the above-referenced statements with evidence in admissible form, this Court must accept those statements as true, **all of which demonstrate that the plaintiff was appropriately evaluated and admitted to Jamaica Hospital**. Accordingly, JHMC is entitled to summary judgment on all of plaintiff's claims for relief.

D.  **The Following Statements of Fact Must Be Deemed Admitted Because Plaintiff's Claim that the Evidence Does Not Support Them is Belied by the Evidence Cited by JHMC in Its 56.1 Statement**

In his Counter-Statement of Material Facts, plaintiff's counsel claims that the "evidence does not support" the following Statements of Fact, but plaintiff's counsel does not

cite any evidence contradicting those Statements, whereas JHMC cited specific support for those Statements in the record. A review of the sources cited by JHMC will verify that the evidence supports the Statements asserted. Because plaintiff does not present any evidence to the contrary, the following Statements must be deemed admitted:

30. The EMS personnel remained by the ambulance, and did not enter the plaintiff's apartment again (Exhibit S, p. 193) (Exhibit T, pp. 114 and 118-119).

42. Dr. Khin Mar Lwin, a psychiatric resident, performed the psychiatric consultation, which had been requested because the plaintiff had been acting "bizarre" (Exhibit U, pp. 4-6).

55. The plaintiff himself expressed that he had no complaints with regard to the care and treatment rendered by Dr. Lwin (Exhibit L, p. 497).

56. As the attending physician in charge of the plaintiff at this time, Dr. Patel had the ultimate responsibility and was the decision-maker with regard to the plaintiff's care (Exhibit V, pp. 39-41 and 47) (Exhibit W, pp. 320-321). Dr. Lwin, as the resident, could not make a decision with regard to the plaintiff's care without the approval of the attending physician (Exhibit V, pp. 39-41 and 476) (Exhibit W, pp. 320-321).

57. At 6:56 a.m., Dr. Nwaishienyi indicated that the plaintiff would be transferred to the Psychiatric Emergency Department (Exhibit U, p. 14).

58. Plaintiff's chart from the Medical Emergency Department indicates that the physicians thought that the plaintiff had been arrested (Exhibit U, pp. 4 and 13) (Exhibit V, p. 43).

66. Dr. Khwaja Khusro Tariq, a resident physician, performed a psychiatric consultation in the Psychiatric Emergency Department at 12:00 p.m. (Exhibit U, pp. 74-79).

69. The plaintiff told Dr. Tariq the he has been reporting irregularities at work to Internal Affairs for over a year, that his supervisors had been under-reporting crime statistics to advance their careers, that he had documentary proof thereof, and that, as a result, he was being "persecuted" (Exhibit U, pp. 74-79).

77. On November 2, 2009, the plaintiff was examined by Dr. Heron, who noted that the plaintiff had been taken to the Hospital because the

NYPD thought he was paranoid and was a danger to himself (Exhibit U, pp. 64-67).

80.    As the plaintiff's attending, Dr. Aldana-Bernier supervised the residents who evaluated the plaintiff in the Emergency Room prior to admission, as she had the ultimate responsibility to care for the plaintiff during her shift (Exhibit W, pp. 320-321).

81.    Dr. Aldana-Bernier determined that the plaintiff was a danger to himself because he was psychotic and paranoid, and would benefit from in-patient stabilization (Exhibit U, pp. 57-58) (Exhibit W, pp. 198 and 217).

88.    To obtain the information for the basis of his note, Dr. Isakov spoke to a social worker who previously evaluated the plaintiff, spoke to the plaintiff's father, and evaluated the plaintiff himself (Exhibit X, pp. 144-145).

90.    The plaintiff told Dr. Isakov that his gun had been taken away from him after a psychiatric evaluation was performed by an NYPD psychologist, and that, since then, he has started to collect the "evidence" to "prove his point," but then he became suspicious that "they are after him" (Exhibit U, p. 94).

96.    Dr. Isakov noted that although the plaintiff "reiterated his story" and still wanted "to take steps/action against his precinct," he did not express any physical threats to anyone (Exhibit U, pp. 97-98).

97.    The plaintiff refused to give permission for anyone at Jamaica Hospital to speak with the police psychiatrist who had previously evaluated him, but he agreed to see a psychotherapist after he was discharged (Exhibit U, pp. 97-98).

102.   Dr. Isakov discharged the plaintiff with a recommendation to follow up with a psychotherapist and, if he became symptomatic, to see a psychiatrist for medication (Exhibit U, pp. 41-42).

103.   Dr. Isakov's discharge diagnosis was Adjustment Disorder with Anxious Mood (Exhibit U, pp. 41-42).

104.   The plaintiff verbalized an understanding of the recommendation and was discharged on his own on November 6, 2009 (Exhibit U, p. 43).

105.   After his discharge from Jamaica Hospital on November 6, the plaintiff treated on only one occasion with private physician Dr. Steven Luell (Exhibit L, p. 417) (Exhibit U, p. 46) (Exhibit Y, p. 1).

Given plaintiff's failure to refute any of the above-referenced statements by citing evidence to the contrary, this Court must accept those statements as true, **all of which demonstrate that the plaintiff was appropriately evaluated and admitted to Jamaica Hospital**. Accordingly, JHMC is entitled to summary judgment on all of plaintiff's claims for relief.

**POINT II**

**JAMAICA HOSPITAL IS ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFF'S §1983 CLAIMS**

A.      Jamaica Hospital Medical Center Cannot Be Subject
         **to Direct Liability** Under 42 USC §1983 Because
         Jamaica Hospital Medical Center Is Not a "Person."[5]

Plaintiff's Seventh and Ninth Claims for relief sound in, respectively, Involuntary Confinement under 42 USC §1983 (Exhibit LL, ¶¶282-287) and Violation of Substantive and Procedural Due Process under 42 USC §1983 (Exhibit LL, ¶¶293-300).

A §1983 action can only be maintained against a "person" who has deprived another of his or her constitutional rights. *See e.g. Reynolds v. Darrah*, 2011 U.S.Dist. LEXIS 113621 (S.D.N.Y. September 30, 2011). As the Court noted in *Reynolds*, "Jails, courts, corporations and law firms are not 'persons' within the meaning of §1983." 2011 U.S.Dist. LEXIS 113621 at *3. In *Eng v. Bellevue Hospital*, 2014 U.S.Dist. LEXIS 160887 (S.D.N.Y. July 8, 2014), this Court dismissed plaintiff's claims for violation of his civil rights against Bellevue Hospital because it found that "**a hospital is not a 'person' under 42 U.S.C. §1983**." 2014 U.S.Dist. LEXIS 160887 at *12 (emphasis added). Plaintiff's characterization of those holdings as *dicta* is simply wrong.

---

[5] JHMC is not making any argument that the plaintiff sued the wrong entity.

Plaintiff's counsel's citation to *Will v. Mich. Dept. of State Police*, 491 U.S. 58 (1989), and his claim that there are "countless decisions under Section 1983 that hold that private entities are proper defendants under the statute" (p. 100, plaintiff's Memo of Law) ("MOL") [6], do not support plaintiff's position. In *Will*, the United States Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under §1983." 491 U.S. at 71. Not only did that case have nothing to do with private entities, the proposition for which plaintiff cites it, but it also confirmed that entities are *not* "persons" under the statute. Similarly, plaintiff's citation to *Adickes v. Kress & Co.*, 398 U.S. 144 (1970) does not have any pertinence to JHMC's argument that it cannot be subject to liability under 42 USC Section 1983 as a "person" because in that case, the issue was whether the individual defendant (the owner of a department store) was acting pursuant to "a state-enforced custom requiring racial segregation"—not whether an entity can be a "person" under the statute. 398 U.S. at 148.

In his Memorandum of Law, plaintiff repeatedly glosses over the distinction between individuals, against whom a Section 1983 claim can be brought, and an institution or entity, against which a 1983 action can be brought only under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978). That distinction is critical. And so there is no misunderstanding: JHMC is not arguing that it cannot be subject to liability pursuant to *Monell* if plaintiff makes the requisite showing (which, as discussed *infra*, he does not). Rather, JHMC submits that, as a matter of law, it cannot *otherwise* be subject to liability

---

[6] Significantly, plaintiff's counsel does not cite a single decision among those "countless decisions" to support his position. Although JHMC cited two cases in its Memorandum of Law, the following are a few of the "countless decisions" that demonstrate JHMC is **not** a person subject to §1983 liability: *Scroxton v. Town of Southold*, 2010 U.S.Dist. LEXIS 27659 (E.D.N.Y. March 24, 2010); *Lovell v. Cayuga Correctional Facility*, 2004 WL 2202624, *5 (W.D.N.Y. Sept. 29, 2004); *See also Whitley v. Westchester County*, 1997 U.S. Dist. LEXIS 16335, *20 (S.D.N.Y. Oct. 22, 1997).

under 42 USC §1983.  *See e.g. Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993) (reversing dismissal of Section 1983 claims against the individual defendants, but affirming the dismissal as to the City of New York); *Turturro v. Continental Airlines*, 334 F.Supp.2d 383, 392 (S.D.N.Y. 2004).  The cases plaintiff cites are inapplicable because those cases concerned state action between state actors and private <u>individuals</u>; not private <u>entities</u>.

In this case, plaintiff's Seventh Claim for Relief is for "Involuntary Confinement Under 42 U.S.C. Section 1983" and plaintiff's Ninth Claim for Relief is for "Violation of Substantive and Procedural Due Process Under 42 U.S.C. Section 1983."  **Neither of those claims for relief is based upon *Monell*.**  Therefore, the Seventh and Ninth Claims for Relief must be dismissed against Jamaica Hospital Medical Center.

> B.     Jamaica Hospital Is Entitled to Summary Judgment
>         On Plaintiff's Tenth Claim for Relief

> 1.     Requirements of *Monell*

Plaintiff's Tenth Claim for Relief sounds in "Municipal Liability."  Presumably, plaintiff is trying to hold Jamaica Hospital liable under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978), as applied to private parties.  To prevail on a claim against the Hospital under a *Monell* theory, plaintiff would have to prove three elements:  "1) an official policy or custom that 2) cause[d] the plaintiff to be subjected to 3) a denial of a constitutional right."  *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983); *see also Dilworth v. Goldberg*, 914 F.Supp.2d 433, 452 (S.D.N.Y. 2012)[7] (In the

---

[7] Defendant JHMC adopts and incorporates by reference the arguments advanced by co-defendants Dr. Isak Isakov and Dr. Aldana-Bernier in their Memoranda of Law in support of their summary judgment motions to the extent they argue that neither physician was a state actor and therefore could not have deprived the plaintiff of due process.  If this Court grants their motions, JHMC cannot be held liable under *Monell*. *See Michaels v. City of New York*, 2011 U.S.Dist. LEXIS 15806 (S.D.N.Y. February 16, 2011) (Absent a constitutional violation, no *Monell* liability can attach, even if plaintiff can

context of private actors, private employers are not vicariously liable under §1983 for the constitutional torts of their employees "absent allegations of conduct pursuant to an official policy").

As this Court noted in *Warheit v. City of New York*, 2006 U.S.Dist. LEXIS 58167 (S.D.N.Y. August 15, 2006), in order to sustain a *Monell* claim alleging violation of §1983 against a hospital for involuntary committing him, the plaintiff would have to establish a policy or custom

> to involuntarily commit patients to the hospital in violation of their substantive and procedural due process rights. This would require proof of a written directive or regulation by [defendant], an act by an [*sic*] policymaking employee at [defendant hospital], or a practice so widespread that it has the force of law at [the defendant hospital]. [Plaintiff] establishes none of these. All [plaintiff] pleads is that a number of physicians at [defendant hospital], none of whom worked in a policymaking capacity, committed him to [defendant hospital] on an emergency basis pursuant to New York's Mental Hygiene Law. ... A single incident by persons without policymaking authority cannot create liability under *Monell*. Were the Court to hold differently, it would in essence be holding [defendant hospital] liable in respondeat superior for the conduct of its employees. This is exactly what *Monell* forbids.

*Warheit* at *27-38.

In his Memorandum of Law in Opposition to JHMC's motion, plaintiff does not indicate whether he is trying to hold JHMC liable under *Monell* based upon a written directive, an act by a policymaking employee, or a practice so widespread that it has the force of law. Significantly, in his Opposition, plaintiff's counsel did even not address JHMC's arguments in its 1/30/15 Memorandum of Law that it cannot be subject to liability under *Monell* because the Hospital's written policy conformed with the Mental Hygiene Law; that neither Dr. Aldana-Bernier nor Dr. Isakaov had authority to make policy; and that plaintiff

---

demonstrate the existence of a municipal policy or practice); *see also City of Los Angeles v. Heller*, 475 U.S. 796 (1986).

has no evidence to suggest that improperly involuntarily hospitalizing patients was a widespread custom. Rather, the only argument plaintiff's counsel advances in opposition to that portion of JHMC's motion seeking to dismiss plaintiff's *Monell* claim is that Dr. Dhar allegedly testified about the Hospital's policy on involuntary commitment and that his testimony is sufficient to defeat the Hospital's motion.

Presumably, then, given that there is no dispute that Jamaica Hospital's written policy conformed with the Mental Hygiene Law, that neither Dr. Aldana-Bernier or Dr. Isakov had policymaking authority, and that Dr. Dhar did not hospitalize the plaintiff himself (regardless of whether he could be considered a final policymaker), plaintiff's claim is based upon a "widespread custom", emanating from Dr. Dhar's deposition testimony allegedly establishing that the Hospital had an "unspoken policy" of allowing a patient to be involuntarily hospitalized based upon the belief that the patient is a "potential" danger to himself or others, as opposed to a "substantial" danger and that that policy is, *ipso facto*, unconstitutional. Although plaintiff accuses JHMC of trying to "run away" from Dr. Dhar's testimony (plaintiff's MOL, p. 110), or of trying to claim that it should not be bound thereby (plaintiff's MOL, p. 111), or that he lacked authority to speak on behalf of JHMC (plaintiff's MOL, p. 111), plaintiff's counsel misconstrues the Hospital's argument. Rather, as this Court held in *Algarin v. New York City Dep't of Correction*, 460 F.Supp.2d 469, 475 (S.D.N.Y. 2006):

> [T]he requirements of the MHL do not govern a due process claim, either under the federal or New York State constitutions. Rather, under both constitutions, due process permits any physician to compel the involuntary hospitalization of a person when the physician, "on the basis of substantive and procedural criteria that are not substantially below the standards generally accepted in the medical community" finds the person to be a danger to himself or others [citation omitted]. Although the Second Circuit Court of Appeals has found compliance with the MHL *sufficient* to meet the requirements of due process. . . it has never found that compliance with the MHL is a *necessary* condition to guaranteeing due process in such circumstances. This is because the constitutionality, *vel non*, of

an involuntary commitment is assessed on the basis of whether a physician determines dangerousness according to standards generally accepted in the medical community and the MHL does not set those standards.

Accordingly, plaintiff cannot rely on Dr. Dhar's testimony as establishing a constitutional violation as a matter of law. Therefore, plaintiff and must proffer direct or circumstantial evidence that suggests a *pattern* of misconduct from which it may be inferred that decision makers approved of or acquiesced in the allegedly unconstitutional acts. *Barry v. New York City Police Dept.*, 2004 U.S. Dist. LEXIS 5951 (S.D.N.Y. April 7, 2004). Plaintiff has not presented any such evidence and, consequently JHMC is entitled to summary judgment.

Furthermore, it is not sufficient for plaintiff to demonstrate that the Hospital implemented an unconstitutional policy or custom. Rather, he must **also** demonstrate that there is a "casual connection—an affirmative link—between the policy and the deprivation of the constitutional rights." *Friel v. County of Nassau*, 947 F.Supp.2d 239, 249 (E.D.N.Y. 2013) (*citing Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). In this case, plaintiff claims that the JHMC personnel and the NYPD had a pre-arranged plan to have him committed. Therefore, there simply cannot be any causal link between Jamaica Hospital's alleged policy and plaintiff's hospitalization and retention because, based upon plaintiff's own theory of the case, he was not hospitalized pursuant to that policy.[8]

---

[8] Conversely, if the plaintiff was hospitalized pursuant to an unconstitutional policy, then plaintiff cannot demonstrate state action. Given that this is a motion for summary judgment, plaintiff must lay bare his proof and cannot present competing theories. *See McNenney v. Marsh & McLennan*, 2015 U.S.Dist. LEXIS 8645, *16, n.7 (S.D.N.Y. Jan. 26, 2015) (A party may not maintain inconsistent factual positions at summary judgment); *Ross University School of Medicine, Ltd. v. Brooklyn-Queens Health Care, Inc.*, 2013 U.S.Dist. LEXIS 45949, *60 (E.D.N.Y. Mar. 28, 2013) (Although a party may plead inconsistent theories of recovery, because a summary judgment motion is the procedural equivalent of trial in New York, a litigant must elect among inconsistent positions). In this case, plaintiff's theories are mutually exclusive, and plaintiff has not presented any evidence to support either one of them.

As in *Wood v. Town of East Hampton*, 2010 U.S.Dist. LEXIS 104806 (E.D.N.Y. Sept. 30, 2010) and *Birmingham v. Ogden*, 70 F.Supp.2d 353 (S.D.N.Y. 1999), plaintiff has "alleged a set of factual circumstances that are certainly unique to him." *Wood*, at *71 (*citing Birmingham*, 70 F.Supp.2d at 373). As such, plaintiff's claim under *Monell* cannot stand. *See also Johnson v. New York*, 21 Fed. Appx. 41, 2001 WL 1205363, *2 (2d Cir. Oct. 10, 2001); *Bloom v. Town of Stratford*, 2006 WL 3388396, *12 (D. Conn. Nov. 16, 2006) (dismissing Section 1983 claim against town when plaintiff's theory that the town ratified and became complicit in town employee's personal vendetta against plaintiff was not founded on any evidence of such a policy or custom). Accordingly, plaintiff cannot maintain a *Monell* claim against JHMC, and the Hospital should be granted summary judgment on plaintiff's Tenth Claim for Relief.

### 2.      State Action

Even if plaintiff could establish a question of fact as to whether Dr. Dhar's testimony is sufficient to establish an unconstitutional policy, JHMC is entitled to summary judgment because the plaintiff cannot present any evidence of state action. "State involvement" must be shown to sustain a *Monell* claim. *See Adickes, supra*, 398 U.S. at 166; *Jessup v. Armor Corr. Health Service, Inc.*, 2014 U.S.Dist. LEXIS 61346, *5-6 (E.D.N.Y. May 2, 2014) (A private employer "<u>acting under color of state law</u> may be held liable under Section 1983 for the acts of its employees where the unconstitutional act was authorized or undertaken pursuant to the official policy of the private entity employer and the employer was jointly engaged with state officials or tis conduct is chargeable to the state" (emphasis added). The ultimate resolution of whether an actor was functioning under color of law, or as a state actor, is a question of law for the Court. *Vega v. Fox*, 457 F.Supp.2d 172, 180-181 (S.D.N.Y. 2006) (*citing Blum v.*

*Yaretsky*, 457 U.S. 991, 997 (1982)); *see also United States v. Stein*, 541 F.3d 130, 148 (2d Cir. 2008).

Plaintiff argues that state action exists because "of the significant encouragement by the NYPD and the EMTs to Jamaica Hospital's other staff to involuntarily commit him" (Plaintiff's MOL, p. 105).[9]   There is no dispute, however, that the only physician who involuntarily hospitalized the plaintiff was Dr. Aldana-Bernier.  There is no question of fact as to the absence of involvement by any other JHMC staff member in that ultimate decision.[10] Therefore, even if this Court were to accept that there was a "sufficiently close nexus between the state and the private actor 'so that the action of the latter may be fairly treated as that of the State itself'",[11] or whether the decision to involuntarily hospitalize the plaintiff was a result of the "State's exercise of coercive power,"[12] or because the State provided "significant encouragement"[13] to compel plaintiff's involuntary hospitalization, the only "private actor" whose decision is at issue in this case is Dr. Aldana-Bernier— not any of the other JHMC staff.[14]  Because no reasonable juror could find that the State "was responsible for the specific

---

[9]  See discussion *infra* regarding the absence of state action between the EMTs and the NYPD. However, even if there were state action between the EMTs and the NYPD, plaintiff's *Monell* theory arises out of the claim that JHMC's policy on involuntary commitment was unconstitutional— plaintiff is not making any claims regarding a policy in relation to the conduct of the EMTs.

[10]  Plaintiff's quotation of this Court's comment in *Schoolcraft v. City of New York*, 2011 U.S.Dist. LEXIS 48996 at *7-8, n.2 (S.D.N.Y May 5, 2011) is meaningless because that comment was made in the context of a motion to dismiss under F.R.C.P. 12(b)(6), whereas this Court must now consider whether plaintiff has amassed sufficient proof to actually support his speculative allegations.

[11]  *Jensen v. Lane County*, 222 F.3d 570, 575 (9th Cir. 2000) (*citing Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974)).

[12]  *Brentwood Academy v. Tennessee Secondary Athletic Association*, 531 U.S. 288, 298 (2001).

[13]  *Id.*

[14]  The cases plaintiff's counsel cites for the proposition that JHMC, as an entity, engaged in state action are inapposite. In *Tewksbury v. Dowling*, 169 F.Supp.2d 103 (E.D.N.Y. 2001), for example, St. John's Episcopal Hospital was not even a named defendant when the Court rendered its decision on

conduct of which the plaintiff complains" to the extent such conduct is attributable to Jamaica

Hospital, summary judgment as to JHMC is appropriate.  *See Lynch v. Southampton Animal*

*Shelter Foundation, Inc.*, 971 F.Supp.2d 340, 349 (E.D.N.Y. 2013) (citations omitted).

The interactions between the NYPD and the Hospital staff to which plaintiff's counsel

refers in his Memorandum of Law are also insufficient to establish state action.  As this Court

recognized in *Sykes v. McPhillips*, 412 F.Supp.2d 197, 202 (S.D.N.Y. 2006), "Plaintiff points

out that the Hospital accommodated the particular security measures characteristic to

incarceration, but this conduct is really nothing more than the common sense accommodation

of security officers in the proximity of a patient."  Similarly, in *Morse v. City of New York*,

2001 U.S.Dist. LEXIS 12795, *20 (S.D.N.Y. August 24, 2001), this Court held "The fact that

[plaintiff] was brought to the hospital from police custody and was released from the hospital

into police custody is insufficient to transform this private hospital and its staff into state

actors for Section 1983 purposes."  Furthermore, while plaintiff and his experts may disagree

with the assessments made by the medical defendants, there is no question that the plaintiff

was in the hospital for medical and/or psychiatric treatment.  Thus, the Hospital staff's alleged

failure to discharge the plaintiff was "undertaken in its role as a private medical provider, and

were not state actions subject to liability under Section 1983."  *Kia P. v. McIntyre*, 235 F.3d

749, 756 (2d Cir. 2000).

Regardless of whether this Court accepts plaintiff's arguments regarding state action

between the NYPD and JHMC personnel, for plaintiff to prevail on a *Monell* theory arising

out of JHMC's policy on involuntarily hospitalizing patients, he must present evidence that

---

defendants' motion for summary judgment. 169 F.Supp.2d at 105, n.1. Similarly, in *Ruhlmann v. Smith*, 234 F.Supp.2d 140 (N.D.N.Y. 2002), one of the issues was whether the decisions by private individuals had been compelled by the state. Therefore, the holding in *Ruhlmann* does not apply to the Hospital's motion.

there is a connection between that policy and state action. *See Sybalski v. Independent Group Home Living Program*, 546 F.3d 255, 257-258 (2d Cir. 2008) ("It is not enough, however, for a plaintiff to plead state involvement in 'some activity of the institution alleged to have inflicted injury upon a plaintiff;' rather, the plaintiff must allege that the state was involved 'with the activity that caused the injury' giving rise to the action" (*citing Schlein v. Milford Hospital, Inc.*, 561 F.2d 427, 428 (2d Cir. 1977)); *see also Grogan v. Blooming Grove Volunteer Ambulance Corp.*, 917 F.Supp.2d 283, 287-88 (S.D.N.Y. 2013) ("under any test, plaintiff must establish that the state was involved in the specific activity giving rise to her cause of action; it is not enough to show merely that the state was involved in some aspect of the private entity's affairs"). Plaintiff has not presented any evidence linking Jamaica Hospital's allegedly unconstitutional policy on involuntary commitment with state action. Therefore, plaintiff's Tenth Claim for Relief must be dismissed.

      C.      Jamaica Hospital Is Entitled to Summary Judgment
                 On Plaintiff's Eighth Claim for Relief Alleging
                 Conspiracy to Violate Plaintiff's Civil Rights[15]

Plaintiff's counsel argues extensively that state action and a conspiracy exist because the Jamaica Hospital Emergency Medical Technicians ("EMTs") "made the *joint decision* with the NYPD and the FDNY to declare Officer Schoolcraft an 'EDP' and take him to the hospital against his will to be psychiatrically evaluated" (Plaintiff's MOL, p. 101; *see also* p. 103, 105). That statement is simply not true, and there is absolutely no evidence to support it. To the contrary, the evidence demonstrates that the EMTs did not have any role in declaring

---

[15] If the Court finds that JHMC did not violate plaintiff's constitutional rights, then it should automatically dismiss plaintiff's conspiracy claim because a claim of conspiracy to violate a constitutional right cannot be maintained if a constitutional right was not violated. *See e.g. Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).

Schoolcraft an EDP.  Indeed, in his Counter 56.1 Statement, plaintiff states, "Agreed that DI Mauriello was not physically present in Officer Schoolcraft's bedroom when AC Marino declared him an EDP" (p. 61, emphasis added).   Even if plaintiff had not admitted that Marino declared Schoolcraft to be an EDP, the deposition testimony is unequivocal and undisputed.  One of the EMTs, Jessica Marquez, testified as follows (Exhibit K, p. 156):

Q:   What is an EDP ?
A:    An EDP is an emotionally disturbed patient — person

Q:   And how do you define somebody who is emotionally disturbed?
A:   How do I define?

Q:   Yes.
A:   I don't define EDP.

Q:   Not your job?
A:   Absolutely not.

Q:   Do you have any training in making determinations about emotionally disturbed people?
A:   Absolutely, no.

Q:   Did you ever give anybody an opinion whether or not whether Schoolcraft was emotionally disturbed?
A:    No .

She also testified as follows  (Exhibit K, pp. 196-197):

Q:   Am I correct that the police department declared Schoolcraft an EDP?

MS. PUBLICKER METTHAM: Objection

A:   NYPD is the only agency we work with that can declare someone an EDP.

Q:   Did the NYPD declare Schoolcraft an EDP at the scene on October 31, 2009?

MR RADOMISLI: Objection to form.
MS. PUBLICKER METTHAM: Objection

A:    That is correct

Similarly, Salvatore Sanginiti, the other EMT who responded to the scene, testified as follows (Exhibit T, p. 54, 58, 67):

Q: Did you ever have any discussions with anybody at the scene about Officer Schoolcraft being an EDP or an emotionally disturbed person?

A: I don't — I don't designate who is an emotionally disturbed person.

*   *   *

Q: So Hanlon told you while you and she were standing in the room that Officer Schoolcraft was EDP ?

A: Yes.

*   *   *

Q: Other than Hanlon, anybody else tell you Schoolcraft was an EDP?

A: No .

Q: Did you ever have any discussions with anybody at the scene about whether or not Schoolcraft was an EDP?

A: No .

Significantly, Chief Marino testified that he believed the plaintiff was an EDP **before** he, or anyone else, had even entered Schoolcraft's apartment (Exhibit P, pp. 256-257):

Q: At the time that you entered into that plan [to enter Schoolcraft's apartment], did you believe that Schoolcraft was an EDP?

A: Yes, I did. I believe it was a possibility of it. And I believe it was a possibility that he may have already harmed himself.

*   *   *

Q: And in what way did you believe that Schoolcraft was an EDP while you were on the landing outside of his apartment?

A: Based upon what I had been told in the lot. The previous psychological history. Based upon the way he left the precinct against orders, which would be an irrational act, based upon the fact that he was answering his phone and refused to  answer. Based upon the fact that there were police officers all around his house and on his stairs knocking, and there had been no movement heard in the last hour.

Lt. Elise Hanlon testified as follows (Exhibit S, pp. 73-74):

Q:    Is the decision [to declare someone an EDP] ultimately made by the
       police department or is the decision made by—
A:    If the patient is an EDP?

Q:    Yes.
A:    Yes.

Q:    So the decision is ultimately made by the police department; is that
       correct?
A:    Yes.

                *     *     *

Q:    [W]hat I'm saying is the NYPD makes the decision about whether or
       not somebody is an EDP, right?
A:    Yes.

Lt. William Gough testified as follows (Exhibit R, pp. 176-177):

Q:    When did he become an EDP?
A:    When he fled the ambulance and raced back into his apartment and
       then refused medical attention.

Significantly, both Jessica Marquez and Salvatore Sanginiti remained by the ambulance and did not enter plaintiff's apartment again after the plaintiff left the ambulance. In response to the question: "And just to be 100% clear, did you go back into the apartment after Adrian Schoolcraft left your ambulance?", Marquez answered "No." (Exhibit KK pp. 231-232). Similarly, Sanginiti testified that he, Marquez and Lt. Hanlon stayed on the street by the ambulance after the plaintiff left the ambulance to go back to his apartment (Exhibit T, p. 119). Therefore, based upon Gough's testimony, Marquez and Sanginiti could not have been involved in the decision to declare plaintiff an EDP.

There is absolutely no testimony or other evidence to support plaintiff's fictitious claim that either EMT Sanginiti or EMT Marquez had any role in determining that the plaintiff was an EDP. Accordingly, there is no support for plaintiff's argument that the EMTs engaged in

state action because plaintiff has not presented any evidence that they jointly participated with the NYPD when Schoolcraft was declared an EDP. In fact, the evidence proves otherwise.

Plaintiff's contention that Sanginiti and Hanlon "steered him to Jamaica Hospital in accordance with their hidden agenda with the NYPD to have him deemed an EDP" (p. 49, plaintiff's MOL) can only be described as ridiculous, and is belied by the evidence. Sanginiti specifically testified that the "mobile data terminal" "designated through the 911 system" directed EMS to take plaintiff to JHMC because it was the closest hospital to the plaintiff's apartment (Exhibit T, pp. 69-70). He told Schoolcraft that they needed to go to Jamaica Hospital because it was the "closest receiving 911 hospital" (Exhibit T, p. 107). He explained that "when we get an assignment and hospital designation from 911, it comes up with a mask. That mask tells you the closest hospitals, closest speciality hospital, the closest whatever that's designed and through the 911 system. It comes out through them" (Exhibit T, p. 108). In addition, Marquez testified that Hanlon told her to take the plaintiff to Jamaica Hospital and that she followed Hanlon's orders (Exhibit KK, pp. 150-152, pp. 160-162, p. 212). Hanlon explained that she had recommended Jamaica because it was the closet hospital and had a psychiatric facility (Exhibit S, p. 122). There is simply no support for plaintiff's conjecture that there were "bogus and pretextual reasons" for taking plaintiff to Jamaica (plaintiff's MOL, p. 50).

At best, plaintiff has established that the defendants may have merely "worked together or communicated generally with each other," which is not sufficient to sustain a cause of action for conspiracy to violate plaintiff's civil rights. *See Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778 (2d Cir. 2007) (while there was evidence to suggest that each individual acted with racial animus, there was no evidence to suggest that there was an

understanding among the defendants to do so); *Scotto v. Almenas*, 143 F.3d 105 (2d Cir. 1998); *Manbeck v. Micka*, 640 F.Supp.2d 351, 379 (S.D.N.Y. 2009) (dismissing conspiracy claim where there was no evidence that the state and private defendants had a "meeting of the minds" with the goal of depriving plaintiff of her constitutional rights); *Zahrey v. City of New York*, 2009 U.S.Dist. LEXIS 31893, *44 (S.D.N.Y. April 15, 2009) (dismissing conspiracy claim where plaintiff "provide[d] no evidence, absent the fact that the Individual Defendants worked together, that. . . an agreement existed."). In the absence of "supporting operative facts" to show an agreement or concerted action to deprive the plaintiff of his civil rights, plaintiff's claim for conspiracy must be dismissed. *See Johnson v. Columbia University*, 2003 U.S.Dist. LEXIS 20932, *14 (S.D.N.Y. Nov. 19, 2003). Allegations of "joint conduct" are not sufficient. *Id.*

Plaintiff has also not presented any evidence of conspiracy-related conversations between any of the members of the NYPD and any JHMC staff after the plaintiff arrived at the Hospital.[16] Nor has plaintiff presented any evidence of a "tacit understanding" among the parties to deprive the plaintiff of his civil rights. *See Van Dunk v. Brower*, 2013 U.S.Dist. LEXIS 160667, *47, 50 (S.D.N.Y. Nov. 7, 2013) (no factual basis to support a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve an unlawful end); *Farag v. United States*, 587 F.Supp.2d 436, 470-71 (E.D.N.Y. 2008) (Plaintiffs failed to adduce evidence that there was a meeting of the minds "whose conscious objective" was to deprive plaintiffs of their constitutional rights; a presumed agreement to

---

[16] The JHMC chart and the quotations plaintiff's counsel cites therefrom indicate that the police officers gave the JHMC physicians a history of the events leading up to plaintiff's presentation at Jamaica Hospital. Even plaintiff's expert admitted that the JHMC staff had the right to rely upon what the police had said (Exhibit MM, attached hereto, at p. 329), and case law demonstrates that those conversations would not qualify as "state action. *See Sykes v. McPhillips*, 412 F.Supp.2d 197 (N.D.N.Y. 2006) (private hospital which provided emergency medical services to a prisoner at the request of correctional officers was not a state actor).

detain the plaintiff was not sufficient) (emphasis added).   As this Court noted in *Fisk v. Letterman*, 401 F.Supp.2d 362, 376 (S.D.N.Y. 2005), "Without a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy."

As before, plaintiff improperly conflates potential causes of action against an individual with potential causes of action against an entity.   Individuals can conspire; entities cannot.   And because JHMC cannot be liable for the alleged constitutional torts of the codefendants or of any its employees, *see Schoolcraft v. City of New York*, *supra*, the claim for conspiracy must be dismissed.

Plaintiff's claim that the City defendants and JHMC engaged in a conspiracy to have the plaintiff involuntarily hospitalized is also belied by the evidence plaintiff's counsel himself submits in opposition to defendants' motions.   On p. 94 of his MOL, plaintiff's counsel states that the police officers went to plaintiff's apartment "in order to bring him back to the 81st Precinct," and that codefendant Mauriello "confronted Officer Schoolcraft and ordered him to return to the 81st Precinct."   *See also* plaintiff's Counter 56.1 Statement, pp. 52-55 (Plaintiff was repeatedly directed to return to the 81st Precinct).   Clearly, then, the NYPD's "agenda" was to take the plaintiff back to work.

On p. 48 of his MOL, plaintiff's counsel admits that the codefendant police officers initially ordered the plaintiff to go back to the 81st Precinct, that the plaintiff told them that he would go to the Precinct against his will, but that "moments later, [he] stated that he had to sit down because he was not feeling well."   It was only <u>then</u> that the JHMC EMTs began to evaluate him (plaintiff's MOL, p. 48).   Accordingly, the plaintiff's own physical complaints were the catalyst for the EMTs to get involved.   Given plaintiff's own rendition of the events, there could not have been a "hidden agenda"  between the NYPD and JHMC, as plaintiff

claims, to have the plaintiff "deemed an EDP and committed to the Jamaica Hospital psychiatric ward" (plaintiff's MOL, p. 49).  Given plaintiff's own rendition of the events, there could not have been a pre-arranged agreement to take the plaintiff to JHMC as an EDP because there was no way to know he would refuse to go back to the 81st Precinct. Consequently, plaintiff's claim for conspiracy to violate plaintiff's civil rights should be dismissed.

## POINT III

### PLAINTIFF CANNOT MAINTAIN A CAUSE OF ACTION DIRECTLY AGAINST JHMC FOR MEDICAL MALPRACTICE

A.     Vicarious Liability for Dr. Aldana Bernier and Dr. Isakov

In its January 30, 2015 Memorandum of Law, JHMC argued that plaintiff could not maintain a cause of action **directly** against Jamaica Hospital for medical malpractice.  JHMC does not dispute that plaintiff could make a viable legal argument that JHMC could be held vicariously liable for the acts and/or omissions of Dr. Aldana-Bernier and/or Dr. Isakov insofar as plaintiff alleges a cause of action for medical malpractice against those defendants (as distinct from plaintiff's 42 U.S.C. Section 1983 claims, for which the Hospital cannot be held vicariously liable).  However, despite having amended the Complaint three times, plaintiff never asserted a cause of action for vicarious liability, and **never alleged** that JHMC was vicariously liable for Dr. Aldana-Bernier and/or Dr. Isakov.  Therefore, plaintiff's cause of action for medical malpractice against JHMC should be dismissed.

B.     Vicarious Liability for its Staff

As previously argued in its January 30, 2015 MOL, plaintiff cannot sustain an independent cause of action for medical malpractice against a defendant hospital when a

plaintiff alleges various departures from the standard of care against all defendants, but fails to state how specific members of the hospital staff committed an act of malpractice independent from the patient's attending physicians. *See Suits v. Wyckoff Hgts. Med. Ctr.*, 84 AD3d 487, 489-490, 922 NYS2d 388 (1st Dept. 2011).  Finding that plaintiffs in *Suits* could not sustain a cause of action arising out of any independent acts of malpractice against the defendant hospital, the Appellate Division, First Department, explained the following:

> Given that the only person identified by plaintiffs as being negligent was Dr. Abakporo [the attending physician] and that plaintiffs failed to distinguish any separate alleged acts and omissions of Wyckoff's staff, Wyckoff sustained its prima facie burden of establishing that there were no independent claims against it and that it can only be held vicariously liable for Dr. Abakporo.  Plaintiffs did not specify any independent acts of negligence by Wyckoff's staff and 'our jurisprudence does not require a defendant [moving for summary judgment] to prove a negative on an issue as to which [it] does not bear the burden of proof.'

84 AD3d at 489-490 [citations omitted]; *See also Dendariarena v. Mt. Sinai Hospital*, 2012 Slip.Op. 31262(U) (N.Y.Sup. 2012); *Mercedes v. Farrelly*, 2012 N.Y.Misc.LEXIS 2032 (N.Y. Co. May 1, 2012) (granting summary judgment because plaintiffs failed to assert and/or prove a cause of action for medical malpractice as against the hospital itself, as opposed to plaintiffs' claims against the attending physicians).

In the Third Amended Complaint (Exhibit LL), plaintiff does not make any allegations of medical malpractice as to any specific members of the JHMC staff separate from the codefendant psychiatrists.  Similarly, neither of plaintiff's experts identified any departures from accepted standards of care by any specific members of the JHMC staff, other than the codefendant psychiatrists.  Therefore, plaintiff cannot maintain a cause of action for medical malpractice against JHMC directly, and that cause of action should be dismissed.

Plaintiff's counsel attempts to minimize the Hospital's argument by contending that

his experts' failure to "name names" is "semantics."   However, plaintiff mischaracterizes JHMC's argument.   The issue is not that plaintiffs' experts failed to identify a Hospital employee's *name*.   Rather, the issue is that among the four people whom plaintiffs' experts identified (Dr. Lwin, Dr. Patel and the two EMTs), plaintiff has not presented sufficient evidence to create a question of fact as to whether any of them departed from accepted standards of care *and* caused injury.

Plaintiff's counsel's claim that Dr. Lubit identified Dr. Lwin and Dr. Patel as having violated the hospital's written policy on involuntary commitments is simply not true, and directly contradicted by Dr. Lubit's deposition testimony:

**Q:**   Doctor, can you tell me where in your report you identify anybody who saw this patient other than Dr. Aldana-Bernier and Dr. Isakov?

**A:**   I don't think I—I don't know how much I talked about or if I even mentioned the resident, because the responsibility—I was not told that he was—the resident was a party to the case, and certainly the attending in the emergency room had ultimate responsibility.

\*      \*      \*

**Q:**   Do you mention any other person who departed, in your opinion, departed from accepted standards of care in your report?

**Mr. Smith**:   Objection to the form.

**A:**   I don't at this moment recall. . . Okay.   On page 21.   I mentioned Dr. Lwin and Dr. Patel as well.

**Q:**   Okay.   And [you] write that they violated the policies of Jamaica Hospital Department of Psychiatry?

**A:**   Yes.

(Exhibit AA, pp. 80-83).

\*      \*      \*

**Q:**   Did she [Dr. Lwin] violate the part of the policy that you did write down?

**A:**   At this moment, as I think about it, she does not violate the part about

admission.

(Exhibit AA, p. 84).

> **Q:**   And therefore Dr. Patel also did not violate the portion of the policy that you quote in your report, correct?
>
> MR. SMITH: Objection to the form.
>
> **A:**   It's [sic] does not violate the portion that I quoted, that is correct.

(Exhibit AA, p. 85).

Given that neither Dr. Patel nor Dr. Lwin admitted the plaintiff to the Hospital, it is obvious that they could not have violated JHMC's written policy on involuntary commitments (Exhibit U, pp. 57-58) (Exhibit W, p. 107) (Exhibit X, pp. 222-223).  Accordingly, plaintiff cannot maintain a cause of action for medical malpractice against JHMC based upon their actions, as plaintiff's expert reluctantly admitted.[17]

Although Dr. Halpren-Ruder mentioned the EMTs' and the emergency room doctor's "conduct" in his report (plaintiff's MOL, p 116), he lacked an appropriate foundation for his opinions, and acknowledged at his deposition that their actions were not a proximate cause of the plaintiff's alleged injuries (*see* pp. 32-37 of JHMC's January 30, 2015 MOL).  Therefore, his opinions are not sufficient to defeat the Hospital's motion for summary judgment.

---

[17] It should also be noted that plaintiff's quotation of Dr. Lubit's report on p. 115, n. 328 of his Memorandum of Law is not only inaccurate, but a work of fiction. **NOWHERE** in his report does Dr. Lubit state, "Plaintiff was handcuffed to a gurney for more than nine hours, during which time he was denied the free use of phone, or reasonable access to water, food or bathroom facilities. Plaintiff repeatedly requested an opportunity to speak with internal affairs, *and to have photographs taken of his multiple bruises*, but these requests were steadfastly ignored by doctors and hospital staff." (emphasis in original).  Furthermore, the JHMC chart contains photographs of plaintiff's alleged bruises, so even the fictionalized quotation is inaccurate.  Unfortunately, defense counsel did not have sufficient time to double check all of plaintiff's citations and quotations from his 129 page Memorandum of Law with 366 footnotes.

## POINT IV

**DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFF'S CAUSE OF ACTION FOR MEDICAL MALPRACTICE
BECAUSE PLAINTIFF HAS NOT DEMONSTRATED AN ISSUE OF FACT**

Plaintiff's experts' opinions do not create an issue of fact because plaintiffs' experts' opinions—substantively-- are not sufficient to rebut JHMC's *prima facie* showing that it is entitled to summary judgment, not just because plaintiffs' experts do not identify any specific individuals who departed from accepted standards of care, but also because they do not establish the standard of care in their reports (see JHMC's January 30, 2015 MOL, pp. 27-37).[18]  *See also Bender v. Lowe*, 2011 U.S.Dist. LEXIS 99053, *34-35 (S.DN.Y. Aug. 30, 2011) ("The Second Circuit has noted that '[i]n order to show that the defendant has not exercised ordinary and reasonable care, the plaintiff ordinarily must show what the accepted standards of practice were and that the defendant deviated from those standards . . . .' [citation omitted].  [E]ven if the Court considers Plaintiff's excluded expert testimony, it fails to set forth the relevant medical standards required to sustain a claim for medical malpractice").  Plaintiff's experts' failure to identify the standard of care from which there were alleged departures is fatal to plaintiff's claim for medical malpractice.

---

[18] In his Memorandum of Law in opposition, plaintiff's counsel states in conclusory fashion that Drs. Lubit and Halpren-Ruder defined the standard of care in their reports.  If that statement were correct, however, it would have been logical for plaintiff's counsel to actually quote the sections from those reports that substantiate that contention.  Plaintiff's failure to do so demonstrates his inability to do so.  Similarly, plaintiff's counsel does not even cite a single sentence by either of his experts which actually states that there was a departure from accepted standards of care.

## POINT V

### PLAINTIFF CANNOT MAINTAIN A CAUSE OF ACTION FOR FALSE ARREST OR FALSE IMPRISONMENT

A.     Plaintiff's Claim Must Be Dismissed Because Plaintiff Cannot Demonstrate that JHMC Committed Medical Malpractice

For the reasons discussed above, plaintiff cannot maintain a medical malpractice claim directly against JHMC.  There is absolutely no proof that any of the JHMC staff departed from accepted standards of care, and plaintiff's experts have not identified anyone whose alleged departures were also a proximate cause of the plaintiff's alleged injuries.  None of plaintiff's allegations regarding the admission even pertain to any of the JHMC staff other than codefendant Dr. Aldana-Bernier.   Plaintiff's failure to establish that an issue of fact exists as to whether JHMC departed from accepted standards of care dooms plaintiff's claim for false imprisonment.

B.     Plaintiff's Confinement was "Otherwise Privileged"

Plaintiff's argument that JHMC waived its right to argue that plaintiff's confinement was "otherwise privileged" pursuant to the Emergency Medical Treatment and Labor Act, 42 USC §1395dd ("EMTALA") is meritless and misconstrues the Hospital's argument.  JHMC did not argue that EMTALA is a "privilege" entitling it to hold someone against his will, or that it was a "privilege" as commonly understood in Rule 8 of the Rules of Civil Procedure.[19] Rather, as JHMC argued, an act can be "otherwise privileged" for the purposes of defending a

---

[19] Even if this Court were to hold that EMTALA should have been asserted as an affirmative defense pursuant to Rule 8, it should not hold that JHMC waived that defense because when JHMC served its Answer, this Court had dismissed plaintiff's Section 1983 claims against the Hospital.  When this Court reinstated those claims and permitted plaintiff to amend the Complaint for the third time, it did not allow the defendants to serve an Answer to the Third Amended Complaint, in which additional affirmative defenses might have been asserted.

false imprisonment claim "if the defendant can show that his actions were justified by the law." *See Caban v. United States*, 728 F.2d 68, 72 (2d Cir. 1984); *See also Hudson v. State of New York*, 35 Misc.3d 241, 937 NYS2d 529 (Ct. of Claims, 2011) (confinement is privileged if imposed under color of law or regulation); *Frederick v. State of New York*, 23 Misc.3d 1008, 874 NYS2d 762 (Ct. of Claims, 2009). Interestingly, "the legal justification for an alleged false imprisonment need not be found in the substantive law of New York but may be found in some other pertinent body of law." *Caban v. United States*, 728 F.2d 68, 72-73 (2d Cir. 1984).

Defendants' actions were "otherwise privileged" in the sense that defendants were justified in retaining the plaintiff in the hospital, at least until the results of plaintiff's CT scan returned, by the provisions of EMTALA, given that a hospital is essentially prohibited from discharging a patient who presents to the emergency room until it is determined whether an emergency medical condition exists, lest the hospital run afoul of EMTALA. *See Mallgren v. Burkholder*, 2014 U.S.Dist. LEXIS 107256, * 18 (E.D.N.Y. August 5, 2014) (a hospital is <u>federally mandated</u> to provide emergency medical services under EMTALA) (*citing Sykes v. McPhillips*, 412 F.Supp.2d 197 (N.D.N.Y. 2006)).

Plaintiff argues that he had the right to refuse medical treatment, and therefore EMTALA does not apply. However, *there is no evidence to suggest that the plaintiff refused treatment in the medical emergency room*. Plaintiff's counsel does not cite an entry in the chart, does not cite from plaintiff's deposition, and does not cite any testimony by Dr. Lwin or Dr. Patel implying that the plaintiff refused to be treated while in the medical ED. Finally, the fact that the plaintiff was brought to the medical Emergency Department allegedly against his will does not release the Hospital from its obligations under EMTALA.

## POINT VI

### PLAINTIFF CANNOT MAINTAIN A CAUSE OF ACTION
### FOR NEGLIGENT HIRING, TRAINING OR SUPERVISION

Plaintiff's counsel argues that plaintiff can maintain a cause of action for negligent hiring, training and supervision because there is evidence that the codefendant psychiatrists and the JHMC staff had a propensity to improperly hospitalize patients or to commit false arrest or false imprisonment. Even if the plaintiff's counsel had presented such evidence, which he does not, he does not address the Hospital's arguments that in order to defeat JHMC's summary judgment motion, he must also submit evidence that the Hospital should have known of such a propensity, or that JHMC "failed to investigate a prospective employee, notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate that prospective employee." *Bouchard v. N.Y. Archdiocese*, 719 F.Supp.2d 255, 261 (S.D.N.Y. 2010).

Plaintiff's counsel also does not address the Hospital's argument that the negligent hiring claim must be dismissed because there is no evidence that JHMC actually acted negligently in hiring, training or supervising the employee, *See e.g. Hattar v. Carelli*, 2012 U.S.Dist. LEXIS 12985, *13-14 (S.D.N.Y. Jan. 11, 2012) (dismissing negligent hiring claim when plaintiff failed to adduce evidence that defendants improperly investigated any individual defendant when he was hired); *Tsesarskaya v. City of New York*, 843 F.Supp.2d 446 (S.D.N.Y. 2012); *Biggs v. City of New York*, 2010 U.S.Dist. LEXIS 1213332 (S.D.N.Y. Nov. 16, 2010); *Bouchard v. N.Y. Archdiocese*, 719 F.Supp.2d 255, 263 (S.D.N.Y. 2010); *Tatum v. City of New York*, 2009 U.S.Dist. LEXIS 3512 (S.D.N.Y. Jan. 20, 2009), or that plaintiff failed to submit "evidence of deficiencies in the training of employees that, if corrected, would have avoided the alleged harm", *Hattar v. Carelli*, 2012 U.S.Dist. LEXIS

12985, *14 (S.D.N.Y. Jan. 11, 2012); *Baez v. JetBlue Airways*, 745 F.Supp.2d 214, 225 (E.D.N.Y. 2010).

Plaintiff's counsel also does not address the Hospital's argument that the negligent hiring, training and supervision claim must be dismissed because there is no evidence that an employee was acting outside the scope of his employment. *See Gurevich v. City of New York*, 2008 U.S.Dist. LEXIS 1800, *20 (S.D.N.Y. Jan. 10, 2008) (Because the defendants were acting within the scope of their employment, plaintiff's claim for negligent hiring and training was barred as a matter of law); *Hollins v. City of New York*, No. 10 Civ. 1650 (LGS) (S.D.N.Y. Mar. 3, 2014) (To establish a claim for negligent hiring, training and supervision, the defendant's actions must be outside the scope of his employment); *see also Velez v. City of New York*, 730 F.3d 128, 137 (2d Cir. 2013).

Therefore, even if plaintiff could sufficiently demonstrate that the Hospital employees had a propensity to improperly commit patients, plaintiff's cause of action for negligent hiring, training and supervision must be dismissed because plaintiff has not presented any evidence to create a question of fact as to the other requirements he must meet to sustain that cause of action against the Hospital. *See Zeak v. United States*, 2015 U.S.Dist. LEXIS 6044 (S.D.N.Y. Jan. 20, 2015) (Plaintiff's negligent hiring claim fails because, among other reasons, plaintiff cannot show that the alleged malpractice occurred outside the scope of the defendant-surgeon's employment and because plaintiff has not demonstrated that the employer knew or should have known about the employee's propensity for the conduct that caused the injury and did not allege the requisite knowledge in her Complaint which, itself, was a third, independent basis for dismissing the negligent hiring claim).

## POINT VII

### PLAINTIFF CANNOT MAINTAIN A CAUSE OF ACTION
### FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff opposes JHMC's motion to dismiss the claim for intentional infliction of emotional distress by referring this Court to his argument in opposition to the City defendants' motion for summary judgment to dismiss that claim. However, the actions plaintiff alleges to have been undertaken by the City defendants are markedly different in nature from the actions allegedly taken by the Hospital staff and the codefendant psychiatrists. Moreover, several Courts have held that a plaintiff cannot sustain a cause of action for intentional infliction of emotional distress in the context of false imprisonment and alleged violations of the Mental Hygiene Law. *See e.g. Wright v. City of New York*, 2001 U.S.Dist. LEXIS 8923 (S.D.N.Y. July 2, 2001); *Nicholas v. City of Binghamton*, 2012 U.S. Dist. LEXIS 111736 (N.D.N.Y August 7, 2012); *Kraft v. City of New York, supra; see also Williams v. City of Mount Vernon*, 428 F.Supp.2d 146 (S.D.N.Y. 2006) (Dismissing plaintiff's claim at the pleadings stage for intentional infliction of emotional distress based upon claims for false arrest and excessive force). In addition, unlike plaintiff's allegations pertaining to the City defendants, JHMC's alleged actions were not "a series of actions over a sustained period of time" (plaintiff's MOL, p. 65) and, accordingly, are absolutely duplicative of plaintiff's other claims against the Hospital. Therefore, plaintiff's claim for intentional infliction of emotional distress should be dismissed.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court grant defendant's motion and dismiss the Third Amended Complaint as to JAMAICA HOSPITAL MEDICAL CENTER in its entirety, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
      March 6, 2015

                              Respectfully submitted,

                              MARTIN CLEARWATER & BELL LLP

By: _____
            Gregory J. Radomisli (GJR 2670)
            Attorneys for Defendant
            JAMAICA HOSPITAL MEDICAL
            CENTER
            220 East 42nd Street
            New York, NY 10017
            (212) 697-3122