1

ORIGINAL

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X
ADRIAN SCHOOLCRAFT,

                              PLAINTIFF,

          -against-           Case No:
                              10-CIV-6005

THE CITY OF NEW YORK, DEPUTY CHIEF MICHAEL
MARINO, Tax id. 873220, Individually and in
his official capacity, ASSISTANT CHIEF
PATROL BOROUGH BROOKLYN NORTH GERALD
NELSON, Tax id. 912370, Individually and in
his Official Capacity, DEPUTY INSPECTOR
STEVEN MAURIELLO, Tax Id. 895117,
Individually and in his official Capacity,
CAPTAIN THEODORE LAUTERBORN, Tax Id.
897840, Individually and in his Official
Capacity, LIEUTENANT JOSEPH GEOFF, Tax Id.
894025, Individually and in his Official
Capacity, Sgt. Frederick Sawyer, Shield No.
2576, Individually and in his Official
Capacity, SERGEANT KURT DUNCAN, Shield No.
2483, Individually and in his Official
Capacity, LIEUTENANT TIMOTHY CAUGHEY, Tax
Id. 885374, Individually and in his
Official Capacity, SERGEANT SHANTEL JAMES,
Shield No. 3004, and P.O.'s "JOHN DOE"
1-50, Individually and in their Official
Capacity (the name John Doe being
fictitious, as the true names are presently
unknown) (collectively referred to as "NYPD
defendants")
------------------------------------------X

                    Date:  September 23, 2014

                    Time:  9:24 A.M.



     (DEPOSITION OF ROY LUBIT, M.D., Ph.D.)
```

DIAMOND REPORTING    (718) 624-7200    info@diamondreporting.com

1

```
 1            R. LUBIT, M.D., Ph.D.
 2       Q.   Was anybody with you when you
 3  had had interviews with Mr. Schoolcraft?
 4       A.   No.
 5       Q.   Did you tape-record the
 6  interview?
 7       A.   No.
 8       Q.   Did you videotape the
 9  interview?
10       A.   No.
11       Q.   When did you first become
12  involved in this case?
13       A.   I would have to check my
14  billing records.
15       Q.   You've written reports like the
16  one you've given us today before, correct?
17       A.   Yes.
18       Q.   And you were aware that when
19  you wrote your report it was to contain a
20  complete opinion regarding the care and
21  treatment rendered to Mr. Schoolcraft,
22  correct?
23            MR. SMITH:  Objection to form.
24       A.   Yes.  Certainly the focus was
25  going to be whether the admission, whether
```

```
 1                  R. LUBIT, M.D., Ph.D.
 2      the commitment was appropriate.
 3            Q.    But you were aware that the
 4      report was intended to be a complete
 5      rendition of your opinion?
 6                  MR. SMITH:  Objection to form.
 7            Q.    Right?
 8            A.    As complete as it could be at
 9      that time. New information becomes
10      available at points. And my opinion then
11      can alter if new information becomes
12      available, which would change that --
13            Q.    But at the time, Doctor --
14      excuse me.  At the time you wrote it, it
15      was intended to be a complete opinion,
16      correct?
17                  MR. SMITH:  Objection; asked
18            and answered and argumentative.
19                  You can answer.
20            A.    A complete opinion as much as I
21      could think of the questions that one might
22      want to ask.
23                  There are times when lawyers
24      ask questions that I hadn't thought that
25      they would want to ask, and I may have a
```

```
 1              R. LUBIT, M.D., Ph.D.
 2    solid basis for rendering an expert opinion
 3    on that question.  Just because I didn't
 4    think of it when I was writing the report
 5    on my own doesn't mean that I can't -- that
 6    I shouldn't be able to have that other
 7    opinion.  So I answer as much to my ability
 8    as I thought people might want to know.
 9         Q.    And when you reviewed the case
10    were you trying to be objective?
11         A.    Yes.
12         Q.    And would your report reflect
13    your objective evaluation?
14         A.    Yes.
15         Q.    You didn't word it in a way to
16    help one side?
17         A.    I do not intentionally do that.
18         Q.    Your intention was to render an
19    objective report based on your objective
20    review of everything you told me you
21    reviewed, correct?
22         A.    Yes.
23         Q.    Now, you have a bias against
24    involuntary commitment, don't you?
25               MR. SMITH:  Objection to form.
```

```
 1              R. LUBIT, M.D., Ph.D.
 2         A.   I wouldn't say that I have a
 3    bias against it. I have a concern. I have
 4    involuntarily committed, in all likelihood,
 5    over a thousand people. Two thousand
 6    people. I have been the expert on the
 7    Plaintiff's side for when hospitals have
 8    failed to commit someone that they should
 9    have, something terrible happened.
10              I think that doctors often do
11    not take with adequate seriousness at
12    times, like in this case, I think the
13    doctors did not take the adequate
14    seriousness the important -- the impact of
15    committing someone that there is a very big
16    negative impact to that that one should
17    consider and not take it lightly.
18         Q.   But you agree that your -- you
19    use the term anti-paternalism, correct?
20         A.   Yes.
21              MR. SMITH:  Objection to form.
22         Q.   What do you mean by that?
23         A.   That to hospitalize someone
24    against their will according to 9.39,
25    according to, you know, police and
```