10-CV-6005 (RWS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**ADRIAN SCHOOLCRAFT,**

                                                                        **Plaintiff,**

                        **-against-**

**THE CITY OF NEW YORK, et al.,**

                                                                        **Defendants.**

**MEMORANDUM OF LAW IN SUPPORT OF CITY DEFENDANTS' MOTION FOR RECONSIDERATION AND FOR BIFURCATION OF PLAINTIFF'S *MONELL* CLAIM**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Alan Scheiner*
*Tel:  (212) 356-2344*
*James Horton*
*Tel: (212) 356-2647*
*Matter #:  2010-033074*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... ii

PRELIMINARY STATEMENT ..................................................................... 1

ARGUMENT

      POINT I

            THE COURT SHOULD AMEND THE ORDER TO HOLD THAT THE COLLECTIVE KNOWLEDGE DOCTRINE ALLOWS INFORMATION AVAILABLE TO POLICE OFFICERS TO BE COMBINED FOR THE PURPOSES OF DETERMINING PROBABLE CAUSE, WHETHER OR NOT THE SPECIFIC INFORMATION WAS ACTUALLY COMMUNICATED BETWEEN THE OFFICERS ................................... 3

      POINT II

            THE COURT SHOULD DISMISS ALL CLAIMS AGAINST DEFENDNANT TIMOTHY CAUGHEY BECAUSE THE COURT FOUND CAUGHEY TO BE PERSONALLY INVOLVED ONLY IN PLAINTIFF'S FIRST AMENDMENT CLAIM, AND THE COURT PROPERLY GRANTED QUALIFIED IMMUNITY TO ALL INDIVIDUAL DEFENDANTS FOR THE FIRST AMENDMENT CLAIM ............................................................ 9

      POINT III

            THE COURT SHOULD BIFURCATE PLAINTIFF'S *MONELL* CLAIM FOR TRIAL ...................................... 10

            A. The scope of plaintiff's *Monell* claim calls for bifurcation to avoid the possibly unnecessary, significant costs of a series of mini-trials on unrelated instances of purported 'other bad acts' by the NYPD. .......................................................... 13

**Page**

      B.    The Court should bifurcate plaintiff's *Monell* claim in order to avoid undue and substantial prejudice to the defendants, and jury confusion, arising from the introduction of *Monell* evidence concerning unrelated allegations of misconduct. ..................................................................................... 18

CONCLUSION ........................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                   **Pages**

*Amato v. City of Saratoga Springs,*
170 F.3d 311 (2d Cir. 1999) ................................................................................. 14

*Barnell v. Paine-Weber Jackson & Curtis, Inc.,*
577 F. Supp. 976 (S.D.N.Y. 1984) ....................................................................... 12

*Berkovich v. Hicks,*
922 F.2d 1018 (2d Cir. N.Y. 1991) ....................................................................... 19

*Bombard v. Volp,*
44 F. Supp. 3d 514 (D. Vt. 2014) .......................................................................... 14

*Busch v. City of New York,*
00 CV 5211 (SJ), 2002 U.S. Dist. LEXIS 18337 (E.D.N.Y. Sept. 9, 2002) ........... 15

*Carson v. City of Syracuse,*
92-CV-777, 1993 U.S. Dist. LEXIS 9508 (N.D.N.Y. 1993) ........................... 11, 19

*City of Canton v. Harris,*
489 U.S. 378 (1989) ............................................................................................. 13

*City of Los Angeles v. Heller,*
475 U.S. 796 (1986) ............................................................................................. 14

*City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ............................. 13

*Colon v. City of New York,*
11-CV-0173 (MKB), 2014 U.S. Dist. LEXIS 46451 (E.D.N.Y. Apr. 2, 2014) ..... 8-9

*Crawford v. City of New York,*
477 Fed. Appx. 777 (2d Cir. 2012) .......................................................................... 7

*Daniels v. Loizzo,*
178 F.R.D. 46 (S.D.N.Y. 1998) .................................................................. 11, 12, 19

*DiSorbo v. Hoy,*
343 F.3d 172 (2d Cir. 2003) .................................................................................. 12

*Doe v. Yorkville Plaza Assocs.,*
92 Civ. 8250 (JGK), 1997 U.S. Dist. LEXIS 10103 (S.D.N.Y. July 11, 1997) ....... 15

*Duke v. County of Nassau,*
97-CV-1495 (JS), 2000 U.S. Dist. LEXIS 22415 (E.D.N.Y. Oct. 26, 2000) ..... 14-15

- iii -

**Cases** <span style="float:right">**Pages**</span>

*Fisher v. City of New York,*
   90 Civ. 8163 (LJF), 1992 U.S. Dist LEXIS 3436 (S.D.N.Y. 1992) ......................................... 19

*Hollins v. City of New York,*
   10 Civ. 1650 (LGS), 2014 U.S. Dist. LEXIS 183076 (S.D.N.Y. Mar. 3, 2014) .................... 14

*Illinois v. Andreas,*
   463 U.S. 765 (1983) ......................................................................................................... 4, 5

*Ismail v. Cohen,*
   706 F. Supp. 243 (S.D.N.Y. 1989),
   *rev'd on other grounds and aff'd in part*, 899 F.2d 183 (2d Cir. 1990) ...................... 11, 19, 20

*Martinez v. Simonetti,*
   202 F.3d 625 (2d Cir. 2000) ................................................................................................. 8

*Masi v. City of New York,*
   98 Civ. 6802 (MBM), 1999 U.S. Dist. LEXIS 13488 (S.D.N.Y. Sept. 2, 1999) .................... 15

*Matthews v. City of New York,*
   No. 13-2915-cv, 2015 U.S. App. LEXIS 3016 (2nd. Cir. Feb. 26, 2015) .............................. 17

*Mineo v. City of New York,*
   2013 U.S. Dist. LEXIS 46953, 2013 WL 1334322 (E.D.N.Y. Mar. 29, 2013) ...................... 14

*Monell v. Dep't of Social Services,*
   436 U.S. 658 (1978) ................................................................................ 1, 2, 13, *passim*

*Morales v. Irizarry,*
   95 Civ. 5068(AGS) (HBP), 1996 U.S. Dist. LEXIS 15613 (S.D.N.Y. 1996) ........................ 15

*Ortiz v. Vill. of Monticello,*
   06 Civ. 2208, 2012 U.S. Dist. LEXIS 158428 (S.D.N.Y. Nov. 2, 2012) ................................. 8

*Padilla v. City of New York,*
   1993 U.S. Dist. LEXIS 17 (S.D.N.Y. Jan. 4, 1993) ........................................................ 17, 18

*Ricciuti v. New York City Transit Auth.,*
   796 F. Supp. 84 (S.D.N.Y. 1992) ............................................................. 11, 12, 13, 19, 20

*Santiago v. New York,*
   1992 U.S. Dist. LEXIS 6731 (S.D.N.Y. May 15, 1992) ....................................................... 12

*Sarus v. Rotundo,*
   831 F.2d 397 (2d Cir. 1987) ............................................................................................... 13

**Cases**                                                                                              **Pages**

*Savino v. City of N.Y.*,
   331 F.3d 63 (2d Cir. 2003)...................................................................................... 4

*Schoolcraft v. City of New York*,
   10 Civ. 6005 (RWS), 2015 U.S. Dist. LEXIS 58831 (S.D.N.Y. May 5, 2015) ....... 1, 2, 3, 4, 6,
                                           7, 8, 9, 10, 13, 14, 15, 16, 17

*Sharapata v. Islip*, 56 N.Y.2d 332, 339 (1982) ........................................................ 13

*Toliver v. City of New York*,
   No. 10 Civ. 3165, 2012 U.S. Dist. LEXIS 187196 (S.D.N.Y. Dec. 10, 2012),
   *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 39894
   (S.D.N.Y. Mar. 21, 2013) ................................................................................... 6

*United States v. Canieso*,
   470 F.2d 1224 (2d Cir. 1972).............................................................................. 7

*United States v. Colon*,
   250 F.3d 130 (2d Cir. 2001)................................................................................ 5

*United States v. Cruz*,
   834 F.2d 47 (2d Cir. 1987)........................................................................... 4, 5, 6

*United States v. Hensley*,
   469 U.S. 221, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985)....................................... 5

*United States v. Valez*,
   796 F.2d 24 (2d Cir. 1986).......................................................................... 5, 6, 7

*Vives v. City of New York*,
   02 Civ. 6646 (JSM)(HBP), 2003 U.S. Dist. LEXIS 1833 (S.D.N.Y. Feb. 10, 2003).............. 14

*Williams v. Blvd. Lines, Inc.*,
   10 Civ. 2924 (DF), 2013 U.S. Dist. LEXIS 149707 (S.D.N.Y. Sept. 30, 2013) ..................... 11

*Williams v. City of New York*,
   CV-07-5362 (NG)(VVP), 2008 U.S. Dist. LEXIS 104730 (E.D.N.Y. Dec. 29, 2008)........... 14

*Zellner v. Summerlin*,
   494 F.3d 344 (2d Cir.  2007)........................................................................ 4, 5, 6

**Statutes**                                                                                      **Pages**

Fed. R. Civ. P. 42(b) ................................................................................................. 1, 11

Fed. R. Civ. P. 56 ......................................................................................................... 1

Fed. R. Civ. P. 60 ......................................................................................................... 1

Fed. R. Civ. P. 403 ..................................................................................................... 18

Local Rule 6.2 ............................................................................................................... 1

## PRELIMINARY STATEMENT

City defendants respectfully submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 60 and Local Rule 6.2 for partial reconsideration of the Court's Order of May 5, 2015, granting in part and denying in part the parties' motions for partial summary judgment pursuant to Fed. R. Civ. P. 56, *Schoolcraft v. City of New York*, 10 Civ. 6005 (RWS), 2015 U.S. Dist. LEXIS 58831 (S.D.N.Y. May 5, 2015) (the "Order," cited as "*Schoolcraft*")[1] and their motion for bifurcation of the plaintiff's claim against the City of New York under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978) for the purposes of trial, pursuant to Fed. R. Civ. P. 42(b).

The City defendants respectfully request reconsideration of the Order in two limited respects:

First, the Court discussed the collective knowledge doctrine in considering whether probable cause existed for entry in Schoolcraft's apartment, but suggested that the collective knowledge doctrine may require that the specific knowledge at issue – in this case the statements by Dr. Catherine Lamstein-Reiss to Capt. Theodore Lauterborn – have been expressly communicated to the other individual defendants.   *Schoolcraft* at *82.   The applicable authorities, however, including those relied on by the Court, do not so require.   Indeed, that requirement would obviate the need for the collective knowledge doctrine.   Rather, authorities require only that the officers be involved in the investigation or in communication *in some respect* in order for their information to be combined.   Accordingly, in order to avoid prejudice in further proceedings with respect to this issue, the City defendants respectfully request that the

---

[1] All references to the Order are to the LEXIS published version cited as "*Schoolcraft* at *__*," using the LEXIS pagination of the order.

Court correct the Order with regard to the requirements of the collective knowledge doctrine to make clear that communication of the specific knowledge at issue is not required.[2]

Second, the Court granted all individual defendants qualified immunity for Schoolcraft's claims based on the First Amendment. *Schoolcraft* at *112. But the Court also ruled that the claims against defendant retired Lt. Timothy Caughey should not be dismissed from the case for lack of personal involvement because he was personally involved in conduct falling within Schoolcraft's First Amendment claim. *Schoolcraft* at *155. The City defendants respectfully submit that the Court correctly applied qualified immunity to all individual defendants on the First Amendment claim, including Caughey, and therefore all claims against Caughey should be dismissed.

Third, the City defendants move for bifurcation of the plaintiff's claim against the City of New York under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978).[3] The City defendants' motion for summary judgment dismissing the *Monell* claim was denied, but the City reserved its right to move at a later time to bifurcate any *Monell* claim that survived such motion. City defendants' Reply Memorandum of Law in Support of Summary Judgment at 37, n. 14, No 411 ("City Reply"). The main issue in this case, which the jury must decide before reaching any *Monell* claim, is whether the plaintiff's constitutional rights were violated as he alleges.

---

[2] The Court found independent bases for declining to dismiss the Fourth Amendment claims, and therefore correcting the collective knowledge ruling would not alone alter the result of the motion. The City defendants do not agree with the Court's alternative bases for its ruling (or other aspects of the Order). Nevertheless, in order to avoid rehashing prior arguments and mindful of the limited scope of a motion for reconsideration, the City defendants have focused this motion on select issues, and reserve all of their objections and arguments with respect to the Order for later proceedings.

[3] The City defendants advised plaintiff's counsel by email of their intent to move to bifurcate at this juncture and asked plaintiff's counsel by email whether they would consent to bifurcation; plaintiff's counsel has so far not responded.

Bifurcation of the *Monell* claim is necessary to promote judicial economy, avoid a potentially costly trial on issues that could be rendered moot, and avoid undue prejudice to the City in the trial of the main issue.  The motion should be decided at this stage in order to guide the parties in their preparation for the trial scheduled for October 19, 2015.

## ARGUMENT

### POINT I

**THE COURT SHOULD AMEND THE ORDER TO HOLD THAT THE COLLECTIVE KNOWLEDGE DOCTRINE ALLOWS INFORMATION AVAILABLE TO POLICE OFFICERS TO BE COMBINED FOR THE PURPOSES OF DETERMINING PROBABLE CAUSE, WHETHER OR NOT THE SPECIFIC INFORMATION WAS ACTUALLY COMMUNICATED BETWEEN THE OFFICERS**

The Court should amend its Order with respect to the collective knowledge doctrine applicable to probable cause questions because the Order incorrectly suggests that that specific information must be communicated between officers in order for that information to be considered in the collective knowledge considered in determining probable cause.  As the authorities cited by the Court, as well as others, make clear,  in fact specific communication of the facts are not required; at most it is only required that the officers be involved with  the investigation, or that there is some communication between them, for their knowledge to be combined.

The City argued on summary judgment that information known to one officer – specifically, the statements of Dr. Lamstein-Ross to Captain Theodore Lauterborn about Schoolcraft – need not have been shared by Lauterborn with other officers.  City Defs.' Mem. in

- 3 -

Opp'n[4] at 7-8; *see Savino v. City of N.Y.*, 331 F.3d 63, 74 (2d Cir. 2003) ("The collective knowledge doctrine provides that, for the purpose of determining whether an arresting officer had probable cause to arrest, 'where law enforcement authorities are cooperating in an investigation, … the knowledge of one is presumed shared by all.'" (quoting *Illinois v. Andreas*, 463 U.S. 765, 772 (1983))).

The Court held that there was a factual dispute about the substance of Dr. Lamstein-Ross's statements to Lauterborn. *Schoolcraft* at *78. As an alternative ground for denying summary judgment, the Court also suggested that it could not determine on summary judgment whether the collective knowledge doctrine would apply to those statements because:

> [T]he record does not establish whether other officers were aware of Dr. Lamstein's warning to Captain Lauterborn. See Facts ¶¶ 92, 123. Consequently, whether Dr. Lamstein made the statement to Captain Lauterborn, and whether Captain Lauterborn in turn communicated that information to his colleagues such that the collective knowledge doctrine may apply, present questions of fact barring summary judgment for the City defendants.

*Schoolcraft* at *82.

This portion of the Court's opinion is contrary to settled law because, as the authorities cited by the Court, and many others, make clear, the specific information at issue need not be communicated among the officers for collective knowledge to apply. Rather, the most that is required is that the officers be "in communication with each other," *United States v. Cruz*, 834 F.2d 47, 51 (2d Cir. 1987) – i.e., they had *some* communication with other officers – or were otherwise "involved with the investigation." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007); *see Schoolcraft* at *81.

---

[4] References to submissions relating to the parties' summary judgment motions that were cited in the Order use the Order's form of abbreviations for such submissions.

The collective knowledge doctrine was recognized by the Supreme Court in *Illinois v. Andreas*, 463 U.S. 765 (U.S. 1983), which held that facts known to customs officers, but not observed by an arresting other from another agency, would be considered for the purposes of probable cause, because "where law enforcement authorities are cooperating in an investigation, as here, the knowledge of one is presumed shared by all." *Id.*, 463 U.S. at 771 n.5.

As the Second Circuit explained in *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007), the collective knowledge doctrine applies precisely where "the actual arresting or searching officer *lacks the specific information* to form the basis for probable cause" (emphasis added):

> The existence of probable cause need not be assessed on the basis of the knowledge of a single officer.
>
> "[A]n arrest . . . is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation."
>
> *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001); *see, e.g., United States v. Hensley*, 469 U.S. 221, 230-33, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985). This principle, known as the collective or imputed knowledge doctrine, recognizes that, "in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates." *United States v. Valez*, 796 F.2d 24, 28 (2d Cir. 1986) [additional citations omitted]

*Id.*

In *Cruz*, cited by the Court in the Order, the Second Circuit applied information known to DEA agents who had surveilled a suspect to the probable cause inquiry for a highway stop and subsequent arrest conducted by New Jersey state troopers at the request of the DEA investigators. 834 F.2d at 48-49, 51. The Second Circuit said nothing to indicate that the DEA

agents had communicated the specific facts they observed to the troopers, only that the DEA had asked the state police "to assist them in stopping [the suspect's] truck. *Id*. at 49. Thus, *Cruz* shows that the information known by some officers is not required to be communicated to arresting officers for the information to be combined, at least where the officers were "in communication with each other." *Id*. at 51.

In *Toliver v. City of New York*, cited by the Court (*Schoolcraft* at *81) the Magistrate Judge summarized the law in this area as follows:

> "The existence of probable cause need not be assessed on the basis of the knowledge of a single officer." *Zellner*, 494 F.3d at 369. Under the collective or imputed knowledge doctrine, "an arrest . . . is permissible where *the actual arresting or searching officer lacks the specific information to form the basis for probable cause* or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." *Id.* "The rule exists because, in light of the complexity of modern police work, *the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates*." *United States v. Valez*, 796 F.2d 24, 28 (2d Cir. 1986).

*Toliver v. City of New York*, No. 10 Civ. 3165, 2012 U.S. Dist. LEXIS 187196, *18-19 (S.D.N.Y. Dec. 10, 2012) (emphasis added), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 39894, *6-7 (S.D.N.Y. Mar. 21, 2013). *Toliver* quoted *United States v. Valez*, which described the collective knowledge doctrine as a "rule that permits courts to assess probable cause to arrest by looking at *the collective knowledge of the police force* . . . ." 796 F.2d 24, 28 (2d Cir. N.Y. 1986) (emphasis added). All these decisions make clear that the collective knowledge doctrine applies to facts that are unknown to the arresting officer, and known "only to his superiors or associates." *Id*.

The *Toliver* decision also notes the limitation that: "The doctrine applies if the officers involved are in communication with each other." *Id.*, at *19 (citations omitted). This refers only

to the question of whether the officers whose knowledge should be imputed communicated *at all* with the arresting officers.  *See Id*. at *21.  Thus, the District Court in *Toliver*, in adopting the Magistrate Judge's ruling, stated:  "Probable cause is determined objectively by the facts known to the arresting officer, or through the collective knowledge of the officer and other law enforcement officials involved with the investigation." *Toliver v. City of New York*, 2013 U.S. Dist. LEXIS 39894 at *6-7.

In some cases, the Second Circuit has omitted any requirement even that the officers be in communication with one another.

> If one officer in a police department has knowledge of facts that establish probable cause to arrest a suspect, the suspect suffers no constitutional deprivation if he is arrested by a different officer who lacks such knowledge. *See United States v. Valez*, 796 F.2d 24, 28 (2d Cir. 1986) (discussing "[t]he rule that permits courts to assess probable cause to arrest by looking at the collective knowledge of the police force—instead of simply looking at the knowledge of the arresting officer").

*Crawford v. City of New York*, 477 Fed. Appx. 777, 779 (2d Cir. 2012); *see also  United States v. Canieso*, 470 F.2d 1224, 1230 n. 7 (2d Cir. 1972) ("[I]n a large metropolitan police establishment the collective knowledge of the organization as a whole can be imputed to an individual officer when he is requested or authorized by superiors or associates to make an arrest." (citations omitted)).  Arguably, therefore, no communication at all is required between officers for the collective knowledge of the NYPD to be considered, but the Court need not reach that question here.

There is no dispute that Capt. Lauterborn was "in communication" and "involved with the investigation" with the other officers involved in the events at Schoolcraft's apartment on October 31, 2009; he was with the other officers before and during the entire incident and

conferred with them during that time.  *See Schoolcraft* at *34-45.  That level of communication is clearly sufficient to apply the collective knowledge doctrine to Lauterborn's knowledge.

Indeed, had Lauterborn relayed Dr. Lamstein-Reiss' specific statements to his fellow officers at the scene, then the collective knowledge doctrine would be redundant.  The officers then could have relied on Lauterborn's statements to them for the knowledge he conveyed, without resort to collective knowledge.  *See Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("[P]olice officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed. They are also entitled to rely on the allegations of fellow police officers." (citations omitted)).  In other words, in that case the other officers would have had the same knowledge as Lauterborn.

Reliance on another officers' statements is different than the collective knowledge doctrine, although the two are sometimes discussed together in the case law.  For example, in *Ortiz v. Vill. of Monticello*, the District Court made clear that the two doctrines are two independent bases for probable cause.

> An assessment of whether probable cause exists at the time of seizure "is to be made on the basis of the collective knowledge of the police, rather than on that of the arresting officer alone." [citation omitted] *Additionally, police officers are "entitled to rely on the allegations of fellow police officers."*  [citation omitted].

*Ortiz v. Vill. of Monticello*, 06 Civ. 2208 (ER), 2012 U.S. Dist. LEXIS 158428, *26-27 (S.D.N.Y. Nov. 2, 2012) (emphasis added) (holding that all information available to the Monticello police department could be considered in support of probable cause where arresting officers acted upon arrest directives issued over department radio).[5]

---

[5] A district court opinion relied on by the Court discusses the collective knowledge and reasonable reliance concepts together, but that decision also notes that the collective knowledge doctrine requires "*some communication* between the officers involved" for the collective knowledge doctrine to apply, not communication of all the knowledge at issue.  *Colon v. City of*

Accordingly, the Court should correct the Order to state that Lauterborn's knowledge could be considered in determining whether there was probable cause to enter Schoolcraft's apartment or place him in custody as an emotionally disturbed person.

**POINT II**

**THE COURT SHOULD DISMISS ALL CLAIMS AGAINST DEFENDNANT TIMOTHY CAUGHEY BECAUSE THE COURT FOUND CAUGHEY TO BE PERSONALLY INVOLVED ONLY IN PLAINTIFF'S FIRST AMENDMENT CLAIM, AND THE COURT PROPERLY GRANTED QUALIFIED IMMUNITY TO ALL INDIVIDUAL DEFENDANTS FOR THE FIRST AMENDMENT CLAIM**

In ruling upon the City defendants' motion for summary judgment dismissing the plaintiff's First Amendment claim, the Court held that in light of changes in law in the Second Circuit the plaintiff could maintain a claim for workplace retaliation occurring prior to his suspension on October 31, 2009, for internal complaints that he made to IAB and QAD (but not for the appeal of his performance evaluation).[6] *Schoolcraft* at *102-09.  In so holding, the Court reversed its prior 2012 decision in this case on the same issue.  In light of the change in the law, however, the Court properly ruled that the individual defendants were entitled to qualified immunity on that claim. *Schoolcraft* at *112-13.[7]

---

*New York*, 11-CV-0173 (MKB), 2014 U.S. Dist. LEXIS 46451, *14 (E.D.N.Y. Apr. 2, 2014) (emphasis added).

[6] The Court also ruled that plaintiff's pending First Amendment claim for prior restraint due to alleged harassment at his home upstate should be dismissed, due to the undisputed fact that there was no chilling effect on plaintiff's speech. *Schoolcraft* at *109-10.

[7] The Court did not conclude that any part of Schoolcraft's First Amendment claim was established as a matter of law; only that a claim for pre-suspension workplace retaliation could survive for trial. *Schoolcraft* at *98, *108.  In ruling on the motion, the Court deemed plaintiff to have adduced sufficient facts to assert a First Amendment claim for workplace retaliation, which,

Nevertheless, in ruling on defendant Caughey's motion to dismiss all claims against him for lack of personal involvement, the Court held that the motion was denied because of Caughey's personal involvement in conduct that was actionable as part of plaintiff's purported First Amendment claim.  *Schoolcraft* at *155.  The Court stated:

> Plaintiff . . . contend[s] that Caughey issued retaliatory command disciplines against him, referred him to the Early Intervention Unit, confiscated and kept Schoolcraft's memo book for several hours, menaced Schoolcraft with his gun during his October 31, 2009 shift, and conspired with Mauriello to retaliate against Schoolcraft.  *See generally* Pl.'s Mem. in Opp'n 32-38.
>
> As discussed above, Schoolcraft's First Amendment claim extends to his pre-suspension speech, and therefore so too do his allegations with respect to Caughey's alleged 'retaliatory' conduct.  Therefore, Caughey remains a defendant.

*Id*.  The Court gave no reason why Caughey should not be entitled to qualified immunity for the First Amendment claim along with all other defendants, and there is none.

Accordingly, City defendants respectfully request that the Court amend the Order to dismiss all claims against defendant Caughey.

## POINT III

### THE COURT SHOULD BIFURCATE PLAINTIFF'S *MONELL* CLAIM FOR TRIAL

The Court should bifurcate plaintiff's *Monell* claim against the City from the trial of all other issues in the case.  Bifurcation is called for in order to avoid the significant time, expense and burden of a trial on whether a municipal policy or custom caused a constitutional violation

---

the Court held, does not require a chilling effect on speech as one of its elements.  *Schoolcraft* at *107.  As the City Defendants previously noted, the Third Amendment Complaint ("TAC") does not allege a workplace retaliation claim (City Reply at 24 n.8), and the Court did not discuss the omission of the claim from the TAC.  Whether plaintiff had pled or could prove all of the elements of such a claim was not briefed by the parties.  The City defendants reserve all arguments regarding any purported workplace retaliation claim for later proceedings in this case.

alleged by plaintiff, should the jury's determination on the main issue – whether Schoolcraft suffered a constitutional violation– render the *Monell* claim fully or partially moot.  Bifurcation would also obviate the prejudice and jury confusion that would arise if the evidence of other alleged misconduct not involving Schoolcraft, proffered by plaintiff to support his *Monell* claim, were heard by the jury when determining whether plaintiff's own constitutional rights were violated in the events at issue here.

Federal Rule of Civil Procedure 42(b) provides that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim … or of any separate issue or any number of claims, or issues . . . ." Fed. R. Civ. P. 42(b).  "A district court has broad discretion under Rule 42(b) of the Federal Rules of Civil Procedure to order separate trials of separate claims, to promote convenience, to avoid prejudice, and/or to expedite the proceedings." *Williams v. Blvd. Lines, Inc.*, 10 Civ. 2924 (DF), 2013 U.S. Dist. LEXIS 149707, *23-24, 28 (S.D.N.Y. Sept. 30, 2013) (bifurcating negligent training and supervision claim from claim for negligence, applying authority for the bifurcation of *Monell* claims) (citations omitted); *see also Daniels v. Loizzo*, 178 F.R.D. 46, 48 (S.D.N.Y. 1998) (bifurcating *Monell* claim at trial to avoid prejudice and promote efficiency); *Ricciuti v. New York City Transit Auth.*, 796 F. Supp. 84, 86 (S.D.N.Y. 1992) (same); *Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y. 1989), *rev'd on other grounds and aff'd in part*, 899 F.2d 183 (2d Cir. 1990) (same).  Accordingly, a separate trial is justified if any one of these three conditions has been satisfied.  *See Williams,* 2013 U.S. Dist. LEXIS 149707 at *24; *Ricciuti*, 796 F. Supp. at 86; *Ismail*, 706 F. Supp. at 251; *see also Carson v. City of Syracuse*, 92-CV-777, 1993 U.S. Dist. LEXIS 9508 at *6 (N.D.N.Y. 1993) (bifurcating *Monell* claim in order to avoid prejudice, and promote convenience and judicial economy).

Separate trials are appropriate where, as here, the issues to be separated are distinct, involve different types of proof, and where separation will not engender duplication of testimony and evidence.  *See DiSorbo v. Hoy*, 343 F.3d 172, 179 (2d Cir. 2003) (trial court bifurcated *Monell* claim into a second trial back-to-back with the same jury, in order to avoid prejudice from evidence of other bad acts by other police officers and to promote efficiency).  When a single issue may be dispositive of a case, and if resolution of that issue may make it unnecessary to try the other issues –here, if there is no constitutional violation then a *Monell* trial is not needed – a separate trial is desirable in order to save the court's and jurors' time and reduce all parties' expenses.[8]  *See Santiago v. New York*, 1992 U.S. Dist. LEXIS 6731, *8-9 (S.D.N.Y. May 15, 1992) (Sweet, J.) (bifurcating *Monell* claim for trial for judicial efficiency); *see also Ricciuti*, 796 F. Supp at 85-86; *Barnell v. Paine-Weber Jackson & Curtis, Inc.*, 577 F. Supp. 976, 978 (S.D.N.Y. 1984) (granting defendant's motion to bifurcate when the issue of timely filing may obviate the need for any further proceedings).  Another factor that courts consider – and which weighs heavily in favor of bifurcation in this case (*see infra* at 18-21) – is whether having just a single trial will prejudice one or more defendants due to the nature of the evidence which must necessarily be introduced.  *See, e.g., Ricciuti*, 796 F. Supp. at 86; *Daniels*, 178 F.R.D. at 48.

As set forth below, all of these factors call for the bifurcation of plaintiff's *Monell* claim, to be tried only after all other issues have been determined by the jury.

---

[8] Here, the several hospital and doctor defendants have no interest in the *Monell* aspects of this case, which solely concern the City, and bifurcation would allow those parties to avoid costs associated with attending the *Monell* phase of the trial, which otherwise they could not avoid.

**A.     The scope of plaintiff's *Monell* claim calls for bifurcation to avoid the possibly unnecessary, significant costs of a series of mini-trials on unrelated instances of purported 'other bad acts' by the NYPD.**

The *Monell* aspect of this case concerns only the question of whether the City will be held directly liable for compensatory damages and attorneys' fees.[9]  As the Court found, the parties agree that a valid claim for municipal liability under *§ 1983* exists under *Monell* if a plaintiff can show, inter alia: (1) "the existence of an unlawful practice by subordinate officials so permanent and well settled to constitute 'custom or usage,' with proof that this practice was so manifest as to imply the acquiescence of policy-making officials; or (2) a failure to train or supervise that amounts to 'deliberate indifference' to the rights of those with whom the municipality's employees interact." *Schoolcraft*, at *113-14 (citations omitted).  Additionally, Schoolcraft must demonstrate that the municipality's policy or custom caused the deprivation of the injured Plaintiff's federal or constitutional rights.  *Id.*; *see, e.g., Monell*, 436 U.S. 658 at 690-91; *Sarus v. Rotundo*, 831 F.2d 397, 400 (2d Cir. 1987).  The plaintiff must prove that the policy or custom was the "moving force" behind the specific constitutional violations that he claims to have suffered.  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (holding that plaintiff must show "a direct, casual link" between a municipality's "policy" or "custom" and the constitutional deprivation).  The Court ruled that the plaintiff could proceed to trial only on the basis of a claim of a widespread "custom and usage" to which the City was deliberately indifferent, not a failure to train.  *Schoolcraft* at *121-23.

---

[9] The City of New York is immune from punitive damages under Section 1983 or state law.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Sharapata v. Islip*, 56 N.Y.2d 332, 339 (1982) (state and its political subdivisions are exempt from punitive damages under state law as under Section 1983).
.

But, if the plaintiff fails to first prove any violation of his constitutional rights, then there cannot be *Monell* liability and the court and jury need not hear evidence on these complex and time-consuming matters of policy, custom and causation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding in case where *Monell* claims were bifurcated that there can be no finding of municipal liability in the absence of some individual liability for the alleged constitutional deprivation).

For that reason, Courts in the Second Circuit generally "favor bifurcating *Monell* claims." *Mineo v. City of New York*, 2013 U.S. Dist. LEXIS 46953, 2013 WL 1334322, *1 (E.D.N.Y. Mar. 29, 2013) (citations omitted)); *accord Bombard v. Volp*, 44 F. Supp. 3d 514, 528 (D. Vt. 2014) (granting motion to bifurcate to avoid jury hearing  evidence of five years of excessive force claims against other officers, where *Monell* issue may be mooted by the first trial); *see, e.g.*, *Hollins v. City of New York*, 10 Civ. 1650 (LGS), 2014 U.S. Dist. LEXIS 183076, *38-39 (S.D.N.Y. Mar. 3, 2014) (bifurcating *Monell* case into second  phase of jury trial "in the interest of efficiency and to avoid possible prejudice to the individual [d]efendants"); *Williams v. City of New York*, CV-07-5362 (NG) (VVP), 2008 U.S. Dist. LEXIS 104730, *8 (E.D.N.Y. Dec. 29, 2008) (noting that bifurcation of civil rights trials is a common practice in this Circuit; citing *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999)); *Vives v. City of New York*, 02 Civ. 6646 (JSM) (HBP), 2003 U.S. Dist. LEXIS 1833, *2-3 (S.D.N.Y. Feb. 10, 2003); *Busch v. City of New York*, 00 CV 5211 (SJ), 2002 U.S. Dist. LEXIS 18337, *9-10 (E.D.N.Y. Sept. 9, 2002); *Duke v. County of Nassau*, 97-CV-1495 (JS) (ETB), 2000 U.S. Dist. LEXIS 22415, *2-3

(E.D.N.Y. Oct. 26, 2000); *Masi v. City of New York*, 98 Civ. 6802 (MBM), 1999 U.S. Dist. LEXIS 13488, *1-2 (S.D.N.Y. Sept. 2, 1999)).[10]

Defendants do not yet know all of the evidence that plaintiff intends to proffer on *Monell* issues, but even just the material pled in plaintiff's TAC and cited by plaintiff in defending against summary judgment is sufficient to show why bifurcation is crucial.  Plaintiff purports to prove *Monell* liability with a potpourri of alleged 'other bad acts' by NYPD personnel – much of it far removed in time and space from the events of this case – purporting to demonstrate three different policies and customs: (i) quotas for police activity; (ii) downgrading or suppression of criminal complaints to manipulate statistics; (iii) retaliation against officers who report misconduct.  Defendants contest the admissibility and probative value of this evidence,[11] even with respect to a *Monell* claim.  Nevertheless, such proffered evidence[12] includes at least:

- Statements in the Mollen Commission report in 1994 reporting on reputed hostility to police officers who made complaints of misconduct.  *Schoolcraft* at *116.

---

[10] *See also, e.g., Doe v. Yorkville Plaza Assocs.*, 92 Civ. 8250 (JGK), 1997 U.S. Dist. LEXIS 10103 at *1-2 (S.D.N.Y. July 11, 1997); *Morales v. Irizarry*, 95 Civ. 5068(AGS) (HBP), 1996 U.S. Dist. LEXIS 15613, *3-4 (S.D.N.Y. 1996) ("[t]he overwhelming weight of authority holds that . . . the most prudent course is to try the *Monell* claims separately and to stay discovery concerning those claims . . . .").

[11] As the Court held, the City defendants' objections to the admissibility of the *Monell* evidence were reserved for motions *in limine* and for trial.  *Schoolcraft* at *119.

[12] Defendants reserve the right to move to exclude and/or object to the admission of all of this evidence at trial.

- Statements in an undated report on police corruption relating concerns expressed in anonymous focus groups about retaliation for reporting misconduct. *Id.*; POX 38. [13]

- Excerpts of former Commissioner Kelly's testimony before the Mollen Commission in the early 1990s, regarding the prior investigation of criminal acts by certain police officers and the NYPD's efforts to fight corruption and improve its processes. *Schoolcraft* at *116; POX 37.

- Purported expert testimony from plaintiff's expert describing conditions and reports occurring in 1994, media reports of similar misconduct, and so-called "survey" evidence from anonymous sources indicating alleged "pressure" to use quotas and downgrading during unspecified time-periods and unspecified portions of the NYPD. *Schoolcraft* at *115-16; POX 1 at 14.

- A labor arbitration finding of an alleged traffic summons quota in 2005, involving the 75th precinct and defendant retired Deputy Chief Michael Marino, who was then the Commanding Officer of that precinct. TAC, ¶¶ 77-85.

- An appeal by an officer in the 75th precinct of his 2005 evaluation, which the officer alleged was based on quotas for police activity. TAC, ¶ 78.

- Alleged "similar wrongful conduct" claimed by Adhyl Polanco, who says he was retaliated against in the 41st precinct for complaining about quotas and who was placed on restricted duty after a psychological evaluation. TAC ¶¶ 307, 364; *Schoolcraft* at *117; POX 40.

---

[13] References to exhibits filed by the parties on summary judgment follow the style of the Order. "POX" refers to a "Plaintiff's Opposition Exhibit."

- Alleged "similar wrongful conduct" claimed by Frank Pellestro, who allegedly experienced an IAB leak of his complaints in the 42nd precinct in 2009.  TAC ¶¶ 307, 363.

- Pedro Serrano's claim that he was retaliated against after complaining about quotas at the 40th Precinct (Bronx) in 2007.  *Schoolcraft* at *117-18; POX 41.

- Craig Matthews' claim that he was retaliated against for complaining about quotas in in the 42nd precinct (Bronx) in 2008.  *Schoolcraft* at *118; *see Matthews v. City of New York*, No. 13-2915-cv, 2015 U.S. App. LEXIS 3016, at *2 (2nd. Cir. Feb. 26, 2015).

- Joseph Ferrara's claim that he was personally reluctant to report unrelated misconduct because he feared retaliation.  *Schoolcraft* at*118.

In addition to the plaintiff's proffered evidence, defendants are entitled to defend against these allegations – whether made through an expert or percipient witnesses – including through additional witnesses and documents relating only to these events and reports.  Thus plaintiff's *Monell* case, if the proffered evidence is admitted, will turn an already lengthy trial about Schoolcraft's experiences into a series of mini-trials on several unrelated incidents and the meaning of statements made over 20 years ago.  The *Monell* case will become the proverbial tail wagging the dog, as much as doubling (or more) the trial time of the jury, the Court, the parties and counsel.

Thus, bifurcation is called for here because it will save substantial time and costs in the trial of plaintiff's main claim, and postpone the substantial costs of a *Monell* trial until it is absolutely necessary, which may be  never.  In *Padilla v. City of New York*, the Honorable Michael B. Mukasey noted that:

> [I]t is possible that if the case is tried only on the issue of
> individual defendant liability, there may be no need to consider the
> issue of municipal liability regardless of the outcome of such a
> trial.  If the verdict is in favor of the individual defendants, that
> ends the case; if the verdict is in favor of plaintiff, the City has a
> substantial incentive to settle the case.

*Padilla v. City of New York*, 1993 U.S. Dist. LEXIS 17 at *2 (S.D.N.Y. Jan. 4, 1993).[14]  This

Court's statement in *Santiago v. New York* is equally applicable:

> Whereas evidence regarding [the individual defendant's] conduct
> may speak to the Municipal Defendants' policies or customs, the
> reciprocal is not true.  The potentially voluminous evidence of the
> Municipal Defendants' policies or customs will simply not be
> probative of whether Olan inflicted a constitutional injury. [citation
> omitted.] At the same time, separate trials would entail little waste.

1992 U.S. Dist. LEXIS 6731 at *8-9.  With bifurcation, there is no need for the lengthy and

complex mini-trials on collateral matters to delay and derail the jury's consideration of the

central question in the case: whether Schoolcraft's constitutional rights were violated.

B. **The Court should bifurcate plaintiff's *Monell* claim in order to avoid undue
and substantial prejudice to the defendants, and jury confusion, arising from
the introduction of *Monell* evidence concerning unrelated allegations of
misconduct.**

In addition, the raft of *Monell* evidence that plaintiff proffers is irrelevant and highly

prejudicial to the jury's determination of the central question here: whether Schoolcraft himself

suffered a constitutional deprivation.  Absent a *Monell* claim, the evidence offered by plaintiff of

unrelated events and alleged misconduct would be inadmissible under Rules 402, 403 and

404(b), at the least.[15]  Like any 'other bad act' evidence, it will be severely prejudicial to the

---

[14] Plaintiff also has a strong incentive to resolve the case if he prevails in the first phase, given
the costs involved in trying the *Monell* claim, with little to no economic benefit to the plaintiff.

[15] Defendants contend that the proffered evidence is inadmissible even with a *Monell* claim in
the trial and will address those arguments in motions *in limine* and at trial.  Should bifurcation
not be granted, even if evidence is admissible as to *Monell* alone, the evidence should be
excluded from a trial involving other issues under Fed. R. Civ. P. 403, because the likelihood of

defendants on the central question of whether Schoolcraft's rights were violated in this case.  The City and the numerous individual police officer defendants are entitled to a fair trial on that question based on evidence of *the officers' own* conduct towards Schoolcraft not events occurring in other precincts involving other people at other times.

Separate trials should be ordered where, as here, there is a danger that evidence admissible on one issue will contaminate the minds of the jury in considering liability on other issues.  *See Ricciuti*, 796 F. Supp. at 86; *see also Fisher v. City of New York*, 90 Civ. 8163 (LJF), 1992 U.S. Dist. LEXIS 3436, *9-10 (S.D.N.Y. 1992) ("[g]iven the substantial possibility that defendants may be prejudiced by a consolidated trial . . . bifurcation of the '*Monell* claims' against the City is appropriate here"); *Carson v. City of Syracuse*, 1993 U.S. Dist. LEXIS 9508 at *14 (N.D.N.Y. 1993) (noting that the unfair prejudice which would be inherent in a single trial justifies bifurcation); *Ismail*, 706 F. Supp. at 251;

If the trial is not bifurcated, plaintiff would have the jury hear evidence of quotas allegedly enforced by defendant Marino in 2005 in another precinct; multiple instances of quotas and retaliation in other precincts, in another borough, by other officers; alleged "downgrading" in another precinct; alleged pressure reported by anonymous survey respondents; alleged threats of retaliation by unnamed officers occurring decades before the events at issue here.  All of this is the sort of evidence from which the jury could readily make the impermissible inference that because the alleged wrongdoing happened somewhere else to someone else, it happened here to Schoolcraft.  *See Daniels*, 178 F.R.D. at 48 ("[I]f the jury considers the past misconduct evidence

---

severe prejudice outweighs any probative value on *Monell* issues.  *See Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. N.Y. 1991) ("[I]t seems unlikely that this type of propensity evidence could have been introduced to establish the *Monell* claim. In a combined trial, such evidence could not have been admitted without compromising the rights of Hicks.").  Bifurcation would obviate the need for Rule 403 balancing of prejudice against relevance to *Monell*, since all questions but *Monell* would already have been decided before the evidence is offered.

against Municipal Defendant in a consolidated trial, there exists a substantial danger of unfair prejudice to the Individual Defendants. Courts, faced with this dilemma, have separated the trial of individual police officers from that of the municipality so that evidence admissible only against the municipality does not unfairly taint the trial of the individual officer[s]." (quotation and citation omitted)).[16]

Bifurcation also protects against jury confusion.  In *Ismail v. Cohen*, Judge Leisure explained why:

> As to the § 1983 claim against the City, this claim would involve a great deal of evidence which is entirely unnecessary to the resolution of all of the other claims in the case. The claims involved require proof of different facts and the Monell claim would involve the introduction of quite broad evidence unnecessary to claims to be heard in the first trial. [citation omitted] The presentation of divergent standards and factual evidence in one trial could lead to jury confusion. The § 1983 claim against the City would present different and far more complicated standards of liability and causation for the jury, would greatly expand the length and scope of the trial and would add to the expense of the parties. Separate trials in this instance would be of further convenience and be conducive to expedition and economy.

*Ismail*, 706 F. Supp. at 251-52; *see also Ricciuti*, 796 F. Supp. at 85-86.  Indeed, in this case there is an enhanced danger of juror confusion – as well as the attendant costs to the parties – because each individual instance of misconduct that plaintiff intends to present is a matter as to which the defendants are entitled to present a defense, embroiling the jury in several distracting mini-trials on collateral matters.

Consequently, for all these reasons, plaintiff's *Monell* claim should be bifurcated for the purposes of trial.

---

[16] Given the heavy costs to both parties of trying a *Monell* case which might be avoided in a bifurcated trial, it may be that the substantial prejudice to defendants provides much of the plaintiff's motivation for not consenting to bifurcation.

## CONCLUSION

For the foregoing reasons, the City defendants respectfully request that the Court grant their motions for reconsideration and bifurcation.

Dated:  New York, New York
        June 2, 2015

                                        Respectfully submitted,

                                        ZACHARY W. CARTER
                                        Corporation Counsel of the City of New York
                                        *Attorneys for City defendants*
                                        100 Church Street, Room 3-174
                                        New York, New York 10007
                                        (212) 356-2344


                                        By:      /s/
                                                 _____
                                                 Alan Scheiner
                                                 Senior Counsel
                                                 James Horton
                                                 Assistant Corporation Counsel

- 21 -