Law Office of
NATHANIEL B. SMITH
Attorney at Law
100 Wall Street
New York, New York 10005

Nathaniel B. Smith
natbsmith@gmail.com

Tel: 212-227-7062
Fax: 212-230-1090

June 2, 2015

Honorable Robert R. Sweet
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

                *Schoolcraft v. The City of New York, et al.,*
                *10-cv-6005 (RWS)(DCF)*

Dear Judge Sweet:

      On behalf of the plaintiff, I am writing to the Court to request reconsideration or clarification in connection with certain parts of the Court's Opinion (Dkt. # 436). This motion pertains to the Court's ruling on three matters: (1) the use of the expert opinion of Dr. Halpren-Ruder at trial; (2) the determination that the individual NYPD defendants have qualified immunity for First Amendment violations; and (3) the determination that the City Defendants' post-suspension conduct cannot give rise to a First Amendment violation as a matter of law.

      *The Standard for A Reconsideration Motion*

      The Court has set forth at length the standards for a reconsideration motion in *Ferring B.V. v. Allergan, Inc.*, 2013 U.S. Dist. Lexis 111374 at p. *3-5 (S.D.N.Y. Aug. 7, 2013). We submit that the standard has been meet in this motion for the reasons set forth below.

*The Grounds for Reconsideration*

*1. Dr. Halpren-Ruder's Expert Opinion.*

In the Opinion, the Court held that Dr. Halpren-Ruder's expert report lacked the appropriate foundation because the "basis" for his opinion was a 2010 New Jersey protocol. (Opinion at pp. 189-90.) In reaching this conclusion, however, the Court misapprehended the underlying basis for Dr. Halpern-Ruder's opinion about the failure by Jamaican Hospital to conduct a toxicology screen from a urine sample -- an opinion based on thirty years of experience, not the New Jersey written protocol.

Based on Dr. Halpren-Ruder's experience in emergency rooms, Dr. Halpren-Ruder opined that a toxicology test on Officer Schoolcraft was required because the test would have determine if there were chemical substances in his blood that could mimic or explain any purported psychiatric symptoms. In addition, a toxicology test was required because withdrawal from a chemical substance in the patient's blood while in a psychiatric facility could be harmful to a patient, particularly if that information had not been previously obtained.

For these reasons, in his expert report and at his deposition, Dr. Halpern-Ruder opined that Jamaica Hospital's failure to conduct the toxicology test departed from the standard of care for clearing a patient for psychiatric commitment. (*See* PMX 36; Report at p. 3; *see* also Dr. Halpren-Ruder Deposition at pp. 59-61, attached as Exhibit dd to the Radomisli Declaration, dated January 5, 2015 (Dkt. # 326). That opinion was not "based on" the New Jersey protocols; it was based on his extensive experience as a board certified emergency room doctor about "usual and customary evaluations," such as a toxicology test. (Report at p. 4; Deposition Tr. at 20 (board certified in emergency medicine) at p. 62 (failure to take test falls outside standard of care); at 71 (actively involved in practice at the time). Thus, Dr. Halpren-Ruder merely cited the New Jersey protocol as a reference; his opinion, however, was based on over thirty years as a board certified emergency room physician. Thus, to the extent that he can establish a proper foundation at trial, we request that he be permitted to do so.

Although Dr. Halpren-Ruder testified that he did not cite written Emergency Medicine standards in New York in place in 2009, he also testified that the standards that he operates under are not written standards and that the general practice can fort example have universal applications. (*See* Dep. at pp. 72-74 & pp.

3

Law Office of
Nathaniel B. Smith

84-85.) He also testified that the "standard of care" is a complex matter and that he merely cited the 2010 New Jersey guide to allude what a group of reasonable doctors set forth in writing were examples of appropriate protocols. (*Id.* at p. 49) Thus, any questions about Dr. Halpren-Ruder's opinion are issues about the weight of the opinion evidence, not its admissibility.

Indeed, there is no real dispute that a toxicology report is within the standard of care. First, Jamaica Hospital did not submit any evidence (written or otherwise) disputing the point. Second, Jamaica Hospital's own expert *agreed* that a toxicology report is a regular part of the standard of care. (*See* Dr. Levy Report p. 5; Ramomisli Affidavit Exhibit JJ: Dr. Halpren-Ruder "correctly notes that urine toxicology screen was not obtained, however, which would be a final component of appropriate medical clearance."). Accordingly, Dr. Halpren-Ruder should be permitted to offer his opinion on this issue at trial, provided that the required foundation has been established for his expert opinion.

### 2. Qualified Immunity for the Individual NYPD Defendants.

The Court held that the individual NYPD defendants are entitled to qualified immunity because Office Schoolcraft's right to report to IAB and QAD was not clearly established at the time those reports were made. Opinion at p. 124. Yet it appears that the Court overlooked the two arguments that we made on this issue in our March 17, 2015 letter to the Court.

In that letter, we pointed out that the qualified immunity argument was made for the first time in the City Defendants' reply papers and as such should not be considered because it was late and denied the plaintiff an opportunity to respond. In addition, we pointed out in our letter that the law was clearly established at the relevant time that a governmental entity or individual could not lawfully take adverse actions against a public employee in retaliation for that employee's speech on matters of public concern. (*See* Smith Letter, dated March 17, 2015 at pp. 8-9 (citing *Golodner v. Security Technology Systems LLC*, 770 F.3d 196, 206 (2d Cir. 2014) (right to be free from retaliation for speech on matters of public concern was firmly established well before 2009).

### 3. First Amendment Liability for Post-Suspension Conduct.

In the Opinion, the Court relied on two cases, *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) and *Williams v. Town of Greenburgh*, 535 F.3d 71,

LAW OFFICE OF
NATHANIEL B. SMITH

78 (2d Cir. 2008) to hold that Officer Schoolcraft's post-suspension First Amendment claim failed to survive summary judgment. Opinion at pp. 120-21. Yet in the context of a citizen who alleged retaliation for criticism of public officials, the standard of law set out in both cases does not control. The Second Circuit in *Dorsett v. County of Nassau*, 732 F3d 157, 160 (2d Cir 2013), clarified that the requirement that a citizen show that his or her speech was "effectively chilled" is not absolute. Rather, a plaintiff can show *either* that the speech has been adversely affected by the government retaliation or that the plaintiff has suffered some other separate harm or injury from the suppression of speech.

> The Second Circuit explained:
>
> As we have recognized, there is some tension in our First Amendment standing cases. *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir.2004). We have sometimes given the impression that silencing of the plaintiff's speech is the only injury sufficient to give a First Amendment plaintiff standing. For example, in *Curley v. Village of Suffern*, a case relied upon by the district court, we wrote that "To prevail on this free speech claim, plaintiff must prove ... [that] defendants' actions effectively chilled the exercise of his First Amendment right." 268 F.3d at 73; *see also Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir.2002); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir.1992). This was an imprecise statement of law.
>
> Chilled speech is not the *sine qua non* of a First Amendment claim. A plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm. Various non-speech related harms are sufficient to give a plaintiff standing. *Zherka v. Amicone*, 634 F.3d 642, 646 (2d Cir.2011) (lost government contract); *Tabbaa v. Chertoff*, 509 F.3d 89, 102 (2d Cir.2007) (additional scrutiny at border crossing); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir.2002) (revoking a building permit); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 195 (2d Cir.1994) (refusal to enforce zoning laws).

*Dorsett v County of Nassau*, 732 F. 3d 157, 160 (2d Cir 2013).

Here, the NYPD's post-suspension conduct (including the involuntary commitment and the upstate harassment campaign waged against Officer

LAW OFFICE OF
NATHANIEL B. SMITH

Schoolcraft with at least a dozen "visits" by local and NYPD police, banging on the door, spying, videotaping, and repeated and unwelcome telephone calls) is the type of concrete injury or harm that ought to be cognizable.

The decision in *Dorsett* has been confirmed in later Second Circuit decisions. In *Prince v. County of Nassau*, 563 Fed. Appx. 13, 17 (2d Cir 2014), the Second Circuit reiterated the standard set out in *Dorsett*. Thus, "[t]o plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [plaintiff's] exercise of that right; and (3) the defendant's actions caused him some injury." *Prince, supra,* at 17.

That Officer Schoolcraft did ultimately speak out is no defense to the City Defendants' post-suspension conduct. Numerous decisions within the Second Circuit support this conclusion. For example, in *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 430-32 (S.D.N.Y. 20130, the plaintiff, a town resident, brought a First Amendment retaliation claim against the town, the police chief, and several police officers. The defendants' challenge to the plaintiff's First Amendment claim was based solely on plaintiff's failure to allege "actual chilling" of his speech under *Curley*. The court found that the injuries alleged by plaintiff caused by defendants' retaliatory conduct, including harm to his professional reputation, temporary modification of his job responsibilities, further harassment and intimidation by defendants and economic and pecuniary loss were sufficient to plead a First Amendment retaliation claim. Therefore, plaintiff was not required to allege actual chilling and motion to dismiss claim was denied.

Other decisions within the Circuit also support this point. *See, e.g., Pluma v. City of New York*, 2015 WL 1623828, at *7 (S.D.N.Y. Mar. 31, 2015) ("although Plaintiff pleads little by way of chilling, he clearly alleges a concrete injury caused by the officers' pushing and deploying pepper spray, which satisfies the requirement recently articulated by the Court of Appeals"); *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 (E.D.N.Y.2009) ("Chilling is required to be alleged only in cases where a plaintiff states no harm independent of the chilling of speech."); *Norton v. Town of Brookhaven*, 47 F Supp. 3d 152, 156 (E.D.N.Y. 2014) (a criminal prosecution is a sufficient form of concrete harm for purposes of a First Amendment retaliation claim); *Brink v. Muscente*, 2013 U.S. Dist. LEXIS 137880 at *23-24 (S.D.N.Y. Sept. 25, 2013) (accepting that the plaintiff suffered "harm in

6

LAW OFFICE OF
NATHANIEL B. SMITH

the form of retaliatory charges brought against her" because it is "well-settled that the First Amendment 'prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out.' "); *Lozada v. Weilminster,* 2015 WL 1311174 at *18 (E.D.N.Y. Mar. 23, 2015) (finding that plaintiff established a question of fact as to whether she has sustained an injury connected to her exercise of First Amendment rights by presenting testimony, which could support a finding that the police officer arrested her for, and charged her with, disorderly conduct because she refused to sign a document); *Tomlins v. Village of Wappinger,* 812 F.Supp.2d 357, 371 n. 17 (S.D.N.Y. 2011) (finding First Amendment retaliation claim adequately alleged despite the absence of any allegation of actual chilling, where the plaintiff claimed a retaliatory denial of a building permit and a denial of an unconditional variance, among other unspecified harms).

\*   \*   \*

For these reasons, we request that this motion be granted.

Respectfully submitted,

Nathaniel B. Smith

By Fax (212) 805-7925
cc:
All Counsel
(by email)

MEMORY TRANSMISSION REPORT

```
                                          TIME      :06-02-2015 19:01
                                          FAX NO.1  :
                                          NAME      :


FILE NO.          : 348
DATE              : 06.02 19:00
TO                : ☎ 12128057925
DOCUMENT PAGES    : 6
START TIME        : 06.02 19:00
END TIME          : 06.02 19:01
PAGES SENT        : 6
STATUS            : OK
```

***SUCCESSFUL TX NOTICE***

LAW OFFICE OF
NATHANIEL B. SMITH
ATTORNEY AT LAW
100 WALL STREET
NEW YORK, NEW YORK 10005

NATHANIEL B. SMITH
natbsmith@gmail.com

TEL: 212-227-7062
FAX: 212-200-1096

June 2, 2015

Honorable Robert R. Sweet
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

*Schoolcraft v. The City of New York, et al.,*
*10-cv-6005 (RWS)(DCF)*

Dear Judge Sweet:

On behalf of the plaintiff, I am writing to the Court to request reconsideration or clarification in connection with certain parts of the Court's Opinion (Dkt. # 436). This motion pertains to the Court's ruling on three matters: (1) the use of the expert opinion of Dr. Halpren-Ruder at trial; (2) the determination that the individual NYPD defendants have qualified immunity for First Amendment violations; and (3) the determination that the City Defendants' post-suspension conduct cannot give rise to a First Amendment violation as a matter of law.

*The Standard for A Reconsideration Motion*

The Court has set forth at length the standards for a reconsideration motion in *Ferring B.V. v. Allergan, Inc.*, 2013 U.S. Dist. Lexis 111374 at p. *3-5 (S.D.N.Y. Aug. 7, 2013). We submit that the standard has been meet in this motion for the reasons set forth below.