UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ADRIAN SCHOOLCRAFT,

                                                                          10–cv-6005 (RWS)

                                 Plaintiff,

           -against-


 THE CITY OF NEW YORK, et al.,

                               Defendants.
------------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITON TO CITY DEFENDANTS' BIFURCATION MOTION**

**PRELIMINARY STATEMENT**

    Plaintiff submits this memorandum of law in opposition to the motion by the City Defendants[1] to bifurcate this action into two separate trials. The Medical Defendants and Defendant Mauriello have not joined the City Defendants in this motion. Plaintiff opposes the motion because two trials will needlessly lengthen and complicate this case. Evidence about the NYPD's practices and policies is relevant to the individual NYPD defendant's liability as well as the City's liability under *Monell*. Thus, the City Defendants' arguments about how two trials will avoid confusion or save time should be rejected.

---

[1] Plaintiff uses the same designations of the parties as the parties have used in the recent round of summary judgment motions.

## ARGUMENT

In their bifurcation motion, the City Defendants do not address the standard for granting this type of motion. For obvious reasons relating to efficiency, it is well-settled that "the presumption is that all claims in a case will be resolved in a single trial, and it is only in *exceptional* circumstances where there are *special and persuasive* reasons for departing from this practice that distinct causes of action asserted in the same case may be made the subject of separate trials."[2] The City Defendants do not satisfy this standard. Their motion fails to establish that bifurcation is needed to avoid or minimize prejudice, or to produce economies in the trial of the matter, or to lessen or eliminate the likelihood of juror confusion.[3]

In support of their motion, the City Defendants make the conclusory argument that a separate trial on the *Monell* claim is necessary to avoid diversions with "mini-trials," to avoid undue prejudice to individual defendants, and to avoid jury confusion. The argument does not withstand analysis. Indeed, bifurcation would have the

---

[2] *Jeanty v. County of Orange*, 379 F. Supp. 2d 533, 549 (S.D.N.Y. 2005) (emphasis added) (citing *Martinez v. Robinson*, 2002 WL 424680, at *2 (S.D.N.Y. Mar. 19, 2002) (quoting *Lewis v. Triborough Bridge and Tunnel Auth.*, 2000 WL 423517 at *2 (S.D.N.Y. April 19, 2000).
[3] *Lewis v. City of New York,* 689 F.Supp. 2d 417 (E.D.N.Y. 2010) (citing *Lewis v. Triborough Bridge and Tunnel Auth.,* 2000 WL 423517, at *2 (S.D.N.Y. Apr. 19, 2000).

Case 1:10-cv-06005-RWS   Document 447   Filed 06/29/15   Page 3 of 8

3

opposite effect of creating jury confusion and adding unnecessary time, expense and burden to the resolution of this action, which has been pending for nearly five years.

Courts in this Circuit have bifurcated Section 1983 trials where the evidence of a specific act of alleged misconduct by an individual defendant was readily distinguishable from the evidence of a municipality's policies and customs.[4] Indeed, the cases cited by City Defendants all involve distinct-incident complaints, such as a pedestrian being struck by a bus[5] or a police officer using excessive force or falsely arresting someone.[6] This is not such a case.

Here, plaintiff intends to prove that the NYPD customs, policies, practices and procedures are directly responsible for the retaliatory and punitive actions taken by NYPD officials against plaintiff over the course of an extended period of time from mid-2008 through March of 2010. For example, in the last half of 2008 the plaintiff received "below-standards" quarterly evaluation, and in early 2009 plaintiff received a failing performance evaluation for failing to achieve his quota numbers.[7] That quota

---

[4] *Santiago v. New York,* 1992 U.S. Dist. LEXIS 6731 (S.D.N.Y. May 15, 1992).
[5] *Williams v. Blvd. Lines, Inc.,* 2013 U.S. Dist. LEXIS 149707 (S.D.N.Y. Sept. 30, 2013)
[6] *Daniels v. Loizzo,* 178 F.R.D. 46 (S.D.N.Y. 1998)*; Ricciuti v. New York City Transit Auth.,* 796 F. Supp. 84 (S.D.N.Y. 1992)*; Ismail v. Cohen,* 706 F. Supp. 243 (S.D.N.Y. 1989), *rev'd on other grounds and aff'd in part*, 899 F.2d 183 (2d Cir. 1990)*; Carson v. City of Syracuse,* 1993 U.S. Dist. LEXIS 9508 (N.D.N.Y. 1993)*; Mineo v. City of New York,* 2013 U.S. Dist. LEXIS 46953, 2013 WL 1334322 (E.D.N.Y. Mar. 29, 2013)*; Santiago, supra.*
[7] *See Schoolcraft v. City*, 2015 U.S. Dist. Lexis 58831 at *10 (S.D.N.Y. May 5, 2015) (the Court's "Summary Judgment Decision").

system was created and enforced by the top managers at the NYPD under the COMPSTAT management system, which was based on numbers and quotas for all types of performance goals set for all members of the service, from the top of the chain of command down to the patrol officer on the street.  And when the plaintiff began obtaining evidence of, speak out against, and reporting misconduct about quotas and the downgrading and suppression of crime reporting (another police practice driven by COMPSTAT), he was exposed, labeled a rat and punished for violating the blue wall of silence.  Thus, as set forth in the Third Amended Complaint, plaintiff will seek to prove at trial "a coordinated and concentrated effort by high ranking officials within the NYPD to silence, intimidate, threaten and retaliate against plaintiff … for his documentation and disclosure of corruption with the NYPD."[8]

The evidence supporting the plaintiff's claims against the individual NYPD defendants, which we marshaled in our summary judgment papers and the Court reviewed in its Summary Judgment Decision,[9] necessarily includes the same evidence to be proffered against the municipal defendant.  Plaintiff's claims against individual City defendants for First Amendment violations and the related claims for false arrest, excessive force, failure to intercede, unlawful search and seizure, involuntary confinement and due process claims will require evidence of the individual NYPD defendants' intent and motives as well as background facts necessary to understand

---

[8] Third Amended Complaint ¶ 2.
[9] Summary Judgment Decision, 2015 U.S. Dist. Lexis 58831 at *10-22.

the content for the evidence. For example, at trial, plaintiff will show that his supervisors at the 81st Precinct (e.g., Defendants Mauriello, Lauterborn, Caughey, and Broschart) acted pursuant to NYPD policy and custom when they imposed quotas for arrests and summons activity, providing incentives to police officers to meet the quotas, punishing those who fail to meet quotas, and intimidating officers who challenge the policy and custom. Similarly, plaintiff will also show at trial that downgrading and suppression of crime reporting was also a wide-spread practice brought on by COMPSTAT's obsession with numbers and that the plaintiff's conduct in reporting downgrading and suppression at the 81st Precinct to IAB and QAD threatened this system. This evidence -- through plaintiff's testimony, labor arbitration findings of a summons quota imposed by Defendant Marino, findings by the Mollen Commission, expert testimony of Dr. John Eterno, and testimony of other police officers regarding the NYPD's customs and practices regarding quotas, downgrading, and retaliation – is crucial for the jury understand the purpose, motive and intent of the individual defendants in their actions against plaintiff.

  This evidence will be introduced during the course of the trial scheduled for October 19th against all the defendants and if the Court were to grant bifurcation this same evidence will be unnecessarily repeated at a separate *Monell* trial against the City. Accordingly, the Court should deny the motion and through its instructions to the jury explain the nature and purposes for which the evidence is being offered.

As Judge Connor noted, any possible prejudice to individual defendants resulting from evidence supporting a *Monell* claim can be cured by carefully crafted limiting instructions.[10] In addition, the mere fact that a jury may return a verdict on the plaintiff's claims in favor of the individual defendants does not compel bifurcation of the Monell claim.[11] There are less burdensome ways to deal with that situation, including use of a special verdict form, a well-adapted jury charge, and carefully crafted limiting instructions. Contrary to defendants' assertions, separate trials would not be efficient and would inconvenience the Court, the jury, the plaintiff and the other parties.

The City Defendants erroneously assert that the plaintiff must establish the officers' individual liability in order to succeed on the *Monell* claim. Not only does this completely misunderstand the central issues in this case, but it is an utterly incorrect statement of the law. In fact, the liability of a municipal defendant can most certainly be established where there is no individual liability on behalf of the officers,[12] a point that this Court already made in its summary judgment decision. *See*

---

[10] *Jeanty v. County of Orange*, *supra* at 549.
[11] *Id*.
[12] *See Barrett v. Orange County Human Rights Com'n,* 194 F.3d 341, 343 (2d Cir. 1999) ("[T]he district court erred as a matter of law when it determined that the municipal defendants' liability was *contingent* upon the liability of the individual defendants…the jury [could have found] the municipal defendants were liable *irrespective* of the liability of the individual defendants.")(emphasis added); *Golodner v. City of New London*, 2011 WL 5083503, *3 (2d Cir. 2011) ("We acknowledge, as did the Barrett Court, that "'municipal liability for constitutional injuries may be

2015 U.S. Lexis 58831 at *114 ("*Monell* claims can be brought against a municipality notwithstanding the fact that the same claims were barred by the doctrine of qualified immunity as asserted against individual officers.") (citations omitted).[13] As such, it is entirely possible that a plaintiff may succeed on liability against a municipality even where he has failed against the individual defendants.[14]

Finally, courts have rejected bifurcation of Monell issues in situations that are analogous to the present case. For example, in *McCoy v. City of New York*, 2008 WL 3884388, *1 (E.D.N.Y. 2008), the court held:

> In cases involving claims against both individual defendants and municipal entities, the argument *routinely* advanced for bifurcation is that separate trials 'could lead to an earlier and less costly disposition.' The basis for that argument is that finding that the plaintiff failed to establish liability on the part of any municipal employee would normally preclude a finding of liability against the municipality itself under Monell; as a result, a bifurcated trial of the claims against the individual defendants *might*, depending on the outcome, dispose of the entire case. This argument in favor of bifurcation glosses over an important fact: 'under Monell municipal liability for constitutional injuries may be found to exist even in the

---

found to exist even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of the named individual defendants.'").

[13] *See also Bonilla v. Jaronczyk*, 354 Fed.Appx. 579 at *1 (2d Cir. 2009) (recognizing that municipal liability can still be found even "where a jury concludes that the individual defendants violated plaintiff's rights but nonetheless enjoy qualified immunity…").

[14] *See Wu v. City of New York*, 934 F.Supp. 581, 591 (S.D.N.Y. 1996)("Given the facts of the case at bar…Officers Ziegler, Monahan, and Santoro are shielded from liability in their personal capacity by the doctrine of qualified immunity…[however] [t]his is a paradigmatic Monell case…and the City is therefore liable for any damage done to Wu…").

absence of individual liability'….Therefore it is simply not an inevitability that a bifurcated trial will promote judicial economy or convenience, even if the individual defendants escape liability…

CONCLUSION

The City Defendants' request for bifurcation should be denied.  This Court has reviewed the *Monell* issues here and held that evidence at trial will be limited to the custom and policy category of evidence.[15]  The *Monell* evidence to be offered at trial is not voluminous, complex nor inflammatory.  It is also directly relevant the jury's understanding of the individual NYPD defendants' conduct and actions against the plaintiff.  Any possible prejudice to individual defendants as a result of a single trial can be cured by jury instructions and special verdict forms concerning the purpose of the evidence.[16]

Dated:  June 29, 2015

*s/JL*

_____

John Lenoir<br>Nathaniel B. Smith

---

[15] The training and supervision prong of *Monell* liability was dismissed by the Court in its Summary Judgment Decision.  2015 U.S. Lexis 58831 at *121-123.

[16] *Ingles v. City of New York*, 205 U.S. Dist. LEXIS 11100 at * 4 (S.D.N.Y. June 7, 2005).