UNITED STATES DISTRICT COURT SOUTHERN
DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ADRIAN SCHOOLCRAFT,

              10–cv-6005 (RWS)


       Plaintiff,

    -against-


THE CITY OF NEW YORK, *et al.*,
         Defendants.
-----------------------------------------------------------------x


## *MEMORANDUM OF LAW IN OPPOSITION TO THE CITY DEFENDANTS AND MAURIELLO'S RECONSIDERATION  MOTION*

Nathaniel B. Smith
100 Wall Street – 23rd Floor
New York, New York 10005
212-227-7062
natbsmith@gmaiL.COM

Dated: July 6, 2015

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ..............................................................3

**THE STANDARD FOR A RECONSIDERATION MOTION** ...............4

**ARGUMENT** .......................................................................................6

**THE CITY DEFENDANTS' RECONSIDERATION MOTION** ...........6

**THE RECONSIDERATION MOTION BY DEFENDANT MAURIELLO** ..........9

**CONCLUSION** ..................................................................................14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ADRIAN SCHOOLCRAFT,

                                                            10–cv-6005 (RWS)


                            Plaintiff,


                -against-



  THE CITY OF NEW YORK, et al.,


                            Defendants.
------------------------------------------------------------x

### PLAINTIFF'S MEMORANDUM OF LAW
### IN OPPOSITON TO CITY DEFENDANTS' AND MAURIELLO'S
### RECONSIDERATION MOTION

### PRELIMINARY STATEMENT

Plaintiff, Police Officer Adrian Schoolcraft, submits this memorandum of law

in opposition to the motions by the City Defendants[1] and Defendant Mauriello for

reconsideration of the Court's Decision on the parties' summary judgment motions.

The Court did not overlook or misapprehend the relevant facts or the governing law,

and the City Defendants' and Defendant Mauriello' memoranda of law primarily seek

to reargue points already made, considered, and rejected.

---

[1] Plaintiff uses the same designations of the parties as the parties have used in the
recent round of summary judgment motions.

That is not a proper form of motion for reconsideration.  Local Rule 6.3 requires that motions for reconsideration be accompanied by "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." Local Rule 6.3.   In addition, mere quibbling over minor matters of fact or secondary issues of law is insufficient for a properly framed reconsideration motion:  the matters that are the proper subject of a reconsideration motion must be of a kind or nature "that might reasonably be expected to alter the conclusion reached by the court."[2]

## THE STANDARD FOR A RECONSIDERATION MOTION

The Court has recently set forth the complete standard for a reconsideration motion.  In *Ferring B.V. v. Allergan, Inc.,* 2013 U.S. Dist. Lexis 111374 at p. *3-5 (S.D.N.Y. Aug. 7, 2013), the Court ruled:

> As this Court recently confirmed, reconsideration of a court's prior order under Local Rule 6.3 or Rule 59 "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Sikhs for Justice v. Nath*, 893 F. Supp.2d 598, 605 (S.D.N.Y. 2012) (citations omitted).  Accordingly, the standard of review applicable to such a motion is "strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).
> The burden is on the movant to demonstrate that the Court overlooked controlling decisions or material facts that were before it on the original motion, and that might "'materially have influenced its earlier decision.'" *Anglo Am. Ins. Group v. CalFed, Inc.*, 940 F. Supp. 554, 557

---

[2] *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 605 (S.D.N.Y. 2012) (citing *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995)).

(S.D.N.Y. 1996) (quoting *Morser v. AT & T Information Sys.*, 715 F. Supp. 516, 517 (S.D.N.Y. 1989)).  A party seeking reconsideration may neither repeat "arguments already briefed, considered and decided," nor "advance new facts, issues or arguments not previously presented to the Court." *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990) (citations omitted).

The reason for the rule confining reconsideration to matters that were "overlooked" is to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Polsby v. St. Martin's Press, Inc*., No. 97-690(MBM), 2000 U.S. Dist. LEXIS 596, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (citation and quotation marks omitted).  Motions for reconsideration "are not vehicles for taking a second bite at the apple, . . . and [the court] [should] not consider facts not in the record to be facts that the court overlooked." *Rafter v. Liddle*, 288 Fed. App'x. 768, 769 (2d Cir. 2008) (citation and quotation marks omitted). Thus, a court must narrowly construe and strictly apply Local Rule 6.3, so as to avoid duplicative rulings on previously considered issues, and to prevent the rule from being used as a substitute for appealing a final judgment. *See In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig*., 08 M.D.L. No. 1963, 2009 U.S. Dist. LEXIS 61588, 2009 WL 2168767, at *1 (S.D.N.Y. Jul. 16, 2009) ("A motion for reconsideration is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved.") (citation and quotation omitted).

For the reasons explained in detail below, the City Defendants and Defendant Mauriello have failed to satisfy the standard for their reconsideration motions.

## ARGUMENT

## I. THE CITY DEFENDANTS' RECONSIDERATION MOTION

### 1.  The Court Correctly Set Forth the Law on the Collective Knowledge Doctrine.

The City Defendants argue that the Court incorrectly recited the law on the collective knowledge doctrine.  The argument is meritless because the Court correctly ruled -- consistent with established case law  -- that some form of communication is required in order for the doctrine to apply.  *See, e.g., Colon v. City of New York*, 2014 U. S. Dist. Lexis 46451 at * 14 (E.D.N.Y. April 2, 2014) ("In order for the collective knowledge doctrine to apply to actions taken by an officer, there must have been some communication between the officers involved") (collecting cases).    Indeed, mere communication is not enough to invoke the doctrine because a police officer's reliance on the communicated information must also be reasonable.  *Id.* at *15 ("the arresting officer must have acted reasonable in relying on the information communicated to him").

The City Defendants' argument is also meritless because the City Defendants' complaint about the Court's discussion of the law would not in any manner alter the outcome on the City Defendants' failed motion for summary judgment.  The Court

properly found a question of fact about whether NYPD Psychologist Lamstein ever told Defendant Lauterborn that he "had to find" Officer Schoolcraft. Therefore, whether there was any form of communication of Lamstein's purported "directive" at the scene or whether any form of communication is required by the law would still not alter the result. The City Defendants' claim that the NYPD defendants were acting at the direction of the NYPD Psychologist to find Officer Schoolcraft is a disputed issue of fact that cannot be resolved in favor of the City Defendants on their summary judgment motion. Accordingly, that prong of the City Defendants' reconsideration motion should be denied because it would not alter the result of the initial motion in any event.

### 2. Caughey Properly Remains a Defendant.

The second point raised by the City Defendants is that Caughey ought to be entitled to qualified immunity for the First Amendment claims. There are several reasons that this point should be rejected.

First, we have filed a motion for reconsideration on the qualified immunity issue, arguing that the qualified immunity analyses must focus on the law at the time of the official's actions, not at a later time when the scope of the law has changed. Thus, if the Court agrees with the plaintiff's point, the premise of the City Defendants' argument will be undercut, and Caughey and the other individual NYPD defendants will not be entitled to summary judgment on qualified immunity grounds.

Second, the argument should also be rejected because the Court properly ruled that Caughey is potentially liable under the common law claims against him for assault and intentional infliction of emotional distress.  Indeed, Caughey did not specifically even move against these claims in Third Amended Complaint[3] in the City Defendants' motion for summary judgment.

As we pointed out in our opposition to that portion of the City Defendants' summary judgment motion on Caughey's liability, Caughey must go to trial for his conduct in menacing Officer Schoolcraft with his gun on October 31, 2009 and for his harassing conduct leading up to the events of October 31, 2009.[4]  This conduct subjects Caughey to liability for common law assault by placing Officer Schoolcraft in reasonable fear of his safety.[5]  It also subjects Caughey (and the other individual NYPD defendants) to liability for intentional infliction of emotional distress based on their sustained, nine-month campaign of harassment against Officer Schoolcraft for breaking the code of silence and reporting their misconduct and other unlawful activities.[6]

---

[3] Third Amended Complaint ¶¶ 323-25 (assault) & ¶¶ 340-348 (intentional infliction of emotional distress); Dkt. # 291.1.

[4] Plaintiff's Opp. Mem. at pp. 12-13 & 32-38 (setting forth Caughey's role) & 62-66 (intentional infliction of emotional distress claim); Dkt. # 383.

[5] *Id.* at 37 n. 102 (citing *Chamberlain v. City of White Plains,* 986 F. Supp. 2d 364, 398 (S.D.N.Y. 2013 (assault is the "intentional placing of another person in fear of imminent harm or offensive contact").

[6] *See* Plaintiff's Opp. Mem. at 62-66 (citing authorities on intentional infliction of emotional distress claim) ;Dkt. # 383.

Notably, the City Defendants ignore Caughey's liability on these claims in their reconsideration papers. Accordingly, the Court properly ruled that Caughey remains a defendant and this point should be rejected.

## II. THE RECONSIDERATION MOTION BY DEFENDANT MAURIELLO

Defendant Mauriello makes three arguments in support of his reconsideration motion. Each should be rejected for the reasons set forth below.

### A. The Court Properly Held That The Sole Purpose Element Cannot Be Satisfied.

Defendant Mauriello argues that the Court erred in its conclusions about the sole motivation prong of the tortious interference claim. The Court held, among other things, that the sole motivation prong of that claim cannot be satisfied because Defendant Mauriello affirmatively asserted in his pleadings (and his deposition) that Officer Schoolcraft was motivated by "revenge" and by a "lawsuit" and that these were different motives. Thus, the sole motivation prong failed because the proponent of the claim admitted that there was not a single motive, which well-established case law requires.[7]

In his reconsideration argument, however, Defendant Mauriello argues that the two reasons "ought" to be considered one reason and, alternatively, that since they are

_____

[7] *See Schoolcraft v. City*, 2015 U.S. Dist. Lexis 58831 at *140-41 (S.D.N.Y. May 5, 2015) (the "Summary Judgment Decision").

both "bad" reasons the Court should not strictly apply the sole motivation test.[8]  This argument should be rejected for two reasons.

First, the argument does not point to any fact or law overlooked or misunderstood by the Court, and therefore is not a proper subject of a reconsideration motion. Second, nothing in the law supports the twisting of settled doctrine on the sole motivation test.

The Court properly held that the sole motivation prong of the claim requires that the "defendant acted with the sole purpose of harming the plaintiff."[9]  Thus, the law is clear:  "the presence of any other motive, even coupled with an intention to inflict harm, is fatal to a claim."[10]

### B.    The Court Properly Held That The Wrongful Means Element Cannot Be Satisfied.

The Court also properly found that Defendant Mauriello could not establish the wrongful means prong of his tortious interference claim because settled law holds that as a general rule the conduct must be criminal or an independent tort.[11]  Indeed, "the

---

[8] Mauriello Mem. at 6-7.
[9] Summary Judgment Decision at *139.
[10] *Protic v. Dengler*, 46 F. Supp. 2d 277, 279 (S.D.N.Y. 1999), *aff'd,* 205 Fed. Appx. 1324 (2d Cir. 1999).
[11] Summary Judgment Decision at *142.

presence of false statements alone is not enough to support a claim for tortious interference."[12]

The Court also properly held that Defendant Mauriello was seeking to amend his pleading by raising a host of new facts beyond those asserted in his counterclaims. Defendant Mauriello admits that many of the claims that he first asserted to support the wrongful means element at the summary judgment stage were not asserted in his counterclaim.[13]   Moreover, while he may have mentioned other assertions in the counterclaims, such as Officer Schoolcraft's personal involvement in the filing of downgraded crime reports, the Court was correct in holding that Defendant Mauriello was seeking to alter the scope of his counterclaims, which plainly focused on the plaintiff's discussions with his father on October 7, 2009 and his discussions with QAD later that same day.[14]   Indeed, Defendant Mauriello now seeks to evolve yet again another entirely new claim in his reconsideration motion.  Now he claims that Office Schoolcraft committed some unspecified "crime" when he filed or prepared the crime reports,[15] a wrongful means theory that is nowhere to be found in his counterclaims and is utterly devoid of any basis in fact.[16]   Accordingly, the arguments

---

[12] *Friedman v. Coldwater Creek, Inc*., 551 F. Supp. 2d 164, 171 (S.D.N.Y. 2008), *aff'd*, 321 Fed. Appx. 58, 2009 U.S. App. Lexis 7514 (2d Cir. April 8, 2009).

[13] Mauriello Mem. at 12-17.

[14] Summary Judgment Decision at *144.

[15] Mauriello Mem. at  19 ("some of the alleged conduct of Schoolcraft amounts to a crime (filing false complaint reports)").

[16] See Plaintiff's Reply Mem. at 15-16.,

about the wrongful means issue should be rejected and Defendants Mauriello's half-hearted suggestion that he should be yet again permitted to amend his counterclaims should be rejected because the case is now ready for trial and the parties are in the midst of preparing the Joint Pre-Trial Order.  Another amendment and another theory of "wrongful means" would once again derail this action.   Indeed, any such amendment is particularly inappropriate at this stage because the tortious interference claim suffers so many fatal defects that leave to amend should be denied as futile.

Indeed, in our motion for summary judgment against the tortious interference claims we raised two other reasons for dismissing Maureillo's counterclaims: (a) there was no evidence of any direct relationship between the challenged conduct and the loss by Mauriello of any specific employment opportunity; and  (b) the absence of a genuine issue on causation in the light of the record on the issue.[17]  While the Court did not address these additional grounds in its Summary Judgment Decision, the points are relevant to the motion because a properly framed motion for reconsideration must also show that the arguments raised would have altered the outcome on the motion.  These points are also relevant because they show the futility of any wrongful means theory because Mauriello's tortious interference claim is fatally flawed in numerous ways.

---

[17] Plaintiff's Summary Judgment Mem. at 25-26; Plaintiff's Reply Mem. at 9-12 (Dkt. Nos. 306 & 412) .

### C.     The Court Properly Dismissed the Counterclaims Based on *Brandt* Immunity.

Finally, the Court properly dismissed the counterclaims based on *Brandt* immunity.[18]  In his reconsideration motion, however, Defendant Mauriello argues that there is a question of fact about whether the statements that Officer Schoolcraft made to IAB and QAD were "truthful" and on that basis requests reconsideration.  Once again, this is not a proper basis for reconsideration because it does not point to any fact or law overlooked or misunderstood by the Court.  As such, it is merely another improper "bite" at the litigation apple.

The argument is also meritless.  The entire point of this kind of immunity is to shield pubic officers from claims that their reports to governmental agencies can give rise to civil liability.   Thus, *Brandt* immunity is not immunity from a final judgment but from civil suit.[19]  If *Brandt* immunity depended on a finding that the statements were truthful as a matter of law or truthful upon a determination by a jury, the

---

[18] Summary Judgment Decision at *142-43.

[19] *See Posner v. Lewis*, 18 N.Y. 2d 566, 571 (2012) ("We concluded in *Brandt* that defendants' lawful act of initiating charges related to plaintiff's mishandling of the charitable fund did not become actionable because it was motivated by personal malevolence, reasoning that '[t]he best interests of the public are advanced by the exposure of those guilty of offenses against the public and by the unfettered dissemination of the truth about such wrongdoers' (*id*. at 635). Under these circumstances, the *Brandt* defendants were 'entitled to *immunity from civil suit* at the hands of the one exposed, for the truth is not to be shackled by fear of a civil action for damages.' ")

immunity from suit would be rendered illusory.  Notably, Defendant Mauriello fails to cite any authority for this proposition.  Accordingly, the argument should be rejected.

## CONCLUSION

For these reasons, the reconsideration motions by the City Defendants and Defendant Mauriello should be denied.

Dated:  July 6, 2015

*s/NBS*

_____

Nathaniel B. Smith
John Lenoir