GJR/DA
82-82153
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
ADRIAN SCHOOLCRAFT,

                              Plaintiff,

              -against-

THE CITY OF NEW YORK, DEPUTY CHIEF MICHAEL
MARINO, Tax *Id.* 873220, Individually and in his Official
Capacity, ASSISTANT CHIEF PATROL BOROUGH
BROOKLYN NORTH GERALD NELSON, Tax *Id.* 912370,
Individually and in his Official Capacity, DEPUTY
INSPECTOR STEVEN MAURIELLO, Tax *Id.* 895117,
Individually and in his Official Capacity CAPTAIN
THEODORE LAUTERBORN, Tax *Id.* 897840, Individually
and in his Official Capacity, LIEUTENANT JOSEPH GOFF,
Tax *Id.* 894025, Individually and in his Official Capacity, SGT.
FREDERICK SAWYER, Shield No. 2576, Individually and in
his Official Capacity, SERGEANT KURT DUNCAN, Shield
No. 2483, Individually and in his Official Capacity,
LIEUTENANT CHRISTOPHER BROSCHART, Tax *Id.*
915354, Individually and in his Official Capacity,
LIEUTENANT TIMOTHY CAUGHEY, Tax *Id.* 885374,
Individually and in his Official Capacity, SERGEANT
SHANTEL JAMES, Shield No. 3004, AND P.O.'s "JOHN
DOE" #1-50, Individually and in their Official Capacity (the
name John Doe being fictitious, as the true names are presently
unknown) (collectively referred to as "NYPD defendants"),
JAMAICA HOSPITAL MEDICAL CENTER, DR. ISAK
ISAKOV, Individually and in his Official Capacity, DR.
LILIAN ALDANA-BERNIER, Individually and in her Official
Capacity and JAMAICA HOSPITAL MEDICAL CENTER
EMPLOYEE'S "JOHN DOE" # 1-50, Individually and in their
Official Capacity (the name John Doe being fictitious, as the
true names are presently unknown),

                              Defendants.

-------------------------------------------------------------------------------X

10 CIV 6005 (RWS)

## MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION


Of Counsel:   Gregory J. Radomisli (GJR- 2670)

1

**PRELIMINARY STATEMENT**

This Memorandum of Law is respectfully submitted on behalf of defendant JAMAICA HOSPITAL MEDICAL CENTER ("JHMC") in opposition to plaintiff's motion for reconsideration regarding this Court's decision to preclude Dr. Daniel Halpren-Ruder from testifying at trial.

Plaintiff's counsel advances a single argument:  That this Court misapprehended the underlying basis for Dr. Halpren-Ruder's opinion regarding the JHMC staff's alleged failure to conduct a toxicology screen and that, as a result, this Court erroneously precluded Dr. Halpren-Ruder from testifying at trial (Plaintiff's letter motion, p. 3).  Significantly, plaintiff's counsel does not object to this Court's decision to preclude Dr. Halpren-Ruder from testifying about any other issues—he is solely seeking reconsideration to allow Dr. Halpren-Ruder to testify that the failure to conduct a toxicology screen was a departure from accepted standards of care.  For the reasons discussed below, plaintiff's motion should be denied.

**POINT I**

**PLAINTIFF DOES NOT ESTABLISH GROUNDS FOR RECONSIDERATION**

As this Court recently held in *Ferring B.V. v. Allergan, Inc.*, 2013 U.S.Dist. LEXIS 111374 (S.D.N.Y. Aug. 5, 2013), the standards governing motions under Local Rule 6.3 along with Fed. R. Civ. P. 59 are the same, and a court may grant reconsideration where the party moving for reconsideration demonstrates an "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Henderson v. Metro. Bank & Trust Co.*, 502 F. Supp. 2d 372, 375-76 (S.D.N.Y. 2007) (quotation marks and citations omitted); *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) ("Reconsideration may be granted to correct clear error, prevent manifest injustice or review the court's decision in light of the availability of new evidence.") (*citing*

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

As this Court recently confirmed, reconsideration of a court's prior order under Local Rule 6.3 or Rule 59 "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Sikhs for Justice v. Nath*, 893 F. Supp.2d 598, 605 (S.D.N.Y. 2012) (citations omitted). Accordingly, the standard of review applicable to such a motion is "strict." S*hrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

The burden is on the movant to demonstrate that the Court overlooked controlling decisions or material facts that were before it on the original motion, and that might "'materially have influenced its earlier decision.'" *Anglo Am. Ins. Group v. CalFed, Inc.*, 940 F. Supp. 554, 557 (S.D.N.Y. 1996) (*quoting Morser v. AT&T Information Sys.*, 715 F. Supp. 516, 517 (S.D.N.Y. 1989)). "[M]atters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Sikhs for Justice*, 893 F. Supp. 2d at 605 (*citing Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

Plaintiff's counsel has not made any effort to demonstrate that the Court needs to "correct a clear error" or "prevent manifest injustice." *See Henderson, supra*. Nor has plaintiff made any effort to demonstrate that if the Court had considered the information plaintiff is now presenting, the information would "materially have influenced its earlier decision'" *See Anglo Am. Ins. Group v. CalFed, Inc., supra*, or would have altered "the conclusion reached by the court." *Sikhs for Justice, supra*. Indeed, as discussed below, even if this Court determines that Dr. Halpren-Ruder's opinion was based on something other than the New Jersey guidelines, Dr. Halpren-Ruder's testimony regarding the toxicology screening would still be inadmissible at trial because Dr. Halpren-Ruder admitted at his deposition that

the alleged failure to perform a toxicology screen did not cause any harm to the plaintiff. Accordingly, this Court should deny plaintiff's motion for reconsideration.

## POINT II

### DR. HALPREN-RUDER ADMITTED THAT THERE WAS NO PROXIMATE CAUSE ATTRIBUTABLE TO THE ALLEGED FAILURE TO CONDUCT A TOXICOLOGY SCREEN, AND THAT THE PLAINTIFF DID NOT INCUR ANY INJURIES AS A RESULT

To maintain an action for medical malpractice under New York law, a plaintiff must prove that the defendant breached the standard of care, **and** that the breach proximately caused the plaintiff's injuries. *See Berk v. St. Vincent's Hospital and Medical Center*, 380 F.Supp.2d 334 (S.D.N.Y. 2005); *DeCesare v. Kaminski*, 29 AD3d 379, 815 NYS2d 60 (1st Dept. 2006); *Perrone v. Grover*, 272 AD2d 312, 707 NYS2d 196 (2d Dept. 2000). In the absence of proof of such breach, or that such breach proximately caused the plaintiff's injuries, a medical malpractice action must be dismissed as a matter of law.

Although Dr. Halpren-Ruder criticized the failure of the JHMC staff to perform a toxicology screen, he admitted at his deposition that that alleged failure did not cause any harm to the plaintiff:

> Q:    And a toxicology screen would be used to weed out illicit drugs?
> A:    Or routine drugs that are in fact used under a principle.
>
> Q:    Now, if he had some kind of substance in his body, would that not have manifested itself later on?
> A:    In very deleterious ways. For instance, he may have withdrawn on the psychiatric unit, a unit which is not designed to deal with withdrawal symptoms.
>
> Q:    Did you see any indication that he suffered any withdrawal symptoms while he was on the psych ED?
>
> Mr. Smith: Objection to form.

A:      Well, as you have done in the past, you've given me hypotheticals and I would give you the hypothetical that there was a great—there was significant chance that that might have occurred.

Q:      But it didn't, did it, Doctor?
A:      But it did not.

Q:      OK.  In fact, the absence of doing a toxicology screening had no effect in this case, correct?

Mr. Smith:  Objection to form.

A:      It falls outside of the standard of care.

Q:      But it didn't cause any injury, correct?
A:      By fortune.

Q:      Am I correct?
A:      It did not.

(Exhibit DD, p. 61-62, attached to the 12/22/14 Declaration of Gregory J. Radomisli).[1]

Therefore, even if the failure to perform a toxicology test could be considered a departure from accepted standards of care, Dr. Halpren-Ruder opined that that alleged failure did not cause injury and, consequently, his testimony is not sufficient to establish a basis for a medical malpractice action.  *See Berk*; *DeCesare*; *Perrone*.  Because plaintiff's expert's opinion on the standard of care is meaningless if the breach from that standard did not cause injury, Dr. Halpren-Ruder's opinion has no probative value.  Accordingly, there is no reason for this Court to reconsider its decision precluding Dr. Halpren-Ruder from testifying because even if it determined that Dr. Halpren-Ruder's opinion regarding the alleged failure to perform a toxicology screen had a proper foundation, Dr. Halpren-Ruder admitted that the alleged departure did not cause any injury and, accordingly, he should be precluded from

---

[1] All references to Exhibits refer to the 12/22/14 Declaration of Gregory J. Radomisli

testifying, as this Court had initially ruled.[2]

## POINT III

### DR. HALPREN-RUDER'S OPINION LACKS THE APPROPRIATE FOUNDATION

With respect to his opinion in his report that the "usual and customary evaluations" did not occur in the Jamaica Hospital Medical Center Emergency Department, Dr. Halpren-Ruder cited a Consensus Statement on Medical Clearance Protocols for Acute Psychiatric Patients Referred for Inpatient Admissions (Exhibit CC). He specifically testified that he cited those Protocols to support the opinion in his report that the personnel in the emergency room in this case fell short (Exhibit DD, p. 49). Significantly, he admitted that he did not review anything regarding the standard of care that pertained to the running of emergency departments in effect in 2009 (Exhibit DD, pp. 132-133).

In classic fashion, while plaintiff's counsel argues in his letter-motion that Dr. Halpren-Ruder based his opinion on his experience as a Board Certified emergency room doctor, he has not presented any *evidence* that Dr. Halpren-Ruder relied upon anything other than the New Jersey Guidelines. Indeed, **in his report, Dr. Halpren-Ruder never states that his opinion is based upon his experience as an emergency room physician.** Instead, when opining about "what medical evaluations should be accomplished in the ED so as to be certain that a psychiatric condition is clearly differentiated from a medical condition," he only

---

[2] It should be noted that in the Memorandum of Law submitted in support of defendants' summary judgment motion, defendants specifically argued that Dr. Halpren-Ruder's opinion regarding the alleged failure to perform a toxicology screen was flawed because he admitted that that alleged failure did not cause injury (p. 36). Plaintiff's counsel did not address that argument in his opposition, and therefore plaintiff's motion for reconsideration is improper. *See Schonberger v. Serchuk*, 742 F.Supp. 108, 119 (S.D.N.Y. 1990) (A party seeking reconsideration may not advance new facts, issues or arguments not previously presented to the Court); *see also Polsby v. St. Martin's Press, Inc.*, 2000 WL 98057, *1 (S.D.N.Y. Jan. 18, 2000).

referred to a single piece of literature: the New Jersey Guidelines (Exhibit CC). Moreover, Dr. Halpren-Ruder was not even working in an Emergency Room in 2009 (Exhibit DD, p. 71), and he had not worked in an Emergency Room at any time between 2006 and 2011 (Exhibit DD, pp. 71-72). Therefore, he could not have known what the standard of care for a physician in an Emergency Room was in 2009 based upon his "experience."

As he has before in other submissions to this Court, plaintiff's counsel simply invents testimony. At no point did Dr. Halpren-Ruder ever discuss "the general practice" under which he operates as having "universal applications" (plaintiff's letter motion, p. 2). To the extent that Dr. Halpren-Ruder said anything remotely similar, he was referring *solely* to transporting a patient to the hospital against her will—not the treatment of patients in an ER (Exhibit DD, pp. 84-85). Similarly, while Dr. Halpren-Ruder was "actively practicing" in 2009, he was practicing in an urgent care center, not in an Emergency Department (Exhibit DD, p. 71). It is respectfully requested that this Court refuse to countenance plaintiff's counsel's attempts at obfuscation, and deny plaintiff's motion.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court deny plaintiff's motion in its entirety, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
      July 6, 2015

Respectfully submitted,

MARTIN CLEARWATER & BELL LLP

By: _____
    Gregory J. Radomisli (GJR 2670)
Attorneys for Defendant
JAMAICA      HOSPITAL     MEDICAL
CENTER
220 East 42nd Street
New York, NY 10017
(212) 697-3122

2543464_1

8