10-CV-6005 (RWS)

*UNITED STATES DISTRICT COURT*
*SOUTHERN DISTRICT OF NEW YORK*

**ADRIAN SCHOOLCRAFT,**

**Plaintiff,**

**-against-**

**THE CITY OF NEW YORK, et al.,**

**Defendants.**

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Alan Scheiner*
*Tel:  (212) 356-2344*
*Cheryl Shammas*
*Tel: (212) 356-2406*
*Matter #:  2010-033074*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................. 1

THE STANDARD GOVERNING A MOTION FOR RECONSIDERATION ............................ 1

POINT I

       THE COURT CORRECTLY RULED THAT PLAINTIFF
       MAY NOT ASSERT A FIRST AMENDMENT CLAIM
       FOR HIS ARREST ON OCTOBER 31, 2015 PURSUANT
       TO THE MENTAL HYGIENE LAW OR DEFENDNTS'
       VISITS TO HIS RESIDENCE TO SERVE PAPERS ........................................... 4

      A.    Plaintiff's purported claim for retaliation against a
           private citizen was never advanced in prior briefing
           and should not be considered now. ............................................................ 4

      B.    Plaintiff's seizure pursuant to the mental hygiene
           law and subsequent visits to the vicinity of his
           residence to serve papers are not "adverse
           employment action," and therefore cannot be the
           basis of the government employee retaliation First
           Amendment claim that the Court has ruled may be
           tried. ........................................................................................................... 9

      C.    The conduct of defendants' in visiting the outside of
           plaintiff's apartment cannot be the basis of a
           retaliation claim by a private citizen under the First
           Amendment............................................................................................... 13

      D.    Plaintiff's retaliation claim cannot survive summary
           judgment because the undisputed facts are
           insufficient to support a finding of retaliatory
           motive. ...................................................................................................... 15

**Page**

POINT II

      THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO
      QUALIFIED IMMUNITY FROM ANY FIRST
      AMENDMENT CLAIM BASED ON PLAINTIFF'S
      INTERNAL WORKPLACE SPEECH, WHICH WAS
      NOT PROTECTED UNDER THE FIRST AMENDMENT
      BY "CLEARLY ESTABLISHED LAW" AT THE TIME
      OF THE EVENTS AT ISSUE ............................................................. 17

POINT III

      THE COURT CORRECTLY RULED THAT
      PLAINTIFF'S EXPERT DR. HALPREN-RUDER
      SHOULD NOT TESTIFY AT TRIAL ................................................. 20

CONCLUSION ............................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**                                                                                            **Pages**

*Alali v. DeBara,*
    2008 U.S. Dist. LEXIS 86760 (S.D.N.Y. Oct. 24, 2008) .......................................... 8

*Analytical Surveys, Inc. v. Tonga Partners, L.P.,*
    684 F.3d 36 (2d Cir.)................................................................................................ 1, 2

*Anglo Am. Insurance Group v. CalFed, Inc.,*
    940 F. Supp. 554 (S.D.N.Y. 1996) ............................................................................ 2

*Arar v. Ashcroft,*
    585 F.3d 559 (2d Cir. 2009)..................................................................................... 19

*Ashcroft v. al-Kidd,*
    131 S. Ct. 2074 (2011)........................................................................................ 18-19

*Bennett v. Watson Wyatt & Co.,*
    136 F. Supp. 2d 236 (S.D.N.Y. 2001)...................................................................... 11

*Blue v. Koren,*
    72 F.3d 1075 (2d Cir. 1995)..................................................................................... 15

*Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.,*
    948 F.2d 111 (2d Cir. 1991)...................................................................................... 3

*Castro v. New York City Bd. of Educ. Pers.,*
    1998 U.S. Dist. LEXIS 2863, No. 96 Civ. 6314, 1998 WL 108004,
    (S.D.N.Y. Mar. 12, 1998) ................................................................................... 11, 16

*Church of Scientology Int'l v. Time Warner, Inc.,*
    1997 U.S. Dist. LEXIS 12839  (S.D.N.Y. Aug. 27, 1997) ........................................ 3

*City & Cnty. of San Francisco v. Sheehan,* 135 S. Ct. 1765, 1775-76 (2015)............................ 18

*Connell v. Signoracci,*
    153 F.3d 74 (2d Cir. 1998)........................................................................................ 6

*Curley v. Village of Suffern,*
    268 F.3d 65 (2d Cir. 2001)...................................................................................... 16

*Dean v. Blumenthal,*
    577 F.3d 60 (2d Cir. 2009)...................................................................................... 19

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,*
    282 F.3d 83 (2d Cir. 2002)...................................................................................... 13

**Cases**                                                                      **Pages**

*Esmont v. City of New York,*
    371 F. Supp. 2d 202 (E.D.N.Y. 2005) ............................................................. 14

*Ferring B.V. v. Allergan, Inc.,*
    2013 U.S. Dist. LEXIS 111374 (S.D.N.Y. Aug. 5, 2013) ................................ 2, 3, 8

*Figueroa v. City of New York,*
    198 F. Supp. 2d 555 (S.D.N.Y. 2002) ....................................................... 11, 15

*Gagliardi v. Vill. of Pawling,*
    18 F.3d 188 (2d Cir. 1994) .................................................................... 13

*Galabya v. New York City Bd. of Educ.,*
    202 F.3d 636 (2d Cir. 2000) .................................................................. 10

*Gill v. Pidlypchak,*
    389 F.3d 379 (2d Cir. 2004) .................................................................. 13

*Hygh v. Jacobs,*
    961 F.2d 359 (2nd Cir. 1992) ................................................................ 21

*Image Processing Techs., LLC v. Canon Inc.,*
    2012 U.S. Dist. LEXIS 9479 (E.D.N.Y. Jan. 26, 2012) ................................... 3

*In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.,*
    2009 U.S. Dist. LEXIS 61588 (S.D.N.Y. Jul. 16, 2009) .................................. 3

*Kerman v. City of New York,*
    261 F.3d 229 (2d Cir. 2001) .................................................................... 6

*Lauro v. Charles,*
    219 F.3d 202 (2d Cir. 2000) .................................................................. 18

*LaVertu v. Town of Huntington,*
    2014 U.S. Dist. LEXIS 77424 (E.D.N.Y. Apr. 4, 2014) ................................. 14

*Lewis v. Snow,*
    2003 U.S. Dist. LEXIS 15700 (S.D.N.Y. Sept. 8, 2003) ................................ 11

*Lichtenberg v. Besicorp Grp. Inc.,*
    28 Fed. Appx. 73 (2d Cir. 2002) ............................................................. 2

*Linden v. Dist. Council 1707-AFSCME,*
    415 Fed. Appx. 337 (2d Cir. 2011) .......................................................... 2

iv

**Cases**                                                                                                                 **Pages**

*Lumhoo v. Home Depot USA, Inc.,*
   229 F. Supp.2d 121 (E.D.N.Y. 2002) .................................................................. 11

*Marx & Co. v. Diners Club, Inc.,*
   550 F.2d 505 (2d Cir. 1976).......................................................................... 21

*Matthews v. City of New York,*
   779 F.3d 167 (2d Cir. 2015).................................................................... 19, 20

*McAvey v. Orange-Ulster BOCES,*
   2012 U.S. Dist. LEXIS 5685 (S.D.N.Y. Jan. 17, 2012).................................. 2, 3

*Morser v. AT & T Information Sys.,*
   715 F. Supp. 516 (S.D.N.Y. 1989) ....................................................................... 2

*Nagle v. Marron,*
   663 F.3d 100 (2d Cir. 2011)............................................................................. 7

*Nonnenmann v. City of New York,*
   2004 U.S. Dist. LEXIS 8966 (S.D.N.Y. May 20, 2004).............................. 10, 12

*Paige v. N.Y. City Police Dep't,*
   2012 U.S. Dist. LEXIS 47078 (E.D.N.Y. Mar. 30, 2012)................................. 15

*Patrolmen's Benevolent Assoc. v. City of New York,*
   310 F.3d 43 (2d Cir. 2002)............................................................................ 10

*Polsby v. St. Martin's Press, Inc.,*
   2000 U.S. Dist. LEXIS 596 (S.D.N.Y. Jan. 18, 2000)........................................ 2

*Redd v. Wright,*
   597 F.3d 532 (2d Cir. 2010)...................................................................... 17, 18

*Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) ........................... 15

*Reyes Canada v. Rey Hernandez,*
   221 F.R.D. 294 (D.P.R. 2004) .......................................................................... 1

*Schonberger v. Serchuk,*
   742 F. Supp. 108 (S.D.N.Y. 1990) ................................................................... 3

*Schoolcraft v. City of New York,*
   2012 U.S. Dist. LEXIS 82888 (S.D.N.Y. June 13, 2012)............................. 5, 10

*Schoolcraft v. City of New York,*
   2012 U.S. Dist. LEXIS 101317 (S.D.N.Y. July 18, 2012) ......................... 2, *passim*

**Cases**                                                                  **Pages**

*Schoolcraft v. City of New York,*
  2012 U.S. Dist. LEXIS 128557 (S.D.N.Y. Sept. 7, 2012)...................... 10

*Schoolcraft v. City of New York,*
  2015 U.S. Dist. LEXIS 58831 (S.D.N.Y. May 5, 2015).............................. 1, *passim*

*Schwartz v. Anderson,*
  2015 U.S. Dist. LEXIS 39745 (D. Conn. Mar. 29, 2015)................................... 7, 19

*Shrader v. CSX Transp., Inc.,*
  70 F.3d 255 (2d Cir. 1995)....................................................................... 1

*Sikhs for Justice v. Nath,*
  893 F. Supp.2d 598 (S.D.N.Y. 2012)......................................................... 1

*Skehan v. Vill. of Mamaroneck,*
  465 F.3d 96 (2d Cir. 2006)................................................................. 5, 6

*Southwick Clothing LLC v. GFT (USA) Corp.,*
  2004 U.S. Dist. LEXIS 25336 (S.D.N.Y. Dec. 15, 2004) ...................... 8

*Torres v. Pisano,*
  116 F.3d 625 (2d Cir. 1997).................................................................. 11

*United States v. Duncan,*
  42 F.3d 97 (2d Cir. 1994)..................................................................... 21

*United States v. Hayes,*
  551 F.3d 138 (2d Cir. 2008)................................................................. 14

*United States v. Thomas,*
  2003 U.S. Dist. LEXIS 7110 (D. Conn. Apr. 28, 2003) ....................... 14

*Weeks v. New York State Div. of Parole,*
  273 F.3d 76 (2d Cir. 2001)............................................................... 11, 12

*Wilson v. Layne,*
  526 U.S. 603 (1999)......................................................................... 17, 18

*Young v. County of Fulton,*
  160 F.3d 899 (2d Cir. 1998).................................................................. 18

*Zherka v. Amicone,*
  634 F.3d 642 (2d Cir. 2011)............................................................. 12, 13

**Cases**                                                                    **Pages**

**Statutes**

Fed. R. Civ. P. 59(e) ................................................................................. 1

Fed. R. Civ. P. 60 ..................................................................................... 1

Local Rule 6.3 ...................................................................................... 1, 3

## PRELIMINARY STATEMENT

The City Defendants respectfully submit this memorandum of law in opposition to plaintiff's motion for reconsideration of the Court's ruling on summary judgment of May 5, 2014, *Schoolcraft v. City of New York*, 2015 U.S. Dist. LEXIS 58831 (S.D.N.Y. May 5, 2015) ("*Schoolcraft IV*").

## THE STANDARD GOVERNING A MOTION FOR RECONSIDERATION

The pending motions for reconsideration are properly considered under Local Rule 6.3.[1] Reconsideration of a court's prior order under Local Rule 6.3 "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Sikhs for Justice v. Nath*, 893 F. Supp.2d 598, 605 (S.D.N.Y. 2012) (citations omitted). Accordingly, the standard of review applicable to such a motion is "strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

"It is well-settled that [a motion for reconsideration] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir.), as amended (July 13, 2012) (quotation marks omitted). The burden is on the movant to demonstrate that the Court overlooked controlling decisions or material facts that were before it on the original motion, and that might "'materially have influenced its earlier

---

[1] The City defendants incorrectly cited Fed. R. Civ. P. 60 in support of their own motion for reconsideration, which is not applicable because it applies only to appealable, final orders, and the City defendants respectfully correct their error. It is also unclear whether Fed. R. Civ. P. 59(e), relied on by the plaintiff, is an appropriate procedural vehicle, because it governs motions to alter or amend a "judgment," and no "judgment" has been entered on any claim. *See Reyes Canada v. Rey Hernandez*, 221 F.R.D. 294, 295 (D.P.R. 2004) ("In this case, the Court finds Rule 59(e) inapplicable as the Court has never entered a partial judgment dismissing the claims," although it had ruled some claims dismissed upon partial summary judgment.) In any event, the standard upon a motion for reconsideration is the same under Local Rule 6.3, regardless of the particular Federal Rule that applies, if any.

decision.'" *Ferring B.V. v. Allergan, Inc.*, 2013 U.S. Dist. LEXIS 111374, *2-3 (S.D.N.Y. Aug. 5, 2013) (quoting *Anglo Am. Ins. Group v. CalFed, Inc.*, 940 F. Supp. 554, 557 (S.D.N.Y. 1996) (quoting *Morser v. AT & T Information Sys.*, 715 F. Supp. 516, 517 (S.D.N.Y. 1989)).

      "Motions for reconsideration 'are not vehicles for taking a second bite at the apple . . . and [the court] [should] not consider facts not in the record to be facts that the court overlooked.'" *Schoolcraft v. City of New York*, 2012 U.S. Dist. LEXIS 101317, *8 (S.D.N.Y. July 18, 2012) ("*Schoolcraft II*") (citation omitted)).  "The moving party must demonstrate controlling law or factual matters *put before the court* on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision." *Schoolcraft II*, 2012 U.S. Dist. LEXIS 101317, at *6 (emphasis added) (citing L*inden v. Dist. Council 1707-AFSCME*, 415 Fed. Appx. 337, 338-39 (2d Cir. 2011) (affirming dismissal of reconsideration motion as movant did not identify any relevant facts or controlling authority that the lower court overlooked); *Lichtenberg v. Besicorp Grp. Inc.*, 28 Fed. Appx. 73, 75 (2d Cir. 2002) (affirming dismissal of reconsideration motion where movant "failed to demonstrate that the [lower] court overlooked any fact of consequence or controlling legal authority at the time the court decided [the case]")); *accord McAvey v. Orange-Ulster BOCES*, 2012 U.S. Dist. LEXIS 5685, 1-4 (S.D.N.Y. Jan. 17, 2012); *see also Ferring B.V. v. Allergan, Inc.*, 2013 U.S. Dist. LEXIS 111374, *2-3 (S.D.N.Y. Aug. 5, 2013).

      The reason for the rule confining reconsideration to matters that were "overlooked" is to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Schoolcraft II*, 2012 U.S. Dist. LEXIS 101317, at *7 (quoting *Polsby v. St. Martin's Press, Inc.*, 2000 U.S. Dist. LEXIS 596, at *2-3 (S.D.N.Y. Jan. 18, 2000) (citation and quotation marks

omitted)).  "A court must narrowly construe and strictly apply Local Civil Rule 6.3, so as to avoid duplicative rulings on previously considered issues, and to prevent the rule from being used as a substitute for appealing a final judgment." *Id.* (citing *In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*, 2009 U.S. Dist. LEXIS 61588, at *4-5 (S.D.N.Y. Jul. 16, 2009) ("A motion for reconsideration is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved."); *accord McAvey v. Orange-Ulster BOCES*, 2012 U.S. Dist. LEXIS 5685, 1-4 (S.D.N.Y. Jan. 17, 2012).

A party seeking reconsideration may neither repeat "arguments already briefed, considered and decided," nor "advance new facts, issues or arguments not previously presented to the Court." *Ferring B.V. v. Allergan, Inc.*, 2013 U.S. Dist. LEXIS 111374, *2-3 (S.D.N.Y. Aug. 5, 2013) (quoting *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990) (citations omitted)).  Arguments raised for the first time on reconsideration are not proper grounds for reconsideration.  *See Image Processing Techs., LLC v. Canon Inc.*, 2012 U.S. Dist. LEXIS 9479, *3-4 (E.D.N.Y. Jan. 26, 2012)  ("[A] party is not permitted to 'advance new facts, issues or arguments not previously presented to the Court' on a motion for reconsideration.")(citing *Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, 948 F.2d 111, 115 (2d Cir. 1991)); *see also Church of Scientology Int'l v. Time Warner, Inc.*, 1997 U.S. Dist. LEXIS 12839, at *7-8 (S.D.N.Y. Aug. 27, 1997) ("[A] party requesting [reconsideration] is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use Rule [6.3] to advance new facts and theories in response to the court's rulings.").

## POINT I

**THE COURT CORRECTLY RULED THAT PLAINTIFF MAY NOT ASSERT A FIRST AMENDMENT CLAIM FOR HIS ARREST ON OCTOBER 31, 2015 PURSUANT TO THE MENTAL HYGIENE LAW OR DEFENDNTS' VISITS TO HIS RESIDENCE TO SERVE PAPERS**

The Court should deny plaintiff's motion for reconsideration of its ruling dismissing plaintiff's First Amendment claim for post-suspension conduct because: (A) plaintiff advances a new theory of retaliation against a private citizen that he never previously asserted in this case, despite three amendments to the complaint and three prior rounds of briefing on plaintiff's First Amendment claim; (B) neither the defendants' taking of plaintiff into custody for evaluation pursuant to the mental hygiene law, nor subsequent visits to the vicinity of his residence, were adverse employment actions that could support an employee retaliation claim under the First Amendment; (C) visits to the vicinity of plaintiff's home were insufficient to support First Amendment liability; (D) plaintiff failed to proffer sufficient evidence to support a triable issue of retaliatory motive to support a First Amendment claim.

**A.      Plaintiff's purported claim for retaliation against a private citizen was never advanced in prior briefing and should not be considered now.**

In moving for reconsideration to revive portions of his First Amendment claim, plaintiff asserts a new theory that he may sue as a private citizen – not as a government employee – for "retaliation" by the defendants *after* his employment by the City and NYPD was effectively terminated by suspension for First Amendment purposes (according to the plaintiff and the rulings of this Court[2]), regardless of whether the retaliation had a chilling effect or constituted

---

[2] Defendants do not concede that plaintiff's government employment was terminated by his suspension.  Nevertheless, for the purposes of this motion defendants may rely, without waiver of any argument, on plaintiff's assertions and the prior rulings of this Court.

adverse employment action.  *See* Plaintiff's June 2, 2015 Letter Motion Moving for

Reconsideration, Docket No. 440, at 4  ("June 2 Letter") ("[I]n the context of a citizen who

alleged retaliation for criticism of public officials, the standard of law set out in both cases

[requiring a chilling effect] does not control.").

           In three rounds of prior briefing – a motion to amend to add a First Amendment

claim; a motion for reconsideration on the denial of leave to amend to add a First Amendment

claim; and again on summary judgment – plaintiff referred to his First Amendment claim, and

argued for it, as either: (i) a claim by a government employee for adverse employment action

taken in retaliation for protected speech; or (ii) as a claim for prior restraint, which requires an

actual chilling effect.  *See* Plaintiff's Letter of April 25, 2012, Deemed a Motion to Amend,

Docket No.  85, at 2 (the "First Motion to Amend") (arguing for claim for retaliation by "adverse

employment action," citing and quoting *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d

Cir. 2006)); *Schoolcraft v. City of New York*, 2012 U.S. Dist. LEXIS 82888, *10 (S.D.N.Y. June

13, 2012) ("*Schoolcraft I*") (requiring "adverse employment action" for plaintiff's First

Amendment claim, citing *Skehan*); Plaintiff's June 20, 2012, Letter Motion for Reconsideration

of the Court's June 14, 205 Decision, Docket No. 92, at 1-4; Plaintiff's August 1, 2012 Letter

Moving to Amend the Complaint, Docket No. 98, at 1-4 & n. 1 (moving to amend the complaint

to add a prior restraint claim based on speech and conduct occurring after plaintiff's suspension

on October 31, 2015); *Schoolcraft II*, 2012 U.S. Dist. LEXIS 101317, at *15-16 (plaintiff could

move to amend to add a "prior restraint" claim); Plaintiff's Opposition to Motion for Summary

Judgment, Docket No. 383, at 27.

           This is what plaintiff said about his claim for "retaliation" when he first proposed

his First Amendment claim to the Court:  "In order to establish a First Amendment retaliation

claim the plaintiff must show he engaged in protected speech and that the adverse employment action that resulted was motivated by its utterance." First Motion to Amend, at 2 (citing and quoting *Skehan*, 465 F.3d at 108 (concerning government employee First Amendment claims). Plaintiff at all times continued to advocate for a government employee retaliation claim, including on summary judgment and even in the present motion: Plaintiff argued in prior briefing ,and now, that it "was clearly established at the relevant time that a governmental entity or individual could not lawfully take adverse action *against a public employee* in retaliation for that employee's speech on matters of public concern." June 2 Letter at 3 (emphasis added).

   Even on summary judgment, when asserting a change in the law providing greater protections for Schoolcraft's workplace speech, plaintiff failed to argue that he could pursue a claim for government retaliation against a private citizen, i.e., with no required chilling effect or adverse employment action. Plaintiff argued only that a chilling effect should be deemed to have occurred due to his placement in custody for mental health evaluation at Jamaica Hospital Medical Center. Indeed, the authority relied on by plaintiff, *Kerman v. City of New York*, 261 F.3d 229, 241-242 (2d Cir. 2001), used the formula requiring a chilling effect on plaintiff's speech: "[plaintiff] must show that (i) he has an interest protected by the First Amendment, (ii) the defendants' actions were motivated by or substantially caused by the plaintiff's exercise of that right and (iii) the defendants' actions chilled the exercise of those rights. *Id*. (quoting *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998)); *see* Plaintiff's Opposition to Motion for Summary Judgment, Docket No. 383, at 27 ("The Second Circuit held that the plaintiff's speech was protected and that "an involuntary overnight trip to Bellevue has an obvious chilling effect.")

   The Court, in ruling on summary judgment, found that plaintiff could pursue a claim for "adverse employment action" by the City, allegedly taken in retaliation against him,

which did not require a chilling effect.  *Schoolcraft IV*, 2015 U.S. Dist. LEXIS 58831, at *106-107:

> [T]o survive summary judgment, a public employee alleging an adverse employment action must bring forth evidence showing that: (1) he has engaged in protected First Amendment activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. [citations omitted]  This is the standard that applies to Schoolcraft's pre-suspension speech..[3]

The Court did not hold that Schoolcraft could assert a generic retaliation claim as a private citizen, which is not surprising given that plaintiff never argued for such a claim, even after *three amended complaints*, and had always argued only for a claim for adverse employment action or prior restraint.

Government employee retaliation claims under the First Amendment implicate a host of special issues, including, *inter alia*, whether there was adverse employment action; whether or not the speech was made pursuant to official duties; whether the speech was a matter of public concern; whether the government action was justified by the need to prevent disruption of the workplace; and whether the adverse action would have occurred even without the protected speech.  *See, e.g., Nagle v. Marron*, 663 F.3d 100, 105-107 (2d Cir. 2011) (stating requirements for government employee retaliation claim under the First Amendment); *Schwartz v. Anderson*, 2015 U.S. Dist. LEXIS 39745, *15-17 (D. Conn. Mar. 29, 2015) (same); *Schoolcraft IV*, 2015 U.S. Dist. LEXIS 58831 at *93, *107.   The City defendants reserve all of their arguments on these issues (and more) for trial.

---

[3] As noted in the City defendants' motion for reconsideration, even this claim is not pled in the Third Amended Complaint, although plaintiff had at least previously argued for it.  The claim is infirm for this reason and others that will be addressed in later proceedings.

Yet now plaintiff asserts, for the first time, that all of these issues surrounding First Amendment claims by government employees are irrelevant because he asserts a claim for retaliation against a private citizen.  "It is well-settled that [a motion for reconsideration] is not a vehicle for . . . presenting the case under new theories . . . or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52.  "The moving party must demonstrate controlling law or factual matters *put before the court* on the underlying motion that the movant believes the court overlooked . . . ."  *Schoolcraft II*, 2012 U.S. Dist. LEXIS 101317, at *6.  A motion for reconsideration is not the time to "advance new facts, issues or arguments not previously presented to the Court." *Ferring B.V. v. Allergan, Inc.*, 2013 U.S. Dist. LEXIS 111374, at *2-3; *see supra* at 1-4.  Yet this is precisely what plaintiff attempts.

This is not the first time that plaintiff has introduced a novel First Amendment theory upon a motion for reconsideration.  *See Schoolcraft II*, 2012 U.S. Dist. LEXIS 101317, at *15-16  (denying motion for reconsideration where "[p]laintiff's arguments regarding his proposed amended complaint's prior restraint claim . . . were never raised in the briefing accompanying Plaintiff's motion to amend and are presented for the first time in the present motion for reconsideration, [and they therefore] cannot be addressed at this stage of the litigation," but allowing motion to amend the complaint).  Although the Court previously allowed the plaintiff to move to amend his complaint to add a new First Amendment theory – a post-suspension claim for prior restraint – it is too late now for new theories of liability, on the eve of trial and after motions for summary judgment.  *See Alali v. DeBara*, 2008 U.S. Dist. LEXIS 86760, *3 n.6 (S.D.N.Y. Oct. 24, 2008); *Southwick Clothing LLC v. GFT (USA) Corp.*, 2004 U.S. Dist. LEXIS 25336, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion."); *see also Schoolcraft IV*, 2015 U.S. Dist.

LEXIS 58831, at *144-45 ("A complaint cannot be amended merely by raising new facts and

theories in [briefing] . . . .") (quotation omitted); *see* City Defendants' Reply Memorandum in

Support of Their Motion for Summary Judgment, Docket No. 411, at 24 n. 8.[4]

Because plaintiff has never before argued a private-citizen retaliation theory, he

cannot do so now, and his motion for reconsideration of the dismissal of his post-suspension

First Amendment claim should be denied for that reason alone.

**B.     Plaintiff's seizure pursuant to the mental hygiene law and subsequent visits to the
        vicinity of his residence to serve papers are not "adverse employment action," and
        therefore cannot be the basis of the government employee retaliation First
        Amendment claim that the Court has ruled may be tried.**

As set forth above, the sole First Amendment retaliation claim allowed by the

Court's decision on summary judgment, and previously asserted by the plaintiff, is a claim that

requires as an element "adverse employment action." *Schoolcraft IV*, 2015 U.S. Dist. LEXIS

58831, at *107.  Plaintiff contends, and the Court has agreed, that Schoolcraft became a private

citizen for First Amendment purposes at the time when Deputy Chief Marino told him, while still

in his apartment and before he was arrested, that his employment as an NYPD officer was or

would be suspended.  *Schoolcraft IV*, 2015 U.S. Dist. LEXIS 58831, at *43-44, *94.  As this

Court stated:

> Plaintiff alleges that he was suspended on the evening of October
> 31, 2009 after NYPD officers arrived at his home but prior to
> Defendants' alleged involuntarily removal of Plaintiff to Jamaica
> Hospital. SAC ¶ 153.  Accordingly, Plaintiff's claim for prior
> restraint - based both on his being held involuntarily at Jamaica
> Hospital as an emotionally disturbed person as well as on
> Defendants' alleged harassment of Plaintiff at his home upstate - is
> based on conduct that occurred following Plaintiff's suspension.

---

[4] Even if the Court entertained a motion to amend the complaint at this late date – and it should
not given the short time until trial – *at least* such a motion is required before the Court may rule
on a claim not yet asserted.  The City defendants would oppose such a motion as untimely and
unduly prejudicial.

*Schoolcraft v. City of New York*, 2012 U.S. Dist. LEXIS 128557, *15 (S.D.N.Y. Sept. 7, 2012) (*"Schoolcraft III"*).

The Second Circuit has held that "to constitute an adverse employment action . . . a change in working conditions must be 'materially adverse.'" *Patrolmen's Benevolent Assoc. v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002) (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)); *accord, e.g., Nonnenmann v. City of New York*, 2004 U.S. Dist. LEXIS 8966, *63-64 (S.D.N.Y. May 20, 2004). Accordingly, the retaliatory action must at least be a "change in working conditions." *Id*.

Neither the plaintiff nor the Court has specified what alleged conduct could constitute "adverse employment action" in plaintiff's newly revived First Amendment claim, and this lack of pleading prejudices the defendants' ability to respond to the purported claim. But even in the most generous reading of the facts, the defendants' potential 'adverse employment actions' are limited to alleged harms occurring on October 31, 2009, at his apartment, prior to his suspension. First, there is no potentially protected conduct by the plaintiff prior to August 2009. The Court has held that only a jury should determine whether Schoolcraft's complaints to QAD and IAB were protected by the First Amendment, but his alleged refusal to comply with a quota was not speech at all, *Schoolcraft III*, 2012 U.S. Dist. LEXIS 128557, at *27-30, and his appeal of his personnel evaluation in January-February 2009 is *not* protected by the First Amendment, *Schoolcraft IV*, 2015 U.S. Dist. LEXIS 58831, at *100-103. Plaintiff made no complaint regarding any defendant to IAB until, at the earliest, on August 20, 2009, and did not complain about quotas and downgrading until, at the earliest, September 2009.[5]

---

[5] The Court previously held that only two subjects of plaintiff's internal complaints were matters of public concern: quotas for police activity and the misreporting of crime statistics. *Schoolcraft I*, 2012 U.S. Dist. LEXIS 82888, at *11-12. Schoolcraft's allegation to IAB on August 20, 2009,

Second, the harms allegedly suffered by plaintiff prior to October 31, 2009 do not constitute 'adverse employment action' under the First Amendment.  "Disciplinary notices, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation."  *Lewis v. Snow*, 2003 U.S. Dist. LEXIS 15700, *24 (S.D.N.Y. Sept. 8, 2003) (quoting *Lumhoo v. Home Depot USA, Inc*., 229 F. Supp.2d 121, 150 (E.D.N.Y. 2002) (citing *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001) (reprimands and threats of disciplinary action do not constitute adverse employment actions)); *Torres v. Pisano*, 116 F.3d 625, 639-640 (2d Cir. 1997)  (feeling "frightened" and "intimidated" is not "a materially adverse change in the terms and conditions of employment."); *Figueroa v. City of New York*, 198 F. Supp. 2d 555, 568 (S.D.N.Y. 2002) ("Being followed by supervisors is not a materially adverse employment action. 'Although reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions.'") (quoting *Castro v. New York City Bd. of Educ. Pers.*, 1998 U.S. Dist. LEXIS 2863, No. 96 Civ. 6314, 1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998) (internal citations omitted))); *see also Weeks v. New York State, Weeks v. New York State Div. of Parole*, 273 F.3d 76, 86-87 (2d Cir. 2001) (notice of discipline, counseling memo, transfer of cases, removal from office, not an "adverse employment action").  Accordingly, the only purported adverse actions that need be considered are those that occurred on October 31, 2015.

---

was that he had been told that Sgt. Weiss and Lt. Caughey inappropriately accessed Weiss' own personnel folder.  *Schoolcraft IV*, 2015 U.S. Dist. LEXIS 58831, at *19 (paragraph 48) (citing Pl.'s Consol. 56.1 Statement, ¶ 38 (citing PX 50)).  This complaint is not properly the subject of any First Amendment claim that may be asserted by Schoolcraft under the Court's rulings, because, *inter alia*, it was not made as a private citizen on a matter of public concern and was unknown to all defendants.

Since, according to plaintiff and the Court, Schoolcraft was no longer an employee, at the time that he was taken into custody, the seizure could hardly be an adverse employment action, which requires at a minimum that he be an employee and that the action be directed towards his employment.

It follows *a fortiori*, that the defendants' visits to the vicinity of plaintiff's apartment in upstate New York, even as alleged by the plaintiff – conducted after plaintiff's suspension on October 31, 2009 – could not constitute adverse employment action if Schoolcraft's employment had already ended, as argued by plaintiff and ruled by the Court. Indeed, even if he were an employee at the time for First Amendment purposes, neither the seizure nor the police department's visits to the vicinity of his home would have constituted 'adverse employment action,' since they did not affect plaintiff's working conditions. *See Weeks v. New York State Div. of Parole*, 273 F.3d at 86-87 ("physical removal" from an office was not an adverse employment action "because [plaintiff] does not allege what tangible adverse effect this incident had on the terms and conditions of her employment"); *Nonnenmann v. City of New York*, 2004 U.S. Dist. LEXIS 8966, *63-64 (physical touching and attempts at intimidation not adverse employment action).

Accordingly, the post-suspension conduct cannot constitute adverse employment action, and therefore cannot be the basis of a retaliation claim.

**C.  The conduct of defendants' in visiting the outside of plaintiff's apartment cannot be the basis of a retaliation claim by a private citizen under the First Amendment.**

Even if plaintiff could pursue a private citizen retaliation claim, even the new theory requires that a claim be grounded upon a concrete harm sufficient to substitute for a chilling effect to provide standing.  As the Second Circuit explained in a case relied on by plaintiff (June 2, 2005 Letter at 4), *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011), only

limited sorts of concrete harms will substitute for chilling effect in citizen retaliation cases, while

as a general matter chilling effect is still required:

> However, *in limited contexts*, other forms of harm have been
> accepted in place of this "actual chilling" requirement. *See, e.g.,*
> *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282
> F.3d 83, 91 (2d Cir. 2002) (alleging retaliatory revocation of
> building permit); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 195
> (2d Cir. 1994) (alleging retaliatory failure to enforce zoning laws);
> see also [*Gill v. Pidlypchak,* 389 F.3d 379, 383 (2d Cir. 2004)]
> (explaining that "the Gagliardi plaintiffs' *retaliation* claim
> apparently survived a motion to dismiss because . . . they
> adequately pleaded non-speech injuries"). *Despite these limited*
> *exceptions, as a general matter, First Amendment retaliation*
> *plaintiffs must typically allege "actual chilling."*

*Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011) (emphasis added).   In holding that

allegedly *per se* defamatory statements are not a sufficiently concrete injury to support a First

Amendment citizen retaliation claim, the Second Circuit stated: "Where chilling is not alleged,

*other forms of tangible harm* will satisfy the injury requirement, since "standing is no issue

whenever the plaintiff has clearly alleged a *concrete harm* independent of First Amendment

chilling."  *Zherka v. Amicone*, 634 F.3d at 646 (citing *Gill*, 389 F.3d at 383) (emphasis added).

    Here, the undisputed facts about the police visits to the vicinity of plaintiff's

apartment do not establish a "concrete" or "tangible" harm upon which to ground a First

Amendment claim.  Plaintiff contends that on eight separate occasions NYPD representatives

came to his home; it is undisputed that they went there to serve administrative notices related to

his employment, and that on one occasion Schoolcraft opened the door and spoke to them.

*Schoolcraft IV*, 2015 U.S. Dist. LEXIS 58831, at *71. Other than that one occasion, the

defendants did not even interact with Schoolcraft, let alone commit any crime or violation of his

rights.  The police have the same rights as anyone else to be on the street near plaintiff's home,

to knock on his door, or attempting to observe his public movements.  "Even surveillance

13

activities conducted near but outside the curtilage of one's home — i.e., an area to which the intimate activity associated with the sanctity of one's home and the privacies of life is extended — do not violate one's Fourth Amendment rights." *United States v. Hayes*, 551 F.3d 138, 145 (2d Cir. 2008) (internal citation and quotation marks omitted). Where officers are "physically located in public places such as Plaintiff's workplace or public streets adjacent to or near Plaintiff's home, without intruding upon the curtilage of Plaintiff's home, none of the alleged activities has violated Plaintiff's Fourth Amendment right to privacy." *Paige v. N.Y. City Police Dep't*, 2012 U.S. Dist. LEXIS 47078, *12-13 (E.D.N.Y. Mar. 30, 2012); *see also United States v. Thomas*, 2003 U.S. Dist. LEXIS 7110, *16 (D. Conn. Apr. 28, 2003) (holding surveillance from across the street of plaintiff's front porch and balcony does not infringe any reasonable expectation of privacy); *see also Hayes*, 551 F.3d at 145 (police may use drug sniffing dogs in front of suspect's home without a warrant); *Esmont v. City of New York*, 371 F. Supp. 2d 202, 212 (E.D.N.Y. 2005) ("Unobstructed, open areas in front of a residence are not entitled to Fourth Amendment protection.").

       This sort of inchoate harm is very similar to other alleged harms that have been held insufficient to support First Amendment standing. For example, allegations of an insulting You Tube video disclosing publicly available tax information about the plaintiff; issuing summonses for regulatory violations without basis; *and* the emotional and mental anguish that plaintiff claims were induced by the same, are not sufficiently concrete to provide First Amendment standing. *LaVertu v. Town of Huntington*, 2014 U.S. Dist. LEXIS 77424, *19-22 (E.D.N.Y. Apr. 4, 2014). Likewise, "[b]eing followed by supervisors is not a materially adverse employment action. 'Although reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of

14

employment conditions.'" *Figueroa v. City of New York*, 198 F. Supp. 2d 555, 568 (S.D.N.Y. 2002) (quoting *Castro v. New York City Bd. of Educ. Pers.*, No. 96 Civ. 6314, 1998 U.S. Dist. LEXIS 2863, * 21 (S.D.N.Y. Mar. 12, 1998) (internal citations omitted)).

Since it does not violate Schoolcraft's rights for defendants merely to be near him, plaintiff identifies nothing tortious or criminal in defendants' actions near his home after he was suspended. Accordingly, the officers' presence near plaintiff's home is not a cognizable harm.

**D.     Plaintiff's retaliation claim cannot survive summary judgment because the undisputed facts are insufficient to support a finding of retaliatory motive.**

In order to prevail on a retaliation claim, plaintiff must establish that the retaliatory acts he complains of were motivated by a desire to retaliate for specific First Amendment protected activity. "Specific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (citing *Blue v. Koren*, 72 F.3d 1075, 1082-83 (2d Cir. 1995). It is insufficient to show general animus towards plaintiff; i.e., that defendants disliked him. *Id.* If the Court is willing to reconsider allowing plaintiff to assert a claim as a private citizen for retaliation, then the Court should also reconsider the plaintiff's proffered evidence – which the Court appears to have misconstrued – of retaliatory motive.

For defendants to be motivated by a desire to retaliate against plaintiff for his First Amendment protected activity, they must first know about the protected activity. *See, e.g.*, *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) ("To establish a prima facie case for [Title VII] retaliation, a plaintiff must show that (1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." (citation omitted)). But there is no evidence that any defendants

15

knew, on October 31, 2009, of the contents of Schoolcraft's statements to IAB or QAD. Although the Court considered this question, the Court apparently mistook deposition testimony given by a third party – P.O. Pedro Serrano – about how own experience, not Schoolcraft's – for evidence that defendants knew about Schoolcraft's allegations to QAD and IAB. *Schoolcraft IV*, 2015 U.S. Dist. LEXIS 58831, at *111. The Court cited Serrano's testimony for the proposition that "[w]hen Schoolcraft reported the existence of quotas and crime misclassifications to IAB, his supervisors were notified." *Schoolcraft IV*, 2015 U.S. Dist. LEXIS 58831, at *111 (citing POX 41:559:1-21). But the transcript cited does not support that conclusion; rather, it is the testimony of Serrano about alleged retaliation that he claims he suffered at another command, the 40th Precinct. POX 41:659:1-21; see POX 41:653. As the City defendants noted in prior briefing, plaintiff has identified no evidence of knowledge of Schoolcraft's alleged statements. City Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment Docket No. 11 at 21. At most, the plaintiff could argue that some defendants knew that QAD was conducting an investigation of something; that Schoolcraft was asking other officers about their interviews with QAD; and that Schoolcraft put the name of someone from IAB in his memo book. *Schoolcraft IV*, 2015 U.S. Dist. LEXIS 58831, at *21-22. This is hardly evidence of knowledge that Schoolcraft made allegations at all to QAD or IAB, let alone knowledge of the substance or even the target of his allegations.

Accordingly, plaintiff's purported claim for retaliation in violation of the First Amendment should be rejected for that reason as well.

* * *

In addition, as set forth below in Point II below, the individual defendants are entitled to qualified immunity for any claim by plaintiff under the First Amendment, whether for

retaliation against a private citizen, or for workplace retaliation, because plaintiff's speech was not protected by the First Amendment under clearly established law at the time of the events at issue.

For the foregoing reasons, the Court should deny plaintiff's motion for reconsideration with respect to the First Amendment claim.

### POINT II

**THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FROM ANY FIRST AMENDMENT CLAIM BASED ON PLAINTIFF'S INTERNAL WORKPLACE SPEECH, WHICH WAS NOT PROTECTED UNDER THE FIRST AMENDMENT BY "CLEARLY ESTABLISHED LAW" AT THE TIME OF THE EVENTS AT ISSUE**

Plaintiff argues incorrectly in his motion for reconsideration that qualified immunity should not lie because it "was clearly established at the relevant time that a governmental entity or individual could not lawfully take adverse action against a public employee in retaliation for that employee's speech on matters of public concern." June 2 Letter at 3 (citing Plaintiff's March 17, 2015 Surreply Letter, Docket No. 424, at 8-9).

This argument misconstrues the law of qualified immunity and runs directly afoul of the Supreme Court's injunction to avoid analyzing qualified immunity at a high level of generality. "[T]he Supreme Court has expressly cautioned against framing the constitutional right at too broad a level of generality." *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010) (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775-76 (2015) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011)). Accordingly, the Second Circuit has "interposed a 'reasonable specificity' requirement

on defining the contours of a constitutional right for qualified immunity purposes.  *Redd v. Wright*, 597 F.3d at 536 (quoting *Dean v. Blumenthal*, 577 F.3d 60, 67-68 (2d Cir. 2009) (finding qualified immunity applied at the appropriate level of specificity).  At a sufficiently high level of generality, any claim can be analogized to some other claim . . . ." *Arar v. Ashcroft*, 585 F.3d 559, 572 (2d Cir. 2009).  Were "general principle[s]" alone enough, "it could plausibly be asserted that any violation of the Fourth Amendment is 'clearly established.'" *Wilson*, 526 U.S. at 615.  But "that result would be inconsistent with one of the policies behind the qualified immunity doctrine: to relieve individual officials of the burden of anticipating every new development in constitutional law. *Lauro v. Charles*, 219 F.3d 202, 215 (2d Cir. 2000) (holding that although 'perp walk' violated Fourth Amendment individual defendants were entitled to qualified immunity).

An officer's "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080, 2083 (2011). "The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in [the] defendant's position should know about the constitutionality of the conduct." *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998). Here, even judges – let alone police officers – did not anticipate the change in the law that underpins this Court's reversal of its First Amendment ruling.

The issue here is not whether the First Amendment prohibits retaliation for protected speech: the issue, among others, is whether Schoolcraft's speech for which he claims he was retaliated was protected by the First Amendment.  Initially the Court ruled (in defendants' view, correctly) that the speech was not protected.  In light of very recent Second Circuit precedent,

*Matthews v. City of New York*, 779 F.3d 167 (2d Cir. 2015), reversing a district court opinion on which this Court had relied, this Court reversed its prior ruling and held that some of Schoolcraft's speech for which he claims retaliation (complaints to IAB and QAD) may have been protected by the First Amendment and that therefore the claim should be tried. *Schoolcraft IV*, 2015 U.S. Dist. LEXIS 58831, at *98, *103-04, *111. That point was obviously *not* clearly established under prior law, since the Court was required to reverse its own ruling, and therefore it was not clear in 2009 that Schoolcraft had any First Amendment rights with respect to his internal NYPD complaints.

In a similar case, the court granted qualified immunity from a First Amendment claim for retaliation against a government employee, on the grounds that it was not sufficiently clear under prior law that the speech was made as a private citizen rather than a government employee, and that it was a matter of public concern. *See Schwartz v. Anderson*, 2015 U.S. Dist. LEXIS 39745, *24-25 (D. Conn. Mar. 29, 2015) (defendants are "entitled to qualified immunity as a matter of law because it would not have been clear to a reasonable official that the speech was protected" where it was unclear whether speech was made as a private citizen and whether it was a matter of public concern).

Plaintiff also argues that it would be unfair to apply qualified immunity because it was first raised on this claim in a Reply brief. This argument is nearly frivolous. Qualified immunity was raised on Reply because plaintiff's opposition was grounded on a purported "change in the law," that plaintiff argued meant that "the Court should now hold that Officer Schoolcraft's speech before his suspension was protected by the First Amendment because reporting misconduct is not an ordinary function of the position as a Police Officer . . . ." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment,

Docket No. 383, at 21.  There was no reason to raise qualified immunity before a Reply, since no change in the law had been asserted and the claim at issue now had already been dismissed, and the *Matthews* decision of the Second Circuit had not been issued (a development that defendants candidly volunteered to the Court on Reply).[6]  Were a surreply warranted on the issue of qualified immunity, plaintiff has already had it, by his letters of  March 17 and June 2, 2015.[7]

      Accordingly, there is no basis to disturb the Court's ruling on qualified immunity.

**POINT III**

**THE COURT CORRECTLY RULED THAT
PLAINTIFF'S EXPERT DR. HALPREN-
RUDER SHOULD NOT TESTIFY AT TRIAL**

      The City defendants reserve all objections to the admissibility of proffered expert testimony for motions *in limine* and for trial. Nevertheless, since plaintiff has moved for reconsideration of the Court's determination that his emergency medical expert Dr. Halpren-Ruder should not testify, the City defendants join in the opposition to this motion by other defendants.  The City defendants agree with the Court's basis for excluding the testimony. *Schoolcraft IV*, 2015 U.S. Dist. LEXIS 58831, at * 175-76.[8]

---

[6] Qualified immunity has not been waived, as it was asserted in the City defendants' answer as to all claims. *See* City Defendants' Answer to Second Amended Complaint, Docket No. 140, ¶ 440; Order of January 16, 2015, Docket No. 340 (granting leave in part to file Third Amended Complaint but ruling that defendants' need not Answer the Third Amended Complaint). Therefore, qualified immunity to the extent not addressed on summary judgment may still be raised at trial, and will be raised, as to any and all claims against the individual City defendants.

[7] Indeed, the City defendants' consented to it, provided there were concomitant adjustments to the trial schedule.  *See* City Defendants' Letter of March 20, 2015, Docket No. 426, at 3.

[8] The City defendants note that the testimony is inadmissible for the additional reason that it includes legal conclusions on non-medical matters that would invade the province of the Court and jury: namely, that plaintiff's hospital admission was "unjustifiable" and that his "civil rights" were violated. *See* Halpren-Ruder Report, PMX 36, at 1, 4.  No expert (let alone a medical expert) may testify to the requirements of the constitution, and the testimony should be ruled inadmissible at trial for this reason as well.  *Hygh v. Jacobs*, 961 F.2d 359, 363-64 (2nd Cir.

**CONCLUSION**

For the foregoing reasons, the plaintiff's motion for reconsideration should be denied.

Dated:       New York, New York
              June 23, 2015

                          Respectfully submitted,

                          ZACHARY W. CARTER
                          Corporation Counsel of the City of New York
                          *Attorneys for City defendants*
                          100 Church Street, Room 3-174
                          New York, New York 10007
                          (212) 356-2344

                          By:      /s/
                                  Alan Scheiner
                                Senior Counsel
                                Cheryl Shammas
                                Senior Counsel

---

1992) (police practices expert's testimony that defendants conduct was "totally improper" and not "justified" or "warranted" should have been excluded because it "merely [told] the jury what result to reach"); *see also United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994); *Marx & Co. v. Diners Club, Inc.*, 550 F.2d 505, 508-12 (2d Cir. 1976). Indeed, the expert's foray into legal advocacy is so inappropriate that it further calls into question his reliability as a medical expert.