10-CV-6005 (RWS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADRIAN SCHOOLCRAFT,

                                                Plaintiff,

                  -against-

THE CITY OF NEW YORK, et al.,

                                               Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE CITY DEFENDANTS' MOTION FOR RECONSIDERATION**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
   *Attorney for Defendants*
   *100 Church Street*
   *New York, N.Y. 10007*

   *Of Counsel: Alan Scheiner*
   *Tel: (212) 356-2344*
   *Cheryl Shammas*
   *Tel: (212) 356-2406*
   *Kavin Thadani*
   *Tel: (212) 356-2351*
   *Matter #: 2010-033074*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT

    POINT I

        THE COLLECTIVE KNOWLEDGE DOCTRINE ALLOWS DR. LAMSTEIN-REISS'S KNOWLEDGE TO BE IMPUTED TO THE ARRESTING OFFICERS BECAUSE IT IS UNDISPUTED THAT SHE COMMUNICATED WITH THE ARRESTING OFFICERS AND WAS INVOLVED IN THE INVESTIGATION. ........................... 1

    POINT II

        ALL CLAIMS AGAINST LT. CAUGHEY SHOULD BE DISMISSED BECAUSE HE WAS NOT PERSONALLY INVOLVED IN ANY ACTIONABLE CONDUCT. ..................................... 4

CONCLUSION ........................................................................................................ 8

## TABLE OF AUTHORITIES

**Cases** **Pages**

*Bender v. City of New York,*
  78 F.3d 787 (2d Cir. 1996) .................................................................................... 7

*Black v. Town of Harrison,*
  2002 U.S. Dist. LEXIS 16597 (S.D.N.Y. Sept. 5, 2002) ............................................... 6

*5 Borough Pawn, LLC v. Marti,*
  753 F. Supp. 2d 186 (S.D.N.Y. 2010) ............................................................................ 6

*Charles v. City of New York,*
  2014 U.S. Dist. LEXIS 46741 (S.D.N.Y. Mar. 31, 2014) ............................................. 7

*Colon v. City of New York,*
  2014 U.S. Dist. LEXIS 46451 (E.D.N.Y. Apr. 2, 2014) ........................................... 1, 2

*Cortina v. United States,*
  2011 U.S. Dist. LEXIS 76032 (S.D.N.Y. July 14, 2011) .............................................. 5

*Crawford v. City of New York,*
  477 Fed. Appx. 777 (2d Cir. 2012) ........................................................................... 2, 3

*Gaffney v. City of New York,*
  2011 N.Y. Misc. LEXIS 4592 (N.Y. Sup. Ct. Sept. 22, 2011) ..................................... 7

*Howell v. New York Post Co.,*
  81 N.Y.2d 115, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993) ......................................... 7

*Ladoucier v. City of New York,*
  2011 U.S. Dist. LEXIS 61379 (S.D.N.Y. June 6, 2011) ............................................... 6

*Panetta v. Crowley,*
  460 F.3d 388 (2d Cir. 2006) .......................................................................................... 2

*Schoolcraft v. City of New York,*
  2015 U.S. Dist. LEXIS 58831 (S.D.N.Y. May 5, 2015) .................................... 3, 5, 6, 7

*Stone v. Port Authority of New York & New Jersey,*
  2014 U.S. Dist. LEXIS 92950 (E.D.N.Y. July 8, 2014) ............................................... 6

*Sylvester v. City of New York,*
  385 F. Supp. 2d 431 (S.D.N.Y. 2005) ........................................................................... 7

*United States v. Cruz,*
  834 F.2d 47 (2d Cir. 1987) ............................................................................................ 2

## PRELIMINARY STATEMENT

The City defendants respectfully submit this Reply memorandum of law in further support of their motion for reconsideration of the Court's decision on summary judgment.

## ARGUMENT

### POINT I

**THE COLLECTIVE KNOWLEDGE DOCTRINE ALLOWS DR. LAMSTEIN-REISS'S KNOWLEDGE TO BE IMPUTED TO THE ARRESTING OFFICERS BECAUSE IT IS UNDISPUTED THAT SHE COMMUNICATED WITH THE ARRESTING OFFICERS AND WAS INVOLVED IN THE INVESTIGATION**

The City defendants moved for reconsideration in part to request that the Court to amend its statement suggesting that Captain Lauterborn must have relayed Dr. Lamstein-Reiss's ("Dr. Lamstein's") statements to fellow officers in order for the collective knowledge doctrine to apply to Dr. Lamstein's knowledge. City Memorandum of Law in Support of Motion for Reconsideration and Bifurcation, Docket No. 439, ("City Moving Mem."), at 4-8. Plaintiff, however, implicitly concedes the City defendants' point that Lauterborn need not have relayed Lamstein's statements to the other defendants for the doctrine to apply. Indeed, the sole legal authority upon which plaintiff relies so states: "The doctrine recognizes that, in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates." *Colon v. City of New York*, 2014 U.S. Dist. LEXIS 46451, *13-14 (E.D.N.Y. Apr. 2, 2014) (citations and quotations omitted); *see* Plaintiff's Memorandum in Opposition to Motion for Reconsideration, Docket No. 449 ("Plf. Opp. Mem."), at 6 (citing

*Colon v. City*). "In order for the collective knowledge doctrine to apply to actions taken by an officer, there must [only] have been *some communication* between the officers involved." *Colon*, 2014 U.S. Dist. LEXIS 46451 at *14.

But, plaintiff argues that, in addition to "some communication," Captain Lauterborn or another officer involved must reasonably rely on whatever communication occurs in taking action. Plf. Opp. Mem. at 6. Plaintiff does not say, however, why reasonable reliance is missing here, or what would be required to show it. He cannot do so, because plaintiff fundamentally misconstrues the collective knowledge doctrine and conflates it with the rule that an officer may reasonably rely on statements made to him by other officers, or by other witnesses. *See, e.g., Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).

Under the collective knowledge doctrine as set forth by the Second Circuit, no specific statement to the arresting officer is required. Therefore, Dr. Lamstein's knowledge may be considered in determining whether there was exigent circumstances or probable cause, because she is indisputably part of the investigation and was in "some communication:" about Adrian Schoolcraft with one of the officers involved (that is Lauterborn). City Moving Mem." at 4-8. As the City defendants previously noted (*id*.), in *United States v. Cruz*, 834 F.2d 47, 51 (2d Cir. 1987), the Second Circuit stated plainly: "The determination of whether probable cause to arrest exists can be based on the collective knowledge of all of the officers involved in the surveillance efforts because the various law enforcement officers in this investigation were in communication with each other." *Id*. In *Cruz* the court did not even discuss what was said between the officers involved in the investigation. *Id*.

The Second Circuit could not be more clear on this point, stating in *Crawford v. City of New York* that although another officer had communicated the basic allegations against a suspect

2

to the arresting officers, "*probable cause would have existed even if he had not*." *Crawford v. City of New York*, 477 Fed. Appx. 777, 779 (2d Cir. 2012) (emphasis added). The Second Circuit explained further: "If one officer in a police department has knowledge of facts that establish probable cause to arrest a suspect, the suspect suffers no constitutional deprivation if he is arrested by a different officer who lacks such knowledge." *Id*. at n. 1.[1]

Dr. Lamstein is a doctor of psychology assigned by the police department to evaluate Schoolcraft's mental health; she was in communication with an officer (Lauterborn) who was investigating Schoolcraft's AWOL status on October 31, 2009; and she participated in that investigation by calling Schoolcraft. *Schoolcraft v. City of New York*, 2015 U.S. Dist. LEXIS 58831, *29-30 (S.D.N.Y. May 5, 2015). This alone, under Second Circuit law, imputes her knowledge to the officer defendants under the collective knowledge doctrine, regardless of the specifics of what she conveyed to Captain Lauterborn, let alone whatever he relayed to other officers. Nevertheless, the evidence will show that Dr. Lamstein communicated the essential facts to Lauterborn, and, as set forth above, even under plaintiff's view of the law no further communication was needed.

---

[1] If the Eastern District's opinion in *Colon v. City of New York,* relied on by plaintiff, is read to require more specific communication to support the collective knowledge rule, that holding would be contrary to the law in this Circuit and in any event is not binding on this Court.

# POINT II

## ALL CLAIMS AGAINST LT. CAUGHEY SHOULD BE DISMISSED BECAUSE HE WAS NOT PERSONALLY INVOLVED IN ANY ACTIONABLE CONDUCT

The City defendants moved for reconsideration of this Court's suggestion that defendant Caughey was a proper defendant on a First Amendment claim, although all individual defendants are entitled to qualified immunity on that claim. City Moving Mem. at 10. In opposing this motion, plaintiff does not dispute that if any defendants are entitled to qualified immunity for the First Amendment claim, then Caughey is too. Plaintiff makes no argument that Caughey alone should be denied qualified immunity. Reply Mem. at 7.

Rather, plaintiff repeats his odd argument that qualified immunity should not be granted because it should be based on the law governing at the time, not the current law. This is an odd position, because under the law governing at the time, as this Court previously held, plaintiff has no First Amendment claim against Caughey at all. City Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration, Docket No. 456 ("City Opp. Mem."), at 17-20. Accordingly, if plaintiff now has such a claim for Caughey's conduct (which defendants continue to deny[2]), then Caughey and all other individual defendants must be shielded from such a claim by qualified immunity. *Id*.

Plaintiff also assert that Caughey is a proper defendant in the state law claims of assault and intentional infliction of emotional distress, and falsely asserts that Caughey never moved for dismissal from those claims. In fact, the City defendants moved for dismissal of all claims against Caughey because no actionable conduct has been alleged against him, and that remains

---

[2] *See* City Opp. Mem, at 10-11; City Moving Mem, at 9-10 n.7; *infra* at 6-7.

4

the case. *See* Revised City Memorandum of Law in Support of Motion for Summary Judgment, Docket No. 343 ("City SJ Mem."), at 16-17.

Caughey's conduct described by Schoolcraft in the precinct on October 31, 2009 cannot, as a matter of law, constitute an assault. Caughey said nothing to Schoolcraft other than to ask to review his memo book. "Schoolcraft testified that, when Lieutenant Caughey returned the memo book to Schoolcraft later that day, Schoolcraft noticed, and became alarmed, that several pages of the memo book containing his entries about corruption or misconduct were earmarked or folded down. . . . Schoolcraft contends . . . that Lieutenant Caughey later started behaving in an unusual manner towards Schoolcraft." *Schoolcraft*, 2015 U.S. Dist. LEXIS 58831, at *24. All that plaintiff said of this in his Rule 56.1 statement was the conclusory and subjective assertion that "Lieutenant Caughey started acting toward Officer Schoolcraft in a menacing manner." Plaintiff's 56.1 Statement, Docket No. 307 ("Plf. 56.1"), ¶ 54.[3] In deposition, plaintiff admitted that he had no specific fear of bodily harm, let alone a reasonable fear: "I don't recall any specific any specific thing that I thought he would do to me. I was just concerned, and I felt it was appropriate to remove myself from that situation." POX 13, at 122:8-12. This is not sufficient for the tort of assault.

It is not enough even if plaintiff claims that he was frightened or "menaced." Rather, he must plead and prove facts showing that it was objectively reasonable for him to be in fear of an imminent physical, offensive touching: "To establish an assault claim under New York law, plaintiff must show that defendant placed the plaintiff in *reasonable* fear of imminent harmful or offensive bodily contact." *Cortina v. United States*, 2011 U.S. Dist. LEXIS 76032, *5-6

---

[3] The deposition testimony cited by plaintiff states only that Caughey put his hand on his gun. *Id.* (citing PX 4). Plaintiff's own statements, not put before the Court on summary judgment but available for submission should the Court desire it, make clear that Caughey never removed his gun from his holster during this interlude, whether he was touching his gun or not.

5

(S.D.N.Y. July 14, 2011) (emphasis added) (quoting *5 Borough Pawn, LLC v. Marti*, 753 F. Supp. 2d 186, 200-01 (S.D.N.Y. 2010)); *see also Black v. Town of Harrison*, 2002 U.S. Dist. LEXIS 16597, *15 (S.D.N.Y. Sept. 5, 2002) ("A plaintiff pleading assault must allege facts that support a finding that the defendant intentionally placed the plaintiff in reasonable fear of imminent harmful or offensive bodily contact."); *Stone v. Port Auth. of N.Y. & N.J.*, 2014 U.S. Dist. LEXIS 92950, *17 (E.D.N.Y. July 8, 2014) (same); *Ladoucier v. City of New York*, 2011 U.S. Dist. LEXIS 61379, *23-24 (S.D.N.Y. June 6, 2011) (same). In a police station, a police supervisor touching how own gun cannot reasonably be perceived as a threatening act and therefore cannot constitute the tort of assault.

No other conduct by Caughey is even remotely actionable. Plaintiff asserts that Caughey engaged in "harassing conduct" leading up to October 31, 2009 that could constitute "intentional infliction of emotional distress" ("IIED"). Plf. Opp. Mem. at 8. But Caughey did not do anything to Schoolcraft before October 31, 2009. Although the Court's opinion mistakenly attributes Weiss' alleged conduct to Caughey, taking plaintiff's actual allegations as true, Caughey *did not* issue a command discipline against Schoolcraft, nor did he refer Schoolcraft to the Early Intervention Unit, nor did he do anything adverse to Schoolcraft, other than review his memo book (a normal supervisory function) and the so-called "menacing," both on October 31, 2009. *Compare Schoolcraft*, 2015 U.S. Dist. LEXIS 58831, at *155, *with* Plf. 56.1, ¶¶ 24, 29, *passim*.

The City defendants moved for summary judgment to dismiss the IIED claim on the grounds that it was duplicative of other claims. City SJ Mem. at 21. The Court found however that some of plaintiff's allegations – that he was "publicly embarrassed and humiliated" "was caused to suffer severe emotional distress," and "was forced to incur substantial expenses and had his

professional reputation destroyed" – did not overlap with other claims.  *Schoolcraft*, at *131-32.

But the allegations cited by the Court have nothing to do with Caughey.

In fact, there is nothing that Caughey allegedly did which could meet the high standards of misconduct under New York law for an IIED claim.

> To maintain a claim of IIED under New York law, the plaintiffs must establish "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. New York Post Co.*, 81 N.Y.2d 115, 612 N.E.2d 699, 702, 596 N.Y.S.2d 350 (1993)).  In *Howell*, the New York Court of Appeals noted that "the requirements of the rule are rigorous, and difficult to satisfy"; that "of the intentional infliction of emotional distress claims considered by [the New York Court of Appeals], everyone has failed because the alleged conduct was not sufficiently outrageous"; and that "liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell*, 81 N.Y.2d at 122 (internal citation and quotation marks omitted).

*Sylvester v. City of New York*, 385 F. Supp. 2d 431, 441 (S.D.N.Y. 2005).  Reviewing an officer's memo book and acting in a suspicious or even threatening manner cannot be conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id*.  Indeed, no defendants' alleged "harassment" could rise to that level.  *See, e.g., Charles v. City of New York*, 2014 U.S. Dist. LEXIS 46741, *35-37 (S.D.N.Y. Mar. 31, 2014) ("Even if a jury were to conclude that Ricupero fabricated the assault [by the plaintiff], and that Sciuto was complicit, such behavior, without more, is not sufficiently outrageous."); *Gaffney v. City of New York*, 2011 N.Y. Misc. LEXIS 4592, *32-34 (N.Y. Sup. Ct. Sept. 22, 2011) ("Here, defendants' conduct, which includes altering plaintiffs work responsibilities, instituting disciplinary proceedings against her, sending her letters and memoranda, and communicating with employees under her

7

supervision, does not rise to the level of outrageousness necessary to support a claim for intentional infliction of emotional distress.")

## CONCLUSION

For the foregoing reasons and those stated in the City defendants' prior submissions, the Court should grant the City defendants' motion for reconsideration.

Dated: New York, New York
July 23, 2015

Respectfully submitted,

ZACHARY W. CARTER
Corporation Counsel of the
 City of New York
*Attorneys for City Defendants*
100 Church Street, Room 3-174
New York, New York 10007
(212) 356-2344

By: /s/ Alan Scheiner
Alan Scheiner
Senior Counsel
Cheryl Shammas
Senior Counsel
Kavin Thadani
Senior Counsel
Assistant Corporation Counsel
Special Federal Litigation Division