UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

ADRIAN SCHOOLCRAFT,

                              Plaintiff,

    -against-

                                                10-CV-06005 (RWS)

THE CITY OF NEW YORK, et al.,

                              Defendants.
----------------------------------------------------------------X

**DEPUTY INSPECTOR STEVEN MAURIELLO'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR RECONSIDERATION OF THIS COURT'S DISMISSAL OF HIS COUNTERCLAIMS AND FOR LEAVE TO AMEND THE COUNTERCLAIMS AS THE COURT DEEMS NECESSARY**

                                                 SCOPPETTA SEIFF KRETZ & ABERCROMBIE
                                                 Attorneys for Defendant STEVEN MAURIELLO
                                                 444 Madison Avenue, 30th Floor
                                                 New York, NY 10022
                                                 wakretz@seiffkretz.com
                                                 212-371-4500

                                                 Walter A. Kretz, Jr., (WK-4645)
                                                 Patrick C. Nolan
                                                          Of Counsel

# TABLE OF CONTENTS

| | | |
|---|---|---|
| Table of Authorities | | ii |
| Preliminary Statement | | 1 |
| Argument | | |
| A. | WRONGFUL MEANS ALLEGED IN THE COUNTERCLAIMS | 2 |
| B. | PLAINTIFF'S OPPOSITION IS UNFOUNDED | 5 |
| C. | FACTS AND LAW OVERLOOKED AND MISAPPREHENDED | 9 |
| D. | THE ISSUE OF BRANDT IMMUNITY, INCLUDING A DETERMINATION OF THE TRUTHFULNESS OF SCHOOLCRAFT'S CLAIMS AND CONDUCT MUST BE RESOLVED AT TRIAL | 12 |
| CONCLUSION | | 14 |

## TABLE OF AUTHORITIES

Advanced Global Technologies, LLC v. Sirius Radio, Inc.
    44 A.D. 3d 317 (1st Dept. 2007)      11

Brandt v. Winchell, 3 N.Y. 2d 628 (1958)      13

Lion's Property Development Group, LLC v. New
York Regional Center, LLC.,
    115 A.D. 3d. 488 (1st Dept. 2014)      11

Posner v. Lewis, 18 N.Y. 3d 566 (2012)      13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ADRIAN SCHOOLCRAFT,

                                  Plaintiff,

    -against-

                                                        10-CV-06005 (RWS)

THE CITY OF NEW YORK, et al.,

                                  Defendants.
---------------------------------------------------------------X

**DEFENDANT MAURIELLO'S REPLY MEMORANDUM IN SUPPORT
OF HIS MOTION FOR RECONSIDERATION OF THIS COURT'S
DISMISSAL OF HIS COUNTERCLAIMS AND FOR LEAVE TO AMEND THE
COUNTERCLAIMS AS THE COURT DEEMS NECESSARY**

<u>Preliminary Statement</u>

       On the facts and the law, Steven Mauriello's counterclaims should be resolved by a jury. He has properly alleged that plaintiff tortiously interfered with his employment relationship with the NYPD – either by having as the sole purpose of his statements and conduct to seek revenge against Mauriello, or by engaging in wrongful means (regardless of any other purpose he may have had) to harm Mauriello and damage his relationship with the NYPD. At a minimum, Mauriello's allegations satisfy one or both of the alternative bases for his tortious interference claim, and there are questions of fact with respect to the elements of each alternative claim – sole purpose and wrongful means, as well as with respect to the claim for prima facie tort. (See Mauriello's Answer to Second Amended Complaint With Counterclaims, Docket No. 231 (Counterclaims).)

A.   <u>Wrongful Means Alleged in the Counterclaims</u>

With respect to the wrongful means engaged in by Schoolcraft, the counterclaims – contrary to the plaintiff's continued misrepresentations of their content, which unfortunately were relied upon by the Court --specifically allege the following (Counterclaims ¶¶ 3-11), and are supported by the referenced exhibits, among other evidence:

    i)   plaintiff falsely complained to QAD of routine downgrading of crime at the 81st Precinct, without revealing to QAD he was doing so purely for the sake of getting revenge against Mauriello (Counterclaims ¶ 3(i))

        (see SM Ex. BR, Schoolcraft 10/7/09 recording of his meeting with QAD and his 10/7/09 conversation with his father);

    ii)   plaintiff himself had intentionally contributed to the incidence of improper crime reporting to try to make a more compelling showing of wrongdoing at the 81st Precinct (Counterclaims ¶ 9)

        in fact, Schoolcraft improperly misclassified or downgraded at least 10 and perhaps 13 or more complaint reports during approximately the same period that QAD found the entire precinct of over 160 officers downgraded a total of 23 reports; specifically, during a nearly eleventh month period, from December 5, 2008 through October 27, 2009, plaintiff was the investigating officer and prepared complaint reports improperly downgrading the crime involved in 10 incidents, all of which were later upgraded; copies of the downgraded reports were produced in discovery, and Schoolcraft was questioned about some of them at his deposition (see SM Exs. DD (complaint reports). QAD audited a similar period from December 1, 2008 to September 30, 2009 and found only 23 incidents where crime had been improperly downgraded by the <u>entire</u> 81st Precinct (SM Ex. CK p. 36 (QAD Report, D000543); quite simply, it is a remarkable deceit carried out by Schoolcraft that the precinct was engaged in rampant downgrading when, in fact, he was the only one regularly downgrading and doing so on purpose; if proven at trial, this must be seen as wrongful means more than adequate to sustain a tortious interference claim; (it should be said that Schoolcraft was unable to consistently explain his disproportionate involvement in improper crime reporting (see SM Ex. DN, Schoolcraft Dep. pp. 544-614), and has not submitted an affidavit explaining such involvement or the absence of recordings relating to such downgrading);

    iii)   plaintiff failed to reveal to QAD, at the initial meeting or at any time thereafter, that he had recorded countless hours of conversation at the 81st

2

Precinct for a period of three years or more, and that the recordings did not provide any support for plaintiff's accusations of improper crime reporting (Counterclaims ¶ 9)(see SM Ex. BR);

> there are layers of lies not alleged in the Counterclaims that emerged in discovery as told through the deposition testimony of Schoolcraft and his father on the subject of whether other complaint reports ever existed – including that both of them had copies, but lost them; they were stolen by the NYPD from Schoolcraft's apartment; they were stolen by the NYPD from Schoolcraft's locker; his father had them upstate, but could not find them; his father and he cleaned out his father's garage upstate and threw them out, and so on; (see SM Ex. DO, Mauriello's discovery motion to compel production of any other complaint reports, which was directed by the Court but never occurred because there were no reports to produce;

iv)  plaintiff complained he received a sub-standard evaluation because of his failure to comply with unlawful quotas (Counterclaims ¶ 8)

> in fact, he had been provided with a full explanation of his sub-standard evaluation at a meeting with all of his supervisors, and it was not due to a failure to comply with a non-existent quota (see SM Ex. D, Schoolcraft's recording of the 2/25/09 evaluation meeting); IAB also found there was no evidence of quotas (SM Ex. CR, NYC 10149-10150), and there is no evidence plaintiff had ever complained about quotas prior to receiving his sub-standard evaluation;

v)  plaintiff deceived QAD about his motives by falsely explaining to QAD he had taken it upon himself to gather information about purported wrongdoing in the NYPD because he was concerned about the safety of the people in the community as well as the safety of police officers. In fact, neither sentiment was true, as plaintiff's recorded remarks starkly revealed (Counterclaims ¶¶ 4-6) (see SM Ex. BR);

vi)  plaintiff had surreptitiously recorded roll calls and other conversations in the 81st Precinct for perhaps three years or longer, and he secretly recorded the meetings relating to his appeal of his 2008 evaluation. Yet, there is no evidence that unlawful quotas actually were imposed on plaintiff or anyone else or played any part in plaintiff's evaluation – as IAB later concluded (Counterclaims ¶ 8) (see SM Exs. CR at NYC 10149-10150, D, E and Q);

vii)  even the documents plaintiff secretly accumulated show nothing more than the incidental occurrence of incorrect crime reporting, and only one such incident involved Mauriello. Plaintiff, on the other hand, played a direct role in causing at least three incidents of grand larceny and burglary, reported directly to him, to be recorded instead as lost property, and caused at least three other incidents of crime not to be recorded at all. In other words, plaintiff reported thirteen incidents of improper crime reporting for the entire precinct over a period

3

of a year or more, while he alone was responsible for six such incidents during that same period (Counterclaims ¶ 9).

> as we have learned in discovery and discussed above, Schoolcraft actually prepared ten such complaint reports and thus was directly involved in at least thirteen incidents (see SM Ex. DD);

viii) plaintiff dishonestly reported to QAD that the eleven instances he identified where a crime report was improperly downgraded, plus two additional incidents reported in the press and attributed to plaintiff, were only a small sample of such downgrading in the 81st Precinct, when, in fact, plaintiff did not know of any other instances, and actually knew or should have known that incorrect crime reporting only rarely occurred in the 81st Precinct (Counterclaims ¶ 10). (See SM Ex. CK, QAD report at NYC D000543.) Indeed, it was later independently determined, after a thorough scrutiny of the 81st Precinct's records, that of more than 1100 crime reports prepared in the 81st Precinct over a period of approximately one year, only approximately two percent had been incorrectly classified – a total of 23, which was consistent with the City-wide average and far better than several other precincts throughout the City. (See SM Ex. CK.)

> again, as we have learned in discovery, if you eliminate the complaint reports improperly downgraded by Schoolcraft, the performance of the 81st Precinct was substantially better than the City-wide average (see SM Ex. DD);

ix) despite the performance of the 81st Precinct with respect to the classification of crimes (as good or better than the City-wide average), the precinct and, in particular, Steve Mauriello, became the target of ridicule in some media due to plaintiff's unfounded and exaggerated criticism, his manipulation of the records, the bizarre events of October 31, 2009, and the sensationalized and apparently selective release of recordings plaintiff had made in the 81st Precinct (Counterclaims ¶ 10) (see SM Ex. DC, Press reports covering 81st Precinct);

x) plaintiff has named Mauriello as a defendant in furtherance of his attempt to get revenge on Mauriello and to build on that effort by trying to taint the NYPD's actions on October 31, 2009, as being motivated by Mauriello's purported desire to retaliate against plaintiff for communicating with QAD and IAB (Counterclaims ¶ 11).

> as IAB concluded, however, there is substantial, compelling evidence that Schoolcraft and his father orchestrated the entire episode (see SM Ex. CR, IAB report at NYC 10148), that Mauriello was unaware Schoolcraft was reporting to QAD and IAB, and that Mauriello knew nothing about what he might be telling them;

We respectfully submit, as discussed in our original memorandum in support of this motion, that the foregoing conduct alleged in the counterclaims

4

and supported by evidence exchanged in discovery constitutes wrongful means as a matter of law, and at a minimum, creates a question of fact as to whether Schoolcraft engaged in some or all of the alleged conduct, and whether it constitutes wrongful means.   (See Mauriello Counterclaims ¶ 15 – "Plaintiff's conduct represents a high degree of immorality and shows such a wanton dishonesty as to imply a criminal indifference to his civil obligations.")  The ultimate point is, as discussed below, if the truthfulness of plaintiff's claims and actions is not established at trial, he would not be entitled to Brandt immunity and would be subject to liability for tortious interference and prima facie tort.

B.     Plaintiff's Opposition is Unfounded

Plaintiff's memorandum in opposition to the motions for reconsideration filed by Steven Mauriello and the City Defendants (Docket Entry No. 449, Plaintiff's Opp Memo), fails to offer any legitimate basis for the Court to adhere to its dismissal of Mauriello's counterclaims.

First, plaintiff blithely asserts that the Court "did not overlook or misapprehend the relevant facts or the governing law" (Plaintiff's Opp Memo p. 4).  We respectfully and unequivocally disagree, and have recited here and throughout our original memorandum in support of this motion for reconsideration the facts and the law that were overlooked and/or misapprehended, especially as it relates to the conduct constituting wrongful means recited above, and the fact that the conduct was indeed alleged in the counterclaims.

Second, plaintiff wishfully claims that Mauriello's motion for reconsideration amounts to "mere quibbling over minor matters of fact or secondary issues of law     . . . [and thus cannot] reasonably be expected to

5

alter the conclusion reached by the court'" (Plaintiff's Opp Memo p. 4). Again, we respectfully and unequivocally disagree, and have recited here, and throughout our memorandum in support of this motion, as well as in our original papers in opposition to plaintiff's motion, facts and law that are by no means "minor" and which undeniably provide a compelling basis for this Court to alter its conclusion and reinstate Steven Mauriello's counterclaims. Certainly, bringing this Court's attention to the fact that the plaintiff, in his reply brief in support of his motion for summary judgment, dishonestly described Mauriello's counterclaims as relating only to the substance of a single telephone call between Schoolcraft and his father, and still refuses to address our argument that numerous acts of wrongful conduct by Schoolcraft were detailed in our counterclaims, is not a "quibble" over "minor matters."

Third, plaintiff further argues that this Court should not consider facts not in the record to be facts the Court overlooked (Plaintiff's Opp Memo p. 5), as if this is what we have asked the Court to do. As we have recited at length in our memorandum in support of this motion, this absolutely is not what we are asking the Court to do. Instead, we are relying on matters specifically alleged in Mauriello's counterclaims, as recited above, and facts fully revealed and explored in discovery – referred to above and in our earlier memoranda -- that are directly and inextricably related to Mauriello's claims of tortious interference and prima facie tort (see Docket Entry 442, Mauriello Memorandum in Support Point I.C, pages 10-17).

Plaintiff argued at pages 13-15 of his reply memorandum on his motion for summary judgment that Mauriello's counterclaims (Docket Entry No.

412), as a matter of law and fact, do not allege wrongdoing that constitutes wrongful means and that our reference to evidence in the record supporting the tortious interference claim somehow constitutes the assertion of "new claims." Plaintiff was wrong in all respects. Unfortunately, oral argument was not held on the motions for summary judgment, and plaintiff stated this argument with such certainty in his reply papers that the Court apparently relied on it, resulting in what we respectfully submit was a plainly incorrect conclusion.

It is especially noteworthy that plaintiff does not detail the "host of new facts" he claims Mauriello used to amend his counterclaims, but merely says it is so. On the other hand, plaintiff does indicate Mauriello is attempting to assert new claims never before addressed. Those claims, however, have been at issue throughout this litigation as the underlying issues were raised by plaintiff in his complaint -- that Mauriello (1) was the cause of plaintiff's poor performance evaluation, (2) purposefully sabotaged plaintiff's appeal, and (3) caused plaintiff's unwarranted placement on restricted duty, etc. (see TAC ¶¶ 39-46, 88-90, 106-111, 126-127). We not only have denied these assertions as absolutely unfounded, but have made clear that Schoolcraft's assertion of them is part of his overall deceit and desire to harm Mauriello in this case. The suggestion that plaintiff is somehow surprised that his own false assertions in this action are a part of the foundation of Mauriello's claims against him is simply disingenuous.

Fourth, according to plaintiff, the sole purpose element of Mauriello's tortious interference claim – which is one of two alternative grounds on which such a claim can proceed – cannot be satisfied because it is alleged not only that plaintiff sought revenge against Mauriello, but also intended to bring

7

a lawsuit in furtherance of his scheme to get revenge and cause harm while reaping undeserved benefit. (See Plaintiff's Opp Memo p. 9-10.) As we have set forth in our original memorandum in support of this motion, we respectfully submit that this Court misapprehended the law to allow a second <u>wrongful</u> purpose to preclude satisfaction of the sole purpose requirement (i.e., allowing two wrongs to make a right, and thus allowing plaintiff to escape liability on that alternative basis for Mauriello's claim). (See Mauriello Memo in Support, Point I.A.)

Fifth, plaintiff incorrectly asserts that this Court did not address whether Schoolcraft's claims and conduct caused or contributed to Mauriello being passed over for promotion over the last six years (Plaintiff's Opp Memo p. 12). As we have indicated in our original memorandum on this motion, this Court specifically concluded there were questions of fact with respect to the impact of plaintiff's claims and conduct on Mauriello, and thus properly found that the counterclaims can not be dismissed on that basis (see Opinion at 152-53).

Sixth, plaintiff argues that this Court properly concluded he is entitled to <u>Brandt</u> immunity despite the fact that the truthfulness of what he reported to QAD, IAB and the media, the accuracy of the QAD report, and the extent to which the report corresponds to what Schoolcraft reported have not yet been determined and are very much in dispute (Plaintiff's Opp Memo p. 12). As we discuss below, however, truthfulness is an established prerequisite to conferring <u>Brandt</u> immunity, and only when and if truthfulness is determined at trial can such immunity be conferred on Schoolcraft. (See Point III, <u>infra</u>.)

8

C.   <u>Facts and Law Overlooked and Misapprehended</u>

Thus, as we recited in our original memorandum in support of this motion for reconsideration, we respectfully submit that in this Court's Opinion of May 5, 2015, critical facts and law were overlooked, including the following:

First, the Court was influenced by plaintiff to overlook the specific allegations in Mauriello's counterclaims, which we have recited above. Plaintiff improperly insisted to the Court in his reply memorandum in support of his motion for summary judgment that the facts we recited in our opposition papers "were not raised in [Mauriello's] counterclaims" thus precluding any finding that plaintiff engaged in wrongful means. (See Plaintiff's Reply Memorandum, Docket 412, filed March 6, 2015, p.15.) The Court's Opinion on the summary judgment motions mistakenly referred to our assertions as "novel allegations" made for the first time in our memorandum in an effort "to craft a new claim based upon a series of [unalleged] facts" (Opinion at 158-59). This simply is wrong.

Second, the Court misapprehended the law to require that Mauriello recite in his counterclaims all of the evidence that supports his claims of tortious interference and prima facie tort, and thus faulted us for failing to do so. The cited allegations and evidence do not assert new claims, just the matters alleged in the counterclaims and some of the evidence that is supportive of them. We know of no requirement that all such evidence be alleged, but if the Court directs that we amend the counterclaims to allege all of the evidence produced in discovery that supports the counterclaims, we would of course comply.

9

Third, perhaps as a consequence of the misapprehension of the law and plaintiff's insistence that the evidence we referred to was not part of the record or amounted to new claims, the Court overlooked not only the wrongful means alleged in the counterclaims, as recited above, but also the evidence we referred to in our papers in opposition to plaintiff's summary judgment motion, and faulted us for asserting new claims. In fact, none of the assertions involve new claims and all are based on the allegations in the counterclaims and supporting evidence shared in discovery.

Fourth, while appearing to find that Schoolcraft's statements to QAD, as partially alleged in the counterclaims and recited above, were misrepresentations, they did not amount to wrongful means – at least in part because the Court was influenced by plaintiff to conclude that all of the serious allegations of wrongdoing, including the purposeful downgrading of complaints by Schoolcraft, were not alleged in the counterclaims (see Opinion at 154-56). In that context, the Court then appears simply to have overlooked the requirement that truthfulness must be established before Brandt immunity can be conferred (see Opinion at 154-6). The Court opted to confer immunity because QAD wrote a report, despite the fact that the truthfulness of Schoolcraft's statements, the accuracy of the QAD report (SM Exhibit CK), and the extent to which it corresponds to what Schoolcraft reported are material facts genuinely in dispute (assuming the QAD report is even admitted into evidence).

Fifth, we submit that the Court, when ruling that the counterclaims allege two purposes for plaintiff's conduct, thus defeating the sole purpose basis for the tortious interference claim, overlooked that the second purpose was a

10

wrongful purpose in furtherance of the same goal of getting revenge and causing Mauriello harm, and thus should not serve to defeat sole purpose as an alternative basis for Mauriello's claim. Allowing it to do so is akin to concluding that two wrongs make a right, when the case law instead requires that any second purpose be a legitimate economic purpose or interest in order to defeat a sole purpose tortious interference claim. (See Mauriello's Memorandum in Support of this motion for consideration, Point I,A; see also Lion's Property Development Group v. New York Regional Center LLC, et. al. 115 A.D. 3d 488,489 (1st Dept. 2014; Advanced Global Tech., LLC v. Sirius Radio, Inc., 44 A.D. 3d 317, 318 (1st Dept. 2007)

Finallly, plaintiff argues that reconsideration of this Court's decision regarding the counterclaims would interfere with the preparation of the pre-trial order and the commencement of trial. This argument is without merit for several reasons. First, Mauriello's counterclaims have been a part of this action since March 14, 2014, and both parties have conducted discovery on the claims and are fully informed about them. Second, plaintiff himself has filed a motion for reconsideration seeking to revive substantial claims dismissed by the Court. While plaintiff's motion is without merit and should be denied, it is not because the claims would complicate the process. Third, considering the multitude of claims by the plaintiff against multiple defendants and three amendments to the complaint (one as late as February of 2015), the plaintiff cannot genuinely claim Mauriello's two counterclaims would be so cumbersome to try that they cannot be reinstated just three months after they were dismissed. Finally, we intend to present all or most of the same evidence of plaintiff's wrongdoing in defense of

11

this action as we would to prove Mauriello's counterclaims. Thus, prohibiting the counterclaims would do little to simplify or shorten the trial.

These are not minor matters of fact or secondary issues of law, and we are not quibbling. They get at the heart of Mauriello's counterclaims and deserve the Court's full reconsideration so the counterclaims can properly be heard by a jury.

D. The Issue of <u>Brandt</u> Immunity, including a Determination of the Truthfulness of Schoolcraft's Claims and Conduct, Must Be Resolved at Trial

Plaintiff argues that Mauriello's motion for reconsideration is "merely another improper bite at the litigation apple" because we urge this court to consider that New York law requires that Schoolcraft's statements, whether to the QAD investigators or others, must have been truthful in order for <u>Brandt</u> immunity to apply. (See Plaintiff's Opp Memo p. 13.) According to plaintiff, requiring that the truthfulness of one's statements be established before <u>Brandt</u> immunity is conferred would render the right to <u>Brandt</u> immunity "illusory," but this is not at all true. The requirement of truthfulness has been clearly articulated, and if it has not been satisfied prior to trial, which is the case here, it must be established at trial before liability can be avoided by the application of Brandt immunity.

This Court's May 5, 2015, Opinion took a hard and fast approach that any communication, truthful or not, which results in an official investigation is protected and immune from civil suit. (See Opinion at 155-6.) However, the New York State Court of Appeals in <u>Brandt</u> and more recently in <u>Posner</u> expressly conditioned such immunity on the communications being truthful. (See

12

Mauriello's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Point I.2(a) at 22-3, and Mauriello's Memorandum in Support of this motion for reconsideration, Point I.E at 19-20.) We seek reconsideration on Steven Mauriello's behalf based on the decisions in <u>Posner</u> and <u>Brandt</u> because otherwise a defendant such as Schoolcraft would be protected from suit for anything he might say or do, however defamatory, vindictive or deceitful, as long as such communication is made to a public agency that then writes a report.

The <u>Brandt</u> court extended immunity from suit because "the best interests of the public are advanced by the exposure of those guilty of offenses against the public and *by the unfettered dissemination of the truth* about such wrongdoers." <u>Brandt v. Winchell</u>, 3 N.Y. 2d 628, 635 (1958) (*emphasis added*). The court continued that "*the truth shall not be shackled* by fear of a civil action." <u>Id</u>. (*emphasis added*). We would add that lies must be shackled by such fear. The next case to examine <u>Brandt</u> immunity in depth – more than fifty years after <u>Brandt</u> was decided -- reaffirmed the requirement that communications to the public be truthful: "Brandt recognized an immunity from civil suit for *truthful communications resulting in the exposure of those guilty of offenses against the public*." <u>Posner v. Lewis</u>, 18 N.Y. 3d 566, 573 (2012) (*emphasis added*).

Contrary to plaintiff's assertions, we did not add the element of truthfulness into the doctrine of <u>Brandt</u> immunity and cited authority for that requirement in our original opposition to plaintiff's motion for summary judgment, as well as in our original memorandum in support of these motions. (See Mauriello Memorandum in Opposition to Plaintiff's Motion for Summary Judgment p.22-3 and Mauriello Memorandum in Support of his Motion for Reconsideration

13

p. 20.) Moreover, the suggestion that the truthfulness of a defendant's communication to a public agency and the accuracy of any report then issued by that agency are not within the purview of this court is simply not supported by the policy behind <u>Brandt</u> immunity.

We have outlined in previous submissions to the Court that Schoolcraft made several statements to QAD which were simply not true, presented documents under false pretenses designed to deceive, and has continued to perpetrate those falsehoods in this case. One compelling example of this is that Schoolcraft himself was curiously involved in nearly half of the incidents investigated by QAD where improper crime reporting had been found, and had personally downgraded several complaint reports. He disputed this, but the evidence indicates he did it to increase the incidence of misclassification of crime to create the appearance of support for his deceitful charge that downgrading was a rampant practice in the 81st Precinct. At best, there is a genuine issue of material fact as to the veracity of Schoolcraft's statements to QAD and the level of his involvement in downgrading of crime at the 81st Precinct. Until the truthfulness of his accusations, the accuracy of the QAD report, and the extent to which the truth corresponds with what Schoolcraft reported are established, <u>Brandt</u> immunity cannot be conferred.

## CONCLUSION

Based upon the foregoing, our original memorandum in support of this motion, and defendant Mauriello's original papers in opposition to plaintiff's motion for summary judgment, we respectfully urge the Court to reconsider its dismissal of Steven Mauriello's counterclaims and to reinstate them, together

with granting such other relief as the Court deems just. To the extent the Court concludes that the counterclaims must be amended to allege all of the evidence in the record that supports Mauriello's claims, which we do not believe is warranted, we respectfully request leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2).

Dated: New York, New York
July 23, 2015

    SCOPPETTA SEIFF KRETZ & ABERCROMBIE
    Attorneys for Defendant STEVEN MAURIELLO

By: _____
    Walter A. Kretz, Jr., (WK-4645)
    444 Madison Avenue, 30th Floor
    New York, NY 10022
    wakretz@seiffkretz.com
    212-371-4500

Patrick C. Nolan,
    Of Counsel