UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

ADRIAN SCHOOLCRAFT,

               Plaintiff,

    - against -

CITY OF NEW YORK, ET AL.,

               Defendants.

-----------------------------------------X

10 Civ. 6005 (RWS)

OPINION

A P P E A R A N C E S:

       Attorney for the Plaintiff

       LAW OFFICE OF NATHANIEL B. SMITH
       111 Broadway
       Suite 1305
       New York, NY 10006
       By:  Nathaniel B. Smith, Esq.

       Attorney for the City Defendants

       ZACHARY W. CARTER
       CORPORATION COUNSEL OF THE CITY OF NEW YORK
       100 Church Street
       New York, NY  10007
       By:  Suzanna P. Mettham, Esq.

       Attorneys for Defendant Jamaica Hospital Medical
       Center

       MARTIN CLEARWATER & BELL, LLP.
       220 East 42nd Street
       New York, NY  10017
       By:  Gregory J. Radomisli, Esq.

**Sweet, D.J.**

Plaintiff Adrian Schoolcraft ("Schoolcraft" or "Plaintiff"); Defendants Christopher Broschart, Timothy Caughey, Kurt Duncan, Elise Hanlon, Theodore Lauterborn, Michael Marino, Gerald Nelson, Frederick Sawyer, The City Of New York, Timothy Trainer ("City Defendants"); and Defendant Deputy Inspector Steven Mauriello ("DI Mauriello") have moved for reconsideration of portions of the Court's May 5, 2015 Summary Judgment Opinion. DI Mauriello seeks reconsideration of the dismissal of his state law counterclaims.  Plaintiff's motion seeks reconsideration of the Court's rulings on the admissibility of an expert's testimony, on the availability of qualified immunity as a defense against Plaintiff's first amendment claim, and on dismissal of Plaintiff's first amendment claim with respect to his post-suspension speech.  The City Defendants' motion seeks reconsideration of the Court's discussion of the collective knowledge doctrine and dismissal of Captain Lauterborn as a defendant.  The City Defendants separately filed a motion to bifurcate Plaintiff's Monell claim.

For the reasons set out below, DI Mauriello's and City Defendants' reconsideration motions are granted in part and denied in part.  Plaintiff's reconsideration and City

Defendants' bifurcation motions are denied.

## Prior Proceedings

A detailed recitation of the facts of the underlying case is provided in this Court's opinion dated May 5, 2015, which granted in part and denied in part five motions for summary judgment and resulting in the instant motions.  See Schoolcraft v. City of New York, No. 10 CIV. 6005 RWS, 2015 WL 2070187, at *1 (S.D.N.Y. May 5, 2015) (hereinafter "Summary Judgment Opinion").  Familiarity with those facts is assumed. The instant motions were marked fully submitted[1] on July 23, 2015.

## Applicable Standard

A motion for reconsideration is properly granted where "the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir.

---

[1] Plaintiff's reply memorandum in support of his motion for reconsideration was submitted a day late, on July 24, 2015, based upon which the City Defendants, DI Mauriello and JHMC moved to strike it on July 29, 2015. Though the Court denies the Defendants' request, Plaintiff's reply memorandum has nevertheless been insufficient to persuade the Court to grant any of Plaintiff's requested relief.

2

1995); see also Farez-Espinoza v. Napolitano, 08 Civ. 11060(HB),

2009 U.S. Dist. LEXIS 35392, at *9 (S.D.N.Y. Apr. 27, 2009).

Pursuant to Local Civil Rule 6.3 the Court may reconsider a

prior decision to "correct a clear error or prevent manifest

injustice." Medisim Ltd. v. BestMed LLC, 2012 U.S. Dist. LEXIS

56800, at *2-3 (S.D.N.Y. Apr. 23, 2012) (citing RST (2005) Inc.

v. Research in Motion Ltd., 597 F. Supp. 2d 362, 2009 WL 274467,

at *1 (S.D.N.Y. 2009)).


        Reconsideration of a court's prior order under Local

Rule 6.3 "is an extraordinary remedy to be employed sparingly in

the interests of finality and conservation of scarce judicial

resources." Ferring B.V. v. Allergan, Inc., No. 12 Civ.

2650(RWS), 2013 WL 4082930, at *1 (S.D.N.Y. Aug. 7, 2013)

(quoting Sikhs for Justice v. Nath, 893 F. Supp. 2d 598, 605

(S.D.N.Y. 2012)).  Accordingly, the standard of review

applicable to such a motion is "strict." CSX, 70 F.3d at 257

(2d Cir. 1995).


        The burden is on the movant to demonstrate that the

Court overlooked controlling decisions or material facts that

were before it on the original motion and that might

"'materially have influenced its earlier decision.'" Anglo Am.

Ins. Group v. CalFed, Inc., 940 F. Supp. 554, 557 (S.D.N.Y.

1996) (quoting Morser v. AT & T Info. Sys., 715 F. Supp. 516,

517 (S.D.N.Y. 1989)); see also Analytical Surveys, Inc. v. Tonga

Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) ("[T]he standard

for granting [a motion for reconsideration] is strict, and

reconsideration will generally be denied unless the moving party

can point to controlling decisions or data that the court

overlooked.").  A party seeking reconsideration may neither

repeat "arguments already briefed, considered and decided," nor

"advance new facts, issues or arguments not previously presented

to the Court." Schonberger v. Serchuk, 742 F. Supp. 108, 119

(S.D.N.Y. 1990) (citations omitted).

## DI Mauriello's Motion for Reconsideration is Denied in Part and Granted in Part

DI Mauriello seeks reinstatement of his state law

counterclaims against Plaintiff for tortious interference with

an employment relationship and prima facie tort.  Under New York

law, the elements of a claim for tortious interference with

prospective business relations are: (1) business relations with

a third party; (2) the defendant's interference with those

business relations; (3) that the defendant acted with the sole

purpose of harming the plaintiff or used dishonest, unfair, or

improper means; and (4) injury to the business relationship.

4

Nadel v. Play-By-Play Toys & Novelties, Inc., 208 F.3d 368, 382
(2d Cir. 2000).

      The Summary Judgment Opinion dismissed the tortious
interference claim on the third prong, holding that DI Mauriello
had not established that Schoolcraft acted for the sole purpose
of harming DI Mauriello and that DI Mauriello had not adequately
pled that Schoolcraft's actions constituted "wrongful means."
2015 WL 2070187, at *54.  The Court also declined to consider
several allegations made by DI Mauriello is his opposition
briefing, holding that those allegations had not pled in
Mauriello's Counterclaims.  Id. at *55.  DI Mauriello takes
issue with all of the above-summarized determinations in his
reconsideration motion.  See generally Mauriello Mem. in Supp't
5-22.

      Upon reconsideration, tortious interference claim is
reinstated.  The Summary Judgment Opinion erroneously
characterized the following contentions discussed in DI
Mauriello's summary judgment motion briefing as "novel"
allegations that had not been included in DI Mauriello's
Counterclaims: Schoolcraft personally downgraded complaint
reports, orchestrated the October 31 incident, misrepresented
the status of the appeal of his 2008 Performance Evaluation,

falsely denied being aware of the reason he was placed on restricted leave, accused Mauriello of placing him on restricted leave, contacted the media, falsely claimed he cared about the community served by the 81st Precinct, and falsely claimed he cared for his fellow officers, all in furtherance of his scheme to tortiously infer with Mauriello's career opportunities. Summary Judgment Opinion, 2015 WL 2070187, at *55.  However when further reviewed, several of these allegations were alleged in the Counterclaims.  See Mauriello's Answer to SAC, Amended with Counterclaims, filed March 18, 2014 ("Mauriello Answer and Counterclaims"), 11-16.  The Counterclaims alleged that: Schoolcraft personally downgraded complaint reports, orchestrated the October 31 incident, mischaracterized Mauriello's conduct in the press, and falsely claimed he was reporting on corrupt practices at the 81st Precinct out of concern for the community it served for his fellow officers, all in an effort to harm DI Mauriello and build a record in support of Schoolcraft's lawsuit.  Id.  These allegations, and the evidentiary record developed during discovery that substantiates them, are sufficient to satisfy the third prong of tortious interference claim on the basis of "wrongful conduct." Schoolcraft's immunity from suit under Brandt v. Winchell does not attach unless Schoolcraft's allegations against DI Mauriello are proven true, a question of fact to be determined at trial.

6

However, DI Mauriello has not met his burden with respect to reinstatement of his prima facie tort claim.  DI Mauriello has asserted that "questions of fact exists with respect to whether Schoolcraft intentionally inflicted harm on Mauriello 'without excuse or justification and motivated solely by malice.'"  Mauriello Mem. in Supp't 21.  To survive summary judgment, a prima facie tort claim cannot rest upon a defendant's intentional and malicious conduct alone, but must further demonstrate that the defendant acted out of "disinterested malevolence."  Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 333 (N.Y. 1983).  DI Mauriello alleged that Schoolcraft acted at least in part to generate support of his lawsuit against the NYPD.  See generally, Mauriello Answer and Counterclaims, 13, ¶ 7.  The existence of monetary self-interest defeats an assertion of disinterested malevolence.  See Margrabe v. Sexter & Warmflash, P.C., 353 F. App'x 547, 549 (2d Cir. 2009).  In Margrabe, the Second Circuit dismissed a prima facie tort claim where the plaintiff contended that the defendant filed a defamation action in order to coerce the plaintiff into abandoning the plaintiff's a different action against the defendant for fees.  Id.  The Second Circuit dismissed the prima facie tort because "it is clear that [the defendant] had a monetary interest in initiating the defamation action."  Id.  Dismissal in Margrabe did not turn

7

on whether the defamation action was meritorious, it turned on

whether disinterested malevolence was the sole basis for the

suit.  Id.  As noted above, DI Mauriello acknowledged

Plaintiff's motivation in bringing this case was not solely

Schoolcraft's disinterested malevolence against DI Mauriello.

Consequently, the prima facie tort claim remains dismissed.


**City Defendants' Motion for Reconsideration is Denied in Part
and Granted in Part**


        City Defendants request modification of the Summary

Judgment Opinion's discussion of the collective-knowledge

doctrine and dismissal of Captain Lauterborn as a defendant.

With respect to the collective-knowledge doctrine, the Summary

Judgment Opinion stated that:


> The doctrine applies only where officers are
> in communication, sharing information
> relevant to the determination of exigent
> circumstances. . . .  Here, the record does
> not establish whether other officers were
> aware of Dr. Lamstein's warning to Captain
> Lauterborn.  See Facts ¶¶ 92, 123.
> Consequently, whether Dr. Lamstein made the
> statement to Captain Lauterborn, and whether
> Captain Lauterborn in turn communicated that
> information to his colleagues such that the
> collective knowledge doctrine may apply,
> present questions of fact barring summary
> judgment for the City Defendants.

2015 WL 2070187, *31.  City Defendants correctly note that the doctrine "permits courts to assess probable cause to arrest by looking at the collective knowledge of the police force," and does not require that the arresting officer know the precise facts justifying police action.  See City Defs.' Mem. in Supp't 6 (citing United States v. Valez, 796 F.2d 24, 28 (2d Cir. 1986)).  Consequently, whether Captain Lauterborn communicated the information to his colleagues is not relevant to the applicability of the doctrine.  However, City Defendants have not established that Dr. Lamstein's knowledge alone is enough for qualified immunity because "she is indisputably part of the investigation and was in 'some communication.'"  City Defs.' Reply Mem. 2 (citing United States v. Cruz, 834 F.2d 47, 51 (2d Cir. 1987)).  Cruz referenced officers who partake in an investigation and engaged in some communication, and City Defendants have not established that Dr. Lamstein was an officer.  See id.

       With respect to Lieutenant Caughey, City Defendants correctly note that the Court held that "Schoolcraft's protected First Amendment right to report to IAB and QAD was not clearly established at the time it was made.  Consequently, the First Amendment Claim cannot be pleaded against any officers in their individual capacities."  Summary Judgment Opinion, 2015 WL

2070187, at *42.  Consistent with the Summary Judgment Opinion's
qualified immunity holding, Lieutenant Caughey does not remain a
defendant on the basis of the First Amendment claim.

        In his opposition to City Defendants' motion,
Plaintiff contends that Lieutenant Caughey should remain a
defendant on the basis of to his state law claims for assault
and intentional infliction of emotional distress (IIED).  See
Pl.'s Mem. in Opp'n 8-9.  City Defendants counter that both
claims fail as a matter of law as against Lieutenant Caughey.
City Defs.' Reply Mem. 5-6.  Under New York law, assault is the
intentional placing of another person in reasonable apprehension
of imminent harmful or offensive contact.  United Nat. Ins., Co.
v. Waterfront N.Y. Realty Corp., 994 F.2d 105, 108 (2d Cir.
1993); Okoli v. Paul Hastings LLP, 985 N.Y.S.2d 556, 557 (N.Y.
App. Div. 2014).  City Defendants contend that the record
established only that Lieutenant Caughley arguably behaved in a
menacing manner, but did not establish that Schoolcraft has a
reasonable fear of an imminent touching.  City Defs.' Reply Mem.
5.  They further note that "Plaintiff's own statements, not put
before the Court on summary judgment but available for
submission should the Court desire it, make clear that Caughey
never removed his gun from his holster during this interlude,
whether he was touching his gun or not."  Id. at n. 3.  For the

purposes of this motion, the factual record may not be expanded

beyond that established in the Summary Judgment Opinion.  See

Schonberger v. Serchuk, 742 F. Supp. 108, 119 (S.D.N.Y. 1990).

Plaintiff's 56.1 Statement, filed together with his motion for

summary judgment, referenced Schoolcraft's deposition transcript

where he testified as follows:

> Q. Your Complaint states that Lieutenant
> Caughey was menacing and threatening to you,
> by keeping his hand on his gun on October 31,
> 2009; is that correct?
> A. Correct.
> Q. Did you believe he was going to shoot you?
> A. At the time, I believed his behavior was
> inappropriate.  And I -- I felt anything was
> possible.
> Q. Did you believe that anyone from the
> N.Y.P.D. was going to use their firearm
> against you on October 31, 2009?
> A. I don't recall specifically thinking that,
> no.
>
> . . .
>
> A. I felt Caughey's behavior that day was
> menacing and threatening.
> Q. And you believed that he was threatening
> to kill you?
> A. I believe his behavior was menacing, and
> intimidating and threatening.

Schoolcraft Tr. 118:3-25-120:10 (referenced in Pl.'s 56.1

Statement ¶ 55, which Plaintiff cites in Pl.'s Mem. in Opp'n

24).  When asked whether Schoolcraft was asked whether he feared

that Lieutenant Caughey would injury him, he responded that "I

don't recall any specific --- any specific thing that I thought he would do to me." Id. at 122:8-12. "To survive a [summary judgment] motion ..., [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to come forward with specific facts showing that there is a genuine issue for trial." Wrobel v. Cnty. of Erie, 692 F.3d 22, 30 (2d Cir. 2012) (internal quotations and citations omitted). Schoolcraft's testimony cannot be fairly read to support his contention that he had a reasonable fear of imminent harm. Consequently, Lieutenant Caughey does not remain a defendant on the basis of the assault claim.

City Defendants finally contend that Schoolcraft's intentional infliction of emotional distress (IIED) claim against Caughey fails as a matter of law. See City Defs.' Reply Mem. 7-8. To maintain a claim of IIED under New York law, Schoolcraft must establish "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996). "[L]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community."  Howell v. New York Post Co., 81 N.Y.2d 115, 122,

(N.Y. 1993) (internal quotations and citations omitted).

Schoolcraft contends that Caughey remains a defendant on the

basis of the IIED claim.  However, as Schoolcraft detailed in

his briefing in opposition to the City Defendants' motion for

summary judgment, the outrageous conduct to which Schoolcraft

was subjected began after he left the precinct on October 31,

i.e., conduct as to which Lieutenant Caughey was not involved.

See Pl.'s Mem. in Opp'n to Summary Judgment Motion 62-62 ("Taken

as a whole, however, their conduct is outrageous: a police

officer reporting misconduct is pulled out of his bed in the

middle of the night by his superiors for reporting their

misconduct; he is physically assaulted, thrown on the floor,

stepped on and handcuffed; his home is searched and evidence is

destroyed; he is removed from his home handcuffed to a chair in

the view of all his neighbors and taken to a psychiatric

facility, where he is physically abused and incarcerated without

any medical or legal basis as a "dangerous and mentally ill"

person and released a week later, to be pursued relentlessly for

the next six months at his family residence in upstate New York,

his career in shambles.").  Consequently, Lieutenant Caughey is

dismissed as a defendant on this and the other claims discussed

above.

**City Defendants' Motion for Bifurcation is Denied**

      City Defendants request bifurcation of the trial on Plaintiff's Monell claims.  Federal Rule of Civil Procedure 42(b) provides that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . or of any separate issue or any number of claims, or issues."  Fed. R. Civ. P. 42(b).  City Defendants request bifurcation in the interests of efficiency and to avoid prejudice, which they contend would result if a jury were presented extensive evidence of prior bad conduct.  See City Defs.' Mem. in Supp't 12-20; City Defs.' Reply Mem. 6-9.

      Plaintiff convincingly argues that there will be significant overlap between the evidence he will offer in support of his Monell claims and in support of the other claims that survived summary judgment.  See Pl.'s Mem. in Opp'n 4-7. Consequently, efficiency considerations do not favor bifurcation.  Moreover, the substantial prejudice which City Defendants contend will result from permitting the jury to hear evidence regarding quotas or the blue wall of silence, id. at 19, will be adequately mitigated through the ubiquitous and efficacious means of limiting instructions, jury charges and

limiting instructions.  Consequently, the motion to bifurcate is denied.

## Plaintiff's Motion for Reconsideration is Denied

Plaintiff requests reconsideration of the Court's rulings with respect to the admissibility of Dr. Halpren-Ruder's expert testimony, qualified immunity, and the first amendment claim for post-suspension conduct.  See generally Pl.'s Mem. in Supp't 2-6.

With respect to the admissibility of Dr. Ruder's report, the Court held that the testimony evaluating the quality of care provided to Schoolcraft at the JHMC emergency department was inadmissible for lack of sufficient foundation.  Summary Judgment Opinion, 2015 WL 2070187, at *67 (noted that Dr. Ruder referenced guidelines from a different jurisdiction not in effect at the time of Schoolcraft's hospitalization).  Plaintiff contends that, in fact, Dr. Ruder testified that the basis for his evaluation of the JHMC's actions were "universally applied standards of care regarding involuntary psychiatric commitment of patients."  Pl.'s Reply Mem. 7 (citing to Halpren-Ruder Dep. 85:01-25).  But this portion of the deposition dealt with Dr. Ruder's evaluation of JHMC's EMTs' conduct in deciding to

15

transport Schoolcraft to the hospital, not with JHMC's quality of care once Schoolcraft arrived. See Halpren-Ruder Dep. 79:9-85:22. Moreover, in his briefing in opposition to JHMC's motion for summary judgment, Plaintiff did not address JHMC's argument that faulted Dr. Ruder for relying on the guidelines. See Pl.'s Mem. in Opp'n of Summary Judgment Motion, 117-119 (limiting discussion of admissibility of expert testimony to the testimony of a different medical expert, Dr. Lubit). As noted above, a party seeking reconsideration may neither repeat arguments already briefed, considered and decided, nor advance new facts, issues or arguments not previously presented to the Court. Schonberger v. Serchuk, 742 F. Supp. 108, 119 (S.D.N.Y. 1990) (internal quotations and citations omitted). Plaintiff cannot now advance arguments not previously presented to the Court in the Summary Judgment motion. Consequently, Dr. Ruder's testimony remains inadmissible.

Plaintiff next seeks reconsideration of the Court's holding with respect to qualified immunity. See generally Pl.'s Mem. in Supp't 3. Plaintiff reiterates the arguments put forth in his letter in response to City Defendants' summary judgment reply briefing. Id. (including citations to Golodner v. Berliner, 770 F.3d 196, 206 (2d Cir. 2014)). Plaintiff's objection that City Defendants made their qualified immunity

argument in their reply briefing was, and remains, unpersuasive
because entry of Second Circuit's decision in Matthews v. City
of New York, 779 F.3d 167, 172 (2d Cir. 2015), occurred after
the City Defendants' memorandum in support was filed.  It was on
the basis of Matthews, not Golodner, that the Court reversed its
earlier ruling on this issue and held, for the first time, that
Schoolcraft's First Amendment claim extends to his pre-
suspension speech.  Summary Judgment Opinion, 2015 WL 2070187,
at *36-37.  As noted in the Summary Judgment Opinion, it cannot
be said that the right was clearly established, since the Court
ruled in 2012 that that same right had not been established.
Id. at * 37.  Consequently, the qualified immunity holding
remains unaltered.

        Finally, Schoolcraft requests reconsideration of the
dismissal of his first amendment claim related to his post-
suspension conduct.  Pl.'s Mem. in Supp't 4-6.  Schoolcraft
notes that Second Circuit in Dorsett v. County of Nassau
determined that a first amendment claim can be based upon
certain other types of "concrete harm," not solely upon a
chilling effect.  732 F.3d 157, 160 (2d Cir. 2013) (noting that
that a loss of a government contract, additional scrutiny at
border crossings, revocation of building permits, and refusal to
enforce zoning laws are all adequate cognizable harms even in

17

the absence of a chilling effect).

In his summary judgment briefing, Plaintiff failed to
argue that he could pursue a claim without establishing a
chilling effect or adverse employment action.  See Pl.'s Mem. in
Opp'n of Summary Judgment Motion, 19-27.  Plaintiff's summary
judgment contention was that a chilling effect occurred due to
his placement in custody for mental health evaluation at Jamaica
Hospital Medical Center.  Id. at 27 (citing Kerman v. City of
New York, 261 F.3d 229, 241-242 (2d Cir. 2001), which required a
chilling effect on plaintiff's speech).  It is only now, in his
reconsideration motion, that Plaintiff introduces the test as
set out in Dorsett.

Moreover, only limited sorts of concrete harms will
substitute for chilling effect in retaliation cases and, as a
general matter, chilling effect is still required.  Zherka v.
Amicone, 634 F.3d 642, 645 (2d Cir. 2011) (noting that other
forms of harm have been recognized in limited contexts and that
"[d]espite these limited exceptions, as a general matter, First
Amendment retaliation plaintiffs must typically allege 'actual
chilling.'").  Such contexts include imposition of several
traffic tickets soon after protected speech, officers' pushing
and deploying pepper spray after protected speech, or imposition

of criminal charges after protected speech.  See Smith.
Campbell, 782 F.3d at 100; Prince v. Cnty. of Nassau, 563 F.
App'x 13, 17 (2d Cir. 2014); Pluma v. City of New York, No. 13
CIV. 2017 LAP, 2015 WL 1623828, at *7 (S.D.N.Y. Mar. 31, 2015);
Higginbotham v. City of New York, No. 14-CV-8549 PKC RLE, 2015
WL 2212242, at *11 (S.D.N.Y. May 12, 2015).  However, they do
not extend to allegations that defendants cursed at plaintiff on
several occasions and acted aggressively towards him, or that
defendants per se defamed defendant, or to generalized
allegations of stalking.  See Zherka, 634 F.3d at 645; Crichlow
v. Fischer, No. 12-CV-7774 NSR, 2015 WL 678725, at *4 (S.D.N.Y.
Feb. 17, 2015); Longinott v. Bouffard, No. 11 Civ. 4245(VB),
2012 WL 1392579, at *4 (S.D.N.Y. Apr. 17, 2012).

     Plaintiff has not established that the NYPD visits are
the limited sort of concrete harm accepted by the courts.  Other
than that on one occasion, the NYPD officers did not interact
with Schoolcraft while in his Jamestown residence.  Summary
Judgment Motion, 2015 WL 2070187, at *27.  The type of conduct
about which Plaintiff complains is akin to non-actionable
"surveillance activities conducted near but outside the
curtilage of one's home — i.e., an area to which the intimate
activity associated with the sanctity of one's home and the
privacies of life is extended."  See United States v. Hayes, 551

F.3d 138, 145 (2d Cir. 2008) (internal citation and quotation
marks omitted).  Where officers are "physically located in
public places such as Plaintiff's workplace or public streets
adjacent to or near Plaintiff's home, without intruding upon the
curtilage of Plaintiff's home," a Plaintiff's right to privacy
is not violated.  Paige v. New York City Police Dep't, No. 10-
CV-3773 SLT LB, 2012 WL 1118012, at *4 (E.D.N.Y. Mar. 30, 2012);
see also Hayes, 551 F.3d at 145 (police may use drug sniffing
dogs in front of suspect's home without a warrant); Esmont v.
City of New York, 371 F. Supp. 2d 202, 212 (E.D.N.Y. 2005)
("Unobstructed, open areas in front of a residence are not
entitled to Fourth Amendment protection.").  Plaintiff has not
demonstrated that the NYPD's visits to Schoolcraft's upstate
residence rise to the level of the concrete harm contemplated by
Dorsett.

        Though Plaintiff contends that the NYPD's conduct on
October 31, 2009 constitutes actionable harm under Dorsett, he
does not attempt to tie that harm with constitutionally-
protected speech that has not already been held to be protected.
See Pl.'s Reply Mem. 17-18.  In the Summary Judgment Opinion,
the Court has already held that "Schoolcraft's First Amendment
claim with respect to his pre-suspension speech to IAB and QAD
survives summary judgment."  2015 WL 2070187, at *41.

                              20

Therefore, Plaintiff has not demonstrated how applying <u>Dorsett</u> will "reasonably be expected to alter the conclusion reached by the court." <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995).

Plaintiff's first amendment claim with respect to his post-suspension speech remains dismissed.

## Conclusion

Based on the conclusions set forth above, DI Mauriello's counterclaim for tortious interference is reinstated and Lieutenant Caughey is dismissed as a defendant.

It is so ordered.

New York, NY
September  15 2015

ROBERT W. SWEET
U.S.D.J.

21