# PTX 159



# PATROL GUIDE

| Section:   Aided Cases | | Procedure No:   216-05 |
|---|---|---|
| **MENTALLY ILL OR EMOTIONALLY DISTURBED PERSONS** | | |
| DATE ISSUED: 01/01/2000 | DATE EFFECTIVE: 01/01/2000 | REVISION NUMBER: | PAGE: 1 of 6 |



**PURPOSE**       To safeguard a mentally ill or emotionally disturbed person who does not voluntarily seek medical assistance.

**SCOPE**       The primary duty of <u>all</u> members of the service is to preserve human life. The safety of ALL persons involved is paramount in cases involving emotionally disturbed persons. If such person is dangerous to himself or others, necessary force may be used to prevent serious physical injury or death. Physical force will be used ONLY to the extent necessary to restrain the subject until delivered to a hospital or detention facility. Deadly physical force will be used ONLY as a last resort to protect the life of the uniformed member of the service assigned or any other person present. <u>If the emotionally disturbed person is armed or violent, no attempt will be made to take the EDP into custody without the specific direction of a supervisor unless there is an immediate threat of physical harm to the EDP or others are present.</u> If an EDP is not immediately dangerous, the person should be contained until assistance arrives. If the EDP is unarmed, not violent and willing to leave voluntarily, uniformed member of the service may take such person into custody. When there is time to negotiate, all the time necessary to ensure the safety of all individuals will be used.

**DEFINITIONS**       <u>EMOTIONALLY DISTURBED PERSON (EDP)</u> - A person who appears to be mentally ill or temporarily deranged and is conducting himself in a manner which a police officer reasonably believes is likely to result in serious injury to himself or others.

<u>ZONE OF SAFETY</u> - The distance to be maintained between the EDP and the responding member(s) of the service. This distance should be greater than the effective range of the weapon (other than a firearm), and it may vary with each situation (e.g., type of weapon possessed, condition of EDP, surrounding area, etc.). A minimum distance of twenty (20) feet is recommended. An attempt will be made to maintain the "zone of safety" if the EDP does <u>not</u> remain stationary.

**PROCEDURE**       When a uniformed member of the service reasonably believes that a person who is apparently mentally ill or emotionally disturbed, <u>must</u> be taken into protective custody because the person is conducting himself in a manner likely to result in a serious injury to himself or others:

**UNIFORMED MEMBER OF THE SERVICE**
1.       Upon arrival at scene, assess situation as to threat of immediate serious physical injury to EDP, other persons present, or members of the service. Take cover, utilize protective shield if available and request additional personnel, if necessary.
   a.       If emotionally disturbed person's actions constitute <u>immediate</u> threat of serious physical injury or death to himself or others:
      (1)       Take reasonable measures to terminate or prevent such behavior. Deadly physical force will be used <u>only</u> as a last resort to protect the life of persons or officers present.

## NEW • YORK • CITY • POLICE • DEPARTMENT

## PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 216-05 | 01/01/2000 | | 2 of 6 |

*NOTE*   *Damaging of property would not necessarily constitute an immediate threat of serious physical injury or death.*

**UNIFORMED MEMBER OF THE SERVICE** (continued)

     b.    If EDP is unarmed, not violent and is willing to leave voluntarily:
        (1)    EDP may be taken into custody without the specific direction of a supervisor.
     c.    In all other cases, if EDP's actions do <u>not</u> constitute an <u>immediate</u> threat of serious physical injury or death to himself or others:
        (1)    Attempt to isolate and contain the EDP while maintaining a <u>zone of safety</u> until arrival of patrol supervisor and Emergency Service Unit personnel.
        (2)    <u>Do not attempt to take EDP into custody without the specific direction of a supervisor.</u>

2.    Request ambulance, if one has not already been dispatched.
     a.    Ascertain if patrol supervisor is responding, and, if not, request response.

*NOTE*   *Communications Section will automatically direct the patrol supervisor and Emergency Service Unit to respond to scene in such cases. Patrol supervisors' vehicles are equipped with non-lethal devices to assist in the containment and control of EDP's, and will be used at the supervisor's direction, if necessary.*

3.    Establish police lines.
4.    Take EDP into custody if EDP is unarmed, not violent and willing to leave voluntarily.

**PATROL SUPERVISOR**

5.    Verify that Emergency Service Unit is responding, if required.
     a.    Cancel response of Emergency Service Unit if services not required.
6.    Direct uniformed members of the service to take EDP into custody if unarmed, not violent, and willing to leave voluntarily.

*NOTE*   *When aided is safeguarded and restrained comply with steps 25 to 32 inclusive.*

<u>WHEN AIDED IS ISOLATED/CONTAINED BUT WILL NOT LEAVE VOLUNTARILY:</u>

**PATROL SUPERVISOR**

7.    Establish firearms control.
     a.    Direct members concerned not to use their firearms or use any other deadly physical force unless their lives or the life of another is in imminent danger.
8.    Deploy protective devices (shields, etc.).
     a.    Employ non-lethal devices to ensure the safety of all present (see *"ADDITIONAL DATA"* statement).
9.    Comply with provisions of *P.G. 212-38, "Hostage/Barricaded Person(s),"* where appropriate.
10.    Establish police lines if not already done.

# NEW • YORK • CITY • POLICE • DEPARTMENT

PG000670

## PATROL GUIDE



| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE |
|---|---|---|---|
| 216-05 | 03/24/00 | 00-01 | 3 of 6 |

| | | |
|---|---|---|
| **PATROL SUPERVISOR (continued)** | 11. | Request response of hostage negotiation team and coordinator through Communications Section. |
| | 12. | Notify desk officer that hostage negotiation team and coordinator have been notified and request response of precinct commander/duty captain. |
| | 13. | Request Emergency Service Unit on scene to have supervisor respond. |
| | 14. | If necessary, request assistance of: |
| | | a.  Interpreter, if language barrier |
| | | b.  Subject's family or friends |
| | | c.  Local clergyman |
| | | d.  Prominent local citizen |
| | | e.  Any public or private agency deemed appropriate for possible assistance. |

*NOTE*

*The highest ranking uniformed police supervisor at the scene is in command and will coordinate police operations.  If the mentally ill or EDP is contained and is believed to be armed or violent but due to containment poses no immediate threat of danger to any person, no additional action will be taken without the authorization of the commanding officer or duty captain at the scene.*

| | | |
|---|---|---|
| **EMERGENCY SERVICE UNIT SUPERVISOR** | 15. | Report to and confer with ranking patrol supervisor on scene. |
| | | a.  If there is no patrol supervisor present, request response forthwith, and perform duties of patrol supervisor pending his/her arrival. |

*NOTE*

*The presence of a supervisor from any other police agency does not preclude the required response of the patrol supervisor.*

| | | |
|---|---|---|
| | 16. | Evaluate the need and ensure that sufficient Emergency Service Unit personnel and equipment are present at the scene to deal with the situation. |
| | 17. | Verify that hostage negotiation team and coordinator are responding, when necessary. |
| | 18. | Devise plans and tactics to deal with the situation, after conferral with ranking patrol supervisor on scene. |

| | | |
|---|---|---|
| **DESK OFFICER** | 19. | Verify that precinct commander/duty captain has been notified and is responding. |
| | 20. | Notify Operations Unit and patrol borough command of facts. |

| | | |
|---|---|---|
| **COMMANDING OFFICER/ DUTY CAPTAIN** | 21. | Assume command, including firearms control. |
| | 22. | Confer with ranking Emergency Service Unit supervisor on scene and develop plans and tactics to be utilized. |
| | 23. | Direct whatever further action is necessary, including use of negotiators. |
| | 24. | Direct use of alternate means of restraint, if appropriate, according to circumstances (OC Spray, tear gas, baton, restraining equipment, taser electronic stun device, or stun device). |

# NEW • YORK • CITY • POLICE • DEPARTMENT

**PATROL GUIDE**



| PROCEDURE NUMBER | DATE EFFECTIVE | REVISION NUMBER | PAGE |
|---|---|---|---|
| 216-05 | 03/24/00 | 00-01 | 4 of 6 |

WHEN PERSON HAS BEEN RESTRAINED:

| | | |
|---|---|---|
| **UNIFORMED MEMBER OF THE SERVICE** | 25. | Remove property that is dangerous to life or will aid escape. |
| | 26. | Have person removed to hospital in ambulance. |

    a. Restraining equipment including handcuffs may be used if patient is violent, resists, or upon direction of a physician examiner.

    b. If unable to transport with reasonable restraint, ambulance attendant or doctor will request special ambulance.

    c. When possible, a female patient being transported should be accompanied by another female or by an adult member of her immediate family.

27. Ride in body of ambulance with patient.

    a. At least two (2) uniformed members of the service will safeguard if more than one (1) patient is being transported.

**NOTE**

*If an ambulance is NOT available and the situation warrants, transport the EDP to the hospital by RMP if able to do so with reasonable restraint, at the direction of a supervisor. UNDER NO CIRCUMSTANCES WILL AN EDP BE TRANSPORTED TO A POLICE FACILITY.*

28. Inform examining physician, upon arrival at hospital, of use of non-lethal restraining devices, if applicable.

29. Safeguard patient at hospital until examined by psychiatrist.

    a. When entering psychiatric ward of hospital, unload revolver at Firearm Safety Station, if available (see *P.G. 216-07, "Firearms Safety Stations At Psychiatric Wards And Admitting Areas"*).

30. Inform psychiatrist of circumstances which brought patient into police custody:

    a. Inform relieving uniformed member of circumstances if safeguarding extends beyond expiration of tour.

    b. Relieving uniformed member will inform psychiatrist of details.

31. Enter details in **ACTIVITY LOG (PD112-145)** and prepare **AIDED REPORT WORKSHEET (PD304-152b)**.

    a. Indicate on **AIDED REPORT WORKSHEET**, name of psychiatrist.

32. Deliver **AIDED REPORT WORKSHEET** to desk officer.

**ADDITIONAL DATA**

*Refer persons who voluntarily seek psychiatric treatment to proper facility.*

*Prior to interviewing a patient confined to a facility of the NYC Health and Hospitals Corporation, a uniformed member of the service must obtain permission from the hospital administrator who will ascertain if the patient is mentally competent to give a statement.*

*Upon receipt of a request from a qualified psychiatrist, or from a director of a general hospital or his/her designee, uniformed members of the service shall take into custody and transport an apparently mentally ill or emotionally disturbed person from a facility licensed or operated by the NYS Office of Mental Health which does not have an inpatient psychiatric service, or from a general hospital which does not have an inpatient psychiatric service, to a hospital approved under Section 9.39 of the Mental Hygiene Law.*

**NEW • YORK • CITY • POLICE • DEPARTMENT**

PG000672

## PATROL GUIDE



| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 216-05 | 09/28/07 | 07-05 | 5 of 6 |

**ADDITIONAL DATA** *(continued)*

*Uniformed members of the service will also comply with the above procedure upon direction of the Commissioner of Mental Health, Mental Retardation and Alcoholism Services or his/her designee.*

<u>*USE OF NON-LETHAL DEVICES TO ASSIST IN RESTRAINING EMOTIONALLY DISTURBED PERSONS*</u>

*Patrol supervisors or uniformed members of the service assigned to Emergency Service Unit may utilize a taser electronic stun device or stun device to assist in restraining emotionally disturbed persons if necessary. The taser/stun device may be used:*

a.   *To restrain an EDP who is evincing behavior that might result in physical injury to himself or others, <u>OR</u>*

b.   *To restrain person(s) who, through the use of drugs, alcohol or other mind-altering substances, are evincing behavior that might result in physical injury to himself or others.*

*Emergency Service Unit personnel will obtain the permission of the Emergency Service Unit supervisor prior to utilizing a taser/stun device, except in emergencies.*

*Patrol supervisor or Emergency Service Unit personnel using a taser/stun device will prepare a **TASER/STUN DEVICE REPORT (PD304-150)**. It will be signed by the Emergency Service Unit supervisor/duty captain, as appropriate, and delivered to the precinct of occurrence.*

*The precinct commander/duty captain will conduct an investigation, prepare an **UNUSUAL OCCURRENCE REPORT (PD370-152)**, attach a **TASER/STUN DEVICE REPORT**, and forward as per instructions on the **TASER/STUN DEVICE REPORT** form.*

*The Commanding Officer, Emergency Service Unit will have **TASER/STUN DEVICE REPORTS** maintained in a bound book.*

***NON-LETHAL RESTRAINING DEVICE/RESCUE EQUIPMENT REPORT (PD320-150)** will be prepared whenever restraining devices, such as a taser, stun gun, water fire extinguisher, Velcro restraining straps, five (5) foot shield, four (4) foot shield, shepherd's crook or rescue equipment (sledge hammer, wrecking bar, come-along winch, etc.) are used by uniformed members of the service in the performance of duty.*

***NON-LETHAL RESTRAINING DEVICE/RESCUE EQUIPMENT REPORT** will be prepared in addition to any other Department report required by the incident, including the **TASER/STUN DEVICE REPORT**.*

*The Commanding Officer, Investigation Review Section, will collate statistical information recorded on the **REPORTS**, and will forward a monthly report to the Office of the Chief of Department by the seventh (7th) business day of each month.*

**RELATED PROCEDURES**

*Investigation of Carjackings (P.G. 207-32)*
*Unusual Occurrence Reports (P.G. 212-09)*
*Hostage/Barricaded Person(s) (P.G. 212-38)*
*Unlawful Evictions (P.G. 214-12)*
*Aided Cases - General Procedure (P.G. 216-01)*
*Mental Health Removal Orders (P.G. 216-06)*

## NEW • YORK • CITY • POLICE • DEPARTMENT



# DEPARTMENT MANUAL REVISION NOTICE

| GUIDE: | NUMBER. | DATE ISSUED: | DATE EFFECTIVE: |
|---|---|---|---|
| PATROL | 07-04 | 07-27-07 | 08-03-07 |

1.     P.G. procedure 212-32, "Off Duty Incidents Involving Uniformed Members of the Service," and P.G. procedure 212-34, "Probationary Police Officer, Police Eligible or Civilian Employee Involved in a Police Incident," have been amended to ensure proper notifications are made to the Internal Affairs Bureau Command Center and the Performance Analysis Section. Therefore, remove current P.G. procedures 212-32 and 212-34 and replace with the appropriate revised procedure noted in the adjacent column.

- 212-32, page 1.
- 212-34, page 1.
- I.O. 6, series 2006, is **REVOKED**.
- I.O. 26, series 2006, is **REVOKED**.

2.     The Department has established a new Patrol Guide procedure, 212-99, "Amber Alert System." The purpose of the Amber Alert System is to provide rapid and widespread dissemination of information in the event of a child abduction. Therefore, insert the attached new P.G. procedure 212-99 noted in the adjacent column, in proper numerical order.

- 212-99, pages 1 through 3.
- I.O.s 36, 36-1, and 36-3 series, 2004, are **REVOKED**.

3.     P.G. procedure 216-19, "Public Access Defibrillation Program," has been amended to include a notification to the radio dispatcher identifying the patrol units that are assigned an AED kit. Therefore, remove current P.G. procedure 216-19 and replace with the revised procedure noted in the adjacent column.

- 216-19, pages 1 through 4.
- I.O. 1, series 2007, is **REVOKED**.

4.     The Department has established a new Patrol Guide procedure 216-22, "Mobile Crisis Outreach Teams and Assertive Community Treatment Teams," to outline the duties of uniformed members of the service directed to assist, on scene, designated physicians or qualified mental health professionals assigned to Mobile Crisis Outreach Teams or Assertive Community Treatment Teams. Therefore, insert new P.G. procedure 216-22 noted in the adjacent column, in proper numerical order.

- 216-22, pages 1 and 2.
- I.O. 35, series 2005, is **REVOKED**.

**Ink Change**: Patrol Guide procedure 216-05, "Mentally Ill or Emotionally Disturbed Persons" is being amended to reflect the introduction of new P.G. procedure 216-22, "Mobile Crisis Outreach Teams and Assertive Community Treatment Teams," as follows:



a.     **DELETE** the subtitle "**NYC DEPARTMENT OF MENTAL HEALTH, MENTAL RETARDATION AND ALCOHOLISM SERVICES MOBILE CRISIS OUTREACH TEAMS**" and the two paragraphs immediately following the above subtitle, opposite "*ADDITIONAL DATA*" on page "**5**."

b.     **DELETE** reference to "*Mobile Crisis Outreach Team Authorization for Transport (OMH 482)*" opposite "*FORMS AND REPORTS*" on page "**6**."

5.     Patrol Guide procedure 218-48, "Vehicle Seizure at Time of Arrest," has been amended to ensure proper Department guidelines are followed with regard to vehicles which are seized pursuant to the commission of a crime. Therefore, remove current P.G. procedure 218-48 and replace with the revised procedure noted in the adjacent column.

- 218-48, pages 1 and 2.
- I.O. 29, series 2007, is **REVOKED**.

**NEW • YORK • CITY • POLICE • DEPARTMENT**

PATROL GUIDE ②

| PROCEDURE NUMBER | DATE EFFECTIVE | REVISION NUMBER | PAGE |
|---|---|---|---|
| 216-05 | 1-24-90 | 2000 | 3 of 6 |

**ADDITIONAL DATA** (continued)

Uniformed members of the service will comply with these procedures upon direction of the Commissioner of Mental Health, Mental Retardation and Alcoholism Services or his/her designee.

### NYC DEPARTMENT OF MENTAL HEALTH, MENTAL RETARDATION AND ALCOHOLISM SERVICES MOBILE CRISIS OUTREACH TEAMS

The NYC Department of Mental Health, Mental Retardation and Alcoholism Services (DMH) has Mobile Crisis Outreach Teams which have the authority to evaluate and involuntarily remove a person to a hospital if such person appears to be mentally ill and is conducting him/herself in a manner which is likely to result in serious harm to the person or to others. If removal to a hospital is necessary, but the subject is unwilling to go, the Mobile Crisis Outreach Team will request this Department to respond. Upon arrival of police personnel, the Mobile Crisis Outreach Team member (physician or qualified mental health professional) will identify him/herself by presenting a DMH photo identification. The NYS Commissioner of Mental Health requires that the Mobile Crisis Outreach Team prepare form Mobile Crisis Outreach Team Authorization for Transport (OMH 482), prior to directing the involuntary transport of an individual. A copy of this form must be provided to responding officers, for attachment to the **AIDED REPORT**.

When directed to assist Mobile Crisis Outreach Teams, uniformed members will comply with all applicable portions of this procedure. The patrol supervisor will assume command and evaluate the condition of the aided. In addition, the patrol supervisor will determine whether the services of the Emergency Service Unit and the precinct commanding officer/duty captain are required. A uniformed member will assist in the transportation of the patient to the hospital and will ride in the body of the ambulance with the patient. All personal property, other than contraband, removed from persons will be safeguarded by Mobile Crisis Outreach Team members concerned. A uniformed member will remain with the patient until he/she is examined and is either released or admitted at the psychiatric emergency room. All necessary forms will be prepared and all pertinent details of the incident will be recorded in the member's **ACTIVITY LOG**, including the name of the Mobile Crisis Outreach Team member who ordered the removal and the length of time the aided was in police custody.

### USE OF NON-LETHAL DEVICES TO ASSIST IN RESTRAINING EMOTIONALLY DISTURBED PERSONS

Patrol supervisors or uniformed members of the service assigned to Emergency Service Unit may utilize a taser electronic stun device or stun device to assist in restraining emotionally disturbed persons if necessary. The taser/stun device may be used:

a.     To restrain an EDP who is evincing behavior that might result in physical injury to himself or others, OR

b.     To restrain person(s) who, through the use of drugs, alcohol or other mind-altering substances, are evincing behavior that might result in physical injury to himself or others.

Emergency Service Unit personnel will obtain the permission of the Emergency Service Unit supervisor prior to utilizing a taser/stun device, except in emergencies.

**NEW • YORK • CITY • POLICE • DEPARTMENT**

PG000675

## PATROL GUIDE



| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 216-05 | 09/28/07 | 07-05 | 6 of 6 |

*FORMS AND*
*REPORTS*

*ACTIVITY LOG (PD112-145)*
*AIDED REPORT WORKSHEET (PD304-152b)*
*NON-LETHAL RESTRAINING DEVICE/RESCUE EQUIPMENT REPORT (PD320-150)*
*TASER/STUN DEVICE REPORT (PD304-150)*
*UNUSUAL OCCURRENCE REPORT (PD370-152)*

**NEW • YORK • CITY • POLICE • DEPARTMENT**



# DEPARTMENT MANUAL REVISION NOTICE

| GUIDE: | NUMBER: | DATE ISSUED: | DATE EFFECTIVE: |
|---|---|---|---|
| PATROL | 07-04 | 07-27-07 | 08-03-07 |

1. P.G. procedure 212-32, "Off Duty Incidents Involving Uniformed Members of the Service," and P.G. procedure 212-34, "Probationary Police Officer, Police Eligible or Civilian Employee Involved in a Police Incident," have been amended to ensure proper notifications are made to the Internal Affairs Bureau Command Center and the Performance Analysis Section. Therefore, remove current P.G. procedures 212-32 and 212-34 and replace with the appropriate revised procedure noted in the adjacent column.
   - 212-32, page 1.
   - 212-34, page 1.
   - I.O. 6, series 2006, is **REVOKED**.
   - I.O. 26, series 2006, is **REVOKED**.

2. The Department has established a new Patrol Guide procedure, 212-99, "Amber Alert System." The purpose of the Amber Alert System is to provide rapid and widespread dissemination of information in the event of a child abduction. Therefore, insert the attached new P.G. procedure 212-99 noted in the adjacent column, in proper numerical order.
   - 212-99, pages 1 through 3.
   - I.O.s 36, 36-1, and 36-3 series, 2004, are **REVOKED**.

3. P.G. procedure 216-19, "Public Access Defibrillation Program," has been amended to include a notification to the radio dispatcher identifying the patrol units that are assigned an AED kit. Therefore, remove current P.G. procedure 216-19 and replace with the revised procedure noted in the adjacent column.
   - 216-19, pages 1 through 4.
   - I.O. 1, series 2007, is **REVOKED**.

4. The Department has established a new Patrol Guide procedure 216-22, "Mobile Crisis Outreach Teams and Assertive Community Treatment Teams," to outline the duties of uniformed members of the service directed to assist, on scene, designated physicians or qualified mental health professionals assigned to Mobile Crisis Outreach Teams or Assertive Community Treatment Teams. Therefore, insert new P.G. procedure 216-22 noted in the adjacent column, in proper numerical order.
   - 216-22, pages 1 and 2.
   - I.O. 35, series 2005, is **REVOKED**.

**Ink Change**: Patrol Guide procedure 216-05, "Mentally Ill or Emotionally Disturbed Persons" is being amended to reflect the introduction of new P.G. procedure 216-22, "Mobile Crisis Outreach Teams and Assertive Community Treatment Teams," as follows:

a. **DELETE** the subtitle "**NYC DEPARTMENT OF MENTAL HEALTH, MENTAL RETARDATION AND ALCOHOLISM SERVICES MOBILE CRISIS OUTREACH TEAMS**" and the two paragraphs immediately following the above subtitle, opposite "*ADDITIONAL DATA*" on page "**5**."



b. **DELETE** reference to "*Mobile Crisis Outreach Team Authorization for Transport (OMH 482)*" opposite "*FORMS AND REPORTS*" on page "**6**."

5. Patrol Guide procedure 218-48, "Vehicle Seizure at Time of Arrest," has been amended to ensure proper Department guidelines are followed with regard to vehicles which are seized pursuant to the commission of a crime. Therefore, remove current P.G. procedure 218-48 and replace with the revised procedure noted in the adjacent column.
   - 218-48, pages 1 and 2.
   - I.O. 29, series 2007, is **REVOKED**.

## NEW • YORK • CITY • POLICE • DEPARTMENT

PG000677

# PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 216-05 | 03/24/00 | 00-01 | 6 of 6 |

**ADDITIONAL DATA** *(continued)*

*Patrol supervisor or Emergency Service Unit personnel using a taser/stun device will prepare a TASER/STUN DEVICE REPORT (PD304-150). It will be signed by the Emergency Service Unit supervisor/duty captain, as appropriate, and delivered to the precinct of occurrence.*

*The precinct commander/duty captain will conduct an investigation, prepare an UNUSUAL OCCURRENCE REPORT (PD370-152), attach a TASER/STUN DEVICE REPORT, and forward as per instructions on the TASER/STUN DEVICE REPORT form.*

*The Commanding Officer, Emergency Service Unit will have TASER/STUN DEVICE REPORTS maintained in a bound book.*

*NON-LETHAL RESTRAINING DEVICE/RESCUE EQUIPMENT REPORT (PD320-150) will be prepared whenever restraining devices, such as a taser, stun gun, water cannon, Velcro restraining straps, five (5) foot shield, four (4) foot shield, shepherd's crook or rescue equipment (sledge hammer, wrecking bar, come-along winch, etc.) are used by uniformed members of the service in the performance of duty.*

*NON-LETHAL RESTRAINING DEVICE/RESCUE EQUIPMENT REPORT will be prepared in addition to any other Department report required by the incident, including the TASER/STUN DEVICE REPORT.*

*The Commanding Officer, Investigation Review Section, will collate statistical information recorded on the REPORTS, and will forward a monthly report to the Office of the Chief of Department by the seventh (7th) business day of each month.*

**RELATED PROCEDURES**

*Investigation Of Carjackings (P.G. 207-32)*
*Unusual Occurrence Reports (P.G. 212-09)*
*Hostage/Barricaded Person(s) (P.G. 212-38)*
*Unlawful Evictions (P.G. 214-12)*
*Aided Cases - General Procedure (P.G. 216-01)*
*Mental Health Removal Orders (P.G. 216-06)*

**FORMS AND REPORTS**

*ACTIVITY LOG (PD112-145)*
*AIDED REPORT WORKSHEET (PD304-152b)*
*NON-LETHAL RESTRAINING DEVICE/RESCUE EQUIPMENT REPORT (PD320-150)*
*TASER/STUN DEVICE REPORT (PD304-150)*
*UNUSUAL OCCURRENCE REPORT (PD370-152)*
*Mobile Crisis Outreach Team Authorization for Transport (OMH 482)*

NEW • YORK • CITY • POLICE • DEPARTMENT



REVOKED   Outreach Teams

AUTH PGIRN 07-09

DATE 8.3.07

# INTERIM ORDER

## MOBILE CRISIS OUTREACH TEAMS AND ASSERTIVE COMMUNITY TREATMENT TEAMS

| 09-12-05 | **P.G. 216 SERIES, 216-05 | 35 |
|---|---|---|

1.      The Department of Health and Mental Hygiene trains and officially qualifies individual mental health workers to utilize Sections 9.37 and 9.58 of the New York State Mental Hygiene Law. Under these provisions, qualified professionals can evaluate a person believed to be in acute psychiatric distress and, with police assistance, order his/her involuntary transport to an emergency room if that person is believed to be in imminent danger to self or others. The professionals who possess this qualification, or "designation," work in two clinical settings (with rare exceptions): Mental Health Mobile Crisis Outreach Teams and Assertive Community Treatment Teams.

2.      In order to outline the duties of uniformed members of the service directed to assist, on scene, designated physicians or qualified mental health professionals assigned to Mobile Crisis Outreach Teams or Assertive Community Treatment Teams, the following procedure has been established:

**PURPOSE**      To safeguard and remove mentally ill or emotionally disturbed persons at the direction of Mobile Crisis Outreach or Assertive Community Treatment Teams pursuant to Sections 9.37 and 9.58 of the New York State Mental Hygiene Law.

**DEFINITIONS**      MOBILE CRISIS OUTREACH TEAMS-   These teams are independently operated by local hospitals or community-based mental health organizations, are usually funded by the Department of Health and Mental Hygiene, and may sometimes be attached to New York State licensed "comprehensive emergency programs." Their goal is to assess, stabilize and rapidly refer patients to longer-term providers.

ASSERTIVE COMMUNITY TREATMENT TEAMS (ACT)-   Similar to Mobile Crisis Outreach Teams, but are "hospitals on wheels," more richly staffed by mental health workers and charged with providing a wide range of ongoing services.   ACT teams sometimes need to order involuntary transport of their patients to hospital emergency rooms. They receive contract funding from the Department of Health and Mental Hygiene and are licensed by the New York State Office of Mental Health.

QUALIFIED MENTAL HEALTH PROFESSIONAL (QMHP) are members of a Mobile Crisis Outreach or Assertive Community Treatment Team who are licensed psychologists, certified social workers or registered professional nurses.

**PROCEDURE**      When directed to assist, on scene, designated physicians or qualified mental health professionals assigned to Mobile Crisis Outreach Teams or Assertive Community Outreach Teams, uniformed members of the service will:

PG000679

REVOKED
AUTH PG RN 6-2-04
DATE

| | | |
|---|---|---|
| **UNIFORMED MEMBER OF THE SERVICE** | 1. | Comply with provisions of *Mentally Ill or Emotionally Disturbed Persons.* |
| | 2. | Examine the Department of Health and Mental Hygiene photo identification card of the physician or qualified mental health professional on scene. |
| | | a. Record pertinent information in **ACTIVITY LOG (PD112-145)**, including the identity of the physician or qualified mental health professional ordering the removal, and the length of time the aided was in police custody. |
| | 3. | Prepare **AIDED REPORT WORKSHEET (PD304-152b)**. |
| | | a. Attach **Form OMH 475 (Application for Involuntary Admission on Certificate of a Director of Community Services or Designee) OR Form OMH 482 (Mobile Crisis Outreach Team Authorization for Transport)** to the **AIDED REPORT WORKSHEET**. |

*ADDITIONAL DATA*

*Designated physicians authorizing a removal must prepare **Form OMH 475 (Application for Involuntary Admission on Certificate of a Director of Community Services or Designee)** prior to directing the involuntary transport of an individual. Other qualified mental health professionals assigned to Mobile Crisis Outreach Teams / Assertive Community Treatment Teams must prepare **Form OMH 482 (Mobile Crisis Outreach Team Authorization for Transport)** prior to directing the involuntary transport of an individual. In either case, a copy of the required form must be provided to responding officers for attachment to the AIDED REPORT WORKSHEET.*

*A uniformed member of the service will assist in the transportation of the patient to the hospital and ride in the body of the ambulance with the patient. A uniformed member will remain with the patient until he/she is examined and is either released or admitted at the psychiatric emergency room.*

*Mobile Crisis Outreach or Assertive Community Treatment Teams ordering the removal of a mentally ill person will safeguard all personal property (other than contraband) removed from the patient.*

*RELATED PROCEDURES*

*Unusual Occurrence Reports (P.G. 212-09)*
*Hostage/Barricaded Persons (P.G. 212-38)*
*Aided Cases - General Procedure (P.G. 216-01)*
*Mentally Ill or Emotionally Disturbed Persons (P.G. 216-05)*
*Mental Health Removal Orders (P.G. 216-06)*

*FORMS AND REPORTS*

*ACTIVITY LOG (PD112-145)*
*AIDED REPORT WORKSHEET (PD304-152b)*
*NON-LETHAL RESTRAINING DEVICE/RESCUE EQUIPMENT REPORT (PD 320-152)*
*Form OMH 475 (Application for Involuntary Admission on Certificate of a Director of Community Services or Designee)*
*Form OMH 482 (Mobile Crisis Outreach Team Authorization for Transport)*

INTERIM ORDER NO. 35

PG000680

3.    Additionally, Patrol Guide 216-05, "Mentally Ill or Emotionally Disturbed Persons" is amended as follows:

a.    **DELETE** subtitle "NYC DEPARTMENT OF MENTAL HEALTH, MENTAL RETARDATION AND ALCOHOLISM SERVICES MOBILE CRISIS OUTREACH TEAMS" and following two paragraphs opposite "ADDITIONAL DATA" on page "5".

4.    Any provisions of the Department Manual or other Department directive in conflict with the contents of this order are suspended.

**BY DIRECTION OF THE POLICE COMMISSIONER**

**DISTRIBUTION**
**All Commands**

INTERIM ORDER NO. 35

PG000681



| DATE ISSUED | SUBJECT | | NUMBER |
|---|---|---|---|
| 05-04-05 | **P.G. 212 SERIES, P.G. 210-07, P.G. 219-01 AND P.G. 216-05** | | 38 |

1.      Conducted Energy Devices (CED), commonly known as the Taser, have been used by members of this Department since 1984 and have been an effective way of subduing aggressive suspects and emotionally disturbed persons in a safe manner.

2.      Members of the service are reminded that Patrol Guide 203-11, "Use of Force" discusses the Department's policy on the use of force. When a situation calls for the use of force by a member of the service, it should be noted that the application of force must be consistent with existing law and with New York City Police Department values, by which we pledge to value human life and respect the dignity of each individual. Only that amount of force necessary to overcome resistance will be used to effect an arrest or to take a mentally ill or emotionally disturbed person into custody. Members will adhere to the Department's policy on the use of force whenever less lethal devices such as the CED are used in the field

3.      A CED should only be used against persons who are actively physically resisting, exhibiting active physical aggression, or to prevent individuals from physically injuring themselves or other person(s) actually present. Prior to using the CED a member of the service should consider the totality of the circumstances when deciding the *minimum* amount of force necessary to overcome resistance when effecting an arrest or when taking mentally ill or an emotionally disturbed person into custody. Factors to consider include, but are not limited to:

     a.      officer/subject size disparity
     b.      officer/subject strength disparity
     c.      officer/subject age disparity
     d.      officer's perception of the subject's willingness to resist
     e.      officer's perception of the immediate threat to the subject, members of the service and bystanders
     f.      suspect's violent history, if known
     g.      officer's location is a hostile environment
     h.      officer's perception of the subject being under the influence of a stimulant/narcotic which would effect pain tolerance and violence.

4.      Additionally, in an effort to properly document the actions taken at the scene of an incident at which a CED or other less lethal devices or rescue equipment has been deployed, a new Department form (entitled) TASER and/or IMPACT/WEAPON USE IMPACT (PD329-151) has been distributed. This new form (replaces the TASER USE REPORT (PD)(350) and NON-LETHAL/LESS LETHAL DEVICE OR EQUIPMENT REPORT (PD)(350-151).

5.      Therefore, effective with the publication of this Order, members of the service authorized to carry and/or utilize the use of a Conducted Energy Device (CED), will comply with the following procedure:

PG000682

**PURPOSE**   To inform members of the service of circumstances under which a Conducted Energy Device (CED) may be intentionally used and to record instances when a Conducted Energy Device has been used. CEDs will only be used by authorized uniformed members of the service. Additionally, all patrol supervisors and platoon commanders performing patrol duty assigned to the Patrol Services, Housing and Transit Bureaus will be <u>required</u> to carry a CED in a Department issued holster as authorized.

**SCOPE**   A Conducted Energy Device (CED) can be an effective means of subduing suspects and emotionally disturbed persons (EDP's) in a safe manner. A CED is classified as a less lethal device and is intended to augment and provide a greater margin of safety for officers who might otherwise be forced to physically subdue a dangerous subject. The use of a CED is within the range of use of less lethal devices such as pepper spray or a baton on the force continuum due to its effectiveness at a distance and at close range.

A CED should only be used against persons who are actively physically resisting, exhibiting active physical aggression, or to prevent individuals from physically injuring themselves or other person(s) actually present. In many cases, a CED will reduce or eliminate the need for deadly physical force. It will often reduce the potential for injuries to members and suspects that may result from physical restraint and should be regarded as a possible alternative to such force and restraint, where practical. It is prohibited to use a CED in situations that do not require the use of physical force.

**DEFINITIONS**   <u>CONDUCTED ENERGY DEVICE (CED)</u> - a device primarily designed to disrupt a subject's central nervous system by means of using electrical energy sufficient to cause uncontrolled muscle contractions and override an individual's motor responses.

ACTIVATE (ACTIVATION) - To cause the CED to arm by releasing the safety, thereby causing the CED laser sight to operate.

CARTRIDGE - a replaceable cartridge which discharges two darts on connecting wires sending a high voltage/low current signal into a subject.

<u>DARTS</u> – probes that are discharged from a CED and are designed to penetrate the skin; wires are attached to the probes leading back to the CED.

DISCHARGE - To activate a CED, depress the trigger and cause an electric current to flow. Discharge will result in arcing (no cartridge is present) or darts being fired (cartridge is present).

TOUCH STUN - To use the CED and discharge the device in a manner such that the hand-held unit makes direct contact with an intended subject's body. Touch stun mode should only be used in exceptional circumstances and <u>not</u> as a <u>primary method</u> of use. Therefore, when touch stun mode is used, an investigation will be conducted by the commanding officer/duty captain to determine if the CED was properly used.

PG000683

| | |
|---|---|
| UNIFORMS (continue 3) | AUTHORIZED UNIFORMED MEMBER OF THE SERVICE - A uniformed member of the service who has received authorized Department training in the use of the CED. |

INVESTIGATING SUPERVISOR - As used in this procedure will be as follows:

a.  The next highest ranking supervisor in the chain of command of the member who discharged the CED.

b.  The commanding officer/duty captain for instances of touch stun incidents, when CED is used on a person in police custody or an accidental discharge of a CED has occurred resulting in an injury to any person.

**NOTE**

*If the investigating supervisor is from a command other than Patrol Services Bureau, Housing Bureau or Transit Bureau and is not available, the investigating supervisor will be the next higher ranking supervisor from the Patrol Services Bureau (e.g., If a sergeant assigned to a Highway Unit discharges a CED and a lieutenant is unavailable from that Unit to investigate the discharge, a PSB lieutenant or duty captain will conduct the investigation.)*

**PROCEDURE**

To provide for control, accountability, issuance, use and investigation of the use of Conducted Energy Devices (CEDs):

**COMMANDING OFFICER**

1.  Designate a secure area under the control of the desk officer or appropriate supervisor for the storage of CEDs and cartridges.

2.  Ensure availability, operability, and distribution of CEDs assigned to the command on all tours.

3.  Ensure that all supervisors performing patrol duties in the command are trained in the use of CEDs.

a.  ONLY authorized uniformed members of the service will be assigned to carry CEDs.

**NOTE**

*When requesting a replacement or loaner of a CED, replacement of batteries, chargers, or holsters, commanding officers are required to prepare and deliver a **Typed Letterhead** with item(s) needing replacement, to the Commanding Officer, Firearms and Tactics Section.*

*When requesting replacement cartridges, commanding officers shall prepare and deliver a Typed Letterhead to the Commanding Officer, Firearms and Tactics Section and shall attach a copy of the related **LESS LETHAL/RESCUE EQUIPMENT USE REPORT** (PD 120-151).*

| | |
|---|---|
| DESK OFFICER and/or UNIT SUPERVISOR | 4. Account for all CEDs and cartridges assigned to the command at the commencement of each tour. |

a.  Make a Command Log entry. Include serial numbers.

b.  Commands that do not maintain a Command Log will account for CEDs and cartridges in an appropriate Department log.

5.  Assign CEDs to authorized uniformed members of the service and complete the following:

PG000684

| | | |
|---|---|---|
| **DESK OFFICER/<br>UNIT<br>SUPERVISOR**<br>(continued) | a.<br>b. | At least one (1) operable CED must be assigned to a patrol supervisor and/or platoon commander performing patrol duty at all times.<br>One (1) operable CED must be maintained at the desk. |

*NOTE*    *If available, additional CEDs may be assigned to other authorized uniformed members of the service throughout the tour as determined by the commanding officer.*

6. Indicate rank, name, shield number/tax number, as applicable, of assigned member(s) in the Command Log.
   a. Make entry on roll call, identifying member(s) assigned a CED for tour.
   b. Place notation "CED" next to the name of member(s) assigned a CED.
7. Ensure CEDs, <u>without cartridge attached</u>, are connected to charger, if appropriate, while unassigned.
8. Notify commanding officer when CED is inoperable.

**AUTHORIZED<br>UNIFORMED<br>MEMBER OF THE<br>SERVICE/<br>PATROL<br>SUPERVISOR/<br>PLATOON<br>COMMANDER**

9. Carry CED only when trained by the Firearms and Tactics Section.
   a. CED must be carried on the non-shooting side, in a Department approved holster, attached to gunbelt, and secured to person.
   b. Emergency Services Unit and uniformed personnel, performing duty in civilian attire, will carry CED in a holster approved by Commanding Officer, Firearms and Tactics Section and Commanding Officer, Special Operations Division, as appropriate.

*NOTE*    *Only conducted energy devices authorized by the Commanding Officer, Firearms and Tactics Section will be carried by members of the service. Carrying or use of any other unauthorized conducted energy device may result in disciplinary action.*

10. Inspect CED to ensure operability.
    a. Point CED in safe direction
    b. Remove cartridge from CED
    c. Release the safety (place safety in "off" position)
    d. Ensure the laser is visible *and* that the battery status light indicates device is energized
    e. Conduct spark test
    f. Replace battery if either laser is not visible, battery status light does not operate or if spark test results confirm a weak battery
    g. Re-inspect CED unit after battery pack is replaced
    h. Engage safety
    i. Attach cartridge to CED.

*NOTE*    *Cartridges must be removed and secured away from the CED prior to conducting an inspection. Accidental discharges resulting in injuries may occur if a cartridge is left attached to the CED while conducting an inspection.*

*Members are reminded that each discharge is registered on the CED's internal memory that records the date and time of each discharge. Therefore, whenever a CED is discharged (including a spark test to ensure operability or an accidental discharge), such discharge must be recorded in the member's ACTIVITY LOG (PD112-145), INVESTIGATOR'S DAILY ACTIVITY REPORT (PD439-159), Command Log or other appropriate Department record.*

INTERIM ORDER No. 29

PG000685

AUTHORIZED
UNIFORMED
MEMBER OF THE
SERVICE:
PATROL
SUPERVISOR
PLATOON
COMMANDER

- ... to desk officer/supervisor if the CED does not operate ... adequately if ... ... ... a placement, is inoperable, or requires repair/replacement
- ... ACTIVITY LOG entry and include:
  a.    Results of inspection
  b.    Serial number of CED
  c.    Name of desk officer/supervisor notified if CED is inoperable.
15.    Return CED to desk officer upon completion of tour.

## USE OF CONDUCTED ENERGY DEVICE (CED)

AUTHORIZED
UNIFORMED
MEMBER OF THE
SERVICE:
PATROL
SUPERVISOR
PLATOON
COMMANDER

12.    Assess situation and determine if the use of a CED would be appropriate.
13.    Consider the totality of the circumstances when deciding the minimum amount of force necessary to overcome resistance when effecting an arrest or when taking mentally ill or an emotionally disturbed person into custody. Some factors to consider when determining the appropriate use of force include but are not limited to:
  a.    officer/subject size disparity
  b.    officer/subject strength disparity
  c.    officer/subject age disparity
  d.    officer's perception of the subject's willingness to resist
  e.    officer's perception of the immediate threat to the subject, members of the service and bystanders
  f.    suspect's violent history, if known
  g.    officer's location is a hostile environment
  h.    officer's perception of the subject being under the influence of a stimulant/narcotic which would effect pain tolerance and violence.

NOTE    *CEDs should only be used against persons who are actively physically resisting, exhibiting active physical aggression or to prevent individuals from physically injuring themselves or other person(s) actually present. Members of the service are reminded of the availability of Emergency Service Unit.*

*Step 16*
*Revised*
*As per I.O.*
*20-1, s.08*

14.    Issue an appropriate warning, consistent with personal safety, to the intended subject and other members of the service present prior to discharging the CED.

NOTE    *Discharge CED at the subject's back if possible. Avoid discharging the CED at an individual's head, neck, face, and groin, if possible.*

*... of not discharge two (2) CED's simultaneously on a subject.*

*When a CED is used against a subject it shall be for one (1) standard discharge cycle of ... and the member using the CED must then reassess the situation. Only the minimum ... ... is necessary to place the subject in custody shall be used. In no ... shall more than three (3) standard discharge cycles be used against any subject. Officers are reminded of other appropriate force options should the CED fail*

INTERIM ORDER NO.  28

PG000686

| | |
|---|---|
| NOTE (continued) | It is *strictly prohibited* to use the CED on persons as a form of coercion or punishment and on persons who passively resist (e.g., going limp, offering no active physical resistance).

When possible, the CED should not be used on children, the elderly, obviously pregnant females, the frail, against subjects operating or riding on any moving device or vehicle (e.g., motorists, bicyclists, skateboarders) where the subject may fall while it is in motion or in situations where the subject may fall from an elevated surface.

The CED should not be used when combustible gases or flammable liquids are present. |

| | | |
|---|---|---|
| **AUTHORIZED UNIFORMED MEMBER OF THE SERVICE/ PATROL SUPERVISOR/ PLATOON COMMANDER** | 17. | Restrain individual, and secure CED. |
| | a. | Effect arrest of criminal suspect against whom CED was used. |
| | b. | Comply with *P.G. 210-13, "Release of Prisoner – General Procedure"* if arrested person did not commit the crime or no crime was committed. |
| | c. | Comply with *P.G. 216-05, "Mentally Ill or Emotionally Disturbed Persons,"* when appropriate. |
| | 18. | Request response of FDNY Emergency Medical Service (EMS), if person received a CED discharge. |
| | a. | Any person who has been struck by a CED dart or who has had a CED used on him or her in touch stun mode must be examined at a medical facility. |
| | 19. | Render reasonable aid as necessary. |
| | 20. | Break the CED wire by hand approximately four (4) to six (6) inches from the dart, taking into account the circumstances including the status of the subject. |
| | a. | Any dart that has penetrated the skin of any person will <u>only</u> be removed by medical personnel. |
| | 21. | Safeguard CED cartridge. |

| | |
|---|---|
| NOTE | If a CED was discharged and the darts did not make <u>any</u> contact with the subject (e.g., skin, clothing, etc.), the wire connecting the dart to the cartridge may be broken by hand. The dart portion shall be disposed of in a "sharps" container and the spent cartridge may be disposed of in the trash and not vouchered. An investigation will still be conducted by the investigating supervisor regarding the use of the CED.

Spent CED cartridges used by Emergency Service Unit personnel will be safeguarded and vouchered, when appropriate, by the command of record for the subject on whom the CED was used. |

| | | |
|---|---|---|
| **DESK OFFICER/ PATROL SUPERVISOR/ PLATOON COMMANDER/ UNIT SUPERVISOR** | 22. | Request response of investigating supervisor. |
| | 23. | Identify witnesses and record names in ACTIVITY LOG, INVESTIGATOR'S DAILY ACTIVITY REPORT or Command Log as appropriate. |
| | 24. | Assign member of the service to ride in body of ambulance with prisoner or aided. |
| | 25. | Direct member of the service to take photographs of points of contact on subject's body resulting from CED darts or touch stun. |

INTERIM ORDER NO. 20

6 of 10

PG000687

| | | |
|---|---|---|
| ASSIGNED UNIFORMED MEMBER OF THE SERVICE | 26. | Inform hospital staff that a CED has been used on the individual. |
| | | a.  Record name of person notified in **ACTIVITY LOG.** |
| | 27. | Photograph points of contact on subject's body resulting from CED darts or touch stun. |
| | | a.  Photos should be taken in a manner to maintain the subject's privacy, when appropriate (e.g., behind curtain, private room, etc.) |
| | 28. | Prepare **ON LINE BOOKING SYSTEM ARREST WORKSHEET (PD244-150)** and **MEDICAL TREATMENT OF PRISONER (PD 244-150)** in arrest situations |
| | 29. | Complete **AIDED REPORT WORKSHEET (PD304-152b)** in non-arrest situations. |
| | 30. | Prepare **PROPERTY CLERK'S INVOICE WORKSHEET (PD521-141a).** |
| | | a.  Cartridge used will be placed in a Plastic Security Envelope and delivered to desk officer, include photographs, when applicable. |
| | | b.  Ensure **PROPERTY CLERK'S INVOICE** number is documented in appropriate Department forms prepared. |

*NOTE*    *Darts will not be vouchered but should be disposed of in a "sharps" container by medical personnel. Members of the service should refrain from handling a dart that has been removed from a subject.*

| | | |
|---|---|---|
| INVESTIGATING SUPERVISOR | 31. | Conduct investigation regarding use of CED. |
| | 32. | Notify Firearms and Tactics Section: |
| | | a.  Obtain "FTS CED Log Number" |
| | | b.  Enter "FTS CED Log Number" and name of person notified in Telephone Record. |
| | 33. | Prepare **LESS LETHAL/RESCUE EQUIPMENT USE REPORT.** |
| | | a.  Prepare **REPORT** when probes are discharged regardless of whether probes made contact with subject. |
| | | b.  Enter "FTS CED Log Number" on **REPORT** |
| | | c.  Deliver **REPORT** to commanding officer. |
| | 34. | Deliver copies of other reports prepared in connection with CED usage to commanding officer. |
| COMMANDING OFFICER/ DUTY CAPTAIN | 35. | Conduct investigation when required to act as investigating supervisor. |
| | 36. | Prepare a **Typed Letterhead** with results of investigation and include recommendations (e.g., recommend disciplinary action, retraining, use was within guidelines, etc.) when: |
| | | a.  CED is used in touch stun mode only |
| | | b.  Used on a person in police custody |
| | | c.  Accidental discharge of a CED has resulted in an injury to any person. |
| | 37. | Attach copy of Typed Letterhead, if prepared, to the completed **LESS LETHAL/RESCUE EQUIPMENT USE REPORT** |
| | 38. | Distribute copies of **Typed Letterhead**, when prepared, and attached **LESS LETHAL/RESCUE EQUIPMENT USE REPORT** to the following: |

INTERIM ORDER NO. 29

PG000688

| | | |
|---|---|---|
| COMMANDING OFFICER/ DUTY CAPTAIN (continued) | a. | Chief of Department (THROUGH CHANNELS) |
| | b. | Chief, Internal Affairs Bureau |
| | c. | Bureau Chief concerned |
| | d. | Commanding Officer, Firearm and Tactics Section (DIRECT) |
| | e. | Commanding Officer concerned |

| | | |
|---|---|---|
| COMMANDING OFFICER, FIREARMS AND TACTICS SECTION | 39. | Maintain a log /database for CED usage. |
| | 40. | Maintain copies of **LESS LETHAL/RESCUE EQUIPMENT USE REPORTS** in a binder and input data into database. |
| | 41. | Maintain a database of information regarding **LESS LETHAL/RESCUE EQUIPMENT USE REPORTS**. |
| | 42. | Compile data regarding use and effectiveness of CEDs used by members of the Department. |
| | 43. | Compile a list of CED usage on a monthly basis and forward to the Chief of Department. |
| | 44. | Incorporate relevant information into tactical training. |

| | | |
|---|---|---|
| COMMANDING OFFICER, INVESTIGATION REVIEW SECTION | 45. | Review adequacy of investigations and appropriateness of CED usage. |

| | |
|---|---|
| ADDITIONAL DATA | *If a CED has been seized for investigative purposes, it is the responsibility of the investigative unit to ensure a notification is made to the Commanding Officer, Firearms and Tactics Section. Commands which have had a CED seized for investigative purposes will be responsible for retrieving the CED upon the conclusion of the investigation.* |

| | |
|---|---|
| RELATED PROCEDURES | *Prisoners Requiring Medical/Psychiatric Treatment (P.G. 210-04)* |
| | *Release of Prisoner – General procedure (P.G. 210-13)* |
| | *Aided Cases General Procedure (P.G. 216-01)* |
| | *Mentally Ill or Emotionally Disturbed Persons (P.G. 216-05)* |
| | *Invoicing Property – General Procedure (P.G. 218-01)* |
| | *Required Equipment (P.G. 204-09)* |
| | *Use of Force (P.G. 203-11)* |
| | *Deadly Physical Force (P.G. 203-12)* |

| | |
|---|---|
| FORMS AND REPORTS | **PROPERTY CLERK'S INVOICE WORKSHEET (PD521-141A)** |
| | **AIDED REPORT WORKSHEET (PD 304-152B)** |
| | **LESS LETHAL/RESCUE EQUIPMENT USE REPORT (PD 320-151)** |
| | **ON-LINE BOOKING SYSTEM ARREST WORKSHEET (PD 255-159)** |
| | **MEDICAL TREATMENT OF PRISONER (PD 244-159)** |
| | **ACTIVITY LOG (PD112-145)** |
| | **INVESTIGATOR'S DAILY ACTIVITY REPORT (PD439-156)** |
| | *Typed Letterhead* |

INTERIM ORDER NO. 20

PG000689

6.    Accordingly, Patrol Guide 210-07, "Prisoners – Unusual Occurrence" is amended as follows:

    a.    **ADD** new subdivision "**f**", opposite "DEFINITION", on page "**1**" to read:

| "DEFINITION | f. | Is subdued with a Conducted Energy Device." |

    b.    **ADD** new subdivision "**h**", opposite actor "COMMANDING OFFICER OR DUTY CAPTAIN", on page "**1**" to read:

| "COMMANDING OFFICER OR DUTY CAPTAIN | h. | Commanding Officer, Firearms and Tactics Section, if a Conducted Energy Device was used to contain/restrain a prisoner." |

7.    Patrol Guide 219-01, "Inspection of Department Vehicles Each Tour By Operator" is amended as follows:

*APPLICABLE PORTION pertaining to PG 219-01 REVOKED AS Per I.O. 5(10) 3/8/10*

    a.    **DELETE** subdivisions "**f through i**", opposite "NOTE", on page "**2**".

    b.    **REVISE** current subdivisions "**j and k**", opposite "NOTE", on page "**2**" to read:

        "**f and g**"

    c.    **REVISE** new subdivision "**g**", opposite "NOTE", on page "**2**" to read:

        "g.    *Three (3) foot polycarbonate shield*"

    d.    **REVISE** step "**2**" subdivision "**l**", opposite "VEHICLE OPERATOR", on page "**1**" to read:

        "l.    *Three (3) foot polycarbonate shield*"

8.    In addition, Patrol Guide 216-05, "Mentally Ill and Emotionally Disturbed Persons" is amended as follows:

    a.    **REVISE** step "**24**", opposite "COMMANDING OFFICER/DUTY CAPTAIN", on page "**3**" to read:

| "COMMANDING OFFICER/DUTY CAPTAIN | 24. | Direct use of alternate means of restraint, if appropriate, according to circumstances." |

INTERIM ORDER No. 20

PG000690

*8.* *REVISE the "ADDITIONAL DATA" statement under subheading "TASK OF NON-LETHAL DEVICE TO ASSIST IN RESTRAINING EMOTIONALLY DISTURBED PERSONS" (on page "5") to read:*

*"ADDITIONAL DATA*   *Authorized uniformed members of the service may use a conducted energy device (CED) to assist in restraining emotionally disturbed persons, if necessary.*

*Emergency Service Unit personnel will obtain the permission of the Emergency Service Unit supervisor prior to utilizing a CED, except in emergencies.*

*Authorized members of the service will be guided by Interim Order 20, series 2008, "Use of Conducted Energy Devices (CED), when a CED has been utilized.*

*LESS LETHAL/RESCUE EQUIPMENT USE REPORT (PD 320-151) will be prepared whenever a less lethal restraining device or rescue equipment is used by a uniformed member of the service in the performance of duty.*

*The Commanding Officer, Investigation Review Section, will collate statistical information recorded on the REPORTS, and will forward a monthly report to the Office of the Chief of Department by the seventh (7th) business day of each month."*

9.    Effective immediately, commands will discontinue using Department form **TASER USE REPORT (PD304-150)** and the **NON-LETHAL RESTRAINING DEVICE / RESCUE EQUIPMENT USE REPORT (PD320-150)** and use <u>NEW</u> Department form **LESS LETHAL/RESCUE EQUIPMENT USE REPORT (PD320-151)**.

10.    Wherever the form **"TASER USE REPORT (PD304-150)"** and the **"NON-LETHAL RESTRAINING DEVICE / RESCUE EQUIPMENT USE REPORT (PD320-150)"** appears in the Department Manual or other Department directives, <u>REPLACE</u> it with **"LESS LETHAL/RESCUE EQUIPMENT USE REPORT (PD320-151)"**.

11.    Commands will immediately requisition the below listed form through the Quartermaster Section using the following information:

| <u>INDEX NUMBER</u> | <u>PD NUMBER</u> | <u>TITLE</u> |
|---|---|---|
| 2214 | PD320-151 | LESS LETHAL/RESCUE EQUIPMENT USE REPORT |

12.    Any provisions of the Department Manual or any other Department directive in conflict with the contents of this order are suspended.

BY DIRECTION OF THE POLICE COMMISSIONER

DISTRIBUTION
All Commands

INTERIM ORDER NO. 20

PG000691