10-CV-6005 (RWS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADRIAN SCHOOLCRAFT,

Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

Defendants.

**CITY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION *IN LIMINE***

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Alan Scheiner*
*Tel: (212) 356-2344*
*Cheryl Shammas*
*Tel: (212) 356-2406*
*Kavin Thadani*
*Tel: (212) 356-2351*
*Matter #: 2010-033074*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... iv

ARGUMENT

POINT I

EVIDENCE RELATED TO PLAINTIFF'S PRIOR
INTERNAL COMPLAINTS ABOUT POLICE
MISCONDUCT SHOULD BE PRECLUDED ........................................ 1

A.  Plaintiff's Allegations of Prior Police
Misconduct and Other Prior Statements
Constitute Inadmissible Hearsay. ......................................... 2

B.  Plaintiff Should Be Precluded From Testifying
About the Existence of a "Quota" System or
Any Purported False Arrests in the 81st
Precinct Because He Has Admitted that He
Lacks Personal Knowledge of Those Subjects. .................................. 4

C.  Evidence Relating to the Truth of Plaintiff's
Allegations of Prior Police Misconduct Should
be Precluded.................................................................. 7

D.  Evidence Related to Plaintiff's Prior
Allegations of Police Misconduct Should Be
Precluded Even Though the Municipal Liability
Issues Are Not Bifurcated.................................................. 9

POINT II

PLAINTIFF SHOULD BE PRECLUDED FROM
OFFERING EVIDENCE OF ECONOMIC
DAMAGES............................................................................ 12

POINT III

PLAINTIFF SHOULD BE COMPELLED TO
MAKE LARRY SCHOOLCRAFT AVAILABLE
TO TESTIFY AT TRIAL .......................................................... 16

**Page**

POINT IV

    PLAINTIFF SHOULD BE PRECLUDED FROM
    SEEKING DECLARATORY RELIEF AT TRIAL ................................. 17

POINT V

    PLAINTIFF SHOULD BE PRECLUDED FROM
    OFFERING EVIDENCE OF OTHER
    INSTANCES OF ALLEGED RETALIATION BY
    THE NYPD AGAINST OTHER OFFICERS ......................................... 20

    A.  Evidence of Alleged Conditions at Precincts
        Other than the 81st Precinct ...................................................... 20

    B.  Evidence of Conditions at the 81st Precinct ....................................... 21

    C.  Joseph Ferrara Lacks Personal Knowledge ....................................... 23

    D.  The Purported Evidence of Specific Instances
        of Retaliation are Insufficient to Establish a
        Custom and Practice ........................................................ 25

POINT VI

    PLAINTIFF SHOULD BE PRECLUDED FROM
    INQUIRING INTO OR OFFERING EVIDENCE
    REGARDING ANY DISCIPLINARY HISTORY
    OR LAWSUITS AGAINST THE DEFENDANTS
    AND ANY QAD OR IAB REPORTS ...................................................... 28

    A.  Disciplinary Histories and Lawsuits ................................................. 28

    B.  Defendant Marino ........................................................................... 32

    C.  Defendant Mauriello ....................................................................... 33

    D.  Defendant Hanlon ........................................................................... 34

    E.  Broschart ........................................................................................ 34

    F.  The QAD and IAB Reports Constitute
        Inadmissible Hearsay .................................................................. 35

    G.  The danger of undue prejudice outweighs any
        probative value ............................................................................. 36

**Page**

    H.  The Mollen Commission Report Should be Excluded ........................................................................ 40

POINT VII

    PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING NEWSPAPER ARTICLES ......................................... 41

POINT VIII

    PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING EVIDENCE RELATING TO THE NYPD'S PRESENCE IN JOHNSTOWN ................................................. 42

POINT IX

    PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING ANY EVIDENCE THAT DEFENSE ATTORNEYS ARE ATTORNEYS FOR THE CITY AND THAT THE CITY MAY INDEMNIFY A DEFENDANT ....................................................................... 43

POINT X

    PLAINTIFF SHOULD BE PRECLUDED FROM REQUESTING A SPECIFIC DOLLAR AMOUNT FROM THE JURY. ................................................................ 45

POINT XI

    DEFENDANTS RESERVE THEIR RIGHT TO FILE SUPPLEMENTAL MOTIONS *IN LIMINE*. ................................. 46

CONCLUSION ...................................................................................... 47

# TABLE OF AUTHORITIES

**Cases**                                                                         **Pages**

*Beech Aircraft Corp. v. Rainey,*
   488 U.S. 153 (1988) .................................................................................... 36

*Berkovich v. Hicks,*
   922 F.2d 1018 (2d Cir. 1991) ................................................................. 29, 30

*Board of County Com'rs of Bryan County, Okl. v. Brown*,
   520 U.S. 397, 404 (1997)…………………………………………………………25

*Bright v. Firestone Tire & Rubber Co.,*
   756 F.2d 19 (6th Cir. 1984) ....................................................................... 37

*Chandler v. Roudebush,*
   425 U.S. 840, 96 S. Ct. 1949, 48 L. Ed. 2d 416 (1976) ............................. 35

*Chepilko v. City of New York,*
   2012 U.S. Dist. LEXIS 15110 (E.D.N.Y. Feb. 6, 2012) ............................ 27

*Chevron Corp. v. Donziger,*
   974 F. Supp. 2d 362, 701 n. 172 (S.D.N.Y. 2014) .................................... 16

*Chiste v. Travelocity.com, LP,*
   756 F. Supp. 2d 382 (S.D.N.Y. 2010) ................................................. 18, 19

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ...................................................................................... 19

*Consorti v. Armstrong World Industries, Inc.,*
   72 F.3d 1003 (2d Cir. 1995) ...................................................................... 46

*Cont'l Cas. Co. v. Coastal Sav. Bank,*
   977 F.2d 734 (2d Cir. 1992) ...................................................................... 18

*Contreras v. Artus,*
   778 F.3d 97 (2d Cir. 2015) ........................................................................ 23

*Cook v. Hatch Assocs.,*
   2007 U.S. Dist. LEXIS 31558 (W.D.N.Y. 2007) ......................... 37, 38, 39

*Curry v. City of Syracuse.,*
   316 F.3d 324 (2d Cir. 2003) ...................................................................... 27

*Deler v. Commodore Cruise Line,*
   1995 U.S. Dist. LEXIS 18341 (S.D.N.Y. Dec. 11, 1995) ......................... 17

**Cases**                                                                    **Pages**

*Design Strategy, Inc. v. Davis,*
    *469 F.3d 284 (2d Cir. 2006)* ................................................................ 14

*Delrosario v. City of New York,*
    2010 U.S. Dist. LEXIS 20923 (S.D.N.Y. 2010)…………………………………………………41

*Dettelis v. City of Buffalo,*
    3 F. Supp.2d 341 ................................................................................. 27

*Devenpeck v. Alford,*
    543 U.S. 146, 153 (2004)…………………………………………………………………22

*Dockery v. Tucker,*
    2006 U.S. Dist. LEXIS 97826 (E.D.N.Y. 2006)…………………………………………..42

*Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Ent't Corp.,*
    No. 08 Civ. 1558 (RMB)(THK),
    2009 U.S. Dist. LEXIS 21938 (S.D.N.Y. Mar. 2, 2009) ........................................ 18

*Edwards v. City of New York,*
    03-cv-9407, 2005 U.S. Dist. LEXIS 34376 (S.D.N.Y. Dec. 19, 2005) .................................. 27

*Edwards v. City of New York,*
    2011 U.S. Dist. LEXIS 75300 (E.D.N.Y. July 13, 2011)…………………………………………44

*Escobar v. City of New York,*
    766 F. Supp. 2d 415 (E.D.N.Y. 2011) ................................................................. 27

*Figueroa v. Boston Sci. Corp.,*
    00 Civ. 7922 (DC), 2003 U.S. Dist. LEXIS 10936 (S.D.N.Y. June 25, 2003) .......... 32, 34, 35

*Finigan v. Marshall*
    574 F.3d 57, 61-62 (2d Cir. 2009)…………………………………………………………..22

*Floyd v. City of New York,*
    959 F.Supp. 2d 540 (S.D.N.Y. 2013)................................................................. 20

*Gaw v. Comm'r,*
    1995 Tax Ct. Memo LEXIS 530, Nos. 17906-92, 18268-92 (T.C. Nov. 9, 1995) .................. 17

*Gianni Sport Ltd. v. Metallica,*
    No. 00 Civ. 0937 (MBM), 2000 U.S. Dist. LEXIS 17339 (S.D.N.Y. Dec. 4, 2000) ............. 19

*Green v. City of New York,*
    465 F.3d 65 (2d Cir. 2006)................................................................................. 27

**Cases**                                                                                                                      **Pages**

*Hall v. Western Prod. Co.,*
   988 F.2d 1050 (10th Cir. 1993) ........................................................................ 40

*Hancock v. City of New York, et al.,*
   10 Civ. 7989 (JMF), Motion *In Limine* Rulings,
   *at Docket Entry No. 53* (S.D.N.Y. Nov. 5, 2013) .............................................43-44

*Hardy v. Town of Greenwich,*
   629 F. Supp. 2d 192 (D. Conn. 2009)......................................................... 9, 22, 37

*Harty v. Simon Prop. Group, L.P.,*
   428 F. App'x 69 (2d Cir. 2011) ..................................................................... 19

*Holland v. City of Houston,*
   41 F. Supp. 2d 678 (S.D. Tex. 1999) ............................................................ 11

*Huddleston v. United States,*
   485 U.S. 681 (1988)..................................................................................... 28

*ICOS Vision Systems Corp., N.V. v. Scanner Techs. Corp.,*
   699 F. Supp. 2d 664 (S.D.N.Y. 2010)........................................................... 18

*Jackson v. City of New York,*
   No. 93 CV 174, unpublished order (E.D.N.Y. April 24, 1996)................................ 41

*Jean-Laurent v. Wilkinson,*
   05 Civ. 583, 2009 U.S. Dist. LEXIS 20472 (S.D.N.Y. Mar. 13, 2009) ........................... 30,44

*Jeffes v. Barnes,*
   208 F.3d 49 (2d Cir. 2000)........................................................................ 11

*John McShain v. Cessna Aircraft Co.,*
   563 F.2d 632 (3 Cir. 1977)......................................................................... 38

*Johnson v. Yellow Freight System, Inc.,*
   734 F.2d 1309 (8th Cir. Mo. 1984) ............................................................. 39

*LeRoy v. Sabena World Airlines,*
   344 F.2d 266 (2d Cir. 1965)....................................................................... 36

*Lewis v. City of Philadelphia,*
   No. 03-2310, 2004 U.S. Dist. LEXIS 23499 (E.D. Pa. Nov. 19, 2004) ...................... 4

*Lombardo v. Stone,*
   No. 99 Civ. 4603 (SAS) 2002 U.S. Dist. LEXIS 1267 (S.D.N.Y. Jan. 29, 2002)............ 29, 30

**Cases**                                                       **Pages**

*Mathie v. Fries,*
  121 F.3d 808 (2d Cir. 1997).............................................................................. 45

*Matthews v. City of New York,*
  957 F. Supp. 2d 442 (S.D.N.Y. July 29, 2013)..................................................... 20

*McAllister v. N.Y. City Police Dep't,*
  49 F. Supp. 2d 688, 706 n. 12 (S.D.N.Y.1999)……………………………………..41

*McGuire v. Bridgeport & Port Jefferson Steamboat Co.,*
  00 Civ. 5951 (WK), 2001 U.S. Dist. LEXIS 19753 (S.D.N.Y. Nov. 29, 2001)...................... 44

*Media Alliance, Inc. v. Mirch*,
  2012 U.S. Dist. LEXIS 6332 (N.D.N.Y Jan. 19, 2012)…….……………………………....41

*Mercado v. City of New York,*
  No. 08 Civ. 2855 (BSJ) (HP),
  2011 U.S. Dist. LEXIS 140430 (S.D.N.Y. Dec. 5, 2011) ...................................... 10

*Middle Market Fin. Corp. v. D'Orazio,*
  No. 96 Civ. 8138 (SWK)(HBP),
  2002 U.S. Dist. LEXIS 17817 (S.D.N.Y. Sept 23, 2002)................................... 14, 15

*Mikulec v. Town of Cheektowaga,*
  302 F.R.D. 25 (W.D.N.Y. 2014)......................................................................... 14

*Mileski v. Long Island R.R. Co.,*
  499 F.2d 1169 (2d Cir. 1974)............................................................................ 46

*Miller v. County of Nassau,*
  467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006)…………………………………………..25

*Monell v. Dep't of Soc. Servs,*
  436 U.S. 658 (1978)........................................................................................ 10

*Munafo v. Metro. Transp. Auth.*,
  Nos. 98 CV-4572 (ERK), 00-CV-0134 (ERK),
  2003 U.S. Dist. LEXIS 13495 (E.D.N.Y. Jan. 22, 2003) ................................... 7, 8, 9

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Int'l Wire Group, Inc.,*
  2003 U.S. Dist. LEXIS 9193 (S.D.N.Y. June 2, 2003)......................................... 19

*New York v. Pullman, Inc.,*
  *662 F.2d 910 (2d Cir. N.Y. 1981)* ..................................................................... *38*

**Cases**                                                                    **Pages**

*O'Brien v. City of Yonkers,*
   2013 U.S. Dist. LEXIS 43551, 11-12 (S.D.N.Y. 2013)……………………………………22

*Paolitto v. John Brown E. & C., Inc.,*
   151 F.3d 60 (2d Cir. 1998) .......................................................................... 35, 39

*Park W. Radiology v. CareCore Nat'l LLC,*
   675 F. Supp. 2d 314 (S.D.N.Y. 2009) ........................................................... 39

*People v. Mingey,*
   190 N.Y. 61 (1907) ....................................................................................... 23

*Provost v. Newburgh,*
   262 F.3d 146 (2d Cir. 2001) .......................................................................... 44

*In re REFCO Inc. Securities Litig.: Krys v. Aaron,*
   No. 07-md-1902 (JSR), No. 08-cv-7416,
   2010 U.S. Dist. LEXIS 142588 (S.D.N.Y. July 19, 2010) ..................... 18

*Richmond v. General Nutrition Ctrs., Inc.,*
   08 Civ. 3577 (PAE)(HBP),
   2012 U.S. Dist. LEXIS 32070 (S.D.N.Y. Mar. 9, 2012) ............................. 31-32, 34

*Rios v. Selsky,*
   32 A.D.3d 632, 819 N.Y.S.2d 622 (3d Dep't 2006) .............................. 23

*Shaw v. City of New York,*
   1997 U.S. Dist. LEXIS 4901 (S.D.N.Y. 1997)……………………………………………41

*Tieman v. City of Newburgh,*
   No. 13 Civ. 4178 (KMK), 2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. Mar. 26, 2015)………..25

*U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.,*
   Nos. 12 Civ 6811 (CM) (JCF); 13 Civ. 1580 (CM) (JCF),
   2013 U.S. Dist. LEXIS 143398 (S.D.N.Y. Oct. 3, 2013) ....................... 13

*United States v. Annabi,*
   No. S1 10 Cr. 7 (CM), 2012 U.S. Dist. LEXIS 19762 (S.D.N.Y. Feb. 14, 2012) ..................... 2

*United States v. Costello,*
   221 F.2d 668 (2 Cir. 1955),
   *aff'd*, 350 U.S. 359, 100 L. Ed. 397, 76 S. Ct. 406 (1956) ...................... 38

*United States v. Doherty,*
   786 F.2d 491 (2d Cir. 1986) ........................................................................ 18

**Cases**                                                                                                 **Pages**

*United States v. Fosher,*
    590 F.2d 381 (1st Cir. 1979)..................................................................................... 37, 38

*United States v. Lake,*
    150 F.3d 269 (3d Cir. 1998).......................................................................................... 4

*United States Football League v. National Football League,*
    1986 U.S. Dist. LEXIS 25390 (S.D.N.Y. 1986).………………………………………………42

*United States v. Robinson,*
    560 F.2d 507 (2 Cir. 1977),
    *cert. denied,* 435 U.S. 905, 55 L. Ed. 2d 496, 98 S. Ct. 1451 (1978) ...................................... 38

*United States v. Stone,*
    05 CR 401, 2007 WL 4410054 (E.D.N.Y. Dec. 14, 2007)..................................................... 31

*Van Ort v. Estate of Stanewich,*
    92 F.2d 831 (9th Cir. 1996) ........................................................................................ 11

*Varlesi v. Wayne State Univ.,*
    2012 U.S. Dist. LEXIS 162508, No. 10-14793 (E.D. Mich. Nov. 14, 2012)......................... 15

*Vippolis v. Village of Haverstraw,*
    768 F.2d 40 (2d Cir. 1985)......................................................................................... 10

*Walker v. City of New York,*
    *2015 U.S. Dist. LEXIS 91410, 16-17 (S.D.N.Y. July 14, 2015)* ................................................ 25

*West v. Bell Helicopter Textron, Inc.,*
    *967 F. Supp. 2d 479 (D.N.H. 2013)*.............................................................................. 14-15

*Williams v. City of New York*,
    No. 94 Civ. 6234, unpublished transcript at 85 (S.D.N.Y. Sept. 6, 1996)............................... 41

*Williams v. McCarthy,*
    05 Civ. 10230, 2007 U.S. Dist. LEXIS 79151 (S.D.N.Y. Oct. 25, 2007) ......................... 44-45

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995)................................................................................................ 18

**<u>Statutes</u>** **<u>Pages</u>**

42 U.S.C. § 1983 ................................................................................................ 10, 25, 27

Fed. R. Civ. P. 26(a) ......................................................................................... 12, 13, 14

Fed. R. Civ. P. 26(a)(2) .............................................................................................. 15

Fed. R. Civ. P. 26(a)(1)(A)(iii) ................................................................................. 12

Fed. R. Civ. P. 12(b)(6).............................................................................................. 34

Fed. R. Civ. P. 26(e) .................................................................................................. 13

Fed. R. Civ. P. 37(c)(1).............................................................................................. 14

Fed. R. Evid.105 .......................................................................................................... 3

Fed. R. Evid. 401 .................................................................................................... 8, 20

Fed. R. Evid. 401(a) ................................................................................................... 22

Fed. R. Evid. 402 .................................................................................................... 5, 9

Fed. R. Evid. 403 ................................................................................................. *passim*

Fed. R. Evid. 404 .................................................................................................. 30, 32

Fed. R. Evid. 404(b) ............................................................................................ *passim*

Fed. R. Evid. 411 .................................................................................................. 42, 44

Fed. R. Evid. 602 .................................................................................................... 4, 23

Fed. R. Evid. 608(b) ............................................................................................. 30, 31

Fed. R. Evid.701 .......................................................................................................... 4

Fed. R. Evid. 801(c) ..................................................................................................... 2

Fed .R. Evid. 803 ................................................................................................. *passim*

Fed. R. Evid. 804 ....................................................................................................... 17

## <u>Other Authorities</u>

5-801 Weinstein's Federal Evidence § 801.30 ................................................................................ 2

McCormick § 168; Annot., 4 A.L.R.2d 761……………………………………………… ............. 43

12 Moore's Federal Practice § 57.04(3) (3rd ed. 2004).................................................. 19

C. Wright and V. Gold, 27 Federal Practice and Procedure:  Evidence
§ 6023 (West 1990)........................................................................................................ 4

Weinstein and Berger, 1 Weinstein's Evidence P 403(04) (1980)……………………………38

The City defendants respectfully submit this Memorandum of Law in Support of their Motions *in Limine*.[1]

## ARGUMENT

### POINT I

### EVIDENCE RELATED TO PLAINTIFF'S PRIOR INTERNAL COMPLAINTS ABOUT POLICE MISCONDUCT SHOULD BE PRECLUDED

Plaintiff contends that his prior internal complaints about police misconduct provided the motivation for the defendants' actions and he has indicated that he plans to offer evidence at trial of the fact that he made certain allegations of police misconduct prior to October 31, 2009, and that such allegations were in fact true.  For example, in his pre-trial exhibit list, plaintiff includes numerous items, such as roll call audio recordings / transcripts,[2] documents pertaining to other, unrelated proceedings,[3] disciplinary investigation files, interviews, reports and decisions,[4] plaintiff's memo books,[5] plaintiff's recordings regarding his reporting,[6] and internal reports concerning plaintiff's allegations,[7] which either in whole or in part have no direct bearing on the incident at hand and instead relate solely to plaintiff's prior allegations of police misconduct.

---

[1] The City Defendants also join in the motions submitted by all co-defendants and hereby incorporate the arguments contained therein.

[2] *See, e.g.,* PTX 25, 34, 40, 84.

[3] *See, e.g.*, PTX 404, 410, 411.

[4] *See, e.g.*, PTX 18, 26, 33, 42, 64, 65, 66, 79, 81, 93, 402, 403, 408, 409, 421, 426, 427.

[5] *See, e.g.*, PTX 29, 30, 95.

[6] *See, e.g.*, PTX 306, 309.

[7] *See, e.g.*, PTX 4, 6, 13.

As an initial matter, plaintiff's prior specific allegations of police misconduct are relevant and admissible here only to the extent that plaintiff can establish that they were known by the individual defendants.  There is no evidence that the defendants were aware of any of plaintiff's internal complaints, except those he made directly to them.[8]  In addition, and as explained below, (i) plaintiff's allegations constitute inadmissible hearsay and (ii) plaintiff lacks sufficient personal knowledge to testify about the events underlying his allegations.  In any event, the truth of plaintiff's allegations are irrelevant to plaintiff's claims in this case.  Accordingly, evidence related to plaintiff's prior allegations of police misconduct should be precluded at trial.

A.    **Plaintiff's Allegations of Prior Police Misconduct and Other Prior Statements Constitute Inadmissible Hearsay.**

Plaintiff's prior allegations of police misconduct, are not admissible when offered by the plaintiff to prove the truth of his allegations.  *See* Federal Rule of Evidence 801(c) (defining hearsay as an out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted").  Hearsay is inadmissible absent an applicable exclusion or exception.  The party-opponent exclusion does not render plaintiff's out-of-court statements non-hearsay when offered by plaintiff.  *See, e.g.,* 5-801 Weinstein's Federal Evidence § 801.30 ("A party cannot use [the party-opponent exclusion] to offer his or her own statements into evidence."); *United States v. Annabi*, No. S1 10 Cr. 7 (CM), 2012 U.S. Dist. LEXIS 19762, at *3 (S.D.N.Y. Feb. 14, 2012).[9]

___

[8]  At most, plaintiff may proffer some evidence that a defendant was aware that plaintiff may have been involved in the QAD investigation.  This does not establish that they were aware of anything he said to QAD or IAB.

[9]  In addition, all recordings and records, including police records, which contain plaintiff's own statements and/or the statements of non-parties are hearsay if offered by the plaintiff absent an applicable exclusion or exception, whether or not they relate to plaintiff's prior allegations of police misconduct.

Plaintiff's out-of-court statements in this respect, therefore, could only be admissible if they are offered not for their truth but rather solely for the fact that the statements were made. Because the fact that plaintiff's prior allegations were made is not in dispute, it would be improper under Rule 403 to allow Schoolcraft to offer his own hearsay statements just to prove that he made them. The parties could readily stipulate that plaintiff made prior allegations of misconduct by his supervisors.[10]  Plaintiff's prior statements, if offered by plaintiff, are more prejudicial than probative, and are likely to lead to jury confusion, and should be excluded for that reason.

If the hearsay is admitted, an immediate limiting instruction is required. Pursuant to Federal Rule of Evidence 105, "[i]f the court admits evidence that is admissible . . . for a purpose – but not . . . for another purpose – the court, on timely request, ***must*** restrict the evidence to its proper scope and instruct the jury accordingly."  (emphasis added)  Thus, with respect to plaintiff's out-of-court statements concerning his prior allegations of police misconduct, the jury must be instructed at the time the evidence is offered that plaintiff's out-of-court statements, when offered by the plaintiff, may not be considered for the truth of the matter asserted within the statements. The jury should further be instructed that the mere fact that an allegation is made does not lend any credence to its truth or veracity.

Accordingly, evidence of plaintiff's prior allegations of police misconduct should be precluded or, if they are not precluded, subject to a limiting instruction.

---

[10]   Should the Court grant this motion, the City defendants will work with plaintiff to prepare an appropriate stipulation, subject to the Court's approval.

**B.   Plaintiff Should Be Precluded From Testifying About the Existence of a "Quota" System or Any Purported False Arrests in the 81st Precinct Because He Has Admitted that He Lacks Personal Knowledge of Those Subjects.**

Federal Rule of Evidence 602 ("Rule 602") provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  "Knowledge, as it is required by Rule 602, includes 'an awareness of objects or events,' comprised of (1) sensory perception; (2) comprehension of what was perceived; (3) present recollection; and (4) ability to testify based on what was perceived. *Lewis v. City of Philadelphia*, No. 03-2310, 2004 U.S. Dist. LEXIS 23499, at *5-6 (E.D. Pa. Nov. 19, 2004) (citing C. Wright and V. Gold, 27 Federal Practice and Procedure:  Evidence § 6023 (West 1990)).  A district court has discretion in determining whether a witness has sufficient personal knowledge to testify about a particular matter.  *See, e.g., United States v. Lake*, 150 F.3d 269, 273 (3d Cir. 1998).  Federal Rule of Evidence 701 similarly instructs that lay witness testimony must be "rationally based on the witness's perception."

Here, plaintiff should be precluded from testifying about a "quota" system and/or any purported false arrests in the 81st precinct or elsewhere as he has admitted at deposition that he lacks personal knowledge in this regard.  To the extent that plaintiff claims to have any knowledge whatsoever on these subjects, such knowledge is indisputably based upon hearsay for which no exclusion or exception applies.





Plaintiff's testimony on these matters is not properly based on his personal observations, perception or knowledge, but rather on hearsay and speculation. "General knowledge" – the equivalent of saying "everybody knows" – may be sufficient for a conversation at a backyard barbecue, but it does not meet the rigorous standards for competent evidence in a court of law. Accordingly, plaintiff should be precluded from testifying about the existence of a "quota" system or any purported false arrests in the 81st precinct, alleged practices for which he has no first-hand personal knowledge or independent non-hearsay evidentiary support.

**C.     Evidence Relating to the Truth of Plaintiff's Allegations of Prior Police Misconduct Should be Precluded.**

The truth of plaintiff's prior complaints of police misconduct, for which he claims he was retaliated against, is wholly irrelevant to a determination of the defendants' liability in this case. *See, e.g., Munafo v. Metro. Transp. Auth.*, Nos. 98 CV-4572 (ERK), 00-CV-0134 (ERK), 2003 U.S. Dist. LEXIS 13495, at *36 (E.D.N.Y. Jan. 22, 2003) ("The truth of [plaintiff's] allegations are not relevant to his retaliation claim.[11]   [Plaintiff] does not need to prove that his complaints were accurate in order to sustain his claim for wrongful termination; retaliation in response to his speech is prohibited by the First Amendment regardless of its truth."); *see also, e.g., id.* at *48

---

[11]   The findings by QAD and/or IAB with respect to plaintiff's prior allegations of police misconduct (*see, e.g.*, PTX 42, 64 and 65) are not relevant and should be precluded.

(holding that the "truth or falsity of plaintiff's complaints is simply not relevant to [the] determination" of whether defendants' treatment of plaintiff was in fact motivated by his allegations or was instead punishment for disobedience and insubordination).  In other words, whether plaintiff's allegations were true or not does not make any fact of consequence more or less probable, or establish any of plaintiff's causes of action.  *See* Federal Rule of Evidence 401.

The only evidence relevant to establishing the individual defendants' purported motive for retaliation against plaintiff would be that the plaintiff made allegations against them and that they were aware of such allegations.  The same alleged retaliatory motive would be present regardless of whether or not plaintiff's allegations were true because the individual defendants would have the same motive to silence false allegations as true ones.  *See, e.g., Munafo*, 2003 U.S. Dist. LEXIS 13495, at *49 (rejecting plaintiff's argument that the veracity of his allegations bore directly upon the motive of the defendants because defendants would have no reason to retaliate against him if his allegations were baseless).

Moreover, even if the Court were to conclude that the truth or falsity of plaintiff's allegations of prior police misconduct is relevant to the individual defendants' motive to retaliate, and therefore to plaintiff's claims, such evidence should still be precluded under Federal Rule of Evidence 403.  Pursuant to Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Permitting inquiry into the truth of plaintiff's myriad allegations of prior police misconduct would result in a mini-trial on each one of those allegations, which in turn would result in an inordinate amount of witness testimony on collateral matters.  Under such

circumstances, the Court is entitled to exclude evidence of limited relevance on the grounds that its marginal probative value is substantially outweighed by a danger of wasting time. *See, e.g., Munafo*, 2003 U.S. Dist. LEXIS 13495, at *49; *Hardy v. Town of Greenwich*, 629 F. Supp. 2d 192, 197-198 (D. Conn. 2009) ("Nor will the Court allow this trial to be sidetracked by several mini-trials on the veracity of civilian complaints that have been investigated and found to be of no substance.").[12]

Furthermore, a mini-trial with respect to the truth or falsity of each of plaintiff's prior allegations of police misconduct, some of which do not involve the defendants here at all, would necessarily confuse and potentially mislead the jury as to the issues in the case and prejudice the defendants as there would be a significant danger that the jury would conclude that if the plaintiff's allegations are true, then the defendants should be held liable. This added danger further warrants exclusion.

Accordingly, evidence relating to the truth of plaintiff's prior allegations of police misconduct should be precluded.

**D. Evidence Related to Plaintiff's Prior Allegations of Police Misconduct Should Be Precluded Even Though the Municipal Liability Issues Are Not Bifurcated**

Even if the Court deems the truth of plaintiff's prior allegations to be relevant to his *Monell* claim, it should nevertheless be excluded under Fed. R. Evid. 402 and 403. Put simply, all evidence of police misconduct not involving plaintiff should be precluded at trial. As an initial matter, much of plaintiff's own testimony is incompetent for the reasons explained above.

---

[12] Should the Court deny this portion of the City defendants' motion, the City defendants reserve the right to supplement their witness list with the many witnesses that would be required to have trials on all of the plaintiff's prior allegations, and offer additional exhibits on those subjects as well.

More specifically, much of plaintiff's evidence is either inadmissible hearsay or based upon speculation and a lack of personal knowledge, or both.

In addition, plaintiff's evidence is irrelevant to the issue of municipal liability because there is no causal link between plaintiff's prior allegations of police misconduct and plaintiff's alleged constitutional violations.

In order to hold a municipality liable under 42 U.S.C. § 1983, a plaintiff **must** demonstrate that a policy or custom **caused** the deprivation of the injured plaintiff's federal or constitutional rights. *See Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 690-91 (1978). It is well settled that "[t]o establish *Monell* liability, the **causal link must be strong**; that is, the policy must be the '**moving force**' behind a constitutional violation." *Mercado v. City of New York*, No. 08 Civ. 2855 (BSJ) (HP), 2011 U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011) (quoting *Monell*, 436 U.S. at 691, 694) (emphasis added); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("[T]he Plaintiff **must** establish a **causal connection – an affirmative link** – between the policy and the deprivation of his constitutional rights.") (internal quotation marks and citation omitted) (emphasis added).

Even accepting plaintiff's allegations of a "quota" policy or the manipulation of crime statistics, or "downgrading," as true, plaintiff cannot show, nor does plaintiff's evidence support, that such policies caused **his** claimed constitutional injuries. Such policies cannot be said to be the "moving force" behind any of plaintiff's claims, which include, *inter alia,* false arrest, excessive force and retaliation in violation of the First Amendment.

Put differently, proof of a "quota" or downgrading system is not relevant to the issue of municipal liability because such policies are not directed at depriving police officers like the plaintiff of their constitutional rights. The individual police defendants here were certainly not

acting pursuant to any "quota" or downgrading policy when they had plaintiff taken into custody pursuant to the Mental Hygiene Law on October 31, 2009.

That is the case even if defendants were retaliating against plaintiff – which they were not – for making complaints about the alleged policies. The law under *Monell* requires a much closer causal connection than merely a "but for" link. *See, e.g., Van Ort v. Estate of Stanewich*, 92 F.2d 831, 837 (9th Cir. 1996) ("Pointing to a municipal policy action or inaction as *a 'but-for' cause is not enough* to prove a causal connection under *Monell*.") (emphasis added); *Holland v. City of Houston*, 41 F. Supp. 2d 678, 704 (S.D. Tex. 1999) ("The focus must be on the direct and foreseeable effects of the policy or custom, not merely a 'but for' notion of causation."). Rather, as explained above, there must be a *strong and clear* casual connection between the alleged policy and the constitutional violation. Thus, courts "apply 'rigorous standards or culpability and causation . . . to ensure that' the indirect-causation theory not result in the municipality's being 'held liable solely for the actions of its employee.'" *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (citation omitted).[13]

The constitutional violation here is allegedly being taken into custody as an EDP without probable cause, not "quotas" or downgrading, which are not themselves unconstitutional. Only evidence of a policy of encouraging the constitutional violation suffered by plaintiff – here, alleged retaliation by a false EDP arrest – could "cause" the violation in the required *Monell* sense of a "moving force" or "affirmative link" behind the violation. There is nothing about a policy of indifference to "quotas" or the downgrading of criminal complaints that provides a

---

[13] By way of analogy, plaintiff cannot challenge alleged policies of quotas or downgrading in the same way that he would not be able to challenge, for example, any policy of unlawful stops and frisks. There can be no question that plaintiff would lack standing to sue the City for having an alleged policy of unlawful stops and frisks even despite an allegation of retaliation or non-compliance with the policy.

"moving force" and "affirmative link" to taking plaintiff into custody without justification: such policies could exist without such an event ever arising.

Finally, even if there was a sufficient causal link between the evidence relating to plaintiff's prior allegations of police misconduct and his alleged constitutional violations such that the evidence was the "moving force" behind the violations (which is not the case), such evidence should still be excluded under Federal Rule of Evidence 403 in a combined, non-bifurcated trial because the likelihood of prejudice substantially outweighs any probative value on the issue of municipal liability. The relevance of the *Monell* evidence is extraordinarily strained in light of the lack of causal connection between plaintiff's allegations of "quotas" and downgrading and his claimed constitutional injuries, and the prejudice is extraordinarily high in light of the risk that the jury will confuse the existence of the alleged policies – which are not directly actionable – with the constitutional violation alleged. Accordingly, evidence related to plaintiff's prior allegations of police misconduct should be precluded at trial.

## POINT II

### PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OF ECONOMIC DAMAGES

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) ("Rule 26(a)") requires that "a party must, without awaiting a discovery request, provide to the other parties a computation of each category of damages claimed by the disclosing party." Plaintiff has failed to comply with this requirement and should therefore be precluded from offering evidence of economic damages at trial. Should the Court deny this portion of the motions *in limine*, the City defendants reserve the right to amend their witness and exhibits lists in the JPTO to add any additional evidence necessary to rebut a claim for economic damages, to the extent that such evidence is required by the Court's Individual Practices to be listed in the JPTO.

In his Initial Disclosures, served on May 11, 2011, under the category "Itemized Damages," the plaintiff stated the following: "N/A," or not applicable. *See* Ex. B. Plaintiff thus failed to disclose a proper computation of economic damages as required by Rule 26(a) and, during the past more than four years, he has never supplemented his initial disclosure, as required by Federal Rule of Civil Procedure 26(e), if he intended to seek economic damages.

Although plaintiff had an independent obligation to disclose a damages computation without awaiting a discovery request, the City defendants' nevertheless propounded the following interrogatory demanding that plaintiff:

> Identify all economic injuries claimed by plaintiff as a result of the allegations involving the City defendants as contained in the Amended Complaint, including but not limited to, expenditures for medical, psychiatric, or psychological treatment; lost income; property damage; and attorneys' fees. Identify the specific amounts claimed for each injury.

Following a series of objections, plaintiff merely stated in response that he "is asserting a claim for both lost earnings and lost future earnings as a result of this incident. Plaintiff states that the salary for his last full calendar year with the N.Y.P.D. was $104,763.08." *See* Response to Interrogatory Number 4, Plaintiff's Response to Defendant City of New York's First Set of Interrogatories and Document Requests, (Ex. C). Plaintiff's response is plainly insufficient and does not comply with the disclosure requirements of Rule 26(a). "[R]ather, Rule 26(a) contemplates an estimate of damages and 'some analysis.'" *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, Nos. 12 Civ. 6811 (CM) (JCF); 13 Civ. 1580 (CM) (JCF), 2013 U.S. Dist. LEXIS 143398, at *17 (S.D.N.Y. Oct. 3, 2013) (citation omitted). Plaintiff's sole addition to his analysis was to list as trial exhibits his W-2s from 2005-2008,[14] which were never previously

---

[14] *See* Plaintiff's JPTO, PTX 22 (Docket No. 483-1); PTX 22. Plaintiff produced his W-2s for the first time on August 20, 2015, a day before the final JPTO was due according to the adjournment that plaintiff requested. This is too late to comply with discovery requirements for an economic damages claim and PTX 22 should be excluded from evidence as irrelevant.

produced despite discovery demands for documents concerning plaintiff's compensation (including W-2s), as well as for all evidence of economic damages. *See* Document Requests 7, 10, 19, City Defendants' First Combined Set of Interrogatories and Document Requests (Ex. D). Other than this, there is no mention of a claim for economic damages to be tried – or indeed any damages – in the plaintiff's proposed JPTO. *See* Docket No. 483-1.

Accordingly, plaintiff should be barred from presenting evidence at trial with respect to his economic damages because "[t]he 'automatic sanction' for a violation of Rule 26(a) is preclusion." *Middle Mkt. Fin. Corp. v. D'Orazio*, No. 96 Civ. 8138 (SWK)(HBP), 2002 U.S. Dist. LEXIS 17817, at *12 (S.D.N.Y. Sept 23, 2002); *see also* Federal Rule of Civil Procedure 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."); *Mikulec v. Town of Cheektowaga*, 302 F.R.D. 25, 30 (W.D.N.Y. 2014) (precluding plaintiff "from offering any evidence of economic damages, except for evidence of his past and future medical expenses, at trial" where plaintiff failed to disclose a computation of damages for any economic loss, other than past and future medical expenses).

The fact that plaintiff failed to properly disclose a computation of damages despite City defendants' specific request further warrants preclusion. *See, e.g., Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (finding that plaintiff's failure to comply with Rule 26(a) "was especially troubling because . . . Defendants specifically requested a calculation of damages").

Finally, plaintiff has proffered no expert evidence to support a claim for economic damages. Without expert evidence on the issue of economic damages, particularly future

economic damages, plaintiff is unable to recover such damages at trial.  *See, e.g., West v. Bell Helicopter Textron, Inc.*, 967 F. Supp. 2d 479, 500 (D.N.H. 2013) ("A plaintiff cannot recover future economic damages without expert testimony or other competent evidence discounting those damages to net present value. . . . Without such evidence . . . the jury cannot be left to calculate the discounting based upon 'personal knowledge [they] may or may not possess' as to how to perform such a calculation.") (citation omitted).[15]

Nor may plaintiff, or any other non-expert witness, competently testify about these issues, which involve, *inter alia*, calculating work and life expectancy, estimating pay raises, discounting to present value, and assessing lost pension benefits.  *See, e.g., Varlesi v. Wayne State Univ.*, 2012 U.S. Dist. LEXIS 162508, No. 10-14793, at *8 (E.D. Mich. Nov. 14, 2012) ("Plaintiff may not testify as to issues relating to future damages which require expert testimony."); *id.* at *4 ("[T]he Court cannot allow any testimony, by way of any other witness who may testify at trial which Plaintiff . . . did not designate as an expert on the subject [of future damages] and as to any factors pertinent to the calculation of future damages, such as Plaintiff's work and life expectancy and discount tables to determine the present value of future damages.").  Rather, any such testimony would be inherently speculative in nature and an improper basis upon which to evaluate damages.  Accordingly, plaintiff should be precluded from offering evidence of economic damages.

---

[15]   It is too late for plaintiff to offer such expert testimony now, because plaintiff made none of the disclosures required by Federal Rule of Civil Procedure 26(a)(2) with respect to expert evidence concerning economic damages.  *See, e.g., Middle Mkt. Fin. Corp.*, 2002 U.S. Dist. LEXIS 17817, at *12 ("Before an expert can testify at trial, the disclosures set forth in Rule 26(a)(2) *must* be made.") (emphasis in original).

## POINT III

## PLAINTIFF SHOULD BE COMPELLED TO MAKE LARRY SCHOOLCRAFT AVAILABLE TO TESTIFY AT TRIAL

It is undisputed that the plaintiff's father, Larry Schoolcraft, was intimately involved in the events which transpired on October 31, 2009 and otherwise.  For example, deposition testimony and documentary evidence has established, *inter alia*, that Mr. Schoolcraft had numerous conversations with the plaintiff on October 31, 2009 which demonstrate plaintiff's awareness of the New York City Police Department's efforts to locate and speak with him after he prematurely abandoned his post without authorization.  *See, e.g.,* L. Schoolcraft Dep. Tr. (Dec. 11, 2013) at 179:22-25, 181:8-182:23 (Ex. E).  He is also relevant to plaintiff's claims of economic and emotional damages, since Larry Schoolcraft lives with his son.  *See id.* at 30:2-31:3.

Although Mr. Schoolcraft is listed on plaintiff's pre-trial exhibit list, City defendants have reason to believe that plaintiff may not call Mr. Schoolcraft as a witness, and may not otherwise make Mr. Schoolcraft available at trial to be called by the defendants.  Mr. Schoolcraft is outside the Court's subpoena power because he lives more than 100 miles away from the Court.

However, as plaintiff's father, Mr. Schoolcraft is uniquely within plaintiff's power to produce.  Indeed, as the court explained in *Chevron Corp. v. Donziger*, certain close relationships, such as a familial relationship, render a witness peculiarly within a party's power to produce.  974 F. Supp. 2d 362, 700 n.161, 701 n. 172 (S.D.N.Y. 2014) (citing as examples the relationship of a party and his mother-in-law and a party and her son).

"The law in [the Second Circuit] is clear that when a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction and fails to produce

16

such witnesses, the jury may infer that the testimony, if produced, would be unfavorable to that party." *Deler v. Commodore Cruise Line*, 1995 U.S. Dist. LEXIS 18341, at *12 (S.D.N.Y. Dec. 11, 1995) (internal quotation marks and citation omitted); *see also, e.g., Gaw v. Comm'r*, 1995 Tax Ct. Memo LEXIS 530, Nos. 17906-92, 18268-92, at *77-78 (T.C. Nov. 9, 1995) ("The failure of a party to call as a witness a relative who would ordinarily be expected to favor that party suggests that relative's testimony would be unfavorable.").

Because Mr. Schoolcraft's testimony would be material to the issues in this case and because he is peculiarly within plaintiff's power to produce, plaintiff should be compelled to make him available to testify at trial in the event that plaintiff does not call him as a witness. If, however, plaintiff does not produce Mr. Schoolcraft at trial, the jury should be instructed to draw an adverse inference to the effect that were Mr. Schoolcraft to testify at trial, his testimony would have been unfavorable to the plaintiff (i.e., a missing witness charge). In addition, the City defendants should be allowed to present excerpts of Mr. Schoolcraft's deposition testimony to the jury as he would then be an unavailable witness pursuant to Federal Rule of Evidence 804 for hearsay purposes.[16]

### POINT IV

### PLAINTIFF SHOULD BE PRECLUDED FROM SEEKING DECLARATORY RELIEF AT TRIAL

On January 28, 2015, after the City defendants filed their motion for summary judgment, plaintiff filed a Third Amended Complaint in which he, for the first time in this litigation, asserted a claim for declaratory relief. *See* Third Amended Complaint, Docket No. 342, at 63. Specifically, plaintiff seeks:

---

[16] *See* JPTO at 17, n. 15.

Declaratory judgment in favor of plaintiff and against each of the defendants, finding that the defendants' conduct was unlawful, including without limitation, findings that the claims for relief have been established; that the practices and policies of the NYPD on quotas for stops, summons and arrests and the manipulation and downgrading of crime reports are unlawful; that the practices and policies for falsification of training records are unlawful; and that the NYPD and JHMC records should be expunged to the extent that those records suggest that plaintiff is (or ever was) emotional [sic] disturbed, or suffering from a mental illness or dangerous to himself or others.

"Federal courts have 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entm't Corp.*, No. 08 Civ. 1558 (RMB)(THK), 2009 U.S. Dist. LEXIS 21938, at *35 (S.D.N.Y. Mar. 2, 2009) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)); *see also Chiste v. Travelocity.com, LP*, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010). In deciding whether to exercise this jurisdiction, the Second Circuit has held that courts should consider "whether a declaratory judgment will [i] 'serve a useful purpose in clarifying and settling the legal relations in issue'; or [ii] 'afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Dolphin Direct*, 2009 U.S. Dist. LEXIS 21938, at *35 (quoting *Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992)).

Plaintiff should be precluded from seeking declaratory relief because there is no "actual controversy between the parties" as required for declaratory relief to lie. *In re REFCO Inc. Securities Litig.: Krys v. Aaron*, No. 07-md-1902 (JSR), No. 08-cv-7416 (JSR), 2010 U.S. Dist. LEXIS 142588, at *41 (S.D.N.Y. July 19, 2010) (citing *United States v. Doherty,* 786 F.2d 491, 498-99 (2d Cir. 1986)). To warrant declaratory relief, "[t]here must be a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *ICOS Vision Systems Corp., N.V. v. Scanner Techs. Corp.*, 699 F. Supp. 2d 664, 667 (S.D.N.Y. 2010) (citations and internal quotation marks omitted).

Past acts do not constitute an appropriate basis for invoking declaratory relief.  *See, e.g., Chiste*, 756 F. Supp. 2d at 407 (S.D.N.Y. 2010) ("There is no basis for declaratory relief where only past acts are involved.") (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Int'l Wire Group, Inc.*, 2003 U.S. Dist. LEXIS 9193, at *15 (S.D.N.Y. June 2, 2003)); *Gianni Sport Ltd. v. Metallica*, No. 00 Civ. 0937 (MBM), 2000 U.S. Dist. LEXIS 17339, at *11 (S.D.N.Y. Dec. 4, 2000) ("Any damages that are due have already accrued.  Therefore, Gianni will not 'avoid the accrual of avoidable damages by means of this action.'"); 12 Moore's Federal Practice § 57.04(3) (3rd ed. 2004) ("Declaratory relief is inappropriate to adjudicate past conduct, such as when the damages have already accrued").

To the extent that plaintiff makes a claim for injunctive relief, that claim fails for the same reason.  *See, e.g.*, *Harty v. Simon Prop. Group, L.P.*, 428 F. App'x 69, 71 (2d Cir. 2011) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)) ("[A] plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm.").

The entirety of the dispute between plaintiff and defendants arises out of past acts.  As such, plaintiff should be precluded from seeking declaratory (and injunctive) relief at trial.[17]

---

[17]  Plaintiff may argue that the insufficiency of this claim should have been raised previously. Because plaintiff asserted this claim for the first time after summary judgment motions had already been filed, a failure to previously move on the issue should be excused.  In any event, insufficiency of a claim as a matter of law is not waived, and the Court will of necessity, for the reasons stated herein, have to dismiss the claim at some point during the trial.  The Court should not allow the introduction of any evidence that would be relevant solely to this infirm claim.

19

<u>POINT V</u>

**PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OF OTHER INSTANCES OF ALLEGED RETALIATION BY THE NYPD AGAINST OTHER OFFICERS**

Plaintiff seeks to offer the evidence that other members of the service – *e.g.*, Adhyl Polanco, Pedro Serrano, Craig Matthews, and Joseph Ferrara – have similarly accused the Department of institutional pressure to increase enforcement of alleged quotas, and of retaliation against those who report it. *See Floyd v. City of New York*, 959 F.Supp. 2d 540 (S.D.N.Y. 2013) (SAS); *Matthews v. City of New York*, 957 F. Supp. 2d 442 (S.D.N.Y. July 29, 2013). Specifically, Officers Polanco, Serrano and Matthews have made accusations concerning alleged conditions at precincts other than at the 81st Precinct, and Officer Ferrara had made accusations concerning alleged conditions at the 81st Precinct and elsewhere. *See Floyd*, 959 F.Supp. 2d 540; *Matthews*, 957 F. Supp. 2d 442. Evidence concerning alleged quotas and pressures to comply (a) have no relevance to plaintiff's claims; (b) lack reliability; (c) amounts to impermissible propensity evidence; and (d) ultimately serves only to confuse the jury and unduly prejudice defendants.

**A.    Evidence of Alleged Conditions at Precincts Other than the 81st Precinct**

The test for relevance is whether evidence has "any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Fed. R. Evid. Rule 401. Here plaintiff is seeking to offer testimony of several witnesses who had no interaction with any of the defendants, were not involved in the events of October 31, 2009, and will only testify about purported working conditions in precincts that plaintiff never worked in, in other boroughs. *See Floyd*, 959 F.Supp. 2d 540 at 598-599 (Officer Polanco's testimony concerned alleged conduct at the 41st Precinct, and Officer Serrano's testimony concerned alleged conduct at the 40th Precinct). As such, these witnesses lack personal knowledge of the facts that underlie

the incident, including the conditions at the 81st Precinct.   Thus, their testimony bears no relevance to plaintiff's claims of retaliation within the 81st Precinct.   Accordingly, it should be precluded.

Moreover, there is no evidence that defendants had any knowledge or awareness of the conduct alleged by these witnesses, thus plaintiff cannot argue that the evidence is relevant to the defendants' motive to retaliate against plaintiff.   It is illogical and impermissible for plaintiff to proffer evidence that defendants in this case acted in conformity with the way officers in other precincts acted, particularly when defendants here had no knowledge of the conduct of those officers at the relevant time.   Even if ruled marginally relevant, and it is not, the admission of this evidence will cause the jury to think that because officers in other precincts allegedly retaliated against other officers, defendants here similarly retaliated against plaintiff, causing severe prejudice to defendants.

For these same reasons, the Court should similarly preclude testimony by any witness – or any other form of evidence, including but not limited to unidentified roll calls – concerning the alleged quotas or downgrading of statistics at the 81st Precinct.   Accordingly, the evidence is subject to preclusion under Rule 401 or, if at all relevant, then under Rules 404(b) or 403, as it constitutes impermissible propensity evidence, and further, any probative value is outweighed by the severe prejudice and likelihood of juror confusion.

**B.**     **Evidence of Conditions at the 81st Precinct**

Evidence of the alleged conditions within the 81st precinct should also be precluded under Rules 403 and 404(b).   Here plaintiff is attempting to elicit testimony from witnesses who will corroborate that the prior allegations of misconduct made by plaintiff before his current claim arose were in fact true.   As an initial matter, and as set forth herein, the truth of plaintiff's prior allegations of other misconduct prior is wholly irrelevant to a determination of the defendants'

liability because, as already discussed above, the veracity of the allegations need not be proven by plaintiff in order to prove his claims.[18]

Even assuming, *arguendo* that the truth or falsity of plaintiff's accusations were deemed relevant to the motive to seize him – which it is not – the evidence should still be precluded under Fed.R.Evid. Rule 403, as danger of undue prejudice, substantially outweighs any probative value.  Plaintiff made a great many allegations of wrongdoing, but none of those, if true, would establish any cause of action asserted by plaintiff in this case.  A mini-trial on the truth or falsity of each one of the accusations, or any of them, would necessarily confuse the jury as to the issues in the case, and lead the jury to conclude that if the accusations were true, then the defendants should be held liable.  As shown above, a mini-trial on plaintiff's myriad accusations would also require an inordinate amount of testimony and witnesses on collateral mattes, and the Court is entitled to exclude evidence on the grounds that allowing it would engender a waste of time that outweighs any marginal relevance.  *See Hardy*, 629 F. Supp. 2d  at 197-198.

Accordingly, the Court should preclude plaintiff from calling the aforementioned witnesses.

Additionally, Polanco's testimony, if offered at trial would be severely prejudicial to defendants because Polanco has previously asserted that his supervisor – an officer who is not involved in this case – attempted to declare Polanco as an EDP during an altercation in alleged retaliation for his complaints.  As a purported instance of similar but otherwise irrelevant

---

[18]  Importantly, motive is irrelevant to the reasonableness of the seizure under the Fourth Amendment.  "In determining whether there was probable cause, [the] inquiry is an objective one that focuses on the facts available to the arresting officer at the time of the arrest." *O'Brien v. City of Yonkers*, 2013 U.S. Dist. LEXIS 43551, 11-12 (S.D.N.Y. 2013) (quoting *Finigan v. Marshall*, 574 F.3d 57, 61-62 (2d Cir. 2009)); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (noting that "an arresting officer's state of mind . . . is irrelevant to the existence of probable cause").  In addition, trial judges in this district regularly charge juries that when making a seizure, an officer's motive – whether good or bad – is irrelevant.

conduct, this evidence violates rules Fed. R. Evid. 403 and 404(b).  It would also entail a waste of time, as it would require a mini-trial on the facts alleged by Polanco, in the midst of the trial of this case.

### C.      Joseph Ferrara Lacks Personal Knowledge

The testimony of Joseph Ferrara and evidence of recordings made by him should be precluded not only because he lacks personal knowledge of the relevant facts, but also because the recording occurred well after October 31, 2009, and thus, bears no relevance to plaintiff's claims.  It is a "fundamental general rule of evidence that a witness must confine his testimony to matters within his personal knowledge . . . ."  *Contreras v. Artus*, 778 F.3d 97, 109 (2d Cir. 2015) (quoting *People v. Mingey*, 190 N.Y. 61, 64 (1907); Fed. R. Evid. Rule 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *Rios v. Selsky*, 32 A.D.3d 632, 633, 819 N.Y.S.2d 622, 623 (3d Dep't 2006) (affirming denial of "request to call certain witnesses since those witnesses had no personal knowledge of the incident" and "[t]heir testimony, therefore, would have been irrelevant").  Accordingly, both the testimony and records of Ferrara should be precluded.

Joseph Ferrara did not "witness first hand" any quota, downgrading or retaliation: he admits he never witnessed it and knows of it only by "talking to people."  *See* Ferrara Dep. at 75:16-25, annexed as Exhibit F to Scheiner Decl.  Thus, Ferrara's testimony on this supposed practice, including his unsupported "belie[f]" that it "would be DI Mauriello" giving orders to further investigate complaints, is speculation, without foundation, and inadmissible.  *Id.* at 77:24-78:19.  He testifies about alleged calls from IAB to the precinct asking for plaintiff (Pl. Opp. to Defs.' SJ Mot. at 76), but Ferrara offers only hearsay: that he heard from unidentified others that IAB called to leave a message for plaintiff.  Ferrara Dep.  193:10-18; 194:25-195:3.  Ferrara

emphatically testified that it was not the practice of IAB to call the precinct. *Id*. at 194:2-24)

Ferrara's supposed testimony of "a policy" of leaking information to commanding officers about

complaints also consists of hearsay and speculation:   Ferrara heard "people talk" about *one*

commanding officer and speculated "how does somebody find out about it" if they were not told.

*Id*. at 224:9-19.   Ferrara admitted that he had heard of only one instance ("no, that --- that's

really []it") and expressly admitted that he lacked personal knowledge: "I mean I can't say

definitely, you know," and related hearsay from his wife about another commanding officer

being disciplined, not warned.).  *Id.* at 225:3-226:6.

Ferrara testified that he did not make a complaint about  the downgrading system because

"there's a perception in the NYPD to punish people who try to do good stuff sometimes."  *Id.* at

79:1-10.  While this statement may be admissible were Ferrara's personal intent relevant – which

it is not – his testimony about his own unsupported perceptions, let alone testimony about others'

beliefs, is not admissible to prove a policy or practice of the NYPD.  Nor did Ferrara witness any

"retaliation" against plaintiff or anyone (which would be irrelevant to *Monell* issues in any

event).  Ferrara testified that sometime "right before" or "two to four weeks" before February 18,

2010 – after Schoolcraft was already suspended and had moved upstate – he heard Deputy

Inspector Mauriello state that he had received a "heads up" about Schoolcraft.   *See Id*. 219:14-

220:25.  Contrary to Schoolcraft's assertion, this is the only comment to the "effect" that plaintiff

was a "rat" that Ferrara recalled.  Ferrara Deposition at 202:23-203:8.  Indeed, Ferrara admitted

that he could not testify that Mauriello even used the term "rat," as plaintiff claims.  *Id.* at

207:18-19 ("I wasn't sure exactly what was said. I wasn't sure if he used the word rat.")  This is

hardly an instance of retaliation, and occurred long after any alleged instances of retaliation

towards plaintiff.

Ferrara's recording of a roll-call in February 2010, in which Mauriello appears to refer to Schoolcraft as a "rat" is inadmissible because it post-dates the events at issue here by four months, and it is highly prejudicial. [19]   Whatever opinions about Schoolcraft may have been expressed four months after the fact cannot bear on the knowledge, motive or intent of defendants on October 31, 2015.[20]

### D.   The Purported Evidence of Specific Instances of Retaliation are Insufficient to Establish a Custom and Practice

As the City defendants established in their briefs in support of their summary judgment motions, a mere handful of other incidents of alleged retaliation do not establish a widespread practice, and plaintiff has offered no authority to the contrary.   In order to prove Monell liability, plaintiff must show, *inter alia*, that "the relevant practice is so widespread as to have the force of law." *Walker v. City of New York*, 2015 U.S. Dist. LEXIS 91410, 16-17 (S.D.N.Y. July 14, 2015) (quoting *Tieman v. City of Newburgh*, No. 13 Civ. 4178 (KMK), 2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. Mar. 26, 2015) (quoting *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997) (internal quotation marks omitted)). Thus, "[i]n order for Plaintiff to establish municipal liability through this prong, he needs to show that the City 'indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy.'" *Walker*, 2015 U.S. Dist. LEXIS 91410 at 16-17 (quoting *Miller v. County of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006) (citing Monell, 436 U.S. at 694)).

---

[19] *See, e.g.,* PTX 314.

[20] Moreover, the statements of a party defendant remain hearsay with respect to the other defendants in the case who do not offer such a statement.  Accordingly, Mauriello's statements are hearsay as to other defendants and should be excluded on that basis as well under Rule 403, as unfairly prejudicial to the other defendants.  The jury will necessarily be tarred by the same brush, although the statement is even more irrelevant to them.

As an initial matter, plaintiff may not prove up a custom and practice sufficiently pervasive to support *Monell* liability through the say so of fact witnesses, never disclosed as experts, who can point to absolutely no independent evidence other than their own subjective impressions or their own individual cases. Were plaintiff's approach admissible to prove *Monell* liability, every trial involving municipal liability under §1983 would be burdened with otherwise unrelated lay witnesses testifying as to personal opinions or their experience in unrelated cases. The end result of such an approach would be a series of mini-trials aimed at assessing the credibility of these other witnesses. Accordingly, preclusion is warranted.

Additionally, there are specific defects in plaintiff's proffered evidence as well. Importantly, plaintiff conflates the alleged "quota and downgrading system" – which could not have deprived plaintiff of any rights – and the supposed "system of retaliation." *See* Pl. Opp. to Defs.' SJ Mot. at 75. As discussed above, proof of the quota and downgrading system is not relevant to this case, and certainly not to *Monell* issues, since that is not a policy directed at depriving police officers such as Schoolcraft of their constitutional rights.

Further, plaintiff offers no admissible evidence from Police Officers Polanco or Serrano, both of whom testified at the trial of another matter about different precincts, namely the 40th and 41st Precincts in the Bronx. Moreover, the actual testimony of these witnesses is quite limited: Polanco testified to his subjective belief that officers who report misconduct "are considered rats," and Serrano testified to his belief that such officers are "called a rat." Pl. Opp. Defs.' SJ Mot. at 78.

Even if true and admitted as evidence (and it should not be), this evidence of a few instances of alleged misconduct -- in a police force containing approximately 35,000 uniformed members of service – does not establish a *department-wide policy* of retaliation, let alone a

policy of improper confinement of complainants as EDPs.  Alleged evidence of a few instances

of retaliation (not proven in any court, proceeding or investigation) should be precluded because

"[s]uch lopsided numbers hardly suggest, much less allow the inference, that the claimed policy

existed, especially in light of . . .  the City's force of over 35,000 police officers."  *Escobar v.*

*City of New York*, 766 F. Supp. 2d 415, 420-421 (E.D.N.Y. 2011) (finding "a handful of isolated

incidents insufficient to create a material fact in dispute about the existence of any seizure-

related policy").  Indeed, three or four instances of misconduct over the course of a period of

several years cannot constitute a practice that is "so manifest as to imply the constructive

acquiescence of senior policy-making officials."  *Chepilko v. City of New York*, 2012 U.S. Dist.

LEXIS 15110, *48-50  (E.D.N.Y. Feb. 6, 2012) (quoting *Green v. City of New York*, 465 F.3d

65, 80 (2d Cir. 2006)) (holding that 5 isolated instances of misconduct over a two year period is

insufficient to prove a policy for *Monell* purposes); *Dettelis v. City of Buffalo*, 3 F. Supp.2d 341,

348 (W.D.N.Y. Mar. 28, 1998) (four unconstitutional strip-searches in addition to the incident in

question in seven years failed as a matter of law to constitute a custom); *Edwards v. City of New*

*York*, 03-cv-9407, 2005 U.S. Dist. LEXIS 34376, at *33 (S.D.N.Y. Dec. 19, 2005) (*Monell*

"would be rendered sterile if, as plaintiff asserts, mere conclusory allegations of a few isolated

incidents ... were sufficient to hold the municipality liable"); *see also Curry v. City of Syracuse*,

316 F.3d 324, 330 (2d Cir. 2003) ("[A] municipality may not be  held liable under § 1983 simply

for the isolated unconstitutional acts of its employees.").

Moreover, as already discussed, even assuming a policy – which there was none – such

policies cannot be said to be the driving force behind the alleged adverse action by defendants.

In other words, even assuming the truth of plaintiff's allegations, he lacks standing to challenge

the policies because he was not seized pursuant to an arrest quota, nor was he a victim of downgrading statistics.

## POINT VI

**PLAINTIFF SHOULD BE PRECLUDED FROM INQUIRING INTO OR OFFERING EVIDENCE REGARDING ANY DISCIPLINARY HISTORY OR LAWSUITS AGAINST THE DEFENDANTS AND ANY QAD OR IAB REPORTS**

Plaintiff should be precluded from inquiring about any disciplinary history or any prior or current lawsuits against defendants. The officers' disciplinary histories are irrelevant to the claims in this case, and as such are confusing, a waste of time, and highly prejudicial to the individual defendants.  For this reason alone, this evidence should be precluded.

### A.    Disciplinary Histories and Lawsuits

Plaintiff should be precluded from inquiring about any disciplinary history of defendants because such questioning directly conflicts with Rule 404(b) of the Federal Rules of Evidence. Rule 404(b) states that evidence of past acts "to prove the character of a person in order to show action in conformity therewith" is inadmissible.  Under the rule, evidence of past acts is only admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  However, evidence of prior bad acts is not automatically admissible merely because the proponent has articulated some purpose unrelated to character.

The decision to admit evidence under Rule 404(b) also depends on "whether the danger of unfair prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." *Huddleston v. United States*, 485 U.S. 681, 688 (1988).  Thus, Rule 404(b) requires a two-part analysis: (1) whether the proposed evidence fits within one of the "exceptions" provided by the Rule; and (2) if the evidence does fall into an exception, a balancing test under Rule 403 of

whether the probative value of the evidence is substantially outweighed by the potential for jury confusion or prejudice.  *Lombardo v. Stone*, No. 99 Civ. 4603 (SAS) 2002 U.S. Dist. LEXIS 1267, at *8 (S.D.N.Y. Jan. 29, 2002); *see also* ADVISORY COMMITTEE NOTES TO FED. R. EVID. 404(b).

The Second Circuit has consistently held that evidence of a police officer's prior bad acts are only admissible under Rule 404(b) if the alleged prior act has a close nexus with the acts complained of by plaintiff in his complaint.  *Berkovich v. Hicks*, 922 F.2d 1018 (2d Cir. 1991). In *Hicks*, a case in which the plaintiff sought to introduce a police officer's past Civilian Complaint Review Board ("CCRB") complaints to prove a "pattern of conduct" on the part of the officer regarding false arrest and excessive force claims, the court held that, "[t]o merit admission under this theory, the extrinsic acts must share 'unusual characteristics' with the act charged or represent a 'unique scheme.'"  *Id*. at 1022-23 (affirming exclusion of disciplinary history).  In addition, the potential for confusion or undue prejudice substantially outweighs any probative value.

Here, plaintiff can make no showing that any potential disciplinary complaints – substantiated or otherwise – against any defendant share the requisite "unusual characteristics" or "unique scheme."  While some of the defendants have not had any allegations made against them, the purpose of this motion is to ensure that the questions are not even asked, and the inference that other complaints have been made is not suggested to the jury.  Accordingly, plaintiff should be precluded from questioning any officer regarding their disciplinary history, or otherwise proving that history.

Moreover, even if plaintiff could demonstrate the requisite "unusual characteristics" or "unique scheme," or show that the proposed evidence falls under one of the other "exceptions" to

Rule 404, such evidence should still be precluded as the prejudicial effect of same outweighs any probative value. The Second Circuit has found that a district court did not abuse its discretion when it excluded evidence of prior complaints against an officer at trial. *See Berkovich*, 922 F.2d at 1023. The Second Circuit held that even where the prior complaints could be admissible under Rule 404 to establish the officer's motive, the district court's finding that the prejudicial effects of such prior complaints outweighed their probative value was appropriate. *Id.* (stating that introduction of prior complaints would "inflame the situation" and carry insurmountable prejudice for the defendant to overcome.).

District courts in this Circuit have ruled similarly, finding that even where evidence of prior acts could be relevant under Rule 404, it should be precluded as unduly prejudicial. *See*, *e.g.*, *Lombardo*, 2002 U.S. Dist. LEXIS 1267, at *20-24 (finding that while prior act of a defendant could be relevant, prejudice outweighed probative value). This is particularly the case where the prior complaints against an officer were not substantiated, as in these cases "the probative-prejudice balancing test weighs heavily in favor of excluding the evidence." *Jean-Laurent*, 2011 U.S. Dist. LEXIS 122767, at *63-64; *see also Berkovich*, 922 F.2d at 1023 (finding that where an officer was exonerated on six of seven prior complaints, "the slight probative value of this evidence – as to a theory of motive, pattern or other less plausible theories of relevance – was substantially outweighed by its potential for unfair prejudice.").

Moreover, plaintiff should be prohibited from using defendants' disciplinary history to cross-examine them at trial because none of the allegations of wrongdoing against them are probative of their credibility. A witness's credibility may be impeached on cross-examination using specific instances of conduct to demonstrate the witness's character for untruthfulness. F.R.E. 608(b). However, "the possibilities [for] abuse are substantial…. [therefore,] the

instances inquired into *[must] be probative of truthfulness or its opposite* and not remote in time."   Advisory Committee Note to FRE 608(b) (emphasis added).   Further, "the overriding protection of Rule 403 requires that probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury."   Id.

Plaintiff's anticipated arguments that defendants' disciplinary histories are probative of their truthfulness should be rejected.[21]   While misconduct of a general variety can be probative of truthfulness, courts have made clear that not all misconduct is untruthful.   "[I]f all that can be said about behavior is that it might be called improper, immoral, or unlawful ... asking about it cannot be justified under Fed. R. Evid Rule 608."   *United States v. Stone*, No. 05 CR 401 (ILG), 2007 WL 4410054 (E.D.N.Y. Dec. 14, 2007) (internal quotations omitted).   In the instant case, defendants here have incidents of wrongdoing that are reflected in their disciplinary records.   While these incidents are at worst, improper, they certainly do not indicate subterfuge, deceit, or any other motivation indicative of untruthfulness.   Indeed, all of the foregoing indicates, at worst, laziness or dereliction of duty, they certainly do not represent more than "improper, immoral, or unlawful" behavior.   *See, e.g., id.* (excluding evidence of two incidents as irrelevant to the issue of truthfulness: first, an officer punched a civilian in the face and was charged with assault, and second the same officer abused his position and refused to provide his name or badge number.)

Courts in this Circuit have applied the same analysis to prior civil lawsuits, finding that the probative value of introducing prior lawsuits is outweighed by the prejudicial effect such evidence could have and its potential to confuse the jury.   *See Richmond v. General Nutrition Ctrs., Inc.*, 08 Civ. 3577 (PAE) (HBP), 2012 U.S. Dist. LEXIS 32070, at *31 (S.D.N.Y. Mar. 9,

---

[21] Even assuming, *arguendo*, that this "threat" is minimally probative of his truthfulness, any probative value is substantially outweighed by the undue prejudice to defendants that would result, in violation of Fed.R.Evid. Rule 403.

2012) (precluding the introduction of evidence of lawsuits against defendant because "the risk of unfair prejudice and confusion from introducing documents reflecting allegations in other cases clearly outweighs the probative value of such claims."); *see also Figueroa v. Boston Sci. Corp.*, 00 Civ. 7922 (DC), 2003 U.S. Dist. LEXIS 10936, at *11 (S.D.N.Y. June 25, 2003) (finding that the probative value of introducing evidence of other lawsuits is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, and considerations of undue delay and waste of time.")

As such, the Court should preclude the introduction of evidence at trial concerning prior complaints or lawsuits against defendants as well as any disciplinary history because (1) plaintiff cannot meet the requirements of Fed.R.Evid. Rule 404, and (2) even if he could, still the







U.S. Dist. LEXIS 10936, at *11 (S.D.N.Y. June 25, 2003).   Accordingly, the Court must preclude any reference to defendant Broschart's involvement in *Haddid*.

As such, the Court should preclude the introduction of evidence at trial concerning prior complaints or lawsuits, as plaintiff cannot meet the requirements of Rule 404.   However, to the extent that plaintiff could demonstrate that evidence of prior disciplinary complaints or lawsuits would be admissible under Fed. R. Evid. Rule 404(b), any such evidence should still be precluded as its prejudicial effect substantially outweighs any probative value.

**F.**     **The QAD and IAB Reports Constitute Inadmissible Hearsay**



---

[26] *See, e.g.*, PTX 66, 81.

reliability to justify its admission. *LeRoy v. Sabena World Airlines*, 344 F.2d 266, 272 (2d Cir. 1965).  Although trustworthiness and reliability of a report admitted under Rule 803(8)(B) is presumed and is to be contested by the opponent of the evidence, before the Court can presume trustworthiness, it must determine that the report contains factual findings based upon a factual investigation. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988).

That is not so here.  In *Beech* the court precluded a New York City Police Department Internal Affairs Bureau ("IAB") report that the plaintiff claimed would have supported his allegations of retaliation.  In fact, the *Beech* Court held the IAB report did not contain factual findings resulting from a factual investigation, and thus was not covered by the provisions of Fed. R. Evid. 803(8)(B).



### G. The danger of undue prejudice outweighs any probative value

Even assuming that the reports bear sufficient *indicia* of trustworthiness – which they do not – they should still be precluded under Rule 403 because their probative value is substantially outweighed by the danger of unfair prejudice.  "Before finding such evidence admissible, the Court must "consider the quality of the report, its potential impact on the jury, and the likelihood that the trial will deteriorate into a protracted an unproductive struggle over how the evidence

admitted at trial compared to the evidence considered by the agency." *Cook v. Hatch Assocs.*, 2007 U.S. Dist. LEXIS 31558, *8 (W.D.N.Y. 2007)(citing *Paolitto*, 151 F.3d at 65.

Here because the reports were authored by divisions of the New York City Police Department they would undoubtedly be presented to the jury in "an aura of special reliability and trustworthiness" that is not commensurate with their actual reliability, and thus they must be precluded. *United States v. Fosher*, 590 F.2d 381, 383 (1st Cir. 1979). Moreover, a jury "may [be] influenced by the official character of [a] report [and] afford it greater weight than it [is] worth." *Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19, 23 (6th Cir. 1984). The QAD Report and the Department Advocate's Charges and Specifications are not even a final ruling by the NYPD; they constitute interim, prosecutorial documents, not a final finding of fact. The NYPD's position must await an administrative trial on the associated charges.

Should the Court deem proof of the truth of Schoolcraft's allegations relevant and admissible at all – and it should not – then Schoolcraft should be required to prove the truth with direct evidence of wrongdoing. He may not rely on inferences drawn by investigators, based on hearsay and other sources that are not before the jury. Moreover, introducing the report would necessitate a min-trial focused on the bases for the conclusions in the report (which itself is about a collateral matter) and the reliability of the report itself and the nature of the sources on which it relied. Such a mini-trial would be prejudicial, confusing and a waste of time.

Indeed, all of plaintiff's evidence of other misconduct, whether involving these defendants or other officers, would necessitate mini-trials on their truth. Courts exclude evidence under Rules 403 and 404(b) when it would lead to protracted mini-trials for the jury to be able to fully consider the truth of the accusations. *See Hardy*, 629 F. Supp. 2d at 197-198. ("Nor will the Court allow this trial to be sidetracked by several mini-trials on the veracity of

civilian complaints that have been investigated and found to be of no substance."). The Second Circuit has affirmed the exclusion of government reports offered to prove other misconduct, under Rule 403 and 404(b), stating as follows:

> Even if the report was admissible, however, the district court did not abuse its discretion in holding, in the alternative, that the report should be excluded under Fed.R.Evid. 403 because the likelihood that it would confuse the jury and protract the proceedings outweighed its probative value. *United States v. Robinson*, 560 F.2d 507 (2 Cir. 1977), *cert. denied*, 435 U.S. 905, 55 L. Ed. 2d 496, 98 S. Ct. 1451 (1978). . . . . [A]s a so-called government report which in fact was incomplete and based largely on hearsay, the report would have been presented to the jury in "an aura of special reliability and trustworthiness" which would not have been commensurate with its actual reliability. *United States v. Fosher*, 590 F.2d 381, 383 (1 Cir. 1979); *see United States v. Costello*, 221 F.2d 668, 674 (2 Cir. 1955), *aff'd*, 350 U.S. 359, 100 L. Ed. 397, 76 S. Ct. 406 (1956); Weinstein and Berger, 1 Weinstein's Evidence P 403(04) (1980). *Third, the admission of the report would have been likely to protract an already prolonged trial with an inquiry into collateral issues regarding the accuracy of the report and the methods used in its compilation. John McShain v. Cessna Aircraft Co.*, 563 F.2d 632, 636 (3 Cir. 1977).

*New York v. Pullman, Inc.*, 662 F.2d 910, 915 (2d Cir. N.Y. 1981) (emphasis added).



Further, any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. As noted, the jury might be misled into thinking that all of plaintiff's claims have merit, simply because some of his complaints were found to be validated by this Court.  Additionally, as shown above, plaintiff should be precluded from offering any evidence concerning defendants' disciplinary histories.  Here, the QAD reports contain and rely upon the defendants' disciplinary histories, including unsubstantiated allegations.  The QAD reports contains the investigator's findings and opinions concerning issues – including issues of credibility -- that are ultimately for the jury to decide, thereby usurping the jury's function and causing confusion.

Nor will a limiting instruction alleviate the unfair prejudice created by introduction of the QAD reports and IAB reports. The jury might feel compelled to rely upon the determinations contained therein instead of relying upon their own independent judgment. *See, e.g., Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 324 (S.D.N.Y. 2009) (precluding agency report on grounds of the danger of unfair prejudice because the jury will give undue weight to the agency's conclusions, and thus should be excluded under FRE 403.)

Finally, there is little probative value in the QAD's and IAB's conclusory statements regarding the same evidence to be presented to the jury.  "To admit the reports under these circumstances would amount to admitting the opinion of an expert witness to what conclusions the jury should draw, even though the jury had the opportunity and the ability to draw its own conclusions from the evidence." *Cook*, 2007 U.S. Dist. LEXIS 31558, at *8; *Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1309 (8th Cir. Mo. 1984) (recognizing that the dangers of prejudicing, confusing, misleading the jury and unduly delaying trial if an agency report is admitted are particularly present in a jury trial versus bench trial); *see also Paolitto*, 151 F.3d at

65 (affirming district court's exclusion of a state employment agency's determination of no probable cause); *Hall v. Western Prod. Co.*, 988 F.2d 1050, 1058 (10th Cir. 1993) (affirming district court's decision to exclude a state agency report under Rule 403 where "all the evidentiary matter before the [state agency] could be presented to the jury" and thus the sole purpose would be "to suggest to the jury that it should reach the same conclusion" as the agency); *see also* City Defendants' Memorandum of Law in  Support of Motion to Exclude Expert Testimony, at 5-7 (demonstrating that experts may not usurp the province of the judge and jury).

Accordingly, because the reports following the investigation into plaintiff's myriad allegations of misconduct do not meet the requirements of rule Fed. R. Evid. 803(8)(B) and/or 403, they must be precluded.

### H.    The Mollen Commission Report Should be Excluded

The Commission Report ("Mollen Report") (PTX 79) should be precluded because (a) it is irrelevant to plaintiff's claims; (b) admission of the report would violated Rule 803; and (c) any probative value would be substantially outweighed by the undue prejudice to defendants.

The Mollen Report concerns an investigation into police misconduct that took place decades ago.  Conduct of members of the NYPD in or around early 1990's has no relevance to conduct of the police department today, which is comprised of an entirely new and different police force in a different climate.  Given the attenuated nature of the report, plaintiff should be precluded from introducing it as a means of evidencing the alleged culture of the NYPD today, or for any purpose.

Moreover, the Mollen Report should be precluded for the added reason that it similarly lacks the requisite trustworthiness required by Fed.R.Evid. Rule 803.  The Mollen Report is fraught with opinions and conclusions of an investigator, and concern issues that are ultimately

for the jury to decide.  In view of the lack of relevance, trustworthiness and prejudicial effect, the

report should be precluded.  *See, e.g, Williams v. City of New York*, No. 94 Civ. 6234,

unpublished transcript at 85 (S.D.N.Y. Sept. 6, 1996)(Preska, J.) (cited in *Shaw v. City of New*

*York*, 1997 U.S. Dist. LEXIS 4901 (S.D.N.Y. 1997))(precluding plaintiff from proffering

excerpts from the Mollen Commission Report as to the "code of silence" to go to the credibility

of police officer witnesses, finding that the "probative value of the Report is far outweighed by

the extreme prejudice.. . . . It has no relationship to the specific issues or persons in this case. Its

probative value is very, very slim, and its prejudicial value is very, very high. Accordingly, it

will not be admitted."); *Jackson v. City of New York*, No. 93 CV 174, unpublished order, *2

(E.D.N.Y. April 24, 1996)(Dearie, J.)(bifurcating plaintiff's claims against the individual police

officers from plaintiff's Monell claim against the City and finding, *inter alia,* that "the admission

of all or parts of the Mollen Commission Report could prejudice individual defendants in the

upcoming trial."


## POINT VII

### PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING ANY NEWSPAPER ARTICLES

Plaintiff should be precluded from introducing any newspaper articles to support his

claims, as they constitute inadmissible hearsay, and further, are incomplete.  "Newspaper articles

are hearsay when introduced to prove the truth of the matter asserted, and must not be admitted."

*Media Alliance, Inc. v. Mirch*, 2012 U.S. Dist. LEXIS 6332, *3-4 (N.D.N.Y Jan. 19, 2012)

(quoting *Delrosario v. City of New York*, 2010 U.S. Dist. LEXIS 20923 (S.D.N.Y. 2010)) (citing

*inter alia, McAllister v. N.Y. City Police Dep't*, 49 F. Supp. 2d 688, 706 n. 12 (S.D.N.Y.1999)

("Newspaper articles are hearsay, . . . and . . . are not admissible evidence of New York City

Police Department policy or custom"); *see also Dockery v. Tucker*, 2006 U.S. Dist. LEXIS 97826 (E.D.N.Y. 2006) (in support of a Monell claim, plaintiff may not rely upon an array of newspaper articles and judicial decisions discussing general police misconduct).

"Courts rarely allow newspaper articles into evidence to prove the truth of the statements contained therein." *United States Football League v. National Football League*, 1986 U.S. Dist. LEXIS 25390 (S.D.N.Y. 1986).  "Indeed, it is not uncommon for a trial court to summarily reject

are part of the same fax transmission and internet posting as PTX 59."  Should the Court permit plaintiff to offer PTX 59, then defendants must also be allowed to introduce Exhibit G into evidence to complete the document.

**POINT VIII**

**PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING EVIDENCE RELATING TO THE NYPD'S PRESENCE IN JOHNSTOWN**

By the Court's Opinion dated May 5, 2015, Your Honor dismissed all claims against former defendant Trainor.[27]  Plaintiff's allegations against Captain Trainor concerned his alleged

---

[27] *See, e.g.,* PTX 35, 46, 49-55, 57, 60, 62, 72, 308, 316.

involvement in the NYPD visits to Schoolcraft's Johnstown residence, not the events in Schoolcraft's apartment on October 31, 2009.  See TAC ¶ 216.  Since Schoolcraft's First Amendment claim with respect to his post-suspension speech was dismissed (Section IV.B.ii of the Opinion), all evidence concerning Defendant Trainor or the Johnstown visits must be precluded.[28]

### POINT IX

**PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING ANY EVIDENCE THAT DEFENSE ATTORNEYS ARE ATTORNEYS FOR THE CITY AND THAT THE CITY MAY INDEMNIFY A DEFENDANT**

Plaintiff should be precluded from referring to defense attorneys as "City attorneys" or "attorneys for the City," and from offering evidence of indemnification of any defendant by the City.  Referring to defense counsel as City attorneys would be prejudicial to defendants as it may create the impression for the jury that any potential verdict against them would be paid by the City of New York, which is commonly viewed as a "deep pocket" for the purposes of any potential judgment.  This unfortunate prejudice is precisely the concern that motivated the drafters of the Federal Rules of Evidence to include Rule 411, which prohibits the admission of evidence of a defendant's liability insurance.  See Fed. R. Evid. 411 Advisory Committee's Note ("More important, no doubt, has been the feeling that knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds. McCormick § 168; Annot., 4 A.L.R.2d 761.").

Moreover, evidence of the City's potential indemnification should be precluded because it is not relevant.  See Hancock v. City of New York, et al., 10 Civ. 7989 (JMF), Motion In Limine

---

[28] Defendants reserve their rights, however, to introduce any evidence concerning the Johnstown visits in defense of plaintiff's damages claims.

Rulings, *at Docket Entry No.* 53 (S.D.N.Y. Nov. 5, 2013)(precluding plaintiff from admitting evidence regarding the City's potential indemnification of the individual defendants); *Edwards v. City of New York*, 2011 U.S. Dist. LEXIS 75300, *14-15    (E.D.N.Y. July 13, 2011)("Indemnification is not relevant to any issue before the jury and plaintiff will not be permitted to inform the jury that defendant might be indemnified by the City"); *Jean-Laurent v. Wilkinson*, 05 Civ. 583 (VM), 2009 U.S. Dist. LEXIS 20472, at *8 (S.D.N.Y. Mar. 13, 2009)(precluding plaintiff from mentioning City's potential indemnification of officers); *Williams v. McCarthy*, 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, at *24-25 (S.D.N.Y. Oct. 25, 2007) (precluding admission at trial of evidence of potential indemnification of defendant police officers by the City of New York on relevancy grounds)(internal citations omitted); *see also McGuire v. Bridgeport & Port Jefferson Steamboat Co.*, 00 Civ. 5951 (WK), 2001 U.S. Dist. LEXIS 19753, at *4 (S.D.N.Y. Nov. 29, 2001)(finding indemnification evidence not relevant at trial); *Provost v. Newburgh*, 262 F.3d 146, 164 (2d Cir. 2001)(holding that it was improper for the district court to instruct the jury to consider the individual defendant's ability to pay in determining punitive damages aware where the defendant did not offer evidence of his financial resources at trial.).

Defendants propose two alternative solutions.  First, defendants respectfully requests that their attorneys be referred to as merely "defense counsel" or "attorneys for the defendants." Second, if and only if the Court determines that some additional association beyond the first suggestion is appropriate, defendants suggest an alternative which has previously been adopted in the U.S. District Court for the Southern District of New York.  In *Williams v. McCarthy*, Judge Shira A. Scheindlin identified counsel for the individual police officer defendants as attorneys from the Corporation Counsel.  2007 U.S. Dist. LEXIS 79151.  The aforementioned

suggestions are reasonable and will adequately guard against the undue prejudice that would ensue if plaintiff's counsel were permitted to refer to defense counsel as "City attorneys", "attorneys for the City", "the City," or "Corporation Counsel for the City of New York."

In addition, plaintiff should not be permitted to mention or offer any evidence that the City of New York may indemnify defendants should a jury find him liable.  Such evidence and/or arguments lack any evidentiary value and would seriously prejudice defendants.  If the jury is permitted to assume that the City of New York will pay, the jury may not carefully assess issues of liability.  As previously stated, this is precisely the concern that motivated the drafters of the Federal Rules of Evidence to include Rule 411, which prohibits the admission of evidence of a defendant's liability insurance.  *See* Fed. R. Evid. 411 Advisory Committee's Note ("More important, no doubt, has been the feeling that knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds.").

Moreover, indemnification has no bearing on the facts of plaintiff's claims or damages. *See Mathie v. Fries*, 121 F.3d 808, 816 (2d Cir. 1997) (holding that the existence of an indemnification agreement is relevant only where individual defendants adduce evidence of their personal financial resources at trial); *Williams v. McCarthy*, 2007 U.S. Dist. LEXIS 79151 at *24-25 (precluding admission at trial of evidence of potential indemnification of defendant police officers by the City of New York on relevancy grounds).

Accordingly, plaintiff should be precluded from mentioning or introducing evidence that defense counsel are City attorneys and that the City may indemnify defendants.


## POINT X

## PLAINTIFF SHOULD BE PRECLUDED FROM REQUESTING A SPECIFIC DOLLAR AMOUNT FROM THE JURY.

While the Second Circuit has not adopted a flat prohibition of suggesting a specific dollar amount, it does disfavor specifying target amounts for the jury to award.  *Consorti v. Armstrong World Industries, Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995).  Such suggestions unlawfully anchor the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence.  *Id.*; *see also Mileski v. Long Island R.R. Co.*, 499 F.2d 1169, 1172 (2d Cir. 1974)("A jury with little or no experience in such matters, rather than rely upon its own estimates and reasoning, may give undue weight to the figures advanced by plaintiff's counsel . . .").  The Court in *Consorti* went on to state:

> A jury is likely to infer that counsel's choice of a particular number is backed by some authority or legal precedent. Specific proposals have a real potential to sway the jury unduly. . . . We encourage trial judges to bar such recommendations.

*Consorti*, 72 F.3d at 1016.  As such, plaintiff should be precluded from suggesting a specific dollar amount to the jury during his opening statement, during the testimony of any witness and/or during summation.

## POINT XI

### DEFENDANTS RESERVE THEIR RIGHT TO FILE SUPPLEMENTAL MOTIONS *IN LIMINE.*

The City Defendants respectfully reserve their right to object to any *in limine* motions submitted by plaintiff and to file supplemental motions *in limine*.  As set forth more fully in the motions *in limine* filed by defendant Steven Mauriello, numerous exhibits on plaintiff's exhibit list were not identified by plaintiff or otherwise available to the City defendants until September 17, 2015 (and at least one has still not been identified).  The City defendants specifically reserve the right to make additional motions *in limine* directed at such exhibits.  The City defendants also reserve the right to object to evidence at trial whether or not such objection is raised by motion in

limine.  In addition, the City defendants reserve the right to supplement their trial witness and exhibit lists if necessary, in light of the Court's rulings on any motions *in limine*.

## <u>CONCLUSION</u>

For the reasons set forth above, defendants respectfully submit that their motion *in limine* should be granted in their entirety, and that the Court grant such other and further relief as it deems just and proper.

Dated:      New York, New York
            September 21, 2015

Respectfully submitted,

ZACHARY W. CARTER
Corporation Counsel of the
 City of New York
*Attorneys for City Defendants*
100 Church Street, Room 3-174
New York, New York 10007
(212) 356-2344

By:      _____/s/ Alan Scheiner\_\_\_\_\_
            Alan Scheiner
            *Senior Counsel*
            Cheryl Shammas
            *Senior Counsel*
            Kavin Thadani
            *Senior Counsel*
            Special Federal Litigation Division

47