UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ADRIAN SCHOOLCRAFT,

                Plaintiff,                          10 CV 6005 (RWS)

   -against-


THE CITY OF NEW YORK, DEPUTY CHIEF MICHAEL MARINO, Tax Id. 873220, Individually and in his Official Capacity, ASSISTANT CHIEF PATROL BOROUGH BROOKLYN NORTH GERALD NELSON, Tax Id. 912370, Individually and in his Official Capacity, DEPUTY INSPECTOR STEVEN MAURIELLO, Tax Id. 895117, Individually and in his Official Capacity CAPTAIN THEODORE LAUTERBORN, Tax Id. 897840, Individually and in his Official Capacity, LIEUTENANT JOSEPH GOFF, Tax Id. 894025, Individually and in his Official Capacity, SGT. FREDERICK SAWYER, Shield No. 2576, Individually and in his Official Capacity, SERGEANT KURT DUNCAN, Shield No. 2483, Individually and in his Official Capacity, LIEUTENANT CHRISTOPHER BROSCHART, Tax Id. 915354, Individually and in his Official Capacity, LIEUTENANT TIMOTHY CAUGHEY, Tax Id. 885374, Individually and in his Official Capacity, SERGEANT SHANTEL JAMES, Shield No. 3004, AND P.O.'s "JOHN DOE" #1-50, Individually and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown) (collectively referred to as "NYPD defendants"), JAMAICA HOSPITAL MEDICAL CENTER, DR. ISAK ISAKOV, Individually and in his Official Capacity, DR. LILIAN ALDANA-BERNIER, Individually and in her Official Capacity and JAMAICA HOSPITAL MEDICAL CENTER EMPLOYEE'S "JOHN DOE" # 1-50, Individually and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown),
Defendants.
------------------------------------------------------------------------X

## MEMORANDUM OF LAW

*Of Counsel*:   Brian E. Lee

**MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE BY DEFENDANT ISAK ISAKOV, M.D. TO PRECLUDE DR. ROY LUBIT FROM TESTIFYING THAT PLAINTIFF SUFFERS FROM POST-TRAUMATIC STRESS DISORDER (PTSD)**

**PRELIMINARY STATEMENT**

This Memorandum of Law is respectfully submitted on behalf of defendant ISAK ISAKOV, M.D. ("Isakov") in support of his motions *in limine* to preclude plaintiff's expert Dr. Roy Lubit from testifying that the plaintiff developed Post-Traumatic Stress Disorder as a result of his hospitalization at Jamaica Hospital.

**USE OF EXHIBITS SUBMITTED BY JAMAICA HOSPITAL MEDICAL CENTER**

For the purpose of judicial economy, since this motion parallels the like motion of the co-defendant Jamaica Hospital Medical Center (hereafter "JHMC") , exhibit references are to the exhibits submitted by JHMC in the motion submitted under Docket Number 491.

**PERTINENT FACTS**

Dr. Lubit's has provided an opinion that the plaintiff developed Post Traumatic Stress Disorder as a result of the events forming the subject matter of this action. However, this opinion is clearly inadmissible as it is based solely upon the symptoms the plaintiff reported experiencing when he interviewed him on a single occasion (JHMC Exhibit AA, pp. 196-197, 305, 379) . At his deposition, Dr. Lubit admitted that he had not administered any tests to the plaintiff, such as the Life Stressor Checklist, Life Experience Survey, Critical Incident History Questionnaire, Work Environment Inventory or Impact of Event Scale to determine the cause of his alleged PTSD symptoms (JHMC Exhibit AA, p. 199-200).  He also did not review any medical records pertaining to the care and treatment the plaintiff

received before October 31, 2009 to determine if the plaintiff may have had PTSD before the police entered his home (JHMC Exhibit AA, p. 285-286).  He also did not review the records of the only psychiatrist who saw the plaintiff shortly after he was discharged from JHMC (JHMC Exhibit Z).  Furthermore, he testified that he was not aware of any literature or case studies in which involuntary hospitalization had caused a patient to develop PTSD (JHMC Exhibit AA, p. 209).

When asked if he considered whether the plaintiff might have been suffering from PTSD as a result of job stress he had experienced in the past, Dr. Lubit testified that he considered it, but "I'm not aware of that being a reasonable explanation given the timing" (JHMC Exhibit AA, p. 201).

Dr. Lubit's opinion that the plaintiff developed PTSD is undermined by plaintiff's deposition testimony.  On September 27, 2013, approximately one year before Dr. Lubit interviewed him for the purposes of this lawsuit, the plaintiff specifically testified at his deposition that he had never been diagnosed with Post-Traumatic Stress Disorder (JHMC Exhibit L, pp. 470-471).  He also testified as follows (JHMC Exhibit L, pp. 411-417):

> Q: Relating to your admission at Jamaica Hospital, what injuries or damages do you say you sustained as a result of that admission?
>
> A: You mean physical injuries?
>
> Q: Anything.
>
> A: Anything besides-
>
> Q: What damages.

A: Loss of freedom being one of them.

Q: OK

A: I was-I was - I was never attacked. . . Physically, when I got out I was sick for a while and I believe it was something--- a hospital.

Q: Bug.

A: Yeah, I got a hospital bug. . ..

              *   *   *

Q: Are you claiming any other consequences as a result of your admission to Jamaica Hospital?

Mr. Smith: Objection to form.

Q: I mean impact on you.

Mr. Smith: Objection to the form.

A: Okay, so-yeah, there's a record of me being locked up for six days in a psych ward.

Q: Okay. How has that affected you?

A: Well, it's affected me that I haven't been allowed to contest it, or I believe I'm contesting it but I would like to have it expunged in some way, corrected and I don't believe I've been allowed that and I don't know if I ever will be.

Q: Other than it being on record and your ability or

inability to contest it, has that affected you in any other way?

Mr. Smith: Objection to form.

A: It's disconcerting. You feel powerless that anybody can accuse you of something and make false statements that, you know, this record exists because of that. It feels like there should be a-some mechanisms to, other than suing.

    \*  \*  \*

Q: Since your discharge from Jamaica Hospital, have you ever consulted a mental health professional? By that I mean psychiatrist, psychologist, social worker?

A: Yes.

Q: Who is that?

    \*  \*  \*

A: Dr. Luell, in Forest Hills.

Q: How many times did you see Dr. Luell?

A: Once.

Q: Other than Dr. Luell, have you seen any other mental health practitioner since being discharged from Jamaica Hospital?

A: No.

Thus, in response to questions asking plaintiff to specify his alleged injuries, the plaintiff

never testified about experiencing any of the "symptoms" Dr. Lubit documented in his report. More significantly, according to the report of Dr. Steven Luell (JHMC Exhibit Y), a treating physician who is not a party to this case, and a Diplomate of the American Academy of Experts in Traumatic Stress (JHMC Exhibit Y), the plaintiff complained of stomach distress, anxiety, difficulty relaxing and insomnia, and his mood was depressed. Again, he never complained of any "symptoms" consistent with PTSD, or even mentioned the "symptoms" he had apparently conveyed to plaintiff's expert. Dr. Luell then diagnosed the plaintiff with Adjustment Disorder with Mixed Emotional Features, Rule Out Obsessive Compulsive Personality Disorder-not PTSD. Dr. Luell recommended that the plaintiff undergo a comprehensive psychiatric evaluation and counseling, but it does not appear that the plaintiff accepted Dr. Luell's recommendations.

Given the absence of any testimony that the plaintiff experienced symptoms consistent with PTSD, the absence of any indication that the plaintiff complained of those symptoms to the only psychotherapist who treated him after he was discharged from JHMC, his failure to undergo any treatment since having been discharged from the hospital, Dr. Lubit's failure to perform any diagnostic tests to assess the plaintiff for PTSD and Dr. Lubit's failure to adequately rule out other potential causes of plaintiff's alleged symptoms, it is respectfully submitted that Dr. Lubit's opinion that the plaintiff developed PTSD as a result of the events that are the subject of this action is unreliable and does not pass muster under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786 (1993). Accordingly, Dr. Lubit's opinion that the plaintiff developed PTSD should be excluded.

As will be seen, none of this is sufficient to permit Dr. Lubit to provide an opinion that Mr. Schoolcraft suffers from Post Traumatic Stress Disorder ("PTSD").

## POINT I

### PLAINTIFF'S EXPERT'S OPINION THAT THE PLAINTIFF DEVELOPED POST-TRAUMATIC STRESS DISORDER IS UNRELIABLE AND THEREFORE INADMISSIBLE

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It states,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert. . . may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

F.R.E. 702; *see Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786 (1993).

Rule 702 lays out a three-step approach to determine whether the testimony of a party's proffered expert should be deemed admissible: 1) the court must review the relevance of the proposed testimony; 2) the court must ensure that the expert is qualified to render an opinion; and 3) the court must inquire "whether a proffered expert opinion has the required indicia of scientific reliability." *Vicusi v. Procter & Gamble*, 2007 U.S.Dist.LEXIS 51307, *14-16 (E.D.N.Y. 2007), aff'd, 2009 U.S.App.LEXIS 20961 (2d Cir. 2009)); *Berk v. St. Vincent's Hospital and Medical Center*, 380 F.Supp.2d 334, 349-351 (S.D.N.Y. 2005). For the purposes of this motion, defendant will assume that plaintiffs have met the first and second prongs of Rule 702.

The third prong of Rule 702 pertains to whether the expert's opinion is reliable and

rests upon a sufficient foundation to be admissible. *See Daubert*, 509 U.S. at 589, 113 S.Ct. 2786. The trial judge must "ensure that an expert's testimony rest on a reliable foundation." *Plew v. Limited Brands, Inc.*, 2012 U.S.Dist.LEXIS 14966, *12 (S.D.N.Y. 2012) *(citing Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167 (1999)); *see also Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002); *Harkabi v. Sandisk Corp.*, 2012 U.S.Dist.LEXIS 32833, *8-9 (S.D.N.Y. 2012); *Smith v. Target Corp.*, 2012 U.S.Dist.LEXIS 16526, *27 (N.D.N.Y. 2012). For expert testimony to be reliable, it must be based on "sufficient facts or data." F.R.E. 702. The party seeking to introduce expert testimony bears the burden of establishing its reliability. *Harkabi v. Sandisk Corp.*, 2012 U.S.Dist.LEXIS 32833 at *9.

To ensure reliability, the Court must "undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos,* 303 F.3d at 267; *see also Lewis v. FMC Corp.*, 786 F.Supp.2d 690, 699 (W.D.N.Y. 2011) (Testimony must be based upon "sufficient facts or data"). The Court must be satisfied that the opinion is reliable enough to be presented to a jury. *Smith v. Target Corp.*, 2012 U.S.Dist.LEXIS 16526 at *29; *Emig v. Electrolux Home Prod., Inc.*, 2008 U.S.Dist.LEXIS 68811 (S.D.N.Y. 2008).

In contrast, expert testimony should be excluded "if it is speculative or conjectural." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21-22 (2d Cir. 1996); *see also Harkabi*, 2012 U.S.Dist.LEXIS 32833 at *10. Indeed, Rule 702 was designed to guard against "the presentation of insufficiently reliable evidence to the finder of fact." *Conte v. Newsday, Inc.*,

2010 U.S.Dist.LEXIS 143368, *13 (E.D.N.Y. 2010); *Tokio Marine and Nichido Fire Ins. Co., Ltd. v. Russo & Apoznanski*, 2011 U.S.Dist.LEXIS 135987, *35 (E.D.N.Y. 2011). The question of whether an expert report and testimony based thereon are "sufficiently reliable" to assist the trier of fact is an issue that the Court (not the jury) must decide. *Conte v. Newsday, Inc.*, 2010 U.S.Dist.LEXIS 143368 at *15.

When an expert's opinion is based on data, a methodology or studies that are "simply inadequate to support he conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos*, 303 F.3d at 266 (emphasis added). Indeed, "it is critical that an expert's analysis be reliable at every step." *Id.* at 267. Daubert and its progeny "require the Court to reject opinion evidence bottomed upon speculation and guesswork." *Lewis v. FMC Corp.*, 786 F.Supp.2d 690, 706 (W.D.N.Y. 2011). The judge should exclude expert testimony if the opinion "lacks good grounds" for the expert's conclusions. *In Re: Xerox Corp. Securities Litigation*, 764 F.Supp.2d 402, 407 (D.Conn. 2010) (*citing Amorgianos*, 303 F.3d at 267). As discussed in detail above, Dr. Lubit's conclusion that the plaintiff developed Post-Traumatic Stress Disorder is unreliable, and is therefore inadmissible.

In *Discepolo v. Gorgone*, 399 F.Supp.2d 123, 125 (D.Conn. 2005), the Court found that plaintiff's expert's opinion that the plaintiff suffered from Post-Traumatic Stress Disorder ("PTSD") was reliable because the expert not only interviewed the plaintiff and others, but also administered several tests, including the Personal Assessment Inventory, the Trauma Symptom Inventory and the Detailed Assessment of Posttraumatic Stress. In that case, the Court went through a painstaking analysis as to the purpose of each of those tests and how

the expert determined the reliability of those tests. The Court then held that the expert's opinion that the plaintiff developed PTSD as a result of the sexual assault at issue was reliable because the expert's "methodology for diagnosing PTSD generally and as utilized in diagnosing plaintiff, particularly because coupled with psychological testing, record review, and other interviewing, is a generally accepted methodology in the community of psychiatrists and psychologists for making a medical diagnosis." *Discepolo v. Gorgone*, 399 F.Supp.2d 123, 127 (D.Conn. 2005). As such, the expert in Discepolo satisfied the *Daubert* criteria. *See also Shea v. Long Island Railroad Co.*, 2009 U.S.Dist.LEXIS 43748 (S.D.N.Y. May 21, 2009) (expert's opinion as to whether the plaintiff suffered from PTSD was reliable because the expert had administered the MMPI-2 test which measured components of PTSD, compared those results to model results, and reviewed records from the plaintiff's treating mental healthcare providers, in addition to conducting a clinical interview).

However, opinion based upon "little more than temporal correlation" between two events is inadmissible. *Washburn v. Merck & Co.*, 2000 U.S.App. LEXIS 8601 (2d Cir. 2000). Expert testimony based on nothing more than the logical fallacy of *post hoc ergo propter hoc* generally does not pass muster under *Daubert*. *See Discover Financial Services v. VISA, U.S.A., Inc.*, 582 F.Supp.2d 501 (S.D.N.Y. 2008); *see also In re Rezulin Prods. Liab. Litig.*, 369 F.Supp.2d 398, 411 n.92 (S.D.N.Y. 2005); *Lloyd v. United States*, 2011 U.S.Dist. LEXIS 36237 (S.D.N.Y. 2011).

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court grant defendant's motion in its entirety, together with such other and further relief as this Court

deems just and proper.

Dated: Lake Success, New York
September 21, 2015

                                   Respectfully submitted,
                                   IVONE, DEVINE & JENSEN, LLP

By: */s/ Brian E. Lee*

                                   Brian E. Lee (BEL 9495)
                                   Attorneys for Defendant
                                   ISAK ISAKOV, M.D.
                                   2001 Marcus Avenue
                                   Lake Success, New York 11042
                                   (516) 326-2400