UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ADRIAN SCHOOLCRAFT,

                                        Plaintiff,

            -against-

                                                            10-CV-06005 (RWS)

THE CITY OF NEW YORK, et al.,

                                        Defendants.

-----------------------------------------------------------------X


### DEPUTY INSPECTOR STEVEN MAURIELLO'S
### MEMORANDUM IN SUPPORT OF HIS MOTION IN LIMINE

SCOPPETTA SEIFF KRETZ & ABERCROMBIE
Attorneys for Defendant STEVEN MAURIELLO
444 Madison Avenue, 30th Floor
New York, NY  10022
wakretz@seiffkretz.com
212-371-4500

Walter A. Kretz, Jr., (WK-4645)
Patrick C. Nolan
                    Of Counsel

## Table of Contents

Table of Authorities                                                                  iii

Preliminary Statement                                                                 1

Status of the Case                                                                    6

POINT I

Plaintiff has not timely or properly or adequately identified his
exhibits in the JPTO; an order of preclusion and/or adjournment
of the trial are the appropriate sanctions                                           7

A.        Exhibits not timely or properly identified                                 7

B.        Exhibits not timely or adequately described                               16

C.        Preclusion and/or adjournment of trial are warranted                      20

POINT II

Plaintiff should be precluded from reading any testimony provided
in interviews by QAD and IAB as it is not trustworthy or reliable;
even if the testimony were otherwise deemed
eligible to be read into evidence, plaintiff should be precluded from
reading it or any other testimony for failing to specify the portions
to be read so that defendants could assess the portions identified,
assert objections and/or specify related portions to also be read;
in any event, plaintiff should be precluded from reading any non-party
testimony at all, unless the requisite showing also has been
made pursuant to FRCP 32(a)(4) that the witness is unavailable             20

POINT III

The QAD and IAB reports of their investigations into the events
at issue should not be referred to at trial and their contents
should not be admitted into evidence                                                23

A. The reports do not satisfy FRE 803(8) or FRE 403                                  24

B. The reports do not satisfy FRE 803(8)                                            25

C. The reports do not satisfy FRE 403- The probative value of the
QAD and IAB reports is substantially outweighed by the danger of
unfair prejudice, confusion of issues, and misleading the jury          30


POINT IV
Plaintiff should be precluded from introducing into evidence or
referring to the charges and specifications issued to Steven
Mauriello or any other officer by the NYPD Department
Advocate's Office                                                        32


POINT V
Plaintiff should be precluded from introducing into
evidence or referring to a letter of reprimand issued to
Steven Mauriello in October 2008                                        33


POINT VI
Plaintiff must be precluded from attempting to introduce
into evidence any roll call recordings that have not been
specifically identified as exhibits in the JPTO and/or for which
specific portions have not been designated                              32

POINT VII
Plaintiff must be precluded from introducing into evidence
any recording made by him but not yet produced by him in discovery      36

POINT VIII
Plaintiff should be precluded from introducing into evidence
the February 18, 2010, and April 1, 2010, recordings included in
PTX 314 in the proposed JPTO                                            37

POINT IX
JHMC should be precluded from eliciting testimony from its expert,
Dr. Robert Levy, or in any way introducing specified passages from
Levy's report, expressing unfounded, extremely prejudicial opinions,
which inappropriately usurp the function of the jury                    38

TABLE OF AUTHORITIES

Beechwood Restorative Care Center v. Leeds,
856 F. Supp 2d. 580 (W.D.N.Y 2012)                                   24

Bridgeway Corp. v. Citibank, d.b.a. Citicorp, N.A.,
201 F.3d 134 (2d. Cir. 2000)                                        23, 24

City of New York v. Pullman, 662 F.2d 910, 915 (2d Cir. 1981)       30

Davis v. City of New York,
959 F.Supp. 2d 427 (S.D.N.Y. 2014)                                  27

Estate of Jaquez v. City of New York,
No. 10 Civ. 2881(KBF), 2015 WL 2165981 (S.D.N.Y. May 8, 2015)       40

Fonar Corp. v. Magnetic Plus,
175 F.R.D. 53 (S.D.N.Y. 1997)                                       20

Gentile v. County of Suffolk,
926 F.2d 142 (2d Cir. 1991)                                         23, 26

Glowczenski  v. Taser International,
928 F. Supp. 2d 564 (E.D.N.Y. 2013)                                 24, 25

National Resources Defense Council, Inc. v. U.S. Food and Drug Admin.,
760 F.3d 161, 167 (2d Cir. 2014)                                    29

Nibbs v. Goulart, 822 F. Supp. 2d 339 (S.D.N.Y. 2011)               33

Pacheco v. City of New York,
234 F.R.D. 53 (E.D.N.Y. 2006)                                       32

Parsons v. Honeywell,
929 F.2d 901 (2d Cir. 1991).                                        24

Rodriguez v. Modern Handling Equipment of NJ, Inc., et. al.,
604 F.Supp 612 (S.D.N.Y. 2009)                                      25

U.S. v. Banky-Alli, 2005 WL 3116754 (2d Cir. 2005)                  24, 25

U.S. v. Durrani, 659 F. Supp. 1183 (D. Conn. 1987)                  26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ADRIAN SCHOOLCRAFT,

                                        Plaintiff,

               -against-

                                                        10-CV-06005 (RWS)

THE CITY OF NEW YORK, et al.,

                                        Defendants.
-------------------------------------------------------------X

### DEPUTY INSPECTOR STEVEN MAURIELLO'S MEMORANDUM
### IN SUPPORT OF HIS MOTION IN LIMINE

#### Preliminary Statement

               This memorandum is submitted in support of the motion in limine of

defendant Steven Mauriello.  In particular, defendant Mauriello seeks an Order

from the Court, directed principally at plaintiff (¶¶ i-x below) and defendant

Jamaica Hospital (¶ xi below):

        i)        Poorly Identified Exhibits -- precluding plaintiff from introducing at

trial any exhibits so poorly identified in the proposed Joint Pre-Trial Order, and so

belatedly and still poorly addressed by plaintiff thereafter, despite repeated

requests for clarification, as to make it unnecessarily burdensome to the point of

substantially prejudicial to defendants; we still do not know much of the evidence

plaintiff intends to present at trial (see Point I, infra); in the event the Court

extends plaintiff's deadline to provide proper identification of his proposed

exhibits, with specific designations of the evidence he intends to present,

defendant Mauriello respectfully requests that the trial date be adjourned so that

defendants can properly assess the specified evidence and prepare to address it;

defendant Mauriello otherwise reserves any objection he might have to the admissibility of such evidence or its use for impeachment purposes;[1]

  ii) <u>Failure to Designate Party Testimony</u> -- precluding plaintiff from reading into evidence (or playing any recording of) any testimony provided by any <u>party</u> to this action, whether in another trial, a deposition in this or another action, or in connection with any NYPD investigation or administrative proceeding, because plaintiff has failed to designate the portions of such testimony he intends to present (see Point II, <u>infra</u>); in the event the Court sets a new deadline for plaintiff to present such designations prior to trial, defendant Mauriello again respectfully requests an adjournment of the trial date and otherwise reserves any objection to the admissibility of the portions designated as well as the right to identify other related portions of the same testimony to be presented at the same time;

  iii) <u>Non-Party Testimony</u> -- precluding plaintiff from reading into evidence (or playing any recording of) any testimony provided by any <u>non-party</u> to this action, whether in another trial, a deposition in this or another action, or in connection with any NYPD investigation or administrative proceeding, absent, at a minimum,  the requisite showing that the non-party witness is unavailable (see Point II, <u>infra</u>); plaintiff also should be precluded from using such testimony of a non-party witness, even if unavailable, because plaintiff has failed to designate

---

[1] Remarkably, on September 17, 2015, which would have been the submission date of the motions in limine but for the illness of one of the defense counsel, plaintiff mailed to defendants a disk with copies of plaintiff's deposition exhibits 76 through 104, which had not previously been provided, despite repeated requests. Plaintiff also e-mailed to defendants, at the end of the day, copies of 38 of plaintiff's trial exhibits about which defendants had expressed objections. This late production resolved few of defendants' objections because, among other things, the exhibits often include several documents or recordings, and in many instances the exhibits are very lengthy and there is no telling what plaintiff might choose to introduce from them unless specific designations are provided of what portions are to be used. We address further below other deficiencies in plaintiff's descriptions and designations of his evidence.

the portions of the respective transcripts he would propose to read or the sections of the recordings he intends to play; in the event the Court permits plaintiff to provide such designations, defendant Mauriello again respectfully requests an adjournment of the trial date and otherwise reserves any objection to the admissibility of the portions designated as well as the right to identify other related portions of the same testimony to be presented at the same time;

    iv)    QAD and IAB Reports -- precluding plaintiff or any other party from introducing into evidence or referring to the reports issued by the NYPD Quality Assurance Division (QAD) and the NYPD Internal Affairs Bureau (IAB) (see Point III, infra); in varying degrees, each of these reports is untrustworthy; they recite and rely upon substantial hearsay, they rely upon testimony that is demonstrably false, and they fail to give due consideration to the efforts by plaintiff to deceive the investigators; they also would trigger the need to provide extensive testimony about numerous aspects of police procedure – in the street, in the precinct, in the borough commander's office, and so on; thus each would substantially lengthen the trial and create substantial risk of confusion for the jury; the reports also draw conclusions that not only are unfounded or of dubious validity, but also would usurp the function of the jury to assess credibility and make findings of fact;  in addition, there is evidence of improper influence on the efforts of the investigators that tainted their efforts and, ultimately, the trustworthiness of the reports; any evidence those offices gathered would not be covered by such a preclusion order, and the admissibility of such evidence would be determined on an item-by-item basis; in any event, plaintiff would not be precluded from introducing evidence in admissible form through proper witnesses; he would be

precluded from simply introducing a statement made in one of the reports, which inevitably would be given undue weight by a jury because it found its way into the report;

v)   Reference to QAD and IAB Investigations -- precluding plaintiff or any other party from making any reference to the investigations by QAD or IAB, except to the extent plaintiff alleges that any activity engaged in as part of the investigations or in response to them is evidence that supports his claims for liability and/or damages, and defendants seek to refute such allegations with related  details (see Point III, infra); for example, there is evidence of Schoolcraft meeting with QAD and officers getting contacted to appear at QAD prior to October 31, 2009, as well as disputed evidence of who may have found out about those contacts with QAD and what, if anything, might have been done by the defendants in response to that information; such matters are clearly relevant and we do not seek to preclude the introduction of such evidence;

vi)   Charges and Specifications -- precluding plaintiff from introducing into evidence or referring to the charges and specifications issued to Steven Mauriello or any other officer by the NYPD Department Advocate's Office purportedly as a result of the QAD and IAB investigations (see Point IV, infra);

vii)   Mauriello 2008 Letter of Reprimand -- precluding plaintiff from introducing into evidence or referring to a letter of reprimand issued to Steven Mauriello in October 2008 (PTX 33) (see Exhibit G to Kretz Declaration) as a result of a message he left with the NYPD Civilian Complaint Review Board (CCRB) when returning calls made to him regarding an incident involving one of the officers in his command (see Point V, infra);

4

viii)   <u>Roll Call Recordings Not Specified</u> -- precluding plaintiff from introducing into evidence, whether on his direct case or for impeachment purposes, any roll call recordings made by plaintiff or the corresponding transcripts that to date have not been specifically identified as exhibits, and for which the specific portions of the recordings and transcripts to be introduced at trial have not been designated (see Point VI, <u>infra</u>); if the Court permits plaintiff to identify specific recordings at this late date and to designate the portions of any such recordings he has not yet designated, defendant Mauriello respectfully requests an adjournment of the trial date, and otherwise reserves all objections to the admissibility of such evidence or its use for impeachment purposes, on grounds such as relevance and hearsay, and reserves the right to designate additional portions of the recording to be played at the same time;

ix)   <u>Unproduced Recordings</u> -- precluding plaintiff from introducing into evidence any recording made by him but not yet produced by him to the defendants (see Point VII, <u>infra</u>); to date, plaintiff has continued to produce recordings not previously known to exist, but he must now be precluded from making use of any recordings he may choose to produce hereafter;

x)   <u>Ferrara February and April 2010 Recordings</u> -- precluding plaintiff from introducing into evidence the February 18, 2010, recording (PTX 314) in the 81st Precinct made by an officer other than Schoolcraft because plaintiff has failed to designate the portions of the recording he would like to introduce into evidence (see Point VIII, <u>infra</u>); we believe the entire recording is inadmissible, but respectfully request that the Court direct plaintiff to designate the portions he wishes to introduce; and

xi)     Unfounded Opinions of Dr. Levy -- precluding defendant Jamaica

Hospital Medical Center (JHMC) or any other party to this action from introducing

into evidence the unfounded opinions set forth in two passages of the August 22,

2014, report of the JHMC expert, Dr. Robert H. Levy (Exhibit I to Kretz

Declaration), or offering any testimony in support of those opinions (see Point IX,

infra).

## Status of the Case

The Court's Opinion of May 5, 2015, ruling on the arguments

presented by the parties in their respective motions for summary judgment, has

resulted in the following claims remaining against defendant Mauriello:  unlawful

participation in the first entry into Schoolcraft's apartment for three minutes, and

failure to intervene in the subsequent actions of the other individual defendants,

despite the fact that Mauriello had left the apartment, did not re-enter the

apartment, and was subordinate to the Brooklyn North Deputy Chief who was in

charge at the scene and in Schoolcraft's apartment.

On September 18, 2015, the Court issued its Opinion resolving

motions for reconsideration submitted by the parties, and, among other things,

reinstated Defendant Mauriello's counterclaim for tortious interference by

Schoolcraft with his employment relationship with the NYPD.  That ruling is likely

to alter the proper treatment to be given to certain of the evidence for which we

seek an order of preclusion or some other sanction in this motion in limine.  In

addition, the decision requires additions to defendant Mauriello's exhibit and

witness lists.  On or before the submission date of the motions in limine, we will

supplement those lists for the JPTO, and will advise the Court of the changes, if

any, we would make in our position with respect to the admissibility of the evidence at issue.

## POINT I

### PLAINTIFF HAS NOT TIMELY OR PROPERLY OR ADEQUATELY IDENTIFIED HIS EXHIBITS IN THE JPTO; AN ORDER OF PRECLUSION AND/OR ADJOURNMENT OF THE TRIAL ARE THE APPROPRIATE SANCTIONS

A.   <u>Exhibits Not Timely Or Properly Identified</u>

Plaintiff should be precluded from introducing at trial any exhibits so poorly identified by plaintiff in the proposed Joint Pre-Trial Order, and so belatedly and still poorly addressed by plaintiff thereafter, despite repeated requests for clarification, as to make it unnecessarily burdensome to the point of substantial prejudice to defendants; we simply do not know what much of the evidence is that plaintiff intends to present at trial. Specifically, until September 17, 2015, plaintiff had provided inadequate descriptions of the trial exhibits he has numbered 66, 104, 302, 308, 309, 311, 313, 319, 321, 323, 327, 328, 329, 330, 331, 332, 336, 337, 338, 412 and 413. On September 17, plaintiff provided more revealing descriptions and copies of some of the exhibits, so we now know what they are. However, many of the exhibits are lengthy transcripts, recordings or documents, and plaintiff has failed to designate the portions of those exhibits he intends to introduce at trial. We therefore continue to be prejudiced by his failure to comply with the JPTO requirements, and adjournment of the trial and/or preclusion continue to be the appropriate sanctions.

| 66 | Confidential Attorney Eyes Only Productions filed under seal (PMX 16; PMX 144 & 170; PDX 169) | |

We did not know until September 17, 2015, what the documents are that plaintiff intends to include in this exhibit because they were filed as confidential motion exhibits with the Court and not provided to the defendants or described in the JPTO exhibit list. We now know that the exhibit contains over a dozen documents and a total of 151 pages. It includes the charges and specifications against Steven Mauriello (3 pages), a report by the Chief of Internal Affairs to the Police Commissioner (1 page), an Interim report from the Commanding Officer of IAB to the Chief of Internal Affairs (28 pages), excerpts from Schoolcraft's memo book (4 pages), pages from the Patrol Guide (6 pages), another copy of Mauriello's charges and specifications (3 pages), a memorandum from the Commanding Officer of QAD to the First Deputy Commissioner (2 pages), three investigating officer's reports (7 pages), an Endorsement Memo from the Deputy Commissioner of Strategic Initiatives to the Chief of the Internal Affairs Bureau (2 pages), the report of the QAD investigation into 81 Precinct Crime Reporting (61 pages) and numerous attachments and appendices (35 pages).

Frankly, it is ridiculous for plaintiff to include so many documents in a single exhibit, and for that reason alone he should be precluded from introducing the exhibit or any of the documents he has included in it. In addition, his failure to specify the particular content of each document in the exhibit that he would like to introduce into evidence defeats the purpose of the JPTO and is prejudicial to the defendants, especially with respect to the lengthy documents with a substantial amount of inadmissible information. In the event the Court allows plaintiff at this late date to list the documents separately and to specify the

specific content he intends to introduce into evidence, defendant Mauriello respectfully requests that the trial date be adjourned so defendants have sufficient time to evaluate the evidence, express their objections, and prepare to address any evidence at trial that the Court does not preclude.

| 104 | Command Log for 81st Precinct for October 27, 2009 | |
|-----|---------------------------------------------------|--|

We do not have any record of the 81st Precinct Command Log being produced in discovery and do not know which entries from the several pages that relate to October 27, 2009, plaintiff might want to introduce into evidence.  In his document production of September 17, 2009, plaintiff did not produce and apparently is unable to locate the Command Log pages for the date specified.  Even if he does locate them, he should be precluded from using them at trial for failing to produce them even by this late date.  If he is not foreclosed from using them, he should at least be required to specify the entries he hopes to introduce into evidence and/or use for impeachment purposes.

| 302 | Photos:  Schoolcraft Allowed to Handle Guns after Gun Removal | |
|-----|-------------------------------------------------------------|--|

We have no way of figuring out what this exhibit is.  Plaintiff should be precluded from using it, or at a minimum required to identify it by Bates number.  According to his September 17, 2015 production, he is unable to locate the exhibit.

| 308 | IAB Report on Menacing 10-31-09 | |

In his September 17, 2015, production, plaintiff provided a copy of this exhibit, which turns out to be a 41-minute recording of plaintiff's efforts to call IAB from his apartment after leaving work on October 31, 2009.  He should be precluded from using the document for failing to meaningfully identify it any sooner.  Otherwise, he should be directed to designate the portions of the recording he intends to introduce.  We then would express our objections, if any, to those designated portions.  Since plaintiff is the one mostly heard speaking on the recording, certainly the exhibit can not be introduced by him to prove the truth of what he is heard to say.  This is an especially important point with respect to any recording made by plaintiff in which he is heard speaking.  He typically is the only one aware the conversation is being recorded, and he is the only one who therefore is likely to be playing to the recorder by making untrue statements for later use to suit his purposes.

| 309 | Mascol-Schoolcraft Reporting re Activity; CD # 70/Lt. Mascol Audacity_Cut_Watch_20Feb2009_LtMascol.wav (Copy of Schoolcraft CD 2 of 2/Lt. Mascol) | |

Despite the description provided, we learned from plaintiff's production of September 17, 2015, that this exhibit is a single 11-minute recording of a conversation between Lieutenant Mascol and Schoolcraft. (Plaintiff also has been asked, but has yet to explain, the CD numbering system applied to this recording.)  At a minimum, plaintiff should be directed to designate the specific portions of the recording he would like to introduce at trial, so that

defendants can express any objections we might have.  In any event, however,

Lieutenant Mascol is not a party to this action and any statements made by him

as recorded by Schoolcraft would be inadmissible hearsay and would not appear

to satisfy any hearsay exception that would allow it to be admitted into evidence.

| 311 | Compact Disc with Recordings (PMX 11) | |
| 313 | CD of Recordings (POX 5) | |

PMX 11 and POX 5 were not provided by plaintiff to defendants

when plaintiff's motion for summary judgment and opposition to defendants'

motions were filed, and we therefore were prepared to request that plaintiff be

precluded from introducing into evidence any of the recordings included in these

exhibits or making any use of them at trial because we did not know what the

recordings are.  That continues to be our position with respect to Exhibit 311,

because even in his September 17, 2015, production, plaintiff has failed to

provide any additional information with respect to that exhibit.  Instead, plaintiff

has simply provided a photocopy of a disc purporting to contain recordings used

as exhibits on plaintiff's motion for summary judgment, none of which have been

specifically identified or produced.

With respect to Exhibit 313, we now know, for the first time, as a

result of the September 17, 2015, production that it is an approximately 90-

minute recording of Captain Lauterborn's IAB testimony.  After all of this time,

however, plaintiff has not provided any designations of the portions of the

testimony he intends to introduce at trial, which surely he is obligated to do in the

same way he is obligated to designate deposition testimony.  For failing to do so, plaintiff should be precluded from using the Lauterborn IAB testimony at trial for any purpose.  If the Court allows him to use the testimony at trial, plaintiff should be directed to designate the portions he intends to use, and the trial date should be adjourned to allow defendants to adequately prepare once plaintiff has complied with all of the Court's directions with respect to the evidence.  Until plaintiff designates the testimony he hopes to introduce, we cannot address its admissibility or identify other portions of the testimony that should be presented at the same time if it is to be admitted into evidence.

| 319 | Handcuffs – Silver | |
|-----|-------------------|---|
| 321 | Handcuffs – Black | |
| 323 | Diagram of Apartment | |

These exhibits – photos of handcuffs and a diagram without dimensions -- have been provided for the first time with plaintiff's September 17, 2015, production.  Whether we have any objection to their use at trial depends on what use plaintiff intends to make.  We do not know the make and model of the handcuffs, which plaintiff should be directed to provide, and we do not have access to Schoolcraft's (former) apartment, so we are unable to determine the accuracy of the diagram or the dimensions of the apartment, which plaintiff also should be directed to provide.  Plaintiff should be directed to provide these details or be precluded from making any use of the exhibits at trial.

| 327 | COMPSTAT Video – Numbers and Activity | |
| 328 | COMPSTAT Video re Halloween Night | |

The City Defendants have produced dozens of Compstat videos, all with identifying information displayed on the disks, and all indicating the time and duration of the recordings.  Plaintiff provided no such identifying information for these two exhibits until, on September 17, 2015, he informed defendants Exhibits 327 and 328 are the same recordings as the ones he listed as a single exhibit – 317, which we discuss below.  Exhibits 327 and 328 – 2 hours 50 minutes and 1 hour and 31 minutes, respectively -- thus should be removed from the list, and we will discuss them below as presented in slightly more detail as Exhibit 317.

| 329 | Photo of Olympus Record | |

As revealed to defendants on September 17, 2015, this exhibit is now Exhibits 329A and 329B, each a photograph of the two models of Olympus recorders used by plaintiff, often both at the same times.

| 330 | Yeager Interview – CD # 5 | |
| 331 | Home Surveillance Videos – CD # 22 | |
| 332 | Home Surveillance Videos – CD # 32 | |

We do not understand the CD numbering system applied by plaintiff, and we request that plaintiff be directed to explain it.  As a result of plaintiff's September 17, 2015, production, we now know that Exhibit 330 is an

18-minute interview conducted by IAB.  We also now know that Exhibits 331 and

332 are the same disk of dozens of video recordings totaling approximately 30

minutes.  They apparently depict NYPD personnel attempting to serve papers on

Schoolcraft on several occasions, as he and his father refused to answer the

door. Plaintiff should be precluded from using these exhibits at trial unless he

identifies the specific portions he intends to introduce at trial.  Once he does so,

defendants reserve all objections to the admissibility of the portions specified,

and, with respect to the Yeager interview, reserve the right to designate other

portions to be played at the same time.

| 336 | O'Hare Banging on Door 12-11-09 – CD # 71 | |

Though plaintiff has not described this exhibit adequately, and has

not indicated it is the same as Exhibit 316, it appears to be so.  On September 8,

2015, plaintiff produced a copy of Exhibit 316, and we deal with it in a separate

discussion below.  Exhibit 336 therefore should be deleted from the list.

| 337 | Roll Call Excerpts | |
| 338 | Schoolcraft Tape Recordings – CD # 90 Copy of Schoolcraft CD | |

These two exhibits are approximately 31 <u>hours</u> and 55 <u>hours</u> long,

respectively, and epitomize plaintiff's failure to satisfy the fundamental obligation

to provide meaningful descriptions of his proposed exhibits in the joint pre-trial

order so that defendants might be able to address the admissibility of the

proposed exhibits prior to trial, and prepare to address at trial those that may be

admissible.  Clearly, given the length of these two exhibits, defendants are not in

a position to begin to address them until plaintiff has specified precisely what

portions he hopes to introduce.  Having failed to do so to date, however, plaintiff

should be precluded from making any use of the recordings contained in these

two exhibits as there simply is not enough time to review them in preparation for

trial.  If the Court allows plaintiff to provide such designations of precisely what

portions of the recordings he hopes to introduce, then defendants respectfully

request that the trial date be adjourned so that defendants might review the

designations and consider any objections they might have, as well as whether

any additional portions of the recordings should be played at the same time if the

designated portions are to be used at trial.

| 412 | Quota Memo for Sergeant Lurch re Arbitration | |

We do not know what this memo is.  Clearly plaintiff should be able

to provide greater specificity, including date, author, and Bates number.  In his

September 17, 2015, production, however, plaintiff has indicated he can not

locate this memo.  We reserve all objections until the memo is properly identified.

| 413 | Lamstein Intake Forms and Notes | |

We have an entire file from Dr. Lamstein and the NYPD District

Surgeon's office.  Plaintiff should be required to identify the portions of the file he

intends to use at trial by specifying the name of each document and the Bates

numbers applied to each.  In his September 17, 2015, production, plaintiff again

indicates he can not locate the documents he intends to include in this exhibit. We reserve all objections until the documents are properly identified.

B.    Exhibits Not Timely Or Adequately Described

In addition to the foregoing, defendant Mauriello objects to the following additional plaintiff's trial exhibits not because we cannot identify the exhibit, but because, as with several of the exhibits discussed above, plaintiff has failed to identify the specific content to be offered from each exhibit.  Each exhibit typically consists of lengthy recordings or lengthy documents, which require that the portions to be used be specified.  We have urged plaintiff to specify the content he intends to use from each exhibit, but not until his production of September 17, 2015, has he responded, though typically insufficiently.  We again reserve any further objection to the admissibility of such evidence until the content is properly specified.  The descriptions provided by plaintiff for each of these exhibits are as follows:

| 79 | Mollen Commission Report (excerpts) (POX 36) | |

While we would object to the introduction of the excerpted section of the Mollen Commission report on several grounds, plaintiff first should be required to identify the specific portions of the excerpted section that he intends to introduce at trial.  The excerpted section is 29 pages long.  Without specification by plaintiff of the specific portions to be introduced at trial, defendants would be prejudiced and unable to prepare, which, at a minimum, would result in a substantial waste of time at trial.

| 205 | JHMC ER Nursing Notes (from Chart) | |
|---|---|---|

The plaintiff should be required to specify the date of the notes he intends to use and the pages from the chart where the notes appear.  He has failed to do so to date, and thus should be precluded from making use of the JHMC ER Nursing Notes at trial.

| 304 | Appeal Meeting 2-25-09 Recording (Copy of Schoolcraft CD 2 of 2/February 25, 2009/DS.50_25Feb and WS.310M_25Feb) | |
|---|---|---|
| 306 | Lauterborn-A.Schoolcraft Recording re Reporting Retaliation, dated 3-16-09 (Copy of CD 2 of 2/Captn Lauterborn/WS.310M_16Mar) | |

Unless plaintiff intends to play each of these recordings in their entirety – they are 60 minutes and 35 minutes long, respectively -- he should be required to specify the portions he intends to introduce so defendants would be in a position to address the admissibility of those portions, and to identify related portions to be played at the same time.

| 314 | Ferrara Recording re Rat Upstate (NYC12183 & NYC 12184 (CO meeting 2-18-10.wav & CO meeting Mauriello and Perez.wav) | |
|---|---|---|

This exhibit consists of two recordings totaling two hours.  Plaintiff should be precluded from introducing either recording into evidence unless he specifies the portions of each recording he intends to introduce.  If the Court permits him to do so, it is another reason the trial should be adjourned, and we then would address the admissibility of the specified portions and identify any additional portions to be introduced at the same time.  We do not consider any of the content of the recordings to be properly admissible at trial, and reserve objection until the portions to be introduced have been designated.

| 317 | Compstat Video 9-20-07 (CD #17); 10-12-09 (CD #12) (POX 44) | |
| 327 | COMPSTAT Video – Numbers and Activity | |
| 328 | COMPSTAT Video re Halloween Night | |

In this instance, the CD numbers referred to in the description of Exhibit 317 are the numbers assigned to the disks of the Compstat videos produced by the City Defendants.  Plaintiff should have specified the portions of the recordings he intends to introduce into evidence from that exhibit, which is a combined total of approximately 4 hours and 21 minutes, as well as from Exhibits 327 and 328, which are a combined total of approximately 86 <u>hours</u>.  In particular, plaintiff should have provided not only the dates of the meetings, but also the precise portion of each recording he intends to introduce at trial, as the Compstat meetings not only were lengthy, but also involved many NYPD personnel speaking at the meetings, covering many topics.  Having failed to provide such specificity, plaintiff should be precluded from making any use of these recordings at trial.  If, instead, the Court allows him to provide the specificity he long ago should have provided, the only appropriate sanction then would be to adjourn the trial date so that the specificity can be provided and defendants then can have sufficient time to review the specified portions of the recordings to assess their admissibility and identify any additional portions of the recordings that should be played in the event any specified portions of the recordings are admissible.

| 402 | Mauriello PG Tr. 8-11-10 (PDX 47) | |
| 403 | Marino PG (PDX 1) | |
| 404 | Mauriello Floyd Tr. 4-2-13 (PDX 48) | |
| 408 | Caughey PG Transcript (PDX 33) | |
| 409 | Lauterborn PG Transcript 8-11-10 (PDX 18) | |

| 410 | Marino Floyd TC (PDX 2) | |
| 411 | Mauriello Tr. in Floyd v City of New York (PMX 35; PDX 48) | |
| 424 | Lauterborn IAB Transcript (POX 4; PDX 18) | |
| 425 | Caughey IAB Transcript (POX 23; PDX 33) | |
| 426 | Mauriello PG Transcript (POX 25; PDX 47) | |

If plaintiff wants to read into evidence any portions of any of these transcripts, he should be precluded from doing so for failing to specify the portions of the transcripts he had intended to read. Such failure is prejudicial to defendants and would cause delay at trial if it were to be tolerated. Not only are defendants not in a position to address the admissibility of the portions plaintiff wants to read into evidence, but also defendants are prevented from identifying any additional portions of each transcript that should be read if plaintiff's portions are deemed admissible. If the Court decides to give plaintiff additional time to specify his readings from these transcripts, defendant Mauriello respectfully requests that the trial be adjourned, and reserves all objections to such readings until specified, as well as the right to identify additional portions to be read.

| 405 | Caughey PPI (PDX 38) | |
| 406 | Mauriello History (iPro) (PDX 54) | |
| 407 | Mauriello IAB Resume (PDX 55) | |

Plaintiff should be directed to specify whether he intends to introduce these exhibits into evidence or merely rely upon them for purposes of impeaching Mauriello and Caughey. In any case, he should be directed to identify the documents by Bates numbers. If he intends to introduce them into evidence, he should be directed not only to specify the Bates numbers, but also identify the specific portions of the exhibits he intends to refer to because these

are lengthy documents with a great deal of data and information, some of which may not be reliable or complete, and about which defendants therefore might have an objection.

### C.   Preclusion And/Or Adjournment Of Trial Are Warranted

We believe plaintiff's failure to properly identify his exhibits has been purposeful, and an attempt to essentially harass the defendants by imposing the substantial burden on them of trying to identify and locate plaintiff's evidence, thus delaying and distracting defendants from their efforts to organize their own evidence and prepare to defend themselves at trial.  Allowing the plaintiff to use exhibits not adequately identified, thus defeating the purpose of a pre-trial order, would put defense counsel at an unfair disadvantage at trial. Under Rule 16 of the Federal Rules of Civil Procedure, a district court has wide discretion to sanction a party for failing to produce a timely, complete, and well drafted pretrial order. Fonar Corp. v. Magnetic Plus, 175 F.R.D. 53, 56 (S.D.N.Y. 1997).  In this instance, for all of the reasons discussed above, the sanction of preclusion is warranted against the plaintiff, and, failing that, the sanction of adjourning the trial date so that the evidence might be properly identified and evaluated would be the only way to avoid substantial prejudice to the defendants.

### POINT II

PLAINTIFF SHOULD BE PRECLUDED FROM READING
ANY TESTIMONY PROVIDED IN INTERVIEWS BY QAD AND IAB AS IT IS
NOT TRUSTWORTHY OR RELIABLE; EVEN IF THE TESTIMONY WERE
OTHERWISE DEEMED ELIGIBLE TO BE READ INTO EVIDENCE, PLAINTIFF
SHOULD BE PRECLUDED FROM READING IT OR ANY OTHER TESTIMONY
FOR FAILING TO SPECIFY THE PORTIONS TO BE READ SO THAT
DEFENDANTS COULD ASSESS THE PORTIONS IDENTIFIED, ASSERT
OBJECTIONS AND/OR SPECIFY RELATED PORTIONS TO ALSO BE READ;
IN ANY EVENT, PLAINTIFF SHOULD BE PRECLUDED FROM READING ANY

NON-PARTY TESTIMONY AT ALL, UNLESS THE REQUISITE SHOWING
ALSO HAS BEEN MADE PURSUANT TO FRCP 32(a)(4) THAT THE WITNESS
IS UNAVAILABLE

The rules of this Court's individual practice require that any

deposition of a party that another party intends to read into evidence at trial be

identified in the pre-trial order, and that the portions of the deposition to be

introduced be specifically designated.  Plaintiff has failed to identify any party

depositions or to designate any testimony provided at a party deposition, and

therefore should be precluded from reading any such testimony into evidence.

Plaintiff also has failed to identify any non-party depositions or to

designate any testimony provided at a non-party deposition, and therefore should

be precluded from reading any such testimony into evidence, even if the requisite

showing pursuant to FRCP Rule 32(a)(4) could be made that the non-party is

unavailable.

Finally, plaintiff has identified transcripts and recordings of

testimony provided by parties and non-parties in other proceedings, but, as

discussed above with respect to many of the exhibits listed by plaintiff,  plaintiff

has failed to designate the passages from such testimony that he would like to

play or read at trial.  He therefore should be precluded from doing so because he

has deprived defendants of the opportunity to review and evaluate the prior

testimony.

The transcripts and recordings listed by plaintiff are of party and

non-party trial testimony in other cases, deposition testimony in other cases, and

IAB, QAD and BNIU testimony taken in the aftermath of the events of October

31, 2009.  The introduction at this trial of any such testimony should, at a

21

minimum, be circumscribed by the same rules controlling the reading of

deposition testimony taken in this case.  In addition, however, greater scrutiny

has to be paid to whether such testimony should be admitted into evidence or

used for impeachment purposes because the parties to some of the proceedings

in which such testimony was offered were not the same as the parties to this

action; the degree of preparedness by the witnesses on the matters at issue in

such other proceedings, to say nothing of the matters at issue in this proceeding,

is likely to have been vastly diminished from what would be expected in this

proceeding; the quality of the examinations generally and the specific questions

in particular are likely to have been below the standards one would expect to be

adhered to in proceedings before this Court; and the representatives of the

witnesses no doubt were far less informed of the facts and far less aware of the

issues in dispute as one would expect of the representatives of the parties and

witnesses in this action, thus rendering their advocacy of the interests of the

witnesses far less effective.

    All of these factors potentially render the transcripts from the other

proceedings far less reliable than would warrant the use of such testimony in this

action.  In any event, it is critical that plaintiff specify well in advance of trial the

portions of all prior testimony he intends to introduce at trial – whether to be read

into the record or alluded to for impeachment purposes.   At the moment, plaintiff

has failed to specify the testimony he intends to use at the trial of this action and

therefore should be precluded from making any use of such testimony.

    If the Court allows plaintiff the opportunity to designate the portions

of the prior testimony he wants to introduce, defendants respectfully request that

the trial date be adjourned so the designations can be made and defendants can

assess them prior to trial; defendants otherwise reserve all objections pending a

review of the testimony to be designated, as well as the right to have related

testimony from the transcript or recording presented at the same time.

POINT III

THE QAD AND IAB REPORTS OF THEIR INVESTIGATIONS<br>
INTO THE EVENTS AT ISSUE SHOULD NOT BE REFERRED TO AT TRIAL<br>
AND THEIR CONTENTS SHOULD NOT BE ADMITTED INTO EVIDENCE

A.     The Reports Do Not Satisfy FRE 803(8) or FRE 403

The contents of an investigatory report are considered hearsay if

used to prove the facts and conclusions in the report.  However, under Rule 803

(8)(c) of the Federal Rules of Evidence, "factual findings resulting from an

investigation made pursuant to authority granted by law" are admissible hearsay

"unless the sources of information or other circumstances indicate a lack of

trustworthiness."  The rule – the public records exception -- also allows admitting

conclusions or opinions that are part of the report and based on the factual

investigation, if those conclusions are reliable. See Gentile v. County of Suffolk,

926 F.2d 142, 148 (2d Cir. 1991).

It is up to the party proffering the evidence to make a minimum

showing that the report contains factual findings that were made pursuant to legal

authority. Bridgeway Corp. v. Citibank, d.b.a. Citicorp, N.A., 201 F.3d 134, 143

(2d. Cir. 2000).  Once that minimum showing is made, the opposing party may

rebut the presumption of admissibility by showing the report is untrustworthy. Id.

at 143. When evaluating the trustworthiness of a report, a court evaluates: "(a)

the timeliness of the investigation, (b) the special skills or experience of the

23

official, (c) whether a hearing was held and the level at which it was conducted, and (d) possible motivation problems." Id. at 143.  Further, "even when a report falls within the public records exception to Rule 803(8), that does not automatically render all of its contents admissible, and the Court retains discretion to exclude any record it deems untrustworthy or unreliable.

In particular, although an official's reliance on hearsay in preparing a report does not necessarily preclude the admission of the officials' conclusions contained in the report ... that does not necessarily mean that the hearsay statements themselves can come into evidence." Glowczenski v. Taser International, 928 F. Supp. 2d 564, 578 (E.D.N.Y. 2013) quoting Beechwood Restorative Care Center v. Leeds, 856 F. Supp 2d. 580, 588-89 (W.D.N.Y 2012). While factual findings made by a public official's "own observations and knowledge may be admitted ... statements made by third persons under no business duty to report may not." U.S. v. Banky-Alli, 2005 WL 3116754 (2d Cir. 2005) quoting Parsons v. Honeywell, 929 F.2d 901, 907 (2d Cir. 1991).

The QAD and IAB reports, to varying degrees, are fraught with the deficiencies that render their contents untrustworthy and unreliable, and thus inadmissible pursuant to the public records exception to the hearsay rule.  In addition, the reports should be excluded pursuant to Rule 403 of the Federal Rules of Evidence because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury."

B.     The Reports Do Not Satisfy FRE 803(8)

1.     <u>Hearsay statements within the investigation and report</u>:

QAD found that ten of the thirteen incidents that Schoolcraft reported were found to be "substantiated" in some way, shape or form. Of those ten incidents, nine of them were found to be substantiated, at least in part, through hearsay statements from unidentifiable complaining victims. (Exhibit A, NYC 0520-0540). Most of the incidents include several dubious layers of hearsay from the origin of the complaint to when Schoolcraft supposedly learned of the alleged downgrading of the crime report.[2]  At a minimum, the statements made by complaining victims, police officers, supervisors and Schoolcraft should not be admitted at trial as F.R.E 803(8)(c) is not intended to circumvent the rule against admitting hearsay statements. See <u>U.S. v. Banky Alli</u>, at 3; <u>Glowczenski</u>, at 578.

The larger issue, however, is that the hearsay statements used by QAD were not incidental to or confirmation of a larger fact finding investigation by QAD. The hearsay statements were expressly used and largely relied upon by QAD to substantiate nine of ten investigations into improper crime reporting and that portion of the report should be inadmissible. See <u>Rodriguez v. Modern Handling Equipment of NJ, Inc.</u>, et. al., 604 F.Supp 612, 623 (S.D.N.Y. 2009).

---

[2] <u>See</u>, <u>e.g.</u>, Exhibit A at NYC 0521, "Officer Schoolcraft stated Police Officer Deck, who handled the assignment along with Police Officer Santana, informed him that he had been directed by Lieutenant Charlson to change the classification from Robbery to Lost Property." See also NYC 0525, "He [Schoolcraft] contended that the complainant had attempted to report her vehicle stolen on January 23, 2009 and Police Officer Harris, who responded to the initial assignment, received instruction from Deputy Inspector Mauriello not to take the report from the complainant."

2.    Trustworthiness under F.R.E. 803(8):[3]

a.  Timeliness of the investigation:

The purpose of conducting a timely investigation into events is to protect against stale evidence and to interview witnesses before memories fade. Gentile v. County of Suffolk, 129 F.R.D. 435, 450-1 (E.D.N.Y.). Courts in the Second Circuit have held that a two year delay into investigating events coupled with express statements by witnesses that they could not fully remember events, undermined the trustworthiness of an investigative report. See U.S. v. Durrani, 659 F. Supp. 1183, 1186 (D. Conn. 1987).

Here, QAD reviewed complaint reports from incidents that, in some cases, occurred over two years prior to the investigation. While other complaint reports were reviewed from incidents occurring six months prior to the investigation, a review of the QAD report clearly indicates that many of the officers involved in the alleged downgrading could not adequately recall the incident or events. Complaining victims, on the other hand, despite the passage of time, or perhaps because of it, almost universally were confident in their recollection of events, no matter how suspect their recollections might have been.

The 81st Precinct processed thousands of complaint reports in 2008 and 2009, so it is certainly understandable that an officer may not adequately recall a particular incident or circumstances which may have led to a particular

---

[3] In light of the Court's September 18, 2015, Opinion reinstating defendant Mauriello's counterclaim for tortious interference with Mauriello's relationship with the NYPD, we intend to challenge the outcome of the QAD and IAB investigations, including the issuance of reports and the filing of disciplinary charges against Mauriello (which have not yet been heard) as untrustworthy, unreliable and the product not only of deceitful assertions by Schoolcraft, but also improper motives of certain people in position to influence the outcome of the investigations.  (See Exhibit F, submitted under seal in support of this motion in limine.)

complaint report being classified in a particular way.  It is equally understandable that a complaining victim would be confident in her ability to recall the commission of the crime long after the incident. However, a complaining victim typically has a limited perception of the events, and might not appreciate observations made in a preliminary investigation by a responding officer that challenges that perception. (See NYPD Patrol Guide 207-07.)

QAD gave overly deferential treatment to both Schoolcraft's and the complaining victim's perception of events. However, as was detailed in the report (Exhibit C, submitted under seal), Schoolcraft was wrong about some of the alleged misconduct he reported (Exhibit D, D0517-D0519) and was engaged in downgrading himself (Exhibit E, D0520, D0523, D0527, D0532).  In addition, QAD's investigation was heavily reliant on credibility determinations and evaluations made well after the fact, which is not the type of fact finding and evidence gathering investigation which carries the indicia of trustworthiness contemplated by Rule 803(8). See, e.g., Davis v. City of New York, 959 F.Supp. 2d 427, 439 (S.D.N.Y. 2014).

b. Special skills or experience of investigators:

While we may presume that QAD competently conducts semi-annual audits of crime reporting in every NYPD precinct, there is no statement in QAD's investigative report regarding the skill of the individual investigators assigned to this investigation, and there is no reason to presume they were skilled or experienced to conduct such an unprecedented and apparently unique investigation as was conducted of the 81st Precinct.

The semi-annual audit of crime reporting in each of the NYPD's 76 precincts apparently is one of the major and most common undertakings of QAD. The audits essentially involve a review of the paper trail of crime reporting from the initial notification to NYPD of a crime to the issuance of a finalized complaint report or any formally documented revision to it. The audits do not consider the ultimate disposition of the prosecution of the complaints.

The QAD investigation into crime reporting in the 81st Precinct was commenced in response to the allegations made by Schoolcraft at a meeting with QAD on October 7, 2009, just days after QAD had completed its semi-annual audit of the 81st Precinct for the six-month period through June 2009. Remarkably, the statistics generated by the audit report and the investigation report for nearly the same period of crime reporting do not vary significantly. The observations and conclusions drawn by QAD in the investigation report, however, go well beyond its normal area of concentration and expertise, and QAD ventures observations and conclusions that can not withstand scrutiny. In Exhibit F, which we submit under seal, we discuss the observations and conclusions of QAD and IAB as reflected in the charges filed against defendant Mauriello to help illustrate that the expressed observations and conclusions of QAD and IAB are unreliable and untrustworthy due to several aspects of undertaking the type of investigations at issue.

c. Whether a hearing was held and at what level it was conducted:

The Second Circuit has held that factual findings from an investigation may be admitted if the report "reflects the agency's final decision issued at the conclusion of a process, rather than a preliminary assessment that contemplates

further proceedings before final action is taken." <u>National Resources Defense</u>

<u>Council, Inc. v. U.S. Food and Drug Admin.</u>, 760 F.3d 161, 167 (2d Cir. 2014).

Further, that factual finding is usually part of a deliberative process after notice is

provided to the interested parties, a hearing is held, and an opportunity is

provided for interested parties to be heard. <u>Id</u>.

Here, QAD's report is not a final, deliberative decision made by a

government agency. It is, in effect, an interim report based largely on a then

unknown dubious source of information. Mauriello will have an opportunity to

defend himself against the charges by QAD and IAB, including the broad,

sweeping, and conclusory statements that impinged the crime reporting process

in the 81st Precinct, as well as the investigative process, which, when not

properly managed, can yield horribly erroneous conclusions. It is simply not the

intent of FRE 803(8) to allow into evidence a document or any of its contents

when riddled with hearsay statements, deceitful representations, and poor,

unrefreshed recollections, where there has not been a final determination by the

agency that the investigation and report were, in fact, correct.

    d.  <u>Possible motivation problems</u>:

As has been discussed (see Exhibit F) and explored in discovery,

there is evidence that certain individuals made an ill-advised attempt to placate

Schoolcraft by substantiating his charges against Mauriello.  It is, in fact, the

exact scenario that Schoolcraft and his father discussed: that it was very possible

the NYPD was going to make Mauriello the "sacrificial lamb." The QAD

investigation and report became the perfect vehicle; Mauriello would be harmed,

Schoolcraft's charges would be substantiated, and the NYPD could bring Schoolcraft back into the department, thus providing an end to the controversy.

Given the deficiencies with the QAD and IAB report on crime reporting and other activities in the 81st Precinct, sufficient negative factors exist to exclude this evidence as untrustworthy hearsay as contemplated by Bridgeway. The lack of finality in the determinative process combined with motivational concerns, the lack of timeliness of the investigation, and the reliability and credibility given to hearsay statements, unrefreshed recollections and deceitful assertions render this investigative report inadmissible.

C. FRE 403 – The Probative Value of the QAD and IAB Reports is Substantially Outweighed by the Danger of Unfair Prejudice, Confusion of Issues, and Misleading the Jury

Plaintiff seeks to introduce reports from investigations by IAB and QAD in his case-in-chief. As a primary matter, these reports total over 200 pages, with the majority of the pages containing numerous layers of hearsay information that are extraneous and irrelevant to this matter. Even if Plaintiff can point to certain sections of these reports which are marginally relevant, the danger of confusion of the issues, misleading the jury, causing delay, and wasting time substantially outweigh the probative value of such evidence. See F.R.E. 403. It is well within this Court's discretion to exclude investigative reports if admission of the report is likely to protract a trial and ultimately cause unnecessary confusion. City of New York v. Pullman, 662 F.2d 910, 915 (2d Cir. 1981). A stronger reason for exclusion is if the issues considered in the report are collateral to and minimally related to the ultimate issues at trial. Id.

Despite the plaintiff's attempts to recast his claims as a trial regarding the routine practices and procedures within the NYPD, this court's summary judgment decision properly limited the plaintiff's claims to alleged constitutional violations committed by members of the NYPD. The ultimate issues to be decided are, in sum, whether the defendants violated the plaintiff's First and Fourth Amendment rights in retaliation for reporting on alleged wrongdoing. There is no doubt Plaintiff reported alleged wrongdoing to IAB and ultimately QAD, and will certainly testify and provide evidence regarding his reports. Ultimately, however, the Plaintiff's remaining claims do not depend on how true the plaintiff's complaints were or even necessarily what they were, but rather whether members of the NYPD retaliated against for him simply supplying allegedly harmful information.  The investigatory reports add little to no value in evaluating whether the plaintiff can ultimately succeed and are not helpful to a jury.

The prospect of introducing reams of investigatory material, particularly the QAD investigation, runs the risk that introducing a report that relies on processes, data and internal NYPD procedures would cause unnecessary delay to the trial and schedule. Explanations on how the report was compiled, the process by which data is analyzed, and the ultimate conclusions of the report would have to be established through background materials, witness testimony, and a thorough explanation of the complaint reporting process and precinct procedures. This trial could be fraught with inordinate delay in reaching the ultimate issues in the case as the jury is unnecessarily burdened with evidence of procedures such as complaint reporting, while distracted from material evidence

regarding whether anyone at the NYPD violated the plaintiff's constitutional rights or, instead, acted in good faith in furtherance of their duties as members of NYPD.

Further, and as this Court is aware, the NYPD has proposed charges and specifications related to the QAD and IAB investigations, but only minimally related to the actual claims by Schoolcraft regarding alleged wrongdoing. (See Exhibit B, submitted under seal.)Those charges and specifications against Mauriello are currently on hold pending the outcome of this case. Introduction of the QAD and IAB reports and their findings, would create a mini-trial regarding issues tangentially related to the ultimate issues in this case, while also raising the risk that the findings of QAD and IAB, and the decision to issue charges against Mauriello, will be given de facto collateral estoppel effect by the jury incapable of understanding how they might do otherwise. Mauriello is confident that he will ultimately prevail at a departmental trial, but the potential of defending against questionable charges in a jury trial (some of which are only tangentially related to spurious claims by the plaintiff) would cause unnecessary and undue prejudice.

## POINT IV

### PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING INTO EVIDENCE OR REFERRING TO THE CHARGES AND SPECIFICATIONS ISSUED TO STEVEN MAURIELLO OR ANY OTHER OFFICER BY THE NYPD DEPARTMENT ADVOCATE'S OFFICE

As a general matter, charges that have not been adjudicated and subject to a departmental hearing are mere allegations and are not admissible at trial. See e.g. Pacheco v. City of New York, 234 F.R.D. 53, 55 (E.D.N.Y. 2006).

Moreover, the charges and specifications issued to Steven Mauriello or any other officer by the NYPD Department Advocate's Office purportedly as a result of the QAD and IAB investigations essentially constitute opinions and conclusions based upon untrustworthy information readily disputed and not yet resolved at a department administrative trial.  Thus, the charges and specifications are in and of themselves untrustworthy as well.  (See Exhibit F to this motion, which is submitted under seal due to its reliance on information obtained from documents produced confidentially or for attorneys' eyes only.)   Inevitably, the charges and specifications would be given undue weight by the jury to the point of supplanting the jury's fact-finding function with reliance on a determination apparently already made, in the nature of collateral estoppel.  Surely the unresolved charges are not deserving of such treatment and should be precluded, as any instruction to the jury on the subject most likely would be ineffective.

## POINT V

### PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING INTO EVIDENCE OR REFERRING TO A LETTER OF REPRIMAND ISSUED TO STEVEN MAURIELLO IN OCTOBER 2008

In October 2008, Steven Mauriello was issued a letter of reprimand for leaving a message for an investigator assigned to the NYPD Civilian Complaint Review Board (CCRB).  (See PTX 33, annexed as Exhibit G.) Mauriello was returning calls made to him by the investigator regarding an incident involving one of the officers in his command, and explained in his message what he believed had happened and why he believed his officer had not engaged in any wrongdoing.  (See annexed Exhibit H, pages 112-117 from

Mauriello's deposition, where he explains the events.)  That incident is not related or relevant in any way to the events at issue, and has no bearing on the outcome of any matter in dispute.  The incident is so completely distinguishable from any incident to be presented to the jury for consideration that the only purpose plaintiff could have to introduce the exhibit would be for improper character evidence under F.R.E. 404(b). Further, the prejudicial effect of admitting this evidence would far outweigh its non-existent probative value. Allowing the exhibit to be admitted into evidence would create the need for Mauriello to fully present the events related to the CCRB matter to demonstrate just how lacking the entire incident is in probative value.  Plaintiff should be precluded from introducing PTX 33 and from asking Mauriello any questions about the incident to which it relates.  See Nibbs v. Goulart, 822 F. Supp. 2d 339, 349 (S.D.N.Y. 2011) (precluding the plaintiff from offering into evidence or using for impeachment purposes an officer's unrelated disciplinary history without a showing of a "unique scheme" or "unusual characteristics" pursuant to F.R.E. 404(b)).

POINT VI

PLAINTIFF MUST BE PRECLUDED FROM
ATTEMPTING TO INTRODUCE INTO EVIDENCE
ANY ROLL CALL RECORDINGS THAT HAVE NOT
BEEN SPECIFICALLY IDENTIFIED AS EXHIBITS IN
THE JPTO AND/OR FOR WHICH SPECIFIC
PORTIONS HAVE NOT BEEN DESIGNATED

With just a few exceptions, plaintiff has failed to identify specific roll call recordings he wants to introduce at trial and thus has not designated specific

passages from any such roll call recordings.  Rather than identify specific

recordings, plaintiff has listed roll call exhibits as follows:

| 337 | Roll Call Excerpts | |
|-----|--------------------|---|
| 338 | Schoolcraft Tape Recordings – CD # 90 Copy of Schoolcraft CD | |

As we have explained above, these two exhibits are approximately

31 <u>hours</u> and 55 <u>hours</u> long, respectively, and epitomize plaintiff's failure to

satisfy the fundamental obligation to provide meaningful descriptions of his

proposed exhibits in the joint pre-trial order so that defendants might be able to

address the admissibility of the proposed exhibits prior to trial, and prepare to

address at trial those that may be admissible.  Clearly, given the length of these

two exhibits, defendants are not in a position to begin to address them until

plaintiff has specified precisely what portions he hopes to introduce.  Having

failed to do so to date, however, plaintiff should be precluded from making any

use of the recordings contained in these two exhibits as there simply is not

enough time to review them in preparation for trial.

If the Court allows plaintiff to provide such designations of precisely

what portions of the recordings he hopes to introduce, then defendant Mauriello

again respectfully requests that the trial date be adjourned so that defendants

might review the designations and consider any objections they might have, as

well as whether any additional portions of the recordings should be played at the

same time if the designated portions are to be used at trial.

POINT VII

PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING
INTO EVIDENCE ANY RECORDING MADE BY HIM
BUT NOT YET PRODUCED BY HIM IN DISCOVERY

There are a host of issues to be explored at trial with respect to

plaintiff and his father's recording of events and their preservation, destruction,

alteration and/or selective production of those recordings.  For present purposes,

we respectfully request that plaintiff be precluded from attempting to introduce

into evidence at trial or using for impeachment purposes any recording made by

plaintiff or his father that has not, as of this date, been produced to the

defendants.  As a small sample of plaintiff's "mishandling" of his recordings, there

is:

a) his October 7, 2009 recording of his one and only meeting with

QAD; (due to the poor descriptions of so many of plaintiff's exhibits, we can not

determine whether plaintiff intends to introduce the recording into evidence);

plaintiff produced the portion of the recording covering the meeting itself, but, as

we have documented in earlier motions in support of Mauriello's counterclaims,

he or one of his attorneys deleted from the recording the conversation plaintiff

had with his father on his way to the meeting in which they discussed what

plaintiff should say at the meeting and what they hoped to accomplish; he or his

attorneys thus altered the recording and selectively produced only the portion

that suited them, while withholding a clearly relevant, and, frankly, damning

portion of the recording;

   b) his September 2, 2009, recording (PTX 318) of his first

conversation with IAB (Lieutenant Cagno) in which, according to Cagno, as

corroborated by his contemporaneous written report, Schoolcraft told him "he

doesn't feel he is being retaliated against from the Members of his Command

and he has no problem with his supervisors and peers;" plaintiff identified this

recording for the first time in his portion of the JPTO, but has not produced it; he

should not be permitted to use it at trial for any purpose if he were to suddenly

decide to produce it;  and

   c) his April 4, 2009, recording (PTX 335) of his initial visit to the

office of the NYPD District Surgeon, identified for the first time in plaintiff's portion

of the JPTO, and produced for the first time to defendants on September 15,

2015.

POINT VIII

PLAINTIFF SHOULD BE PRECLUDED FROM<br>
INTRODUCING INTO EVIDENCE THE FEBRUARY 18, 2010,<br>
AND APRIL 1, 2010, RECORDINGS INCLUDED IN<br>
PTX 314 IN THE PROPOSED JPTO

   The recordings listed as PTX 314 were made surreptitiously by an

officer named Ferrara at two separate meeting in the 81st Precinct in February

and April 2010..  Though listing the recording as an exhibit, plaintiff has failed to

designate the portions of the recording he would like to introduce into evidence.

We believe the entire recording is inadmissible on the grounds of hearsay,

37

relevance and the probative value of some of its content being far out-weighed

by its prejudicial affect.  If, as the name of the exhibit suggests, plaintiff intends to

offer only the portion of the recording where Mauriello, on February 18, 2010, is

referring to the initial press reports being released revealing that plaintiff had

spoken with the media about practices in the 81st Precinct, and referring to

plaintiff as being a "rat" for essentially lying to the media about his fellow officers,

then plaintiff should be precluded from using that portion of the recording for

several reasons:  i) it has no relevance – the statements were made well after

Mauriello's involvement in the matters at issue and long after Schoolcraft was

last on the job; they were made when it was learned Schoolcraft was speaking

with the media about the NYPD, but not speaking, or at all cooperating with the

NYPD; they do not relate to any actions contemporaneously taken by Mauriello in

February 2010 that are at issue in this action; and under all of the circumstances,

any probative value it might have is far outweighed by its prejudicial effect.  See

Point VIII, infra. Nonetheless, we will address the admissibility of any particular

content of the recordings once plaintiff designates the portions he wishes to

introduce into evidence.

POINT IX

JHMC SHOULD BE PRECLUDED FROM ELICITING TESTIMONY
FROM ITS EXPERT, DR. ROBERT LEVY, OR IN ANY WAY
INTRODUCING SPECIFIED PASSAGES FROM LEVY'S REPORT,
EXPRESSING UNFOUNDED, EXTREMELY PREJUDICIAL OPINIONS, WHICH
INAPPROPRIATELY USURP THE FUNCTION OF THE JURY

Neither Jamaica Hospital Medical Center, nor any other party

should be permitted to introduce into evidence or otherwise refer to the

unfounded opinions set forth in two passages of Dr. Robert H. Levy's August 22,

2014, report as the JHMC expert (Exhibit I).  The first offending passage is set

forth in the next to last sentence of the last paragraph on the page of the report

marked 4 at the bottom and 3 at the top, which we have underlined, as follows:

> Following a meeting with the patient's father and members of the
> [IAB], Dr. Isakov was able to understand the patient's issues with
> the officers and supervisors of his precinct and to see that beliefs
> that had appeared to be strongly suggestive of paranoia were
> grounded in fact and that his precinct had artfully manipulated the
> situation to make the patient appear psychiatrically ill.  Mr.
> Schoolcraft had also become more cooperative and interactive by
> 11/05/09.

The underlined passage is a fictional assessment that is absolutely unsupported

by anything cited in the report or existing in the record, and constitutes nothing

but rank speculation undeserving of presentation to the jury.  Frankly, it is a

radically unprofessional opinion no doubt expressed at the urging of the

hospital's risk managers to insulate the hospital from liability.  Dr. Isakov is not

represented by the hospital's counsel and has presented his own expert who has

not even hinted at such a view of the circumstances.  Indeed, Dr. Isakov himself

has not offered any testimony to support Dr. Levy's unfounded opinion.

The second offending portion of Dr. Levy's report appears in the

paragraph numbered 6 on the last page of the report (Exhibit I), and consists of

the two underlined phrases, as follows:

> The patient's current emotional condition is likely to be referable to
> the larger picture of his perceived victimization by the police
> department with the hospitalization playing a relatively small role,
> especially because this hospitalization concluded with an
> acknowledgement of the veracity of his statements.  His difficulty
> finding work is also likely to be largely the result of this larger
> picture and is unfortunately consistent with the difficulties faced by
> many whistleblowers.

39

These offending phrases, again, are absolutely unsupported by anything cited in the report or existing in the record and are undeserving of presentation to the jury by any party in any form.

The views expressed in the offending passages: (a) make improper credibility determinations without a full or fair view of the record, (b) are outside the scope of the expert's area of expertise, (c) make improper determinations regarding the ultimate issues in this case, and (d) seem to be opinions solely within the "ipse dixit" of Dr. Levy.   See, e.g., Estate of Jaquez v. City of New York, No. 10 Civ. 2881 (KBF), 2015 WL 2165981 *10-12 (S.D.N.Y. May 8, 2015). Admission of such recklessly asserted opinions of no probative value on one of the ultimate issues of fact to be decided by the jury would be extremely prejudicial to the City defendants and defendant Mauriello and surely would constitute reversible error.

Dated:  New York, New York
         September 21, 2015

SCOPPETTA SEIFF KRETZ & ABERCROMBIE
Attorneys for Defendant STEVEN MAURIELLO

By: _____
        Walter A. Kretz, Jr., (WK-4645)
     444 Madison Avenue, 30th Floor
     New York, NY  10022
     wakretz@seiffkretz.com
     212-371-4500

Patrick C. Nolan
        Of Counsel