UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------------X

ADRIAN SCHOOLCRAFT,

                              Plaintiff,

           -against-                                                          **10 CV 06005**
                                                                                **(RWS)**


THE CITY OF NEW YORK, DEPUTY CHIEF MICHAEL MARINO,
Tax Id. 873220, Individually and in his Official Capacity, ASSISTANT
CHIEF PATROL BOROUGH BROOKLYN NORTH GERALD
NELSON, Tax Id. 912370, Individually and in his Official Capacity,
DEPUTY INSPECTOR STEVEN MAURIELLO, Tax Id. 895117,
Individually and in his Official Capacity CAPTAIN THEODORE
LAUTERBORN, Tax Id. 897840, Individually and in his Official Capacity,
LIEUTENANT JOSEPH GOFF, Tax Id. 894025, Individually and in his
Official Capacity, SGT. FREDERICK SAWYER, Shield No. 2576,
Individually and in his Official Capacity, SERGEANT KURT DUNCAN,
Shield No. 2483, Individually and in his Official Capacity, LIEUTENANT
CHRISTOPHER BROSCHART, Tax Id. 915354, Individually and in his
Official Capacity, LIEUTENANT TIMOTHY CAUGHEY, Tax Id.
885374, Individually and in his Official Capacity, SERGEANT SHANTEL
JAMES, Shield No. 3004, AND P.O.'s "JOHN DOE" #1-50, Individually
and in their Official Capacity (the name John Doe being fictitious, as the
true names are presently unknown) (collectively referred to as "NYPD
defendants"), JAMAICA HOSPITAL MEDICAL CENTER, DR. ISAK
ISAKOV, Individually and in his Official Capacity, DR. LILIAN
ALDANA-BERNIER, Individually and in her Official Capacity and
JAMAICA HOSPITAL MEDICAL CENTER EMPLOYEE'S "JOHN
DOE" # 1-50, Individually and in their Official Capacity (the name John
Doe being fictitious, as the true names are presently unknown),

                              Defendants.

-------------------------------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION IN
LIMINE TO EXCLUDE CERTAIN EVIDENCE AT TRIAL**


                              JOSHUA P. FITCH
                              COHEN & FITCH LLP
                              Attorneys for Plaintiff
                              233 Broadway, Suite 1800

New York, N.Y. 10279
(212) 374-9115
gcohen@cohenfitch.com
jfitch@cohenfitch.com

JON L. NORINSBERG
Attorney for Plaintiff
225 Broadway, Suite 2700
New York, New York 10007
(212) 791-5396
Norinsberg@aol.com

NATHANIEL B. SMITH
Attorney for Plaintiff
100 Wall Street, 23rd Floor
New York, New York 10005
212-227-7062
natbsmith@gmail.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iv

PRELIMINARY STATEMENT  ..................................................................................1

ARGUMENT……...........................................................................................................1

   I.    THE   OVERARCHING   CONSIDERATION   FOR   DETERMINING
        RELEVANCY IN THIS CASE ......................................................................1

      A. Relevancy Must Be Judged By the Facts Known to Defendants At the
         Time of Plaintiff's Arrest........................................................................1

   II.   ANY EVIDENCE OF RACIAL ANIMUS OR RACIAL SLURS SHOULD
        BE EXCLUDED FROM EVIDENCE FOR ANY PURPOSE .....................3

      A. None of This Evidence was Known or Considered by Defendants at the
         Time of Plaintiff's Seizure......................................................................3

      B. Any Possible Relevance to this Evidence is Nullified by the Irreparable
         Prejudice Suffered From its Admission.................................................4

   III.  ANY REFERENCE TO PRIOR LAWSUITS AND OR INTERNAL NYPD
        COMPLAINTS   SHOULD   BE   EXCLUDED   AS   IRRELEVANT   AND
        HIGHLY PREJUDICIAL ..............................................................................6

      A. There is No Relevance to Prior Lawsuits Which Plaintiff was Never a
         Party ........................................................................................................6

      B. There is No Relevance to Plaintiff's Prior Internal Complaints to the ...................7

      C. The Prejudicial Effect of this Vicarious Impugnation of Plaintiff's Claims
         Requires Exclusion of this Evidence ......................................................7

   IV.  ALL EVIDENCE OF PLAINTIFF'S FATHER'S RIFLE FOUND IN HIS
        APARTMENT FOLLOWING THE EVENTS OF OCTOBER 31, 2009 MUST
        BE EXCLUDED AS IRRELEVANT AND PREJUDICIAL ........................9

   V.   PLAINTIFF'S   DISCIPLINARY   HISTORY   SHOULD   BE   EXCLUDED
        FROM THIS TRIAL .....................................................................................10

   VI.  ALL REFERENCES TO THE IAB FINDINGS AND/OR CONCLUSIONS
        REGARDING PLAINTIFF'S CREDIBILITY MUST BE EXCLUDED AS
        IRRELEVANT, PREJUDICIAL, AND UNRELIABLE HEARSAY .........................12

i

VII.    ANY EVIDENCE OF THE QUEENS DISTRICT ATTORNEYS OFFICE'S DECISION TO NOT PROCEED WITH CRIMINAL CHARGES AGAINST THE DEFENDANTS MUST BE EXCLUDED FOR ANY PURPOSE ...................16

VIII.   WITNESSES SHOULD NOT BE PERMITTED TO RENDER OPINION EVIDENCE REGARDING PLAINTIFF OR THE MERITS OF HIS CASE.............18

    A. Defendants Should Not Be Allowed to Examine Plaintiff's Expert on Unrealistic Assumptions that Call for Opinions Outside His Designated Expertise ...........................................................................................................18

    B. Any Testimony and/or Evidence of Plaintiff's Sister's Opinion Must Be Excluded ............................................................................................................21

IX.     THE DECISION IN DEFENDANT BERNIER'S PREVIOUS LAWSUIT AND ANY REFERENCE TO THE "THE NAVY YARD DISASTER" SHOULD BE EXCLUDED AS IRRELEVANT AND UNDULY PREJUDICIAL...........................................................................................23

    A. Plaintiff Cannot Be Bound by a Decision Regarding the Constitutionality of Bernier's Conduct in a Prior Unrelated Lawsuit ................................................23

    B. The Prejudicial Effect of this "Ultimate Issue" Evidence Clearly Outweighs any Probative Value in this Case.......................................................24

    C. Dr. Bernier's Reference to a Separate "Navy Yard Disaster" is Completely Irrelevant, Prejudicial and Collateral to the Issues in this Litigation....................26

X.      DEFENDANT MARINO'S ALLEGED "EXPERIENCE" IN DEALING WITH SUICIDAL INDIVIDUALS SHOULD BE EXCLUDED AS IRRELEVANT AND UNDULY PREJUDICIAL ........................................................27

XI.     ANY EVIDENCE FROM MEDIA SOURCES MUST BE EXCLUDED AS INADMISSIBLE HEARSAY LACKING TRUSTWORTHINESS ..........................29

XII.    PLAINTIFF'S RETENTION AND/OR TERMINATION OF ANY OF THE ATTORNEYS IN THIS ACTION SHOULD BE EXCLUDED ..................................30

XIII.   DEFENDANTS SHOULD BE PRECLUDED FROM ANY INQUIRY REGARDING THE DAUGHTER OF EMERGENCY MEDICAL TECHNICIAN EXPERT DR. HALPREN-RUDER....................................................33

XIV.    THE COURT SHOULD LIMIT WITNESS EXAMINATIONS IN THIS CASE TO AVOID UNDUE REPETITION, CONFUSION, AND DELAY ..............34

XV.     THE JURY SHOULD BE CHARGED REGARDING THE CITY

DEFENDANTS' SPOLIATION OF EVIDENCE IN THIS CASE ............................37

CONCLUSION....................................................................................................................39

## TABLE OF AUTHORITIES

Adams v. City of New York, 993 F. Supp. 2d 306 (E.D.N.Y. 2014) .................................... passim

Ansell v. Green Acres Contracting Co., 347 F.3d 515 (3d Cir.2003) .............................................6

Ariza v. City of New York, 139 F.3d 132 (2d Cir. 1998)........................................................14

Arlio v. Lively, 474 F.3d 46 (2d Cir.2007)...........................................................................24

Bee v. Novartis Pharm. Corp., 2014 WL 1855632 (E.D.N.Y. 2014) ..................................... 33-34

Beech Aircraft Corp. v. Rainey, 488 U.S. 153 (1988) ...................................................14

Berkovich v. Hicks, 922 F.2d 1018 (2d Cir. 1991) ..........................................................11

Brewer v. Jones, 222 Fed.Appx. 69 (2d Cir. 2007) ..........................................................8

Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93 (2d Cir. 2001) .....................................38

Cameron v. City of New York, 598 F.3d 50 (2d Cir. 2010)................................................ passim

Carter v. Burch, 34 F.3d 257 (4th Cir. 1994).....................................................................25

Claiborne v. Blauser, 2013 WL 1384995 (E.D. Cal. 2013), report and recommendation
adopted, 2013 WL 1963515 (E.D. Cal. 2013) ...................................................................5

Cleland v. Lattimore, 2011 WL 2173838 (C.D. Cal. 2011), report and recommendation
adopted, 2011 WL 2174947 (C.D. Cal. 2011).................................................................31

Cody v. Harris, 409 F.3d 853 (7th Cir. 2005).....................................................................29

Cohen v. Lord, Day & Lord, 75 N.Y.2d 95 (1989) ..........................................................32

Dawson v. Delaware, 503 U.S. 159 (1992) .......................................................................5

De Korwin v. First Nat. Bank of Chicago, 155 F. Supp. 302 (N.D. Ill. 1957).............................31

Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006) .............................................12

Emery v. Harris, 2014 WL 467081 (E.D. Cal. 2014) ..........................................................6

Endsley v. Luna, 750 F. Supp. 2d 1074, 1093 (C.D. Cal. 2010), aff'd, 473 F. App'x 745
(9th Cir. 2012).....................................................................................................16

Eng v. Scully, 146 F.R.D. 74 (S.D.N.Y. 1993).............................................................8, 22

Flagler v. Spellman, 15 F.2d 292 (2d Cir. 1926) ...............................................................31

iv

Gentile v. County of Suffolk, 129 F.R.D. 435 (E.D.N.Y. 1990) ...................................................22

Giles v. Rhodes, 2000 WL 1425046 (S.D.N.Y. 2000) ...............................................................15

Guillory v. Domtar Indus., Inc., 95 F.3d 1320 (5th Cir.1996)........................................................20

Haimdas v. Haimdas, 2010 WL 652823 (E.D.N.Y. 2010) .........................................................20

Hall v. Western Prod. Co., 988 F.2d 1050 (10th Cir.1993)..................................................16, 25

Harries v. United States, 350 F.2d 231 (9th Cir.1965) ..............................................................36

Higazy v. Templeton, 505 F.3d 161, 177 (2d Cir.2007)............................................................18

Holmes v. Gaynor, 313 F.Supp.2d 345 (S.D.N.Y.2004) ...........................................................29

Huddleston v. United States, 485 U.S. 681 (1988).....................................................................4

In re Columbia Sec. Litig., 155 F.R.D. 466, 474 (S.D.N.Y.1984) .........................................29-30

In re Peters, 642 F.3d 381 (2d Cir. 2011) ..............................................................................37

In re September 11 Litigation, 621 F.Supp.2d 131 (S.D.N.Y. 2009) ...........................................22

Jean-Laurent v. Hennessy, 840 F.Supp.2d 529 (E.D.N.Y. 2011)..................................................8

Jones v. Berry, 880 F.2d 670 (2d Cir. 1989) .........................................................................36

Jones v. Cargill, Inc., 490 F. Supp. 2d 989 (N.D. Iowa 2007)........................................................25

Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004) .............................................................2

Kronisch v. United States, 150 F.3d 112 (2d Cir.1998) ............................................................38

Lainfiesta v. Artuz, 2000 WL 739425 (S.D.N.Y. 2000) .............................................................36

Lee Valley Tools, Ltd. v. Indus. Blade Co., 288 F.R.D. 254 (W.D.N.Y. 2013) ...........................12

Lewis v. Velez, 149 F.R.D. 474 (S.D.N.Y. 1993) ...................................................................15

Mandal v. City of New York, 2006 WL 3405005 (S.D.N.Y. 2006)..............................................29

Martin v. Ercole, 2012 WL 4465854 (S.D.N.Y. 2012) ..............................................................35

Matter of Silverberg (Schwartz), 75 A.D.2d 817 (2d Dept. 1980) ..............................................30

McFarland v. Smith, 611 F.2d 414 (2d Cir. 1979) ........................................................5

McGugan v. Aldana-Bernier, 752 F.3d 224 (2d Cir. 2014), cert. denied, 2015 WL 1400892 (U.S. 2015).......................................................................................... passim

Moakley v. P.O. "Jane" Velarde, et al., 2002 WL 287848 (S.D.N.Y. 2002) ...........................2, 10

Moore v. Morton, 255 F.3d 95 (3d Cir. 2001)................................................................5

Morillo v. City of New York, et al., 1997 WL 72155, *3 (SDNY 1997)..................................2

Morris v. Rumsfeld, 2007 WL 951450 (M.D. Pa. 2007)..................................................25

Nimely v. City of New York, 414 F.3d 381 (2d Cir. 2005)............................................. 19, 20-21

Otero v. Jennings, 698 F. Supp. 42 (S.D.N.Y. 1988) ...................................................11

Outley v. City of New York, 837 F.2d 587 (2d Cir. 1988)...............................................8

Pacheco v. City of New York, 234 F.R.D. 53 (E.D.N.Y. 2006)........................................11

Park W. Radiology v. CareCore Nat. LLC, 675 F. Supp. 2d 314 (S.D.N.Y. 2009) ..................25

Parsons v. Honeywell, Inc., 929 F.2d 901 (2d Cir. 1991) .............................................22

Ragin v. Newburgh Enlarged City School Dist., 2011 WL 2183175 (S.D.N.Y. 2011) ............8, 26

Raysor v. Port Auth., 768 F.2d 34 (2d Cir. 1985)........................................................8

Richmond v. Gen. Nutrition Centers Inc., 2012 WL 762307 (S.D.N.Y. 2012) .........................24

Ritchie Risk–Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147 (S.D.N.Y.2012) ......................................................................................12

Shatkin v. McDonnell Douglas Corp., 727 F.2d 202 (2d Cir. 1984).....................................20, 21

Sizemore v. Fletcher, 921 F.2d 667 (6th Cir. 1990) ......................................................32

Smith v. Smith, 215 F.3d 1334 (9th Cir. 2000) ...........................................................4

Sommerfield v. City of Chicago, 254 F.R.D. 317 (N.D. Ill. 2008) ...................................15

Spencer v. Int'l Shoppes, Inc., 2013 WL 685453 (E.D.N.Y. 2013)....................................16

Topalian v. Hartford Life Ins. Co., 945 F. Supp. 2d 294 (E.D.N.Y. 2013) .........................24

U.S. v. Hatfield, 685 F.Supp.2d 320 (E.D.N.Y. 2010) ................................................9

U.S. v. Martinez, 465 F.2d 79 (2nd Cir. 1972) ............................................................2

United States v. Articles of Banned Hazardous Substances Consisting of an Undetermined Number of Cans of Rainbow Foam Paint, 34 F.3d 91 (2d Cir.1994) ...................16

United States v. Casamento, 887 F.2d 1141 (2d Cir.1989) ........................................37

United States v. Crosby, 294 F.2d 928 (2d Cir.1961), cert. denied, Mittleman v. United States, 368 U.S. 984 (1962) ........................................................................................35

United States v. Crown, 2000 WL 709003 (S.D.N.Y. 2000) ......................................28

United States v. Daoud, 741 F.2d 478 (1st Cir.1984).................................................32

United States v. Doe, 903 F.2d 16 (D.C. Cir. 1993)......................................................5

United States v. Ebens, 800 F.2d 1422 (6th Cir. 1986) ................................................4

United States v. Forrester, 60 F.3d 52, 63 (2d Cir.1995)............................................13

United States v. Garcia, 413 F.3d 201 (2d Cir. 2005) ................................................22

United States v. Gonzalez, 938 F. Supp. 1199 (D. Del. 1996) aff'd 127 F.3d 1097 (3d Cir. 1997) ...................................................................................................................5, 6

United States v. Johnson, 529 F.3d 493, 499 (2d Cir. 2008)......................................14

United States v. Kallin, 50 F.3d 689 (9th Cir.1995)....................................................31

United States v. Kilpatrick, 2012 WL 3464698 (E.D. Mich. 2012) ..............................5

United States v. Miller, 641 F. Supp. 2d 161 (E.D.N.Y. 2009)...................................28

United States v. Owens, 263 F.2d 720 (2d Cir. 1959) ............................................34-35

United States v. Paccione, 949 F.2d 1183 (2d Cir.1991)............................................28

United States v. Partin, 524 F.2d 992 (5th Cir.1975) .................................................36

United States v. Rahme, 813 F.2d 31, 37 (2d Cir.1987) .............................................36

United States v. Young, 745 F.2d 733, 766 (2d Cir.1984) ..........................................13

West v. Goodyear Tire & Rubber Co., 167 F.3d 776 (2d Cir.1999) .....................38, 39

Winkler-Koch Eng'g Co. v. Universal Oil Products Co. (Del.), 79 F. Supp. 1013 (S.D.N.Y. 1947) ........................................................................................................24

<u>Wisdom v. Undercover Police Officer No. C0127</u>, 879 F. Supp. 2d 339 (E.D.N.Y. 2012)..........18

<u>Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC</u>, 571 F.3d 206, 213-14 (2d Cir. 2009) ......................................................................................................................20

<u>Zubulake v. UBS Warburg LLC</u>, 220 F.R.D. 212 (S.D.N.Y. 2003) ............................................39

## PRELIMINARY STATEMENT

Plaintiff Adrian Schoolcraft respectfully submits this motion, pursuant to the Federal Rules of Evidence ("FRE"), to exclude evidence of, reference to, or argument concerning certain evidence at trial.  Plaintiff's alleged "racism," which has nothing to do with the issues to be tried, is an improper attempt to interject inflammatory (and specious) allegations for their purely prejudicial effect on the jury.  Claims that the father is "litigious" against the police are likewise irrelevant and inflammatory and prejudicial. Similarly, claims that the father's rifle was later found in the plaintiff's apartment have nothing to do with any genuine issue and everything to do with an inflammatory smear campaign that will derail this case from the real issues at hand. Because the defendants' pre-trial submissions and claims promise to send the Court and the jury down endless rabbit holes lacking a proper, non-prejudicial purpose, this motion should be granted.

## ARGUMENT

I.  THE OVERARCHING CONSIDERATION FOR DETERMINING RELEVANCY IN THIS CASE

    A.    Relevancy Must Be Judged By the Facts Known to Defendants At the Time of Plaintiff's Arrest

As Your Honor is aware, FRE 401, 402 and 403, respectively, govern the standard for relevancy in federal trials.  However, in this case it is also important to highlight the overriding legal principles governing liability so as to contextualize the "relevance" or "irrelevance" of any particular piece of evidence offered for admission at trial. Specifically, the standard that predominately governs liability for the events of October 31, 2009, and immediately thereafter, falls squarely with the contours of the Fourth Amendment. While there are semantic nuances between some of the Fourth

Amendment claims, there is but one central truth in determining the validity of plaintiff's search, seizure, and detention in this case – namely, that the constitutionality of defendants' conduct must be evaluated based on the actual knowledge possessed by the defendants at the time the decision to forcibly enter plaintiff's home, seize him, and commit him to the hospital. See Moakley v. P.O. "Jane" Velarde, et al., 2002 WL 287848, *3 (SDNY 2002) ("In evaluating whether the officers had probable cause, the Court considers the facts available to them at the time of arrest.") (citation omitted) (emphasis added); Morillo v. City of New York, et al., 1997 WL 72155, *3 (SDNY 1997) ("'[O]nly probable cause existing at the time of arrest will validate the arrest and relieve the defendant of liability.'"); see also Kerman v. City of New York, 261 F.3d 229, 240 (2d Cir. 2001) ("We interpret this provision [of N.Y. Mental Hygiene Law] consistently with the requirements of the Fourth Amendment and therefore assume that the same objective reasonableness standard is applied to police discretion under this section.").

Consequently, police actions *may not* be judged with the benefit of hindsight or the assistance of evidence later discovered or learned "after the fact." See U.S. v. Martinez, 465 F.2d 79, 81-82 (2nd Cir. 1972) ("This is not to say that a court will indulge in 'ex post facto extrapolations of all crimes that might have been charged on a given set of facts at the moment of arrest . . . [for] such an exercise might permit an arrest that was a sham or fraud at the outset, really unrelated to the crime for which probable cause to arrest was actually present to be *retroactively* validated.'") (emphasis added). This principle is of central import in evaluating the "relevancy" of the evidence in this matter. While discovery has produced a volume of evidence that could arguably be assembled *retroactively* to explain the NYPD's astonishing acts of October 31, 2009, almost *none* of

this information was known or considered by defendants at the time those actions were taken on Halloween night, 2009. Accordingly, this Court should exclude  evidence that tends to suggest an ex post facto justification for plaintiff's seizure from masquerading as "relevant" evidence in this case.

## II.     ANY EVIDENCE OF RACIAL ANIMUS OR RACIAL SLURS SHOULD BE EXCLUDED FROM EVIDENCE FOR ANY PURPOSE

### A.     None of This Evidence was Known or Considered by Defendants at the Time of Plaintiff's Seizure

During the course of discovery, the defendants sought to portray plaintiff as an individual with racial bias or animus. Specifically, defendants made much of two recorded conversations between plaintiff and his father in which plaintiff could be heard repeating or using racial epitaphs about African and Asian Americans. Defendants may attempt to introduce these statements against plaintiff at trial; however, their lack of relevance to any issue in this case is beyond cavil.  In particular, there is not now – nor has there ever been – any allegation that any of defendants' actions were taken with knowledge of, or in response to, plaintiff's alleged racial commentary.  Rather, these statements only became *known* after these recordings surfaced during discovery in this matter and after the events giving rise to this lawsuit had ever occurred. Accordingly, there is no credible argument that this evidence is relevant to any issue in this case and therefore it must be excluded.

While Defendant Mauriello interjected these recordings into his counterclaims, that still does not make the allegations of racism relevant.  The counterclaim alleges that the plaintiff sought revenge against Mauriello for giving him a poor evaluation.  Yet Mauriello is a white male of Italian origin.  Thus, the plaintiff's alleged "racism" against

black or Asians is irrelevant to that claim, and therefore the Court's recent decision to permit the claim to go forward does not alter this analysis.

**B.      Any Possible Relevance to this Evidence is Nullified by the Irreparable Prejudice Suffered From its Admission**

Even if defendants could articulate any probative value of this evidence, the inevitable prejudice that would result from eliciting this information is virtually academic, which warrants its exclusion. See United States v. Ebens, 800 F.2d 1422, 1433-36 (6th Cir. 1986), abrogated by Huddleston v. United States, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988) (alteration added):

> It does not take much imagination to understand how such grossly biased comments would be viewed by the jury. We need not know the racial composition of the jury, for nearly all citizens find themselves repelled by such blatantly racist remarks and resentful of the person claimed to have uttered them. Davis' testimony could only have inflamed the jury rather than have enlightened it concerning any real [issue].

Id. Thus, the only purpose in its admission would be to impermissibly inflame the jury and suggest that the plaintiff is a "bad person" undeserving of compensation regardless of the merits of the claims.   Indeed, Your Honor recognized the "inflammatory" nature of these statements; and, while "the statement's inflammatory nature [was] not sufficient to grant the motion to strike,"[1] there is no doubt that its devastatingly prejudicial impact in comparison to its marginal relevance, warrants its exclusion at trial.   See e.g., Smith v. Smith, 215 F.3d 1334 (9th Cir. 2000) ("Even though the jury did not reach the question of damages, this character evidence more probably than not tainted the entire deliberation.  By portraying Natalia Smith as an out-of-control bigot, this damaging evidence likely contributed to the jury's thinking that such a person deserved nothing.").

---

[1] (See Dkt. Entry 252 at pg. 5).

In fact, "courts applying Supreme Court precedent have found that [the admission of] improper racial or ethnic references can be so prejudicial as to result in denial of due process." Moore v. Morton, 255 F.3d 95, 113-114 (3d Cir. 2001) (alteration added). Thus, there is simply no good reason to allow "[a]ppeals to racial passion [to] distort the search for truth and drastically affect a jury's impartiality." United States v. Doe, 903 F.2d 16, 24 (D.C. Cir. 1993); See McFarland v. Smith, 611 F.2d 414, 416 (2d Cir. 1979)("To raise the issue of race is to draw the jury's attention to a characteristic that the Constitution generally commands us to ignore."). Consequently, eliciting evidence of plaintiff's alleged beliefs or feelings about race – even if they are to be considered evidence of "bad character" in the traditional sense[2] – has been universally rejected *unless* race or racial intent is a specific issue in the litigation – which it clearly is not in this case.  See e.g., United States v. Gonzalez, 938 F. Supp. 1199, 1209 (D. Del. 1996), aff'd, 127 F.3d 1097 (3d Cir. 1997)("That Bender may be regarded as a racist or a sexist individual by others is precisely the type of character evidence Rule 608(a) is designed to prohibit, as it is not in any way probative of Bender's character for truthfulness or untruthfulness."); United States v. Kilpatrick, 2012 WL 3464698, at *6 (E.D. Mich. 2012) (excluding similar "racial" character evidence "because it does not tend to prove any fact in issue in the trial and it would be impermissible character evidence."); Claiborne v. Blauser, 2013 WL 1384995, at *2 (E.D. Cal. 2013), report and recommendation adopted, 2013 WL 1963515 (E.D. Cal. 2013) (same) (excluding racial

---

[2] The Supreme Court has questioned whether the exercise of such beliefs or expressions even satisfies the classification of "bad character evidence," under 404 because of First Amendment implications, thus further mandating exclusion in this case. See Dawson v. Delaware, 503 U.S. 159, 159-60, 112 S. Ct. 1093, 1094-95, 117 L. Ed. 2d 309 (1992) (evidence of an individual's beliefs about race should necessarily be excluded under 404 because such "evidence cannot be viewed as relevant "bad" character evidence in its own right.").

remarks because of its "marginal[] relevan[ce]," and [as] improper and prejudicial character evidence."); Gonzalez, 938 F. Supp. at 1209 (same); Emery v. Harris, 2014 WL 467081, at *3-4 (E.D. Cal. 2014)(same); compare Ansell v. Green Acres Contracting Co., 347 F.3d 515, 521 (3d Cir.2003) ("[O]ther acts are admissible under Rule 404(b) in the employment discrimination context for the proper purpose of establishing or negating discriminatory intent.").  As such, in balancing the non-existent probative value of such impermissible evidence with the irreparable prejudice that would inevitably result in its admission, Your Honor should exclude this collateral, inflammatory evidence and any reference to same.

## III.   ANY REFERENCE TO PRIOR LAWSUITS AND OR INTERNAL NYPD COMPLAINTS SHOULD BE EXCLUDED AS IRRELEVANT AND HIGHLY PREJUDICIAL

### A.   There is Absolutely No Relevance to Prior Lawsuits to Which Plaintiff was Never a Party

More than ten years ago, plaintiff's father, Larry Schoolcraft, was a plaintiff in litigation against the Dallas Police Department and the Fort Worth Marshall Service in Texas concerning union and employment-related issues. More recently, in 2007, Larry Schoolcraft pursued a lawsuit against the Johnston Police Department alleging personal injuries as a result of their negligence.  While plaintiff was not involved in any way with the aforementioned litigation, the City defendants and defendant Mauriello intend to use this evidence to suggest to the jury that plaintiff's lawsuit in this case is part of a pattern of litigious behavior against law enforcement. To that end, defendants will likely claim, as they did in their summary judgment filings, that this evidence is probative of plaintiff's and his father's "scheme" to "orchestrate" the events leading up to and including October 31, 2009. However, this "like father like son" evidence has no relevance to plaintiff's

case, especially in light of the fact that plaintiff had nothing to do with his father's past lawsuits, which militates against its relevance and/or admission.   While there are numerous cases holding that a plaintiff's prior litigations should be excluded, here that conclusion has even greater force because the defendants apparently seek to try the plaintiff for his father's prior litigations.

> **B.** **There is No Relevance to Plaintiff's Prior Internal Complaints to the NYPD**

On their proposed JPTO, defendants have listed several internal NYPD complaints that plaintiff made to supervisory officers that defendants intend on introducing at trial.  Specifically, defendants have listed internal complaints dating as far back as 2005 regarding issues as remote as failure to offer plaintiff overtime benefits that they desire to introduce on their case in chief at trial.   However, these complaints are so far attenuated– in both time and substance – from the October 31, 2009 incident and the allegations of corruption that he made immediately proceeding that incident that there is no possible relevance to any of this evidence.  Therefore, since none of this evidence is even arguably relevant to the decision to forcibly enter plaintiff's home on October 31, 2009 and have him involuntarily committed to Jamaica Hospital, it must be excluded at trial.

> **C.** **The Prejudicial Effect of this Vicarious Impugnation of Plaintiff's Claims Requires Exclusion of this Evidence**

While there is clearly no relevance to the evidence about plaintiff's father's prior litigations or plaintiff's internal NYPD complaints made years before this incident, the prejudicial impact is obvious – namely, to portray plaintiff and his father as perpetual litigants/complainers against the police and vicariously attack the legitimacy of plaintiff's

claims in this case. However, as the Second Circuit has long acknowledged, the inherent danger in such evidence, should almost always warrant its exclusion.  See Outley v. City of New York, 837 F.2d 587, 592 (2d Cir. 1988) ("[t]he charge of litigiousness is a serious one, likely to result in undue prejudice against the party charged"); Raysor v. Port Auth., 768 F.2d 34, 40 (2d Cir. 1985) ("Raysor's litigiousness may have some slight probative value, but that value is *outweighed* by the substantial danger of jury bias against the chronic litigant.") (emphasis added); Jean-Laurent v. Hennessy, 840 F.Supp.2d 529, 542 (E.D.N.Y. 2011) ("it is generally *improper* for a court to admit evidence of prior lawsuits for the purpose of demonstrating that a plaintiff is a "chronic litigant."")(emphasis added) (citations omitted); Ragin v. Newburgh Enlarged City School Dist., 2011 WL 2183175, *2 (S.D.N.Y. 2011) ("introduction of evidence concerning [plaintiff's] past litigation would distract the jury from the central issues in the trial and may well lead to prejudice against [plaintiff] as a frequent litigant.").

Indeed, even when parties have articulated seemingly legitimate purposes for admitting similar evidence, courts frequently exclude it because of its innate prejudicial effect.  See e.g., Eng v. Scully, 146 F.R.D 74 (S.D.N.Y. 1993):

> "[d]efendants seek to use [plaintiff's previous litigation] purportedly to show Plaintiff's experience as a witness.  Not only is this purpose *irrelevant*…it would potentially unfairly prejudice the jury against Plaintiff by painting him as a litigious character who lacks validity. Therefore, this evidence is *inadmissible*.
>
> Id.; (emphasis added).[3]

---

[3] The *only* approved use of this evidence are situations where the prior litigation might negate causation or damages in the present case, which is obviously inapplicable here.  See e.g., Brewer v. Jones, 222 Fed.Appx. 69, 70 (2d Cir. 2007) (evidence of a previous lawsuit was "relevant to show a possible cause of [plaintiff's] injury unrelated to the acts of the defendant.").

In addition, the introduction of this evidence would also necessarily involve an assessment of the legitimacy of each prior lawsuit and NYPD complaint themselves, which risks transforming this litigation into a series of mini-trials regarding the merits of Larry Schoolcraft's prior litigation and plaintiff's prior NYPD complaints. Accordingly, this potential for delay and confusion dictates the need for excluding such evidence from admission in this case in any form. See U.S. v. Hatfield, 685 F.Supp.2d 320, 324 (E.D.N.Y. 2010) (precluding a witness from testifying under 403 because "conducting a 'mini-trial' as to whether the Defendants lied to the NASDAQ will necessarily result in '*undue delay*,' while adducing no evidence concerning whether the Defendants committed the charged crimes.") (emphasis added).

## IV. ALL EVIDENCE OF PLAINTIFF'S FATHER'S RIFLE FOUND IN HIS APARTMENT FOLLOWING THE EVENTS OF OCTOBER 31, 2009 MUST BE EXCLUDED AS IRRELEVANT AND PREJUDICIAL

On their portion of the proposed JPTO, defendants have indicated their intention of offering several exhibits in their case in chief relating to plaintiff's father's rifle that was found in plaintiff's apartment following the incident of October 31, 2009. Specifically, defendants have listed, inter alia, various photographs of the rifle and internet websites that provide general information on the use and functionality of this model of rifle. However, since defendants were completely unaware of the existence this evidence on October 31, 2009, it has absolutely no relevance on any issue in this trial and must be excluded.

In particular, it is undisputed that the recovery of this rifle did not – in any way – contribute to defendants' decision on October 31, 2009 to illegally enter plaintiff's home without consent or a valid warrant and involuntary commit him to Jamaica Hospital that

night.  In fact this rifle was *never even recovered that night* or at any time prior to or contemporaneous with his involuntary confinement.  Rather, it was recovered in connection with the IAB investigation of this incident, long after the decision to forcibly remove plaintiff from his home and involuntarily confine him at Jamaica hospital ever took place.  As such, this evidence is entirely irrelevant to the issue of whether there was probable cause to justify defendants' actions on October 31, 2009. See Moakley, 2002 WL 287848 at *3 ("In evaluating whether the officers had probable cause, the Court considers the facts available to them at the time of arrest.").

Further, notwithstanding the lack of relevance of this evidence, the risk of prejudice, delay and confusion is exponential.  This evidence has the potential of suggesting to the jury that plaintiff was violent and posed a danger to himself and/or others when in fact the *actual evidence known to the defendants* at the time of plaintiff's arrest *never* consisted of this fact.  Moreover, the admission of this evidence would delay this already lengthy trial and create a mini-trial of issues regarding the propriety of plaintiff's possession of this rifle, which have no bearing on any issue of the case. Further, plaintiff was already given internal NYPD charges relating to his possession of this rifle and there will already be a departmental hearing following this trial.  As such there is no need to conduct a separate trial within this case for the same extraneous issue. Accordingly, all evidence of the recovery of plaintiff's father's rifle found in his apartment should be excluded.

## V.  PLAINTIFF'S DISCIPLINARY AND EXCESSIVE FORCE HISTORY SHOULD BE EXCLUDED FROM THIS TRIAL

Amongst the information contained in the IAB investigation of this matter are summary references to plaintiff's disciplinary history and various unsubstantiated claims

of excessive force from 2003 through 2006.  For example, the following four incidents appear on plaintiff's "IA Pro History" from 2004 through 2009:[4] 1) failure to make a report; 2) disputed summons; 3) disputed arrest; and, 4) MOS/MOS dispute over a female prisoner. As an initial matter, plaintiff's disciplinary history and excessive force history is utterly irrelevant to any issue in this case. Specifically, there is no allegation whatsoever that this history played any role in defendants' decision to enter plaintiff's home, seize him, and involuntarily commit him to Jamaica hospital as an EDP. Moreover, none of these incidents were mentioned as a reason for plaintiff's poor performance evaluation, the appeal of which resulted in departmental retaliation against him.  In addition, the lack of any indicia regarding the outcome of these charges (i.e. substantiation, exoneration, etc.) by itself warrants exclusion of this evidence. See Otero v. Jennings, 698 F. Supp. 42, 47 (S.D.N.Y. 1988) ("None of these complaints were substantiated, and they were thus inadmissible against Jennings under Rule 404, Fed.R.Evid."); Pacheco v. City of New York, 234 F.R.D. 53, 55 (E.D.N.Y. 2006) ("That the allegations may not have been substantiated in those tribunals does not protect the records from discovery. Of course, the mere allegations in those records would not be admissible at trial.").  For these same reasons, any reference to plaintiff's unrelated and old CCRB history should also be excluded given that every single one of the five CCRB allegations against him all resulted in findings that the charges were either "unsubstantiated," "unfounded" or "exonerated."  See e.g., Berkovich v. Hicks, 922 F.2d 1018, 1022 (2d Cir. 1991)(finding exclusion proper where the witness had been

---

[4] The report actually indicates five incidents, however, the 2010 incident involves residing outside of "resident counties" and is presumably related to his residence in Johnston, New York occurring after the events of October 31, 2009.

"exonerated on all of the charges in the prior complaints, except one involving abusive language[, which] lessen[ed] significantly the probative value of these complaints...").[5]

Notwithstanding its lack of relevance, any documentation of the specifics of these incidents was never disclosed by defendants in this case at any time. Consequently, due to the lack of any documentation or elucidating information which would enable plaintiff to meaningfully argue the lack of relevance and/or prejudicial effect of this evidence defendants should not be allowed to elicit this evidence in any form at trial.  See Ritchie Risk–Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 156 (S.D.N.Y.2012) ("The purpose of this rule is 'to prevent the practice of 'sandbagging' an adversary with new evidence.'"); Lee Valley Tools, Ltd. v. Indus. Blade Co., 288 F.R.D. 254, 259-60 (W.D.N.Y. 2013) ("Rule 37(c)(1) provides that if a party fails to disclose information 'as required by Rule 26(a) or (e), the party is not allowed to use that information....'"); Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006)("Since Rule 37(c)(1) by its terms does not require a showing of bad faith, we now hold that such a requirement [is not necessary to warrant preclusion]").  Accordingly, since there is neither any relevance to this evidence nor any clarifying information regarding plaintiff's "1A History," admitting this evidence in any form should be prohibited.

## VI.    ALL REFERENCES TO THE IAB FINDINGS AND/OR CONCLUSIONS REGARDING PLAINTIFF'S CREDIBILITY MUST BE EXCLUDED AS IRRELEVANT, PREJUDICIAL, AND UNRELIABLE HEARSAY

During the course of the IAB investigation concerning the NYPD defendants' invasion of the plaintiff's home, IAB made several findings and conclusions regarding plaintiff's allegations of misconduct against several of the NYPD defendants.  With

---

[5] Mini-trial disputes during the trial over this irrelevant history should also be excluded because proof of any of these mere allegations on unproven "bad acts" will necessary require a response by the plaintiff, leading to  endless rounds of proof on irrelevant matters.

respect to the defendants in this case, these findings were necessary to the purpose of the investigation – namely plaintiff's allegations of fraud and misconduct. However, amongst one particular finding made in the report, there was a conclusory opinion wherein the investigator offered his personal impressions on an issue entirely unrelated to the purpose of the investigation.  In particular, the City's investigating IAB officer said that evidence "demonstrated" to him that plaintiff was "being coached on what to say to QAD by his father," and that "the two individuals appear to have orchestrated the AWOL event." Notwithstanding the fact that immediately following those extraneous remarks, plaintiff's allegations were deemed to be substantiated, those superfluous remarks regarding the investigator's "impressions" cannot, and should not, be admitted as evidence in this case.

Specifically, "[a]s a matter of law, the credibility of witnesses is exclusively for the determination by the jury, and witnesses may not opine as to the credibility of the testimony of other witnesses at the trial." United States v. Forrester, 60 F.3d 52, 63 (2d Cir.1995) (internal quotation marks and brackets omitted).  Similarly, and more important to this matter, it is "impermissible for a government agent to vouch for a government witness or generally to opine on the credibility of witnesses." Cameron v. City of New York, 598 F.3d 50, 61 (2d Cir. 2010).  Indeed, as the Second Circuit has repeatedly recognized,  the "risk [of undue reliance on the testimony of a government agent] arises because the jury may infer that the agent's opinion about the [] nature of the defendant's activity is based on knowledge of the defendant beyond the evidence at trial." United States v. Young, 745 F.2d 733, 766 (2d Cir.1984) (Newman, J., concurring).  Therefore, the fact that the IAB investigators comments are the impressions of a government agent designed for the sole purpose of corroborating the defense theory of the case – and their

is no evidence establishing the basis of his conclusions (see, infra) – this portion of the IAB report must be excluded. See e.g., United States v. Johnson, 529 F.3d 493, 499 (2d Cir. 2008)("in telling the jury that information obtained in the investigation corroborated the statements of witnesses who had accused the defendant, Doud's testimony obscured the important distinction between *argument* and evidence.")(emphasis added).

    In addition, there is absolutely no indication whatsoever as to how – from the mere listening of plaintiff's recorded conversation with his father – the investigator was able to extrapolate such broad sweeping conclusions. Moreover, unlike *factual* findings in reference to the allegations of departmental fraud – i.e. the purpose of the IAB investigation – these flippant conclusions were not "factual" in nature and had nothing to do with the allegations *actually* being investigated. Thus, even if other portions of the IAB report are admissible,[6] these particular statements should not be. See e.g., Ariza v. City of New York, 139 F.3d 132, 133-34 (2d Cir. 1998)("before the court can presume trustworthiness [under 803], it must determine that the report contains *factual* findings based on a *factual* investigation.") (emphasis added); Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 169, 109 S.Ct. 439, 449-50, 102 L.Ed.2d 445 (1988) ("[T]he requirement that reports contain factual findings *bars* the admission of statements not *based on factual investigation*.") (emphasis added).

    Moreover, these conclusory statements in the IAB report were made almost one year after this lawsuit commenced – wherein the City was a *defendant* – thereby making any arguable justification for admitting the statement under 803 completely inapplicable

---

[6] "A trial judge has the discretion, and indeed the obligation, to exclude an entire report or portions thereof—whether narrow 'factual' statements or broader 'conclusions'—that she determines to be untrustworthy." Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 167, 109 S. Ct. 439, 449, 102 L. Ed. 2d 445 (1988)

given that it was made by the City's agent. See Lewis v. Velez, 149 F.R.D. 474, 488 (S.D.N.Y. 1993):

> [R]eports prepared after an incident have been held inadmissible where the preparer of the report knows at the time of making the report that he or she is 'very likely, in a probable law suit relating to that [incident]...making the memorandum or report, to be sharply affected by a desire to exculpate himself and to relieve himself *or his employer* of liability."

Id. (emphasis added); Sommerfield v. City of Chicago, 254 F.R.D. 317, 324 (N.D. Ill. 2008)(finding the report excludable because "[i]n the instant case, the summaries of the depositions provided to Mr. Pastor were prepared not merely in anticipation of litigation, but in the *midst* of the case...")(emphasis added).

Further, the inherent untrustworthiness of IAB's "assessment" that plaintiff had "orchestrated" the entire incident is exacerbated by the fact that this statement pertains to the very *merits* of plaintiff's lawsuit and coincidentally the City's *exact* defense in this case. As such, given that this impromptu commentary serendipitously addresses the very heart of this litigation – yet had nothing to do with the investigation itself – the motivation to make such a statement clearly impacts the credibility and admissibility of same, which warrants it's exclusion. See Lewis, 149 F.R.D. at 488 ("A strong likelihood of improper motivation on the part of a witness can outweigh all other trustworthiness factors."); Giles v. Rhodes, 2000 WL 1425046, at *8 (S.D.N.Y. 2000) (deeming such reports inadmissible "because of the self-serving nature of such reports in light of the writer's inherent motivation to be less than accurate.").

Moreover, admitting this portion of the IAB report would severely prejudice plaintiff by suggesting that the jury reach the same conclusion about the merits of plaintiff's case, while simultaneously depriving plaintiff the ability to cross examine the legitimacy of any such conclusion. See Hall v. Western Prod. Co., 988 F.2d 1050, 1057-

58 (10th Cir.1993) (district court did not abuse discretion in excluding report where the sole purpose of admitting report "would be to suggest to the jury that it should reach the same conclusion" as the agency); United States v. Articles of Banned Hazardous Substances Consisting of an Undetermined Number of Cans of Rainbow Foam Paint, 34 F.3d 91, 96 (2d Cir.1994))("witnesses may not 'present testimony in the form of legal conclusions.'"). Accordingly, the extraneous "conclusions" of a City defendant employee opining on the merits of plaintiff's lawsuit, made while that lawsuit is pending, should not be admissible in this matter for obvious reasons. See Spencer v. Int'l Shoppes, Inc., 2013 WL 685453, at *4 (E.D.N.Y. 2013) ("Based on the relevant factors, the Court finds that it would be inappropriate to permit Defendants to introduce Justice Lally's findings on Spencer's credibility....[the] finding would be highly prejudicial since the witness whose testimony is at issue is the plaintiff."); Endsley v. Luna, 750 F. Supp. 2d 1074, 1093 (C.D. Cal. 2010), aff'd, 473 F. App'x 745 (9th Cir. 2012) ("Thus, to the extent that the Patton Report contains facts, they are admissible. Its legal conclusions, on the other hand, are not.").

**VII.    ANY EVIDENCE OF THE QUEENS DISTRICT ATTORNEYS OFFICE'S DECISION TO NOT PROCEED WITH CRIMINAL CHARGES AGAINST THE DEFENDANTS MUST BE EXCLUDED FOR ANY PURPOSE**

It is well settled that a prosecutor and/or prosecutorial agency may not give opinion testimony on any issue relating to probable cause because it constitutes "implicit vouching," on an ultimate issue in the case.  Cameron, 598 F.3d at 64; Adams v. City of New York, 993 F. Supp. 2d 306, 326 (E.D.N.Y. 2014)("Based on Second Circuit case law, the Assistant District Attorney witnesses cannot testify...that they determined that the information he provided to them was sufficient to establish probable cause."). Further,

the reason for prohibiting this evidence is self explanatory – namely, to ensure that plaintiff's claims are not subject to "highly prejudicial testimony from seemingly reputable sources."  Cameron, 598 F.3d at 65. "Therefore, any evidence that explicitly or implicitly opines regarding the ultimate determination of probable cause must be excluded because "whether or not probable cause to arrest exists is a legal determination that is not properly the subject of expert opinion testimony."'" Adams, 993 F. Supp. 2d at 324.

In the present case, the Queens District Attorney's Office decided not to bring criminal charges against any of the defendants in this case following its "investigation" of plaintiff's claims.   As an initial matter, this decision has no probative value whatsoever given that the DA's "'independent judgment' [in this case] consisted of no more than verifying some of the allegedly false information provided by the officers."  Cameron, 598 F.3d at 64.  Nevertheless, defendants might seek to introduce this evidence to suggest that defendants' actions on October 31, 2009 were justified, legal or otherwise constitutional because of the fact that the Queens DA did not prosecute defendants for their acts.  However, this purpose is precisely the type that is barred under Cameron and its progeny as it essentially seeks to bolster the credibility of the witnesses in this case. Accordingly, since this type of evidence is per se inadmissible on this ultimate issue of probable cause, it logically follows that defendants cannot admit it through the back door to indirectly imply that defendants acted properly in this case.

In addition, apart from its inadmissibility as improper opinion evidence (i.e. vouching), it is equally irrelevant because "what prosecutors do subsequently has no effect whatsoever on the police officer's initial, potentially tortious behavior." Cameron,

598 F.3d at 63 (citing <u>Higazy v. Templeton</u>, 505 F.3d 161, 177 (2d Cir.2007)).

Moreover, any possible alternative rationale for admitting this type of evidence is further

negated by the fact that there is no malicious prosecution claim in this case.   As such,

since "a district judge would not [even] consider admitting [this evidence] in the absence

of a malicious persecution claim," there is absolutely no basis for its admission herein.

<u>Cameron</u>, 598 F.3d at 65 (2d Cir. 2010).   Therefore, any evidence regarding the

conclusions or decisions of the Queens District Attorney's Office to decline a criminal

prosecution against defendants in this matter must be excluded as a matter of law. <u>See</u>

<u>e.g.</u>, <u>Wisdom v. Undercover Police Officer No. C0127</u>, 879 F. Supp. 2d 339, 342

(E.D.N.Y. 2012)("As to Wisdom's request that certain potential defense witnesses be

precluded from vouching for the defendants' credibility or testifying in the form of legal

conclusions, that portion of his motion is granted. It is unopposed, and correct as a matter

of law.").

## VIII.   WITNESSES SHOULD NOT BE PERMITTED TO RENDER OPINION EVIDENCE REGARDING PLAINTIFF OR THE MERITS OF HIS CASE

### A.   Defendants Should Not Be Allowed to Examine Plaintiff's Expert on Unrealistic Assumptions that Call for Opinions Outside His Designated Expertise

In the present case, plaintiff has designated Dr. John Eterno as an expert in police

procedures.   His testimony was designed to analyze whether the actions taken on the

night of October 31, 2009 – namely, having a squadron of high ranking officers pulled

off detail to personally extract plaintiff from his home and bring him *back* to the precinct

– were in contravention of NYPD procedures.   Notwithstanding those specific

qualifications, at his deposition defendants posed a hypothetical question wherein he was

asked to "assume" three (3) pages worth of dictated facts and render his opinion on

whether those "assumed" facts would warrant the classification of an Emotionally Disturbed Person ("EDP"). (Attached as **Exhibit A**). Although he responded that even under those assumed facts, defendants should not have forcibly removed plaintiff to the hospital, in that answer he made a passing remark that he personally considered that "assumed" behavior to be "bizarre." This particular reference to Dr. Eterno's personal feeling that he considered the assumed behavior "bizarre" should be excluded at trial for at least three reasons.

First, this reference is in no way related to his expert qualifications. Dr. Eterno is not a behavioral psychologist, nor is he in any manner qualified to render any opinion as to the "normalcy" of Schoolcraft's behavior. Rather, Dr. Eterno has been designated as an expert in the police practices of the NYPD, the Blue Wall of Silence, and Compstat's impact on police behavior, and, therefore, his opinion on the "normal' or "abnormal" characteristics of a persons behavior is inadmissible as a matter of law.  See Nimely v. City of New York, 414 F.3d 381, 399 (2d Cir. 2005) ("it is worth emphasizing that, because a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields.").

In addition, defendants' hypothetical asked Dr. Eterno to assume numerous facts (i.e. that he had recorded his tour of duty and had been discussing "strategy" with his father prior to defendants' actions) that were never known to the police officers – or Dr. Lamstein – at the time the decision to invade his home and forcibly remove him was made. Further, the impropriety of defendants' hypothetical is exacerbated by the subjective and speculative thought process that Dr. Eterno was asked to assume –

namely, plaintiff's "wishes" that he could have a "fair fight" with a supervisor. Accordingly, as the Second Circuit has expressly held, defendants should be prohibited from examining Dr. Eterno on this answer because it is impermissible for an expert to render an opinion on such, "'so unrealistic and contradictory [to the facts] as to suggest bad faith' or to be in essence 'an apples and oranges comparison.'" <u>Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC</u>, 571 F.3d 206, 213-14 (2d Cir. 2009) (alteration added). Similarly, defendants should not be permitted to examine Dr. Eterno *at trial* on such an *impossible* assumption of facts, the knowledge of which would have required defendants to be clairvoyant.[7] <u>See</u> e.g. <u>Shatkin v. McDonnell Douglas Corp.</u>, 727 F.2d 202, 208 (2d Cir. 1984):

> [There] is not a sufficient foundation for what you are attempting to do. You are extrapolating speculations on hypotheses with more speculations at the end'...Clearly such proposed testimony was riddled with errors, and therefore excludable under Fed.R.Evid. 703.

> <u>Id</u>. <u>See</u> <u>Guillory v. Domtar Indus., Inc.</u>, 95 F.3d 1320, 1331 (5th Cir.1996) (an

expert should not be permitted to testify based on "'altered facts and speculation designed [solely] to bolster [a party's] position.'").

Third, the undertone of this question calls for an answer that strikes directly at the ultimate issue of plaintiff's credibility, which is improper as a matter of law.  <u>Haimdas v. Haimdas</u>, 2010 WL 652823, at *3 (E.D.N.Y. 2010) ("[e]xpert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702."); <u>See, e.g.</u>, <u>Nimely</u>, 414 F.3d at 399 ("Dawson's personal view of the officers' credibility is simply not a sufficiently

---

[7] Even Dr. Eterno's own response to the question requested defendants clarify whether any of this "assumed behavior" was actually known to anyone at the time the decision to declare plaintiff as an EDP was made.

reliable ground on which to base the conclusion that Muirhead and McCarthy experienced an optical illusion...[] such a "methodology" could not even begin to satisfy any of *Daubert* 's criteria.."). This impropriety is only compounded by the substantial weight likely to be given to his opinion by the jury, which would only increase the prejudicial effect of such evidence. See Shatkin, 727 F.2d at 208 ("it would probably have hopelessly confused and misled the jury because of the latter's inability to appraise the extremely questionable and unsupported assumptions underlying the testimony."). Accordingly, defendants should be prohibited from artificially bolstering their position in this case which such impermissible testimony.

**B.      Any Testimony and/or Evidence of Plaintiff's Sister's Opinion Must Be Excluded**

During the course of the IAB investigation, a recorded telephone interview with plaintiff's sister, Mystica Schoolcraft, was conducted.[8] While she offered almost no statements regarding plaintiff *directly*, she was not shy about expressing her "beliefs" that plaintiff's father was a "parasite."  However, as she admitted in the interview, she had no personal knowledge of plaintiff's situation or this case, apart from what she read in the news, and was basing her opinion on her childhood experience with her father. As such, this evidence must be excluded simply because of its lack of probative value to the case and its unduly prejudicial nature.

In addition, there is no question that her statements are also precluded under the hearsay rules – even if contained within the arguably admissible "IAB report." See Parsons v. Honeywell, Inc., 929 F.2d 901, 907 (2d Cir. 1991) ("It is well established that

---

[8] This purpose of this particular interview is not entirely clear given the questionable relevance of the information that could possibly have been obtained given that plaintiff had not spoken with her in the ten (10) years proceeding this incident.

entries in a police report which result from the officer's own observations and knowledge may be admitted *but that statements made by third persons under no business duty to report may not.*")(emphasis added); <u>In re September 11 Litigation</u>, 621 F.Supp.2d 131, 158 (S.D.N.Y. 2009) ("A statement recorded in a public record made by an individual with no business duty to report is considered hearsay-within-hearsay and is excluded, unless it satisfies some other hearsay exception."). Similarly, given the *obvious* personal animus of Mystica towards her father, the trustworthiness of any of her statements is dubious at best, which militates against their admission. <u>See</u> <u>e.g.</u>, <u>Gentile v. County of Suffolk</u>, 129 F.R.D. 435, 457 (E.D.N.Y. 1990) ("As the Court of Appeals for the Second Circuit has observed, 'in most cases in which [investigative reports] have been excluded, there has been reason to suspect *bias*....'") (emphasis added); <u>See</u> <u>Eng v. Scully</u>, 146 F.R.D. 74, 80 (S.D.N.Y. 1993) ("Rule 803(8) will not be used to circumvent the hearsay rule. The reports of the Inspector General are not admissible as they contain untrustworthy double hearsay.").

Notwithstanding the impermissible hearsay of her statements and the lack of relevance to her testimony – even if she delivered it live at trial – her lay opinion is also impermissible as a matter of law, because she concededly does not possess any personal knowledge of the events of this case. <u>See</u> <u>Adams v. City of New York</u>, 993 F. Supp. 2d 306, 324 (E.D.N.Y. 2014) ("Rule 701 of the Federal Rules of Evidence has three 'specified prerequisites for lay opinion testimony." First, it 'requires lay opinion testimony to be based on the witness's personal perceptions.'"); <u>United States v. Garcia</u>, 413 F.3d 201, 211 (2d Cir. 2005) ("A witness may not testify to a matter until evidence is introduced sufficient to support a finding that the witness had personal knowledge of the

matter.").  In fact, she has not spoken to either plaintiff or her father in over ten years, and according to her statements to the IAB, she only knew of plaintiff's case from the media coverage that it had received, which cannot satisfy the requirements of FRE 703. <u>See</u> <u>Adams</u>, 993 F. Supp. 2d at 324 ("Thus, opinions based "on the totality of information gathered by various persons in the course of an investigation, was not admissible before a jury."). Therefore, whether defendants attempt to introduce Mystica's opinions through cross-examination or direct examination of any witness or the direct offer of the IAB report, or they intend of having her live testimony at trial, this court should refuse to admit any such prejudicial evidence, which lacks any personal knowledge and seeks to vicariously impugn the legitimacy of plaintiff's entire case because of a grudge against plaintiff's father. <u>See</u> <u>Cameron</u>, 598 F.3d at 61 ("the credibility of witnesses is exclusively for...determination by the jury, and witnesses may not opine as to the credibility of the testimony of other witnesses at the trial.").

**IX.   THE DECISION IN DEFENDANT BERNIER'S PREVIOUS LAWSUIT AND ANY REFERENCE TO THE "THE NAVY YARD DISASTER" SHOULD BE EXCLUDED AS IRRELEVANT AND UNDULY PREJUDICIAL**

**A.   Plaintiff Cannot Be Bound by a Decision Regarding the Constitutionality of Bernier's Conduct in a Prior Unrelated Lawsuit**

It is abundantly clear from her most recent letter filing in this case, that defendant Bernier views the court's decision in <u>McGugan v. Aldana-Bernier</u>, 752 F.3d 224, 234 (2d Cir. 2014), <u>cert. denied</u>, 2015 WL 1400892 (U.S. 2015), to be particularly relevant in this litigation.  Presumably, this is because in <u>McGugan</u> she is alleged to have deviated from proper medical and constitutional standards in involuntarily confining another individual to Jamaica Hospital.  Defendant Bernier most likely wishes to use the court's finding that

her decision to involuntary confine the plaintiff in that case was not, "'unrelated to' or 'improper to consideration of' the likelihood that she posed a danger to herself or others." McGugan, 752 F.3d at 234.  The obvious implication of this evidence is the suggestion that other courts and/or juries have found her methods for admitting patients who allegedly pose a risk to their safety both constitutionally and medically acceptable. However, since plaintiff was not a party to that lawsuit, and this case is factually distinct, plaintiff cannot be bound or otherwise affected by the admission of such palpably irrelevant evidence designed solely to bolster Bernier's defense in his case.  Accordingly, "courts are reluctant to cloud the issues in the case at trial by admitting evidence relating to previous litigation involving one or both of the same parties." Arlio v. Lively, 474 F.3d 46, 53 (2d Cir.2007).[9] See e.g., Winkler-Koch Eng'g Co. v. Universal Oil Products Co. (Del.), 79 F. Supp. 1013, 1016 (S.D.N.Y. 1947) ("a judgment is evidence in a subsequent suit *solely* between the *parties to the preceding suit, or their privies*.") (emphasis added).

### B.    The Prejudicial Effect of this "Ultimate Issue" Evidence Clearly Outweighs any Probative Value in this Case

Apart from the irrelevance of this evidence to the distinct facts herein, the prejudicial impact of McGugan is clear – namely, to improperly suggest to the jury that they reach a similar result regarding the propriety of Dr. Bernier's conduct in this case. Consequently, courts almost unanimously reject this type of evidence because it, "'undertakes to tell the jury what result to reach, and thus attempts to substitute the

---

[9] It should also be noted that this evidence is rank hearsay in that it asserts the truth of out of court statements implicitly condoning her methods as a physician and thus another reason for its exclusion. See Topalian v. Hartford Life Ins. Co., 945 F. Supp. 2d 294, 361 (E.D.N.Y. 2013)("a 'court may [only] take judicial notice of a document filed in another court '*not for the truth of the matters asserted in the other litigation*.'"); Richmond v. Gen. Nutrition Centers Inc., 2012 WL 762307, at *9 (S.D.N.Y. 2012)("To the extent that defendants seek only to preclude the introduction of [] court filings in other lawsuits, their motion to preclude is granted....such [evidence] [is] inadmissible hearsay....").

[witness's] judgment for the jury's.'" Cameron, 598 F.3d at 62 (citations omitted); Park W. Radiology v. CareCore Nat. LLC, 675 F. Supp. 2d 314, 324 (S.D.N.Y. 2009) ("even if Defendants show that the Preliminary Injunction Ruling is relevant, any references to the Court's Preliminary Injunction Ruling are likely to unduly influence the jury.") (citations omitted); Carter v. Burch, 34 F.3d 257, 265 (4th Cir. 1994)("[J]udicial findings of fact 'present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice.' "); Hall, 988 F.2d at 1057-58 (district court did not abuse discretion in excluding [] [] report where the sole purpose of admitting report "would be to suggest to the jury that it should reach the same conclusion" as the agency); Morris v. Rumsfeld, 2007 WL 951450, at *3 (M.D. Pa. 2007) ("The court finds that exposing the jury to the AJ's *ratio decidendi* would "unfairly influence the jury in this determination.""); Jones v. Cargill, Inc., 490 F. Supp. 2d 989, 991-92 (N.D. Iowa 2007)("Under the circumstances of this case, the court has substantial concerns about admitting any evidence relating to the arbitrator's decision, because it has the potential to "usurp the jury's role in assessing credibility.").

In addition, introducing such evidence also has the serious potential of confusing the jury and protracting this trial with an examination of the collateral issues in McGugan (i.e. the unique facts and claims of that lawsuit) which are not readily capable of cross examination.  See Ragin, 2011 WL 2183175, at *2 ("Even if the Court were to accept that these are valid arguments for the admission of evidence of Ragin's prior litigation, Rule 403 requires exclusion of the evidence of prior litigation because there is too high a risk of juror prejudice and confusion."); Jones, 490 F. Supp. 2d at 991-92 ("such evidence

would undoubtedly lengthen the trial and confuse the issues for the jury...Plaintiff would be permitted to present wide-ranging evidence about arbitral procedures, the CBA and the differences between arbitral and judicial proceedings and CBAs and federal employment discrimination laws."). Consequently, Dr. Bernier should not be allowed to impermissibly bolster their defense in this case with such highly prejudicial collateral evidence.

### C. Dr. Bernier's Reference to a Separate "Navy Yard Disaster" is Completely Irrelevant, Prejudicial and Collateral to the Issues in this Litigation

At the time of her deposition, when being questioned about her decision to involuntarily commit plaintiff to the psychiatric ward of Jamaica Hospital on October 31, 2009, Dr. Bernier testified that, inter alia, she was "trying to prevent another case of Navy Yard Disaster."  As a preliminary matter, Dr. Bernier offered no specifics whatsoever regarding what incident(s) the "Navy Yard Disaster" was referring to (i.e., the date, time, place and/or circumstances of this alleged incident).  As such, any reference to this unknown "Navy Yard Disaster" at trial would necessarily entail an in depth exploration into the details of this collateral issue, which warrants its exclusion in the first instance.

Moreover, there is no credible argument to be made that the details of this alleged "Navy Yard Disaster" incident are even arguably material to the legality of her decision to commit plaintiff on October 31, 2009.  Indeed, in an attempt to decipher *any* specifics regarding such an incident, the undersigned was only able to find two (2) media references to anything even remotely matching Dr. Bernier's description – both of which occurred after October 31, 2009.  Therefore, assuming that either of these references even relate to the incident that Dr. Bernier was describing, the mere fact that they occurred

after October 31, 2009 – the date when the decision at issue in this lawsuit was made – makes them irrelevant as a matter of law.   Thus, any reference to this "Navy Yard Disaster" is simply a transparent attempt to retroactively justify her illegal decision to commit plaintiff with completely irrelevant, highly prejudicial information solely meant to evoke an improper emotional response from the jury and must be excluded.

## X.   DEFENDANT MARINO'S ALLEGED "EXPERIENCE" IN DEALING WITH SUICIDAL INDIVIDUALS SHOULD BE EXCLUDED AS IRRELEVANT AND UNDULY PREJUDICIAL

At his deposition defendant Marino testified that he had "experience" in dealing with suicidal individuals – namely, the suicide of Deputy Inspector Richard Capolango. Defendants should not be allowed to elicit this evidence at trial as if to suggest that his "experience" with Richard Capolango's suicide was relevant in determining his actions on October 31, 2009.  While counsel in no way attempts to make light of such a horrific incident, Marino's claims of "experience" in this incident are dubious at best. Specifically, he was unable to recall any facts or circumstances surrounding this suicide, which is particularly telling of the credulity of his self-serving assertions of "experience" given that this suicide occurred within the 107th precinct and involved Mr. Capolango shooting himself in the head.  Thus, his lack of memory regarding the details of such a memorable event – which coincidentally received widespread media coverage in 2004 – certainly begs the question of the extent of Marino's "experience" with this individual's suicide. Further, the record in this case clearly establishes that this alleged "experience" was not brought to bear on October 31, 2009, as Marino has never once alleged – prior to his deposition – in a single police report or interview that his "experience" caused him to believe that plaintiff was a particular risk for suicide on Halloween night.

27

In addition, any modicum of probative weight given to his "experience" is substantially outweighed by the danger of its prejudicial effect on the jury. Specifically, hearing evidence of such a horrific incident involving his NYPD brethren is undoubtedly likely to garner unnecessary sympathy from the jury. See, e.g., United States v. Paccione, 949 F.2d 1183, 1201 (2d Cir.1991) (affirming district court's exclusion of evidence that fraud defendant's son had cerebral palsy because such evidence "could well cause the jury to be influenced by sympathies having no bearing on the merits of the case"); United States v. Miller, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009) ("Evidence of defendant's motive in acquiring the fraudulent passport at issue has limited probative value...Weighed against admission of this evidence is its potential to engender sympathy in an inappropriate effort to excuse defendant's commission of the charged offences."). Therefore, the irrelevance of Capolango's suicide and its potential to engender undue sympathy from the jury should clearly dictate the inadmissibility of this evidence here. See United States v. Crown, 2000 WL 709003, at *3 (S.D.N.Y. 2000):

> The presentation of such evidence would likely appeal to the jury's sympathy, and thus constitute an improper influence on the jury members' consideration of the factual and legal issues bearing on the merits of the case. Exclusion of such potentially prejudicial evidence is therefore necessary under the circumstances of this case.
>
> Id.

## XI.   ANY EVIDENCE FROM MEDIA SOURCES MUST BE EXCLUDED AS INADMISSIBLE HEARSAY LACKING TRUSTWORTHINESS

As a general rule – with limited exceptions – courts have held that the admission of media reports and/or news coverage constitutes inadmissible hearsay and should be excluded. See, e.g., In re Columbia Sec. Litig., 155 F.R.D. 466, 474 (S.D.N.Y.1984) ("Often, when offered to prove that certain statements were made, newspaper and

magazine articles are held inadmissible as hearsay."); Holmes v. Gaynor, 313 F.Supp.2d 345, 358 (S.D.N.Y.2004) (holding newspaper article inadmissible on hearsay grounds). Not only does this evidence constitute hearsay without exception, but there are *multiple layers* of hearsay – *all of which* must satisfy some exception if admission can even be *considered*.  See Mandal v. City of New York, 2006 WL 3405005, at *1 (S.D.N.Y. 2006) ("Thus, newspaper articles containing quoted remarks are *hearsay within hearsay* -they contain out of court statements by the quoted individual, within a document that is itself an out of court statement. Newspaper articles are usually inadmissible hearsay.") (emphasis added).  Consequently, this evidence has been universally deemed unreliable without testimony from the specific author in order to establish the trustworthiness of the information contained therein. See e.g., Cody v. Harris, 409 F.3d 853 (7th Cir. 2005) (declining to admit newspaper article where plaintiff failed to offer any evidence related to the reporter, his method of reporting, or other assurances of trustworthiness); Mandal, 2006 WL 3405005, at *3 (recognizing that this evidence may be admissible "where the reporter was available to offer foundational testimony, or possessed contemporaneous notes corroborating such testimony."); See e.g., In re Columbia Sec. Litig., 155 F.R.D. at 475 (admitting magazine article and reporter's contemporaneous notes under the residual exception only because reporter was available to testify and the notes corroborated the contents of the article).

As Your Honor is aware, in the present case, the media coverage has been extensive.  Print, radio, and television have followed this case from its infancy due to the obvious public interest in the underlying subject matter – namely, allegations of widespread and rampant misconduct within the largest police department in the world.

While there is no way to predict what manner any of this information might potentially be used at trial, this court should nevertheless exclude, directly or indirectly,  any reference to, or admission of, and media coverage regarding this case. Not only is the reliability of this evidence an obvious issue, but as discussed above, it constitutes multiple layers of hearsay, which renders it inadmissible as a matter of law. Further, even assuming the authors were available to testify and could be cross-examined regarding the trustworthiness of this information, admitting this evidence could veer this trial down a rabbit's hole of collateral issues surrounding the legitimacy of the information contained within these articles and their news gathering techniques. As such, because of the inherent risk of prejudice and delay in admitting this evidence, this Court should exclude the same.

## XII.   PLAINTIFF'S RETENTION AND/OR TERMINATION OF ANY OF THE ATTORNEYS IN THIS ACTION SHOULD BE EXCLUDED

It is well settled that a party's ability to hire the lawyer of his choosing is a preeminently valued right. As a result, New York's disciplinary rules prohibit attorneys from taking any action that has the potential to interfere with choice. See e.g., Matter of Silverberg (Schwartz), 75 A.D.2d 817, 427 N.Y.S.2d 480 (2d Dept. 1980) ("the cardinal purpose underlying rule 5.6 and DR 2–108(A) [is] preventing agreements which interfere with the freedom of clients to retain and discharge attorneys."). Similarly, it is well settled that it is an individual's right to terminate that representation and hire new counsel *at any time, for any reason*. See Flagler v. Spellman, 15 F.2d 292, 293 (2d Cir. 1926)("Under the law of that state a client is free at all times to revoke a retainer and to dismiss his attorney ('discharge' him in the language of the New York cases")); De Korwin v. First Nat. Bank of Chicago, 155 F. Supp. 302, 306 (N.D. Ill. 1957)("the client

has the absolute right to discharge the attorney and terminate the relation at any time even without cause, no matter how arbitrary his action may seem"). In fact, in many instances, these rights have protection under the Constitution. See, e.g., United States v. Kallin, 50 F.3d 689, 693 (9th Cir.1995) (holding that due process prohibits prosecutor from commenting on defendant's decision to retain counsel); Cleland v. Lattimore, 2011 WL 2173838, at *9 (C.D. Cal. 2011), report and recommendation adopted, 2011 WL 2174947 (C.D. Cal. 2011) ("To be sure, several courts have held that the Due Process Clause prohibits a prosecutor from arguing that a defendant hired an attorney to generate an alibi or to get his or her 'story straight.'").

Those same principles should require exclusion of, or any reference to, the fact that plaintiff has retained and/or terminated attorneys in this case.  For example, defendants may well seek to cross examine plaintiff – as they did during his deposition – regarding his reasons for retaining or discharging any particular counsel in this case; however, this evidence has absolutely no bearing on any issue in this case – namely, whether or not there was a proper basis for arresting the plaintiff on October 31, 2009 – and would only seek to prejudice plaintiff and his counsel from effectively trying this case. Similarly, eliciting this evidence before the jury would effectively punish plaintiff for freely exercising his choice to counsel, which should not be allowed as a matter of principle. See Cohen v. Lord, Day & Lord, 75 N.Y.2d 95, 107, 550 N.E.2d 410, 417 (1989) (acts that "impinge upon the right of future clients to free choice of counsel" should not be countenanced).

Moreover, permitting this evidence would be to prejudicially imply that plaintiff's choices in this respect represent his problems with authority; that he does not act in his

own best interests; or, simply that he turns against the people that are trying to help him (*i.e.*, the defendants in this case). None of these purposes would be permissible in any other context, and thus they should likewise be prohibited in this case. See e.g., Sizemore v. Fletcher, 921 F.2d 667, 671-72 (6th Cir. 1990) ("A prosecutor may not imply that an accused's decision to meet with counsel, even shortly after the incident giving rise to a criminal indictment, implies guilt."); United States v. Daoud, 741 F.2d 478, 480–81 (1st Cir.1984) (holding that prosecutor cannot capitalize on defendant's request for counsel by arguing that request evidenced that defendant must have had something to hide). By analogy, the undersigned could not properly argue that defendant Mauriello's decision to retain private counsel instead of being represented by City attorneys implies consciousness of his culpability in this case.  Such an improper suggestion would contravene Mauriello's right to counsel in the first instance as well as confuse and prejudice the jury. As such, defendants should not be allowed to suggest something similar regarding plaintiff.  Accordingly, since the relevance of such evidence is substantially outweighed by its dangerous prejudicial effect, it should therefore be excluded.

## XIII. DEFENDANTS SHOULD BE PRECLUDED FROM ANY INQUIRY REGARDING THE DAUGHTER OF EMERGENCY MEDICAL TECHNICIAN EXPERT DR. HALPREN-RUDER

Plaintiff has designated Dr. Dan Halpren-Ruder as an expert in the field of emergency medical procedures. Specifically, Dr. Halpren will offer his opinion regarding the actions taken by Jamaica Hospital emergency room staff on the night of plaintiff's involuntary hospitalization. During his deposition, while Dr. Halpren-Ruder was giving his opinion about the effect of stress on blood pressure and heart rate readings,

defendants confronted him with his lack of NYPD experience, to which he responded, "but my daughter was in NYPD for seven years."

Notwithstanding the irrelevance of this remark, which plaintiff is not admitting at trial,  at Dr. Halpren-Ruder's deposition the defendants conducted an extensive inquiry regarding his daughter, including her name, rank, assignments, reason for leaving, any disciplinary charge.(Id.).  This continued until Dr. Halpren-Ruder was eventually instructed not to answer any further questions about his daughter due to its lack of relevance to this litigation or his testimony.  Similarly, to the extent that defendants wish to continue this line of inquiry at trial – namely, on his daughter and her previous employment with the NYPD – this court should preclude such an irrelevant, improper and harassing line of inquiry.

As mentioned, Dr. Halpren-Ruder is being offered as an expert in emergency medical procedures. His testimony concerns blood pressure, heart rate and hospital emergency room procedures issues.  He does not address NYPD policy or practice at all, nor is it proper for him to do so, as those issues fall squarely outside of his area of designated expertise. See Bee v. Novartis Pharm. Corp., 2014 WL 1855632 (E.D.N.Y. 2014) ("the Court must ensure that the expert will be proffering opinions on issues or subject matters that are within his or her area of expertise.").  In addition, his daughter voluntarily left the NYPD to work elsewhere about five years ago, and Dr. Halpren-Ruder has not discussed this case with her in any respect, making this topic all the more irrelevant. Accordingly, defendants should be barred from prying into the life of Dr. Halpren-Ruder's family in order to improperly – and baselessly – suggest some improper

motive against the NYPD, or, for whatever other confusing, irrelevant purpose this testimony might conceivably be used.

## XIV.  THIS COURT SHOULD LIMIT WITNESS EXAMINATIONS IN THIS CASE TO AVOID UNDUE REPETITION, CONFUSION, AND DELAY

In this case, the relevant areas of witness examination include: the events connected with plaintiff's employment that precipitated October 31, 2009; the events occurring on October 31, 2009 and the six days afterwards, beginning with plaintiff's tour of duty and followed by the home invasion and his subsequent detention at Jamaica hospital; and, the events that followed him to Johnston after his release from the hospital. As such, the breadth of topics that precede questions of liability in this case are fairly narrow.  Conversely, given the number of defendants in this case – five of which are represented by separate counsel – the potential for overlapping, repetitive and confusing cross-examination is extremely high.  In fact, if each attorney was allowed to conduct their own separate full examination of every witness in this case, this trial could last several months.  Therefore, given the danger of repetition, delay, and confusion with so many attorneys, this court should impose some type of limitation on the cross examination of witnesses in this case. See e.g., United States v. Owens, 263 F.2d 720, 722 (2d Cir. 1959) ("The permissible limits of cross-examination are, for the most part, wisely left to the discretion of the trial judge."); Martin v. Ercole, 2012 WL 4465854, at *2 (S.D.N.Y. 2012) ("trial judges retain 'broad discretion' to limit inquiry, even the cross-examination of [] witnesses..."); United States v. Crosby, 294 F.2d 928, 944 (2d Cir.1961), cert. denied, Mittleman v. United States, 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962) ("The trial judge in a lengthy trial must be afforded reasonable discretion to limit cross-examination...").

34

For example, it is difficult to envision any distinction whatsoever between the interests of defendant Mauriello and the City defendants with respect to the subject matter on which they would be interested in examining witnesses.  As a result of this unity in interest between the City defendants and Mauriello, there is no reason why each attorney should have the same full, unfettered opportunity for cross examination of each witness.  If that were permitted, then all the individual officers in this case could – *in theory* – obtain separate counsel and have seemingly equal rights to examine every witness. Such a rule could extend this trial *ad infinitum* and would result in immeasurable confusion and prejudice to all sides.

Similarly, there is really no legitimate argument to be made that the scope of the hospital defendants' cross examination should require an exploration of any facts not immediately preceding plaintiff's admittance or confinement at Jamaica on October 31, 2009.  Thus, there is also no reason why the hospital defendants should all have separate rights to examine witnesses on overlapping subject matter for which their interests are all aligned – namely, the events that occurred *immediately* prior to and during plaintiff's confinement.

As such, it is submitted that this court should preclude the attorneys for the City and defendant Mauriello from both *separately* examining every witness, and should equally prohibit the thee attorneys for the hospital defendants from performing overlapping *separate* full examinations of witnesses regarding the events taking place within Jamaica hospital on October 31, 2009.  See e.g. Jones v. Berry, 880 F.2d 670, 673 (2d Cir. 1989) ("The court retains "wide latitude ... to impose reasonable limits on such cross-examination based on concerns about, among other things, ... interrogation that is

repetitive or only marginally relevant."); United States v. Rahme, 813 F.2d 31, 37 (2d Cir.1987) (scope and extent of cross-examination are within sound discretion of trial court).

This rule strikes the proper balance of streamlining the trial while simultaneously protecting the separate defendants in this case – especially when in many instances the "separation" refers to name only and not to identity of interest.  In fact, comparable rules have been widely accepted as effective and permissible limitations on similarly lengthy trials with multiple attorneys on both sides.  See e.g., Lainfiesta v. Artuz, 2000 WL 739425, at *10-13 (S.D.N.Y. 2000) ("rules permitting only one counsel to examine a particular witness have been approved"); Harries v. United States, 350 F.2d 231, 236 (9th Cir.1965) (no abuse of discretion in limiting cross-examination when, inter alia, counsel made no offer of proof as to additional facts expected to be elicited from the witness); United States v. Partin, 524 F.2d 992, 1000 & n. 20 (5th Cir.1975) (district court's refusal to allow both of defendant's attorneys to cross-examine a single witness was proper). Notwithstanding, if this court is inclined to allow all attorneys the *same* cross examination rights to *each* witness *and* subject matter, it should, at minimum, impose reasonable time restraints on the examination of witnesses by multiple attorneys so as to prevent severe delay and confusion in this case.  See e.g., In re Peters, 642 F.3d 381, 389 (2d Cir. 2011) ("the trial court may, under proper circumstances, impose a time limit on cross-examination.") (citing United States v. Casamento, 887 F.2d 1141, 1173 (2d Cir.1989).

## XV.   THE JURY SHOULD BE CHARGED REGARDING THE CITY DEFENDANTS' SPOLIATION OF EVIDENCE IN THIS CASE

There are five pieces of important evidence that have never been produced by the City defendants in this case. First, there is the Early Intervention Unit "(EIU") File, which contained defendant Weiss' attempt to have plaintiff "psyched" by the department in retaliation for plaintiff's appeal and for reporting Weiss's behavior to a supervisor. Second, there is the appeal file for plaintiff's performance evaluation, which was one of the steps taken by plaintiff to seek intervention regarding the departments' illegal quota system and their manipulation of criminal complaints. Third, there are the contents of plaintiff's NYPD locker following his suspension from the department, which contained his memo book documenting fraud and misconduct within the department.

Fourth, there is the second tape recorder that he had on his person on October 31, 2009 when he was forcibly removed from his home and confined to the psychiatric ward of Jamaica hospital for six days. This recorder contains the dialogue between defendant Marino and the EMT workers outside plaintiff's apartment prior to his involuntary removal, which is crucial to prove that plaintiff's entire commitment was provoked and manipulated by defendant Marino and other high ranking NYPD officials. Fifth, is plaintiff's personal folder containing his notes on  his report to the commissioner, in which he had kept a diary of instances of departmental misconduct that he was gathering prior to the events of October 31, 2009.

Not only have defendants failed to produced/preserve this evidence, but with respect to the first three items, defendants admit that this evidence was either lost or destroyed despite having a duty to preserve it. With respect to item four, defendants admit that a second recording existed but claim that it was "left behind" in plaintiff's apartment following his removal to Jamaica hospital; however, for item five, they claim

no knowledge of any folder or documentation being removed from plaintiff's residence by the NYPD at any time. Whatever the explanation for the disappearance of this evidence, there is no dispute that this evidence was relevant, that defendants had access to this evidence, and had a duty to preserve it for this litigation. See e.g. Kronisch v. United States, 150 F.3d 112, 126 (2d Cir.1998). ("Where one seeks an adverse inference regarding the content of destroyed evidence, one must first show that "the party having control over the evidence ... had an obligation to preserve it at the time it was destroyed."); Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107 (2d Cir. 2001) ("Such an obligation [to preserve evidence] usually arises when a 'party has notice that the evidence is relevant to litigation ... but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation.'").

Therefore, a spoliation charge against the City defendants is warranted in this case for "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir.1999).  This instruction is necessary because the items that have miraculously disappeared are undeniably germane to issues in this trial and a "reasonable trier of fact could find that the missing [evidence] would support [plaintiff's] claims." Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 221 (S.D.N.Y. 2003) (alternation added).  Accordingly, the jury should be instructed that defendants had a duty to preserve this relevant evidence, they failed to do so, and that if this evidence was available, it would have supported plaintiff's allegations in this case.  Such an instruction is necessary to "restore 'the [plaintiff] to the same

position he would have been in absent the wrongful destruction of evidence by the [defendants].'" <u>West</u>, 167 F.3d at 779 (alteration added).

## <u>CONCLUSION</u>

Accordingly it is respectfully requested that Your Honor grant plaintiff's motion in its entirety. Plaintiff will be denied an impartial trial if any of the inflammatory and prejudicial evidence identified above is disclosed to a jury, as none of this evidence is probative of any issue that is necessary to resolve the factual disputes regarding defendants' unlawful acts on October 31, 2009. In addition, a spoliation charge should be given for the NYPD's loss or destruction of evidence. Therefore, for all of the foregoing reasons, it is respectfully submitted that plaintiff's motion *in limine* be granted in its entirety and that this Court should grant such other and further relief as it deems just and proper.

Dated: New York, New York
      September 21, 2015

           Respectfully submitted,

           COHEN & FITCH LLP


           By: _____/S_____
              JOSHUA P. FITCH
              COHEN & FITCH LLP
              233 Broadway, Suite 1800
              New York, N.Y. 10279
              (212) 374-9115
              jfitch@cohenfitch.com