UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x

ADRIAN SCHOOLCRAFT,   10CV6005(RSW)

                Plaintiff,

                                                                                 AFFIDAVIT OF FRANK
-against-   DOWLING, M.D.

THE CITY OF NEW YORK, DEPUTY CHIEF MICHAEL MARINO, Tax Id. 873220, Individually and in his Official Capacity, ASSISTANT CHIEF PATROL BOROUGH BROOKLYN NORTH GERALD NELSON, Tax Id. 912370, Individually and in his Official Capacity, DEPUTY INSPECTOR STEVEN MAURIELLO, Tax Id. 895117, Individually and in his Official Capacity, CAPTAIN THEODORE LAUTERBORN, Tax Id. 897840, Individually and in his Official Capacity, LIEUTENANT JOSEPH GOFF, Tax Id. 894025, Individually and in his Official Capacity, SGT FREDERICK SAWYER, Shield No. 2576, Individually and in his Official Capacity, SERGEANT KURT DUNCAN, Shield No. 2483, Individually and in his Official Capacity, LIEUTENANT CHRISTOPHER BROSCHART, Tax Id. 915354, Individually and in his Official Capacity, LIEUTENANT TIMOTHY CAUGHEY, Tax Id. 885374, Individually and in his Official Capacity, SERGEANT SHANTEL JAMES, Shield No. 3004, and P.O.'s "JOHN DOE" #1-50, Individually and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown) (collectively referred to as "NYPD defendants"), JAMAICA HOSPITAL MEDICAL CENTER, DR. ISAK ISAKOV, Individually and in his Official Capacity, DR. LILIAN ALDANA-BERNIER, Individually and in her Official Capacity and JAMAICA HOSPITAL MEDICAL CENTER EMPLOYEE'S "JOHN DOE # 1-50, Individually and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown),

                                       Defendants.
------------------------------------------------------------------------------x

       FRANK DOWLING, M.D., being duly sworn deposes and says:

       1.       I have been asked by the firm of Ivone, Devine & Jensen, LLP, attorneys for

Isak Isakov, M.D., to give my opinions with regard to the psychiatric care given to Adrian Schoolcraft, a patient at Jamaica Hospital Medical Center. I have reviewed multiple records including the Jamaica Hospital Medical Center chart, the depositions of various individuals including Adrian Schoolcraft, Dr. Aldana-Bernier and Dr. Isakov, the report of plaintiff's psychiatry expert, Dr. Roy Lubit, and the operative Complaint in this matter. After the review, I have come to the conclusion, with a reasonable degree of medical certainty, that the care rendered by Dr. Isakov was excellent and conformed to good and accepted medical and psychiatric practice.

2. Furthermore, as will be set forth in this affidavit, the testimony cited by plaintiff does not provide the basis of a finding against Dr. Isakov as it pertains to plaintiff Adrian Schoolcraft, because the only evidence submitted by the plaintiff consists of five pages where Dr. Isakov is speaking generally about certain standards, and there is nothing in the record as to how this applies, or does not apply, to Mr. Schoolcraft. Indeed, plaintiff did not include later testimony in the same deposition (Isakov deposition at 199-201, exhibit A to the declaration of Brian E. Lee) where Dr. Isakov further explained his general reasons for using the terms low, medium and high risk; concluding that even a low risk may be substantial. To further clarify, for instance, I may have a patient who has, in my opinion, a two percent chance of shooting someone if I discharge him from the hospital. That would be a "low risk" but one that would clearly be substantial as far as the need for hospitalization under the Mental Hygiene Law.

3. In an involuntary hospitalization under Mental Hygiene Law §9.39, both a claim for a violation of 42 U.S.C. §1983, and a claim of false imprisonment require a

showing of medical malpractice, as is set forth in the Memorandum of Law submitted contemporaneously herewith. The remainder of this affidavit will show that the actions of Dr. Isakov constituted good and accepted practice and therefore the motion of the plaintiff seeking summary judgment should be denied.

4.  The grounds for my opinions are set forth herein. The record of Jamaica Hospital Medical Center demonstrates that on the evening of 10/31/09, police officers in the New York City Police Department brought the plaintiff Adrian Schoolcraft, age 34, also a New York City police officer, to Jamaica Hospital Medical Center in handcuffs. Reportedly, the police had gone to the patient's home requesting him to come back to the precinct, which he refused. He went into his apartment and refused to obey the order of the police to open his door. He eventually ran away and had to be chased down and upon his capture, was brought to the medical emergency room of the hospital where he stayed until he was transferred to the psychiatric emergency room on 11/2/09. He was seen by Dr. Aldana-Bernier, an attending psychiatrist practicing at that hospital on 11/3/09. Dr. Aldana-Bernier, according to the record, wrote that the patient was a danger to himself or others and the patient was confined to the psychiatric unit for treatment and observation.

5.  On the following day, 11/4/09 the patient was seen and evaluated by Isak Isakov, M.D., also an attending psychiatrist who practiced at Jamaica Hospital. The patient refused to give Dr. Isakov information that he requested in conducting a psychiatric assessment and refused to give Dr. Isakov an authorization to speak to the psychologist of the New York City Police Department, who had previously conducted a psychological evaluation and recommended that the patient be placed on desk duty and that his gun be

taken from him. He refused to give Dr. Isakov information as to the reason or reasons that his gun was taken from him.

6. A review of the hospital record indicates that the patient was reported to exhibit signs of paranoia, agitation, psychosis, anxiety and stress that he was unable to deal with. He stated, in substance, that the police, including his superiors in the Police Department, were out to get him. He appeared suspicious and did not cooperate with Dr. Isakov in providing him with answers to the questions that he asked, thereby making it difficult to evaluate the versions of the events. It was not possible at that time for Dr. Isakov to determine if the reported fears that the department was out to get him were true or if they were delusional. In addition, it was reported that the patient had acted bizarre, was agitated, paranoid and combative. The history was consistent with someone who was delusional or who was decompensating in the setting of severe, catastrophic stress.

7. It is my opinion that Dr. Isakov was justified in making his clinical judgment to continue the confinement of this patient under the circumstances that existed at the time. He was justified in considering the information in the hospital record, including statements made by police officers that the patient locked himself in his apartment and refused to open the door when the police directed him to do so; that he ran away from them and had to be chased down and put into handcuffs; and that the patient, himself a police officer, had to be brought to the hospital by force, arriving in handcuffs, at the hospital. Dr. Isakov had the right to consider evaluations by other medical personnel and other psychiatrists with respect to their opinions regarding this patient. He had the right to consider the fact that the patient refused to give him the information that he needed to make his evaluation. He

had the right to consider the fact that the patient was reported to be engaged in bizarre conduct; emotionally unstable; suspicious and exhibited possible symptoms of psychosis; appeared paranoid, and acted paranoid, making statements that the police were out to get him.  He had the right to consider his own observations of the patient and the fact that the patient would not name a family member on that first day that Dr. Isakov saw him, who could confirm that the patient did not have a past psychiatric history.

8.      It is my opinion that Dr. Isakov, considering all the circumstances, including the entries in the record, was well justified and conformed to accepted medical and psychiatric practice in reaching a clinical judgment to keep the patient in the hospital for observation and treatment.  This would be a benefit to the patient if he was delusional or if he was under severe stress to help remove some of that stress, where he would be in a safe environment with the hospital staff caring for him and ready to intervene if necessary.  In addition, there was the opportunity to clarify further if he was delusional or reacting to severe stress and to develop the proper treatment and support plan to assist him in the hospital and after discharge.

9.      It is my opinion further that the bizarre conduct of the patient, his refusal to cooperate with the psychiatrist evaluating him at the time, his symptoms of paranoia and psychosis with statements demonstrating both conditions, as well as his appearance of being under stress and agitation, was conduct that demonstrated that this patient was a danger to himself which authorizes his involuntary commitment under Section 9.39 of the Mental Hygiene Law of the State of New York.  Therefore, the involuntary confinement complies with New York Law and comports with good and accepted practice.  As a result,

there was no deviation from accepted medical and psychiatric practice in this decision.

10. I have treated hundreds of police officers with post-traumatic stress disorder, depression, and other conditions related to the duties that police officers must perform on the job. They are in a stressful environment and can be called on to make instantaneous decisions regarding life and death. This stress can cause anxiety, depression, agitation, suicidal thoughts and behaviors. In my opinion it would have been a departure from good and accepted medical and psychiatric practice for Dr. Isakov to discharge this patient. There was no family member or other person known to Dr. Isakov, who could give the patient the level of daily observation, support and assistance available on an inpatient psychiatric unit. He lived alone. He was emotionally unstable at the time. With symptoms of paranoia and psychosis, the danger to an individual if he were discharged would be significant.

11. There was no obligation on the part of Dr. Isakov to interview every police officer who had brought the patient to the hospital himself. He was justified in reading the statements made by police officers to others as reflected by the hospital record. The patient refused to authorize Dr. Isakov to speak with the psychologist from the police department who had recommended that Mr. Schoolcraft have his firearm taken from him. The hospital record indicates that a social worker who was part of the inpatient evaluation and treatment team with Dr. Isakov contacted the police psychologist but was given no information with regard to the patient. Dr. Isakov understandably wanted to know the reason that the psychologist felt that the patient should have his firearm taken from him. Did she feel that there was a danger that he would use it on himself, or others? When she

saw the patient, she recommended that he be treated for the stress that he was under at the time. He did not have that treatment. Dr. Isakov was in a position at the time where he was trying to evaluate whether the patient had realistic complaints or delusional concerns. It is to the patient's interest under these circumstances, to be in a safe environment, while all these issues are sorted out.

12.    On November 5, 2009 Dr. Isakov engaged in a conference with the father of the patient, the patient, and a representative from Internal Affairs from the Police Department. The patient did not appear as symptomatic that day as he had the previous day. The patient's father confirmed that the patient did not have a previous psychiatric history on that day, as well. It was appropriate, for the continuation of psychiatric care for the patient, particularly given the severe stress that he was facing, to have the patient evaluated after he would be discharged, by a competent psychiatrist, within a reasonably short time following discharge from the hospital. The patient was told that if he would see a psychiatrist in the Jamaica Hospital clinic, within a short time after discharge, he would be discharged later that day. The patient refused. However, on the following day, where an arrangement was made for such an evaluation by a psychiatrist, the patient was discharged on that day, November 6, 2009.

13.    In all, it is my opinion stated with reasonable medical certainty, as are all the opinions expressed above, that the evaluation, care and treatment of this patient by Dr. Isakov conformed to good and accepted medical and psychiatric practice, and was not a competent producing cause of any injury or damage to the patient. With a patient suffering from symptoms of stress, emotional instability, paranoia, and psychosis, he

benefitted from continued confinement in the hospital with observation by trained personnel, so that he calmed down, gave Dr. Isakov the information he needed on the second day under his care, had his father present to confirm a negative psychiatric history and provided support for the patient so that, with continued psychiatric care available shortly after discharge, the hospitalization of this patient in the interim, benefitted him to a substantial degree.

14. In the instant motion, plaintiff's claims against Dr. Isakov flow from five pages of his deposition. In those five pages Dr. Isakov is describing his general understanding of different levels of risk and how that applies to admissions under Mental Hygiene Law §9.39. Those isolated statements, devoid of any connection to this case, cannot form the basis of a finding as to this particular patient. Rather, one needs to look at the whole picture as it applied to the patient in this case, and having done that, it is clear that all of his actions complied with good and accepted practice.

WHEREFORE, deponent respectfully requests that the motion of the plaintiff as to Dr. Isakov be denied in all respects.

_____
FRANK DOWLING, M.D.

Sworn to before me this 11th
day of February, 2015

_____
Notary Public

FRANCIS A. DOWLING
Notary Public, State of New York
Qualified in Suffolk County
No. 01DO6284699
My Commission Expires June 24, 2017