UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ADRIAN SCHOOLCRAFT,                              )
                                                 )
                              Plaintiff,         )
                                                 )
     -against-)                                        10 Civ. 6005 (RWS)
                                                 )
THE CITY OF NEW YORK, etal.,                     )
                                                 )
                              Defendants.        )
------------------------------------------------------------X

PLAINTIFF'S REQUESTED JURY INSTRUCTIONS

Pursuant to Rule 51 of the Federal Rules of Civil Procedure and the Court's Individual

Practices, plaintiff requests that the Court give the following instructions to the jury, in addition

to any general instructions it intends to give.

I. SUBSTANTIVE LAW/PARTIES

The plaintiff in this case is Police Officer Adrian Schoolcraft.  He is suing the defendants

under New York State law. The defendants in this action are Jamaica Hospital Medical Center,

Dr. Lilian Aldana-Bernier and Dr. Isak Isakov.  I will refer to these defendants as the Medical

Defendants.

Officer Schoolcraft alleges that the Medical Defendant's falsely imprisoned him at

Jamaica Hospital from October 31, 2009 until November 6, 2009 and that the decisions they

made to keep him in the hospital against his will deviated from generally accepted standards in

the medical community.

Although there are three defendants in this case, it does not follow from that fact alone

that if one or more defendant is liable, any other defendant is liable.  Each defendant is entitled

to a fair consideration of the evidence relating to the plaintiff's claims and that defendant's own

1

defense, and plaintiff and each defendant is not to be prejudiced by any finding you make for or against plaintiff or any defendant.  Unless otherwise stated, all the instructions I give to you govern the case as to each of plaintiff's claims, and each defendant's defenses, separately.

FALSE IMPRISONMENT CLAIM AGAINST THE MEDICAL DEFENDANTS

Officer Schoolcraft brings a claim of false imprisonment against each of the Medical Defendants.  However, Officer Schoolcraft's claim is divided into two separate decisions to involuntarily confine him at Jamaica Hospital.  The first period of confinement was for three (3) days beginning on October 31, 2009 and concluding on November 3, 2009.  The parties agree that only defendant Jamaica Hospital, its employees agents and staff were the only individuals involved in making the decision to confine plaintiff for this three (3) day period.  I therefore instruct you that you are only to consider defendant Jamaica Hospital's liability for plaintiff's false imprisonment claim relating to this period of confinement.

The second period of imprisonment/confinement was for an additional three (3) days beginning on November 3, 2009 and concluding on November 6, 2009.  It is up to you to decide which defendant or defendants were involved in making this decision to continue to confine plaintiff for this three (3) day period.  I instruct you that you may find one, two or all of the Medical defendants liable for this decision.

SUBSTANTIVE ELEMENTS OF THE FALSE IMPRISONMENT CLAIM

In order to succeed on his false imprisonment claim, Officer Schoolcraft must show that the Medical Defendants intended to confine him at Jamaica Hospital, that Officer Schoolcraft was conscious of his confinement, that he did not consent to his confinement.  There is no dispute in this case, that these elements have been established.  I therefore instruct you that Officer Schoolcraft has proven that defendants intended to confine him at Jamaica Hospital, he

2

was conscious of his confinement and did not consent to being confined.

Nevertheless, defendants can still succeed on this claim if they can prove that his confinement was otherwise privileged. *DeMarco v. Sadiker*, 952 F. Supp. 134, 141 (E.D.N.Y. 1996). I instruct you that defendants bear the burden of establishing this element.

In this case, Defendants contend that their decision to imprison/confine Officer Schoolcraft in Jamaica Hospital for both three (3) day periods was privileged. Therefore, the only element you need to decide is whether Officer Schoolcraft's involuntary confinement at Jamaica Hospital was privileged. I instruct you that the only way defendants can prove that Officer Schoolcraft's confinement was privileged in this case, is if they establish that their decision to confine plaintiff satisfied the requirements of Mental Hygiene Law § 9.39. I will now instruct you on those requirements

### REQUIREMENTS OF THE MENTAL HYGIENE LAW § 9.39

In order to justifiably confine someone involuntarily under Mental Hygiene Law 9.39, Medical Defendants must prove by clear and convincing evidence that the person has a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and that the mental illness is likely to result in serious harm to himself or others.   (Authority: N.Y. Mental Hygiene Law. § 9.39.)

The Mental Hygiene Law further defines "likelihood to result in serious harm" as follows: "1. substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous to himself, or 2. a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm." (Authority: *Id*.).   A person may only be admitted under 9.39 if a staff physician has personally examined

patient and determined that these specific requirements have been met.  In addition, even when these findings have been made, the confinement is only privileged for a period of forty eight (48) hours unless these findings are confirmed by another physician who is a member of the hospital psychiatric staff and only after that second physician has also personally examined the individual.

Thus, for the defendants to establish the privilege in this case, the Medical Defendants must establish, by clear and convincing evidence, that: (1) Officer Schoolcraft had a mental illness; 2) that the mental illness was such that immediate observation, care and treatment in a hospital was appropriate; and 3) that the mental illness was likely to result in serious harm, meaning a substantial risk of physical harm to himself or others as shown by homicidal or other violent behavior; and 4) an Officer Schoolcraft was in need of involuntary care and treatment until the time of his discharge.  (Authority: *Boggs v New York City Health and Hosps. Corp.,* 70 N.Y.2d 972, 973 (1988) ("The only legal issue presented is whether the City established by clear and convincing evidence that petitioner [… has a mental illness and is a danger to herself or others (Mental Hygiene Law § 9.39[a] )."); *Francis v. Stone*, 221 F. 3d 100, 101 (2d Cir. 2000) ("Involuntary civil commitment procedures mandate numerous protections, including a requirement that the party proposing confinement must prove by clear and convincing evidence that the person is mentally ill and poses a danger to himself or others").  Further, in order to keep plaintiff confined longer than forty eight (48) hours at the hospital, defendants must establish that a second physician from the psychiatric staff confirmed those findings after they personally examined plaintiff.

However, even if defendants are able to establish that they made the required findings under Mental Hygiene Law 9.39, defendants confinement of plaintiff will not be privileged if

4

those decisions finding plaintiff to pose a likelihood of serious harm to himself or others, were made in a manner, or based on methods that deviated from accepted medical practice.  In other words, even if defendants had made such a finding, their confinement of plaintiff will not be privileged if those decisions constituted medical malpractice.  *Anthony v. City of New York*, No. 00 CIV. 4688 (DLC), 2001 WL 741743, at *14 (S.D.N.Y. July 2, 2001) aff'd, 339 F.3d 129 (2d Cir. 2003);

<u>MEDICAL MALPRACTICE</u>[10]

A doctor who renders medical service to a patient is obligated to have that reasonable degree of knowledge and skill that is expected of an average psychiatrist who performs evaluations and treatment in the medical community in which the doctor practices.  The doctor must also comply with minimum national standards of care.  Malpractice is professional negligence and medical malpractice is the negligence of a doctor.  Negligence is the failure to use reasonable care under the circumstances, doing something that a reasonably prudent doctor would not do under the circumstances, or failing to do something that a reasonably prudent doctor would do under the circumstances.  It is a deviation or departure from accepted practice.

The law recognizes that there are differences in the abilities of doctors, just as there are differences in the abilities of people engaged in other activities.  To practice medicine a doctor is not required to have the extraordinary knowledge and ability that belongs to a few doctors of exceptional ability.  However every doctor is required to keep reasonably informed of new developments in his/her field and to practice medicine in accordance with approved methods and means of treatment in general use.  A doctor must also use his or her best judgment and whatever superior knowledge and skill he/see possesses, even if the knowledge and skill exceeds that

---

[10]  The instructions contained in this section are modeled on N.Y. Pattern Jury Instr.--Civil 2:150.

possessed by the average psychiatrist, in the medical community where the doctor practices. By undertaking to perform a medical service, a doctor does not guarantee a good result. The fact that there was a bad result to the patient, by itself, does not make the doctor liable. The doctor is liable only if he/she was negligent. Whether the doctor was negligent is to be decided on the basis of the facts and conditions existing at the time of the claimed negligence.

If the doctor is negligent, that is, lacks the skill or knowledge required of him/her in providing a medical service, or fails to use reasonable care in providing the service, or fails to exercise his or her best judgment, and such failure is a substantial factor in causing harm to the patient, then they have committed malpractice.

Thus, if the decision to confine plaintiff or the determination that plaintiff posed a likelihood of serious harm to himself or others was based on decisions or actions that lacked the skill or knowledge required of defendants, or they failed to use reasonable care in making such decision or failed to exercise their best judgment in making those decisions, they would not be privileged to confine/imprison plaintiff at Jamaica hospital.

In determining whether or not defendants decision to confine plaintiff or the decision finding that plaintiff posed a likelihood of serious harm to himself or others was negligent and thus constituted malpractice, I give you the following instructions:

I charge you that a doctor must conduct his or her own independent medical examination of a patient before making a decision regarding the care and treatment of the patient. *Bell v. New York City Health and Hospitals Corp.,* 90 A.D. 2d 270, 280 (2d Dept. 1982) (doctor has duty to rest a decision upon a careful and competent examination); *Nestorwich v. Ricotta,* 97 N.Y. 2d 393, 398 (2002) (doctors must employ their best judgment in treating patients after careful examination0; *Pigno v. Bunim,* 43 A/D. 2d 718, 718-19 (2d Dept. 1973), aff'd, 35 N.Y. 2d 841

6

(1974) (on opinion below) (error to grant motion for directed verdict for doctor where the facts showed a jury issue on whether the doctor exercised professional judgment after careful examination; where delay in performing test was not the result of careful analysis and evaluation, lower court erred in directing verdict for defendant-doctor); *Clark v. State of New York*, 99 A.D. 2d 616 (3d Dept. 1984) (doctor's failure to conduct careful examination of patient, the medical record and the information available means that the doctor failed to exercise professional judgment in releasing mental health patient).

Further, a decision that is made without proper medical foundation, that is, one that is not the product of a carful examination, is not to be legally insulated as a professional medical judgment, *Bell*, 90 A.D. 2d at 280-81, and you may find a doctor liable if you find that the doctor's judgment was not based on a careful examination and thus there was a failure to exercise any professional judgment. *Id.*

I further charge you that a doctor would not have exercised professional judgment, or adhered to minimum professional standards, if he or she relied upon only the uncorroboratedstatements contained in the medical records to conclude that the patient posed a danger to self or others. *Rodriguez v City of New York,* 72 F. 3d 1051, 1057 (2d Cir 1995) (rejecting the suggestion "that a physician's mere making of a finding satisfies the requirements of either [M.H.L. § 9.39] or due process").   A sufficient investigation must be done to verify the information in the medical records and the threat of harm. *Ruhlmann v. Ulster County Dep't of Soc. Servs.,* 234 F. Supp. 2d 140.  In other words, a doctor is required to contact available persons with pertinent information and that *without* such additional information gathering, a doctor's finding that plaintiff was dangerous, constitutes a substantial departure from professional judgment.  If you find that the Medical Defendants failed to make reasonable efforts

to gather such information to assess Officer Schoolcraft's mental state, you must find for the Plaintiff on this issue.

Therefore, if, after considering all of the evidence, you conclude that the Medical Defendants have not established that plaintiff had the requisite mental illness and risk of danger criteria required by Mental Hygiene Law 9.39 or that the determination of that criteria was negligent according to medical malpractice standards, your verdict must be for Officer Schoolcraft on this claim.  On the other hand, if you conclude that the Medical  Defendants have proven by clear and convincing evidence the privilege to detain Officer Schoolcraft, then your verdict must be for them.

<u>AGENCY OF JHMC TREATING DOCTORS AND NURSES</u>

Officer Schoolcraft also seeks to recover damages from JHMC on grounds that it is liable for the negligence of its doctors, nurses, and other staff whose conduct is the subject of this lawsuit.  Because the medical personnel who treated Officer Schoolcraft at JHMC are employees or agents of the hospital, JHMC is responsible for their acts.  Defendants Bernier and Isacov are also considered agents of Jamaica Hospital, therefore if you find either defendant Bernier and/or Isacov is liable for any of plaintiff's claims, then you must find that defendant Jamaica Hospital is liable as well.

II.   <u>PROXIMATE CAUSE</u>

In order to recover damages in this case, Officer Schoolcraft must show that the Medical Defendants cause him harm.  An act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury. (Authority: N.Y. Pattern Jury Instr.--Civil 2:70.)

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm. There may be more than one cause of an injury. Where the independent and negligent acts or omissions of two or more parties cause injury to another, each of those negligent acts or omissions is regarded as a cause of that injury provided that it was a substantial factor in bringing about that injury. (Authority: N.Y. Pattern Jury Instr.--Civil 2:71.)

You might find that more than one defendant is liable for a particular injury. If two or more persons unite in an intentional act that violates another person's right, then all of those persons are jointly liable for the acts of each of them; the law does not require the injured party to establish how much of the injury was done by each particular defendant that you find liable. Thus, if you find that the defendants who you find to be liable acted jointly, then you may treat them jointly for purposes of deciding damages. If you decide that two or more of the defendants are jointly liable on a particular claim, then you may simply determine the overall amount of damages for which they are liable, without breaking that figure down into individual percentages.  Keep in mind that a defendants' liability does not depend on how much damage he has caused, his share of the damage or that other parties - even those who are not defendants - caused more damage or were more at fault.  The easiest way to conceptualized this concept is that if you find that any defendant was responsible for even 1% of plaintiff's injury, you must find that party liable and render a verdict against them in favor of plaintiff. See e.g., See *Manganiello v. Agostini*, 2009 WL 151724, at *2 (S.D.N.Y. 2009)("If the tortfeasors are jointly and severally liable, one tortfeasor is not relieved from liability simply because the other tortfeasor also committed liability-causing actions…This principal of liability is *not altered* even when one tortfeasor is *immune* from liability."); *Weeks v. Chaboudy*, 984 F.2d 185, 189 (6th Cir.

1993)("Unquestionably, the bulk of responsibility for damages falls on the security personnel…However, applying the principles of joint and several liability…We must therefore *reverse* the District Court's order insofar as it *limits* Defendant's liability to 10% of Plaintiff's damages.").

If you find that Officer Schoolcraft has established that either Dr. Isakov or Dr. Bernier committed malpractice or were negligent, and that either or both of their negligence or malpractice proximately caused Officer Schoolcraft injuries, then your verdict will be in his favor and against Dr. Isakov and/or Dr. Bernier.  On the other hand, if you find that Officer Schoolcraft has not established that either Dr. Isakov or Dr. Bernier were negligent, or that their negligence did not proximately cause Officer Schoolcraft injuries, then your verdict will be in their favor and against Officer Schoolcraft on this claim.

<u>CORPORATE NEGLIGENCE—JHMC</u>

The corporate negligence doctrine is a doctrine under which a hospital owes a direct duty to its patients to ensure their safety and well-being while at the hospital.   The following are the duties that a hospital must fulfill and that it cannot pass on to anyone else: (1) to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) to select and retain only competent physicians; (3) to oversee as to patient care all persons who practice medicine within its walls; and (4) to formulate, adopt, and enforce adequate rules and policies to ensure quality care for its patients.  (Authority: *Thompson v. Nason Hospital,* 591 A.2d 703 (Pa. 1991). These duties arise from the relationship existing between a hospital and its patients, which are based on the vulnerability of physically or mentally ill persons and their inability to provide care for themselves.  Corporate negligence is a direct theory of liability against a hospital, which contemplates some form of systemic negligence by hospital, and is not simply a vicarious theory

of liability based on the negligence of its employees.

If you decide that JHMC violated any one of those duties, you must then decidewhether JHMC knew or should have known of the breach of that duty, andthat the conduct was a substantial factor in bringing about the harm or injury.

### III. DAMAGES

If you find that Officer Schoolcraft has met his burden of proof with respect to his claims, that is, that he has proven his claims by a preponderance of the evidence, then you must consider the issue of damages.  The fact that I am giving you instructions on damages, however, should not be considered as an indication of any view of mine on what your verdict should be.  Rather, instructions on damages are given only so that you will have them in the event that you should find in favor of Officer Schoolcraft on the question of liability.

There are two types of damages that you may consider: compensatory damages and punitive damages.  I will discuss each of these in turn.

#### A. Compensatory Damages

If you find for Officer Schoolcraft on the issue of liability, then you may award him compensatory damages, that is, a sum of money that you believe will fairly and justly compensate him for any injury you believe he actually sustained as a direct consequence of defendants' conduct.

You may award compensatory damages only for those injuries that you find that Officer Schoolcraft has proven by a preponderance of the evidence.  Moreover, you may award compensatory damages only for those injuries that you find Officer Schoolcraft has proven by a preponderance of the evidence to have been the direct result of conduct by defendants.  That is, you may not simply award compensatory damages for any injury suffered by Officer Schoolcraft

from any cause -- you may award compensatory damages only for those injuries that are a direct result of actions by defendants.

Compensatory damages must not be based on speculation or sympathy.  They must be based on the evidence presented at trial, and only on that evidence. I cannot give you a yardstick by which to measure the dollar value of pain or injury.  You heard Officer Schoolcraft's testimony and the testimony of his witnesses, including his expert witness, about the injuries he sustained.  If you award compensatory damages you will have to determine, based on your common sense and experience, that amount of money that will fairly and reasonably make Officer Schoolcraft whole or compensate him for his loss of income, and the injuries and pain and suffering that he sustained, and may continue to sustain, as a consequence of any acts that violated his rights.

Concerning Officer Schoolcraft's claim of false imprisonment, from the fact of confinement alone, you must award him monetary damages for the loss of freedom and movement.  In assessing compensatory damages, you must include an amount attributable to loss of liberty and emotional distress resulting from his imprisonment and confinement that you determine to be reasonable compensation in the light of all the evidence in this case. Consequently, the law does not try to fix, nor does the law permit, a precise formula by which loss of liberty and emotional damages as an element of compensatory damages may be measured and reduced to dollars and cents.

If plaintiff wins, he is entitled to compensatory damages as a matter of law for his loss of liberty resulting from his confinement. *See Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004) (recognizing that loss of liberty and emotional injuries are independent of each other and that the torts of false arrest and malicious prosecution "'[are] complete with even a brief restraint

of the plaintiff's freedom'; 'it is not necessary that any damage result from it other than the *confinement itself.*'")(emphasis added); *see also Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013)(" a post-arraignment defendant who is 'obligated to appear in court in connection with [criminal] charges whenever his attendance [i]s required' suffers a Fourth Amendment deprivation of liberty")(citations omitted).

You must award compensatory damages for any loss of liberty suffered by the plaintiff even if you determine that the plaintiff is not entitled to compensatory damages for physical, emotional or monetary harm. *See Kerman v. City of New York*, 374 F.3d 93, 123-25 (2d Cir. 2004)(recognizing that loss of liberty and emotional injuries are independent of each other and that the torts of false arrest and "'[are] complete with even a brief restraint of the plaintiff's freedom'; 'it is not necessary that any damage result from it other than the *confinement itself.*'")(emphasis added). This means that if you believe that plaintiff suffered a loss of his liberty as a result of defendants' conduct then you *must* award compensatory damages for the amount of time and loss of dignity associated with plaintiff's deprivation of his liberty. *See Vilkhu v. City of New York*, No. 06 Civ 2095 (CPS)**,** 2009 U.S. Dist. LEXIS 16616, *20-21 (E.D.N.Y. March 3, 2009)("especially, in cases where proof of the alleged constitutional violation hinges on the jury's determinations of witness credibility -- a nominal damages instruction affords the jury an opportunity to engage in improper compromise. In such cases, a plaintiff should be allowed to determine whether to seek both nominal and compensatory damages, or whether to remove the option of nominal damages from the jury's consideration and instead seek an outcome in his case based on his showing of proximately caused actual injury").[11]

---

[11] Plaintiff does not wish to have the jury consider a nominal damages charge. *See Vilkhu*

You may also award damages for any physical or psychological injury, emotional distress, mental suffering, or any physical consequences resulting from emotional distress, that Officer Schoolcraft has suffered, and may continue to suffer, as a result of the wrongful conduct of the defendants. *Gardner v. Federated Department Stores, Inc.*, 907 F.2d 1348, 1353 (2d 1990)("Thus, the damages for deprivation of liberty redress the denial of free movement and the violation done to Gardner's dignity as a result of the unlawful detention, *and not* the physical and mental injuries arising from the incident.")(emphasis added); *Robinson v. Holder*, 2008 WL 2875291, *9 (S.D.N.Y. 2008)("'[t]he damages recoverable for the period spent in wrongful confinement are *separable* from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering.")(emphasis added).

If Officer Schoolcraft persuades you by a fair preponderance of the credible evidence, you may also include in your award fair and reasonable compensation for injury to reputation from the detention, as well as the shame and humiliation of the detention.

If you decide that any defendant is liable, plaintiff is entitled to recover a sum of money which will justly and fairly compensate him for any injury and pain and suffering to date caused by defendants. (Authority: New York Pattern Jury Instruction – Civil, 2:280) In determining the amount, if any, to be awarded plaintiff for pain and suffering, you may take into consideration the effect that plaintiff's injuries have had on plaintiff's ability to enjoy life. Loss of enjoyment of life involves the loss of the ability to perform daily tasks, to participate in the activities which were a part of the person's life before the injury, and to experience the pleasures of life. If you find that plaintiff, as a result of his injuries, suffered some loss of the ability to enjoy life, you may take that loss into consideration in determining the amount to be awarded to

---

*v. City of New York*, No. 06 Civ 2095 (CPS)**,** 2009 U.S. Dist. LEXIS 16616, *20-21 (E.D.N.Y. March 3, 2009)

plaintiff for pain and suffering to date.  (Authority:  New York Pattern Jury Instruction – Civil, 2:280.1)

With respect to any of the plaintiff's injuries or disabilities, the plaintiff is entitled to recover for future pain, suffering and disability and the loss of his ability to enjoy life.  In this regard you should take into consideration the period of time that the injuries or disabilities are expected to continue.  If you find that the injuries or disabilities are permanent, you should take into consideration the period of time that the plaintiff can be expected to live.

You may also award damages for the loss of income that you find Officer Schoolcraft has experienced to date or will experience continue to experience as a result of the wrongful conduct of the defendants.

Finally, the law provides that the stigma of an involuntary commitment results in a variety of other future adverse social consequences. *Addington* at 426; *Harris*, at 279-80; *Goetz v Crosson*, 967 F.2d 29, 33 (2d Cir 1992).  In making your determination, you may consider the emotional as well as the financial consequenses suffered by Officer Schoolcraft.  If you find that the stigma of being involuntary commitment significant impacted Officer Schoolcraft you must find in favor of plaintiff on this issue.

In determining the amount of any damages that you decide to award, you should be guided by dispassionate common sense.  You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence.  In sum, your award of compensatory damages should reasonably compensate Officer Schoolcraft for such injury and damage as you find, from a preponderance of the evidence in the case, that he has sustained or is reasonable likely to sustain in the future as a direct result of the defendants' culpable conduct.

B. Punitive Damages.

As I mentioned before, you may also make a separate and additional award of punitive damages.  The decision to award punitive damages rests solely in the jury's discretion. If you award Officer Schoolcraft compensatory damages, then you may, but are not required to, also make a separate and additional award of punitive damages.  The fact that I am giving you instructions on punitive damages, however, should not be considered as an indication of any view of mine on what your verdict should be.  Rather, instructions on punitive damages are given only so that you will have them in the event that you should find in favor of Officer Schoolcraft on the question of liability.

You may award Officer Schoolcraft punitive damages against a defendant if you find that the particular defendant's actions were malicious or wanton and reckless, not merely unreasonable, or if one or more of the defendants intentionally violated Officer Schoolcraft's rights.  An act or failure to act is maliciously done if it is prompted by ill will or spite toward the injured person.  An act or failure to act is wanton if done in a reckless or callous disregard of, or indifference to, the rights of the injured person.  Officer Schoolcraft has the burden of proving, by a preponderance of the evidence, that any of the defendants acted maliciously or wantonly with regard to his rights.  An act is wantonly and recklessly done if done in such a manner, and under such circumstances, as to reflect utter disregard for the potential consequences of the act on the safety and rights of others.

An award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them. In making this decision, you should consider the underlying purpose of punitive damages.  The purpose of punitive damages is not to compensate Officer Schoolcraft.  Punitive damages are awarded in the jury's discretion to punish a defendant

for outrageous conduct, and to deter him or her, and others in the same position, from engaging

in similar conduct in the future.

DATED: October 28, 2015

                           LAW OFFICE OF NATHANIEL B. SMITH
                           100 Wall Street, 23rd Floor
                           New York, NY 10005
                           212 227 7062
                           212 346 4665 (fax)
                            By:  Nathaniel B. Smith
                                John Lenoir

                           LAW OFFICES OF JON L. NORINSBERG
                           225 Broadway, Suite 2700
                           New York, New York 10007
                           (212) 791-5396
                           (212) 406-6890 (fax)

                           COHEN & FITCH, LLP
                           225 Broadway, Suite 2700
                           New York, New York 10007
                           (212) 374-9115
                           (212) 406-6890 (fax)
                            By:  Gerald Cohen
                         Joshua Fitch