UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ADRIAN SCHOOLCRAFT,

                                          Plaintiff,                          10 Civ. 6005 (RWS)

              -against-

                                                                      **JOINT PROPOSED**
                                                                      **PRE-TRIAL ORDER**

THE CITY OF NEW YORK, et al.,

                                          Defendants.
-----------------------------------------------------------X


          Counsel having conferred pursuant to Fed. R. Civ. P. 16 and the Court's

Individual Practices, the parties submit the following statements as their Joint Pretrial Order:

**Full Caption of the Action**

          Plaintiff's Proposed Caption

          ADRIAN SCHOOLCRAFT, Plaintiff,

                -against-

          JAMAICA HOSPITAL MEDICAL CENTER, DR. ISAK ISAKOV, Individually
          and   in
          his Official Capacity, DR. LILIAN ALDANA-BERNIER, Individually and in  her
          Official Capacity   and JAMAICA HOSPITAL MEDICAL CENTER
          EMPLOYEE'S
          "JOHN DOE" # 1-50, Individually and in their Official Capacity (the name John
          Doe being fictitious, as the true names are presently unknown), Defendants.

          Defendants' Proposed Caption

                ADRIAN SCHOOLCRAFT, Plaintiff,

                      -against-

                THE CITY OF NEW YORK, DEPUTY CHIEF MICHAEL MARINO, Tax Id. 873220,
                Individually
                and in his Official Capacity, ASSISTANT CHIEF PATROL BOROUGH BROOKLYN
                NORTH GERALD NELSON, Tax Id. 912370, Individually and in his Official Capacity,
                DEPUTY INSPECTOR STEVEN MAURIELLO, Tax Id.895117, Individually and in his
                Official Capacity, CAPTAIN THEODORE LAUTERBORN, Tax Id. 897840, Individually

2

and in his Official Capacity, LIEUTENANT WILLIAM GOUGH, Tax Id.919124, Individually and in his  Official Capacity, SGT. FREDERICK SAWYER, Shield No. 2576, Individually and in his Official Capacity, SERGEANT KURT DUNCAN, Shield No. 2483, Individually and in his Official Capacity, LIEUTENANT CHRISTOPHER BROSCHART, Tax Id. 915354, Individually and in his Official Capacity, LIEUTENANT TIMOTHY CAUGHEY, Tax Id. 885374, Individually and in his Official Capacity, SERGEANT SHANTEL JAMES, Shield No. 3004, Individually and in her Official Capacity, , CAPTAIN TIMOTHY TRAINER, Tax Id. 899922, Individually and in his Official Capacity, and P.O.'s "JOHN DOE" #1-50, Individually and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown),  (collectively referred to as "NYPD defendants"), FDNY LIEUTENANT ELISE HANLON, individually and in her official capacity as a lieutenant with the New York City Fire Department, JAMAICA HOSPITAL MEDICAL CENTER, DR. ISAK ISAKOV, Individually and in his Official Capacity, DR. LILIAN ALDANA-BERNIER, Individually and in her Official Capacity and JAMAICA HOSPITAL MEDICAL CENTER EMPLOYEE'S "JOHN DOE" # 1-50, Individually and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown), Defendants.

## Names, Addresses, and Telephone and Fax Numbers of Trial Counsel

Trial Counsel for the Plaintiff
Jon L. Norinsberg, Esq., 250 Broadway, NY NY
Gerald Cohen, Esq., 233 Broadway, NY NY
Joshua Fitch, Esq., 233 Broadway, NY NY
Nathaniel B. Smith, Esq., 100 Wall Street, NY NY 10005
John Lenoir, Esq., 100 Wall Street, NY NY 212 10005

Trial Counsel for Defendant Jamaica Hospital Medical Center
William Brady, Esq.
Gregory J. Radomisli, Esq.
Brian Osterman, Esq.
MARTIN CLEARWATER & BELL, LLP.
220 East 42nd Street
New York, NY  10017

Trial Counsel for Defendant Lilian Aldana-Bernier
Bruce M. Brady, Esq.
Matthew Koster, Esq.
Meredith Borg, Esq.
Callan, Koster, Brady & Nagler, LLP
One Whitehall Street, 10th Fl.
New York, New York 10004
Tel:  (212) 248-8800
Fax:  (212) 248-6815

Trial Counsel for Defendant Isak Isakov
W. Robert Devine, Esq.

3

Brian E. Lee, Esq.
IVONE, DEVINE & JENSEN, LLP
2001 Marcus Avenue, Suite N100
Lake Success, NY 11042

**Basis of Subject Matter Jurisdiction**

        **A.   Plaintiff's Version**

        Subject matter jurisdiction is based on federal question jurisdiction and supplemental jurisdiction except to the extent that there is a dispute over the Court's jurisdiction over the claim for declaratory relief as noted below and the parties to not dispute that the Court has subject matter or personal jurisdiction. Although the defendants are claiming that the Court ruled that the claim for declaratory judgment was "moot," the plaintiff contends that the issue is not moot and that the Court's in limine ruling only addressed issues and evidence to be submitted to the jury, whereas the issue of a declaratory judgment is one that is to be resolved by the Court after a jury verdict.

        **B.   Defendants' Version**

        The Court has elected to exercise supplemental jurisdiction over the plaintiff's state law claims against the defendants Jamaica Hospital Medical Center (JHMC or Jamaica Hospital), Lilian Aldana-Bernier, M.D., and Isak Isakov, M.D..

        The federal claims of the plaintiff against these defendants were dismissed by prior order of the Court, dated May 5, 2015.  The only state claims that survived the defendants' summary judgement motions are False Arrest and Imprisonment and Medical Malpractice.

        The Court ruled that the Declaratory Judgment claim was moot on October 21, 2015.

**Summary of Claims and Defenses**

        **Plaintiff's Summary of Claims and Defenses**

        The plaintiff contends that the Medical Defendants are liable on the following theories: false imprisonment; unlawful commitment; negligence and malpractice. Generally, the grounds for the claims are that the Medical Defendants did not have the legal justification for holding the plaintiff against his will and that they failed to conduct an appropriate examination of the plaintiff and the other relevant circumstances in making their decision to hold plaintiff against his will as a mentally ill person who presented a substantial risk of dangerousness. The plaintiff also claims that the Medical Defendants failed to provide a safe environment and violated standard practice and their own policies regarding the evaluation of patients, the use of restraints on patients, and time within which mental health evaluations must be conducted under the Mental Hygiene Law. As a result of their decisions, actions and commissions regarding the plaintiff, the Medical Defendants are liable to plaintiff for his loss of freedom, for his severe emotional trauma and post-traumatic stress disorder as well as the financial consequences to the plaintiff arising from the Medical Defendants' conduct. Upon being involuntarily committed to the hospital, the plaintiff could not lawfully carry a firearm and as a result was not able to work in any law enforcement position, where carrying a weapon is a requirement of the position.  In addition, by improperly labeling the plaintiff as a mentally ill and dangerous person, the Medical Defendants interfered with the plaintiff's ability to obtain other kinds of employment.

Since the Medical Defendants' conduct was intentional, wanton and deliberately indifferent to the plaintiff's rights, punitive damages are also appropriate as well.[1]

In addition, as set forth in the Third Amended Complaint, the plaintiff seeks from the Court a declaratory judgment in his favor and against the Medical Defendants[2], finding that their defendants' conduct was unlawful, including without limitation, findings that the claims for relief have been established; that the JHMC records should be expunged to the extent that those records suggest that plaintiff is (or ever was) emotional disturbed, or suffering from a mental illness or dangerous to himself or others. As a matter of federal law, once the Medical Defendants labeled Officer Schoolcraft a dangerous and mentally ill person who needed to be involuntarily hospitalized, he lost the constitutional right to possess a firearm. Pursuant to 18 U. S. C. § 922(g)(8), it is a crime for any person who has been committed to a mental institution to possess a firearm, and individuals involuntarily committed under the Mental Hygiene Law fall within the scope of the statutory ban and are subject to criminal prosecution. *See United States v. Waters,* 23 F. 3d 29 (2d Cir. 1994) (affirming gun possession conviction of person committed under Section 9.41 of the New York Mental Hygiene Law). Thus, after the jury trial stage of this action, the Court should enter a declaratory judgment in the plaintiff's favor, finding that the Medical Defendants' commitment was improper and that he is entitled to expungement of these medical records based on settled federal common law recognizes that expungement is an appropriate equitable remedy to correct an improper involuntary commitment decision. *See Rodriguez v. City of New York,* 72 F.3d 1051, 1065-66 (2d Cir. 1995); *Pastorello v. City of New York*, 2001 U.S. Dist. LEXIS 19919, *42-43, 2001 WL 1543808 (S.D.N.Y. Nov. 30, 2001) (allowing claim for equitable remedy of expungement to proceed on the basis that "[h]ospital personnel's wrongful treatment of plaintiff generated written medical records about plaintiff which are false, defamatory and embarrassing."). The remedy of expungement is a part of federal equity law, and "[a]s a result, even when addressing state law claims, federal courts may always utilize federal equity rules." *Demarco v. Sadiker,* 952 F. Supp. 134, 142-43 (E.D.N.Y. 1996); *see Carey v. Piphus*, 435 U.S. 247, 259, 98 S. Ct. 1042, 1050, 55 L. Ed. 2d 252 (1978) (federal courts are capable of to tailoring remedies to the injury involved). Even though the remedy is not available under New York law, this Court has the equitable power to grant that relief. *Demarco*, 952 F. Supp. 2d at 142-43. Based on an order from the Court, the plaintiff will then be in a position to petition the federal government for relief from the prohibition on the plaintiff's possession of a firearm. *See* 27 C.F.R. § 178.144 (setting forth procedures for petitioning the Department of Treasury for relief from the provision making it unlawful for an involuntarily committed person possessing a firearm).

### The Defendants' Summary of Claims and Defenses[3]

### Plaintiff's Claims

---

[1] Defendants object to plaintiff's request for punitive damages as the Court has already dismissed plaintiff's claim for intentional infliction of emotional distress in its decision dated May 5, 2015, and because the Court dismissed the claim related to the intentional infliction of harm, plaintiff's request for punitive damages cannot be maintained.

[2] Defendants object to plaintiff's claim for declaratory judgment and relief, as the Court ruled on October 21, 2015 in its decisions on the parties' Motions in Limine that this claim is moot.

[3] By identifying a defense in this Pre-Trial Order, defendants do not concede that the contention listed is an affirmative defense or that they have the burden of proof as to the contention

The plaintiff's federal claims against defendants Dr. Aldana-Bernier, Dr. Isakov, and JHMC were dismissed by prior order of this Court.

The only state claims that survived the defendants' summary judgement motions are False Arrest and Imprisonment and Medical Malpractice.   The theories of "Unlawful Commitment" and "Negligence" were neither pled nor survived the summary judgment motions. Further, the circumstances of this matter do not warrant the imposition of punitive damages, and in its decision dated May 5, 2015, the Court has already dismissed plaintiff's claim for intentional infliction of emotional distress, and because the plaintiff's claim related to the intentional infliction of harm was dismissed by this court, plaintiff's request for punitive damages cannot be sustained.

Adrian Schoolcraft claims that JHMC departed from the standards of accepted medical practice in the decision to transfer Adrian Schoolcraft from the Emergency Department to the Psychiatric Emergency Department. Adrian Schoolcraft also claims that JHMC is vicariously liable for the decision to involuntarily admit Adrian Schoolcraft to Jamaica Hospital pursuant to Section 9.39 of the NYS Mental Hygiene Law. JHMC is liable for false imprisonment by virtue of the involuntary admission to Jamaica Hospital.

Adrian Schoolcraft claims that Dr. Aldana-Bernier departed from the standards of accepted medical practice in her decision to admit Adrian Schoolcraft to Jamaica Hospital pursuant to Section 9.39 of the NYS Mental Hygiene Law. Adrian Schoolcraft also claims that Dr. Aldana-Bernier is liable for false imprisonment by virtue of his involuntary admission to Jamaica Hospital.

Adrian Schoolcraft claims that Dr. Isakov departed from the standards of accepted medical practice in his decision to confirm the admission of Adrian Schoolcraft to Jamaica Hospital pursuant to Section 9.39 of the New York State Mental Hygiene Law. Adrian Schoolcraft also claims that Dr. Isakov is liable for false arrest and imprisonment by virtue of Schoolcraft's involuntary admission to Jamaica Hospital.

Adrian Schoolcraft further seeks a declaration that the conduct of the defendants was unlawful. The Court ruled on October 21, 2015 that the Declaratory Judgment claims were moot.

## **Defendant Jamaica Hospital Medical Center's Defenses**

The care and treatment rendered by JHMC was at all times within the standards of accepted medical practice. The decision to transfer Mr. Schoolcraft from the Emergency Department to the Psychiatric Emergency Department was appropriate and warranted. With regard to vicarious liability, the decisions of the co-defendants to admit Adrian Schoolcraft to Jamaica Hospital pursuant to Section 9.39 of the NYS Mental Hygiene Law was consistent with the standards of accepted medical practice. The decision to involuntarily admit Adrian Schoolcraft to Jamaica Hospital is privileged because there was no medical malpractice.

## **Affirmative Defenses**

Jamaica Hospital has also pled and maintains the affirmative defenses listed in its Answer, including that plaintiff was guilty of culpable conduct, including contributory negligence and comparative negligence, which bars plaintiff's right of recovery in proportion to which the said culpable conduct or negligence attributable to plaintiff bears the culpable conduct or negligence which caused the damages. JHMC will also claim that the plaintiff's actions prior to his arrival at Jamaica Hospital Medical Center, were unreasonable, intentional and provocative and by virtue of his conduct, he knowingly and voluntarily assumed the risk of confinement and the events referred to in the Amended Complaint, so as to bar the action.

JHMC will further also claim limitations of liability pursuant to Article 16 of the CPLR, so that joint tortfeasors are liable only for the relative share of damages for non-economic loss related to the culpable conduct of each, in proportion to that of all.

JHMC will also claim collateral source reimbursement pursuant to CPLR 4545(c). Upon information and belief, plaintiff has received remuneration and/or compensation for some or all of his claimed economic loss and answering defendant is entitled to have any verdict or judgment reduced by the amount of that remuneration or compensation pursuant to Civil Practice Law and Rules § 4545.

JHMC further claims that it is entitled to a set-off or credit pursuant to N.Y. General Obligations Law § 15-108 and any other applicable provision of law with respect to the full value of the Rule 68 Offer of Judgment made by the City of New York, and accepted by the plaintiff and for payments made to the plaintiff in any other companion actions or claim arising out of the same set of events as pleaded herein. It is estimated that the value of the settlement to the plaintiff is approaching $2,000,000 and this defendant seeks a set-off in that amount, or such amount as the Court allocates to the same set of events.

### Defendant Bernier's Defenses

Dr. Aldana-Bernier claims that her decision to admit Adrian Schoolcraft to Jamaica Hospital pursuant to Section 9.39 of the NYS Mental Hygiene Law was consistent with the standards of accepted medical practice. Dr. Aldana-Bernier also claims that her decision to involuntarily admit Adrian Schoolcraft to Jamaica Hospital is privileged because she did not commit medical malpractice.

### Dr. Aldana-Bernier's Affirmative Defenses

Dr. Aldana-Bernier will also rely upon the affirmative defenses listed in her answer, including that plaintiff was guilty of culpable conduct, including contributory negligence and comparative negligence, which bars plaintiff's right of recovery in proportion to which the said culpable conduct or negligence attributable to plaintiff bears the culpable conduct or negligence which caused the damages. Dr. Aldana-Bernier will also claim that the plaintiff's actions prior to his arrival at Jamaica Hospital Medical Center, were unreasonable, intentional and provocative and by virtue of his conduct, he knowingly and voluntarily assumed the risk of confinement and the events referred to in the Amended Complaint, so as to bar the action.

Dr. Aldana-Bernier will also claim limitations of liability pursuant to Article 16 of the CPLR, so that joint tortfeasors are liable only for the relative share of damages for non-economic loss related to the culpable conduct of each, in proportion to that of all.

Dr. Aldana-Bernier will also claim collateral source reimbursement pursuant to CPLR 4545(c). Upon information and belief, plaintiff has received remuneration and/or compensation for some or all of his claimed economic loss and answering defendant is entitled to have any verdict or judgment reduced by the amount of that remuneration or compensation pursuant to Civil Practice Law and Rules § 4545.

Dr. Aldana-Bernier further claims that she is entitled to a set-off or credit pursuant to N.Y. General Obligations Law § 15-108 and any other applicable provision of law with respect to the full value of the Rule 68 Offer of Judgment made by the City of New York, and accepted by the plaintiff and for payments made to the plaintiff in any other companion actions or claim arising out of the same set of events as pleaded herein. It is estimated that the value of the settlement to the plaintiff is $1,800,000 and this defendant seeks a set-off in that amount, or such amount as the Court allocates to the same set of events

### Defendant Isakov's Defenses

Dr. Isakov claims that his decision to confirm the admission of Adrian Schoolcraft to Jamaica Hospital pursuant to Section 9.39 of the New York State Mental Hygiene Law was consistent with the standards of accepted medical practice. Dr. Isakov also claims that his decision to confirm the admission Adrian Schoolcraft to Jamaica Hospital is privileged because he did not commit medical malpractice. In this regard defendant Isak Isakov, M.D. contends that all of his care and treatment of the patient, and all decisions made with respect to Adrian Schoolcraft, were in accordance with the standards of practice in the community within which he practices.

### Affirmative Defenses

Dr. Isakov claims that the plaintiff contributed to the events referred to in the Third Amended Complaint ("TAC") by culpable conduct, both intentional and negligent, are as a result, plaintiff's damages, if any, are mitigated by New York CPLR Article 14-A.  This includes, but is not limited to, that Dr. Isakov will claim that the plaintiff's actions prior to his arrival at Jamaica Hospital Medical Center, were unreasonable, intentional and provocative and by virtue of his conduct, he knowingly and voluntarily assumed the risk of confinement and the events referred to in the Amended Complaint, so as to bar the action or to mitigate damages.

Dr. Isakov pleads Article 16 of the CPLR in mitigation of damages so that joint tortfeasors are liable only for the relative share of damages for non-economic loss related to the culpable conduct of each, in proportion to that of all.

Upon information and belief, plaintiff has received remuneration and/or compensation for some or all of his claimed economic loss and answering defendant is entitled to have any verdict or judgment reduced by the amount of that remuneration or compensation pursuant to Civil

Practice Law and Rules § 4545.

That the plaintiff, by his actions and conduct failed to cooperate with the physicians who evaluated him at JAMAICA HOSPITAL MEDICAL CENTER and failed to give them important information that a reasonably prudent person, under the same or similar circumstances, would have given. By reason of the foregoing the plaintiff ADRIAN SCHOOLCRAFT knowingly and voluntarily assumed the risk of confinement and the events referred to in the Amended Complaint, so as to bar the action; or, in the alternative, to mitigate damages herein.

That in the event of any verdict of judgment on behalf of the plaintiff, the answering defendant is entitled to a set-off or credit pursuant to N.Y. General Obligations Law § 15-108 and any other applicable provision of law with respect to the full value of the Rule 68 Offer of Judgment made by the City of New York, filed under ECF Docket Number 531, and accepted by the plaintiff under the same Docket Number, and for payments made to the plaintiff in any other companion actions or claim arising out of the same set of events as pleaded herein.  It is estimated that the value of the settlement to the plaintiff is $1,800,000 and this defendant seeks a set-off in that amount, or such amount as the Court allocates to the same set of events.

**Trial by Jury**

<u>Plaintiff's Statement</u>

The parties have demanded a jury trial, which is expected to require approximately two weeks.

10

<u>Defendants' Statement</u>

The parties have demanded a jury trial, which is expected to require approximately ten (10) – fourteen (14) trial days.

**Consent to Trial by Magistrate Judge**

The parties do not consent to a trial before a magistrate judge.

**Stipulations of Fact**

None.

**Witnesses[4]**

**<u>Plaintiff's Witnesses</u>**

1. Aldana-Bernier, Lilian
2. Broschart, Christopher
3. Isakov, Isak
4. James, Shantel
5. Lubit, Roy MD
6. Lwin, MD Khin Mar
7. Marquez, Jessica EMT
8. Patel, Indira MD
9. Dhar, Vinot MD
10. Sangeniti, Salvatore, EMT
11. Sawyer, Frederick
12. Schoolcraft Adrian
13. Witnesses Identified by Defendants
14. Witnesses Required to Authenticate Exhibits
15. Yeager, Robert
16. Plaintiff reserves the right to call any and all witnesses listed by the defendants

**<u>Defendant Jamaica Hospital's Witnesses</u>**

1. Dr. Khin Mar Lwin
2. Dr. Vinod Dhar
3. Dr. Khwaja Kurso Tariq
4. Dr. Renata Slowik
5. Dr. Silas Nwaishianyi
6. Nurse Vimalyn Calderona
7. Nurse Nadia Rinehart
8. Nurse Sharon Barnaby

---

[4] This is a list of witnesses that the parties may call or seek to call to trial

9. Nurse Brian Woodruff
10.    Dr. Catherine Lamstein
11.    Lieutenant Christopher Broschart
12.    Sergeant Shantelle James
13.    Sergeant Frederick Sawyer
14.    Nurse Michael Calise
15.    Ms. Christine McMahon
16.    Salvatore Sanginetti
17.    Jessica Marquez
18.    Larry Schoolcraft
19.    Dr. Robert Levy
20.    Those witnesses necessary for authentication and/or admissibility
21.    Defendant JHMC reserves the right to call any and all additional witnesses noticed by
        the other parties

**Defendant Dr. Aldana-Bernier's Witnesses**

The defendant, Lilian Aldana-Bernier, will produce the following witnesses, in person, upon
the trial of this action:
a.    Dr. Lilian Aldana-Bernier,
b.    Catherine Lamstein, PhD,
c.    Dr. Indira Patel,
d.    Dr. Khin Lwin,
e.    Dr. Khwaja Tariq,
f.    Dr. Isak Isakov and
g.    Dr. Laurence Tancredi.
h.    Defendant Aldana-Bernier reserves the right to call any other witnesses listed by any
other party to this action during our case in chief depending on trial developments.

**Defendant Dr. Isakov's Witnesses**

a.    Isak Isakov, M.D., in person
b.    Frank Dowling, M.D., in person.
c.    Dr. Lilian Aldana-Bernier, in person
d.    Dr. Indira Patel, in person
e.    Dr. Khwaja Tariq, in person
f.    Dr. Vinot Dhar, in person
g.    Christine McMahon, in person.
h.    Dr. Silas Nwaishianyi, in person
i.    Dr. Khin Mar Lwin, in person
k.    Defendant Isakov reserves the right to call any other witnesses listed by any other
party to this action during our case in chief depending on trial developments

**Deposition Testimony**

The defendants will offer on their case in chief the deposition testimony of the following

witnesses:

1. Adrian Schoolcraft
2. Dr. Isak Isakov
3. Dr. Lillian Aldana-Bernier
4. Dr. Catherine Lamstein
5. Dr. Indira Patel
6. Dr. Vinod Dhar
7. Dr. Khin Mar Lwin
8. Larry Schoolcraft
9. Adrian Schoolcraft

*   *   *

  Plaintiff objects to the "designations" by defendants of "portions" of these depositions on  the ground that the designation is insufficient to frame an objection. To the extent the designation is of the entire deposition transcript, the plaintiff objects on FRE 403 grounds of a waste of time. To the extent that the designation is of a defendant's own testimony or that of witness identified with a co-defendant, plaintiff objects on the ground that the party should be required to testify live or not at all, that unavailability has not been established and that the evidence is hearsay.  To the extend that any defendant intends, conditionally or otherwise, to designate and read a  portion of any deposition, then the plaintiff objects on the ground that the defendants have failed to designate by page and line any such deposition designations. To the extent that the defendant is permitted to read any designated portions of deposition testimony, plaintiff reserves the right to provide counter-designations.

**Exhibit Lists**

**Plaintiff's Exhibit List[8]**

| PTX | Description | Objections |
|---|---|---|
| 1 | JHMC Chart (PDX 69)<br>  (a) Dr. Lwin Note<br>  (b) Dr. Tariq Note<br>  (c) Dr. Slowik Note<br>  (d) Dr. Bernier Note<br>  (e) Dr. Isakov Psych Admission Note<br>  (f) Dr. Isakov Discharge Summary | ** |
| 2 | JHMC Policy on § 9.39 (PDX 70) | ** |
| 3 | JHMC Policy re Restrictions on Visits, etc (PDX 72) | ** |
| 4 | JHMC Policy – Psych Unit Rules (PDX 74) | ** |
| 5 | Nursing Note 11-1-09 2 am & 5:54 am (PDX 121) | ** |
| 6 | JHMC ER Nursing Notes (from Chart) | ** |
| 7 | PCR Report (darker version) (PDX 125) | |
| 8 | JHMC Emergency Admission Procedures (PDX 130) | ** |
| 9 | Section 9.39 of the Mental Hygiene Law | |
| 10 | JHMC Policy of Use of Restraints (PDX 152) | |
| 11 | Section 9.39 Form Signed by Bernier and Isakov (PDX 171) | |
| 12 | Jamaica Hospital Medical File or Chart (PMX 69; PDX 69) | ** |
| 13 | Emergency Admission Form (PMX 38; PDX 171) | |
| 14 | Jamaica Hospital Manual (PMX 39; PDX 70) | |
| 15 | Form 9.39 executed by Dr. Bernier and Dr. Isakov (POX 19; PDX 171) | ** |
| 16 | JHMC Restraint Policy (POX 49) | |
| 17 | Form 9.39 (POX 54; PDX 171) | |
| 18 | Home Invasion Recording and Transcript[9] | ** |

---

[8] These exhibits, recordings and other evidence are being identified in the list subject to redaction on relevancy or undue prejudice grounds or in accordance with the defendants' objections to the admissibility of certain portions therein and/or in accordance with the Court's evidentiary rulings at and before trial.

[9] The transcripts of various recordings are being provided and/or identified without prejudice to the rights of the plaintiff to provide further information about the content of the recordings by testimony, exhibits, or other evidence, including enhancement on the recordings or portions thereof.

| 19 | Photo of Gurney (PDX 120) | |
| 20 | Photos of JHMC – JLS 190, 191,202, 205, 206, 252, 260, 261, 299, 320 | |
| 21 | Handcuffs – Silver | |
| 22 | 18 U.S.C. § 922 | |
| 23 | Handcuffs – Black | |
| 24 | Yeager Interview – PG DET YEAGER.WMA (CD # 5 and formally PTX 330) & Transcript 2025159-PG Det Yeager by Veritext Legal Soultions | |
| 25 | IAB-Scott Interview of James (NYC 3812 (CD#11) & Veritext Transcript) | |
| 26 | Yeager Interview Memo (NYC 6023-24) | |
| 27 | Fitness for Duty Report 10-31-09 by Lauterborn (PDX 24) | |
| 28 | Fitness for Duty Report by Broschart (PDX 134) | |
| 29 | Brown Letter to Mauriello 3-1-09 (PDX 22; PMX 8; PDX 57)) | |
| 30 | Schoolcraft Report 8-20-09 to IAB re Caughey and Weiss (PDX 40; PMX 15) | |
| 31 | Schoolcraft Report, dated 9-2-09 (PMX 14; PDX 58) | |
| 32 | Schoolcraft Sick Report 10-31-09 (PDX 26) | ** |
| 33 | Yeager Memo Book (NYC 3724-26) | |
| 34 | Schoolcraft W-2s for 2005-2008 (AS 10303-306) | |
| 35 | Hertzel Sure, M.D. Records | ** |
| 36 | Forest Hills Medical Record | ** |
| 37 | Narrative Report of Steven A. Luell, M.D., dated January 25, 2010 | ** |
| 38 | Yeager ESU Report 11-1-09 (NYC 3724-3726) | |
| 39 | James Memo Book for 11-1-09 (PDX 117) | |
| 40 | QAD Report (PDX 169) [redacted] | |
| 41 | IAB Report (PDX 170) [Rebuttal as to Dr. Luell Report] | |
| 42 | Sadowski Memo Book (NYC 3707-09) | |
| 43 | Broschart Memo Book (PDX 135) (D505-507) | |
| 44 | Photo of Hospital (PDX 118) | |
| 45 | Photo of Hospital (PDX 119) | |
| 46 | Photo of Hospital (PDX 120) | |
| 47 | Hospital Nursing Notes (PDX 121) | |
| 48 | Sawyer Memo Book Bates (NYC 12017-12020) | |

| 49 | Jamaica Hospital Consultation Report (PDX 123) | |
| 50 | Adrian Schoolcraft Evaluations (NYC 173-181; 186-188) | |
| 51 | Photos of Adrian Schoolcraft's Locker (NYC 12012, 12004) | ID[5] |
| 52 | Photos of Adrian handling firearms after his firearm was taken away | |
| 53 | QAD Report Findings (NYC 559-562) | |
| 54 | Adrian Schoolcraft's memo book entries (NYC 189-238) | |
| 55 | Lt. Cagno Memo re Schoolcraft's report to IAB (NYC 4316) | |
| 56 | Lamstein Voicemail Recording and Transcript | ** |
| 57 | Portion of 81st Precinct Roll Call for 6/12/08 | ID |
| 58 | Portion of 81st Precinct Roll Call for 10/28/08 | ID |
| 59 | Portion of 81st Precinct Roll Call for 10/31/08 | ID |
| 60 | Portion of 81st Precinct Roll Call for 11/23/08 | ID |
| 61 | Portion of 81st Precinct Roll Call for 1/28/09 | ID |
| 62 | Portion of Adrian Schoolcraft Day Tour 10/31/09 (rebuttal only) | **[6] |


Defendant Jamaica Hospital's Trial Exhibits

| 1 | Full Certified Records of Jamaica Hospital Medical Center for Adrian Schoolcraft for October 31, 2009 through November 6, 2009 | |
| 2 | Records of Dr. Catherine Lamstein, Bates stamped by NYC as D000247 through D000262; D000268 through D000275; D000281 through D000316, and other records of Dr. Lamstein | ID |
| 3 | Records of Hertzel Sure, M.D., Bates stamped by NYC as NYC2288 through NYC 2351, with certification of the records Bates stamped NYC014966 | |
| 4 | The certified complete records maintained by Dr. Steven Luel as they pertain to Adrian Schoolcraft | ID |

[5] I.D. is an objection based on an insufficient designation of the exhibit for the purpose of identifying what the exhibit is.  This objection is being asserted in addition to all other objections and is not intended to be the only objection to any exhibit with this objection listed

[6] Defendants do not object to the introduction of PTX 62 to the extent that the exhibit constitutes the plaintiff's audio recording of his Day Tour on 10/31/09, is the complete audio recording, and is offered as an absolute, unqualified exhibit.

| | | ID |
|---|---|---|
| 5 | The certified complete records from North Shore – Forest Hills Hospital for Adrian Schoolcraft | |
| 6 | Recording of events at 81 Precinct during day of 10/31/09 & telephone conversation with Larry Schoolcraft, Disk Label: NYC | |