

ZACHARY W. CARTER
*Corporation Counsel*

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY  10007

**ALAN H. SCHEINER**
*Senior Counsel*
phone: (212) 356-2344
fax: (212) 788-9776
ascheine@law.nyc.gov

October 28, 2015

**BY ECF & EMAIL**
**(Talia_Nissimyan@nysd.uscourts.gov)**

Honorable Robert W. Sweet
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:  Schoolcraft v. Jamaica Hospital Medical Center, et al.
              10-CV-6005 (RWS)

Your Honor:

      I am a Senior Counsel in the office of Zachary W. Carter, Corporation Counsel of the City of New York, representing the non-party City of New York and certain non-party witnesses (together, the "City witnesses") in connection with the trial of above-captioned matter.

      As mentioned by the City during the conference before the Court on October 21, 2015, the City witnesses write to note certain objections to the use of certain City-produced evidence and the examination of City witnesses at trial.  First, the City objects to the use at trial of certain confidential law enforcement information produced by the City subject to the Confidentiality Stipulation and Order, Docket No. 105 (the "Confidentiality Order"), on the grounds that the material should be kept confidential and would be irrelevant or cumulative at trial.  Second, the City respectfully requests that the Court narrowly limit the scope of the testimony to be taken from the City witnesses subpoenaed by plaintiff to matters that are clearly relevant and not cumulative.

### A. The City's Confidential Materials Should Not Be Used At Trial

      In their draft revised JPTO, the parties list as exhibits materials produced by the City that were generated in the course of the internal law enforcement investigation by the NYPD into Schoolcraft's allegations and the events of October 31, 2015.  These materials were designated "Confidential" by the City upon production, pursuant to the Confidentiality Order.  The

Sweet, J.
October 28, 2015
Page 2

Confidentiality Order provides that the City may request that steps be taken to protect the confidentiality of such materials at trial.  Confidentiality Order ¶ 4.  The City now so moves.

      The City materials were designated "Confidential" pursuant to the Confidentiality Order because they reflect the internal NYPD investigation of Schoolcraft's allegations and conduct, and therefore are protected by the law enforcement privilege.  "[T]he law enforcement privilege plays a critical role in litigation involving the government."  *Dinler v. City of New York*, 607 F.3d 923, 940 (2d Cir. 2010).  The purpose of the privilege "is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *Id*. at 940-41 (quoting *In re Dept. of Investigation*, 856 F.2d 481, 484 (2d Cir. 1988)).  "Those goals are of such importance that the privilege, though it developed at common law from executive privilege, has been largely incorporated into both New York state and federal statutory law." *Id*. (citing *Dept. of Investigation*, 856 F.2d at 483 & n. 1, 2).

      The privilege is qualified, not absolute, and once the court determines that discovery sought in a civil proceeding is subject to the law enforcement privilege, the burden shifts to the party seeking discovery to show "*compelling* need" for the materials.  *Dinler*, 607 F.3d at 945 & n.23 (emphasis in original).  "[T]here is a strong presumption against lifting the privilege because … control of criminal investigations is the prerogative of the executive branch, subject to judicial intervention only to protect rights." *Id*. at 945 n.22 (quoting *Dellwood Farms v. Cargill, Inc*., 128 F.3d 1122, 1126 (7th Cir. 1997)).  "Determining that law enforcement materials are subject to disclosure, then, intrudes into the province of the executive branch of federal, state, or local governments," an intrusion that the courts "do not take … lightly." *Id*.  Even when disclosure is warranted, the materials are protected against unnecessary dissemination, as they are here by the Confidentiality Order.

      While there was a previous need for disclosure of these materials to the parties in the lawsuit against the City, subject to the protections in the Confidentiality Order, there is now no need at all – let alone the required *compelling need* – for use and disclosure of most of these materials at a trial where the City and its employees are not a party.

      The plaintiff lists over 20 exhibits comprised of City-produced Confidential materials, or which otherwise contain confidential law enforcement information.[1]  Plaintiff lists several such exhibits which were never seen by any hospital staff and contain no statements by any witness in this trial, such as, for example, confidential reports by the IAB and the Quality Assurance Division stating conclusions and opinions about Schoolcraft's internal complaints (PTX 40, 41) – which this Court already ruled inadmissible at the conference on October 21, 2015.

---

[1] *See* Plaintiff's Trial Exhibits 24-33; 38-43; 48; 51; 53-55; 57-62.  The City-produced exhibits listed by defendants are restricted to prior statements of witnesses that the parties seek to have testify at trial, including the plaintiff.

Sweet, J.
October 28, 2015
Page 3

The plaintiff also lists several recordings he made of precinct roll calls during the period *from 18 months to 10 months before* his admission to the hospital (PTX 57-61). Those recordings – never disclosed to the hospital staff – could not possibly bear on the defendants' decision to confine Schoolcraft for psychiatric treatment. Plaintiff is likely to contend that the recordings would show the truth of his prior internal allegations against his NYPD supervisors, but the truth or falsity of Schoolcraft's complaints is patently irrelevant to his claim against the medical defendants. The listing of those recordings as exhibits signals plaintiff's intent to use the claim against the medical defendants to conduct an irrelevant show trial against absent parties: an abuse that this Court should not permit.

Even if some City documents – such as the prior statements of witnesses – may be deemed necessary for trial, their use should be strictly limited to the necessity at hand. If any City Confidential material is deemed necessary for trial, the City respectfully requests the Court, to protect against unnecessary disclosure of such material, order that such exhibits: (1) be redacted except in the relevant and necessary part; (2) not be publicly filed in the docket, even after they are used at trial; and (3) continue to be designated as Confidential material subject to the strictures of the Confidentiality Order.

### B. The Court Should Strictly Limit the Testimony of City Witnesses to Evidence That is Relevant and Not Cumulative

The City respectfully requests that the Court strictly limit the testimony at trial of the City witnesses subpoenaed by plaintiff – Christopher Broshcart, Shantel James and Frederick Sawyer, and retired officer Robert Yaeger – to matters as to which their knowledge is both clearly relevant and non-cumulative.[2]

Federal Rule of Civil Procedure 45 protects non-party witnesses from compelled testimony that would "require[] disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv); *Kirschner v. Klemons*, 2005 U.S. Dist. LEXIS 9803, *4-5 (S.D.N.Y. May 18, 2005). Determination of issues of burden and reasonableness is committed to the sound discretion of the trial court." *Kirschner v. Klemons*, 2005 U.S. Dist. LEXIS 9803, at *5. Whether a subpoena subjects a witness to undue burden within the meaning of Rule 45(c)(3)(A)(iv) "depends upon such factors as relevance . . . and the burden imposed." *Id*. (quotation and citation omitted). In addition, Rule 45(d)(1) requires that a party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

Here, not only the witnesses are burdened by the requirement to be at court and give evidence, but the City is deprived of the services of three law enforcement officers while they are here and is required to pay their usual salary for that time. While "inconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony" [*Croom v.*

---

[2] The City agreed to accept service of subpoenas for these witnesses, reserving all other objections.

Sweet, J.
October 28, 2015
Page 4

*Western Conn. State Univ.*, 218 F.R.D. 15, 17 (D. Conn. 2002)], a "subpoena that pursues material with little apparent or likely relevance to the subject matter, however, is likely to be quashed as unreasonable even where the burden of compliance would not be onerous." *Kirschner v. Klemons*, 2005 U.S. Dist. LEXIS 9803, at *6.

In this case the witnesses' testimony has "little apparent relevance" to the claims against the defendants, and to the slight extent that it may be relevant, it is duplicative of the testimony that can be provided by the parties themselves. The four City witnesses were present at the hospital only during the first several hours that's Schoolcraft was in the hospital. To the City's knowledge there is no factual dispute between the parties at trial about what the police did at the hospital or what transpired between the police and hospital staff. While medical records attribute a statement to Ms. James regarding Schoolcraft, the alleged statement is admissible through the records alone. Courts will find an "undue burden" where, as here, the sought-after information is cumulative of that already available to the parties. *See Hermitage Global Partners L.P. v. Prevezon Holdings Ltd.*, 2015 U.S. Dist. LEXIS 20080, *16-17 (S.D.N.Y. Feb. 19, 2015).[3]

Accordingly, the Court should strictly limit the testimony required from the City witnesses to what is clearly relevant and not cumulative of the parties' own testimony.

We thank the Court for its consideration in this matter.

Respectfully submitted,

/s/

Alan H. Scheiner
Senior Counsel
Special Federal Litigation Division

cc: All counsel by ECF.

---

[3] Only one of the listed witnesses, Broschart, could testify about events at Schoolcraft's apartment on October 31, 2015, but that testimony would also be irrelevant or cumulative. Jamaica Hospital Medical Center EMT's were present for much of the events at the apartment, and the parties may use Schoolcraft's recording of the incident. The City is not aware of any dispute about events at the apartment between the parties to this trial which Broschart could help the jury resolve.