# EXHIBIT "B"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ADRIAN SCHOOLCRAFT,                                  10-cv-6005 (RWS)

                    Plaintiff,

                                    **AFFIRMATION OF
NATHANIEL B. SMITH IN
SUPPORT OF PLAINTIFF'S
APPLICATION FOR
ATTORENY'S FEES AND
COSTS**

        -v-

CITY OF NEW YORK, et al.,

                    Defendants.
-------------------------------------------------------X

      Nathaniel B. Smith, being an attorney admitted to practice law in this State and

before this Court, hereby states and declares under the penalties of perjury that the

foregoing is true and correct.

      1.  As one of the attorneys for the plaintiff in the above-referenced action, I am

submitting this affirmation in support of the plaintiff's application for reasonable

attorneys' fees, costs, and expenses of this action, pursuant to the Judgment, dated

October 15, 2015 (Dkt. # 541).  The Judgment, which incorporates the City

Defendants' Rule 68 Offer of Judgment, dated September 16, 2015, provides that the

"plaintiff shall be entitled to reasonable attorney's fees, expenses and costs to the date

of this offer for plaintiff's federal claims." (*Id*.; Offer of Judgment at p. 2.)

Accordingly, the attorneys who have represented the plaintiff in this action are

submitting this motion for attorneys' fees, expenses, and costs incurred in this action since its commencement on August 10, 2010. (Dkt. # 1; Complaint.)

2.   In this affirmation, I set forth my legal background and a summary description of the time charges and expenses I incurred in representing the plaintiff. Attached as <u>Exhibit I</u> is a detailed beak-down of my time charges and accrued expenses in this matter from the inception of my representation through the date of the Offer of Judgment, September 16, 2015.   Over the course of two and a half years of heavy litigation I spent 2,246 hours of billable time on this case and accrued $151,470.16 in costs and expenses.   Based on my hourly rate of $575 per hour and subject to the adjustments set forth below, I am requesting that the Court award me the full lodestar amount for my time and for the time of an attorney and a law graduate who worked with me on this case, as set forth below.   In addition, I am requesting that the Court award me the adjusted costs and expenses I necessarily incurred in this action through the date of the Offer of Judgment.   The grounds and details underlying this request are set forth below.

*My Background and Hourly Rate*

3.   I have been practicing law for the past 27 years.   I graduated from Brooklyn Law School in 1987 and was admitted to practice law in this State in 1988.   While in law school, I was a member of the *Brooklyn Law Review* and served as a Notes

2

Editor in my third year of law school.  I also published an article in my third year on the subject of the definition of a tender offer under the federal securities laws.[1]

4.   After law school, I worked as an associate for six years in the litigation department at Paul, Weiss, Rikfind, Wharton and Garrison.  As an associate at Paul Weiss, I worked on various types of litigation, including securities fraud, antitrust, trademark, unfair competition, contract, arbitration, SEC investigations, civil rights, conservatorships and real estate law.   Significant cases include a nine-month antitrust trial by one national cigarette manufacturer against another manufacturer for predatory pricing and a securities fraud action involving the marketing to institutional investors of high-yield and tax-exempt municipal bonds.[2]

5.   After leaving Paul Weiss, I started my own law practice, which I have developed over the past 20 years.  I have been primarily involved in litigation with an emphasis on civil rights and employment discrimination litigation in state and federal courts.  Recent or notable cases in the state and federal courts in New York City include a first amendment retaliation trial under Section 1983 by a former FDNY fire marshal denied appointment to a public office; a first amendment retaliation trial by a senior prison warden against the New York City Department of Correction; an age

---

[1] N. Smith, *Defining "Tender Offer" Under the Williams Act*, 53 Brooklyn l. Rev. 189 (1987).

[2] *Liggett v. Brown & Williamson,* 748 F. Supp. 344 (M.D.N.C. 1990); *Shawmut v. Kress,* 33 F.3d 1477 (9th Cir. 1994).

discrimination action by a journalist against a national trade magazine; an action to remove a trustee of a irrevocable family trust; lost pension claims under ERISA against a former partnership; a putative class action against a local construction union for race discrimination; a disability discrimination action by a public school teacher against a state licensing agency; a securities fraud action involving the marketing of biotechnology stocks; a race discrimination action against established insurance defense law firm where plaintiff, a white partner, was terminated after marrying his black secretary; and an action for rape and sexual abuse of a federal prisoner against a senior prison official.[3]

6. As a part of my practice, I regularly represent employees or employers outside of court in various types of matters involving wages, benefits, severance,

---

[3]*Kregler v. Garcia,* 08-cv-6893 (VM); *Bell v. Construction Laborers*, 04-cv-6520 (RJH); *Arnone v. CA, Inc.*, 08 cv-4458 (SAS); *Parks v. Lebhar-Friedman*, 04-cv-7133 (DCP)(S.D.N.Y. Oct 2, 2008)(age case); *Carras v. MGS 718 Lex, Inc.*, 2008 U. S. App. Lexis 25731 (2d Cir. 2008) (age discrimination); *Falchenberg v. New York State Dept. of Education*, 04-cv-7598 (RWS) (S.D.N.Y. July 7, 2008)(disability case); *Skinner v. City of New York,* 03-cv-8038 (AKH)(first amendment); *Guilbert v. Gardner,* 480 F. 3d 140 (2nd Cir. 2008)(pension case); *Attenborough v. Construction & General Labors*, 03-cv-4399 (RJH) (S.D.N.Y. Sept. 5, 2006)(union discrimination); *Graves v. Finch Pruyn*, 457 F. 3d 181 (2d Cir. 2006)(disability discrimination); *In re 1996 JBL Trust*, 30 A.D.3d 1131 (1st Dept. 2006)(trust litigation); *Nogura v. Hasty,* 99-cv-8786 (KMW)(AP), 2001 W.L. 243535 (S.D.N.Y. Mar. 12, 2001)(Section 1983 prisoner's rights case); *Wilson v. Fairchild,* 143 F. 3d 733 (2d Cir. 1998)(race discrimination); *Rosenblatt v. Bivona & Cohen*, 95-cv-4825 (SAS), 969 F. Supp. 207 (S.D.N.Y. 1997)(race discrimination); *Lau v. Mezei*, 10-cv-4838 (KMW) (securities fraud); *Technology in Partnership v. Rudin,* 10-cv-8076 (RPP) (partnership dispute)*; Cohen v. Citibank,* 954 F. Supp. 621 (S.D.N.Y. 1996)(securities fraud).

terminations, and various other legal aspects of the employment relationship.  I am a member of American Association of Justice, the New York County Lawyers Association, and the New York chapter of the National Employment Lawyers Association.  I am admitted to practice law in this District, the Eastern District of New York, the Northern District of New York, the Second Circuit, the Fourth Circuit, the Ninth Circuit, and the United States Supreme Court.

7.   Over the past 27 years in private practice I have acted as a trial counsel in numerous actions in state and federal court on a wide variety of cases, including antitrust, investment banking, commercial landlord-tenant disputes, brokerage disputes, telecommunications fraud and breach of fiduciary duty.  I have also appeared in numerous actions in state and federal courts representing plaintiffs in civil rights and employment discrimination action.  And more directly relevant to this fee application, in the Southern District of New York, I have acted as lead trial counsel on behalf of civil rights or employment plaintiffs in the following six actions that went to trial in this Courthouse:

- In 2015, I tried a First Amendment retaliation case before Judge Marrero in the case entitled *Kregler v. Garcia*, 08-cv-6893 (VM);

- In 2011, I tried a race/retaliation case before Judge Howell in the case entitled *Bell v. Construction Laborers*, 04-cv-6520 (RJH);

- In 2009, I tried an ERISA benefits case before Judge Scheindlin in the case entitled *Arnone v. CA, Inc.,* 08-cv-4458 (SAS);

- In 2007, I tried another First Amendment retaliation case before Judge Hellerstein entitled *Skinner v. City of New York*, 03-cv-8038 (AKH);

- In 1998, I tried a race/association case before Judge Scheindlin in the case entitled *Rosenblatt v. Bivona & Cohen*, 95-cv-4825 (SAS);

- In 1994, I tried an age discrimination case before Judge Sprizzo in the case entitled *McDonald v. Empire Blue Cross and Blue Shield,* 89-cv-7784 (JES).

In four of these six trials, my client prevailed by verdict or by settlement just before verdict.

8.  The Court may recall that I was lead counsel before Your Honor in a prior action involving the claim by a New York City public school teacher who unsuccessfully sought the right under the ADA to use a speller checker as an accommodation for her dyslexia for a standardized employment test required by the City and the State of New York.  *See Falchenberg v. New York State Dept. of Education*, 04-cv-7598, 642 F. Supp. 2d 156 (S.D.N.Y. 2008) (summary judgment

granted), *aff'd*, 338 Fed. Appx. 11, 2009 U.S. App. Lexis 12213 (2d Cir. 2009), *cert.*

*denied*, 558 U.S. 1136 (2010).

9.   Based on my extensive experience as a litigator and based on the

comparable rates of other civil rights and employment attorneys who practice in

Manhattan, I respectfully submit that $575 an hour is a reasonable hourly rate for an

attorney with 27 years of experience.  Attached as Exhibit R is the Declaration of

Michael Spiegel, an experienced civil rights attorney practicing in Manhattan who is

familiar with my work as an attorney and attests to the fact that $575 is a reasonable

hourly rate for a civil rights attorney with my level of experience.    Similar

declarations attesting to typical hourly rates in this District are also being filed by my

co-counsel in this case in support of this fee application.

10.   By way of contrast, I attach as Exhibit Z a recent *New York Law*

*Journal* survey of hourly rates charges by the large firms in Manhattan.  That survey

shows that partners in large law firms in New York command rates in the range of

$800 to $1,000 per hour.    Judge McMahon recently noted that this survey is

commonly used by Southern District Courts in assessing prevailing rates in this

District. *Fleisher v. Phoenix Life Ins*, 2015 U.S. Dist. Lexis 121574 at *62-63 n. 15

(S.D.N.Y. Sept. 9, 2015).

11.   An hourly rate of $575 is also consistent with the rate that is currently

provided as a default rate in my current contingent civil rights and employment

7

retainer agreements.  Thus, my February 2013 retainer agreement with the plaintiff in this case provides that $575 is the default rate for my time in the event of a *quantum merit* calculation.   Similarly, the rate of $575 per hourly is the *quantum merit* rate designated in four other civil rights maters that I am currently working on.

12.    My hourly rate is also consistent with a prior judicial determination in this District by Judge Scheindlin.   Six years ago I filed a fee application after trial in an ERISA case on behalf of an employee denied severance benefits by his employer; Judge Scheindlin agreed that my then-rate of $425 per hour was a reasonable hourly rate based on my experience, my hourly default rate, and the rate typically then charged in this District for employment and labor lawyers.  *Arnone v. CA, Inc.,* 2009 U.S. Dist. Lexis 17080 at *10 (S.D.N.Y. Mar. 6, 2009).

13.    Given the passage of time and the accumulation of an additional six years of experience in this District, I respectfully submit that $575 is a reasonable hourly rate as of the time of this fee application.  Although my work in this case covered the period from February 2013 through September 2015, settled decisional law looks to the rate in effect at the time of a fee application in determining the compensable rate.  *Reiter v. MTA N.Y. City Transit Auth*., 457 F. 3d 224, 232 (2d Cir. 2006) (current rather than the historic rates are used to compensate attorneys for the delay in payment).

14.     There is another factor that I submit is particularly relevant to a determination of an appropriate hourly rate for my work in this case.  For the past two and one-half years, this case has demanded an enormous amount of my time, energy and resources, both billable and non-billable.  As set forth in greater detail in my time records, my representation of the plaintiff in this case as lead counsel throughout fact discovery, expert discovery, the summary judgment stages, and the final trial preparation stage of this case required an enormous commitment by me, far beyond that required of the typical case.   With the exception of a nine-month antitrust trial in the Middle District of North Carolina, I have not otherwise been required by any other action to devote nearly all by time and energy to a single lawsuit for a sustained period of time.  Although my time charges reflect that I was billing on average about 75 hours a month on this case for the thirty month period from the time of being retained in February 2013 through the date of the Offer of Judgment in September of 2015, those raw numbers do not capture the level of commitment this case required of me.   For sustained periods of times, I devoted all of my time and all of my energy into this important, challenging and difficult action.

15.     These facts are relevant to the determination of the appropriate hourly rate under the well-known *Johnson* factors for fee applications, which include: a) the time and labor required; b) the novelty and difficulty of the questions; c) and the time limitations imposed by the circumstances.  *See K.L. v. Warwick Valley Central*

9

*School District*, 2014 U.S. App. Lexis 22412 (2d Cir. Nov. 25, 2014) (listing factors);

*Brennan v. New York Law Sch.,* 2012 U.S. Dist. Lexis 135095 at  *11-12 (S.D.N.Y.

Aug. 15, 2012) ("district courts should assess case-specific considerations, including

the factors articulated by the Fifth Circuit in *Johnson v. Ga. Highway Express*").

Accordingly, I respectfully suggest that $575 is an appropriate hourly rate for my

billable time.

16.    In *Lenhan v. City of New York*, 640 F. Supp. 822 (S.D.N.Y. 1986) Judge

Connor noted that a fee application determination can take into consideration risk, the

quality of the representation and the results obtained. *Id.* at 824.  Moreover, in that

case Judge Connor awarded an enhancement in part because the lead attorney was

required to devote almost all her time to the case.  *Id.* at 829-30.   While I am not

requesting an enhancement, I believe that given the results achieved in this case and

the requirement that I devote almost all of my time to this case over sustained periods

of time justify an hourly rate of $575 per hour. *Accord Hensley v. Eckerhart,* 461

U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his attorney

should recover a fully compensatory fee."); *Perdue v. Kenny A.,* 559 U.S. 542, 555

(2010) ("an enhancement may be appropriate if the attorney's performance includes

an extraordinary outlay of expenses and the litigation is exceptionally protracted.");

*Sukhnandan v. Royal Health Care of Long Island LLC.*, 2014 U.S. Dist. LEXIS

105596 at * 10 (S.D.N.Y. July 31, 2014) ("The size and difficulty of the issues in a case are significant factors to be considered in making a fee award.").

17.     Finally, the risky nature of these types of cases is another important factor in the Court's determination of this fee application.  *Febus v. Guardian First Funding Grp., LLC,* 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012); *Lizondro-Garcia v. Kefi LLC,* 2015 U.S. Dist. Lexis 85873, *28 (S.D.N.Y. July 1, 2015) ("Plaintiffs' counsel faced some risk because they represented plaintiffs on a contingent basis and have received no fee payments for their work since the commencement of this action over three years ago").

18.     As is common for most attorneys in this field, the individuals who I typically represent in civil rights and employment cases can only obtain counsel on a contingency basis, and the vast majority of my civil rights cases are handled that way. Thus, I do not receive an initial retainer or any contribution to litigation expenses from my clients, and accordingly assume the full risk of loss.

19.     Given the realities of this type of representation most lawyers in this field have had at least one or more experiences where they have invested substantial time and money into a civil rights case where the plaintiff does not prevail and no monetary recovery is achieved.  For these reasons, only a relatively small number of practicing litigators will take these kinds of cases.   Under these circumstances, civil

rights attorneys in New York City rely upon a full "lodestar" recovery when they achieve "prevailing party" status for their clients.

*The Nature and Extent of My Representation of the Plaintiff*

20.     I was retained by the plaintiff to act as lead counsel in this case in February of 2013.  When the plaintiff initially asked me to become involved in this action, he was already working with a group of attorneys led by Peter Gleason, Esq., which included Mr. Gleason's colleagues at the firm of Levine & Gilbert and John Lenoir, Esq., all of whom were actively involved in the case. At the time, Mr. Gleason played a central role in managing the case at a critical time in the development of the case.  Over time, however, my colleague, John Lenoir and I took on the lead role in the action until February of 2015, at which point the plaintiff brought back Mr., Norinsberg and his colleagues in order to gear up for a trial that was then scheduled for April of 2015.

21.     Over the course of the 30-month period from February 2012 through the date of the offer of judgment, September 16, 2015, I recorded 2,246 billable hours on this case.  My time records are regularly made, kept and prepared by me at the time or on the day that the time is spent working for each of my clients and that information is then inputted into the "Time Slips" computer software database. Although I am a sole practitioner and regularly perform clerical or administrative

tasks during the course of my working day, I do not track that time in my time charges and do not bill for my time performing those tasks.

22.    As noted above, this was a complex and demanding action.  The Docket Sheet is 115 pages long, and as of October 30, 2015, it contains 558 entries.  Over the course of its five-year history, ten attorneys filed notices of appearances for the plaintiff; nine attorneys appeared for the City Defendants; three attorneys appeared for Jamaica Hospital; two attorneys appeared for Dr. Aldana-Bernier; and two attorneys appeared for Dr. Isakov.

23.    The discovery stages of this case were exceedingly contentious, and the defendants, particularly the City Defendants, aggressively litigated literally dozens of discovery issues.  In resolving one set of disputes, the Court aptly summed up the record:  "Discovery disputes have *plagued* this highly controversial action, perhaps understandably."  (Decision, dated August 29, 2014, at p. 1; Dkt. # 268; emphasis added.)

24.    Beyond the countless rulings on discovery matters, the Court issued thirteen *substantive* decisions on numerous significant issues in the action.  *See* Docket Nos. #60 (motion to dismiss); #83 (motion to amend); #95 (reconsideration); #99 (reconsideration); #157 (stay of NYPD administrative trial); #160 (gag order on contact with the press); #199 (motion to amend answer); #228 (reconsideration on motion to amend answer); #247 (motion to compel reporter from Village Voice to

produce document); # 252 (motion to strike scandalous pleading); # 267

(reconsideration motion); #436 (summary judgment motions); and # 489 (summary

judgment reconsideration).

25.     My time records reflect in detail the work I did on behalf of the

plaintiff.  In summary, my work involved the following:  review and analysis of

extensive paper discovery produced by the defendants and third parties, consisting of

about 15,000 pages of documents and hundreds of hours of audio and video

recordings; preparing and responding to numerous discovery demands for document

productions and interrogatories; conducting site visits and inspections at the 81st

Precinct and Jamaica Hospital; opposing numerous motions to compel discovery;

preparing numerous motions for the production of discovery by the defendants;

opposing the defendants' motion for a gag order; preparing a motion for an

injunction, staying an NYPD administrative trial against the plaintiff; numerous

meetings with medical, psychiatric and police practices experts; preparing a motion

to lift the attorneys-eyes-only limitations on providing the plaintiff with information

contained in discovery; preparing for and defending the plaintiff's deposition;

preparing for and defending the depositions of the plaintiff's four designated experts

(Drs. Lubit and Halpren-Ruder and Professors Eterno and Silverman); preparing for

and taking or attending the depositions of 32 individuals who were either named

defendants, witnesses or employees of the NYPD or Jamaica Hospital; preparing

14

regular status reports to the plaintiff on the course of the proceedings; opposing a

motion to amend an answer to assert counterclaims against the plaintiff; preparing a

motion to strike a scandalous allegation of racism against the plaintiff; opposing

twice a motion for reconsideration to reinstate the counterclaims against the plaintiff;

preparing for and conducting formal settlement discussions with the parties and

Magistrate Judge Freeman; preparing motions to compel the continuation of two

interrupted depositions and to order the defendants to cease from repeatedly

interfering with my examinations of witnesses and parties at depositions; analyzing

the legal implications of the City Defendants' first Offer of Judgment tendered in

2014; preparing objections to the City Defendants' first Offer of Judgment; preparing

a motion to amend the complaint to re-assert a Section 1983 claim against Jamaica

Hospital; preparing the plaintiff's motion for summary judgment against the

defendants; opposing the defendants' five set of motions for summary judgment (the

City Defendants; Defendant Mauriello; and the three Medical Defendants, Jamaica

Hospital; Dr. Aldana-Bernier and Dr. Isakov); preparing extensive opposition and

reply papers on the six sets of summary judgment motions submitted to the Court;

preparing a motion to strike the Declaration of NYPD Psychologist Lamstein;

preparing and opposing motions for reconsideration of the Court's summary

judgment decision; preparing opposition to City Defendants' bifurcation motion;

preparing the Joint Pre-Trial Order; review of the trial exhibits identified by the

15

parties (which included plaintiff's 250 trial exhibits; the City Defendants' 121 trial

exhibits, Defendant Mauriello's 240 trial exhibits and the Medical Defendants' 5 trial

exhibits); revising the plaintiff's proposed jury instructions and verdict sheet;

preparing for direct and cross-examination of numerous witnesses for trial; numerous

discussions and meetings with the plaintiff and with the other attorneys working on

the plaintiff's behalf; numerous discussions with the attorneys representing the

various defendants in this action; and appearing in Court to orally argue motions on

the Court's docket.

26.     During the course of this case, I also involved numerous attorneys, a

law graduate and paralegals to assist me in this case.  Several of those attorneys have

submitted with this motion their own application for fees and expenses.   As to those

attorneys, I respectfully refer the Court to their submissions on this fee application.

As to the law graduate and one attorney who had particularly relevant knowledge

about the NYPD's internal processes I note the following in support of

reimbursement for their time.

27.     James McCutcheon is an attorney in this State who was admitted in

1995.  Prior to becoming an attorney, Mr. McCutcheon was a NYPD police officer

and after graduating from law school he continued to work for the NYPD, and in

1999 joined the NYPD's Department Advocate's Office, which represents the NYPD

in administrative proceedings before the NYPD's Department of Trials.  As such, Mr.

McCutcheon has extensive knowledge about the internal operations of the NYPD, and I retained him to provide us with his insights into the case and the operations of COMPSTAT.  As reflected by his billing entries under the designation "JM" in my Times Slip software program, which were inputted by my secretary on a regular basis based on Mr. McCutcheon's regularly-provided time records, he billed 23.38 hours on the case.  (Exhibit I.)  In the light of his experience and his background I also respectfully submit that $250 per hour is a reasonable hourly rate for that work, which was invaluable to me in evaluating the evidence in this record.   Thus, the Court should award $5,845 for his work on the case.

28.     The law graduate, Magdalena Bauza, worked directly with me, conducting numerous research and writing projects and drafting portion of memoranda of law required by the case.   All of her work was done under my supervision and at my request.  Over the course of the relevant 30-month period, she prepared seventeen  legal research memoranda on specific and important issues that were required by the case, including first amendment retaliation issues; *Monell* issues; state action issues; the scope and size of sustainable damages in the action; the intra-corporate conspiracy doctrine; and the collective knowledge doctrine.  She also conducted countless other research projects where time did not permit the generation of a research memorandum.

29.    Ms. Bauza's accompanying declaration provides more detail about the nature and scope of her work.  I request that the Court set her hourly rate at $150 per hour for her work, which is the hourly rate typically awarded for law graduates in this District.  *Zahrey v. City of New York,* Slip Op. 98-cv-4546; Dkt. # 264 (DCP) (JCF) (S.D.N.Y. June 8, 2010) (concluding that $150 per hour was a reasonable hourly rate as of 2010 for a law graduate); *Barile v. Allied Interstate, Inc.,* 2013 U.S. Dist. Lexis 32483  (S.D.N.Y. Jan. 30, 2013); accord *M.C. ex rel. E.C. v. Dep't of Educ.*, 2013 U.S. Dist. Lexis 78605 at *26 (S.D.N.Y. June 4, 2013) (concluding that $125 is a reasonable hourly rate for the law student interns). Over the 30-month period, Ms. Bauza billed 1,305.64 hours, and after adjustments noted in her declaration for being the "third chair" at about 20 depositions, I request that the Court award her $193,697.50 for 1,276:34 hours of billable time at the rate of $150 per hour and for 29:30 hours of travel time at the rate of $75 per hour.   Her work was exceedingly valuable to me in this case and undoubtedly yielded efficiencies in terms of the total cost of the extensive legal research required in this case.

30.    I also retained Howard Suckle, Esq., because of his expertise in addressing the numerous issues relating to the Medical Defendants in the case.  I have know Mr. Suckle since 1988 and have great respect for his work and given his background retained him to provide me will assistance about the claims in this case regarding the Medical Defendants. For example, Mr. Suckle took a lead role in taking

the deposition's of the two doctor-defendants in the case (Dr. Bernier and Dr. Isakov) and assisted me in conducing the depositions of the other medical witnesses in the case.  His role was also invaluable to me and I request that the Court award him his full fee, as set forth in greater detail in his accompanying declaration.

31.     Finally, three paralegals, Lysia Smejika, Jeanette Lenoir, and Jeremy Smith, who are all college graduates, performed typical paralegal duties under my supervision and direction.  The vast bulk of that work, as reflected by their time records (contained in Exhibit I),  were also made, kept and maintained by my office using the Time Slips software, show that they spend 442 hours summarized, digested, and indexed the deposition transcripts for the 46 individual days of depositions in this case; the 15,000 pages of document discovery; and the hundreds of hours of audio and video recordings.   Their time records are included in Exhibit I in a separate time sheet for their work, which designated each of them by their initials, LS, JL and JS. I respectfully submit that this paralegal time was necessarily and reasonably incurred for this case and that it should be compensated at the rate of $125 per hour, which is the typical rate in this District for paralegal work.  *See, e.g. Demonschaux v. Unitedheathcare Oxford*, 2014 U.S. Dist. Lexis 43954 at *9-10 (S.D.N.Y. Mar. 27, 2014) (in ERISA case, paralegal rates in the range of $150 per hour approved); *LV v. New York City Dept. of Educ.*, 700 F. Supp. 2d 510, 523-524 (S.D.N.Y. 2010) ("$150

is within the range of rates awarded for such work").  Thus, I request that the Court

award paralegal costs in the total of $55,272.50.

32.    This fee application requires an adjustment for travel time.  My time

charges reflect that on fourteen occasions during the course of my representation of

the plaintiff I billed for travel time for trips to meet the plaintiff or other witnesses in

this case.[4]  The travel time for these fourteen trips totals 57 hours and in accordance

with established practice and decisions in this District, that time should be billed at

one-half of my hourly rate (or $287.50 per hour).  Based on this adjustment, my total

time charges should be reduced by $16,387.50 to reflect the lower hourly rate for

travel time.

33.    My time charges (Exhibit I  at pp. 37-41) also reflect that I accrued out-

of-pocket expenses during the course of this action in the total amount of

$151,470.16.  These expenses include the following significant categories of

expenses:

a.  $44,054.72 in deposition transcript expenses (summarize with invoices

attached as part of Exhibit I  and Bates-stamped as Smith Costs and Expenses 001-

036);

---

[4] The dates for those entries are as follows: 2-24-13; 4-7-13; 6-26-13; 7-10-13; 8-14-13; 8-16-13; 8-27-13; 5-13-14; 5-20-14; 6-11-14; 6-12-14;9-12-14; 9-14-14; & 10-14-14.

b.  $58,715.00 in expert fees and expenses for Dr. Lubit (as reflected by the invoice attached as Exhibit I at 037);

c.  $8,922.70 in expert fees to Dr. Halpren-Ruder (as reflected by the invoice attached as Exhibit I at 039);

d.  $7,200 in expert fees to Professor John Eterno (as reflected by the summation of checks paid to him my me and recorded in my Time Slips billing records at pp. 37-41);

e.  $7,350 in expert fees to Professor Eli Silverman (as reflected by the summation of checks paid to him my me and recorded in my Time Slips billing records at pp. 37-41); and

f.  $8,254.00 in investigator's fees and expenses (as reflected by the investigator's invoice attached as Exhibit I at 042).

34.  The expenses incurred for experts are recoverable in this case, even though the law does not include those expenses within the meaning of the term "cost" under the governing fee-shifting provision, 42 U. S. C. § 1988.  The Offer of Judgment expressly provides that the offer to resolve the claims included reasonable attorney's fees, costs *and* expenses incurred on the federal claims.  Since all the expenses, including expert expenses, were incurred on the federal claims, those expenses are recoverable based on the express terms of the offer, upon which the plaintiff relied in accepting the Offer of Judgment.  Thus, as a contractual term of the

21

plaintiff's Acceptance of the Offer of Judgment, the plaintiff is entitled to recover from the City these necessary expenses, whether or not those expenses are recoverable under the civil rights' fee-shifting statute, 42 U. S. C. § 1988.  *See Penley v. City of New York*, 2015 U. S. Dist. Lexis 119808 at *3 (S.D.N.Y. Sept. 8. 2015) ("Offers of judgment pursuant to [Rule] 68 are construed according to ordinary contract principles") (citing *Goodheart Clothing Co. v. Laura Goodman Enter*., 962 F.2d 268, 272 (2d Cir. 1992)).  Thus, when the terms of a contract are unambiguous, the Court must not "alter or go beyond the express terms" of the parties' agreement. *Id (citing Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999)).  *See also Berrian v. City of New York*, 2014 U.S. Dist. Lexis 104255 (S.D.N.Y. July 28, 2014), *adopted*, 2014 U.S. Dist. Lexis 163445 (S.D.N.Y. Nov. 21, 2014) (strictly enforcing terms of Rule 68 Offer to award plaintiff attorney's fees).

35.     My time charges also reflect various other miscellaneous charges for various costs and expenses, such as travel and lodging expenses, duplication charges, messenger and mail charges, witness fees, transcripts of court proceedings and other miscellaneous expenses, all of which were necessarily and properly incurred by me in the course of my representation of the plaintiff.   The expenses for travel and lodging accommodations total $6,632.31 and the expenses for duplication costs, site visit photography, overnight mail, and other miscellaneous expenses total $2,816.00. Beyond the sundry collection of these expenses in my billing records, which recorded

the expenses on a regular basis, I am attaching as Exhibit I at 045-061 various invoices for the more significant miscellaneous expenses.

36.      A portion of these expenses identified by time and expense records were accrued after the Offer of Judgment and are not compensable in this application. These expenses are as follows: Dr. Lubit's time preparing for the trial after the City Defendants tendered their Offer of Judgment ($14,259 based on 28.5 hours at $500 per hour) and the cost of housing the plaintiff on the eve of the trial of the action against the Medical Defendants ($1,984.43).  Accordingly, the expenses awarded in this fee application should be adjusted downward $16,234.43 for total adjusted expenses of $135,235.73.

*Conclusion*

37.  For the foregoing reasons, the reasons set forth in the accompanying memorandum of law, and the supporting exhibits and declarations, I request that the Court grant my application for fees and costs of this action in the following amounts:

| | |
|---|---|
| Nathaniel B. Smith Attorney's Fee (adjusted): | $1,275,062.50 |
| Magdalena Bauza Law Graduate Fee (adjusted): | $  193,175.00 |
| James McCutcheon Attorney's Fees: | $      5,845.00 |
| Paralegal Fees: | $    55,272.50 |
| Costs and Expenses (adjusted): | $  135,235.73 |
| Total: | $1,664,590.07 |

Dated:   December 15, 2015


LAW OFFICE OF
NATHANIEL B. SMITH

*s/NBS*

_____

NATHANIEL B. SMITH
*Attorneys for Plaintiff*
100 Wall Street – 23rd Floor
New York, New York 10006
(212) 227-7062

24