# EXHIBIT

# "C"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ADRIAN SCHOOLCRAFT,

                Plaintiff,

       -against-

                                    **DECLARATION OF JOSHUA P. FITCH IN SUPPORT OF MOTION FOR ATTORNEYS' FEES**

                                    **10 CV 06005 (RWS)**

THE CITY OF NEW YORK, et al.,

                Defen
                dants.

------------------------------------------------------------X

## DECLARATION OF JOSHUA P. FITCH IN SUPPORT OF MOTION FOR ATTORNEY'S FEES AND COSTS

       JOSHUA P. FITCH declares, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, as follows:

       1.      Gerald M. Cohen and I are partners with the law firm of Cohen & Fitch LLP, the attorney's of record for plaintiff Adrian Schoolcraft in the above-captioned action.   As such, I am familiar with the facts and circumstances concerning the prosecution of this action, and I submit this declaration is support of plaintiff's application, pursuant to 42 U.S.C § 1988 and Fed. R. Civ. P. 54(d), for an order awarding plaintiff attorney's fees and costs as the prevailing party in this litigation having obtained

a Judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure against Defendant City of New York on all Federal and State law claims in this matter. (See Rule 68 Judgment, Dkt. # 541).

## ATTORNEY BACKGROUND AND EXPERIENCE

2.     I am the co-founder and partner of Cohen & Fitch LLP, with offices at 233 Broadway, Suite 1800, New York, New York.

3.     Since June 2008, I have been a partner in the Manhattan law firm of Cohen & Fitch LLP.  Our office is located at 233 Broadway, Suite 1800, New York, New York 10279.

4.     My firm is dedicated to prosecuting claims of police misconduct and civil rights.  Specifically, Cohen & Fitch LLP specializes in litigating and trying civil rights actions for those whose constitutional rights have been violated at the hands of state, local officials and private individuals/entities.  In addition, my firm maintains a large criminal defense practice throughout the five boroughs and the Eastern and Southern Districts of New York.

5.     I am an attorney in good standing, admitted to practice law in the State of New York, in the United States Court of Appeals for the Second Circuit and in the United States District Courts for the Southern and Eastern Districts of New York.

## THE REQUESTED HOURLY RATE OF $500 IS REASONABLE

6.      On behalf of the plaintiff, I am seeking to recover attorney's fees at the hourly rate of $500 for my work in this matter.  In making this request, I have assessed the rates of other attorneys like myself who have been practicing law for eleven (11) years, and other civil rights attorneys who have practiced for far longer who have attained

a similar level of expertise in the area of civil rights litigation in general, and police misconduct matters in particular.

7.    In connection with this application, Gerald M. Cohen, Esq., my partner at Cohen & Fitch LLP, has also submitted a declaration on behalf of Cohen & Fitch LLP in this case.  (Master Decl., Ex. D).

8.    The detailed billing records of the work that I performed in this case are attached to the Master Declaration as Exhibit J.

9.    Further, attached to the Master Declaration as Exhibits S through U are the Declarations of Zachary Margulis-Ohnuma, Esq., Irving Cohen, Esq. and Katherine Smith, Esq., who attest to the reasonableness of my hourly rate in support of the instant application for attorneys fees.

10.    I graduated from New England School of Law, magna cum laude, in 2004 ranked seventh (7th) in a class of 184 graduates.  While in my second year of law school I was an associate member of the New England Law Review where I authored a civil rights case comment on the Supreme Court decision in United States v. Drayton, 536 U.S. 194 (2002), which was published in the New England Law Review and has been cited to by five other Law Reviews across the country.  See Joshua Fitch, United States v. Drayton: Reasonableness & Objectivity – A Discussion of Race, Class and The Fourth Amendment, 38 NEW ENG. L. REV. 97 (2003).  Further in my second year on the New England Law Review I was Editor for a Symposium on the seminal and landmark case of Goodridge v. Dept. of Public Health, 798 N.E.2d 941 (Mass. 2003) that upheld the constitutionality of same sex marriage under Massachusetts law.

11.     Following my graduation from law school in 2004, I served as an Assistant District Attorney in the Bronx County District Attorney's Office.  I began practicing in 2004 under a special practice order of the Appellate Division that applies to Assistant District Attorneys at the New York City District Attorney's Offices and in February 2005 I was fully admitted to practice law in the State of New York.

12.     I was one of eight individuals in a hiring class of fifty eight (58) new hires competitively selected to join the specialized Domestic Violence ("DV") Bureau.  The DV bureau is a unit of the District Attorney's office that focuses on crimes occurring in connection with domestic violence – namely, murder, assault, weapons possession and similar violent offenses.  My entire three year commitment with the District Attorney's office was with the DV bureau.

13.      Attorneys in the District Attorney's office undergo rigorous training in all aspects of criminal prosecution and procedure and are responsible, from inception through trial, for an individual caseload of up to one hundred or more cases at any given time.  Our duties with respect to each case included defending motions to dismiss and suppress evidence, and other various Constitutional challenges made by skilled criminal defense attorneys on behalf of their clients.

14.     Within my first year as an Assistant District Attorney I was assigned felony cases ranging from assaults to attempted murder and I had tried five (5) cases to verdict.

15.     During my tenure at the District Attorney's Office, I presented dozens of cases to the Grand Jury and tried twelve (12) cases to verdict exceeding nearly every Assistant District Attorney in my class and many senior Assistants with years of

additional time and experience.  At least two of the cases that I handled and tried were documented on Westlaw and State Reporters.  <u>See</u> <u>e.g.</u>, <u>People v. Snipe</u>, 17 Misc. 3d 571, 841 N.Y.S.2d 763 (Sup. Ct. 2007) (on the brief); <u>People v. Garcia</u>, 59 A.D.3d 211, 212, 873 N.Y.S.2d 52, 52 (2009) (trial attorney).

16.     In addition to undergoing training and handling an individual caseload, I worked closely with detectives and police officers, gaining invaluable experience with police procedures, policies and paperwork that has given me a distinct advantage in my civil rights practice.

17.     Ending in August 2007 I left the District Attorney's Office and began to work for a well-known general liability defense firm, Shapiro Beilly Rosenberg & Aronowitz LLP.  In that capacity I defended assorted personal injury and property damage actions in all five boroughs in New York City and in state courts in Suffolk and Nassau County.  In the mere nine (9) months that I spent there I took fifteen (15) cases to verdict – at least one of which was reported the New York Verdict Search Reporter – and two (2) more that settled during jury selection.

18.     In June 2008, I decided to partner with Gerald M. Cohen, my former colleague from the Bronx District Attorney's Office, who had gained experience with police misconduct cases during his period of solo practice.

19.     In June 2008, I co-founded Cohen & Fitch, LLP, since that time I have defended hundreds of clients against criminal prosecutions and have prosecuted over one thousand civil rights violations in Federal and state court that have ended in favorable settlements for my clients.

20.    Moreover, I have taken one criminal case to verdict that resulted in an acquittal, five (5) federal civil rights trials to verdict[1] and assisted with the trial of seven (7) additional federal civil rights matters including this case.[2]   In my career I have personally tried thirty three (33) cases to verdict and personally handled thousands of civil rights and criminal matters.

21.    Since forming Cohen & Fitch LLP, Mr. Cohen and myself have litigated approximately 300 federal § 1983 cases in both the Eastern and Southern Districts of New York.  I have also handled hundreds of state court civil rights claims against the City of New York.

22.    Further, while according to their 2011, 2012 and 2013 reports, the special federal litigation unit consistently brags about a 70% success rate in federal trials, (Master Decl., Ex. AA) this figure is not representative of their success in trials in which Cohen & Fitch LLP has been lead trial counsel.  In those cases Cohen & Fitch LLP has won 55% of the trials taken to verdict where we acted as either lead co-trial counsel. These percentages speak to both the difficulty of the cases handled by Cohen & Fitch LLP and the particular skill and expertise that plaintiff's counsel has at trial, which illustrates the reasonableness of counsel's hourly rate.

23.    In addition, of the 283 cases that my firm has litigated against the City, defendants have only succeeded in dispositive motion practice in *one* of those cases[3], which speaks volumes of the quality of attorneys at Cohen & Fitch LLP and bespeaks the

---

[1] Nibbs v. Goulart, 10 CV 3799 (VM)(AJP); Jacquez v. Gresko, 10 CV 9314 (JSR); Rentas v. City of New York, 10 CV 6242 (AKH); Francois v. City of New York, et al., 11 CV 5874 (WFK); Jackson v. City of New York, 12 CV 1968 (WFK).
[2] Marshall v. Randall 10 CV 2714 (JBW); Clarke v. Castro 10 CV 6330 (HBP); Carter v. City of New York 11 CV 2899 (WFR); Rucks v. City of New York 12 CV 4226 (KPF); Perez v. Duran, 11 CV 5399 (SC); Brim v. City of New York, 13 CV 1082 (RER)(SJ); Samtani v. Cherukuri, 11 CV 2159 (RER).
[3]

reasonableness of the hourly rates submitted in this case especially in light of the City usual self reported 70% success rate in dispositive motion practice in 2012. (Master Decl., Ex. AA).

24.    In addition, in 2012, I was admitted to the United States Court of Appeals for the Second Circuit and since that time I have been principally involving in writing the briefs in five (5) appeals - one (1) interlocutory - before the Second Circuit, achieving success on two out of three with one currently pending.[4]  Indeed, at least one thus far has become an important decisions in current civil rights jurisprudence.  See e.g., Marshall v. Randall, 719 F.3d 113, 116 (2d 2013) ("This case asks us to consider what the Supreme Court meant by "any § 1983 claim *based on* the witness' testimony"). I have twice argued before the Second Circuit Court of Appeals.

25.    In that same time, approximately forty (40) cases that I have been the principle author on the legal brief have been reported in the State and Federal Reporters, the New York Law Journal and Westlaw.  Many of these decisions have also been relied upon in subsequent Circuit civil rights jurisprudence.  See e.g., Stinson v. City of New York, 282 F.R.D. 360 (S.D.N.Y. 2012) (cited by 27 subsequent District Court Decisions); Dowling v. City of New York, NGG RML, 2013 WL 5502867 (E.D.N.Y. Sept. 30, 2013) (cited by 12 subsequent District Court Decisions); Nibbs v. City of New York, 800 F. Supp. 2d 574 (S.D.N.Y. 2011) (cited by 14 subsequent District Court Decisions); Perez v. Duran, 962 F. Supp. 2d 533 (S.D.N.Y. 2013) (cited by 10 subsequent District Court Decisions); Keller v. Sobolewski, 2012 WL 4863228, (E.D.N.Y. Oct. 12, 2012) (cited by 4 subsequent District Court Decisions); Rucks v. City of New York, 96 F. Supp. 3d 138

---

[4] Thomas v. City of New York, 562 Fed. Appx. 58 (2d 2014); Rentas v. City of New York, 14-2475 (decision pending), Rentas v. Ciity of New York, 14-2512 (decision pending); Stinson v. City of New York, 12-3069 (2nd Cir. Dec. 12, 2012)(Order denying leave to appeal).

(S.D.N.Y. 2015) (cited by 3 subsequent District Court Decisions); Schoolcraft v. City of New York, 2012 WL 3960118 (S.D.N.Y. Sept. 10, 2012) (cited by 3 subsequent District Court Decisions).

26.     My firm's experience in the civil rights and criminal defense field has previously been acknowledged by this Court in Stinson v. City of New York, 282 F.R.D. 360 (S.D.N.Y. 2012) (noting that the attorneys of Cohen & Fitch LLP "are competent and experienced in federal class action and federal civil rights litigation") and in Marshall v. City of New York, et al., 10cv2714 (JBW) (VVP) (E.D.N.Y. 2012) (noting that "their expertise and level of skill... [warrants] compensating them at the high end of attorneys' rates").

27.     As a result of my experience more experienced civil rights practitioners, including Jon L. Norinsberg, Esq., Jon Depoala, Esq., Irving Cohen, Esq. and Jonathan Gleit, Esq., routinely refer civil rights cases to my firm and/or request that my firm assist in the prosecution of their own civil rights matters.

28.     Further, in May 2010 my firm along with Jon Norinsberg, Esq. filed a class action complaint against the City of New York in the Southern District of New York, alleging, inter alia, that the NYPD has a pattern and practice of issuing summons to individuals without probable cause as a result of its unlawful quota. On April 23, 2012 Your Honor certified the class and found my firm's civil rights and criminal defense experience to be sufficiently competent and adequate to serve as class counsel for a class potentially exceeding half a million New Yorkers. See Stinson et al. v. City of New York et al. 2012 WL 1450553, 10 CV 4228 (RWS) (April 23, 2012).  This decision to certify

was upheld on reconsideration, on interlocutory appeal by the Second Circuit and again when the City's motion to decertify was denied on September 24, 2014.

29.    It should also be mentioned that defense counsel in Stinson – of all the challenges they asserted in opposition to class certification under Rule 23 – never once challenged my firm's adequacy or competency in the area of civil rights litigation.

30.    Moreover, in <u>Stinson</u>, we are class co-counsel to the law firm of Quinn Emmanuel, Urquhart and Sullivan LLP (hereinafter "Quinn"), one of the largest class action law firms in the world.

31.    Further according to the National Law Journal's Billing Survey for 2014, attached to the Master Declaration as Exhibit Z, the lowest average billing rate for the partners of Quinn is $810 – $310 more per hour than the partners of Cohen & Fitch LLP – which is abundant evidence of the reasonableness of the hourly rates of myself, Gerald Cohen and Jon Norinsberg.

32.    In addition, in November 2014 my firm along filed another action on behalf of a class comprising of approximately ten thousand New Yorkers against the City of New York in the Southern District of New York, alleging, inter alia, that the NYPD has a pattern and practice of falsely arresting and prosecuting individuals for the possession of legal folding knives under Penal Law Section 265.01(1) and 265.00(5). Plaintiff's motion for certification in <u>Clay, et al. v. City of New York, et al.</u>, 14 CV 9171 (RMB)(KNF) is currently pending before the Honorable Richard M. Berman.

33.    Further, I note that two years ago, on January 24, 2013, my billing rates in the Eastern District, which is significantly less that the Southern District Community, were approved at a rate of 325$ dollars per hour in <u>Marshall v. Randall</u>, 10 CV 2714.  In

that decision, Judge Pohorelsky even recognized that "Counsel's reputations are not in dispute," which rendered the additional evidence of their quality "unnecessary to the court's recommendations." Id.

34.    As such given the additional experienced I have gained since that time - both trial and appellate - as well inflation adjustments and the Southern District rates, I believe $500 per hour is more than reasonable rate in this matter and are well in line with the prevailing market rates in the community.

30.    In matters involving claims of civil rights, I always work on a contingency basis.  None of my clients are ever asked to pay a cent of the litigation costs associated with my firm's civil rights cases.

31.    My firm bears all of the costs for litigating our civil rights cases and absorbs the advanced costs in all cases where there is no recovery.  For example, from 2011 through 2015, while their firm was successful in six out of the eleven trials that went to verdict, their firm absorbed over thirty thousand dollars ($30,000.00) in expenses in the five cases that resulted in defense verdicts. See Nibbs v. Goulart, 10 CV 3799 (VM)(AJP); Jacquez v. Gresko, 10 CV 9314 (JSR); Jackson v. City of New York, Carter v. City of New York,; Francois v. City of New York.

32.    Because of the high level of financial risk involved in civil rights litigation, my firm depends on the availability of the full lodestar recovery in all the civil rights cases in which we do prevail.

33.    I am compensated based on the portion of any judgment or settlement obtained,  or through attorney fee petitions.  The instant matter is no different.  I will be compensated on the basis of the instant fee petition.

34.     The reasonableness of Cohen & Fitch LLP's hourly rate is exemplified by the December 31, 2013, National Law Journal's most recent annual survey of law firm hourly billing rates.[5]  (Master Decl., Ex. Z). The *lowest* average partner rate among New York firms reporting that figure is $640 per hour, and highest average partner rates among New York firms reported in the survey range between $815 and $1800 per hour.[6] (Id.).

35.     Indeed, even the lowest average *associate* billing rate is $390.00 per hour, which is all the more reason why the $500.00 per hour billing rate for Cohen & Fitch LLP is infinitely reasonable given the significantly larger body of experience possessed by the partners of Cohen & Fitch LLP. (Id.).

36.     Moreover, as is the case with Mr. Norinsberg, Cohen & Fitch LLP are currently co-counsel with Quinn Emmanuel in Stinson et al. v. City of New York, 10 Civ. 4228 (RWS).  Therefore it is inconceivable that a rate of $500.00 per hour for the partners of Cohen & Fitch LLP would be considered *unreasonable* when partners at Quinn Emmanuel with as little as eight (8) years of litigation experience – three years less than both Gerald Cohen and Joshua Fitch – are permissibly being billed at $810 per hour.  (Master Decl., Ex. Z). Thus, the billing rates of the partners of Cohen & Fitch LLP are well within the range of rates charged by comparable law firms possessing particularly specialized experience in their respective fields.

---

[5] The survey does not cover all law firms, and it is well known that "'[t]hese numbers are probably an underestimate given that many of the highest-billing national law firms decline to take part in the National Law Journal Survey.'"  Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 571 (2010)(Breyer concurring)(citation omitted).

[6] The survey is often used by federal courts to determine appropriate hourly rates.  See, e.g., Skanga Energy & Marine Ltd. v. Arevenca S.A., 2014 WL 2624762, *5 (S.D.N.Y. 2014); Thai-Lao Lignite (Thailand) Co., Ltd. v. Government of Lao People's Democratic Republic, 2012 WL 5816878, *6 (S.D.N.Y. 2012); Integrated Marketing v. JEC Nutrition, 2007 WL 840304 at *2 (S.D.N.Y. Mar. 19, 2007); Banco Centrale v. Paraguay Humanitarian Found., 2007 WL 747814 at *2 (S.D.N.Y. Mar. 12, 2007); In re Merrill Lynch v. Research Securities Litig., 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007).

37.     Under the circumstances, and as discussed in the accompanying memorandum of law, an hourly rate of $500 is reasonable for an attorney with eleven (11) years of specialized experience in criminal law and civil rights litigation.  Further, it is the rate that I charge defendants when a civil rights client accepts a Rule 68 Offer of Judgment.[7]

## HOURS EXPENDED ON THIS MATTER

29.     This case proved to be a colossal undertaking from the very start occupying and dominating much of my firms time – some months requiring over 100 hours of time devoted solely to this litigation.  It was far beyond any non class action litigation that my firm has ever handled.

30.     Indeed due to the magnitude of this case and the amount of time that was necessary to devote to this litigation, client communication and management, my firm – on several occasions over our three year representation – had to forego representing numerous potential clients and other matters that we would have otherwise taken had we not been so preoccupied with this particular case.

31.     During the first two years of this litigation, I participated in all aspects of the case.  I helped draft the extensive pleadings in this matter, which was based on numerous meetings and conversations with the client, reviewing hundreds of hours of recordings and documents in connection with the incident and plaintiff's time at the 81st Precinct.  The effort and resources required to fully master the vast universe of relevant facts in this case was overwhelming at times.

32.     In addition, much of the preliminary work also consisted of meeting with

---

[7]  Cohen & Fitch LLP's civil rights retainer specifically contemplates a fee of $500.00 per hour in
     connection with any settlement, offers of judgment or reward with respect to attorneys fees.

other whistleblower officers as well as reviewing the documentation provided by them in connection with their own experiences with quotas and retaliation by the NYPD for failure to meet those quotas.

33.    There was also innumerable hours spent managing the public profile of this case with various news and media outlets who had initially broke the story of plaintiff's harrowing ordeal and continued to document and cover the events of the litigation at length.  This media connection was inextricable to this case providing both valuable insight and evidence supporting plaintiff's claims against the individual defendants and his Monell claim against the City as well as a means to discover new evidence through former and current police officers and police experts.

34.    Amongst the individuals who were drawn to this case through the media surge, experts John Eterno, a former captain with the NYPD, and Eli Silverman, both of whom have co-authored several books and articles relating to the NYPD, crime statistics and Compstat, as well as officers Adhyl Polanco, Lt. Joe Ferrara, P.O. Frank Palestro, P.O. Kevin Rodriguez, P.O. Chris Whitehead, P.O. Christopher Bienz, P.O. Fioranelli, P.O.Eddie Vasquez, and P.O. Derek Miller.[8]

35.    In furtherance of the evidence gathering phase of this case, we also set up a website on behalf of plaintiff, www.schoolcraftjustice.com, to encourage other police officers to come forward and share their experiences about quotas and retaliation, which ultimately proved invaluable in attracting hundreds of police officers who provided crucial insight and evidence to support plaintiff claims.

36.    I also participated directly in discovery production on behalf of the plaintiff,

---

[8] Scores of other officers contacted and met with our firm anonymously.

13

including reviewing demands and interrogatories from and to all defendants, reviewing thousands of documents provided in discovery by defendants as well as preparing plaintiff for his deposition.

37.   I was also was principally involved in with researching and drafting numerous motions and oppositions dealing with discovery issues, defendant JMHC's motion to dismiss, plaintiff's first amendment claims and several motions for reconsideration of same.

38.    In November of 2012, we were contacted by plaintiff informing us that he wished to terminate our representation and hire new counsel.

39.    However, in early 2015 my firm was again contacted by plaintiff who rehired my firm to assist and manage trial preparation and act as co-lead trial counsel with Jon L. Norinsberg, Esq. and Nathaniel Smith, Esq.

40.    Over the next eight months, I directly assisted with trial preparation, including developing strategy, reviewing the immense amount of discovery providing in the two years of my firms absence – including depositions and the NYPD investigation file regarding plaintiff's incident – preparing cross examinations for witnesses, reviewing jury instructions and charges and drafting an extensive motion in limine to exclude evidence at trial.

41.    Because of the magnitude and sensitivity of the issues raised in this litigation, over the course of  the first two years and the last eight months of this litigation, trial preparation and ultimate settlement, I had hundreds of lengthy conversations with the client both during and outside of the office – only a fraction of which are reflected in the time records submitted in connection with this case.

42.    My contemporaneous time records attached to the Master Declaration as Exhibit J reflect my time from June 18, 2010, through September 16, 2015, the date of Rule 68 offer.  In addition, my records also reflect the time spent in connection with drafting the instant application for attorney's fees.

43.    As indicated in the contemporaneous time records, the work I performed included the following, for which plaintiff seeks to recover his costs and reasonable attorneys' fees:

- Reviewed hundreds of documents and hours of recordings regarding the facts and circumstances of this case;

- Extensively researched potential claims, defenses and legal issues set forth in the initial pleadings;

- Reviewed and researched potential labor law and employment issues/consequences presented by plaintiff's case;

- Reviewing, researched and gathered information from numerous media outlets regarding evidence to support plaintiff's Monell claim and his claims against the individual defendants;

- Helped with the designed and launched www.schoolcraftjustice.com to elicit help from other police officers who could confirm plaintiff's whistleblower allegations;

- Interviewed, spoke and met with dozens of police officer witness who had experiences of retaliation similar to plaintiff and had experienced the pressures from the NYPD to adhere to summons quotas;

- Reviewed documents and recordings provided by those officers in order to further support plaintiff's Monell claim;

- Conducted extensive legal research regarding the conspiracy and state action 1983 claims against JMHC and the NYPD defendants;

- Numerous hours coordinating and managing the information initially disseminated and gathered from news and media outlets regarding plaintiff's incident, the lawsuit and the initial progress of the litigation, including obtaining information an evidence from those same media outlets;

- Had innumerable meetings with plaintiff and Larry Schoolcraft regarding evidence, strategy, discovery and the general course of the ligation;

- Had lengthy meetings, conversations and exchanged documents with Assistant U.S. Attorneys for the Eastern District on several occasions regarding their investigation into plaintiff's claims and corruption/misconduct within the NYPD;

- Involved in drafting, reviewing and organizing the information provided to defendants in plaintiff's initial disclosures;

- Was intimately involved in drafting, reviewing and editing initial discovery demand and interrogatories;

- Involved in discovery production, response to demands and interrogatories on behalf of plaintiff provided to defendants;

- Helped negotiate finalize and approve the confidentiality stipulation governing the initial exchange of information and discovery in this case;

- Reviewed the hundreds of NYPD documents and records, including the IAB files, QAD files, and IAB recordings;

- Reviewed Adrian Schoolcraft's medical records, including from the NYPD Medical Division, Psychiatric Services, Jamaica Hospital Medical Center, Forrest Hills, and Dr. Roy Lubbit;

- Helped draft, review and edit several discovery motions and oppositions regarding stays of discovery, the failure to produce documents by defendants, the production of documents by third parties and allegations of confidentiality breaches by the parties;

- Travelled upstate on several occasions for full day meetings with plaintiff, Larry Schoolcraft and Frank Serpico;

- Drafted, researched and edited plaintiff's opposition to JHMC's motion to dismiss, plaintiff's motion to amend on his First Amendment claims and several motion for reconsideration on same;

- Attended numerous court appearances to argue motions and to attend pre-trial conferences;

- Prepared Adrian Schoolcraft for initial deposition and attended the same;

- Spent numerous hours preparing for trial, reviewing discovery provided by

the City including assisted in organizing and preparing witness examinations and preparing the evidence to be submitted at trial;

- Reviewed and researched the Summary Judgment motions filed by all parties and the Court's decision on same;

- Prepared for trial with plaintiff's team of attorneys, divided tasks, and coordinated presentations with theory of the case;

- Researched, drafted, reviewed and edited lengthy motions in limine to exclude certain evidence and address trial management issues;

- Assisted in preparing and submitting the pre-trial submissions, including the joint pre-trial order, jury instructions and jury charges;

- Throughout the course of this litigation, was involved in thousands of correspondence regarding this case via, email phone and letter;

44.    Based upon the attached contemporaneous time records, I have incurred $447,375.00 in attorney's fees on plaintiff's behalf for the work I performed as of the date of the verdict, which represents 894.75 hours at an hourly rate of $500.00. (Master Decl., Ex. J).

45.    Additionally, pursuant to 42 U.S.C. § 1988, plaintiff seeks an award of reasonable out-of-pocket costs expended in connection with this matter. (Master Decl., Ex. K). This amount was submitted within the bill from Gerald M. Cohen on behalf of Cohen & Fitch LLP. (Id.).

## CONCLUSION

46.    Defendants waited to the eve of trial before they finally made an offer that would compensate plaintiff for his losses. Accordingly, I along with the entirety of plaintiff's team logged the hours necessary to represent our client successfully and provide the credible threat of trial.

47.    In sum, all of the time I expended was reasonable and necessary to

properly represent plaintiff. On his behalf, I submit that he should be awarded costs and attorneys' fees totaling $447,375.00 for the work I performed on his behalf.

Dated:  New York, New York
        December 16, 2015


                                        _____S/_____
                                             Joshua P. Fitch