# EXHIBIT "D"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ADRIAN SCHOOLCRAFT,

                Plaintiff,

-against-

                **DECLARATION OF
                GERALD M. COHEN IN
                SUPPORT OF MOTION
                FOR ATTORNEYS' FEES**

                **10 CV 06005
                (RWS)**

THE  CITY  OF  NEW  YORK,  et al.,

                Defen
                dants.

---------------------------------------------------------------X

**DECLARATION OF GERALD M. COHEN IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES AND COSTS**

      GERALD M. COHEN declares, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, as follows:

      1.    I am one of the attorney's of record for plaintiff Adrian Schoolcraft in the above-captioned action.  As such, I am familiar with the facts and circumstances concerning the prosecution of this action, and I submit this declaration is support of plaintiff's application, pursuant to 42 U.S.C § 1988 and Fed. R. Civ. P. 54(d), for an order awarding plaintiff attorney's fees and costs as the prevailing party in this litigation having obtained a Judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure

against Defendant City of New York on all Federal and State law claims in this matter. (See Rule 68 Judgment, Dkt. # 541).

2.     I am an attorney in good standing, admitted to practice law in the State of New York, in the United States Court of Appeals for the Second Circuit and in the United States District Courts for the Southern and Eastern Districts of New York.

3.     I was admitted to practice law in the State of New York in April 2005. I began practicing in 2004 under a special practice order of the Appellate Division that applies to attorneys at the New York City District Attorney's Offices.

4.     Since June 2008, I have been a partner in the Manhattan law firm of Cohen & Fitch LLP, which I co-founded with Joshua Fitch. Our office is located at 233 Broadway, Suite 1800, New York, New York 10279.

5.     My firm is dedicated to prosecuting claims of police misconduct and civil rights. Specifically, Cohen & Fitch LLP specializes in litigating and trying civil rights actions for those whose constitutional rights have been violated at the hands of state, local officials, and private individuals/entities. In addition, my firm maintains a large criminal defense practice throughout the five boroughs and the Eastern and Southern Districts of New York.

## ATTORNEY BACKGROUND AND EXPERIENCE

6.     I graduated from Benjamin N. Cardozo School of Law School, *cum laude*, in 2004. While I was in law school I worked for the Innocence Project, where two of my clients previously convicted of crimes they did not commit were exonerated using DNA evidence. I was also competitively selected to work in the Criminal Appeals clinic, where I filed and argued a criminal appeal on behalf of an indigent defendant before the

Supreme Court of the State of New, Appellate Division, First Judicial Department.

7.   Following my graduation from law school, I served as an Assistant District Attorney in the Bronx County District Attorney's Office. I was one of two new hires competitively selected amongst my starting class of fifty eight (58) Assistant District Attorneys to join the specialized Arson, Auto, and Economic Crimes ("AAEC") Bureau. AAEC is a unit of the Investigation Division that focuses on long term investigations into white collar crimes, frauds, rackets, official misconduct (including police misconduct), child pornography, arson, identity theft, cybercrimes, and other organized criminal activity. My entire three year and two month tenure with the District Attorney's office was with AAEC.

8.   Attorneys in the District Attorney's office undergo rigorous training in all aspects of criminal prosecution litigation and are responsible, from inception through trial, for an individual caseload of up to one hundred or more cases at any given time. Our duties with respect to each case included defending motions to dismiss and suppress evidence, and other various Constitutional challenges made by skilled criminal defense attorneys on behalf of their clients.

9.   Within my first year as an Assistant District Attorney I was assigned felony cases. I was the first assistant in my class to present a case the Grand Jury and have a felony trial.

10.   During my tenure at the District Attorney's Office, I presented hundreds of cases to the Grand Jury and tried three felony cases to verdict.

11.   In addition to undergoing training and handling an individual caseload, I was also assigned several long term investigations of individuals who had committed

insurance fraud, welfare fraud, unemployment insurance fraud, identity theft, and child pornography crimes, as well as corporations who had committed various consumer frauds. I worked closely with Detective Investigators who helped me investigate these crimes through issuance of grand jury subpoenas for financial records, telephone and internet records, as well as records from various government entities. I often had to sift through and organize thousands of documents before authorizing arrests for prosecution. Most of my investigations ultimately ended with the arrest of individuals who had committed the crimes being investigated. Further, each investigation was subjected to rigorous analysis of the existence of probable cause to support the arrest before it was made.

12.   As a result of my experiences, I gained invaluable experience with police procedures, NYPD policies and paperwork that has given me a distinct advantage in my civil rights practice.

13.   In November 2007 I left the District Attorney's Office and started my own solo practice. I focused on criminal defense and worked per diem for several law firms leveraging my skills as a seasoned litigator. I made court appearances, wrote motions, and attended 50H hearings and depositions on behalf of several different law firms throughout the City of New York.[1]

14.   In particular, I worked extensively for the law firm of Papa Depaola & Brounstein, a law firm that has had thousands of civil right cases against the City of New York. As of counsel to that firm, I defended scores of 50H hearings, and attended dozens

---

[1] I was hired as a per diem attorney by the following firms: Papa, Depaola & Brounstain; Shapiro Beilly & Aronowitz, LLP; Ginarte, O'Dwyer Gonzalez, Gallardo & Winnograd LLP; The Law Offices of Joseph Benfante; Ceaser & Napoli, LLP, Law Offices of Jonathan Gleit; Law Offices Jon L. Norinsberg, and The Offices of Jay Ringel.

of depositions of plaintiffs and police officers in cases that had false arrest and malicious prosecution causes of action. I was also hired to second seat several trials with their firm and worked with attorneys from their firm to prepare those cases for trial.

15. As a result of this experience and my knowledge of the inner workings of the NYPD, I started filing civil rights claims for my own clients. As my practice grew, I decided to partner with Joshua Fitch, my former colleague from the Bronx District Attorney's Office, who had gained civil trial experience working for a reputable insurance defense firm in New York City.

16. Since 2008 our firm has become one of the most recognized in this area of practice due to quality of our work and our success against the City.

### THE REQUESTED HOURLY RATE OF $500 IS REASONABLE

17. On behalf of the plaintiff, I am seeking to recover attorney's fees at the hourly rate of Five Hundred Dollars ($500) for my work in this matter. In making this request, I have assessed the rates of other attorneys like myself who have been practicing law for more than eleven (11) years and who have attained a similar level of expertise in the area of civil rights litigation in general, and police misconduct matters in particular.

18. In connection with this application, the Declarations of Zachary Margulis-Ohnuma, Esq., Irving Cohen, Esq. and Katherine Smith, Esq. are attached to the Master Declaration as Exhibits S through U respectively.

19. An hourly rate of $500 is commensurate with my past success in the area of civil rights litigation, particularly police matters.

20. Since I co-founded Cohen & Fitch, LLP in August 2008, I have taken four

(4) criminal cases to verdict,[2] ten (10) federal civil rights trials to verdict,[3] and assisted on two (2) other civil rights trials, which my partner tried to verdict.[4] Of the fourteen (14) trials I have personally tried on behalf of plaintiffs in civil rights actions and/or defendants facing criminal charges, I have been successful in all but three (3).

21.   Further, in 2012 I was admitted to the United States Court of Appeals for the Second Circuit and since that time I have assisted my partner in writing four (4) appeals - one (1) interlocutory - before the Second Circuit, with our firm achieving success on two out of three, with one currently pending.

22.   In my career, I have handled over one thousand cases involving claims of police misconduct and have obtained millions of dollars in settlements for my clients.

23.   Since forming Cohen & Fitch LLP, Mr. Fitch and myself have litigated approximately 300 federal § 1983 cases in both the Eastern and Southern Districts of New York.  I have also handled hundreds of state court civil rights claims against the City of New York.

24.   Further, while according to their 2011, 2012 and 2013 reports, the special federal litigation unit consistently brags about a 70% success rate in federal trials, this figure is not representative of their success in trials in which Cohen & Fitch LLP has been lead trial counsel. (Master Dec., Ex. AA). In those cases Cohen & Fitch LLP has won 55% of the trials taken to verdict where we acted as either lead or co-trial counsel.

---

[2] All of my criminal trials resulted in acquittals for my clients and are thus sealed. Should the court want the names of these cases I will ask my clients to sign authorizations to use their case names for purposes of this motion.
[3] Nibbs v. Goulart, 10 CV 3799 (VM)(AJP); Marshall v. The City of New York, 10 CV 02714 (JBW)(VVP); Clarke v. The City of New York, 10 CV 06330 (HBP); Perry v. The City of New York, 10 CV 04678 KAM)(VVP);  Carter v. The City of New York,11 CV 2899 (WFK)(VVP); Francois v. The City of New York, 11 CV 5874 (WFK)(VMS); Rucks v. The City of New York, 12 CV 04226 (KPF)(MHD); Perez v. Duran, 11 CV 5399 (SC); Brim v. City of New York, 13 CV 1082 (RER)(SJ)
[4] Jacquez v. Gresko, 10 CV 9314 (JSR); Rentas v. The City of New York, 10 CV 6242 (AKH).

These percentages speak to both the difficulty of the cases handled by Cohen & Fitch LLP and the particular skill and expertise that plaintiff's counsel has at trial, which illustrates the reasonableness of counsel's hourly rate.

25. In addition, of all the cases that my firm has litigated against the City, defendants have only succeeded in dispositive motion practice in *one* of those cases, which speaks volumes of the quality of attorneys at Cohen & Fitch LLP and bespeaks the reasonableness of the hourly rates submitted in this case especially in light of the City usual self reported 70% success rate in dispositive motion practice in 2012. (Master Decl., Ex. AA). Indeed, at least one thus far has become an important decision in current civil rights jurisprudence. See e.g., Marshall v. Randall, 719 F.3d 113, 116 (2d 2013) ("This case asks us to consider what the Supreme Court meant by "any § 1983 claim *based on* the witness' testimony").

26. My firm's experience in the civil rights and criminal defense field has previously been acknowledged by this Court in Stinson v. City of New York, 282 F.R.D. 360 (S.D.N.Y. 2012) (noting that the attorneys of Cohen & Fitch LLP "are competent and experienced in federal class action and federal civil rights litigation") and in Marshall v. City of New York, et al., 10cv2714 (JBW) (VVP) (E.D.N.Y. 2012) (noting that "their expertise and level of skill... [warrants] compensating them at the high end of attorneys' rates").

27. Moreover, for the last three (3) years I have been recognized as a Rising Star in Super Lawyers Magazine, an annual publication that acknowledges accomplished practitioners, in the area of Civil Rights litigation.

28. As a result of these achievements more experienced civil rights

practitioners, including Jon L. Norinsberg, Esq., Jon Depoala, Esq. and Jonathan Gleit, Esq., routinely refer civil rights cases to my firm when they cannot handle a case due to conflicts.

29. Further, in May 2010 my firm filed a class action complaint against the City of New York in the Southern District of New York, alleging, inter alia, that the NYPD has a pattern and practice of issuing summons to individuals without probable cause as a result of its unlawful quota. On April 23, 2012 the Honorable Judge Robert Sweet certified the class and found my civil rights experience to be adequate to represent the class of potentially half a million New Yorkers. See Stinson et al. v. City of New York et al., 2012 WL 1450553, 10 CV 4228 (RWS) (April 23, 2012). His decision to certify was upheld on reconsideration, on interlocutory appeal by the Second Circuit and again when the City's motion to decertify was denied on September 23, 2014.

30. It should also be mentioned that defense counsel in Stinson – of all the challenges they asserted in opposition to class certification under Rule 23 – never once challenged my firm's adequacy or competency in the area of civil rights litigation.

31. Moreover, in Stinson, we are class co-counsel to the law firm of Quinn Emmanuel, Urquhart and Sullivan LLP (hereinafter "Quinn"), one of the largest class action law firms in the world.[5]

32. According to the New York Billing Survey, the lowest average billing rate for the partners of Quinn, is eight hundred fifteen ($810), three hundred ten ($310) more per hour than the partners of Cohen & Fitch LLP, which is abundant evidence of the reasonableness of my firm's hourly rates.

---

[5] Quinn joined the case only after we successfully had the case certified.

33. In addition, in November 2014 my firm filed another action on behalf of a class comprising of approximately ten thousand New Yorkers against the City of New York in the Southern District of New York, alleging, inter alia, that the NYPD has a pattern and practice of falsely arresting and prosecuting individuals for the possession of legal folding knives under Penal Law Section 265.01(1) and 265.00(5). Plaintiffs' motion for certification in <u>Clay, et al. v. City of New York, et al.</u>, 14 CV 9171 (RMB)(KNF) is currently pending before the Honorable Richard M. Berman.

34. Further, I note that nearly three (3) years ago, on January 24, 2013, my billing rates in the Eastern District, which is significantly less than that of the Southern District Community, were approved at a rate of $325 dollars per hour in <u>Marshall v. Randall</u>, 10 CV 2714. In that decision, Judge Pohorelsky even recognized that "Counsel's reputations are not in dispute," which rendered the additional evidence of their quality "unnecessary to the court's recommendations." <u>Id</u>.

35. Since that time I have tried nearly ten (10) additional federal cases and my firm has appeared three (3) more Second Circuit appearances. After factoring this additional experience, adjusting for inflation and the Southern District rates, I believe $500 per hour is more than reasonable rate in this matter and are well in line with the prevailing market rates in the community according to the National Law Journal's Billing Survey for 2013 and 2014. (Master Decl., Ex. Z).

36. In matters involving claims of civil rights, I always work on a contingency basis. None of my clients are ever asked to pay a cent of the litigation costs associated with my firm's civil rights cases.

37. My firm bears all of the costs for litigating our civil rights cases and absorbs

the advanced costs in all cases where there is no recovery. For example, from 2011 through 2015, while we were successful in six out of the eleven trials that went to verdict, our firm absorbed over thirty thousand dollars ($30,000.00) in expenses in the five cases that resulted in defense verdicts. See Nibbs v. Goulart, 10 CV 3799 (VM)(AJP); Jacquez v. Gresko, 10 CV 9314 (JSR); Jackson v. City of New York 12 CV 1968 (WFK)(JO, Carter v. City of New York, 11 CV 2899 (WFK)(VVP); Francois v. City of New York,11 CV 5874 (WFK)(VMS).

38. Because of the high level of financial risk involved in civil rights litigation, my firm depends on the availability of the full lodestar recovery in all the civil rights cases in which we do prevail.

39. I am compensated based on the portion of any judgment or settlement obtained, or through attorney fee petitions. The instant matter is no different. I will be compensated on the basis of the instant fee petition.

40. Further, the reasonableness of Cohen & Fitch LLP's hourly rate is exemplified by the December 31, 2013, National Law Journal's most recent annual survey of law firm hourly billing rates.[6] (Master Decl., Ex. Z). The *lowest* average partner rate among New York firms reporting that figure is $640 per hour, and highest average partner rates among New York firms reported in the survey range between $815 and $1800 per hour.[7] (Id.).

---

[6] The survey does not cover all law firms, and it is well known that "'[t]hese numbers are probably an underestimate given that many of the highest-billing national law firms decline to take part in the National Law Journal Survey.'" Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 571 (2010)(Breyer concurring)(citation omitted).

[7] The survey is often used by federal courts to determine appropriate hourly rates. See, e.g., Skanga Energy & Marine Ltd. v. Arevenca S.A., 2014 WL 2624762, *5 (S.D.N.Y. 2014); Thai-Lao Lignite (Thailand) Co., Ltd. v. Government of Lao People's Democratic Republic, 2012 WL 5816878, *6 (S.D.N.Y. 2012); Integrated Marketing v. JEC Nutrition, 2007 WL 840304 at *2 (S.D.N.Y. Mar. 19, 2007); Banco Centrale v. Paraguay Humanitarian Found., 2007 WL 747814 at *2 (S.D.N.Y. Mar. 12, 2007); In re Merrill Lynch v.

41.     Moreover, as is the case with Mr. Norinsberg, Cohen & Fitch LLP are currently co-counsel with Quinn Emmanuel in <u>Stinson et al. v. City of New York</u>, 10 Civ. 4228 (RWS).  Therefore it is inconceivable that a rate of $500.00 per hour for the partners of Cohen & Fitch LLP would be considered *unreasonable* when partners at Quinn Emmanuel with as little as eight (8) years of litigation experience – three years less than both Gerald Cohen and Joshua Fitch – are permissibly being billed at $810 per hour.  (Master Decl., Ex. Z). Thus, the billing rates of the partners of Cohen & Fitch LLP are well within the range of rates charged by comparable law firms possessing particularly specialized experience in their respective fields.

42.     Under the circumstances, and as discussed in the accompanying memorandum of law, an hourly rate of $500 is reasonable for an attorney with eleven (11) years of specialized experience in criminal law and civil rights litigation in the New York Metropolitan area.  It is the rate that I charge defendants whenever a civil rights client accepts a Rule 68 Offer of Judgment or a favorable verdict is attained.

## **THE REQUESTED HOURLY RATE OF $500 IS REASONABLE**

43.     This case proved to be a colossal undertaking from the very start occupying and dominating much of my firms time – some months requiring over 100 hours of time devoted solely to this litigation.  It was far beyond any non class action litigation that my firm has ever handled.

44.     Indeed due to the magnitude of this case and the amount of time that was necessary to devote to this litigation, client communication and management, my firm – on several occasions over our three year representation – had to forego representing

---

<u>Research Securities Litig.</u>, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007).

potential clients and other matters that we would have otherwise taken had we not been so preoccupied with this particular case.

45.     Along with my partner, and co-counsel Jon Norinsberg, during the first two years of this litigation, I participated in many aspects of all phases of this case, as reflected on the contemporaneous time records attached as Exhibit B. In the early stages of this litigation, I was involved with multiple meetings with plaintiff and his father, reviewed the voluminous discovery, and navigated through many of the discovery disputes as they arose throughout the litigation. I also created and maintained a website dedicated to finding officers who could confirm plaintiff's claims of corruption throughout the NYPD. As a result, I met with scores of other whistleblower police officers in the NYPD that confirmed plaintiff's allegations. I also prepared Adrian Schoolcraft for his initial deposition and attended the same. In addition, I assisted in reviewing and revising the various motions that were made while we were the only counsel in this case. I also orally argued the opposition to defendants motion to quash the subpoena's made by plaintiff.

46.     Plaintiff terminated our relationship at the end of 2012 and hired new counsel. However, when this case finally became trial ready in early 2015, we were rehired and I assisted plaintiff's composite trial team, which included my firm, Jon Norinsberg, Nat Smith, and John Lenoir in preparing and submitting the pre-trial submissions, including the joint pre-trial order, and motions *in limine*.

47.     Thereafter, along with my co-counsels, I engaged extensive trial preparation, which included reviewing the voluminous records, recordings, and documents in this case. Specifically, I spent a significant amount of time analyzing the

depositions, preparing and organizing trial binders and other materials for trial, and drafting detailed outlines for the examinations of more than 10 (ten) witnesses (including plaintiff) I was expected to question at trial. I also worked diligently with co-trial counsels to formulate a coherent theory of the case and reviewed their draft witness examinations to make sure we were all consistent.

48. My contemporaneous time records, attached to the Master Declaration as Exhibit K, reflect my time from June 18, 2010, through September 16, 2015, the date of Rule 68 offer.

49. As indicated in the contemporaneous time records, the work I performed included the following, for which plaintiff seeks to recover his costs and reasonable attorneys' fees:

- Researched the facts and circumstances of the case;

- Drafted and edited the Federal Complaint;

- Designed and launched www.schoolcraftjustice.com to elicit help from other police officers who could confirm plaintiff's whistleblower allegations;

- Coordinated and managed the information initially disseminated and gathered from news and media outlets regarding plaintiff's incident, the lawsuit and the initial progress of the litigation, including obtaining information an evidence from those same media outlets;

- Met with scores of former and current NYPD officers who provided valuable information, and offered to be witnesses at trial;

- Met with and spoke to Assistant U.S. Attorneys for the Eastern District on several occasions regarding their investigation into plaintiff's claims and corruption/misconduct within the NYPD;

- Met with and spoke to Assistant District Attorneys at the Queens County office regarding their investigation into plaintiff's claims of what occurred on October 31, 2009;

- Assisted in making motions to add claims to amend Complaint;

- Met with plaintiff and his father several times over the course of litigation;

- Listened to audio recordings of role calls and meetings attended by Adrian Schoolcraft;

- Reviewed the NYPD records, including the IAB files, QAD files, and IAB recordings;

- Helped draft, review and organize the information provided to defendants in plaintiff's initial disclosures;

- Assisted in drafting, reviewing and editing initial discovery demands, request to admit and interrogatories;

- Assisted in responding to demands and interrogatories on behalf of plaintiff provided to defendants;

- Helped negotiate finalize and approve the confidentiality stipulation governing the initial exchange of information and discovery in this case;

- Reviewed Adrian Schoolcraft's medical records, including from the NYPD Medical Division, Psychiatric Services, Jamaica Hospital Medical Center, Forrest Hills, and Dr. Roy Lubbit;

- Assisted in litigating numerous discovery disputes;

- Attended numerous court appearances to argue motions and to attend pre-trial conferences;

- Travelled upstate on several occasions for full day meetings with plaintiff, and father, Larry Schoolcraft;

- Prepared Adrian Schoolcraft for initial deposition and attended the same;

- Assisted in preparing and submitting the pre-trial submissions, including the joint pre-trial order, and motions *in limine*;

- Reviewed the numerous depositions, including exhibits, taken by Nat Smith and his colleagues in preparation for trial;

- Reviewed the Summary Judgment motions filed by all parties and

    the Court's decision on same;

- Analyzed the full discovery record, prepared and organized trial binders and other materials for trial;

- Drafted detailed outlines for the cross examinations of nine (9) NYPD witnesses;

- Drafted a detailed direct examination outline for plaintiff and diligently worked with plaintiff and co-counsel to update and revise the outline;

- Engaged in numerous phone calls with Adrian Schoolcraft regarding this case and ultimately in prepping for trial;

- Prepared for trial with plaintiff's team of attorneys, divided tasks, and coordinated presentations with theory of the case;

50. Based upon the attached contemporaneous time records, I have incurred $403,350.00 in attorney's fees on plaintiff's behalf for the work I performed as of the date of the verdict, which represents 806.70 hours at an hourly rate of $500.00. (Master Decl., Ex. K).

51. Additionally, pursuant to 42 U.S.C. § 1988, plaintiff seeks an award of reasonable out-of-pocket costs expended in connection with this matter. (Id.). Such costs are of the type routinely billed by attorneys to fee-paying clients, and were actual and necessary costs incurred to prosecute this case. As a prevailing party, plaintiff is entitled to recover such expenses. The total out-of-pocket expenses are $ 3,800.00 (Id.).

### Conclusion

52. Defendants waited to the eve of trial before they finally made an offer that would compensate plaintiff for his losses. Accordingly, I along with the entirety of plaintiff's team logged the hours necessary to represent our client successfully and provide the credible threat of trial.

53. In sum, all of the time I expended was reasonable and necessary to properly represent plaintiff. On his behalf, I submit that he should be awarded costs and attorneys' fees totaling $407,150.00.

Dated: New York, New York
       December 16, 2014

                                                              _____S/_____
                                                                Gerald M. Cohen