# EXHIBIT "E"

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

ADRIAN SCHOOLCRAFT,

Plaintiff,

-against-

THE CITY OF NEW YORK, DEPUTY CHIEF MICHAEL MARINO, Tax Id. 873220, Individually and in his Official Capacity, ASSISTANT CHIEF PATROL BOROUGH BROOKLYN NORTH GERALD NELSON, Tax Id. 912370, Individually and in his Official Capacity, DEPUTY INSPECTOR STEVEN MAURIELLO, Tax Id. 895117, Individually and in his Official Capacity, CAPTAIN THEODORE LAUTERBORN, Tax Id. 897840, Individually and in his Official Capacity, LIEUTENANT WILLIAM GOUGH, Tax Id. 919124, Individually and in his Official Capacity, SGT. FREDERICK SAWYER, Shield No. 2576, Individually and in his Official Capacity, SERGEANT KURT DUNCAN, Shield No. 2483, Individually and in his Official Capacity, LIEUTENANT CHRISTOPHER BROSCHART, Tax Id. 915354, Individually and in his Official Capacity, LIEUTENANT TIMOTHY CAUGHEY, Tax Id. 885374, Individually and in his Official Capacity, SERGEANT SHANTEL JAMES, Shield No. 3004, Individually and in her Official Capacity, , CAPTAIN TIMOTHY TRAINER, Tax Id. 899922, Individually and in his Official Capacity, and P.O.'s "JOHN DOE" #1-50, Individually and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown), (collectively referred to as "NYPD defendants"), FDNY LIEUTENANT ELISE HANLON, individually and in her official capacity as a lieutenant with the New York City Fire Department, JAMAICA HOSPITAL MEDICAL CENTER, DR. ISAK ISAKOV, Individually and in his Official Capacity, DR. LILIAN ALDANA-BERNIER, Individually and in her Official Capacity and JAMAICA HOSPITAL MEDICAL CENTER EMPLOYEE'S "JOHN DOE" # 1-50, Individually and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown),

Defendants.

-------------------------------------------------------------------------X

**DECLARATION OF JOHN LENOIR IN SUPPORT OF ATTORNEYS FEES, EXPENSES AND COSTS**

10 CV 6005 (RWS)

STATE OF NEW YORK         )
                          ) ss.:
COUNTY OF NEW YORK        )

JOHN D. LENOIR, ESQ., declares under penalty of perjury under the laws of the United States of America as follows:

I.   Introduction

1.   In February 2013, Plaintiff Adrian Schoolcraft engaged me and Nathaniel Smith along with Peter J. Gleason to represent him in the prosecution of this matter. The three attorneys worked as a team with Mr. Gleason providing important investigative services as well as negotiating with Plaintiff and his father during a difficult period in forming a litigation team. Since April 2013, Mr. Smith and I have worked together exclusively as a team combining our experience and expertise in federal civil rights litigation and police misconduct investigations. Under our retainer agreement with Plaintiff, we agreed to work on the Plaintiff's behalf and to advance costs and expenses of the litigation and in exchange the Plaintiff agreed that we would be entitled to a the greater of a one-third contingency fee or the fees awarded to the Plaintiff as a prevailing party. The agreement also provided that in the event that the Plaintiff retained new counsel, we would share an attorney's fee with our fee being calculated at an hourly rate of $575 per hour.

2.   In February 2013, the initial work on the case was to work closely with Nathaniel Smith and Peter Gleason to organize document and audio files and learn the case to prepare for depositions of the Plaintiff and a trial

strategy. Since April 2013, I have been working directly with Nathanial Smith on every aspect of this case which involved conducting and defending over 40 days of depositions of 37 individuals, pursuing aggressively contested discovery, litigating ancillary issues, preparing for trial, and ultimately settlement. Defendant City provided one of the individual police defendants, Deputy Inspector Mauriello, with separate counsel who added additional issues and layers of litigation through counter claims against plaintiff and separate motions for and against summary judgment. In addition to adding DI Mauriello as an additional party, City defendants injected many side issues into the case that extended an already complex litigation. City defendants, for example, attempted to try Plaintiff administratively on the same set of facts underlying this case, and refused to agree not to use their own findings to collaterally estop the federal proceeding. Plaintiff was forced to litigate this issue in order to enjoin the City's untoward and unfair trial gambit. The City's approach to discovery was contentious and added side issues such as their effort to compel production of discovery by the journalist and author, Graham Raymond.

      3. The discovery record in this action is massive, including over fifteen thousand pages of documents and hundreds of hours of audio and video recordings of meetings, IAB interviews and CompStat sessions. Mr. Smith and I sought summary judgment on behalf of plaintiff, and successfully navigated plaintiff's case through thorough and rigorous litigation by five teams of defense lawyers representing the City, Jamaica Hospital and three individual defendants. The Court has written 16 opinions during the course of this case of over 550 ECF entries; twelve of the Court's opinions were issued after Nathaniel Smith and I entered the case as counsel for Plaintiff.

      4. On October 16, 2015, the Clerk entered Judgment proving for the recovery of "reasonable attorney's fees, expenses, and costs" following

Plaintiff's acceptance of Defendants' The City of New York ("City") and Deputy Inspector Steven Mauriello's Rule 68 Offer of Judgment, (ECF Docs. 540). I submit this application in support of my application for attorneys' fees, expenses and costs which total $736,575.00; from 1,252 hours at $575.00 per hour, and 58 hours travel time at $287.50 per hour.

II.   Billing rate is reasonable

5.   I have thirty years' experience as a trial lawyer, and have specialized in police misconduct investigations and prosecution. I was admitted to practice law in New York in 1980 and appointed an Assistant District Attorney in New York County by Robert M. Morgenthau that year. I tried many complex and high profile cases while assigned to the Trial Bureau, including *People v. Maglioto,* featured as the "Red Ferrari Murder Case" in New York Magazine, December 3, 1984.

6.   In 1985, I joined the United States Department of Justice as an Assistant U.S. Attorney in the Southern District of Texas's organized Crime Drug Enforcement Task Force. As leader of one of the first financial crimes task forces, I prosecuted many complex cases, including one of the first prosecutions charging Career Criminal Enterprise. In 1991, I was named Chief of the Civil Rights Division where I reviewed all allegations of police excessive use-of-force and other civil rights complaints. I made charging decisions and led prosecution of federal civil rights indictments. In one criminal civil rights prosecution that I led, U.S. v. Contreras, the defendant Laredo TX police sergeant received over 60 years for attempted murder of a Mexican woman to cover up his earlier sexual assault. On the civil side, I served as local counsel in Department of Justice civil litigation of Voting Rights and Section 1983 cases.

7.   In 2002, I was appointed as Administrative Assistant U.S. Attorney in the Eastern District of New York where I assisted in investigations and

litigation in addition to my supervisory management responsibilities. Among other collateral assignments, I served as a designated EEO Investigator for the U.S. Department of Justice Executive Office of U.S. Attorneys and investigated civil rights complaints by or against assistant U.S. attorneys through the U.S.

8. In 2007, I left government service to become Managing Director at Kroll Government Services in New York. While at Kroll (later KeyPoint) I was appointed as part of the Federal Monitor team for the Los Angeles Police Department. In that capacity I reviewed police use of force reports for compliance with law and LAPD protocols. Separately, I was part of a three-person team that conducted independent investigations of police shootings for the City of Austin Texas. In addition, as Practice Leader for the Investigative Services Group, I investigated allegations of civil rights abuse at Federal Law Enforcement Training Centers for the Department of Homeland Security, and conducted sensitive internal investigations of civil rights complaints within the police force of the United States Mint.

9. I maintain bar licenses in New York and Texas and throughout my career have been active in promoting professionalism in the practice of law through training and bar associations. I was named to the Texas Bar College, elected President of the SDTX Chapter of the Federal Bar Association and was founding member of the EDNY Chapter of the FBA. I have held the elected position of FBA Circuit Vice President for both the Fifth and Second Circuits, and currently am a Fellow of the Federal Bar Association and a member of the Litigation and Civil Rights Law Sections of the FBA. I am also a member of the New York County Lawyers Association. A copy of my resume is annexed.

10. I returned to full time litigation in 2013 as a solo practitioner using office space at the Law Office of Nathaniel B. Smith, 111 Broadway, New York, N.Y., later 100 Wall Street (23rd Floor), New York, NY. In addition to

*Schoolcraft v. City of New York et al*, I have been retained in four other matters involving New York City police officers or firefighters pursuing federal civil rights protection from abusive practices by their employers. The retainer agreements in these cases have a default billing rate at $575 per hour, with one exception. I recently discounted my billing rate for a client, an attorney, separately represented by me (plaintiff in *Gleason v. City of New York)* due to the very limited nature of my work in that case, and a colleague relationship with the client, who is also an attorney in the State of New York. Attached are declarations of two New York City-based attorneys independently familiar with my experience as an attorney who attest that my billing rate of $575 is reasonable. (Attachments V and W)

    III.    Billed hours are compensable

    11.    For the past two and a half years I have been working extensively on the *Schoolcraft* case in a co-counsel capacity with Nathaniel Smith. With each of us as solo practitioners, Smith and I collaborated closely on all aspects of the litigation. We brought in legal assistants and specialist counsel to assist where necessary for cost and time efficiencies. Summarizing deposition transcripts, for example, was done primarily by legal assistants on temporary hire.

    12.    I documented my billable time spent on this matter in fifteen-minute increments through contemporaneous notes, which were then entered and maintained on the legal billing software known as Time Slips. I neither recorded nor billed solitary events of less than fifteen minutes, such as emails or ECF notices read and short telephone calls. The records of the 1,310 hours expended on this case are attached as Attachment L. Travel time of 58 hours is noted as eleven separate entries in which travel to meetings with the client or witnesses has been billed separately at one-half the regular billing rate. I did not record or bill expenses incident to this litigation.

13. Much of my time billed has been in preparing for and participating in depositions which spanned over 40 days to complete depositions of 37 individuals. Mr. Smith and I conducted these depositions together in most instances as it was important for each of us to keep fully abreast of the case and to collaborate on areas of fact and circumstance to cover with each witness. In addition, the depositions were highly contentious with six opposing counsel representing City defendants (typically represented by two attorneys), defendant DI Mauriello and the three medical defendants. Each at various times vigorously objected to plaintiff's deposition practice. Many of the depositions were stopped for calls to the Court to resolve disputes; several depositions were called off and rescheduled due to disputes over matters such as video recording by plaintiff's attorney instead of a professional videographer.

14. Much time was spent reviewing the extensive documentary record and audio and video recordings of this case. With the plaintiff's recordings of conversations, meetings and roll calls at the precinct, his apartment and his home in Johnstown NY, the IAB recordings of investigative interviews and the NYPD video recordings of CompStat sessions, there were over a thousand hours of recorded events to be reviewed. While much of the work of summarizing and indexing was delegated to hourly legal assistants, it was critical for counsel to hear and understand what was said and the context of the event. Nevertheless, I included in my attached billing statement only a representative portion of the many hours actually spent reviewing audio and video recordings.

15. The motion practice in this case has been extensive and substantive. The five separate defendants were represented by the City's Law Department and four well established law firms. Plaintiff was represented from February 2013 to February 2015 by two solo practitioners. Smith and I bore primary responsibility for, and worked many hours in research, drafting and editing

the work product produced and filed on behalf of plaintiff during this two-and-a-half year period. This work product included preparing a plaintiff's motion for summary judgement; opposing the counter claim by DI Mauriello; opposing each of the defendants' motions for summary judgment; and preparing a Third Amended Complaint. The litigation has confronted developing law in the area of protected speech by government employees; whether a private hospital can be deemed a state actor when working in league with police; the foundational requirements for expert testimony; and many other important and novel legal issues. The Court's Opinion on the motions for summary judgment alone (one of 16 opinions issued in this case), covered over 200 pages.

IV.  Conclusion

Plaintiff was able to secure a very favorable settlement prior to trial from all five ably and aggressively represented defendants. Plaintiff was well served through competent and diligent representation--the very purpose of the fee shifting provision of Title 42 Section 1988. Accordingly, I respectfully requested that this application for attorneys' fees be granted.

Dated:

New York, New York

December 14, 2015

*/s/ John D. Lenoir*
John D. Lenoir

# JOHN DAVID LENOIR
*john.lenoir@gmail.com* • *(212) 335 0250*

---

## EXPERIENCE

JOHN LENOIR-ATTORNEY
100 WALL STREET 23ᴿᴰ FLOOR
NEW YORK, NY 10005
*2013 – present*
Legal counsel specializing in investigations and federal constitutional rights litigation.

KEYPOINT GOVERNMENT SOLUTIONS (KROLL GOVERNMENT SERVICES, INC.)
*Managing Director, Investigagtive Services Group*
*2007 – 2014*
Responsible for contract management and special consultation projects as Practice Leader for Investigative Services Group. Designated investigator for the U. S. Mint and DHS Federal Law Enforcement Training Center; directed Social Security Administration background screening of ALJ candidates; member of Federal Monitor team for LAPD and conducted independent investigations of officer-involved shootings for City of Austin Texas.

U.S. DEPARTMENT OF JUSTICE
*Assistant United States Attorney, 1985-2007*
*United States Attorney's Office, Eastern District of New York, 2002-2007*
Responsible for management of U.S. Attorney's Office with 360 attorneys and support staff, and $36 million budget. Crisis management involved developing critical incident response capacity and IT continuity of operations. Designated EEO Investigator for Executive Office of U.S. Attorneys; and member of litigation teams responsible for preparing national security investigations for trial.

UNITED STATES MARSHALS SERVICE
*Counsel to the Director*
*2001 - 2002*
Special one-year assignment to work directly with Director of the U.S. Marshals Service in Washington, D.C. headquarters. Responsibilities included agency-wide review of information technology needs, develop the agency's IT strategic plan, and enhance information and resource sharing with intelligence and other national security agencies.

UNITED STATES ATTORNEY'S OFFICE, SOUTHERN DISTRICT OF TEXAS
*Executive Assistant U.S. Attorney and Chief, Programs Division*
*1993 - 2001*
Developed legal education programs for attorneys and support staff, as well as training and technology assistance for state and local law enforcement agencies to counter international narcotics trafficking and money laundering; reviewed joint Federal-state-local investigative initiatives in fraud detection; and secured funding for community-based programs for fraud awareness.

*Chief, Civil Rights Division*
*1991 - 1993*
Reviewed all allegations of police excessive use-of-force and other civil rights complaints, led prosecution of Federal civil rights indictments, and served as counsel in Department of Justice litigation in Voting Rights and employment discrimination cases.

John David Lenoir
August 2015

*Organized Crime Drug Enforcement Task Force*
*1985 – 1991*
Directed Operation Cross Fire, a multi-agency initiative led by IRS Criminal Investigations Division and U.S. Customs Service employing undercover and electronic surveillance measures to identify and prosecute international money laundering. Led investigations and prosecutions of securities fraud.

NEW YORK COUNTY DISTRICT ATTORNEY
*Assistant District Attorney*
*1979 - 1985*
Extensive litigation experience included jury trial and appellate practice. Responsibilities included directing homicide and credit card fraud investigations--leading the litigation team through trial.

CITY UNIVERSITY OF NEW YORK, JOHN JAY COLLEGE OF CRIMINAL JUSTICE
*Assistant Professor of Anthropology*
*1973 - 1979*
Specialized in comparative legal systems. Elected to John Jay College Executive Committee and City University of New York Faculty Senate.

NEW SCHOOL FOR SOCIAL RESEARCH, NEW YORK, N.Y.
*Research Anthropologist*
*1970 - 1973*
Conducted ethnographic field research among Paramacca Maroons in Suriname and French Guiana as part of doctoral program.

**EDUCATION**

    J.D., Rutgers University School of Law (1979)
        Newark, N.J.
    Ph.D., (Anthropology), The New School for Social Research (1973)
        New York, N.Y.
    M.A., (Anthropology), The New School for Social Research (1970)
    B.A., (Political Science), American University, Washington, D.C. (1966)

**PROFESSIONAL LICENSES & ASSOCIATIONS**

    Licensed to practice law by the State Bars of New York and Texas.
    Admitted to practice U.S. Courts of Appeal for the Second and Fifth Circuits, and U.S. District Courts, Southern and Eastern New York, and Southern Texas.
    Fellow, Federal Bar Association
    MD-110 Certified EEO Investigator
    Member of the Vilemov Group, NATO Advisory Group on Future Security.
    Board Member, the Jazz Gallery, New York, N.Y.
    U.S. Coast Guard Captain's License, Uninspected Vessels

**SECURITY CLEARANCE**

    Top Secret (OPM)