UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------------X

ADRIAN SCHOOLCRAFT,

                        Plaintiff,


                        -against-                        **10 CV 6005 (RWS)**


  THE  CITY  OF  NEW  YORK,  et al.


                        Defendants.

--------------------------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND DISBURSEMENTS

JOSHUA P. FITCH
COHEN & FITCH LLP
*Attorneys for Plaintiff*
233 Broadway, Suite 1800
New York, N.Y. 10279
(212) 374-9115
jfitch@cohenfitch.com
gcohen@cohenfitch.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT .............................................................................1

THE COURSE OF THE LITIGATION AND FACTUAL HISTORY .........................2

ARGUMENT ......................................................................................................15

I.      PLAINTIFF SHOULD RECOVER HIS FULL ATTORNEY'S FEES AND COSTS
        FOR THE WORK PERFORMED BY PLAINTIFF'S COUNSEL IN CONNECTION
        WITH THIS LITIGATION .......................................................................15

        A.  Because Plaintiff's Success Came in the Form of a Rule 68 Judgment, He Is
            Entitled to Full Costs and Attorney's Fees As a Matter of Law and As a Matter of
            Contract.............................................................................................15

        B.  The Unparalleled Level of Success Achieved by Plaintiff in this Case Warrants a
            Full Fee Award Based on the Number of Hours Expended................16

        C.  The Hourly Rates Requested Are Reasonable ......................................19

                i.   Jon Norinsberg, Esq.'s Hourly Rate .........................................20

                ii.  Cohen & Fitch LLP's Hourly Rate ............................................25

                iii. Nathaniel Smith, Esq.'s Hourly Rate.........................................31

                iv.  John Lenoir, Esq.'s Hourly Rate................................................33

        D.  All The Time Expended By All Plaintiff's Counsel Was Reasonable .................35

        E.  Plaintiff is Entitled to Recover Post Judgment Interest of the Attorney's Fees
            Award in this Case...............................................................................37

        F.  Plaintiff is Entitled to Recover Reasonable Out-of-Pocket Expenses ..................37

CONCLUSION...................................................................................................38

## <u>TABLE OF AUTHORITIES</u>

<u>Adorno v. Port Authority of New York and New Jersey</u>, 685 F. Supp. 2d 507 (S.D.N.Y. 2010) 23, 28

<u>Aiello v. Town of Brookhaven</u>, 2005 WL 1397202 (E.D.N.Y. 2005) ..........................................37

<u>Amapropr Ltd. V. Indiabulls Fina. Servs. Ltd.</u>, 2011 WL 1002439 (S.D.N.Y. 2011)..................23

<u>Arbor Hill et al. v. County of Albany et al.</u>, 522 F.3d 182 (2d Cir. 2007)................................20, 28

<u>Arnone v. CA, Inc.</u>, 2009 U.S. Dist. Lexis 17080 (S.D.N.Y. 2009)...............................................33

<u>Banco Centrale v. Paraguay Humanitarian Found.</u>, 2007 WL 747814 (S.D.N.Y. 2007)  .............24

<u>Barbour v. City of White Plains</u>, 788 F. Supp. 2d 216 (S.D.N.Y. 2011), <u>aff'd</u>, 700 F.3d 631 (2d Cir. 2012)....................................................................................................................................22, 28

<u>Bernier v. Papagianopolous</u>, 2006 WL 2819590 (S.D.N.Y. 2006) ................................................29

<u>Bey v. City of New York</u>, 2015 WL 3528227 (S.D.N.Y. 2015) ...........…………………………16

<u>Black v. Nunwood, Inc.</u>, 2015 WL 1958917 (S.D.N.Y. 2015)...............…………………………16

<u>Blanchard v. Bergerson</u>, 489 U.S. 87, 94 (1989).....................................…………………………19

<u>Blum v. Stenson</u>, 465 U.S. 886  (1984) .......................................…………………………16, 19

<u>Cefali v. Buffalo Brass Co.</u>, 748 F. Supp. 1011 (W.D.N.Y. 1990) ......…………………………17

<u>City of Burlington v. Dague</u>, 505 U.S. 557 (1992) .......................................................................19

<u>Davis v. City of New York</u>, 2011 WL 4946243 (S.D.N.Y. 2011) ........................…………….15

<u>DeCurtis v. Upward Bound Intern., Inc.</u>, 2011 WL 4549412 (S.D.N.Y. 2011) ..…………….28, 29

<u>Delta Air Lines, Inc. v. Aug.</u>, 450 U.S. 346 (1981).....................................……………….15

<u>Falchenberg v. New York State Dept. of Education</u>, 642 F. Supp. 2d 156 (S.D.N.Y. 2008) (summary judgment granted), <u>aff'd</u>, 338 Fed. Appx. 11, 2009 U.S. App. Lexis 12213 (2d Cir. 2009), <u>cert. denied</u>, 558 U.S. 1136 (2010)...............................................…………….32

<u>Foster v. Kings Park Central Sch. Dist.</u>, 174 F.R.D. 19 (E.D.N.Y. 1997).............…………….20

<u>Fox ex rel. Fox v. Barnes</u>, 2013 WL 4401802 (N.D. Ill. Aug. 15, 2013)...........…………….31, 33

<u>Gierlinger v. Gleason</u>, 160 F.3d 858 (2d Cir. 1998)....................................…………….20

Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc., 962 F.2d 268 (2d Cir. 1992)......16

Hargroves v. City of New York, 2014 WL 1270585 (E.D.N.Y. 2014) report and recommendation adopted, 2014 WL 1271039 (E.D.N.Y. 2014)...............................................………15, 36

Harrell v. Van der Plas, 2009 WL 3756327 (S.D.N.Y. 2009) .................................………15

Hensley v. Eckerhart, 461 U.S. 424 (1983) ....................... .........................................passim

Hernandez v. George, 793 F.2d 264, 268 (10th Cir. 1986) ...........................................17

In re Agent Orange Prods. Liability Litig., 818 F.2d 226 (2d Cir. 1987).....................................20

In re Merrill Lynch v. Research Securities Litig., 2007 WL 313474 (S.D.N.Y. 2007).................24

Integrated Marketing v. JEC Nutrition, 2007 WL 840304 (S.D.N.Y. 2007)................................24

Kim v. Kum Gang, Inc., 2014 WL 2514705 (S.D.N.Y. 2014) .....................................................23

K.F. v. New York City Dep't of Educ., 2011 WL 3586142 (S.D.N.Y. 2011) adhered to as amended, 2011 WL 4684361 (S.D.N.Y. 2011) ...........................................................24

Kovach v. City Univ. of New York, 2015 WL 3540798 (S.D.N.Y. 2015) ...........................31, 33

Kraebel v. New York City Dep't of Hous. Pres. & Dev., 2003 WL 139193 (S.D.N.Y. 2003) ...16

LeBlanc-Sternberg v. Fletcher, 143 F.3d 748 (2d Cir. 1998)...................………19, 20, 38

Lee v. Santiago, 2013 WL 4830951 (S.D.N.Y. 2013)....................................................36

Loesch v. City of Philadelphia, 2008 WL 2557429 (E.D. Pa. 2008)...................…………19

Luciano v. Osten Corp., 109 F.3d 111 (2d Cir. 1997) ..................................................19

LV v. New York City Dep't of Educ., 700 F. Supp. 2d 510 (S.D.N.Y. 2010)  ............................29

Marshall v. City of New York, et al., 10 CV 2714 (JBW) (VVP) (E.D.N.Y. 2012) …………21

Marshall v. Randall, 719 F.3d 113 (2d 2013)...........................................................27

Mawere v. Citco Fund Servs., (USA) Inc., 2011 WL 6779319 (S.D.N.Y. 2011) report and recommendation adopted, 2011 WL 6780909 (S.D.N.Y. 2011) ...................................................23

Meriwether v. Coughlin, 727 F. Supp. 823 (S.D.N.Y. 1989) ...................................………20

Missouri v. Jenkins, 491 U.S. 274 (1989)..........................................................…………20

Moran v. Sasso, 2009 WL 1940785 (E.D.N.Y. 2009)........................................…………...37

New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136 (2d Cir. 1983)....…......35

Nicholson v. Williams, 2004 WL 4760138 (E .D.N.Y. 2004) ......................……………37

Okonite Co. v. Grover Gwyn Trucking, 2015 WL 3485638 (W.D.N.C. 2015) .......…………18

Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546 (1986) .......……………19, 20

Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542 (2010) ...................……………19, 29

Quesada v. Thomason, 850 F.2d 537 (9th Cir. 1988) ..........................…………17

Rainola v. Bratton, 2003 WL 1907865 (S.D.N.Y. 2003) ........................………29

Rehberg v. Paulk, 132 S.Ct. 1497 (2012) ............................................…………27

Restivo v. Nassau Cty., 2015 WL 7734100 (E.D.N.Y. 2015) ........................... …………22-23

Robinson v. City of New York, 2009 WL 3109846 (S.D.N.Y. 2009) ...............…………28

Rosado v. City of New York, 2012 WL 955510 (S.D.N.Y. 2012)..............……………36

Rozell v. Ross-Holst, 576 F. Supp. 2d 527 (S.D.N.Y. 2008) ....................…………22, 28

Scott v. City of New York, 643 F.3d 56 (2d Cir. 2011) ..........................…………28

Simmons v. New York City Transit Authority, 575 F.3d 170 (2d Cir. 2009) .........……………30

Skanga Energy & Marine Ltd. v. Arevenca S.A., 2014 WL 2624762 (S.D.N.Y. 2014) ....…….24

Smith v. Nagai, 2012 WL 2421740, *recommendation adopted* Smith v. Saki Restaurant Corp., 2012 WL 2428929 (S.D.N.Y. 2012)............................................……………23

Smith v. Serv. Master Corp., 592 F. App'x 363 (6th Cir. 2014)..........................…………17

Spence v. Ellis, 2012 WL 7660124 (E.D.N.Y. 2012) report and recommendation adopted, WL 867533 (E.D.N.Y. 2013)..............................................……………15

Stinson v. City of New York, et al., 2012 WL 1450553 (S.D.N.Y. 2012) ...............…………21

Stinson v. City of New York, et al., 282 F.R.D. 360 (S.D.N.Y. 2012) ...............…………28

Thai-Lao Lignite (Thailand) Co., Ltd. v. Government of Lao People's Democratic Republic, 2012 WL 5816878 (S.D.N.Y. 2012)....................................................……………24

U.S. Football League v. National Football League, 887 F.2d 408 (2d Cir. 1989) ...…………38

Wise v. Kelly, 620 F. Supp. 2d 435 (S.D.N.Y. 2008) ..................................……………..24, 33

Zahrey v. City of New York, et al., 98 Civ. 4546 (DCP) (JCF), Report and Recommendation, dated June 8, 2010 (Docket No. 264) .................................................................. ……………23-24

Plaintiff respectfully submits this Memorandum of Law in support of his motion for an award of attorney's fees, costs and disbursements.

## PRELIMINARY STATEMENT

Plaintiffs' counsel submit this memorandum in support of their motion for fees, costs and expenses.  Jon Norinsberg, Esq. along with the law firm of Cohen & Fitch, LLP (collectively, "CFN Team"), were the original attorneys of record in this action. In this capacity, the CFN Team represented Adrian Schoolcraft for the first two-and-one-half (2.5) years of this litigation, starting from June 2010 through November 14, 2012, when plaintiff abruptly terminated their relationship. Following plaintiff's severance with the CFN Team and a brief retention of other counsel, plaintiff retained Nathaniel Smith, Esq. and John Lenoir, Esq. (collectively, "Smith Team") who represented plaintiff from February 2013 through the present. In addition, plaintiff rehired the CFN Team in January 2015 as this action was gearing up for trial, at which time, the CFN Team and the Smith Team served as lead counsel in this matter, jointly assuming the responsibility of preparing this case for trial, which ultimately resulted in a judgment against the City of New York pursuant to Rule 68 on all of plaintiff's claims.

This case presented an unparalleled litigation task unlike any the CFN Team and the Smith Team  had ever experienced. It required an exhaustive amount of work at every stage of the litigation. The full and collective resources of the attorneys for the plaintiff were essential to the proper litigation of this case, which at many times throughout the litigation required the exclusive devotion of efforts above other matters being handled by the firms. Ultimately, the unprecedented amount of work performed in connection with this litigation proved immensely successful, securing plaintiff a judgment against the City Defendants on every single claim asserted herein, which provided for substantial compensatory damages and back pay as well as additional retirement benefits that would have been impossible to obtain through a jury verdict.

1

Accordingly, for all the reasons set forth below, it is respectfully requested that Your Honor grant plaintiff's application and award full attorney's fees, costs and expenses in this case in the amounts referenced in the detailed time records submitted in connection with this motion.

## THE COURSE OF THE LITIGATION AND FACTUAL HISTORY

### The CFN Team's Representation From June 2010 through November 2012

From the outset, this litigation proved to be a monumental undertaking, dominating the practices of the CFN Team's respective firms.   See the Declaration of Jon Norinsberg ("Norinsberg Decl."), Master Declaration in Support of the Motion ("Master Decl."), Ex. A at ¶ 22; Declaration of Joshua P. Fitch ("Fitch Decl."), Master Decl., Ex. C at ¶ 29; Declaration of Gerald Cohen ("Gerald Decl."), Master Decl., Ex. D at ¶ 43.   Due to the sheer volume of evidence that plaintiff himself had gathered in support of his claims in the form of documents, audio, and video recordings as well as the additional evidence that regularly surfaced from outside sources, such as the media, professional experts in the field of police practices, and other police officers, the CFN Team was required to devote extensive time  every day, every week and every month just to stay abreast of the constantly evolving aspects of this case. (See Master Decl., Ex. A at ¶ 22; Ex. C at ¶¶ 29-30; Ex. D at ¶ 44).

In particular, the investigation into this case required the CFN Team to review hundreds of hours of recordings provided by Officer Schoolcraft, as well as thousands of documents and numerous video recordings. (See Master Decl., Ex. A at ¶ 23; Ex. C at ¶¶ 31; Ex. D at ¶ 45). This was a time-consuming, arduous task, requiring countless hours merely to familiarize ourselves with the evidence that could potentially be used to support or frustrate plaintiff's claims in this action.  (Id.).  In addition, apart from reviewing the materials provided by Officer Schoolcraft, the CFN Team expended substantial time and effort in finding additional NYPD officers to

support plaintiff's <u>Monell</u> claims against the City of New York. (<u>See</u> Master Decl., Ex. A at ¶¶ 24-26; Ex. C at ¶¶ 33-35; Ex. D at ¶ 45). Toward this end, the CFN Team set up a website on behalf of plaintiff, www.schoolcraftjustice.com, to encourage other police officers to come forward and share their experiences about quotas and retaliation. (<u>Id</u>.).

The website proved to be extremely useful, as over several hundred individuals contacted our firms and shared their knowledge, experience and insight with us.  (<u>Id</u>.). Among these individuals, were dozens of NYPD officers, who provided us with important information regarding the NYPD's quota system, its retaliation against officers who fail to comply with quotas, and its manipulation of crime statistics in order to create a false impression of the NYPD's crime-fighting efficacy.  (<u>Id</u>.). Among the many police officers who contacted us and shared valuable information were: Adhyl Polanco, Lt. Joe Ferrara, P.O. Frank Palestro, P.O. Kevin Rodriguez, P.O. Chris Whitehead, P.O. Christopher Bienz, P.O. Fioranelli, P.O.Eddie Vasquez, and P.O. Derek Miller.  (<u>Id</u>.). In addition, scores of other officers provided the CFN Team with evidence of the same departmental misconduct, provided that they could remain anonymous due to the fear of retaliation from the NYPD for their assistance in this case. (<u>Id</u>.).

Another particularly unique aspect of this case was the extensive role that media played in exposing the initial story of plaintiff's ordeal and the evidence of NYPD corruption. (<u>See</u> Master Decl., Ex. A at ¶¶ 27-28; Ex. C at ¶ 33; Ex. D at ¶ 49). As a result, the initial stages of this litigation required regular contact with reporters from numerous media outlets, including the New York Times, the Daily News, the Village Voice,  This American Life, The Chief, The Rant and NYPD Confidential and ABC News.  (<u>Id</u>.). Cultivating and utilizing these relationships was invaluable to gathering additional evidence to support plaintiff's <u>Monell</u> claims against the City of New York  and develop  additional evidence to further the litigation strategy against the

individual defendants. (Id.). These contacts also resulted in substantial media coverage for the Schoolcraft case, which required meticulous management of the information disseminated to the media in order to prevent any prejudice to plaintiff or the pending litigation.  (Id.). In the end, this aspect of the case proved vital as the substantial coverage attracted many other police officers and City officials to come forward and provide essential information, evidence and insights in furtherance of plaintiff's case against the NYPD. (Id.).

The high-profile nature of this case, also caused several prominent NYPD experts to contact the CFN Team, including John Eterno, a former captain with the NYPD, and Eli Silverman, both of whom have co-authored several books and articles relating to the NYPD, crime statistics and Compstat. (Id.). Professors Eterno and Silverman kept in frequent contact with the CFN Team as the litigation progressed and provided crucial information regarding the inner mechanics of NYPD practice and procedure as well as the rationale and motivation behind quotas and the manipulation of crime statistics. (Id.). Eventually, Professors Eterno and Silverman were retained as experts in this case, and submitted detailed reports analyzing the events of October 31, 2009, and setting forth the multiple violations of proper police procedure. (Id.).

Once the CFN Team's preliminary investigation was completed, the CFN Team drafted the Complaint. (See Master Decl., Ex. A at ¶ 29; Ex. C at ¶ 31; Ex. D at ¶ 49). The process of drafting the Complaint posed a formidable challenge, requiring the CFN Team to master a sprawling universe of facts, and research a wide variety of legal claims, many of which went beyond the scope of claims that are typically asserted under Section 1983. (Id.). For example, we conducted extensive research into Labor Law 215-a ("Anti-Quota Law"), the Mental Hygiene Law, MHL Sections 9.39, 9.40, 9.41, Substantive Due Process claims, as well as the constantly

evolving First Amendment claims relating to retaliation against public officials and issues of prior restraint jurisprudence on speech. (See Master Decl., Ex. A at ¶ 29; Ex. C at ¶ 43; Ex. D at ¶ 49). As is evidenced from the sixty-four (64) page, three hundred and seventy-eight (378) paragraph Complaint, this task was extremely complicated and time consuming and required extensive hours of research and review in order to complete. (See Master Decl., Ex. A at ¶ 29; Ex. C at ¶ 31, 43; Ex. D at ¶ 49).

Immediately after commencing this litigation, Jamaica Hospital Medical Center ("JHMC") filed a motion to dismiss all federal claims, stay discovery, and remand the malpractice claims to State Court. (See Master Decl., Ex. A at ¶ 30; Ex. C at ¶ 37; Ex. D at ¶ 49). While the City defendants did not join in this motion, the universe of facts and legal issues raised were inextricably intertwined with the factual and legal predicated of plaintiff's NYPD claims. (Id.). The substantial work performed on this motion was necessary and inseparable from plaintiff's ability to obtain discovery and succeed on the 1983 claims against the City defendants.  (Id.). Thus, the result of the vigorous litigation in opposition to this motion was the Court's ultimate partial denial of the JHMC's motion and retention of jurisdiction over these claims. (Id.).

Following the Court's decision in May 2011, and continuing until November 2012, the CFN Team engaged in extensive discovery in this action. (See Master Decl., Ex. A at ¶ 31; Ex. C at ¶ 36, 43; Ex. D at ¶ 49).  Our firms reviewed and analyzed prodigious amounts of discovery produced by the City of New York, consisting of thousands of pages of documents, and hundreds of hours of audio and video recordings produced by the defendants. (Id.). The CFN Team also subpoenaed and reviewed hundreds of records from multiple non-parties, including but not limited to, the Fulton County Department of Social Services, the Johnstown Police

Department, Councilman Al Vann, Councilman Peter Vallone, and medical providers such as Dr. Steven Luell, Dr. Hertzel Sure, and Forest Hills Hospital.  (Id.).

Apart from reviewing the discovery produced, the CFN Team also performed multiple other tasks during the pre-trial phase, including: preparing multiple sets of document demands, interrogatories and requests for admissions; responding to defendants' multiple sets of extensive discovery demands; filing several discovery motions; preparing plaintiff for and defending him at his all day deposition; interviewing large numbers of NYPD officers who contacted our firms; reviewing transcripts and discovery materials from other quota-based civil actions against the NYPD, including Robinson v. City of New York, 05-CV-9545, Floyd v. City of New York., 08-CV-01034, and Velez v. the City of New York, A-10699-04 (Arbitration between PBA and the City of New York); meeting and conferring multiple times with experts John Eterno and Eli Silverman; meeting with representatives from the Queens District Attorney's Office and the United States Attorney's Office on multiple occasions, regarding pursuing state criminal charges and federal civil rights violations against the defendants; meeting and speaking multiple times with the lead attorneys from other parallel civil-rights actions, including Darius Charney Esq. (Center of Constitutional Rights) and Christopher Dunn (New York Civil Liberties Union); traveling to upstate New York (over three hours each way) to have lengthy in-person meetings with plaintiff; and hundreds of hours of telephone conversations with plaintiff regarding the status of the case, day-by-day developments and the next steps for moving forward in the case.[1] (See Master Decl., Ex. A at ¶ 32; Ex. C at ¶ 43; Ex. D at ¶ 49).

Finally, apart from numerous discovery motions and JHMC's motion to dismiss, the CFN Team also spent numerous hours litigating substantive motions regarding: the opposition to

---

[1] In the exercise of our billing discretion, we have elected not to bill for the majority of the hundreds of hours of phone calls between the CFN Team and the client.

defendant's motion to quash the subpoena from Councilman Peter Vallone for records related to the manipulation of NYPD crime reports; two extensive motions to amend and a motion for reconsideration in order to add the First Amendment retaliation claims and prior restraint claims against the individual defendants; the motion to lift the confidentiality order made by non-party New York Times; and, the issues related to plaintiff's *alleged* breach of the protective order and the Village Voice article disclosing the QAD findings.  (Id.).

After working on the case for over two years, the CFN Team was  abruptly discharged by Mr. Schoolcraft in November 2012. (See Master Decl., Ex. A at ¶ 33; Ex. C at ¶ 38; Ex. D at ¶ 46).

**The Smith Team's Representation of Plaintiff from February 2013 To January 2015**

In February 2013, the Smith Team took over representation in this case.[2] See the Declaration of Nathaniel Smith ("Smith Decl."), Master Decl., Ex. B at ¶ 20-21; Declaration of John Lenoir ("Lenoir Decl."), Master Decl., Ex. E at ¶ 1-2.  Immediately upon retention, the Smith Team began the difficult task of completing the paper discovery stage of this case and then conducting the deposition stage, the expert discovery stage and the summary judgment stage of this case. (Id.).

As this Court knows quite well, the discovery stage of this case was exceedingly contentious, and the defendants, particularly the City Defendants, aggressively litigated literally dozens of discovery issues.  (See Master Decl., Ex. B at ¶ 23; Ex. E at ¶ 3). Indeed, Your Honor noted near the end of fact discovery period of this case that  "discovery disputes have *plagued* this highly controversial action, perhaps understandably." (Decision, dated August 29, 2014, at p. 1; Dkt. # 268)(emphasis added). Apart from the seemingly endless discovery disputes, there

---

[2] For approximately five months following plaintiff's discharge of the CFN Team, Peter Gleason and Levine & Gilbert appeared as attorney's of records in the case. (See Master Decl., Ex. B at ¶¶ 20-21; Ex. E at ¶ 1).

were at least eight (8) other significant issues in the action that required substantial motion practice. (See Master Decl., Ex. B at ¶ 24; Ex. E at ¶ 3); see also Docket Nos. #151 (motion to quash a third-party subpoena); #157 (stay of a proposed NYPD administrative trial against the plaintiff); #160 (gag order on contact with the press); #199 (motion to amend answer to assert counterclaims); #228 (reconsideration on motion to amend answer); #247 (motion to compel a reporter from the Village Voice to produce document); # 252 (motion to strike scandalous pleading); # 267 (reconsideration motion).

In addition to the matters that were heavily litigated before Your Honor, there was also a mountain of paper discovery that required extensive and time-consuming review, in order competently prosecute this case. (See Master Decl., Ex. B at ¶ 25; Ex. E at ¶ 3). The Smith Team had to analyze and digest hundreds of hours of audio and video recordings as well as approximately 15,000 pages of documents.  (Id.). In addition, the Smith Team spent hundreds of hours performing various other tasks from February 2013 through December 2014 such as: conducting site visits and inspections at the 81st Precinct and Jamaica Hospital; preparing supporting or opposition papers in connection with numerous discovery disputes and the eight above-noted substantive motions; numerous meetings with medical, psychiatric and police practices experts;; preparing regular status reports to the plaintiff on the course of the proceedings; preparing for and conducting formal settlement discussions with the parties and Magistrate Judge Freeman; analyzing the legal implications of the City Defendants' first Offer of Judgment tendered in 2014; preparing objections to the City Defendants' first Offer of Judgment and preparing a motion to amend the complaint to re-assert a Section 1983 claim against Jamaica Hospital. (Id.).

The depositions in this case were numerous and extremely time consuming.  (See Master Decl., Ex. B at ¶ 25; Ex. E at ¶¶ 2, 13-14). Specifically, the Smith Team prepared for and defended the remainder of plaintiff's deposition (two additional days), and the depositions of the plaintiff's four designated experts (Drs. Lubit and Halpren-Ruder and Professors Eterno and Silverman). In addition, the Smith Team undertook the monumental task of deposing thirty-two (32) individuals that spanned the course of forty (40) days. (Id.). Not only was the sheer volume of these depositions immensely time consuming in their own respect, but the work necessitated in order to prepare for them required a full-time effort by the Smith Team. (Id.).

Finally, the preparation, review, and labor committed to preparing the plaintiff's motion for summary judgment against the defendants as well as opposing motions for summary judgment was unprecedented.  (See Master Decl., Ex. B at ¶¶ 24-25; Ex. E at ¶ 15). This task involved harnessing  the immense universe of discovery in this case and preparing plaintiff's motion for summary judgment and preparing oppositions to five (5) separate motions  for summary judgment. (Id.). The plaintiff's opening brief in support of his motion for summary judgment was 50 pages long, the memorandum of law in opposition to the defendants' summary judgment motions was 135 pages long, and the plaintiff's reply memorandum was 40 pages long. (Id.).   The Consolidated Rule 56.1 Statements of Fact on Plaintiff's Summary Judgment Motion (Dkt. # 413) was 157 pages long and contained 221 separately numbers assertions and counter-assertions of fact.      (Id.). The Consolidated Rule 56.1 Response Statement on Defendants' Summary Judgment Motions was 99 pages long and contained 438 separately numbered assertions and counter-assertions of fact.    (Id.). Indeed, the labor performed in connection with dispositive motion practice in this case was amply demonstrated by the length of the Decision necessary to resolve the motions – two hundred and six (206) pages. (Id.). In

short, the amount of hours expended by the Smith Team during this period of the litigation –

against five teams of defense lawyers representing the individual defendants – was simply

unmatched by any litigation the Smith Team had handled previously.

**The CFN Team's Re-Retention in January 2015 and Work with the Smith Team in Preparation of Trial**

As the trial date neared, plaintiff rehired the CFN Team to once again resume

representation in this case and act as lead trial counsel with the Smith Team.  (See Master Decl.,

Ex. A at ¶ 33; Ex. B at ¶ 20; Ex. C at ¶ 39; Ex. D at ¶ 26). The plaintiff brought back the CFN

Team in order to gear up for an April 19th trial that was expected to last between four and six

weeks.  (Id.). Per the agreement reached with plaintiff, the CFN Team would work with the

Smith Team, but would take over as lead trial counsel. (See Master Decl., Ex. A at ¶ 33; Ex. C at

¶ 39; Ex. D at ¶ 46). The process of preparing for this trial was a massive undertaking, requiring

an extraordinary amount of time, energy and commitment from all members of both the CFN

Team and Smith Team. (See Master Decl., Ex. A at ¶¶ 34-39; Ex. B at ¶ 25; Ex. C at ¶¶ 40-43;

Ex. D at ¶¶ 47-49; Ex. E at ¶ 2).

Among the many pressing tasks, the CFN Team had to prepare extensive cross-

examination outlines for over *twenty witnesses*, including Chief Marino, Captain Lauterborn, DI

Mauriello, Lt. Caughey, Sgt. Weiss,  Captain Trainor, Sgt. James, Lt. Gough, , Sgt. Duncan, Sgt.

Sawyer, Lt. Broschart, Sgt. Huffman, Detective Yeager, PAA Carter and PAA Boston, to name

just a few.  (See Master Decl., Ex. A at ¶¶ 34-39; Ex. C at ¶¶ 40-43; Ex. D at ¶¶ 47-49). The

deposition transcripts for many of these witnesses were several hundred pages long (DI

Mauriello's transcript alone exceeded 800 pages) and often there were a large number of exhibits

that were utilized during questioning and which would potentially provide fodder for cross-

examination. (Id.). It is difficult to describe how formidable the challenge was to prepare these outlines, which for many witnesses wound up being several hundred pages long.[3] (Id.).

Apart from preparing cross-examination outlines, the CFN Team also had to prepare a highly detailed and comprehensive opening statement. (Id.). This required a mastery of an expansive universe of facts and claims, as there were actually five sets of facts and claims that were intertwined into a single lawsuit. (Id.). First, there were the facts relating to the claim for unlawful retaliation, as plaintiff's supervisors retaliated against him when he chose to appeal his 2008 low evaluation. (Id.). Second, there was a whistleblower claim, which arose when plaintiff learned of corruption at the 81st Precinct by his supervisors and faced severe consequences from his supervisors after he reported this corruption to Internal Affairs and the Quality Assurance Division. (Id.). Third, there were the detailed events which took place on October 31, 2009, when ten high-level NYPD supervisors unlawfully entered into plaintiff's apartment, declared him to be an emotionally disturbed person ("EDP") and then took him against his will to Jamaica Hospital. (Id.). Fourth, there was a lengthy involuntary confinement at Jamaica Hospital, initiated by the NYPD but then continued by the medical staff at Jamaica Hospital for six days. (Id.). Fifth, there were the NYPD's repeated attempts at harassment and intimidation of Officer Schoolcraft at his home in upstate New York, implicating potential First Amendment violations as well as common law intentional tort claims. (Id.).

Combining these claims into a single coherent and compelling narrative was an exceptionally difficult challenge, requiring the highest level of skill, experience and hard work. The end result was an opening statement outline, and global case summary, that exceeded two-hundred and fifty pages. (Id.). Further, this work does not include the exponential amount of

---

[3] If required, the CFN Team has retained bound copies of these cross-examination outlines for the Court's *in camera* inspection, so that the Court can readily verify our representations regarding the breadth and scope of these outlines.

collaboration between the CFN Team and Smith Team to simply organize trial strategy, witness order, evidence presentation and anticipate defenses and strategies to combat defendants' trial presentation. (See Master Decl., Ex. A at ¶¶ 34-39; Ex. B at ¶ 25; Ex. C at ¶¶ 40-43; Ex. D at ¶¶ 47-49; Ex. E at ¶ 2). While this work is reflected in the detailed contemporaneous time records of all counsel in this case, the extent of this aspect of trial preparation is as indescribable as it was indispensable to properly ready this case for trial. (Id.); see also Timesheet for Jon Norinsberg ("JN Time"), Master Decl., Ex. H; Timesheet for Nathaniel Smith ("NS Time"), Master Decl., Ex. I; Timesheet for Joshua Fitch ("JF Time"), Master Decl., Ex. J; Timesheet for Gerald Cohen ("GC Time"), Master Decl., Ex. K; Timesheet for John Lenoir ("JL Time"), Master Decl., Ex. L.

Notwithstanding the herculean task of drafting over twenty cross-examination outlines and preparing a comprehensive case summary and opening statement, the CFN Team also had to undertake the task of preparing Officer Schoolcraft for trial. (See Master Decl., Ex. A at ¶ 37; Ex. C at ¶ 43; Ex. D at ¶ 49). Given the vast array of potential impeachment material – including multiple recorded interviews of Officer Schoolcraft with Internal Affairs and QAD, and his testimony at three prior depositions – this was a massive undertaking, requiring an intensive review of all prior testimony, as well as a review of thousands of documents furnished during discovery. (Id.).

Apart from the preparation related to the trial presentation itself, the CFN Team also drafted a voluminous motion *in limine*, spanning close to fifty pages in length, seeking to preclude various prejudicial evidence that defendants would have likely introduced at trial in the absence of such a motion. (See Master Decl., Ex. A at ¶ 38; Ex. C at ¶¶ 40, 43; Ex. D at ¶ 49). Due to the sheer volume of potentially damaging material, potential for traps and risk of

inconsistent positions at trial, narrowing the issues to be litigated in the motion *in limine* – and limiting the motion to fifty pages – was a task unto its own.  However, the extensive work spent on this motion proved to be largely successful, as the Court ruled in plaintiff's favor on most issues and reserved decision on a few other issues until the time of trial. (Id.).

The Smith Team also worked intensively to prepare for trial in this action when it was initially scheduled for April 19, 2015 and for when it was re-scheduled for October 19, 2015. (See Master Decl., Ex. B at ¶ 20-25; Ex. E at ¶ 2).  As set forth in their detailed time records, the Smith Team worked diligently on numerous tasks during the final pre-trial and trial preparation stages of the action. (Id.).

For example, the Smith Team prepared for direct or cross-examination of fourteen (14) fact and expert witnesses. (Id.). Given the extensive discovery record in this case, preparing for the direct or cross examination of live witnesses was a major undertaking, requiring a detailed review of all documents pertaining to each witness, a through review of their deposition testimony and other prior statements, and the preparation of a through examination of each witness. (Id.).

The Smith Team also prepared witness focus or summary sheets on all the major witnesses identified as likely to testify at trial.  (Id.). These witness focus sheets identified the major points for anticipated direct or cross of each witness as well as record citations for the location of relevant documents or deposition testimony. (Id.). Given the huge number of potential witnesses identified in the Joint Pre-Trial Order, it was important to assemble and analyze the key information for these witnesses for the purpose of preparing for trial that threatened to last six weeks.  The City Defendants listed 41 potential witnesses in the Joint Pre-

Trial Order; Defendant Mauriello listed 91 witnesses; and the Medical Defendants listed 25 witnesses. (See Defendants' Proposed Joint Pre-Trial Order, Dkt. # 477).

The Smith Team also engaged in other trial preparation work during the periods directly preceding the scheduled trial.  (See Master Decl., Ex. B at ¶ 20-25; Ex. E at ¶ 2). For example, the Smith Team prepared the motion to strike the Declaration of NYPD Psychologist Lamstein; prepared and opposed motions for reconsideration of the Court's summary judgment decision; prepared opposition to City Defendants' bifurcation motion; prepared the plaintiff's portions of the proposed Joint Pre-Trial Order; prepared or reviewed all the trial exhibits identified by the parties (which included plaintiff's 250 trial exhibits; the City Defendants' 121 trial exhibits, Defendant Mauriello's 240 trial exhibits and the Medical Defendants' 5 trial exhibits); drafted supporting and opposing letter-motions in connection with disputes over the preparation of the Joint Pre-Trial Order; prepared evidentiary objections to the defendants' trial exhibits, where appropriate; conducted legal research on the admissibility of countless items of evidence being offered by the defendants; prepared the plaintiff's proposed jury instructions and verdict sheet; prepared; and engaged in numerous discussions and meetings with CFN Team in order to prepare for trial. (Id.).

In sum, this litigation proved to be a monumental undertaking, dominating the respective practices of all counsel working on the Plaintiff's behalf. (See Master Decl., Ex. A at ¶ 22; Ex. B at ¶ 14; Ex. C at ¶ 30; Ex. D at ¶ 44; Ex. E at ¶ 2-3, 13-15). As demonstrated by the accompanying time records, it required the devotion of innumerable hours every day, every week and every month solely to this case. (Id.). The level of intensive work that was required was far beyond any other civil matter that the CFN Team or the Smith Team (hereinafter "Plaintiff's Counsel") had ever handled the prosecution of this case, which mandated the

14

substantial amount of time, energy and resources reflected in the timesheets submitted in support

of this motion. (<u>Id</u>.).

## ARGUMENT

**I.  PLAINTIFF SHOULD RECOVER HIS FULL ATTORNEYS' FEES AND COSTS FOR THE WORK PERFORMED BY PLAINTIFF'S COUNSEL IN CONNECTION WITH THIS LITIGATION**

### A.  Because Plaintiff's Success Came in the Form of a Rule 68 Judgment, He Is Entitled to Full Costs and Attorney's Fees As a Matter of Law and As a Matter of Contract

Just as it is well settled that a prevailing party is *entitled* to attorney's fee and costs under

1988, is equally well settled that"[a] Rule 68 offer of judgment is a proposal of settlement that,

by definition, stipulates that the plaintiff shall be treated as the *prevailing party*." <u>Delta Air</u>

<u>Lines, Inc. v. Aug.</u>, 450 U.S. 346, 363 (1981)(Powell, concurring)(emphasis added).   Indeed,

"[t]he Second Circuit has held that plaintiffs who accept Rule 68 offers of judgment qualify as

'prevailing parties' *entitled* to attorneys' fees and costs." <u>Davis v. City of New York</u>, 2011 WL

4946243, at *2 (S.D.N.Y. 2011) (citation omitted)(emphasis added); <u>Spence v. Ellis</u>, 2012 WL

7660124, at *2 (E.D.N.Y. 2012) <u>report and recommendation adopted</u>, WL 867533 (E.D.N.Y.

2013) ("a plaintiff who accepts a Rule 68 offer of judgment qualifies as a prevailing party

entitled to attorney's fees and costs."); <u>Harrell v. Van der Plas</u>, 2009 WL 3756327, at *1

(S.D.N.Y. 2009)("There is no dispute here that plaintiff is a prevailing party under the statute. A

party that accepts a Rule 68 offer of judgment is a prevailing party."); <u>Hargroves v. City of New</u>

<u>York</u>, 2014 WL 1270585, at *25 (E.D.N.Y. 2014) <u>report and recommendation adopted</u>, 2014

WL 1271039 (E.D.N.Y. 2014) ("a plaintiff who sought monetary damages and accepts a Rule 68

offer for more than a nominal recovery is a prevailing party.").

In the present case, on September 29, 2015, plaintiff served and filed notice of his acceptance of defendant City of New York's offer of judgment for all federal and state law claims arising out of the facts and circumstances that are the subject of this action. (See Rule 68 Judgment, Dkt. # 541 at 4).  As such, there is no doubt that "[t]he offer of judgment in this case establishes that Ms. [Schoolcraft] is the prevailing party," which entitles him to an award of full fees and costs.  Black v. Nunwood, Inc., 2015 WL 1958917, at *2 (S.D.N.Y. 2015); Kraebel v. New York City Dep't of Hous. Pres. & Dev., 2003 WL 139193, at *1 (S.D.N.Y. 2003) ("[a]s counsel for defendants recognize, a plaintiff who accepts a Rule 68 offer is a 'prevailing party' within the context of taxation of costs.").

Notwithstanding, the well established law governing the entitlement to fees for a Rule 68 judgment the plain language of the Rule 68 "contract"[4] in this case also mandates an award of fees in this case. Indeed, even the specific language of the Rule 68 in this case acknowledges that by accepting the offer of judgment, "plaintiff shall be entitled to reasonable attorneys' fees, expenses, and costs." (See Rule 68 Judgment, Dkt. # 541 at 4). Accordingly, the conclusion regarding plaintiff's *entitlement* to full attorneys fees in this case is inescapable.

### B. The Unparalleled Level of Success Achieved by Plaintiff in this Case Warrants a Full Fee Award Based on the Number of Hours Expended

It is firmly established that "where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley v. Eckerhart, 461 U.S. 424, 435 (1983); Blum v. Stenson, 465 U.S. 886, 901 (1984) ("we reiterate what was said in *Hensley:* 'where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.'"); Bey v. City of New York, 2015 WL 3528227, at *3 (S.D.N.Y. 2015)("the Supreme Court has also

---

[4] See Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc., 962 F.2d 268, 272 (2d Cir. 1992)("Offers of judgment pursuant to Fed.R.Civ.P. 68 are construed according to ordinary contract principles.").

cautioned that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee").  However, while "the extent of plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees," the *degree* of success is *only* "particularly crucial where a plaintiff...succeeded on only *some* of his claims for relief." Hensley, 461 U.S. at 434, 440.  Thus, Hensley and its progeny establish that the *degree* of success is *only* a relevant consideration "[i]f this is the case" – namely, if plaintiff only prevailed on a *portion* of the claims asserted.  Cefali v. Buffalo Brass Co., 748 F. Supp. 1011, 1018 (W.D.N.Y. 1990); See also e.g., Hensley, 461 U.S. at 434-436; Smith v. Serv. Master Corp., 592 F. App'x 363, 370 (6th Cir. 2014) ("[where] a plaintiff obtains *'limited success*, the district court should award only that amount of fees that is reasonable in relation to the success obtained.'"); Quesada v. Thomason, 850 F.2d 537, 539 (9th Cir. 1988) ("*Rather*, the relief obtained justifies a lower fee *if* plaintiffs *fail* to obtain relief on *all* claims, *and* if hours spent on unsuccessful claims were not needed to pursue successful claims."); Hernandez v. George, 793 F.2d 264, 268 (10th Cir. 1986) ("*If* a plaintiff does not prevail on *all* claims, [then] the district court must determine whether the fee award should be reduced to reflect less than total success.").

Conversely, the *degree* of plaintiff's success is less significant – if not altogether irrelevant – in this case because plaintiff succeeded on *all* of his claims through the Rule 68 offer.  In particular, City defendants' offer of judgment specifically stated that it was in "full satisfaction of *all* federal and state law claims or rights that plaintiff may have to damages, or any other form of relief arising out of the alleged acts or omissions of City Defendants." (See Rule 68 Judgment, Dkt. # 541 at 4). Thus, because the language of the offer explicitly mandated judgment on *each and every* one of plaintiff's claims against the City defendants, the analysis of plaintiff's *degree* of success is wholly unnecessary to the determination of plaintiff's fees.  See

e.g., <u>Okonite Co. v. Grover Gwyn Trucking</u>, 2015 WL 3485638, at *1 (W.D.N.C. 2015)("The court finds that no hours need be subtracted as plaintiff was fully successful on *all* of its claims..."). Consequently, because plaintiff was fully successful he is entitled to a full attorney fees award in this case.

Notwithstanding that the *degree* of success is irrelevant due to the fact plaintiff prevailed on *all* of his federal and state claims through the judgment, the *degree* of success was well beyond any that could have been obtained through litigation of this case to verdict. Specifically, through the offer of judgment plaintiff obtained a substantial six figure compensatory award in the amount of $600,000.00. (<u>See</u> Rule 68 Judgment, Dkt. # 541 at 3). In addition, plaintiff also obtained an award of back pay to be calculated from October 31, 2009 through December 31, 2015 – the entire period of plaintiff's suspension throughout this litigation – based on the same rate of pay that plaintiff had received in 2009. (<u>Id</u>.). Moreover, *and most importantly*, plaintiff is being allowed to *retire* – without any consequences from his subsequent suspension or charges and specs, which entitles him to the same pension benefits, as an officer retiring after fourteen (14) years of service would receive, as well as full health insurance for the rest of his life starting in 2022, a result that would have been *impossible* to obtain from a jury at trial.  (<u>Id</u>.). Therefore, not only is the Rule 68 judgment a complete vindication of plaintiff's rights, but the monetary value of the cash payment, the back pay, pension,[5] health insurance and compensatory award is over $2.0 million dollars. (<u>Id</u>.). Simply stated, through the offer of judgment, plaintiff obtained more success than he could have ever dreamed of if the case had gone to trial. Accordingly, even assuming arguendo that the degree of success was a relevant consideration in determining the

---

[5] Under normal circumstances plaintiff could never have received, or been eligible to receive, his pension unless he separately adjudicated his suspension and charges and specs in the NYPD trial room, obtained a favorable disposition *and* been resorted to active full duty.

reasonableness of the lodestar fee award, the unparalleled success achieved by plaintiff in this case warrants a full compensatory attorney's fee award.

### C.  The Hourly Rates Requested Are Reasonable

Since the plaintiff in this case achieved unprecedented success and obtained results that far exceed any possible award that he could have received at trial, there is absolutely no basis to *reduce* the fees in this case.  Loesch v. City of Philadelphia, 2008 WL 2557429, at *7 (E.D. Pa. 2008) ("Accordingly, as we *cannot* find that Plaintiff's attorneys expended a measurable amount of time in pursuit of *unsuccessful* claims, we decline Defendant's request to reduce the lodestar. Plaintiff's attorneys will be awarded the full lodestar amount.") (emphasis added). Therefore, the only method for determining the fee award in this case "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,"  otherwise known as the lodestar method.  Hensley, 461 U.S. at 437; Luciano v. Osten Corp., 109 F.3d 111 (2d Cir. 1997).  Indeed, "'[t]he "lodestar" figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.'"  Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551  (2010) (quoting City of Burlington v. Dague, 505 U.S. 557, 562 (1992)).

In determining the reasonable hourly rate, "the lodestar looks to 'the prevailing market rates in the relevant community.'"  Perdue 103 S. Ct. at 1672 (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)).  A reasonable fee is set at the "prevailing market rate in the relevant community," as one "that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case."  Perdue, 130 S. Ct. at 1672 (citing Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 565 (1986)); Blanchard v. Bergerson, 489 U.S. 87, 94 (1989); LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 764 (2d Cir. 1998).  Further, the relevant community for a fee determination is the judicial district in which

the trial court sits – here, the Southern District of New York. See Arbor Hill, 522 F.3d 182 (2d Cir. 2007); In re Agent Orange Prods. Liability Litig., 818 F.2d 226, 232 (2d Cir. 1987). A "reasonable hourly rate" has also been described as "one that grants the successful civil rights plaintiff a *fully* compensatory fee." Foster v. Kings Park Central Sch. Dist., 174 F.R.D. 19, 26-27 (E.D.N.Y. 1997) (quoting Missouri v. Jenkins, 491 U.S. 274, 286 (1989)). Moreover, the reasonableness of the fee is determined with "reference to traditional billing practices and 'a fee that would have been deemed reasonable if billed to *affluent* plaintiffs by their own attorneys.'" Meriwether v. Coughlin, 727 F. Supp. 823, 827 (S.D.N.Y. 1989)(citations omitted)(alteration added)(emphasis added).

In addition, as the Supreme Court and Second Circuit have recognized, this fees should be calculated at the rates charged by the attorney *at the time the judgment is entered*, and not lower fees that *might* have been applicable at the inception of the litigation. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 716 (1987) ("In setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value."); Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) ("[I]n order to provide adequate compensation where the services were performed many years before the award is made, the rates used to calculate the lodestar should be the current rather than historic hourly rates."); LeBlanc–Sternberg v. Fletcher, 143 F.3d 748, 764 (2d Cir.1998) ("[C]urrent rates 'should be applied in order to compensate for the delay in payment'")(citations omitted).

### i. **Jon Norinsberg, Esq.'s Hourly Rate**

Mr. Norinsberg's requested hourly rate is $600.00 per hour. (See Master Decl., Ex. A at ¶ 44). Mr Norinsberg has successfully litigated over 200 hundred civil rights matters in the federal

courts in the Eastern and Southern Districts. (Id. at ¶ 9). In fact, Your Honor has previously recognized Mr. Norinsberg's experience in civil rights litigation. See Stinson v. City of New York, et al., 2012 WL 1450553, 10 CV 4228 (RWS) (S.D.N.Y. April 23, 2012) (noting that "Jon L. Norinsberg is a civil rights attorney with nearly twenty years of civil litigation experience, including civil rights litigation against state and local governments," and Mr. Norinsberg is "competent and experienced in federal class action and federal civil rights litigation."). (Id. at ¶ 9). Similarly, in Marshall v. City of New York, et al., 10CV2714 (JBW) (VVP) (E.D.N.Y. 2012), Magistrate Judge Pohorelsky noted that "Mr. Norinsberg has been practicing for over twenty years and has an extensive background in litigating complex civil rights and constitutional law cases." (Id.).

Apart from his extensive experience in civil rights litigation, Mr. Norinsberg has substantial trial experience, having tried over 150 cases in his career, including trademark cases, products liability cases, medical malpractice cases, and personal injury cases (both as plaintiff's counsel and defense counsel). (Id. at ¶ 10). In the past three years, Mr. Norinsberg has tried ten federal civil rights actions to verdict (prevailing on seven), and has also tried three state law cases during this same time period. (Id.).

For example, Mr. Norinsberg obtained a $7,700,000.00 verdict in Morse v. Fusto, et.al., 07 CV 04793 (CBA) (Feb. 12, 2013 E.D.N.Y), a $2,474,000.00 verdict in Guzman v. Jay, 10 CV 6353 (ALC) (Dec. 17, 2013 S.D.N.Y.), a $500,000.00 verdict in V.A., a minor, et.al., v. Sgt. Michael Marcucilli, 09 CV 2391 (CM) (July 30, 2012 S.D.N.Y.), a $400,000.00 verdict in Zomber v. Village of Garden City, et al., 09 CV 4637(LDW) (ETB) (Oct. 17, 2011 E.D.N.Y.), and a $190,000.00 verdict in Marshall v. Randall, 10 CV 2714 (JWB) (VVP) (April 26, 2012 E.D.N.Y.). (Id. at ¶ 11). In the year 2013 alone, Mr. Norinsberg obtained

two verdicts that made the New York Law Journal's list of top of verdicts in the entire State of New York. In fact, both the <u>Guzman</u> and <u>Morse</u> verdicts made the *top five* list of all government verdicts for the state of New York for the year of 2013. (<u>Id</u>. at ¶ 12).

Mr. Norinsberg has also taught trial advocacy at the New York City Law Department, and in fact, co-authored the City of New York's trial training manual, "The Trial Notebook," which is still in use over seventeen years later. (<u>Id</u>. at ¶ 4). Mr. Norinsberg has also successfully argued appeals before the Second Circuit Court of Appeals, having won appeals in <u>Morse v. Fusto</u>, 804 F.3d 538 (2d Cir. 2015), <u>O'Hara v. City of New York, et.al.,</u> 570 Fed. Appx. 21 (2d. Cir. 2014), <u>Bertgulia v. City of New York</u>, 509 Fed Appx. 43 (2d Cir. 2013), and <u>Marshall v. Randall,</u> 719 F.3d 113 (2d Cir. 2013). (<u>Id</u>. at ¶ 15).

Given Mr. Norinsberg's vast experience in civil litigation and his outstanding track record as a civil rights litigator as discussed in depth in Mr. Norinsberg's Declaration (Master Decl., Ex. A) it is respectfully submitted that Mr. Norinsberg's hourly billing rate should be $600.00 per hour for the work that he performed in this case. His billing rate is well within the range of hourly fees which have been upheld in the Southern District for experienced civil rights litigators. <u>See</u> <u>Barbour v. City of White Plains</u>, 788 F. Supp. 2d 216, 225 (S.D.N.Y. 2011), <u>aff'd</u>, 700 F.3d 631 (2d Cir. 2012) (awarding an hourly rate of $625) ("[Plaintiff's attorney] cites his extensive experience as a civil rights litigator...including litigating approximately 150 civil rights cases...In view of [his] extensive experience and the evidence presented that his claimed rate is within a standard range charged by other attorneys in this District with similar levels of experience and skill... [his] rate of $625 is reasonable.); <u>Rozell v. Ross-Holst</u>, 576 F. Supp. 2d 527 (S.D.N.Y. 2008)($600.00 an hour was reasonable for a highly experienced attorney on a "relatively straightforward...single plaintiff" case.).   <u>Restivo v. Nassau Cty.</u>, No. 06-CV-

6720(JS)(SIL), 2015 WL 7734100, at *3 (E.D.N.Y. Nov. 30, 2015) ("Although the $700 an hour rate requested for Messrs. Scheck and Neufeld is high, the Court find that it is a reasonable rate in light of the complexity of the issues involved in this dispute; the forty years of experience litigating civil rights that both attorneys brought to the case; and the market for legal services in the Southern District of New York, which supports a $700 per hour rate for senior partners."); Mawere v. Citco Fund Servs., (USA) Inc., 2011 WL 6779319, at *5 (S.D.N.Y. 2011) report and recommendation adopted, 2011 WL 6780909 (S.D.N.Y. 2011) (awarding $650.00 an hour to an attorney with 32 years of experience in employment discrimination case);  Kim v. Kum Gang, Inc., 2014 WL 2514705, at *2 (S.D.N.Y. 2014) (awarding an "experienced" litigator $600 per hour in a wage and hour case).

Indeed, even several older cases in the Southern District further support a billing rate of $600.00 per hour for an experienced civil rights litigator in  2015.  See, e.g., Adorno v. Port Authority of New York and New Jersey, 685 F. Supp. 2d 507 (S.D.N.Y. 2010)("A rate of $550.00 is also consistent with rates awarded in this district for experienced civil rights lawyers."); Smith v. Nagai, 2012 WL 2421740, recommendation adopted, Smith v. Saki Restaurant Corp., 2012 WL 2428929 (S.D.N.Y. 2012)(founding partner of a small firm "with more than twenty years of experience handling complex litigation" should be compensated at the rate of $550.00 per hour, finding that such a rate is "comparable to rates regularly approved in the Southern District of New York and ...therefore reasonable."); Amapropr Ltd. V. Indiabulls Fina. Servs. Ltd., 2011 WL 1002439, at *5 (S.D.N.Y. 2011) (approving an hourly rate of $761.00 for a senior partner in a case about compelling arbitration). See also Zahrey v. City of New York, et al., 98 Civ. 4546 (DCP) (JCF), Report and Recommendation, dated June 8, 2010

(Docket No. 264) (awarding experienced criminal defense attorney, who had litigated 20 civil rights claims in his career, a billing rate of $575.00 per hour in 2010).[6]

Further, almost one (1) year ago, Mr. Norinsberg was awarded an hourly rate of $550.00 in the Southern District by the Honorable Lorna G. Schofield for work performed in a routine civil rights case, Bernabe v. City of New York, 13 Civ. 5531 (LGS). (See Master Decl., Ex. A at ¶ 45); see also Decision and Order in Bernabe v. City of New York ("Bernabe Decision"), Master Decl., Ex. EE.  This amply supports an increase of $50.00 per hours over a year later. See e.g., Wise v. Kelly, 620 F. Supp. 2d 435, 447 (S.D.N.Y. 2008)("accepting the obvious proposition that billing rates continue to increase over time"); K.F. v. New York City Dep't of Educ., No. 10 CIV. 5465 PKC, 2011 WL 3586142, at *2 (S.D.N.Y. Aug. 10, 2011) adhered to as amended, No. 10 CIV. 5465 PKC, 2011 WL 4684361 (S.D.N.Y. Oct. 5, 2011)("the Court has remained mindful of the likely increase in rates during the passage of time since the reported decision and the present."). Thus, given the unusual complexity of the issues involved in this case, and the high level of knowledge, skill and experience that was required to prepare this case for trial, it is respectfully submitted that a billing rate of $600.00 per hour is warranted for Mr. Norinsberg, who has almost twenty five (25) years of experience in civil litigation.

Lastly, a review of the average billing rates for partners in New York law firms lends further support for the requested rates for Plaintiff's Counsel.[7] See 2013-2014 National Law Journal Billing Survey ("Billing Survey"), Master Decl., Ex Z. In the 2013 National Law Journal Billing Survey, at 16 of the 25 firms listed senior partners in New York firms were charging over

---

[6] After the Report and Recommendation was issued, the parties subsequently settled the action. Therefore, there is no subsequent decision by the District Court regarding this Report and Recommendation.

[7] The survey is often used by federal courts to determine appropriate hourly rates.  See, e.g., Skanga Energy & Marine Ltd. v. Arevenca S.A., 2014 WL 2624762, *5 (S.D.N.Y. 2014); Thai-Lao Lignite (Thailand) Co., Ltd. v. Government of Lao People's Democratic Republic, 2012 WL 5816878, *6 (S.D.N.Y. 2012); Integrated Marketing v. JEC Nutrition, 2007 WL 840304 at *2 (S.D.N.Y. Mar. 19, 2007); Banco Centrale v. Paraguay Humanitarian Found., 2007 WL 747814 at *2 (S.D.N.Y. Mar. 12, 2007); In re Merrill Lynch v. Research Securities Litig., 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007).

$1000 an hour. (See Master Decl., Ex. A at ¶ 49; Ex. Z). The above chart is particularly significant since it shows the billing rates of three law firms that the CFN Team has either worked for, or with, in handling other civil litigation matters. For example, Mr. Norinsberg previously worked for Proskaur Rose ("Proskauer") as a litigation associate for two years. (See Master Decl., Ex. A at ¶ 51). In 2014, the *lowest* billing rate for a junior partner at Proskauer is $725.00 per hour, and at Paul Weiss is $760.00 per hour. (See Master Decl., Ex. A at ¶ 49; Ex. Z). Thus, the requested hourly billing rate for Mr. Norinsberg ($600.00 per hour) is *significantly below* the amounts charged by his former law firm for attorneys who have much less litigation experience than Mr. Norinsberg. Moreover, both Mr. Norinsberg and Cohen and Fitch, LLP, are currently co-counsel with Quinn Emanuel Urquhart & Sullivan ("Quinn Emmanuel") in a class action currently pending before Your Honor, Stinson et al. v. City of New York, 10 Civ. 4228 (RWS). (See Master Decl., Ex. A at ¶ 50). As the above chart demonstrates, the *lowest* partner billing rate for a junior partner at Quinn Emmanuel -- i.e. for a partner with as little as eight (8) years of litigation experience – is $810.00 per hour. (See Master Decl., Ex. A at ¶¶ 49-50; Ex. Z). It follows, *a fortiori*, that the requested hourly rates for Plaintiffs' Counsel -- all of whom have significantly *more* than eight (8) years of litigation experience – is eminently reasonable and clearly warranted under the circumstances.[8]

### ii.  Cohen & Fitch LLP's  Hourly Rate

Both Mr. Fitch and Mr. Cohen's requested hourly rate is $500 per hour.  (See Master Decl., Ex. C at ¶ 6; Ex. D at ¶ 17). As partners of Cohen & Fitch LLP, Gerald M. Cohen and Joshua P. Fitch's requested hourly rate of $500 is  in line with attorneys of their skill and

---

[8] Exhibits O, P and Q to the Master Declaration are the Declarations of Jonathan Abady, Esq., Christopher Galiardo, Esq., and Afsaan Saleem, Esq., all of whom are seasoned civil rights litigators with many years of experience and excellent professional reputations, in which they attest that $600.00 per hour is well within the bounds of hourly rates in the Southern District for a lawyer with Mr. Norinsberg's knowledge and experience.

specialized experience.[9] (See Master Decl., Ex. C at ¶¶ 10-33; Ex. D at ¶¶ 20-41). Both partners have an extensive background in litigating complex civil rights and constitutional law cases. As their declarations make clear, they have been practicing for over eleven (11) years and have specific expertise in criminal prosecutions, criminal defense, criminal procedure, police procedure, and correspondingly, civil rights claims of false arrest and police misconduct. (Id.). Further, they have extensive trial experience with almost fifty (50) trials to verdict between them[10] – far eclipsing most Federal Civil Rights attorneys throughout New York City.  (See Master Decl., Ex. C at ¶ 20; Ex. D at ¶ 20).

Since forming Cohen & Fitch LLP in 2008, Mr. Cohen and Mr. Fitch have litigated approximately 300 federal § 1983 cases in the Eastern District of New York and Southern Districts of New York.[11] (See Master Decl., Ex. C at ¶ 21; Ex. D at ¶ 23). In that same time they have obtained millions of dollars in settlements for their clients and have had repeated success in motion practice and at trial against City defendants. (See Master Decl., Ex. C at ¶¶ 22-25; Ex. D at ¶¶ 22-24). In fact, while the City continues to boast a 70-80% winning rate in federal trials,[12] this figure is not representative of their success in trials in which Cohen & Fitch LLP has been lead trial counsel. (See Master Decl., Ex. C at ¶ 22; Ex. D at ¶ 24). In those cases Cohen & Fitch LLP has won 55% (6 out of 11) of the trials taken to verdict against the Special Federal Litigation Unit. (Id.). These percentages speak to both the difficulty of the cases handled by

---

[9] Exhibits S, T, and U to the Master Declaration are the declarations of Esq., Zachary Margulis-Ohnuma, Esq., Irving Cohen, Esq and Katherine Smith, Esq. all of whom are notable civil rights litigators with many years of experience and outstanding reputations, in which they attest that $500 per hour is well within the bounds of hourly rates charged by lawyers of Cohen & Fitch LLP's experience and ability.

[10] Gerald M. Cohen has conducted eighteen (18) trials and Joshua P. Fitch has conducted thirty-three (33) trials to verdict. (See Master Decl., Ex. C at ¶ 20; Ex. D at ¶ 20).

[11] Cohen & Fitch LLP has also successfully litigated hundreds of state court civil rights claims against the City of New York. (See Master Decl., Ex. C at ¶ 21; Ex. D at ¶ 23).

[12] According to their 2013-2014 reports, the special federal litigation unit consistently brags about their high win percentage during federal trials to a degree of 70-80%. See The New York City Law Department Year in Review Reports for 2012-2014 ("Law Dept. Reports"), Master Decl., Ex. AA.

Cohen & Fitch LLP and the particular skill and expertise that the CFN Team has at trial, which illustrates the reasonableness of counsel's hourly rate. Further, of the three hundred (300) cases that Cohen & Fitch has litigated in Federal Court against the City, defendants have only succeeded in having their cases dismissed through dispositive motion practice *one* time – a 99% percent success rate.[13]   (See Master Decl., Ex. C at ¶ 23; Ex. D at ¶ 25). This again speaks volumes of the quality of attorneys at Cohen & Fitch LLP and bespeaks the reasonableness of the hourly rates submitted in this case especially in light of the City usual self reported 70% success rate in dispositive motion practice in 2012. (See Law Dept. Reports, Master Decl., Ex. AA).

Apart from their extensive trial and litigation experience in federal District Court, Cohen & Fitch LLP has successfully litigated several other matters before the Second Circuit, experience which would have undoubtedly become invaluable in this case, if it had not been resolved immediately prior to trial.[14]   (See Master Decl., Ex. C at ¶ 24; Ex. D at ¶ 21). Specifically, the firm successfully defended a plaintiff's verdict which raised an issue of first impression under the Supreme Court's decision in Rehberg v. Paulk, 132 S.Ct. 1497 (2012), successfully defended certification of a civil rights class action and successfully defended a plaintiff's verdict on appeal.  (Id.); see also Marshall v. Randall, 719 F.3d 113 (2d 2013).  Thus since the skills brought to bear by the attorney's at Cohen & Fitch LLP go well beyond those of the "average" civil rights attorneys in the Southern District, their proposed billing rate of $500.00 is certainly reasonable.

---

[13] The only summary judgment defeat came in Thomas v. City of New York, No. 11 CIV. 2219 LAP GWG, 2013 WL 1325186, at *1 (S.D.N.Y. Apr. 2, 2013) aff'd, 562 F. App'x 58 (2d Cir. 2014). (See Master Decl., Ex. C at ¶ 24; Ex. D at ¶ 25).

[14] See Thomas v. City of New York, 562 Fed. Appx. 58 (2d 2014); Rentas v. City of New York, 14-2475 (decision pending), Rentas v. Ciity of New York, 14-2512 (decision pending); Stinson v. City of New York, 12-3069 (2nd Cir. Dec. 12, 2012)(Order denying leave to appeal).

Moreover, Your Honor recognized Cohen & Fitch LLP's "competen[ce] and experience [] in federal class action and federal civil rights litigation" in <u>Stinson v. City of New York, et al.</u>, 282 F.R.D. 360, 371 (S.D.N.Y. 2012), <u>reconsideration denied</u>, July 13, 2012, <u>interlocutory appeal denied</u>, December 12, 2012, <u>motion for decertification denied</u>, September 22, 2014. (<u>See</u> Master Decl., Ex. C at ¶ 26; Ex. D at ¶ 26).   Additionally, in that matter the city defendants, while mounting a challenge to every single other Rule 23 requirement against certification, never once made a challenge regarding Cohen & Fitch LLP's adequacy as class counsel. (<u>See</u> Master Decl., Ex. C at ¶¶ 26, 28-29; Ex. D at ¶¶ 26, 29-30).

Given Cohen & Fitch LLP's special expertise which was specifically brought to bear in this case "a reasonable, paying client wish[ing] to spend the minimum necessary to litigate the case effectively," (<u>Arbor Hill</u>, 522 F.3d at 190) would seek competent counsel in the marketplace, there would be especially good reason for them to seek out the law firm of Cohen & Fitch LLP. As such, there is unquestionably precedent for awarding fees in line with those sought by the partners of Cohen & Fitch LLP given their extensive experience and expertise in federal civil rights litigation. <u>See</u>, <u>e.g.</u>, <u>Scott v. City of New York</u>, 643 F.3d 56, 59 (2d Cir. 2011) (holding $550 per hour rate in FLSA case to be reasonable); <u>Barbour v. City of White Plains</u>, 788 F.Supp.2d 216, 225 (S.D.N.Y.2011) (awarding rate of $625 to experienced civil rights litigator); <u>Rozell v. Ross-Holst</u>, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008)(awarding $600 per hour partner in employment discrimination case); <u>Robinson v. City of New York</u>, 2009 WL 3109846, *5 (S.D.N.Y. 2009) (approving 500 per hour for a partner in 2009 in an employment litigation case); <u>DeCurtis v. Upward Bound Intern., Inc</u>., 2011 WL 4549412 (S.D.N.Y. 2011) (approving $550 for a partner in labor and employment litigation); <u>Adorno v. Port Authority of New York and New Jersey</u>, 685 F.Supp.2d 507, 513–14 (S.D.N.Y.2010) (awarding lead partner

$550 per hour in civil rights litigation); <u>LV v. New York City Dep't of Educ.</u>, 700 F. Supp. 2d 510, 519 (S.D.N.Y. 2010)(finding $600 per hour a reasonable rate for experienced litigators).

Indeed, *even as early as 2003*, rates for partners with comparable experience were deemed reasonable at *$400.00 per hour*, which illustrates the appropriateness of Cohen & Fitch LLP's billing rates *more than ten years later*.  See <u>e.g.</u> <u>Bernier v. Papagianopolous</u>, 2006 WL 2819590, at *1–2 (S.D.N.Y. 2006) (awarding $400 per hour in 2006 in attorneys' fees to lead lawyer in § 1983 action); <u>Rainola v. Bratton</u>, 2003 WL 1907865, at *6 (S.D.N.Y. 2003) (finding rate of $400 per hour in 2003 reasonable for solo and small firm practitioners); <u>DeCurtis v. Upward Bound Int'l, Inc.</u>, 2011 WL 4549412, *3 (S.D.N.Y.2011) (citation omitted)(alteration added) ("'[i]n the Southern District [] [] rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600...with average awards *increasing* over time.'").

The reasonableness of Cohen & Fitch LLP's hourly rate is exemplified by the December 31, 2013, National Law Journal's most recent annual survey of law firm hourly billing rates.[15] (<u>See</u> Master Decl., Ex. Z). The *lowest* average partner rate among New York firms reporting that figure is $640 per hour, and highest average partner rates among New York firms reported in the survey range between $815 and $1800 per hour.  (<u>Id</u>.). Even the lowest average *associate* billing rate is $390.00 per hour, which is all the more reason why the $500.00 per hour billing rate for Cohen & Fitch LLP is infinitely reasonable given the significantly larger body of experience possessed by the partners of Cohen & Fitch LLP. (<u>Id</u>.). Moreover, as is the case with Mr. Norinsberg, Cohen & Fitch LLP are currently co-counsel with Quinn Emmanuel in <u>Stinson et al. v. City of New York</u>, 10 Civ. 4228 (RWS). (<u>See</u> Master Decl., Ex. C at ¶ 31; Ex. D at ¶ 32). Therefore, it is inconceivable that a rate of $500.00 per hour for the partners of Cohen &

---

[15] The survey does not cover all law firms, and it is well known that "'[t]hese numbers are probably an underestimate given that many of the highest-billing national law firms decline to take part in the National Law Journal Survey.'" <u>Perdue v. Kenny A. ex rel. Winn</u>, 559 U.S. 542, 571 (2010)(Breyer concurring)(citation omitted).

LLP would be considered *unreasonable* when partners at Quinn Emmanuel with as little as eight (8) years of litigation experience – three years less than both Gerald Cohen and Joshua Fitch – are permissibly being billed at $810 per hour.  (See Master Decl., Ex. Z). Thus, the billing rates of the partners of Cohen & Fitch LLP are well within the range of rates charged by comparable law firms possessing particularly specialized experience in their respective fields.

Finally, while this is Cohen & Fitch LLP' s first application for a *judicial* award of attorney's fees in the *Southern District*, in 2012[16] – *over three years ago*– both Mr. Fitch and Mr. Cohen were approved at a rate of $325.00 per hour in the *Eastern District*.  (See Master Decl., Ex. C at ¶ 33; Ex. D at ¶ 34); see also Report & Recomm., Marshall v. Randall, et ano., 10 CV 2714 (JBW) (VVP) (E.D.N.Y. Jan. 24, 2013) (Dkt. No. 103); Order, 10 CV 2714 (JBW)(VVP) (E.D.N.Y. April 9, 2013).  However, unlike the Eastern District, "the hourly rates in the Southern District where [Cohen & Fitch LLP is] based...'are *higher* than the hourly rates charged in the Eastern District.'"  Simmons v. New York City Transit Authority, 575 F.3d 170, 173 (2d Cir. 2009)(emphasis added). Further, since the time of that application, Mr. Fitch and Mr. Cohen have tried nine (9) additional federal cases, winning four (4), losing three (3), one (1) resulting in a hung jury (which eventually settled) and one settling at the close of plaintiff's evidence.[17]  (See Master Decl., Ex. C at ¶ 34; Ex. D at ¶ 35).  Accordingly, in light of the extensive additional civil rights experience that Cohen & Fitch LLP has gained since they were approved at $325 per hour in the *Eastern* District *three years ago,* and the fact that billing rates are "*presumed* [to] increase with the passage of time," their present rate of $500 per hour is

---

[16] While Cohen & Fitch LLP has succeeded in four separate trials in the Southern District, the issue of their fees has always been settled prior to litigation.
[17] See Perry v. The City of New York, 10 CV 04678 KAM)(VVP);  Carter v. The City of New York,11 CV 2899 (WFK)(VVP); Francois v. The City of New York, 11 CV 5874 (WFK)(VMS); Rucks v. The City of New York, 12 CV 04226 (KPF)(MHD); Perez v. Duran, 11 CV 5399 (SC); Brim v. City of New York, 13 CV 1082 (RER)(SJ); Rentas v. The City of New York, 10 CV 6242 (AKH); Samtani v. Cherukuri, 11 CV 2159 (RER); Jackson v. City of New York, 12 CV 1968 (WFK).

amply reasonable and appropriate for the *Southern* District at the *present* time. <u>Kovach v. City Univ. of New York</u>, No. 13 CIV. 7198 LGS, 2015 WL 3540798, at *5 (S.D.N.Y. June 4, 2015); <u>see</u> <u>also</u> <u>Fox ex rel. Fox v. Barnes</u>, No. 09 C 5453, 2013 WL 4401802, at *3 (N.D. Ill. Aug. 15, 2013) ("Indeed, hourly fees often increase over time, both because of inflation and because of the increasing skill and reputation of the attorney, suggesting that *rates higher than those awarded three years ago are appropriate*.")(emphasis added).

### iii.    Nathaniel Smith, Esq.'s Hourly Rate

Nathaniel Smith, Esq. has been practicing law for the past twenty seven (27) years – over twenty (20) in his own practice. (<u>See</u> Master Decl., Ex. B at ¶ 3). As Mr. Smith's Declaration makes clear, his rate of $575 per hour is more than commensurate with his level of expertise and experience.[18]

Over the past 27 years in private practice Mr. Smith has acted as a trial counsel in numerous actions in state and federal court on a wide variety of cases, including antitrust, investment banking, commercial landlord-tenant disputes, brokerage disputes, telecommunications fraud and breach of fiduciary duty. (<u>See</u> Master Decl., Ex. B at ¶ 7). He has also appeared in numerous actions in state and federal courts representing plaintiffs in civil rights and employment discrimination actions. (<u>Id</u>.). During the course of his experience, he has extensive trial experience, including the following six civil rights actions that went to trial in this

---

[18] As set forth in the Smith Declaration, plaintiff also respectfully submits that the hourly rates for Mr. Suckle and Mr. McCutcheon, the other attorneys who worked as part of the Smith Team, Ms. Bauza, a law school graduate who worked with Mr. Smith, and paralegals Lysia Smejika, Jeanette Lenoir, and Jeremy Smith are also reasonable. Thus, Mr. Suckle should be paid at the rate of $575 per hour, Mr. McCutcheon at the rate of $250 per hour, Ms. Bauza (a law graduate) at the rate of $150 per hour and my paralegals at $125 per hour. (<u>See</u> Master Decl., Ex. B at ¶¶ 27-31); <u>see</u> <u>also</u> Declaration of Howard Suckle ("Suckle Decl."), Master Decl., Ex. F; Timesheet for Howard Suckle ("Suckle Time"), Master Decl., Ex. M; Declaration of Magdalena Bauza ("Bauza Time"), Master Decl., Ex. G; Timesheet for Magdalena Bauza ("Bauza Time"), Master Decl., Ex. N.

Courthouse: [19] Kregler v. Garcia, 08-cv-6893 (VM) (First Amendment retaliation case); Bell v. Construction Laborers, 04-cv-6520 (RJH)(a race/retaliation case); Arnone v. CA, Inc., 08-cv-4458 (SAS) (an ERISA benefits case); Skinner v. City of New York, 03-cv-8038 (AKH)(First Amendment retaliation case); Rosenblatt v. Bivona & Cohen, 95-cv-4825 (SAS)(a race/association case); McDonald v. Empire Blue Cross and Blue Shield, 89-cv-7784 (JES)(an age discrimination case). (See Master Decl., Ex. B at ¶ 7).

In four of these six trials, Mr. Smith's client prevailed by verdict or by settlement just before verdict.  (Id.). Further, as Your Honor may recall Mr. Smith was lead counsel before this Court in a prior action involving the claim by a New York City public school teacher who unsuccessfully sought the right under the ADA to use a spell checker as an accommodation for her dyslexia for a standardized employment test required by the City and the State of New York. (Id. at ¶ 8); see also Falchenberg v. New York State Dept. of Education, 04-cv-7598, 642 F. Supp. 2d 156 (S.D.N.Y. 2008) (summary judgment granted), aff'd, 338 Fed. Appx. 11, 2009 U.S. App. Lexis 12213 (2d Cir. 2009), cert. denied, 558 U.S. 1136 (2010). Based on Mr. Smith's extensive experience as a litigator and the comparable rates of other civil rights and employment attorneys who practice in Manhattan, $575 an hour is a reasonable hourly rate for an attorney with twenty seven (27) years of experience.[20]

---

[19] Apart from the cases that went to trial, Mr. Smith has handled the following civil rights matters: Parks v. Lebhar-Friedman, 04-cv-7133 (DCP)(S.D.N.Y. Oct 2, 2008)(age case); Carras v. MGS 718 Lex, Inc., 2008 U. S. App. Lexis 25731 (2d Cir. 2008) (age discrimination); Falchenberg v. New York State Dept. of Education, 04-cv-7598 (RWS) (S.D.N.Y. July 7, 2008)(disability case); Guilbert v. Gardner, 480 F. 3d 140 (2nd Cir. 2008)(pension case); Attenborough v. Construction & General Labors, 03-cv-4399 (RJH) (S.D.N.Y. Sept. 5, 2006)(union discrimination); Graves v. Finch Pruyn, 457 F. 3d 181 (2d Cir. 2006)(disability discrimination); In re 1996 JBL Trust, 30 A.D.3d 1131 (1st Dept. 2006)(trust litigation); Nogura v. Hasty, 99-cv-8786 (KMW)(AP), 2001 W.L. 243535 (S.D.N.Y. Mar. 12, 2001)(Section 1983 prisoner's rights case); Wilson v. Fairchild, 143 F. 3d 733 (2d Cir. 1998)(race discrimination); Lau v. Mezei, 10-cv-4838 (KMW) (securities fraud); Technology in Partnership v. Rudin, 10-cv-8076 (RPP) (partnership dispute); Cohen v. Citibank, 954 F. Supp. 621 (S.D.N.Y. 1996)(securities fraud). (See Master Decl., Ex. B at ¶ 8).
[20] Attached to the Master Declaration as Exhibit R, is the Declaration of Michael Spiegel, an experienced civil rights attorney practicing in Manhattan, who is familiar with Mr. Smith's work as an attorney and attests to the fact that $575 is a reasonable hourly rate for a civil rights attorney with Mr. Smith's level of experience. Similar declarations,

By way of contrast, a *New York Law Journal* survey of hourly rates charges by the large firms in Manhattan shows that partners in large law firms in New York command rates in the range of $800 to $1,000 per hour.  (See Master Decl., Ex. Z). Further, the partners at Paul Weiss – Mr. Smith's former firm – are billing as much as $760 per hour, making the rates requested herein infinitely reasonable. (Id.).

Indeed, six years ago Mr. Smith filed a fee application after trial in an ERISA case on behalf of an employee denied severance benefits by his employer; Judge Scheindlin agreed that his then-rate of $425 per hour was a reasonable hourly rate based on his experience, his hourly default rate, and the rate typically then charged in this District for employment and labor lawyers. (See Master Decl., Ex. B at ¶ 12); see also Arnone v. CA, Inc., 2009 U.S. Dist. Lexis 17080 at *10 (S.D.N.Y. Mar. 6, 2009).   Given the passage of time and the accumulation of an additional six years of experience in this District, it is respectfully submitted that $575 is a reasonable hourly rate as of the time of this fee application. See e.g., Wise; Fox ex rel. Fox; Kovach, supra.

### iv.    John Lenoir, Esq.'s Hourly Rate

Mr. Lenoir's requested hourly rate is $575, which is reasonable for an attorney with his skill and experience. (See Master Decl., Ex. E at ¶ 1). Mr. Lenoir has thirty (30) years experience as a trial lawyer and specialized experience in police misconduct investigations and prosecutions. (Id. at ¶¶ 5-7). Mr. Lenoir began his career as an Assistant District Attorney in New York County where he tried many complex and high profile cases while assigned to the Trial Bureau, including People v. Maglioto, featured as the "Red Ferrari Murder Case" in New York Magazine, December 3, 1984. (Id. at ¶ 5). Thereafter, he joined the United States

---

attached as Exhibits X and Y, respectively, of the Master Declaration, are also being filed by Howard Suckle, an attorney who assisted Mr. Smith's in this case in support of this fee application.

Department of Justice as an Assistant U.S. Attorney in the Southern District of Texas's organized Crime Drug Enforcement Task Force. (Id. at ¶ 6). As leader of one of the first financial crimes task forces, Mr. Lenoir prosecuted many complex cases, including one of the first prosecutions charging Career Criminal Enterprise. (Id.). In 1991, he was promoted to Chief of the Civil Rights Division focusing on both the criminal and civil prosecutions of allegations of police misconduct. (Id.). In that capacity, he was the lead prosecutor in a criminal civil rights matter where a defendant, a Laredo TX police sergeant, received over sixty (60) years for the attempted murder of a Mexican woman to cover up his earlier sexual assault. (Id.). Thereafter, in 2002, Mr. Lenoir was appointed as Administrative Assistant U.S. Attorney in the Eastern District of New York where he served as a designated EEO Investigator for the U.S. Department of Justice's Executive Office of U.S. Attorneys and investigated civil rights complaints by or against assistant U.S. attorneys through the U.S. (Id. at ¶ 7).

In 2007, Mr. Lenoir left government service to become Managing Director at Kroll Government Services in New York. (Id. at ¶ 8). While at Kroll (later KeyPoint), Mr. Lenoir was appointed as part of the Federal Monitor team for the Los Angeles Police Department. (Id.). In that capacity he reviewed police use of force reports for compliance with law and LAPD protocols and was part of a three-person team that conducted independent investigations of police shootings for the City of Austin Texas. (Id.). In addition, as Practice Leader for the Investigative Services Group, Mr. Lenoir investigated allegations of civil rights abuse at Federal Law Enforcement Training Centers for the Department of Homeland Security, and conducted sensitive internal investigations of civil rights complaints within the police force of the United States Mint. (Id.).

Mr. Lenoir returned to full time litigation in 2013 as a solo practitioner using office space at the Law Office of Nathaniel B. Smith, 111 Broadway, New York, N.Y., later 100 Wall Street (23rd Floor), New York, NY.  (Id. at ¶ 10). In addition to Schoolcraft v. City of New York et al., he has been retained in four (4) other matters involving New York City police officers or firefighters pursuing federal civil rights protection from abusive practices by their employers. (Id.). The retainer agreements in these cases have a default billing rate at $575 per hour, with only one exception.[21] (Id.). Accordingly, based on Mr. Lenoir's experience as a civil rights attorney, his billing rate of $575 is reasonable.[22]

### D.  All The Time Expended By All Plaintiff's Counsel Was Reasonable

The Supreme Court has noted that reasonable hourly fees will normally, "encompass all hours reasonably expended on the litigation." Hensley, 461 U.S. at 435.  Further, the, "hours reasonably expended on the litigation," are not limited to hours exclusively spent litigating the specific claims in this case, but rather, hours that are necessary to the successful prosecution of the case.  In connection with the fee application, the party seeking fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous records.  See New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

The billing records of Jon N. Norinsberg, Gerald M. Cohen, Joshua P. Fitch, Nathaniel Smith and John Lenoir, Exhibits H, I, J, K and L, respectively, of the Master Declaration, contain accurate, detailed and contemporaneous time records maintained by

---

[21] Mr. Lenoir recently discounted his billing rate for a client, an attorney, separately represented by him (plaintiff in Gleason v. City of New York) due to the very limited nature of my work in that case, and a colleague relationship with the client, who is also an attorney in the State of New York. (See Master Decl., Ex. E at ¶ 10).
[22] Attached to the Master Declarations as Exhibits V and W, respectively, are declarations of Hugh M. Mo, Esq. and Jeffrey Schlanger, Esq. two attorneys independently familiar with Mr. Lenoir's experience as an attorney, who attest that his billing rate of $575 is reasonable.

plaintiff's counsels' firms.[23]   The records are sufficiently specific and detailed so that the Court can determine the nature of the work performed in the successful prosecution of this case.   The attorneys of Cohen & Fitch LLP spent 1,701.45 hours[24], Jon Norinsberg, Esq. spent 1,451.85 hours[25], Nathaniel Smith, Esq. spent 2,246 hours,[26] and John Lenoir spent 1,310 hours, in vigorously litigating this case to successful resolution over the course of three years.   At Cohen & Fitch LLP's hourly rate of $500 for legal work and $250 for travel, plaintiff requests compensation of $850,725.00. At Jon Norinsberg's hourly rate of $600 for legal work and $300 for travel, Jon Meehan hourly rate of $350.00 and Nicole Burzstyn hourly rate of $125 plaintiff requests compensation of $932,233.75.   At Nathaniel Smith's hourly rate of $575 for legal work and $287.50 for travel, Mr. Suckle's hourly rate of $575 per hour, Mr. McCutcheon's hourly rate of $250 per hour, Ms. Bauza's hourly rate of $150 per hour, and paralegal rates at $125 per hour, plaintiff requests compensation of $1,591,972.50 for hourly work. At John Lenoir's hourly rate of $575 for legal work and $287.50 for travel, plaintiff requests compensation of $736,575.00.[27]

---

[23] The billing records for Howard Suckle and Magdalena Bauza, the attorney and law school graduate who assisted Nathaniel Smith are attached to the Master Declaration as Exhibits M and N. Magdalena Bauza performed 1,305.64 hours and Howard Suckle performed 108.9 hours in connection with this litigation.

[24] Joshua P. Fitch spent 894.75 hours and Gerald M. Cohen spent 806.70 hours.

[25] Contained within the declaration and timesheet of Jon L. Norinsberg (Master Decl., Ex. A; Ex. H) are the hours expended by Jon Meehan, Mr. Norinsberg's fourth year associate and Nicole Bursztyn, Mr. Norinsberg's paralegal. Mr. Meehan performed 137.80 hours of work in connection with this case and Mrs. Bursztyn performed 103.15 hours in connection with this litigation.

[26] Contained within the billing records and declaration of Nathaniel Smith are the hours expended by Mr. McCutcheon, another lawyer who worked for him at various times in this action, and Mr. Smith's paralegals Lysia Smejika, Jeanette Lenoir, and Jeremy Smith. Mr. McCutcheon performed 23.38 hours and Mr. Smith's paralegals performed 442.18 hours in connection with this litigation.

[27] In Plaintiff's Counsel's billing discretion, we have not included any bills for the work performed in connection with this fee application. However, as a matter of equity, the court "retains discretion to award reasonable compensation for this work" even though it occurred after the Rule 68 offer was made. Lee v. Santiago, 2013 WL 4830951, at *13 (S.D.N.Y. 2013) (awarding fees in connection with an attorney's fee application made *after* the acceptance of the Rule 68 Offer of Judgment); see also Rosado v. City of New York, 2012 WL 955510, at *6 (S.D.N.Y. 2012)("[A]s a matter of equity, plaintiff should be awarded some amount for the time his counsel spent in preparing the instant fee application. By not settling the attorneys' fees issue, the City was put *on notice* that time spent by counsel in seeking fees would become *a component* of 'reasonable attorney's fees.'"); Hargroves v. City of New York, 2014 WL 1270585, at *23 (E.D.N.Y. 2014) report and recommendation adopted, No. 2014 WL 1271039

**E.  Plaintiff is Entitled to Recover Post Judgment Interest of the Attorney's Fees Award in this Case**

Finally, it is well established that plaintiff is entitled to interest on any fee award rendered.  See Nicholson v. Williams, 2004 WL 4760138, at *3–4 (E.D.N.Y. 2004) ("An award of attorneys' fees is considered a 'money judgment' and is treated in the same manner as any other money judgment."); Aiello v. Town of Brookhaven,  2005 U.S. Dist. LEXIS 11462, at *30, 2005 WL 1397202 (E.D.N.Y. 2005)(awarding post-judgment interest on award of attorney's fees).  Similarly, the interest on that award should reflect the interest that has accrued *since October 16, 2015* – the date that judgment on the verdict was entered – as that is the appropriate accrual date for interest on an attorney's fees award in the Second Circuit.  See Moran v. Sasso, 2009 WL 1940785, *7 (E.D.N.Y. 2009)("Under the 'majority rule,' followed in the Fifth, Sixth, Eighth, Ninth, Eleventh and Federal Circuits,' interest accrues 'from the date the party becomes entitled to the award *even if* that award is not quantified until a *later* point'...[and] [c]ourts within the Second Circuit routinely adhere to the 'majority rule' that post-judgment interest accrues from the date the party becomes entitled to the award of attorney's fees.").

**F.  Plaintiff Is Entitled to Recover Reasonable Out-of-Pocket Expenses**

Pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d), plaintiff seeks an award of reasonable out-of-pocket costs and expenses in this case.  As a prevailing party, plaintiff is entitled to recover such expenses incurred during the litigation that would normally

---

(E.D.N.Y. 2014) (recognizing that "courts allow such fee awards, when reasonable").  Given the substantial work performed in connection with this application, Plaintiff's Counsel's choice to omit this from the instant bill is a fact that the Court should take into consideration in determining the reasonableness of the fees claimed in connection with this litigation.  While we have decided to omit from the application the costs of preparing it, we respectfully reserved the right to request fees in connection with our reply papers on this motion.  Since the City Defendants have aggressively litigated every aspect of this case since its inception, there is a significant likelihood that the City Defendants will marshal any and all conceivable argument in opposition and to that extent we are reserving the right to seek fees in connection with our reply papers.

be charged to a fee-paying client.  The non-taxable expenses of the litigation are included in the billing invoices attached as Exhibits H, I, and K to the Master Declaration.[28]  These expenses are of the type routinely billed by attorneys to fee-paying clients and were actual and necessary costs incurred to prosecute this case.  See, e.g., LeBlanc-Sternberg, 143 F.3d at 763; U.S. Football League v. National Football League, 887 F.2d 408, 416 (2d Cir. 1989); (see also Master Decl., Ex. B at ¶ 34). The total non-taxable out-of-pocket expense incurred by plaintiff is $149,058.45. (see Master Decl., Ex. H; Ex I; Ex. K).

## CONCLUSION

**WHEREFORE**, plaintiff respectfully requests that this Honorable Court award a total of $4,260,564.70 as attorneys' fees, costs, and expenses to the plaintiff as a prevailing party in this litigation, in the following amounts:

a.  Attorney's Fees to Cohen & Fitch LLP at the rate of $500 per hour for 1,701.45 hours spent on this litigation (including travel time) for a total of $850,725.00;

b.  Attorney's Fees to Jon Norinsberg, Esq. at the rate of $600 per hour for 1,451.85 hours spent on this litigation (including travel time) through the date of this application for a total of $871,110.00;

c.  Attorney's Fees to Mr. Norinsberg's associate, John Meehan, at the rate of $350 per hour for 137.80 hours spent on this litigation through the date of this application for a total of $48,230.00;

d.  Attorney's Fees to Mr. Norinsberg's paralegal, Nicole Bursztyn, at the rate of $125 per hour for 103.15 hours spent on this litigation through the date of this application for a total of $12,893.75;

e.  Attorney's Fees to Nathaniel Smith, Esq. at the rate of $575 per hour for 2,246 hours spent on this litigation (adjusted for travel time) through the date of this application for a total of $1,275,062.50;

f.  Attorney's Fees to John Lenoir, Esq. at the rate of $575 per hour for 1,310 hours spent on this litigation (adjusted for travel time) through the date of this application for a total of $736,575.00;

---

[28] Jon Norinsberg's costs are contained within his itemized bill at Exhibit H to the Master Declaration; Nathanial Smith's costs are contained within his itemized bill at Exhibit I to the Master Declaration; Cohen & Fitch LLP's costs are contained within the itemized bill of Gerald Cohen at Exhibit K to the Master Declaration.

g. Attorney's Fees to Mr. Smith's paralegals, Lysia Smejika, Jeanette Lenoir, and Jeremy Smith, at the rate of $125.00 per hour for 442.18 hours spent on this litigation through the date of this application for a total of $55,272.50;

h. Attorney's Fees to Mr. Smith's colleague, James McCutcheon, Esq. at the rate of $250 per hour for 23.38 hours spent on this litigation through the date of this application for a total of $5,845.00;

i. Attorney's Fees to Mr. Smith's of counsel, Howard Suckle, Esq. at the rate of $575 per hour for 108.90 hours spent on this litigation through the date of this application for a total of $62,617.50;

j. Attorney's Fees to Law Graduate Magdalena Bauza at the rate of $150 per hour for 1,305.64 hours spent on this litigation (adjusted for travel time) through the date of this application for a total of $193,175.00;

k. Costs and expenses in the total amount of $149,058.45, payable in the amount of $135,235.73 to Nathaniel B. Smith, $10,021.85 to Jon Norinsberg and $3,800.00 to Cohen & Fitch LLP.

l. Such other costs and expenses as may be incurred hereafter in Reply in support of this motion.

Dated: New York, New York
       December 16, 2015

Respectfully submitted,

_____/S_____

JOSHUA P. FITCH
GERALD M. COHEN
COHEN & FITCH LLP
Attorneys for Plaintiff
233 Broadway, Suite 1800
New York, N.Y. 10279
(212) 374-9115
gcohen@cohenfitch.com
jfitch@cohenfitch.com

JON L. NORINSBERG
Attorney for Plaintiff
225 Broadway, Suite 2700
New York, New York 10007
(212) 791-5396
Norinsberg@aol.com

39

NATHANIEL B. SMITH
Attorney for Plaintiff
100 Wall Street, 23rd Floor
New York, New York 10005
212-227-7062
natbsmith@gmail.com

JOHN LENOIR
100 Wall Street, 23rd Floor
New York, New York 10005
212-335-0250
john.lenoir@gmail.com