UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

ADRIAN SCHOOLCRAFT,

                                Plaintiff,

          -against-

THE CITY OF NEW YORK, DEPUTY CHIEF MICHAEL MARINO, Tax Id. 873220, Individually and in his Official Capacity, ASSISTANT CHIEF PATROL BOROUGH BROOKLYN NORTH GERALD NELSON, Tax Id. 912370, Individually and in his Official Capacity, DEPUTY INSPECTOR STEVEN MAURIELLO, Tax Id. 895117, Individually and in his Official Capacity, CAPTAIN THEODORE LAUTERBORN, Tax Id. 897840, Individually and in his Official Capacity, LIEUTENANT WILLIAM GOUGH, Tax Id. 919124, Individually and in his Official Capacity, SGT. FREDERICK SAWYER, Shield No. 2576, Individually and in his Official Capacity, SERGEANT KURT DUNCAN, Shield No. 2483, Individually and in his Official Capacity, LIEUTENANT CHRISTOPHER BROSCHART, Tax Id. 915354, Individually and in his Official Capacity, LIEUTENANT TIMOTHY CAUGHEY, Tax Id. 885374, Individually and in his Official Capacity, SERGEANT SHANTEL JAMES, Shield No. 3004, Individually and in her Official Capacity, , CAPTAIN TIMOTHY TRAINER, Tax Id. 899922, Individually and in his Official Capacity, and P.O.'s "JOHN DOE" #1-50, Individually and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown), (collectively referred to as "NYPD defendants"), FDNY LIEUTENANT ELISE HANLON, individually and in her official capacity as a lieutenant with the New York City Fire Department, JAMAICA HOSPITAL MEDICAL CENTER, DR. ISAK ISAKOV, Individually and in his Official Capacity, DR. LILIAN ALDANA-BERNIER, Individually and in her Official Capacity and JAMAICA HOSPITAL MEDICAL CENTER EMPLOYEE'S "JOHN DOE" # 1-50, Individually and in their Official Capacity (the name John Doe being fictitious, as the true names are presently unknown),

**AFFIRMATION IN SUPPORT OF ATTORNEYS FEES, EXPENSES AND COSTS**

10 CV 6005 (RWS)

                                Defendants.
------------------------------------------------------------------------x

STATE OF NEW YORK         )
                          ) ss.:
COUNTY OF NEW YORK        )

RICHARD A. GILBERT, ESQ., declares under penalty of perjury the following to be true and correct.

1. I am a partner in the law firm of Levine and Gilbert. My partner, Harvey Levine and I were two of the attorneys who represented plaintiff during the course of this action. I am submitting this affirmation in support of plaintiff's application for reasonable attorneys' fees, costs and expenses in connection with this action, pursuant to the Judgment, dated October 15, 2015 (Dkt.# 541).

2. In mid-November 2012 Peter Gleason, an attorney who was Of Counsel to our firm, asked your affirmant and his law partner, Harvey Levine, to lead a team of attorneys he was assembling to replace the attorney who was then representing plaintiff. He explained there had been a total breakdown in communication between plaintiff and his attorney and that we were being brought in because of our far ranging expertise and experience in litigation involving the NYPD including representing police officers in civil damage suits against the City of New York, in defense of officers charged in criminal and disciplinary matters, in prosecuting claims against police

officers for official misconduct in additional to our experience litigating on behalf of medical malpractice victims.

3. After being retained by plaintiff we undertook to familiarize ourselves with the plaintiff and his case. This involved reviewing thousands of pages of discovery documents exchanged by the City of New York, hours of recordings of roll calls and other investigative materials.

4. Set forth below is your affirmant's legal background justifying the reasonableness of your affirmant's hourly fee of $500 per hour and a summary description of the work performed by your affirmant.

5. After graduating from the Benjamin Cardozo School of Law your affirmant was admitted to practice before all the Courts of the State of New York in 1985 and is currently admitted to practice before the United States District Courts for the Southern and Eastern districts. In 1986 your affirmant took a position as an associate attorney with the Law Offices of Harvey A. Levine, P.C. and within weeks began trying personal injury actions for the firm. In 1992 your affirmant became a partner in the firm. Over the past 30 years of practice your affirmant has litigated hundreds of cases, securing seven figure verdicts and settlements. Thee majority of these cases involved the representation of New York City Police Officers and Firefighters, often suing the City of New York. Among the types of cases

your affirmant has litigated include complex personal injury actions under General Municipal Laws 205-e, 205-a and the common law as both lead and co-counsel; defense of NYPD and NYS Department of Corrections disciplinary charges; prosecution and defense of civil actions seeking damages for police misconduct; prosecution and defense of employment discrimination claims and prosecution of medical malpractice claims. While the majority of cases litigated by your affirmant involve contingent fees, in those matters involving hourly fees, your affirmant customarily charges between $450 and $550 per hour, depending upon the complexity of the matter. Given the complexity of the instant matter it is respectfully submitted plaintiff's hourly fee of $500 per hour is fair and reasonable.

6. Under our retainer agreement, in addition to agreeing to accepting the greater of a one third contingency or fees awarded to the prevailing party, your affirmant's firm agreed to advance costs and expenses of the litigation. In order to secure the release of plaintiff's litigation files from the outgoing attorney, plaintiff reimbursed Jon Norinsberg's law firm the sum of $4,630.45 for claimed disbursements for which request is herewith being made for reimbursement.

7. Although your affirmant's work on this matter proved to be relatively short lived it was virtually all consuming. After four months of intense

involvement acting as our firm's point man with plaintiff and his father and the litigation team being assembled by Peter Gleason, your affirmant's relationship with plaintiff's father was problematic and ultimately proved to be irretrievable. This resulted in a shifting of responsibility to newer members of the team, in particular Nat Smith, who almost miraculously managed this almost unmanageable case to a highly favorable conclusion.

8. Starting in mid-November 2012 your affirmant began familiarizing himself with plaintiff's case, from reviewing voluminous materials provided by plaintiff and his father, reviewing 6 full banker boxes, each three feet long, filled with pleadings and discovery documents and investigation secured from plaintiff's prior attorney, to traveling to upstate New York on two occasions to meet personally with plaintiff and his father, dealing with ancillary issues that were troubling plaintiff, such as NYPD disciplinary charges resulting in plaintiff's suspension, the Queens District Attorney's Press Release exonerating NYPD personnel from criminality despite its unlawful detention and efforts to have plaintiff committed to unnecessary psychiatric care in an effort to discredit him, the continued use of plaintiff's name, image and recordings on the web by his discharged attorney. It is beyond dispute that a thorough understanding of the actual statements made in the recordings made by plaintiff and the details of the NYPD's version of

events, chronicled in thousands of pages of City generated materials were sine quo non to meaningful representation of plaintiff's interests. With the completion of our review and analysis of the materials provided to our firm we had just begun the process of formulating our litigation plan when the decision was made to shift the responsibilities for the day to day management of the litigation to Nat Smith and the newer members of the team. Although your affirmant remained involved in the litigation up to and including his participation in the oral argument before this Court with regard to a proposed GAG order on April 10, 2013, his participation slowly diminished to mere monitoring.

9. I documented my billable time spent on this matter in tenths of an hour increments through contemporaneous notes, which were then entered into a running time records. The aforementioned time records of the 120+ hours expended on this case are attached hereto. I did not record time spent monitoring the case after April 2013.

**Conclusion**

10. While it is readily apparent that our firm's services were limited in time, it is respectfully submitted that Plaintiff benefited greatly from the analysis of the discovery and ancillary materials performed by our firm.

The outcome achieved by the team in this highly complex litigation speaks for itself. Your affirmant respectfully requests that this application for attorneys' fees be granted.

Dated:     New York, New York
           November 29, 2015

_____
Richard A. Gilbert