UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ADRIAN SCHOOLCRAFT,

                                                                                 10–cv–6005(RWS)

                                     Plaintiff,

                                     -against-

THE CITY OF NEW YORK, et al.,

                                     Defendants.
------------------------------------------------------------x

## MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFF'S FEE APPLICATION

### PRELIMINARY STATEMENT

This memorandum of law is submitted in support of the fee applications of Levine & Gilbert (Harvey A. Levine & Richard A. Gilbert), together with Peter J. Gleason, Esq. Since the Court entered Judgment against the City of New York in plaintiff's favor pursuant to the plaintiff's Acceptance of the City Defendants' Rule 68 Offer of Judgment, the plaintiff is a prevailing party in this Section 1983 suit, and is therefore entitled to attorneys' fees and costs pursuant to Section 1988 and Rule 54(d) of the Federal Rules of Civil Procedure. *Marek v. Chesny*, 473 U.S. 1, 5-9 (1985); *Harrell v. Van Der Plas*, 2009 U.S. Dist. LEXIS 104828 at *2 n.2 (S.D.N.Y. Nov. 9, 2009).

Plaintiff is also entitled to recover his reasonable attorney's fees, costs expenses and pursuant to the express terms of the contract formed by the Acceptance of the Offer of Judgment, which provides that "plaintiff shall be entitled to reasonable attorney's fees, expenses and costs to the date of this offer for plaintiff's federal claims." (*Id.*; Offer of Judgment at p. 2.) *See Haydenn v. City of New York*, 2012 U.S. Dist. Lexis 148988 at * 5 (E.D.N.Y. Oct. 15, 2012) ("the Rule 68 Offer and Plaintiff's acceptance are what constitute the binding agreement for Rule 68 purposes"); *Penley v. City of New York*, 2015 U.S. Dist. Lexis 119808 at *3 (S.D.N.Y. Sept. 8. 2015) ("Offers of judgment pursuant to [Rule] 68 are construed according to ordinary contract principles").

Mr. Gleason, Of Counsel to Levine & Gilbert was appoached by Plaintiff's father, Larry Schoolcraft, about assembling a team of attorneys to substitute for Jon Norinsberg's law firm which Plaintiff had discharged after a breakdown in communications. After being brought into the case by Mr. Gleason, the firm and Mr. Gleason spent the ensuing 4 months immersing themselves in this voluminous file, learning about the numerous players involved and what part they played in depriving plaintiff of his civil rights and depriving him of his freedom under the guise of medical treatment. The facts of the case that gave rise to civil rights violations, questions of false imprisonment, kidnapping, medical malpractice,

internal disciplinary charges pending against Plaintiff, potential loss of pension rights and the damages that flowed from these transgressions by defendants. The discovery materials ultimately secured from the Norinsberg lawfirm numberd in the thousands. From November 2012 through April 2013, we worked individually and collectively to become thoroughly knowledgable about all Plaintiff's claims, his potential damages and defenses against defense strategies to attack the efficacy of plaintiff's claims and credibility. The extensive and in depth review of the materials contained in the file and interviews with Plaintiff and his father led to this firm drafting of a summary of all the potential claims, damages, witnesses in the case together with a game plan for the litigation which was passed on to Nat Smith, Esq. and John Lenior after they joined Plaintiff's legal team. Armed with the ground work laid by our team during our 4 months of work the Smith/Lenior team litigated this matter fiercely over the ensuing years. However, it is respectfully submitted that the hours expended in the months preceeding the Smith/Lenior teams assuming the lead in this litigation was no less valuable and contributed to moving this litigation forward to its ultimate successful conclusion. Moreover, beyond his contributions made during the digesting and analysis of the discovery materials and pleadings in this matter, Mr. Gleason spent innumerable hours establishing trust with Plaintiff and his father, ensuring that they understood the

work being done and the goals being set and fielding their many questions and concerns, leaving the other attorneys more time to devote to the files. We respectfully submit that the hours expended as outlined above are equally compensible as those expended by any of the other attorneys employed by Plaintiff in this action and that we are entitled to recovery our reasonable fees, costs and expenses incurred on behalf of the plaintiff.

Nor should there be a reduction in the Court's award based on the extensive work required to contribute to the success of this case owing to the City's litigation tactics. The City Defendants cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response. *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986); *see also Kassin v City of Schenectady,* 415 F. 3d 246, 252 (2d Cir. 2005); *Zahrey v. City of New York*, 98 Civ. 4546 (DCP) (JCF), Report and Recommendation, dated June 8, 2010, at p. 40). As demonstrated by all the accompanying declarations of the attorneys who worked on this case over the course of its extensive and intensive history, the City Defendants fought the plaintiff every step of the way and only made a reasonable offer to resolve the matter on the eve of trial. Thus, the City Defendants should not be heard to complain about the amount of work required in this case.

Moreover, the plaintiff's exceedingly successful recovery from the City Defendants (cash, back pay, pension and medical benefits for life with a value exceeding $2.0 million) also justifies a full recovery of the fees, cost and expenses incurred. "[W]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *Blum v. Stenson*, 465 U.S. 886, 901 (1984) ("we reiterate what was said in *Hensley:* where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee"); *Bey v. City of New York*, 2015 WL 3528227 at *3 (S.D.N.Y. June 4, 2015) ("the Supreme Court has also cautioned that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee"); *Baird v. Boies, Schiller & Flexner LLP,* 219 F. Supp. 2d 510, 518 (S.D.N.Y. 2002) ("The most critical factor in determining the reasonableness of a fee award is the degree of success obtained.

*The "Lodestar" Method of Determining a Reasonable Fee*

As the Supreme Court has recently remarked, Section 1988 "does not explain what Congress meant by a 'reasonable' fee, and therefore the task of identifying an appropriate methodology for determining a 'reasonable' fee was left for the courts." *Perdue v. Kenny A.,* 130 S. Ct. 1662, 1669 (2010). In *Perdue*, the Court affirmed

the "lodestar" approach for determining the reasonable fee, in contrast to the so-called "*Johnson* approach" (which relied upon a list of twelve factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

As noted in *Perdue,* the problem with the *Johnson* approach was that it set "attorneys' fees by reference to a series of sometimes subjective factors [that] placed unlimited discretion in trial judges and produced disparate results." *Perdue*, 130 S. Ct. at 1672 (citation omitted).  To provide the lower courts with more objective guidance, the Supreme Court pointed out that the "lodestar approach . . . achieved dominance in the federal courts after our decision in *Hensley [v. Eckerhardt,* 461 U.S. 424 (1983)].  Since that time, the lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence." *Perdue*, 130 S. Ct. at 1672 (citations and quotations omitted). The Court stated:

> Although the lodestar method is not perfect, it has several important virtues. First, in accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to "the prevailing market rates in the relevant community." Developed after the practice of hourly billing had become widespread, the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. Second, the lodestar method is readily administrable; and unlike the Johnson approach, the lodestar calculation is "objective," and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.

*Id.* (citations omitted, emphasis in original).

Thus, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of the lawyer's services." *Hensley,* 461 U.S. at 433; *Perdue,* 130 S. Ct. at 1673 (one of the lodestar's "chief virtues" is that it provides "a calculation that is objective"). On the other hand, the district court is given discretion in granting a fee award and assessing a reasonable fee in light of the circumstances of the case. *Hensley,* 461 U.S. at 437; *Luciano v. Osten Com.,* 109 F.3d 111 (2d Cir. 1997).

To determine the reasonable hourly rate, "the lodestar looks to 'the prevailing market rates in the relevant community.'" *Perdue,* 130 S. Ct. at 1672 (quoting *Blum v. Stenson,* 465 U.S. 886, 895 (1984)). In *Blum,* Legal Aid Society attorneys had represented the prevailing civil rights plaintiffs, and the issue presented was how to set a reasonable hourly rate under § 1988. The *Blum* court started by examining § 1988's legislative history, noting that "Congress directed that attorney's fees be calculated according to standards currently in use under other fee-shifting statutes: It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally

complex Federal litigation, such as antitrust cases.'" *Blum,* 465 U.S. at 893 (quoting S. Rep. No. 94-1011, p. 6(1976)).

*Perdue* describes a reasonable fee, set at the "prevailing market rate in the relevant community," as one "that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue,* 130 S. Ct. at 1672 (citing *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 565 (1986)); *Blanchard v. Bergeron,* 489 U.S. 87, 94 (1989); *LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 764 (2d Cir. 1998). Because civil rights arrangements often mean that plaintiffs' attorneys absorb expenses from unsuccessful cases, a relatively few members of the bar are willing to regularly undertake litigation of constitutional torts. Thus, "induc[ing] a capable attorney to undertake the representation of a meritorious civil rights case," *Perdue,* 130 S. Ct. at 1672, requires that the courts grant full "lodestar" recoveries in successful cases, including reference to the "prevailing market rates in the relevant community . . . governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases.'" *Blum,* 465 U.S. at 893.

A "reasonable hourly rate" has also been described as "one that grants the successful civil rights plaintiff a fully compensatory fee, comparable to what is traditional with attorneys compensated by a fee-paying client." *Foster v. Kings*

*Park Central Sch. Dist.,* 174 F.R.D. 19, 26-27 (E.D.N.Y. 1997) (quoting *Missouri v. Jenkins,* 491 U.S. 274, 286 (1989)).

The relevant community for a fee determination is the judicial district in which the trial court sits -here, the Southern District of New York. *See,* Arbor Hill, 522 F.3d 182 (2d Cir. 2007); Inre Agent Orange Prods. Liability Litig., 818 F.2d 226, 232 (2d Cir. 1987). We respectfully submit that the hourly rates requested in our application are reasonable in this District.

Numerous decisions in this District support awards in the range of $500 to $600 an hour for experienced attorneys. *See Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 225 (S.D.N.Y. May 24, 2011), *aff'd*, 700 F.3d 631 (2d Cir. 2012) (awarding an hourly rate of $625); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527 (S.D.N.Y. 2008)($600.00 an hour was reasonable for a highly experienced attorney on a "relatively straightforward...single plaintiff" case.); *Restivo v. Nassau County*, et al. 06-CV 6720 (JS) (SIL) (Memorandum and Order, dated November 30, 2015, awarding $700.00 billing hourly billing rate to two senior civil rights attorneys) (although the $700.00 an hour rate was high, the court found that it is a reasonable rate in light of the complexity of the issues involved in this dispute and the level and quality of the attorneys); *Mawere v. Citco Fund Servs., (USA) Inc.*, No. 09-CV1342, 2011 WL 6779319, at *5 (S.D.N.Y. Sept. 16,

2011) report and recommendation adopted, No. 09-CV-1342, 2011 WL 6780909 (S.D.N.Y. Dec. 27, 2011) (awarding $650.00 an hour to an attorney with 32 years of experience in employment discrimination case); *Kim v. Kum Gang, Inc.*, No. 12-CV-6344, 2014 WL 2514705, at *2 (S.D.N.Y. June 2, 2014) (awarding an "experienced" litigator $600 per hour in a wage and hour case); *Adorno v. Port Authority of New York and New Jersey,* 685 F. Supp. 2d 507 (S.D.N.Y. 2010)("A rate of $550.00 is also consistent with rates awarded in this district for experienced civil rights lawyers."); *Smith v. Nagai*, 2012 WL 2421740, recommendation adopted, *Smith v. Saki Restaurant Corp.,* 2012 WL 2428929 (S.D.N.Y. 2012)(founding partner of a small firm "with more than twenty years of experience handling complex litigation" should be compensated at the rate of $550.00 per hour, finding that such a rate is "comparable to rates regularly approved in the Southern District of New York and ...therefore reasonable."); *Zahrey v. City of New York*, et al., 98 Civ. 4546 (DCP) (JCF), (Report and Recommendation, dated June 8, 2010 (Docket No. 264) (awarding experienced criminal defense attorney, who had litigated 20 civil rights claims in his career, a billing rate of $575.00 per hour in 2010

## CONCLUSION

For all these reasons and the reasons set forth in the accompanying declarations, exhibits and other supporting papers, we request that the Court award us the fees and expenses set forth in each of our respective affirmations and time records.

Dated: December 10, 2015

Respectfully submitted:

Levine & Gilbert

By: _____

Richard A. Gilbert

115 Christopher Street

New York, New York 10014