10-CV-6005 (RWS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADRIAN SCHOOLCRAFT,

Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF THE CITY OF NEW YORK'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND DISBURSEMENTS**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Alan Scheiner*
*Tel:  (212) 356-2344*
*Matter #:  2010-033074*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... v

PRELIMINARY STATEMENT ................................................................. 1

INTRODUCTION .................................................................................... 1

ARGUMENT

      POINT I

             THE FEE DEMAND IS EXCESSIVE ON ITS FACE AND REQUIRES A SUBSTANTIAL ACROSS-THE-BOARD REDUCTION TO THE HOURS CLAIMED ...................................................... 3

             A.      The Presumptively Reasonable Fee Standard ................................. 3

             B.      Plaintiff's Claim Is Excessive on Its Face Compared To Readily Available Benchmarks In Case Law. ............................................. 6

             C.      Plaintiff Offers No Valid Explanation For The Excessive Number of Hours Purportedly Devoted To This Case By Plaintiff's Counsel, Who Were Exceedingly Inefficient Despite Charging Premium Rates. ...................................................... 10

                    1.      Plaintiff's Claim Was Not Inherently Complex ................................................... 10

                    2.      Plaintiff Did Not Prevail on All Claims and Was Not Extraordinarily Successful ............................................... 13

                          a.   Plaintiff was not highly successful compared to the relief that he sought in the case. ......... 13

                          b.   Plaintiff did not prevail on several claims against the City defendants..................... 14

3.      Alleged "Aggressive" Litigation By
The City Does Not Justify Excessive
Fees and In Fact Plaintiff Multiplied
These Proceedings By Taking
Unreasonable Positions.........................................16

POINT II

DETAILED EXAMINATION OF PLAINTIFF'S
COUNSEL'S TIME ENTRIES SHOWS THAT
COUNSEL FAILED TO EXERCISE BILLING
JUDGMENT    IN    PREPARING    THEIR
SUBMISSION AND INCURRED EXCESSIVE
AND INEFFICIENT CHARGES IN RELATION
TO THE WORK PERFORMED............................................ 17

POINT III

PLAINTIFF CLAIMS FEES FOR WORK THAT
IS FACIALLY NON-COMPENSABLE IN A FEE
CLAIM FOR PLAINTIFF'S FEDERAL CLAIMS
AGAINST THE MUNICIPAL DEFENDANTS...................................... 26

A.      Costs      Attributable      To      Plaintiff's
Termination, Replacement and Rehiring off
Counsel Are Not Compensable....................................... 26

B.      Plaintiff Claim For Over 1,000 Hours In
Fees   Incurred   In   Claims   Against   The
Medical   Defendants   And   Unrelated   To
Claims Against The Municipal Defendants
Should Be Denied. ....................................................... 30

C.      Public   Relations,   Publicity-Seeking   And
Lobbying Is Not Compensable ..................................... 35

D.      Time Spent on Other Ancillary Matters Such
As  Schoolcraft's  NYPD  Disciplinary  And
Entertainment Contracts Is Not Recoverable............................... 37

E.      Plaintiff's State Law Claims Are Accounted
For As Part of A General Reduction............................................ 38

POINT IV

        THE FEE CLAIM SHOULD BE REDUCED FOR
        INAPPROPRIATE BILLING PRACTICES SUCH
        AS BLOCK BILLING, VAGUE ENTRIES, AND
        IMPROPER BILLING INCREMENTS. ................................................... 38

        A.      Excessively Large Billing Increments .......................................... 38

        B.      Excessive Billing For Minute, Routine
                   Tasks ........................................................................................ 39

        C.      Hundreds of Hours of Time Entries are Too
                   Vague to Be Helpful ...................................................................... 40

        D.      A Substantial Portion of the Fee Submission
                   is Block Billed............................................................................. 41

POINT V

        THERE IS SUBSTANTIAL REASON TO DOUBT
        THAT COUNSEL'S TIME WAS RECORDED
        CONTEMPORANEOUSLY AND THE COURT
        SHOULD ORDER PRODUCTION OF
        ORIGINAL BILLING RECORDS OR DENY OR
        SUBSTANTIALLY REDUCE THE FEE
        APPLICATION ...................................................................................... 42

        A.      The Requirement of Contemporaneous
                   Rrecords ...................................................................................... 42

POINT VI

        THE DEMANDED HOURLY RATES ARE
        UNREASONABLE AND EXCESSIVE ................................................... 47

        A.      The Determination of Reasonable Hourly
                   Rates........................................................................................... 48

        B.      The Court Should Apply Previously
                   Approved Rates And Not Increase Rates Far
                   In Excess of Economic Trends And
                   Contrary To Downward Market Pressure on
                   Legal Fees. ................................................................................. 49

        C.      Reputational Benefits To Counsel Call For
                   Lower Than Normal Hourly Rates In This
                   Case............................................................................................. 51

D. The Reasonable Hourly Rate For Norinsberg In This Case Is $400 Per Hour, Not The Unreasonable $600 Per Hour Demanded.................................... 53

  1. Case Law Supports A Rate No Higher Than $400 Norinsberg And Lawyers of His Experience In Civil Rights. ...................................................53

  2. The relevant Legal Community Is Small or Solo Practice Civil Rights Firms, Not Medium or Large Law Firms With Business Oriented Practices. ..............................................54

  3. Norinsberg's Reputation And Relationship With Plaintiff Weighs Against A High Hourly Rate................................61

E. Mr. Meehan's Hourly Rate Should Be $250 ..................................... 63

F. Cohen & Fitch's Hourly Rate Request Of $500 Is Excessive and They Should Receive The Same Rate They Were Awarded In *Marshall*: $325 ................................................................. 63

G. Nat Smith's Requested Hourly Rate of $575 Is Excessive And Should Be Reduced To No More Than $450 Per Hour ............................................. 65

H. The Appropriate Rate For Paralegal Work Is $100.................................................................................... 67

I. The Appropriate Rate For The Laws Student Intern Magdalena Bauza Is $100 ................................... 68

J. The Reasonable Hourly Rate For Howard Suckle, John Lenoir, Richard Gilbert, Peter Gleason and  Harvey Levine is $300 ........................................... 69

POINT VII

PLAINTIFF HAS NOT GIVEN UNAMBIGUOUS
PERMISSION FOR THE GLEASON TEAM TO
PURSUE PLAINTIFF'S OWN FEE CLAIM HERE
AND THE COURT SHOULD DENY ANY
AWARD OF THE GLEASON TEAM FEES OR
ALLOW DISCOVERY AND A HEARING ON
THE ISSUE OF STANDING. ................................................................ 70

POINT VIII

PLAINTIFF'S REQUESTED EXPENSES
SHOULD BE REDUCED ...................................................................... 72

CONCLUSION ......................................................................................................................... 73

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*A.R. v. New York City Dep't of Educ.*,
    12 Civ. 7144, 2014 U.S. Dist. LEXIS 153103 (S.D.N.Y. Oct. 28, 2014)
    (Sweet, J.)......................................................................................................57

*Abel v. Town Sports Int'l, LLC*,
    09 Civ. 10388 (DF), 2012 U.S. Dist. LEXIS 183444, 2012 WL 6720919
    (S.D.N.Y. Dec. 18, 2012)...............................................................................39

*Access 4 All, Inc. v. Park Lane Hotel, Inc.*,
    No. CV-04 7174, 2005 U.S. Dist. LEXIS 34159, 2005 WL 3338555
    (S.D.N.Y. 2005)..............................................................................................56

*Ackerley Communications of Massachusetts, Inc. v. Somerville*,
    901 F.2d 170 (1st Cir. 1990).....................................................................23, 27

*Adams v. New York State Educ. Dep't*,
    630 F. Supp. 2d 333 (S.D.N.Y. 2009)...........................................................56

*Adorno v. Port Auth. of N.Y. & N.J.*,
    685 F. Supp. 2d 507 (S.D.N.Y. 2010).................................................7, 33, 59

*Agyapong v. Bohan*,
    No. 11-cv-586 (VB), 2013 U.S. Dist. LEXIS 56464, 2013 WL 1687737
    (S.D.N.Y. Apr. 9, 2013)..................................................................................56

*Aiello v. Town of Brookhaven*,
    2005 U.S. Dist. LEXIS 11462 (E.D.N.Y. June 13, 2005) ............................42

*Andert v. Allied Interstate*,
    2013 U.S. DIST Lexis 10422............................................................................24

*Andert v. Allied Interstate*,
    LLC, 12 Civ. 7010 (PAC), 2013 U.S. Dist. LEXIS 104422 (S.D.N.Y. July 17,
    2013) .........................................................................................10, 17, 25, 40

*Andrews v. City of New York*,
    2015 U.S. Dist. LEXIS 101115 (S.D.N.Y. 2015)..................................58

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
    522 F.3d 182 (2d Cir. 2008)........................................................... *passim*

*Arnone v. CA, Inc.*,
    08 Civ. 4458 (SAS), 2009 U.S. Dist. Lexis 17080 (S.D.N.Y. Mar. 6, 2009).........................67

**Cases**                                                                      **Pages**

*Ashkinazi v. Sapir*,
    02 Civ. 2, 2005 U.S. Dist. LEXIS 8889, 2005 WL 1123732 (S.D.N.Y. May
    10, 2005) ......................................................................................................59

*Barati v. Metro-North R.R. Co.*,
    939 F. Supp. 2d 153 (D. Conn. 2013)..............................................................51

*Barbour v. City of White Plains*,
    700 F.3d 631 (2d Cir. 2012)..............................................................................59

*Barfield v. N.Y. City Health & Hosps. Corp.*,
    537 F.3d 132 (2d Cir. 2008)........................................................................4, 13

*Barile v. Allied Interstate, Inc.*,
    No. 12 Civ. 916 (LAP) (DF), 2013 U.S. Dist. LEXIS 32483, 2013 WL 795649
    (S.D.N.Y. Jan. 30, 2013).................................................................40, 67, 68

*Baughman v. Wilson Freight Forwarding Co.*,
    583 F.2d 1208 (3d Cir. 1978)...........................................................................32

*Bernabe v. City of New York*,
    13 Civ. 5531 (LGS) (SDNY) ...........................................................................54

*Berrian v. City of New York*,
    2014 U.S. Dist. Lexis 104255 (S.D.N.Y. July 28, 2014)........................................72

*Berrian v. City of New York*,
    2014 U.S. Dist. LEXIS 163445 (S.D.N.Y. Nov. 21, 2014) ...................................72

*Blum v. Stenson*,
    465 U.S. 886 (1984)........................................................................................47

*Brown v. Stackler*,
    612 F.2d 1057 (7th Cir. 1980) .........................................................................18

*Carter v. Inc. Vill. Of Ocean Beach*,
    759 F.3d 159 (2d Cir, 2014)..............................................................................10

*Copeland v. Marshall*,
    641 F.2d 880 (1980) (en banc)............................................................... *passim*

*Cordero v. Collection Co.*,
    No. 10.............................................................................................................42

*Curley v. Village of Suffern*,
    268 F.3d 65 (2d Cir. 2001)..............................................................................11

**Cases**                                                                                               **Pages**

*Daiwa Special Asset Corp. v. Desnick,*
    2002 U.S. Dist. LEXIS 23073 ...................................................................... 5-6, 9, 20

*Dancy v. McGinley,*
    No. 11-cv-7952 (LMS), 2015 U.S. Dist. LEXIS 150366, 2015 WL 6693326
    (S.D.N.Y. Sept. 21, 2015) ................................................................................56

*Davis v. City of New York,*
    10 Civ. 699 (SAS), 2011 U.S. Dist. LEXIS 120165 (S.D.N.Y. Oct. 18, 2011) ....................58

*DeMarco v. Ben Krupinski Gen. Contr., Inc.,*
    2014 U.S. Dist. LEXIS 100793 (E.D.N.Y. July 22, 2014) ....................................42

*DiFilippo v. Morizio,*
    759 F.2d 231 (2d Cir. 1985)..............................................................................6

*Do Yea Kim v. 167 Nail Plaza, Inc.,*
    2009 U.S. Dist. LEXIS 1992 (S.D.N.Y. Jan. 9, 2009).........................................10

*E.S. v. Katonah-Lewisboro Sch. Dist.,*
    796 F. Supp. 2d 421 (S.D.N.Y. 2011), *aff'd*, 487 F. App'x 619............................63

*Fair Housing Council v. Landow,*
    999 F.2d 92 (4th Cir. 1993) .............................................................................19

*Farbotko v. Clinton Cnty. of N.Y.,*
    433 F.3d 204 (2d Cir. 2005)..............................................................................48

*Finch v. New York State Office of Children & Family Servs.,*
    861 F. Supp. 2d 145 (S.D.N.Y. 2012) (Scheindlin, J.) .........................................58

*Marisol A. ex rel. Forbes v. Giuliani,*
    111 F. Supp. 2d 381 (S.D.N.Y. 2000).................................................................41

*Francois v. Mazer,*
    523 Fed. Appx. 28 (2d Cir. 2013) ..................................................................4, 10

*Fryar v. City of New York,*
    10CV5879, 2012 U.S. Dist. LEXIS 190030 (E.D.N.Y. Aug. 22, 2012) ...............................55

*G.B. v. Tuxedo Union Free Sch. Dist.,*
    894 F. Supp. 2d 415 (S.D.N.Y. 2012)................................................................48

*Ganci v. U.S. Limousine Serv. Ltd.,*
    2015 U.S. Dist. LEXIS 43926 (E.D.N.Y. Apr. 2, 2015) ...........................26, 44, 57

**Cases**                                                                                     **Pages**

*Greater Los Angeles Council on Deafness v. Community Television of Southern
    California,*
    813 F.2d 217 (9th Cir. 1987) ...............................................................36

*Gurung v. Malhotra,*
    851 F. Supp. 2d 583 (S.D.N.Y. 2012)..................................................67

*Gutman v. Klein,*
    03 CV 1570, 2010 U.S. Dist. LEXIS 124704, 2010 WL 4975593 (E.D.N.Y.
    Aug. 19, 2010) ...................................................................................39

*Handschu v. Special Servs. Div.,*
    727 F. Supp. 2d 239 (S.D.N.Y. 2010)..........................................44, 56

*Hart v. Bourque,*
    798 F.2d 519 (1st Cir. 1986)...............................................................27

*Harvey v. Mohammed,*
    951 F. Supp. 2d 47 (D.D.C. 2013) .......................................................5

*Hassan v. New York City,*
    2014 U.S. Dist. LEXIS 26194 (E.D.N.Y. Feb. 10, 2014).............3, 4, 72

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983).............................. 4-5, 9, 18, 22, 35, 44, 56

*Husain v. Springer,*
    2013 U.S. Dist. LEXIS 37134 (E.D.N.Y. Mar. 14, 2013), *rev'd* 579 Fed.
    Appx. 3 (2d Cir. 2014)...........................................................................4

*Husain v. Springer,*
    2014 U.S. Dist. LEXIS 184720 (E.D.N.Y. Dec. 9, 2014), *aff'd*, 622 Fed.
    Appx. 13 (2d Cir. 2015).........................................................................4

*Husain v. Springer,*
    579 Fed. Appx. 3 (2d Cir. 2014)............................................................4

*Imbeault v. Rick's Cabaret Int'l Inc.,*
    No. 08 Civ. 5458(GEL), 2009 U.S. Dist. LEXIS 71562, 2009 WL 2482134
    (S.D.N.Y. Aug. 13, 2009) ...................................................................64

*J.G. v. Board of Education,*
    830 F.2d 444 (2d Cir. 1987)................................................................32

*Johnson v. Georgia Highway Express, Inc.,*
    488 F.2d 714 ......................................................................................48

**Cases**                                                                                                                          **Pages**

*Kim v. Kum Gang, Inc.*,
    12 Civ. 6344 (MHD), 2014 U.S. Dist. LEXIS 77038 (S.D.N.Y. May 30, 2014)...................60

*Kirsch v. Fleet St. Ltd.*,
    148 F.3d 149 (2d Cir. 1998)........................................................................................................4

*United States ex rel. Krause v. Eihab Human Servs.*,
    No. 10-CV-898 (RJD), 2014 U.S. Dist. LEXIS 136599 (E.D.N.Y. June 6,
    2014) ..........................................................................................................................................43

*Lanzetta v. Florio's Enters.*,
    2011 U.S. Dist. LEXIS 85613 (S.D.N.Y. July 27, 2011) .......................................................48

*Lebowitz v. City of New York*,
    No. 14-812, 6060 Fed. Appx. 17 (2d Cir. June 2, 2015) ........................................................11

*Lee v. Santiago*,
    2013 U.S. Dist. LEXIS 130141 (S.D.N.Y. Aug. 15, 2013) ...................................25, 40, 56, 68

*Lewis v. Kendrick*,
    944 F.2d 949 (1st Cir. 1991) ...................................................................................................18

*Lightfoot v. Walker*,
    826 F.2d 516 (7th Cir. 1987) ................................................................................................1, 8

*Lochren v. County of Suffolk*,
    2008 U.S. Dist. LEXIS 38100 (E.D.N.Y. May 8, 2008) ...............................................8, 22, 23

*Lochren v. County of Suffolk*,
    2010 U.S. Dist. LEXIS 28288 (E.D.N.Y. Mar. 23, 2010) ..............................................7, 8, 57

*Long v. City of New York*,
    2010 U.S. Dist. LEXIS 81020 (S.D.N.Y. Aug. 6, 2010) ........................................................19

*Luciano v. Olsten Corp.*,
    109 F.3d 111 (2d Cir. 1997)....................................................................................................17

*M.S. v. N.Y. City Bd. of Educ.*,
    01 Civ. 4015, 01 Civ. 10871, 01 Civ. 10872, 2002 U.S. Dist. LEXIS 22220,
    2002 WL 31556385 (S.D.N.Y. Nov. 18, 2002), *aff'd*, 407 F.3d 65 (2d Cir.
    2005) ..........................................................................................................................................57

*Marion S. Mishkin Law Office v. Lopalo*,
    767 F.3d 144 (2d Cir. 2014)....................................................................................................43

**Cases**                                                                                    **Pages**

*Marshall v. Randall, et al.*,
   10CV 2714 (JBW) (VVP) (E.D.N.Y. Jan. 24, 2013)..............................................54

*In re Matis*,
   73 B.R. 228 (Bankr. N.D.N.Y. 1987) ................................................................24

*Matthews v. City of New York*,
   779 F.3d 167 (2d Cir. 2015)........................................................................12, 16

*Mawere v. Citco Fund Servs.*
   (USA)..................................................................................................................60

*Mawere v. Citco Fund Servs. (USA) Inc.*,
   2011 U.S. Dist. LEXIS 149111 (S.D.N.Y. Sept. 16, 2011)..............................55, 60

*May v. Cooperman*,
   582 F. Supp. 1458 (D.N.J. 1984) ......................................................................30

*Menghi v. Hart*,
   745 F. Supp. 2d 89 (E.D.N.Y. 2010) ...................................................................8

*Millea v. Metro-North R.R.*,
   658 F.3d 154 (2d Cir. 2011).........................................................................38, 39

*Miller v. Dugan*,
   764 F.3d 826 (8th Cir. 2014) ............................................................................37

*Morris v. Eversley*,
   343 F. Supp. 2d 234 (S.D.N.Y. 2004).................................................................55

*N.Y. State Ass'n for Retarded Children v. Carey*,
   711 F.2d 1136 (2d Cir. 1983)........................................................................40, 43

*N.Y. State Nat'l Org. for Women v. Terry*,
   94 F. Supp. 2d 465 (S.D.N.Y. 2000).................................................................49

*New Mexico Citizens for Clean Air & Water v. Espanola Mercantile Co.*,
   72 F.3d 830 (10th Cir. 1996) ............................................................................36

*New York Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*,
   657 F. Supp. 2d 410 (S.D.N.Y. 2009)................................................................63

*Norman v. Housing Authority of Montgomery*,
   836 F.2d 1292 (11th Cir. Ala. 1988)..................................................................56

**Cases**                                                                   **Pages**

*O'Hara v. City of New York*,
   *slip op.* (TLM)(RML), (E.D.N.Y. March 16, 2015) ................................................54

*Palmer v. Rice*,
   2005 U.S. Dist. LEXIS 13677 (D.D.C. July 11, 2005)...........................................2

*Pascuiti v. New York Yankees*,
   108 F. Supp. 2d 258 (S.D.N.Y. 2000)....................................................................49

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
   478 U.S. 546 (1986)................................................................................................5

*Polk v. New York State Dep't of Correctional Servs.*,
   722 F.2d 23 (2d Cir. 1983)....................................................................................57

*Pontarelli v. Stone*,
   781 F. Supp. 114 (D.R.I. 1992).................................................................6, 7, 18, 33

*Quaratino v. Tiffany & Co.*,
   166 F.3d 422 (2d Cir. 1999)..................................................................................17

*Restivo Guardado v. Precision Fin., Inc.*,
   2008 U.S. Dist. LEXIS 47881 (E.D.N.Y. Mar. 9, 2008) ......................................68

*Restivo v. Nassau County*,
   2015 U.S. Dist. LEXIS 160336 (E.D.N.Y. Nov. 30, 2015).......................8-9, 60-61

*Rode v. Dellarciprete*,
   892 F.2d 1177 (3d Cir. 1990)................................................................................32

*Role Models Am., Inc. v. Brownlee*,
   353 F.3d 962 (D.C. Cir. 2004)..........................................................................30, 36

*Rosado v. City of New York*, No. 11 Civ. 4285 (SAS), 2012 U.S. Dist. LEXIS
   35249, 2012 WL 955510, at *5 (S.D.N.Y. Mar. 5, 2012) ....................................25

*Rozell v. Ross-Holst*,
   576 F. Supp. 2d 527 (S.D.N.Y. 2008)..............................................................59, 60

*Ryan v. Allied Interstate, Inc.*, Nos. 12 Civ. 0526 (AJP), 12 Civ. 1719 (AJP), 882
   F. Supp. 2d 628, 2012 WL 3217853, at *6 (S.D.N.Y. Aug. 9, 2012) ....... 25, 40, 67

*Schoolcraft v. City of New York*,
   103 F. Supp. 3d 465, 513-14 (S.D.N.Y. 2015) ................................................16, 34

**Cases**                                                                                              **Pages**

*Schoolcraft v. City of New York,*
    2011 U.S. Dist. LEXIS 48996 (S.D.N.Y. May 5, 2011)................................................15, 33, 35

*Schoolcraft v. City of New York,*
    2012 U.S. Dist. LEXIS 101317 (S.D.N.Y. July 18, 2012) .....................................................16

*Schoolcraft v. City of New York,*
    2012 U.S. Dist. LEXIS 82888 (S.D.N.Y. June 13, 2012).......................................................15

*Schoolcraft v. City of New York,*
    2015 U.S. Dist. LEXIS 125208 (S.D.N.Y. Sept. 18, 2015)....................................................15

*Scott v. City of New York,*
    626 F.3d 130 (2d Cir. 2010)............................................................................................. 43-44

*Scott v. City of New York,*
    643 F.3d 56 (2d Cir. 2011).....................................................................................................43

*Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.,*
    277 F. Supp. 2d 323 (S.D.N.Y. 2003)...................................................................................42

*Serricchio v. Wachovia Sec.,*
    LLC, 706 F. Supp. 2d 237 (D. Conn. 2010) .........................................................................51

*Shannon v. Fireman's Fund Ins. Co.,*
    156 F. Supp. 2d 279 (S.D.N.Y. 2001)...................................................................................41

*Simmonds v. N.Y. City Dep't of Corr.,*
    2008 U.S. Dist. LEXIS 74539 (S.D.N.Y. Sept. 15, 2008)................................. 6, 10, 21-23, 58

*Simmons v. New York City Transit Auth.,*
    575 F.3d at 174 .......................................................................................................................5

*Soler v. G & U, Inc.,*
    801 F. Supp. 1056 (S.D.N.Y. 1992)......................................................................................42

*Spell v. McDaniel,*
    852 F.2d 762 (4th Cir. 1988) ................................................................................................27

*Spencer v. City of New York,*
    2013 U.S. Dist. LEXIS 161693 (S.D.N.Y. Nov. 13, 2013) ...................................................63

*Stanczyk v. City of New York,*
    11-CV-0249 (FB)(RER), 2013 U.S. Dist. LEXIS 88143 (E.D.N.Y. Jun. 24,
    2013) ................................................................................................................................54, 72

**Cases**                                                                                            **Pages**

*Stanczyk v. City of New York*,
    11-CV-0249 (FB)(RER), 990 F. Supp. 2d 242 (E.D.N.Y. Jun. 24, 2013) .................54, 61, 62

*System Mgmt., Inc. v. Loiselle*,
    154 F. Supp. 2d 195 (D. Mass 2001) ............................................................................44, 48

*Teichner v. W & J Holsteins*,
    64 N.Y.2d 977 (N.Y. 1985) ...................................................................................................71

*Terminate Control Corp. v. Nu-Life Constr. Corp.*,
    28 F.3d 1335 (2d Cir. 1994).................................................................................................40

*Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,
    2012 U.S. Dist. LEXIS 164261 (S.D.N.Y. Nov. 14, 2012).............................................41, 67

*Tlacoapa v. Carregal*,
    386 F. Supp. 2d 362 (S.D.N.Y. 2005)..................................................................................63

*Torres v. City of New York*,
    No. 07 CV 3473 (GEL), 2008 U.S. Dist. LEXIS 11027 (S.D.N.Y. Feb. 14,
    2008) .......................................................................................................................................63

*Toussie v. County of Suffolk*,
    2012 U.S. Dist. LEXIS 127143 (E.D.N.Y. Sept. 6, 2012)......................................................18

*Townsend v. Benjamin Enters.*,
    679 F.3d 41 (2d Cir. 2012)....................................................................................................67

*Trs. of the Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity
    Fund & Training Program Fund v. Stevenson Contracting Corp.*,
    05 Civ. 5546, 2008 U.S. Dist. LEXIS 108690, 2008 WL 3155122 (S.D.N.Y.
    June 19, 2008)........................................................................................................................56

*Tucker v. Mukasey*,
    03 Civ. 3106 (LTS)(FM), 2008 U.S. Dist. LEXIS 48687, 2008 WL 2544504
    (S.D.N.Y. June 20, 2008).................................................................................................41, 42

*United States v. Jones*,
    No. 11-CV-2869 (JFB), 2013 U.S. Dist. LEXIS 175753, 2013 WL 6408639
    (E.D.N.Y. Dec. 9, 2013) ........................................................................................................57

*Vasconcellos v. City of New York*,
    2015 U.S. Dist. LEXIS 82836 (S.D.N.Y. June 1, 2015)...................................................39, 41

*Venuti v. Riordan*,
    702 F.2d 6 (1st Cir. 1983).....................................................................................................37

**Cases**        **Pages**

*Vilkhu v. City of New York*,
    2009 U.S. Dist. LEXIS 73696 (E.D.N.Y. June 25, 2009), *rev'd on other grounds*, 372 Fed. Appx. 222 (2d Cir. 2010)..........................................................49

*Vilkhu v. City of New York*,
    372 Fed. Appx. 222 (2d Cir. 2010)...................................................................13

*Vishipco Line v. Charles Schwab & Co.*,
    02 Civ. 7823, 7846, 7877, 7915, 7928, 7929 (SHS), 2003 U.S. Dist. LEXIS 6820, 2003 WL 1936142 (S.D.N.Y. Apr. 23, 2003)...............................................41

*W. Va. Univ. Hosps. v. Casey*,
    499 U.S. 83 (1991)..........................................................................................72

*Walker v. City of New York*,
    2015 U.S. Dist. LEXIS 101253 (E.D.N.Y. July 27, 2015)........................48, 49, 72

*Webb v. County Bd. of Educ.*,
    471 U.S. 234 (1985)......................................................................................1, 37

*Welch v. Metro. Life Ins. Co.*,
    2004 U.S. Dist. LEXIS 28578 (C.D. Ca. Sept. 20, 2004).....................................39

*Westchester Legal Services, Inc. v. County of Westchester*,
    1987 U.S. Dist. LEXIS 410 (S.D.N.Y. Jan. 15, 1987)........................................36

*Williamsburg Fair Hous. Comm. v. N.Y. City Hous. Auth.*,
    76 Civ. 2125 (RWS), 2005 U.S. Dist. LEXIS 5200 (S.D.N.Y. Mar. 31, 2005) (Sweet, J.)...................................................................................................36, 44

*Wilson v. Nomura Sec. Int'l, Inc.*,
    2002 U.S. Dist. LEXIS 12668 (S.D.N.Y. July 10, 2002) ....................10, 20, 23, 24

*Wise v. Kelly*,
    620 F. Supp. 2d 435 (S.D.N.Y. 2008).........................................................54, 58, 61

*Wong v. Hunda Glass Corp.*,
    2010 U.S. Dist. LEXIS 90736 (S.D.N.Y. Sept. 1, 2010).....................................60, 64

*Wong v. Young Yoo*,
    04-CV-4569 (JBW) (ALC), 2010 U.S. Dist. LEXIS 111142 (E.D.N.Y. Oct. 19, 2010), *aff'd* 450 Fed. Appx. 27 (2d Cir. 2011)..............................................54

**Statutes**

42 U.S.C. §1988.............................................................................3, 47, 55, 72

**Cases**                                                                      **Pages**

Mental Hygiene Law § 9.41..........................................................................................11

## PRELIMINARY STATEMENT

The motion-respondent City of New York (the "City") respectfully submits this

Memorandum of Law in support of its opposition to plaintiff's Motion for Attorneys' Fees, Costs

and Disbursements.

## INTRODUCTION

The size of plaintiff's fee claim is without precedent for a single-plaintiff civil rights

action.[1]  In this claim for one individual – centered on a single incident where plaintiff was taken

into custody and brought to a private hospital for evaluation as an emotionally disturbed person –

plaintiff claims 9,279.09 hours of time: the equivalent 152 hours per month or 1,824 hours per

year, on average over 61 months of litigation against the City.  When combined with pie-in-the-

sky hourly rates as high as $600 per hour, the fee claim (as best as the City can piece it together

from plaintiff's disparate filings) totals as follows:

| | |
|---|---|
| Norinsberg Team:[2] | $1,782,958.75 |
| Smith Team: | $2,328,548.00[3] |
| Gleason Team: | $289,919.50 |
| Total Fees: | $4,401,425.75 |
| Expenses: | $167,754.30[4] |

---

[1] The City's counsel is unaware of any published decision involving a single plaintiff Section 1983 case reporting the same or greater hours or total charges.  Declaration of Alan H. Scheiner, April 8, 2016 ("Dec.") ¶ 46.  For brevity, Exhibits to the Dec. are referred to herein as "Ex. __."

[2] The "Norinsberg Team" includes Jon Norinsberg, Gerald Cohen, Joshua Fitch, John Meehan, and Nicole Burzstyn.  The "Smith Team" includes Nathaniel Smith, John Lenoir, Howard Suckle, Magdalena Bauza, Lysia Smejila, Jeannette Lenoir and Jeremy Smith.  The "Gleason Team" includes Peter Gleason, Richard Gilbert, and Harvey Levine.

[3] This includes $193,175 for a law student (now graduated) who was not and is not a member of the bar, Magdalena Bauza, and time charges for two paralegals who may be relatives of plaintiff's counsel: Jeanette Lenoir (130.5 hours) and Jeremy Smith (69.68 hours).

[4] *See* Ex. D, Audit 3 (summarizing charges by timekeeper). The City offers, pursuant to Fed. R. Civ. P. 702(a), the expert testimony of Judith Bronsther, Esq., principal of Accountability Services, Inc., in the form of the Declaration of Judith Bronsther ("Bronsther Dec.") (Ex. B); the Resume of Judith A Bronsther (Ex. C), and the accompanying Audit of Accountability Services, Inc. (the "Audit") (Ex. D).  The expert's testimony in the form of Ex. B and Ex. D, or by testimony in court, may be properly considered on the question of the reasonableness of fees.  For example, in *Webb v. County Bd. of Educ.*, "[t]wo expert witnesses testified for the petitioner that the request of $ 120 per hour for 141.1 hours was reasonable." 471 U.S. 234, 238 (1985); *see also Lightfoot v. Walker*, 826 F.2d 516, 522 (7th Cir.

Total Claim:          $4,567,818.05

This equates, on average, to the extraordinary 'burn rate' of $74,882.26 per month and

$898,587.20 per year, averaged over the entire the 61 months of litigation against the City.

There is no precedent for this sort of profligate spending even in a fee application for a single

plaintiff, let alone a fee award.

Plaintiff's vast fee demand also contains relatively small but wildly inappropriate

expense charges, palmed-off within a mass of jumbled data.  Incredibly, the Gleason Team

claims as expenses $638 for clothes and $2,759 for an "Apple laptop, printer/scanner and two

iPhones," plus "Verizon cell phone service for two iPhones for 12 month contract at $144.97 per

line per month," all gifted to Schoolcraft by counsel, as well as attorneys' fees for the time they

took to shop for Schoolcraft.  *See* Ex. A, No. 564-8, at 7, 13; Ex. A[5], Nos. 229, 237; Audit 20.  In

other examples, the Smith Team bills the City for $212 in cash wired to Schoolcraft; $300 in

cash to an unknown person; and hotel bills in New York City of $1,193.68, $370 and $716.21,

---

1987) (recounting testimony from both sides' experts regarding the reasonableness of fees).  Ms. Bronsther's qualifications are set forth in her Declaration and the Audit, and include 24 years of experience in the field of attorneys' fees review and analysis, including numerous publications, speaking engagements, and expert retentions and audits.  *See* Audit 2; Ex. C, Resume; *see, e.g., Palmer v. Rice*, 2005 U.S. Dist. LEXIS 13677, *21-24, *30 (D.D.C. July 11, 2005) (detailing expert testimony of Judith Bronsther) (the court reduced the fees claimed by approximately 50%, stating "it is the court's opinion that the fees and costs the Terris firm seeks are not only unreasonable; they are egregious. The bill is, quite simply, staggering . . . .").  In the Audit, Ms. Bronsther calculates key metrics based on the billing submissions by plaintiff and provides detailed support for her opinions regarding plaintiff's billing practices and the reasonableness of plaintiff's time charges. The Audit will "help the trier of fact to understand the evidence or to determine a fact in issue," F.R.E. 702, and should be deemed admissible and considered by the Court.  Even if the Audit is not deemed admissible as expert testimony *per se*, it is a useful guide for the Court to the contents of plaintiff's submission and counsel's billing practices.  Should plaintiff object to the Court's consideration of the proffered expert's testimony or the Audit, the City reserves the right to make a further submission in support on the admissibility of the expert in response to such objection.

[5] "Exhibit A" or "Ex. A" is an electronic spreadsheet containing all of the fee information submitted by plaintiff's counsel in their numerous declarations and submissions, in hard copy, disparate formats.  It contains the fee date from plaintiff's counsel's submissions, except for the following: (1) rates and amounts charged are omitted; (2) travel time is adjusted to half-time unless that was already done; (3) the time entered by Magdalena Bauza was converted to decimal format where it was in purported 'elapsed time' format (hours:minutes:seconds); (4) a unique identifying number was added in the "No." column for each time entry for ease of reference. In electronic form Exhibit A may be searched by entry No., timekeeper, date and for text.

plus a conference room in Albany for $764.56, all on dates not corresponding to any event in this case.  Audit 18, 19.

These preposterous demands only highlight the broad absence of billing judgment that permeates the fee application.  For the reasons set forth below, severe reductions are required to render the fees and expenses reasonable.

**ARGUMENT**

**POINT I**

**THE FEE DEMAND IS EXCESSIVE ON ITS FACE AND REQUIRES A SUBSTANTIAL ACROSS-THE-BOARD REDUCTION TO <u>THE HOURS CLAIMED</u>**

**B.      The Presumptively Reasonable Fee Standard**

Plaintiff seeks "an Order pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and  42 U.S.C. §1988" granting "reasonable attorneys fees, costs and disbursements."  Notice of Motion, DE 559.[6]  Section 1988 provides: "In any action or proceeding to enforce a provision of section [1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988.  Where, as here, a plaintiff with a claim under Section 1983 accepts a Rule 68 Offer of Judgment that includes "reasonable attorneys' fees," the court awards attorney's fees and costs using the same standards as those applied under Section 1988.  *See Hassan v. New York City*, 2014 U.S. Dist. LEXIS 26194, *2-4 (E.D.N.Y. Feb. 10, 2014).[7]

---

[6] For brevity, docket entry numbers in the *Schoolcraft* docket are referred to as "DE" followed by the referenced docket entry number.

[7] Plaintiff's claims against the City of New York and all City employees or former employees who remained as defendants were dismissed and released when he accepted a Rule 68 Offer of Judgment against the City, made behalf of the City and all the City-employee defendants. DE 531-1 (Accepted Rule 68 Officer of Judgment).  The

-3-

District courts are "afford[ed] . . . considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Barfield v. N.Y. City Health & Hosps. Corp*., 537 F.3d 132, 151 (2d Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983))(approving of 50% reduction on attorneys' fee claim). "'[T]here is no precise rule or formula for making [fee] determinations . . . .'" *Husain v. Springer*, 579 Fed. Appx. 3, 6 (2d Cir. 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. at 436). Nevertheless, while "[d]etermining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge, . . . [that] discretion is not unlimited." *Id*. (citing *Perdue v. Kenny A.*, 559 U.S. 542, 558, (2010)).

For example, the Second Circuit in 2014 reversed a District Court for granting an excessive fee award, although the district court had already reduced plaintiff's fee claim by 72%, and affirmed a later award upon remand reducing fees and expenses by 93.3%. *See Husain v. Springer*, 2013 U.S. Dist. LEXIS 37134, *33 (E.D.N.Y. Mar. 14, 2013) (awarding $233,239.20 out of a total claim of $832,409.67), *rev'd* 579 Fed. Appx. 3 (2d Cir. 2014), *on remand*, *Husain v. Springer*, 2014 U.S. Dist. LEXIS 184720, *4 (E.D.N.Y. Dec. 9, 2014) (awarding a total of $56,168.40 in fees and expenses), *aff'd*, 622 Fed. Appx. 13 (2d Cir. 2015).

"Awards of attorney's fees are generally calculated according to the 'presumptively reasonable fee' method, calculated as the product of the number of hours [reasonably] worked and a reasonable hourly rate." *Francois v. Mazer*, 523 Fed. Appx. 28, 29 (2d Cir. 2013) (affirming 40% across-the-board reduction in hours claimed to render the fees reasonable) (citing

---

Offer of Judgment stated: "Should plaintiff accept this offer of judgment, plaintiff shall be entitled to reasonable attorneys' fees, expenses and costs to the date of this offer for plaintiff's federal claims." *Id*. at 2.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183-84 (2d

Cir. 2008)). "The presumptively reasonable fee boils down to what a *reasonable, paying client*

*would be willing to pay, given that such a party wishes to spend the minimum necessary to*

*litigate the case effectively.*"  *Simmons v. New York City Transit Auth.*, 575 F.3d at 174

(quotation marks and citation omitted) (emphasis added); see also *Arbor Hill*, 522 F.3d at 184

(court should "determine what a reasonable, paying client would be willing to pay," considering

"complexity and difficulty of the case . . . but not endorsing scorched earth tactics" and "other

returns (such as reputation, etc.: that an attorney might expect from the representation).[8]

     The obligation of a defendant to pay reasonable fees is not the same as, and often is less

than, the obligation of a client to pay reasonable fees to the same attorneys.  For example, a

client could agree to specific hourly rates; request duplicative work; fail to object to

unreasonable bills; or ask that counsel perform services beyond the litigation such as public

relations or personal representational matters.  The private client may be obligated to pay for

such things, but "[w]hatever the terms of the private agreement between attorney and client, it is

not required that [defendant] be required to sign on to that agreement by virtue of his [obligation]

to pay 'reasonable'" fees and expenses." *Daiwa Special Asset Corp. v. Desnick*, 2002 U.S. Dist.

LEXIS 23073, at *7; *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,

478 U.S. 546, 565 (1986) (fee-shifting arrangements "were not … intended to replicate exactly

the fee an attorney could earn through a private fee arrangement with his client"); *Hensley v.*

---

[8] Where, as here, "claims for attorney's fees are brought against the government, courts should exercise "special
caution" in scrutinizing the fee petition."  *Harvey v. Mohammed*, 951 F. Supp. 2d 47, 54-55 (D.D.C. 2013).  This is
"because of the incentive which the [government's] 'deep pocket' offers to attorneys to inflate their billing charges
and to claim far more as reimbursement [than] would be sought or could reasonably be recovered from most private
parties." *Id*. (quoting *Eureka Inv. Corp., N.V. v. Chicago Title Ins. Co.*, 743 F.2d 932, 941 (D.C. Cir. 1984) (internal
citation omitted) (citing *Ctr. for Biological Diversity v. Norton*, 2005 U.S. Dist. LEXIS 47608, 2005 WL 6127286,
at *1 (D.D.C. 2005) ("Courts must review fee applications carefully to ensure that taxpayers only reimburse
prevailing parties for reasonable fees and expenses that contributed to the results achieved . . . .")).

*Eckerhart*, 461 U.S. 424, 441 (1983) (Burger, C. J., concurring) ("A claim for legal services presented by the prevailing party to the losing party … presents quite a different situation from a bill that a lawyer presents to his own client").

   **C.    Plaintiff's claim is excessive on its face compared to readily available benchmarks in case law.**

   The Second Circuit encourages district courts to apply their legal experience, billing judgment, and direct knowledge of the case, to estimate how much time should reasonably have been expended.  *See DiFilippo v. Morizio*, 759 F.2d 231, 235-236 (2d Cir. 1985) ("In ruling on applications for fees, district courts must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case.") (estimating hours required overall and for certain discrete tasks).  "With respect to the evaluation of time sheets and expense records, "'it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent.'*" Daiwa Special Asset Corp. v. Desnick*, 2002 U.S. Dist. LEXIS 23073, *4-6 (S.D.N.Y. Dec. 3, 2002) (quoting *Amato v. City of Saratoga Springs*, 991 F. Supp. 62, 65 (N.D.N.Y. 1998) (citing *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)) (reducing fees by 50%).

   "One measure of the extent of th[e] inflation [of fees] is the disproportion between the total time the 'plaintiffs' attorneys say they spent on this case and what one would expect was reasonably required." *Pontarelli v. Stone*, 781 F. Supp. 114, 117 (D.R.I. 1992) (attorneys' fee claim for 4,000 hours of time facially excessive for claim of sexual discrimination and retaliation on behalf of a police lodge and five of its police officers); *see also Simmonds v. N.Y. City Dep't of Corr.*, 2008 U.S. Dist. LEXIS 74539, *23 (S.D.N.Y. Sept. 15, 2008) ("Even if we posited a litigation team consisting of one experienced partner and one junior associate, we cannot imagine

how the various tasks performed by counsel could have taken more than a total of 200 hours, less time than that spent by either the ACLU or Steptoe on this matter.")

Even just a casual comparison of the hours claimed to fee claims comparable cases shows that plaintiff's claimed number of hours is absurdly inflated, even compared to fee demands that were deemed excessive in other cases.  As with the retaliation claim in *Pontarelli* – which concerned a police lodge and *five individual plaintiffs*, rather than the just one plaintiff here, purportedly requiring 4,000 hours – the fees incurred here, amounting to over 9,000 hours for one plaintiff – are facially excessive for a case "based on a relatively simple sequence of events occurring over a limited period of time." *Id*.  A comparison to complex civil rights cases shows that the time incurred here should never have been more than 2,500-3,000 hours, at the upmost.

In *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 507, 514-515 (S.D.N.Y. 2010), the court found that 2,385 hours of claimed time (after a voluntary reduction) was excessive for a case *with seven plaintiffs*; four years of litigation; 11,000 pages of document discovery; 24 fact depositions; expert reports and expert depositions; numerous discovery motions and a summary judgment motion, ten motions *in limine*; and a ten-day jury trial.  *Id*.  Despite the "hard fought, heavily litigated" nature of that case, the court found that 2,385 hours was excessive and applied an across-the-board discount of 10% for the reason alone.  *Id*.  Even if *Adorno* were generously scaled up[9]—the proportional number of hours if increased by *one-third* would be only 3,172 hours, not the over 9,000 hours claimed here.

Comparison with *Lochren v. County of Suffolk*, 2010 U.S. Dist. LEXIS 28288, *7-9 (E.D.N.Y. Mar. 23, 2010), yields a similar result.  In *Lochren*, 16 attorneys from five different

---

[9] *Schoolcraft* had five years of litigation, approximately 15,000 document-production pages, and 38 deposition witnesses (many less than ½ day long).  *See* Plf. Mem. at 6; Ex. N (Chart of Depositions).

law offices (including two non-profit agencies) successfully litigated over the course of five

years on behalf of six plaintiffs (like Schoolcraft, police officers) claiming pregnancy

discrimination, winning at trial both damages and an invalidation of the defendants' challenged

policy. *Lochren v. County of Suffolk*, 2008 U.S. Dist. LEXIS 38100, *2 (E.D.N.Y. May 8,

2008). The total number of hours billed for all timekeepers for the entire case, *before the court's

25% discount for excessive billing*, was only 2,589.37. *Lochren*, 2010 U.S. Dist. LEXIS 28288at

*9-10; *see also Menghi v. Hart*, 745 F. Supp. 2d 89, 111, 114 (E.D.N.Y. 2010) (for civil rights

litigation of more than six years with a trial plaintiff claimed only 1,028 hours, which was

reduced by 20% by the Court, which removed all paralegal time).

 The claim is inflated even compared to the 6,036.8 hours incurred in a 38-plaintiff

conditions of confinement claim, where for over *seven years* the plaintiffs litigated a wide range

of prison conditions issues, including plumbing, health care, overcrowding, vermin, bathing,

hygiene and cleanliness; culminating in a 30-day trial and extensive post-trial briefing. *See

Lightfoot v. Walker*, 826 F.2d 516, 517-520 (7th Cir. 1987). In that case, "the state 'strenuously

fought' the plaintiffs every step of the way, causing the [district] court to remark that this was

'one of the most bitterly fought battles' ever before it. Id., 826 F.2d at 520 (quoting, *Lightfoot v.

Walker*, 619 F. Supp. 1481, 1488 (S.D. Ill. 1985)). Nothing but inefficiency or avarice can

explain how Schoolcraft's lawyers exceeded the hours billed in *Lightfoot* by more than 50%.

 The only non-class action fee claim from the Southern or Eastern Districts found that

exceeds Schoolcraft's was *Restivo v. Nassau County*, 2015 U.S. Dist. LEXIS 160336, *11

(E.D.N.Y. Nov. 30, 2015), but that case is readily distinguishable on its face, and most

importantly the *Restivo* attorneys they claimed *400 hours less per year* than Schoolcraft's team.[10]
In *Restivo*, a total of 10 attorneys and four paralegals represented *two plaintiffs* (unlike the one
here) in a case litigated for eight years:[11] between two and five attorneys worked at one time
during the discovery phase; eight attorneys worked during the first trial; and six attorneys and
one law clerk worked during the second trial. *Restivo v. Nassau County*, 2015 U.S. Dist. LEXIS
160336, at *11. The court's description of the *Restivo* litigation shows that by every measure
that litigation was far more burdensome – two plaintiffs, 13 experts, more deposition days, 48
trial days over two trials, 82 trial witnesses – in addition to the inherent difficult in wrongful
conviction cases. *Restivo v. Nassau County*, 2015 U.S. Dist. LEXIS 160336, at *2-4 (citations
omitted).[12]

Where, as here, overbilling is extravagant and pervasive, the court's will apply across-
the-board percentage reductions as high as 50%-70% off of the hours billed to achieve a
reasonable result. *See Daiwa Special Asset Corp. v. Desnick*, 2002 U.S. Dist. LEXIS 23073, *13
(S.D.N.Y. Dec. 3, 2002) (applying a 50% reduction to a fee claim because of the use of multiple
attorneys for depositions, unnecessary travel, and general overstaffing and duplication of effort).
For example, this Court applied a ***50% discount*** in a case exhibiting only some of the problems

---

[10] Plaintiff's counsel for Schoolcraft have claimed 1,825 hours of time per year in 61 months of litigation, while
counsel in *Restivo* counsel claimed only 1,402 hours per year. In *Restivo* the hours as published in the case show
that a total of 11,214.6 hours were claimed for all attorney and paralegals, although the Court refers to this as "total
attorney time." *Restivo*, at 9, 15-16. The case ran for 95 months, so the monthly hours were 118 and the yearly
hours were 1,416.

[11] The docket shows that the time from filing to Judgment was 12/21/2006 to 11/17/2014: 95 months. *See* Docket
Nos. 1, 228, *Restivo v. Nassau County*, 06-cv-06720-JS-SIL.

[12] *Restivo* is not a model of a reasonable fee claim, despite being more reasonable than plaintiff's here. Aside from a
reduction for travel time, the Court in *Restivo* declined to scrutinize the fees, and erroneously held that defendants
were entitled to less reasonable time charges than private clients who "receiv[ed] monthly bills." *Restivo v. Nassau
County*, 2015 U.S. Dist. LEXIS 160336, *14. But that is contrary to the Supreme Court's view that defendants are
entitled to at least the same protection against unreasonable billing as paying clients. *See Hensley v. Eckerhart*, 461
U.S. at 434; *see also Daiwa Special Asset Corp. v. Desnick*, 2002 U.S. Dist. LEXIS 23073, at *6-7.

found here. *Wilson v. Nomura Sec. Int'l, Inc.*, 2002 U.S. Dist. LEXIS 12668, *13-14 (S.D.N.Y. July 10, 2002) (Sweet, J.) (applying 50% reduction for vague billing and excessive hours spent by partners on associate level or clerical tasks), *reconsideration on other grounds denied*, 2002 U.S. Dist. LEXIS 21554 (S.D.N.Y. Nov. 7, 2002), *aff'd in part, rev'd in part, on other grounds,*, 361 F.3d 86 (2d Cir. 2004).

Another court in this district applied a *70% discount* because plaintiff's counsel, as here – *see infra* at 22-23, 44-46; Audit 87-124 – counsel "billed for unnecessarily duplicative work such as e-mails, telephone calls, direct conversations, and the creation and review of internal memos and the client's case file." *Andert v. Allied Interstate*, LLC, 12 Civ. 7010 (PAC), 2013 U.S. Dist. LEXIS 104422 (S.D.N.Y. July 17, 2013); *see also Simmonds v. N.Y. City Dep't of Corr.*, 06 Civ. 5298 (NRB), 2008 U.S. Dist. LEXIS 74539 (S.D.N.Y. Sept. 15, 2008) (applying a "forty (40) percent reduction in the total number of hours expended is necessary to correct for the inefficiencies resulting from the co-counsel arrangement and from the apparent willingness to conduct the litigation in an undisciplined manner."); *see also Francois v. Mazer*, 523 Fed. Appx. 28, 29 (2d Cir. 2013) (affirming 40% discount for excessive hours); *Carter v. Inc. Vill. Of Ocean Beach*, 759 F.3d 159, 167 (2d Cir, 2014) (affirming a one-third reduction in fees for "redundant, duplicative or unnecessary" work); *Do Yea Kim v. 167 Nail Plaza, Inc.*, 2009 U.S. Dist. LEXIS 1992, *4 (S.D.N.Y. Jan. 9, 2009) (applying 40% reduction after FLSA trial where counsel expended unreasonable amount of time, overstaffed the trial, and submitted "some questionable billing entries," including for a press release).

**D.      Plaintiff offers no valid explanation for the excessive number of hours purportedly devoted to this case by plaintiff's counsel, who were exceedingly inefficient despite charging premium rates.**

**1.      Plaintiff's Claim Was Not Inherently Complex**

Plaintiff's counsel maintain that this was an inherently complex, burdensome matter, but any complexity and burden was largely of plaintiff's counsel's own making. The gist of plaintiff's claim was that he was taken into custody on October 31, 2009 at his apartment, under the Mental Hygiene Law § 9.41, for evaluation as an emotionally disturbed person without probable cause to believe that he was a danger to himself or others. *Schoolcraft*, 2015 U.S. Dist. LEXIS 58831, at *86-89. This occurred only once. The remainder of plaintiff's contentions concerned relatively minor incidents before or after this event, most of which were ruled out as the basis of a free-standing claim. *See infra* at 14 (listing dismissed claims). It was plaintiff's choice to depose over thirty witnesses, despite that fact that most of the interactions he claimed about had been recorded by him, thus obviating most factual disputes about them;[13] only plaintiff and his father, and plaintiff's two police experts were deposed by the City.

The pivotal issue in this action was the legally and factually prosaic question of whether or not there was probable cause for plaintiff to be taken into custody as an EDP (i.e., for his "arrest"). Probable cause was a defense not only to plaintiff's state and federal false arrest and false imprisonment claims, but also to any other claim based on the "arrest," such as plaintiff's *Monell* claim (see *Lebowitz v. City of New York*, No. 14-812, 6060 Fed. Appx. 17, 18 (2d Cir. June 2, 2015) or First Amendment claims. *See Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). Plaintiff's problematic First Amendment claim was little more than window dressing: if there was no probable cause then his claim for his "arrest" would be successful, absent qualified immunity (regardless of proof of retaliatory motive), but if there *was* probable

---

[13] Plaintiff's counsel's burden was eased by plaintiff's recording of nearly the entire incident at his apartment, obviating most factual disputes about what occurred there. Dec. ¶ 8. In addition, plaintiff had recorded his entire tour of duty earlier that day; telephone calls he had with IAB and his father earlier that day; and a voicemail message from an NYPD psychologist; and a recording of a call between his father and a defendant prior to his arrest. *Id.* No trial lawyer could ask for more to resolve numerous key issues that otherwise might be open to dispute.

cause, he could not recover for the "arrest" under any theory, regardless of the motivation for the City employee's actions.[14]

Plaintiff will point to his *Monell* claim to justify the vast scope of his case.  But as set forth in the City defendants' motions *in limine* – to which plaintiff never responded and upon which the Court never ruled[15] – plaintiff's reliance on remote events involving other times, places and people, and his experts' inadmissible opinions, was an irrelevant and prejudicial detour.  *See* Mem. in Support of Motion *in Limine*, at 19-27, DE 499; Mem. in Support of Motion to Preclude Expert Testimony, at 18-19, DE 496.  Plaintiff's website and dragnet approach to find *Monell* witnesses, plaintiff's JPTO listed only a handful to testify about unrelated events, all but one of which were readily available to plaintiff from their testimony in *Floyd v. City of New York* or from other public, pending lawsuits.  *See* Ex. Z, at 7-8 (List of witness testifying in *Floyd*, listing Polancno and Serrano); *Matthews v. City of New York*, 779 F.3d 167, 174 (2d Cir. 2015).  The other witness – Ferrara – lacked any admissible testimony.[16] *See* Mem. in Support of Motions *in Limine*, at 23-25, DE 499.

Moreover, even in a complex matter, experienced counsel ought to be able to work with far greater efficiency and less mutual supervision.  *See infra* at 19-20.

---

[14] Without a claim based on the arrest, plaintiff would have been left only with a claim for entry into his apartment, and claims that he was retaliated against in the course of his employment. Like the arrest, all of the interactions on which plaintiff based his workplace retaliation and harassment claims were recorded by Schoolcraft, substantially easing the litigators' burden. Dec. ¶ 8.

[15] Plaintiff also trumpets purported success on his motions *in limine* (Plf. Mem. 13) but in fact plaintiff's motions against the municipal defendants were never ruled on, nor were the motions filed by those defendants even opposed, since plaintiff accepted the City's Rule 68 before oppositions to the motions *in limine* were filed.

[16] Of the supposed witnesses located by plaintiff's counsel listed at Plf. Mem. 2, at least Rodrigeuz, Whitehead, Vasquez and Miller seem never to have come up in the course of document discovery or other disclosures.  Dec. ¶ 20.   Only Polanco, Matthews, Serrano, and Ferrara were listed in the JPTO.

### 2.      Plaintiff Did Not Prevail On All Claims And Was Not Extraordinarily Successful

Plaintiff's counsel argues that they enjoyed extraordinary success in the case, which they imply justifies the outrageous fee demanded. But that argument is based on an incorrect benchmark for success, and a bizarre reading of the language of the Rule 68 Offer of Judgment.

### a.  Plaintiff was not highly successful compared to the relief that he sought in the case.

"Both the quantity and quality of relief obtained, *as compared to what the plaintiff sought to achieve as evidenced in [the] complaint*, are key factors in determining the degree of success achieved." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (emphasis added) (citing *Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997); *accord Vilkhu v. City of New York*, 372 Fed. Appx. 222, 224 (2d Cir. 2010). Thus, "[a] district court's assessment of the "degree of success" achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual claims." *Barfield*, 537 F.3d at 152 (affirming 50% reduction in fee for failure to achieve result sought in the complaint) (citing *Kassim v. City of Schenectady*, 415 F.3d 246, 254 (2d Cir. 2005).

In fact, when compared to the relief that plaintiff sought in his complaint – the true benchmark for success under Second Circuit law – plaintiff did not come close to what he sued for.  The first complaint, filed like all pleadings pursuant to Fed. R. Civ. P. 11, demands $25 million in compensatory damages and $25 million in punitive damages.  Complaint, DE 1, at 62. Even plaintiff's exaggerated $2 million estimate of the present value of the "relief" obtained (Plf. Mem. 18), unsupported by any calculations or other evidence, is a tiny fraction of the relief

demanded, and less than one half of the fees that plaintiff's counsel now demands.  No punitive damages were ever awarded.[17]

Plaintiff also asserts that counsel achieved relief – backpay and pension – that he now conveniently concedes could not have been obtained in the litigation.  In fact, during the litigation plaintiff purported to seek economic damages in the form of backpay and future lost income, requiring the City to move to preclude such evidence from the trial in a motion *in limine* that was never decided.  *See* Mem. in Support of Motions in Limine, at 12-13, DE 499.  While defendants' motion to preclude evidence on the claim was valid, plaintiff cannot be heard now to say now that he was 'just kidding' about economic damages.[18]

### b.  Plaintiff did not prevail on several claims against the City defendants.

Plaintiff spuriously argues that because the Rule 68 offers judgment on "all claims" that means plaintiff obtained "a judgment against the City Defendants on every single claim asserted herein."  Plf. Mem. 1, 16, 18.  This is nonsense.  First, the Rule 68 offered plaintiff to "take a judgment against the City of New York" not the "City Defendants," and therefore no Judgment was had on claims against other parties. Accepted Offer of Judgment, at 1, DE 531-1.  Second, it is

---

[17] Courts will sometimes consider a parties' settlement negotiating positions in determining attorneys' fees. *See, e.g., Ingram v.* Oroudjian, 647 F.3d 925, 927 (9th Cir. 2011) (recounting how plaintiff made settlement demand that was many times the ultimate amount of the settlement, as justification for reduction in attorney fee award).  The parties' settlement discussions in this case are strictly confidential pursuant to an agreement of the parties and accordingly does not submit information here on that subject.  However, should the Court deem settlement positions relevant to its determination or should the plaintiff breach its obligations of confidentiality and allude to settlement positions in its arguments with respect to fees, the City reserves the right to submit information to the Court under seal setting forth the parties' respective positions on settlement during the litigation of this matter.

[18] Nor did plaintiff did receive any promise of a pension in the Offer of Judgment beyond that which occurs as a matter of course to any employed and fully paid Member of the Service at retirement: which plaintiff would be if he received backpay. Dec. ¶ 9.  While a trial victory here would not have automatically resolved plaintiff's disciplinary issues, had judgment Schoolcraft prevailed on his claims he surely would have sought relief from disciplinary proceedings that he claimed were retaliatory; in fact, he had moved to stay those proceedings pending a verdict. DE 152. Plaintiff surely would have sought relief from those proceedings had he prevailed at trial.  Only now, after pocketing a settlement, does plaintiff pretend that his retirement was a windfall.

an offer of settlement as plaintiff states, and nothing in the document *revives* the several claims

against the municipal defendants that were previously dismissed:

- Plaintiff dropped four named defendants after the defendants moved to dismiss the claims against them on summary judgment. DE 291.

- Claims against the City or City employees were dismissed on summary judgment:
    - First Amendment claim for prior restraint with respect to post-suspension speech
    - First Amendment claim against individual defendants for retaliation for pre-suspension  speech
    - Monell claim based on insufficient training.
    - Section 1983 Conspiracy Claim against the City defendants
    - Section 1983 claim for conspiracy between the City defendants and the medical defendants
    - Common Law Negligent  Hiring, Training, Supervision and Retention
    - Claim against City Defendants
    - Claim for negligent disclosure of lAB complaint
    - Claim for Malicious Abuse of Process
    - False Arrest and Use of Force Claims, and their State Law analogues against Mauriello
    - Unlawful Search Claim Against Mauriello
    - All claims against Captain Trainor
    - All claims against Lt. Caughey

*See generally, Schoolcraft v. City of New York*, 2011 U.S. Dist. LEXIS 48996 (S.D.N.Y. May 5,

2011); *see also Schoolcraft v. City of New York*, 2015 U.S. Dist. LEXIS 125208, *9-10

(S.D.N.Y. Sept. 18, 2015) (dismissing claims against Caughey). Nor did plaintiff obtain any

declaratory or injunctive relief, sought in his Third Amended Complaint.  DE 342 at 63.

Plaintiff also obtained only very limited success on his First Amendment claim, which

counsel prosecuted in a faltering and wasteful manner. Counsel's first move was to drop

Schoolcraft's First Amendment claim (without any motion by defendants).  *See* Complaint,

Docket No, 1, at 42-44; Ex. E, First Amended Complaint, DE 21.  Next Schoolcraft brought

successive motions to add the First Amendment claim back into the case: first a motion to

amend, then followed by a motion for reconsideration of the denial of leave to amend, each

based on different theories.  *See Schoolcraft v. City of New York*, 2012 U.S. Dist. LEXIS 82888,

*28 (S.D.N.Y. June 13, 2012) (denying leave to add First Amendment retaliation claim); *Schoolcraft v. City of New York*, 2012 U.S. Dist. LEXIS 101317, *2-3, 14-15 (S.D.N.Y. July 18, 2012) (recounting motion to amend, denial of the motion to amend, and denial of motion for reconsideration);.[19]  The plaintiff's claim for prior restraint of plaintiff's alleged post-suspension speech, which was ultimately allowed to be pled, but was dismissed upon summary judgment, along with claims against the individual defendants for retaliation that were revived (only against the City) due to a change in the law.  *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 513-14 (S.D.N.Y. 2015),[20]

Thus, Schoolcraft's counsel achieved far from the complete victory they claim in their fee submission.[21]  Although the City does not argue for a reduction in the fee award as a result of the plaintiff's mixed success, neither could the results here warrant anything greater than a reasonable fee, which is far less than plaintiff demands.

### 3.    Alleged "aggressive" litigation by the City does not justify excessive fees and in fact plaintiff multiplied these proceedings by taking unreasonable positions.

Plaintiff asserts that the City "aggressively" litigated the case, and implies that this justifies the excessive hours incurred. Plf. Mem. 7.  But in fact the plaintiff played no small role in causing unnecessary motion practice in this case.[22]  The Second Circuit holds that a plaintiff's

---

[19] *See also Schoolcraft* Docket Nos. 1 (Complaint); 21 (First Amended Complaint); 101 (Motion to Add Defendant), 103 (Second Amended Complaint); 291 (Motion to file Third Amended Complaint, 340 (Third Amended Complaint).

[20]  The change in the law occurred in *Matthews v. City of New York*, 779 F.3d 167, 174 (2d Cir. 2015), which the City's counsel (not plaintiff) brought to the Court's attention in appropriate candor in defendants' reply on summary judgment. *See*  City Defs. Reply Mem. of Law at 11-15, DE 411.

[21] Most of plaintiff's claims against the Medical Defendants were also unsuccessful. *See infra* at 33-34.

[22] The City filed no motions on any subject in this case until March 12, 2012 – nearly 20 months after the case began – when confidential information produced in discovery was leaked to the press (an event which was never explained).  *See* Ex. V; DE 75.  Plaintiff's counsels themselves engendered unnecessary litigation by repetitive and

fees may be reduced on that basis, even if the defendants may be equally at fault (which they are not here).  *See Luciano v. Olsten Corp.*, 109 F.3d 111, 117 (2d Cir. 1997) (approving across-the-board 15% discount for unnecessary litigiousness by plaintiff although defendants were equally at fault).

**POINT II**

**DETAILED EXAMINATION OF PLAINTIFF'S COUNSEL'S TIME ENTRIES SHOWS THAT COUNSEL FAILED TO EXERCISE BILLING JUDGMENT IN PREPARING THEIR SUBMISSION AND INCURRED EXCESSIVE AND INEFFICIENT CHARGES IN RELATION TO THE WORK PERFORMED.**

While a detailed presentation of time charged is required, it is not sufficient to establish a reasonable fee.  The Court should be "mindful that although detail and transparency are necessary to support a request for attorneys' fees; 'detail often hides exaggeration and excess.'" *Andert v. Allied Interstate*, LLC, 2013 U.S. Dist. LEXIS 104422, *7 (S.D.N.Y. July 17, 2013) (citing *Barile*, 2013 U.S. Dist. LEXIS 32483, 2013 WL 795649, at *7).The Supreme Court holds that counsel claiming fees are ethically obligated to apply "billing judgment"[23] to fee claims, and exclude from their application time charges which are excessive, redundant, wasteful or not within the scope of the recoverable work:

---

unsuccessful motions and tenuous discovery positions, such as by: refusing to allow an additional day of deposition (DE 116); twice moving unsuccessfully to lift the protective order that plaintiff had previously agreed to (*see* Exhibits I, J, K, L & Transcript of October 16, 2013, DE 189 at 4-5); making several unsuccessful motions to amend (*supra* at 14-15) and motions for reconsideration (DE 95, 449; DE 489 at 15-21)); a motion for sanctions after the City consent to plaintiff's discovery demand, notwithstanding valid objections (*see* DE 184, at 1-2); refusing basic discovery such as information on witnesses (DE 151), communications through Schoolcraftjustice.com (DE 206) and communications with the media (DE. 134, 146), and information on damages (DE 268).

[23] This concept of "billing judgment" is separate and apart from the economic analysis labeled "billing judgment" and rejected in *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999), which would hold that "an attorney's requested fee would be judged 'reasonable' if it were rationally related to the monetary recovery that the attorney could have anticipated ex ante." *Id.*

> Cases may be overstaffed, and the skill and experience of lawyers
> vary widely. Counsel for the prevailing party should make a good-
> faith effort to exclude from a fee request hours that are excessive,
> redundant, or otherwise unnecessary, just as a lawyer in private
> practice ethically is obligated to exclude such hours from his fee
> submission. 'In the private sector, "billing judgment" is an
> important component in fee setting. It is no less important here.
> Hours that are not properly billed to one's *client* also are not
> properly billed to one's adversary pursuant to statutory authority.'

*Hensley v. Eckerhart*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (1980)

(en banc) (emphasis in original)).

Courts have denied fee claims entirely where, as here, plaintiff's counsel flouts this

obligation to exercise billing judgment, such that the fee claim becomes "an opening gambit in

negotiations to reach an ultimate result."  *Lewis v. Kendrick*, 944 F.2d 949, 958 (1st Cir. 1991)

(denying any fee due to outrageously excessive claim); *see also Toussie v. County of Suffolk*,

2012 U.S. Dist. LEXIS 127143, *23-24, *30 (E.D.N.Y. Sept. 6, 2012) (denying any fee due to

bad faith excessive claim); *Brown v. Stackler*, 612 F.2d 1057 (7th Cir. 1980) (same). *In Lewis v.

Kendrick,* the First Circuit denied a prevailing party any fee recovery because the applicant failed

to "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or

otherwise unnecessary," or discount the fees claimed for lack of success on significant severable

claims.  *Id*. (quoting *Hensley v. Eckerhart*, 461 U.S. at 434); *see also Brown v. Stackler*, 612 F.2d

1057 (7th Cir. 1980) **(**"Appellant's counsel submitted a claim which was so intolerably inflated

that the District Court was warranted in departing from the usual practice and reacting vigorously

to prevent such abuse of the court's authority to award reasonable compensation to counsel."); 

*Pontarelli v. Stone*, 781 F. Supp. 114, 124 (D.R.I. 1992) ("[T]he [plaintiff's counsel's] failure to

make any effort to exclude unrelated and/or unnecessary hours constitutes the kind of bad faith

that warrants" denial of the fee application.") (quotation omitted) (denying fee application

because plaintiff included time spent on other lawsuits and legal services for plaintiff unrelated

to the claim, and lobbying efforts); *see also Fair Housing Council v. Landow*, 999 F.2d 92, 98

(4th Cir. 1993) (denying fees application in its entirety where "the attorneys . . . intended to

submit an outrageously excessive fee petition in the hope that the district court would at least

award some, preferably high, percentage of the requested fees. We believe Congress did not

intend to foster such gamesmanship when it enacted the Civil Rights Attorney's Fees Awards

Act of 1976.").

The following specific metrics, and others detailed in the Audit, show why a severe

reduction of the hours billed for compensable work is required in order to account for the excess,

lack of billing judgment,[24] and the duplication in the fee claim here.

***Depositions: Plaintiff's claim to have expended 1,443 hours (excluding deposition***

***digesting) in preparation or attendance of the depositions of 34 deponents* (on average over a**

**40-hour weeks' work for each witness, although many were no more than 1-2 hours long).**

Audit 10; Ex. N (Deposition List).  This is the result of consistent double and even triple teaming

of staff at depositions: 38 of the 41 deposition sessions were attended by multiple attorneys, with

3 being attended by 3 timekeepers.  Audit  83-89.  (For comparison, the City sent two lawyers to

only two deposition days in this case.  *See* Ex. N.)

Even if a partner and an associate might have been appropriate staffing for a deposition, it

is improper to charge partner-level rates – and certainly not the highest-tier rates that they seek in

---

[24] The only real example of billing judgment in the fee application is plaintiff's omission of charges for some law
student Bauza's attendance at depositions and court conferences also attended by two or more lawyers.  Plaintiff's
counsel argues that they exercised "billing discretion" in not seeking fees for their fee application and reserve the
right to do so in Reply.  Plf. Mem.  36-37 n. 27.  The authorities plaintiff cites are inapposite because in this case
plaintiff *accepted* a Rule 68 limiting fees to those incurred as of the date of the offer. DE 531-1, at 2. That is
sufficient to rule out any fees incurred after that date.  *Long v. City of New York*, 2010 U.S. Dist. LEXIS 81020, *5-6
(S.D.N.Y. Aug. 6, 2010).  Moreover, any equitable considerations would not call for 'fees on fees' here -- in fact it
is the opposite – the plaintiff did not contact the City to attempt to settle fees prior to the fee submission or disclose
any information about the fees prior to its motion; the City then requested a settlement conference.  Dec. ¶ 21.  Nor
are the City's positions on fees are taken in bad faith, as established herein. Should plaintiff seek additional fees in
Reply, the City reserves the right to make a further submission in defense of such a claim.

this case – for two senior lawyers to double-up on specific tasks, whether drafting documents, trial preparation or depositions. If counsel are truly experienced, they should have been able to litigate this matter with far more efficiently. There is certainly no need for a committee of partners to participate in each and very task, which counsel's time records indicate, especially for the Norinsberg team. *See* Audit 44-47, 51-42 (formula billing, duplicate entries), 8-14, 72-105 (duplication of effort); *infra* at 43-44 (detailing duplicate time entries for Norinsberg team). Courts routinely make substantial across-the-board reductions – e.g., 50% – for just this sort of excessive staffing, especially where, at here, in involves multiple senior attorneys. *Daiwa Special Asset Corp. v. Desnick*, 2002 U.S. Dist. LEXIS 23073, *1 (discounting hours 50% in part due to double-teaming of depositions). This Court has also applied a 50% reduction in part due to the practice – exhibited here throughout counsel's time charges – of senior counsel performing associate level work in drafting, witness preparation, research and the like, all under the "supervision" of each other. *Wilson v. Nomura*, 2002 U.S. Dist. LEXIS 12668, at *12-13; s*ee* Audit 8-12, 51, 82 (counsel performed associate level or double-work at partner rates), *see generally Id*. 74-109 (detailing duplication).

**Trial Preparation: Plaintiff's counsel claim to have expended 1,435 hours (Smith Team: 475.42 hours; Norinsberg Team 960 Hours) on trial preparation** – over 35 attorney-weeks. Although this was expected to be a long trial of 30-40 days for all claims and parties (including the Medical Defendants), there is no justification for billing the equivalent of over approximately nine attorney-months to prepare for a trial that never occurred. While plaintiff's counsel argues that they had to prepare for trial "twice," this justification falls flat. It does not explain why experienced counsel would need to duplicate most of their trial preparation where the trial was adjourned only by a matter of months. Nor does it explain why three additional

partner-level counsel were even needed to prepare for trial, when purportedly experienced

counsel had already handled the case throughout discovery and had accumulated substantial

knowledge of the case.

The wasted effort appears on the face of the time entries, with the Norinsberg team

repeatedly having associate Meehan bill about a week's time preparing a witness outline, only to

have Norinsberg spend the same time afterwards.  Audit 10, 90-93.  In addition, at least two and

sometimes three senior attorneys often worked on the same trial outline.  *Id*. at 93.   Over 117

hours were billed for jury instructions (Audit 94-96), although experienced counsel ought to have

most jury instructions readily prepared in forms for a Section 1983 action, with only minor

adjustments required to fit particular facts or unusual legal issues.

In addition, the Smith Team recorded over 107 hours and the Norinsberg Group recorded

over 43 hours in connection with the JPTO, Witness List and Exhibit list, including time for five

senior attorneys and two paralegals.  Audit 96-100.  Despite this, in the late summer it was

*plaintiff* that asked to adjourn the time to file their JPTO, which was served in a draft that was

incomplete and vague regarding a great many of the exhibits to be used.  *See* Letter of August

17, 2015, DE 478, at 1-2 & Ex. A (opposing plaintiff's request to adjourn the JPTO deadline and

attaching plaintiff's incomplete draft JPTO failing to identify exhibits); DE 480; DE 484 & 484-

1 (objecting and listing plaintiff's vague exhibit entries).

Where, as here, plaintiff utilized multiple teams of counsel without any serious effort to

prevent overlapping duties or waste, across-the-board reductions are appropriate. For this factor

alone a district court in the S.D.N.Y. reduced the hours claimed by 40%.  *Simmonds v. N.Y. City

Dep't of Corr*., 2008 U.S. Dist. LEXIS 74539, *22 (S.D.N.Y. Sept. 15, 2008) ("both firms were

heavily involved in all aspects of the litigation, from drafting and revising the pleadings to

reviewing discovery materials and preparing for depositions.  Attorneys from both firms routinely reviewed and revised each others' work product and jointly attended court conferences and meetings with clients and co-counsel.").

As in *Simmonds*, "[t]here is no doubt that greater economies in attorney time could have been achieved if counsel had reasonably considered the staffing issues raised by their joint representation." *Simmonds v. N.Y. City Dep't of Corr.*, 2008 U.S. Dist. LEXIS 74539, at *23-24); *see also Hensley v. Eckerhart*, 461 U.S. at 434 ("Cases may be overstaffed . . . ."); *Lochren v. County of Suffolk*, 2008 U.S. Dist. LEXIS 38100, *16-17 (E.D.N.Y. May 8, 2008) ("[T]he court finds the plaintiffs did not justify the need to retain sixteen attorneys and thirteen support staff from five different firms/agencies to represent six plaintiffs with essentially the same claims.  To reflect this, the court will exercise its discretion and reduce the number of overall hours by 25%."), *aff'd in part, rev'd in part*, 344 Fed. Appx. 706, 709 (2d Cir. 2009) (affirming district court's 25% across the board reduction for duplicative work due to overstaffing).

While plaintiff's counsel may assert that the time they expended, from their own perspective, was necessary and reasonable, even were that so (and it is not), that is not the relevant test.  Three or more attorneys may be asked by the plaintiff to do the exact same thing and all do it reasonably, but that profligacy is not compensable when charged to the City. Where, as here, a plaintiff desires additional counsel either due to incompetence or the plaintiff's own unreasonable demands, the resulting costs exceed those that would be borne by a "reasonable," "thrifty, hypothetical" and "paying" client.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 185 (2d Cir. 2007).

***Client Meetings and Conferences:  1,380 hours –34.5 40-hour work weeks ("Attorney Weeks") – were billed for intra-counsel meetings, client meetings, and court conferences,***

*where 2 or often three attorneys attended.*[25]   **In most cases, all of the time was billed at**

**partner-level rates.**  Audit 12-13, 120.  Counsel charge 601 hours just to telephone calls and

meetings with the plaintiff,[26] and there were at least 12 meetings with Mr. Schoolcraft where

multiple attorneys (and the law student Bauza) travelled to his home and attended the meetings,

billing over 240 hours just for these 12 meetings. *Id*. at 13, 120-21.  The meetings included at

least one weekend-long, "Team Meeting Weekend" (apparently an all hands retreat) in Mayfield,

New York.  Ex. A, No. 5043-5044.  Plaintiff may not charge the City for this profligacy, which

courts readily find justifies substantial reductions of 50% or more in combination with other facts

(also present here).  *See, e.g., Wilson v. Nomura*, 2002 U.S. Dist. LEXIS 12668, at *13-14

(finding that excess and duplicative billing in connection with meetings and court conferences, as

well as other examples of excess, justified 50% across the board reduction); *Simmonds v. N.Y.*

*City Dep't of Corr.*, 2008 U.S. Dist. LEXIS 74539, *22-23 (S.D.N.Y. Sept. 15, 2008)

("Attorneys from both firms routinely . . . jointly attended court conferences and meetings with

clients and co-counsel. . . . There is no doubt that greater economies in attorney time could have

been achieved if counsel had reasonably considered the staffing issues raised by their joint

representation. By way of illustration, we note that Simmonds's attorneys spent approximately

sixty (60) hours drafting and reviewing correspondence to each other and discussing the case

internally.").

*Communications: counsel billed 356.97 hours for correspondence and telephone calls*

*(excluding hundreds of hours that were block billed combining communications with other*

---

[25] This does not even include time claimed by multiple time-keepers for preparing for these events. Audit 120 & n. 52,

[26] This despite the Norinsberg Team claiming that they did not charge for the majority of telephone calls with plaintiff, although they do not report the actual time allegedly written off. Plf. Mem. 6 n. 1.

*tasks).*  Audit 67-68.  The Norinsberg Team's timekeepers' average time per unit of email or correspondence ranged from 9 to 10 minutes, and the average time for telephone calls ranged from 28 to 40 minutes.  The Smith Team's timekeepers' averaged *60 to 144 minutes for correspondence* and *58-69 minutes for telephone calls*.  The Gleason Team's timekeepers' averaged 11-19 minutes for correspondence, and 33 minutes for telephone calls (identical for both timekeepers). Audit 71, 75, 77.  These figures are suspicious in their wide deviation between teams, since each team ought to have had a similar average over a large number of communications.  They are also all far above what is expected, given that most correspondence is by email, and the vast majority of emails in routine practice require only seconds to review or 1-2 minutes at most to send.  Dec. ¶ 22.  The phone call times are likewise excessive: studies show that the average expected length of a telephone call in legal practice is less than 12 minutes.  *In re Matis*, 73 B.R. 228, 234 (Bankr. N.D.N.Y. 1987) (adjusting fees downwards because "in-depth studies of law office procedures have indicated the average telephone call lasts less than 12 minutes").  Courts will discount fees as much as 70% in the face of such inflated fees for routine communications, whereas here it is combined with other excesses.  *See, e.g., Andert v. Allied Interstate*, 2013 U.S. DIST Lexis 10422, at **9 (70% reduction); *Wilson v. Nomura Securities*, 2002 U.S. Dist. LEXIS 12668, at * 13 (50% reduction).

Plaintiff's counsel billed excessive time in several other discrete areas, including:

- **Complaints:  686 hours (17 Attorney-Weeks):**
  - Research for and Preparation of Initial Complaint (480 hours):  Billed as an all hands task where all partners on the Norinsberg team claim to have participated.  Audit 88.
  - Second Amended Complaint and Motions (106 hours):  Three partners attended oral argument on the amendment, seeking to put back a First Amendment claim that had been voluntarily dropped by the same counsel. Audit 90.
  - Third Amended Complaint and Motion (100 hours): this motion was made after summary judgment motions to correct errors and add back claims against

JHMC that had been dismissed – as such, it should have required much less time than the Second Amended Complaint and Motions.  Audit 91.

- **Audio and Video Recordings Review: 560 hours (14 Attorney-Weeks)** billed often in large even-hour blocks, often without specifying the particular recordings reviewed.  Audit 9, 77.  When the specific subject of the review was mentioned, it was apparent that multiple time-keepers were claiming to have reviewed the same recordings.  Audit 92.

- **Deposition Digesting: Plaintiff billed 416 hours (i.e., over 10 work weeks) for paralegals to purportedly summarize or digest depositions attended by one or usually more than one attorney in the case (plus Bauza).**  This amount should be disallowed completely. First, the digests were barely looked at: only nine attorney hours were claimed for attorney review of unspecified deposition digests for unstated reasons.  Second, the digests were not needed since several time-keepers working on the case during trial preparation had attended the depositions.  Third, the transcripts, not the digests, were used for trial preparation. Fourth, the number of hours expended on the digests – usually improperly billed in full-hour increments – is excessive on its face; duplicative (with more than one time-keeper sometimes digesting the same deposition); and is not rationally related to the volume of testimony for each deposition. Audit 37-38.

In addition, plaintiff's counsel billed for work that could have been performed by clerical or support staff, such as ECF filing, copying, and transmitting documents, and attorneys bill for paralegal-level work, reductions in the bills are required.  Audit 82-83.  This also is grounds for a percentage reduction.  *Lee v. Santiago*, 2013 U.S. Dist. LEXIS 130141, *7-8 (S.D.N.Y. Aug. 15, 2013 (citing *Ryan v. Allied Interstate, Inc.*, Nos. 12 Civ. 0526 (AJP), 12 Civ. 1719 (AJP), 882 F. Supp. 2d 628, 2012 WL 3217853, at *6 (S.D.N.Y. Aug. 9. 2012) (inappropriate for attorney to bill for "administrative tasks," such as copying or organizing documents or filing documents with the court)); *Rosado v. City of New York*, No. 11 Civ. 4285 (SAS), 2012 U.S. Dist. LEXIS 35249, 2012 WL 955510, at *5 (S.D.N.Y. Mar. 5, 2012) (compensating, at paralegal rates, "administrative/paralegal" work performed by solo attorney)); *Andert v. Allied Interstate, LLC*, 2013 U.S. Dist. LEXIS 104422, *6 (S.D.N.Y. July 17, 2013) (citing *Barile v. Allied Interstate, Inc.*, No. 12 Civ. 916 (LAP) (DF), 2013 U.S. Dist. LEXIS 32483, 2013 WL 795649, at *3 (S.D.N.Y. Jan. 30, 2013) ("Where an attorney has billed time for performing 'administrative

tasks' such as copying or organizing documents, sending faxes, or filing documents with the

court, such time should not be compensated at an attorney-level billing rate."), *report and*

*recommendation adopted by* 2013 U.S. Dist. LEXIS 30224, 2013 WL 829189 (S.D.N.Y. Mar. 4,

2013)).

     In sum, in light of the manifest excess, waste and duplication in plaintiff's time

submission, an across-the-board reduction of 50% – applied to hours remaining after clearly

inappropriate entries are removed – is called for by the case law and the facts here.  Audit 124.

**POINT III**

**PLAINTIFF CLAIMS FEES FOR WORK
THAT IS FACIALLY NON-COMPENSABLE
IN A FEE CLAIM FOR PLAINTIFF'S
FEDERAL CLAIMS AGAINST THE
MUNICIPAL DEFENDANTS**

**A.**    **Costs Attributable to Plaintiff's Termination, Replacement And Rehiring Of
Counsel Are Not Compensable**

     Plaintiff's fee demand is inflated in part due to the termination and hiring of successive

legal teams.  This approach to staffing is wasteful and inefficient because it means that new

counsel must relearn what prior counsel already knew, and much of the benefit of the prior

counsel's work and accumulated knowledge is lost.  *See* Audit 31-36.  Even if prior counsel are

later rehired, as occurred here with the Norinsberg Team, a delay of two years during extensive

discovery and depositions ensures that returning counsel will have to learn a massive amount of

material already known to other counsel, as well as refresh their own recollections.

     The costs of this inefficient approach must be borne by plaintiff or his counsel, not the

City. "Defendants should not bear the cost of the inefficiencies necessarily created by plaintiff's

change in representation," such as the duplication of efforts to learn the case and review the file.

*Ganci v. U.S. Limousine Serv. Ltd*., 2015 U.S. Dist. LEXIS 43926, *14-15 (E.D.N.Y. Apr. 2,

-26-

2015); *see also Ackerley Communications of Massachusetts, Inc. v. Somerville*, 901 F.2d 170,

171 (1st Cir. 1990) ("we do not believe it appropriate to charge [defendant] with the costs

associated with [plaintiff's] decision to switch on appeal from competent local counsel")

(reducing $115,000 fee claim to $40,000); *Spell v. McDaniel*, 852 F.2d 762, 768 (4th Cir. 1988)

(defendants should not be charged with time required for new counsel to learn the case); *Hart v.

Bourque*, 798 F.2d 519, 523 (1st Cir. 1986) (time charged by replacement counsel within a firm

is "an office defect, not chargeable to defendants").

    Plaintiff's first attorney in this matter appears to have been Jonathan Moore, according to

plaintiff's time records (Ex. A, Nos. 282, 287-289).  In or about June 2010, Moore was replaced

by three partner-level lawyers – Norinsberg, Cohen and Fitch (the "Norinsberg Team") – who

litigated the case from August 2010 through mid-November 2012.  This first phase of the case

saw limited activity: The Norinsberg team defended only one deposition and took none, and

opposed only one dispositive motion, which was made by the private hospital Jamaica Hospital

Medical Center ("JHMC").  *See* Ex. A, June 2010 through November 2012. Document discovery

was only beginning during this phase, responsive pleadings were being filed, and there was no

discovery motion practice.  *See* Docket Nos. 1-119. [27]

    On November 12, 2012, a blogger quoted Norinsberg as making disparaging comments

about Schoolcraft and his father, Larry Schoolcraft.  Ex. B, "The Schoolcraft Problems" (Nov.

12, 2012) ("Norinsberg added that the Schoolcrafts' behavior has become increasingly bizarre.

'They have disappeared three times in the last six months. We literally had to have [Frank]

Serpico involved to track them down.'").  As of November 15, 2012, the Norinsberg team was

"abruptly terminated" by plaintiff.  Plf. Mem. 1; *See* DE 119; Ex. BB (Letter from Adrian

---

[27]  References to "DE" refer to the ECF docket in this case, unless otherwise specified.

Schoolcraft Terminating Representation).[28]  In discovery, plaintiff refused to disclose the reasons for the termination, but the fee application by the Gleason Team repeatedly indicates that they considered the termination to be "for cause."[29]  In addition, the Gleason Team prepared a cease and desist letter to the Norinsberg group demanding that they stop using Schoolcraft's name, likeness and recordings in connection with their "schoolcraftjustice.com" internet marketing site. Ex. A, Nos. 5201, 5248, 5249; Gilbert Aff. ¶ 8, DE 564-2.

After the termination of the Norinsberg Team, plaintiff retained the Gleason Team, which achieved no significant progress in this lawsuit and focused on Schoolcraft's dispute with his prior counsel, representing Schoolcraft in his administrative disciplinary proceeding before the NYPD, and lobbying public officials.  Audit 35-36; Gleason Aff. ¶ 8, DE 564-7.  The Gleason Team attended no depositions in this case (but attended one in another case, *Floyd v City*, for which they claim a fee here), and filed no motion papers.

The Gleason Team did not receive the litigation file until Dec. 18, 2012, due to a dispute with the Norinsberg Team, and spent a great deal of time reviewing that file and otherwise learning what prior counsel already knew. *See* Ex. A, No. 233; Ex. E (Letter from Gilbert to Court, dated Dec. 14, 2012); Audit 4-5, 29-30.  *Less than two months after receiving the file* – on February 7, 2016 – the Gleason Team was joined by Nat Smith and John Lenoir (the "Smith team") and the Gleason Team immediately transferred the file to Smith.  Ex. A, No. 5252.  The Gleason Team appeared in court only once, on a discovery matter.  Gilbert Aff. ¶ 8, DE 564-2.  It

---

[28] If the Norinsberg team was terminated for cause, then there is a question whether it should receive fees for the period leading up to the termination. *See infra* at 71 (discussing New York law on termination for cause). For that reason the Court should allow discovery or a hearing to determine the reasons for the termination. *Id*.

[29] *See* Ex. A, Nos. 5176, 5177, 5182, 5211, 5212, 5213, 5827.

is unknown if any member of the Gleason Team ever spoke in open Court until the fee application.

In April 2013, the Gleason Team ceased doing work for Schoolcraft, according to their own billing records[30] – a fact that Gleason euphemistically attributes to a "breakdown of communication." Gleason Aff., ¶ 16, DE 564-7; *see also* Ex. A. April-May 2013.  Although the Gleason Team claims it was not terminated as counsel, Schoolcraft disagrees in the same Declaration on which the Gleason Team relies.  Declaration of Adrian Schoolcraft, DE 594-1 ("I retained my attorneys Peter Gleason, Esq., and the firm, Levin & Gilbert from about November of 2011 through May 2012.").

Thereafter, until January 18, 2015, the Smith team of *three* partner-level (based on years since law school) attorneys, an associate, a law intern, and paralegals, handled the case through discovery and depositions.

On or about January 15, 2015, the Norinsberg team was rehired, the plaintiff apparently deeming his already large and purportedly experienced legal team incapable of trying the case. *See* Ex. A, January 15, 2015.  After this, plaintiff had no less than six partner-level attorneys working on his matter (Smith, Lenoir, Suckle, Norinsberg, Cohen and Fitch), at least three paralegals, an associate attorney (Meehan), and a law student.  *See* Ex. A, January 15, 2015-September 19, 2015.  The Norinsberg team billed time for negotiations to come back into the case in January 2015 (Audit 28-29), and also necessarily reviewed the discovery that the Smith team had participated in throughout the preceding two years, constituting another mass of work

---

[30] The only exception is a very small entry by Gleason in May 2013, regarding a consultation with another lawyer named Rae Koshetz, an expert in NYPD disciplinary matters. Ex. A, No. 103; *see* http://www.raekoshetz.com/about.php.  Gilbert claims his participation "slowly diminished to mere monitoring" (Gilbert Aff. ¶ 8, DE 564-2) – but no time is billed for Gilbert after April 2013 and in any event no "monitoring" was required, given that the Smith team was working on the matter.

that would have been unnecessary had one set of attorneys been used throughout.  The amount of inefficiency involved with having returning counsel learn evidence and developments that they missed cannot be quantified with precision because it is built into their time in trial preparation and virtually all other task.  But their cycling on and off the case necessarily inflated the time charges and is encompassed within the overall 50% reduction for excessiveness proposed by the City.

It is possible to quantify the time that the entry descriptions expressly attribute to the costs of substitution of counsel, such as the negotiation or preparation of retainer agreements; disputes with prior plaintiff's counsel; and reviewing the file.  These entries are allocable among the counsel teams as follows: Norinsberg Team (56.9 hours); Smith Team (82 hours); Gleason Team (216 hours).  Audit 5, 27-31. In addition, time spent on "administrative matters" governing the relationship between attorney and client is not compensable, whether or not it relates to a substitution of counsel.  *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004) ("The government should not have to pay for administrative matters relating to the formal relationship between Role Models and its attorneys.").[31]

In addition to this, inefficiencies arising from plaintiff's retention of multiple counsel at the same time are set forth in Point II *infra*.

> **B.      Plaintiff's claim for over 1,000 hours in fees incurred in claims against the Medical Defendants and unrelated to claims against the municipal defendants should be denied.**

---

[31] This includes time spent interviewing Magdalena Bauza for recruiting as a law student intern (it is unclear if she was paid): an administrative cost that is also patently non-compensable. E.g., Ex. A Nos. 28, 2096; *see May v. Cooperman*, 582 F. Supp. 1458, 1461 (D.N.J. 1984) (time spent on "selection" of legal counsel and other organizational matters not compensable).

Plaintiff's counsel made no attempt to prune from their fee claim work relating solely to claims against the separately settling, private Medical Defendants,[32] such as pleadings, motions, communications with medical counsel, medical expert work, and discovery that would have been entirely unnecessary had plaintiffs not chosen to sue the medical defendants in this matter.  Such time for all time-keepers was *at least* 1,078 hours, allocated as follows:

| | |
|---|---|
| Norinsberg Team: | 269.20 Hours |
| Smith Team: | 800.70 Hours |
| Gleason Team: | 9.0  Hours |

Audit 3-4, 19-31. This calculation does *not include* undifferentiated time spent on discovery, briefing, motions or trial preparation that does not distinguish on its face between the defendants, but which must be attributable in significant part to the medical claims in light of the substantial role that the Medical Defendants played in the case.[33]

A cursory review of the docket shows that approximately 20% of the docket entries from inception to September 16, 2015 relate solely to the Medical Defendants; there many others for which it is unclear which defendant is involved.  Audit 19-24; Scheiner Dec. ¶ 7. Likewise, the JPTO stated that 20% of the trial days were required for two of the three Medical Defendants' defense cases, not including time for the medical defendants' cross-examination or plaintiff's case on the medical claims.  DE 483-1, at 12.  (A deduction for this undifferentiated time

---

[32] The "Medical Defendants" were Jamaica Hospital Medical Center ("JHMC"), Dr. Lillian Aldana-Bernier, and defendant Dr. Isak Isakov.

[33] The City does not count as "medical time" the time expended for nearly all depositions, including depositions of the individual medical defendants and numerous hospital employees, except for the following that relate solely to the medical claims: the Rule 30(b)(6) depositions of JHMC by Vinod Dhar and Anthony Maffia; the second day of the deposition of Dr. Indira Patel, which was conducted exclusively by plaintiff and medical counsel; the deposition of plaintiff's two medical malpractice experts (Lubit and Halperin-Ruder); and the third day of plaintiff's deposition, which was conducted almost entirely by the medical defendants, with some brief questioning by Mauriello's counsel Walter Kretz in furtherance of Mauriello's state law counterclaim (which is also excludable, *infra* at 38 n.43); Audit 10 n. 8; Ex. F (Chart of Depositions).

devoted to the Medical Defendants is address by allowances for vague time entries, excessiveness, and other adjustments detailed below.  *See* Point IV *infra*.)

Plaintiff may not here claim fees incurred in claims against other defendants, whose claims were not settled by the City's Rule 68 Offer of Judgment, and for which the City is not responsible as a matter of law. The Second Circuit has reversed a fee award against a municipality because it included fees incurred in the same case in claims against the State (which were also, as with the federal medical claims here, unsuccessful), as a matter of "simple justice." *J.G. v. Board of Education*, 830 F.2d 444, 447 (2d Cir. 1987) (citing *Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1125 (9th Cir. 1981) (allocating fees 25%/75% among state and federal defendants); *Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp.*, 599 F. Supp. 509, 513-14 (S.D.N.Y. 1984) (allocating fees by 40% and 60% among two distinct defendant groups, even though time was not allocable on its face)).

A defendant should not "be required to compensate a plaintiff for attorney hours devoted to the case against other defendants . . . who are found not to be liable." *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1214 (3d Cir. 1978); *see also See Fox v. Vice*, 563, U.S. 826, 833 (2011) ("The fee award, of course, should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief: Such work cannot be deemed to have been expended in pursuit of the ultimate result achieved.")(quotation omitted); *Rode v. Dellarciprete*, 892 F.2d 1177, 1185 (3d Cir. 1990) (deducting hours attributable to defending motion to dismiss that was granted on claims against other defendants).

Plaintiff makes only a perfunctory attempt to justify claiming fees for unsuccessfully opposing JHMC's motion to dismiss the federal claims against it.  *See* Plf. Mem.[34] at 5; *Schoolcraft v. City of New York*, 2011 U.S. Dist. LEXIS 48996, *16-17 (S.D.N.Y. May 5, 2011). Plaintiff does not even discuss the myriad other motions and tasks in the case for which it charges the City relating solely to the Medical Defendants.

Plaintiff vaguely argues that the defense of JHMC's motions was "inextricably intertwined" with the claims against the City.  Plf. Mem. 5.  That is mere hand waiving.  Claims are not "intertwined" if they concern a distinct group of actors, a different set of operative facts, and different legal issues.  *See, e.g., Pontarelli v. Stone*, 781 F. Supp. 114, 122-123 (D.R.I. 1992) (claims are not "intertwined" where they were brought by different plaintiffs and concern different time frames); *cf.*, *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 512-513 (S.D.N.Y. 2010) (even for claims against the same defendants, the court may exclude hours spent on "'severable unsuccessful claims'") (quoting *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004) (per curiam)).

Here, the claim against the Medical Defendants concerned the conduct of medical personnel – not the police – most of which occurred entirely outside of the presence of City employees over the course of Schoolcraft's six-day stay at JHMC.  It was undisputed that Schoolcraft arrived at JHMC after 10 pm on October 31, 2009 and was released from NYPD custody in the morning after he was taken there. Plf. Consolidated 56.1 Statement, ¶¶ 63, 64, DE 384. There is only one statement attributed to NYPD personnel (Sgt. James, who was not at Schoolcraft's apartment and who left the hospital by 8:30 am on November 1) appears in the

---

[34] "Plf. Mem." refers to Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Attorney's Fees, Costs and Disbursements, DE 561.

medical records.  *Id.* ¶¶ 24, 66, 67, 70;[35] Ex Y, (memo book of Sgt. James showing that her tour

ended at 8:33 am on Nov. 1, 2009). Aside from that initial statement attributed to Sgt. James,

there was no indication of NYPD involvement in JHMC's treatment decisions over the next five

days until Schoolcraft's release on November 6.  *See Schoolcraft*, 2015 U.S. Dist. LEXIS 58831,

at *160-61.[36]

   Legally also the claims are distinct: the principal legal issue for the federal claims against

the medical defendants in this case was state action: an issue entirely absent from the claims

against the Municipal Defendants. *See Schoolcraft v. City of New York*, 103 F. Supp. 3d 465,

520, 534, 540-41 (S.D.N.Y. 2015).  The gravamen of the claim against the Medical Defendants –

and the only facially viable part of those claims – was medical malpractice.

   All of plaintiff's claims against the Medical Defendants other than medical malpractice

were unsuccessful and were dismissed on May 5, 2015:

- All Section 1983 Claims
- Negligent hiring, retention, training and supervision claim against JHMC
- IIED claim
- Negligence per se claim

*See Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 520, 534, 540-41 (S.D.N.Y. 2015)

(dismissing all federal claims against all Medical Defendants on May 5, 2015). Indeed, **t**he

federal claims against JHMC were pending only for 14 out of 51 months of the litigation against

the City: they were dismissed on a motion to dismiss (before discovery) and only reappeared

after summary judgment motions were filed, to be dismissed again with all federal claims against

the Medical Defendants upon summary judgment. *See Schoolcraft v. City of New York*, 2011

---

[35] The statement attributed to James was first written by Dr. Lwin and later repeated by Dr. Tariq in notes Dated 12:00 pm on Nov. 1, 2009.  *Id.*

[36] Plaintiff was interviewed in the hospital by NYPD investigators, but even plaintiff did not contend that these visits contributed to his continued confinement.

U.S. Dist. LEXIS 48996, *16-17 (S.D.N.Y. May 5, 2011) (dismissing federal claims against

Medical Defendants); *see* Motion to File Third Amended Complaint, DE 291 (Dec. 4, 2014);

Third Amended Complaint, DE 341 (January 23, 2015).

In fact, plaintiff's medical malpractice claims against the Medical Defendants were

resolved by settlement, not victory.  "Where the plaintiff has failed to prevail on a claim that is

distinct in all respects from his successful claims, the hours spent on the unsuccessful claim

should be excluded in considering the amount of a reasonable fee." *Hensley v. Eckerhart*, 461

U.S. at 440.

Moreover, at the time that the Rule 68 was issued here, as set forth above all federal

claims against the Medical Defendants had already been dismissed.  Therefore, even if the Court

were to consider whether claims against the Medical Defendants were somehow subsumed into

the Rule 68 issued only on behalf of the municipal defendants specified therein – and there is no

reason to even consider it – no claim for attorneys' fees against the Medical Defendants even

existed to be incorporated into the Rule 68.  In addition, plaintiff separately settled with the

Medical Defendants, releasing and waiving all claims against them.  This settlement necessarily

must have included any claim for attorneys' fees arising out of the medical claims, and

accordingly plaintiff has already been compensated for such fees.

Were this in doubt and the Medical Claims be considered compensable here even in part,

plaintiff should be required to produce evidence of any claims for or payment of attorneys' fees

with respect to the Medical Defendants, which plaintiff refused to provide in connection with its

fee application.  *See* Letter of Alan Scheiner, Jan. 28, 2016, DE 576, Ex. A, ¶ 7.

### C.    Public Relations, Publicity-Seeking And Lobbying Is Not Compensable

Plaintiff submits at least 186 hours of time related on its face solely to communicating

with the media and publicity seeking, unrelated to any proceedings in this matter.  Audit 6, 36-

39.[37]  As this Court has held, plaintiff may not recover attorneys' fees for communications with the media as part of reasonable fees in a civil rights action.  *See, e.g., Williamsburg Fair Hous. Comm. v. N.Y. City Hous. Auth.*, 76 Civ. 2125 (RWS), 2005 U.S. Dist. LEXIS 5200, *29-30 (S.D.N.Y. Mar. 31, 2005) (Sweet, J.) ("non-compensable tasks include[e] publicity efforts, lobbying, and clerical work"); *see Westchester Legal Services, Inc. v. County of Westchester*, 1987 U.S. Dist. LEXIS 410, *10 (S.D.N.Y. Jan. 15, 1987) ("There is no precedent for awarding fees for [communications with newspapers and television stations and press conferences]. These are not hours 'expended on the litigation.") (quoting *Society for Good Will to Retarded Children v. Cuomo*, 574 F. Supp. 994, 998-99 (E.D.N.Y. 1983), *remanded on other grounds*, 737 F.2d 1253 (2d Cir. 1984))) (denying fees for time spent in communications with media); *see also Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004) ("the government cannot be charged for time spent in discussions with the press")(citing *Am. Petroleum Inst. v. United States EPA*, 72 F.3d 907, 913 (D.C. Cir. 1996)); *New Mexico Citizens for Clean Air & Water v. Espanola Mercantile Co.*, 72 F.3d 830, 835 (10th Cir. 1996) ("[D]efendant contends, and Citizens concedes, that the district court failed to eliminate all the time billed by counsel for communications with the press."); *Greater Los Angeles Council on Deafness v. Community Television of Southern California*, 813 F.2d 217, 221 (9th Cir. 1987) ("The court reasonably disallowed time spent on publicity, lobbying, and unrelated claims . . . .")

While plaintiff asserts that counsel was engaged in "management" of media attention on behalf of the client (Plf. Mem. 4), in fact the volume and nature of the press contacts indicates that plaintiff's counsel were encouraging media attention, while defendants remained mum.  *See*

---

[37] This does not include time spent on motions brought by or concerning media entities, such as the New York Times.

Audit 36-39; *infra* at 49-51 (regarding media attention and interviews granted to press). Indeed, plaintiff's counsel repeatedly and unsuccessfully sought to lift the parties' Confidentiality Stipulation and Order, presumably so that they could share even more information with the press. *See infra* at 16 n. 22. Plaintiff's efforts to foster notoriety for this case went so far as to spend time discussing the case with a "French documentarian." Ex. A, Nos. 3248, 3672. Plaintiff's counsel also claimed numerous hours devoted to communications with the Brooklyn and Queens District Attorneys' offices; the Department of Justice; the Public Advocate, and other officials and agencies, apparently encouraging them to take independent action against the defendants. *See* Audit 46-39; *see e.g.,* Ex. A Nos. 224, 617, 2963, 3393. Indeed plaintiff's counsel admit that they seek fees for this activity, while offering no legal justification for recovering it. Plf. Mem. at 6. It is not recoverable.

### D.   Time Spent On Other Ancillary Matters Such As Schoolcraft's NYPD Disciplinary And Entertainment Contracts Is Not Recoverable

The plaintiff claims numerous hours for ancillary legal services, such as representing plaintiff in the defense of his administrative disciplinary proceedings in the NYPD. Audit 41-42. While reasonable time spent on plaintiff's motion to stay the disciplinary proceedings may be recoverable, time spent to defend the disciplinary proceeding is not recoverable because it is "not any part of the proceedings to enforce § 1983." *See Webb v. County Bd. of Educ.*, 471 U.S. 234, 241 (1985); *Venuti v. Riordan*, 702 F.2d 6, 9 (1st Cir. 1983) (tavern owners who brought a federal civil rights action challenging the denial of their request for a license were not entitled to an award of attorney's fees for licensing proceeding).[38] Nor can plaintiff's counsel charge for

---

[38] Plaintiff's counsel charge several hours of time for assisting the plaintiff's counsel in *Floyd* on a voluntary basis, which is also not compensable. E.g., Ex. A, Nos. 147, 165, 595-96, 598-600, 609-10; *see Miller v. Dugan*, 764 F.3d 826, 832 (8th Cir. 2014) (fees incurred in representing plaintiff as a witness in another matter with "similar allegations" as those made by plaintiff were not recoverable).

the time spent on the law firm's retainer agreement and Schoolcraft's personal entertainment contracts.  *See e.g.* Ex. A, Nos. 276, 3184, 3640, 3641, 3647; Audit 4, 28, 70-72.

### E.    Plaintiff's state law claims are accounted for as part of a general reduction

In addition, "[h]ours spent solely on common law claims and statutory claims not subject to fee-shifting should be excluded to reflect the default rule that 'each party must pay its own attorney's fees and expenses.' Excluding these ineligible claims prevents abuse: Plaintiffs should not be able to inject frivolous or borderline frivolous fee-shifting claims . . . ." *Millea v. Metro-North R.R.*, 658 F.3d 154, 168 (2d Cir. 2011) (citation omitted).  The non-compensable claims necessarily required some work procedurally distinct from the plaintiff's federal claims (e.g., on summary judgment, *see supra* at 14 (dismissed claims) and Audit 9, 81), but are encompassed within the overall 50% reduction for excessiveness.  *See* Point II, *supra*.[39]

### POINT IV

### THE FEE CLAIM SHOULD BE REDUCED FOR INAPPROPRIATE BILLING PRACTICES SUCH AS BLOCK BILLING, VAGUE ENTRIES, AND IMPROPER BILLING INCREMENTS.

Plaintiff's improper billing practices call for at least a 15% for the Norinsberg and Gleason groups, and 20% for the Smith group. Audit 66-68.  This reduction is separate and in addition to deductions for non-compensable activities or excessiveness and redundancy.

### A.    Excessively Large Billing Increments

For example, the time-keepers in the Smith group used minimum billing increments in excess of the standard 0.1 hour (six minute) and used round half-hours and hours far more than

---

[39] Time spent on defending Steven Mauriello's state law counterclaim is also not compensable, but defendants generally decline to attempt to parse out the time spent on this non-compensable work and include that also in the overall 50% reduction requested.

could be expected from random and accurate time entries.  For example, Smith never billed anything as .10 hours; he billed .20 (twelve minutes) only three times; billed .30 (18 minutes) seven times; .40 (24 minutes) five times; everything else was equal to or more than 0.5 (thirty minutes).  Lenoir never billed anything in .10, used .20 only once and everything else was billed as having lasted more than thirty (30) minutes (with 30 minutes by far the most popular increment at 64%).  Audit 46-47. The Gilbert group employed a similar method.  *Id*.

Courts will make across-the-board reductions to fee claims where, as here, counsel record their time in fifteen-minute increments, rather than the usually more accurate, and standard, six-minute increment. *Vasconcellos v. City of New York*, 2015 U.S. Dist. LEXIS 82836, *16-18 (S.D.N.Y. June 1, 2015); *see also Abel v. Town Sports Int'l, LLC*, 09 Civ. 10388 (DF), 2012 U.S. Dist. LEXIS 183444, 2012 WL 6720919 at *30 (S.D.N.Y. Dec. 18, 2012) (Freeman, M.J.) ("Quarter-hourly billing has been deemed a practice that adds an upward bias in virtually all cases and therefore justifies some further conservatism in calculating the amount of compensable time.) (internal quotation marks omitted)); *Gutman v. Klein*, 03 CV 1570 (BMC)(RML), 2010 U.S. Dist. LEXIS 124704, 2010 WL 4975593 at *20 (E.D.N.Y. Aug. 19, 2010) (reducing hours by 20 percent of firm billing in 15-minute increments); *Welch v. Metro. Life Ins. Co.*, 2004 U.S. Dist. LEXIS 28578, *8-9 (C.D. Ca. Sept. 20, 2004) (holding that block billing "is almost never allowed by federal courts" and "may increase time by 10% to 30%, quoting Arbitration Advisory, 03-01, *Detecting Attorney Bill Padding*); *see also* http://www.calbar.ca.gov/Portals/0/documents/mfa/2003-01_Detecting-Atty-Bill-Padding_r.pdf.; Dec. ¶ 36 (0.1 is standard billing increment in private practice).

### B.  Excessive Billing for Minute, Routine Tasks

Another improper practice used here that inflates fees and calls for across-the-board reductions is the billing of small tasks requiring only a few moments of time in the minimum

billing increment, whether 0.1 (six minutes) or longer. "[B]reaking out small tasks that take minimal time into separate entries — not for the sake of clarity, but in order to increase the total amount billed — is inappropriate." *Lee v. Santiago*, 2013 U.S. Dist. LEXIS 130141, *8-9, **29-30 (S.D.N.Y. Aug. 15, 2013) (across-the-board reduction warranted for attorney's practice of separately billing, at a standard billable increment, each short email received by attorney) (citing *Ryan v. Allied Interstate, Inc.*, 882 F. Supp. 2d 628, 637 (S.D.N.Y. 2012)).

The Norinsberg group billed a minimum of 0.1 hours for each discrete email or ECF notice, no matter how routine, with Norinsberg billing 0.1 for 267 discrete emails or other communications; Cohen 173 times; Fitch 182 times.  Audit 44-45, 58-60 & Ex. 10 to the Audit (examples of routine communications). This pattern is exactly as described in *Barile v. Allied Interstate, Inc*,, which noted that "attorneys and staff have billed multiple entries of "0.1 hour" — often several on one day — for very brief, mundane tasks such as emailing a document, e-filing, or receiving a notice of appearance or other notification from the Court's automated Electronic Case Filing ("ECF") system."  2013 U.S. Dist. LEXIS 32483, *22-23 (S.D.N.Y. Jan. 30, 2013) (reducing fees in part due to excessive billing for small tasks); *see also Andert v. Allied Interstate*, LLC, 2013 U.S. Dist. LEXIS 104422, *9 (S.D.N.Y. July 17, 2013) (attorney "included a time entry of "0.7 hours" for merely reviewing the receipt of seven ECF confirmation emails, billing 0.1 hours for each ECF email received").

### C.     Hundreds of Hours of Time Entries are Too Vague to Be Helpful

The fee submission also contains 880 hours of time with descriptions too vague to identify the motion, issue or witness that was being worked on:  689 hours for the Smith group and 191 hours for the Norinsberg Group.  Audit 52-54.  Vague billings make it difficult to for the Court to determine if the time was reasonable and compensable and justify reductions in fees of up to 40%.  *See, e.g., Terminate Control Corp. v. Nu-Life Constr. Corp.*, 28 F.3d 1335, 1342-43

(2d Cir. 1994) (30% fee reduction for "lack of specific record keeping" was within the district

court's discretion);  *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d

Cir. 1983)(affirming district court's across the board 20% cut for excessive and duplicative

entries, and denying award for failure to maintain contemporaneous entries); *Vasconcellos v.*

*City of New York*, 2015 U.S. Dist. LEXIS 82836, *16-18 (S.D.N.Y. June 1, 2015) (40%

reduction of hours for vague entries and 15-minute billing increments); *see also Kirsch v. Fleet*

*St. Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (upholding 20% reduction for vagueness and other

deficiencies where many time entries merely read "letter to court," "staff conference," and "work

on motion"); *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,

2012 U.S. Dist. LEXIS 164261, *11 (S.D.N.Y. Nov. 14, 2012) ("Courts frequently respond to

vague and difficult-to-decipher billing statements with an across-the-board percentage reduction

in the fees claimed, often in the range of 20-30 percent."); *Tucker v. Mukasey*, 03 Civ. 3106

(LTS)(FM), 2008 U.S. Dist. LEXIS 48687, 2008 WL 2544504 at *1-*2 (S.D.N.Y. June 20,

2008) (30% reduction because entries "fail[ed] to describe adequately the nature of the calls, the

contents of the reports or documents, or the topics of the discussions").[40]

### D.    A Substantial Portion of the Fee Submission is Block Billed

The submitted records also show 3,140 hours of "block billing," a practice whereby the

attorney groups all of a days' activities together in a single time entry, obscuring the time

required to accomplish each task. Audit 47-50. The Norinsberg Team billed 432 hours (13% of

their aggregate time) in block billing; the Smith Team 2,708 hours (50% of their aggregate time).

---

[40] *See also Vishipco Line v. Charles Schwab & Co.*, 02 Civ. 7823, 7846, 7877, 7915, 7928, 7929 (SHS), 2003 U.S. Dist. LEXIS 6820, 2003 WL 1936142 at *2 (S.D.N.Y. Apr. 23, 2003)  (Stein, D.J.) ("legal research" too vague to determine whether time expended was reasonable); *Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 301 (S.D.N.Y. 2001) (same); M*arisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 396-97, 397 n.10 (S.D.N.Y. 2000) (concluding that "some of the time entries are so vague that the Court is unable to determine whether the time was reasonably expended").

*Id.*[41] Courts routinely reduce fee claims by 10-15% or more solely for substantial block billing. *See Aiello v. Town of Brookhaven*, 2005 U.S. Dist. LEXIS 11462, *10-11 (E.D.N.Y. June 13, 2005) (10% reduction for block billing and otherwise vague entries); *Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003) (15% reduction for block billing); Gonzalez v. Bratton, 147 F. Supp. 2d 180, 213 (S.D.N.Y. 2001) (12% reduction for block billing); *see also Soler v. G & U, Inc.*, 801 F. Supp. 1056, 1061-62 (S.D.N.Y. 1992) ("commingling of activities within one time entry impedes the court's efforts to evaluate the reasonableness of any of the listed activities[.]"); *DeMarco v. Ben Krupinski Gen. Contr., Inc.*, 2014 U.S. Dist. LEXIS 100793, *34 (E.D.N.Y. July 22, 2014) (30% reduction in fees for certain excessive time entries combined with "block billing").

In light of these and other inappropriate billing practices, such as standardized task descriptions (Audit 51-42), the recommended reductions of 15% for the Norinsberg and Gleason Teams and 20% for the Smith Teams are appropriate and called for by applicable law.

**POINT V**

**THERE IS SUBSTANTIAL REASON TO DOUBT THAT COUNSEL'S TIME WAS RECORDED CONTEMPORANEOUSLY AND THE COURT SHOULD ORDER PRODUCTION OF ORIGINAL BILLING RECORDS OR DENY OR SUBSTANTIALLY REDUCE THE FEE APPLICATION**

**A.     The requirement of contemporaneous records**

The party seeking fees "must provide the Court with sufficient information to determine if the fee assessed is reasonable." *Cordero v. Collection Co.*, No. 10 CV 5960 (SJ)(VVP), 2012 U.S. Dist. LEXIS 47086, at *6 (E.D.N.Y. Apr. 3, 2012) (citing *New York Ass'n for Retarded*

---

[41] Although Smith sometimes allocated time within an entry to particular tasks, the total often did not correspond to the complete entry, raising questions about the reliability of this apparently after-the-fact allocation. Audit 49 n. 25.

*Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)).  The fee application must therefore be

supported by contemporaneous time records that "specify, for each attorney, the date, the hours

expended, and the nature of the work done." *Carey*, 711 F.2d at 1148.  In the Second Circuit:

> *Carey* sets out unequivocally that absent unusual circumstances
> attorneys are required to submit contemporaneous records with
> their fee applications. The permissive language at the end of the
> opinion recognizes that exceptions to the rule may exist. The
> strength with which we articulated the general rule, however,
> signals that any possible exceptions are minimal and limited in
> scope. In other words, Carey establishes a strict rule from which
> attorneys may deviate only in the rarest of cases.

*Scott v. City of New York*, 643 F.3d 56, 58 (2d Cir. 2011) (citing *Scott*, 626 F.3d at 133).  The

rare exception might be "unusual circumstances beyond the applying attorney's control." *Id.*

Conclusory assertions that time records are "contemporaneous" is not sufficient absent evidence

about when they were actually created and what information was actually recorded at that time.

*Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 149 (2d Cir. 2014) (remanding to district

court for further fact-finding although attorney "told the district court that she tracked her time

contemporaneously").

 The contemporaneous time records requirement is strictly enforced, and as a result the

records must be made "while the work is being done or, more likely, immediately thereafter.

Descriptions of work recollected in tranquility days or weeks later will not do." *United States ex*

*rel. Krause v. Eihab Human Servs.*, No. 10-CV-898 (RJD), 2014 U.S. Dist. LEXIS 136599, at *8

(E.D.N.Y. June 6, 2014) (quoting *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 249

(S.D.N.Y. 2010)), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 136599

(E.D.N.Y. Sept. 25, 2014).

 In addition, the information recorded "contemporaneously" must be the same information

at the same level of detail that is later submitted to the district court:  "for each attorney, the date,

the hours expended, and the nature of the work done." *Handschu*, 727 F. Supp. 2d at 242

(quoting *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d

Cir. 1983)).  As this Court held, although "[a]ttorney affidavits which set forth all charges with

the required specificity but which are reconstructions of the contemporaneous records satisfy the

rationale underlying Carey[,] . . . . such typed reconstructions fail to satisfy Carey if they contain

more detail than the original records." *Williamsburg Fair Hous. Comm. v. N.Y. City Hous. Auth.*,

76 Civ. 2125 (RWS), 2005 U.S. Dist. LEXIS 5200, *28 (S.D.N.Y. Mar. 31, 2005) (Sweet, J.).

When an attorney fails to keep contemporaneous (i.e., daily) records, a motion for fees

must ordinarily be denied in its entirety.  *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir.

2010) ("Carey establishes a strict rule from which attorneys may deviate only in the rarest of

cases."); *Ganci v. U.S. Limousine Serv. Ltd.*, 2015 U.S. Dist. LEXIS 43926, *6 (E.D.N.Y. Apr. 2,

2015) (denying fee award to counsel who lacked truly contemporaneous time records).

Although plaintiff's counsel maintain that the records they submitted were created

"contemporaneously," the details of the manner of their creation have remained vague.  *See*

Docket Nos. 579, 581, 583.  This Court denied the City's motion for production of original time

records, but only due to the absence of sufficient evidence indicating that the records are not

contemporaneous. September 26, 2016 Opinion and Order at 7, DE 586.   There is such

additional evidence, as detailed below, and the Court should either order the requested

discovery,[42] or deny or reduce the fee application in light of the evidence.

---

[42] Plaintiff's counsel will do doubt argue, as they have before, that the fee applications should not become a "second
major litigation."  But in the same case expressing that oft-repeated wish, the Supreme Court also stated a strong
preference for settlement of fee disputes.  *Hensley v. Eckerhart*, 461 U.S. at 437.  Yet plaintiff never approached
defendants about settling fees before filing their application. Dec. ¶ 21.  In any event, courts acknowledge that given
the complexities of fee shifting jurisprudence, avoiding major litigation on fees is no more than a "pious and forlorn
hope." *System Mgmt., Inc. v. Loiselle*, 154 F. Supp. 2d 195, 207 (D. Mass 2001).  While the typical, small fee
application may warrant streamlined procedures, when plaintiff pursues a $4.5 million claim the defendant should
not be denied procedural protections, including targeted discovery.

Plaintiff's submission exhibits tell-tale signs that the billing records submitted are not contemporaneous or are otherwise unreliable.  In addition to several errors about the dates of particular depositions and other mistakes (Audit 55-57, 67), the records contain suspicious billing entries for the Norinsberg team that are identical in time and description for all three attorneys: 887 hours' worth (28% of the Norinsberg Team's time).  Audit 51.

Most of these entries purport to portray meetings or conversations about virtually every task or event in the case – including many tasks normally conducted by a committee, such as the review and editing of filings.  *Id*.  August 9, 2010 is typical, showing a standard operating procedure where counsel claim to have met or communicated about virtually every event occurring that day:

| 436.0 | 08/09/10 | JLN | Meeting w/GC and JF re: Schoolcraft website to support Monell theory | 1.500 |
| 437.0 | 08/09/10 | JLN | E-mail from JF re final draft of complaint; reviewed same | 1.250 |
| 438.0 | 08/09/10 | JLN | Review of final draft of AS complaint to be filed | 0.500 |
| 439.0 | 08/09/10 | JLN | Discussion with GC and JF re Adrian interview | 0.300 |
| 440.0 | 08/09/10 | JLN | E-mail to JF re negligent ret. claim | 0.300 |
| 441.0 | 08/09/10 | JLN | Review of legal issues re: Negligent hiring claim | 0.300 |
| 442.0 | 08/09/10 | JLN | Reviewed fax from anonymous PO re: Marino's quota system | 0.100 |
| 2800.0 | 08/09/10 | JPF | Edit/Revise Complaint | 1.600 |
| 2809.0 | 08/09/10 | JPF | Meeting w/JN and GC re: Schoolcraft website to support Monell threory | 1.500 |
| 3054.0 | 08/09/10 | JPF | Discussion with GC re website content | 0.400 |
| 3093.0 | 08/09/10 | JPF | Discussion with GC and JN re Adrian interview | 0.300 |
| 3103.0 | 08/09/10 | JPF | E-mail from JN re negligent ret. claim | 0.300 |
| 3350.0 | 08/09/10 | JPF | E-mail to JN re Final version of Complaint | 0.100 |
| 3471.0 | 08/09/10 | GMC | Meeting w/JN and JF re: Schoolcraft website to support Monell theory | 1.500 |

| 3472.0 | 08/09/10 | GMC | Read and reviewed certain transcribed AS recordings | 1.400 |
| 3473.0 | 08/09/10 | GMC | Review of final draft of AS complaint to be filed | 0.500 |
| 3474.0 | 08/09/10 | GMC | Discussion with JF re website content | 0.400 |
| 3475.0 | 08/09/10 | GMC | Discussion with JF and JN re Adrian interview | 0.300 |
| 3476.0 | 08/09/10 | GMC | Review of legal issues re: Negligent hiring claim | 0.300 |

Ex. A.

But not all entries are meetings or discussions:  some of these parallel entries purport to show counsel doing the exact same thing *independently* for the exact same amount of time, e.g.:

| No, | Date | Timekeeper | Description | Hours |
|-----|------|------------|-------------|-------|
| 438 | 08/09/10 | JLN | Review of final draft of AS complaint to be filed | 0.50 |
| 3473 | 08/09/10 | GMC | Review of final draft of AS complaint to be filed | 0.50 |
| 441 | 08/09/10 | JLN | Review of legal issues re: Negligent hiring claim | 0.30 |
| 3476 | 08/09/10[43] | GMC | Review of legal issues re: Negligent hiring claim | 0.30 |
| 595 | 11/16/10 | JLN | Review of affidavit Darius Charney wants Schoolcraft to sign Aff for Floyd | 0.40 |
| 3666 | 11/16/10 | GMC | Review of affidavit Darius Charney wants Schoolcraft to sign for Floyd case | 0.40 |
| 768.0 | 02/13/12 | JLN | Review of final supplemental discovery demands for NYC | 0.30 |
| 3844.0 | 02/13/12 | GMC | Review of final supplemental discovery demands for NYC | 0.30 |

Ex. A.  There is no reasonable explanation for such odd, allegedly independent synchronicity, except that the entries are neither contemporaneous nor reliable.

---

[43] An examination of the full days' billings for August 9, 2010 reveals the standard operating procedure of the Norinsberg team, which was to claim to have discussed, met or communicated about every single event that day. *See* Ex. A-1, Entries for August 9, 2010.

Plaintiff's counsel asserted at oral argument on the City's discovery motion that this duplication arose because all counsel worked in the same office suite, but that does not explain why the descriptions, which ought to be made by each lawyer, are identical; nor does it explain why so many events, including the review and revision of filings, were purportedly done by lawyers meeting in committee; nor does it explain why each counsel would independently work the same number of hours on a given task.

In addition, the case load of Norinsberg, Cohen and Fitch make it unlikely that they actually devoted as much time as they claim to Schoolcraft's case. Counting only matters against the City, Law Department records indicate that Norinsberg originated 76 matters during the four years that he worked on Schoolcraft (2010, 2011, 2012, 2015), while Cohen and Fitch originated a whopping 202 matters against the City in the same period.  Dec. ¶ 25.  Their PACER reports for the same years further reflect this volume.  Ex. Q.[44]

At a minimum, the Court should order the production of counsel's original time records so that contemporaneousness can be conclusively determined, or reduce counsel's fee demand by an additional discount to reflect doubts regarding reliability and contemporaneousness.

## POINT VI

### THE DEMANDED HOURLY RATES ARE UNREASONABLE AND EXCESSIVE

The Supreme Court mandates that courts set "'reasonable fees' under § 1988 … according to the prevailing market rates in the relevant community."  *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  The district court must engage in a "case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel," which

---

[44] In addition, billing records filed in another case – *Marshall* – show that Norinsberg and Cohen implausibly billed identical time amounts (0.85) (on two separate days) to minor matters in Schoolcraft, while heavily engaged in the midst of trial on another matter.  Ex. G, Ex. H; Dec. ¶¶ 13, 14.

"requires an evaluation of evidence proffered by the parties" and "may … include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Farbotko v. Clinton Cnty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005).

### A.      The Determination of Reasonable Hourly Rates

To accomplish the desired market emulation – although in fact there is no significant private sector market for civil rights' attorneys services[45] –  the court must set a reasonable hourly rate, bearing in mind any relevant case-specific variables listed in *Arbor Hill* and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th. Cir. 1974.[46]  "Some of the *Johnson* factors," however, "'are more logically related to determining the number of hours that should be compensated . . . .'"  *Lanzetta v. Florio's Enters.*, 2011 U.S. Dist. LEXIS 85613, *18-19 (S.D.N.Y. July 27, 2011) (quoting *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 537 n. l (S.D.N.Y. 2008)).

Although plaintiff insists that all counsel be paid according to their current level of experience, that is not the law.  The rate should be based on the Court's estimate of current rates in the community – to compensate for the delay in payment over the course of the case – *but not at counsel's current level of experience*.  *Walker v. City of New York*, 2015 U.S. Dist. LEXIS

---

[45] *See Sys. Mgmt. v. Loiselle*, 154 F. Supp. 2d 195, 207 (D. Mass. 2001) ("In view of the complexities the Supreme Court and the lower courts have grafted onto the fee calculation process, federal courts are today enmeshed in an inordinately time consuming and ultimately futile search for a fee that reflects market forces in the absence of a relevant market.")

[46] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Arbor Hill*, 522 F.3d at 187 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th. Cir. 1974)).  However, "[i]t is not necessary for district courts to 'recite and make separate findings as to all twelve Johnson factors,'" as long as the court takes each into account in setting the attorneys' fee award.  *G.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 428 (S.D.N.Y. 2012)  (quoting *Green v. City of New York*, No. 05-CV-429, 2010 U.S. Dist. LEXIS 2946, 2010 WL 148128, at *10 (E.D.N.Y. Jan. 14, 2010)).

101253, *17-18 (E.D.N.Y. July 27, 2015).  "It is well-established that '[e]ach attorney should receive fees based on the average of his or her level of experience over the course of the litigation, as opposed to their current level of experience.'" *Id.* (quoting *Marisol A. v. Giuliani*, 111 F. Supp. 2d 381, 387 n.2 (S.D.N.Y. 2000) (citing *N.Y. State Nat'l Org. for Women v. Terry*, 94 F. Supp. 2d 465, 473 (S.D.N.Y. 2000))); *see also LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 514 (S.D.N.Y. 2010) (same); New York State NOW v. Terry, 94 F. Supp. 2d 465, 473 (S.D.N.Y. 2000) (same).

### B. The court should apply previously approved rates and not increase rates far in excess of economic trends and contrary to downward market pressure on legal fees.

With rare exception, civil rights attorneys do not charge clients actual market rates, and plaintiff's counsel here submit no evidence that they have ever been voluntary paid by any client for their services in a civil rights claim.[47]  In part for this reason, as the Second Circuit noted in *Arbor Hill*, attorneys' fee jurisprudence has "come untethered from the free market it is meant to approximate."  *Arbor Hill*, 522 F.3d at 184.

Plaintiff's counsel implicitly urge this Court to reflexively increase hourly rates over time, but this would further disjoin civil rights fee awards from any valid market approximation. For example, in a decision from 12 years ago, a Court in this District noted that $250 per hour was a reasonable rate for an attorney with 29 years of experience in civil rights litigation. *Pascuiti v. New York Yankees*, 108 F. Supp. 2d 258, 266 (S.D.N.Y. 2000).  In this case, Mr. Norinsberg seeks $600 – although he has less experience in civil rights cases (or in any area)

---

[47] The rare cases in which counsel do charge paying clients and submit evidence of those rates are entirely distinguishable from the present case, precisely because of the absence of such real market evidence here. *See e.g, Vilkhu v. City of New York*, 2009 U.S. Dist. LEXIS 73696, *18 (E.D.N.Y. June 25, 2009) (giving great weight to affidavits from clients attesting to payment of hourly rates), *rev'd on other grounds*, 372 Fed. Appx. 222 (2d Cir. 2010).

than the attorney receiving $250 in 2000.  If the $250 rate increased according to the actual cost

of living in the United States, the present day equivalent would be only *$355*. *See* Ex. S; Dec. 35;

http://data.bls.gov/cgi-bin/cpicalc.pl?cost1=250&year1=2000&year2=2016. Using median

household income as a guide: According to the U.S. Census Bureau, the average medium

household income for residents of New York State in 2000 was $40,744; in 2014, the average

was $54,310.[48]  As such, median income increased only by 33.3% in 14 years in actual dollars:

so a $250 fee in 2000 would be only $333 in 2014.

Moreover, the legal market has put substantial downward pressure on attorneys' fees and

billing practices since the financial crisis in 2008.  The NYSBA noted in 2011 that since 2008

the average number of billable hours has dropped by 12%, "and attorneys reported increased

pressure to reduce their fees."[49]  Strong market pressures are pushing legal costs to clients down,

regardless of what law firms say that they charge per hour. *See* 2016 Report on the State of the

Legal Market, at 16, https://peermonitor.thomsonreuters.com/wp-

content/uploads/2016/01/2016_PM_GT_Final-Report.pdf (Accessed April 6, 2016) ("[A]t least

since 2008, the market has changed in fundamental ways. . . . [C]lients increasingly demand that

outside counsel offer more efficient services with more transparency into both work processes

and costs.")  Any genuine attempt to mimic real-world market forces must account for these

actual market trends.

---

[48] US Census, Median Household Income by State - Single-Year Estimates,
www.census.gov/hhes/www/income/data/statemedian/index.html (last visited March 6, 2016).

[49] *See* Report of the Task Force on the Future of the Legal Profession, at 17m http://www.nysba.org/futurereport/
(last visited March 6, 2016).

**C.      Reputational benefits to counsel call for lower than normal hourly rates in this case.**

One factor weighing against inflated hourly rates in this case is the attractiveness of the

matter to potential counsel for its reputational benefits: a factor expressly noted by the Court in

*Arbor Hill*.  There the Second Circuit stated: **"**The district court should also consider that such an

individual [plaintiff] might be able to negotiate with his or her attorneys, using their desire to

obtain the reputational benefits that might accrue from being associated with the case. The

district court should then use that reasonable hourly rate to calculate what can properly be termed

the 'presumptively reasonable fee.'" *Arbor Hill*, 522 F.3d  at 190. Therefore an otherwise

reasonable rate should be adjusted downward to reflect the attractiveness of a case – like

Schoolcraft's – likely to receive a lot of press attention. See *Serricchio v. Wachovia Sec.*, LLC,

706 F. Supp. 2d 237, 255 (D. Conn. 2010) (quotation omitted) (emphasis added) (reducing in

light of reputational benefits to counsel the top rate from $550 to $465 for a 1973 Yale Law

School graduate who was one of the leading employment lawyers in Connecticut); *see also*

*Barati v. Metro-North R.R. Co.*, 939 F. Supp. 2d 153, 159 (D. Conn. 2013) (declining upward

adjustment for complexity because "a savvy client would recognize potential leverage to

negotiate a lower fee from the reputational benefits that would accrue to [the attorney] for taking

on this representation." (quoting *Serricchio*)).

It was apparent from the start that this matter would receive substantial media attention,

which was actively cultivated by the Norinsberg's Team.  Even before the complaint was filed,

Schoolcraft was the subject of numerous articles in the Village Voice, Daily News and other

media. [50]  A national radio broadcast featured an interview with Schoolcraft and some of his key

---

[50]     *See, e.g.*,  Rocco Parrascandola, "Brooklyn's 81st Precinct probed by NYPD for fudging stats; felonies allegedly
marked as misdemeanors," *Daily News* (February 1, 2010) http://www.nydailynews.com/news/crime/brooklyn-81st-

recordings appeared on NPR's *This American Life*, just a month after this lawsuit was filed.  *See* http://www.thisamericanlife.org/radio-archives/episode/414/right-to-remain-silent (accessed February 26, 2016).

Norinsberg, Cohen & Fitch then aggressively used the matter to gather clientele for his firm, creating a web page calle**d** "Schoolcraftjustice.com" trumpeting their firm's roles, and soliciting communications people who believed themselves retaliated against by the NYPD, and therefore were potential future clients.  *See* DE 206-7 (exhibit to discovery motion regarding Schoolcraftjustice.com).  They also actively courted media attention, especially from Graham Rayman, who published his book the *NYPD Tapes* in May 2013, based almost entirely on Schoolcraft's recordings and statements by Schoolcraft and his father.[51] *See supra* at 35, 50-51; E.g., Ex. A, Nos. 2162, 3292, 3453, 3688 .  Norinbserg also appears to have given interviews to a blogger disclosing communications with the NYPD (a represented party) about Schoolcraft's disciplinary proceedings and even including confidential attorney-client matters.[52]

While plaintiff's counsel makes the hollow assertion that schoolcraftjustice.com served litigation purposes, Norinsberg apparently continued to use the site even after he was terminated as counsel: Schoolcraft's new counsel issued a cease and desist letter to stop him from doing so. *Supra* at 27. But even if the website did serve litigation purposes, the bid for notoriety reflects

---

precinct-probed-nypd-fudging-stats-felonies-allegedly-marked-misdemeanors-article-1.193881  (accessed February 26, 2016); Graham Rayman, "The NYPD Tapes: Inside Bed-Stuy's 81st Precinct," *Village Voice* (May 4, 2010), http://www.villagevoice.com/news/the-nypd-tapes-inside-bed-stuys-81st-precinct-6429434 (accessed February 26, 2016.

[51]   Graham Rayman, The NYPD Tapes: A Shocking Story of Cops, Cover-ups, and Courage (St. Martin's Press August 6, 2013).

[52]   *See* Ex. CC, "So Whose Crazy Now," NYPD Confidential (August 23, 2012), http://nypdconfidential.com/columns/2010/100823.html; Ex. DD, "The Schoolcraft Problems," NYPD Confidential (November 12, 2012), http://nypdconfidential.com/columns/2012/121112.html.

the degree of reputational benefit that Schoolcraft's lawyers stood to gain and actively sought as his counsel, thus reducing the hourly rate necessary to attract competent counsel in this case.

### D.   The reasonable hourly rate for Norinsberg in this case is $400 per hour, not the unreasonable $600 per hour demanded.

Mr. Norinsberg seeks an hourly rate of $600, multiplied by 1,757.80 claimed hours of work, resulting in a total claimed fee for Norinsberg alone of $1,054,680.  The rate demanded is excessive and $400 is the reasonable and appropriate rate for Mr. Norinsberg in this case.

#### 1.   Case law supports a rate no higher than $400 Norinsberg and lawyers of his experience in civil rights.

Norinsberg's experience, although substantial, does not support the rate demanded, which ranks among the highest ever awarded to civil rights counsel.  Norinsberg graduated law school in 1991, after which he worked at the commercial litigation firm of Proskauer, Rose, Goetz and Mendelsohn for less than two years, after which he joined the New York City Law Department where he worked in the group handling Manhattan state court tort trials for five years. Norinsberg Dec. ¶ 5, DE 560-1; Dec. ¶ 43.  Norinsberg's experience at the NYC Law Department appears to have been limited to state court, and many of the trials mentioned in his declaration were tort cases in state courts.  *See* Dec. ¶ 43; Norinsberg Dec. ¶ 10.

In 1998 Norinsberg started his own firm and began taking on civil rights cases in federal court, giving him on average during the Schoolcraft case 16 ½ years of experience in federal civil rights litigation, in combination with other areas.  Norinsberg is the only partner in his firm. *See* http://norinsberglaw.com/attorney.php. According to the cases described in his declaration, he does not practice exclusively in the area of civil rights, and appears have a very active practice in the area of medical malpractice and in state court torts.  Norinsberg Dec. ¶¶ 13, 14.

There are three decisions from 2013-2015 in which Norinsberg's hourly rate was litigated and decided: all three yielded rates far below his $600 demand here.  Notably in all three cases,

-53-

*Norinsberg requested a fee of only $450.  See Stanczyk v. City of New York*, 11-CV-0249

(FB)(RER), 990 F. Supp. 2d 242, 247-48 (E.D.N.Y. Jun. 24, 2013); Ex F, Report & Recomm.,

*Marshall v. Randall, et al.*, 10CV 2714 (JBW) (VVP) (E.D.N.Y. Jan. 24, 2013) (Dkt. No. 103);

Order, 10 CV 2714 (JBW)(VVP) (E.D.N.Y. April 9, 2013) (Dkt. No. 104);; Norinsberg Dec. ¶

43, DE 560-1; Ex. X, *O'Hara v. City of New York*, *slip op.*, 11 CV 3990 (TLM)(RML), at 7

(E.D.N.Y. March 16, 2015).  .

On June 24, 2013, in the *Stanczyk* decision, the court awarded Norinsberg a rate of $350.

*Stanczyk v. City of New York*, 11-CV-0249 (FB)(RER), 2013 U.S. Dist. LEXIS 88143, at *18

(E.D.N.Y. Jun. 24, 2013).  On Jan. 24, 2013, in a ruling on which Norinsberg relies, he was

awarded a rate of only $400.  *See* Ex. F, *Marshall v. City of New York, et al.,* 10cv2714 (JBW)

(VVP), Report and Recommendation, No. 103 (E.D.N.Y. Jan. 24, 2013), *adopted* Judgment,

10cv2714, No. 104; *see* Norinsberg Dec. ¶ 43, DE 560-1.[53]  He received the same in the 2015 fee

award in *O'Hara v. City of New York*.  Ex. X.  The same rate of $400 is appropriate here.

> **2.     The relevant legal community is small or solo practice civil
> rights firms, not medium or large law firms with business
> oriented practices.**

Norinbserg's hourly rate should be commensurate with the legal community for small

firms or solo practitioners, characterized by few employees and minimal overhead.  *See Wise*,

620 F. Supp. 2d at 446 (noting that "[t]he legal community at issue … is one that covers small to

mid-size firms in civil rights" when determining the hourly rates for attorneys at Emory Celli

Brinckerhoff and Abady); *Wong v. Young Yoo*, 04-CV-4569 (JBW) (ALC), 2010 U.S. Dist.

---

[53]  Norinsberg cites an order – not a decision – citing a $550 rate as part of a *$9,927.50*  uncontested award of fees
and expenses.  *Bernabe v. City of New York*, 13 Civ. 5531 (LGS) (SDNY), Plaintiff's Ex. EE (DE 560-31);
Norinsberg Dec. ¶ 45; *see* Docket Sheet, *Bernabe v. City of New York*, 13 Civ. 5531 (LGS) (S.D.N.Y.) (showing fee
application was unopposed).  Given that the amount awarded was miniscule in *Bernabe* compared to the claim here,
and neither the City nor the Court saw a need for dispute or justification of the award, the order should be
disregarded for that reason alone.

LEXIS 111142, *7 (E.D.N.Y. Oct. 19, 2010)(Carter, M.J.), *aff'd* 450 Fed. Appx. 27 (2d Cir.

2011) ("Counsel is a solo practitioner with less overhead and fixed costs than law firm partners

who were awarded $400/hr. for fees in the cases that plaintiff submits") (*citing Chambless v.

Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058-59 (2d Cir. 1989)) (noting that

courts do not need to assign the same rate to every law firm in the district because billing rates

for attorneys at larger firms are generally higher than rates for attorneys at smaller firms)).  "The

Second Circuit has explained that, in determining a reasonable hourly rate, courts may generally

consider that hourly rates tend to be higher at large firms to compensate for higher overhead

costs."  *Mawere v. Citco Fund Servs., (USA) Inc.*, 2011 U.S. Dist. LEXIS 149111, *15-16

(S.D.N.Y. Sept. 16, 2011) (citing *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-

ILA Pension*, 450 F.3d 91, 97 n.6 (2d Cir. 2006)).[54]

Given the relevant legal community, plaintiff's citations to the rates of the largest and

most profitable law firms – e.g., Quinn Emanuel (No. 2 in profits per partner) – are entirely

inapposite. Plf. Mem. at 23-22; Ex. EE (AmLaw list of top firms by profits per partner).  Surely

Congress did not intend Section 1988 to make civil rights work comparable in profitability to

working at the most lucrative corporate law firms firms in the world.[55]

---

[54]   In addition, the market rate for at least plaintiff-side civil rights litigation services is generally lower than the
market rate for services provided to corporate clients, and thus the Court has often discounted the ordinary billable
rates of large-firm attorneys representing plaintiffs in civil rights matters on a pro bono basis. *See, e.g., Heng Chan
v. Sung Yue Tung Corp.*, No. 03-6048, 2007 U.S. Dist. LEXIS 33883, 2007 WL 1373118, at *3 (S.D.N.Y. May 8,
2007) (explaining that, in a pro bono civil rights case, an attorneys' fee award should be based on the rates that
would have been charged by an attorney specializing in civil rights litigation, not the rates the firm charged for
corporate litigation); *Morris v. Eversley*, 343 F. Supp. 2d 234, 247 (S.D.N.Y. 2004) (same).

[55]   The affidavits provided by other attorneys are self-serving fluff and should not be considered as evidence of
"market rates."  These other attorneys, who also sue the City of New York and its employees – sometimes as co-
counsel with the plaintiffs'; attorneys here -- stand only to gain when a colleague is awarded a high hourly rate.  *See
Fryar v. City of New York*, 10CV5879 (TLM)(MDG), 2012 U.S. Dist. LEXIS 190030, at *28 (E.D.N.Y. Aug. 22,
2012) (commenting on other attorney declarations, "[s]uffice to say, these attorneys have an interest in insuring that
rates awarded be of a certain level").  None of these affiants cite an actual rate charged to a paying client for
themselves or any of the plaintiff's counsel, which is what is required to constitute the required evidence of "market

Norinsberg's bid for $600 per hour is not commensurate with his experience as a civil rights lawyer. Awards of $400 or below are typical for attorneys of comparable or *even greater experience* than Norinsberg (or any of his colleagues). *See e.g. Dancy v. McGinley*, No. 11-cv-7952 (LMS), 2015 U.S. Dist. LEXIS 150366, 2015 WL 6693326, at *5-6 (S.D.N.Y. Sept. 21, 2015) ($400 per hour for experienced civil rights attorney with more than two decades of experience); *Agyapong v. Bohan*, No. 11-cv-586 (VB), 2013 U.S. Dist. LEXIS 56464, 2013 WL 1687737, at *2 (S.D.N.Y. Apr. 9, 2013) ($400 per hour for attorney who has been practicing law since 1980 and litigated 400 civil rights cases); *Lee v. Santiago*, 2013 U.S. Dist. LEXIS 130141, *12 (S.D.N.Y. Aug. 15, 2013) ($350 per hour for attorney claiming 20 years' experience in civil rights, with eight years of significant experience in civil rights); *Access 4 All, Inc. v. Park Lane Hotel, Inc.*, No. CV-04 7174, 2005 U.S. Dist. LEXIS 34159, 2005 WL 3338555, at *5 (S.D.N.Y. 2005) ($350 per hour to attorneys with 20 years of experience); *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 243 & 246 (S.D.N.Y. 2010) ($400 for five attorneys admitted to the bar in the 1960s and 1970s, "active in one way or another during their careers in civil rights litigation," including the Legal Director of the NYCLU); *Adams v. New York State Educ. Dep't*, 630 F. Supp. 2d 333, 349-350 (S.D.N.Y. 2009) ($350 per hour for attorney with 21 years of relevant experience); *Trs. of the Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Stevenson Contracting Corp.*, 05 Civ. 5546, 2008 U.S. Dist. LEXIS 108690, 2008 WL 3155122 at *10 (S.D.N.Y. June 19, 2008) ($325 per hour and $ 350 per hour for a large firm associates with more than twenty-four years of general litigation experience and fifteen years of subject-matter experience), *report & rec. adopted*, 2008 U.S.

---

rates," which by definition require free exchange on an actual market. "[S]atisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate." *Norman v. Housing Authority of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. Ala. 1988) (citing *Hensley*, 461 U.S. at 439 n. 15).

Dist. LEXIS 58018, 2008 WL 2940517 (S.D.N.Y. July 29, 2008); *M.S. v. N.Y. City Bd. of Educ.*,

01 Civ. 4015, 01 Civ. 10871, 01 Civ. 10872, 2002 U.S. Dist. LEXIS 22220, 2002 WL 31556385

at *4-5 (S.D.N.Y. Nov. 18, 2002) ($350 for lawyers at non-profit organization who had *twenty-*

*four and thirty-five years' experience*), *aff'd*, 407 F.3d 65 (2d Cir. 2005).[56]

Hourly rates awarded in the Eastern District of New York – where this claim arose and

all the relevant events occurred – are comparable.[57]  *See Ganci v. U.S. Limousine Serv. Ltd.*,

2015 U.S. Dist. LEXIS 43926, *10-11 (E.D.N.Y. Apr. 2, 2015) (Title VII case) ("Courts have

awarded rates of $200 to $400 per hour for partners in this district.") (quoting *Capone v.*

*Patchogue-Medford Union Free Sch. Dist.*, No. 04-CV-2947 (JS)(MLO), 2011 U.S. Dist. LEXIS

18194, 2011 WL 743573, at *2 (E.D.N.Y. Feb. 23, 2011)); *United States v. Jones*, No. 11-CV-

2869 (JFB), 2013 U.S. Dist. LEXIS 175753, 2013 WL 6408639, at *3 (E.D.N.Y. Dec. 9, 2013)

("recent Eastern District cases have indicated that the range of appropriate billing rates in this

District is $200-$375 for partners"); *Lochren v. County of Suffolk*, 2010 U.S. Dist. LEXIS 28288,

---

[56] Cases involving large law firms are not relevant to the attorneys here who are all sole practitioners or nearly so. But even large law firms have not received the rates sought by Norinsberg and his colleagues.  See *Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 U.S. Dist. LEXIS 33883, 2007 WL 1373118, at *3-4 (S.D.N.Y. May 7, 2007) (awarding large-firm partner with 16 years of experience $ 450 per hour, non-profit attorney with fifteen years of experience $ 400 per hour, large-firm associates with 6 years of experience $ 300 per hour, and large-firm associate with 2 years of experience $ 200 per hour).

[57] Some authorities assume that rates are higher in the S.D.N.Y. than the E.D.N.Y., but no case cited by plaintiff (or known to the City) quantifies the supposed difference, so there is no basis to.  Even were there a difference, the Court should not reflexively apply a purportedly higher S.D.N.Y. rate here.   Economic rationality should prevail over the forum rule where necessary. *Cf. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 185 (2d Cir. 2007) ("The rates charged by attorneys practicing in the Southern District of New York would simply have been too high for a thrifty, hypothetical client – at least in comparison to the rates charged by local attorneys, with which he would have been familiar.").  If the forum rate would result in a higher rate than rates where the plaintiff was located and the claim factually arose, that would call for application of the *lower* out-of-district rate, especially if it appears that the forum may have been chosen because of its higher rates.  *See Polk v. New York State Dep't of Correctional Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). "Moreover, the rate prevailing in the appropriate community is only one of many factors bearing on determination of a fee award." *Id*.  Although venue was proper here due to the 'presence' of the City of New York, all of the operative events in the case occurred in the Eastern District of New York, where plaintiff resided, worked and was confined for treatment.  Under the IDEA this Court has applied "rates prevailing in the community in which the action or proceeding *arose* [here, the EDNY] for the kind and quality of services furnished," and under *Polk* it should do so here.  *A.R. v. New York City Dep't of Educ.*, 12 Civ. 7144, 2014 U.S. Dist. LEXIS 153103, *3-4 (S.D.N.Y. Oct. 28, 2014)  (Sweet, J.) (emphasis added).

*7 (E.D.N.Y. Mar. 23, 2010) (awarding attorneys of 40 and 49 years' experience $450; partners of 13-15 years' experience $400, and 20-years $425).

In fact, even attorneys *with over 30 years of relevant experience* (much more than Norinsberg) in complex cases have not received more than $425, or at most, $450, even in the Southern District of New York.  There is no reason to conclude that Norinsberg should be compensated in this top tier of rates ($425-$450), let alone at the upper limit of $600 per hour. *See Andrews v. City of New York*, 2015 U.S. Dist. LEXIS 101115, *18-19 (S.D.N.Y. 2015) (awarding labor attorney with over thirty years' experience $450); *Davis v. City of New York*, 10 Civ. 699 (SAS), 2011 U.S. Dist. LEXIS 120165, at *20 (S.D.N.Y. Oct. 18, 2011) ($425 for partner with *thirty-one years'* experience handling complex putative class action involving the alleged unconstitutional policy regarding stops in NYCHA locations); *Wise v. Kelly*, 620 F. Supp. 2d 435, 443-47 (S.D.N.Y. 2008) ($425 to lead counsel – a partner at Emery Celli Brinckerhoff and Abady, a fourteen-attorney firm – involving a putative class action challenging New York City's enforcement of a loitering statute.); *Finch v. New York State Office of Children & Family Servs.*, 861 F. Supp. 2d 145, 153 (S.D.N.Y. 2012) (partner with *42 years* of experience received a $450 rate for handling a class-action lawsuit alleging due process violations); *Simmonds v. N.Y. City Dep't of Corr.*, 06 Civ. 5298, 2008 U.S. Dist. LEXIS 74539, 2008 WL 4303474 at *1 nn. 2-3, 5 (S.D.N.Y. Sept. 16, 2008) ($425 is a reasonable hourly rate in a Title VII employment law case for an ACLU attorney who graduated Harvard Law School in 1990 and a partner at a large law firm who graduated Yale Law School in 1986, and $325 is reasonable for a 1998 Yale Law graduate and 1999 Georgetown Law graduate); *Finch v. New York State Office of Children & Family Servs.*, 861 F. Supp. 2d 145, 153-54 (S.D.N.Y. 2012) (awarding an hourly rate of $450 in a civil rights class action to a lead attorney with *forty-two*

*years of experience*); *Ashkinazi v. Sapir*, 02 Civ. 2, 2005 U.S. Dist. LEXIS 8889, 2005 WL 1123732 at *3 (S.D.N.Y. May 10, 2005) ($425 reasonable hourly rate for a partner at a small firm who has *twenty-six years of experience* and specializes in employment law).

The authorities relied on by plaintiff's counsel for their demanded rates are entirely inapposite. In *Barbour v. City of White Plains*, an Order relied on by plaintiff, the defendants (the City of White Plains) did not object to plaintiffs counsel's hourly rates, "and in view of the absence of any defense objection" to rebut the evidence submitted by the attorneys, the court granted the attorneys the rates they sought.[58] 788 F. Supp. 2d 216, 225 (S.D.N.Y. 2011); *see also Barbour v. City of White Plains*, 700 F.3d 631, 635 (2d Cir. 2012) ("While the total amount of fees and the hourly rates charged by counsel in this case could give pause, defendants neither object to those rates nor demonstrate any abuse of discretion relating to the calculation of the fee award."). Moreover, the attorney receiving the highest rate in *Barbour* graduated law school in 1984 (not 1991, as with Norinsberg), and had tried *150 civil rights cases* (not 150 cases in total). 788 F. Supp. 2d at 225; Norinsberg Dec. ¶ 10.

*Rozell v. Ross-Holst* and *Adorno v. Port Auth. of N.Y. & N.J.* are also distinguishable from the case at bar. They involved attorneys with over thirty years' experience who regularly and customarily *charge paying clients* at a rate $600 and $550 per hour. *See Rozell*, 576 F. Supp. 2d 527, 544-45 (S.D.N.Y. 2008) ("plaintiff's counsel submitted eleven current retainer agreements [that] demonstrate that clients … have agreed to compensate the firm at the rate of $675 per hour for Ms. Peratis' time, between $375 and $625 per hour for counsel …"); *Adorno*, 685 F. Supp. 2d 507, 513 (S.D.N.Y. 2010) ("Pedowitz has practiced law for some thirty-six

---

[58] Plaintiff's citation to <u>Smith v. Nagai</u> is also distinguishable. There, plaintiff was granted a default judgment and the attorneys' fees application went unopposed. 10 Civ. 8237 (PAE)(JCF), 2012 U.S. Dist. LEXIS 89352, at *1 (S.D.N.Y. May 15, 2012).

years" and "regularly charges his clients fees based on a rate of $550 per hour."); *see Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 188 (2d Cir. N.Y. 2007) (citing *Bebchick v. Wash. Area Metro. Transit Comm'n*, 805 F.2d 396, 404 (D.C. Cir. 1986) ("Of course, 'the actual rate that applicant's counsel can command on the market is itself highly relevant proof of the prevailing community rate.'").

In contrast to these precedents, plaintiff's counsel submitted no evidence of rates paid by paying clients – presumably because it does not exist or would have reflected rates lower than the rates sought.[59] *See Wong v. Hunda Glass Corp.*, 2010 U.S. Dist. LEXIS 90736, *7 (S.D.N.Y. Sept. 1, 2010) (questioning plaintiff's counsel's demand because it was not based on "evidence of actual rates charged to clients or awarded by a court").  Furthermore, *Rozell* involved the firm Outten & Golden, "one of the outstanding firms representing plaintiffs in employment cases," which according to their website employs over thirty attorneys.  *Rozell*, 576 F. Supp. 2d at 545.[60]

Plaintiff cites *Restivo v. Nassau County, et al.*, No. 06-CV 6720 (JS)(SIL), 2015 US Dist. LEXIS 160336 (E.D.N.Y. Nov. 30, 2015), an eight-year wrongful conviction litigation on behalf of two plaintiffs, involving two successive jury trials and an $18 million award.  *See supra* at 8-9 (distinguishing *Restivo*).  The court in *Restivo* justified its award of unprecedented hourly rates in part on the wide renown of the plaintiff's firm in the area of wrongful conviction cases and DNA

---

[59]  A request by the City for the production of information about rates paid by paying clients, if any, was refused by all plaintiff's counsel, further suggesting that the information would not have been helpful to plaintiff's claim.  *See* DE 576, at 8.

[60]  *Kim v. Kum Gang, Inc.*, 12 Civ. 6344 (MHD), 2014 U.S. Dist. LEXIS 77038 (S.D.N.Y. May 30, 2014), cited by plaintiff, was an uncontested motion for sanctions where the qualifications of the attorneys involved was not discussed by the court.  Accordingly it has no precedential value with respect to the rates awarded.  *Mawere v. Citco Fund Servs.*, (USA) Inc., 2011 U.S. Dist. LEXIS 149111, *12-14 (S.D.N.Y. Sept. 16, 2011), cited by plaintiff, is likewise inapposite because it concerned fees awarded to an international corporate law firm representing a corporate defendant in an employment action, where the senior partner had 32 years of experience.  The court deemed the $650 rate to be "somewhat above" the upper end of prior awards to civil rights or employment counsel and other rates awarded in that case to be at the "high end." *Id.* at *16-17.

evidence.  *Restivo v. Nassau County*, 2015 U.S. Dist. LEXIS 160336, *7-8 (E.D.N.Y. Nov. 30,

2015); see also www.nsbcivilrights.com/lawyers (accessed February 23, 2016).

In other words, while Norinsberg has significant experience in the field of civil rights

litigation, he is no Barry Scheck.[61]  Nor is he or other counsel here comparable to partners at

Emery, Celli, Brinkerhoff, Abady LLP, who have received only $425 per hour.  *See Vikhu*, at

*18, *21-22 (awarding $425 rate to Jonathan Abady, in part because he was is a partner at a

widely-respected medium sized law firm that is paid by the  hour by clients for civil rights

work); *see also Wise v. Kelly*, 620 F. Supp. 2d at 445 ("This Court may also take judicial notice

of ECBA's high reputation . . . .")(citing *Kahn v. GMC*, 1992 U.S. Dist. LEXIS 12191, *7

(S.D.N.Y. Aug. 14, 1992)).  Norinsberg's law office, while successful and competent, is not "one

of the most competent, successful, and reputable civil rights firms practicing in this Court."  620

F. Supp. 2d at 445. [62]

### 3. Norinsberg's reputation and relationship with plaintiff weighs against a high hourly rate

Norinsberg's reputation militates against any increase in his previously awarded hourly

rate of $400.  Norinsberg fails to mention that his legal services have been severely criticized in a

federal court opinion and he was given a reduced hourly rate as a result**.**  *Stanczyk v. City of New

York*, 990 F. Supp. 2d 242, 248-51 (E.D.N.Y. 2013).  In *Stanczyk*, the Court reduced

---

[61]   Moreover, the rates and total award in *Restivo* appear inflated by the particular circumstances and advocacy in that case, and represents a drastic upward departure from past precedent both with respect to hours and fees.

[62]   Norinsberg submits as evidence of his qualifications a listing of his name in the "Superlawyers" publication for 2015.  Plaintiff's Ex. DD, 560-30.  Superlawyers is driven in large part on "nominations" by private practitioners in a given field, which in this case means other plaintiff's civil rights lawyers – government lawyers appearing opposite the candidates are not consulted as part of the process. *See* http://www.superlawyers.com/about/selection_process.html#Nominationsl. As many as 5% of the attorneys in a given jurisdiction can be found listed in Super Lawyers. https://my.superlawyers.com/faq.html#q9.  Because Super Lawyers is a commercial publication rather than a professional association, and the bases for its selections are obscure, a Super Lawyers listing should not be accepted by the Court as evidence of particular distinction.

Norinsberg's requested hourly rate of $450 to $350 because the requested rate "'fails to provide a reasonable fee for the quality of representation provided . . . .'" *Id*. (quoting *Blum v. Stenson*, 465 U.S. 886, 900 (1984)).

Another factor weighing against an elevated hourly rate for Norinsberg and his team is "the nature and length of the professional relationship with the client." *Arbor Hill*, 522 F.3d at 187 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th. Cir. 1974)).  Here, Norinsberg was terminated as counsel by the plaintiff–"for cause" according to the Gilbert's Team's  time records (*supra* at 27-28) – and should receive a lower rate as a result.  Ex. BB (Letter by Adrian Schoolcraft terminating Noirinsberg's representation).[63]  Just as Norinsberg's hourly rate was reduced in *Stanczyk* for poor representation, it should be reduced here – and certainly not increased – due to the plaintiff's dissatisfaction with his services, sufficient to exclude the Norinsberg Team from these proceedings for two years during the heart of discovery.  Moreover, it is clear from Norinbserg's large case volume during the period of the Schoolcraft litigation that he did not forego any other representations or treat the matter with any particular priority.  *Supra* at 47.

In light of the above factors, this Court should reject his exaggerated demand for $600 and instead adopt the court's $400 hourly rate granted to Norinsberg in the *Marshall* case in January 2013, without modification for increased experience or the passage of time.[64]

---

[63]  Plaintiff has refused to disclose the reasons for Norinsberg's termination in discovery during the litigation on the merits or in this fee proceeding (DE 576, Letter from City's Counsel to Court, Jan. 28, 2016, Ex. A at 11). Plaintiff's refusal to disclose this information supports the inference that such information would not be helpful to the fee claim.

[64]  According to the NY-NJ metropolitan area cost-of-living indicators, a $400 fee in 2012 would be $411 at the end of 2015.  *See* Ex. T, Consumer Price Index, New York-Northern New Jersey – December 2015. http://www.bls.gov/regions/new-york-new-jersey/news-release/consumer; Dec. ¶ 34.  But because Norinsberg was terminated as counsel here, calling into question the quality of his services in this case, no increase should be awarded for the passage of time.

### E.     Mr. Meehan's Hourly Rate Should Be $250

Plaintiff demands the rate of $350 for an associate of Norinsberg, John Meehan.  This hourly rate is also excessive.  Plaintiff cites no cases specifically in support of the claimed hourly rate for this or any other associate and it is contrary to law.[65]  Meehan graduated New York Law School less than four years ago, and was admitted to the bar barely three years ago as of this filing, in March 2013.[66] Norinsberg Dec. ¶ 53.  The dates indicate that Meehan never worked as a lawyer except at Norinsberg's firm.  *Id.*

"Associates in civil rights law firms with approximately three years of experience have typically been awarded amounts ranging from $125 per hour to $200 per hour." *E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 430 (S.D.N.Y. 2011), *aff'd*, 487 F. App'x 619 (2d Cir. 2012' *see also Spencer v. City of New York*, 2013 U.S. Dist. LEXIS 161693, *18-20 (S.D.N.Y. Nov. 13, 2013) (setting fee for associate with 3 years' experience at $200 per hour); *Torres v. City of New York*, No. 07 CV 3473 (GEL), 2008 U.S. Dist. LEXIS 11027, *3-4 (S.D.N.Y. Feb. 14, 2008) (recognizing $125-200 per hour as an appropriate rate for attorney with less than three years' experience); *Tlacoapa v. Carregal,* 386 F. Supp. 2d 362, 370 (S.D.N.Y. 2005) ($125 per hour for a "junior attorney" with three years of experience).

### F.     Cohen & Fitch's hourly rate request of $500 is excessive and they should receive the same rate they were awarded in *Marshall*:  $325

Law partners Gerald Cohen and Joshua Fitch each request hourly rates of $500 per hour. As Cohen and Fitch acknowledge, they were previously awarded a rate of *only $325* in the

---

[65]  On reply plaintiff may cite to *New York Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*, 657 F. Supp. 2d 410 (S.D.N.Y. 2009), which is inapposite. There the Court awarded three associates from the firm of O'Dwyer & Bernstein, LLP an hourly rate of $300 per hour. The associates were admitted to practice in 2005, 2003 and 2001 and had five, seven and nine years of experience respectively – all more than Meehan. According to the firm's website, O'Dwyer & Bernstein employs fourteen attorneys, much larger than Norinsberg's two-lawyer firm.  See http://www.odblaw.com.

[66]  *See id.*; https://iapps.courts.state.ny.us/attorney/AttorneyDetails?attorneyId=330047568.

*Marshall* decision in January 2013.  Ex. F; Plf. Mem. at 30.  In *Marshall* these attorneys

requested an hourly rate of *only $400 per hour*, but the Court adopted the defendants' request for

the $325 rate.  *Id*.  Thus, Cohen and Fitch now ask this Court to conclude that their appropriate

hourly rate is over 150% that of their court awarded rate in 2013 and 125% of the rate that they

themselves requested at that time.

The passage of time does not automatically equate with so large an increase in market

rates.  While plaintiff asserts that rates are "presumed" to go up over time (Plf. Mem. 30), no

case law from any time period shows that the $500 rate is appropriate for attorneys with only

eight years' of experience in civil rights case.  Cohen and Fitch do not have continuous

experience as civil rights lawyers: that they practiced only criminal law (as prosecutors) until

founding their firm together in 2008, and since then have had a mixed criminal defense and civil

rights practice.  Cohen Dec. ¶ 5, DE 560-4.  Like Norinsberg, they cite no example of any hourly

rate that they have actually been paid, presumably because it would be lower than the rate they

now seek.  *A fortiori*, as the $500 rate is wholly inappropriate for Norinsberg, it could not

possibly be appropriate for Cohen & Fitch.  *See also Wong v. Hunda Glass Corp*., 2010 U.S.

Dist. LEXIS 90736, *8 (S.D.N.Y. Sept. 1, 2010) ("[T]he range of fees in this District for civil

rights and employment law litigators with approximately ten years' experience is between $250

per hour and $350 per hour.") (citing *De Los Santos*, 2010 U.S. Dist. LEXIS 15463, 2010 WL

445886, at *3 (a rate of $250-$350 per hour is reasonable for an employment attorney));

*Imbeault v. Rick's Cabaret Int'l Inc.*, No. 08 Civ. 5458(GEL), 2009 U.S. Dist. LEXIS 71562,

2009 WL 2482134 (S.D.N.Y. Aug. 13, 2009)(employment discrimination "proposed" class

action; court reduced rates to $400/hour for partner with thirteen years' experience, $325 for

associate with eight years' experience, and $80/hour for paralegals and law clerks).  Plaintiff's

counsel maintain that their rates should increase over time, but they cite no evidence or metric to establish that presumption.

Cohen & Fitch boast of their win-loss record since the fee award in *Marshall*, but that record shows only that Cohen and Fitch prevailed with a verdict in *less than half* of the federal civil rights cases that they tried (and won only 55% of their trials overall); and it says nothing of how many of their allegedly 300 Section 1983 cases were settled for small amounts or dismissed outright prior to trial.  *See* Plf. Mem. at 30.[67]

Moreover, as set forth above, it is apparent from their time records that Cohen and Fitch played a secondary and redundant role in the case at bar: their work is predominantly duplicative of Norinsberg's (as is his of theirs).  Like Norinsberg, they conducted no significant discovery or depositions.  Also, like Norinsberg, Cohen and Fitch were fired by their client.

For the reasons stated above, the Court here should apply the *Marshall* rates and award plaintiff only $325 for Cohen and Fitch's time.

G.     **Nat Smith's requested hourly rate of $575 is excessive and should be reduced to no more than $450 per hour**

Nat Smith demands an hourly rate of $575 in this case,[68] which is far in excess of the usual rates awarded to civil rights attorneys of comparable attorneys in Section 1983 cases in the SDNY or the EDNY.  While claiming 20 years' experience in the field, Smith's declaration reveals that a majority of his cited cases relate to other areas: employment matters, ERISA and financial claims.  Smith Dec. ¶¶  5, 7, 12.  While this case contains some elements relating to

---

[67]  Gerald Cohen claims that only one of his firm's claims litigated against the Special Federal Litigation Division was dismissed upon a dispositive motion (a claim which the City is unable to verify or disprove).  Law Department records show that among cases brought by Cohen & Fitch in or after 2010 and concluded as of the end of 2015, the plaintiff recovered *nothing* in eleven cases, and $15,000 or less in 95 cases. Dec. ¶ 26.

[68]  Smith requests an hourly rate of $250 for an associate named James McCucheon. Solely because Mr. McCucheon's billings in the case are limited to less than 24 hours, the City declines to contest that rate, without conceding that it is reasonable given the attorneys role in the case and experience in the field..

employment law, there is no claim here under Title VII or any other employment statute, nor any wage and hour or pension claim.

Smith's cases listed on Pacer for the EDNY and SDNY, which are not numerous, reveal very few obvious civil rights claims under Section 1983 (most are against private commercial entities).  Ex. P.  Consistent with this, the NYC Law Department's case tracking database shows only two matters in which Nat Smith is listed as counsel as having been resolved during the period 2010-2016, one is this case, the other is a commercial matter involving the City where he represented a defendant**.**  Dec. ¶ 31.[69]  Given the minor role of employment law issues in the case Smith's experience is largely not apropos.

Unlike other counsel, Smith claims that his rate is supported by a fee agreement with the plaintiff that allows him to use a $575 hourly rate in a *quantum meruit* claim against Schoolcraft. This assertion should be disregarded by the Court.  First, Smith did not submit any actual fee agreement to the Court and refused to produce any to the City when requested.  *See* Letter from City's Counsel to Court, Jan. 28, 2016, Ex. A at 11, DE 576.  The court cannot conclude from counsel's vague assertions that Schoolcraft agreed to *pay* $575 per hour, since even under Smith's formulation the $575 rate would have been subject to a judicial determination in a claim for *quantum meruit*.  Absent proof from an actual signed fee agreement, which Smith has chosen to withhold, the Court should disregard the assertion that Schoolcraft agreed to pay anything.[70]  In any event, plaintiff's agreements with counsel do not control what the Court should deem a

---

[69]  The NYC Law Department's database may not reflect cases where an attorney appears as co-counsel or substitutes for other counsel after initiation of the matter.  *Id*.

[70]  Alternatively, should the Court find this allegation important in its determination, discovery should be permitted via the production of the actual retainer agreements with Smith and the other counsel, to give the City a fair opportunity to rebut the plaintiff's assertions.

reasonable fee. *See Townsend v. Benjamin Enters.*, 679 F.3d 41, 59 (2d Cir. 2012) (affirming district court's refusal to apply retainer agreement rate in calculating reasonable fees).

Smith is the subject of one prior published fee award of $425 per hour, in an ERISA case against a private corporation. *Arnone v. CA, Inc.,* 08 Civ. 4458 (SAS), 2009 U.S. Dist. Lexis 17080 at *10 (S.D.N.Y. Mar. 6, 2009). Because this rate was awarded in an entirely different and far more technical field than civil rights litigation under Section 1983, it exceeds what is appropriate for a civil rights case. Therefore, the Court here should not increase the ERISA rate significantly due to the passage of time, especially since most of Smith's experience in the intervening period has not been in Section 1983 cases. Accordingly, the Court should adopt only a slight increase – to $450 – from the ERISA litigation rate from 2009.[71]

### H.     The appropriate rate for paralegal work is $100

The appropriate hourly rate for paralegals for a case of this nature in this district is $100, which is the rate that has been awarded even to mid-size and large corporate law firms. *See Barile v. Allied Interstate, Inc.*, 2013 U.S. Dist. LEXIS 32483, *22 (S.D.N.Y. Jan. 30, 2013) (citing *O'Toole v. Allied Interstate, LLC*, 2012 U.S. Dist. LEXIS 176215, 2012 WL 6197086 at *1 (S.D.N.Y. Dec. 12, 2012); *Reith v. Allied Interstate, LLC*, 2012 U.S. Dist. LEXIS 160704, 2012 WL 5458007 (S.D.N.Y. Aug. 9, 2012); *Ryan*, 882 F. Supp. 2d 628, 2012 WL 3217853 at *6)**;** *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) (awarding $100 per hour for paralegals at Gibson Dunn & Crutcher LLP); *Thai-Lao Lignite (Thail.) Co. v. Gov't of the Lao People's Democratic Republic*, 10 Civ. 5256 (KMW)(DF), 2012 U.S. Dist. LEXIS 164261, at *21-23 (S.D.N.Y. Nov. 14, 2012) (reducing requested rates for paralegals at King & Spalding

---

[71] Even after adjustment for inflation, this ERISA rate of $425 in 2009 would only be $463 in 2015 dollars. Dec. ¶ 34 .

LLP and Sullivan & Cromwell LLP from over $300 per hour to $100 per hour).  Moreover, the

court has awarded two civil rights attorneys $100 per hour for work that they performed that

could have been performed by a paralegal and awarded the paralegal $100 per hour for work

performed.  *See Lee v. Santiago*, 12 Civ. 2558 (PAE)(DF), 2013 U.S. Dist. LEXIS 130141, at

*15-21 (S.D.N.Y. Aug. 15, 2013*), report and recommendation adopted by*, 2013 U.S. Dist.

LEXIS 129129 (S.D.N.Y. Sept. 10, 2013).[72]  Even if plaintiff can cite some cases awarding a

higher rate of $125, that rate is not appropriate here where, according to the billing records, the

paralegals performed a great deal of apparent make-work, and their qualifications are unclear.

*See supra* at 25 (detailing wasteful paralegal time).[73]

I.     The appropriate rate for the laws student intern Magdalena Bauza is $100

Plaintiff's request for a rate of $150 for time charged by Magdalena Bauza, an apparently

unpaid law student intern hired specifically for this case, is excessive, and Bauza's time, to the

extent allowable at all, should be charged at the $100 paralegal rate. *See Barile v. Allied

Interstate, Inc.*, 2013 U.S. Dist. LEXIS 32483, *21 (S.D.N.Y. Jan. 30, 2013) (law student's work

should be charged at the $100 paralegal rate) (citing *Williams*, 975 F. Supp. at 326)); *Restivo

Guardado v. Precision Fin., Inc.*, 2008 U.S. Dist. LEXIS 47881, *19 (E.D.N.Y. Mar. 9, 2008)

(law students should be charged at same rate as paralegals at $75 per hour) (citing *Moon v.

Kwon*, No. 99 Civ. 11810, 2002 U.S. Dist. LEXIS 21775, 2002 WL 31512816, at *3 (S.D.N.Y.

---

[72] Moreover, if the Court were to find that S.D.N.Y. rates exceed $100 per hour for paralegals, and they do not, the Court should adopt the EDNY rates for paralegals which is certainly no more than $100, for the reasons stated above. *Supra* at 56-57 n. 57.

[73] Norinsberg's paralegal Nicole Burstyn was awarded a rate of $125 in *Marshall*, where the reasonableness of the rate was *not contested* and therefore not litigation, most likely in light of the very small amount of time charged by Burstyn in that case. Ex. F at 10, 24. Although the *Marshall* decision is not informed by any advocacy on the issue of paralegal rates, in light of that decision the City allows for a $125 rate only for Burstyn.  That rate is not warranted for any other paralegals in light of the case law and absence of evidence of any special qualifications or experience.

Nov. 8, 2002), (awarding $80 for law students and noting that [s]tudents are generally billed at rates similar to those of paralegals")).  Bauza is not an admitted attorney in the state of New York (or anywhere else to the City's knowledge).  Dec. ¶ 42.  Moreover, private clients of business-oriented law firms rarely pay for law intern or summer associate work in today's legal market environment.  Dec. ¶ 36.

### J.    The reasonable hourly rate for Howard Suckle, John Lenoir, Richard Gilbert, Peter Gleason and  Harvey Levine is $300

While Howard Suckle has been a lawyer for many years, he has very little experience in the area of civil rights law and performed few significant tasks in this case.  A review of the cases where he is listed as counsel in ECF for the EDNY and SDNY reveals very few cases, and even fewer of any apparent civil rights character.  Ex. P.  Indeed, this case is the only apparent Section 1983 case appearing on those lists and he played only a minor role here, as an associate to Smith.  While Suckle avers that he actually charges some clients the rate he demands in non-contingency cases, he does not state what sorts of cases those are gives no reason to believe that they have anything to do with civil rights.  Suckle Dec. ¶ 4, DE 560-6.  Accordingly, since Mr. Suckle, whatever his role may be in other cases where he has more relevant expertise, performed in this matter as a senior associate with little experience in civil rights, his time should be charged at $300.

The same is true of John Lenoir, who functioned largely as Smith's senior associate, assisting Smith in the handling of depositions.  Lenoir also has very limited experience as a plaintiff's civil rights lawyer – his only work in the field appears to have occurred in the last two years. *See* Exs. O, P.

The Gleason Team partners, whatever their rates in other matters, should receive only $300 here in light of their very limited role in the case; their very limited federal court and civil

rights experience; and their termination by Schoolcraft after only four months.  *See supra* at 28-29; *See* Exs. O, R; Dec. ¶ 31.  Indeed, since the Gleason Team was never rehired by Schoolcraft, their brief and unfruitful relationship with plaintiff weighs even more heavily against their hourly rate than with respect to the Norinsberg Team.

**POINT VII**

**PLAINTIFF HAS NOT GIVEN UNAMBIGUOUS PERMISSION FOR THE GLEASON TEAM TO PURSUE PLAINTIFF'S OWN FEE CLAIM HERE AND THE COURT SHOULD DENY ANY AWARD OF THE GLEASON TEAM FEES OR ALLOW DISCOVERY AND A HEARING ON THE ISSUE OF STANDING.**

Although the Gleason team was apparently unaware of it when they filed their fee motion (See Docket Nos. 564, 580 (submitting motion and letter on behalf of counsel not plaintiff)), as this Court ruled, black letter federal law provides that the fee claim belongs entirely to plaintiff. Order of Feb. 25, 2016, DE 586.  Upon motion of the City, the Court previously ordered the Gleason Team to submit proof of their standing to pursue fees on behalf of plaintiff, which they purported to do on March 8, 2016.  DE 594.

But the Gleason Team's standing remains unproven, because the Declaration of Adrian Schoolcraft on which they rely is based on the false premise that the lawyers have a claim for fees against a City, rather than that *Schoolcraft has the claim* which he is allowing them to pursue.  He states: "I authorized and approve of [counsel] seeking to recovery [sic] from the City of New York the reasonable fees, costs and expenses that the Court may determine *that they are entitled to* in connection with the work that they did on my behalf in this action." DE 594-3. In fact, "they" – that is counsel themselves – are entitled to recover nothing in this action.  And as set forth above, *supra* at 5-6, whatever they may be entitled to recover fees directly from

Schoolcraft – such as, e.g., 1/3 of his recovery (DE 594-1) – is a different question from whatever fees *Schoolcraft* may recover here.  Therefore, the claim that Schoolcraft has purportedly authorized the Gleason Group to pursue does not exist.[74]

There is also a continuing factual question whether the Gleason Team represents the plaintiff.  While Harvey Levine points to the team's listing on the docket as evidence that he and his colleagues were never terminated, the docket just reflects that counsel failed to withdraw their appearance.  The docket is hardly independent evidence of whether or not counsel *should have withdrawn*.  Schoolcraft's Declaration, submitted by Levine himself, says that the Gleason Team represented plaintiff "from about November 2011 through May 2012", not to the present day. *Supra* at 29.[75] This factual dispute about the Gleason Team's role should be resolved before fees are awarded on the basis of the Gleason Team's motion.

Accordingly, the Gleason Team's fee application should be denied in its entirely, or, in the alternative, proceedings should be permitted to determine if plaintiff is aware that he (and not his counsel) has a right to collect reasonable attorneys' fees in this matter; whether he terminated the Gleason Team's representation (and why)[76]; and whether he intends to hand over his fee rights to the Gleason Team for disposition.

---

[74] The Declaration does not purport to be an assignment of any right to counsel. Should plaintiff contend that it is such an assignment, the City will request a surreply to respond.

[75] Schoolcraft is mistaken as to the years (but not the months) involved – but the point is that he believes that the representation came to a definite end. Levine claims that his team's role merely "diminished," but this is not credible: counsel's own time records indicate that it diminished to nothing. *See* Ex. A; Levine Aff. ¶ 7, DE 594. Levine was apparently consulted on a pension question by plaintiff's counsel in 2015, but this does not mean that Levine or his group were actually retained by plaintiff to litigate anything as of that date, and Levine did not record the time involved.  Levine Aff. ¶ 8, DE 594.  Moreover, were the Gleason Team never terminated, plaintiff would be obligated to pay them 1/3 of his recovery, according to their retainer agreement.  Doc. 594-1. Discovery is at least required to determine if plaintiff has agreed to make such a payment, which seems unlikely.

[76] Lawyers who are terminated for cause in New York State are not entitled to receive any fee at all. *Teichner v. W & J Holsteins*, 64 N.Y.2d 977, 979 (N.Y. 1985) ("If the discharge is with cause, the attorney has no right to

## POINT VIII

## PLAINTIFF'S REQUESTED EXPENSES SHOULD BE REDUCED

Several categories of plaintiff's claimed expenses are not recoverable.  For example, plaintiff seeks a total of $71,344.30 in expert fees or other expert-related expenses.  Audit 108-109.  The Supreme Court has unambiguously ruled – as have lower courts in cases where plaintiff's counsel was a party – that plaintiffs in Section 1983 cases are not entitled to expert fees.  *W. Va. Univ. Hosps. v. Casey*, 499 U.S. 83, 102 (1991) ("§ 1988 conveys no authority to shift expert fees."); *see Stanczyk v. City of New York*, 11-CV-0249 (FB) (RER), 2013 U.S. Dist. LEXIS 88143 (E.D.N.Y. June 21, 2013) (denying expert fees claimed by Norinsberg, citing Supreme Court precedent); *see also Walker v. City of New York*, 11-CV-314 (CBA) (JMA), 2015 U.S. Dist. LEXIS 101253, *31-32 (E.D.N.Y. July 27, 2015) (following Casey and distinguishing § 1981 cases); *see also* Local Civil Rule 54.1(c)(3) ("Fees for expert witnesses are taxable only to the extent of fees for ordinary witnesses unless prior court approval was obtained.").[77]  Plaintiff also claims $55,945.99 in expenses relating exclusively to claims against the Medical Defendants

compensation or to a retaining lien . . . .").  Therefore, any fee for a lawyer terminated for cause would be unreasonable. Discovery and/or a hearing should be allowed on the issue of termination for that reason as well.

[77] Nat Smith argues in his Declaration, although not in the Memorandum of Law, that the Rule 68 allows plaintiff to claim fees on "federal claims" that are not authorized by Section 1988.  Docket No.560-2, ¶ 34.  That is not so.  The Rule 68 that provides only for "reasonable . . . costs and expenses for plaintiff's federal claims."  Offer of Judgment, DE 531-1, at 3.  Smith is correct that the Rule 68 is to be construed like a contract, but expenses that are not compensable as a matter of law in plaintiff's federal claims cannot reasonably be included in the term "reasonable . . . expenses for plaintiff's federal claims."  Smith cites no case to the contrary, and he mis-cites the Magistrates Report and Recommendation in *Berrian v. City of New York*, 2014 U.S. Dist. Lexis 104255 (S.D.N.Y. July 28, 2014), asserting that it was "adopted" by the District Court.  In fact the court did not adopt the portion of the Magistrate's recommendation disregarding the statutory limit on fees in the PLRA: rather the Court explicitly *applied* the statutory limit in a manner consistent with the statute. *Berrian v. City of New York*, 2014 U.S. Dist. LEXIS 163445, *11 (S.D.N.Y. Nov. 21, 2014) ("The PLRA permits all but a nominal sum to be paid by the City. Because the City agreed to pay reasonable attorneys' fees in addition to the amount it paid the Plaintiff, $1 of Plaintiff's $65,000 award shall be allocated to satisfy the attorneys' fees and costs awarded below."); *see also Hassan v. New York City*, 2014 U.S. Dist. LEXIS 26194, at *2-4.  Moreover, the motion is proceeding "pursuant to . . . 42 U.S.C. § 1988" (DE 559), and Section 1988 case law is relied upon throughout plaintiff's Memorandum of Law.  Since this point is not made in plaintiff's Memorandum of Law, to the extent it is pressed in Reply the City reserves the right to request leave to make a surreply on the issue.

(Audit 107-08) (including some of the expert fees noted above), which should be disallowed for the reasons set forth in Point II-B, supra.

For these and other reasons set forth more fully in the Audit only $59,360.84 of the expenses are recoverable in this action.

## CONCLUSION

For the reasons set forth above and in the Audit, plaintiff's motion for an award of attorneys' fees should be denied, and as set forth in more detail in Exhibit DD, plaintiff should be awarded a total amount of fees of $1,017,877.50 for the work of the Norinsberg and Smith Teams, plus $55,779.84 in reasonable expenses.[78]

Dated:          New York, New York
                April 8, 2016

                              Respectfully submitted,

                              ZACHARY W. CARTER
                              Corporation Counsel of the City of New York
                              *Attorneys for City Defendants*
                              100 Church Street, Room 3-212
                              New York, New York 10007
                              (212) 356-2386


                              By:  _____/s_____
                                   Alan H. Scheiner
                                   Senior Counsel

---

[78] Should the Court determine to award fees based also on the submission of the Gleason Team, the appropriate reasonable amount for their work would be $35,949.00 plus $3,581 in reasonable expenses.  The City takes no position on what particular lawyers should receive from Schoolcraft, which is not an issue before this Court.