# COHEN & FITCH LLP

THE WOOLWORTH BUILDING
233 BROADWAY, SUITE 1800
NEW YORK, NY 10279
TEL: 212.374.9115
FAX: 212.406.2313

---

April 11, 2016

**BY EMAIL & ECF**
Honorable Robert W. Sweet
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

                **RE**:    *Schoolcraft v. The City of New York*,
                        10-cv-6005 (RWS) (DCF)

Dear Judge Sweet:

       On behalf of all of plaintiff's counsel, I am writing this letter pursuant to Rule 104(a) and Rule 702 of the Federal Rules of Evidence in support of the plaintiff's motion to strike the Declaration and Report of Judith Bronsther, Esq. The Declaration and Report were filed in support of the City Defendants' opposition to the pending motions for attorneys' fees, costs and expenses. This motion to strike should be granted because Bronsther's "expert" opinion about the reasonableness of counsels' fees and their billing practices are not proper subjects of expert testimony and cannot survive the *Daubert* analysis, which is a threshold admissibility issue.[1]

### BACKGROUND

      On April 8, 2016, the City Defendants filed their papers in opposition to the pending motions, including a Declaration[2] by Bronsther, her resume, and her "Report." (Dkt. # 598-2, 598-3 & 598-4). As stated in her Report, Bronsther, who is an attorney

---

[1] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993) (Rule 702 imposes on trial judges a "gatekeeping" obligation that includes the "task of ensuring that an expert's testimony rests both on a reliable foundation and is relevant to the task at hand.") Testing the foundational reliability of expert testimony "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. The Notes of the Advisory Committee on the 2000 amendments to Rule 702 also make clear that "the admissibility of all expert testimony is governed by the principles of Rule 104(a).

[2] The Declaration was not actually filed and the City Defendants have stated they will correct the filing error.

admitted to practice law in the State of New York, gives her opinion about the reasonableness of the hours expended and whether the billing practices of the plaintiff's attorneys are consistent with what she labels "acceptable billing practices." (Report at p. 1; Dkt. # 598-4.)  Based on her review of the billing records and a "standard of review" set forth in her Report, which merely summarizes in part the law under 42 U. S. C. Section 1988 (*id.* at pp. 18-19), Bronsther offers dozens of opinions about the reasonableness of the fees, expenses, and costs sought by plaintiff's counsel.  For the reasons set forth below, we respectfully request that the Court strike these submissions.

### THE BRONSTHER REPORT DOES NOT SATISFY THE EVIDENTIARY STANDARD FOR ADMISSION OF EXPERT TESTIMONY

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony at trial.  That Rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The City Defendants' submissions cannot satisfy this Rule.  Indeed, in their supporting memorandum of law, the City Defendants effectively acknowledge that Bronsther's "opinions" are probably not admissible.  In a footnote the City Defendants state:  "Even if the [Report] is not deemed admissible as expert testimony *per se,* it is a useful guide for the Court to the contents of plaintiff's submission and counsel's billing practices." (Dkt. # 597 at p. 2, n. 4).   Whether labeled an "expert opinion" or a "useful guide," the Bronsther Declaration and Report are not admissible under any standard or rule of law.

While Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-95 (1993) sets forth a non-exclusive checklist for trial courts to use in assessing the admissibility of expert testimony,[3] in applying the *Daubert* analysis, "[t]he Supreme Court has held that the Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand.'"  Solorio v. Asplundh Tree Expert Co., No. 02CIV8035RJS, 2009 WL 755362, at *2 (S.D.N.Y. Mar. 23, 2009).  In this case, Bronsther's opinions fail under both prongs of the analysis.

---

[3] The specific *Daubert* factors are (1) whether the expert's technique or theory can be or has been tested -- that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the relevant community. See generally Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-95  (1993).

### *Ms. Bronsther's "Expert" Report Would be of No Utility in Assisting the Court with Resolving the Present Fee Application*

Notwithstanding the inherent unreliability of Bronsther's opinion as discussed infra, both Bronsther's report and her qualifications fail to establish that her report passes the "touchstone [of admissibility]," which is "helpfulness to the trier of fact." Sullivan v. Ford Motor Co., No. 97CIV 0593 (RCC), 2000 WL 343777, at *6 (S.D.N.Y. Mar. 31, 2000); Dreyer v. Ryder Auto. Carrier Grp., Inc., No. 98-CV-82A(F), 2005 WL 1074320, at *16 (W.D.N.Y. Feb. 9, 2005), objections overruled, 367 F. Supp. 2d 413 (W.D.N.Y. 2005)("Under Rule 702, a threshold condition of admissibility is that the proffered testimony be calculated to "assist the trier of fact to understand the evidence or to determine a fact in issue.").

Specifically, it is well settled that "[t]he court...is itself an expert on the question (of attorneys' fees) and may consider its own knowledge and experience concerning reasonable and proper fees." Langbein v. Kirkland (In re TMT Trailer Ferry, Inc., 577 F.2d 1296, 1304 (5th Cir.1978). Proctor v. Educ. Credit Mgmt. Corp., No. 2:07-CV-839, 2010 WL 4919670, at *6 (S.D. Ohio Nov. 29, 2010)("Indeed, it is not even necessary for defendant to provide an expert witness regarding the reasonableness of its attorney's fees because the court 'is itself an expert on the question'"). "The underlying rationale is that a 'judge is presumed knowledgeable as to the fees charged by attorneys in general and as to the quality of legal work presented to him by particular attorneys.'" Glenn v. Chatmon, No. CIV.A. 87-5107, 1988 WL 11677, at *2 (E.D. Pa. Feb. 12, 1988).

In this case, apart from their conclusory suggestion that her report would be "useful" in this Court's determination, there is nothing to suggest – nor defendants even attempt to articulate in what manner – that Bronsthers' report or opinions will aid Your Honor's determination of the reasonableness of the fees in this case. Instead Ms. Bronsther attempts to simply inject her own evaluation of reasonableness, which is improper as a matter of law. See e.g., Nimely v. City of New York, 414 F.3d 381, 397 (2d Cir. 2005):

> We have consistently held, in that respect, that expert testimony that 'usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it,' by definition does not 'aid the jury in making a decision"; rather, it 'undertakes to tell the jury what result to reach," and thus "attempts to substitute the expert's judgment for the jury's.'

Id.

In addition, while Bronsther's resume indicates that she worked as a lawyer in private practice in the 1980s, it appears based on her website that her experience as a lawyer was limited to corporate finance and oil and gas transactions. (See http://www.legalbills.com/judie-bronsther). More importantly, she does not state that she has any experience as a lawyer in litigation work, trial work or Section 1983 claims.

Notably, she does not in her resume or declaration point to a single federal case – let alone a federal *civil rights case* – where she has actually been *qualified* as an expert on the "opinions" she purports to offer. Instead, Bronsther claims to have read some of the materials filed in the public record in this action and offers her own conclusions about the reasonableness of the fees and bills submitted. This lack of experience alone is sufficient to disqualify her under the *Daubert* analysis, thereby precluding the admissibility of her opinions or her report in this case. See e.g., Rodriguez v. Cty. of Los Angeles, 96 F. Supp. 3d 1012, 1026-27 (C.D. Cal. 2014):

> Plaintiffs move to strike portions of the Defendants' Declaration of Robert Bruning under Fed.R.Evid. 702 as improper expert testimony. Mr. Bruning declares that he "specialize[s] in acting as an expert witness in matters involving legal fees disputes" and, along with his partner, has reviewed and audited hundreds of cases involving attorney's fee requests. However, there is no evidence that Mr. Bruning has *any* experience specific to *civil rights litigation* nor that Mr. Bruning has any familiarity with attorney's fees under the PLRA… Mr. Bruning is *not* an expert qualified to opine on the reasonableness of attorney's fees in the *civil rights context* nor an expert on the PLRA. Further, the legal opinions provided by Mr. Bruning in his declaration are not helpful to the Court and are not properly considered expert testimony under *Daubert.*

Id.; Evans v. Lafayette Ins. Co., 2008 WL 6928250, at *1 (E.D. La. Jan. 11, 2008)(excluding attorney's fees expert because "[t]he issue of amount of attorneys' fees will be decided by the court rather than the jury."); In re Monahan Ford Corp. of Flushing, 390 B.R. 493, 504 (Bankr. E.D.N.Y. 2008)("a judge, who routinely observes and evaluates the professional performance of attorneys in bankruptcy cases, is better situated than a law professor to judge the professional competence of debtor's counsel").

Moreover, and of greater import, is the fact that Bronsther's Report does not mention or cite any established or peer-based standards about which there are any generally accepted theories or techniques. To the contrary, according to her own article, "most attorneys" do not follow her methodology thereby making it *antithetical* to any *accepted* standard in the legal community. "*Watching the Clock*" by Judith Bronsther, *Los Angeles Daily Journal,* May 4, 1999 at p. 8; attached hereto. Thus there is absolutely no basis to simply *presume* – as defendants suggest this Court should do – that her subjective "methodology" would provide any utility in Your Honor's analysis. Indeed, as District Judge Cote has recognized:

> Mylan has not shown that Marquess' opinion qualifies as admissible expert evidence. Marquess has no experience in patent law or complex litigation…His work purports to apply generally accepted billing practices, but Mylan has failed to show that there is *any such standard*, or that Marquess has followed *any recognized standard* in preparing his evaluation of the Takeda fee request. Thus, the Marquess report is rejected to the extent it is offered as an expert opinion. Even if the Marquess opinion were admissible as an expert opinion, it is singularly unhelpful.

>Because of his *lack of experience* in complex litigation much less patent litigation, his opinion about the reasonableness of the fee request here is entitled to essentially *no weight*.

Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc., No. 03 CIV. 8253(DLC), 2007 WL 840368, at *7 (S.D.N.Y. Mar. 21, 2007), aff'd, 549 F.3d 1381 (Fed. Cir. 2008); see also In re Worldwide, 316 B. R. 637, 642-43 (D. Del. Bankr. 2004) ("we agree with [movant] that the [attorney's] fee audit report cannot be considered an expert report done in accordance with generally accepted methodologies of performing such a report.*")* (*citing Daubert*)).

The Court, not a lawyer twenty years removed from practice who has no experience in this case or in civil rights litigation, must make the determinations at issue in this fee motion. Your Honor, based on the Court's experience on the Bench and the Court's direct and personal knowledge of this action, which has been pending before Your Honor for the past six years, has more than sufficient expertise to determine the reasonableness of the fees at issue such that Ms. Bronsther's report would not aid in that analysis. See e.g., De La Paz v. Rubin & Rothman, LLC, 2013 WL 6184425, at *9 (S.D.N.Y. Nov. 25, 2013)("Plaintiff correctly argues that, to the extent that it offers legal conclusions about Plaintiff's attorneys' bills, Professor Ross's expert letter is inadmissible. Professor Ross's letter is also inadmissible under Federal Rule of Evidence 702(a), as his testimony is unlikely to be of help to the Court in reaching factual (or legal) conclusions.") (citations omitted); Sweeney v. Athens Reg'l Med. Ctr., 917 F.2d 1560, 1569 (11th Cir. 1990) ("In view of the district court's superior familiarity with the case, there appears no reason to accept the two law professors' opinions of the fee over the court's assessment.*")*; In re McClanahan, 137 B.R. at 74:

>[T]his Court has in the past and intends in the future to reject outright the proposition that the ruling on the Fee Application should be based on testimony of experts, and the role of the Judge considering the application is merely that of a potted plant…First, under the well-recognized rules of evidence, the justification for expert testimony is to assist a trier of fact to understand the evidence…the term "trier of fact" is generally understood to mean the jury, e.g., untrained lay people, and does not include a Judge who is a trained professional…Of course, it requires no elaborate discussion to point out that what is a reasonable fee to be allowed to an attorney[] is not a highly esoteric, technical, or scientific subject which a [] judge would not be able to comprehend without help and assistance of an "expert."

Id.

***Ms. Bronsther's Report is Inherently Unreliable and Therefore is Further Reason to Deny its Admissibility***

As to Bronsther's reliability portion of the *Daubert* analysis, her opinions do not

employ any objective factors in support of any of her opinions or conclusions, and all of her statements are based on her own subjective views about the reasonableness of the fees and the bills. Such purely subjective opinions are improper. See Playtex Prods. v. Procter & Gamble Co., 2003 U.S. Dist. LEXIS 8913, (S.D.N.Y. May 28, 2003) (holding that "heavy reliance on [a party's] subjective view, without analysis of the basis for that party's conclusion, is wholly insufficient to survive a *Daubert* motion"). In fact, in Ms. Bronsther's own article "Watching the Clock," Ms. Bronsther announced that "*most lawyers do not pass the auditor's tests of efficiency, reasonableness and cost-effectiveness.*" "*Watching the Clock*" by Judith Bronsther, *Los Angeles Daily Journal,* May 4, 1999 at p. 8; attached hereto. Further, the article *universally* criticized lawyers *across the marketplace* of "*routinely* bill[ing] 12-hour days" and using "multiple attorneys [to] revise each other's briefs." Id.

Moreover, illustrative of the lack of objective reliability of Ms. Bronsther's expert analysis, is Ms. Bronsther's company, which markets its primary purpose as a means to assist clients in "reducing their legal fees," and "provide a solid foundation upon which to negotiate for appropriate *reductions* in the legal bills." [4] Since Ms. Bronsther's company's primary purpose, as touted by her website, is to "reduce[] legal fees" her company "stands ready to testify in support of its report" to reduce those fees. Neither Ms. Bronsther's report nor her company's mission statement reflect any interest in determining the objective reasonableness of attorney's bills – the relevant inquiry here – but rather to subjectively and impartially suggest, in all cases, that the fees charged should presumptively be reduced.

Thus, under reliability portion of the Supreme Court's test (Solorio, supra) the Declaration and Report are inadmissible. No objective or reliable principles or methods are used in rendering her "opinion," and the Report simply boils down to one lawyer – whose company has admittedly one singular agenda to "reduce" the fees – reviewing another's bills and offering an "opinion" about them and should therefore be excluded as unreliable under *Daubert*. See e.g., In re Vernon-Williams, 343 B.R. 766, 797 (Bankr. E.D. Va.), aff'd in part, rev'd in part and remanded sub nom. Boleman Law Firm, P.C. v. U.S. Tr., 355 B.R. 548 (E.D. Va. 2006) (rejecting and expert opinion on attorney's fees because "this Court cannot help but note that if White is also relying on 'minimums' in creating supplemental fee applications, he has something to gain from convincing this Court that the use of 'minimums' should be considered an acceptable practice."); In re McClanahan, 137 B.R. 73, 77 (Bankr. M.D. Fla. 1992) ("This Court is constrained to reject the testimony of these experts for several reasons. First, the testimony of Mr. Horn is obviously self-serving because if it is accepted, it certainly would be used by Mr. Horn as a precedent…").

Accordingly, we request that the Bronsther Declaration and Report be held inadmissible. We further request that the Court resolve this threshold issue on an *in limine* basis so that the merits of the underlying fee motions can be expeditiously determined.

---

[4] *See* Accountability Services, Inc. website at http://www.legalbills.com/, visited April 11, 2016.

Thank you for your consideration of this request.

Sincerely,

_____/s_____
JOSHUA P. FITCH
GERALD M. COHEN
COHEN & FITCH LLP
233 Broadway, Suite 1800
New York, N.Y. 10279
(212) 374-9115
gcohen@cohenfitch.com
jfitch@cohenfitch.com

NATHANIEL B. SMITH
100 Wall Street, 23rd Floor
New York, New York 10005
212-227-7062
natbsmith@gmail.com

JON L. NORINSBERG
225 Broadway, Suite 2700
New York, New York 10007
(212) 791-5396
Norinsberg@aol.com

JOHN LENOIR
100 Wall Street, 23rd Floor
New York, New York 10005
212-335-0250
john.lenoir@gmail.com

CC VIA ECF:
Alan Scheiner
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007

# Watching the CLOCK

## Some client bills show attorneys killing, rather than filling, time.

**By Judith Bronsther**

Webster Hubbell told his wife in a phone call from prison that all lawyers overbill. He certainly could not mean that all 863,637 lawyers in this country overbill, could he? Having reviewed hundreds of millions of dollars of legal fees, I have found that most lawyers do not pass the auditor's tests of efficiency, reasonableness and cost-effectiveness.

Auditing legal bills has gained impetus in the turbulent legal market of the 1990s, as clients are becoming more informed purchasers of legal services. In fact, a recent study of the 1,000 largest U.S. corporations found that auditing legal bills was the third most prevalent method of controlling legal costs.

Clients often employ independent legal auditing firms because they lack the resources to perform in-house reviews or because they need an objective, third-party view of any billing discrepancies. These legal auditors are using sophisticated proprietary software to analyze legal bills in order to identify inefficient or inappropriate billing practices. However, even without an independent audit, a client can often identify problems merely by scrutinizing legal bills.

The following examples represent the more egregious types of overbilling:

■ Some lawyers like to lunch. A partner from a New York firm took his client out for a social lunch and ordered a bottle of 1949 Lafite Rothschild. He billed his client $1,400 for his time, the lunch and the wine.

■ We all know that lawyers like to talk, but to themselves? One law firm billed for 628 meetings at which only one person was present.

■ Some firms employ overqualified people. For instance, a photocopy attendant turned out to have a law degree from Harvard and billed his time out at $245 an hour, plus 25 cents a page.

■ Beware of the legal team that can't agree. One bill described 10 lawyers who spent 71 hours drafting and revising two different versions of the same brief.

■ Other lawyers have literary aspirations. One lawyer billed 32.8 hours for writing an article for the American Lawyer.

■ Watch out for rainmakers. One attorney billed two hours, at a rate of $450 an hour, for speaking at a rainmaker lunch.

■ Some law firms are generous with on-the-job training. A summer associate in a firm with an outstanding reputation in bank lending transactions billed 135 hours for researching lender liability.

■ Who says that inflation can't be beat? One law firm increased its rates 10 times over a three-year period.

■ One firm had 314 people — 49 partners, 154 associates, 84 paralegals and 29 support personnel — billing time to a bankruptcy matter.

■ Some lawyers are time travelers and bill 32 hours in one day.

■ One firm billed $1,610 for "after-hours administrative expenses," which turned out to be air conditioning.

■ Some law firms ought to go into the photocopying business, such as one law firm that billed over $138,000 for photocopies, at 25 cents a page.

Although these instances are not typical, some firms use more subtle variations on these themes — attorneys who routinely bill 12-hour days, multiple attorneys who revise each other's briefs, "make-work" research projects designed to keep junior associates busy, vague billing descriptions and time sheets completed a long time after the work was done (requiring time reconstruction).

Legal fees are a big expense item in most clients' budgets, and lawyers should attempt to minimize them whenever possible. Or, at least, order a second-growth variety of Bordeaux wine at lunch — on the firm.

---

**Judith Bronsther**, an attorney, is president of Accountability Services, an international legal-auditing firm located in New York.