UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

ADRIAN SCHOOLCRAFT,                             10-cv-6005 (RWS)

                Plaintiff,

                                                  **REPLY AFFIRMATION OF
                                                  JOHN LENOIR**

      -v-

CITY OF NEW YORK, et al.,

                Defendants.

-----------------------------------------------------------X

      JOHN LENOIR, declares under penalty of perjury under the laws of the United States of America as follows:

      1.     I am one of the attorneys for Plaintiff Adrian Schoolcraft ("Plaintiff") in this action.

      2.     I am aware of the facts and circumstances relevant to this matter.

      3.     I submit this declaration in further support of Plaintiff's motion for attorneys' fees, costs and disbursements.

      4.     As set forth in my initial declaration dated December 2, 2015,[1] my hourly rate in this case is five hundred and seventy-five dollars ($575) per hour, and two hundred eighty-seven dollars and fifty cents for travel time. I recorded a total of 1310 hours expended on this case from February 2013 to September 2015, of which 58 hours were for travel which I billed at the one-half rate. I

---

[1] Exhibit E - Declaration of John Lenoir, Esq., Dkt. #560-6.

accept the City defendants' recalculation of my hours to accommodate the travel math to 1281 hours at base rate. My total invoice was $736,575.00.

5.  I have reviewed Defendants' opposition papers and participated in discussions with defendants' counsel and the settlement conference conducted by Magistrate Judge Freeman. As a result of these negotiations, I and my colleagues of the Smith Group propose to reduce or eliminate certain hours billed, and in my case, to discount my rate applied in depositions conducted by both Smith and myself. These adjustments, detailed below, result in a revised invoice reduced by $30,093.50 for a total of $706,481.50.

**Lenoir's experience supports his billing rate, especially for this case.**

6.  City Defendants object to my billing rate as not supported by relevant experience, which counsel misrepresents as limited to the past two years.[2] As my original declaration in support of this fee application pointed out, I have thirty years' experience as a trial lawyer. In 1980, I was appointed an assistant district attorney in New York County by Robert M. Morgenthau. In six years assigned to the Trial Bureau, I was on the "Homicide Chart" and tried many complex and high profile cases.

7.  Later I specialized in police misconduct investigations and prosecutions representing the Government as plaintiff in my capacity as an assistant United States attorney. As an AUSA in the Southern District of Texas, I was Chief of the Civil Rights Division.  In that capacity I reviewed all allegations

---

[2] "Lenoir also has very limited experience as a plaintiff's civil rights lawyer – his only work in the field appears to have occurred in the last two years." (City Memorandum p. 69)

of police excessive use-of-force and other civil rights complaints, made charging decisions and led prosecutions of federal civil rights indictments.[3] I also served as local counsel in Department of Justice civil litigation of Voting Rights and Section 1983 cases. Later as an AUSA in the Eastern District of New York, I was trained and designated as an EEO Investigator for the U.S. Department of Justice Executive Office of U.S. Attorneys. In that capacity I investigated civil rights complaints by or against assistant U.S. attorneys throughout the United States.

8. After government service I continued my work in police misconduct investigation as a Managing Director at Kroll Government Services in New York. In that role, I was appointed as part of the Federal Monitor team for the Los Angeles Police Department and reviewed police use of force reports for compliance with law and LAPD protocols. In addition, I was part of a three-person team that conducted independent investigations of police shootings for the City of Austin, Texas. I also led investigations into allegations of civil rights abuse at the Federal Law Enforcement Training Centers for the Department of Homeland Security, and conducted sensitive internal investigations of civil rights complaints within the police force of the United States Mint.

9 My experience in trial litigation and in compliance monitoring of police department practices and investigations into allegations of civil rights abuses by and within police agencies has been highly relevant in this case, which involved extensive circumvention and convenient interpretation of NYPD policies by individual NYPD defendants. In a similar case in this District, an attorney's

---

[3] I led one criminal civil rights prosecution in which the defendant Laredo TX police sergeant received over 60 years for attempted murder of a Mexican woman to cover up his earlier sexual assault. *U.S. v. Contreras*, 950 F.2d 232 (5th Cir. 1991).

experience in criminal litigation was found to be "essential" to litigating a police officer's section 1983 civil rights claim against NYPD, and justified a rate of $575.00 per hour.[4]

**The billing rate is appropriate for the nature of my participation in this matter.**

      10.    The City defendants misunderstand, or at least misrepresent my role in prosecuting the Schoolcraft case, which defendants characterize as functioning "as Smith's senior associate, assisting Smith in the handling of depositions." (Memorandum p. 69). While Nathaniel Smith served as lead counsel, we had co-equal retainer agreements with plaintiff and worked together as two solo practitioners bringing complimentary skills and experience to the prosecution of plaintiff's case.

      11.    I was initially asked by the plaintiff in February 2013, to consult and assist in evaluating the case and in preparing the matter for trial. Soon after, in April 2013, plaintiff executed a retainer agreement with me and Nathaniel Smith to represent him as his attorneys in prosecuting his case through trial. Since that time, the two of us have been working closely together on every aspect of this case. We fashioned our responsibilities initially on the understanding that we, the two of us, would try the case to a jury. Our trial preparation involved conducting and defending depositions of 37 individuals, and reviewing an enormous volume of documentary and audio/visual discovery with a view that we would share witnesses and responsibilities of opening and summation. It was important that

---

[4] *Zahrey v. City of New York*, Slip Op. 98-cv-4546 at p. 22; Dkt. # 264 (DCP) (JCF) (S.D.N.Y. June 8, 2010) (report and recommendation by MJ Francis); ("… a thorough understanding of criminal investigation and prosecution was essential to litigating Mr. Zahrey's civil rights claims.")

each of us understood the full scope and complexity of the witnesses and evidence so that we could effectively allocate responsibilities of presenting the case at a trial that the City Defendants estimated would last 40 trial days or two full months

**Billing rate discounted for participation at 25 depositions, and hours adjusted for "Substitution of Counsel" and "Lobbying" categories.**

12.     Despite the importance of co-counsel jointly participating in depositions of witnesses and parties in this case, I respect the observations of Magistrate Judge Freeman expressed to me that attorneys billing at partner rates at depositions is not standard practice at law firms.  I have identified 25 depositions on my invoiced billing in which I participated with Smith at a deposition in which Smith was lead counsel.  I propose to discount my rate by $100 per hour for the 189.5 hours billed for these depositions.  That will deduct $18,950 from my invoice.

13.     During the first few months in 2013, Nathaniel Smith and I became the senior lawyers on the case through retainer agreement with plaintiff.  We had a short amount of time to become proficient in the facts of the case, the discovery material on hand, and the status of discovery. This was essential preparation for lawyers who were engaged to represent plaintiff exclusively in prosecuting the case for trial. Accordingly, there were several hours that the Smith Group spent reviewing the file to get up to speed.  Defendants argue that these hours are not compensable as they relate to substitution of counsel and are duplicative.  The Smith Group has each agreed to adjust initial file review hours to accommodate this objection.  In my case, this substitution time is estimated to be 6.25 hours.  In addition, the Smith Group has agreed to adjust the time billed contacting law enforcement agencies to address defendants' objections that this time is not

compensable. Accordingly, an additional 13.13 hours of my invoiced time will be subtracted from my adjusted billing. With the 19.38 hours of these categories deducted from my billed hours, my adjusted invoice is 1072 hours billed at $575 per hour or $616,469.00; 189.5 hours billed at $475 per hour or $90,012.50. The total invoice is adjusted to $706,481.50.

**Lenoir's time journal reflects a billing practice that recorded only significant events and work efforts.**

14. City defendants complain that "Lenoir never billed anything in .10, used .20 only once and everything else was billed as having lasted more than thirty (30) minutes (with 30 minutes by far the most popular increment at 64%)." (Memorandum p. 38).

15. I do not dispute the defendants' analysis, and point out that it was unnecessary for the defendants to do this math. I stated in my declaration of December 2, 2015, that I neither recorded nor billed solitary events of less than fifteen minutes, such as emails read or written, ECF notices reviewed and short telephone calls.[5] This is a practice learned through a career as a salaried attorney in government service. It is ironic that defendants argue that I should be penalized with a fee reduction because I did *not* bill for hundreds of short email and ECF reviews and ten-minute telephone conversations.

16. Defendants also point to variances in time journals maintained by me and by others who participated in external events as a deviation from acceptable billing practices. Defendants' analysis is fundamentally invalid because their "expert" included time entries by the Norinsberg group with her analysis of the

---

[5] P. 6, Dkt. #560-6.

Smith group journal entries. (Rpt pp. 56, 59). In one instance the error noted in my time journal was only in listing the date of a 1.75-hour deposition event.[6] The error in recording this single billable event and work was limited to transposing dates. The events listed occurred, the work was done as stated, and the time spent and billed are valid and unchanged.

**Conclusion**

For the past four years, Nathaniel Smith and I have provided thorough, competent and diligent representation to Adrian Schoolcraft who was seriously damaged by the actions of defendants. Our ultimately successful representation of Schoolcraft reflects the intent and purpose of the fee shifting provision of Title 42 Section 1988. Accordingly, I respectfully requested that this application for attorneys' fees be granted.

Dated:
New York, New York April 28, 2016

_____
John D. Lenoir

---

[6] The invoice of billable hours submitted as incorporated in his Fee Application of December 2, 2015 lists five discrete Lenoir's events for 10/16/2013. One of these events listed was "co-counsel at deposition of Dfnt Bernier – 111 Broadway-by H. Suckle" for 1.75 hours. This event was incorrectly included as a 10/16/2013 event and should have been recorded as the sole 10/25/2013 event. This deposition was terminated at its outset by counsel for Bernier on his complaint about plaintiff counsel videotaping the deposition. The original invoice listed for 10/25/2013 "Appearance in court re attorney video of deposition—Bernier." This event should have been listed as 11/13/2013.