Law Office of
# NATHANIEL B. SMITH
Attorney at Law
100 Wall Street - 23rd Flr.
New York, New York 10005

Nathaniel B. Smith
natbsmith@gmail.com

Tel: 212-227-7062
Fax: 212-230-1090

May 9, 2016

Honorable Robert W. Sweet
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

        *Schoolcraft v. The City of New York,*
        *10-cv-6005 (RWS) (DCF)*

Dear Judge Sweet:

  As one of plaintiff's counsel, I am writing this letter to reply to the opposition papers submitted by the City Defendants on the plaintiff's motion to strike the Report of Judith Bronsther. The motion to strike should be granted because Bronsther's opinions cannot survive the threshold *Daubert* analysis.

  *Introduction*

  Bronsther and the City Defendants argue that she is qualified as an expert to render an opinion on whether the hours plaintiff's attorneys expended in this action were reasonable and whether the billing records submitted by plaintiff's attorneys are "consistent with acceptable billing practices." (Report at p. 1.) The Bronsther Report is fundamental flaw and should be stricken.

  First, Bronsther fails to provides the Court with a basis upon which to understand how she reached her conclusions about what she pronounces to be the "maximum reasonable hours" that were appropriate for this action. Second, she fails to identify the generally accepted "standards" that she purportedly applied in her criticisms of the hours expended by counsel. Instead, Bronsther proclaims to be an expert because she has reviewed "close to a billion dollars in legal fees,"[1]

---

[1] Bronsther Dec. ¶ 2 at p. 1; Dkt. 627-1).

LAW OFFICE OF
NATHANIEL B. SMITH

Hon. Robert W. Sweet
May 9, 2016

and with a magic wand called "reasonableness" makes thousands of hours of hard work disappear, on her mere say-so.

This Court aptly summed up why these kinds of opinions are properly stricken: "While it is permissible for [an expert] to base his opinion on his own experience, he must do more than aver conclusorily that his experience led to his opinion."[2] "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert."[3]

*Bronsther is Not A Qualified Expert on the Reasonable Hours Required to Litigate a Civil Rights Case*

Bronsther states that she is a lawyer but does not state that she has any experience litigating cases, let alone complex civil rights cases. And her web site, which touts her as being in the business of criticizing and reducing legal bills, claims that she last worked as an attorney thirty-five years ago in the corporate finance and the oil and gas matters in the late 1970s and early 1980s.[4] Absent some established experience as an attorney with an opinion grounded in relevant experience, she is not qualified as an expert to offer conclusions about how much work would have been reasonably required by a civil rights litigator to obtain the results achieved. It may be correct that a litigator with sufficient relevant experience could provide the proper foundation for an objective opinion about the reasonable requirements of certain types of litigation. But Bronsther simply does not have that foundation, and accordingly her subjective opinions about whether the hours worked in the action, globally or with respect to specific tasks, should be stricken.

One of the key *Daubert* factors is whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective,

---

[2] *Primavera Familienstiftung v. Askin*, 130 F. Supp. 450, 530 (S.D.N.Y. 2001).
[3] *Id.* (quoting *Kumho Tire*, 526 U.S. at 157).
[4] www.legalbills.com ("proven techniques that result in significant reductions to legal fees"); www.legalbills.com/judie-bronsther (corporate finance work in 1979 and oil and gas work in 1984).

LAW OFFICE OF
NATHANIEL B. SMITH

Hon. Robert W. Sweet
May 9, 2016

conclusory approach that cannot reasonably be assessed for reliability.[5] Another important factor is whether the expert's technique or theory has been generally accepted in the relevant community.[6]

Bronsther's Report easily flunks these factors. And she cannot hide behind the shelter of a generality about her "experience" as a lawyer or as a billion-dollar bill slasher. "Relevant experience can qualify a witness to testify but if the witness is relying solely or primarily on experience, then [he or she] must explain *how* that experience leads to the conclusion reached, *why* that experience is a sufficient basis for the opinion, and *how* that experience is reliably applied to the facts."[7] "If experts are permitted to testify on an issue of fact, they must provide some explanation for their conclusions, rather than referring generally to their experience. Without good explanations, courts cannot assess the reliability of any conclusions drawn by the expert, even if he possesses relevant experience."[8]

*Bronsther Does Not Identify or Apply Any "Accepted Billing Standards"*

Bronsther also states in her supplemental declaration that her opinions about the plaintiff's alleged deviations from "accepted billing standards" are based on "hundreds of corporate legal billing practices" that are "generally recognized." (Bronsther Dec. ¶ 7; Dkt. 627-1.) Yet she fails to identify or produce a single one of these "hundreds" of corporate billing practices. Similarly, she fails to show how any one of these unidentified practices has become "generally accepted" in the relevant community. Since Bronsther fails to identify any generally accepted

---

[5] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-95 (1993). Purely subjective opinions are insufficient. *See Playtex Prods. v. Procter & Gamble Co.*, 2003 U.S. Dist. LEXIS 8913, (S.D.N.Y. May 28, 2003) (holding that "heavy reliance on [a party's] subjective view, without analysis of the basis for that party's conclusion, is wholly insufficient to survive a *Daubert* motion).
[6] *Id.*
[7] *Linkco, Inc. v. Fujitsu Ltd*, 2002 U.S. Dist. Lexis 12975 at * 13 (S.D.N.Y. July 16, 2002) (emphasis added) (quoting Advisory Committee Note for 2002 on Rule 702 of the Federal Rules of Evidence); *accord Primavera Familienstiftung v. Askin*, 130 F. Supp. 450, 529-30 (S.D.N.Y. 2001) (expert must do more than aver that his experience lead to his conclusions; a court cannot permit experts to "offer credentials rather than analysis").
[8] *Linko, supra*, at * 13.

Law Office of
Nathaniel B. Smith

4

Hon. Robert W. Sweet
May 9, 2016

standards, the Court should strike all of her opinions about those practices.

Directly on point is Judge Cote's decision in *Takeda Chemical Industries v. Mylan Laboratories, Inc.*, 2007 U. S. Dist. Lexis 19614 (S.D.N.Y. Mar. 21, 2007), where Judge Cote held that a "legal fee auditor" opinion was inadmissible under *Daubert*. Although the expert's report "purports to apply generally accepted billing practices" the alleged expert there, like Bronsther here, "failed to show that there is any such standard or that the [expert] has followed *any* recognized standard in preparing his evaluation of the Takeda fee request."[9]

We do not dispute that Bronsther cites in her Report an "advisory" from an unidentified California arbitration committee about helping arbitrators identify legal billing issues. (Report at. p. 44.) Yet this "advisory" does not on its face constitute evidence of governing standards for billing practices for the legal profession; it appears to be random advice by an unknown California attorney, merely offering arbitrators some common senses ideas about legal billing.

More important, Bronsther misrepresents the origin of the "advisory" document to create the false impression that it reflects generally accepted standards. In her Report, Bronsther states that the "advisory" was from the "City Bar of California," and in her supplemental declaration she states that this was an error of a "typographical nature" and that the document was from the *State* Bar of California.[10] In fact, the advisory was issued by neither the City nor the State Bar of California. The advisory document itself states on the first page that it *only* reflects the points of view of unidentified committee members on fee arbitrations

---

[9] *Takeda Chemical Industries v. Mylan Laboratories, Inc.*, 2007 U. S. Dist. Lexis 19614 at * 24 (S.D.N.Y. Mar. 21, 2007) (emphasis in original) (citing *In re Worldwide*, 316 B. R. 637, 642-43 (D. Del. Bankr. 2004) ("we agree with [movant] that the [attorney's] fee audit report cannot be considered an expert report done in accordance with generally accepted methodologies of performing such a report.") (*citing Daubert*)). See also *De La Paz v. Rubin & Rothman, LLC*, 2013 WL 6184425, at *9 (S.D.N.Y. Nov. 25, 2013)("Plaintiff correctly argues that, to the extent that it offers legal conclusions about Plaintiff's attorneys' bills, Professor Ross's expert letter is inadmissible. Professor Ross's letter is also inadmissible under Federal Rule of Evidence 702(a), as his testimony is unlikely to be of help to the Court in reaching factual (or legal) conclusions.") (citations omitted).

[10] Bronsther Dec. at p. 4. n.1;Dkt. 627-1.

LAW OFFICE OF
NATHANIEL B. SMITH

Hon. Robert W. Sweet
May 9, 2016

in California. Indeed, the advisory specifically states that it has "not been adopted or endorsed" by the Bar of the State of California. (*Id.*; exhibit 6 at ECF p. 158 of 295.) Thus, this advisory does not establish any generally accepted standards, and accordingly all of Bronsther's "opinions" about such "generally accepted" standards should be rejected.

The "advisory" and Bronther's cut-and-paste of it into her Report[11] should also be rejected as unreliable as a matter of law. Both Bronsther and the "advisory" state that block billing "is almost never allowed by federal courts."[12] This is a false and gross overstatement, as easily demonstrated by superficial research on the block billing issue.[13] Indeed, Bronsther and the "advisory" could not be more wrong about block billing. For example, both Judge Lynch and Judge Seybert in the Southern and Eastern Districts of New York have specifically and respectively noted that block billing is a "generally accepted practice" and a "pervasive practice" in the legal industry.[14]

Finally, the City Defendants and Bronsther seek to shroud the infirmities in her Report by draping it in the language of science. In her supplemental declaration and in the City Defendants' opposition papers, they refer to Bronsther's "Allocation Methodology" attached as Report Exhibit 2. This Allocation Methodology describes a "three tier coding structure" used to label the billing entries based on categories for the "major aspects" of the case, subcategories for "key issues and projects," and "a particular task code" for each separately

---

[11] *Compare* Report at p. 44 *with* Report Exhibit 6 at ECF pp. 164-65 of 295.
[12] Report at p. 45; Exh. 6 at ECF p. 164.
[13] *See, e.g. Abdell v. City of New York*, 2015 U.S. Dist. Lexis 25510 at *14-15 (S.D.N.Y. Mar. 2, 2015) (block billing can be of concern to the courts where the descriptions are so vague or general so as to prevent the court to make a judgment about the reasonableness of the hours claimed; even entries for "trial preparation" in the period immediately before trial are sufficiently concrete in context to be adjudged reasonable).
[14] *Hnot v. Willis Grp. Holdings Ltd.*, 2008 WL 1166309, at *6 (S.D.N.Y. Apr. 7, 2008) ("[T]he Court will not impose an across-the-board penalty simply because a law firm has engaged in a *generally accepted* billing practice") (emphasis added); *Restivo v. Nassau County*, 2015 U.S. Dist. Lexis 160336 at *12 (E.D.N.Y. Nov. 30, 2015) ("The Court will not penalize NSB for work it completed based on such a trivial issue as block billing, *which is pervasive in the legal industry*.") (emphasis added).

Law Office of
Nathaniel B. Smith

Hon. Robert W. Sweet
May 9, 2016

identified or lumped task. Yet nothing in Bronsther's Report *shows* her use of this coding structure in reaching her opinions and statements, and it is unclear if or how her methodology provided a basis for her conclusions.

Bronsther's Report repeatedly states that various categories of legal work in this action required a specific number of hours and often provides "typical" examples to "support" her conclusions.[15] Upon closer look, however, there is a complete disconnect between the underlying facts and her conclusion. For example, she claims that her Exhibit 3 contains all the time pertaining to the Medical Defendants but does not address or account for the fact that the City Defendants admit that significant parts of the work relating to the Medical Defendants are compensable time.[16] And just a glance at the first few pages of Exhibit 3 would tell anyone who actually had a working knowledge about the issues and history of this case that the references to the "gag order" motion or our meetings with police and medical experts or the depositions of the two Jamaica Hospital EMTs who were in the plaintiff's home at the time of the assault pertained to global issues in the action. Similarly, her collection in Exhibit 9 of all the so-called "block billing" entries contain numerous entries that are simply not block billing but rather a description of work during the course of a day on a group of related tasks or projects.[17]

How Bronsther derived many of her numerical conclusions is simply a mystery. As such, it is impossible to test the accuracy of her conclusions because she does not show the basis for her mathematical calculations. And since she fails to point to any generally accepted standards, it is no surprise that Bronsther also fails to provide any evidence that her "allocation methods" have ever been tested

---

[15] *See e.g.* Report at ECF pp. 4-12 (summary states conclusions about hours without citation to any evidence); pp. 42, 62, & 83 (providing "typical" entries to support numerical conclusions).

[16] City Def. Mem. at p. 31 n. 33 ("The City does not count as 'medical time' the time expended for nearly all the depositions, including depositions of the individual medical defendants and numerous hospital employees" except for certain enumerated depositions).

[17] *Abdell, supra,* 2015 U.S. Dist. Lexis 25510 at * 14-15 (S.D.N.Y. Mar. 2, 2015) (noting that block billing discounts will be imposed where the billing descriptions are so vague or general so as to prevent the court to make a judgment about the reasonableness of the hours claimed and that entries for "trial preparation" in the period immediately before trial are sufficiently concrete in context to be adjudged reasonable).

LAW OFFICE OF
NATHANIEL B. SMITH

7

Hon. Robert W. Sweet
May 9, 2016

or subjected to peer review by the relevant community.

*Bronsther Has Never Been Qualified as an Expert*

Although Bronsther submits a resume with her Report, which lists the number of times that she has been retained as an expert, or prepared a report, or testified, she does not state that she has ever been actually qualified by a federal court as an expert on the reasonableness of legal fees or accepted billing practices. At best, she states that she has "provided" testimony that was "deemed" admissible on unspecified grounds. She identifies no occasions where her opinions on reasonable fees or accepted billing practices have survived a *Daubert* challenge, and for the reasons stated, this Court should not be the first.

Indeed, on one occasion in this District where Bronsther did offer an opinion on the reasonableness of a fee application, she asked Judge Sand to reduce a fee application from $354,559 to $54,033.[18] Judge Sand completely disregarded her opinion in awarding the full fee, rejecting all of the defendants' arguments, and without mentioning Bronsther or her report, held that the defendant's challenges to the billing records were without merit.[19] Notably, the report submitted to Judge Sand, like the one offered here, contains the same litany of complaints, such as "block billing," vagueness, "unrelated" time, minimum time increments, "standardized" work descriptions, and "inappropriate" staffing decisions.[20]

*The "Summary Exhibit" Rule Cannot Save the Report*

The City Defendants argue that in the event that the Court finds that they have not satisfied *Daubert*, the Court should nevertheless receive the "factual calculations" set forth in the Report under Rule 1006 of the Federal Rules of

---

[18] Affirmation of Judith Bronsther and Report at pp. 1 & 12 in *Prospect Capital Corp. v. Enmon*, 08-cv-3721 (LBS); Dkt. # 75 & 75-3 (attached hereto as Smith Reply Exhibit 1).
[19] *Prospect Capital Corp. v. Enmon*, 08-cv-3721 (LBS); Memorandum & Order at pp.9-10 & n. 10 (S.D.N.Y. June 23, 2010); Dkt. # 79 (attached hereto as Smith Reply Exhibit 1).
[20] Report at pp.2-6 in *Prospect Capital Corp. v. Enmon*, 08-cv-3721 (LBS); Dkt. # 75 & 75-3 (attached hereto as Smith Reply Exhibit 1).

LAW OFFICE OF
NATHANIEL B. SMITH

Hon. Robert W. Sweet
May 9, 2016

Evidence. Rule 1006 cannot save the Report.

Under Rule 1006, a summary exhibit is admissible as long as the underlying documents constitute admissible evidence and are made available to the adverse party.[21] As noted above, the documents underlying Bronsther's factual calculations, which reflect the results of her "coding" system, have not been provided. Moreover, the product of the coded system – the actual documentary results – cannot be deemed admissible without providing the opposing party with them so that the summary can be verified. Thus, the factual summaries cannot be admitted under Rule 1006 because the underlying documents are not admissible and have not been produced.

*Conclusion*

For these reasons, Bronsther's Report and Declaration should be stricken. And for the reasons set forth in the reply letter by Joshua Fitch, dated May 6, 2016, the suggestion that this matter should be referred to a special referee should be rejected.

Respectfully submitted,

*Nathaniel B. Smith*
Nathaniel B. Smith

Via Email and ECF
cc: All Counsel (by ECF)

---

[21] *Valjean Mfg. v. Michael Werdiger, Inc.*, 2007 U.S. Dist. Lexis 20475 at *3 (2d Cir. Aug. 22, 2007).