UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

ADRIAN SCHOOLCRAFT,

               Plaintiff,

   - against -

CITY OF NEW YORK, ET AL.,

               Defendants.

------------------------------------X

     10 Civ. 6005 (RWS)

     OPINION

106703

A P P E A R A N C E S :

<u>Attorneys for the Plaintiff</u>

LAW OFFICE OF JON L. NORINSBERG
225 Broadway, Suite 2700
New York, NY 10007
By:  Jon L. Norinsberg, Esq.
     John J. Meehan, Esq.

COHEN & FITCH LLP
233 Broadway, Suite 1800
New York, NY 10279
By: Gerald M. Cohen, Esq.

COHEN & FITCH LLP
225 Broadway, Suite 2700
New York, NY 10007
By:  Joshua P. Fitch, Esq.

LAW OFFICE OF NATHANIEL B. SMITH
100 Wall Street, 23rd Floor
New York, NY 10005
By:  Nathaniel B. Smith, Esq.

SUCKLE SCHLESINGER PLLC
224 West 35th Street, Suite 1200
New York, NY 10001

By:  Howard A. Suckle, Esq.

JOHN DAVID LENOIR
829 Third St. NE
Washington, DC 20002

LEVINE & GILBERT
115 Christopher Street
New York, NY 10014
By:  Peter J. Gleason, Esq.
     Richard A. Gilbert, Esq.
     Harvey A. Levine, Esq.


Attorneys for Defendant City of New York

NEW YORK CITY LAW DEPARTMENT
100 Church Street
New York, NY 10007
By: Alan H. Scheiner, Esq.

**Sweet, D.J.,**

Plaintiff's Counsel Jon Norinsberg, Esq. ("Norinsberg"), Nathaniel Smith, Esq. ("Smith"), Joshua Fitch, Esq. ("Fitch"), Gerald Cohen, Esq. ("Cohen"), John Lenoir, Esq. ("Lenoir"), and Howard A. Suckle, Esq. ("Suckle") (collectively, "Primary Counsel"), on behalf of Plaintiff Adrian Schoolcraft ("Plaintiff" or "Schoolcraft"), move for an award of attorney's fees, costs, and disbursements pursuant to Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 1988. Separately and initially on their own behalves and subsequently on behalf of Plaintiff, Harvey Levine, Esq., Richard Gilbert, Esq., and Peter Gleason, Esq. (together, "LGG") likewise move for an award of attorney's fees and costs. Plaintiff has also moved to strike the expert report, opinion, and testimony of Judith Bronsther. Defendant City of New York ("Defendant" or the "City") has moved to strike ECF No. 631. Based on the conclusions set forth below, the motion to strike the report, opinion, and testimony of Bronsther is granted in part and denied in part, the fee applications are granted in part and denied in part, and the motion to strike ECF No. 631 is denied as moot.

I.   **Prior Proceedings**

A detailed recitation of the facts of the underlying case is provided in this Court's opinion dated May 5, 2015, which granted in part and denied in part five motions for summary judgment. See Schoolcraft v. City of New York, No. 10 CIV. 6005 RWS, 2015 WL 2070187, at *1 (S.D.N.Y. May 5, 2015). Familiarity with those facts is assumed.

Plaintiff accepted an Offer of Judgment against the City of New York (the "City") pursuant to Federal Rule of Civil Procedure 68 on September 28, 2015. The Judgment provides "plaintiff shall be entitled to reasonable attorney's fees, expenses, and costs to the date of this offer for plaintiff's federal claims." Rule 68 Judgment, ECF No. 541, Ex. A at 4. Plaintiff's claims against Michael Marino, Gerald Nelson, Theodore Lauterborn, William Gough, Frederick Sawyer, Kurt Duncan, Christopher Broschart, Timothy Caughey, Shantel James, Timothy Trainor, Elise Hanlon, Steven Mauriello, and any other agent or employee defendants of the City of New York were dismissed pursuant to the Offer of Judgment on October 16, 2016. Following settlement conference on November 3, 2015, Plaintiff reached a settlement agreement with the remaining Defendants Jamaica Hospital Medical Center, Dr. Isak Isakov, and Dr.

Lillian Aldana-Bernier (collectively, the "Hospital Defendants").

The first of the instant motions was submitted December 16, 2016. The City sought Plaintiff's counsel's electronic fee records before opposing the fee applications and challenged the standing of Gilbert, Levine, and Gleason. Oral argument was held on February 11, 2016. By order dated February 25, 2016, Gilbert, Levine, and Gleason were directed to produce evidence of their standing to file a fee application of Plaintiff's behalf. The matter was referred to Magistrate Judge Debra C. Freeman for conference related to settlement of the fee motions.

Following unsuccessful attempts to settle the matter, briefing continued. After the City filed its opposition with Judith Bronsther's expert report, opinion, and testimony, Plaintiff moved to strike the report, opinion, and testimony by letter dated April 12, 2016. Following Plaintiff's responsive submissions, the City moved to strike Smith's Reply, ECF No. 631, as procedurally improper. Oral argument was held on May 12, 2016, at which time the applications and motions to strike were deemed fully submitted.

## II.  Applicable Standards

### a. Motion to Strike the Expert Report

The standard for the admissibility of expert testimony is set forth in Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 was the subject of extensive analysis by the Supreme Court in Daubert and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999). The Court emphasized in Daubert that

> [t]he inquiry envisioned by Rule 702 is . . . a flexible one.  Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability of the principles that underlie a proposed submission.  The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 594-95, 113 S. Ct. 2786, 2797, 125 L. Ed. 2d 469 (1993).  The Federal Rules of Evidence assign to the district court the responsibility to act as a gatekeeper and to ensure that "an expert's testimony both rests on a reliable foundation and is relevant to the task

at hand." Id. at 597.


    "[I]n analyzing the admissibility of expert evidence, the
district court has broad discretion in determining what method
is appropriate for evaluating reliability under the
circumstances of each case." Amorgianos v. Nat'l R.R. Passenger
Corp., 303 F.3d 256, 265 (2d Cir. 2002). However, "[t]he Rules'
basic standard of relevance ... is a liberal one," Daubert, 509
U.S. at 587. "A review of the caselaw after Daubert shows that
the rejection of expert testimony is the exception rather than
the rule." Fed.R.Evid. 702, Advisory Comm. Notes.

### b. Motions for Attorney's Fees, Costs, and Expenses


    Federal statute permits the court, "in its discretion" to
"allow a prevailing party" in a federal civil rights action "a
reasonable attorney's fee as part of the costs." 42 U.S.C. §
1988(b). "The Second Circuit has held that plaintiffs who accept
Rule 68 offers of judgment qualify as 'prevailing parties'
entitled to attorneys' fees and costs." Davis v. City of New
York, No. 10 CIV. 699 SAS, 2011 WL 4946243, at *2 (S.D.N.Y. Oct.
18, 2011) (citations omitted). On the one hand, the court's
discretion as to what constitutes a reasonable fee is
"considerable." Barfield v. New York City Health & Hosps. Corp.,

537 F.3d 132, 151 (2d Cir. 2008); accord CARCO GROUP, Inc. v. Maconachy, 718 F.3d 72, 85 (2d Cir. 2013) ("we give wide latitude to district courts to assess the propriety of attorneys' fees and costs requests"). On the other, that discretion is not so unfettered as to allow the court to abandon binding precedent as to appropriate procedure for determining fee calculation. Millea v. Metro-N. R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

However, the Second Circuit has also maintained that "there is no precise rule or formula for making fee determinations." Husain v. Springer, 579 F. App'x 3, 6 (2d Cir. 2014) (citing Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The calculation of the product of the number of hours expended and a reasonable hourly rate, commonly referred to as the "lodestar method," is the most common analysis for an appropriate award of attorney's fees. See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551, 130 S. Ct. 1662, 1672, 176 L. Ed. 2d 494 (2010); see also Francois v. Mazer, 523 F. App'x 28, 29 (2d Cir. 2013) ("Awards of attorney's fees are generally calculated according to the 'presumptively reasonable fee' method, calculated as the product of the number of hours worked and a reasonable hourly rate." (citation omitted)). The lodestar calculation is presumptively reasonable. Millea, 658

F.3d at 167.


Notwithstanding the near consistent application of the lodestar method, just how the calculation operates has been inconsistently defined. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 186-190 (2d Cir. 2008). The trouble lies in precisely where and when the district court must assess the given fee's reasonableness. Id. After a comprehensive review of competing methodology, the Second Circuit panel in Arbor Hill abandoned the term "lodestar," recognizing that "[t]he net result of the fee-setting jurisprudence here and in the Supreme Court is that the district courts must engage in an equitable inquiry of varying methodology while making a pretense of mathematical precision." Id. at 189-90. What remains clear is that the district court must assess a reasonable hourly rate by determining "the rate a paying client would be willing to pay." Id. at 190.


Though the Court must analyze the fees a reasonable client would be willing to bear, it need not act as a reasonable client might by "set[ting] forth item-by-item findings concerning what may be countless objections to individual billing items." Francois, 523 F. App'x at 29 (2d Cir. 2013) (citing Lunday v.

City of Albany, 42 F.3d 131, 134 (2d Cir.1994)). "Rather, in dealing with items that are excessive, redundant, or otherwise unnecessary, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.' Id. (citing Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir.1998) (citations and internal quotation marks omitted)). The same principle applies to calculation of a cost award. Id.

III.   **The Motion to Strike the Declaration and Report of Judith Bronsther, Esq. is Granted in Part and Denied in Part**

Plaintiff's counsel have moved to strike the declaration and report of Judith Bronsther, Esq. ("Bronsther"), filed in support of the City Defendants' opposition to the instant fee applications. See Decl. of A. Scheiner in Opp., ECF No. 598, Ex. B ("Bronsther Decl."), Ex. C ("Bronsther CV"), Ex. D ("Bronsther Report") (collectively the "Bronsther Submissions").

Bronsther's group Accountability Services, Inc. ("ASI") audited the invoices submitted by Plaintiff's counsel in this matter to "render an opinion with respect to the reasonableness of the hours expended and the reasonableness of the expenses and whether the billing practices of the various groups are

consistent with acceptable billing practices." Bronsther Report
at 1. Bronsther's qualifications include her admission to
practice law in New York, "devot[ion] ... of her time to issues
surrounding reasonable attorney's fees" since 1992 on behalf of
ASI, review of fee applications in several cases including two
in the last four years (one in New York state court, one in
Florida state court), and publications and speaking engagements
on the issues of legal fees. See id. at 2; Bronsther Decl. ¶¶ 1-
2, 4, 6.

The conclusions in Bronsther's Report fail Rule 702 for
inability to aid the Court as the trier of fact as to the
reasonableness of Plantiff's Counsel's fees. To begin, "the
court is itself an expert and can properly consider its own
knowledge and experience concerning reasonable and proper fees
and in light of such knowledge and experience and from the
evidence presented, can form an independent appraisal of the
services presented and determine a reasonable value thereof."
Newman v. Silver, 553 F. Supp. 485, 497 (S.D.N.Y. 1982), aff'd
in part, vacated in part on other grounds, 713 F.2d 14 (2d Cir.
1983). Bronsther having based her opinion on an after-the-fact
review of this case and its records, her opinions as to
reasonableness do not add value or assistance to the Court in
making a reasonableness determination.

11

Second, Bronsther's Report amounts to an analysis applying her interpretation of the law to the facts offered by Plaintiff's Counsel's submissions. Such legal opinions are not helpful to the Court in this circumstance in which the Court has far greater familiarity with the circumstances of the case. To accept them would usurp this court's role and obligation to apply that knowledge to reach a reasonability determination. See Nimely v. City of New York, 414 F.3d 381, 397 (2d Cir. 2005) ("expert testimony that usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it by definition does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's." (internal quotation marks, brackets, and citations omitted)); see also De La Paz v. Rubin & Rothman, LLC, No. 11 CIV. 9625 ER, 2013 WL 6184425, at *9n.11 (S.D.N.Y. Nov. 25, 2013).[1]

_____

[1] Defendants cite several out of Circuit cases to the contrary. Defendants' only citation possibly binding on this Court, Webb County v. Board of Education of Dyer County, Tennessee, is to footnote supporting a recitation of facts as it related to a question about fee awards for administrative proceedings. 471 U.S. 234, 239n.7, 105 S. Ct. 1923, 1926, 85 L. Ed. 2d 233 (1985). Even were the case apposite and any precedent was suggested, the very next two footnotes note "three experts offered varying opinions," none of which the District Court adopted. Id. at 238n.8, 239n.9. That Court did not address the appropriate use of expert opinions on the reasonableness of fees.

Accordingly, Bronsther's opinions cannot be considered.

However, separate from the opinions and conclusions offered, the Bronsther Submissions also summarize Plaintiff's voluminous billing submissions, disaggregating the number of hours billed to different elements of this case and providing their sums, see Bronsther Report 19-27, 32-25, 36-42, 81-85, 92-103, 104-107, and categorizing expenses, id. at 2, 15-18, 109-112. Under Federal Rule of Evidence 10006, "a proponent may use a summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court." Fed. R. Evid. 1006. Thus, Bronsther's factual observations and calculations will be accepted as summary figures. See e.g., Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc., No. 03 CIV. 8253(DLC), 2007 WL 840368, at *8 (S.D.N.Y. Mar. 21, 2007), aff'd, 549 F.3d 1381 (Fed. Cir. 2008) ("To the extent that summary figures from the Marquess report are also contained in Mylan's brief, they have been considered in connection with Mylan's arguments on this application.").[2]

_____

[2] Nathaniel Smith, Esq. challenges Plaintiff's summary calculations as inadmissible under Rule 10006 because they are based on a coding system that has not been provided. The documents underlying summary calculations are counsel's own billing records, to which Plaintiff's Counsel's access cannot be doubted. Moreover, the City has since provided the coding data used. Furthermore, Defendant's request to strike Smith's Reply is denied as moot, as the Court does not adopt Smith's

As set forth above, the Bronsther Submissions are stricken to the extent they provide conclusions and legal opinions regarding reasonableness, and the factual summary evidence they provide will be admitted.[3]

## IV.   The Motions for Awards of Attorney's Fees, Costs, and Disbursements are Granted in Part and Denied in Part

Having obtained a Rule 68 Judgment against the City, Plaintiff is a "prevailing party" eligible for a fee award under § 1988. Davis, 2011 WL 4946243, at *2 (citations omitted).

### a. Primary Counsel

Primary Counsel's fee application seeks a total of $4,260,564.70 in attorney's fees, costs, and expenses for 8,830.35 hours billed by eight attorneys and five paralegals and one law graduate as follows:

- Cohen & Fitch LLP: $500 per hour for 1,701.45 hours, a total of $850,725.
- Jon Norinsberg, Esq.: $600 per hour for 1,451.85 hours, a total of $871,110.

_____

arguments.

[3] Defendant's request to appoint a Special Master is denied as moot.

- John Meehan, Esq. (Norinsberg associate): $350 per hour for 137.80 hours, a total of $48,230.
- Nicole Bursztyn (Norinsberg paralegal): $125 per hour for 103.15 hours, a total of $12,893.75.
- Nathaniel Smith, Esq.: $575 per hour for 2,246 hours (adjusted for travel time), a total of $1,275,062.50.
- John Lenoir, Esq.: $575 per hour for 1,310 hours (adjusted for travel time), a total of $736,575.00.
- Lysia Smejika, Jeanette Lenoir, and Jeremy Smith (Smith paralegals): $125 per hour for 442.18 hours, a total of $55,272.50.
- James McCutcheon, Esq. (Smith colleague): $250 per hour for 23.38 hours, a total of $5,845.
- Howard Suckle, Esq. (Smith of counsel): $575 per hour for 108.90 hours, a total of $62,617.50.
- Magdalena Bauza (law graduate): $150 per hour for 1,305.64 hours (adjusted for travel time), a total of $193,175.
- Costs and expenses for Smith of $135,235.73, for Norinsberg of $10,021.85, and for Cohen & Fitch of $3,800.87, totaling $149,058.45.[4]

Mem. of Law in Supp. Pl.'s Mot. for Atty's Fees, ECF No. 561, at

38-9 ("Primary Counsel's Br.").


### i. Reasonable Fees


Arbor Hill set forth guidance for the "reasonable fee"

analysis:

> We think the better course—and the one most consistent with
> attorney's fees jurisprudence—is for the district court, in

---

[4] Primary Counsel's brief reflects slightly different amounts, though the variations do not exceed a dollar. Primary Counsel's Br. at 39. The Court obtains the totals from the submitted affidavits and billing records. See Master Decl. in Supp. Mot. Atty's Fees ("Master Decl."), Ex. A ¶ 55 (claiming Norinsberg expenses as $10,021.25); id. Ex. B (claiming Smith expenses as $135,235.73); id. Ex. K (listing Cohen expense in invoice as $3,800.87).

exercising its considerable discretion, to bear in mind *all*
of the case-specific variables that we and other courts
have identified as relevant to the reasonableness of
attorney's fees in setting a reasonable hourly rate. The
reasonable hourly rate is the rate a paying client would be
willing to pay. In determining what rate a paying client
would be willing to pay, the district court should
consider, among others, the Johnson factors;[5] it should also
bear in mind that a reasonable, paying client wishes to
spend the minimum necessary to litigate the case
effectively. The district court should also consider that
such an individual might be able to negotiate with his or
her attorneys, using their desire to obtain the
reputational benefits that might accrue from being
associated with the case. The district court should then
use that reasonable hourly rate to calculate what can
properly be termed the "presumptively reasonable fee."

Id. at 190.


Primary Counsel argue that, in essence, each attorney

should be awarded the highest fee he might justifiably command

in any situation, without consideration of any limiting factors.

For example, Primary Counsel argues that a $600 per hour rate

for Mr. Norinsberg is reasonable based on similar awards to

---

[5] "The twelve *Johnson* factors are: (1) the time and labor
required; (2) the novelty and difficulty of the questions; (3)
the level of skill required to perform the legal service
properly; (4) the preclusion of employment by the attorney due
to acceptance of the case; (5) the attorney's customary hourly
rate; (6) whether the fee is fixed or contingent; (7) the time
limitations imposed by the client or the circumstances; (8) the
amount involved in the case and the results obtained; (9) the
experience, reputation, and ability of the attorneys; (10) the
"undesirability" of the case; (11) the nature and length of the
professional relationship with the client; and (12) awards in
similar cases." Arbor Hill, 522 F.3d at 187. Though they must be
considered, the Court need not "recite and make separate
findings as to all twelve Johnson factors." Lochren v. Cty. of
Suffolk, 344 F. App'x 706, 709 (2d Cir. 2009).

16

attorneys in civil rights cases, an award for $550 in a "routine civil rights case," and rates in New York's finest law firms. See Primary Counsel's Br. at 20-25. Primary Counsel similarly frame the $500 rate requested for the Cohen & Fitch attorneys, emphasizing that a rate of $325 per hour was approved for the firm in the Eastern District of New York three years ago, and thus additional experience obtained since that date, inflation, and forum in this district necessitate a bump of more than 50%. Primary Counsel's Br. at 25-31.[6]

These arguments that use a previous fee or fee commanded by another type of attorney in another type of case as a starting point, only to be increased by any factor available, are premised on an understanding of attorney's rates as an ever-expanding bubble "untethered from the free market [the reasonable fee analysis] is meant to approximate." Arbor Hill, 522 F.3d at 184. They do not consider that the Johnson and Arbor Hill considerations can just as easily weigh in favor of reducing a fee award just as they can weigh in favor of increasing it. Our Circuit has tasked the lower courts with bursting the proverbial bubble: "the district court (unfortunately) bears the burden of disciplining the market."

---

[6] Primary Counsel make similar arguments for Mr. Smith, Primary Counsel's Br. at 31-33, and Mr. Lenoir, id. at 33-35.

<u>Id.</u>

The Court agrees that this litigation has been complex and demanded a great deal of effort from counsel over a long period of time, and that the Rule 68 Judgment represented an excellent recovery for Plaintiff. Norinsberg, Cohen & Fitch, and Smith applied experience and expertise warranting partner-level compensation. The time and labor required was considerable, although not preclusive of other employment (as demonstrated by the appearance of Plaintiff's counsel on other matters before this Court during the course of this litigation). However, the rates requested are excessive for this particular action, even for partner-level compensation.

Primary Counsel's individually requested fee rates are not equivalent to what "a reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively" would be willing to bear in this District. <u>See</u> <u>id.</u> They are more equivalent to an opening bid in a negotiation; the highest number one might suggest to frame the conversation before the first counter-offer. A keen client would have negotiated these rates down.

Primary Counsel's own comparisons to the rates of large law

firms is illustrative; this argument works equally to Primary
Counsel's detriment as it does to their benefit. Primary Counsel
are all solo or small-firm practitioners whose practices are
incomparable to large law-firms employing thousands of
attorneys, where rates factor in massive overhead. See Wise v.
Kelly, 620 F. Supp. 2d 435, 446 (S.D.N.Y. 2008) ("The legal
community at issue here is one that covers small to mid-size
firms in civil rights, or similar, cases.") (collecting cases
awarding $230-$430 per hour for civil rights litigators).
Furthermore, many clients of large law firms do not actually pay
the hourly rates their counsel command on paper. See Sara
Randazzo and Jacqueline Palank, Legal Fees Cross New Mark:
$1,500 an Hour, Wall St. Journal, Feb. 9, 2016, available at
http://www.wsj.com/articles/legal-fees-reach-new-pinnacle-1-500-
an-hour-1454960708 ("For many firms, the stated rate is simply a
starting point in discussions with corporate law departments.")
As any reasonable clients would, they negotiate creative or
fixed fee arrangements and request discounts. See id. Recent
figures show that clients typically pay 83% of fees their law
firms charge, a number that has been declining. Id. In other
words, discounts are the norm and stated rates are more often
hypothetical than they are reflective of market rate.
"Untethered" indeed.

The instant action was also highly desirable to Plaintiff's counsel, as evidenced by the widespread media coverage the action has received and that Primary Counsel actively sought. The value of such reputational benefits, which Plaintiff's counsel can and actively did leverage to obtain business into the future, must be offset against the purely theoretical highest rates Plaintiff's counsel could command.

A reduction in the requested fee amounts is also consistent with the awards Primary Counsel received in the past from contested fee applications. See e.g., Stanczyk v. City of New York, 990 F. Supp. 2d 242, 248 (E.D.N.Y. 2013), aff'd, 752 F.3d 273 (2d Cir. 2014) ("the hourly rate for Norinsberg—as lead trial counsel responsible for the strategy and overall direction of Stanczyk's case—requires a downward adjustment [from $450 to $350]")[7]; Marshall v. Randall, 10 Civ. 2714 (JBW)(VVP) (E.D.N.Y. Jan. 24, 2013) (awarding Cohen & Fitch $325 per hour); Arnone v. CA, Inc., 2009 U.S. Dist. LEXIS 17080, at *2 (S.D.N.Y. Mar. 6, 2009) (awarding Smith the rate he had agreed upon with his

---

[7] Primary Counsel cite Bernabe v. City of New York, 13 Civ. 5531, where Norinsberg was awarded $550 per hour one year ago, to argue Norinsberg's reasonable rate is $600. Primary Counsel's Br. at 24. Norinsberg received that rate in connection with an unopposed fee application for 18.05 hours of work, yielding less than $10,000 in fees. The case is inapposite to the instant contentious $4.2 million application.

client, $425, in an ERISA case).

As to Mr. Lenoir, his experience notwithstanding, his role in the "Smith Team" appears to be in aid to Mr. Smith, rather than commensurate. See Master Decl., Ex. E. Even were their roles equal, if the contributions of both Mr. Smith and Mr. Lenoir were partner level, either attorney could have performed the vast majority of their joint or overlapping work in this case alone. A reasonable client would not pay for duplicative work, or partner rates for work that could be performed by an associate (particularly not where paying for the work of several other partners), even if the partner performing them has exceptional experience. Mr. Suckle, though likewise an experienced litigator, attests he has "litigated numerous Civil Rights actions, all on the plaintiff's side," though he names only one §1983 and one wrongful conviction trial. His role was far more limited even than Mr. Lenoir's, approximately 100 hours over five years of active litigation.

With respect to Mr. Meehan and Mr. McCutcheon, no previous award applies. However, "[a]ssociates in civil rights law firms with approximately three years of experience have typically been awarded amounts ranging from $125 per hour to $200 per hour." E.S. v. Katonah-Lewisboro Sch. Dist., 796 F. Supp. 2d 421, 430

(S.D.N.Y. 2011) (citations omitted), aff'd sub nom. E.S. ex rel. B.S. v. Katonah-Lewisboro Sch. Dist., 487 F. App'x 619 (2d Cir. 2012).

Having considered the factors set out in Arbor Hill and Johnson, a 35% reduction in the requested rates is warranted to align the fees requested by counsel with the market and what a reasonable client would be willing to pay for their services in connection with this or a comparable case.

A rate of $100 per hour is generally appropriate for paralegals in a small firm environment. See e.g., Barile v. Allied Interstate, Inc., No. 12 CIV. 916 (LAP) (DF), 2013 WL 795649, at *23 (S.D.N.Y. Jan. 30, 2013), report and recommendation adopted, No. 12 CIV. 916 (LAP), 2013 WL 829189 (S.D.N.Y. Mar. 4, 2013). Primary Counsel have not established the applicable experience of most of their paralegals and the court thus lacks adequate metrics by which to compare their reasonable rates. A reduction of 20% brings their rates in line with the market and the considerations unique to this litigation detailed above.

Generally, "[a] law clerk should ... be awarded slightly more than a paralegal." Id. at *19. However, it is not clear

what level of value Bauza added. To begin with, her applied experience is unclear. The only information offered detailing Bauza's experience is her educational history. Master Decl. Ex. G, ¶ 5. In addition, Bauza performed her duties on a subset of Plaintiff's legal team that, within her office alone, included two partner-level attorneys (Smith and Lenoir) and an associate (McCutcheon). Nevertheless, Bauza seeks nearly $200,000 for "1273:05" hours of work, including travel. A premium of 50% beyond that awarded paralegals is unjustified, and a 30% reduction in Bauza's rate is warranted.

Accordingly, counsel's rates are reduced by 35%, Bauza's rate by 30%, and staff rates are reduced by 20% to reach rates a reasonable paying client would be willing to pay for litigation of this action by Primary Counsel and their staff.[8]

### ii. Hours Expended

The instant action was actively litigated from its filing

---

[8] This amount equals or exceeds what Norinsberg and Cohen & Fitch have been awarded in the past. Considering the added value of this litigation in particular as described supra, the amounts awarded, considered in the light of the value added to their reputations by this particular litigation, therefore adequately compensate for the additional experience and for litigation in this forum.

in August 2010 until the Rule 68 Judgment obtained in October 2015. Approximately 15,000 pages of documents were produced and 38 depositions taken. See Def.'s Opp. at 7n.9. Primary Counsel request compensation for 8,830.35 hours of time. "The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.' Hensley, 461 U.S. at 434. The contentious and lengthy nature of this litigation notwithstanding, almost 9,000 hours is an unreasonable amount of time.

First, the requested number of hours is facially disproportionate when measured against benchmarks of other litigation, both larger and smaller. For example, in one recent seven plaintiff §1988 case spanning four years and involving 11,000 pages of discovery, 24+ depositions, and a ten day jury trial, the court found 2,385 hours excessive. Adorno v. Port Auth. of New York & New Jersey, 685 F. Supp. 2d 507, 515 (S.D.N.Y. 2010), on reconsideration in part, No. 06 CIV. 593 (DC), 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010) ("reduc[ing] these hours by 10% to account for excess, duplicativeness, and waste"). In an Eastern District of New York discrimination case against the Suffolk County Police Department involving six plaintiffs, spanning five years (including trial), 2,838.25 hours was deemed excessive. Lochren v. Cty. of Suffolk, No. CV

01-3925 (ARL), 2008 U.S. Dist. LEXIS 38100, at *18 (E.D.N.Y. May 8, 2008) (performing 25% reduction). In a 38 plaintiff claim concerning prison conditions, spanning seven years, a month long trial, post-trial briefing, and "strenuous" litigation the district court called "one of the most bitterly fought battles" it had seen, only 6,036.8 hours were claimed. Lightfoot v. Walker, 826 F.2d 516, 520 (7th Cir. 1987).[9]

### 1. Billing Inflation Resulting from Plaintiff's Litigation Team

The nature of Plaintiff's litigation team led to significant inefficiencies and duplication of effort by all of plaintiff's counsel and staff. "There is no doubt that greater economies in attorney time could have been achieved if counsel had reasonably considered the staffing issues raised by their joint representation." Simmonds v. N.Y. City Dep't of Corr.,

---

[9] Primary Counsel argue these cases cannot be relied upon as grounds for reduction because fees are a necessarily case-specific inquiry, and because the fact of reductions in those cases is not relevant to whether reduction is appropriate in this case. The Court does not rely upon them for either proposition or to support a conclusion that the number of hours reasonably expended in this case must have been similar to the number of hours expended in the cases cited. Rather, these cases are helpful to bring into relief the vast gulf between what Primary Counsel have claimed here is reasonable and what has been deemed reasonable in other similar, if distinguishable, contexts.

2008 U.S. Dist. LEXIS 74539, at *23 (S.D.N.Y. Sep. 15, 2008).
Eight attorneys was excessive, and a reasonable client would not
have chosen nor compensated counsel for such inefficient and
duplicative staffing.[10] This unreasonable use of time is apparent
both in a review of Primary Counsel's billing records, and from
observation of this litigation. For example, records show
Primary Counsel and staff spent a significant amount of time
communicating and coordinating with one another, an unnecessary
(or at least significantly less necessary) use of time than it
would be for an appropriately staffed team for which a
reasonable client would be willing to pay. Billing entry after
billing entry shows duplicative work between counsel, far
exceeding what should be necessary to complete a single task.
Plaintiff was often represented at oral argument by five or more
attorneys.

Three specific examples using Bronsther's summaries
demonstrate the wasteful time spent by involving so many
attorneys. First, Primary Counsel attended 38 of 41 depositions

---

[10] Primary Counsel seek to recover for 8 attorneys, while arguing
there were practically only five Plaintiff's counsel in this
matter. Reply on Behalf of Norinsberg Team in Further Supp.
Pl.'s Mot. for Atty's Fees at 4. Because Primary Counsel seek to
recover for 8 attorneys, the Court address a team of 8
attorneys.

in teams of two (and sometimes three[11]), resulting in 1,443 hours related to deposing 34 witnesses – 42 billed hours per witness. Second, Primary Counsel seek compensation for 1,435 trial preparation hours. This case was settled short of trial. To be sure, trial in this matter threatened to be long and protracted. However, even assuming it was reasonable for Plaintiff's counsel to fully prepare for trial, this is an unreasonable amount of time. This amount of hours would be equivalent to two attorneys billing 12 hour days, seven days per week, for two full months, or two attorneys working a more "reasonable" schedule billing 10 hour days, six days per week for nearly three months. Taking into account an attorney cannot bill his every working hour, the number is even more facially unreasonable. Plaintiff's counsel argues they prepared for trial twice due to an adjournment of some months. Under these circumstances, efficient counsel would not need to duplicate such efforts already thoroughly expended. Third, 1,380 hours were spent for meetings, telephone calls, and conferences. Even meetings that were not intra-counsel were often attended by 2-3 attorneys. Counsel needed an entire Team Meeting Weekend to coordinate. These three examples alone total 4,258 billed hours, nearly 50% of the total hours for which

---

[11] Primary Counsel do not seek to recover for Bauza's attendance at depositions with two other Plaintiff's counsel. See Master Decl., Ex. G.

Primary Counsel seek to recover. Even if Bronsther's summaries are not accurate reflections, a review of the billing records establishes that such excessive intra-counsel coordination is not necessary for a reasonably sized team of attorneys prosecuting a similar action.

These are not the only areas in which Plaintiff's counsel billed excessive time or charged at excessive rates. In sum, review of the materials submitted demonstrates this case could have been competently litigated in far fewer hours by a much smaller team, or a team with an eye toward billing efficiency, warranting an unusually large deduction. Plaintiff's counsel cannot recoup compensation as highly experienced partner-level attorneys, while also staffing matters as if no single (or less experienced) attorney was capable of performing routine litigation tasks. See Andert v. Allied Interstate, LLC, 2013 U.S. Dist. LEXIS 104422, at *8 (S.D.N.Y. July 17, 2013) (rejecting fees for "tasks billed at a partner-level rate could have been performed equally well by a junior attorney or a paralegal" and "unnecessarily duplicative work such as e-mails, telephone calls, direct conversations, and the creation and review of internal memos and the client's case file"). In such circumstances, an across-the-board reduction is warranted. See Lochren, 344 F. App'x at 709.

The excess and waste of this inflation of effort was not
adequately trimmed from Primary Counsel's requests. See
generally, Hensley, 461 U.S. at 434. Accordingly and as reasoned
above, a 35% reduction in hours expended is warranted to account
for the amount of time expended to keep Primary Counsel apprised
of one another and manage such a large litigation team, rather
than to reasonably litigate this action.

Plaintiff also cycled through counsel over the course of
this litigation. Plaintiff hired Norinsberg, Cohen, and Fitch in
June 2010. The complaint was filed in August 2010, but that team
lost contact with Plaintiff, and the representation was
terminated in late 2012. Plaintiff then retained Levine,
Gilbert, and Gleason. A few months later, Plaintiff hired Smith
and Lenoir. In April 2013, Levine, Gilbert, and Gleason
experienced difficulty communicating with Plaintiff and ceased
working on the matter. Plaintiff believed he had terminated
their employment in May 2012 (not 2013), and Smith and Lenoir
continued to represent Plaintiff. See Schoolcraft Decl., ECF No.
594-3. Norinsberg, Cohen, and Fitch were rehired in early 2015.

As a result, numerous hours were billed resulting solely
from the shifts, such as time spent reviewing the file, learning

the developments of the case, and navigating relationships and coordinating with prior counsel and Plaintiff (and his father). "[D]efendants should not bear the cost of the inefficiencies necessarily created by plaintiff's change in representation." Ganci v. U.S. Limousine Serv. Ltd., No. 10-CV-3027 JFB AKT, 2015 WL 1529772, at *6 (E.D.N.Y. Apr. 2, 2015). These staffing choices led to a significant number of hours that would not have been necessary for a reasonable client represented consistently by competent counsel.[12] After a review of the billing records, a further reduction of 2% is warranted for Primary Counsel.

### 2. Medical Defendants

Plaintiff's Rule 68 Judgment was obtained against the City and dismissed all Municipal Defendants. Plaintiff's case against Jamaica Hospital Medical Center, Dr. Lilian Aldana-Bernier, and Dr. Isak Isakov continued. Plaintiff's counsel do not disaggregate the hours attributable to the Medical Defendants from their fee request, and argue the City is unentitled to such reductions. See Reply on Behalf of Norinsberg Team ("Norinsberg

---

[12] In addition to the time clearly attributable to overlap, such as Norinsberg's time spent negotiating a return to Plaintiff's legal team, Plaintiff shifted his point of communication and hierarchy of counsel throughout this litigation. Time must necessarily have been billed sorting through and navigating the staffing consequences of those choices.

Reply") at 13-22.


The Second Circuit has stated that "in simple justice the [settling Defendant] should not be required to pay for the processing of appellees' claim against the [non-settling Defendant]." J.G. by Mrs. G. v. Bd. of Educ. of Rochester City Sch. Dist., 830 F.2d 444, 447-48 (2d Cir. 1987). Where a Plaintiff is entitled to an award of attorney's fees under § 1988, inclusion of fees in an award as against one defendant for a claim attributable to another constitutes error. Id. ("remand[ing] to the district court for a reduction in its award by an amount that the court finds to be allocable to the prosecution of appellees' claim against the [non-settling Defendant])."


Plaintiff's threshold ground for opposing the request for reduction is grounded in contract law; because the Rule 68 offer of judgment states "plaintiff shall be entitled to reasonable attorney's fees," no limit was imposed on the fees for which the City is liable under the Judgment. Id. at 13-14. This argument is without merit. Plaintiff's counsel emphasizes the "shall be entitled to" language, but the notion that the City is not liable for costs relating to the case against the Hospital Defendants, which it did not and could not settle by the Rule 68

31

Offer of Judgment, turns on the explicit limit of "*reasonable fees.*" The City cannot be deemed reasonably liable for the costs of prosecuting Defendants not covered by the Rule 68 Judgment. Under Plaintiff's logic, the City would be unentitled to any reduction for having agreed to pay fees in the Rule 68 Judgment, no matter how unreasonable the request, an impossible construction. The Court therefore analyzes the reasonableness of the fees accrued relating to the Hospital Defendants.

Primary Counsel next argue that the work against all defendants was "inextricably intertwined" and thus cannot be allocated. Norinsberg Reply at 14-17. The only in-circuit law cited for this proposition contrary to J.G. does not support Plaintiff's position. In Cabral v. City of New York, the court stated "[a]s a general matter, if a plaintiff prevails on a claim that generates a fee award, he may recover for work done on other claims if they were substantially related to the claim on which he prevailed." No. 12 CIV. 4659 LGS, 2015 WL 4750675, at *10 (S.D.N.Y. Aug. 11, 2015) (citing Tucker v. City of New York, 704 F.Supp.2d 347, 358 (S.D.N.Y.2010)). However, in the very next sentence, that court declined to award fees for the allegedly related claim, and the Court subtracted hours spent on the criminal predicate to Plaintiff's civil unlawful search and arrest claims. Id. The only other in-circuit law Plaintiff

32

cites, <u>Martinez v. Port Auth. of N.Y. & N.J.</u>, No. 01 CIV. 721

(PKC), 2005 WL 2143333, at *24 (S.D.N.Y. Sept. 2, 2005), <u>aff'd</u>

<u>sub nom.</u> <u>Martinez v. The Port Auth. of New York & New Jersey</u>,

445 F.3d 158 (2d Cir. 2006), concerns pretrial discovery as it

relates to claims Plaintiff succeeded upon as well as those that

were unsuccessful.

The issue here is not the difference between the successful

and unsuccessful claims arising from identical circumstances,

for example succeeding on a claim of assault but not battery.

Rather, Plaintiff seeks to intertwine the claims against the

Municipal Defendants, which arose largely out of the

circumstances of Plaintiff's employment and the events that

occurred at his apartment on October 31, 2009. Plaintiff's

claims against the Medical Defendants implicated that universe

of facts, but turned instead on events that occurred at Jamaica

Hospital Medical Center following the events that occurred at

Plaintiff's home. To be sure, the two universes of facts and the

claims stemming therefrom are unquestionably related, in the

broad and colloquial senses. But they are also practically and

logically disaggregated and can be allocated to the appropriate

Defendants.

The fact that Plaintiff billed hours to trying a case

against the Medical Defendants after having obtained the Rule 68 Judgment illustrates the practicality of a distinction. Plaintiff's counsel point to factual elements of this case that relate the cases against the Municipal Defendants and Hospital Defendants. This perspective ignores scope. That Sergeant James may have made a statement relevant to the Medical Defendants' defenses, NYPD officers may have been present at the hospital, or Lamstein spoke with Hospital personnel makes the cases against the Municipal Defendants and the Hospital Defendants somewhat related, but it does not make the relation inextricable. These are tangential facts that may fall under the broad scope of relevance at trial, but had the Medical Defendants' case turned on the case against the City, there would have been little to try following acceptance of the Rule 68 Judgment. Counsel cannot plausibly claim hundreds of hours for preparing their case against the Medical Defendants while also claiming the two cases were so inextricably interrelated that the City is liable to the hilt for fees for the case against the Medical Defendants.

All of Plaintiff's claims against the Medical Defendants except medical malpractice were dismissed on May 5, 2015. The remaining claims were settled.

The fees related to the prosecution of the claims against the Medical Defendants are not reasonably attributable to the City under the Rule 68 Judgment and the law of this Circuit. Because Plaintiff's fee applications fail to adequately disaggregate the hours spent relating solely to prosecution of claims against the Medical Defendants, an additional across-the-board reduction of 15% is warranted to deduct those hours attributable solely to the claims against the Medical Defendants for which the City is not liable.

### 3. Non-Compensable Tasks

Plaintiff's counsel has requested reimbursement for media, public relations, and administrative matters.[13] Such tasks are non-compensable. Webb, 471 U.S. at 241 ("Congress only authorized the district courts to allow the prevailing party a reasonable attorney's fee in an action or proceeding to enforce § 1983. Administrative proceedings established to enforce tenure rights created by state law simply are not any part of the proceedings to enforce § 1983, and even though the petitioner obtained relief from his dismissal in the later civil rights

---

[13] Hours billed relating to Plaintiff's motion to stay the administrative disciplinary proceeding in this action are compensable. Work on that adjudication itself is not.

action, he is not automatically entitled to claim attorney's fees for time spent in the administrative process **1928 on this theory." (internal quotation marks and brackets omitted)); Williamsburg Fair Hous. Comm. v. New York City Hous. Auth., No. 76 CIV. 2125 (RWS), 2005 WL 736146, at *11 (S.D.N.Y. Mar. 31, 2005), opinion amended on reconsideration, No. 76 CIV.2125 RWS, 2005 WL 2175998 (S.D.N.Y. Sept. 9, 2005) ("non-compensable tasks include . . . publicity efforts, lobbying, and clerical work").

Plaintiff's counsel argue that some, though not all, of the time Defendants attribute to non-compensable efforts was necessary review of existing media articles. Norinsberg Reply at 32-33. Alternatively, Plaintiff's counsel argue both that media attention was essential to Plaintiff's efforts to obtain evidence, and that an independent public interest required counsel to oversee that media attention. Plaintiff's counsel did not exercise billing judgment to remove any part of these tasks from their fee request, and do not provide persuasive evidence that the sought-after attention was related to or necessary for evidence gathering. Counsel chose to fan the flames of attention in this case (evidenced, for example, by schoolcraftjustice.com and billing entries for consulting a documentarian), and cannot now charge the City with the cost of keeping an eye on the resulting fire.

Accordingly, 3% will be further deducted to account for non-compensable charges.

### 4. Billing Practices

It has been noted in this district that, where extremely detailed time records are submitted, "that very detail often hides exaggeration and excess." Barile, 2013 WL 795649, at *7. Such is the case here, with the records of over ten billing attorneys and staff.

For example, where "attorneys and staff have billed multiple entries of '0.1 hour'—often several on one day—for very brief, mundane tasks such as emailing a document, e-filing, or receiving a notice of appearance or other notification from the Court's automated Electronic Case Filing ('ECF') system. This excessive specificity appears designed to inflate the total number of hours billed, by attributing a separate 6 minutes to each brief task." Id. In such a long and excessively billed case such as this one, such practices are compounded and result in even greater unjustified fees than usual. Bronsther's report found Norinsberg billed 0.1 hours for 267 discrete tasks, Cohen for 173 tasks, Fitch for 182 tasks. Bronsther Report at 46-47.

These 6-minute increments were routinely billed for email and review of short documents. Such billing is excessive.

In addition, a substantial number of hours are billed with standardized, vague descriptions. For example, Bauza billed nine separate five-hour blocks to "jury instructions project" and three separate five-hour blocks to "timeline project." See Master Decl, Ex. N. The paralegals billed pages of entries in separate blocks to "summarize deposition of [deponent]" or "[deponent] summary deposition," where each review of each deposition was billed in multiple blocks. See id., Ex. I. Lenoir billed pages of distinct blocks to summarizing depositions the same way, such as "Summarize [deponent] deposition transcript" and "summarize deposition of [deponent]," again with each individual deposition appearing in several blocks of time. Smith billed five distinct blocks of time between 7.5 hours and 12 hours each with no more specific entry than "drafting summary judgment motion," or "drafting reply," "drafting opposition to [named] motion." Id. Cohen, Norinsberg, and Fitch each billed several entries to some version of the entry "review of deposition exhibits." These examples are illustrative of entries that, when billed repeatedly and by separate time-keepers, are too vague to allow the Court a meaningful opportunity to review whether all of the time allocated to the task was reasonable.

"Courts frequently respond to vague and difficult-to-decipher billing statements with an across-the-board percentage reduction in the fees claimed, often in the range of 20-30 percent." Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic, No. 10 CIV. 05256 KMW DF, 2012 WL 5816878, at *11 (S.D.N.Y. Nov. 14, 2012) (collecting citations). In light of the other reductions already applied, a further 10% reduction is warranted.

### iii. Fees on Instant Motion

Smith requests fees-on-fees related to the instant motions. See Smith Group's Mem. of Law, ECF No. 620, at 36-7.

The Rule 68 Judgment provides "plaintiff shall be entitled to reasonable attorney's fees, expenses, and costs to the date of this offer[.]" Rule 68 Offer of Judgment at 3. On the terms of the agreement alone, fees-on-fees are denied.

Moreover, "plaintiff's counsel is not entitled to fees and expenses for work done preparing and filing this motion. The Rule 68 judgment limited recoverable fees and expenses to those incurred prior to the date of the offer." Long v. City of N.Y., 2010 U.S. Dist. LEXIS 81020, at *6 (S.D.N.Y. Aug. 6, 2010). Although some courts have permitted such fees, Lee v. Santiago,

No. 12 CIV. 2558 PAE DF, 2013 WL 4830951, at *13 (S.D.N.Y. Sept. 10, 2013), they are not warranted here where Plaintiff's counsel did not attempt to settle the matter prior to filing, and did not exercise billing (or filing) judgment in their fee request and motion practice despite an awareness of the issues presumably raised in settlement discussions with a Magistrate Judge. See Long, 2010 U.S. Dist. LEXIS 81020, at *6 ("If the City's dispute over recoverable fees were in bad faith, than compensation for the work necessary for plaintiffs fee application may be justified. No such showing has here been made."). Any failure of the City to settle is counterweighted by Plaintiff's own role in perpetuating the instant dispute.

### iv. Primary Counsel's Fee Award

Having reviewed Defendants' remaining objections, Primary counsel's arguments, and Plaintiff's time records, the aforementioned across-the-board reductions appropriately address all issues. As set forth above, a 35% deduction to counsel's requested rates, a 30% reduction to Bauza's rate, a 20% deduction to staff requested rates, and a sum total 65% reduction to the number of hours applies. The Court therefore finds the following fee awards reasonable and warranted:

| Counsel/Staff | Rate | Hours | Total |
|---|---|---|---|
| Jon Norinsberg | $390 | 508.1475 | $198,177.53 |
| John Meehan | $227.50 | 48.23 | $ 10,972.33 |
| Nicole Bursztyn | $100 | 36.1025 | $  3,610.25 |
| Nathaniel Smith | $373.75 | 766.15 | $286,348.56 |
| Nathaniel Smith (travel) | $186.875 | 19.95 | $  3,728.56 |
| James McCutcheon | $162.50 | 8.183 | $  1,329.74 |
| Magdalena Bauza | $105 | 446.719[14] | $ 46,905.50 |
| Magdalena Bauza (travel) | $52.50 | 10.255 | $    538.39 |
| Smith Paralegals[15] | $100 | 154.7 | $ 15,470.00 |
| Howard Suckle | $373.75 | 38.115 | $ 14,245.48 |
| Joshua Fitch | $325 | 313.1625 | $101,777.81 |
| Gerald Cohen | $325 | 282.345 | $ 91,762.13 |
| John Lenoir | $373.75 | 438.2 | $163,777.25 |
| John Lenoir (travel) | $186.875 | 20.3 | $  3,793.56 |

Total Fees:                                    $942,436.67

### v. Primary Counsel's Costs and Expenses

An attorney's fees award properly includes "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients" that are "incidental and necessary" to representation. U.S. Football League v. Nat'l Football League,

---

[14] Bauza's fee records have not been submitted in a single comprehensive form. The Toggle.com submissions include totals but not line item billed rates, and it is additionally unclear on their face precisely where and how billing discretion was exercised to arrive at a "billable" time spent that differs from the "total" time spent. See Master Decl., Ex. N. Accordingly, the Court begins its calculations from the request reflected in the Declaration, "1,276:34 hours of billable time ... and 29:30 hours of travel time." Id., Ex. B ¶ 29. It is additionally unclear whether ":34" and ":30" reflect seconds or decimals of an hour. The Court presumes the latter, in keeping with the form of timekeeping submitted in all other applications.
[15] The billing records submitted on behalf of Lysia Smejika, Jeanette Lenoir, and Jeremy Smith were not summarized on an individual basis. See id., Ex. I.

887 F.2d 408, 416 (2d Cir. 1989) (citations excluded). Such costs properly include "photocopying, travel, telephone costs, postage and computerized research." Ortiz v. Chop't Creative Salad Co. LLC, 89 F. Supp. 3d 573, 591 (S.D.N.Y. 2015). Counsel seeks reimbursement for reasonable out-of-pocket fees as well as line-items to which they are not entitled.

Plaintiff's counsel seek to recover expert fees. Amendment to section 1988 provides "the court, in its discretion, may include expert fees as part of the attorney's fee" when awarding attorney's fees to enforce a provision of section 1981 or 1981a. But with respect to section 1983 claims, "§ 1988 conveys no authority to shift expert fees." W. Virginia Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 102, 111 S. Ct. 1138, 1148, 113 L. Ed. 2d 68 (1991); see also Walker v. City of New York, No. 11-CV-314 CBA, 2015 WL 4568305, at *13 (E.D.N.Y. July 28, 2015) (citing Wilder v. Bernstein, 975 F.Supp. 276, 287 n. 12 (S.D.N.Y.1997) ("As Congress explicitly limited the amendment to cases arising under § 1981, Casey still prohibits the award of expert fees in § 1983 cases.")). Bronsther summarizes that Plaintiff seeks $71,344.30 in expert fees. Bronsther Report at 108-09.

In addition to seeking recovery for expert fees, counsel

seek full reimbursement for unnecessary or unrelated charges
that would not ordinarily be charged to a client, or charges
that are unreasonably excessive and for which no reasonable
client in a civil rights matter would pay. For example,
Norinsberg seeks $1,321.40 for www.schoolcraftjustice.com (the
"Website"). Master Decl., Ex. H. When it was active, the Website
itself proclaimed that it was for the primary purposes of
obtaining other clients, cases, and stories, not incidental and
necessary to this litigation. As of March 12, 2012, above a
banner advertising the Law Office of Jon L. Norinsberg and Cohen
& Fitch, LLP, the home page read as follows:

> The purpose of this website is to allow police officers to
> share similar stories or comments.
> Are you an NYPD police officer?
> Have you been punished for not meeting a quota or
> attempting to disclose NYPD corruption?
> Have you been instructed to issue summonses or make arrests
> for offenses you did not observe?
> WE WANT TO HEAR YOUR STORY. Post anonymously or contact us
> directly.[16]

---

[16] After Norinsberg and Cohen & Fitch were dismissed, the website
content was altered but remained accessible for a period as an
advertisement for the attorneys: "Please be advised that Jon
Norinsberg and Cohen & Fitch, LLP are no longer representing
Adrian Schoolcraft in his case against his former employers.
However, these firms still represent hundreds of thousands of
New Yorkers affected by the NYPD's unlawful quota policy in a
federal class action. In addition we represent current NYPD
police officers who been [sic] victims of corruption and
retaliation in the New York City Police Department. If you have
any information regarding unlawful arrests, summons, and stop
and frisks quota's [sic] or you have been a victim of police
misconduct or corruption. *Please contact us at...*"
Schoolcraftjustice.com, Jan. 21, 2013 (emphasis in original),
available at

43

Schoolcraftjustice.com, Aug. 25, 2010, Oct. 25, 2012.[17] The
website does not seek witnesses or information specifically
related to Schoolcraft. To whatever extent the Website enabled
Plaintiff to reach corroborating witnesses, billing judgment was
not adequately exercised in accounting for the advertisement for
counsel and relation to an entirely different case.

Norinsberg billed travel and hotel for Plaintiff,
suggesting Plaintiff himself was not willing to pay for these
expenses. One $764.56 charge for a hotel room for Plaintiff in
Albany includes rental of a conference room. Rental of a
conference room would not have been necessary for a litigation
team of a reasonable size for a single-plaintiff civil rights
case. Smith charged for a $155 lunch in Jersey City and seeks
reimbursement for hotel rooms for Plaintiff.  Many of the
claimed travel expenses lack documentation. Cohen's requested
reimbursements do not provide documentation or even itemization

---

https://web.archive.org/web/20130121034659/http://www.schoolcraf
tjustice.com/ (last accessed Aug. 24, 2016). The class action to
which the website refers and seeks to solicit clients is Stinson
v. City of New York, 10 Civ. 4228.

[17] available at
https://web.archive.org/web/20100826091835/http://schoolcraftjus
tice.com/ (Aug. 25, 2010 archive) (last accessed Aug. 24, 2016)
and
https://web.archive.org/web/20121025015352/http://www.schoolcraf
tjustice.com/ (Oct. 25, 2012 archive) (last accessed Aug. 24,
2016).

other than a single line for the full requested sum of $3,800.87 stating "veritext transcription fees."[18] See Master Decl., Ex. K.

As set forth above, Plaintiff cannot reasonably attribute the entire sum of the costs and fees for his claims against the Medical Defendants to the City. Bronsther summarizes $55,945.99 in expenses relating to claims exclusively against the Medical Defendants are claimed. Bronsther Report at 107-08.

To account for the expenses relating to experts, the expenses relating solely to the claims against the medical defendants, and unreasonable charges, the expenses requested will be reduced by 30%. Accordingly, a total of $104,340.92 in costs is awarded as follows: $94,665.01 for Smith's expenses, $7,015.30 for Norinsberg's expenses, and $2,660.61 for Cohen's expenses.

**b. Levine, Gilbert, and Gleason**

---

[18] Though Veritext is a Court Reporting Service, the item was billed on June 22, 2015. A review of the docket sheet shows no hearing was held or transcript released by the Court Reporters for the Southern District of New York on or within a month of June 22, 2015. Thus, without more, the Court cannot discern what this charge was for, whether it related to experts, the claims against the City, etc., and cannot discern whether it is properly recoverable in full.

Levine, Gilbert, and Gleason's application neglects to request a total amount. See Mem. of Law in Supp. Pl.'s Fee App., ECF no. 572 ("LGG Br."). By affidavit, Gilbert requests $500 per hour and $4,630.45 for reimbursements made to Norinsberg. Gilbert Aff. at 4. By attached "itemized services" record, Gilbert swears to a total of 120.62 at a rate of $500 per hour, for a claimed total of $63,810.00, plus the $4,630.45 disbursement for a claimed total of $68,440.45. None of these calculations appear correct or consistent according to the information submitted.[19] By affidavit, Levine requests $600 per hour for less than 75 hours. Levine Aff. at 4. Also by attached "itemized services" record, Levine claims 74.32 hours, at $600 per hour, for a claimed total of $70,734.00. Levine's calculations are likewise appear inconsistent and incorrect according to the information submitted.[20] Gleason's affidavit

---

[19] Taking Gilbert's numbers at their face value, 120.62 hours at $500 per hour yields $60,310 in fees. Adding the claimed disbursements of $4,630, the Court arrives at a sum total of $64,940.45. Alternatively, calculating the hours as Gilbert has listed them yields 129.75 hours, yielding $64,875 in fees. Adding the expenses, the Court arrives at an alternate total of $69,505. Several of Gilbert's line item calculations are also incorrect or lack documentation of exercised billing judgment, though usually yielding total than the claimed time spent at the claimed rate would warrant. For example, multiple 1.5 hour line items are totaled at $500; 10.5 hours in the affidavit yields an amount of $5,165. 10.5 hours at a rate of $500 is accurately a total of $5,250.

[20] Taking Levine's hours calculation at face value, 74.32 hours at the rate of $600 per hour totals $44,592. By the Court's calculation, Levine's itemized hours total 71.025. 71.025 hours

seeks "*** [sic] hours at the rate of $500 per hour," $3,581.25

for an investigator, and $7,485 in expenses. Gleason Aff. at 7.

Gleason's 18 pages of line item charges appear accurate.


### i. Reasonable Fees


For the same reasons set forth supra §4(a)(i), a deduction

of 30% is warranted for the rates sought by Levine, Gilbert, and

Gleason. This reduction alone brings Gilbert and Gleason's rates

to $350 per hour and Levine's rate to $420 per hour. However,

all three attorneys point to minimal concrete examples of their

experience prosecuting federal civil rights actions. See Gleason

Aff. ¶¶ 7-9 (naming one case); Levine Aff. ¶ 5 (naming no

cases); Gilbert Aff. (claiming no civil rights experience,

naming no cases). Furthermore, Levine, Gilbert, and Gleason made

minimal contribution to this case, representing Plaintiff for

only four months and performing primarily review, summarization,

and management work that do not command partner-level rates. See

Levine Aff. ¶ 7 ("your affirmant's work included breaking down

_____

at a rate of $600 per hour yields a total of $42,615. Levine's
line items are also not consistently accurate and lack
indication of exercised billing judgment, such as 1.5 hours
yielding a $600 amount on 11/30/12 and $900 on 12/7/12, and .25
hours yielding $150 charge on 1/30 and a $140 charge the
subsequent day.

the prior attorneys' files...taking copious notes and then summarizing them in a memorandum to the file"); Gilbert Aff. ¶ 3, ("After being retained by plaintiff we undertook to familiarize ourselves with the plaintiff and his case. This involved reviewing..."), ¶ 8 ("familiarizing himself with plaintiff's case, from reviewing...to traveling to upstate New York on two occasions to meet personally with plantiff and his father, dealing with ancillary issues that were troubling plaintiff..."); Gleason Aff. ¶¶ 11-12 ("reviewing ... conferring ... engaging in extensive client contact necessitated by the myriad questions ... endeavoring to assemble the legal team[.]"). In Gilbert's own words, "[w]ith the completion of our review and analysis of the materials provided to our firm we had just begun the process of formulating our litigation plan when the decision was made to shift the responsibilities for the day to day management of the litigation to Nat Smith and the newer members of the team." Gilbert Aff. ¶ 8. Accordingly, rates of $325 per hour are appropriate for all three attorneys.

### ii. Reasonable Hours

Many of the deductions warranted with respect to Primary Counsel's fee requests apply equally or more forcefully to Levine, Gilbert, and Gleason's request. In particular and as

| Counsel | Rate | Hours | Total |
|---------|------|-------|-------|
| Harvey Levine | $325 | 5 | $ 1,625.00 |
| Peter Gleason | $325 | 100 | $32,500.00 |
| Richard Gilbert | $325 | 25 | $ 8,125.00 |
| Total Fees | | | $42,250.00 |

### iv. Costs and Expenses

Levine and Gilbert[21] seek to recover $4,630.45 paid to Norinsberg "for claimed disbursements for which request is herewith being made for reimbursement." Gilbert Aff. ¶ 6. These costs are recoverable, as the reimbursement to Norinsberg was for costs and expenses incurred before Levine, Gilbert, and Gleason began representing Plaintiff and thus any necessary deductions to the amount have already been applied to Norinsberg's line-item claims as set forth above.

The amount Gleason seeks in expenses is unclear.[22] In the text of his affirmation, Gleason requested $3,581.25 for investigator Vincent Parco, and what he totals as $7,485 in expenses. Gleason Aff. ¶ 19. He lists only two expenses by line-

---

[21] Though claimed in the text of Gilbert's Affirmation, proof of the disbursement is provided in Levine's Affirmation. See Gilbert Aff. ¶ 6; Levine Aff. at 9-10.

[22] In the text of his affirmation, Gleason requested $3,581.25 for an investigator, and what he totals as $7,485 in expenses. Gleason Aff. ¶ 19.

item in his billing record. See Gleason Aff., Ex. A. In his billing record, he summarizes $6,123 in expenses and $3,581.25 in costs for investigation. Gleason Aff., Ex. A at 20. Combined and properly calculated, these amounts total $9,704.25, a number Gleason does not request or reach elsewhere. The line-items listed as expenses do not precisely reflect the legible receipts provided. Compare Gleason Aff., Ex. A with Gleason Aff. Ex. C. Even were they accurate reflections of costs, the line item expenses total $3,397, an amount inconsistent with all the numbers Gleason provides. Even the receipts that Gleason submits are largely, and in some cases wholly, illegible. The errors, inconsistencies, and lack of verification call into substantial doubt the accuracy of the claimed expenses and they are denied on this basis.

In addition, the specific expenses for which Gleason seeks reimbursement do not merit an award under the standard of this Circuit. See U.S. Football League, 887 F.2d at 416 (permitting attorney's fee award for "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients" that are "incidental and necessary" to representation.). Gleason alleges Parco's work "resulted in impeachment material regarding individual defendants that would have been important had the matter gone to trial." Gleason Aff. ¶ 15. No detail is provided

as to what this information was, whether it applied to a
Municipal Defendant or a Medical Defendant, or how that
information was (or might have been) used in this litigation.
The only indication in Mr. Parco's attached billing record is
"Scope: Named Defendants & Identify person(s) at Schoolcraft
home when he was removed to hospital." Gleason Aff., Ex. B.
There being no basis to decide whether Parco's work was
incidental and necessary to representation and whether the City
is liable for the expense, this request is denied. The charges
at Men's Warehouse, Best Buy, and the Apple Store are not
clearly incidental to representation such that the City is
responsible for their cost. Two cell phone lines in Gleason's
name, paid for an entire year is likewise not at all necessary
or reasonable. Gleason's requested costs are accordingly denied.


   **c. Interest**


   Smith and Norinsberg request 9% post-judgment interest on the
award. Smith Reply at 37, Norinsberg Reply at 58. The Rule 68
Judgment provides:

> Acceptance of this offer of judgment also will operate to
> waive plaintiff's rights to any claim for judgment interest on
> the amount of the judgment, other than pre-judgment interest
> on any backpay amounts.

The plain language of the Rule 68 Judgment entitling Plaintiff
to attorney's fees bars recovery of post-judgment interest, and

the request is accordingly denied.




V.   **Conclusion**


Based on the conclusions set forth above, Plaintiff's motion
for attorney's fees and costs are granted in part and denied in
part, Plaintiff's motion to strike is granted in part and denied
in part, and Defendant's motion to strike is denied. The
Norinsberg, Smith, and Cohen & Fitch teams are awarded a total
of $1,046,777.59 and Levine, Gilbert, and Gleason are awarded a
total of $46,880.45 as set forth above. Plaintiff's counsel is
therefore awarded $1,093,658.04 in attorney's fees and costs.



It is so ordered.


New York, NY
September  /  , 2016

ROBERT W. SWEET
U.S.D.J.