UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
ADRIAN SCHOOLCRAFT,

                  Plaintiff,


                -against-                       **10 CV 6005 (RWS)**


  THE CITY OF NEW YORK, et al.


                  Defendants.

--------------------------------------------------------------------------------X



## MEMORANDUM OF LAW IN SUPPORT OF THE NORINSBERG TEAM'S MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S ORDER ON ATTORNEYS' FEES

JON L. NORINSBERG
225 Broadway, Suite 2700
New York, New York 10007
Jon@norinsberglaw.com

JOSHUA P. FITCH
GERALD M. COHEN
COHEN & FITCH LLP
233 Broadway, Suite 1800
New York, N.Y. 10279
gcohen@cohenfitch.com
jfitch@cohenfitch.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................1

LOCAL RULE 6.3 STANDARD FOR RECONSIDERATION....................................................1

ARGUMENT .......................................................................................................................2

   I.     THE COURT'S 35% REDUCTION IN HOURLY RATES IS INCONSISTENT
        WITH SUPREME COURT PRECEDENTS, AND IS CONTRARY TO THE LAW
        IN THIS CIRCUIT ...........................................................................................2

        A.  The Supreme Court Has Expressly Held That the Size of A Law Firm
             Should Not Be Considered When Determining A Reasonable Hourly Rate...........2

        B.  The Court's Downward Adjustment of Hourly Rates is Contrary to the Second
             Circuit's Holding in Simmons, which Holds that Southern District Rates Must Be
             Higher than Eastern District Rates.........................................................................5

  II.    THE COURT'S RELIANCE ON THE JOHNSON FACTORS TO SET AN
        HOURLY RATE IS INCONSISTENT WITH THE SUPREME COURT'S
        DECISION IN PERDUE ............................................................................................6

        A.  The Supreme Court Has Expressly Rejected the Johnson Factors As a Basis for
             Determining What Constitutes a Reasonable  Hourly Rate .....................................6

        B.  Following Perdue, Many District Courts Have Questioned Whether Arbor Hill
             Remains Good Law.................................................................................................7

        C.  The Court's Reduction in Rates Due to "Reputational Benefits" is Inconsistent
             with Perdue and Unsupported by the Record .........................................................9

        D.  The Court's Reduction in Rates Based on Work Performed in Other Civil Rights
             Cases Is Inconsistent with Perdue and Factually Incorrect....................................10

CONCLUSION....................................................................................................................11

TABLE OF AUTHORITIES

Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509 (S.D.N.Y. 2011)........................................8

Anthony v. Franklin First Fin., Ltd., 844 F. Supp. 2d 504 (S.D.N.Y. 2012) ................................8

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182 (2d Cir. 2007) ................................................................................................................................ passim

Blum v. Stenson, 465 U.S. 886 (1984) ................................................................................ passim

Blum v. Stenson, 671 F.2d 493 (2d Cir. 1981)..............................................................................3

Brig v. Port Auth. Trans Hudson, 2014 U.S. Dist. LEXIS 42538 (S.D.N.Y. 2014) ......................8

Crescent Publ'g Grp, Inc. v. Playboy Enters., 246 F.3d 142 (2d Cir. 2001) ..................................5

Farez-Espinoza v. Napolitano, 2009 WL 1118098 (S.D.N.Y. 2009) ..............................................1

Flores v. Mamma Lombardi's of Holbrook, Inc., 2015 U.S. Dist. LEXIS 65197 (E.D.N.Y. May 2015) ........................................................................................................................................8

Hensley v. Eckerhart, 461 U.S 24 (1982) ....................................................................................3

Irish v. City of New York, 2004 U.S. Dist. LEXIS 3770 (S.D.N.Y. 2004)...............................4, 5

James v. Federal Reserve Bank of New York, 471 F.Supp.2d 226 (E.D.N.Y. 2007) ....................2

Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir. 1974) ................................... passim

Marshall v. Randall, 10 Civ. 2714 (JBW) (VVP) (E.D.N.Y. Jan. 24, 2013)..................................5

Medisim Ltd. v. Best Med LLC, 2012 WL 1450420 (S.D.N.Y. 2012) ...................................... 1-2

Missouri v. Jenkins, 491 U.S. 274 (1989).............................................................................3, 4, 5

Perdue v. Kenny A., 130 S. Ct. 1662 (2010) ....................................................................... passim

Schoolcraft v. City of New York, 2016 WL 4626568 (S.D.N.Y. 2016) ............................... passim

Shrader v. CSX Transp, .Inc., 70 F.3d255, 257 (2d Cir. 1995) ......................................................1

Simmons v. N.Y.C. Transit Auth., 575 F.3d 170 (2d Cir. 2009)............................................ passim

Stenson v. Blum, 512 F. Supp. 680 (S.D.N.Y. 1981) ....................................................................3

Stinson v. City of New York, 10 Civ. 4228 (RWS) ....................................................................11

Tardd v. Brookhaven Nat. Laboratory, 2007 WL 1423642 (E.D.N.Y. 2007)................................2

## PRELIMINARY STATEMENT

The law firms of Jon L. Norinsberg, Esq. and Cohen & Fitch LLP (collectively, the "Norinsberg Team"), respectfully submit this Memorandum of Law in support of our motion for partial reconsideration of the Court's September 6, 2016 Order ("the Order") on Plaintiff's attorney's fee award.  Specifically, we request that the Court reconsider that portion of its Order, dated September 6, 2016, which reduced the hourly rates of all counsel by 35%. (Docket No. 638). While the Court also reduced the hours of all counsel by 65%, we do not ask the Court to reconsider this ruling.  Our motion is limited solely to the Court's reduction of our hourly rates by 35%.

There are two central grounds for this motion: i) the Supreme Court has expressly rejected the argument that the size of a law firm – or more particularly, the costs of its overhead – should be considered when determining a reasonable hourly rate. Blum v. Stenson, 465 U.S. 886, 894 (1984); and ii) the Supreme Court has expressly rejected the Johnson factors as a basis for determining a reasonable hourly rate.  Perdue v. Kenny A., 130 S. Ct. 1662, 1669 (2010).  To the extent that the Court's Order is in conflict with these rulings, we respectfully ask the Court to reconsider its decision to reduce our hourly rates by 35%.

## LOCAL RULE 6.3 STANDARD FOR RECONSIDERATION

A motion for reconsideration is proper where "the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp, .Inc.,70 F.3d255, 257 (2d Cir. 1995); see also Farez-Espinoza v. Napolitano, 08 Civ, 11060 (HB), 2009 WL 1118098, *3 (S.D.N.Y. April 27, 2009). Pursuant to Local Civil Rule 6.3, the Court may reconsider a prior decision to "'correct a clear error or prevent manifest injustice.'" Medisim Ltd. v. Best Med LLC, 2012 WL 1450420, *1 (S.D.N.Y. Apr. 23, 2012) (citations omitted).  Accordingly, in

situations where the party moving for reconsideration can sufficiently show that the court overlooked facts or misapplied the law in a manner that affected the outcome of the court's decision, then reconsideration is appropriate.  See Tardd v. Brookhaven Nat. Laboratory, 2007 WL 1423642, *3 (E.D.N.Y. 2007) ("[R]econsideration is appropriate in this case because the Court overlooked facts that "might reasonably be expected to alter the conclusion reached by the Court."); James v. Federal Reserve Bank of New York, 471 F.Supp.2d 226, 230 (E.D.N.Y. 2007) (reconsideration appropriate where "the moving party can point to controlling decisions or [facts] that the court overlooked") (emphasis added).

## ARGUMENT

### I.  THE COURT'S 35% REDUCTION IN HOURLY RATES IS INCONSISTENT WITH SUPREME COURT PRECEDENT, AND IS CONTRARY TO THE LAW IN THIS CIRCUIT.

#### A. The Supreme Court Has Expressly Held That the Size of a Law Firm Should Not Be Considered When Determining a Reasonable Hourly Rate.

In its Order, the Court acknowledged that "this litigation has been complex and demanded a great deal of effort from counsel over a long period of time," and that counsel had obtained "an excellent recovery for Plaintiff."  (Order at 18).  The Court further acknowledged that counsel had "applied experience and expertise warranting partner-level compensation." (Id.).  Nonetheless, the Court concluded that the rates requested were excessive, "even for partner-level compensation." (Id.) The Court thus reduced the rates of all counsel by 35%.

In reaching this conclusion, the Court based its decision, in part, on the size of counsel's firms.  Specifically, the Court noted that "Primary Counsel are all solo or small-firm practitioners whose practices are incomparable to large law-firms employing thousands of attorneys, where rates factor in massive overhead." (Order at 19).  Yet, the Supreme Court has expressly rejected this argument, holding that the size of a law firm – or more specifically, the costs of its overhead

– cannot be considered when determining a reasonable hourly rate.  Blum v. Stenson, 465 U.S. 886, 894 (1984).

In Blum, the prevailing plaintiffs had been represented by the Legal Aid Society. The district court had awarded counsel "prevailing market rates," Stenson v. Blum, 512 F. Supp. 680, 685 (S.D.N.Y. 1981), and the Second Circuit had affirmed in an unpublished opinion.  Blum v. Stenson, 671 F.2d 493 (2d Cir. 1981). In its petition to the Supreme Court, defendant asserted that hourly rates for prevailing plaintiffs should be based on "the cost of providing legal services rather than according to the prevailing market rate." Blum, 465 U.S. at 892-93 (citations and footnote omitted). The Supreme Court, however, rejected this claim, finding that the legislative history "flatly contradicted" petitioner's argument, id. at 894, and concluded that the "statute and legislative history establish that 'reasonable fees under §1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." Id. at 895.

A similar challenge was raised in Missouri v. Jenkins, 491 U.S. 274 (1989). In that case, the prevailing plaintiffs had sought compensation for the work of paralegals at prevailing market rates as part of their attorney's fee award.  Defendant argued that these hours should be awarded at cost as part of the lower overhead experienced by counsel. After reviewing the statute and the legislative history, the Court rejected this argument, finding that prevailing plaintiffs were to be paid in a manner to ensure a "fully compensatory fee." Id. at 286 (citing Hensley v. Eckerhart, 461 U.S 24, 435 (1982)):

> We reject the argument that compensation for paralegals at rates above "cost" would yield a "windfall" for the prevailing attorney. Neither petitioners nor anyone else, to our knowledge, has ever suggested that the hourly rate applied to the work of an associate attorney in a law firm creates a windfall for the firm's partners or is otherwise improper under § 1988, merely because it exceeds the cost of the attorney's services.

3

Id. at 287.

Thus, Blum v. Stenson and Missouri v. Jenkins reject a cost-based approach to determining market rates as contrary to the legislative history of Section 1988.  Accordingly, "the argument that small firms should be compensated at a lower rate is but a variant of positions already rejected by the Supreme Court."  Irish v. City of New York, 2004 U.S. Dist. LEXIS 3770, *12-17 (S.D.N.Y. Mar. 8, 2004).  As the court in Irish noted, in rejecting a similar claim:

> Defendants argue that the Court should accept the assumption that larger law firms carry a larger overhead and therefore should command a higher rate. There is nothing in the legislative history to support either this assumption or the conclusion to be drawn from the assumption. Even if larger firms have higher overhead, other factors are incorporated into an attorney's fee structure. For example, larger firms may give discounts for the certainty of payment. Smaller firms may have to charge more because of higher contingency factors. Moreover, the defendants present no evidence that overhead is the driving force for the setting of hourly rates in this district.
> Id.

To the extent that this Court held otherwise – finding that the "massive overhead" of large law firms justified a higher hourly billing rate under Section 1988 (Order at 19) – we respectfully submit that this is inconsistent with the Supreme Court's holdings in Blum and Jenkins. The billing rates should not be governed by the size of the law firm, but rather, by the existing rates in the judicial district in which the trial court sits – here, the Southern District of New York.   See Simmons v. N.Y.C. Trans. Auth., 575 F.3d 170, 174 (2d Cir. 2009) ("[C]ourts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.").

Lastly, our actual billing agreements with private clients belie the notion that our rates are merely "an opening bid in a negotiation" or that a "keen client would have negotiated these rates down." (Order at 18).  For example, in the past few months, Mr. Norinsberg has been retained by two separate clients who have readily agreed to pay his requested rate of $600.00 per hour.

(Norinsberg Decl, Ex. A & Ex. B). There was no negotiation over these rates. (Id.).  The rates were stated, and accepted, without any further discussion.  Likewise, in September 2014, a third client agreed to pay an hourly rate of $500.00 per hour. (Id., Ex. C). Again, there was no discussion about this billing rate.  Similarly, Cohen & Fitch's standard retainer agreements expressly state that their billing rate is $500.00 per hour. (Id., Ex. D). The very fact that private clients have agreed to pay such rates is strong evidence that the requested rates are reasonable.  See Crescent Publ'g Grp, Inc. v. Playboy Enters., 246 F.3d 142, 151 (2d Cir. 2001) (finding that "[t]he actual billing arrangement certainly provides a strong indication of what private parties believe is the "reasonable" fee to be awarded"). At a minimum, such evidence demonstrates that our requested rates are not "purely theoretical highest rates," as the Court found. (Order at 20).

Based on the holdings in Blum, Jenkins and Irish, as well as our own actual billing experience, we respectfully ask the Court to reconsider its holding that a 35% reduction in our hourly billing rates is warranted.

### B. The Court's Downward Adjustment of Hourly Rates is Contrary to the Second Circuit's Holding in Simmons, which Holds that Southern District Rates Must Be Higher than Eastern District Rates.

In its Order, the Court acknowledged that "Norinsberg, Cohen & Fitch, and Smith applied experience and expertise warranting partner-level compensation." Schoolcraft v. City of New York, No. 10 CIV. 6005 (RWS), 2016 WL 4626568, at *6 (S.D.N.Y. Sept. 6, 2016). The Court nonetheless reduced the hourly rates of all counsel by 35%.  This reduction ultimately resulted in the Norinsberg Team being billed at an hourly rate equal to, or less than, the rate awarded them in the Eastern District nearly four years ago.  See e.g., Marshall v. Randall, 10 Civ. 2714 (JBW) (VVP) (E.D.N.Y. Jan. 24, 2013) (awarding Norinsberg $400 per hour and Cohen & Fitch $325 per hour). While the Court found that the "reduction" in the requested hourly rate was "consistent with

the awards Primary Counsel received in the past from contested fee applications" (<u>Schoolcraft</u>, 2016 WL 4626568 at *7), this conclusion is flawed for several reasons. First, the decisions cited by the Court were all from the *Eastern* District of New York, not the Southern District of New York. As the Second Circuit has made clear, however, Southern District rates are significantly higher than Eastern District rates. <u>See</u> <u>Simmons</u>, 575 F.3d at 172 (reducing the district courts award by 21% to reflect the fact that "the prevailing hourly [in the Eastern District] are *substantially lower*" than those in the Southern District) (emphasis supplied). Thus, even if the Court's hourly rates were "consistent" with the prior fee awards, this would be true only for *Eastern* District hourly rates, not for Southern District rates. The Court would still need to make an upward adjustment by at least 21% to account for the higher rates in the Southern District. <u>Simmons</u>, 575 F.3d at 172 (2d Cir. 2009). The Court failed to make such an adjustment.

To the extent that the Court based its decision on any *other* factors, we respectfully submit that none of those factors would warrant such a reduction under existing Supreme Court precedents. <u>See</u> Pt. I (A), <u>supra</u>, and Pt. II, <u>infra</u>. We therefore respectfully request that Your Honor reconsider the decision to downwardly adjust counsel's normal Southern District billing rates by 35%.

## II. THE COURT'S RELIANCE ON THE <u>JOHNSON</u> FACTORS TO SET AN HOURLY RATE IS INCONSISTENT WITH THE SUPREME COURT'S DECISION IN <u>PERDUE</u>.

### A. The Supreme Court Has Expressly Rejected the <u>Johnson</u> Factors as a Basis for Determining What Constitutes a Reasonable Hourly Rate.

In determining that a departure of approximately 35% from our normal billing rates was appropriate, the Court relied upon the so-called "Johnson factors" to support its conclusion. <u>Schoolcraft</u>, 2016 WL 4626568 at *5.[1] However, the Supreme Court has expressly rejected the

---

[1] <u>See</u> <u>Johnson v. Georgia Highway Express</u>, 488 F.2d 714, 717-19 (5th Cir. 1974)).

Johnson method as a basis for determining a reasonable hourly rate.  Perdue v. Kenny A., 130 S.
Ct. 1662, 1669 (2010).  In Perdue, the Supreme Court addressed "the task of identifying an
appropriate methodology for determining a 'reasonable' fee" under Section 1988. Id., 130 S. Ct.
at 1669.  In choosing the lodestar method over the Johnson method, the Supreme Court concluded
that the Johnson approach was flawed because it set "attorneys' fees by reference to a series of
sometimes subjective factors [that] placed unlimited discretion in trial judges and produced
disparate results." Perdue, 130 S. Ct. at 1672 (citation omitted).  As the Supreme Court explained,
there are several reasons why the lodestar method is preferable over the Johnson method:

> Although the lodestar method is not perfect, it has several important virtues.
> First, in accordance with our understanding of the aim of fee-shifting statutes,
> the lodestar looks to "the prevailing market rates in the relevant community."
> Developed after the practice of hourly billing had become widespread, the
> lodestar method produces an award that *roughly* approximates the fee that the
> prevailing attorney would have received if he or she had been representing a
> paying client who was billed by the hour in a comparable case.  Second, the
> lodestar method is readily administrable; and unlike the Johnson approach, the
> lodestar calculation is "objective," and thus cabins the discretion of trial judges,
> permits meaningful judicial review, and produces reasonably predictable results.
> Id. (citations omitted, emphasis in original).

In light of the Perdue Court's criticism of Johnson as "subjective," giving "very little actual
guidance to district courts," placing "unlimited discretion in trial judges" and producing "disparate
results," see Perdue, 559 U.S. at 550-51, we respectfully submit that Johnson was not an
appropriate basis for reducing our billing rates by 35%.

### B.  Following Perdue, Many District Courts Have Questioned Whether Arbor Hill Remains Good Law.

Apart from Johnson, the Court also relied on Arbor Hill Concerned Citizens Neighborhood
Ass'n v. County of Albany, 522 F.3d 182 (2d Cir. 2007), to support its 35% reduction of hourly
rates. (Order at 17, 22).  However, Arbor Hill was decided prior to the Supreme Court's decision
in Perdue.  Since Arbor Hill emphasized the Johnson factors – and since the Supreme Court

explicitly rejected such an approach in Perdue, 130 S. Ct. at 1672 – many courts have questioned whether Arbor Hill is still good law.  See, e.g., Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 514 n.4 (S.D.N.Y. 2011) ("The Supreme Court's Perdue opinion appears to cast doubt on the viability of the Second Circuit's 2008 opinion in Arbor Hill … which relied on among other factors, the Johnson factors."); Brig v. Port Auth. Trans Hudson, No. 12 CV 5371, 2014 U.S. Dist. LEXIS 42538, at*4 (S.D.N.Y. Mar. 28, 2014) ("Although the Defendant has requested that the Court take into account the twelve factors outlined by the Fifth Circuit in Johnson …, the discretionary methodology articulated in Johnson was rejected by the Supreme Court in Perdue, which endorsed the lodestar's more objective and predictable calculation."); Flores v. Mamma Lombardi's of Holbrook, Inc., No. 12 CV 3532, 2015 U.S. Dist. LEXIS 65197, at *38 n.7 (E.D.N.Y. May 18, 2015) ("In embracing the lodestar approach, Perdue expressly rejected the twelve factor test set forth in Johnson ..."); Anthony v. Franklin First Fin., Ltd., 844 F. Supp. 2d 504, 507 n. 3 (S.D.N.Y. 2012) ("[T]here is some question as to whether the Supreme Court's Perdue opinion casts doubt on the viability of the Second Circuit's decision in Arbor Hill …").

Even assuming, arguendo, that *some* of Arbor Hill remains good law, that portion of Arbor Hill which relied upon the Johnson factors is not.  Since this Court expressly relied upon both Arbor Hill and Johnson in reducing plaintiff's hourly rates by 35% -- see Order at 22 ("Having considered the factors set out in Arbor Hill and Johnson, a 35% reduction in the requested rates is warranted ….") -- we respectfully submit that the Court's decision was contrary to the Supreme Court's holding in Perdue and warrants reconsideration.

### C. The Court's Reduction in Rates Due to "Reputational Benefits" is Inconsistent with <u>Perdue</u> and Unsupported by the Record.

The Court also reduced counsel's hourly rates based upon the alleged "reputational benefits" to our firms "from being associated with the case". <u>Schoolcraft</u>, 2016 WL 4626568 at *5 (citing <u>Arbor Hill</u>, 522 F.3d at 190. This "reputational" factor was discussed by the Second Circuit in connection with the <u>Johnson</u> factors in <u>Arbor Hill</u>. <u>Id.</u>, 522 F.3d at 190 ("the district court should consider, among others, the Johnson factors…[and] should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits..."). However, as noted above, it is not clear whether <u>Arbor Hill</u> is still good law. <u>But</u> even if <u>Arbor Hill</u> can be reconciled with <u>Perdue</u>, it is clear that the "reputational benefit" factor cannot. As the Supreme Court recognized, one of the "chief virtues" in abandoning the subjective factors enumerated in <u>Johnson</u>, was to "provid[e] a calculation that is objective and capable of being reviewed on appeal." <u>Perdue</u>, 559 U.S. at 553. Yet, the inherently subjective nature of "reputational benefits" defeats this purpose. It is impossible to quantify the value of this factor, much less use it as a basis for reducing hourly rates. After <u>Perdue</u>, "reputational benefits" is simply not a valid basis for determining hourly rates.

The Court's factual findings further illustrate the impossibility of using such a "subjective factor" in the wake of <u>Perdue</u>. <u>Id.</u>, 559 U.S. at 550-51. Specifically, the Court found that, as a result of widespread media coverage, "Plaintiff's counsel can and actively did leverage to obtain business into the future." <u>Schoolcraft</u>, 2016 WL 4626568 at *7. However, there is nothing in the record to support this conclusion. In fact, over a six year period, Plaintiff's counsel received *one* case as a result of the media coverage on the Schoolcraft matter – <u>Bonelli v. City of New York</u>, 11 Civ. 0395 (KAM) (JO), which, as discussed below, we had to refer to another firm because we could not handle both cases at the same time. But even assuming, <u>arguendo</u>, that there were

intangible "reputational benefits" that resulted from the media coverage in this case (Order at 20), using such a vague and imprecise factor violates the holding of <u>Perdue</u>. As the Supreme Court has instructed, "the trial judge should adjust the attorney's hourly rate in accordance with *specific proof*" in order to satisfy the goal of an "objective and reviewable" hourly rate determination. <u>Perdue,</u> 559 U.S. at 555 (emphasis supplied). Here, such "specific proof" was clearly lacking.

Based on <u>Perdue</u>, it seems certain that "media coverage" cannot be considered as a factor under the lodestar methodology.[2]  The use of such a "subjective factor" to determine rates would produce "disparate results" that would preclude "meaningful judicial review." <u>Perdue</u>, 559 U.S. at 550-51.  Indeed, lowering hourly rates by using such an "impressionistic basis" –  as the Court did here, based on the *presumed* reputational benefits to counsel, as opposed to "specific proof" of such benefits – would undermine "a major purpose of the lodestar method[,which is] providing an objective and reviewable basis for fees ….." <u>Perdue</u>, 559 U.S. at 558.  Since "the lodestar looks to 'the prevailing market rates in the relevant community'" to establish hourly rates, <u>Perdue</u> 103 S. Ct. at 1672 (quoting <u>Blum</u>, 465 U.S. at 895), subjective factors such as "reputational benefits" cannot be considered in determining such rates. To the extent that the Court held otherwise, we respectfully submit that such a conclusion is at odds with <u>Perdue</u> and warrants reconsideration.

### D. The Court's Reduction in Rates Based on Work Performed in Other Civil Rights Cases Is Inconsistent with <u>Perdue</u> and Factually Incorrect.

The Court further found that the time and labor on this case was "not preclusive of other employment,"[3] as confirmed by "the appearance of Plaintiff's counsel on other matters before this Court during the course of this litigation." <u>Schoolcraft</u>, 2016 WL 4626568 at *6. However, the use

---

[2] Even under the <u>Johnson</u> method, there is no mention of "media coverage" as being a factor to be considered when determining a reasonable hourly rate.

[3] <u>Johnson</u> factor No. 4

of such a "subjective factor" to lower rates is plainly inconsistent with <u>Perdue</u>.  Moreover, the Court's underlying factual premise is simply incorrect.  In fact, our firms collectively were forced to relinquish a highly lucrative case – <u>Bonelli v. City of New York</u>, 11 Civ. 0395 (KAM) (JO), which ultimately settled for approximately 1.1 million dollars – because it was impossible to handle both the <u>Schoolcraft</u> case and the <u>Bonelli</u> case at the same time. (Norinsberg Decl., ¶¶ 5-6). Further, in the past six years, our firms have appeared before this Court only on *one* other case – <u>Stinson v. City of New York</u>, 10 Civ. 4228 (RWS) – which was a 'related action' filed *prior* to the <u>Schoolcraft</u> matter. (<u>Id</u>. ¶7)  Thus, despite the Court's finding, apart from <u>Stinson</u>, there have been no "other matters" that we appeared in court before Your Honor in the past six years. <u>Schoolcraft</u>, 2016 WL 4626568 at *6.

## **CONCLUSION**

Based on the foregoing, it is clear that the Court relied upon the <u>Johnson</u> factors and <u>Arbor Hill</u> in deciding to reduce plaintiff's hourly rates by 35%. <u>See</u> Order at 22 ("Having considered the factors set out in <u>Arbor Hill</u> and <u>Johnson</u>, a 35% reduction in the requested rates is warranted ….") <u>See also</u> <u>id</u>. at 17 (noting that "the <u>Johnson</u> and <u>Arbor Hill</u> considerations can just as easily weigh in favor of reducing a fee award as they can weigh in favor of increasing it."). In light of the Supreme Court's rejection and criticism of the <u>Johnson</u> factors as being "subjective," giving "very little actual guidance to district courts," placing "unlimited discretion in trial judges" and producing "disparate results," <u>see</u> <u>Perdue</u>, 559 U.S. at 550-51, we respectfully submit that the Court's reliance on <u>Johnson,</u> or the similarly improper "reputational benefits" factor, was not appropriate as a basis for reducing our billing rates by 35%. We further respectfully submit that, under <u>Blum</u> and <u>Jenkins</u>, billing rates should not be governed by the size of the law firm, but rather, by the existing rates in the judicial district in which the trial court sits – here, the Southern District

of New York. Lastly, we respectfully submit that under the law of this Circuit, hourly rates in the

Southern District in 2016 must be substantially higher than hourly rates that were awarded in the

Eastern District four years ago. See Simmons, 575 F.3d at 172. For all of these reasons, we ask the

Court to reconsider its decision to reduce our hourly rates by 35%, and to reset those rates at a

level that is consistent with the Supreme Court and Second Circuit precedents discussed above.

Dated: New York, New York
        September 14, 2016

                                        Respectfully submitted,


                                        _____/S_____
                                        JON L. NORINSBERG
                                        225 Broadway, Suite 2700
                                        New York, New York 10007
                                        Jon@norinsberglaw.com

                                        JOSHUA P. FITCH
                                        GERALD M. COHEN
                                        COHEN & FITCH LLP
                                        233 Broadway, Suite 1800
                                        New York, N.Y. 10279
                                        gcohen@cohenfitch.com
                                        jfitch@cohenfitch.com

12