UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ADRIAN SCHOOLCRAFT,

                                                                                                           10–cv-6005 (RWS)

                    Plaintiff,

    -against-


THE CITY OF NEW YORK, et al.,

                    Defendants.
-----------------------------------------------------------------x


# MEMORANDUM OF LAW
# IN SUPPORT OF THE SMITH TEAM'S
# RECONSIDERATION MOTION


                                                                           Nathaniel B. Smith
                                                                           John Lenoir
                                                                              100 Wall Street – 23rd Floor
                                                                              New York, New York 10005


Dated:  September 16, 2016

# TABLE OF CONTENTS

Preliminary Statement ............................................................................................. 1

Standard of Review ................................................................................................. 2

The 35% Reduction In Hours .................................................................................. 2

The Across-The-Board Reductions ...................................................................... 10

The Reduction in Hourly Rates ............................................................................ 12

Conclusion ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Farbotko v. Clinton* County, 433 F.3d 204  (2d Cir. 2005). ........................................ 13

*Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc.*, 962 F.2d 268 (2d Cir. 1992) ................................................................................................................... 15

*Perdue v. Kenny A.,* 559 U.S. 542 (2010) ..................................................................... 13

*Reiter v. MTA New York City Transit Authority*, 457 F.3d 224 (2d Cir. 2006) ........... 13

*Schoolcraft v. City of New York*, 133 F. Supp. 3d 563 (S.D.N.Y. Sept. 12, 2015) ........ 1

*Vornado Realty Trust v. Marubeni Sustainable Energy, Inc.,* 987 F. Supp. 2d 267 (E.D.N.Y. 2013) .......................................................................................................... 2

*W. Alton Jones Foundation v Chevron*, 97 F. 3d 29 (2d Cir. 1996) ............................ 15

**Rules**

Rule 54, 59 and 60(b) of the Federal Rules of CIvil Procedure .......................................... 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ADRIAN SCHOOLCRAFT,

                                                                                                 10–cv-6005 (RWS)

                        Plaintiff,

      -against-


THE CITY OF NEW YORK, et al.,

                      Defendants.
-----------------------------------------------------------------x

**MEMORANDUM OF LAW
IN SUPPORT OF THE SMITH TEAM'S
RECONSIDERATION MOTION**

*Preliminary Statement*

On behalf of the plaintiff and the undersigned counsel for the plaintiff, we submit this motion pursuant to Local Civil Rule 6.3 and Rules 59(e), 54(b) and 60(b) of the Federal Rules of Civil Procedure to respectfully request that the Court reconsider certain portions of its recent fee Decision (Dkt. # 683). For the reasons set forth below, the Court's across-the-board reasonable hour determinations should be reconsidered in the light of the individual fee applications and the actual work done by the separate teams of lawyers, and the Court's hourly rate determination should be adjusted to reflect the objective facts in the record.

*Standard of Review*

The standard for a reconsideration motion has been set forth by the Court in this action.  *See, e.g. Schoolcraft v. City of New York*, 133 F. Supp. 3d 563, 567 (S.D.N.Y. Sept. 12, 2015).  The moving party must satisfy a strict standard, showing that the Court overlooked controlling decisions or material facts that were before the Court and that might have materially influenced the Court's prior decision.  *Id.*  Under Rule 59(e) and 54(b), the Court can modify a prior non-final order or decision based on the need to correct a clear error or to prevent manifest injustice.  *Vornado Realty Trust v. Marubeni Sustainable Energy, Inc.,* 987 F. Supp. 2d 267, 275-76 (E.D.N.Y. 2013).   Rule 60(b) also gives the Court broad power to correct mistakes and to correct findings based on misleading statements or based on other equitable grounds.  We request that reconsideration and modification be granted on the following grounds.

*The 35% Reduction In Hours*

 The Court reduced by 35% the number of hours sought by Primary Counsel, which was defined to include the Norinsberg Team and the Smith Team.  The Court stated:  "Accordingly and as reasoned above, a 35% reduction in hours expended is warranted to account for the amount of time extended to keep Primary Counsel apprised of one another and mange such a large litigation team, rather than to reasonably litigate this action." Decision at p. 29.

The Court overlooks certain material and undisputed facts in making this across-the-board percentage reduction of the Smith Team's hours. From February 2013 through the end of January 2015, the Smith Team attorneys were the *only* attorneys working on the action. Decision at p. 29; *see also* Smith Reply Dec. ¶¶ 4 & 32; Dkt. # 621. During this two-year period, the Smith Team consisted of Nathaniel Smith (1775 hours), John Lenoir (937 hours) and Magdalena Bauza (1011 hours), and to a more limited extent Howard Suckle (107 hours) and James McCutcheon (23 hours). Over that two-year period, the Smith Team did the vast majority of the complex pre-trial work in this action (document discovery and related motions; fact depositions; expert discovery and expert depositions; and the summary judgment motions).

The attached chart (***Exhibit 1***) breaks down the hours for each period, showing that 78% of the Smith Team's total hours in the action (3,854 of 4,944 hours) were logged during the two-year period when we were *exclusively* working on the litigation.[1] Thus, on reconsideration the Court should not apply a 35% across-the-board reduction to the 3,854 hours for this period since that reduction is based on the *joint* activities of the Smith Team and the Norinsberg Team.

---

[1] For the two-year period from February 1, 2013 through January 31, 2015, Smith billed 1,775.60 hours, and from February 1, 2015 through September 16, 2015, Smith billed 470.40 hours. Lenoir billed 937 hours for that same two-year period and 324 hours for the second period. Bauza billed 1,011.22 hours for the two-year period and 294.42 for the second period. Suckle billed 107.65 hours during the two-year period and 1.25 hours for the second. McCutcheon billed all of his 23.38 hours within the two-year period. *See* Smith Dec. 9-16-16 ¶ 2; *see also* Dkt. Nos. 560-9, 560-12, 560-13 & 560-14 (Smith Team time records).

The Court also found that the 35% reduction was in part justified by over-billing in connection with the depositions in this case, which were almost exclusively conducted by the Smith Team.  (*See* Decision at p. 27.)   In its Decision, the Court found that Primary Counsel billed 1,443 hours in connection with 34 depositions.  (Decision at p. 27.)   We respectfully submit that the Court overlooked material facts that show that this number is materially inflated and based on conclusory and unsupported assertions that lack a proper foundation in the record.

The City in its Memorandum of Law represented to the Court that all of the plaintiff's attorneys spent 1,443 hours "in preparation or attendance of the depositions of 34 deponents."   City Mem. at p. 19; Dkt. # 597.  The City's 1,443 number, in turn, was based on the Bronsther report, which stated that a total of 1,423 hours were spent "in connection with" 34 depositions, with the Smith Team spending 1,182.51 hours and the Norinsberg Team spending 240.50 hours. (Bronsther Report at p. 10; excerpts attached as ***Exhibit 2***.)   At a minimum, the 35% reduction for the Smith Team's hours from February 2013 through January 2015 ought to apply only to the 1,182.51 hours that Bronsther claims were our deposition totals, not to the 3,854 hours that the Smith Team spent during that same period.  Thus, we request that the Court on

reconsideration increase the Smith Team's hours to reflect the 35% reduction only on the total deposition hours.[2]

Yet there are other material flaws in the 1,182 hours that Bronsther claims the Smith Team spent on depositions in this case.  In the body of Bronsther's report, Bronsther purports to provide further specificity to justify these deposition numbers. In her report she reproduced a chart of 34 depositions listing the total number of hours that she claims were spent on each deposition.  Report at pp. 86-88.  The chart is attached hereto as part of *Exhibit 2*.  There are two fundamental and material flaws with this chart.

First, Bronsther provides deposition totals for what she claims were the total hours spent on each deposition, but she does not provide any back-up information about how she made this determination for each of these depositions.  We know from her report that she downloaded and numbered all the billing entries into her own software program and coded and sorted billing entries by various categories. (Bronsther Report Exhibit 2.)   But in making her conclusory statements about the number of hours spent on each deposition, Bronsther did not provide the underlying

---

[2] Mathematically, a 35% reduction for the two-year period of the 3854.85 hours equals 1349.19 hours and a 35% reduction of the 1182.51 deposition hours equals 413.87 hours.  The difference (1349.19 minus 413.87) yields an increase in what we contend are compensable hours of 935.32 hours, which ought to be ratably added back into the Smith Team's compensable hours as follows: Smith (430 hours at 46% of the ratable share); Lenoir (224 hours at 24%); Bauza (243 hours at 26%); Suckle (28 hours at 3%); and McCutcheon (9 hours at 1%).   This analysis assumes that the 1182.51 hours Bronsther claims the Smith Team spend on deposition is correct, a contention we dispute below.

sorting data that she purportedly used to reach her conclusions about the deposition hours.³ While we certainly had access to our own billing records, we did not have any information about how Bronsther coded and sorted our billing records to come up with the gross totals she provided for each deposition.

This is not a simple matter of adding up the number of hours spend *at* a deposition based on a review of billing entries. Our legal work "relating" to depositions in this case came in many different forms, including not only preparing for and taking or defending a deposition but also reviewing a deposition transcript after it was prepared by the court reporter; preparing corrections, if necessary; preparing motions relating to the conduct or continuation of the deposition; litigating the scope of several Rule 30(b)(6) depositions; preparing further discovery based on the depositions; reviewing the deposition transcripts for summary judgment motions and reviewing the deposition transcripts for cross-examination. Indeed, footnotes to her chart further illustrate our point. In those footnotes, Bronsther states that she *added* into the deposition numbers a total of 316.70 "hours of time relating to depositions that was vague or related to general deposition issues." (Report at p. 86, n. 45 & 46.)  Since Bronsther did not provide the underlying data that formed the basis for her conclusions, her opinions and conclusions lack foundation.

---

³ Bronsther did attach as exhibits to her report (Dkt. # 598-4) sorting data for other matters, such as time spent on the medical defendants, the cost of substitution of counsel, media and lobbying activities, as well as billing entries that she labeled as block billing or containing standardized time descriptions.

The deposition chart is also materially flawed in another important respect. Simple addition of the numbers in her chart shows that the total is in fact 1,106.31 hours, not 1443 hours, a 24% exaggeration. Thus, an additional 336.69 hours were improperly added into Bronsther's deposition total, which was then adopted by the Court. When taken together with the additional 316.70 hours tossed in for "vagueness" or "general deposition issues," the 1,443 number drops to 789.61 hours and even that dramatically lower number is wholly conclusory and unsupported.

More detailed review of the deposition chart itself shows that it does not reflect what it purports to reflect, *i.e.,* the number of hours preparing for and attending depositions. For example, the first entry in the chart states that 137.75 hours were spent for the three deposition sessions of the plaintiff. *See* **Exhibit 2** at p. 86. The chart also states (correctly) that the Norinsberg Team only appeared for the *first* day of the plaintiff's deposition on October 12, 2012. Yet in providing her conclusory totals for the number of hours spent on depositions, Bronsther states that the Norinsberg Team spent *250.50 hours* in connection with the 34 depositions depicted in the chart. Exhibit 1 at p. 86. These facts show that the conclusory numbers Bronsther provides make no sense and that she must have added in significant hours to her totals that were not related to preparing for and attending a deposition.

Further review of the Smith Team's actual billing records also show that Bronsther's numbers are exaggerated. For the first entry on Bronsther's chart, she

states that 137.75 hours were spend on the plaintiff's deposition.  Smith's time records, however, reflect that he billed 23 hours preparing for the plaintiff's two days of deposition and 18 hours at his second and third all-day deposition sessions.  Dkt. # 560-9 (billing entries for  8/15/13,  8/16/13, 9/21/13, 9/25/13, 9/26/13 & 9/27/13).  In addition, Lenoir's billing records reflect that he billed 9.25 hours preparing for the plaintiff's deposition and 18 hours at the two all-day deposition sessions hours.  (Dkt. # 560-12 (Lenoir billing entries for 9/10/13, 9/25/13, 9/26/13, & 9/27/13).   Thus, the Smith Team's time entries for preparing for and defending the plaintiff's deposition total 68.25 hours for two full days of testimony of this critical witness with a substantial document record and dozens of tape recordings.   We dispute that these hours are excessive for this type of case with its massive record of documents, including over 15,000 pages of documents, hundreds of witnesses, 70 recorded witness statements, 58 videotapes of the NYPD's surveillance of the plaintiff, 118 recorded roll calls recorded by the plaintiff at the 81st Precinct, and 71 recordings by the plaintiff relating to numerous events relevant to the action.   Smith Reply Dec. ¶¶ 21-24.

  There are many other examples of Bronsther presenting inflated deposition hours.  For example, Bronsther claims that the Smith Team billed a total of 59.67 hours for the depositions of Boston and Huffman.  In fact, our billing records show that the Smith Team billed 41 hours in preparing for and attending those two

depositions, an exaggeration of 18.67 hours, which inflated the total forty-five percent.[4]  As another example, Bronsther claims that the Smith Team billed a total of 49.85 hours for the Lamstein deposition.  In fact the Smith Team billed 33.55 hours in preparing for and attending that deposition, an exaggeration by Bronsther of 16.3 hours, which is nearly a 50% inflation rate.[5]  A comparison of the other depositions yields comparable inflation rates.

Since Bronsther did not provide the underlying sorting data for her conclusions, how she derived her numbers is a mystery.  Indeed, as we pointed out in the motion to strike her report and our reply papers, Bronsther failed to explain precisely how she derived her numerical conclusions and failed to support those claims about total numbers with back-up sorting data.  Smith Reply Letter, dated May 9, 2016, at pp. 5-6 & 8; Dkt. # 631; Smith Reply Dec. ¶ 8; Dkt. # 621  As such, the deposition chart is not a proper basis for the Court's determination that 1,443 hours were spent on depositions in this case, and upon reconsideration, the Court should reject this number and the conclusion about excessive billing, which were based on a materially false and misleading numbers.

---

[4] Dkt. 560-9 (Smith billing entries for 1/3/14, 1/5/14 & 1/6/14); Dkt. # 560-12 (Lenoir entries for 1/3/14 & 1/16/14); Dkt. # 560-15 (Bauza entries for 1/3/14 & 1/5/14).  Bauza also attended the depositions but did not bill for that time, as noted in the initial fee application.  Smith Dec. ¶ 29; Dkt. # 560-2.

[5] Dkt. 560-9 (Smith billing entries for 1/28/14, 1/29/14 & 1/30/14); Dkt. # 560-12 (Lenoir entries for 1/29/14 & 1/30/14); Dkt. # 560-15 (Bauza entries for 1/28/14 & 1/29/14).  Bauza also attended the depositions but did not bill for that time, as noted in the initial fee application.  Smith Dec. ¶ 29; Dkt. # 560-2.

In sum, a 35% reduction in hours should not apply to the time when the Smith Team exclusively worked on the action. Nor is a 35% reduction appropriate based on the Court's finding of 1,443 hours for the depositions because the number is wholly conclusory, lacks foundation and is materially incorrect. Therefore, we request that on reconsideration, the Court apply the 35% reduction only to that portion of the time when both the Norinsberg and Smith Teams were *both* working together on the litigation (*i.e.,* 1,090.07 hours, as reflected in the attached chart of Smith Team hours). The 35% reduction in the hours when the Smith Team exclusively worked on the action (3,854 hours), translates into a reduction of 1,349 billable hours, which upon reconsideration we request be added back into the awarded hours.[6]

*The Across-The-Board Reductions*

We request reconsideration on the Court's across-the-board 3% reduction for the Smith Team because of media-related and web site publicity activities. Simply put, the Smith Team in no respect engaged in any media or web site conduct. As we noted in our fee application reply papers, Smith and Lenoir spent a total of 30.08 hours in connection with the plaintiff's requests to have various law enforcement agencies look at the defendants' conduct in question, and we agreed to deduct our hours for this work. *See* Smith Reply Dec. ¶ 43; Dkt. 621. We did not fan the

---

[6] This requested adjustment would increase the Smith Team award of compensable hours by 35% for the relevant period for Smith, Lenoir, Bauza, Suckle, McCutcheon as follows: 621.46, 327.95, 353.92, 37.6, and 8.18 hours, respectively.

flames of attention with a web site or media contacts at all, and it is fundamentally unfair to us for the Court to have reached this conclusion across-the-board and without regard to which attorney was involved in what conduct, particularly when that media-related conduct occurred before we even appeared in this action.

While a three percent reduction for media activities may only result in a relatively minor financial adjustment to the Smith Team, the Court's across-the-board reduction highlights our central objection to the Court's ruling on fees in this case. The fee application in this case was based on separate fee declarations by nine different attorneys (Norinsberg, Cohen, Fitch, Levine, Gilbert, Gleason, Smith, Lenoir, and Suckle), each of whom submitted their own declarations describing their work and attaching their billing records. Yet for the Norinsberg Team and the Smith Team, the Court made judgments about the reasonableness of the time spent across the board, without any differentiation among the various lawyers. As a result, the Court reduced Smith's compensable hours by a total of 64% from 2146 requested hours (as adjusted) to 786 hours; Lenoir's hours from 1261 requested hours to 458 hours; Bauza's hours from 1268 hours to 457; Suckle's hours from 108.9 hours to 38.115 hours; and McCutcheon's hours from 23.38 hours to 8.183 hours.

Based on the individual showings made by us in the fee applications, however, we respectfully submit that a 64% reduction is not warranted or justified. Accordingly, we request that the Court reconsider its Decision in the light of the work

Case 1:10-cv-06005-RWS   Document 645   Filed 09/16/16   Page 15 of 19

12

that was separately done by each individual attorney on the Smith Team. We achieved an exceptional result in a complex and difficult action, and the Court ought to judge our work based on what each attorney did, without regard to the activities of other counsel seeking fees.

*The Reduction in Hourly Rates*

The Court cut hourly rates across the board by 35% "to align the fees requested by counsel with the market and what a reasonable client would be willing to pay for their services in connection with this or a comparable case." Decision at p. 22. As a result, the Court awarded Smith compensation at the rate of $373.75 per hour.

In making this ruling, the Court overlooked certain material facts that relate directly to the issue of market rates. Early this year, Smith was actually retained in an hourly-rate civil rights matter at the rate of $575 per hour and in a standard commercial matter at the rate of $550 per hour, Smith Reply Dec. ¶¶ 13-14; Dkt. # 621,[7] rates that are in line with current rates being awarded similar counsel in similar civil rights cases in this District. (*See* Memorandum of Law in Support of Fee Motion at pp. 22-24; Dkt. # 561 (collecting recent cases reflecting hourly rates in the District in the range from $500 to $600 per hour). In addition, on March 6, 2009, *seven years ago*, Judge Scheindlin found that Smith's then-rate of $425 per hour was a reasonable rate. Finally, the City took the position in opposing Smith's fee request that a

---

[7] Bauza is also being paid at the rate of $150 per hour under the same civil rights retainer and ought to similarly be compensated at the actual rate obtained.

reasonable hourly rate for Smith was $450 per hour.  *See* City Memorandum of Law at pp. 67; Dkt. # 597 (Court should adopt $450 as Smith's appropriate rate); *see also* City Opp. Exh. DD; Dkt. # 600-32 (chart stating that 464.05 of Smith's hours should be compensated at the rate of $450 an hour) (attached as **Exhibit 3** hereto).

    Fee jurisprudence in this Circuit generally holds that to find a reasonable hourly rate, the Court must determine whether the rates requested by plaintiff's counsel are "in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Reiter v. MTA New York City Transit Authority*, 457 F.3d 224, 232 (2d Cir. 2006) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.1 (1984)). In order to make this determination, courts look to: (1) rates awarded in prior cases; (2) the courts' own knowledge of hourly rates charged in the district; and (3) the evidence submitted by the parties. *Farbotko v. Clinton* County, 433 F.3d 204, 209 (2d Cir. 2005).

    In setting Smith's rate at $373 per hour, we respectfully submit that the Court overlooked the facts about his actual market rates, about the rate Smith was awarded seven years ago, the rate proposed by the City as a reasonable hourly rate for him, and the rates prevailing in the relevant community, the Southern District of New York. Instead, the Court reduced hourly rates across the board by 35% based on the subjective belief that a client might have been able to negotiate a lower rate.  There is, of course, no objective evidence to support or quantify this consideration, which is an

entirely speculative inquiry into an assessment of a "market" rate for civil rights lawyers where no established or traditional marketplace for this type of work exists.

The loadstar method, which has been most recently embraced by the Supreme Court in *Perdue v. Kenny A.,* 559 U.S. 542 (2010), requires lower courts to focus on *objective* factors to approximate the fee that an attorney would have received from a client paying on an hourly basis.  *Id.* at 551-52 & 558.   There, the lower court enhanced a fee award based on subjective or "an impressionistic basis" regarding the superior performance of plaintiffs' attorneys, and the Supreme Court reversed because the award failed to provide an objective and reviewable basis for the decision.  *Id.* at 558.  By focusing on prevailing market rates in the relevant community, the loadstar method authorized by *Perdue* limits the lower court's discretion, permits meaningful judicial review, and produces reasonably predictable results. *Id.* at 551-52.

Yet the Court appears to have departed from the objective analysis required by *Perdue* and instead incorrectly relied upon a subjective and speculative determination about what a reasonable client might have been able to negotiate under an unrealistic construct where the client was paying for counsel on an hourly basis.  This vague and speculative consideration stands in sharp contrast to the fact that $575 is an actual hourly rate that Smith has obtained in 2016 from a civil rights plaintiff who is paying on a straight hourly-rate basis.

In the alternative, we also note that the Court also overlooked elements of contract law, which at a minimum required the Court to increase Smith's rate to $450 an hour. In its Rule 68 Offer of Judgment, the City agreed to pay reasonable attorneys fees, and in its papers submitted on this motion, the City agreed that $450 was a reasonable rate for Smith. The City regularly addresses hourly rates in Section 1983 litigation, and it is in a particularly relevant position as a party to provide a proposal that ought to be given great weight. Indeed, the City's Rule 68 Offer of Judgment is construed according to ordinary contract principles, *Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc.*, 962 F.2d 268, 272 (2d Cir. 1992), and a contracting party's actions under the agreement are compelling, if not the strongest, evidence of the meaning of a term. *W. Alton Jones Foundation v Chevron*, 97 F. 3d 29, 33 (2d Cir. 1996). Thus, as a matter of contract law, we respectfully submit that at a minimum the City's proposed rate for Smith at $450 per hour should be adopted upon reconsideration.

*Conclusion*

For these reasons, this reconsideration motion should be granted. The Court's across-the-board reasonable hour determinations should be reconsidered in the light of the separate fee applications and the separate work done by the two teams, and the Court's hourly rate determination should be adjusted to reflect the objective facts in

the record. To the extent that the Court grants this motion, we would propose to settle the Court's Order on notice to the City to reflect the Court's rulings on this motion.

Dated: September 16, 2016

*s/NBS*

_____
Nathaniel B. Smith
John Lenoir
100 Wall Street – 23rd Floor
New York, New York 10005